IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:22-cv-22171-JEM

MICHAEL J. FITZGERALD,
Individually, and YELANY DE VARONA,
Individually

        Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

        Defendants.
_____/

PLAINTIFF'S STATEMENT OF MATERIAL FACTS
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Michael Fitzgerald ("Fitzgerald"), pursuant to S.D. Fla. L.R. 56.1, submits this Statement of Material Facts in support of Plaintiff's contemporaneously filed Motion for Partial Summary Judgment as to Liability against Defendant, Ronda McNae ("R. McNae").

1. Fitzgerald and R. McNae met on July 31, 2019 after being introduced by R. McNae's husband. *See* Exhibit 1 (R. McNae Depo. Transcr. at 98:11).

2. Fitzgerald was the Chief Technology Officer for SoftwareONE. *See* Exhibit 2 (Fitzgerald Depo. Transcr. at 20:4-6).

3. Microsoft was a large partner of SoftwareONE. Exhibit 2 at 34:18-19.

4. Will McNae, R. McNae's husband, was employed by Microsoft; Fitzgerald and McNae had a good working relationship and would occasionally socialize. Exhibit 2 at 36:9-21.

5. Fitzgerald invited the McNae family to Miami in October 2019 to celebrate SoftwareONE's Initial Public Offering, and the McNae family accepted. Exhibit 2 at 43:4-7; *See* Exhibit 3, text messages between R. McNae, W. McNae and Fitzgerald (McNae 3461).

6. Fitzgerald and R. McNae had sexual relations in Miami. Exhibit 2 at 70:2-72:10.

7. Afterwards, Fitzgerald flew to San Francisco to see R. McNae so they could talk about having a serious relationship. Exhibit 2 at 102:24-103:4.

8. Fitzgerald and R. McNae shared a single hotel room in San Francisco from November 2-4, 2019. Exhibit 1 at 297; 301; Exhibit 2 at 105:11-25.

9. Fitzgerald and R. McNae had sexual relations once in San Francisco. Exhibit 2 at 106:21-107:12.

10. Fitzgerald believed that the relationship was consensual. Exhibit 2 at 82:24-83:83:9; 107:25-108:6; 139:22-141:3.

11. Correspondence and writings from R. McNae from November to December of 2019 support Fitzgerald's belief that the relationship was consensual and that they were going to try to have a relationship. On November 5, 2019, R. McNae wrote to Fitzgerald: "[s]o much of my heart sees a future with you…" and "I have tons of love for you…" *See* Exhibit 4, email from R. McNae to Fitzgerald (Fitz 0003-05).

12. On November 14, 2019, R. McNae sent a message to Fitzgerald's best friend via Instagram and stated "I love the guy" referring to Fitzgerald. *See* Exhibit 5, instant messenger between R. McNae and Tom Wiper (McNae 1132).

13. The next day, Fitzgerald discovered that W. McNae knew about the affair. Fitzgerald told R. McNae that he was going to back away from her and W. McNae so that they could work on their marriage. Exhibit 3 (McNae 3468).

14. R. McNae decided to attend a weeklong mental health workshop in December of 2019 to gain a deeper understanding of how her past was affecting her, including leading her to have had a previous extramarital affair, as well as the extramarital affair with Fitzgerald. *See* Exhibit 6, Onsite Workshop Application, filed under seal.

15. R. McNae wrote that she wanted to figure out if she should stay married to W. McNae or pursue a relationship with Fitzgerald. Exhibit 6.

16. In her application to the mental health workshop. R. McNae wrote that she wondered if Fitzgerald was her "soulmate." Exhibit 6.

17. In November 2019, Fitzgerald, R. McNae and W. McNae discussed the affair openly; Fitzgerald apologized for the affair and W. McNae accepted his apology. Exhibit 3

18. Thereafter, on February 1, 2020, R. McNae discovered that Fitzgerald was due to come into a large sum of money in April when he could cash out his stocks due the recent Initial Public Offering of SoftwareONE. *See* Exhibit 7, text message from R. McNae to her friend Matt Mead (McNae 3659).

19. The next day, February 2, 2020, R. McNae texted Fitzgerald to say she was pregnant with his child, divorcing her husband, and asking Fitzgerald to provide her financial support. *See* Exhibit 8, text messages between R. McNae and Fitzgerald (McNae 2089-90).

20. On February 4, 2020, R. McNae told Fitzgerald that W. McNae suggested that she may have been too intoxicated in Miami to consent to sex with Fitzgerald – inexplicably

ignoring the fact that she was not intoxicated in San Francisco during their second sexual liaison. Exhibit 8 (McNae 2095); Exhibit 1 at 237:22-238:18; 350:24 – 351:1.

21. Upon this "realization," R. McNae did not go to the law enforcement authorities at that time to file a report against Fitzgerald. She did not accuse Fitzgerald of assault; Instead, she lied to Fitzgerald and told him that she was pregnant with Fitzgerald's child and getting a divorce. Exhibit 8.

22. Based on these lies, R. McNae negotiated with Fitzgerald to pay her emotional support damages for ruining her marriage and for marriage therapy for her and W. McNae to help her deal with the consequences of her actions and choices. Exhibit 1 at 413:19-24, 421: 2-6; Exhibit 8.

23. R. McNae asked Fitzgerald for financial support, "fat clothes", a push present, and designer sneakers. She offered to sign a non-disclosure agreement even though Fitzgerald did not ask for one. Exhibit 1 at 421-423; Exhibit 8 (McNae 2092, 2094, 2096).

24. Fitzgerald believed McNae was pregnant and underwent an abortion and agreed to pay $1500 per month to contribute to R. McNae's therapy sessions and stated that he would give her a lump sum after April 2020. Fitzgerald accepted R. McNae's offer to enter a non-disclosure agreement to keep his financial information private. Exhibit 3 (McNae 3470, 3477).

25. Fitzgerald also offered to help pay for marriage counseling for the McNaes. Exhibit 3 (McNae 3473).

26. Fitzgerald and R. McNae negotiated the terms of an agreement extensively from February 2020 through April 2020. Exhibit 8 (McNae 2089-2132).

27.   They reached an impasse and on April 15, 2020 R. McNae retained Max Meyers Law to help her negotiate the agreement with Fitzgerald. Exhibit 1 at 370:7-10.

28.   Fitzgerald was represented by the undersigned law firm; both Fitzgerald and R. McNae were represented by competent counsel.

29.   The attorneys worked on an agreement between the parties, and several iterations of the parties' agreement were sent back and forth between the attorneys and clients. *See* Exhibit 9 (McNae 000029 – 000114).

30.   McNae sent drafts of the agreement to her therapist, Sarah Dellinger, and to at least one confidant, her friend and boss, Tami Wakasugi. *See* Exhibit 10 (Equip 000018-22; McNae 003503-3506); Exhibit 1 at 435:16-18.

31.   On June 15, 2020, R. McNae, W. McNae and Fitzgerald each signed and initialed the Confidential Settlement Agreement (the "Settlement Agreement") at Exhibit 11; Exhibit 1 at 432:10-13.

32.   During her deposition, R. McNae stated that she signed the Confidential Settlement Agreement in the presence of her husband and entered into the agreement because she did not have the financial means to pay for counseling five times a week. Exhibit 1 at 433:18-19. However, a portion of R. McNae's counseling fees were either covered by her health insurance policy or were capable of reimbursement. *See* Exhibit 12 (McNae 003803-3805; 1152-1175; 2846-2849).

33. R. McNae now claims she did not understand what she was even though she had competent counsel, and states that she believed that she was able to discuss things generically but could not report to law enforcement. Exhibit 1 at 433:18 – 434:15.[1]

34. The Settlement Agreement contains R. McNae's initials and signature. Exhibit 11.

35. Pursuant to the Settlement Agreement, the parties were required to keep the terms and conditions of the agreement confidential. *See* Exhibit 11 at ¶16.

36. Pursuant to the Settlement Agreement, R. McNae was to have no further contact with Fitzgerald's then employer, SoftwareONE. *Id.* at ¶4B.

37. The Settlement Agreement prohibited R. McNae from speaking or writing about Fitzgerald, his nationality, his employer, his country of citizenship, his location of residence, his employer, his job function, his job title, his profession, or reference dates, locations or other persons present at any of the events related to the underlying dispute. *Id.* at ¶4A.

38. R. McNae was prohibited from referring to Fitzgerald directly or indirectly. *Id.*

39. The parties exchanged a mutual general release of all claims against one another. *Id.* at ¶¶3, 13.

40. R. McNae and Fitzgerald agreed not to disparage each other by written or oral word, gesture, or any other means, nor would they make disparaging or negative comments about each other, to any person or entity. *Id.* at ¶17.

41. R. McNae breached the Settlement Agreement ten (10) different times.

---

[1] Despite her belief that she could not report to law enforcement, R. McNae filed a report against Fitzgerald with the Redmond, WA Police Department for harassment on October 20, 2021; an incident report with the San Francisco Police Department for rape and sodomy on April 7, 2022; and an incident report with the Miami Beach Police Department for rape on April 15, 2022. No criminal charges have been brought against Fitzgerald in any of these jurisdictions. The Settlement Agreement did not prevent her from filing with law enforcement.

42. On March 31, 2022, R. McNae contacted John Mayes and Patty Ravencroft at SoftwareONE to reveal the existence of the Settlement Agreement and to reveal ongoing investigations against Fitzerald. *See* <u>Exhibit 13</u>, hereinafter referred to as "Statement 1" (McNae 001335-37).

43. Statement 1 included the text of another email sent to Fitzgerald stating that R. McNae initiated investigations against him for harassment and sexual battery. *Id.*

44. On May 5, 2022, R. McNae contacted John Mayes and Patty Ravencroft at SoftwareONE and Leslie Pickering of Microsoft to say that Fitzgerald engaged in psychological coercion, deception, and manipulation to prey on her. *See* <u>Exhibit 14</u>, hereinafter referred to as "Statement 2" (McNae 001342).

45. Statement 2 was communicated to SoftwareONE in violation of the terms of the Settlement Agreement and to W. McNae's employer, Microsoft, an important business partner of SoftwareONE with whom Fitzgerald worked with.

46. On May 9, 2022, R. McNae contacted John Mayes and Patty Ravencroft at SoftwareONE and Leslie Pickering of Microsoft, with copies of various police reports that she filed against Fitzgerald. *See* <u>Exhibit 15</u>, hereinafter referred to as "Statement 3" (McNae 001341).

47. In Statement 3, R. McNae again wrote about Fitzgerald with SoftwareONE and Microsoft stating that Fitzgerald took advantage of a work relationship to prey on her and stated that R. McNae was not the only victim of Fitzgerald's misconduct. *Id.*

48. On June 10, 2022, R. McNae contacted David Totten, Leslie Pickering and Chris Maulden of Microsoft stating that Fitzgerald raped/assaulted her and threatened and harassed W. McNae. *See* Exhibit 16, hereinafter referred to as "Statement 4" (McNae 001332-33).

49. On July 7, 2022, R. McNae contacted John Wylie of John Wylie Law and John Mayes of SoftwareONE requesting to be released from the Settlement Agreement. *See* Exhibit 17, hereinafter referred to as "Statement 5" (McNae 001347-48).

50. In Statement 5, R. McNae again stated that Fitzgerald committed sexual misconduct and sexual assault, and that he groomed and preyed on R. McNae. *Id.*

51. On July 15, 2022, R. McNae contacted John Wylie of John Wylie Law, John Mayes of SoftwareONE and Jenny Martinez of Munck Wilson stating that Fitzgerald touched parts of her body in order to desensitize her to random touching. *See* Exhibit 18, hereinafter referred to as "Statement 6" (McNae 1349).

52. On July 11, 2022, R. McNae posted Statement 5 on her Instagram account in its entirety and in the comments section referred to Fitzgerald indirectly to thousands of her followers as well as members of the public. *See* Exhibit 19, hereinafter referred to as "Statement 7" (McNae 001702-04).

53. On July 15, 2022, R. McNae again posted about Fitzgerald on Instagram by posting a screenshot of the Incident Report she filed with the San Francisco Police Department, which includes Fitzgerald's first and last name, and which accused Fitzgerald of sodomy and rape. *See* Exhibit 20, hereinafter referred to as "Statement 8" (McNae 1699-1701). Statement 8 was published to thousands of R. McNae's followers and members of the public. *Id.*

54. On October 10, 2022, R. McNae posted on her Instagram account a photo and stated that she was raped, referring to Fitzgerald by reference. *See* Exhibit 21, hereinafter referred to as "Statement 9" (Fitz 00403-409). Statement 9 was published to thousands of R. McNae's followers and members of the public. *Id.*

55. On January 1, 2022, R. McNae posted a blog on Medium.com entitled "Our HR complaint to MICROSOFT – falls on deaf ears" which included W. McNae's July 8, 2021 letter to Microsoft that states that R. McNae was raped. *See* Exhibit 22, hereinafter referred to as "Statement 10" (Fitz 00129-136). Statement 10 referred to Fitzgerald indirectly and was posted on the Internet with an unlimited number of exposures to members of the public. *Id.*

56. Statements 1 through 10 are all violations of the Settlement Agreement because R. McNae disclosed the existence of the Settlement Agreement to others, contacted Fitzgerald's then-employer, SoftwareONE, wrote about Fitzgerald directly and indirectly, and disparaged Fitzgerald to countless others.

57. R. McNae was aware that her actions exposed herself to a breach of contract lawsuit. On July 15, 2022, she wrote on Instagram "I could potentially be in front of a judge for breaching a "Silence Agreement" before the perpetrator is charged for the crimes I'm told to not speak of or else!" *See* Exhibit 20.

58. On July 11, 2022, R. McNae wrote on Instagram "Release me from the NDA or sue me for breaching" and she included the following hashtag: #fuckthendamf. Exhibit 7.

59. R. McNae admitted that she authored, posted and/or stated each of Statements 1 through 10. *See* Exhibit 1 at 431-32.

60. R. McNae admitted that she authored, posted and/or stated information regarding the Settlement Agreement and/or Fitzgerald by name or reference to others, including Ashley Stewart, Gretchen Carlson, Julie Roginsky, and Sarvenaz Bakhtiar. *See* Exhibit 1 at 437-39.

61. R. McNae admitted that she sent a copy of the Settlement Agreement to Julie Roginsky, Gretchen Carlson and Sarvenaz Bakhtiar on January 20, 2022. *See* Exhibit 1 at 438:20-23. Misses Roginsky, Carlson and Bakhtiar are members of the press, whom R. McNae contacted in order to further disparage and/or discuss Fitzgerald.

62. R. McNae is aware that filing incident reports with law enforcement is not a violation of the Settlement Agreement, since paragraph 16 expressly provides for such communications. R. McNae's attorney, Richard Gomez, has made such statements in filings made in the State Court Action against William McNae. *See* Exhibit 23.

Dated: August 12, 2024                                Respectfully submitted,

                                             **ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
Telephone: (305) 567–5576
Facsimile: (305) 567–9343

By:   /s/ Meredith J. Gussin
Peter E. Berlowe
Florida Bar No. 143650
Meredith J. Gussin
Florida Bar No. 0512303
*Attorneys for Plaintiffs*