**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MICHAEL FITZGERALD
and YELANY DE VARONA,                                    CASE NO. 22-cv-22171

      Plaintiffs,

v.

RONDA MCNAE and WILLIAM MCNAE,

      Defendants.
_____/

**DEFENDANT RONDA MCNAE'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO LIABILITY**

      Defendant, Ronda McNae, through her undersigned counsel, hereby files this
Opposition to the Plaintiff, Michael Fitzgerald's, Motion for Partial Summary Judgment as
to Liability (ECF No. 171), and states as follows:

**INTRODUCTION**

      Partial summary judgment is improper because there are genuine issues of
material fact regarding both the alleged breach of contract and the absence of any
damages caused by the alleged breach. The plaintiff, Michael Fitzgerald, has failed to
provide any evidence showing that he suffered damages as a direct result of the
statements made by the defendant, Ronda McNae. Without proof of actual damages,
there can be no liability for breach of contract under Florida law, as liability cannot exist
in a vacuum.

      Fitzgerald's attempt to separate liability from damages is fundamentally flawed. His
motion focuses on acts he claims breached the confidentiality and non-disparagement

provisions of the parties' settlement agreement, but he has not demonstrated that any actual damage resulted from these alleged breaches. Florida law is clear that a plaintiff moving for summary judgment on a breach of contract claim must show some proof of damages, and Fitzgerald has failed to do so. The record shows that those who received the communications from McNae, including Fitzgerald's employer and colleagues, were already aware of the underlying allegations before the agreement was signed. This alone precludes any finding that Fitzgerald suffered damages because of McNae's statements.

Moreover, Fitzgerald's own deposition testimony undermines his claims of reputational harm or economic loss. He admitted that his voluntary departure from his job at SoftwareOne was voluntary, and he acknowledged receiving benefits, such as retaining his performance share units, as part of a negotiated settlement with the company. Fitzgerald's testimony also reflects that any reputational damage he suffered occurred well before the alleged breaches in 2022 and was unrelated to McNae's subsequent statements.

Summary judgment is also improper, because Fitzgerald has not proven that any of McNae's statements constitute a "material" breach of the Agreement. The persons McNae communicated with in 2022 already knew of her allegations.

Because Fitzgerald has not provided evidence of damages resulting from the alleged breaches, partial summary judgment on liability is not appropriate[1]. His failure to

---

[1] In a footnote on page 2 of his motion, Fitzgerald claims that McNae refused to meet and confer on a Joint Statement of Undisputed Facts. *ECF No. 171, p. 2, n.1.* That is not accurate. In an email exchange that took place in July 2024, the undersigned expressed his belief that the requirement for a joint statement may have been moot, as the Court's subsequent trial order did not include such a requirement. More importantly, the undersigned expressed his belief that the Court wanted a joint statement of "relevant" material facts - which was premature given that the pleadings were not closed at the time, including the fact that the Court had not yet ruled on the

meet the burden of proving damages and causation necessitates denying the motion for partial summary judgment in its entirety[2].

## STATEMENT OF FACTS

### A. The Settlement Agreement

In early 2020, Defendant Ronda McNae and her husband, William McNae, informed Plaintiff Michael Fitzgerald's then-employer, SoftwareONE (a business partner of Mr. McNae's employer), that Fitzgerald sexually assaulted Ms. McNae during a Miami celebration for SoftwareONE's IPO. They also internally reported to Microsoft, Mr. McNae's employer at the time. SoftwareONE initiated an investigation into Fitzgerald in around April 2020.

Months later, on June 15, 2020, Fitzgerald and the McNaes signed a Confidential Settlement Agreement in which Fitzgerald paid money in exchange for releases from the McNaes of their claims arising from the alleged rape and sexual assault. The only claim remaining in this case is a single breach of contract claim asserted by Plaintiff Michael Fitzgerald against Defendant Ronda McNae for breach of the Settlement Agreement.

The Agreement 's confidentiality and non-disparagement provisions, stated, in pertinent part:

> A. The McNaes shall remove any prior or current internet posts that reference Fitzgerald by name. The McNaes may speak or write generically about their life events, but in speaking or writing about their life events, the McNaes cannot refer to Fitzgerald's name, likeness, being, nationality, country of citizenship, location of

---

merits of Plaintiff's motion to dismiss Ronda McNae's counterclaim and motion to strike McNae's affirmative defenses.

[2] Given Fitzgerald's inability to show any damages stemming from McNae's statements, McNae will be filing an affirmative motion for summary judgment by the Court's September 13, 2024 deadline.

residence, employer, job function, job title, profession, or reference to dates, locations, or other persons present. For instance, Ronda cannot name six people at an event, plus and unnamed person, so that the six people will know who the unnamed person is by process of elimination. Thus, it shall be a breach of this Agreement for the McNaes to indirectly refer to Fitzgerald in a way the Mc Naes could not do directly.

B. The McNaes shall not contact Fitzgerald's employer. If Mr. Fitzgerald's employer contacts either of the McNaes, the McNaes shall respond, "the matter has been resolved and I cannot speak any more about it," or words to that effect.

**B.  The Alleged Breaches**

In moving for summary judgment, Fitzgerald seeks partial summary judgment on liability, arguing that McNae breached the confidential settlement agreement on ten occasions, by speaking and writing about Fitzgerald to others. *MSJ, pp. 3-4* (identifying "Statement 1" through "Statement 10"). Those Statements include the following:

1. On March 31, 2022, R. McNae emailed two individuals at SoftwareONE regarding the Settlement Agreement and stated that there are ongoing criminal investigations against Fitzgerald ("Statement 1") (ECF 172-13).

2. On May 5, 2022, R. McNae emailed SoftwareONE and Microsoft accusing Fitzgerald of psychological coercion, deception, and manipulation to prey on her ("Statement 2") (ECF 172-14).

3. On May 9, 2022, R. McNae contacted SoftwareONE and Microsoft, with copies of various police reports that she filed against Fitzgerald ("Statement 3") (ECF 172-15).

4. On June 10, 2022, R. McNae contacted others at Microsoft and wrote that Fitzgerald raped and assaulted her and harassed W. McNae ("Statement 4") (ECF 172-16).

5. On July 7, 2022, R. McNae contacted John Wylie Esq. and John Mayes of SoftwareONE asking to be released from the Settlement Agreement - and wrote that Fitzgerald committed sexual misconduct and assault.  ("Statement 5") (ECF 172-17).

6. On July 15, 2022, R. McNae contacted John Wylie Esq., John Mayes of SoftwareONE and Jenny Martinez Esq. of Munck Wilson, an outside law firm of SoftwareONE, stating that Fitzgerald touched parts of her body to desensitize her to random touching ("Statement 6") (ECF 172-18).

7. On July 11, 2022, R. McNae posted Statement 5 on Instagram ("Statement 7") (ECF 172-19). The post did not refer to Fitzgerald by name.

8. On July 15, 2022, R. McNae posted on Instagram, adding a screenshot of the incident report she filed with the San Francisco Police Department. ("Statement 8") (ECF 172-20).

9. On October 10, 2022, R. McNae posted on Instagram a photo and stated that she was raped, which did not refer to Fitzgerald by name ("Statement 9") (ECF 172-21).

10.  On January 1, 2022, R. McNae posted a blog on Medium.com, "Our HR complaint to MICROSOFT – falls on deaf ears" including W. McNae's July 8, 2021 letter to Microsoft stating that R. McNae was raped ("Statement 10") (ECF 172-22).

### C.  Fitzgerald's Evidence of Damages

The Agreement was signed on June 15, 2020 – and the purported breaches occurred almost two years later, during the period of January 2022 to October 2022. SoftwareOne and Microsoft both knew about the rape allegations *before* the Agreement was signed.

During his deposition, Fitzgerald acknowledged that SoftwareOne's CEO, Dieter Schlosser, knew about McNae's sexual assault allegations as early as March 2020 and Schlosser spoke with Fitzgerald and told him that SoftwareOne would be investigating the issue. (Fitzgerald Dep. 134:20 – 135:4; 136:4-15)[3].

When asked if he is claiming that McNae breached the Agreement by communicating with individuals who already knew about the events (or already discussed those issues with McNae), Fitzgerald testified:

> Q. … Are you claiming that it's a violation of the Confidential Settlement Agreement for her to discuss the information or the events in Miami or the -- with people that she had already discussed those events with prior to the Confidential Settlement Agreement?
>
> MR. BERLOWE: Object to form.
>
> THE WITNESS: I'm unsure if it is or it isn't. But my -- I'm kind of confused at this point because I've consumed so much information. But my view is that people didn't know before. The people that didn't know before, that's definitely a breach. I'm unsure if it is a breach if it's people that did know before.
>
> (Fitzgerald Dep. 167:5—16).

---

[3] Fitzgerald's deposition was recently filed at ECF No. 188-1 and 188-2. The other deposition transcripts mentioned in this response are being filed along with this opposition.

Tom Wiper, Fitzgerald's close friend, testified that he did not believe McNae's accusations and it did not affect their friendship. (Wiper Dep. 49:3-10; 92:2-6). When asked if he was aware of any relationship Fitzgerald had with family, friends or co-workers that was negatively affected by McNae's allegations, Wiper was not aware of any reputational harm. (Wiper Dep. 103:4 - 104:14).  Fitzgerald's wife Yelany de Varona testified that she did not believe McNae's allegations. (de Varona Dep. 53:11-21).

Fitzgerald knew that individuals at Microsoft and SoftwareOne were aware of McNae's sexual assault allegations *before* the parties entered into the Agreement. (Fitzgerald Dep. 167:21 – 168:16). And in Fitzgerald's view, "I presumed that people thought the allegations were untrue…" (Fitzgerald Dep. 168:6-16). Fitzgerald testified that he offered to step down from his job at SoftwareOne in 2020, but was told that was unnecessary. (Fitzgerald Dep. 234:8-14). When Fitzgerald spoke with SoftwareOne's CEO, Schlosser told him that he 'had his back' because Schlosser and Fitzgerald were friends, and that Schlosser told Fitzgerald it "didn't seem like something I would do." (Fitzgerald Dep. 256:11-24).

In fact, SoftwareOne's CEO was so supportive of Fitzgerald, and so disbelieved McNae's allegations, that when Microsoft learned of the complaint against Fitzgerald, SoftwareONE's CEO told Microsoft "to get f—ked". (Fitzgerald Dep. 261:25 – 262:15).

Fitzgerald also testified that his reputational damage with Microsoft, if any, occurred in 2020, years before the Agreement was purportedly breached. During his deposition, Fitzgerald stated that in 2020, he was no longer included in the kind of engineering meeting and rollout sessions with Microsoft like he was in the past. (Fitzgerald Dep. 265:5-14). Fitzgerald believed his relationship with Microsoft soured

because of Mr. McNae's 2020 email to Microsoft representatives, but acknowledged that no one at SoftwareOne told Fitzgerald that the reason he was not working with Microsoft was because of Ronda or Will McNae. (Fitzgerald Dep. 256:20 – 266:3).

After McNae's Statements were made in 2022, it was Fitzgerald who provided notice of this action to SoftwareOne, which included a copy of the Confidential Settlement Agreement, at which point he was placed on paid leave. (Fitzgerald Dep. 321:12 - 322:10).

Fitzgerald believes he was placed on leave because of McNae's allegations and the impact it could have on SoftwareOne, testifying that this was "insinuated" to him. (Fitzgerald Dep. 515:6-16). As part of this investigation, however, SoftwareOne's attorney began investigating Fitzgerald's use of his expense account, and whether Fitzgerald improperly used SoftwareOne funds to pay for the McNae's travel, meals or other expenses when the group met in Miami in 2020. (Fitzgerald Dep. 398:19 – 399:11).

Fitzgerald testified that after filing this lawsuit, he "didn't want to go back to SoftwareOne. So I decided there's no way forward based on this." (Fitzgerald Dep. 324:15-22).

Fitzgerald voluntarily decided to leave SoftwareOne in December 2022. (Fitzgerald Dep. 394:5-11). Fitzgerald described his reason for leaving as follows:

> I explained my displeasure at the behavior and experience that I had had from SoftwareONE given the time and investment of my emotional state that I had given to SoftwareONE over the last couple of years -- or last seven years almost and that I didn't have an appetite to be there anymore.
>
> And -- and I actually explained that I actually resigned in December 2021 and was persuaded to stay in the organization by the

executive leadership team and board and -- when I actually wanted
to take a break and go and work on something for myself.

But as you can see, my role changed -- actually, it's on the paper in
front me -- to help kind of reinvigorate the platform division and
rename the platform vision. And that's actually what I stayed to do.
(Fitzgerald Dep. 395:5-20).

When asked why he wanted to leave SoftwareOne in 2021, Fitzgerald testified:

I wanted to go and be the CEO of a software company or potentially
join the board of a growth software company, which I've never felt I
needed -- I was ready to do before, so I wanted to do that. I had a
couple of conversations with friends or peers -- ex-peers in the
industry who would have been interested in maybe putting me in
front of investors or companies to do a role. But I didn't actually
apply or -- or do anything of that type.

(Fitzgerald Dep. 397:1-8).

Fitzgerald voluntarily left SoftwareONE, as of February 28, 2023. (Fitzgerald Dep.
324:15-325:5, 534:16-21, 407:16-20.)  As part of his voluntary termination, Fitzgerald
negotiated and entered into a Settlement Agreement with SoftwareONE, which provided
that, among other things, Fitzgerald would be entitled to retain his unvested performance
share units (PSUs), which are similar to stock options (Fitzgerald Dep. 403:11-20; 410:6-
413:16.)

## ARGUMENT AND ANALYSIS

### I.   Applicable Standard.

Summary judgment is proper if following discovery, the pleadings, depositions,
answers to interrogatories, affidavits and admissions on file show that there is no genuine
issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id*. at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1280 (11th Cir. 2004).

**II.**   **Summary judgment is improper, because there is no evidence that McNae caused, or that Fitzgerald suffered, any reputational or other damages stemming from the alleged breach.**

In order to properly allege a breach of contract claim, the Plaintiff must show (1) that a contract exists, (2) the contract has been breached, (3) that some damage has occurred which flowed from that breach. *Looney v. Protective Life Insurance, Co*., 2007 U.S. Dist. LEXIS 65812, 2007 WL 2669190, *3 (M.D. Fla. September 6, 2007)(*citing Knowles v. C.I.T. Corp*., 346 So. 2d 1042 (Fla. 1st DCA 1977)). Florida courts have long recognized that "[n]ot all breaches of contract result in damages and the law furnishes a remedy only for such wrongful acts as result in injury or damage. *Scott-Steven Dev. Corp. v. Gables by Sea, Inc.,* 167 So. 2d 763, 764 (Fla. 3rd DCA 1964); see also *Broxmeyer v. Elie*, 647 So. 2d 893, 895 (Fla. 4th DCA 1994)("[w]here there is no proof of damages, there can be no recovery."); *Miami Beach v. Carner*, 579 So. 2d 248, 253 (Fla. 3d DCA 1991)(summary judgment was inappropriate "because proof of some actual damage is an element of liability for breach of contract.")

"While a plaintiff moving for summary judgment solely as to liability on a claim for breach of contract need not prove the specific amount of damages to prevail, the plaintiff still must prove *some* actual damage." *Transunion Risk & Alt. Data Sols., Inc. v. MacLachlan*, 2016 U.S. Dist. LEXIS 24569, at *11 (S.D. Fla. Feb. 29, 2016)("[w]hile [plaintiff] is not required to prove the amount of these damages, its failure to provide any evidence relating to such damages renders summary judgment inappropriate.")

To obtain partial summary judgment on liability, Fitzgerald must still demonstrate that he suffered *some* damage resulting from McNae's statements. He must also prove that those damages were proximately caused by those statements. He can do neither. Fitzgerald's motion focuses entirely on establishing acts that would violate the confidentially and non-disparagement sections of the Agreement. But without proof of damages, McNae cannot be held liable for breach of contract.

By attempting to separate liability from damages, Fitzgerald is effectively trying to sidestep his obligation to show that he has incurred at least *some* damages from each alleged breach. This is not a case where damages are readily apparent and the only issue is the amount to be determined by a jury. Nor is this a case involving a liquidated damages provision. *See Kehoe v. Fid. Fed. Bank & Tr.*, 421 F.3d 1209, 1213 (11th Cir. 2005) ("liquidated damages are a contractual substitute for actual damages [and] are paid even in the absence of proof of actual damages.")

Instead, Fitzgerald seeks to establish liability without presenting any undisputed evidence that he has suffered any harm at all. The summary judgment record establishes that Fitzgerald's employer, SoftwareOne, his colleagues at Microsoft, his wife and others

already knew about the substance of McNae's Statements, years before McNae made them in 2022.

The Court should reject Fitzgerald's attempt to separate liability from damages because liability cannot exist in a vacuum. Without some proof of actual damages caused by McNae's statements, there can be no basis for holding McNae liable for breach of contract, even if her statements were disparaging and in breach of the Agreement. Summary judgment on liability is inappropriate where there is no clear evidence of damage, and Fitzgerald's effort to defer this issue to a later stage should be rejected.

The lack of damages stemming from McNae's statements is evident from Fitzgerald's own deposition. Fitzgerald testified that he did not have to leave his job at SoftwareOne, and he was not terminated. (Fitzgerald Dep. 324:18-22). Having voluntarily left SoftwareOne, Fitzgerald's purported economic damages for lost income were the proximate result of his decision to leave SoftwareOne and seek employment elsewhere.

Even if Fitzgerald could show *some* proof of damages, he is not entitled to summary judgment on liability because he has not shown any proof that such damages were caused by McNae's statements, rather than some other source. *See, e.g., Jeld-Wen, Inc. v. Nebula Glass Intern., Inc.*, 2007 WL 5960207, at *7 (S.D. Fla. May 15, 2007) (a party cannot recover actual damages for breach of contract "unless it can prove that the damages were proximately caused by the breach*.) Technolojoy, LLC v. BHPH Consulting Services,* LLC, 19-23770-CIV, 2022 WL 685861, at *5 (S.D. Fla. Mar. 8, 2022) ("In breach of contract actions, a plaintiff may recover only if the damages were a proximate result of the breach.")

Here, there is no evidence that McNae's purported breach caused reputational damages. As detailed above, SoftwareOne and Microsoft both knew about the rape

allegations before the Agreement was signed, which was years before McNae's 2022 Statements. (Fitzgerald Dep. 167:21 – 168:16). Tom Wiper, Fitzgerald's friend, testified that Fitzgerald suffered no reputational damage. (Wiper Dep. 49:3-10; 92:2-6; 103:4 - 104:14). Fitzgerald's wife Yelany de Varona testified that she did not believe McNae's allegations. (de Varona Dep. 53:11-21).

And while Fitzgerald alleged in his amended complaint that his job at SoftwareOne was negatively impacted, Fitzgerald confirmed that he voluntarily left his job and negotiated the terms of his departure with SoftwareOne, where he would retain his PSUs (stock options). (Fitzgerald Dep. 403:11-20; 410:6-413:16). Fitzgerald was in full control of his decision to leave, and the terms of his voluntary departure. He offers no evidence to support a claim that McNae's statements negatively impacted his bargaining position.

Fitzgerald's claim that he lost quarterly and annual bonuses is also insufficient proof of damages to support partial summary judgment. Fitzgerald testified that each year, he and SoftwareOne agreed on what annual performance goals had to be met for him to receive 100% of his target quarterly and annual bonuses for that year. (Fitzgerald Dep. 306:10-308:7). What percentage of the target bonus Fitzgerald would receive was tied to *the company* meeting agreed-upon yearly revenue and profit goals. (Fitzgerald Dep. 315:1-6). At regular intervals, SoftwareOne calculated Fitzgerald's bonus by comparing the agreed-upon company performance targets for that year to the actual performance achieved by SoftwareONE and then paid a bonus according to that calculation. (Fitzgerald Dep. 317:5-23). For example, Fitzgerald explained that 2021 - "was a very poor year performance-wise for SoftwareOne," so Fitzgerald "achieved 53 percent of [his] goals

annually for the year" and therefore he was paid about 50% of his target bonus that year. (Fitzgerald Dep. 313:12-316:5).

Under questioning by his own attorney, Fitzgerald acknowledged that he did not know whether he would be eligible to receive his full quarterly and annual bonuses for 2022. (Fitzgerald Dep. 520:21-521:13) ("So in 2022, I didn't get a second half of the year bonus. ***I don't know whether I'm eligible for one because I didn't see the targets.*** And I would suggest I probably was. But I can't tell you because ***I would be wrong to put the numbers.*** . . .")(emphasis added)).

Partial summary judgment is improper because there is no proof of non-economic damages (in the form of reputational harm or otherwise) and because there is no proof of economic damages stemming from Fitzgerald's voluntary departure from SoftwareOne or the bonuses awarded by SoftwareOne in 2022.

Summary judgment is also improper because Fitzgerald's negotiation with SoftwareOne (and decision to compromise on what he would otherwise be owed in terms of PSUs) cuts off proximate cause. In other words, even if McNae were an indirect cause of Fitzgerald's decision to voluntarily leave the company, McNae was not the cause of Fitzgerald's negotiation decisions on stock options as part of his severance. Fitzgerald offers *no* evidence that McNae's statements negatively impacted Fitzgerald's negotiation stance with SoftwareOne. And the record evidence does not support such a conclusion, as Fitzgerald testified that no-one at SoftwareOne believed the allegations made by McNae or thought they had any merit, with SoftwareOne's CEO even expressing his explicit support for Fitzgerald.

Ultimately, Fitzgerald is not entitled to partial summary judgment on liability because he offers no evidence that he suffered any damages from McNae's statements, or that such damages "naturally flowed" from McNae's conduct. *See Luis v. Courtesy Ford, LLC*, 2006 U.S. Dist. LEXIS 113188, at *6 (S.D. Fla. Oct. 3, 2006)("[p]laintiff's recoverable damages are limited to those that naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered into.")

### III.     Plaintiff failed to satisfy his burden to prove materiality—an essential element of a breach of contract claim.

To prevail on a breach of contract claim, a plaintiff must prove a breach, but "[s]uch a breach must be material." *AmeriPath, Inc. v. Wetherington*, 2011 U.S. Dist. LEXIS 36389, at *12 (S.D. Fla. Apr. 4, 2011)(*citing Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

Generally, whether an alleged breach is material under Florida law is a question of fact. *See, e.g., Covelli Fam., L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. Dist. Ct. App. 2008) ("The issue of whether an alleged breach is vital or material is reviewed as a question of fact."); *Moore v. Chodorow*, 925 So. 2d 457, 461 (Fla. Dist. Ct. App. 2006) ("Whether a party's failure to commit certain actions constitutes a material breach of an agreement is reviewed as a question of fact.")

To establish a material breach, the party alleged to have breached the contract must have failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties. *Burlington & Rockenbach, P.A. v. L. Offs. of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. 5th DCA 2015) (citing *Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So.2d 749, 752 (Fla.

4th DCA 2008); *Sublime, Inc. v. Boardman's Inc*., 849 So.2d 470, 471 (Fla. 4th DCA 2003)); *see also Focus Mgmt. Grp. USA, Inc. v. King*, 171 F. Supp. 3d 1291, 1297 (M.D. Fla. 2016) (same). Whether a breach is material is an issue of fact and "the general inquiry is whether the injured party has received substantially what he bargained for." *Ron Matusalem & Matusa of Fla., Inc. v. Ron Matusalem, Inc*., 872 F.2d 1547, 1551 (11th Cir. 1989).

Plaintiff does not address this essential element in his motion. And that failure alone means that partial summary judgment is improper. *See, e.g., Bagnall v. City of Sunrise*, 2011 U.S. Dist. LEXIS 94565, at *15 (S.D. Fla. Aug. 24, 2011)"[i]f the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment.")

In *Verbal v. Tiva Healthcare, Inc.*, 628 F. Supp. 3d 1222 (S.D. Fla. 2022), the court denied summary judgment on similar grounds, because the movant "never contends in her briefing that the Defendants *materially* breached" the agreement and "ignore[d] materiality entirely" in moving for summary judgment. Id. at 1229 (emphasis added). The court noted that the failure to raise this issue in plaintiff's motion should be treated as a forfeiture of the issue, and "[b]ecause of this costly omission," summary judgment was improper. *Id*.

Even if Fitzgerald addressed the issue of materiality, there is sufficient evidence to create a jury question on the issue. For instance, the emails McNae sent (Statements 1 - 6) create a jury question on materiality because McNae's 2022 emails were follow-ups to prior emails W. McNae and R. McNae sent to SoftwareOne and Microsoft - before the Agreement was entered.

Similarly, McNae's social media posts (Statements 7 and 9) create a jury question on materiality because they did not identify Fitzgerald by name. (ECF No. 172-19 and ECF 172-21). While Plaintiff has sued McNae under a breach of contract theory, under analogous circumstances, Florida courts look to whether a statement is "of and concerning" the plaintiff in analyzing whether a statement was defamatory or disparaging. *See Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. 1st DCA 1997) (collecting cases); *Rosenblatt v. Baer,* 383 U.S. 75, 81, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966)(a statement must be "specifically directed at the plaintiff" to be actionable).

The question of whether these social media posts were sufficiently "of and concerning" Fitzgerald, such that an average person would have concluded that Fitzgerald was implicated - is a question of fact. Additionally, a jury could find that by posting Statements 7 and 9. McNae was talking generally about her experience, which was a carveout to the confidentiality provisions. *See Agreement  § 4(A)* (noting that "[t]he McNaes may speak or write generically about their life events).

## IV.  There are triable issues of fact on Defendant's affirmative defense based on duress.

In its recent order, the Court denied Fitzgerald's motion to strike McNae's affirmative defense based on duress. (ECF No. 179, pp. 8-9). The affirmative defense asserts that McNae was suffering from PTSD and debilitating anxiety following Fitzgerald's sexual assault, which made it difficult for her to understand was she was being told to sign. (ECF No. 105, at 17).

Florida courts describe duress as "a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." *Williams v. Williams*,

939 So.2d 1154, 1157 (Fla. 2d DCA 2006) (quoting *Herald v. Hardin*, 95 Fla. 889, 116 So. 863, 864 (1928)); *see also City of Miami v. Kory*, 394 So. 2d 494, 497 (Fla. 3d DCA 1981) (Duress involves a "dual concept of external pressure and internal surrender or loss of volition in response to outside compulsion.") A party seeking to establish duress as a defense must show that: "(a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side." *Id.*; *see also Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, 901 F.3d 1294, 1301 (11th Cir. 2018).

"In determining whether a complainant acted under his or her own free will, a court should take into consideration all circumstances surrounding the transaction, including the age, sex, state of health and level of knowledge of the complaining party." *Smith v. Paul Revere Life Ins. Co*., 998 F. Supp. 1412, 1416 (S.D. Fla. 1997) (citing *Burton v. McMillan*, 52 Fla. 469, 42 So. 849, 851 (1907)).

In moving for summary judgment, Fitzgerald fails to address McNae's allegations concerning the PTSD and debilitating anxiety that McNae suffered from at the time the Agreement was signed. Instead, Fitzgerald focuses solely on McNae's contention that she could not afford the mental health treatment she needed, arguing that McNae cannot establish "economic duress." (ECF No. 171, p. 21). But McNae's duress affirmative defense is based on more – something the Court recognized in denying Fitzgerald's motion to strike. In denying Fitzgerald's motion, the Court found that McNae was *also* alleging that McNae was diagnosed with PTSD and suffered from debilitating anxiety that made it difficult for her to appreciate and understand what she was being told to sign.

(ECF No. 179, p. 9, quoting McNae's Answer at 17).  The Court denied the motion to strike on that basis. (Id.)

Fitzgerald's motion should be denied, because he does not support his argument with anything more than a conclusory statement that there is no evidence of duress. That argument is insufficient to prevail on summary judgment. Eli *Research, LLC v. Must Have Info Inc*., 2015 WL 5934632, at *3 (M.D. Fla. Oct. 6, 2015) ("In this instance, Plaintiffs merely state the above listed affirmative defenses have no evidence to support them. Based upon the Eleventh Circuit's ruling in *Four Parcels*, merely stating there is no evidence to support the affirmative defenses is not enough to prevail on summary judgment."); *Reed v. Royal Caribbean Cruises, Ltd*., 2021 WL 1348489, at *5 (S.D. Fla. Mar. 5, 2021) ("Here, Plaintiff merely makes a conclusory statement that "Defendant has put forth no evidence" to support its [affirmative defenses] …  The Court finds that Plaintiff's conclusory "no evidence" assertion is insufficient to sustain her burden of showing that Defendant cannot maintain these defenses by a preponderance of the evidence.").

McNae has presented a viable affirmative defense based on duress, as there is considerable evidence that McNae was suffering from PTSD and similar symptoms around the time the agreement was entered into. (MCNAE1233, 1234-35, 1820-1821, 1986-1987, 1990-1991, 1996, 2005; and MCNAE2036-2037).

The issue of whether McNae was sexually assaulted by Fitzgerald, a wrongful act that directly led to her financial and emotional distress, is a question of fact. McNae testified extensively about the details of that sexual assault. (McNae Dep., pp. 161-235; R. McNae Depo 49:13)("Do you believe you were raped by Mr. Fitzgerald?" A:

"Absolutely"); (R. McNae Depo 175:18) (A: "He grabbed it [my hair] and yanked it back, and forced himself onto me and started kissing me." "I ran away as far as I could off the main block and around the corner.")

And if proven, McNae's testimony could establish that the settlement agreement was signed under conditions of duress, thereby invalidating the agreement's enforceability. McNae has provided detailed testimony that Fitzgerald's conduct caused her significant psychological distress, compelling her to sign the agreement out of necessity rather than free choice. This testimony, if accepted by a jury, could demonstrate that the agreement was executed under improper pressure, effectively destroying her free will.

It is up to the trier of fact to determine whether McNae's distress amounts to duress. The Court should not substitute its judgment for that of the jury, especially where the evidence demonstrates a direct causal connection between Fitzgerald's wrongful act and McNae's resulting PTSD and anxiety.

## <u>CONCLUSION</u>

WHEREFORE, for these reasons, the Court should deny Fitzgerald's motion for partial summary judgment as to liability. Fitzgerald has failed to present evidence that he suffered damages proximately caused by the alleged breaches of the settlement agreement. The law is clear that to prevail on a motion for summary judgment, a plaintiff must prove more than just a breach; he must also demonstrate some actual damages stemming from that breach. Fitzgerald's inability to establish this essential element of his claim precludes the entry of summary judgment in his favor.

Dated this 9th day of September, 2024.     Respectfully submitted,

LAW OFFICES OF GOMEZ & GOMEZ
Attorneys for Defendant
4300 Biscayne Boulevard, Suite 305
Miami, FL 33137
(Tel.) 305-825-5506
(Fax) 305-825-2699
Designated Email:
Primary: richardgomez@rgpalaw.com
Secondary:pleadings@rgpalaw.com

BY: /s/ Richard M. Gomez
RICHARD M. GOMEZ
Fla. Bar No.: 987130

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 9th day of September, 2024, I electronically filed the foregoing document with the U.S. District Court. Notice will automatically be electronically mailed to all individuals who are registered with the U.S. District Court CM/ECF System

BY: /s/ Richard M. Gomez
RICHARD M. GOMEZ