IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:22-cv-22171-JEM

MICHAEL J. FITZGERALD,
Individually, and YELANY DE VARONA,
Individually

                Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

                Defendants.
_____/

**PLAINTIFF MICHAEL FITZGERALD'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

*Michael Fitzgerald v. R. McNae*
Case No. 1:22-cv-22171-JEM

Plaintiff, MICHAEL J. FITZGERALD ("Fitzgerald"), files this Reply in Support of his Motion for Partial Summary Judgment as to Liability for breach of contract (ECF 171) and states:

## INTRODUCTION

Over two years after this action was first commenced, eighteen (18) expert and fact depositions were taken, more than 11,000 pages of documents were produced, four continuances of the trial date, and over one year after the close of discovery, on August 12, 2024, Plaintiff moved for *partial* summary judgment *as to liability* alone against Defendant, Ronda McNae ("McNae") (ECF 171). Plaintiff's Motion comes after McNae admitted that she entered and breached the Confidential Settlement Agreement. There is no dispute as to any material fact.[1]

However, in an effort to defeat summary judgment, McNae tries to create an issue of fact by arguing that summary judgment is improper because Fitzgerald has not yet proved *damages* as a result of McNae's breaches (ECF 191). Since Fitzgerald is seeking *partial summary judgment as to liability* alone and asking for the *amount* of damages to be tried by jury, McNae's argument is incapable of defeating Fitzgerald's motion for partial summary judgment since a party seeking partial summary judgment as to liability alone need not prove the amount of damages at this time. Indeed, damages are presumed because McNae violated the non-disparagement provision.

While McNae argues that even though she authored numerous communications in 2022 in violation of the Settlement Agreement she entered in 2020, this Court should not consider those communications a breach of the parties' agreement because some of the recipients of those letters were already aware of McNae's accusations against Fitzgerald. However, the Settlement Agreement does not have a carve out for people that McNae had already communicated with prior to the Settlement Agreement. Instead, it specifically, clearly and unambiguously prohibits McNae from ANY communications about Fitzerald with ANYONE regardless of prior conversations, from the date of the Settlement Agreement into perpetuity (ECF 172-11). Moreover, the evidence shows that McNae disparaged Fitzgerald to numerous *additional* people at SoftwareONE and Microsoft, various media figures, and the public at large via the Internet.

McNae's argument does not hold water; she is bound by the agreement she negotiated at arms' length with her attorney. She received money and other consideration from Fitzgerald in

---

[1] Plaintiff's Statement of Material Facts was filed on Aug. 12, 2024 (ECF 172). Defendant's Response disputes some facts and accepts others (ECF 192). The undisputed facts which are relevant to this brief are paragraphs 29-31, 34-36, 38-40, 57-61 (ECF 172; ECF 192).

exchange for her promises to cease communicating with Fitzgerald's employer *or anyone else* about Fitzgerald.[2] In gross disregard for her contractual obligations, McNae continued to discuss, defame and disparage Fitzgerald (to people she previously communicated with[3] and numerous additional people). She now seeks a loophole to avoid the very liability she was aware to which she was exposed. McNae knew she was breaching the agreement and did so with flagrant disregard for the consequences, but now seeks protection from this Court. Partial Summary Judgment as to Liability is proper, as McNae's arguments do not defeat Plaintiff's Motion.

## ARGUMENT

McNae incorrectly argues that partial summary judgment is improper because Fitzgerald has not yet proved damages. She argues that Fitzgerald cannot prove he suffered any damages resulting from McNae's misconduct, and erroneously argues that there is no remedy for breaches of contract that do not result in damage. McNae incorrectly states, "[t]his is not a case where damages are readily apparent, and the only issue is the amount to be determined by a jury." (ECF 191 at p. 11). McNae's misunderstanding of the law cannot defeat Plaintiff's Motion for Partial Summary Judgment as to Liability, where, in fact, damages are readily available as a result of McNae's defamatory/disparaging remarks about Fitzgerald.

### A.     **Partial Summary Judgment Is Proper Even if Damages are Nominal**

A plaintiff moving for summary judgment as to liability *only* does not need to prove the specific amount of damages to prevail. *AmeriPath, Inc. v. Wetherington*, 2011 U.S. Dist. LEXIS 36389 at *17-18 (S.D. Fla. April 4, 2011). The plaintiff only needs to prove some amount of damage. *City of Miami Beach, Fla. v. Carner*, 579 So. 2d 248, 253 (Fla. 3d 1991). Due to the nature of McNae's breaches, damages are presumed; indeed, Plaintiff noted in his Motion for Partial Summary Judgment that only the *amount* of damages remains in dispute (ECF 171 at n. 2).

Even if a plaintiff cannot (or does not) prove any actual damages, he is entitled to at least nominal damages once it has been determined that a contract has been breached. *Walter Int'l*

---

[2] In her opposition, McNae quotes a portion of the Settlement Agreement as its confidentiality and non-disparagement provisions, but conveniently left out the paragraph regarding non-disparagement. *See* ECF 172-11 at ¶17.

[3] With respect to the individuals that were already aware of McNae's allegations, by bringing her false accusations up again two years later, buttressed by police reports that never amounted to a finding of probable cause in any jurisdiction, McNae amplified her defamatory accusations against Fitzgerald in an intensified effort to cause him reputation harm and ruin.

*Prods., Inc. v.* Salinas, 650 F. 3d 1402, 1418-19 (11th Cir. 2011); *Sevens v. Cricket Club Condo., Inc.,* 784 So. 2d 517, 519 (Fla. 3d DCA 2001). Thus, upon a finding of a breach of contract, damages are presumed. *Id.* "Nominal damages can be awarded when a legal wrong has been proven, but the aggrieved party has suffered no damages…or where, e.g., a contract has been breached, but for one reason or another recoverable damages were not proven." *Continuum Condo. Ass'n v. Continuum VI, Inc.*, 549 So. 2d 1125, 1127 (Fla. 3d DCA 1989).

In this case, Plaintiff sued McNae for breaching the Settlement Agreement which prohibited McNae from, among other things, (1) disclosing the existence of the agreement, (2) contacting Fitzgerald's then employer SoftwareONE, (3) speaking or writing about Fitzgerald directly or indirectly, and (4) making disparaging or negative comments about Fitzgerald. (ECF 172 ¶¶34-36, 38-40). McNae admitted that she disclosed the existence of the agreement to others (*Id.* ¶¶59-61). She admitted that she contacted SoftwareONE after the Settlement Agreement was entered (*Id.* ¶59). She admitted that she authored numerous letters, Instagram posts, and blogs about Fitzgerald directly and/or indirectly. (*Id.*) Finally, she admitted that she made disparaging comments about Fitzgerald to people she hadn't previously spoken to (*Id.* ¶61).

### B.    Damages for Disparagement Are Presumed

Plaintiff has met the burden of showing damage as a result of McNae's misconduct, which is what is required of a plaintiff seeking summary judgment for liability alone. *City of Miami Beach, Fla.* at 253. Plaintiff has met this burden as damages for disparagement are presumed. It is well established under Florida law that "[w]ords which are actionable in themselves, or *per se*, necessarily import general damages and need not be pleaded or proved but are conclusively presumed to result." *Bobenhausen v. Cassat Ave. Mobile Homes, Inc.*, 344 So. 2d 279, 281 (Fla. 1st DCA 1977). Defamation of a private person requires publication of a defamatory statement that is false and causes its subject actual damages. *Clowdus v. Am. Airlines, Inc.*, 2023 U.S. App. LEXIS 20232 at *8 (11th Cir. Aug. 7, 2023). In an action for defamation *per se*, a plaintiff need not prove special damages because *per se* defamatory statements are "so obviously defamatory" and "damaging to reputation" that their publication "gives rise to an absolute presumption of malice and damage." *Id.* (citing *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973).

Here, although the action is one of breach of contract, the *underlying* conduct constituting the breach is the tort of defamation *per se*. *Per se* defamatory statements are so "damaging to

[one's] reputation" that they "give rise to an absolute presumption both of malice and damage." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014) (accusing someone of committing a crime that may constitute a felony is defamation *per se* which impugns one's trade and profession). A statement that a person has committed a crime – such as rape – is one of the classic defamation *per se* categories – that is, the pleader need not allege specific damages to state a cause of action. *Scott v. Busch*, 907 So. 2d 662, 667 (Fla. 5th DCA 2005).

Because McNae's misconduct constitutes a violation of the non-disparagement provision of the Settlement Agreement, her conduct constitutes a breach and also a tort for which punitive damages are recoverable.[4] *Lawnwood Med. Ctr. V. Sadow*, 43 So. 3d 710 (Fla. 4th DCA 2010) (allowing punitive damages where party engaged in pattern and practice of destroying doctor's reputation, and finding defendant acted willfully and with express malice to harm doctor).

Under Florida law, general damages for defamation *per se* are "those which the law presumes must naturally, proximately, and necessarily result from the publication of the libelous matter. They arise by inference of law and are not required to be proved by evidence." *Miami Herald Publishing Company v. Brown,* 66 So. 2d 679, 680-81 (Fla. 1953). In short, damages are presumed to result from defamation *per se* and need not be proved. *Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495 (Fla. 1953). Defamation harms persons and reputations, and damages are presumed. *Lawnwood*, 43 So. 3d at 728.

In cases of defamation/disparagement per se, liability itself creates a conclusive legal presumption of loss or damage. *Id.* at 729 (jury may consider punitive damages even without any finding of an amount of compensatory damages). In summation:

> …Florida's unusually high protection of personal reputation derives from the common consent of humankind and has ancient roots. It is highly valued by civilized people. Our state constitution and common law powerfully support it. This is a value as old as the Pentateuch and the Book of Exodus, and its command as clear as the Decalogue: 'Thou shall not bear false witness against thy neighbor.' The personal interest in one's own good name and reputation surpasses economics, business practices or money. It is a fundamental part of personhood, of individual standing and one's sense of worth.

---

[4] This Court has already ruled that Plaintiff cannot sue McNae in both contract and tort pursuant to the independent tort doctrine (ECF 100).

*Id.* McNae had other legal remedies to seek relief against Fitzgerald. She could have, and did, file police reports against him. However, as of the date she entered the Settlement Agreement, she waived her right to freely discuss Fitzgerald with anyone other than mental health professionals, accountants, the IRS, attorneys, and law enforcement (ECF 172-11). By violating the Settlement Agreement, she intended to hurt Fitzgerald's good name and reputation. She admitted to doing so and cannot avoid liability by now falsely claiming he didn't suffer actual damages, when the evidence points clearly to the contrary and the law presumes damages for such reputational harm.

### C.     Plaintiff Seeks Compensatory and Punitive Damages

Fitzgerald seeks compensatory and punitive damages against McNae as a result of the immeasurable harm he has suffered because of McNae's ongoing, continuous, malicious and intentional breaches of the Settlement Agreement, especially the public disparagement accusing Fitzgerald of committing sexual assault and/or rape. (ECF 27 at ¶¶85, 94). Fitzgerald testified that such false accusations have affected him both professionally and personally, his career has been negatively affected as he was not able to maintain his job, has suffered reputational harm in his industry, as well as personal harm to his mental health and emotional wellbeing. (*Id.*).

Compensatory damages (also referred interchangeably as actual damages) aim to put the non-breaching party in the position he would have been in had a breach not occurred. *Rigby v. Capitol One Fin. Corp.,* 2024 U.S. Dist. LEXIS 160884 at *7 (M.D. Fla. Sept. 5, 2024); *Mid-Continent Cas. Co. v. Adams Homes of NW Fla. Inc.*, 908 Fed. Appx. 719 (11th Cir. April 29, 2020); *Verandah Dev., LLC v. Gualtieri*, 201 So. 3d 654 (Fla. 2d DCA 2016). The rule of damages for breach of contract are those damages which flow naturally from the breach, and which were foreseeable by the breaching party at the time the contract was entered. *William Scott,P.E. v. Rolling Hills Place*, 1997 F. App. Lexis 1386 (Fla. 5th DCA 1997). Fitzgerald is entitled to recover for the loss resulting from McNae's breaches, and any other damages that flow from the breach. *Bird Lakes Development Corp. v. Meruelo*, 626 So. 2d 234 (Fla. 3d DCA 1993).

Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable. *See* Restatement 2nd of Contracts §355. Defendant moved to dismiss Plaintiff's claim for punitive damages in her Motion to Dismiss, but it was not granted (ECF 39). Punitive damages are recoverable here.

*Michael Fitzgerald v. R. McNae*
Case No. 1:22-cv-22171-JEM

Fitzgerald testified at his deposition that as a proximate result of McNae's actions, he has been damaged "for the loss of income and potential loss of future income and emotional impact." (Fitz. Dep. 152:1-4).[5] He sought damages for " 'missed bonus payments' and potentially the ability to allow my business unit to perform for overachievement in stock payments [which] would easily outweigh that $450,000 amount in just monetary value before we discuss mental impact, health impact." (Fitz. Dep. 424:2-6). He further testified that as a proximate result of McNae's post-Settlement Agreement communications to SoftwareONE, which included copies of police reports she filed against Fitzgerald <u>after</u> the Settlement Agreement was entered, he was put on paid leave. (Fitz. Dep. 515:12-16). As a result of his leave, he "hadn't been in my employment for six months, which meant I couldn't achieve the bonuses because there's no way I could manage the business to hit the performance targets because I believe there was a false complaint made against me to SoftwareONE." (Fitz. Dep. 425:24 – 426:3). Fitzgerald further testified:

> My compensation was definitely affected. It's – it's not – it's not speculative. I didn't receive an end-of-year bonus, I didn't receive a Q3 and Q4 bonus. I didn't receive a PSU for the end of the year. I didn't receive a performance-related PSU uplift because of Goatpath's success. So that's not speculative.

(Fitz. Dep. 536:11-17).

> …there's very clear evidence to show I didn't receive that money. And that was because of the impact of me not being in the role and being successful in my role.

(Fitz. Dep. 537:2-5).

When testifying about the emotional damages suffered as a *proximate* result of McNae's misconduct and accusations of sexual assault, Fitzgerald testified:

> You'll never lose – you'll never lose the – the thought of somebody saying that about you. You'll – that will never leave your mind. If somebody said that – if one of my sisters or my family accused someone of that, the way it makes you feel, that's the lowest of low.
>
> It's – so that – the thought that people think that about me, that's never leaving me. That's never going away. The thought that when I fly here to do a meeting like this or when I fly out, does this lie become a thing that I get stopped in the airport? Does this – why do I get eight hours of anxiety on a plane before I come here? Why do I get, every time my phone rings and it says "Miami Beach," do I expect to see police at the end of it? Why do I have to ask my wife three or four

---

[5] Fitzgerald's Deposition Transcript is part of the evidence before the Court on this matter, as McNae incorporated the entire deposition transcript as part of her Opposition (ECF 191 at n. 3).

times is she sure she wants to have sex sometimes? Because I'm not quite sure where we are with it. Those things never leave. That's not leaving.

(Fitz. Dep. 497:13 – 498:6).

With respect to Statements 1 through 10, Fitzgerald testified having feelings of anxiety, shame, embarrassment, feeling sick to his stomach, and that he feels both the emotional impact and reputational impact of the public accusations made by McNae. (Fitz. Dep. 502-511).

The damages Fitzgerald suffered were foreseeable and consequential. The violation of the non-disparagement provision of the Settlement Agreement caused reputational harm. These damages were not only foreseeable to McNae, but they were <u>intended</u>. McNae stated that she wanted Fitzgerald "on the hook for restitution and the life I had been robbed of." (ECF 172-16). She wanted Microsoft and SoftwareONE to take action against Fitzgerald. (ECF 172-19; 172-22). She wanted the public to know via Instagram that she considered Fitzgerald a rapist and a sodomizer (ECF 172-20). The evidence shows that McNae set out to destroy Fitzgerald.

Recoverable damages are those that naturally result from a breach or are the consequences of special or unusual circumstances which are in the reasonable contemplation of the parties when making the contract. *K3 Enter., Inc. v. Sasowski*, 2022 U.S. Dist. LEXIS 234206 (S.D. Fla. 2022). Florida law dictates that damages are recoverable so long as the actual consequences of the breach could have reasonably been expected to flow from the breach. *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F. 2d 1520, 1532 n. 11 (11th Cir. 1985). Fitzgerald specifically told McNae he wanted to protect his privacy (ECF 172-3 at McNae 3477). Thus, McNae could expect emotional and reputational distress as foreseeable consequences of breaching the disparagement and confidentiality provisions. Indeed, when the nature of the contract is such that emotional distress is foreseeable, emotional damages will lie. *Sheely v. MRI Radiology Network, P.A.*, 505 F. 3d 1173, 1200 (11th Cir. 2007) ("not all contracts are purely commercial in their nature. Some involve rights we cherish, dignities we respect, emotions recognized by all as both sacred and personal. In such cases the award of damages for mental distress and suffering is…commonplace…"). Thus, a breached upon party may recover emotional damages whenever "the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." *Id.* (citing Restatement (Second) of Contracts §353).

Courts have embraced the idea that emotional damages may lie for breach of "personal" contracts. *Id.* "When we have a contract concerned…not with pecuniary aggrandizement but with

matters of mental concern and solicitude, then a breach…will inevitably, and necessarily result in mental anguish, pain and suffering…Far from being outside the contemplation of the parties, [emotional damages] are an integral and inseparable part of it." *Id.* (citing *Stewart v. Rudner*, 1957 Mich. LEXIS 358 (Supreme Court of Michigan 1957)). Here, the Settlement Agreement provides that "[t]he Parties agree to minimize contact upon execution of this Agreement." (ECF 172-11). It is obvious that Fitzgerald entered the Settlement Agreement with the intent that McNae would stop posting about him on the Internet, would stop contacting his employer, and would stop disparaging him from that day forward. (*Id.*). "It has long been held in Florida that one is bound by his contract." *Allied Van Lines v. Bratton*, 351 So. 2d 344, 347 (Fla. 1977).

McNae cannot avoid the consequences of her misconduct by now claiming Fitzgerald does not have actual damages where the record is replete with evidence of Fitzgerald's economic and emotional damages – the intended outcome of McNae's actions to destroy Fitzgerald.

    **D.**    **It is Undisputed that McNae's Breaches Were Material**

McNae argues that her breaches were not material. To constitute a vital or material breach, a party's nonperformance must "go to the essence of the contract." *Covelli Family, L.P. v. ABG5, LLC*, 977 So. 2d 749 (Fla. 4th DCA 2008). A party's failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach. *Id.* Here, McNae's communications disclosed the existence of the Settlement Agreement, violated the prohibition of contacting SoftwareONE, and disparaged Fitzgerald – these go to the very heart of the Settlement Agreement. Further, there is no dispute of material fact, where McNae admitted that she authored, posted and/or stated each of Statements 1 through 10 which form the basis of Plaintiff's breach of contract claim. (ECF 172 at ¶59; ECF 192 at ¶59).

    **E.**    **McNae's Defense of Duress Does Not Bar Entry of Summary Judgment**

Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and cause her to do an act or make a contract not of her own volition. *Cooper v. Cooper*, 69 So. 2d 881 (Fla. 1954). To demonstrate duress, a party must show (1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party. *Berman v. Kafka*, 518 Fed. Appx. 783, 785 (11th Cir. 2013). Duress requires there be a real, imminent or impending harm. *Lewis v. Sec'y Fla. Dept. of Corr.*, 2020 U.S. Dist.

LEXIX 93172 (M.D. Fla. 2020); *In re Chiquita Brands Int'l, Inc.*, 2022 U.S. Dist. LEXIS 239721 (S.D. Fla. 2022) (party was not responding to an imminent threat of harm). McNae claims that she suffered PTSD and anxiety that prevented her from understanding what she was being told to sign. (ECF 105). However, her defense of duress is not supported by any evidence. Instead, the evidence quite clearly supports that McNae had ample support to help her understand the Settlement Agreement – her attorney who negotiated on McNae's behalf with her input from April through June 2020 (ECF 172-9), her therapist who McNae shared the agreement with (ECF 172-10), and her boss/friend who helped her evaluate and negotiate certain terms of the agreement (*See* McNae 3503 to 3506, a copy of which is attached hereto as **Exhibit A**). These facts are undisputed. *See* ECF 172 at ¶¶29-31; ECF 192 at ¶¶29-31).

Moreover, the Settlement Agreement states, "[t]he parties have had an opportunity to seek independent legal advice with respect to their rights and asserted rights…" and "the terms and conditions contained herein have been negotiated, renegotiated and considered several times by the parties" (ECF 172-11 at ¶5A, ¶10). McNae's own therapy documents filed in support of her Response state that on the day <u>after</u> she signed the Settlement Agreement "she report[ed] relief." (ECF 193-4). Two years later, upon asking her therapist for her perception of McNae during the time period surrounding the Settlement Agreement, McNae's therapist did not recall specific perceptions but recalled McNae reporting "pressure" and "urgency" to make a decision – but not pressure or urgency from Fitzgerald (ECF 193-5), and made clear that she was "willing to educate but [could] not align or label." (ECF 193-6). McNae's feelings do not establish duress *as pressure is insufficient to set aside an agreement*. *Crupi v. Crupi,* 784 So. 2d 611 (Fla. 5th DCA 2001) (finding no duress where wife felt pressure and anxiety to sign mediated settlement agreement).

Thus, McNae cannot even meet the <u>first</u> element of duress since the evidence shows she voluntarily accepted the terms along with support from people she surrounded herself with in the days and months leading up to the Settlement Agreement. McNae also cannot establish the <u>second</u> element, that she had no other alternative but to sign the Settlement Agreement. *Berman*, 518 Fed. Appx. at 785; *Trudel v. Biotech*, 2022 U.S. Dist. LEXIS 200746 (M.D. Fla. 2022) (finding no duress since seeking legal relief was available in lieu of signing the settlement agreement). McNae fails altogether to allege any facts showing she had no choice but to sign the Settlement Agreement – in fact, in 2020, she could have gone to law enforcement authorities

instead of signing the Settlement Agreement and/or filed a civil action against Fitzgerald but chose not to. *Crupi*, 784 So. 2d at 613 (finding no evidence that party had to sign the agreement).

Finally, McNae cannot present any evidence as to the third element of duress - that the circumstances were the result of coercive acts of Fitzgerald. *Berman*, 518 Fed. Appx. At 785. McNae and Fitzgerald ceased communicating on May 4, 2020 – the Settlement Agreement was entered on June 15, 2020. (*See* McNae 002132 attached hereto as **Exhibit B**). Even if McNae was under duress, the duress could not have been caused by Fitzgerald as they were no longer in contact. McNae has not – and cannot – identify any improper conduct or imminent harm attributable to Fitzgerald. He was not legally obligated to pay for McNae's mental health counseling, but agreed to do so in exchange for, *inter-alia*, her promises to stop disparaging him, stop contacting his employer, stop posting about him on the Internet, stop talking about him, and to minimize contact with him going forward (ECF 172-22). In short, he wanted her out of his life.

The ultimate fact to be determined when duress is raised is whether the purported victim's will was so overcome as to deprive her of free choice. *Miami v. Kory*, 394 So. 2d 494, 497 (Fla. 3d DCA 1981). On the facts of this case, it is clear that McNae's actions were the product of her own free choice. The idea of the contract and NDA was initiated by McNae, much less forced upon her by Fitzgerald. *ECF 172-8* at McNae 2092, 2094, 2096 (suggesting the NDA); *Id.* (finding no duress where defendant initiated the agreement). There is simply no evidence McNae has presented that can invalidate the Settlement Agreement. *Trudel*, 2022 U.S. Dist. LEXIS 200746 at *9 (must be evidence of improper and coercive conduct by one party that resulted in the other party's signing the agreement involuntarily and not as an exercise of free choice or will).

McNae's claimed "debilitating anxiety" is not enough to establish that she signed the agreement out of necessity rather than free choice. "Mere mental weakness is insufficient to set aside an agreement if the person had sufficient intelligence to understand the nature and effect of the transaction and acted upon his free will. Feebleness of … mind does not…create a presumption of incompetence or authorize a court to set aside a contract." *Tomasic v. Eubanks*, 2018 U.S. Dist. LEXIS 113432, *11 (M.D. Fla. 2018). McNae relied on her lawyer, therapist, boss/friend, and husband. There is not a scintilla of evidence that Fitzgerald imposed any improper external pressure or influence that destroyed McNae's free will.

For the foregoing reasons, partial summary judgment as to liability is proper for Plaintiff.

*Michael Fitzgerald v. R. McNae*
Case No. 1:22-cv-22171-JEM

Dated: September 16, 2024                     Respectfully submitted,

                                          **ASSOULINE & BERLOWE, P.A.**
                                          Miami Tower
                                          100 SE 2nd Street, Suite 3105
                                          Miami, Florida 33131
                                          Telephone: (305) 567–5576
                                          Facsimile: (305) 567–9343

                              By:    /s/ Meredith J. Gussin
                                          Peter E. Berlowe
                                          Florida Bar No. 143650
                                          Meredith J. Gussin
                                          Florida Bar No. 0512303
                                          *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this 16th day of September 2024 to all parties of record as well as to Defendant William McNae at prose.wmcnae@gmail.com.

                                            By:    /s/ Meredith J. Gussin
                                                           Meredith J. Gussin

# EXHIBIT A

**Date : 5/4/2020 1:25:34 PM**
**From : "Tami Wakasugi" t.wakasugi@me.com**
**To : "Ronda Herd-McNae" rondamcnae@gmail.com**
**Subject : Re: Latest Settlement offer**

Is Max Meyers your attorney?  And what he sent you is what "the guy"'s attorney sent to him?

Tami
425-922-2949
t.wakasugi@me.com

On May 4, 2020, at 10:16 AM, Ronda McNae <rondamcnae@gmail.com> wrote:

---

**From:** Max Meyers <max@maxmeyerslaw.com>
**Sent:** Monday, May 4, 2020 9:19 AM
**To:** rondamcnae@gmail.com; Will McNae
**Subject:** Latest Settlement offer

Hi Ronda & Will,

Last Wednesday we made a counter offer at $110,000, with a 5,000 penalty for breach of NDA, with ability to continue speak with mental health counselor, account and attorney as needed. Below is there response. They are insisting on the large penalty for breach of the NDA and no talking about it at all even without reference to him in any way. Take a look and we can discuss.

In response to your settlement email below, we will need to make the following changes:

1. The $110,000, less $3,000.00 already paid, is agreeable.  I believe $1,500 is on autopay for this week, so if that happens, the total will be less that as well.
2. If it is going to be a lump sum, we need to make the pay by date June 15, 2020, as Mr. Fitzgerald will have to liquidate and transfer some assets out of a retirement account.
3. The liquidated damages if either of the McNae's breaches cannot be $5,000.  The can't get nearly double the previously agreed amount, and then they can just turn around and breach for a *de minimus* $5,000 damage.  The liquidated damage needs to be far closer to the damage they would be causing Mr. Fitzgerald if they breach.  Moreover, this should not matter to them if they don't intend to breach.  $250,000 liquidated damage if the McNae's breach is the lowest Mr. Fitzgerald will consider, and it must be joint and several.  If one breaches, they both breach.  Liquidated damage to be enforced by later suit for damages if necessary.  The McNaes do not need to return the settlement funds received if they breach.  If the McNaes generate income off their breach of the agreement, all funds earned of their breach of the agreement shall be property of Mr. Fitzgerald, and subject to a damages claim to be enforced by later suit for damages in addition to the liquidated damages.
4. The McNaes must remove the internet posts they have put on the internet about this incident, directly or indirectly, with or without reference to Mr. Fitzgerald by name.
5. If Mr. Fitzgerald breaches the confidentiality/non-disclosure, then the confidentiality/non-disclosure will be void and dissolved as to the McNaes is agreeable, so long it is upon notice

MCNAE 003503

      with fifteen (15) business days to seek injunctive relief if Mr. Fitzgerald feels he made no such disclosure, or if such disclosure was pursuant to law or court order.
6. An agreed statement that all parties can state to people already involved. "The matter has been resolved and I cannot speak any more about it" or something similar is agreeable to Mr. Fitzgerald.
7. Mr. and Ms. McNae, as well as Mr. Fitzgerald, may continue discuss the matter with their respective mental health professionals, but will advise the professionals of NDA and that counselor must follow NDA as well. Same will apply to legal or tax counsel.

*Max Meyers*
Max Meyers Law PLLC
11714 N. Creek Pwy. N., Suite 125
Bothell, WA 98011
425.485.2454
425.485.2467 fax
mailto:max@maxmeyerslaw.com
www.MaxMeyersLaw.com
www.MaxPowerLaw.com

**CONFIDENTIALITY NOTICE**

The information contained in this email message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you have received this email message in error, please notify the sender via email or telephone at (425) 242-5595 and do not read the contents. If there is an attachment to this email, you are not authorized to open the attachment or read the contents unless you are the intended recipient. No waiver of the attorney client privilege or work-product privilege is intended if this email is sent to an unintended or unauthorized. All Max Meyers Law PLLC attorneys are licensed to practice law in Washington and do not intend to give legal advice to anyone with legal matters not involving Washington law or federal law.

MCNAE 003504

**Date : 4/30/2020 2:45:02 PM**
**From : "Ronda McNae" rondamcnae@gmail.com**
**To : "Tami Wakasugi" t.wakasugi@me.com**
**Subject : Fwd: Ronda - NDA**

Here's what will wants to add .... what are your thoughts?

---

**From:** Will McNae <wimcnae@microsoft.com>
**Sent:** Thursday, April 30, 2020 11:29:39 AM
**To:** Ronda McNae <rondamcnae@gmail.com>
**Subject:** Ronda - NDA

Ronda – here are my initial thoughts to share with Max for help crafting the NDA in a favorable way:

- We reserve the right to speak about the emotional and traumatic impact this experience has had on our lives in general terms publicly (blog, public speaking, book).
- We will honor the request for secrecy for individual's name and all other PII.
- We reserve the right to continue speaking with our counselors in confidence.
- We reserve the right to speak with family members who already know details about this experience in confidence.

Will McNae

Microsoft | Partner Technology Strategist – OCP Technical | (425) 707-0950

MCNAE 003505

**Date : 4/30/2020 3:14:24 PM**
**From : "Tami Wakasugi" t.wakasugi@me.com**
**To : "Ronda Herd-McNae" rondamcnae@gmail.com**
**Subject : Re: Ronda - NDA**

Again, do not agree to anything until you have peace about it. God's gift to us to let us know what we are to do is peace - Philippians 4:7

- We reserve the right to speak about the emotional, physical and traumatic impact this experience has had on our lives in general terms publicly (no limited to blog, public speaking, book, etc.) and privately.
- We will honor the request for secrecy privacy for individual's name and all other PII. (What is PII - People involved? That might be too broad. I would list specific names.)
- We reserve the right to continue speaking with our counselors in confidence.
- We reserve the right to speak with family members and trusted friends, family, professionals who already know details about this experience in confidence.

Has he admitted some guilt or declaring innocence in this? Because it would seem that if he is requesting an NDA, then that is sort of an admission of guilt. ☐☐☐☐☐♀☐

My suggestions are just what came to mind right off the bat.

Tami
425-922-2949
t.wakasugi@me.com

> On Apr 30, 2020, at 11:45 AM, Ronda McNae <rondamcnae@gmail.com> wrote:
>
> - We reserve the right to speak about the emotional and traumatic impact this experience has had on our lives in general terms publicly (blog, public speaking, book).
> - We will honor the request for secrecy for individual's name and all other PII.
> - We reserve the right to continue speaking with our counselors in confidence.
> - We reserve the right to speak with family members who already know details about this experience in confidence.

MCNAE 003506

# EXHIBIT B

| | | | |
|---|---|---|---|
| Ronda McNae | [Number Unknown] | 2/27/2020 18:36 | Alright, Will's gonna reach out. I'm to keep this from escalating. I spoke to someone today who can help us do this in writing/contract. |
| MF | +1 786-858-5212 | 2/27/2020 19:12 | I actually don't know. I was brutally vulnerable, it almost broke me in half but I don't know how he felt |
| MF | +1 786-858-5212 | 2/27/2020 19:13 | I offered to leave my job and I meant it. If it makes it better for him |
| Ronda McNae | [Number Unknown] | 3/1/2020 16:28 | Should I have texted that on this thread? Sorry 🤦🏽‍♀ |
| MF | +1 786-858-5212 | 3/1/2020 16:30 | Texted what? |
| Ronda McNae | [Number Unknown] | 3/6/2020 8:55 | Hey, although I have some deep not so lovely feelings about you... know at the end of the day... I want you whole, happy, and healthy |
| Ronda McNae | [Number Unknown] | 3/6/2020 8:59 | I apologize for going off the other day on the phone. Between Will & I, we listed every lie you have told.

While you tell Yelany you didn't see a relationship with me (which is why you felt ok not telling the truth/or confessing you were lying) ...
I know it's how you deflect, minimize, and rationalize your deeply rooted struggles.

Fitz, I used to lie ALL the time growing up. It somehow helped me dodge my reality. Something eventually switched in me... (another story) but I want you healed and made new. Honestly |
| Ronda McNae | [Number Unknown] | 3/6/2020 9:01 | I told Yelany yesterday on a phone call... in the end... you are human and broken - WE ALL ARE - but I'm no more deserving of forgiveness and grace than you. And I believe that |
| Ronda McNae | [Number Unknown] | 3/6/2020 9:04 | Honest to God, I think you should consider a 30 day stay at onsite. Would you mind if I passed your number along to the gal that helped me through the process? Honestly, I would even go for extra healing so you had a familiar face there. Anyways, just know I don't hate you. I want you healthy |
| MF | +1 786-858-5212 | 3/6/2020 9:08 | Thank you for your message. That means a lot to me. I have to take some time for me. Can I ask you that you leave me and Yelany be, so that I can spend some time doing the right thing? I have a lot of things to overcome. TY x |
| Ronda McNae | [Number Unknown] | 3/6/2020 9:18 | I understand. Just felt like you should know these thoughts so you can carry it through your healing. Yelany and I have become pretty good friends through this. If she reaches out, I'll never dismiss her. I understand where you're coming from though. |
| Ronda McNae | [Number Unknown] | 3/6/2020 9:19 | Any future conversations, I'll have Will handle it. I just wanted you to know that I wish you well |
| MF | +1 786-858-5212 | 3/6/2020 9:20 | I also wish you both the best happiness and love |
| Ronda McNae | [Number Unknown] | 3/11/2020 20:00 | We will respond tomorrow with our response to what's above. A bit odd how you now want details of the pregnancy as if you had to cover any costs revolving around it. I had an old text stating I want you to cover the cost of counseling because the pain you've caused, knowingly within my marriage and family. Sounds like we need to consider a few other things now moving forward so I asked for some advise and it was something that came up. Of course you need to consider what you believe is right. I'm trying to be open and cover the costs you asked me to cover. I said I would |
| MF | +1 786-858-5212 | 3/11/2020 20:10 | do my best financially to cover it like you asked, that's what I've proposed. Spk tomorrow. |
| Ronda McNae | [Number Unknown] | 4/10/2020 15:25 | Hey, not sure Wills gonna respond FYI! We are at odds |
| MF | +1 786-858-5212 | 4/10/2020 15:28 | Ok. What do you want me to do? |
| MF | +1 786-858-5212 | 4/10/2020 15:29 | I want to get this agreement in place, so that we can all move forward |
| Ronda McNae | [Number Unknown] | 4/10/2020 15:33 | Not sure there's anything you can do |
| MF | +1 786-858-5212 | 4/10/2020 15:35 | I don't understand? You want to stop moving forward with the agreement? |
| Ronda McNae | [Number Unknown] | 4/10/2020 15:38 | No I'm saying I can't speak for Will or get any answer out of him |
| Ronda McNae | [Number Unknown] | 4/10/2020 15:39 | Sorry didn't mean to bother on a separate thread... just letting you know of the circumstances |
| MF | +1 786-858-5212 | 4/10/2020 15:40 | Ok. Should I just wait? Or call him? What do you think? |
| Ronda McNae | [Number Unknown] | 4/10/2020 15:52 | Either? |
| MF | +1 786-858-5212 | 4/10/2020 15:53 | I'll message him later tonight if he doesn't reply and ask if he wants to talk. I don't want to cause any more problems |
| Ronda McNae | [Number Unknown] | 4/10/2020 16:59 | Does he need to be on the agreement? |
| MF | +1 786-858-5212 | 4/10/2020 18:54 | I don't understand why you'd ask that |
| Ronda McNae | [Number Unknown] | 4/10/2020 18:56 | Ha just kidding 🤦🏽‍♀ wasn't thinking |
| Ronda McNae | [Number Unknown] | 5/4/2020 17:07 | I really hoped this was coming to an end. I'm not signing the agreement on the terms your lawyer provided.

I'm not sure who you think I am but I wouldn't sign that agreement for a million dollars.

I will never give up my right to help educate women on things I've learned that could keep others from falling into similar circumstances.

Wanted you to hear it directly from me. |
| MF | +1 786-858-5212 | 5/4/2020 17:59 | Please allow the attorneys to discuss your wishes. I will not receive any more messages from your number. Thank you |
| Ronda McNae | [Number Unknown] | 5/4/2020 18:00 | Great. I'm not agreeing |

MCNAE 002132