**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MICHAEL J. FITZGERALD,
individually, and YELANY DE                    CASE NO. 1:22-cv-22171-JEM
VARONA, individually,

      Plaintiffs,

v.

RONDA MCNAE, individually,
and WILLIAM MCNAE, individually,

      Defendant.

_____/

> FILED BY____MC____D.C.
>
> **OCT 07 2024**
>
> ANGELA E. NOBLE
> CLERK U.S. DIST. CT.
> S. D. OF FLA. - MIAMI

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINIONS

      Defendant, Ronda McNae, filing this motion Pro Se because of withdrawal of counsel on October 2, 2024, hereby files this Reply in support of Defendant's pending Motion to Exclude Expert Opinions (ECF No. 188).

      It is also critical to address that Plaintiff Michael Fitzgerald was involved in a separate litigation, *Jane Doe v. SoftwareONE*, **Exhibit A** (pages 14-36), **Exhibit B**, and **Exhibit C**, which involved serious allegations of gender discrimination and retaliation against him. This case, which predates the events in this litigation, was never disclosed by Fitzgerald, his agents, or SoftwareONE during the course of discovery. The failure to reveal Fitzgerald's involvement in the *Jane Doe* litigation raises substantial concerns, as this case directly affects key issues relevant to the current dispute, including Fitzgerald's performance evaluations, bonus eligibility, reputational harm, and potential biases.

      First, the *Jane Doe* case impacted how Fitzgerald was perceived within SoftwareONE, influencing his performance reviews and subsequent bonus eligibility. Such information is directly relevant to the Plaintiff's claims of lost bonuses and financial damages, yet none of this was disclosed in this case by the subpoena to SoftwareONE, interrogatories or discovery by Fitzgerald, nor provided to the experts relied upon by the Plaintiff. Without this information, the Plaintiff's

1

experts — Sheri Fiske, Dr. Robert DiTomasso, and Dr. Kim Fromme — have formulated their opinions based on incomplete and potentially misleading data. Their failure to account for the impact of the *Jane Doe* case renders their testimony speculative, unreliable, and inadmissible under Daubert.

Moreover, the undisclosed litigation speaks to Fitzgerald's potential reputational harm. Any conclusions drawn by the experts about Fitzgerald's employability and reputation fail to consider the significant impact that his involvement in *Jane Doe v. SoftwareONE* could have had on his standing both within the company and within the broader industry. Given the serious nature of the allegations in that case, Dr. DiTomasso's opinions regarding Fitzgerald's reputation and employability are flawed because they ignore the fact that Fitzgerald's reputation was already under scrutiny in connection with his conduct at SoftwareONE. Similarly, Sheri Fiske's conclusions about Fitzgerald's future earnings potential fail to account for the *Jane Doe* case's likely impact on his performance evaluations and standing within the company. Without considering these factors, Fiske's financial projections are speculative and unreliable.

Finally, the failure to disclose the *Jane Doe* litigation suggests potential biases in Fitzgerald's recollection and behavior during the relevant events. Dr. Fromme bases her conclusions about memory reconstruction and hindsight bias on limited facts provided by Fitzgerald himself, without taking into account how his involvement in *Jane Doe v. SoftwareONE* may have influenced his behavior and memory. Such a significant omission undermines the credibility of the Plaintiff's experts and calls into question the reliability of their conclusions. This omission should also undermine the credibility of Fitzgerald, his legal representation, and the respondent SoftwareONE.

The non-disclosure of this separate litigation raises grave concerns about the completeness and reliability of the Plaintiff's expert testimony. By omitting these critical facts, the Plaintiff has prevented its own experts from considering key factors that directly impact their analysis. As a result, the testimony provided by the Plaintiff's experts is incomplete, speculative, and inadmissible under Daubert standards.

## ARGUMENT IN REPLY

### I.    Fiske's Methodology was fundamentally flawed and requires exclusion.

McNae's motion does not challenge Fiske's credentials or qualifications as a forensic accountant. Instead, her motion focuses on the reliability and methodology of Fiske's opinions. The Eleventh Circuit has recognized that qualifications alone do not ensure admissibility—experts must also employ reliable methodologies. *Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010)(noting that an expert's qualifications is just one of a "rigorous three-part inquiry" that courts engage in when performing their "gatekeeping" function). Although Fiske's credentials are not in dispute, her process for forming opinions about damage is crucial and must be scrutinized for reliability under *Daubert* standards.

Fitzgerald argues in his response that McNae's challenge to Sheri Fiske's methodology is insufficient to justify exclusion because McNae does not dispute the use of a reliable formula, only the values Fiske input into that formula. *P's Resp, p. 9*. But Fitzgerald's defense of Fiske's methodology overlooks a critical requirement under *Daubert*—that expert testimony must be based on both scientifically valid principles and reliable application of those principles to the specific facts of the case. *United States v. Frazier*, 387 F.3d 1244, 1261-62 (11th Cir. 2004); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003)("our caselaw plainly establishes that one may be considered an expert but still offer unreliable testimony.") Even if Fiske applied a seemingly reliable formula, the failure to base her calculations on correct, relevant data renders her methodology flawed and inadmissible.

Although Fiske claims she lacked access to key information — such as SoftwareONE's Global Compensation Framework, specific performance data, and critical HR details related to the *Jane Doe v. SoftwareONE* case — her failure to investigate further renders her conclusions speculative and unreliable. This case involved allegations of gender discrimination and retaliation against Fitzgerald, which likely influenced his performance reviews and bonus eligibility. Fiske did not investigate whether these HR issues or complaints were reflected in Fitzgerald's

performance evaluations, a crucial element for determining whether he met the necessary performance targets for his bonuses in 2022-2023. Courts have routinely excluded expert testimony based on incomplete or speculative data (McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004)). Without considering these performance issues, her analysis remains unreliable and unsupported by objective evidence.

Fiske did not apply SoftwareONE's own performance-based bonus calculation methodology, which was central to determining whether Fitzgerald would have received his target bonuses. Instead, she relied on Fitzgerald's subjective belief about his bonus eligibility, which is not a sufficient basis for expert analysis. As Fiske admitted in her deposition, she did not know what the agreed-upon performance goals were for Fitzgerald to earn his full target bonuses in 2022-2023; she did not know whether those targets were met; and she did not analyze company revenue or profit numbers to formulate her conclusions. (Fiske Dep. 67:18-70:15; 76:17-78:2.) Fiske also did not review or use the company's Global Compensation Framework in her analysis. (Fiske Dep. 67:7-17; 69:24-70:15.)

This absence of critical information undermines the reliability of her calculations and violates *Daubert*'s requirement that an expert opinion must rest on more than speculation or unverified assumptions. *Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005).

### A. Fiske's Assumptions Are Unsupported by Any Objective Evidence

Fitzgerald argues that Fiske's assumptions about his bonus eligibility were based on "reasonable inferences from historical data and projections" (P's Resp. p. 5). Fiske's assumptions are built upon unverified data and subjective beliefs provided by Fitzgerald, making her testimony inadmissible under *Daubert*. Expert opinions must rely on independently verified and objective data (*Martinez v. Rabbit Tanaka Corp.*, 2006 WL 5100536 at *14 (S.D. Fla. 2006)).

Fiske's failure to analyze SoftwareONE's bonus framework or review the company's Global Compensation Framework directly violates the principles of reliability required under Daubert. Her testimony relies on unverified assumptions rather than sound methodology, as

4

required for admissibility under case law, such as City of Miami v. United States, 115 F.3d 870, 873 (11th Cir. 1997). Moreover, Fitzgerald himself testified that he had no knowledge of whether he would be eligible for full quarterly or annual bonuses in 2022, as he had not seen the relevant performance targets (Fitzgerald Dep. 520:21-521:13). Therefore, Fiske's opinion on Fitzgerald's bonus eligibility is speculative and based on unsubstantiated assumptions, which courts consistently exclude as unreliable.

Fiske's omissions are further compounded by her failure to review critical financial data, including SoftwareONE's Global Compensation Framework, which governs bonus calculations. She also neglected to analyze the company's financial performance for 2022-2023, necessary for determining whether Fitzgerald met the performance targets required for his bonuses (Fiske Dep. 67:7-17; 69:24-70:15). These critical gaps in her analysis render her conclusions speculative and unreliable under Daubert, as they are based on incomplete and unverified data.

Fitzgerald suggests that any discrepancies in Fiske's methodology should be resolved through cross-examination (P's Resp. p. 9). However, this overlooks the court's responsibility under Daubert to act as a gatekeeper, ensuring that expert testimony is not only relevant but also reliable before it is presented to the jury. While cross-examination is a tool for challenging testimony, it cannot compensate for an expert's failure to apply a reliable methodology in the first place (McDowell, 392 F.3d at 1299).Brown, 392 F.3d 1283, 1299 (11th Cir. 2004)("[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive.")(citing Daubert II, 43 F.3d at 1315–16).

### B. Fiske's Methodology for Determining Fitzgerald's Lost 2022/2023 Bonuses is Flawed.

In his response, Fitzgerald argues that Fiske's opinion that Fitzgerald would have received his 2022/2023 bonuses is proper, because the analysis is based on Fitzgerald's historical compensation, which showed consistent growth over time. *P's Resp, p. 6.* Fitzgerald asserts that

because his income increased significantly from £198,467 in 2016/2017 to £354,260 in 2021/2022, this supports the assertion that his bonuses were on a similar upward trajectory. *P's Resp, p. 6.*

Fiske's reliance on historical data and trajectory is insufficient to establish damages for lost bonuses for 2022/2023 - because historical earnings do not guarantee future bonus eligibility. As explicitly stated in Fitzgerald's employment contract, he had no contractual right to any bonus, and bonuses were entirely discretionary, subject to SoftwareONE meeting company performance targets (Fitzgerald Dep. 305:24-306:5; Fiske Dep. 69:19-71:7). Fiske also admitted during her deposition that she did not know the performance targets for 2022/2023 and had not reviewed the company's financial performance to determine whether the targets — nor Fitzgerald's performance or quarterly reviews had been met (Fiske Dep. 67:18-70:15). Without knowing the agreed-upon performance goals for 2022/2023 or whether those goals were met, Fiske's assumptions about Fitzgerald's bonus trajectory are speculative and unreliable.

Fiske's reliance on the growth rate of his income to predict future bonuses is flawed, because bonuses are not awarded based on salary growth. As Fitzgerald's employment contract and testimony show, bonus payments were discretionary and depended on SoftwareONE's performance, not on Fitzgerald's historical salary increases (Employment Contract § 8.1; Fitzgerald Dep. 306:10-308:7). Even if his salary increased, that fact alone does not mean he would automatically receive a full bonus in 2022/2023.

Moreover, Fiske's methodology did not take into account the actual metrics used to determine bonuses. Fitzgerald's 14% growth rate in salary does not correlate with SoftwareONE's performance targets, which were the primary determinants of his bonus payments. Fiske's failure to analyze whether the company met those targets in 2022/2023 renders her calculation speculative, which is grounds for exclusion under *Daubert*.

Fitzgerald also contends that the March 2022 "Salary Review" letter, which adjusted his salary to £330,000 and promised £100,000 in quarterly bonuses and £120,000 in annual bonuses, supports Fiske's calculation of lost bonuses. *P's Resp, p. 7.* The Salary Review letter, however, does not guarantee that Fitzgerald would have received the full bonuses in 2022/2023. As

confirmed in his employment contract, SoftwareONE had full discretion over whether bonuses were awarded and in what amount (Employment Contract § 8.1). The letter only outlines a potential bonus target, contingent upon the company's performance and Fitzgerald meeting agreed-upon goals, neither of which Fiske investigated or confirmed. Again, Fiske admitted during her deposition that she did not know the specific performance targets for 2022/2023 or whether they had been met. (Fiske Dep. 67:18-70:15; 76:17-78:2).

In his response, Fitzgerald blames this evidentiary deficiency on SoftwareONE, arguing that Fiske did not speak to anyone at SoftwareONE because it is a publicly traded company "that likely would not have provided any information to her other than the dates of Fitzgerald's employment." *Resp, p. 9*. Fiske apparently did not even try. And Fitzgerald had the full breadth of federal discovery at his disposal to obtain the information his expert needed to substantiate these opinions. Fitzgerald could have obtained that information from SoftwareONE and provided it to his expert, and he cannot use SoftwareONE's *perceived* refusal to communicate with Fiske as a shield for Fitzgerald's own shortcomings.

### C. Fiske's methodology for calculating Fitzgerald's claim of lost PSUs was flawed.

In his response, Fitzgerald argues that Fiske's opinions concerning Fitzgerald's lost PSUs is proper, because Fiske updated her damages calculations after her initial report. *P's Resp, pp. 10-11*. Fiske's supplemental opinion, submitted post-deadline, constitutes an impermissible attempt to 'fix' a fatally flawed original report. Courts have consistently held that supplementation cannot serve as a method to correct fundamental flaws in expert analysis or add new conclusions (*R & R Intern., Inc. v. Manzen, LLC,* 2010 WL 3605234, at *11 (S.D. Fla. 2010)). The revision, based on an email from SoftwareONE received on June 6, 2023, just one day before Fiske's June 7, 2023 deposition, reflects an untimely "supplemental" opinion that fails to meet the required standards for expert testimony under *Daubert. See All-Tag Corp. v. Checkpoint Sys., Inc.,* 2019 WL 5073499, at *3 (S.D. Fla. Oct. 9, 2019)(holding that "[p]arties thus cannot abuse Rule 26(e) and use a supplemental report to merely bolster a defective or problematic expert witness report" and

that "Rule 26(e) is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy.")(internal quotations omitted). Fiske failed to conduct any independent verification of the email data she copied, admitting that she did not perform any mathematical checks to confirm the figures she presented (Fiske Dep. 105:11-23). Such uncritical adoption of unverified data renders her testimony inadmissible.

As Fiske admitted in her deposition, she simply copied and pasted numbers from the email without performing any independent analysis or verification of the data. (*See Ex. 161* (June 6, 2023 email); *Fiske Dep. 105:11-23*: "Q. How do you know that the lost PSUs were calculated correctly if you have not done the math to see if it was prorated correctly? . . . [A]: *I would have to calculate it to confirm it.*") (emphasis added).

Courts have excluded similar supplemental expert reports served after the deadline when they lack a reliable methodology and are based on unverified third-party information. *Martinez v. Rabbit Tanaka Corp. Ltd.*, 2006 WL 5100536, at *14 (S.D. Fla. Jan. 6, 2006).

Fiske's methodology in calculating the lost PSUs was flawed because she did not perform any independent verification of the figures provided by SoftwareONE. During her deposition, Fiske admitted that she did not calculate whether the PSU reduction was accurate or prorated correctly (Fiske Dep. 105:11-23). Instead, she relied entirely on the June 6, 2023, email from SoftwareONE without performing her own calculations. Moreover, Fiske's failure to understand the basis for the PSU reduction further undermines her reliability. She admitted that she did not know why SoftwareONE reduced Fitzgerald's PSUs, or how the company calculated the new figures, or what date the PSUs were prorated. (Fiske Dep. 18:1-20:14; 85:12-89:6; 104:17-105:9). In short, Fiske did not know even the most basic facts to allow her to express a reliable opinion to a jury about the PSUs. *See In re Trasylol Products Liab. Litig.*, 709 F. Supp. 2d 1323, 1338 (S.D. Fla. 2010) ("merely restat[ing] an e-mail . . . to support [and expert's] opinion" "lacks any expert analysis" and should be excluded).

8

**II.     DiTomasso's Testimony Should be Excluded**

In his response, Fitzgerald argues that Dr. DiTomasso is qualified to testify about Fitzgerald's psychological wellbeing, including the psychological impact of reputational harm and employability, based on his 30 years of professional experience and generally accepted practices in psychology. *P's Resp, pp. 14-15.*

While Dr. DiTomasso may have experience as a psychologist, his qualifications do not extend to the areas of reputational harm and employability, which fall outside his expertise. As admitted during his deposition, DiTomasso has no specialized knowledge in the technology sector or the field of employability assessments (DiTomasso Dep. 26:11-14, 26:15-25). He conceded that he is not an occupational therapist and lacks training or experience in evaluating whether an individual is employable in the technology field or assessing their future career prospects (DiTomasso Dep. 143:7-17).

Dr. DiTomasso's testimony regarding Fitzgerald's reputational harm and employability is fundamentally flawed because he failed to consider the *Jane Doe v. SoftwareONE* case, which involved serious allegations of gender discrimination and retaliation. These allegations, and the subsequent litigation, would have likely affected Fitzgerald's standing in the company and his broader employability within the tech industry. Courts have consistently excluded expert testimony when the expert's opinions extend beyond their area of expertise. *Watson v. K2 Design Grp.*, 2016 WL 11783284, at *4 (S.D. Fla. Aug. 9, 2016). Dr. DiTomasso's lack of qualifications in these areas means his testimony regarding reputational harm and future employability should be excluded as unreliable under *Daubert*.

And while DiTomasso may have used "reliable" psychological tools, such as the Millon Clinical Multiaxial Inventory and the Symptom Checklist 90 to assess Fitzgerald's mental health – those tools do not provide a reliable foundation for assessing reputational harm or future employability. As DiTomasso admitted, his conclusions about Fitzgerald's employability and the effects of reputational harm were not based on any specific vocational assessments or an understanding of the technology industry (DiTomasso Dep. 141:17-142:23). Despite claiming to

base his conclusions on psychological assessments, Dr. DiTomasso admitted that his opinions regarding employability and reputational harm were not based on vocational assessments or any specific methodology. Instead, he followed Fitzgerald's subjective beliefs and employed 'rational common sense' (DiTomasso Dep. 145:10-16). When asked if any methodology was employed to reach his opinion, he said he employed "[r]ational common sense." (DiTomasso Dep. 146:10-14.)

Courts exclude expert testimony when the expert's methodology is not adequately tied to the facts at issue or when their conclusions are based on "common sense" rather than specialized knowledge. Such reliance on subjective beliefs rather than scientific principles renders his testimony speculative and unreliable under Daubert. *Grupo Televisa S.A. v. Telemundo Communications Grp.*, 2008 WL 125601, at *2 (S.D. Fla. Jan. 7, 2008) (experts "common sense" conclusions regarding Plaintiffs' damages calculations do not qualify as admissible expert testimony under Fed. R. Evid. 702)

Fitzgerald also argues that DiTomasso's conclusions on future employability and reputational harm are based on sound psychological testing, clinical evaluations, and observations, rather than mere "common sense." *P's Resp, pp. 18-19*. Contrary to Fitzgerald's argument, DiTomasso admitted during his deposition that his opinions on future employability and reputational harm were based on common sense rather than any specific methodology. When asked about his qualifications to opine on employability, DiTomasso conceded that he had none and stated that he simply followed Fitzgerald's own logic (DiTomasso Dep. 141:17-142:23).

Ultimately, DiTomasso's lack of an independent vocational assessment and his reliance on Fitzgerald's beliefs about his reputation and employability render DiTomasso's testimony unreliable and unhelpful to the jury. *See Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)("[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."). While DiTomasso may have employed appropriate psychological testing to assess Fitzgerald's mental health, his methodology is fundamentally flawed when it comes to evaluating reputational harm and future employability.

### III.     Dr. Fromme's testimony should be excluded.

While Dr. Fromme's experience with alcohol intoxication and blackouts is not disputed, her testimony exceeds the permissible scope under *Daubert*. Expertise in the general effects of alcohol does not automatically qualify an expert to opine on specific legal issues such as consent or memory reliability in the context of an alleged sexual assault. Fromme did not examine McNae or conduct any independent assessment of her mental state during the blackout in question (Fromme Dep. 56:9-12). Her assessment that Mrs. McNae's rape and assault was a consensual affair is based on her belief that Mrs. McNae was suffering from "hindsight bias" and "memory reconstruction" – such that a jury should disbelieve Mrs. McNae's testimony. To reach that opinion, Fromme reviewed only those communications between the parties that Plaintiffs' counsel viewed as appropriate.

Dr. Fromme's testimony is not helpful to the jury and risks improperly usurping the jury's role in determining credibility. Courts have consistently held that expert witnesses cannot offer opinions on witness credibility or engage in fact-based narratives that invade the jury's province (*Quevedo v. Iberia Lineas Aereas de Espana S.A.*, 2018 U.S. Dist. LEXIS 174771, at *12 (S.D. Fla. 2018)). By suggesting that McNae's memory was reconstructed through hindsight bias, Fromme's testimony improperly draws conclusions that should be left to the jury.

Dr. Fromme's reliance on the concept of hindsight bias to challenge the reliability of Ronda's memory is speculative and lacks sufficient scientific backing. Fromme did not provide concrete evidence to show that Ronda's memory was distorted by hindsight bias or any other cognitive mechanisms. Fromme also failed to consider Fitzgerald's own potential biases stemming from his involvement in the *Jane Doe v. SoftwareONE* case. This case, which involved allegations of gender discrimination and retaliation against Fitzgerald, likely influenced his perception of the events in question, yet Fromme did not investigate whether his recollection or behavior was shaped by his attempts to protect his reputation in the wake of those allegations. As Dr. Hopper explains in his report, while internal motivations can distort memory, such distortions are not assumed

11

without evidence. Dr. Hopper states, "decades of research have shown that the most central details are not easy to distort because that typically requires repeated leading questions from people in authority or a very strong internal motivation for doing so. Therefore, without compelling evidence of such influences on a particular person with respect to particular memories, there is no scientific or rational basis for assuming or claiming that such distortions have occurred, especially for those most central and horrible details" (Hopper Report, p. 11). In contrast, Dr. Fromme's methodology is speculative as she cannot substantiate that Ronda's central memories—such as those of the assault—were altered by alleged biases or motivations which make her conclusions unreliable under *Daubert* standards.

In his response, Fitzgerald argues that Dr. Fromme's methodology is scientifically valid, because it involves the study of alcohol's effects on behavior and memory in a simulated bar laboratory and because she uses surveys, daily diaries, and in person interviews to understand alcohol's effects. *P's Resp, p. 20.* While Fromme's research methods may be scientifically valid for general studies on alcohol's effects, her methodology is not specifically tailored to the facts of this case. Fromme's opinion about McNae's blackout and memory reconstruction is based on general principles rather than an analysis of the particular facts and circumstances surrounding the incident in question. Fromme admitted in her deposition that she reviewed only a limited set of documents selected by Fitzgerald's counsel and did not review McNae's full medical history or conduct any independent investigation (Fromme Dep. 56:9-12, 58:5-22).

Fromme's conclusions rely heavily on assumptions rather than proven scientific methods. Fromme's failure to properly substantiate her claims about memory distortion (rather than actual psychological data) reveal significant methodological flaws that undermine her reliability as an expert. As Dr. Hopper emphasizes, their lack of concrete evidence or scientific backing makes their testimony unreliable for the jury and should be excluded. Fromme's use of the Dalton & Daneman (2006) study to suggest that "central details" in traumatic memories are just as susceptible to distortion as peripheral details is misleading. As Dr. Hopper points out, this study

12

did not actually prove what Fromme claims, and it misrepresents the notion that "35% of central details" were altered.

Fitzgerald also argues that Fromme's research supports her conclusion that individuals in alcohol-induced blackouts can still perform complex actions and make decisions, challenging McNae's claim that she was incapacitated. *P's Resp, p. 21*. Fromme cites specific behaviors, such as McNae texting her babysitter and using Venmo, to opine that McNae was capable of voluntary actions during the alleged blackout and was not raped. *Id*. But Fromme's testimony regarding McNae's behavior during the blackout is speculative and based solely on second-hand information. Fromme did not conduct any firsthand evaluation of McNae's cognitive state or capacity during the events in question. Moreover, Fromme's reliance on isolated behaviors, such as texting or using Venmo, to suggest full cognitive function during a blackout is overly simplistic. These actions do not necessarily indicate the capacity to consent to sex, and Fromme is not qualified to assess whether McNae was capable of giving consent in this specific context.

Finally, Fitzgerald argues that Fromme's testimony is crucial to rebutting McNae's affirmative defense of duress, particularly her claim that she was emotionally coerced into signing the settlement agreement. *P's Resp, p. 19-20*. Fromme's testimony regarding McNae's interactions post-incident is inadmissible because it goes beyond her expertise in alcohol-induced blackouts and ventures into subjective legal conclusions about duress and consent. Fromme is not a legal expert, and her testimony about the nature of McNae's interactions with Fitzgerald invades the jury's role in assessing the credibility of witnesses and determining the legal elements of duress.

As the Eleventh Circuit has made clear, an expert cannot testify as to legal conclusions or substitute the jury's role in determining witness credibility (*Cook v. Sheriff of Monroe Cnty.*, 402 F.3d at 1112 n.8). Fromme's opinions on whether McNae's behavior was consistent with trauma or consensual interaction are speculative and do not assist the jury in understanding any technical or scientific issues. Courts exclude expert testimony that usurps the jury's role in weighing credibility or interpreting legal concepts. *United States v. Herrera*, 2022 U.S. Dist. LEXIS 193646, at *5 (N.D. Ga. Oct. 25, 2022).

Dated this 2nd day of October, 2024. Respectfully submitted,

By: <u>Ronda Delapina McNae</u>
Pro Se Defendant
504 11th PL Kirkland, WA 98033
Tel: (206) 914-6752
<u>Prose.rmcnae@gmail.com</u>

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of October, 2024, a true and correct copy of the foregoing Motion was delivered via courier service to the Clerk of the Court at the Miami Courthouse Southern District of Florida, 400 N. Miami Ave, Room 8N09, Miami, FL 33128. Additionally, in compliance with the court's requirements for pro se litigants, a copy of the same document was electronically emailed to Plaintiff's counsel and William McNae's counsel on the same date.

**<u>SERVICE LIST</u>**

Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
<u>peb@assoulineberlowe.com</u>
<u>mjg@assoulineberlowe.com</u>

*Counsel for Plaintiffs*

14

# Exhibit A

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically RECEIVED on 3/9/2022 at 8:27:49 AM

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 3/9/2022 by M. Castaneda, Deputy Clerk

Case No. G060554

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOR THE FOURTH APPELLATE DISTRICT; DIVISION 3

---

JANE DOE
Plaintiff and Respondent,

*v.*

SoftwareONE, INC., ET AL.
Defendant(s) and Appellant(s)

---

On Appeal From the
Orange County Superior Court
Case No. 30-2019-01045961-CU-WT-CJC
Before the Honorable David A. Hoffer

---

**RESPONDENT'S OPENING BRIEF**

---

TRUJILLO & WINNICK, LLP
Anthony W. Trujillo (SBN 248860)
Alexander H. Winnick (SBN 239430)
2919 ½ Main Street
Santa Monica, CA 90405
(310) 210-9302 ♦ Fax (310) 921-5626
Attorneys for Respondent JANE DOE

**CERTIFICATE OF INTERESTED PARTIES**

**[Cal. Rules of Court, Rule 8.208(e)(1)]**


There are no interested entities or persons that must be listed in this certificate under rule 8.208.


Dated: March 9, 2022,              TRUJILLO & WINNICK, LLP


                                       By:  /s/ Anthony W. Trujillo
                                            Anthony W. Trujillo, Esq.
                                            Attorneys for Respondent

2

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES ............................................2

TABLE OF CONTENTS ...........................................................................3

TABLE OF AUTHORITIES.......................................................................5

INTRODUCTION .....................................................................................7

STATEMENT OF THE CASE .................................................................10

STATEMENT OF APPEALABILITY ......................................................12

STATEMENT OF FACTS........................................................................12

SUMMARY OF ARGUMENT.................................................................19

ARGUMENT ...........................................................................................21

    I.      The Standard of Review...........................................................21

    II.     The Motion for New Trial Was Properly Granted Because There Was an Error as to the Law....................................................22

    III.    The Prior Ruling on the Motion for Summary Judgment Contained an Error of Law .....................................................23

    IV.    Plaintiff Can Establish a Prima Face Case of Retaliation........24

          A.     Plaintiff Engaged in Protected Activity        25

          B.     SoftwareONE Subjected Plaintiff to adverse employment action        25

          C.     Plaintiff Has Evidence of a Causal Link Existed Between Her Complaints and Termination.       26

    V.     Plaintiff Can also Establish a Prima Face Case Of Discrimination ..................................................................................................26

    VI.    The Trial Court Correctly Held That Plaintiff Produced Evidence That Could Support a Reasoned Inference of Discriminatory or Retaliatory Animus ................................................................29

          A.     Plaintiff Was Replaced By A Younger Male.............32

B.   Plaintiff Adequately Performed in Her Position ........ 35

C.   Plaintiff Presented Evidence of Statements and Statistics that Could Show Discriminatory Intentions Towards Women ......................................................... 37

D.   Evidence of the "temporal connection between her demotion and her asserted complaints about a discriminatory culture." .............................................. 38

E.   Plaintiff Was One of The Few If Not The Only Female In A Leadership Position At SoftwareONE Before She Was Demoted ........................................................... 41

F.   Plaintiff Also Has Evidence to Establish Discrimination Based on Disparate Discipline .......... 42

G.   Triable Issues of Fact Exist Regarding Whether Defendants Proffered Reason Were Pretextual .......... 43

H.   The Same-Actor Inference Does Not Apply Because Mr. Lomax Did Not Make the Decision to Hire Plaintiff ....................................................................... 48

VII. The Pending Motion to Compel Should Have Been Granted Because Nothing Suggests It Was Moot .................................... 51

CONCLUSION ........................................................................... 53

CERTIFICATE OF WORD COUNT ........................................................ 52

4

## TABLE OF AUTHORITIES

### <u>Cases</u>

*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 ...................... 22, 24

*Branson v. Price River Coal Co.* (10th Cir.1988) 853 F.2d 768 ................. 33

*Brown v. CSC Logic, Inc.*(1996) 82 F.3d 651 ............................. 48

*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 194 ..28

*California Fair Employment & Housing Com. v. Gemini Aluminum* (2004)

    122 Cal.App.4th 1004 .................................................................. 40

*Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736 ......................... 28

*Clark County School Dist. v. Breeden* (2011) 532 U.S. 268 ...................... 40

*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246 ...................................... 52

*Dawson v. Entek International* (9th Cir. 2011) 630 F.3d 928 .................... 40

*Dee v. Vintage Petroleum, Inc.* (2003) 106 Cal.App.4th 30 ...................... 52

*Estate of Housley* (1997) 56 Cal. App.4th 342 ........................................... 24

*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864 ..... 25

*Frazee v. Seely* (2002) 95 Cal. App.4th 627 ......................................... 22, 52

*George v. California Unemployment* (2009) 179 Cal.App.4th 1475 .......... 27

*Glage v. Hawes Firearms Co.* (1990) 226 Cal.App.3rd 314 ...................... 23

*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal. 4th 317 .................. 28, 30, 34, 37, 43

*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215 ........................... 42

*Hersant v. Department of Soc. Serv.* (1997) 57 Cal. App.4th 997 ..................

    ........................................................................... 28, 30, 37, 41, 42

*Hoffman-Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10 ............ 23

*Horn v. Cushman & Wakefield Western,* (1999) 72 Cal.App.4th 798 ........ 48

*Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207 .................... 27

*Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237 . 40

*Light v. California Department of Parks & Recreation* (2017)

    14 Cal.App.5th 75 ........................................................ 11, 24, 31, 32, 34

5

*Life Technologies Corp. v. Superior Court* (2011) 197 Cal. App. 4th 640 .42

*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686 ...............43

*Mary Morgan, Inc. v. Melzark (*1996) 49 Cal. App.4th 765 .......................52

*McCoy v. Pacific Maritime Ass'n.* (2013) 216 Cal.App.4th 283. ...............25

*Morgan v. Regents of University of California* (2000) 88 Cal.4th 56.........43

*Muzquiz v. Emeryville* (2000) 79 Cal.App.4th 1106 ...................................28

*Nazir v. United Airlines, Inc.* (2009) 178 Cal. App.4th 243 .................11, 47

*O'Connor v. Consolidated Coin Caterers Corp.* (1996) 517 U.S. 308 .......34

*Pipiton v. Williams* (2016) 244 Cal.App.4th 1437 .......................................46

*Reeves v. MV Transportation, Inc.* (2010) 186 Cal.App.4th 666..........43, 46

*Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133 ..........48

*Reid v. Google, Inc.* (2010) 50 Cal.4th 512.................................................39

*Saelzler v. Advanced Group 400* (2001) 25 Cal 4th 766.............................25

*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297.28,  29,  30,  31,
    33, 34, 41, 43

*Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147 ..................43

*Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188 .......................27

*Wills v. Superior Court* (2011) 195 Cal.App.4th 143 .................................31

*Wysinger v. Automobile Club of Southern California* (2007)
157 Cal.App.4th 413.....................................................................................40

*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028.............25, 26, 41, 52

*Yuzon v. Collins* (2004) 116 Cal.App.4th 149.............................................52

**Statutes**

Code of Civ. Proc. § 656 ............................................................................22

Code of Civ. Proc. § 657 ............................................................................23

Code of Civ. Proc. § 658 ............................................................................23

Code of Civ. Proc. § 660 ............................................................................23

Gov. Code § 12940..........................................................................25, 27, 28

6

## INTRODUCTION

In this case, the record supports an inference that gender and age were substantial motivating factors in the decision to terminate Plaintiff. There is also evidence to support a reasonable inference that Plaintiff's complaints were a substantial factor in the decision to terminate her. While Defendants have presented a pretextual reason for Plaintiff's termination, multiple unsupported reasons, but significant evidence also contradicts these reasons, and are sufficient to support a reasoned inference of discriminatory or retaliatory animus.

Plaintiff was forced to face the realization that she would not be able to succeed at SoftwareONE because she was not young enough, or pretty enough, and was not willing to be disrespected by the younger male executives (which many witnesses refer to as the "boy's club"). This includes but is not limited to Plaintiff's refusal to allow the previous Chief Executive Officer ("CEO"), Patrick Winter to pour champagne in her face in front of all SoftwareONE's employees at the 2017 National Sales Conference in Cancun (the "2017 NSK"), along with the other female employees he selected. (2AA493 [Doe, ¶ 6]; 2AA564 [Reyes, ¶ 5-7].)

Unfortunately, this is only one of the many discriminatory and retaliatory actions Plaintiff was subjected to at SoftwareONE. As a result, the trial court correctly ruled that Plaintiff's evidence "as a whole, *could* support a reasoned inference of discriminatory or retaliatory animus." (7AA1865.) As cited by the trial court, Plaintiff's admissible evidence of discriminatory or retaliatory animus includes, but is not limited to:

1. "[E]vidence that plaintiff was replaced by younger males, both when she was demoted and terminated (UF 31, 41, 57.)," [2AA588, 593, 600.];

2. "[E]vidence that plaintiff had been performing well at the company (Doe decl., ¶ 7)," [4AA959, 971-975.];

7

3.  Evidence of "comments by the 'Leader of the USA Services team' that the company is a 'guy's club,'" so she was 'never going to make it' and by another executive that she was a 'bitch' (UF 46, 34)," [2AA589-90, 596]; and

4.  Evidence of the "temporal connection between her demotion and her asserted complaints about a discriminatory culture. (UF 28, Doe Decl., ¶12.)" [2AA587, 2AA493-95, 2AA500-504.]

(7AA1865-66.)

In addition to the evidence and disputed material facts identified by the trial court when it granted the Motion, Plaintiff also presented admissible evidence which disputes the following material facts presented by Defendants:

-  **Material Disputed Fact No. 2** - SoftwareONE's core executive team for North America did not comprise half men and half women as claimed. (2AA578 [MF 2].);

-  **Material Disputed Fact No. 15** - Between December 2016 and April 2017, Ravencroft never received even five complaints, much less five per month, about Plaintiff as Defendant claims. (2AA582 [MF 15].);

-  **Material Disputed Facts Nos. 28 and 43** - SoftwareONE demoted Plaintiff into a brand-new role as "Global Alliances and Practice Development Leader, Skype for Business" on April 12, 2017, because she is a female in her 50s that complained about discrimination. (2AA587, 594 [MF 28, 43].);

-  **Material Disputed Facts Nos. 25 and 45** - SoftwareONE never treated male and female employees alike. (2AA586-87, 595 [MF 25, 45].);

-  **Material Disputed Facts Nos. 31, 41, and 57** - SoftwareONE replaced both roles that Plaintiff had held during her employment with SoftwareONE. (2AA588, 593, 600 [MF 31, 41, 57].);

8

- **Material Disputed Fact No. 40 -** Plaintiff was terminated because she was an older, female, that complained about discrimination, not for the conflicting reasons SoftwareONE concocted during this case. (2AA591-93 [MF 40].)

The evidence shows that in January 2017, at the 2017 NSK and again a couple of weeks after the 2017 NSK, Plaintiff complained to Patty Ravencroft (Head of Human Resources) and Neil Lomax (President) regarding the discriminatory culture at SoftwareONE and retaliation thereafter. (3AA595-6 [MF# 45-46]; 2AA493 [Doe, ¶ 6-8].) Despite Defendant's claims, there is no evidence of any criticism of Plaintiff's performance before Ms. Ravenscroft's alleged notes in February 2017, after Plaintiff had already complained to her about gender and age discrimination at the 2017 NSK. (2AA582-83 [MF# 15-16]; 2AA492-93 [Doe, ¶ 4, 6-7].)

Seven of Plaintiff's previous co-workers at SoftwareONE provided declarations describing how Plaintiff's performance and any reorganziaiton were not the reasons that SoftwareONE terminated Plaintiff, instead it was because she was an older female that had made protected complaints. (2AA496-97 [Doe decl., ¶ 19-20]; (2AA555 [Franklin decl., ¶ 7-8]; 2AA559 [2AA557 [Brannon decl., ¶ 15-16]; 2AA566-67 [2AA566-67 [Reyes decl.,¶ 16-18]; 2AA572 [Hunter decl., ¶ 7]; 2AA576 [Elliott decl., ¶ 7]; 2AA570 [Foust decl., ¶ 9]; 2AA562 [Cristopher decl., ¶ 9-10]; see also 2AA520-25 [Ravencroft depo., at 20:12-14; 65:8-14; 65:8-14; 89:4-12; 103:14-20; 117:19-25].)

Additionally, there is an alternative basis for granting the Motion because the motion to compel that was pending should have been granted or the MSJ denied given Plaintiff had extensively sought to depose Ms. Ravencroft and Mr. Lomax to no avail, who provided the only two declarations in support of the MSJ.

Overall, Plaintiff's Motion for A New Trial was correctly granted. Plaintiff respectfully requests this Court to affirm the decision because the trial court correctly granted the Motion, a decision the court described that it has considered extensively and believed it was well supported enough for the trial court to grant a motion for new trial and correct the mistaken ruling on the MSJ. (3 RT 101:8-13.)   Accordingly, this Court should affirm the trial court's ruling on the Motion.

## STATEMENT OF THE CASE

Jane Doe filed this case on January 22, 2019, alleging gender and age discrimination, retaliation, and wrongful termination. (1AA12.)

On April 26, 2021, the court granted the Defendants' motion for summary judgment. (4AA941.) At the hearing, Plaintiff specifically argued that the court had made an error of law and cited *Light v. California Department of Parks & Recreation* (2017) 14 Cal.App.5th 75 ("*Light*") for the standards regarding whether a challenged action was the product of discriminatory or retaliatory animus.  (2 RT 55-56, 73-74.)  Regardless, the trial court and defense counsel demanded substantial direct evidence to show pretext as the sole means to demonstrate discriminatory intent. (2 RT 72-73.) The Judgment was entered on May 28, 2021. (AA 946-47.)

Plaintiff timely noticed and filed her Motion for a New Trial. (4 AA 948-1046.)  On July 26, 2021, the trial court correctly granted the Motion for a New Trial because the prior ruling on the Motion for Summary Judgment contained an error of law. (7AA1865.)  The court's explained that it had now considered the standards outlined in *Light v. California Department of Parks & Recreation*.   As a result, the court ruled that substantial evidence to establish pretext was not required because "the admissible evidence presented by Plaintiff with her Opposition, when considered collectively,

10

was sufficient to withstand summary adjudication on the discrimination, retaliation, and wrongful termination claims." (7AA 1865.)

The court cited *Light* for the holding "while pretext is relevant in rebutting the employer's evidence of nonretaliatory intent, the central issue is whether the evidence as a whole could support a reasoned inference that challenged action was the product of discriminatory or retaliatory animus." *Light*, 14 Cal. App.5th at 95 (citing *Nazir v. United Airlines, Inc.* (2009) 178 Cal. App.4th 243, 283 [holding very little evidence of such intent is necessary to defeat an MSJ: "summary judgment should not be granted unless the evidence cannot support any reasonable inference for the plaintiff"].) The court further held,

> [T]here was evidence that, when taken as a whole, could support a reasoned inference of discriminatory or retaliatory animus. This evidence includes, but is not limited to, evidence that the plaintiff was replaced by younger males, both when she was demoted and terminated (UF 31, 41, 57.), evidence that plaintiff had been performing well at the company (Doe decl., ¶ 7), comments by the "Leader of the USA Services team" that the company is a "guy's club" so she was "never going to make it" and by another executive that she was a "bitch" (UF 46, 34), and the arguable temporal connection between her demotion and her asserted complaints about a discriminatory culture. (UF 28, Doe Decl., ¶12.)

(7AA1865-66.)

The trial court also stated, "this is an extremely important matter that the court has spent a great deal of time on, and it's very unusual for the court to grant a new trial on this basis. *In fact, it's probably the only time that I've done so in my career. And so I take this Very, very seriously."* (3 RT 101:8-13)(emphasis added.) "The court did review the evidence as a whole. I am

11

extremely, extremely familiar with the evidence in this case. It is important to keep in mind that, in ruling on a motion for summary judgment, the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as a trier of fact." (3 RT 113:19-26.)

Overall, the court held that "the evidence, taken as a whole, could support discrimination under the standards of the *Light* case, and, thus, the court must grant the motion under C. C. P. § 657(7)." (7AA1866.)   In conclusion, the trial court conceded, "as the court went through this. I believe it's important for the Court to reach the right decision on the motion that is before it now. And that's why, despite really careful consideration,

I think this matter needs to go forward." (3 RT 101:16-19.)(emphasis added.)

## STATEMENT OF APPEALABILITY

This appeal is from an order of the Orange County Superior Court granting Plaintiff's motion for a new trial and is authorized by the Code of Civil Procedure, section 904.1, subdivision (a)(4).

## STATEMENT OF FACTS

At all relevant times, Plaintiff was a female in her 50s.  Prior to her employment at Defendant, Plaintiff was the owner and chief executive of a unified communications company in California.  She has been a leader in I.T. since 1994, founding one of the first AT&T partnerships in Orange County. In 2011, Plaintiff transitioned to cloud technologies and is a certified Lync engineer and technical specialist for Microsoft.  (2AA492.)

In March 2016, Defendant purchased Plaintiff's company, and hired Plaintiff to serve as Defendant's executive responsible for its unified communications division, known as "skype for business" ("SFB".)

12

(2AA492, 580 [MF 5, 8].)  During her employment, Plaintiff worked and traveled many sleepless nights to ensure her division met its goals.

By January 2017, Defendant changed its compensation plan regarding Plaintiff's division. (2AA492 [Doe Decl., ¶5], 2AA564 [Reyes Decl., ¶3].) John Mayes sent out a new compensation **plan** for Plaintiff's team (S4B) without consulting Plaintiff. Her team began contacting her upset their pay had been cut by more than half. (2AA585 [MF # 21]; [Doe Decl., ¶5].) Plaintiff voiced concerns about the plan with Defendants.  (2AA492 [Doe Decl., ¶5].)

Soon thereafter, in January 2017, Plaintiff and her team were required to attend Defendant's National Sales Conference in Cancun, Mexico- the 2017 NSK. (2AA493 [Doe Decl., ¶6] 2AA564-565 [Reyes Decl., ¶5-8].) Plaintiff experienced and observed improper conduct by Defendants' executives, including the CEO, Patrick Winter, which degraded women, such as Mr. Winter demanding that Plaintiff dance with him on stage while he pour champagne down her throat.  (2AA493 [Doe Decl., ¶6] 2AA564-565 [Reyes Decl., ¶5-8].)  Plaintiff felt uncomfortable with the way women were being treated by the younger male executives, especially the CEO, Patrick Winter, during the 2017 NSK. (2AA493 [Doe Decl., ¶6-7], 4AA958 [Doe Decl., ¶5], 7AA1836 [Elliott Decl, ¶3], 2AA557, 558 [Brannon Decl., ¶6-7].)

The evidence shows that Plaintiff made multiple complaints to executives at Defendants about what she perceived to be discriminatory conduct at the 2017 NSK, including to Neil Lomax and Patricia Ravencroft, amongst others. (2AA493 [Doe Decl., ¶6-7], 4AA958 [Doe Decl., ¶5].)  Ms. Ravencroft admitted that she had spoken to Plaintiff at the 2017 NSK and that not everything that occurred at the 2017 NSK was appropriate ("No, not everything was appropriate."). (2AA528 [Ravencroft Depo., at 169:15].)

13

However, there is no record of Ms. Ravencroft taking any action to address those incidents complained of by Plaintiff.

In January 2017, Plaintiff also complained to Neil Lomax regarding the discriminatory culture at Defendant company, Plaintiff's experience at the 2017 NSK, as well as the new compensation plan. (2AA643-44 [MF # 45-46]; 2AA493 [Doe Decl., ¶ 7].) The adverse treatment experienced by Plaintiff were the result of Plaintiff's complaints, as there is no evidence of any complaints *about* Plaintiff before this time. (2AA582-83 [MF# 15-16].) However, there is evidence showing that the executives had begun retaliating against her for complaints.

As the time continued to pass, Defendant still had not explained the new compensation plan to Plaintiff's sales team nor Plaintiff. Plaintiff's team was understandably getting more upset and may have begun to blame Plaintiff unfairly. Despite her objections and concerns, Plaintiff did as she was told and delivered the compensation plan to the Sales Team during her weekly meeting as directed by executives for Defendant. (2AA493 [MF # 21] 2AA433-434 [Ravencroft, ¶17, Ex. O]; 2AA492 [Doe, ¶ 5].)

Defendant next placed Plaintiff in the position of damaging her co-workers by setting a compensation plan that was unrealistic and unattainable, thereby denying them expected income. One employee described how he took a $55,000 pay cut because of the new compensation plan and described how "[t]hey were taking money out of all of our pockets." (2AA557 [Brannon, ¶ 3].) Another employee described how "SoftwareONE changed the commission structure for the representatives without changing their salaries. As a result, many of the representatives that Plaintiff supervised had their commissions dropped by approximately 50%. Plaintiff did not make this decision, but the decision upset many of the employees she supervised in early 2017." (2AA564 [Reyes, ¶ 3].) In essence, Defendants were setting Plaintiff up for failure.

14

While Plaintiff was only the messenger of the compensation plan change in February 2017, her team was understandably upset. Within weeks, members of Plaintiff's team began to make complaints. For example, "Shannon Culley and Ben Powell were upset and complaining about the restructuring of the commission structure, for which they also incorrectly blamed Plaintiff. (2AA582-82 [MF #16, 17]; 2AA564 [Reyes, at ¶ 4].)

While the younger male leadership (Oliver Berchtold and Mike Fitzgerald) were responsible for the new compensation plan, as well as its unfortunate messengering, they did not take responsibility. Instead, they secretly held a meeting with Plaintiff's team, blamed Plaintiff for their anger, and sought to solicit the team to talk about Plaintiff negatively. Instead of submitting written complaints themselves, Patty Ravencroft took statements only after Mr. Berchtold and Mr. Fitzgerald spoke with the Team. Shannon Culley would later describe how "it was hard to talk about your manager" at the meeting and that they were more confused on the compensation plan because Mr. Berchtold told them something "completely different." As a result of Mr. Berchtold and Mr. Fitzgerald's secret meeting with Plaintiff's team, now we're "back to being confused." (2AA583 [MF # 17]; 2AA422-423 [Ex. L].)

The only reasonable explanation as to why Mr. Berchtold, Mr. Fitzgerald and Ms. Ravencroft met with Plaintiff's team without her knowledge, contradicted the instruction they had given to her themselves, and solicited Plaintiff's team to talk about Plaintiff was that they had begun to execute their plan to terminate Plaintiff's employment.

Shortly after the secret meeting with Plaintiff's team, Shannon Cully was interviewed by Patty Ravencroft on February 21, 2017. Shannon told Ravencroft, "[w]e just want to move past the compensation questions and get that out of the way." Ravencroft was not interested in moving past the comp question and instead focused on creating a pretext to terminate Plaintiff and

15

characterizing these compensation questions as Plaintiff's fault. (2AA583 [MF #17]; 2AA422-423 [Ravencroft, Ex. L].)

The next day, on February 22, 2017, Mr. Berchtold sent an email to the male-dominated leadership team stating that things were going in the wrong direction with Plaintiff, "business and people wise," based on "*our feedback from Cancun.*"   (2AA584 [MF #19]; 2AA425.)   Other than Plaintiff's complaints in January 2017 to Ravencroft and Lomax about being uncomfortable with how the leadership treated her and the other female employees at the 2017 NSK, there is no record any other "feedback from Cancun." (2AA595-97 [MF #45-46].)

On or about February 23, 2017, at 9:37 AM, Ms. Ravencroft prepared a document entitled "Talking points for Carol."   Interestingly, Ravencroft refers to Plaintiff allegedly not allowing her "team to participate in agreed-upon meetings *at NSK*" and that Plaintiff had "told an employee that they had an HR violation on file from NSK, but that is not true from an HR perspective." (2AA584 [MF #20]; 2AA427.)

A couple of hours later, on February 23, 2017, at 11:16 AM, Ravencroft interviewed Defendant employee Ben Powell and prepared a document described as part of her "investigations."   The "investigations" notes describe a call on February 23, 2017.  Of importance, the notes fail to mention any complaints in December 2016 by Ben Powell about Plaintiff. Regardless, Defendants now claim that Ben Powell made his complaints about Plaintiff in December 2016, which is false. (2AA582-583 [MF #16]; 1AA196, 211 [Ravencroft, at 49:6-19, 144:8-14]; 2AA420 [Ravencroft, Ex. K.]

There are multiple unusual aspects to Ravencroft's "investigations" notes. First, she refers to herself in the third person: "Ben Powell requested time to talk to Ravencroft at the Chicago bowling outing."  (2AA582-583 [MF #16]; 2AA420 [Ravencroft, Ex. K].)  Stranger yet, Ben Powell "asked

if an HR issue was filed against him with HR. Carol had told him the day prior that he was in HR violation for drinking at NSK and that his job was at risk." It is not possible that Ben Powell was complaining to Ravencroft in December 2016 about something he said Plaintiff had told him after the 2017 NSK, which did not occur until January 2017. Defendants are seeking to mislead the court into believing that Ben Powell somehow made a complaint about something that happened after the 2017 NSK, in December 2016, more than a month the 2017 NSK. (2AA582-583 [MF #16]; 2AA420 [Ravencroft, Ex. K].)

There is no record of Ben Powell or any other employee making a complaint about Plaintiff before the secret meeting Mr. Berchtold and Mr. Fitzgerald had with Plaintiff's team and Ravencroft's "investigations" interviews in February 2017. (2AA582-83 [MF# 15-16].) There is no evidence of any complaints about Plaintiff before January 2017, after Plaintiff had complained to Ravencroft and Lomax about the 2017 NSK in Cancun in January 2017. (2AA582-83 [MF# 15-16].)

In March 2017, at Plaintiff's insistence, SoftwareONE finally acknowledged the mistakes related to the compensation package to compensate the salespeople for the majority of the revenue and made the changes Plaintiff had sought from the outset to the new compensation plan for her team. (2AA582-83 [MF # 21]; 2AA492 [Doe decl., ¶ 5).]

On April 12, 2017, SoftwareONE demoted Plaintiff to a newly created position of "Global Alliances and Practice Development Leader, Skype for Business" because she had complained about discrimination and because she was an older female. (2AA587 [MF # 28].) When Plaintiff was demoted, John De Los Reyes took over Plaintiff's former role as the Global Practice Lead for Skype for Business and became the global leader for SoftwareONE's unified communications. Mr. De Los Reyes also replaced Plaintiff as manager of SoftwareONE's unified communications team that

Plaintiff had previously led before being inappropriately demoted. Mr. De Los Reyes replaced Plaintiff in both roles she held at SoftwareONE. Mr. De Los Reyes is a male in his early 40s. (2AA588, 593, 600 [MF 31, 41, 57].)

Plaintiff was treated differently than her male co-workers, and the younger men did not show her any respect in their meetings. Mr. Berchtold, the Global CIO, did not treat Plaintiff fairly and did not communicate needed information to her on multiple occasions. (4AA960 [Doe decl., ¶ 12].) She was purposely removed from meetings and emails without notice, leaving her unable to complete her job. (4AA961 [Doe decl., ¶ 16].) Mr. Berchtold told Mr. De Los Reyes to take over Plaintiff's duties as the leader of the Skype for Business. (2AA566 [Reyes decl., ¶ 12].) Mr. Berchtold informed Mr. De Los Reyes to leave Plaintiff out of United Communications' decisions (previously referred to as Skype for Business). (*Id.*) Plaintiff was removed from the Skype for Business/UC team's leadership role and placed into a sales role. (2AA566 [Reyes decl., ¶ 12].) Plaintiff was effectively relegated to a salesperson or Sales Solutions Specialist covering North America after her demotion. (2AA587 [MF # 28]; 2AA566 [Reyes decl., ¶ 12].)

On October 14, 2017, Plaintiff submitted another complaint regarding gender discrimination- that Jason Cochran ("Cochran"), former Director of Technical Solutions, called her a "bitch" and publicly yelled at her for 20 minutes in front of her co-workers. He also had insisted she meet him at a bar in New Orleans, instead of an appropriate location, after she landed at the airport for what was supposed to be planning sessions for upcoming client meetings. At the bar, Mr. Cochran berated Plaintiff about her inability to "make it at the boy's club." (2AA589-90 [MF #34].)

SoftwareONE had little interest in complying with and enforcing its anti-harassment policies. Unlike the other interviews and typed notes that Defendant prepared when they claimed to have been investigating Plaintiff

in February 2017, when Plaintiff made her complaints to SoftwareONE, the only investigation done was one short phone interview followed by one page of handwritten notes. (2AA590 [MF #35]; 2AA451-452 (Ravencroft Decl., Ex. U].)  SoftwareONE concluded that Cochran acted unprofessionally, but not illegally. (2AA590 [MF #36].) SoftwareONE informed Plaintiff that the investigation was complete, that SoftwareONE did not condone the behavior, and it would coach Cochran accordingly, but ultimately, SoftwareONE took no other action. (2AA590 [MF #37].)

Less than nine months later, on July 20, 2018, SoftwareONE terminated Plaintiff's employment. (2AA591 [MF #39].) Mr., Lomax told Plaintiff that SoftwareONE did not need two leaders and she was going to be replaced by a younger male from a recent acquisition. (2AA591-93 [MF #40] 2AA496 [Doe, ¶ 19].) However, Plaintiff had been demoted from being a leader to a salesperson in April 2017 and John De Los Reyes had already replaced Plaintiff in her role as the leader of the SfB team and given the growing demand for salespeople with SfB knowledge, so she knew the reason she was given was false and pretextual. (2AA494, 496-97 [Doe, ¶ 12, 19].)

## SUMMARY OF ARGUMENT

Plaintiff is entitled to a trial on the facts of this case.  The trial court extensively reviewed this matter and then sought to ensure that Plaintiff's right to have her evidence heard by the trier of fact would not be violated. Plaintiff has a significant amount of admissible evidence that created multiple triable issues and required denial of the motion for summary judgment.  In the present case, Defendants even admitted that triable issues of material facts exist. However, Defendants characterize these triable issues as *"limited and unmaterial facts,* specifically concerning an alleged replacement, *were not enough…"* (4AA1054 [Opposition to the Motion, at

pg. 7, lns. 26-27].)  These facts were included in the separate statement as material facts and disputed by admissible evidence following Defendant's objections. (2AA578, 586-88, 591-94, 595-96, 600-01 [MF # 2, 25, 31, 40-41, 45 & 57].)

Defendant's claim that Plaintiff was "terminated when another acquisition made her position redundant," but there is admissible evidence that Plaintiff was not terminated because her position was allegedly redundant. (4AA591-93 [MF #40].) For example, following the Court's ruling on the objections, the following testimony by Mr. De Los Reyes was found to be admissible:

> The decision to terminate Plaintiff in 2018 was not because of any redundancy of Plaintiff's role caused by SoftwareONE's acquisition of UC Point. When Plaintiff was terminated, I had already replaced her as the Global UC Lead, and Taylor Anderson had been hired to assume her North America territory. UC Point was not redundant to the team in the USA. UC Point white-labeled software, and they were based in Germany. Bringing on UC Point would not have impacted what Plaintiff did every day, sold in the USA.
>
> (2AA567 [Reyes, ¶ 18].)

Overall, there is admissible evidence that disputes the material facts regarding Defendants' alleged reason for Plaintiff's termination. (4AA591-93 [MF #40[1]].)

———————————————

[1] Plaintiff disputed Defendant's evidence in support of material facts number 40 with the following evidence: (2AA496-97 [Doe decl., ¶ 19-20]; (2AA555 [Franklin decl., at ¶ 7-8]; 2AA559 [2AA557 [Brannon decl., at ¶ 15-16]; 2AA566-67 [2AA566-67 [Reyes decl.,¶ 16-18]; 2AA572 [Hunter

There is also admissible evidence that on October 9, 2017, Jason Cochran, Leader of the USA Services team, called Plaintiff a "bitch" and that as a woman, she was "never going to make it" at SoftwareONE. (2AA493 [Doe decl., ¶ 8]; 2AA501-502[Doe decl., Ex. 1]; 2AA589-90 [MF34, 36].) Only months after Plaintiff complained about Mr. Cochran, she was terminated on July 20, 2018. (2AA493 [Doe decl., ¶ 8]; 2AA501-502[Doe decl., Ex. 1] 2AA589-91, 596 [MF 34, 36, 39, 46].)  Plaintiff's superior (following her demotion to salesperson) telling her that she would never succeed *because she is female* is evidence of pretext, but at a minimum it is admissible evidence for the trier of fact to weigh overall regarding Defendant's discriminatory or retaliatory animus. These are just a few of the triable material facts the trial court found remained when ordering a new trial and why this court should affirm the trial court's ruling.

## ARGUMENT

### I.    The Standard of Review

The burden on appeal rests with the Appellant and not Respondent. Generally, rulings on new trial motions are reviewed for an abuse of discretion: *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859.  But in the case of an order denying a new trial motion following an order granting summary judgment, the applicable standard of review depends on the nature of the trial court's determinations in denying the new trial motion. *Id.* at 859-860. Here, the applicable standard of review is the abuse of discretion standard.

---

decl., at ¶ 7]; 2AA576 [Elliott decl., at ¶ 7]; 2AA570 [Foust decl., at ¶ 9]; 2AA562 [Cristopher decl., at ¶ 9-10]; 2AA520-25 [Ravencroft depo., at 20:12-14; 65:8-14; 65:8-14; 89:4-12; 103:14-20; 117:19-25].)

21

The same standard applies to the trial court's underlying decision to deny Plaintiff's request for a continuance given the pending motion to compel. *Frazee*, 95 Cal.App.4th at 633.

## II.   The Motion for New Trial Was Properly Granted Because There Was an Error as to the Law

"A new trial is a reexamination of an issue of fact in the same court after a trial and decision by a jury, court or referee." Code of Civ. Proc. § 656. Under Code of Civil Procedure § 657: "Error in law, occurring at the Trial and excepted to by the party making the application." Code of Civ. Proc. § 657(7). When an application is made for a cause mentioned in the first, second, third, and fourth subdivisions of Section 657, it must be made upon affidavits; otherwise, it must be made on the minutes of the court." Code of Civ. Proc. § 658. "[R]eference may also be had to any depositions and documentary evidence offered at the trial and to the report of the proceedings on trial taken by the phonographic reporter, or to any certified transcript of the report or if there be no such report or certified transcript, to proceedings occurring at the trial that is within the recollection of the judge." Code of Civ. Proc. § 660(a). A new trial may be granted where the substantial rights of a party are materially affected by misconduct or irregularity in the proceedings. *Glage v. Hawes Firearms Co.* (1990) 226 314, 320. Of importance, a new trial motion may be made if the judgment or verdict is legally erroneous. *Hoffman-Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15.

The motion for new trial was properly granted when after weighing the evidence, the court was convinced from the entire record, including reasonable inferences therefrom, that the court clearly should have reached a different verdict or decision. Code of Civ. Proc. § 657; *Musgrove v. Ambrose Properties* (1978) 87 Cal.App.3rd 44, 55.

22

The trial court correctly granted the Motion because the prior ruling on the motion for summary judgment contained an error of law by requiring substantial evidence of pretext when "there was evidence that, when taken as a whole, could support a reasoned inference of discriminatory or retaliatory animus." (7AA1865.) This was in accordance with this court's holding in *Light* that requiring substantial evidence of pretext on summary judgment to be "a central or necessary issue is not sound." *Light,* 14 Cal. App.5th at 94 (holding that substantial evidence of pretext is not the only means for Plaintiff to defeat an employer's motion for summary judgment). Accordingly, after "really careful consideration" the trial court believed "this matter needs to go forward." (3 RT 101:16-19.)

## III.     The Prior Ruling on the Motion for Summary Judgment Contained an Error of Law

The determining issue on summary judgment is whether there is a single triable issue of material fact. *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851. Any admissible evidence which disputes a fact submitted by Defendants is sufficient to create a reasonable inference that Defendants proffered reason is false. *Estate of Housley* (1997) 56 Cal.App.4th 342, 359-360 (holding a sole declaration which raises a triable issue of fact requires the court to deny the motion). The court is not to weigh the evidence on summary judgment; the court only determines whether there is admissible evidence and disputes to be determined at trial. The truth should be determined at trial after testimony. *Saylin v. Cal. Ins. Guar. Ass'n* (1986) 179 Cal.App.3d 256, 261 (the court cannot weigh one inference against another in a summary proceeding).

"In the summary judgment context, ... the evidence must be incapable of supporting a judgment for the losing party in order to validate the summary

23

judgment." *Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 877.

"Thus even though it may appear that a trial court took a "reasonable" view of the evidence, a summary judgment cannot properly be affirmed unless a contrary view would be unreasonable as a matter of law in the circumstances presented.'" *Id.* (citations omitted.)   Any doubts about the propriety should be resolved in favor of Plaintiff, as the party opposing the Defendants' motion. *Saelzler v. Advanced Group 400,* 25 Cal 4th 766, 768 (2001).  Under the applicable standard of review, the court should affirm the trial court's order granting Plaintiff's motion for a new trial.

## IV.    Plaintiff Can Establish a Prima Face Case of Retaliation

FEHA makes it unlawful for the employer to discharge or discriminate against an employee because they have "opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Gov. Code § 12940(h).  To establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.  *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042. "Actions for retaliation are 'inherently fact-driven'; it is the jury, not the court, that is charged with determining the facts." *McCoy v. Pacific Maritime Ass'n.* (2013) 216 Cal.App.4th 283, 299.

While Defendants do not dispute that they knew that Plaintiff's complaints were based upon a reasonable belief that the employer was engaging in discrimination, the test is whether the communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted in an unlawfully discriminatory manner.  *Yanowitz v.*

*L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1046.  An employee need only show a reasonable and good faith belief that the conduct they complained of is prohibited under FEHA to invoke protection under the opposition clause, whether or not the conduct complained of actually violates FEHA. *Id.* at 1043. Defendants' actions do not have to be illegal.

### A.  Plaintiff Engaged in Protected Activity

Plaintiff's communications to SoftwareONE sufficiently convey her reasonable concerns about being treated in a discriminatory manner.  For example, during the latter part of January 2017, Plaintiff complained to Neil Lomax regarding the discriminatory culture at SoftwareONE that she had experienced at the 2017 NSK.  (2AA493, 596 [MF # 46 (citing Doe decl., ¶ 7).])  Additionally, it is undisputed that "[o]n October 14, 2017, Plaintiff asserted her first complaint – that Jason Cochran ("Cochran"), former Director Technical Solutions, called her a bitch and publicly blasted her verbally stating that she would never make it at the "boys club." (2AA493 [Doe decl., ¶ 8]; 2AA501-502[Doe decl., Ex. 1]; 2AA589-90 [MF34, 36].) Therefore, Plaintiff can show that she engaged in protected activity.

### B.  SoftwareONE Subjected Plaintiff to Adverse Employment Action

An adverse employment action materially affects the terms, conditions, or privileges of employment. *Yanowitz*, 36 Cal.4th at 1051. It is undisputed that Plaintiff suffered an adverse employment action. It is undisputed that, "On July 20, 2018, SoftwareONE terminated Plaintiff's employment." (2AA591 [MF #39].)  Defendants admit demoting Plaintiff, specifically, "On April 12, 2017, SoftwareONE moved Plaintiff into a brand-new role," which stripped her of being Head of the Sfb/UC Team at SoftwareONE. (2AA587 [MF #28].)  Plaintiff suffered at least two adverse

25

employment actions, i.e., demotion and termination. Therefore, Plaintiff can also satisfy this element of her prima facie case for retaliation.

### C. Plaintiff Has Evidence of a Causal Link Existed Between Her Complaints and Termination.

The Plaintiff must show that the adverse employment action resulted from the protected activity. Gov. Code § 12940(h) (prohibiting adverse action "because" the employee engaged in protected conduct); *Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207, 1221-1226; *Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1198 — the plaintiff must show a causal link between the protected activity and adverse action.

Similarity "retaliatory intent is an essential element of a cause of action for unlawful retaliation under FEHA." *Joaquin v. City of Los Angeles*, 202 Cal.App.4th at 1230. But retaliatory animus does not have to be the sole cause, and a Plaintiff need only prove that retaliatory animus was a substantial or motivating factor behind adverse action. *George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, 1492. Plaintiff may prove retaliatory intent through direct or circumstantial (indirect) evidence.

Plaintiff requests that this Court find that Defendants failed to meet their burden to show that the court ruled incorrectly regarding Plaintiff's claims for retaliation.

### V.   Plaintiff Can also Establish a Prima Face Case of Discrimination

The California Fair Employment and Housing Act ("FEHA") prohibits discrimination in employment based upon age or gender. Gov. Code, § 12940, sub. (a). Plaintiff can show a prima facie case of gender and age discrimination. "In order to make out a prima facie case of age discrimination under FEHA, a plaintiff must present evidence that the

26

plaintiff (1) is over the age of 40; (2) suffered an adverse employment action; (3) was performing satisfactorily at the time of the adverse action; and (4) suffered the adverse action under circumstances that give rise to an inference of unlawful discrimination, i.e., **evidence that the plaintiff was replaced by someone significantly younger than the plaintiff.** *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 321 (citing *Hersant v. Department of Soc. Serv.* (1997) 57 Cal. App.4th 997, 1002–1003)(emphasis added).

It is undisputed that Plaintiff is a female over 40 years old and establishes the first element for discrimination. (2AA581 [MF #9 ("Plaintiff, [was] 49 and female" when she began working at SoftwareONE)].)   As described in further detail above, it is undisputed that Plaintiff suffered an adverse employment action. (2AA591 [MF #39].)

A handful of California cases have included satisfactory job performance as an essential element of a prima facie discrimination case without analysis or discussion. *Guz*, 24 Cal.4th at 355; *Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736, 742; *Muzquiz v. Emeryville* (2000) 79 Cal.App.4th 1106, 1116; *Mixon v. Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1318.)

At least two California cases, however, have considered the issue. Both cases include satisfactory job performance as an essential element of the prima facie case, but one opinion viewed this element as merely a qualification requirement. The other emphasized that satisfactory job performance was not an element of every prima facie discrimination case. *Sandell*, 188 Cal.App.4th at 321–322; *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 194, 199–200 & fn. 6.

In *Sandell*, the Court of Appeal concluded: "a plaintiff must demonstrate some *basic level of competence* at his or her job in order to meet the requirements of a prima facie showing, [but] the burden-shifting framework established in McDonnell Douglas compels the conclusion that

any measurement of such competency should, to the extent possible, be based on objective, rather than subjective, criteria." *Sandell*, 188 Cal.App.4th at 322. As the *Sandell* court explained, subjective criterion for job performance become relevant in the later stages of the McDonnell Douglas framework when the reasons for the adverse employment action are considered. *Id.*

In *Caldwell*, the Court of Appeal observed, "Whether the second element of a plaintiff's prima facie case of employment discrimination is described as 'qualification for the position' or 'satisfactory job performance,' it is clear that, where a plaintiff claims not that he was a model employee, but only those other employees with equivalent foibles did not suffer his fate, an *employer cannot prevail simply by citing deficiencies* in the plaintiff's employment record." *Caldwell*, 41 Cal.App.4th at 200, fn. 6 (emphasis added.)

In the present case, Plaintiff can demonstrate far more than merely some basic level of competence at her job. For example, the trial court granted Plaintiff's Motion because it found "evidence that plaintiff had been performing well at the company (Doe decl., ¶ 7)." (7AA1865-66.) For example, Plaintiff has evidence showing that she was performing her job satisfactorily because she earned a bonus every quarter while she worked for Defendant. Plaintiff was paid a bonus every quarter for meeting her goals for her entire employment at SoftwareONE. (7 AA 959 [Doe decl., ¶ 7-8].)

Ravencroft admitted that Plaintiff's termination was "not for cause." Instead, Ravencroft only claimed that Plaintiff was terminated because her position was eliminated. (2AA520 [Ravencroft depo., at 65:8-14.] While Plaintiff worked for Defendants, she was never told that her performance was unsatisfactory. Plaintiff never received any write-ups, warnings, suspensions, or other disciplinary actions while she was employed. At least seven witnesses will testify that Plaintiff was performing her job satisfactorily, all of which provided a declaration supporting her opposition.

28

(2AA582-83 [MF #14-16]; 2AA555 [Franklin decl., ¶ 7; 2AA557 [Brannon decl., ¶ 11]; 2AA564 [Reyes decl., ¶ 3]; 2AA572 [Hunter decl., ¶ 7]; 2AA576 [Elliott decl., ¶ 7]; 2AA570 [Foust decl., ¶ 9]; 2AA561 [Cristopher decl., ¶ 4-7].)

California courts similarly recognize "[t]he specific elements of a prima facie [discrimination] case may vary depending on the particular facts." *Guz*, 24 Cal.4th at 355.  In *Hersant*, the Court of Appeal explained, "Given the varying nature of the problem, it is impossible to make an exact, all-inclusive statement of the elements of a prima facie ... discrimination case applicable in all situations. [Citations.] The general requirement is that the employee offers circumstantial evidence such that a reasonable inference of ... discrimination arises." *Hersant v. Department of Soc. Serv.* (1997) 57 Cal. App.4th 997, 1002; *Sandell*, 188 Cal.App.4th at 310.

## VI.   The Trial Court Correctly Held That Plaintiff Produced Evidence That Could Support a Reasoned Inference of Discriminatory or Retaliatory Animus

As the trial court ruled when granting the motion for new trial, "the evidence, taken as a whole, could support discrimination under the standards of the *Light* case, and, thus, the court must grant the motion under C. C. P. § 657(7)." (7AA1865.)  Assuming the burden shifted to Plaintiff, she only has to present evidence that could support a reasoned inference of discriminatory or retaliatory animus. To do so, Plaintiff can present evidence showing (1) SoftwareONE's stated reason for firing her were untrue or pretextual; (2) SoftwareONE acted with a discriminatory animus in terminating her; or (3) a combination of the two. *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 171; *Hersant*, 57 Cal.App.4th at p1004–1005; *Sandell*, 188 Cal.App.4th at 314.  The Court in *Light* held that evidence of pretext is **not required** to defeat an employer's motion for summary judgment in cases brought under

29

the California Fair Employment and Housing Act. *Light v. California Department of Parks & Recreation* (4th District, 2017) 14 Cal.App.5th 75, 94. In *Light*, the court specifically held that:

> The showing of pretext, while it may indicate retaliatory intent or animus, *is not the sole means of rebutting the employer's evidence of nonretaliatory intent*. While "pretext" is certainly a relevant issue in a case of this kind, making it a central or necessary issue is not sound. The central issue is and should remain whether the evidence as a whole supports a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus. The employer's mere articulation of a legitimate reason for the action cannot answer this question; it can only dispel the presumption of improper motive that would otherwise entitle the employee to a judgment in his favor. Thus, citing a legitimate reason for the challenged action will entitle the employer to summary judgment only when the employee's showing, while sufficient to invoke the presumption, is too weak to sustain a reasoned inference in the employee's favor. That, and not "pretext," must be the focus of the judicial inquiry.

*Light*, 14 Cal. Ap5th at 94 (emphasis added).

The court in *Light* reversed the trial court's order granting summary judgment. It went on to hold that--- "even setting aside the issue of pretext"---a jury could find that the adverse employment actions against Plaintiff were the result of retaliatory intent or animus. *Id.*   In *Light*, with less evidence than Plaintiff has provided in the present case, the court held that the plaintiff had indeed "offered sufficient evidence to raise a triable issue of fact" of retaliatory intent. *Id.* at 95.   Plaintiff need not have "direct: evidence confirming that employer's asserted reasons were false, there was enough to

30

raise a triable issue regarding retaliatory intent still, and that---just enough evidence that a jury could find that retaliatory intent was the requisite causal factor---is all that is required.   Overall, the *Light* Court was clear: "[the defendant's]   focus   on   'pretext'   as   the   central   issue   is misplaced." *Id.*   Numerous other courts have also made similar holding that showing pretext was not the only way to demonstrate discrimination.

Defendants' claim, which led to the trial court ruling on the motion for summary judgment that Plaintiff was required to state reasons her termination was not pretextual as the only way to defeat a motion for summary judgment, was an error that justified the trial court granting the motion for a new trial.   (2 RT 72-73.) Defendant has changed its argument after the court's ruling on the Motion, and now concedes that the ruling on the motion for summary judgment was based on incorrect law.   In other words, Defendant has accepted that *Light* is the applicable standard which provides that pretext is not the only means of demonstrating discriminatory or retaliatory animus. (Appellant's Brief, at 34 [citing *Light*, 14 Cal. App.5[th] at 94.]) "Doe thus had the burden to offer evidence sufficient to allow a trier of fact to find either SoftwareONE's stated reasons were pretextual **or** the circumstances as a whole support a reasoned inference that the challenged actions were the product of discriminatory or retaliatory animus. (Appellant's Brief, at 34 [citing *Light*, 14 Cal. App.5[th] at 94.]).   As described above, Plaintiff contends she can show pretext. Still, at a minimum, as the court held when granting Plaintiff motion for a new trial, she has presented sufficient evidence to support a reasoned inference that the challenged actions were the product of discriminatory or retaliatory animus.   This includes but is not limited to the following evidence.

### A. Plaintiff was replaced by a younger male

Triable material facts numbered 31, 41, and 57 are disputed by admissible evidence regarding the court's ruling on the evidentiary objections. (2AA588, 3AA593-94, 600-01 [MF 31, 41, 57].) They are both disputed with admissible evidence and *permit a rational inference* that the employer's actual motive was discriminatory. Admissible evidence that Plaintiff declared, "[a]fter I was demoted to a salesperson, John De Los Reyes replaced me as the Leader of the Skype for Business team, also known as the Unified Communications ("U.C.") team. (2AA495 [Doe decl., ¶ 16].) The sole declaration of any party opposing a summary judgment motion that raises a triable issue of fact is sufficient to deny the motion. *Estate of Housley* (1997) 56 Cal.App.4th 342, 359-360.

The disputed material facts show that Plaintiff was indeed replaced by a younger and less experienced male which is significant evidence of pretext given Defendants false claim to the contrary.  (2AA588, 593, 600 [MF 31, 41, 57].) Multiple courts have found that such evidence was enough.  *Sandell v. Taylor-Listug, Inc.* 188 Cal.App.4th 297, 321(2010) (citing *Hersant*, 57 Cal. App.4th at 1002–1003); *Branson v. Price River Coal Co.* (10th Cir.1988) 853 F.2d 768, 771 (employer fired older employees but retained younger employees in similar positions).

Defendants previously admitted material facts were disputed by admissible evidence but claimed these triable facts were "*limited and unmaterial facts*, specifically concerning an alleged replacement, *were not enough…*" (4AA1054 [Opposition to the Motion, at pg. 7, lns. 26-27].) No legal authority supports this alleged "*limited and unmaterial facts*" standard advocated by Defendants.  Defendants lack citation to any controlling legal authority, which demands that Plaintiff have more than a single triable issue of fact to defeat summary judgment because there is no such authority. *Light,* 14 Cal.App.5th at 94.

Defendants incorrectly argue that replacing Plaintiff with a younger, less experienced male is "too weak to sustain a reasonable inference in the employee's favor." (4AA1053 [Opposition to the Motion, at pg. 6, lns. 11-15].) In actuality, such evidence is sufficient. See, *Light,* 14 Cal.App.5th at 94).] Not only did Defendants replace Plaintiff with a younger, less experienced male, but worse yet, the false evidence to the contrary in support of not one but three material facts which are disputed. (2AA588-589, 593-44, 3AA600-01[MF #31, 41, & 57].)

An inference of discrimination could arise from the evidence that a satisfactory age-protected worker was laid off during a workforce reduction, when, at the same time, younger employees were retained in similar jobs or were reassigned to positions for which the Plaintiff also qualified. *Guz v. Bechtel Nat. Inc.* (2000) 24 Cal. 4th 317, 367, 366, citing *O'Connor v. Consolidated Coin Caterers Corp.* (1996) 517 U.S. 308 [logical inference of age discrimination may arise where replacement is significantly younger, even if not below statutorily protected age]. In *Sandell*, the court found that the plaintiff made a prima facie showing giving rise to discrimination, when he was replaced by someone who was only five years younger. *Sandell v. Taylor Listug, Inc.* (2010) 188 Cal.App.4th 297, 323.

In the present case, there is evidence in the Declaration of John de Los Reyes, amongst others, that was admitted into evidence that disputes the reasons provided by Defendants and required the motion for the summary to be denied. (2AA563-67.) After the trial court's ruling on the objections regarding the MSJ, there was still a significant amount of evidence in the seven witness declarations, as well as Plaintiff's declaration, and, most importantly, the relevant portions of the declaration of John de Los Reyes. As such, triable issues of material fact exist from which it could be reasonably inferred that the proffered reason is false or that discrimination or

retaliation occurred. (2AA578, 586, 588, 591-594, 595, 600 [MF # 2, 25, 31, 40-41, 45 & 57].)

Defendants' Material facts 31, 41, and 57 were also disputed by admissible evidence from the declaration of John Del Los Reyes. (2AA593-94, 3AA600-01; 2AA566 [Reyes decl., ¶ 13-14].) There is a triable issue of material fact regarding whether a younger male replaced Plaintiff. As identified by the court and conceded by Defendants, the related facts numbered 31, 41 and 57 alone required denial, and there are many more. (2AA588, 593-94, 3AA600-01.) The trier of fact must weigh the Plaintiff's evidence regarding the reason for her termination, the number of women in executive positions, and whether a younger male replaced Plaintiff.

Defendants describe how they purchased Plaintiff's company instead of others owned by men but failed to explain further that Microsoft expected them to buy a woman's company and have at least one female executive given Defendant SoftwareONE's complete lack of diversity. (4AA058 [Doe decl., at ¶ 3].) It is undisputed that Defendants had an issue with diversity and had no female in senior executives' leadership positions before Plaintiff was hired. (2AA566 [Reyes decl., ¶ 15].)

After SoftwareONE received Plaintiff's complaint at the NSK, Plaintiff's employment changed. Before Plaintiff's complaints at NSK, there were no complaints about Plaintiff. The first record of any complaints about Plaintiff began in February 2017 (which suspiciously describes conversations SoftwareONE claims occurred before NSK about things that happened at NSK) after plaintiffs' complaint at the NSK in January 2017 about gender discrimination. The evidence suggests that Defendants executives sought out employees to assist them with fabricating complaints about Plaintiff's performance. The trier of fact at trial must be the one to make factual determinations as to the sufficiency of the evidence. Accordingly, the trial court's ruling on the Motion for a New Trial should be

34

affirmed because the Defendants' summary judgment motion should have been denied. (2AA578, 586, 588, 591-594, 595, 600 [MF # 2, 25, 31, 40-41, 45 & 57].)

### B. Plaintiff Adequately Performed in Her Position

Plaintiff has evidence showing that she was performing her job adequately before she was demoted/terminated. As the trial court ruled, there is "evidence that plaintiff had been performing well at the company (Doe decl., ¶ 7)." (7 AA 1865.) The evidence shows that Plaintiff was paid a bonus every quarter for meeting her goals for her entire employment at SoftwareONE. (7 AA 959 [Doe decl., ¶ 7-8].)

Plaintiff also has at least seven witnesses prepared to testify that she was performing her job satisfactorily. [MF # 14-16 2AA555 [Franklin decl., ¶ 7; 2AA557 [Brannon decl., ¶ 11; 2AA564 [Reyes decl., ¶ 3].; 2AA572 [Hunter decl., ¶ 7]; 2AA576 [Elliott decl., ¶ 7]; 2AA570 [Foust decl., ¶ 9]; 2AA561 [Cristopher decl., ¶ 4-7].) Defendants' PMK, Ms. Ravencroft also conceded that Plaintiff's termination was not because she was not adequately performing her position.  Specifically, that Plaintiff's termination *"was not for cause."* (2AA591-93 [MF # 40]; 2AA520-25 [Ravencroft depo., at 65:8-14 (Emphasis added).]

There is an abundance of evidence of discriminatory animus towards older or female employees in the present case.  Plaintiff can show a *prima facie* case of discrimination because (1) she was a member of a protected class (gender and age), (2) she was performing her job satisfactorily, (3) she suffered an adverse employment action, and (4) the action occurred because of a discriminatory motive; or for gender or age discrimination, that she was replaced by a significantly younger or male person. *Guz v. Betchel Nat. Inc.* (2000) 24 Cal.4th 317, 355; *Hersant v. California Dept. Social Services* (1997) 57 Cal.App.4th 997, 1002-1003.

35

After Plaintiff had opposed what she perceived as discrimination at the 2017 NSK in January 2017 and her complaints about SoftwareONE not paying her team wages owed, Mr. Berchtold began to retaliate against her. (3 AA 595-6 [MF # 45-46] 2AA493 [Doe decl., ¶ 6-8]; *but see* 2AA368, 425 [Ravencroft Decl., ¶14, Ex. M].)  First, Mr. Berchtold and Mr. Fitzgerald lied to Plaintiff's team during a secret meeting during which they asked Plaintiff's team to talk negatively about Plaintiff.  Then, they solicited Plaintiff to be interviewed by Ravencroft as part of her "investigations."  To retaliate against Plaintiff and fabricate a reason to terminate her, Defendants began conducting "investigations" regarding Plaintiff's performance despite the fact there had never been a complaint about Plaintiff's performance before the secret meeting Plaintiff's team during the first part of February 2017.

There is another triable issue as to material fact as to number 15 because it is false as shown by Defendant's own evidence. (2AA582 [MF #15].)  Strangely, Defendants cite Ms. Ravenscroft's deposition for the false claim that, "Between December 2016 and April 2017, Ravencroft never received even five complaints, much less five per month about Plaintiff as Defendant claims." (2AA582 [MF # 15]; [Murphy Decl., ¶2, Ex. A,] [Ravencroft Depo., 89:22-90:21, 91:15-92:3.])  In truth, Ravencroft never received any such complaints, at best she prepared notes after the alleged conversations with few employees that Plaintiff had to discipline and were terminated.[2]  Ms. Ravencroft could only recall these few, certainly not the

---

[2] Ben Powell was fired because he did not achieve his sales numbers and was fired by another manager months after being reassigned from Plaintiff's team. (2AA583 [MF 17]; 2AA564 [Reyes, at ¶ 4].)  Shannon Culley was a Sales Solutions Specialist that had issues with alcohol and was fired because he fell off the wagon, went dark, and stopped doing his job. (2AA582-83 [MF 16]; 2AA564 [Reyes, at ¶ 4].)

more than 30 (5 x 6 months = 30). This is simply false, but at a minimum it is triable issue of material fact.

Ms. Ravencroft admitted in her deposition that the complaints she claims she received were in 2017, after Plaintiff had completed to her in January 2017 at the 2017 NSK. (1AA200 [Ravencroft, at 90:11-13.] At minimum, there is a triable issue of fact regarding how many complaints, if any, and whether Plaintiff's complaints predated these pretextual notes that Ms. Ravencroft prepared sometime after the fact and never disclosed to Plaintiff.

### C. Plaintiff Presented Evidence of Statements and Statistics that Could Show Discriminatory Intentions Towards Women

Discriminatory remarks *may be considered* if they "corroborate direct evidence of discrimination or gain significance in conjunction with other circumstantial evidence... Thus, a trial court must review and base its summary judgment determination on the totality of the evidence in the record, including any relevant discriminatory remarks." *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 541.

In the present case, the trial court identified the undisputed evidence of "comments by the 'Leader of the USA Services team' that the company is a 'guy's club' so she was 'never going to make it' and by another executive that she was a 'bitch'. (2AA589-90, 596 [MF # 34, 46].) "On approximately October 9, 2017, Jason Cochran, Leader of the USA Services team, publicly blasted and yelled at me that SoftwareONE 'is a guy's club' and that as a woman, I was 'never going to make it' in the company. I was told that I "needed to learn to live within Patrick's world ...." (2AA493-94 [Doe decl., ¶ 8-9.].) It is undisputed that Plaintiff considered the remarks to be discriminatory and that she made a complaint about the incident by email to the Defendant's CEO, Mr. Lomax, and Ms. Ravencroft amongst others on

37

October 14, 2017. (2AA500-02 [Doe decl., Ex. 1].) At the time, Mr. Cochran was Plaintiff's supervisor ("Leader") at the time since SoftwareONE had demoted Plaintiff from being an executive/manager ("Leader") to effectively a salesperson in April 2017. (2AA587 [MF # 28].) At a minimum, evidence of these statements could show discriminatory intent towards older women when considered in conjunction with the totality of the evidence in the record. (3 RT 1865-66.) Overall, numerous witnesses describe how the executives were all younger, males and part of a "boy's club" which excluded Plaintiff and doomed her chances for success. (2AA554 [Franklin decl., ¶ 3].)

### D. Evidence Of The "Temporal Connection Between Her Demotion and Her Asserted Complaints About A Discriminatory Culture."

Proximity in time between the protected activity and adverse action can be strong evidence of retaliatory motive and sufficient at least to meet the causal link element of the prima facie case. *Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 243. In the present case, it is undisputed that less than nine months after Plaintiff's protected activity, SoftwareONE terminated Plaintiff's employment on July 20, 2018. (MF #39.) Lomax made the termination decision in retaliation for her complaints. (2AA591-93 [MF # 40.])

However, even an extended period between the protected activity and employment action is not a death knell if other evidence exists. In *Wysinger v. Automobile Club of Southern California*, the plaintiff established causation. However, he filed an EEOC charge in 1999. He was not subjected to adverse transfer until 2002 or 2003 by showing a pattern of conduct in the interim consistent with retaliatory intent, including excluding the plaintiff from meetings, threatening to "crush" dissenting managers like him, and

38

ignoring his requests for accommodations. *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 421-422.

Plaintiff was retaliated against for her complaints about gender discrimination and failure to pay wages. *California Fair Employment & Housing Com. v. Gemini Aluminum* (2004) 122 Cal.App.4th 1004, 1023 ("Pretext may also be inferred from the timing of the company's termination decision, by the identity of the person making the decision, and by the terminated employee's job performance before termination.") In California and the Ninth Circuit, the courts recognize temporal proximity as highly probative of a causal connection and give substantial weight to evidence of temporal proximity. *Clark County School Dist. v. Breeden* (2011) 532 U.S. 268: *Dawson v. Entek International* (9th Cir. 2011) 630 F.3d 928.

Within eight months after Plaintiff complained about the discriminatory environment at the company and being harassed by Jason Cochran, SoftwareONE terminated Plaintiff's employment. (MF #39.) In the present case, it is undisputed that within eight months after Plaintiff's protected activity in October 2017, SoftwareONE terminated Plaintiff's employment on July 20, 2018. [MF #46.] The admissible evidence also shows that Plaintiff complained about Defendants conduct which she believed was unlawful in January 2017, before any complaints were prepared by Defendant's HR manager. (3 AA 595-6 [MF # 45-46]; 2AA495 [Doe decl., ¶ 6-7].).] Regardless of which occurred first and the veracity of the complaints, this is evidence that should be heard at trial. Plaintiff has presented multiple declarations which contradict the alleged statements about Plaintiff's performance as recorded by Defendants Head of Human Resources, Patty Ravencroft. (2AA591-93 [MF # 40, 45-46.]

These disputed material facts are not a result of speculation or manufactured disputes, but facts with the California Courts have already held to have the potential to show that a Defendant's proffered reason was a

pretext. *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028; *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297; *Hersant v. Department of Social Services* (1997) 57 Cal. App.4th 1000. The temporal proximity alone may be sufficient to establish a prima facie causal connection in the present case. Still, when combined with the other disputed facts (i.e., replaced by a younger male, no women executives, contrary declarations about performance, being called "bitch" with minimal repercussions to the offender), it is clear that a triable issue of material facts exists.

In the present case, Plaintiff can show a pattern of conduct in the interim consistent with retaliatory intent, including excluding the plaintiff from meetings, not providing her with the necessary information, and ignoring assistance. Proof of intent often depends on circumstantial evidence because it consists of subjective matters only the employer knows—i.e., its attitude toward the plaintiff and reasons for taking action.

SoftwareONE never questioned Plaintiff's performance until she engaged in protected activity when she complained about discrimination at the 2017 NSK in Cancun in January 2017. (2AA493 [Doe Decl., ¶6-7], 4AA958 [Doe Decl., ¶5].) After NSK in January 2017, the other executives started treating Plaintiff differently, despite her performance.

On February 22, 2017, Mr. Berchtold sent an email to the male-dominated leadership team. He stated that things were going in the wrong direction with Plaintiff, **based on "our feedback from Cancun."** (2AA425.) Other than Plaintiff's complaints in January 2017 to Ravencroft and Lomax about being uncomfortable with how the leadership treated her and the other female employees at the 2017 NSK in Cancun, there is no record of what Mr. Berchtold meant by "our feedback from Cancun" other than her complaints in January 2017 about the discriminatory culture at SoftwareONE that she had experienced at the 2017 NSK in Cancun. (2AA595-97 [MF # 45-46].)

40

### E. Plaintiff Was One of Only Females In A Leadership Position At SoftwareONE Before She Was Demoted

Plaintiff was one of the few, if any, females that held leadership positions. (2AA578 [MF #2]; 4AA962 [Doe Decl., at ¶ 18].) While the information does not necessarily reflect why Plaintiff was terminated as a leader, it does reflect a disproportion number of men in leadership position. Whatever else might be said about this evidence, the court could reasonably infer, in light of Plaintiff's other evidence, that the statistics reflected an unwelcoming atmosphere for women and older workers. *Life Technologies Corp. v. Superior Court* (2011) 197 Cal. App. 4th 640 (holding that under the Fair Employment and Housing Act (FEHA), statistical evidence may be introduced.) To create an inference of intentional discrimination in a Fair Employment and Housing Act (FEHA) case, statistics must demonstrate a significant disparity and must eliminate nondiscriminatory reasons for the apparent disparity. (*Id.*)

In the present case, Defendant claimed that their executive team was "comprised of half men and half women." (2AA578 [MF #2].) However, Plaintiff presented evidence showing that it was at best 15% women and 85% men and Plaintiff was the only executive that was female before she was demoted. (2AA578 [MF #2].) Mr. De Los Reyes testified, "[w]hile I was employed by SoftwareONE, Plaintiff was the only female executive or team leader. Lack of diversity is also a big problem at SoftwareONE." (2AA578 [MF #2]; 2AA566 [Reyes decl., ¶ 15].)   Similarly, Mr. Franklin testified, "Plaintiff was the only female executive while I was working at SoftwareONE. SoftwareONE's core executive team for North America was all male, except for Plaintiff. (2AA578 [MF #2]; 2AA554 [Franklin decl., ¶ 6].)

By including material fact number 2 in their separate statement, Defendant submitted that it was material. *Nazir*, 143 Cal.App.4th at 252.

Given the Defendant included number 2 ("comprised of half men and half women") as part of its separate statement of material facts and it was disputed by Plaintiff with admissible evidence, the MSJ should have been denied. (2AA578 [MF #2].)   Further, considering all the evidence as a whole and drawing in support of the judgment all reasonable inferences, the evidence was sufficient to support the finding that a substantial motivating factor in Plaintiff's termination was her age and gender as the trial court found when granting the motion for new trial.

### F. Plaintiff Also Has Evidence to Establish Discrimination Based on Disparate Discipline

Plaintiff also has evidence to establish discrimination based on disparate discipline. To establish disparate discipline, it must appear "that the misconduct for which the employer discharged the plaintiff was the same or similar to what a similarly situated employee engaged in, but that the employer did not discipline the other employee similarly." *Lathem v. Department of Children and Youth Services* (1999) 172 F.3d 786, 792. Ms. Ravencroft claims to have taken the time to type up notes (and talking points) about alleged employees complaining about Plaintiff. (2AA370, 2AA427-28 [Ravencroft ¶ 15, Ex. N].)  However, when Plaintiff complained about being called a "bitch" and told she would never succeed at SoftwareONE because she was woman, Ms. Ravencroft only took a few handwritten notes and did nothing else. (2AA372, 2AA451-52 [Ravencroft ¶ 25, Ex. U].)

Now, Defendants inappropriately argue that Plaintiff was terminated because she was "abusive." (Brief, at pg. 14.)  Jason Cochran was never disciplined or terminated.  This illustrates Defendant's mindset about women in charge, any discipline against a male is "abuse" because she is a acting like "bitch." (2AA587 [MF #46] (citing Doe decl., ¶ 8, Ex. 1.] SoftwareONE showed its disregard when Plaintiff submitted a formal discrimination

complaint about Jason Cochran on October 14, 2017, because Jason Cochran, Leader of the USA Services team when Plaintiff was only a salesperson, told Plaintiff that SoftwareONE "is a guy's club" and that as a woman, Plaintiff was "never going to make it" in the company. (2AA587 [MF #46] (citing Doe decl., ¶ 8, Ex. 1.]

### G. Triable Issues of Fact Exist Regarding Whether Defendants Proffered Reason Were Pretextual

Plaintiff established a triable issue on whether SoftwareONE fired her for her poor job performance because it is untrue and pretextual, as shown by the substantial evidence that contradicted SoftwareONE's various reasons it now claims as to why Plaintiff was terminated. (2AA582, 587, 591-593 [MF #14, 28, 40].) In cases involving affirmative adverse employment actions, pretext may be demonstrated by showing "'the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge.'" *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 224; see also *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.

Pretext may also be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [asserted] non-discriminatory reasons." *Sandell*, 188 Cal.App.4th at 314; *Morgan v. Regents of University of California* (2000) 88 Cal.4th 56, 75; *Reeves v. MV Transportation, Inc.* (2010) 186 Cal.App.4th 666, 677 [employer's veracity may be in question " 'where the employer has given shifting, contradictory, implausible, uninformed, or factually baseless justifications for its actions' "].)

43

Simply showing the employer was lying, without evidence of discriminatory motive, is not enough to infer discriminatory animus. "The pertinent [FEHA] statutes do not prohibit lying; they prohibit discrimination." *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 361; *see also Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147, 1156. "However, evidence that the employer's claimed reason is *false*—such as that it conflicts with other evidence, or appears to have been contrived after the fact—will tend to suggest that the employer seeks to conceal the real reason for its actions, and this, in turn, may support an inference that the real reason was unlawful." *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686,715.

In the present case, Plaintiff has evidence to show that the multiple later concocted reasons for her termination are false because they conflict with other evidence and appear to have been contrived. *Id.*  It was after this litigation had begun that Defendants claimed that Plaintiff's performance was a reason for her termination.  Defendants PMK Ravencroft admitted, "it was not for cause that she was terminated." (2AA591-93 [MF # 40]; 2AA520-25 [Ravencroft depo., at 65:8-14].) Plaintiff was never told her performance was unsatisfactory when she was terminated. (2AA496 [Doe decl., ¶ 19.].)  Further, none of the individuals who worked with Defendant recall her ever being aggressive, condescending, or insulting when communicating with employees and do not recall any complaints about her. (2AA591-93 [MF # 40].)

There is evidence to show that SoftwareONE's alleged reasons for Plaintiff's demotion could conclude the reasons are false or pretext.  For example, when Plaintiff was demoted, the change in status did not refer to her performance as unsatisfactory.  Instead, the form has many questions, but only Plaintiff's name and the date are filled out on the form by Defendants. (2AA504.)

44

Further, Ms. Ravencroft claims that Mr. Lomax coached Plaintiff from December 2016 through April 2017 due to complaints received, but Plaintiff did not report to Mr. Lomax until April 2017. (5AA1452.) The evidence suggests no such counseling occurred. Instead, Plaintiff has shown that she was retaliated against for her complaints and set up to fail. (2AA584-87 [MF # 20, 25-27].)

Pretext may also be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Reeves v. MV Transportation, Inc.* (2010) 186 Cal.App.4th 666, 677.

While SoftwareONE demoted Plaintiff from her managerial position, she still performed in her new role as a salesperson. The decision to terminate Plaintiff in 2018 was not because of any redundancy of Plaintiff's role caused by SoftwareONE's acquisition of UC Point. (2AA591-92 [MF # 40]; 2AA567 [Reyes decl., ¶18].) When Plaintiff was terminated, she had already been replaced her as the Global UC Lead, and Taylor Anderson had been hired to assume her North America territory. UC Point was not redundant to the team in the USA. UC Point white-labeled software, and they were based in Germany. Bringing on UC Point would not have impacted what Plaintiff did every day, as it pertained in the United States. (2AA591-92 [MF # 40]; 2AA567 [Reyes decl., ¶18].)

The restructuring of the solutions specialist team had nothing to do with her termination. (2AA591-92 [MF # 40].) John De Los Reyes declared that "[t]he decision to terminate Plaintiff in 2018 was not based on any bad behavior by Plaintiff or the restructuring of the solutions specialist team. *The men from the UK and Switzerland did not want to deal with Plaintiff after she disapproved of how the young male executives treated the female employees at the 2017 NSK.* She was a former business owner and would

45

have been treated differently had she been a man." (2AA591-92 [MF # 40]; 2AA566-67 [Reyes decl., ¶16].) (emphasis added).

While SoftwareONE's claim that Plaintiff's new role was no longer needed, SoftwareONE still has dozens of sales representatives and a Sales Solutions Specialist specializing in UC today. (2AA591-92 [MF #40]; 2AA566-67 [Reyes decl., ¶16-17].) SoftwareONE's claim is unsupported by anything other than conclusory statements.

The submitted declarations also provide ample evidence of discrimination. While "[p]roving intentional discrimination can be difficult because '[t]here will seldom be "eyewitness" testimony as to the employer's mental processes.' [Citations.] It is rare for a plaintiff to produce direct evidence or 'smoking gun' evidence of discrimination. [Citations.]" *Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal. App.4th 1735, 1748.. Overall, the characterization of Plaintiff is undercut by the testimony of seven of Plaintiff's former coworkers, including but not limited to the following:

James Brannon declared, "there were two determining factors why Plaintiff got terminated. The first reason I see is that she is a woman. SoftwareONE acquired Plaintiff's business, restructured her business, reassigned her employees, and did not want to pay her the fair remuneration that they agreed on." (2AA591-92 [MF # 40]; 2AA557 [Brannon decl., ¶16].)

Kevin Hunter declared: "Plaintiff was set up for failure by SoftwareONE's executive management. It is impossible to achieve success when you have one person doing the job of many. I never understood why they treated her differently. She was one of the only female executives and

other than most if not all the other executives." (2AA591-92 [MF # 40]; 2AA572 [Hunter decl., ¶ 7]).]³

Will Elliott declared that he was "unaware of any unacceptable behavior by Plaintiff which would have led to her termination. Plaintiff was always a professional. I never heard about any issue with her work performance, or leadership was always responsive and did an outstanding job. (2AA591-92 [MF # 40]; 2AA576 [Elliott decl., ¶ 7].)

Judy Foust declared, "Plaintiff was a great employee at SoftwareONE, a great coworker, and an example to follow. I do not believe that any circumstances or performance issues could lead to her termination." (2AA591-92 [MF # 40]; 2AA570 [Foust decl., ¶ 9].)

In addition to the numerous witnesses' statement, SoftwareONE's inconsistent and unsupported statements support Plaintiff's position. Defendants are "unworthy of credence" given the inconsistencies and contradictions in their proffered reasons for demoting and then terminating Plaintiff. Over the past few years, in this case, Defendants first presented at least three different "reasons" for why Plaintiff was terminated after she filed the present case, including 1) Behavioral issues (none identified); 2) Restructuring (not accurate), and 3) Acquisition of UC Point (not accurate). These three reasons are inconsistent with each other, and, given the lack of evidence and the fact that most employers only have one reason-why, why do Defendants now have three? (2AA591-93 [MF 40].)

Defendants do not have a single document from when Plaintiff was fired that lists these reasons for demotion or termination. Given the shifting, contradictory, inconsistencies, and factually baseless proffered legitimate

_____

³ The trial court sustained SoftwareONE's objection to this paragraph of Kevin Hunter's declaration. However, this Court reviews these objections de novo. *Pipiton v. Williams* (2016) 244 Cal.App.4th 1437, 1451.

reasons for its action, a reasonable factfinder could rationally find them 'unworthy of credence."

Plaintiff's evidence included admissible circumstantial evidence, which could support a reasoned inference of discriminatory or retaliatory animus. *Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133. Whether Plaintiff was terminated for reasons other than those offered by Defendant, including her complaints about age and gender discrimination, are triable issues of fact that exist. (2AA578, 586, 588, 591-594, 595, 600 [MF # 2, 25, 31, 40-41, 45 & 57].)

### H. The Same-Actor Inference Does Not Apply Because Mr. Lomax Did Not Make the Decision to Hire Plaintiff

SoftwareONE incorrectly argues that the "same actor" (Lomax) hired and fired Plaintiff "within a short period." However, there is no evidence showing that Lomax alone decided to hire or fire Plaintiff. Instead, the evidence cited by Defendants describes how Plaintiff was hired by Patrick Winter when SoftwareONE's Board of Directors decided to purchase Plaintiff's company and include her employment as part of the purchase price at the behest of Microsoft. (2AA492 [Doe decl., ¶ 3].)

The court in *Horn* made it clear that the same-actor presumption was **not** irrebuttable and only requires some evidence to rebut this alleged inference. *Horn v. Cushman & Wakefield Western*, (1999) 72 Cal.App.4th 798, 809 (citing *Brown v. CSC Logic, Inc.* (1996) 82 F.3d 651, 658. Further, this court in *Sandell* held that "even if a 'strong inference' of no discrimination exists, this would not be a reason to grant summary judgment" in SoftwareONE's favor. *Sandell,* 188 Cal.App.4th 324. "A strong inference is just that—an inference. The fact that a juror could reasonably draw a different inference is sufficient to preclude summary judgment. (See Code of Civ. Proc., § 437c, subd. (c) ['In determining whether the papers show that

48

there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, *except summary judgment may not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence* ... which raise a triable issue as to any material fact.' (Italics added.)]; see also *Saylin v. Cal. Ins. Guar. Ass'n* (1986) 179 Cal.App.3d 256, 261 [court has no power to weigh one inference against another in a summary proceeding].)" *Id.*

Plaintiff has adequately and consistently offered some evidence of discriminatory intent. If Lomax had hired Plaintiff, it was because SoftwareONE needed to purchase a UC business like Plaintiff's company, not because he wanted to hire Plaintiff. The other two business were already being purchased. Defendants admit that Plaintiff was likely treated differently than other younger, male executives because "management hated her," including but not limited to, secretly removing her from meetings, leaving abandoned at a dinner meeting in Seattle without telling her the meeting had moved, being told what to wear on a flight, and being called a "Bitch" by Jason Cochran. (1AA65 [MSJ, at pg. 15, lines 3-5]; 2AA597 [MF # 47-48]; 2AA565-66 [Reyes decl., ¶ 10, 12].) However, Defendants falsely claim there is no evidence that such dinners occurred or that she was excluded or removed from meetings. This could not be further from the truth, as the emails and multiple separate witnesses confirmed. (2AA597 [MF # 47-48]; 2AA565-66 [Reyes decl., ¶ 10, 12].)

An illustrating example of the discrimination against older females at SoftwareONE, is a comparison of the Plaintiff and John De Los Reyes employment as SoftwareONE. Mr. De Los Reyes was hired by Plaintiff to assist her as when she was still the Global Practice Lead for the Skype for Business team (also known as the UC team). (2AA492 [Reyes decl., ¶ 2].)

However, Mr. De Los Reyes had a much different experience at SoftwareONE that Plaintiff because a younger male. While she was left out f meetings and excluded, he was promoted and eventually replaced Plaintiff, despite him admittedly having less experience and connections. (2AA565-68 [Reyes decl., ¶ 7-12, 17-18].) Had Plaintiff been a younger, male she likely would have advance at SoftwareONE similar to Mr. De Los Reyes. This unequal treatment is evidence which consider with all the other evidence could support of finding of discriminatory or retaliatory animus.

This conclusion is further supported by the numerous witnesses' statements from both older and younger men and women as corroborate the how Plaintiff was discriminated against. These statements are all from former employees of SoftwareONE that witnessed what occurred, together with the other evidence, this shows pretext and at a minimum is sufficient to require denial of the MSJ. For example, Judy Foust declared, "I genuinely believe that Plaintiff's age and gender played a significant role in her demotion and, finally, termination. Other than the men in leadership positions, she did not satisfy their specific expectations, and therefore they treated her differently." (2AA587 [MF # 28]; 2AA570 [Foust decl., ¶ 8].)

Defendants have acknowledged the evidence of age discrimination in the form of the statements they were made to her that "some of these young men say you're old enough to be my mother and refer to my age in a negative context." (1AA65 [MSJ, p 15, lines 23-24]; 3AA600 [MF #56].). But have repeatedly claim that that "No one, certainly not a younger male, replaced her at any time." (1AA65 [MSJ, p 15, lines 23-24]; 3AA600 [MF #57].). As the trial court found, there is admissible evidence that support the conclusion that this is false, and Plaintiff was replaced by younger males. (7AA1865-66.) The male that replaced Plaintiff confirms in his declaration that he not only replaced Plaintiff but was much younger than Plaintiff at the time. (2AA566 [Reyes decl., ¶ 13-14]; Doe decl., ¶ 16, 19-20).] Overall, Plaintiff

presented evidence to show that she was replaced by a younger male, despite Defendants false claims to the contrary. (2AA588, 593, 600 [MF 31, 41, 57]; 2AA566 [Reyes decl., ¶ 13-14].)   Therefore, Plaintiff clearly has some evidence to rebut this alleged same actor inference and multiple triable issues of fact. (2AA578, 586, 588, 591-594, 595, 600 [MF # 2, 25, 31, 40-41, 45 & 57].)

**VII.    The Pending Motion to Compel Should Have Been Granted Because Nothing Suggests It Was Moot**

Plaintiff was entitled to the discovery needed to oppose the MSJ, including deposing the two individuals that submitted declarations in support of the MSJ.  She timely sought these depositions, and was forced to seek to compel these depositions, a continuance of the motion for summary judgment could have permitted her to provide the court with eve further material information regarding her performance, including the bonus she received and the performance addendums forms that exist. (4AA959, 967-75 [Doe decl., ¶ 6-7, Ex. 1-2].)  Under these circumstances, Plaintiff's motion to compel should have been granted, Defendant's motion should have been denied or continued. *Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254–258.

Code of Civil Procedure § 437c, subdivision (h) provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." Subdivision (h) was added to section 437c "'[t]o mitigate summary judgment's harshness,'... [Citations]" *Frazee v. Seely* (2002) 95 Cal. App.4th 627, 634, 115 Cal. Rptr.2d 780 "for an opposing party who has not had an

opportunity to marshal the evidence[.]." *Mary Morgan, Inc. v. Melzark* *(*1996) 49 Cal. App.4th 765, 770. The statute mandates a continuance of a summary judgment hearing upon a good faith showing by affidavit that additional time is needed to obtain facts essential to justify opposition to the motion. *Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 167; *Dee v. Vintage Petroleum, Inc.* (2003) 106 Cal.App.4th 30, 34. Plaintiff's motion to compel should have been granted and Defendant's motion for summary judgment should have been denied for this reason alone. .

The facts surrounding Plaintiff's pending motion to compel the depositions of Ms. Ravencroft and Mr. Lomax shows Plaintiff had diligently done everything correctly and according to the discovery rules to pursue these depositions. Plaintiff's motion to compel should have been granted; Defendant's motion should have been denied or continued. *Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254–258.

While Plaintiff does have admissible evidence, which creates triable issues of material fact, she would have more admissible evidence if Defendants had complied and appeared for deposition. Plaintiff properly noticed the depositions of the PMK and Neil Lomax (Plaintiff Supervisor) numerous times. Defendants' refusal to comply with the rules significantly delayed these depositions. (5AA1319-21)    In fact, defense counsel specifically stated, "for you to have another session of this deposition, you're going to have to bring a motion to compel..." and Defendants refused to cooperate in the discovery process by refusing to complete the PMK deposition without bringing a motion to compel. (5AA1492-94 [Ravencroft Transcript, pg. 171, lns. 2-4].)

The court tentatively granted Plaintiff's motion to compel and then continued it after Defendants complained that Plaintiff would be given an advantage when opposing the motion for summary judgment, which constitutes an exceptional irregularity. (7AA1806.) This was not only an

irregularity but an error that prejudiced Plaintiff because she was not provided with evidence to meet the incorrect burden placed on her by the Court to produce multiple disputed material facts instead of just a single material fact. (5AA1321, 7AA1806 [Trujillo decl., ¶ 12, Exhibit 7].)

Given the motion to compel, which included a declaration from Plaintiff's counsel was before the Court at the time when it ruled on the motion for summary judgment, Plaintiff did have a declaration that did specify what she sought from the depositions, did specify that those individuals might have something that would create a triable issue and specified why they remained outstanding. (5AA1320, 5AA1735-1802 [Trujillo decl., ¶ 10, Ex. 6].) Given the trial court should have reached a different conclusion regarding the motion to compel, when it granted the MSJ, it provides another reason for the court to affirm the trial court's order to grant the motion for new trial.

## CONCLUSION

For the reason stated above, the burden of showing the trial court abused its discretion belongs to Defendants. When it granted the MSJ, the trial court incorrect held that a showing of pretext was the sole means of rebutting the employer's evidence of nonretaliatory intent. The trial court correct its error of law when it granted Plaintiff's motion for a new trial because the evidence, when taken as a whole, could support a reasoned inference of discriminatory or retaliatory animus. Therefore, Plaintiff respectfully ask this court to affirm the trial court's ruling.

Dated: March 9, 2022      TRUJILLO & WINNICK, LLP

By: /s/ Anthony W. Trujillo
_____    Anthony W. Trujillo, Esq.
Attorneys for Respondent

## <u>CERTIFICATE OF WORD COUNT</u>

### [Cal. Rules of Court, Rule 8.204(c)(1), 8.490(b)(6)]

The text of this brief consists of 13,894 words as counted by Word by Microsoft, the word processing program used to generate the brief.

Dated: March 9, 2022,                TRUJILLO & WINNICK, LLP

By: <u>/s/ Anthony W. Trujillo</u>
        Anthony W. Trujillo, Esq.
        Attorneys for Respondent

## **PROOF OF SERVICE**

I am a resident of California, over the age of eighteen years, and not a party to the within the action. My business address is Trujillo & Winnick, LLP, 2919 ½ Main Street, Santa Monica, CA 90405. On March 9, 2022, I served the within Documents:

### **RESPONDENT'S BRIEF**

| XXX | **ELECTRONIC SERVICE**: submitted electronically through the Court's electronic filing system (TrueFiling)) |

| XXX | **MAIL**: Place the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Monica, California addressed as set forth below. |

Clerk, Civil Filing
Orange County Superior Court
Central Justice Center
700 Civic Center Drive West
Santa Ana, CA 92701

Dylan B. Carp                     **Representing:**
Jackson Lewis P.C.                Defendants and Appellants,
50 California Street,9th Floor    SoftwareONE, INC., et al.
San Francisco, CA 94111
Email: dylan.carp@jacksonlewis.com

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the United States Postal Service on that same day with postage fully prepaid at Santa Monica, California, in the ordinary course of business. I am aware that service is presumed invalid on motion of the party served if the postal cancellation date or postage meter date is more than one day after the deposit for mailing contained in the affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on March 9, 2022, at Santa Monica, California

By: /s/ Anthony W. Trujillo

55

# Exhibit B

9:46

 **Carol (Callie)** ›
sunshine_snow_sea



# Carol (Callie)

sunshine_snow_sea

207 followers · 96 posts

You don't follow each other on Instagram

**View profile**

MAY 28 AT 9:35 AM

**Hi Ronda, I'm Carol Eastman, a former softwareone employee, in the midst of a lawsuit which includes Mike Fitzgerald. My attorney would like to speak with you to see where we can help each other. Would you be comfortable with speaking with him? My cell is** ▇▇▇▇▇▇**.** 🙏

+ Message...

# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-22171-JEM

MICHAEL J. FITZGERALD,
individually,

     Plaintiff,

v.

RONDA MCNAE, individually,

     Defendant.

_____/

## <u>NOTICE OF ISSUANCE OF SUBPOENAS</u>

     PLEASE TAKE NOTICE that the Defendant, Ronda McNae, intends to serve

the attached subpoenas commanding production of documents, electronically stored

information, or tangible things upon:

1. Microsoft Corporation
   c/o Registered Agent Corporation Service Company
   300 Deschutes Way SW, Ste. 208 MC-CSC1,
   Tumwater, WA 98501

2. SoftwareONE, Inc.
   c/o Registered Agent CT Corporation System
   301 S Bedford St., Ste. 1
   Madison, WI 53703



BRODSKY FOTIU-WOJTOWICZ

Respectfully submitted,

By: /s/*Alaina Fotiu-Wojtowicz*
Alaina Fotiu-Wojtowicz, Esq.
Florida Bar No.: 84179
BRODSKY FOTIU-WOJTOWICZ, PLLC
*Counsel for Defendant Ronda McNae*
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email upon all parties listed on the Service List below, on this 21st day of September, 2022.

/s/*Alaina Fotiu-Wojtowicz*
Alaina Fotiu-Wojtowicz, Esq.

## SERVICE LIST

Peter E. Berlowe, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com



AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| MICHAEL J. FITZGERALD,<br>*Plaintiff*<br>v.<br>RONDA MCNAE<br>*Defendant* | )<br>)<br>)  Civil Action No.  1:22-cv-22171-JEM<br>)<br>)<br>) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Microsoft Corporation c/o Registered Agenent Corporation Service Company
          300 Deschutes Way SW, Ste. 208 MC-CSC1, Tumwater, WA 98501

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Schedule A.  Documents may be produced at the location below on the date and time provided. Alternatively, documents may be sent electronically or by mail to counsel for the Defendant at the addresses listed on this subpoena prior to October 14, 2022.

| Place: Capital Pacific Reporting, Inc.<br>2401 Bristol Court Southwest, #103<br>Olympia, WA 98502 | Date and Time:<br><br>10/14/2022 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 9-21-22

| CLERK OF COURT | | |
|---|---|---|
| _____<br>*Signature of Clerk or Deputy Clerk* | OR | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant
Ronda McNae _____, who issues or requests this subpoena, are:

Alaina Fotiu-Wojtowicz, BFW Legal, 200 SE 1st St., Ste. 400, Miami, FL 33131, alaina@bfwlegal.com, 305-503-5054

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

  (2) *For Other Discovery.* A subpoena may command:
    (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  (2) *Command to Produce Materials or Permit Inspection.*
    (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  (3) *Quashing or Modifying a Subpoena.*
    (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  (1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  (2) *Claiming Privilege or Protection.*
    (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

1.     The term "You" or "Microsoft" refers to Microsoft Corporation and includes any managers, members, directors, officers, partners, employees, representatives, agents, parent companies, affiliates, subsidiaries, divisions, business units, and other persons or entities acting or purporting to act on its behalf or under its control or direction.

2.     The term or "SoftwareONE" refers to SoftwareONE, Inc. and/or SoftwareONE Holdings and includes any managers, members, directors, officers, partners, employees, representatives, agents, parent companies, affiliates, subsidiaries, divisions, business units, and other persons or entities acting or purporting to act on its behalf or under its control or direction.

3.     The term "Michael Fitzgerald" shall include Michael J. Fitzgerald, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under his control or at his direction.

4.     The term "Ronda McNae" shall include Ronda McNae, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under her control or at her direction.

5.     The term "William McNae" shall include William McNae, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf



of, in concert with, or under his control or at his direction.

6.    The term "document" includes all documents subject to discovery under the Federal Rules of Civil Procedure including e-mails and other electronically stored information.

7.    The term "communication" means any form of contact, correspondence, instruction, publication, discussion, report, or written, electronic, or recorded oral exchange between two or more persons.

8.    The terms "referring to," and "relating to" mean relating to, referring to, evidencing, reflecting, recording, memorializing, constituting, supporting, mentioning, or concerning in any way, directly or indirectly.

9.    Unless otherwise specified, the time frame for all document requests is from January 1, 2018 through July 14, 2022.

## DOCUMENTS REQUESTED

1)    Any and all communications between You and Michael Fitzgerald that refer or relate in any way to Ronda or William McNae.

2)    Any and all communications between You and SoftwareONE that refer or relate in any way to Ronda McNae, William McNae, or Michael Fitzgerald.

3)    Any and all communications between You and any law enforcement agency that refer or relate in any way to Ronda McNae, William McNae, or Michael Fitzgerald.

4)    Any and all communications between You and William McNae that refer or relate to Michael Fitzgerald.

5)    Any and all communications between You and Ronda McNae that refer or

2



relate to Michael Fitzgerald.

6)      Any and all documents that refer or relate to any investigation conducted by Microsoft into allegations of misconduct made against Michael Fitzgerald, including but not limited to those allegations made by Ronda and William McNae.

7)      A copy of all documents regulating the conduct of Microsoft Partners, including SoftwareOne, that were in force between January 1, 2019 to the present, including but not limited to the Microsoft Partner Code of Conduct.

8)      Any and all documents or communications that refer or relate to any investigation conducted by Microsoft into alleged violations of the Microsoft Partners Code of Conduct by Michael Fitzgerald, including but not limited to those allegations made by Ronda and William McNae.

9)      Any and all documents or communications that refer or relate in any way to Your decision to remove William McNae from the SoftwareONE account.

10)     Any and all communications between You and SoftwareONE regarding Microsoft's handling of the SoftwareONE account after William McNae's removal from the SoftwareONE account.

11)     Any and all documents related to William McNae's Short-Term Leave of Absence between November and December 2021 and the reasons stated for that requested leave.

12)     Documents sufficient to reflect William McNae's use of Mental Health and Sick Time between November 2019 and the present and the reasons stated for the requested leave.

13)     Documents sufficient to reflect William McNae's use of Paid Caregiver

3



BRODSKY FOTIU-WOJTOWICZ

Time from November 2019 to the present and the reasons stated for the requested leave.

       14)    A copy of any Microsoft policy regulating gifts between employees and Partners.

       15)    Any and all documents or communications that refer or relate to the compliance or noncompliance by William McNae and/or Michael Fitzgerald with any Microsoft policy regulating gifts between employees and Partners.

4



BRODSKY FOTIU-WOJTOWICZ

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| MICHAEL J. FITZGERALD, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:22-cv-22171-JEM |
| RONDA MCNAE | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          SoftwareONE, Inc. c/o Registered Agent CT Corporation System
                301 S Bedford St., Ste. 1, Madison, WI 53703

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A.  Documents may be produced at the location below on the date and time provided. Alternatively, documents may be sent electronically or by mail to counsel for the Defendant at the addresses listed on this subpoena prior to October 14, 2022.

| Place: US Legal Support | Date and Time: |
|---|---|
| 411 East Wisconsin Avenue, Suite 1625 Milwaukee, Wisconsin 53202 | 10/14/2022 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 9-21-22

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*          Defendant
Ronda McNae _____ , who issues or requests this subpoena, are:

Alaina Fotiu-Wojtowicz, BFW Legal, 200 SE 1st St., Ste. 400, Miami, FL 33131, alaina@bfwlegal.com, 305-503-5054

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

1.      The term "You" or "SoftwareONE" refers to SoftwareONE, Inc. and includes any managers, members, directors, officers, partners, employees, representatives, agents, parent companies, affiliates, subsidiaries, divisions, business units, and other persons or entities acting or purporting to act on its behalf or under its control or direction.

2.      The term "Microsoft" refers to Microsoft Corporation and includes any managers, members, directors, officers, partners, employees, representatives, agents, parent companies, affiliates, subsidiaries, divisions, business units, and other persons or entities acting or purporting to act on its behalf or under its control or direction.

3.      The term "Michael Fitzgerald" shall include Michael J. Fitzgerald, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under his control or at his direction.

4.      The term "Ronda McNae" shall include Ronda McNae, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under her control or at her direction.

5.      The term "William McNae" shall include William McNae, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under his control or at his direction.



6.      The term "document" includes all documents subject to discovery under the Federal Rules of Civil Procedure including e-mails and other electronically stored information.

7.      The term "communication" means any form of contact, correspondence, instruction, publication, discussion, report, or written, electronic, or recorded oral exchange between two or more persons.

8.      The terms "referring to," and "relating to" mean relating to, referring to, evidencing, reflecting, recording, memorializing, constituting, supporting, mentioning, or concerning in any way, directly or indirectly.

9.      The time frame for all document requests is from January 1, 2016 to July 14, 2022.

### DOCUMENTS REQUESTED

1.      Any and all communications between You and Ronda McNae.

2.      Any and all communications between You and William McNae.

3.      Any and all internal communications that refer or relate in any way to Ronda or William McNae.

4.      Any and all communications between You and employees or agents of Microsoft that refer or relate in any way to Ronda or William McNae.

5.      Any and all communications between You and any law enforcement agency that refer or relate in any way to Ronda McNae, William McNae, or Michael Fitzgerald.

6.      Any and all external communications not covered above that refer or relate in any way to Ronda or William McNae.

2



BRODSKY FOTIU-WOJTOWICZ

7.      Any accident or incident reports or other reports that were generated as a result of any alleged misconduct of Michael Fitzgerald, including but not limited to those allegations made by Ronda and William McNae.

8.      Any and all documents or communications that refer or relate to Michael Fitzgerald in connection with allegations of sexual harassment, gender discrimination, sexism, misogyny, sexual assault, sexual battery, rape, sodomy, or other inappropriate touching, including but not limited to those allegations made by Ronda and William McNae.

9.      Any and all documents or communications that refer or relate to Michael Fitzgerald in connection with allegations of substance abuse, violence, threatened violence, anger management issues, verbal abuse, inappropriate communication style, dishonesty, and/or manipulation.

10.     Any and all documents that refer or relate to any investigation conducted by SoftwareONE into allegations of misconduct of any kind made against Michael Fitzgerald, including but not limited to those allegations made by Ronda and William McNae.

11.     A job description for each position Michael Fitzgerald has held at SoftwareONE, including but not limited to: (a) GM at Gopath by SoftwareONE; (b) Chief Technology Officer at SoftwareONE; (c) Chief Innovation Officer at SoftwareONE; and (d) Global Leader – Solutions at SoftwareONE.

12.     The complete personnel file for Michael Fitzgerald, including, all applications for employment, employment contract, job description, performance reviews or evaluations, training documents, licenses or certifications, applications for

3



BRODSKY FOTIU-WOJTOWICZ

promotions, documents evidencing any change in job title or responsibilities, write-ups, warnings or other disciplinary actions, and complaints from outside partners, subordinates, co-workers, superiors, or third parties.

13.     Any and all documents referring or relating to the hiring process for Michael Fitzgerald, including but not limited to any background checks, interview notes, employment applications, reference checks, or employment verifications.

14.     Any and all documents and communications referring or relating to any transfer, promotion, demotion, or change in position for Michael Fitzgerald and any reasons for the change in position.

15.     Any and all communications between you and Michael Fitzgerald that refer or relate in any way to his job performance or compensation.

16.     Any and all documents or communications referring or relating in any way to Michael Fitzgerald's job performance of compensation.

17.     For Michael Fitzgerald, any and all printouts, listings, or reports for each pay period showing:

       a. Wages paid, including gross amount, each deduction, and net payment;

       b. Hours, including regular, overtime, sick, holiday, and vacation;

       c. Any other benefit paid, if any.

18.     All portions of the Manager/Executive assessments completed during the summer of 2019 in connection with SoftwareONE's acquisition of Comparex that refer or relate in any way to Michael Fitzgerald.

19.     Any and all policies, procedures, or training materials related to preventing

4



BRODSKY FOTIU-WOJTOWICZ

against sexual harassment, sexual assault, or other inappropriate touching or conduct by SoftwareONE employees.

20.    Any and all policies, procedures, or training materials referring or relating to  actions to be taken in the event there is a report of sexual harassment, sexual assault, or other inappropriate touching or conduct by a SoftwareONE employee.

21.    Any and all policies, procedures, or training materials referring or relating to documentation required in the event there is a report of sexual harassment, sexual assault, or other inappropriate touching or conduct by a SoftwareONE employee.

22.    Any expense reports submited by Michael Fitzgerald for expenses incurred between October 1, 2019 and February 28, 2020.

23.    Any and all communications between You and Microsoft regarding Microsoft's handling of the SoftwareONE account after William McNae's removal from the SoftwareONE account.

BFW

BRODSKY FOTIU-WOJTOWICZ

Ronda Delapina McNae
Pro Se Defendant
504 11th PL Kirkland, WA 98033
Tel: (206) 914-6752
Prose.rmcnae@gmail.com


October 4, 2024


Attn: Court Clerk
United States District Court
Southern District of Florida
400 N. Miami Ave, Room 8N09
Miami, FL 33128


**Re: Resubmission of DEFENDANT'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINIONS**


Dear Clerk of Court:

Please find enclosed a copy of my **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINIONS**. I initially sent this document via Priority Express mail on October 2, 2024, and I am including the receipt for that mailing with this submission. It appears that the required signature for delivery has delayed or prevented the court from receiving the document.

In order to ensure delivery, I am resending this Reply today via FedEx without a signature requirement. Please file this document accordingly.

Thank you for your attention to this matter. Should you have any questions or require additional information, please do not hesitate to contact me.


Sincerely,

Ronda McNae



**UNITED STATES POSTAL SERVICE.**

KIRKLAND
721 4TH AVE
KIRKLAND, WA 98033-9998
(800)275-8777

10/02/2024                              12:36 PM

| Product | Qty | Unit Price | Price |
|---------|-----|-----------|-------|

PM Express
Flat Rate Env                1              $30.45
    Miami, FL 33128
    Flat Rate
    Signature Requested
    Scheduled Delivery Date
        Thu 10/03/2024 06:00 PM
    Money Back Guarantee
    Tracking #:
        EI974839919US
    Insurance                                $0.00
        Up to $100.00 included
Total                                       $30.45
------------------------------------------------
Grand Total:                                $30.45
------------------------------------------------
Credit Card Remit                           $30.45
    Card Name: VISA
    Account #: XXXXXXXXXXXX8236
    Approval #: 604220
    Transaction #: 319
    AID: A0000000031010    Contactless
    AL: VISA CREDIT
------------------------------------------------

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
https://www.usps.com/help/claims.htm
or call 1-800-222-1811

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.

*Court Clerk*
*400 N. Miami,*
*Room 8N09*
*Miami FL 33128*

UFN:
Receipt#
Clerk: 19

**FedEx** Express

New **Reusable** Envelope
*Use this envelope twice!*

REC'D BY _____ D.C.
OCT - 7 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

*The World O...*
Lega...