IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

               Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

               Defendants.

_____/

FILED BY _____ D.C.

DEC 1 2 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## DEFENDANT'S MOTION TO CORRECT EXHIBIT D TO DECLARATION FILED IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMNET THE RECORD (DE 253)

I, Ronda McNae, Defendant in the above-captioned matter, respectfully move this

Honorable Court to correct and supplement Exhibit D to my previously filed Declaration, which

was submitted in connection with DE 253, Motion to Support Supplementing the Record with

Trauma Expert Dr. James Hopper's Expert Report and Deposition Transcript.

For the reasons set forth below, I request permission to replace the incomplete Exhibit D

with a corrected and complete version to ensure the record is accurate and comprehensive.

**1. Background**

On December 6, 2024, I submitted my Declaration in support of the Motion to

Supplement the Record with Dr. Hopper's expert materials via priority FedEx. As part of this

filing, I included Exhibit D, a Home Study report, which were referenced in Paragraph 19 of my

Declaration. This exhibit is critical to ensuring the Court has the complete context necessary for evaluating my motion.

## 2. Omission in Submission

Upon reviewing DE 253, I discovered that the version of Exhibit D subsequently filed was incomplete. Several pages of the Home Study report, which are crucial for context and accuracy, were left out at the time of my submission. This occurred despite my reasonable reliance on others to ensure that the documents were sent correctly to the specified addresses, as meticulously prepared and instructed. These missing pages are essential to providing the Court with a complete and accurate record of the circumstances detailed in my Declaration.

## 3. Correction Required

I have since obtained the pages and have attached the corrected and complete version of Exhibit D to this Motion. This updated exhibit includes the missing pages and does not alter the substantive arguments or facts previously presented. Allowing this correction ensures that the Court has a transparent and comprehensive record without affecting any party's substantive rights.

## 4. No Prejudice

This correction is submitted promptly, within one day of identifying the issue. The Plaintiffs will not be prejudiced by this correction, as the original submission already referenced Exhibit D. This request does not seek to introduce new arguments or evidence but simply to complete the existing record. Ensuring accuracy serves the interests of justice.

2

## 5. Legal Basis for Relief

Federal Rule of Civil Procedure 15(d) permits a party to supplement filings with Court approval to correct errors or omissions. Courts routinely grant such motions when they are filed in good faith, as is the case here, and when they do not unduly prejudice any party or cause delay. See *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 306, 307 (S.D. Fla. 2001).

## 6. Request for Relief

Accordingly, I respectfully request that this Court:

    a. Permit the substitution of the incomplete Exhibit D as part of the Ronda McNae Declaration with the corrected and complete version attached to this motion; and

    b. Accept the corrected Exhibit D as part of the record in connection with my Declaration in support of DE 253.

Respectfully submitted,

By: *Ronda McNae*
Ronda Delapina McNae
Pro se Defendant
504 11th Pl, Kirkland, WA 98033
Tel: (206) 914-6752
Prose.rmcnae@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 11, 2024, a true and correct copy of the foregoing

Supplemental Request in DE 253 Reply in Support of Hopper was delivered via FedEx priority service to the Clerk of the Court at the Miami Courthouse Southern District of Florida, 400 N. Miami Ave, Room 8N09, Miami, FL 33128. Additionally, in compliance with the court's requirements for pro se litigants, a copy of the same document was delivered via FedEx priority services to Plaintiff's counsel on the same date.

**SERVICE LIST**

Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlowe.com
*Counsel for Plaintiffs*

By: *Ronda McNae*
Ronda Delapina McNae
Pro se Defendant

# Exhibit D

E-FILED          JVJV251976 - 2024 MAY 20 01:25 PM          POLK
CLERK OF DISTRICT COURT                    Page 1 of 2

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY
### JUVENILE DIVISION

| IN THE INTEREST OF | NO. JVJV251976, 77, JVJV253498, 97 |
|---|---|
| ROWAN LECKWOLD,<br>OAKLEY LECKWOLD,<br><br>CHILDREN. | **ORDER TO MODIFY DISPOSITION** |

**NOW ON THIS DAY** this matter comes before the Court upon the State's Motion to Modify Placement. The Court, having reviewed the record herein and being fully advised in the premises, **FINDS** that the motion shall be granted for the reasons stated therein.

**IT IS THEREFORE ORDERED** that the above-named children are hereby placed in the custody the Department of Health and Human Services for purposes of relative placement once transportation is arranged. The children may be moved out of state with the approved ICPC to relatives, Ronda and Will McNae.

IT IS SO ORDERED on May 20, 2024.

E-FILED          JVJV251976 - 2024 MAY 20 01:25 PM          POLK
                 CLERK OF DISTRICT COURT                    Page 2 of 2



State of Iowa Courts

**Case Number**  **Case Title**
JVJV251976      OAKLEY LECKWOLD
**Type:**        JV-MODIFICATION OF DISPOSITIONAL ORDER

So Ordered

_____
Rachael E. Seymour, District Associate Judge,
Fifth Judicial District of Iowa

Electronically signed on 2024-05-20 13:25:05

7

| Washington State Department of **CHILDREN, YOUTH & FAMILIES** | **LICENSING DIVISION (LD)** **Home Study** |
|---|---|

| **Written by:**  ☑ **DCYF**   ☐ **CPA** |
|---|

**Family Name:** Ronda D McNae and William J McNae

██████████████████

**Family Address:** 504 11th Pl Kirkland WA 98033

**Home Study Type:** Kinship Care

**Home Study Outcome:** Recommended for placement and adoption.

**Interstate Compact on the Placement of Children (ICPC) requested home study has been approved for the adoption of** ██████████ **and** ██████████

| **Applicant(s) Name, Contact, and Background** | |
|---|---|
| **Applicant A Name:** Ronda D McNae | **Applicant B Name:** William J McNae |
| **Preferred Name (if applicable):** | **Preferred Name (if applicable):** Will |
| **Pronouns:** She/Her | **Pronouns:** He/Him |
| **Date of Birth:** 04/04/1986 | **Date of Birth:** 06/09/1977 |
| **Cell Phone Number:** +1 206 914 6752 | **Cell Phone Number:** +1 425 941 7374 |
| **E-mail:** prose.rmcnae@gmail.com | **E-mail:** prose.wmcnae@gmail.com |
| **Gender:** Female | **Gender:** Male |
| **Identified Race:** Asian, Native Hawaiian or other Pacific Islander, White | **Identified Race:** White |
| **Hispanic/Latino:** Yes | **Hispanic/Latino:** No |
| **Member of or eligible for membership in a Federally Recognized Tribe:** No  **Tribe(s):** | **Member of or eligible for membership in a Federally Recognized Tribe:** No  **Tribe(s):** |
| **Primary Language:** English | **Primary Language:** English |
| **Secondary Language:** Spanish, Tagalog | **Secondary Language:** |
| **Occupation:** Talent | **Occupation:** Director at The Partner Masters |
| **Work Schedule:** Varies; not consistent | **Work Schedule:** 40 hours, Monday - Friday |
| **Date of Final Interview:** 03/20/2024 | **Date of Final Interview:** 03/21/2024 |

| **Household Composition** |
|---|

There are no additional adults living in the home or on the property.

| **Adult Household/Property Member(s):** | | | | | |
|---|---|---|---|---|---|
| **Name** | **Date of Birth** | **Relationship to Applicant** | **Lives in the Home or on the Property** | **Date Interviewed** | **Involved in Caregiving** |
| | | | | | |

There are children living in the home or on the property.

| Child Household/Property Member(s): | | | | | |
|---|---|---|---|---|---|
| Name | Date of Birth | Relationship to Applicant | Lives in the Home or on the Property | Date Interviewed | Involved in Caregiving |
| Ella McNae | 08/11/2010 | Child of applicant(s) | Lives in the home | 03/13/2024 | Yes |
| Liam McNae | 12/03/2012 | Child of applicant(s) | Lives in the home | 03/13/2024 | No |

| Child Specific Information |
|---|

This home study includes child specific information.

| Child-Specific Information: | | | |
|---|---|---|---|
| Name | Date of Birth | Prior Relationship | Placed in the Home |
| ███████████ | 06/27/2019 | Yes | No |
| ███████████ | 04/08/2021 | Yes | No |

| Children and Youth Served |
|---|

**Child-Specific Information:**

███████████

Washington state received an ICPC request from Iowa Department of Health and Human Services for a relative (unlicensed), adoption home study for Ronda and William (Will) McNae to be considered a placement option for Ronda's niece ███████████ (DOB 6/27/2019) and nephew ███████████ (DOB 4/8/2021). Ronda and Will were previously licensed foster parents with the state of Washington from 4/2/2015 to 11/2/2015. This home study assessment includes information written in their approved home study completed 3/26/2015.

███████████ came into care on 3/22/2023 due to parental substance abuse, mental health challenges, neglect, and domestic violence. ██████ tested positive for cocaine via hair drug screen. It is unknown what kinds of long-term effects this may have on her. The department reports that ██████ has significant scoliosis. She will need to be re-evaluated for services when she starts school. ██████ dentist has suggested that she may need braces in the future. Should ██████ be placed in the McNae's care, they are prepared to ensure all of her medical, dental, and educational needs are met.

Ronda and Will are aware that ██████ has been diagnosed with multiple sclerosis and that she must wear a back brace for many hours per day. Should ██████ be placed in their care, they anticipate scheduling her to see a pediatrician immediately to prevent any lapse in care.

Ronda and Will understand that the children tested positive for substances in hair follicle testing. They anticipate having both children assessed and know that this can mean delays in various areas of functioning. They have already lined up a therapist who would have availability to see both children, if they are placed in the McNae's care.

Ronda and William have had FaceTime sessions with the children in the past. The McNae's hope that virtual visits are increased before a potential placement change. The McNae's hope to maintain open communication with Ronda's sister and the children's father.  However, their primary focus initially will be on providing ██████ and ██████ with the stability, love, and consistency they need to flourish. Ronda is the children's maternal aunt. She will be able to keep them connected to their culture and extended family members, as appropriate and allowed per court order. The McNae's understand that they must follow the court order regarding visitation. The McNae's are open to facilitating virtual visits and are open

to in person visits at a public, agreed-upon, and court-approved location.

██████████████ have two older paternal half-siblings. Ronda is in contact with their mother and the McNae's are open to maintaining contact between them.

██████s not currently placed in this home and therefore was not interviewed for the purpose of this home study.

██████████

██████tested positive for cocaine, amphetamine, and THC via hair drug screen. It is unknown what kinds of long-term effects this may have on him. The McNae's are prepared to meet his needs in the short and long-term.

Documents received from Iowa Department of Health and Human Services noted that██████s a picky eater. The McNae's have experience working with children who are picky eaters and feel confident in their ability to meet this need.

The McNae family will support██████cultural and relational permanency in the same ways as outlined above for██████

██████is not currently placed in this home and therefore was not interviewed for the purpose of this home study.

**Foster Care Assessment:**

This home study does not include an assessment for the applicant(s) to provide care for any additional children.

During the home study process, the applicant did not express any concerning limitations on placement preferences.

| **Background and Family of Origin Applicant A** |
| --- |

Ronda was born in Norfolk, Virginia to Susan Young and Ron Herd. Her family moved to Seattle when she was five-years-old.

Ronda was raised by her mother Susan. Her father Ron was involved until she was about five-years-old. Her earliest memories of him are fishing with him or when he and Susan would get into arguments. Ronda recently reconnected with him, as he lives in Everett, but they don't have ongoing contact or a relationship.

Susan remarried to William (Bill) Young. Susan and William had two children together. Bill was a blue-collar worker and worked for a local utilities company in Washington. Susan worked outside of the home and often took money and gifts from the men she was involved with. Susan and Bill later divorced, and Susan now resides in Iowa near their children Lea and Alexa. Ronda prefers to have minimal to no contact with her mother at this time, unless it relates to the open dependency case. Bill now resides in Texas and is engaged. Ronda has no contact with her step-father or his fiancé. Ronda has no reason to believe that they pose a physical threat to herself or a child in her care at this time, however she would never leave a child in her care alone with Bill or allow him near her family. Please see the following sections for details.

Ronda has three sisters: Sirena (39), ████(30), and ████(27).

Ronda describes her childhood as unfortunate. She was exposed to a lot of harm that created trauma and believes that her parents had kids when they probably shouldn't have. Her older sister was parentified at a young age and the siblings were often left home alone at a young age or with questionable babysitters.

Ronda identified that despite the trauma of her childhood and how poorly her parents treated her, she has a tendency to trust others and see the best in people. Ronda has put herself in situations where she could have been harmed - such as helping a woman whose car was broken down on 520 - despite being warned of the potential

dangers. Ronda's world view is that the world is safe, despite her early childhood experiences. It was really only until 2019 when she learned that "you repeat what you don't repair" and that children who have been victimized are at a high risk of being re-victimized/taken advantage of. She acknowledged that because she is so trusting, she has been taken advantage of. She has started to be more protective in the past five years, having people earn her trust rather than giving it freely. Despite her early childhood experiences, Ronda has demonstrated an ability to form healthy attachments with others.

It was assessed that the applicant has family members who have behaviors that may impact the care of children.

As mentioned in the following section, Ronda has concerns about her mother Susan, her stepfather William, her sister ███ the children's biological father, and her youngest sister ███ Ronda has boundaries with all of the above-mentioned people and there is also physical distance between her and each of them at this time. Ronda recognizes that she will have to follow the case plan, should █████████ be placed in her care.

It was assessed that the applicant has chaotic, limited, or lack of relationship(s) within their family of origin.

Please see the following sections.

---

**Trauma Applicant A**

---

It was assessed that the applicant experienced childhood trauma.

Ronda's mother Susan lived in the Philippines and met Ronda's father Ron while he was deployed there overseas with the Navy. Susan returned with Ron to the United States where they married. Ronda reports that Ron was often deployed and out of the home. When he was home, Ronda reports intense domestic violence between him and Susan and intense neglect. Ron would use drugs in front of Ronda and her sister. Susan would often engage in sex work, leaving Ronda and Sirena alone for long periods of time. When Susan was home, she would not provide basic care and Sirena had to look after them. Ronda recalls being pawned off to unfit babysitters and reports generally feeling unprotected and unsafe. Ronda added that her mother didn't have a role model for how to be a parent and was likely repeating what she knew from her own childhood.

When Ronda was five-years-old, her mother met Bill while Ron was overseas. Susan moved to Washington State with Bill. For the first few years, Ronda remembers thinking Bill was great; he took them hiking, canoeing and to the beach. Over those first years in Washington, Susan divorced Ron and married Bill. Shortly thereafter, Susan got pregnant with the first of two daughters that she would have with Bill. Ronda recalls that around the time of her mom's first pregnancy, Ronda found pornographic magazines and websites up on the computer in the home. Ronda reported this to Susan, but Susan ignored her. When Ronda was eleven, Bill began sexually abusing her in her bedroom at night while she was sleeping. The sexual abuse lasted for about one year. Ronda did not initially report the abuse because she was afraid. After several months of abuse, she told her older sister Sirena. Sirena waited a year before she told Susan. Susan reacted by screaming and crying but continued her relationship with Bill. Ronda connected with a middle school counselor and reported what was happening at home. Susan and Bill told Ronda to recant her story and she did, afraid of what might happen. Ronda connected with a therapist in high school at age 14 and reports that through the years there were a 'ton' of CPS reports that never resulted in any removals by CPS [verified]. By the time Ronda was in high school and reported Bill to the authorities, she was told they wouldn't be able to charge him because of Susan and since her story had changed multiple times. Ronda was kicked out of Susan and Bill's home and went to live with another family her sophomore/junior year in high school. By her senior year of high school, Bill had been "kicked out" of the family home. Ronda believed that he was the reason why she didn't have a good relationship with her mother and with a little persuasion from Susan, Ronda decided to move back home with Susan and her sisters. By that time, Sirena had left for the Marines and Ronda felt responsible for her younger sisters. Unfortunately, things between Ronda and Susan were not better. Regardless, Ronda managed to graduate and get into college with the help of a school counselor. She spent the last months of her senior year of high school couch hopping. Later, Sirena would also disclose that Bill sexually abused her, but she did not report to the authorities. Years later, Bill continued to spy on Ronda, listen in on Susan's phone conversations, and stalked Susan and Ronda. Ronda doesn't trust Bill, especially if he was in the same state as her, and they have no contact whatsoever at this time.

Susan would beat Ronda and her sister with a belt, sometimes until they bled. Susan and Bill used harsh forms of discipline physically, like hitting their hands with a meat tenderizer. Susan continued to have sexual relations with

men outside of her marriage. Bill would make Ronda listen to recordings of Susan having sex with other men and Susan would make Ronda do things like type sexual messages to men on the internet. Ronda hoped things would change because she loved her mother despite the years of abuse and neglect. Ronda feels that Susan didn't do much to put an end to the situation and still hasn't done the work to address her own trauma.

Ronda has spent the last twelve years in various forms of therapy working on healing from this trauma and is now a big proponent of disclosing early and bringing justice to those who harm children. She hopes to break the cycle of child abuse/neglect by being a good role model and strong parent to her children. Ronda identified that she's been working through her childhood experiences for long enough now that she isn't triggered in the ways she was before. She identifies that her mom and her sisters are enablers who trauma bond and are enmeshed, so she puts that on the side and doesn't allow that to dysregulate herself. She has put herself at a distance from her family in order to avoid being involved in their drama. Ronda takes care of herself by seeing her counselor weekly, listening to a Podcast, reading, and engaging in ongoing education.

It was assessed that the applicant experienced systemic or intergenerational trauma.

Ronda identified that she and her sisters have all experienced intergenerational trauma. She hopes to break the cycle and change the narrative with her own children.

It was assessed that the applicant experienced trauma as an adult.

Ronda identified that watching her mother-in-law's cognitive decline has been heartbreaking, but she's been grateful to have some time with her and the opportunity to gather information from her.

In October 2019, Ronda was raped by a colleague of Will's at Microsoft. She reported the incident to the FBI and local authorities, and the criminal investigation is ongoing. She has not sought out a protection order as the perpetrator lives across the country. Ronda has no reason to believe that this person poses a threat to herself or a child in her care at this time. She knows that she can call law enforcement and file for a no contact order if there were any issues in the future. Through her work in a trauma intensive program that she participated in following the 2019 incident, she learned that adults who experience childhood abuse, particularly sexual abuse, are at greater risk of re-victimization. Despite her years of therapy, she realized that she had been naive to trust this person and it left her vulnerable. Ronda found this to be enlightening and continues to work through this in therapy today. They hope the federal court case will be wrapped up in 2024.

Ronda is trauma-informed and knows how to regulate herself. Ronda experiences occasional triggers if she sees someone who looks like the perpetrator otherwise, she has no day-to-day triggers. Previously, she would gag when she thought about it until she threw up. She realized her body was holding onto something. If she feels that someone is trying to control or harm someone else, she will gag. If she is dysregulated and feels stuck in fight or flight - which she reports hasn't happened in a while - she has learned how to deal with bullies, not engage, and take care of herself. This unfortunate event taught her not to trust everyone, to not assume the best of people, and how to set boundaries and speak up for herself.

It was assessed that the applicant has not been a perpetrator or alleged perpetrator of domestic violence.

Ronda was served a protection order in March/April 2023 alleging that she had been grooming, harassing, and stalking a friend of her daughters. Ronda reports that he youth had contacted her and disclosed that he was self-harming. Ronda had turned to the school (amongst other professionals in her life) to report the disclosure and kept the text records. The protection order was dismissed in June 2023 as the judge agreed that the child had gone to Ronda for mentorship. This resulted in Ella and Liam being removed from their school. The McNae's no longer have contact with the youth or their family. This writer was unable to locate any record of this event in public records, however Ronda provided a copy of the denied protection order court proceedings. This was clearly very difficult for Ronda to be accused of something that she herself was a victim of. She continues to be disappointed that the family was threatened by an adult showing support and care for their child who was going through a hard time and who was asking for help.

The applicant demonstrated an understanding of domestic violence and how it may impact children.

| Caregiver Health and Wellbeing Applicant A |
| --- |

The applicant completed an Applicant Medical Self Report (DCYF 13-001A). In addition, a licensed health care provider completed an Applicant Medical Report (DCYF 13-001) for this applicant.

Although the applicant has current or historical health conditions (physical or mental) it was assessed that they will not impact the applicant's daily functioning and/or care of children.

An Applicant Medical Report Form was received on behalf of Ronda completed by Dr. Bhaskar of The Everett Clinic dated 3/5/2024 and updated/clarified on 3/11/2024. Ronda has a history of chronic joint pain, PTSD, and anxiety. She is currently diagnosed with Ankylosing Spondylitis (arthritis), Behcet's Disease (an inflammatory disorder resulting in ulcers), and Generalized Anxiety Disorder (GAD).

Ronda hopes that by continuing to work on her trauma, that her pain and inflammatory issues will be reduced. Dr. Bhaskar notes that Ronda is a "good parent but is overwhelmed with her health and other issues. Added care of kids may not be of best interest at this time for her." Regarding Dr. Bhaskar's comments, Ronda states that for coding purposes, Dr. Bhaskar has coded her current mental health diagnosis as GAD rather than PTSD or anxiety. Ronda spoke with Dr. Bhaskar for the purpose of him filling out the form and she identified that he likely stated it's not in her best interest due to the ongoing federal case and the additional stress that it has caused. Ronda also shared that she is honest with her doctor and that he's protective of her. She expressed that even though it will be a challenge to care for two additional children, she is willing to do whatever she needs to do to care for her niece and nephew. While the case has been all-consuming, they are also nearing the end and it's temporary. The children and their well-being will be their primary focus, if they are placed in their care. Ronda is supported by her husband should she be unable to provide care to a child for any reason. She has noticed that her autoimmune issues have decreased since she came forward about the rape and has been working through everything in therapy. She feels confident that she has the support system in place to care for herself and care for her relatives.

Ronda has been diagnosed with PTSD, depression, and anxiety in the past and is currently diagnosed with PTSD. She first noticed symptoms of depression when she was living with her mother and her stepfather. Ronda knew she needed help and asked to see a doctor, but her mom didn't believe in mental health help. Ronda would cry at home, but school was a positive break from her difficult home life. It wasn't until 2008/2009 that she noticed symptoms of anxiety related to the abuse from her stepfather. In 2014, Ronda first started addressing her trauma and triggers. Her primary care provider has diagnosed her with GAD for billing purposes, but both her therapists have diagnosed her with PTSD.

Ronda has been stable on her medications since about June 2015. Her therapists don't prescribe but her primary care provider does. She is prescribed Prozac and Buspar and both medications work well for her, though she has worked with her doctor to adjust dosage. They also started her on Clonazepam when she was having panic attacks after being raped, though they have since taken her off that medication.

On her hardest days, Ronda identified that she is in her feelings. She questions if she is doing the right thing and if she has any self-doubt, then she can be emotional. If she's feeling that bad, then she texts her therapist Dr. Dellinger and asks for a visit.

Ronda started going to therapy in 2011 with Dr. Brock Weedman, an expert in trauma and EMDR therapy. She started individual therapy with Dr. Sarah Dellinger in 2020 starting with 3 to 5 sessions per week. Since 2023, Ronda has attended therapy with both Dr. Weedman and Dr. Dellinger. She has also participated in a 'Child Abuse Recovery Week,' 'Trauma Intensive' program, marriage counseling with Will, and a Storyteller/Writers workshop regarding navigating past traumas and expressing them. She hopes to attend the 35th Annual Boston International Trauma Conference in May 2024 led by the Trauma Research Foundation.

An Applicant Mental Health Report Form was received on behalf of Ronda completed by Dr. Sarah Dellinger of EQUIP Counseling, PLLC dated 3/11/2024. Dr. Dellinger reports that they first started seeing Ronda 2/19/2020 and they see each other weekly. Ronda is currently diagnosed with PTSD. Dr. Dellinger states that Ronda is currently stable with episodes of dysregulation and she is able to re-ground. Dr. Dellinger does not prescribe medication, as that is managed by Dr. Bhaskar. Regarding Ronda's ability to care for additional children, Dr. Dellinger states "client does not believe current diagnosis would impact care of additional children." Ronda clarified that Dr. Dellinger won't answer for the patient; she wants to empower her clients to speak up for themselves. Dr. Dellinger added "client has developed strong set of coping strategies to deal with symptoms that may arise correlated to her diagnosis."

An Applicant Mental Health Report Form was received on behalf of Ronda completed by Dr. Brock Weedman dated 3/14/2024. Dr. Weedman reports that they first started seeing Ronda 4/6/2011 and they currently see each other once per month. Ronda is currently diagnosed with PTSD. Dr. Weedman states that Ronda is stable and has "good insight and awareness of symptoms and triggers." Dr. Weedman states "I do not believe her mental health condition would impact her ability to care for additional children." Dr. Weedman added that Ronda is a caring, nurturing, and consistent parental figure/mother."

Ronda reported that she hasn't been dysregulated in a while and she attributes it to her engagement in therapy. She identified seeing a pattern from her childhood and the assault in 2019 where she was quiet about something that happened to her and needed to learn how to speak up and advocate for herself.

It was assessed that the applicant's historical or current alcohol and/or drug use will not impact the applicant's daily functioning and/or care of children.

Ronda drinks one to two alcoholic beverages every two months, usually when she is with friends or on vacation. She is cautious about alcohol due to her medications. She does not use tobacco/nicotine, marijuana, street drugs, or prescription pills not for their intended use.

## Historical Intimate Partner and Supportive Relationships Applicant A

It was assessed that the applicant's prior significant intimate relationships will not impact the care of children.

Ronda reports having two significant relationships in her past; one in high school and one in college. She has never been married before Will and has no contact with her ex-boyfriends.

It was assessed that the applicant has not been involved in an unstable partnership/marriage in the past.

It was assessed that the applicant has supportive relationships (friendships, colleagues, etc.).

Ronda is supported by her husband Will, her friends, her therapists and primary care provider, her fictive cousin, their children's Godfather Matt, and mentors and other connections she has made.

## Background and Family of Origin Applicant B

William was born 6/9/1977 to Bill and Marjorie and raised in Bellevue.

Will's father Bill was previously married and had two grown daughters (22 and 25 years older than Will) by the time he married Will's mother Marjorie. Will's mother was also previously married and had Will's older brother who is nine years older than Will. Bill was an art teacher growing up and Marjorie was a music teacher. Marjorie will be 84-years-old this year and Bill passed away ten years ago. Marjorie lives in an assisted living facility in Kirkland where she gets monitored for Alzheimer's.

Will's sisters are so much older than him that they never grew up under the same roof and don't have much of a relationship today. Once Bill passed away, their relationship became even more distant.

Will describes his upbringing as culturally rich, particularly in music and the arts. His father taught him to be a craftsman in woodworking and he helped his father to build a house on Whidbey Island. Education was very

important to his family as well as studies in music. Since his parents taught, they had summers off to spend with the kids. Will excelled academically and played the saxophone, clarinet, and violin. He also played several sports like football, baseball, track, and basketball.

Will had a strong attachment with his parents and he was able to form strong, positive relationships with others. He was also independent, being the youngest of the siblings, and he was able to easily make friends wherever he went.

It was assessed that the applicant has family members who have behaviors that may impact the care of children.

Will's brother David was Marjorie's power of attorney. Will and David started to have some disagreements in 2020 around Marjorie's property, her needs, and what level of care she needed. Marjorie went through a cognitive assessment and changed her power of attorney to Will. The process was challenging and included legal issues which caused a rift between the brothers. Will doesn't have contact with David or his children as a result. David has demonstrated that he is willing to go to great lengths to tarnish Will and Ronda's reputation, so they have no contact outside of their attorneys at this time. Will has no reason to believe that David would be a threat to a child in his care however David can be vindictive and it's unknown what he might be capable of through legal means. Will hopes that the situation will calm down with lack of contact and the boundaries they've set.

It was assessed that the applicant has chaotic, limited, or lack of relationship(s) within their family of origin.

Please see the paragraph above regarding David.

| **Trauma Applicant B** |
|---|

It was assessed that the applicant experienced childhood trauma.

Will identified that he experienced a "little t" trauma event as a child. When Will was in second grade, Bill had a grand mal seizure. Will was present and called 911. It was hard to see his father in a vulnerable state, but it also taught Will to take responsibility and not panic in an emergency.

It was assessed that the applicant did not experience systemic or intergenerational trauma.

It was assessed that the applicant experienced trauma as an adult.

Will's father passed away in January of 2014 after a short battle with pancreatic cancer. Will and all of his siblings were able to be with him in his final days, which was a very hard time for the family.

Will identified that in 2015, becoming foster parents and working with the faith-based private agency that at times was not supportive was a challenge. They were told mixed messages about licensing requirements and the agency was not supportive of them contacting the child's assigned social worker directly with concerns. The McNae family resided on property owned by the agency which was a subsidized housing development for foster families. The agency terminated their license with just a few days' notice for contacting the social worker and the termination of their license resulted in the family losing their housing. This was an unusual and unique situation. This writer discussed with Ronda and Will the expectations and support available when taking placement of a child through ICPC. They appear to have a clear understanding of what supports are, and are not, available to them. They are prepared to cooperate with both Iowa and Washington to support the children in their care.

Will identified that the last four years and the situation with his mother, her estate, and the ensuing challenges with David have been traumatic.

Will also shared that Ronda's experience of being sexually assaulted was traumatic for the family.

Will has learned that he does better when he and Ronda are working together and on the same page. Will feels they are working towards a resolution, standing up for justice, and advocating for their needs. Will has been in counseling to work through everything they've gone through. He focuses on breathing exercises, talking through things with Ronda, and is mindful of his tendency to shut down and compartmentalize. He acknowledges that he

has a tendency to turn his emotions off in order to stay present. He manages this by walking the dogs, coaching sports, and otherwise being active or engaging in activities to take his mind off things.

It was assessed that the applicant has not been a perpetrator or alleged perpetrator of domestic violence.

The applicant demonstrated an understanding of domestic violence and how it may impact children.

| Caregiver Health and Wellbeing Applicant B |
|---|

The applicant completed an Applicant Medical Self Report (DCYF 13-001A). In addition, a licensed health care provider completed an Applicant Medical Report (DCYF 13-001) for this applicant.

Will and Ronda participated in an intensive marriage workshop in 2022 which allowed them to delve into their respective experiences and work on building a stronger connection and marriage. They have also done couples therapy off-and-on with Dr. Weedman.

Will reports that on his hardest days, he shuts down emotionally and responds in a non-emotional manner. This occurs when he faces pressure from work or if he feels overwhelmed with everything going on with the federal lawsuit. Will takes care of himself by seeing his therapist, coaching his children's sports, being outside, and enjoying movie nights with the family.

It was assessed that the applicant's historical or current alcohol and/or drug use, will not impact the applicant's daily functioning and/or care of children.

Will drinks one to two beers one to two times per month. Will is open to not drinking at all, should the children be placed in their home and there be any issues or concerns about them seeing someone drinking. However, he is able to role model appropriate and safe adult alcohol consumption for his own teen children. He also acknowledges that with two younger children, he may need to be available for emergencies. In an emergency, should Will feel he cannot or should not drive, Ronda is available, they could call a shared ride program, they can call emergency services, or they could call on neighbors or friends.

| Historical Intimate Partner and Supportive Relationships Applicant B |
|---|

It was assessed that the applicant's prior significant intimate relationships will not impact the care of children.

Will had one significant girlfriend that he dated all three years of college. They parted amicably their senior year after realizing their different goals in life.



| Current Relationships (Shared by Applicant A & B if applicable) |
|---|

Will and Ronda met in 2008 at a local church where they were both active members. They dated actively for about three months before getting engaged and married on February 22, 2009. Both Will and Ronda recount that an integral part of their dating relationship was getting to know each other during a two-week mission trip to Uganda in the fall of 2008. During the trip, Will became ill, and Ronda was able to be a caretaker for him while he was in the local clinic. They report that they had to learn how each of them communicated under difficult circumstances.

The McNae's describe their relationship and marriage as very strong. There has never been a time when they have considered divorce or been separated. They talk things through and make major decisions together. Decisions pertaining to the children are mostly made with Ronda leading and financial decisions are led by Will. Their marriage is a high priority to both of them and both feel that they balance each other out.

It was assessed that family violence within the household or family may impact the care of children.

Ronda's mother has been in relationships marred by domestic violence in the past. 

It was assessed that there is no concerns regarding unstable partnerships/marriages in this family.

Children of applicant(s) including adult children, minor children, and other children applicant(s) has parented:

| Name of Child | Date of Birth | Applicant's Relationship to Child |
|---|---|---|
| Ella McNae | 08/11/2010 | Parents |
| Liam McNae | 12/03/2012 | Parents |

Ella McNae

Ronda describes Ella as intellectual, intuitive, and creative. She is very curious and asks a lot of questions. She understands the importance of standing up for herself and her friends at school. She is resilient and adaptable. She plays basketball and has taken on a leadership role on one of the teams she's on. She's a rule follower but sometimes fibs, but Ronda knows when to spot deception.

Will describes Ella as a thoughtful girl who has established a record of trust with them so she can be trusted to babysit Liam and help around the house. She is insightful and has an ability to "read the room." She makes friends quickly but has learned the hard way about how friends can sometimes turn on you. She plays sports and is very active. She does well in school and is fun to be around.

Ella started to exhibit some signs of depression after she was suddenly moved from a private Christian school. Ronda sought out an evaluation for Ella and it was identified that her symptoms were due to forced alienation by the school. She is prescribed a low dose of anxiety medication and had a few counseling sessions. She's been back at baseline for some time now and stable on her medication.

This Home Study Specialist interviewed Ella privately in person on 3/13/2024. Ella reported that she is 13-years-old, in the 7th grade, and uses she/her pronouns. Ella thinks it would be fun to have her cousins come stay with her. She always wanted more siblings. Ella reported that rules in the home are to be nice to each other, keep their rooms clean and picked up, get everything done (like homework and chores), help when not asked, do the dishes, put other's needs above your own, don't be selfish, and tell the truth. Rules around food in the home are no food downstairs (because they try to keep the playroom clean), no food in their bedrooms (though a snack is okay), and they can help themselves to food whenever they want something. Ella reported that there is enough food for everyone in the home.

When her parents are stressed/angry/frustrated, her mom drinks root beer, cleans, and apologizes afterwards if they get into an argument. Her dad gives "a look," never yells, and apologizes if there was a misunderstanding. Ella anticipates helping her parents with the children if they are placed by babysitting, taking the kids to a nearby park to play, or going to the waterpark in downtown Kirkland (within walking distance).

Liam McNae

Ronda describes Liam as goofy and as someone who likes to make people laugh. He's a smart kid, though COVID-19 set him back. He's a helper and enjoys playing sports and video games. In the summer, they go on bike dates where they talk and have a heart-to-heart. Liam is good at asking for one-on-one time.

Will describes Liam as a child who is emotionally sensitive - he can pick up on how others are feeling. He needs to check in to verify they are connected, usually by asking for one-on-one time or saying he loves them. He has always been a little behind Ella in his ability to communicate, so he struggles to talk through more challenging conversations. Liam is starting to see how making and keeping friends can be challenging.

Liam was also impacted by leaving public school for private school then coming back three years later and having to pick back up where he left off with that peer group. He has seen a counselor in the past to help process these transitions. He is also active and enjoys playing sports.

This Home Study Specialist interviewed Liam privately in person on 3/13/2024. Liam reported that he is 11-years-old, in the fifth grade, and uses he/him pronouns. Liam would like to see his cousins more often and thinks it would be "delightful" if they came to live with his family. Rules in the home for Liam are to put his dishes in the dishwasher, put back what he takes out, and keep his belongings organized. Rules around food in the home are no food in bed, no drinks or food in the playroom, and ask first before having something unhealthy, otherwise he helps himself if he needs something to eat. Liam reported that there is enough food for everyone in the home.

When his parents are stressed/frustrated/angry, they usually take the family someplace and do something together to take their minds off the issue. Liam anticipates helping his parents with the children if they are placed in the home by reading or playing with the kids. Liam stated that he wouldn't be responsible for babysitting without Ella also present, as he isn't old enough.

Ronda suffered a miscarriage in October during their first pregnancy. She and Will had been married for about six months. They have processed their feelings of grief and loss in therapy.

As an adult, Ronda connected with a family at her church who helped her to continue healing from her past. They became very close, and Ronda considered their children to be like siblings. Over the last several years, Ronda started to recognize how enmeshed and codependent the family was. She started to set boundaries with them and has ended contact with them entirely today.

Ronda has worked hard in therapy since 2011 to establish a solid foundation for dealing with her family history and setting boundaries with her sisters and mother. She has had minimal contact with her father over the years and no contact with her stepfather. She anticipates setting boundaries with her sister in order to keep ▓▓▓▓▓▓▓▓▓▓▓▓▓ safe while ensuring that contact meets the court ordered visitation plan.

Will has had to set boundaries with his brother since they had a falling out regarding the care of their mother in 2020. They do not have contact outside of their attorneys at this time.

Ronda experiences stress related to the ongoing federal court case, the open dependency case in Iowa as it relates to her niece and nephew, and the complicated relationships between her family members due to CPS involvement. She regularly attends therapy, uses her self-care and coping skills, and leans on her supports. She recognizes that their family has a lot going on, but Ronda identifies herself as someone who speaks up and isn't afraid of whistleblowing. She also believes that this builds her resilience to stress when under adversity. Ronda added that certainly the timing of things could be better - having a federal court case is challenging - however the care of her niece and nephew is her highest priority, and she wants to be there for her relatives. She identified that if it were one over the other, she would pick the children and their well-being over her own legal matters.

Will experiences stress related to the boundaries they have put in place but it's not necessarily a daily stressor. There is stress related to the legal court case, but they have attorneys who are taking care of that. When they do run into parents or community members with whom there has been conflict, they ignore and don't engage. Will manages stress by coaching his children's sports, being outside, and enjoying movie nights with the family.

There are no other adults in the home or on the property.

It was assessed that the applicant(s) has/have chaotic, limited, or lack of relationship(s) within their current family.

Ronda's relationships with her childhood family members are limited and in the case of her father and stepfather, she has no relationship with them today. Ronda demonstrates an awareness of these relationships, has demonstrated an ability to set appropriate boundaries, and has attended therapy related to her childhood.

| Caregiving / Parenting Experience (Shared by Applicant A & B if applicable) |
|---|

Ronda has had considerable experience with children through the years. In addition to being the parent to her two biological children, she has been a camp counselor for sixth graders, taught dance and cheer camps for young girls, worked as a nanny for six years, and volunteered for seven years in the children's ministry at a local church. She has also worked with children at an orphanage in Uganda for two weeks during a mission trip in 2008 and has taught high school bible study. Will learned to change diapers and care for children at an early age while helping care for his 8 nieces and nephews. He is also an active, hands-on father to Ella and Liam. He worked in an orphanage in Uganda for two weeks in 2008 and has coached their children's various sports teams.

During their time as licensed foster parents in 2015, the McNae's took placement of one 2.5-year-old child. The child was placed with the McNae's for over five months. They knew a relative was going through the ICPC process to take the child. The placement was temporary, and they were happy when the child reunified with family. Will reported that he learned a lot about trauma and how it can impact children's development, explaining that the child was used to a more chaotic home environment and was initially unsettled being in a calm home with routine. Additionally, the child was used to eating McDonald's food only and they were very patient while they introduced new, healthy foods into the child's diet. They are grateful that they have been able to stay in contact with the child's relatives.

The applicant(s) has personal experience with foster care, guardianship, or adoption.

Ronda has previous experience filing a Child in Need of Services (CHINS) petition for herself when she was trying to get away from her abusive stepfather and mother. Ronda and Will were previously licensed for foster care in the state of Washington in 2015. They are going through this home study process in order to be considered a placement option for Ronda's sister's children who are placed in out-of-home care in Iowa.

Ronda and Will co-parent well because they are slightly different; Ronda reported that she is stricter and sets clear boundaries whereas Will is kind and believes the children the first time they say something. While Ronda is strict, she also gives the kids room for grace and forgiveness. Ronda has learned a lot about how she missed out on serve and return interactions from her parents as a child. She has worked to correct that as a caregiver herself and ensure that she is giving her children the emotional support they need.

Will describes his parenting style as taking things at face value and he gives the kids the benefit of the doubt. That can sometimes come across as him being the "easy" parent, making Ronda the stricter parent. Will identified that their parenting styles are complimentary. They learned in the past that they can get into trouble if the kids play them against each other. Now, the kids know that if they play the parents against each other, then there are consequences. Now that Will works from home, Ronda and Will are there at the same time and can talk things through before enforcing something.

Ronda is the primary caretaker as a stay-at-home parent however Will works from home and is available to share in parenting responsibilities. Ronda is grateful for how involved and hands-on Will is with parenting and how equal their tasks are including grocery shopping, laundry, cooking, etc.

Ronda and Will were challenged when the child they had placement of in 2015 was told they would be changing placements with only one week's notice. Ronda talked to the child at length about the move, where they were going, why, and how to prepare. Day by day, the child started to act out, display aggression, started to store food, and became dysregulated. Ronda worked with the child's daycare and contacted the assigned social worker and CASA to support the child. Ronda would have liked to see a slower transition, as it was clearly difficult for the child, but she did what she could to make the transition as smooth as possible. Ronda learned that there are a lot of resources out there and that she has to advocate for them.

The McNae's have experienced challenges with Ella's basketball coach and their boundaries with the team. Ronda and Will initially couldn't agree upon when to speak up since Will was the assistant coach and more enmeshed in the situation. Eventually, they decided to speak up and take action by taking Ella off the team. It was a challenge to finally make that decision, and to be on the same page about what action to take.

Will identified that it was hard for Ella when she was removed from private school. They had her assessed at Seattle Children's Hospital and then got her in to see her primary care provider. Ella was prescribed medication from her primary care provider and started seeing a counselor. When they noticed that she wasn't doing well, they sought out community supports and got services in place to help her move through that difficult transition.

Will identified that Liam went through a phase of making inappropriate comments, likely based on something he had seen on YouTube, with the intention of being funny/making people laugh. They needed to help him understand what was appropriate and what wasn't appropriate, then consistently reinforce it. This behavior went away over time.

The applicant(s) was not required to complete training as a part of the unlicensed home study or training was exempted for the Kinship License.

Ronda and Will were previously licensed foster parents in Washington state and during that time they both completed Orientation, Caregiver Core Training (CCT), and training on the Period of PURPLE Crying. They also held valid CPR and First Aid training while they were licensed. Ronda voluntarily completed 12 hours of Kinship Core Training (KCT) and 27 hours of CCT during this home study assessment. She earned a CPR, AED, First Aid, and Bloodborne Pathogens certificate from National CPR Foundation on 3/23/2024. She is also interested in

participating in the local kinship support groups and plans to take Boundaries as Self-Care on April 18, 2024. This writer also recommended that she take Self Care for Caregivers and Building Parental Resilience for Kinship Caregivers when they are offered by the Alliance for Child Welfare.

The applicant(s) demonstrated an understanding of, and agreed to promote normalizing experiences, act as a prudent parent in day to day decision making, support a healthy and balanced childhood experience and treat the child as part of the family.

---

**Child Development and Expectations (Shared by Applicant A & B if applicable)**

---

The applicant(s) demonstrated knowledge about child development, including cognitive, physical, emotional, social development, and appropriate expectations for routines and chores. The effects of trauma on childhood development were discussed and the applicant(s) understands that children in out-of-home care may demonstrate what some consider atypical childhood development.

Ronda reported that she has talked to both of her children in an age appropriate way about how she was assaulted because they both noticed that something was wrong. Ronda explained that something had happened that was wrong and that there is a federal court case going on. Ronda understands that children hear and notice things and have a right to know what's going on but that it needs to be age appropriate. This demonstrates that the McNae's have an ability to role model navigating difficult subjects but in a way that doesn't further traumatize or cause anxiety in children. Additionally, Ronda believes it is important to have conversations about good touch/bad touch with their children. The McNae's have open communication with their children and are forthcoming and honest so that their kids can come to them with anything they need to talk about. Ronda explained that she tends to run things by her supports first, before talking to the children, like her therapists, Will, and friends, to get input on how to approach difficult topics.

The applicant(s) agrees to access any services for children in out-of-home care (e.g. counseling, physical therapy, etc.) per the case plan.

Ronda and Will have applied to care for children who are two-years-old and over. They do, however, understand that newborns and infants are completely dependent on their caregivers. They understand that infants communicate through behaviors and crying, and caregivers need to observe and learn the child's cues to respond appropriately.

Ronda and Will understand that children in the toddler/pre-school stage of development need caregivers to be attuned to their needs, responsive to potential delays, and access services to support behavioral challenges, attachment challenges, or regressions. Ronda identified that being trauma-informed is important including an emphasis on safety, consistency, and patience. Ronda and Will aim to create a nurturing environment that encourages expression and healing for children in this stage of development.

Ronda and Will understand that children in the school aged stage of development need a stable and supportive home environment to facilitate learning and emotional well-being. Caregivers should be attentive to signs of anxiety, difficulty with trust, or challenges with social interactions. Ronda and Will understand that they will need to be patient, understanding, and consistent with routines.

Ronda and Will understand that preteens need compassion and structure from their caregivers. Caregivers need to recognize potential emotional, social, and academic challenges and provide support, encouragement, and trust. Ronda and Will understand that preteens need open communication, stable routines, and access to counseling. Based on her experiences as a child, Ronda is committed to ensuring children in her care understand that their thoughts and feelings are valid, and she works to listen attentively and respect their instincts.

Ronda and Will understand that teenagers need an approach from caregivers that matches their developing independence and identity. Caregivers should balance empathy with expectations, provide support, reinforce positive decision-making, foster emotional intelligence, and maintain open communication. Teenagers have a right to be heard and caregivers should ensure they feel valued and understood. Ronda and Will anticipate showing patience, respect, and a commitment to listening and responding to their unique needs.

The McNae's anticipate obtaining evaluations for ██████████████ by a pediatrician so that they can get a baseline and ensure they have immediate local assistance, should they be placed in their care. Beyond that, should a child in their care not meet their developmental milestones, Ronda and Will will consult with the doctor/dentist, the assigned social worker, reach out to community-based supports like specialists, reach out to a counselor/therapist if appropriate/needed, and look for referrals within the community depending on the issue. Ronda would also try to see past the behavior to determine if there is a need not being met or if something is a trauma response.

| **Behavior Management (Shared by Applicant A & B if applicable)** |
|---|

Ronda's mother maintained no structure and had inconsistent rules in the home. As a result, Ronda spent much of her childhood parenting her younger sisters. Ronda was disciplined physically, verbally, and emotionally. She would never discipline her children or children in her care in the ways she was disciplined as a child. Ronda feels that her mother's parenting style was highly ineffective. The amount of trauma and fear that it instilled in the siblings has damaged them in the long-term. Ronda was so afraid of repeating the cycle of abuse and neglect that she did a lot of reading, education, and therapy to learn alternative methods to parenting and how to have healthy relationships with others.

As a child, Will was disciplined by talking things through, losing free time with friends, having to do extra chores, and losing TV privileges. Will was positively impacted by his parents' parenting style as he felt his parents' expectations were clear and they held him accountable.

As parents themselves, Ronda and Will focus on positive reinforcement and constructive discipline techniques. They focus on understanding the reasons behind the behaviors, teaching responsibility, and encourage self-regulation. They set clear expectations, offer choices, use natural and logical consequences, and model the behavior they want to see. Their goal is to foster an environment of respect, empathy, and open communication, helping children develop a strong sense of self-worth and emotional intelligence. Ronda tends to utilize big consequences for actions the first time so that the behavior isn't done again - like when Ella called Liam a bad word, Ronda made her write an essay. Ronda also endorses that taking accountability or ownership of their own actions is important in their home. Will identified that they can talk to Ella about things, and she can think abstractly. Liam thinks more black and white and needs more concrete consequences.

There isn't a hierarchy of power in the home and discipline varies depending on who saw the behavior happen, who the child went to, and based on what they decide when Ronda and Will talk about it later. If a child lies, Ronda is usually better at spotting deception and catches those incidents more often. Will often catches behavior outside the home, since he's at sport events and practice.

Collaterals report that Ronda and Will take game time away, use natural consequences, take away privileges like time with friends or cell phones, or children have to write an essay on why they need to be nice/write an "I'm sorry" letter. They also talk to the children, give time outs if needed, and reward/recognize good behavior. This matches what Ronda and Will self-reported.

Ronda stated that first and foremost, they will have a lot of grace and patience with ██████████████ if they are placed in her care. She anticipates using chore charts, schedules, and stickers to reward good behavior. She anticipates trying to find a way to introduce the children to their home without it being overwhelming. She has thought about making it an activity rather than a lecture. She intends to start simple, with the basics, and then slowly introduce other things about their home, expectations, and routine. She also anticipates waiting to see what the children's temperament is like and they will adjust accordingly.

Will recognizes that the children may not have had consistent rules and because they have lived in several homes in the last year, they may have had a variety of expectations put on them. He intends to be very patient and give the kids time to get adjusted. They hope their own children will be strong role models and lead by example.

It was assessed that there was an instance or mention of inappropriate discipline or potential for the use of inappropriate discipline in the future.

One collateral reported that Ronda and Will spanked their children on their hand once when the children were very young. Spanking was also discussed in the previous home study assessment. The McNae's do not spank and

haven't spanked their children as they found it highly ineffective. Growing up in a home where she was beat, Ronda always saw corporal punishment as a lack of communication between the parent and child. Ronda and Will understand Washington state's discipline policy and agree to follow it.

| Diversity, Equity and Inclusion (Shared by Applicant A & B if applicable) |
| --- |

Ronda identifies as Filipino and may have Native American, Indian, and Scottish heritage on her father's side. She reports feeling very disappointed in her lack of cultural ties to her heritage. She states that she missed out on the Filipino influences in her life because she did not have any ties or connections to that part of her family and her mother did not incorporate that into her upbringing.  Ronda describes making holidays a big deal for her children to compensate for what she was lacking as a child herself. Will identifies as Scottish. The McNae family participates in traditional Christian and American holidays including Christmas, Easter, Thanksgiving and Birthdays.

When they were licensed foster parents, Ronda and Will were open to fostering/adopting children from any cultural/ethnic background. Ronda keenly understands what it is like to not have a connection with your cultural ethnic background and is actively seeking to find that for herself today. Thus, she understands the importance of maintaining these connections for children in care in their home. Will also values cultural connections and has an appreciation for cultural practices and beliefs outside of his own. Together they would make maintaining any child's cultural heritage a priority in their home. They look forward to learning more about what traditions Oakley and Rowan have already established, as well as introducing them into their family and celebrating their traditions together.

Ronda shares the same cultural background as her niece and nephew. She hopes to foster a positive sense of self and pride in them. She anticipates having open discussions about race and identity in her home and will provide them with tools to navigate and challenge racial biases. Will reported that they already talk to their own children about race and how they are a mixed-race family. He anticipates continuing to help children in their care develop their sense of self-awareness and identity.

The McNae family has attended a non-denominational Christian church in the past but aren't regularly attending at this time. They read and study the Bible on their own time and teach about Jesus and the Bible to their children. Even though their own personal faith is strong, both Ronda and Will understand that their own religious practices and preferences may not be the same as children in their care. They invite children in their care to explore their faith and spirituality and would never force a child to participate in their religion. They hope to foster an environment in their home where all spiritual beliefs are valued and nurtured.

Ronda and Will will support a child in their care exploring their sexual orientation, gender identity, and expression (SOGIE). They would use the child's pronouns, preferred name, and allow the child to dress in a manner of their choosing. Ronda has a connection with a local nonprofit which is dedicated to supporting and affirming youth. Ronda and Will are confident that they have community-based resources to support a child in their care who is exploring their SOGIE.

Ronda and Will will support a child who identifies as LGBTQ+ by fostering an environment of unconditional love and acceptance. They will ensure children in their home feel safe and supported to express their true selves without fear of judgement or rejection. They strive to have open communication with all children in their home. They are open to seeking out resources and ongoing education to better understand the child's needs and to advocate for their rights and well-being. They also have close friends who are part of the community who they could lean on for support.

It was assessed that the applicant(s) has the ability to parent a child from different backgrounds or experiences, including race, ethnicity, religion, spirituality, sexual orientation, gender identity, and gender expression.

| Education (Shared by Applicant A & B if applicable) |
| --- |

Ronda graduated high school, attended college at Northwest University in Washington, and attended community college in California. Will graduated from The University of Denver with a Bachelor of Arts Degree in Music Performance. He was very active in school programs throughout high school including music and sports. They both

identify their educational experiences as successful and place a high importance on education for children in their care.

The applicant(s) considers their educational experience a success.

It was assessed the applicant(s) has realistic educational goals for children in out-of-home care.

It was assessed the applicant(s) is willing to advocate for and support children with a variety of educational challenges, including a need for an Individualized Education Plan (IEP) or 504 Plan.

---

### Resources (Shared by Applicant A & B if applicable)

It was assessed that the applicant(s) appears to have readily available resources in the form of family/friend support, community, emergency contact(s), and child care (or a plan for child care).

Ronda and Will acknowledge that their family has a lot going on for them right now however they add that no one gets to choose when challenges occur. They demonstrate a high level of resilience and flexibility and are doing everything in their capacity to open their home to Ronda's relatives to avoid the need for the children to enter foster care.

---

### Home Environment (Shared by Applicant A & B if applicable)

Ronda and Will have lived in their two-story, four-bedroom, two-bathroom home for 7 years. The home is located at the end of a short private driveway in a suburban neighborhood of Kirkland. The neighborhood is near schools, shopping, and a park. The front yard contains a basketball hoop, two raised gardening beds, and a covered storage area where the family keeps their bikes. The backyard contains a treehouse, swing, a soccer goal, and a trampoline. The kitchen, living room, and a full bathroom are located upstairs. There is an enclosed balcony located off the kitchen with a BBQ and outdoor furniture. The family has a Ring doorbell including a camera in the kitchen which faces the front door. They understand that they cannot use the monitoring system to supervise children and that children in out-of-home care must have privacy. The downstairs/basement contains a playroom with toys, games, a piano, a couch, an office area, and a crafting table with a sliding glass door leading to the backyard. There is also a laundry/storage room located downstairs which contains the washer and dryer, a door leading to the backyard, and a storage area with a fridge, camping gear, craft supplies, and various items in storage. The second bathroom is located in between the playroom and storage room.

Second/Main floor:

Bedroom 1: Caregiver's bedroom contains their bed, a window, a dresser, a smoke detector, a TV, and a closet. There is access to the bathroom through the caregiver's room.

Bedroom 2: Ella's bedroom contains her lofted bed with a hangout underneath, her desk, a closet, a bookshelf, a window, and a smoke detector.

Bedroom 3: Liam's bedroom contains his lofted bed with the dog crate underneath, his desk, a closet, a window, and a smoke detector.

Downstairs/Ground level:

Bedroom 4: Available bedroom for the children contains two toddler beds, a closet, a lamp, a bookshelf, a window, and a toy chest. This writer discussed with Ronda and Will that they may consider adding a smoke detector to this bedroom, though there is one located in the hallway outside the room.

Ronda and Will anticipate seeing how this arrangement goes, if the children are placed in their care. They are open

to moving bedrooms around if the children need to be on the same floor as them. In the meantime, they may use baby monitors to monitor the children during naptime/at night.

The applicant(s) is not caring for children under the age of one; therefore, the safe sleep environment(s) was not observed, and education was not required. The applicant(s) agrees to complete education before accepting placement of a child(ren) under the age of one.

It was assessed that there are no weapons/ammunition in the home or on the property.

It was assessed that toxic materials are kept inaccessible when there is concern about inappropriate/unsafe access by children.

It was assessed that the applicant(s) has a plan for keeping children from accessing alcohol, nicotine, and marijuana.

It was assessed that all medications (including over-the-counter, vitamins, and herbal remedies) are inaccessible to children in Kinship placement. There is a plan in place to access life saving medication, if applicable.

There are pets or animals in the home or on the property.

Ronda and Will have four hypoallergenic dogs. All are reportedly up-to-date on vaccines. There is no history of aggression or biting from any of the dogs and they are reportedly great with children.

The home appears sanitary and without immediate safety concerns.

There are outbuildings on the property.

There is one shed located in the backyard. It contains various yard and gardening supplies and is kept locked when not in use.

It was assessed that potential hazards in the home or on the property will not affect the safety of children.

There are two fireplaces in the home which the family never uses. They understand that they must provide adult supervision if they do decide to use either fireplace in the future.

The applicant(s) has sufficient access to the necessary resources (schools, health services, and food).

| **Occupation and Finances (Shared by Applicant A & B if applicable)** |
| --- |

Ronda is a stay-at-home parent and Will works full-time as a Director at The Partner Masters Monday through Friday.

Ronda is available for all childcare needs, should ███████████ be placed in their care. The family has two personal vehicles with current vehicle insurance to transport the children to all appointments. They anticipate securing daycare/preschool for both children, should they be placed in their care, to help get █████ ready for school and socialization for █████.

The applicant does not have military experience.

It was assessed that the applicant(s) has sufficient income or other resources to meet their needs.

Ronda and Will are supported by Will's full-time job. A Financial Worksheet was received for the purpose of this home study assessment. The family has discretionary money left over after their expenses. They have discussed the possibility of Ronda returning to work in the future, if needed, to support the family. Ronda and Will understand that Iowa has requested an unlicensed home study, and they will not be eligible for the foster care reimbursement. They are prepared to meet the children's needs should they be placed in their care and understand that there will be additional, unexpected costs in caring for two additional children. In preparation, Ronda and Will started a Go Fund Me page to lean on their support system so they could purchase beds, car seats, clothes, toys, and household safety items.

Ronda and Will understand that adoption support benefits, at least in the state of Washington, are based on a negotiation process. They understand that adoption support is a benefits package based on the child's needs and is not guaranteed.

| References (Shared by Applicant A & B if applicable) |
| --- |

Three references were received on behalf of Ronda and Will. All three references are friends of the family and have known them for 2 to 12 years. References describe Ronda and Will as good people who think about the welfare of others and advocate for actions that make the world a better place. They are reported to be a compatible couple who care about their friends. They are described as responsible, kind, active, friendly, loving, caring, giving, and accountable. All references are in support of Ronda and Will being a short and long-term placement option for the children.

A collateral contact was made with the assigned Iowa social worker Taylor Dursky on 3/26/2024. Social worker Dursky has had minimal contact with the McNae family however they are reportedly good at communicating and appear to be able to set firm and healthy boundaries.

| Clearances |
| --- |

DCYF completes background checks for all household members age 16 or older, including individuals living on any part of the applicant's(s') property. DCYF may also complete background checks on individuals younger than 16 in situations where it may be warranted to ensure the safety of children. Background checks for adults age 18 and older include fingerprints through the Federal Bureau of Investigation and child abuse and neglect history checks of each state the adult individual has lived in the five years preceding their background application. Individuals age 16 or 17 who have lived outside of Washington State in the three years preceding their background application must complete fingerprints.

The background check decision is based on a review of the individual's background information compared to the DCYF Secretary's List of Crimes and Negative Actions. It may include a suitability assessment for crimes that are not federally disqualifying.

Every individual in the home or on the property, as defined above, must pass a background check. These individuals include:

| Name | Results | Date |
| --- | --- | --- |
| Ronda McNae | Passed | 03/01/2024 |
| William McNae | Passed | 03/01/2024 |

During the background check process there were no concerning clearance issues identified outside of criminal history.

A Washington state child abuse and neglect check was completed for all household members. Ronda has no substantiated findings of child abuse or neglect. She is the minor victim named in 11 intakes. William has no substantiated findings of child abuse or neglect.

Ronda and Will received two Valid findings 7/22/2015 in violation of WAC 110-148-1465 and 110-148-1470 as a child in out-of-home care was sleeping in a tent in the crib. The tent was used for sleep training to prevent the child from regularly climbing out of the crib. It had been inappropriately approved by a case manager at the agency who licensed the McNae's. A Compliance Agreement was completed, and their foster care license remained open and in good standing.

| **Legal Permanency (Shared by Applicant A & B if applicable)** |
| --- |

It was assessed that the applicant(s) is capable of caring for children without the support of a case plan, once permanency is achieved. The applicant(s) is committed to caring for children in a safe, nurturing, and affirming way. The applicant(s) is capable and willing to address the financial, educational, health, and child-specific needs of children. This assessment is for the purpose of adoption.

Should something happen to Ronda and Will, Matt Mead (their children's Godfather) would care for any children in their care.

| **Sources of Information / Core Concepts of Adoption** |
| --- |

**The following sources of information were used in this home study assessment:**

Family Home Study or Reassessment Application (DCYF 10-354), Background Confirmation and Out of State Check (DCYF 15-460), Personal Information Form (DCYF 15-276), Applicant Medical Self Report (DCYF 13-001A), Emergency and Evacuation Plan (DCYF 16-204), Financial Worksheet (DCYF 14-452), Applicant Medical Report (Medical Provider) (DCYF 13-001), Reference Questionnaire (DCYF 15-286), Background Check Request / Decision (DCYF 09-131)

Valid government-issued photo identification (ID), Driver's license for people transporting children, Auto insurance for vehicles used to transport children, Training certificate(s), Income verification(s), Marriage certificate(s), Divorce decree(s)

Collaterals

**The following Core Concepts of Adoption were discussed with the applicant(s):**

☑ Concept of adoption/guardianship/long term foster care as a lifelong developmental process and commitment.
☑ The potential for the child to have feelings of identity confusion and loss regarding separation from the birth parents.
☑ The relevance of the child's relationship with siblings and the potential benefit to the child of providing for a continuing relationship and contact between the child and known siblings.
☑ Disclosure of the fact of adoption/guardianship/foster care to the child.
☑ The child's possible questions about birth parents and relatives.
☑ The relevance of the child's racial, ethnic, and cultural heritage. Race cannot be used in determining the fitness, character or suitability of an applicant.
☑ Permanency Planning Matrix Publication CWP_0088
☐ Not applicable for this assessment.

| **Evaluation (Shared by Applicant A & B if applicable)** |
| --- |

Washington state received an ICPC request from Iowa Department of Health and Human Services for a relative (unlicensed), adoption home study for Ronda and William (Will) McNae to be considered a placement option for Ronda's niece ▮▮▮▮▮▮▮▮▮ (DOB 6/27/2019) and nephew ▮▮▮▮▮▮▮▮d (DOB 4/8/2021). Ronda and Will were previously licensed foster parents with the state of Washington from 4/2/2015 to 11/2/2015. ▮▮▮▮and ▮▮▮▮came into care on 3/22/2023 and are currently placed in licensed care in Iowa.

Ronda and Will are raising two children of their own and were a placement option for a child in care in 2015 as

licensed foster parents. Ronda has also been a camp counselor, taught dance and cheer camps, worked as a nanny, taught high school bible study, and volunteered in the children's ministry at a local church. She and Will worked with children at an orphanage in Uganda. Will has experience caring for his nieces and nephews and coaching soccer. Ronda and Will have made themselves available for virtual visits with the children to get to know them better. They have sought out information about ███████████████ medical, educational, and mental health needs and have resources and connections to get the children into appropriate services, if needed. Ronda and Will have plans to help the children stay connected to safe and appropriate family members including their two older half-siblings. Due to their experience as foster parents, they have awareness and insight regarding transitions and some of the challenges that children face when moved from home to home. They have talked about potential impacts to their family and how best to approach it while preparing to lean on their supports for guidance, as needed.

Ronda and Will are open to being considered as a short and long-term placement option for ████████████████ They are prepared to meet the children's educational, medical, emotional, and financial needs.

The primary concerns and limitations that were disclosed during this home study assessment were that Ronda has experienced childhood and adult trauma and she has some medical conditions that impact her day-to-day functioning at times. Her primary care provider expressed in an Applicant Medical Report Form that caring for an additional two children may not be in Ronda's best interest at this time based on her health conditions. Throughout the home study assessment, Ronda was open and forthcoming about her trauma experiences. She demonstrated insight and understanding of her mental health and medical conditions.  She has supports in place today such as her husband, her therapists, her primary care provider, and her chosen family. Her husband works from home and is available to provide care to the children if Ronda has medical or mental health needs that she needs to address. Ronda continues to engage in reading, ongoing education, training, and intensive sessions to work through what happened to her and strengthen her coping strategies. She takes medications prescribed by her primary care physician and is reported to be stable on those medications. Her therapists provided Applicant Mental Health Report Forms acknowledging the progress she has made over the years while she has been under their care. They both provided positive references in support of her being considered a placement option fo ██████ and ██████ Additionally, three positive references were received for the purpose of this assessment, and all are in support of the McNae's being a placement option for the children. Ronda reports that her medical and mental health conditions are well-managed at this time. She has supports in place should she need assistance in caring for additional children.

Iowa requested a relative and adoption home study on this family. Ronda and William McNae are approved for placement and adoption of ████████████████ (DOB 6/27/2019) and ████████████████ (DOB 4/8/2021).

| Licensor Qualifications Statement |
|---|
| I am an employee of the Department of Children, Youth, and Families (DCYF) or an employee of an agency licensed by DCYF as a child-placing agency (CPA). I am assigned to provide home study services, including the completion of pre-placement reports. I meet the required qualifications as defined in RCW 26.33.<br><br>I am the author of this report, know the contents, and believe the statements included to be true. The recommendation is made based on the information available to me at the time of the home study. Additional information may change my recommendation. |

| Name of Worker<br>Lillie Scribner | Title<br>Home Study Specialist |
|---|---|
| Signature of Worker<br><br>*Lillie Scribner* | Date<br>04/03/2024 |

| Supervisor Statement |
|---|
|  |

| I have reviewed the contents, believe the statements included to be true and agree with the recommendations made based on the information available to me at the time of the home study. Additional information may change my recommendation. ||
|---|---|
| Name of Supervisor<br>MARIE HIRAYAMA | Title<br>Home Study Supervisor |
| Signature of Supervisor<br><br>*Marie Hirayama* | Date<br>04/03/2024 |

Document ID: 1790d507-d3ff-4a34-a748-0a1af46cfec5

# Signing History

- 2024-04-03T16:57:27.984-07:00: Lillie Scribner signed in the role of caseworker (ip: 147.55.7.167)
- 2024-04-03T17:04:22.477-07:00: MARIE HIRAYAMA signed in the role of supervisor (ip: 147.55.7.167)



Align top of FedEx Express® shipping label here.

TO  MIAMI COURT HOUSE
ATTN COURT CLERK
400 N MIAMI AVE
RM 8N09
MIAMI FL 33128

TRK  7706 8967 1922
(2010)

THU - 12 DEC 5:00P
STANDARD OVERNIGHT

X6 MPBA

33128
FL-US  MIA

Envelope

Recycle me