# Exhibit A

**Exhibit A: Plaintiffs' Initial and Supplemental Disclosures**

This exhibit contains Plaintiffs' **Rule 26(a) Initial Disclosures**, listing entities and individuals likely to have discoverable information relevant to Plaintiffs' claims and defenses. The disclosures include several SoftwareONE entities, such as SoftwareONE AG and SoftwareONE Inc. (NORAM).

However, critically absent from these disclosures is **SoftwareONE UK**, the entity at the center of Plaintiffs' allegations that Defendant breached the settlement agreement by contacting Plaintiff's employer and disclosing the agreement. Despite the pivotal role SoftwareONE UK plays in Plaintiff's claims, it was omitted from both the initial and supplemental disclosures.

This omission constitutes a significant procedural deficiency, depriving Defendant of the opportunity to investigate and address this entity's involvement during the original discovery period. The exclusion of SoftwareONE UK from the disclosures not only violates the spirit of Rule 26(a) but also undermines the integrity of the discovery process. Reopening discovery is essential to fully explore SoftwareONE UK's role in the allegations and to allow Defendant to prepare a complete and fair defense.

**Key Omission Timeline:**

SoftwareONE UK was not included in any of the disclosures provided:

1. Initial Disclosures (dated September 9, 2022).

2. First Supplemental Disclosures (dated February 27, 2023).

3. Second Supplemental Disclosures (dated April 19, 2023).

# Exhibit A-1

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. **1:22-cv-22171-JEM**

**MICHAEL J. FITZGERALD,**
**individually,**

**Plaintiff,**

v.

**RONDA MCNAE, individually,**

**Defendant.**

_____/

### <u>INITIAL DISCLOSURES OF PLAINTIFF MICHAEL J. FITZGERALD</u>

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff

Michael J. Fitzgerald ("Fitzgerald" or the "Plaintiff"), by and through their undersigned counsel,

submit the following Initial Disclosures:

1.      Pursuant to FRCP 26(a)(1)(A)(i), the following individuals may have discoverable

information that Plaintiffs may use to support their claims and defenses:

   a) **Michael J. Fitzgerald**: Has discoverable information concerning all allegations
   in the Plaintiff's Complaint ("Complaint").
   (c/o Assouline & Berlowe, P.A., Miami Tower, 100 S.E. 2nd St., Suite 3105,
   Miami, FL 33131) (305-567-5576);

   b) **Yelany De Varona**: May have discoverable information concerning all
   allegations in the Complaint. (c/o Assouline & Berlowe, P.A., Miami Tower, 100
   S.E. 2nd St., Suite 3105, Miami, FL 33131) (305-567-5576);

   c) **Ronda McNae:** Defendant who has discoverable information concerning the
   allegations in the Complaint;

   d) **William McNae:** Defendant's husband who has discoverable information
   concerning the allegations in the Complaint;

   e) **Unknown Representative(s) of SoftwareOne AG:** May have discoverable

information concerning the allegations in the Complaint and Defendant's or her husband's contacts with SoftwareOne related to the allegations of the complaint;

f) **Unknown Representative(s) of SoftwareOne Inc. (a/k/a SoftwareOne NORAM):** May have discoverable information concerning the allegations in the Complaint and Defendant's or her husband's contacts with SoftwareOne Inc. related to the allegations of the complaint;

g) **Unknown Representative(s) of Microsoft Corp.:** May have discoverable information concerning the allegations contained in the Complaint and Defendant's or her husband's contacts with Microsoft Corp related to the allegations of the complaint;

h) **John Mays of SoftwareOne AG:** SoftwareOne head of Human Resources that was involved with dealing with multiple communications from Defendant relating to issues raised in the Complaint. (located in Singapore City, Singapore);

i) **Deiter Schlosser of SoftwareOne AG:** SoftwareOne CEO that may have been involved with multiple communications from Defendant relating to issues raised in the Complaint. (located in Singapore City, Singapore).

j) **Jennifer P. Gaines, SoftwareOne Inc.:** General Counsel NORAM for SoftwareOne that may have been involved with multiple communications from Defendant relating to issues raised in the Complaint. (Milwaukee, Wisconsin)

k) **Frank Rossini, SoftwareOne AG:** General Counsel and Board Secretary for SoftwareOne AG that may have been involved with multiple communications from Defendant relating to issues raised in the Complaint. (Switzerland)

l) **Alexandra Considine-Tong, SoftwareOne AG:** Subordinate at SoftwareOne to Plaintiff Fitzgerald that may have knowledge of damage to Plaintiff as a result of Defendant having contacted SoftwareOne. (London, England).

m) **Ashley Gaare, SoftwareOne Inc.:** President of SoftwareOne, North America who had several communications with Defendant and her husband regarding issues raised in the Complaint. (Milwaukee, Wisconsin)

n) **Patty Ravencroft, SoftwareOne Inc.:** SoftwareOne North America head of Human Resources that was involved with dealing with multiple communications from Defendant relating to issues raised in the Complaint. (Milwaukee, Wisconsin)

o) **Jared Cheney, SoftwareOne Inc.:** Software One Vice President of Services who Defendants Husband spoke to about issues raised in the Complaint. (Milwaukee, Wisconsin)

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

p) **Wismar Medina**:  Account Manager at Microsoft Corp. responsible for the SoftwareOne Account.  May have had communications with Defendant's husband regarding issues raised in the Complaint.  (Issaquah, Washington)

q) **Josh Kodie or Josh Kodi:**  Defendant's husband's boss at Microsoft who had discussions with Defendant Defendant's husband regarding issues raised in the Complaint.  (Washington State)

r) **Thomas Wiper**: May have discoverable information concerning the allegations in the Complaint and defenses Defendant may raise.  Had multiple facetime communications from Defendant after Miami, where she referred to Plaintiff as her "Bestie."  Had multiple Instagram messages from Defendant professing her love for Plaintiff; (County Durham, England).

s) **Matthew Wiper**: May have discoverable information concerning the allegations in the Complaint and defenses Defendant may raise.  Had multiple facetime communications from Defendant after Miami, where she referred to Plaintiff as her "Bestie"; (County Durham, England).

t) **Anthony McMaster:**  May have discoverable information concerning the allegations in the Complaint and defenses Defendant may raise.  Had multiple facetime communications from Defendant after Miami, where she referred to Plaintiff as her "Bestie"; (County Durham, England).

u) **Richard Bestford:**  May have discoverable information concerning the allegations in the Complaint and defenses Defendant may raise.  Had multiple facetime communications from Defendant after Miami, where she referred to Plaintiff as her "Bestie"; (County Durham, England).

v) **Jessica Bergman-Sevillano:**  Will have discoverable information concerning allegations in the Complaint and defenses Defendant may raise.  Was with the parties in Miami. (Miami, Florida)

w) **Anthony "Tony" Sevillano:**  Will have discoverable information concerning allegations in the Complaint and defenses Defendant may raise.  Was with the parties in Miami. (Miami, Florida)

x) **Timothy Naeylan:**  Will have discoverable information concerning allegations in the Complaint and defenses Defendant may raise.  Was with the parties in Miami. (Philadelphia, Pennsylvania)

y) **Dana Lebel**:  Will have discoverable information concerning allegations in the Complaint and defenses Defendant may raise.  Was with the parties in Miami.

z) **Defendant's Foster Sister #1 (name unknown):**  Will have discoverable information concerning allegations in the Complaint and defenses Defendant may

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

raise.  Was with the parties in Miami, and can be identified by Defendant in a photo being produced in Plaintiff's initial disclosures. (Miami, Florida)

aa) **Defendant's Foster Sister #2 (name unknown):**  Will have discoverable information concerning allegations in the Complaint and defenses Defendant may raise.  Was with the parties in Miami, and can be identified by Defendant in a photo being produced in Plaintiff's initial disclosures. (Miami, Florida)

bb) **Friend #1 of Defendant's Foster Sister #2 (name unknown):**  Will have discoverable information concerning allegations in the Complaint and defenses Defendant may raise.  Was with the parties in Miami, and can be identified by Defendant in a photo being produced in Plaintiff's initial disclosures. (Miami, Florida)

cc) **Friend #2 of Defendant's Foster Sister #2 (name unknown):**  Will have discoverable information concerning allegations in the Complaint and defenses Defendant may raise.  Was with the parties in Miami, and can be identified by Defendant in a photo being produced in Plaintiff's initial disclosures. (Miami, Florida)

dd) **David Carpenter:**  May have discoverable information concerning the allegations in the Complaint;  (Washington State)

ee) **Daughter of David Carpenter (name unknown)**; May have discoverable information concerning the allegations in the Complaint;  (previously San Francisco area, location unknown)

ff) **Defendant's Baby Sitter/Friend (name unknown)**:  Watched Defendant's daughter at hotel room in Miami.  May have discoverable information concerning the allegations in the Complaint;  (Miami, Florida)

gg) **George Coupet**:  May have knowledge of Defendant's Facetime contact with Yelany De Varona.  (Fort Lauderdale, Florida)

hh) **Jana Carrero:**  Friend of Yelany De Varona that Defendant was contacting through social media to get in touch with Yelany De Varona.  May have discoverable information concerning the allegations in the Complaint;  (Miami, Florida)=

ii) **Baoli Miami, restaurant:**  May possess CCTV footage of evening in Miami.

jj) **W-Hotel, Downtown San Francisco:**  May possess CCTV footage of weekend in San Francisco.

kk) **W-Hotel, Miami Beach:**  May possess CCTV footage of evening in Miami.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

ll) **Unknown Sushi restaurant in San Francisco:** May possess CCTV footage of weekend in San Francisco.

mm)   **San Francisco International Airport:** May possess CCTV footage of weekend in San Francisco.

nn) **AC Hotel, Belvue Washington:**  May possess CCTV footage of meeting between Plaintiff and Defendant in Bellevue, Washington.

oo) **Any and all individuals disclosed by Defendant.**

2.      Pursuant to FRCP 26(a)(1)(A)(ii), Plaintiff provides a description by category and location—of all documents, electronically stored information, and tangible things that Plaintiffs have in their possession, custody, or control and may use to support its claims and defenses below:

a.  Correspondence and communications between and Among Plaintiff and Defendant and her husband regarding the allegations in Complaint.  Copies located with Plaintiff in England and located at Plaintiffs' attorney's office at Assouline & Berlowe, P.A., 100 S.E. 2nd St., Suite 3105, Miami, FL 33131;

b.  Correspondence and communications between Defendant and Yelany De Varona.  Copies located in England and at Plaintiffs' attorney's office at Assouline & Berlowe, P.A., 100 S.E. 2nd St., Suite 3105, Miami, FL 33131;

c.  Correspondence and communications between Defendant and Thomas Wiper. Copies located in England and at Plaintiffs' attorney's office at Assouline & Berlowe, P.A., 100 S.E. 2nd St., Suite 3105, Miami, FL 33131;

d.  Defendant's online postings on medium.com. Copies located in England and at Plaintiffs' attorney's office at Assouline & Berlowe, P.A., 100 S.E. 2nd St., Suite 3105, Miami, FL 33131;

e.  Defendant's online postings on Instagram. Copies located in England and at Plaintiffs' attorney's office at Assouline & Berlowe, P.A., 100 S.E. 2nd St., Suite 3105, Miami, FL 33131;

f.  Photos and video of from Miami. Copies located in England and at Plaintiffs' attorney's office at Assouline & Berlowe, P.A., 100 S.E. 2nd St., Suite 3105, Miami, FL 33131;

g.  Photos and video from San Francisco. Copies located in England and at Plaintiffs' attorney's office at Assouline & Berlowe, P.A., 100 S.E. 2nd St., Suite 3105, Miami, FL 33131;

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

3.      Pursuant to FRCP 26(a)(1)(A)(iii), Plaintiff states that it seeks damages in an amount in excess of $450,0000, plus interest, as well as any other relief that the Court deems fair and just.

4.      Pursuant to FRCP 26(a)(1)(A)(iv), Plaintiff states that he does not have insurance agreements applicable to this action under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy any such judgment.

5.      Plaintiff reserves his right to supplement or modify his Initial Disclosures based on his continuing investigation of the facts at issue in this action as the case progresses.

6.      These Initial Disclosures are made without waiver or prejudice to any and all objections Plaintiff may have.

Dated: September 9, 2022

Respectfully submitted,

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
Telephone: 305-567-5576
Facsimile: 305-567-9343

By: */s/ Peter E. Berlowe*
    **Peter E. Berlowe**
    **Florida Bar No. 143650**
    **peb@assoulineberlowe.com**
    *Attorneys for Plaintiff Michael J. Fitzgerald*

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy and correct copy of the foregoing has been furnished

via email (but not filed with the Court) on September 9, 2022 to:

Alaina Fotiu-Wojtowicz, Esq.
BRODSKY FOTIU-WOJTOWICZ, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com
*Counsel for Defendant Ronda McNae*

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

# Exhibit

# A-2

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. **1:22-cv-22171-JEM**

MICHAEL J. FITZGERALD,
individually,

           **Plaintiff,**

v.

RONDA MCNAE, individually,

           **Defendant.**

_____/

## SUPPLEMENTAL INITIAL DISCLOSURES OF PLAINTIFF MICHAEL J. FITZGERALD

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff Michael J. Fitzgerald ("Fitzgerald" or the "Plaintiff"), by and through their undersigned counsel, submit the following Supplemental Initial Disclosures:

1.     Pursuant to FRCP 26(a)(1)(A)(i), the following individuals may have discoverable information that Plaintiffs may use to support their claims and defenses:

    a) **Michael J. Fitzgerald**: Has discoverable information concerning all allegations in the Amended Complaint.
(c/o Assouline & Berlowe, P.A., Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, FL 33131) (305-567-5576);

    b) **Yelany De Varona**: Has discoverable information concerning all allegations in the Amended Complaint. (c/o Assouline & Berlowe, P.A., Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, FL 33131) (305-567-5576);

    c) **Ronda McNae:** Defendant who has discoverable information concerning the allegations in the Amended Complaint;

    d) **William McNae:** Defendant who has discoverable information concerning the allegations in the Amended Complaint;

e) **Unknown Representative(s) of SoftwareOne AG:** May have discoverable information concerning the allegations in the Amended   Complaint and Defendants' contacts with SoftwareOne related to the allegations of the Amended Complaint;

f) **Unknown Representative(s) of SoftwareOne Inc. (a/k/a SoftwareOne NORAM):** May have discoverable information concerning the allegations in the Complaint and Defendants' contacts with SoftwareOne Inc. related to the allegations of the Amended Complaint;

g) **Unknown Representative(s) of Microsoft Corp.:** May have discoverable information concerning the allegations contained in the Complaint and Defendants' contacts with Microsoft Corp related to the allegations of the Amended Complaint;

h) **John Mays of SoftwareOne AG:** SoftwareOne head of Human Resources that was involved with dealing with multiple communications from Defendants relating to issues raised in the Amended Complaint. (located in Singapore City, Singapore);

i) **Deiter Schlosser of SoftwareOne AG:** SoftwareOne CEO that may have been involved with multiple communications from Defendants relating to issues raised in the Amended Complaint. (located in Singapore City, Singapore).

j) **Jennifer P. Gaines, SoftwareOne Inc.:** General Counsel NORAM for SoftwareOne that may have been involved with multiple communications from Defendants relating to issues raised in the Amended Complaint. (Milwaukee, Wisconsin)

k) **Frank Rossini, SoftwareOne AG:** General Counsel and Board Secretary for SoftwareOne AG that may have been involved with multiple communications from Defendants relating to issues raised in the Amended Complaint. (Switzerland)

l) **Alexandra Considine-Tong, SoftwareOne AG:** Subordinate at SoftwareOne to Plaintiff Fitzgerald that may have knowledge of damage to Plaintiff as a result of Defendants having contacted SoftwareOne. (London, England).

m) **Ashley Gaare, SoftwareOne Inc.:** President of SoftwareOne, North America who had several communications with Defendants regarding issues raised in the Amended Complaint. (Milwaukee, Wisconsin)

n) **Patty Ravencroft, SoftwareOne Inc.:** SoftwareOne North America head of Human Resources that was involved with dealing with multiple communications from Defendants relating to issues raised in the Amended Complaint. (Milwaukee, Wisconsin)

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

o) **Jared Cheney, SoftwareOne Inc.:**  Software One Vice President of Services who Defendant William McNae spoke to about issues raised in the Amended Complaint.  (Milwaukee, Wisconsin)

p) **Wismar Medina**:  Account Manager at Microsoft Corp. responsible for the SoftwareOne Account.  May have had communications with Defendant William McNae regarding issues raised in the Amended Complaint.  (Issaquah, Washington)

q) **Josh Kodie or Josh Kodi:**  William McNae's boss at Microsoft who had discussions with Defendant regarding issues raised in the Complaint.  (Washington State)

r) **Thomas Wiper**: May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise.  Had multiple facetime communications from Ronda McNae after Miami, where she referred to Plaintiff as her "Bestie."  Had multiple Instagram messages from Defendant professing her love for Plaintiff; has knowledge as to damages caused to Fitzgerald; (County Durham, England).

s) **Matthew Wiper**: May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise.  Had multiple facetime communications from Defendant after Miami, where she referred to Plaintiff as her "Bestie"; (County Durham, England).

t) **Anthony McMaster:**  May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise.  Had multiple facetime communications from Defendant after Miami, where she referred to Plaintiff as her "Bestie"; (County Durham, England).

u) **Richard Bestford:**  May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise.  Had multiple facetime communications from Defendant after Miami, where she referred to Plaintiff as her "Bestie"; (County Durham, England).

v) **Jessica Bergman-Sevillano:**  Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise.  Was with the parties in Miami. (Miami, Florida)

w) **Anthony "Tony" Sevillano:**  Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise.  Was with the parties in Miami. (Miami, Florida)

x) **Timothy Naeylan:**  Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise.  Was with the

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

parties in Miami. (Philadelphia, Pennsylvania)

y) **Dana Lebel**:  Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise.  Was with the parties in Miami.

z) **Azaiah Carew (Ronda McNae's foster sister):**  Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise.  Was with the parties in Miami. (Snohomish, Washington)

aa) **Sirena Herd (Ronda McNae's sister):**  Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise.  (Miami, Florida)

bb) **David Carpenter:**  May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise; (Washington State)

cc) **Gretchen Carpenter:**  May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise; (Washington State)

dd) **Marissa Carpenter:**  May have discoverable information concerning the allegations in the Amended Complaint;  (Washington State)

ee) **Ryan Carpenter:** May have discoverable information concerning the allegations in the Amended Complaint; (Washington State)

ff) **Max Meyers, Esq.:**  May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise:

gg) **Lily Vasquez (babysitter):**  Watched Defendant's daughter at hotel room in Miami.  May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise (Miami, Florida);

hh) **George Coupet**:  May have knowledge of Defendant's Facetime contact with Yelany De Varona and effects that Defendants' lies have had on Plaintiffs.  (Fort Lauderdale, Florida)

ii) **Jana Carrero:**  Friend of Yelany De Varona that Defendant was contacting through social media to get in touch with Yelany De Varona.  May have discoverable information concerning the allegations in the Amended Complaint and the effects that Defendants' lies have had on Plaintiffs (Miami, Florida);

jj) **Megan Conrad:** Friend of Yelany De Varona that may have discoverable information concerning the allegations in the Amended Complaint and the effects

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

that Defendants' false accusations have had on her (Miami, Florida);

kk) **Baoli Miami, restaurant:**  May possess CCTV footage of evening in Miami.

ll) **W-Hotel, Downtown San Francisco:**  May possess CCTV footage of weekend in San Francisco.

mm)      **W-Hotel, Miami Beach:**  May possess CCTV footage of evening in Miami.

nn) **Unknown Sushi restaurant in San Francisco:**  May possess CCTV footage of weekend in San Francisco.

oo) **San Francisco International Airport:**  May possess CCTV footage of weekend in San Francisco.

pp) **AC Hotel, Belvue Washington:**  May possess CCTV footage of meeting between Plaintiff and Defendant in Bellevue, Washington.

qq) **Matthew Hoelscher:** May have discoverable information concerning effects that Defendants' false accusations have had on Plaintiffs (Miami, Florida);

rr) **Stephanie Pattison, Vita Health:** Has discoverable information concerning effects that Defendants' false accusations have had on Plaintiffs (Suffolk, United Kingdom);

ss) **Northwest University:** May have discoverable information about Defendant's history of making allegations of a sexual nature (Kirkland, WA);

tt) **Jimmy Bean:** May have discoverable information about Defendant's history of making allegations of a sexual nature (Oakland, CA);

uu) **Any and all individuals disclosed by Defendants and identified in discovery produced by Defendants.**

2.      Pursuant to FRCP 26(a)(1)(A)(ii), Plaintiff provides a description by category and location—of all documents, electronically stored information, and tangible things that Plaintiff has in their possession, custody, or control and may use to support its claims and defenses below:

a. Correspondence and communications between and among Fitzgerald and Defendants regarding the allegations in Amended Complaint.

b. Correspondence and communications between Defendants and Yelany De Varona.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

c.   Confidential Settlement Agreement between Fitzgerald and the Defendants.

d.   Correspondence and communications between Ronda McNae and Thomas Wiper.

e.   Correspondence and communications between Fitzgerald and Plaintiff Yelany de Varona.

f.   Correspondence and communications between Defendants and SoftwareONE.

g.   Correspondence and communications between Defendants and Microsoft.

h.   Correspondence and communication between Defendants and third parties regarding the Confidential Settlement Agreement.

i.   Defendant Ronda McNae's online postings on medium.com.

j.   Defendant Ronda McNae's online postings on Instagram.

k.   Photos and video from Miami.

l.   Photos and video from San Francisco.

m.   Documentation regarding hotel reservations and flights pertaining to Miami and San Francisco.

n.   Mental health records and counseling notes pertaining to Plaintiffs' damages.

o.   Employment records demonstrating change of status of Plaintiff within SoftwareONE and loss of position, earnings, and status caused by Defendants' false allegations.

p.   Documentation from third parties pertaining to allegations in the Amended Complaint and defenses Defendants may raise.

3.      Pursuant to FRCP 26(a)(1)(A)(iii), Plaintiff states that he seeks economic and non-economic damages in an amount in excess of $450,0000, plus attorney's fees, interest and costs, as well as any other relief that the Court deems fair and just.

4.      Pursuant to FRCP 26(a)(1)(A)(iv), Plaintiff states that he does not have insurance agreements applicable to this action under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

satisfy any such judgment.

5.      Plaintiff reserves his right to supplement or modify his Initial Disclosures based on his continuing investigation of the facts at issue in this action as the case progresses.

6.      These Supplemental Initial Disclosures are made without waiver or prejudice to any and all objections Plaintiff may have.

Dated: February 27, 2023                              Respectfully submitted,

                                                      **ASSOULINE & BERLOWE, P.A.**
                                                      Miami Tower
                                                      100 SE 2nd Street, Suite 3105
                                                      Miami, Florida 33131
                                                      Telephone: 305-567-5576
                                                      Facsimile: 305-567-9343

                                              By: */s/ Peter E. Berlowe*
                                                      **Peter E. Berlowe**
                                                      **Florida Bar No. 143650**
                                                      **peb@assoulineberlowe.com**
                                                      **Meredith J. Gussin**
                                                      **Florida Bar No. 0512303**
                                                      **mjg@assoulineberlowe.com**
                                                      ***Attorneys for Plaintiff Michael J. Fitzgerald***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy and correct copy of the foregoing has been furnished via email (but not filed with the Court) on February 27, 2023 to:

Alaina Fotiu-Wojtowicz, Esq.                Stephanie A. Casey, Esq.
Brodsky Fotiu-Wojtowicz, PLLC               COLSON HICKS EIDSON, P.A.
200 SE 1st Street, Suite 400                255 Alhambra Circle, Penthouse
Miami, Florida 33131                        Coral Gables, Florida 33134
Tel.: 305-503-5054                          Tel.: 305-476-7400
Fax: 305-749-7644                           scasey@colson.com
alaina@bfwlegal.com                         *Counsel for Defendant William McNae*
docketing@bfwlegal.com
*Counsel for Defendant Ronda McNae*

# Exhibit
# A-3

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. <u>1:22-cv-22171-JEM</u>

MICHAEL J. FITZGERALD,
individually,

      Plaintiff,

v.

RONDA MCNAE, individually,

      Defendant.

_____/

## <u>SUPPLEMENTAL INITIAL DISCLOSURES OF PLAINTIFF MICHAEL J. FITZGERALD</u>

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff Michael J. Fitzgerald ("Fitzgerald" or the "Plaintiff"), by and through their undersigned counsel, submit the following Supplemental Initial Disclosures:

1. Pursuant to FRCP 26(a)(1)(A)(i), the following individuals may have discoverable information that Plaintiffs may use to support their claims and defenses:

 a) **Michael J. Fitzgerald**: Has discoverable information concerning all allegations in the Amended Complaint.
(c/o Assouline & Berlowe, P.A., Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, FL 33131) (305-567-5576);

 b) **Yelany De Varona**: Has discoverable information concerning all allegations in the Amended Complaint. (c/o Assouline & Berlowe, P.A., Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, FL 33131) (305-567-5576);

 c) **Ronda McNae:** Defendant who has discoverable information concerning the allegations in the Amended Complaint;

 d) **William McNae**: Defendant who has discoverable information concerning the allegations in the Amended Complaint;

e) **Unknown Representative(s) of SoftwareOne AG:** May have discoverable information concerning the allegations in the Amended  Complaint and Defendants' contacts with SoftwareOne related to the allegations of the Amended Complaint;

f) **Unknown Representative(s) of SoftwareOne Inc. (a/k/a SoftwareOne NORAM):** May have discoverable information concerning the allegations in the Complaint and Defendants' contacts with SoftwareOne Inc. related to the allegations of the Amended Complaint;

g) **Unknown Representative(s) of Microsoft Corp.:** May have discoverable information concerning the allegations contained in the Complaint and Defendants' contacts with Microsoft Corp related to the allegations of the Amended Complaint;

h) **John Mays of SoftwareOne AG:** SoftwareOne head of Human Resources that was involved with dealing with multiple communications from Defendants relating to issues raised in the Amended Complaint. (located in Singapore City, Singapore);

i) **Deiter Schlosser of SoftwareOne AG:** SoftwareOne CEO that may have been involved with multiple communications from Defendants relating to issues raised in the Amended Complaint. (located in Singapore City, Singapore).

j) **Jennifer P. Gaines, SoftwareOne Inc.:** General Counsel NORAM for SoftwareOne that may have been involved with multiple communications from Defendants relating to issues raised in the Amended Complaint. (Milwaukee, Wisconsin)

k) **Frank Rossini, SoftwareOne AG:** General Counsel and Board Secretary for SoftwareOne AG that may have been involved with multiple communications from Defendants relating to issues raised in the Amended Complaint. (Switzerland)

l) **Alexandra Considine-Tong, SoftwareOne AG:** Subordinate at SoftwareOne to Plaintiff Fitzgerald that may have knowledge of damage to Plaintiff as a result of Defendants having contacted SoftwareOne. (London, England).

m) **Ashley Gaare, SoftwareOne Inc.:** President of SoftwareOne, North America who had several communications with Defendants regarding issues raised in the Amended Complaint. (Milwaukee, Wisconsin)

n) **Patty Ravencroft, SoftwareOne Inc.:** SoftwareOne North America head of Human Resources that was involved with dealing with multiple communications from Defendants relating to issues raised in the Amended Complaint. (Milwaukee, Wisconsin)

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

o) **Jared Cheney, SoftwareOne Inc.:**  Software One Vice President of Services who Defendant William McNae spoke to about issues raised in the Amended Complaint.  (Milwaukee, Wisconsin)

p) **Wismar Medina**:  Account Manager at Microsoft Corp. responsible for the SoftwareOne Account.  May have had communications with Defendant William McNae regarding issues raised in the Amended Complaint.   (Issaquah, Washington)

q) **Josh Kodie or Josh Kodi:**  William McNae's boss at Microsoft who had discussions with Defendant regarding issues raised in the Complaint. (Washington State)

r) **Thomas Wiper**: May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise.  Had multiple facetime communications from Ronda McNae after Miami, where she referred to Plaintiff as her "Bestie."  Had multiple Instagram messages from Defendant professing her love for Plaintiff; has knowledge as to damages caused to Fitzgerald; (County Durham, England).

s) **Matthew Wiper**: May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise.  Had multiple facetime communications from Defendant after Miami, where she referred to Plaintiff as her "Bestie"; (County Durham, England).

t) **Anthony McMaster:**  May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise.  Had multiple facetime communications from Defendant after Miami, where she referred to Plaintiff as her "Bestie"; (County Durham, England).

u) **Richard Bestford:**  May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise.  Had multiple facetime communications from Defendant after Miami, where she referred to Plaintiff as her "Bestie"; (County Durham, England).

v) **Jessica Bergman-Sevillano:**  Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise.  Was with the parties in Miami. (Miami, Florida)

w) **Anthony "Tony" Sevillano:**  Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise.  Was with the parties in Miami. (Miami, Florida)

x) **Timothy Naeylan:**  Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise.  Was with the

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

parties in Miami. (Philadelphia, Pennsylvania)

y) **Dana Lebel**: Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise. Was with the parties in Miami.

z) **Azaiah Carew (Ronda McNae's adopted sister):** Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise. Was with the parties in Miami. (Snohomish, Washington)

aa) **Marisa Carew (Ronda McNae's adopted mother):** Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise. (Kirkland, Washington)

bb) **Izabellah Carew (Ronda McNae's adopted sister):** Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise. (Bellevue, Washington).

cc) **Abigail Leonard (friend of Azaiah Carew):** Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise. (New York, NY).

dd) **Sirena Herd (Ronda McNae's sister):** Will have discoverable information concerning allegations in the Amended Complaint and defenses Defendants may raise. (Miami, Florida)

ee) **David Carpenter:** May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise; (Washington State)

ff) **Gretchen Carpenter:** May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise; (Washington State)

gg) **Marissa Carpenter:** May have discoverable information concerning the allegations in the Amended Complaint; (Washington State)

hh) **Ryan Carpenter:** May have discoverable information concerning the allegations in the Amended Complaint; (Washington State)

ii) **Max Meyers, Esq.:** May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise:

jj) **Lily Vasquez (babysitter):** Watched Defendant's daughter at hotel room in Miami. May have discoverable information concerning the allegations in the Amended Complaint and defenses Defendants may raise (Miami, Florida);

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

kk) **George Coupet**:  May have knowledge of Defendant's Facetime contact with Yelany De Varona and effects that Defendants' lies have had on Plaintiffs.  (Fort Lauderdale, Florida)

ll) **Jana Carrero**:  Friend of Yelany De Varona that Defendant was contacting through social media to get in touch with Yelany De Varona.  May have discoverable information concerning the allegations in the Amended Complaint and the effects that Defendants' lies have had on Plaintiffs (Miami, Florida);

mm)      **Megan Conrad:** Friend of Yelany De Varona that may have discoverable information concerning the allegations in the Amended Complaint and the effects that Defendants' false accusations have had on her (Miami, Florida);

nn) **Baoli Miami, restaurant:**  May possess CCTV footage of evening in Miami.

oo) **W-Hotel, Downtown San Francisco:**  May possess CCTV footage of weekend in San Francisco.

pp) **W-Hotel, Miami Beach:**  May possess CCTV footage of evening in Miami.

qq) **Unknown Sushi restaurant in San Francisco:**  May possess CCTV footage of weekend in San Francisco.

rr) **San Francisco International Airport:**  May possess CCTV footage of weekend in San Francisco.

ss) **AC Hotel, Bellevue Washington:**  May possess CCTV footage of meeting between Plaintiff and Defendant in Bellevue, Washington.

tt) **Matthew Hoelscher:** May have discoverable information concerning effects that Defendants' false accusations have had on Plaintiffs (Miami, Florida);

uu) **Stephanie Pattison, Vita Health:** Has discoverable information concerning effects that Defendants' false accusations have had on Plaintiffs (Suffolk, United Kingdom);

vv) **Northwest University:** May have discoverable information about Defendant's history of making allegations of a sexual nature (Kirkland, WA);

ww)      **Jimmy Bean:** May have discoverable information about Defendant's history of making allegations of a sexual nature (Oakland, CA);

xx) **Chris and Stephanie DiJulio:** May have discoverable information about Defendants (Kirkland, Washington).

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

yy) **Elijah DiJulio:** May have discoverable information about Defendants (Kirkland, Washington).

zz) **Cedar Park Christian Schools:** May have discoverable information about Defendants (Bothell, WA).

aaa)   **Any and all individuals disclosed by Defendants and identified in discovery produced by Defendants.**

2.   Pursuant to FRCP 26(a)(1)(A)(ii), Plaintiff provides a description by category and location—of all documents, electronically stored information, and tangible things that Plaintiff has in their possession, custody, or control and may use to support its claims and defenses below:

a.   Correspondence and communications between and among Fitzgerald and Defendants regarding the allegations in Amended Complaint.

b.   Correspondence and communications between Defendants and Yelany De Varona.

c.   Confidential Settlement Agreement between Fitzgerald and the Defendants.

d.   Correspondence and communications between Ronda McNae and Thomas Wiper.

e.   Correspondence and communications between Fitzgerald and Plaintiff Yelany de Varona.

f.   Correspondence and communications between Defendants and SoftwareONE.

g.   Correspondence and communications between Defendants and Microsoft.

h.   Correspondence and communication between Defendants and third parties regarding the Confidential Settlement Agreement.

i.   Defendant Ronda McNae's online postings on medium.com.

j.   Defendant Ronda McNae's online postings on Instagram.

k.   Photos and video from Miami.

l.   Photos from San Francisco.

m.   Documentation regarding hotel reservations and flights pertaining to Miami and San Francisco.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

n.  Mental health records and counseling notes pertaining to Plaintiffs' damages.

o.  Employment records demonstrating change of status of Plaintiff within SoftwareONE and loss of position, earnings, and status caused by Defendants' false allegations.

p.  Documentation from third parties pertaining to allegations in the Amended Complaint and defenses Defendants may raise.

3.  Pursuant to FRCP 26(a)(1)(A)(iii), Plaintiff states that he seeks economic and non-economic damages in an amount in excess of $450,0000, plus attorney's fees, interest and costs, as well as any other relief that the Court deems fair and just.

4.  Pursuant to FRCP 26(a)(1)(A)(iv), Plaintiff states that he does not have insurance agreements applicable to this action under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy any such judgment.

5.  Plaintiff reserves his right to supplement or modify his Initial Disclosures based on his continuing investigation of the facts at issue in this action as the case progresses.

6.  These Supplemental Initial Disclosures are made without waiver or prejudice to any and all objections Plaintiff may have.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

Dated: April 19, 2023

Respectfully submitted,

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
Telephone: 305-567-5576
Facsimile: 305-567-9343

By: */s/ Peter E. Berlowe*
    **Peter E. Berlowe**
    **Florida Bar No. 143650**
    **peb@assoulineberlowe.com**
    **Meredith J. Gussin**
    **Florida Bar No. 0512303**
    **mjg@assoulineberlowe.com**
    ***Attorneys for Plaintiff Michael J. Fitzgerald***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy and correct copy of the foregoing has been furnished

via email (but not filed with the Court) on April 19, 2023 to:

Alaina Fotiu-Wojtowicz, Esq.
Brodsky Fotiu-Wojtowicz, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel.: 305-503-5054
Fax: 305-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com
*Counsel for Defendant Ronda McNae*

Stephanie A. Casey, Esq.
COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel.: 305-476-7400
scasey@colson.com
*Counsel for Defendant William McNae*

# Exhibit B

September 13, 2024

Dear Arag,

     I am writing to formally request the addition of an outside attorney to my legal team due to significant concerns regarding a conflict of interest regarding Richard Gomez representing both Will McNae and myself in our respective cases.

Here are the main reasons for my concern:

**1. Diverging Interests:**

     • Different Defendants, Different Cases: Will and I are involved in separate lawsuits—mine in federal court and his in Florida state court. Our legal strategies, defenses, or goals may differ significantly, which could pose challenges for Richard Gomez in fully advocating for one of us without undermining the other.

     • Settlement or Litigation Strategy: If Will and I have different approaches to settlement or litigation, Richard could find himself having to choose between conflicting strategies, preventing him from offering undivided loyalty and representation to either of us.

**2. Confidential Information:**

     • Shared Confidential Information: Since Richard represents both Will and me, there's a risk that information disclosed by one of us could inadvertently be used against the other in future legal proceedings.

     • Attorney-Client Privilege: Handling confidential information for both clients could jeopardize attorney-client privilege, particularly if there's a risk of cross-sharing sensitive information.

**3. Inconsistent Legal Theories or Defenses:**

     • Incompatible Defenses: Our defenses may conflict. For example, if one of us presents a defense that implies culpability for the other, Richard would be unable to defend both of us zealously.

• Liability Shifting: In situations where blame may be shifted between defendants, Richard could be put in a position where he's unable to properly advocate for both Will and me.

**4. Fiduciary Duty and Full Loyalty:**

• Conflicted Loyalty: Richard owes a duty of loyalty to each of us, but it may be impossible to fulfill this duty equally in both cases. His obligations to one of us could limit his ability to act in the best interest of the other.

• Independent Legal Advice: Will and I both need independent legal advice to ensure our best interests are fully represented. Dual representation can prevent each of us from receiving unbiased guidance on important decisions, like whether to settle, appeal, or pursue specific legal strategies.

**5. Impact of One Case on the Other:**

• Judicial Impact: Outcomes or rulings in one case could impact the other. Richard may find it difficult to address potential negative consequences for one client without harming the interests of the other.

• Public Perception and Legal Risk: Adverse rulings in Will's case could negatively affect my federal case, and Richard could be perceived as failing to protect the full interests of one or both of us.

**6. Settlement Negotiations:**

• Conflicting Settlement Negotiations: If settlement discussions arise, Will and I may have different positions on settling our cases. Richard could be placed in a difficult position trying to negotiate on behalf of both of us without compromising one person's interests.

• Potential for Uneven Advocacy: There's a risk that Richard might prioritize one client over the other during negotiations, especially if one settlement benefits one of us more than the other.

**7. Consent and Full Disclosure:**

• Failure to Obtain Informed Consent: Even if Will and I initially consented to Richard representing both of us, the complexities of the two cases have changed which could lead to potential conflicts. The goal is to avoid any breach of legal ethics by having separate counsel.

**8. Potential for Future Conflict:**

• Changing Dynamics: As the lawsuits progress, potential conflicts that may not have been apparent at the outset could emerge. If our interests diverge further, it may become impossible for Richard to continue representing both of us fairly.

• Representation at Appeal: Should either Will or I pursue an appeal, our interests may diverge even more, making it even more difficult for Richard to represent both of us.

I am requesting you to bring on new counsel, specifically Walter Bernard, who is already familiar with my case and has agreed to assist, taking it on at his standard hourly rate of $450.00. Given the complexities of my case and the limited time to prepare for trial or secure a settlement that protects my interests, it's critical that Walter's fee reflects the work required.

My interests in this case are separate from Will's, which has moved to state court, and I believe this further justifies the need for independent representation. Walter is working with local counsel in the Southern District of Florida, who would assist with his pro hac vice admission. Walter Bernard's ARAG Attorney ID for reference is 2109-7208-6827.

Please let me know the next steps.

Sincerely,

Ronda McNae

# Exhibit C

Ronda and William McNae
504 11 th PL
Kirkland, WA 98033
RondaMcnae@gmail.com
(206) 914-6752

VIA ELECTRONIC MAIL ARAG Legal Insurance
ARAG Legal Department
500 Grand Avenue, Suite 100 Des Moines, IA 50309
legal@araglegal.com

October 15, 2024

**Subject: Urgent: Issues with Case Management and Pro Se Representation**

Dear ARAG Legal Insurance and Representatives,

I am writing to formally express my serious concerns regarding the handling of my case by Richard Gomez, one of the attorneys retained through ARAG. Despite my efforts to raise these concerns professionally and within ethical boundaries with my Seattle-based attorney, Isaac Ruiz, the damage caused by Mr. Gomez has been severe and, in my view, irreparable. I now question whether my case can recover from these setbacks.

At this time, I do not intend to waive attorney-client privilege with either Mr. Ruiz or Mr. Gomez, nor do I wish to disclose additional privileged details. However, it is important to emphasize that I raised my concerns in a professional, legal, and ethical manner. Despite these efforts, I am now forced to proceed pro se—circumstances that are entirely beyond my control.

In my Florida Federal case, I am currently submitting motions to supplement the record with deposition testimony from key witnesses, including a hybrid expert and my treating therapist. This testimony substantiates that I signed the contested contract under duress. Furthermore, critical evidence emerged in May 2024 regarding SoftwareONE's failure to comply with discovery protocols and subpoena obligations. Despite the direct relevance of this evidence to the claims and damages in the case, Mr. Gomez refused to pursue it, compromising my defense.

In addition, I will be filing a substantial motion for leave to supplement the record with evidence intentionally concealed by Michael Fitzgerald and his former employer, SoftwareONE, throughout the discovery process, including interrogatories and subpoenas. Due to these failures, I have had to invest significant time in legal research, accumulate a Westlaw bill exceeding $8,000.00, and pay $700.00 for court documents—expenses that Mr. Gomez should have managed, given his legal background and personal subscription to legal research software.

It is critical that both the courts in Seattle, Washington, and Miami, Florida, understand how my experience with ARAG, compounded by the deficiencies in my legal representation, has severely hindered my ability to secure competent counsel. As a result, my case remains vulnerable, with no attorney willing to take it on under these circumstances. Additionally, depositions from ARAG

representatives have revealed disturbing expectations that I was to issue a statement *exonerating an individual who deceived my family's trust and caused me significant harm*. This individual, under a false identity, exploited my vulnerability while I was intoxicated in a hotel penthouse, with my daughter asleep in the adjoining room. She awoke to find me permanently altered, unable to comprehend what had occurred.

Given the imminent deadlines and the harm caused by the only ARAG in-network attorney available to handle my case in the Southern District of Florida, I believe it would be counterproductive to proceed under the current schedule. Please confirm which deadlines ARAG proposes to extend? Additionally, we may need to explore filing a motion to stay the case, as the damages and impacts continue.

Please let me know how ARAG can address my immediate needs, whether by securing competent legal representation or offering other relief suitable to these exceptional circumstances.

Thank you for your prompt attention to this matter.

Sincerely,

Ronda and Will McNae

# Exhibit D

# Exhibit

# D-1

Communications specific to 2nd Subpoena request to SoftwareONE

| | |
|---|---|
| **From:** | Casey, Stephanie <scasey@colson.com> |
| **Sent:** | Wednesday, July 19, 2023 10:10 AM |
| **To:** | Jenny L. Martinez |
| **Cc:** | Alaina Fotiu-Wojtowicz; Peter E. Berlowe; Meredith J. Gussin; Roberto, Michelle; Heather Shatzel; Michael McCabe |
| **Subject:** | RE: Ronda McNae Second Subpoena to SoftwareONE |

Jenny: We would agree to the below, but of course I can't speak for Plaintiffs, and you seek an agreement from "all parties."

Peter/Meredith: Could you let me know Plaintiffs' position on the below?

Thanks,

Stephanie

**Stephanie A. Casey** | Colson Hicks Eidson | 255 Alhambra Circle, Penthouse | Coral Gables, FL 33134
Office: 305.476.7400 | Direct: 305.476.7496

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Wednesday, July 19, 2023 12:00 PM
**To:** Casey, Stephanie <scasey@colson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Good morning, Stephanie.

SoftwareOne, Inc. will agree to withdraw its privilege challenge for the 2 emails at issue in exchange for the following: (1) Defendants agree that SoftwareOne, Inc. has fully complied with the subpoena dated 9/21/2022; (2) all parties agree not to seek additional information from SoftwareOne, Inc., its affiliates, or their current or former employees (with the obvious exception that this agreement does not impact Defendants' ability to seek discovery from Mike Fitzgerald); (3) all parties agree that the withdrawal of SoftwareOne, Inc.'s privilege challenge relates to these 2 emails only and no other communications; (4) all parties agree that the withdrawal of the privilege challenge for these 2 emails does not constitute a subject matter waiver or any other waiver of privilege with respect to any other communication; and (5) all parties agree that SoftwareOne, Inc. is not waiving any other rights or defenses.

Sincerely,

**Jenny Martinez**
Partner


MUNCK WILSON MANDALA
TRIALS. TRANSACTIONS. TECHNOLOGY.

12770 Coit Rd., Ste 600

1

Dallas, TX 75251
d. +1 972.628.3623
o. +1 972.628.3600
e: jmartinez@munckwilson.com
w. munckwilson.com
Connect with me on LinkedIn
Follow Munck on LinkedIn

  

**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Casey, Stephanie <scasey@colson.com>
**Sent:** Wednesday, July 19, 2023 8:34 AM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

[External]

Jenny:

Good morning. Please let me know today, before 2 pm ET (as I will be getting on a flight then), what SoftwareOne's position is so that I may report it to the Court.

Best,

Stephanie

**Stephanie A. Casey** | Colson Hicks Eidson | 255 Alhambra Circle, Penthouse | Coral Gables, FL 33134
Office: 305.476.7400 | Direct: 305.476.7496

**From:** Casey, Stephanie
**Sent:** Monday, July 17, 2023 6:47 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

Thank you, Jenny. Today we received a communication from the Court requiring us to provide a final position on the motion by Wednesday, so please let me know by tomorrow if you can so we can make sure to let the Court know in a timely manner.

Best,

Stephanie

**Stephanie A. Casey** | Colson Hicks Eidson | 255 Alhambra Circle, Penthouse | Coral Gables, FL 33134
Office: 305.476.7400 | Direct: 305.476.7496

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Monday, July 17, 2023 3:01 PM
**To:** Casey, Stephanie <scasey@colson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bflegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bflegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE


CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Stephanie,

I reached out my client regarding the below and will get back to you ASAP.

Sincerely,

**Jenny Martinez**
Partner



12770 Coit Rd., Ste 600
Dallas, TX 75251
d. +1 972.628.3623
o. +1 972.628.3600
e: jmartinez@munckwilson.com
w. munckwilson.com
Connect with me on LinkedIn
Follow Munck on LinkedIn



**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Casey, Stephanie <scasey@colson.com>
**Sent:** Sunday, July 16, 2023 7:39 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>
**Subject:** Ronda McNae Second Subpoena to SoftwareONE

[External]

Dear Jenny:

I hope you're doing well. As you may know, Judge Becerra provided her preliminary thoughts on the two subpoena exhibits during a hearing last week. In particular, she did not appear convinced that either document was privileged, but reserved ruling in the event SoftwareOne wanted to appear to be heard on the matter. Judge Becerra also encouraged the parties to try to come to an agreement without the need for further hearing.

To dispense with the need for oral argument on this issue, I proposed to Peter that Defendants would agree to withdraw the motion if Plaintiffs and SoftwareOne agreed to withdraw their respective privilege challenges to the exhibits, without prejudice to Plaintiffs' right to raise whatever evidentiary challenges they have to the records at the appropriate time. Peter let us know that the proposal would be acceptable to Plaintiffs, but he did not have SoftwareOne's position. Peter has indicated to the Court that SoftwareOne will not appear to argue the privilege issues.

Accordingly, I am writing to get SoftwareOne's position on whether it agrees to withdraw its privilege challenge to the 2 subpoena exhibits. Sensitive to SoftwareOne's prior expressed concerns regarding the use of these documents, should SoftwareOne agree to withdraw its privilege challenge to the 2 subpoena exhibits, we won't use them to subpoena SoftwareOne for further records.

I look forward to hearing from you.

Best,

Stephanie

**Stephanie A. Casey** | Partner | Colson Hicks Eidson
255 Alhambra Circle, Penthouse | Coral Gables, Florida 33134
Office: 305.476.7400 | Direct: 305.476.7448 | Fax: 305.476.7444
scasey@colson.com | www.colson.com

# Exhibit

# D-2

Communications specific to "hit counts" related to 1st Subpoena request to SoftwareONE

# M Gmail

## FW: Estimated Hit Counts

1 message

Thu, Jan 26, 2023 at 6:11 AM



200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Thursday, January 26, 2023 12:00 AM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>; Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger
<elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>; Alex Jablonski <ajablonski@munckwilson.com>
**Subject:** Re: Estimated Hit Counts

Alaina,

We are still at over 6,000 families, but will endeavor to review and produce responsive non-privileged documents as quickly as possible.

Sincerely,

**Jenny Martinez**

Partner

12770 Coit Rd., Ste 600

Dallas, TX 75251

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn

<image007.png>

<image008.png>

<image009.jpg>

**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege.  It is intended solely for the use of the addressee(s) listed above.  If you are not the intended recipient of this message, please do not print, copy or disclose this information.  If you received this e-mail in error, please disregard it and delete it and any attachments from your system.  Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**6 attachments**

 **image005.png**
6K

 **image006.jpg**
4K

 **image007.png**
30K

 **image008.png**
9K

 **image009.jpg**
119K

**Software ONE Search Terms.docx**
15K

| | | |
|---|---|---|
| | OR drug OR substance OR abuse OR violence OR "anger management" OR drunk OR manipulat! OR dishonest! OR violat! OR consent! OR illegal OR legal OR law OR charge!) | |
| 4 | Michael AND (sex! OR discrimination OR harassment OR misogn! OR assault OR rape OR battery OR inappropriate! OR touching OR sodomy OR misconduct OR culture OR alcohol OR drug OR substance OR abuse OR violence OR "anger management" OR drunk OR manipulat! OR dishonest! OR violat! OR consent! OR illegal OR legal OR law OR charge!) | 28,942 |
| 5 | Mike AND (sex! OR discrimination OR harassment OR misogn! OR assault OR rape OR battery OR inappropriate! OR touching OR sodomy OR misconduct OR culture OR alcohol OR drug OR substance OR abuse OR violence OR "anger management" OR drunk OR manipulat! OR dishonest! OR violat! OR consent! OR illegal OR legal OR law OR charge!) | 75,042 |
| 6 | Fitz AND (sex! OR discrimination OR harassment OR misogn! OR assault OR rape OR battery OR inappropriate! OR touching OR sodomy OR misconduct OR culture OR alcohol OR drug OR substance OR abuse OR violence OR "anger management" OR drunk OR manipulat! OR dishonest! OR violat! OR consent! OR illegal OR legal OR law OR charge!) | 1,243 |
| 7 | Fitzgerald AND (performance OR review OR compensation OR pay OR paid OR employment OR position OR responsib! OR training OR investigat! OR "internal review" OR leave OR promot! OR demot! OR raise OR salary OR bonus OR incentive OR "stock option!" OR suspen! OR Inspire) | 645,287 |
| 8 | Michael AND (performance OR review OR compensation OR pay OR paid OR employment OR position OR responsib! OR training OR investigat! OR "internal review" OR leave OR promot! OR demot! OR raise OR salary OR bonus OR incentive OR "stock option!" OR suspen! OR Inspire) | 307,991 |
| 9 | Mike AND (performance OR review OR compensation OR pay! OR paid OR employment OR position OR responsib! OR training OR investigat! OR "internal review" OR leave OR promot! OR demot! OR raise OR salary OR bonus OR incentive OR "stock option!" OR suspen! OR Inspire) | 784,815 |
| 10 | Fitz AND (performance OR review OR compensation OR pay! OR paid OR employment OR position OR responsib! OR training OR investigat! OR "internal review" OR leave OR promot! OR demot! OR raise OR salary OR bonus OR incentive OR "stock option!" OR suspen! OR Inspire) | 10,138 |
| 11 | mike@fitzgeraldcap.com | 2 |

Sincerely,

**Jenny Martinez**

Partner

<image006.jpg>

12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

"anger management" OR drunk OR manipulat! OR dishonest! OR violat! OR consent! OR illegal OR legal OR law)

4.   Fitzgerald AND (performance OR review OR compensation OR training OR investigat! OR "internal review" OR "paid leave" OR promot! OR demot! OR bonus OR incentive OR "stock option!" OR suspen! OR Inspire)

5.   mike@fitzgeraldcap.com

I've tried to remove some of the more generic terms that don't seem as likely to turn up documents responsive to my subpoena requests.  Let me know if these more narrowed search terms turn up a smaller subset of documents.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.

<image005.png>

200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Monday, December 19, 2022 10:13 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>; Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>; Alex Jablonski <ajablonski@munckwilson.com>
**Subject:** Estimated Hit Counts

Alaina,

Below are estimated hit counts on your proposed search strings for the seven U.S. custodians. Each hit is a "family" that could consist of an email with multiple attachments, all of which must be reviewed. Accordingly, the actual number of documents to be reviewed will be substantially higher than the numbers below. The total number of families is 927,731. Clearly, these search strings are extremely overbroad. Reviewing these documents would take tens of thousands of hours. SoftwareONE, Inc. will not agree to incur unreasonable expenses in responding to a third-party subpoena. Please revise your search strings to include appropriate connectors and/or exclude common terms.

| No. | Search String | Family Hit Count |
|-----|---------------|------------------|
| 1 | Ronda | 313 |
| 2 | McNae AND (Miami OR "San Francisco" OR Redmond OR Patrice OR Yelany OR rape OR sex OR sodomy OR consent OR drunk OR alcohol OR substance OR IPO OR Baoli OR boat OR flight OR "Confidential Settlement Agreement" OR counsel OR distress OR marriage OR friend! OR anger OR violen! OR gift) | 1,598 |
| 3 | Fitzgerald AND (sex! OR discrimination OR harassment OR misogn! OR assault OR rape OR battery OR inappropriate! OR touching OR sodomy OR misconduct OR culture OR alcohol | 35,927 |

Sincerely,

**Jenny Martinez**

Partner

<image006.jpg>

12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn

<image007.png>

<image008.png>

<image009.jpg>

**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Sent:** Monday, December 26, 2022 10:22 AM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>; Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>; Alex Jablonski <ajablonski@munckwilson.com>
**Subject:** RE: Estimated Hit Counts

[External]

Jenny:

I hope you are enjoying the holidays. I'm in Michigan where I'm reminded of how beautiful a midwestern winter can be (although on balance I still prefer the Miami sunshine). As a result of the large number of hits that came back from my last list of search terms, let's try the below narrowed searches:

1. Ronda

2. McNae (Miami OR "San Francisco" OR Redmond OR Patrice OR Yelany OR rape OR sex OR sodomy OR consent OR drunk OR alcohol OR IPO OR Baoli OR boat OR flight OR "Confidential Settlement Agreement" OR counsel! OR distress OR marriage OR friend! OR anger OR violen! OR gift)

3. Fitzgerald AND (sex! OR discrimination OR harassment OR misog! OR narcissist OR assault OR rape OR battery OR inappropriate! OR touching OR sodomy OR misconduct OR alcohol OR drug OR abuse OR violence OR

[External]


Jenny:


Same to you!  Okay, so that seems like a significant reduction from the last round, but I agree we still have some room to go.  I've taken some more terms off and I have divided some of the searches up so that if this still comes back with too many hits we will have a better idea of what specific terms are causing the large number of hits.


I've attached the revised list.  Please let me know if we are there yet.


Sincerely,


Alaina Fotiu-Wojtowicz, Esq.

<image005.png>

200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com



**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Tuesday, December 27, 2022 2:55 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>; Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>; Alex Jablonski <ajablonski@munckwilson.com>
**Subject:** RE: Estimated Hit Counts


Alaina,


I hope you had a good holiday and are staying warm. Below are the hit counts for the revised proposed search strings. The numbers are still unreasonable / not proportional.


Query 1: **313**

Query 2: **1,539**

Query 3: **23,222**

Query 4: **138,812**

Query 5: **2**

**TOTAL** (All Queries Combined): **153,778**

**TOTAL** (deduplicated): **140,602**

Alaina,

We have the hit counts for your most recent list of queries. We are getting much closer, but there are a few queries (and one in particular) that remain overbroad.

1. Total number of items with hits returned by the third set of revised queries: **12,885.**
2. Deduplicated number of items with hits: **11,276.**
3. The following queries remain overbroad:

   1. **"Fitzgerald and training"** – returns 8,050 items with hits (7,113 deduplicated) of which 6001 are exclusive hits. *This needs to be significantly narrowed or eliminated.*
   2. **"Fitzgerald AND incentive"** – returns 1,560 items with hits (1,123 deduplicated) including 500 exclusive hits. *This needs to be narrowed.*
   3. **"Fitzgerald AND promot*"** - returns 1,733 items with hits (1,243 deduplicated) including 498 exclusive hits. *This needs to be narrowed.*
   4. **"Fitzgerald AND compensation"** – returns 1,251 items with hits (971 deduplicated) including 270 exclusive hits. *This needs to be narrowed.*

Please let us know your thoughts on limiting (a) through (d) above.

Sincerely,


**Jenny Martinez**

Partner

12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn


**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Sent:** Thursday, December 29, 2022 6:41 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>; Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>; Alex Jablonski <ajablonski@munckwilson.com>
**Subject:** RE: Estimated Hit Counts

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn

-

**Confidentiality Notice:**  This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege.  It is intended solely for the use of the addressee(s) listed above.  If you are not the intended recipient of this message, please do not print, copy or disclose this information.  If you received this e-mail in error, please disregard it and delete it and any attachments from your system.  Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records

 

On Jan 18, 2023, at 10:34 PM, Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com> wrote:

[External]

Jenny:

We can agree to eliminate Fitzgerald AND training.  With respect to the remaining three, I propose limiting it as follows:

b.        "((Michael or Mike) /3 Fitzgerald) AND incentive"

c.        "((Michael or Mike) /3 Fitzgerald) AND promot*"

d.        "((Michael or Mike) /3 Fitzgerald) AND compensation"

I am hopeful that this should be able to get us there.  Please let me know.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.

200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Friday, January 13, 2023 5:54 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>; Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>; Alex Jablonski <ajablonski@munckwilson.com>
**Subject:** RE: Estimated Hit Counts

# Exhibit

# D-3

Communications specific to 1st Subpoena request to SoftwareONE

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Monday, December 19, 2022 3:58 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Cc:** Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>; Alex Jablonski <ajablonski@munckwilson.com>
**Subject:** RE: SoftwareONE, Inc. Subpoena

Hi Alaina – I should be able to get you hit count estimates by the end of the day.

Sincerely,

**Jenny Martinez**

Partner



12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn

  

**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Sent:** Friday, December 16, 2022 10:06 AM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>; Michael McCabe <mmccabe@munckwilson.com>
**Cc:** Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>
**Subject:** RE: SoftwareONE, Inc. Subpoena

[External]

Jenny:

Happy Friday! I'm just following up as to whether you have been able to retrieve the uncorrupted mailboxes and hit counts so that we can continue our meet and confer with respect to search terms. I don't want this to fall through the cracks as the holidays approach.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.



BRODSKY FOTIU-WOJTOWICZ

200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com


**From:** Alaina Fotiu-Wojtowicz
**Sent:** Wednesday, December 07, 2022 12:24 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>; Michael McCabe <mmccabe@munckwilson.com>
**Cc:** Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>
**Subject:** RE: SoftwareONE, Inc. Subpoena


Jenny:


I appreciate the update and we will look forward to your updated hit count once you have it. As I mentioned, we are sensitive to the fact that although SoftwareONE, Inc. is an important third-party witness, it is also a non-party. We look forward to continuing the meet and confer so we can come to an mutually agreeable solution with respect to search terms and the overall subpoena response.


Sincerely,


Alaina Fotiu-Wojtowicz, Esq.



200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com


**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Wednesday, December 07, 2022 12:16 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Cc:** Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>
**Subject:** RE: SoftwareONE, Inc. Subpoena


Alaina,

==Thank you for providing me with the order.== The seven custodians highlighted in yellow below are U.S. employees. I requested these custodial files and received most of the data. However, while processing this data last week and over the weekend, we discovered that many of the files are corrupt and thus any hit count estimate will be inaccurate. We are working with our client to obtain another copy of the data so we can provide accurate hit counts. As soon as the data is processed and I can give more accurate hit counts, I'll provide them. However, to give you a flavor for how overbroad your proposed search strings are, we ran your proposed search string number 7 against the noncorrupt (*i.e.*, incomplete) files that we have, and it returned 50,653 families (emails + attachments). Although the actual number will be much higher after our data set is complete, reviewing even 50,653 families would take an attorney working all day seven days per week, *over 100 days* (and that is a *very* conservative estimate). SoftwareONE, Inc., a third-party to your lawsuit, will obviously not agree to incur such an expense. It would save a lot of time and back-and-forth if you revise your search strings to include appropriate connectors and/or exclude common terms.

1. Michael Fitzgerald
2. Jared Cheney
3. Ashley Gaare
4. Sean Nicholson
5. John Mayes
6. Patty Ravencroft
7. Khristi Young
8. Jessica Motta Jessenik
9. Deiter Schlosser
10. Timothy Neylan
11. Oliver Berchtold
12. Jessica Bergman
13. Alexandra Considine-Tong
14. Julia Braun

Sincerely,

**Jenny Martinez**

Partner



MUNCK WILSON MANDALA
TRIALS. TRANSACTIONS. TECHNOLOGY.

12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn

  

**Confidentiality Notice:**  This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege.  It is intended solely for the use of the addressee(s) listed above.  If you are not the intended recipient of this message, please do not print, copy or disclose this information.  If you received this e-mail in error, please disregard it and delete it and any attachments from your system.  Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Sent:** Monday, December 5, 2022 9:10 AM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>; Michael McCabe <mmccabe@munckwilson.com>
**Cc:** Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>
**Subject:** RE: SoftwareONE, Inc. Subpoena

[External]

Jenny:

I hope you had a nice weekend.  Attached is the Agreed Protective Order as entered by the Court.  I look forward to your response to my e-mail below.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.



200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com

**From:** Alaina Fotiu-Wojtowicz
**Sent:** Thursday, December 01, 2022 5:38 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>; Michael McCabe <mmccabe@munckwilson.com>
**Cc:** Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>
**Subject:** RE: SoftwareONE, Inc. Subpoena

Jenny:

A few things:

First, please identify the custodians on our list that SoftwareONE, Inc. has custody over. Obviously we are only asking for the search of documents within your possession, custody, or control – but we do not have that information, you do.

Second, Request 8 of the Subpoena, which the Court approved in its entirety, reads as follows:

"Any and all documents or communications that refer or relate to Michael Fitzgerald in connection with allegations of sexual harassment, gender discrimination, sexism, misogyny, sexual assault, sexual battery, rape, sodomy, or other inappropriate touching, including but not limited to those allegations made by Ronda and William McNae."

Our search terms simply seek information related to this case, which is sensitive by nature. The representations to the Court were simply that I would be as delicate as possible under the circumstances, which I have tried to be. Obviously to get communications that refer or relate to "sexual harassment, gender discrimination, sexism, misogyny, sexual assault, sexual battery, rape, sodomy, or other inappropriate touching" I need to use those terms and the Court approved the subpoena seeking those documents. So we do not agree to remove them.

Finally, as to your claim that some of our terms are overbroad, if you have a hit report to show us, we would be happy to discuss narrowing the terms that have an unreasonably high number of hits returned. Please let me know when you are able to run a hit report.

This has dragged on for quite some time at this point and we are coming up on Court deadlines on our end. So please let me know when you can have this information, otherwise we will need to move forward with enforcing the subpoena. Of course, even in the course of enforcing the subpoena, we are open to continue our meet and confer discussions and are always willing to resolve things amicably where possible.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.



200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Thursday, December 01, 2022 5:19 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Cc:** Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>; Charles T. Zerner <CZerner@munckwilson.com>
**Subject:** RE: SoftwareONE, Inc. Subpoena

Alaina,

I am in receipt of your list of custodians, many of which are not employed by SoftwareONE, Inc. Per our prior correspondence, SoftwareONE, Inc. does not have possession, custody, or control over non-SoftwareONE, Inc. employees' files. For those who are employed by SoftwareONE, Inc., we will need to reach an agreement on search terms. We have reviewed your search terms, many of which we cannot agree to as they are extremely overbroad. For example, "Mike AND leave" are both extremely common terms and applying them to every document in multiple custodial files will result in an unreasonable number of false hits (this is just one of many examples).

Additionally, 5 of your 11 proposed search strings contain terms that the court preemptively prohibited you from proposing. During the hearing on Mr. Fitzgerald's motion to quash, the court stated: "I certainly hope that, as Counsel is conferring with Microsoft and SoftwareONE about the subpoena, you're not providing them search terms or information that suggests sexual misconduct." In response, you represented to the court that "I took care, with respect to the subpoenas  - - and I hope that it is acknowledged . . . to ask for the information that I needed without being inflammatory." Your proposed search strings 2-6 contain inflammatory terms that suggest sexual misconduct. Please provide more narrowly tailored search strings that do not include (1) terms that suggest sexual misconduct or (2) common terms without appropriate connectors.

I can confirm that SoftwareONE, Inc. is not aware of any documents responsive to 5, 7 & 11 or any documents in its possession, custody, or control responsive to: 12, 13, 14, 17, 18 (other than what might come up in an e-mail search) because it does not have possession, custody, or control of Mr. Fitzgerald's employment records (other than what might come up in an e-mail search). I still need to confirm that there are not any SoftwareONE, Inc. sexual harassment (or other similar conduct) training documents, policies, or procedures that would apply to Mr. Fitzgerald other than the SoftwareONE Codes of Conduct. I do not believe there are, but I will let you know when I confirm.

Sincerely,

**Jenny Martinez**

Partner

**MUNCK WILSON MANDALA**

TRIALS. TRANSACTIONS. TECHNOLOGY.

12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn

  

**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Sent:** Tuesday, November 22, 2022 1:08 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>; Michael McCabe <mmccabe@munckwilson.com>
**Cc:** Heather Shatzel <heather@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>
**Subject:** RE: SoftwareONE, Inc. Subpoena

[External]

Jenny & Michael:

I'm following up on our meet and confer communication below now that we are close to having a Protective Order in place. Here is the information I told you I would provide:

**SoftwareONE, Inc. Custodians:**

1. Michael Fitzgerald – Mike.Fitzgerald@softwareone.com
2. Jared Cheney – Jared.Cheney@softwareone.com
3. Ashley Gaare - ashley.gaare@softwareone.com
4. Sean Nicholson – Sean.Nicholson@softwareone.com
5. John Mayes – John.Mayes@softwareone.com
6. Patty Ravencroft – Patty.Ravencroft@softwareone.com
7. Khristi Young – khristy.young@softwareone.com
8. Jessica Motta Jessenik – Jessica.motta@softwareone.com
9. Deiter Schlosser – Dieter.Schlosser@softwareone.com
10. Timothy Neylan – timothy.neylan@softwareone.com
11. Oliver Berchtold – oliver.berchtold@softwareone.com
12. Jessica Bergman –  jessica.bergman@softwareone.com
13. Alexandra Considine-Tong (e-mail address unknown)
14. Julia Braun (e-mail address unknown)


**Search Terms**:


These are the proposed terms for Requests 3, 4, 6, 8, 9, 10, 15, 16, 17, 18, 19 & 23


1. Ronda


2. McNae and (Miami or "San Francisco" or Redmond or Patrice or Yelany or rape or sex or sodomy or consent or drunk or alcohol or substance or IPO or Baoli or boat or flight or "Confidential Settlement Agreement" or counsel! or distress or marriage or friend! or anger or violen! or gift)


3. Fitzgerald and (sex* or discrimination or harassment or misogn! or assault or rape or battery or inappropriate* or touching or sodomy or misconduct or culture or alcohol or drug or substance or abuse or violence or "anger management" or drunk or manipulat! or dishonest* or violat! or consent! or illegal or legal or law or charge*)
4. Michael and (sex* or discrimination or harassment or misogn! or assault or rape or battery or inappropriate* or touching or sodomy or misconduct or culture or alcohol or drug or substance or abuse or violence or "anger management" or drunk or manipulat! or dishonest* or violat! or consent! or illegal or legal or law or charge*)
5. Mike and (sex* or discrimination or harassment or misogn! or assault or rape or battery or inappropriate* or touching or sodomy or misconduct or culture or alcohol or drug or substance or abuse or violence or "anger management" or drunk or manipulat! or dishonest* or violat! or consent! or illegal or legal or law or charge*)
6. Fitz and (sex* or discrimination or harassment or misogn! or assault or rape or battery or inappropriate* or touching or sodomy or misconduct or culture or alcohol or drug or substance or abuse or violence or "anger management" or drunk or manipulat! or dishonest* or violat! or consent! or illegal or legal or law or charge*)


7. Fitzgerald and (performance or review or compensation or pay or paid or employment or position or responsib! or training or investigat! or "internal review" or leave or promot! or demot! or raise or salary or bonus or incentive or "stock option*" or suspen! or Inspire)
8. Michael and (performance or review or compensation or pay or paid or employment or position or responsib! or training or investigat! or "internal review" or leave or promot! or demot! or raise or salary or bonus or incentive or "stock option*" or suspen! or Inspire)
9. Mike and (performance or review or compensation or pay! or paid or employment or position or responsib! or training or investigat! or "internal review" or leave or promot! or demot! or raise or salary or bonus or incentive or "stock option*" or suspen! or Inspire)
10. Fitz and (performance or review or compensation or pay! or paid or employment or position or responsib! or training or investigat! or "internal review" or leave or promot! or demot! or raise or salary or bonus or incentive or "stock option*" or suspen! or Inspire)

11. mike@fitzgeraldcap.com

**Timeframe:**

We are willing to limit the timeframe on Requests 1, 2, 3, 6, to from January 1, 2019 to the present.

For the remainder of the documents it would be January 1, 2016 to the present.

I am still waiting for a response from you as to whether there are any responsive documents to the requests outlined in my e-mail below.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.



BRODSKY FOTIU WOJTOWICZ

200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com

**From:** Alaina Fotiu-Wojtowicz
**Sent:** Thursday, October 20, 2022 3:57 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>; Heather Shatzel <heather@bfwlegal.com>; Annelise Abrams <annelise@bfwlegal.com>; Elizabeth D. Gaukroger <elizabeth@bfwlegal.com>
**Subject:** SoftwareONE, Inc. Subpoena

Jenny & Michael:

Thank you for your time yesterday on the call.  I'm writing just to summarize our discussion and the outstanding items:

For me:

1. Send a list of proposed search terms and custodians for an e-mail search;
2. Determine whether the time frame for Requests 1, 2, 3, 4 & 6;
3. Work on a mutually agreeable Protective Order that will encompass the Parties documents, Microsoft's, and SoftwareONE's; and
4. Work on getting a Fitzgerald's written consent to waive any privacy rights in the information sought.

For you:

1. Confirm that SoftwareONE, Inc. has no documents responsive to 5, 7 & 11;
2. Confirm that SoftwareONE, Inc does not have documents in its "possession, custody, or control" responsive to: 12, 13, 14, 17, 18 (other than what might come up in an e-mail search) because these documents are in the possession, custody, or control of another SoftwareONE entity;
3. Confirm that SoftwareONE, Inc. does not have any sexual harassment (or other similar conduct) training documents, policies, or procedures that would apply to Mr. Fitzgerald other than the SoftwareONE Codes of Conduct.

In response to your request by separate e-mail, Jim Howard and Tyler Bourke at Davis Wright Tremaine LLP are representing Microsoft with respect to the subpoena.  The e-mails I have for them are jimhoward@dwt.com and tylerbourke@dwt.com.

Let me know if you think I am missing anything.  Otherwise I will be back in touch at least with our proposed search terms and custodians sometime next week and will look forward to your responses on the other items we discussed.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.



BRODSKY FOTIU-WOJTOWICZ

200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Friday, October 14, 2022 6:23 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>; Heather Shatzel <heather@bfwlegal.com>; Annelise Abrams <annelise@bfwlegal.com>
**Subject:** RE: SoftwareONE, Inc.

Alaina,

Attached are SoftwareONE, Inc.'s objections and responses to Ronda McNae's subpoena. Other than Wednesday, I'm generally available next week to discuss.

Sincerely,

**Jenny Martinez**

Partner



12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn

  

**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Sent:** Monday, October 10, 2022 12:34 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>; Heather Shatzel <heather@bfwlegal.com>; Annelise Abrams <annelise@bfwlegal.com>
**Subject:** RE: SoftwareONE, Inc.

[External]


Jenny:


Thanks for the e-mail below.  I believe that the contact was generally unrelated to this case, but there won't be further contact going forward from Ronda.  I just want to let you know that Will still has some limited contact and responsibilities related to SWO and I understand he sent a work-related e-mail to Jared Cheney earlier this month.  I assume this isn't an issue, but I just wanted to flag it so we are all on the same page going forward.


Sincerely,


Alaina Fotiu-Wojtowicz, Esq.



BRODSKY FOTIU-WOJTOWICZ

200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com


**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Thursday, October 06, 2022 6:38 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>; Heather Shatzel <heather@bfwlegal.com>; Annelise Abrams <annelise@bfwlegal.com>
**Subject:** Re: SoftwareONE, Inc.


Thanks, Alaina. I arrived safely in Florida and the weather is perfect.


As an aside, SWO employee, Khristy Young, informed us that Ms. McNae has been calling her. Since SWO is represented by counsel, we would appreciate it if all communications regarding this matter go through counsel. Please let me know if you disagree or if you would like to jump on a call to discuss.


Sincerely,

**Jenny Martinez**

Partner

12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn

-

**Confidentiality Notice:**  This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege.  It is intended solely for the use of the addressee(s) listed above.  If you are not the intended recipient of this message, please do not print, copy or disclose this information.  If you received this e-mail in error, please disregard it and delete it and any attachments from your system.  Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records

On Oct 5, 2022, at 4:06 PM, Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com> wrote:

[External]

Jenny:

I apologize for the delay, I was traveling myself – although I promise I didn't flee the state because I knew you were coming.

We have an agreement to the points set forth in your e-mail below.  I look forward to discussing this more in the coming weeks.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.

<image005.png>

200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com


**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Wednesday, October 05, 2022 3:15 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: SoftwareONE, Inc.


Alaina - Just following up on the below. I'll be on a plane headed your way tomorrow morning so wanted to make sure we have an agreement.


Thanks!


**Jenny Martinez**

Partner

<image006.jpg>

12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn


<image007.png>


<image008.png>


<image009.jpg>


**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Jenny L. Martinez
**Sent:** Tuesday, October 4, 2022 5:52 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: SoftwareONE, Inc.


Alaina,


It was nice speaking with you today. Please let me know if the below reflects our agreement.


1. Ronda McNae agrees that SoftwareONE, Inc.'s deadline to serve objections and responses to the subpoena is extended to October 14, 2022.
2. SoftwareONE, Inc.'s deadline to serve any privilege log:

    1. If SoftwareONE, Inc. and the parties reach an agreement on all requests, 14 days after production; or
    2. If SoftwareONE, Inc. and the parties cannot reach an agreement on all requests, 14 days after the production deadline, if any, ordered by the court in connection with Defendants' motion to compel.


I look forward to working with you.


Sincerely,


**Jenny Martinez**

Partner

<image006.jpg>

12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn


<image007.png>


<image008.png>

**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Sent:** Tuesday, October 4, 2022 3:58 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: SoftwareONE, Inc.

[External]

Jenny:

Sure, you can reach me at the number in my signature block below.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.

<image005.png>

200 SE 1st Street

Suite 400

Miami, Florida 33131

T. 305-503-5054

F. 786-749-7644

alaina@bfwlegal.com

www.bfwlegal.com

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Tuesday, October 04, 2022 4:57 PM
**To:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>
**Subject:** SoftwareONE, Inc.

Alaina,

I represent SoftwareONE, Inc. regarding Ronda McNae's subpoena. Are you available for a brief call at 4:30 CST / 5:30 EST to discuss the subpoena?


Sincerely,


**Jenny Martinez**

Partner

<image006.jpg>

12770 Coit Rd., Ste 600

Dallas, TX 75251

d. +1 972.628.3623

o. +1 972.628.3600

e: jmartinez@munckwilson.com

w. munckwilson.com

Connect with me on LinkedIn

Follow Munck on LinkedIn


<image007.png>


<image008.png>


<image009.jpg>


**Confidentiality Notice**:  This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege.  It is intended solely for the use of the addressee(s) listed above.  If you are not the intended recipient of this message, please do not print, copy or disclose this information.  If you received this e-mail in error, please disregard it and delete it and any attachments from your system.  Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

# Exhibit E

# Exhibit

# E-1

Evidence of requests made to prior counsel



This snapshot illustrates multiple emails I sent to my prior counsel, Richard Gomez, emphasizing the urgent deadline for my Motion for Summary Judgment. Despite the pressing timeline, Mr. Gomez failed to take the necessary actions to adequately address this critical matter. Compounding this issue, Mr. Gomez did not obtain deposition transcripts for my Expert Witness, Treating Trauma Therapist, and Treating Therapist—documents essential for properly preparing the motion. Instead, he relied solely on my recollections, even though I was not present for the entirety of these depositions. This lack of diligence and preparation is deeply troubling and has resulted in substantial prejudice to my case.



This snapshot underscores my proactive attempts to order deposition transcripts, despite assurances from Mr. Gomez that he would manage this task. Mr. Gomez later justified his inaction by

stating that he "didn't want to tip off the other side," an explanation that was both illogical and inappropriate given that the proceedings were nearing their conclusion. His failure to obtain these critical transcripts undermined the preparation and strategy necessary for my defense.



The snapshot above highlights my proactive efforts to address the *Doe v. SWO* case. I possess text messages dating back to May 28, 2024, referencing a lead from Jane Doe (Carol Eastman), who contacted me directly. Despite my bringing this critical information to Mr. Gomez's attention, he failed to take timely or meaningful action. Over a month later, Mr. Gomez made a single phone call, by which time the case involving Ms. Eastman and SWO had already been classified as "highly confidential" following a deposition with the company's former CEO. After Mr. Gomez withdrew from my case, I independently gathered and paid for a substantial amount of court documents over the course of one weekend. These documents demonstrated that SWO had withheld the *Doe v. SWO* case during discovery, an omission that significantly prejudiced my defense.

# Exhibit

# E-2

Detailed analysis of invoices

**<u>Detailed Analysis of Billing Discrepancies and Counsel's Ineffective Representation</u>**

As the Defendant in this matter, I must address significant discrepancies and deficiencies in the representation provided by my former counsel, Richard Gomez. Despite repeated requests, Mr. Gomez refused to provide me with invoices for his services. This refusal prompted me to formally request the invoices from ARAG Legal Insurance, which ultimately revealed troubling issues. The invoices reflected 60 hours of billed work, including a line item for services allegedly performed in January 2024. However, Mr. Gomez did not sign an Agreement to represent me until February 2024, raising serious concerns about the accuracy and integrity of his billing practices. Moreover, I did not receive a copy of the signed Agreement until March 22, 2024, well after his representation had commenced. These failures have not only undermined my ability to adequately prepare for trial but have caused irreparable harm to my case.

**1. Failure to Adequately Prepare and Manage Case Deadlines**

1. **Missed Summary Judgment Deadline:**

   - On June 21, 2024, Mr. Gomez billed 2.0 hours to "review and strategize for summary judgment." Despite this, no Motion for Summary Judgment was filed before the applicable deadline.

   - There are no subsequent billing entries reflecting further work on this critical motion.

   - The failure to file this motion eliminated an essential opportunity to seek dismissal of claims against me or narrow the issues for trial, significantly prejudicing my case.

2. **Minimal Time on Trial Strategy and Preparation:**

   - On June 21, 2024, Mr. Gomez billed only 1.2 hours for a discussion of trial strategy, opposing counsel's proposed stipulated facts, and upcoming deadlines. This is grossly insufficient given the complexity of the case and the approaching trial date.

   - Tasks critical to trial preparation, such as drafting pretrial motions or coordinating expert witness strategies, are either absent or inadequately addressed in the invoices.

**2. Inadequate Discovery Efforts**

1. **Deposition Transcript Review:**

   - Mr. Gomez billed 13.8 hours in June 2024 for reviewing deposition transcripts, including:

     - 8.5 hours on my deposition transcript (350+ pages).

     - 5.3 hours on depositions of opposing parties and experts.

- ▪ 0 hours on my expert depositions as Mr. Gomez did not order them.
- Despite this, these transcripts were not effectively utilized for motions or trial preparation.

2. **Failure to Obtain Deposition Transcripts:**

- Mr. Gomez did not order critical deposition transcripts, leaving me to personally obtain and expedite them after his withdrawal, incurring significant cost and delays.

3. **Incomplete Discovery Review:**

- On June 3, 2024, Mr. Gomez billed only 2.7 hours for reviewing discovery materials via a client call. This cursory effort left critical gaps, as no follow-up work is evident in his records.

## 3. Discrepancies Between Billed Time and My Records

1. **Phone Call Discrepancies:**

- According to my Verizon phone logs, I spent 9 hours and 3 minutes on calls with Mr. Gomez from March to September 2024. However, his invoices reflect fewer calls and limited time billed for phone conferences. This inconsistency raises concerns about transparency in his billing practices.

2. **July 2024 Gap in Activity:**

- During July 2024, Mr. Gomez billed only 0.6 hours, limited to reviewing a court order and drafting emails about stipulated facts. This was a critical month for trial preparation, and his lack of activity reflects a failure to engage during a pivotal time.

## 4. Overcharging and Inefficient Use of Time

1. **Excessive Time on Basic Tasks:**

- Mr. Gomez billed 8.5 hours to review my deposition transcript, an unusually high amount given that no significant actions were taken based on this review.

2. **Redundant Tasks:**

- On June 27, 2024, he billed 1.3 hours for drafting a motion to extend deadlines and an additional 0.4 hours for preparing a proposed order for the same motion. These tasks should have been completed concurrently.

## 5. Failure to Provide Case Files

- Despite my repeated formal requests, Mr. Gomez has failed to provide my complete case files following his withdrawal from representation.
- This omission has obstructed my ability to address procedural gaps or independently manage my case moving forward, compounding the harm caused by his ineffective counsel.

## 6. Summary of Total Hours and Billing Concerns

- **Total Hours Billed:** Mr. Gomez billed 62.9 hours between February and July 2024, per his invoices.
- **Key Omissions:** He failed to file essential motions, coordinate expert testimony, or sufficiently prepare for trial despite billing for tasks that suggest otherwise.

### 7. Impact of Discrepancies

Mr. Gomez's inadequate representation and billing discrepancies have caused significant harm to my case, including:

1. Missing critical deadlines such as the Motion for Summary Judgment.

2. Delaying the case by failing to obtain essential documents like deposition transcripts.

3. Creating procedural and evidentiary gaps that now necessitate reopening discovery to mitigate the prejudice caused by his actions.

### Conclusion

These discrepancies and failures reflect deeply ineffective counsel that has prejudiced my case. Despite my efforts to mitigate the harm, Mr. Gomez's actions—or lack thereof—have caused irreparable damage to my ability to present a full and fair defense. I respectfully request the Court's intervention to reopen discovery and address the substantial gaps created by his representation.

# Exhibit

# E-3

Invoices requested from ARAG Legal insurance regarding prior counsel

## Invoice #1772 (Dated May 18, 2024)

- February 2024:
    - 2.3 hours (Zoom meeting on possible representation)
    - 3.0 hours (Initial court docket review)
    - 3.5 hours (Review of prior counsel's file documents)
    - 1.5 hours (Zoom meeting for case facts, strategy)
    - 1.0 hour (Additional review of documents from prior counsel)
- March 2024:
    - 0.5 hours (Phone call about sanctions motion and strategy)
    - 0.1 hours (Emails regarding Motion for Sanctions)
    - 1.0 hour (Call on settlement strategy)
    - 0.8 hours (Follow-up call about case resolution options)
- April 2024:
    - 0.1 hours (Email about NOA timing)
    - 0.1 hours (Preparing Notice of Appearance)
    - 0.3 hours (Filing Supplemental Corporate Disclosure Statement)
    - 1.5 hours (Preparing Motion for Pretrial Deadlines Extension)
    - 0.4 hours (Drafting proposed order for trial extension, option 1)
    - 0.2 hours (Drafting proposed order for trial extension, option 2)
    - 0.3 hours (Reviewing trial extension order)
    - 0.1 hours (Email about pretrial deadlines extension)
    - 0.2 hours (Emails on settlement issues)
    - 0.5 hours (Call about overall strategy and CA counsel impact)
- May 2024:
    - 0.1 hours (Review plaintiff's notice of 90-day expiration).

**Subtotal for Invoice #1772: 18.0 hours**

## Invoice #1835 (Dated July 29, 2024)

- January 2024:
    - 0.5 hours (Call about case overview and docket review)

- o   0.1 hours (Email about Attorney Eyes Only documents)
- May 2024:
  - o   0.2 hours (Preparing emergency motion for extension hearing)
  - o   0.5 hours (Call about relevant evidence from Carol Eastman case)
- June 2024:
  - o   2.7 hours (Discovery review via call with client)
  - o   2.0 hours (Reviewing deposition transcript, part 1)
  - o   2.8 hours (Reviewing deposition transcript, part 2)
  - o   2.5 hours (Reviewing plaintiff's damage expert deposition)
  - o   8.5 hours (Reviewing your deposition and relevant pleadings)
  - o   3.0 hours (Review of prior counsel's file for relevant claims)
  - o   0.6 hours (Reviewing further deposition transcript)
  - o   2.0 hours (Reviewing and strategizing for summary judgment motion)
  - o   1.2 hours (Call discussing case facts and strategy)
  - o   6.0 hours (Court docket review and expert witness report analysis)
  - o   2.4 hours (Call regarding additional evidence from Carol Eastman case)
  - o   0.3 hours (Emails on deadline calculations)
  - o   1.3 hours (Preparing motion to extend deadlines)
  - o   0.4 hours (Drafting proposed order for trial extension)
  - o   0.3 hours (Reviewing granted extension order)
  - o   0.1 hours (Responding to client email)
  - o   0.3 hours (Memo on case strategy and tasks)
  - o   0.1 hours (Email about magistrate referral)
  - o   1.3 hours (Reviewing magistrate orders and strategy)
  - o   0.3 hours (Call regarding stipulation of facts)
  - o   0.6 hours (Emails about stipulation of facts)
  - o   0.3 hours (Preparing meet and confer emails).

**Subtotal for Invoice #1835: 44.9 hours**


**Total Hours Worked**

**18.0 hours** (Invoice #1772) + **44.9 hours** (Invoice #1835) = **62.9 total hours**

# Exhibit

# E-4

Detailed invoices from prior counsel (redacted)

---------- Forwarded message ---------
From: **Ronda McNae** <rondamcnae@gmail.com>
Date: Tue, Oct 1, 2024 at 9:24 AM
Subject: Request for Billing Invoices and Transparency
To: <ann.cosimano@araglegal.com>, Will McNae <willmcnae@gmail.com>


Please see attached.


Regards,

Ronda and Will McNae

**One attachment** · Scanned by Gmail ⓘ


Lertter to ARAG
10.1.24.docx

  

Subject: Request for Billing Invoices and Transparency

Dear ARAG Legal Insurance,

I am writing to formally request copies of all billing invoices related to the legal services rendered by your office and covered by my legal insurance, ARAG, in connection with my Florida case. Despite my repeated requests to all counsel involved, I continue to receive evasive responses and have not been provided with the necessary documents.

Yesterday afternoon, ARAG informed Will McNae that three letters were mailed to our home at 504 11th Pl, Kirkland, WA 98033, reflecting the hours billed for work done by Richard Gomez in my Florida Federal Case. We were surprised to learn this news as we have not received these documents, nor have they been made available for our review. Please send those three (3) letters to our home mailing address and email a digital copy since our request is urgent in nature. Email addresses below.

As both a client and a policyholder, I firmly believe I am entitled to receive these records.

**Legal and Ethical Basis for Request:**

1. **Insurance Transparency Requirements**: Insurance companies, including legal insurers such as ARAG, are required to provide transparency regarding the services they pay for on behalf of policyholders. This is part of the contractual relationship between the insurer and the insured. Many insurance policies include provisions requiring the insurer to issue Explanation of Benefits (EOBs) or similar documents that outline what has been covered, which I have not yet received.

2. **Attorney's Ethical Duties**:

   - Under the **American Bar Association (ABA) Model Rules of Professional Conduct**, attorneys are required to keep clients reasonably informed about their case, including billing practices. Specifically, **Rule 1.4** mandates that attorneys communicate with their clients about all relevant matters, including fees, and **Rule 1.5** requires transparency in fee arrangements. As your client, I have the right to understand how fees are charged and what legal services were billed to ARAG on my behalf.

   - **Florida Bar Rule 4-1.8(f)** also provides that attorneys can accept third-party payments only if (1) the client consents, (2) the client-lawyer relationship remains independent, and (3) confidentiality is maintained. Additionally, **Florida Bar Ethics Opinion 97-1** reiterates that the primary duty of the attorney remains with the insured client, not the third-party insurer, and as such, I retain the right to review invoices related to my case, even if paid by ARAG.

3. **Federal Rules of Civil Procedure (FRCP) and Case File Ownership**:

   - Under the **Federal Rules of Civil Procedure (FRCP)**, clients have the right to access their case files, including documents relevant to their case, such as billing records. **FRCP 26** allows for the discovery of any relevant information, and billing invoices fall within this scope, particularly when disputes over fees arise.

4. **Case Law Supporting Clients' Rights to Their File**:

   ○ The courts have repeatedly affirmed that clients have the right to access their complete case file, including billing records. For instance, **Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP** (91 N.Y.2d 30, 689 N.E.2d 879, 1997) established that clients are entitled to their entire case file, even if they have not fully paid for the services. Additionally, **In Re ANR Advance Transp. Co.** (302 B.R. 607, E.D. Wis. 2003) reaffirmed that billing invoices are part of the case file, and clients have the right to obtain them.

**Policyholder Rights:**

As a policyholder, I also retain the right to know what my legal insurance has covered. Many state regulations and consumer protection laws mandate that insurance companies provide transparency regarding the services they have paid for. Specifically:

- **Explanation of Benefits (EOB)**: Insurers are obligated to provide a detailed breakdown of what they have paid, the portion I may be responsible for, and any claims processed.

- **Right to Information**: If I request information about what services were covered under my policy, the insurance company is typically required to provide it.

**Conclusion:**

The combination of the **ABA Model Rules**, **Federal Rules of Civil Procedure**, **Florida Bar Rules**, case law, and my rights as a policyholder strongly support my request for transparency in billing. Therefore, I am requesting that you provide me with copies of all billing invoices related to my case and covered by ARAG.

Considering the circumstances surrounding Richard Gomez's late-stage withdrawal, after we resolved the conflict ourselves, things aren't adding up. At this point, I am not willing to waive my attorney-client privilege to disclose these concerning issues. However, I would appreciate an **Explanation of Benefits** and a detailed account of what has been invoiced in respect to my case, including hours billed and work rendered.


Sincerely,


Ronda and Will McNae

rondamcnae@gmail.com
willmcnae@gmail.com

504 11th pl
Kirkland, WA 98033

LAW OFFICES OF

**GOMEZ & GOMEZ**

4300 Biscayne Blvd. – Suite 305

Miami, Florida  33137

Richard M. Gomez
richardgomez@rgpalaw.com

Tel:  (305) 825-5506
Fax: (305) 825-2699

**VIA EMAIL:** ann.cosimano@ARAGlegal.com

February 12, 2024

Ann Cosimano, General Counsel
ARAG Legal Insurance
500 Grand Avenue, Suite 100
Des Moines, IA 50309
800-888-4184 x 288

| | | |
|---|---|---|
| **Re:** | **Fritzgerald vs. McNae** | |
| | Case No. | 1:22-c-v-22171-JEM – United States District Court Southern District of Florida |
| | ARAG Id No.: | 177202672170 |
| | Named Insured: | William McNae |
| | Coverage Case No: | 3266236 |
| | Covered Insured: | Ronda McNae |
| | Our File No.: | 5688 |

Dear Ms. Cosimano:

Enclosed please find the executed Amendment to ARAG Attorney Agreement regarding the above referenced matter.  Please return an executed copy for my file.

Please make a note of my cell phone number which is the best way to reach me should you have any questions at any time during our representation of Ms. McNae in this matter 305-336-9175.

Very truly yours,

/s/ Richard M. Gomez

RICHARD M. GOMEZ
RMG/lb
Enclosure

# Amendment to ARAG Attorney Agreement



**Legal Insurance**

This Amendment ("Amendment") shall modify the ARAG Attorney Agreement ("Agreement") by and between ARAG North America Incorporated ("ARAG") and Network Attorney Richard Gomez ("Attorney").

Attorney and ARAG agree that the terms of this Amendment shall apply solely with respect to Covered legal services rendered to Ronda McNae by Attorney in the following litigation, exclusive of any appellate or remanded proceedings ("Subject Litigation"):

> *Michael Fitzgerald v. Ronda McNae*, Case No. 1:22-cv-22171-JEM (U.S. Dist. Ct., S.D. Fla.)
> Our Named Insured: William McNae
> Insured Covered by this Amendment: Ronda McNae ("Client")
> Certificate No.: C-10377 (the "Policy")
> Member ID: ███████████
> Policy Term: January 1, 2022 through December 31, 2022

A. **Section 4. Legal Services Fees, B. Payments for Covered Services, subsection i** of the Agreement shall be replaced in its entirety with the following:

> Attorney may invoice ARAG at the following rates as payment in full for actual time spent on Covered services:
>
> (i.)      Attorney $███ per hour.
> (ii.)     Associate Attorney _____
> (iii.)    Legal Assistant or Paralegal _____
>
> Attorney will make no additional charges to the Client for attorney's fees unless the Plan Document allows. Payments made by ARAG on behalf of the Client shall be deemed payment when received by Attorney. To the extent benefits do not provide for the payment of costs and expenses incurred on behalf of the Client, Attorney is entitled to obtain reimbursement from the Client for such out-of-pocket expenses including, but not limited to: copy/printing charges; postage, fax charges; telephone charges; filing fees, court fees; delivery services fees; court reporter fees; transcripts; expert fees; witness fees; subpoena fees; private investigators; mock-ups or models; any computer, audio or visual equipment or rental of; and title work. Covered services may not be combined for any one matter to increase maximum fees.
>
> Attorney shall provide a detailed invoice of actual time spent on Covered services to ARAG on at least a monthly basis. If Attorney's billing system rounds up, it must round to the next tenth-hour increment or less.

B. **Section 1. Definitions, Paragraph B** of the Agreement shall be replaced in its entirety with the following:

> **"Case Confirmation"** refers to the document provided by ARAG to the Client or Attorney acknowledging the Subject Litigation.

C. Neither any provision of this Amendment, nor ARAG's entry into this Amendment, nor any other act or omission of ARAG constitutes, or is intended to constitute, any total or partial waiver or impairment of any coverage defenses ARAG may have under the Plan Documents and/or applicable law; provided, however, that ARAG will

not, on the basis of lack of coverage, seek to recoup any payments made under this Amendment to the extent such payments are for Covered services rendered by Attorney to Client before the expiration of fourteen (14) days' written notice to Attorney that ARAG will no longer treat the Subject Litigation as if it were a Covered matter.

D.  All remaining terms and conditions of the Agreement remain unchanged. For avoidance of doubt, this Amendment does not apply to or change the Agreement with respect to any engagement other than the Subject Litigation. This Amendment has been agreed upon and executed by the following authorized representatives.

**Attorney**

_____
Attorney Signature

_____
Printed Name, Title

_____
Date

**ARAG**

_____
Ann Cosimano

Ann Cosimano, General Counsel
_____
Printed Name, Title

2/14/2024
_____
Date

# Law Offices of Gomez & Gomez

4300 Biscayne Blvd. Suite 305
Miami, FL 33137
Phone: 3058255506
Email: richardgomez@rgpalaw.com

# INVOICE

Invoice # 1835
Date: 07/29/2024
Due On: 08/28/2024

Ronda D. McNae
504 11th Place
Kirkland, Washington 98033

## Michael J. Fitzgerald and Yaleny De Varona v. Ronda McNae and William McNae Case No. 22-CV-22171-JEM - Southern District of Florida ARAG - Referral-05688

## Michael J. Fitzgerald and Yaleny De Varona v. Ronda McNae and William McNae Case No. 22-CV-22171-JEM - Southern District of Florida ARAG - Referral Certificate No. C-10377 Member ID: 177202672170

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Service | 01/11/2024 | Telephone conference with client RE: contact with Alaina Fotiu-Wojtowicz RE: overview of case; address pending issues.client; review of court docket; consultaton with potential co-counsel. | 0.50 | ▓▓▓ | ▓▓▓ |
| Service | 01/11/2024 | Subject: Fwd: Fitzgerald/McNae: RE: Request for Access to Attorney Eyes Only Documents | 0.10 | ▓▓▓ | ▓▓▓ |
| Service | 05/23/2024 | Preparation of notice of hearing on emergency motion to vacate order and emergency motion for extension of time setting same for 5/28/24 per Judge's instructions. | 0.20 | ▓▓▓ | ▓▓▓ |
| Service | 05/29/2024 | Telephone conference with Ronda McNae regarding contact with Carol Eastman; litigant against SoftwareOne with potential useful defense evidence. | 0.50 | ▓▓▓ | ▓▓▓ |
| Service | 06/03/2024 | Review of discovery (primarily depositions) for synopsis of each witness deposed to pertain relevancy as to remaining issues to be tried; review of select emails in conjunction. (This was conducted with the client via conference call to streamline). | 2.70 | ▓▓▓ | ▓▓▓ |
| Service | 06/04/2024 | Review and outline Michael Fitzgerald depostion transcript dated 3/3/23 (pp. 1-102). | 2.00 | ▓▓▓ | ▓▓▓ |
| Service | 06/05/2024 | Additional reveiw/outline of plainitff's depostion trascript dated 3/3/23 9pp.102 - 200); cursory review of direct by S. Casey. | 2.80 | ▓▓▓ | ▓▓▓ |

Invoice # 1835 - 07/29/2024

| | | | | |
|---|---|---|---|---|
| Service | 06/17/2024 | Reivew and outline depostion transcript of Sheri Fiske (plaintiff's damage expert) | 2.50 | ▮▮▮ ▮▮▮ |
| Service | 06/19/2024 | Review and outline deposition of Ronda McNae pp. 1-359 (took 10 hrs in conjunction with review of relevant pleadings; courtesy adjustment) | 8.50 | ▮▮▮ ▮▮▮ |
| Service | 06/20/2024 | Review of file documents from prior counsel - for relevancy as to remaining claims/issues to be tried. | 3.00 | ▮▮▮ ▮▮▮ |
| Service | 06/21/2024 | Additional review and outline of Rhonda McNae deposition pages 435-452. | 0.60 | ▮▮▮ ▮▮▮ |
| Service | 06/21/2024 | Review of amended complaint, affirmative defenses for overview as to anticipated motion for summary judgment by plaintiff, determination of strategy for filing summary judgment on behalf of defendant, initial review of proposed stipulated facts provided by plaintiff's counsel. | 2.00 | ▮▮▮ ▮▮▮ |
| Service | 06/21/2024 | Telephone conference with client regarding case facts, review of opposing counsel's proposed stipulated facts, discussion regarding issues to be tried and likely filing of motion for extension of pretrial deadlines and continuance of trial date due to pleadings not being closed. | 1.20 | ▮▮▮ ▮▮▮ |
| Service | 06/24/2024 | Review of file as to Software One subpoena compliance issue; intiial reports of plaintiff's expert witnesses/expert witness disclosures and start of review of court docket for prior relevant filings. | 6.00 | ▮▮▮ ▮▮▮ |
| Service | 06/25/2024 | Telephone conference with Ronda McNae and WIll McNae; reviwe of Carol Eastman v. SoftwareONE lawsuit issues; SoftwareONE representaions and strategy to obtain any benefical documents from attorney Anthony Trujillo/CA atttorney; inital review of social media spreadsheet; discussion as to case not at issue. | 2.40 | ▮▮▮ ▮▮▮ |
| Service | 06/26/2024 | Meet and confer emails with opposing counsel to address requested deadline calculations (email 6/25 - 6/25). | 0.30 | ▮▮▮ ▮▮▮ |
| Service | 06/27/2024 | Prepare and file motion for extension of pretrial deadlines and continuance of the trial date due to case not being at issue (drafts 1 - 2 edited per opposing counsel requested modifications to finalize (6/25 - 6/26) | 1.30 | ▮▮▮ ▮▮▮ |
| Service | 06/27/2024 | Prepare proposed order on motion for extension of pretrial deadlines and continuance of trial; submission to Judge Martinez. | 0.40 | ▮▮▮ ▮▮▮ |
| Service | 06/27/2024 | Preparation of email to client regarding case update/ motion filed pending ruling. | 0.10 | ▮▮▮ ▮▮▮ |
| Service | 06/28/2024 | Receipt and review of Order granting unopposed motion for extension of certain pretrial deadlines and | 0.30 | ▮▮▮ ▮▮▮ |

Invoice # 1835 - 07/29/2024

|  |  | continuance of trial and rediary/calendar new dates. |  |  |  |
|---|---|---|---|---|---|
| Service | 06/29/2024 | Receipt and review of email from client dated 6/26/24and response to same regarding opposing counsel request for stipulated facts, timing in light of pleadings still being open and possible disclosure of additional investigative work. | 0.10 | ████ | ████ |
| Service | 06/29/2024 | Prepare case update report to Ann Cosimano. | 0.30 | ████ | ████ |
| Service | 06/29/2024 | Memo to file RE: 6/25/24 strategy conference with clients; TO DO's. | 0.30 | ████ | ████ |
| Service | 07/01/2024 | Email to client RE: order of referral to magistrate and observations as to arguments by OC as to discovery in state court action for future reference/use.. | 0.10 | ████ | ████ |
| Service | 07/01/2024 | Receipt and review of Order (paperless) issued by Judge Martinez regarding referred to Magistrate regarding motion for attorneys fees and costs; review motion to bifurcate and motion for extension, response to same and reply to same; relation to State Court case as argued by Plaintiff; email to clients noting same. | 1.30 | ████ | ████ |
| Service | 07/02/2024 | Telephone conference with Meredith Gussin regarding initial meet and confer regarding plaintiff's proposed joint stipulation of facts. | 0.30 | ████ | ████ |
| Service | 07/21/2024 | Multiple emails from OC RE: meet and confer on Joint Statement of Undisputed Facts; review of docket and order DE 61 dated 6/12/23; response email to OC with position. (7/8 - 7/21/24) | 0.60 | ████ | ████ |
| Service | 07/22/2024 | Review local rules, and prepare email to OC RE: meet and confer request on Joint Statement of Undisputed Facts. | 0.30 | ████ | ████ |
| Service | 07/26/2024 | Receipt and review of Iowa Court Order - custody of neice/nephew to Wil and Ronda. | 0.10 | ████ | ████ |

|  |  |
|---|---|
| **Subtotal** | ████ |
| **Total** | ████ |

# Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 1835 | 08/28/2024 | ████ | ████ | ████ |

Invoice # 1835 - 07/29/2024



Please make all amounts payable to: Law Offices of Gomez & Gomez
Federal Tax ID No. ████████████

Please pay within 30 days.

# Law Offices of Gomez & Gomez

## INVOICE

4300 Biscayne Blvd. Suite 305
Miami, FL 33137
Phone: 3058255506
Email: richardgomez@rgpalaw.com

Invoice # 1772
Date: 05/18/2024
Due On: 06/17/2024

Ronda D. McNae
504 11th Place
Kirkland, Washington 98033

## Michael J. Fitzgerald and Yaleny De Varona v. Ronda McNae and William McNae Case No. 22-CV-22171-JEM - Southern District of Florida ARAG - Referral-05688

## Michael J. Fitzgerald and Yaleny De Varona v. Ronda McNae and William McNae Case No. 22-CV-22171-JEM - Southern District of Florida ARAG - Referral Certificate No. C-10377 Member ID: 177202672170

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Service | 02/16/2024 | Zoom meeting with client William McNae and Ronda McNae RE: possible representation in case. | 2.30 | ███████ | ███████ |
| Service | 02/17/2024 | Initial review of court docket for overview. | 3.00 | ███████ | ███████ |
| Service | 02/17/2024 | Intial review of file documents provided by prior counsel via USB. | 3.50 | ███████ | ███████ |
| Service | 02/18/2024 | Zoom meeting with client RE: discussion of case facts, strategy and overview. | 1.50 | ███████ | ███████ |
| Service | 02/18/2024 | Addtional review of file documents provided by prior counsel via USB; t/c with client. | 1.00 | ███████ | ███████ |
| Service | 02/28/2024 | Telephone conference with client regarding pending motion for sanctions against opposing counsel and plaintiff, response in opposition, strategy moving forward. | 0.50 | ███████ | ███████ |
| Service | 03/07/2024 | Receipt and review of email from/to client RE: response to Motion for Sanctions and timing of formal Notice of Appearance. | 0.10 | ███████ | ███████ |
| Service | 03/13/2024 | Telephone conference with client and Stephanie Casey regarding overall case issues and strategy for possible global settlement. | 1.00 | ███████ | ███████ |
| Service | 03/15/2024 | Telephone conference with Stephanie Cassey RE: over all facts relevant to discuss resolution of case as to | 0.80 | ███████ | ███████ |

Invoice # 1772 - 05/18/2024

both WII and Ronda McNae; issues as to case not at issue.

| | | | | |
|---|---|---|---|---|
| Service | 04/02/2024 | Email from client RE: NOA timing and strategy. | 0.10 | ▆▆▆▆ |
| Service | 04/04/2024 | Preparation of Notice of Appearance. | 0.10 | ▆▆▆▆ |
| Service | 04/04/2024 | Prepared and filed Supplemental Certificate of Interested Persons and Corporate Disclosure Statement. | 0.30 | ▆▆▆▆ |
| Service | 04/08/2024 | Meet and confer emails with OC for 4/8/24 Motion to Continue/Extend Deadlines | 0.30 | ▆▆▆▆ |
| Service | 04/08/2024 | Prepare and file Motion for Extension of Pretrial Deadlines and Continuance of the Trial Date. | 1.50 | ▆▆▆▆ |
| Service | 04/08/2024 | Prepare proposed order on Motion for Extension of Pretrial Deadlines and Continuance of Trial Date (option 1). | 0.40 | ▆▆▆▆ |
| Service | 04/08/2024 | Prepare proposed order on Motion for Extension of Pretrial Deadlines and Continuance of Trial Date (option 2). | 0.20 | ▆▆▆▆ |
| Service | 04/08/2024 | Receipt and review of Order granting motion to strike. | 0.10 | ▆▆▆▆ |
| Service | 04/09/2024 | Receipt and review Order on motion to continue and extend pretrial deadlines, resetting trial and pretrial deadlines, new trial date 9/9/24; dairy all new due dates. | 0.30 | ▆▆▆▆ |
| Service | 04/10/2024 | Email to/from client RE: Motion for Extension on Pretrial Deadlines and Continuance. | 0.10 | ▆▆▆▆ |
| Service | 04/18/2024 | Email to/from client RE: settlement issues as related to Wil McNae and not encompassing Ronda McNae. | 0.20 | ▆▆▆▆ |
| Service | 04/29/2024 | Telephone conference with client RE: overall case strategy; contact with CA counsel and potential claim/action in CA and impact on Federal case. | 0.50 | ▆▆▆▆ |
| Service | 05/06/2024 | Receipt and review of plaintiff's notice of 90 day expiring to court regarding motion to dismiss counterclaim. | 0.10 | ▆▆▆▆ |

Subtotal ▆▆▆▆

Total ▆▆▆▆

Invoice # 1772 - 05/18/2024

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 1772 | 06/17/2024 | ▄▄▄▄▄ | ▄▄▄▄▄ | ▄▄▄▄▄ |

Please make all amounts payable to: Law Offices of Gomez & Gomez
Federal Tax ID No. ▄▄▄▄▄▄

Please pay within 30 days.

# Exhibit

# E-5

Will McNae's Declaration related to Mr. Gomez (prior counsel)

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

        Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

        Defendants.

_____/


**DECLARATION OF WILLIAM MCNAE IN SUPPORT OF DEFENDANT RONDA MCNAE'S CONVERSATION WITH PRIOR COUNSEL RICHARD GOMEZ**


I, **William McNae**, declare as follows:

1. My name is William McNae. I am over 18 years of age and competent to testify to the matters stated herein. I make this declaration based on personal knowledge and observation.

2. On September 4, 2024, I participated in a conference call with Richard Gomez, the attorney representing my wife, Ronda McNae, in this Federal litigation, and myself in the State court litigation which Plaintiff has sued me in for the same legal matters they were denied in this Federal litigation.

3. During the call, Mr. Gomez shifted from topics pertinent to my case and informed Ronda that he intended to drop her sole affirmative defense of duress.

4.  When Ronda questioned this decision, Mr. Gomez failed to provide a clear explanation or strategic reasoning. He only responded, *"Your decision needs to match my decision, which is to drop duress."*

5.  Mr. Gomez had no apparent knowledge of the testimony of Ronda's expert witnesses, including Dr. James Hopper, Sarah Dellinger, Brock Weedman, and Dr. James Bhaskar. He appeared to disregard the importance of this evidence and did not make the effort to order the deposition transcripts in preparation for trial.

6.  Throughout the conversation, Mr. Gomez seemed disengaged and unwilling to consider Ronda's concerns or her preferences for trial strategy.

7.  Subsequent to this call, Ronda discovered that Mr. Gomez had billed fewer than 60 hours for his representation of her for a period of roughly six months, raising concerns about the adequacy and diligence of his preparation.

8.  Shortly after Ronda confronted Mr. Gomez about her dissatisfaction with his approach and his lack of preparation, he withdrew from representing her.

9.  Based on these observations, I believe Mr. Gomez's actions significantly impaired Ronda's ability to adequately prepare her defense, leaving her without the necessary legal support and undermining her legal strategy.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 6, 2024 in Kirkland, WA.

**Signature**: _____

**Name**: Will McNae

# Exhibit

# E-6

Ronda McNae's Declaration related to Mr. Gomez (prior counsel)

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

          Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

          Defendants.

_____/

**DECLARATION OF RONDA MCNAE IN SUPPORT OF THE TELEPHONIC PHONE
CONVERSATION WITH PRIOR COUNSEL RICHARD GOMEZ**

Regarding September 4, 2024 Call with Mr. Gomez


I, **Ronda McNae**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the

following is true and correct:

1. I, Ronda McNae, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the

   following is true and correct:

2. Ineffective Representation by Mr. Gomez and Prejudice to My Case: On September 4,

   2024, during a call with Mr. Gomez, his actions and advice demonstrated ineffective

   representation that irreparably prejudiced my ability to defend this case.

3. I am the Defendant in the above-captioned matter and submit this declaration in support

   of my Motion to Reopen Discovery on a Limited Basis.

4.  On September 4, 2024, at approximately 4:00 PM, I participated in a phone call with my prior counsel, Richard Gomez, and William McNae. Mr. Gomez began the conversation by stating, "I need to talk to the both of you at the same time. Ronda, I want you to think about this and sleep on it." He then stated, "Your decision needs to match my decision … to drop duress."

5.  Mr. Gomez made these statements without reading through my prior counseling reports, my treating therapist's deposition, or my medical records, all of which are critical to understanding the coercion I experienced and its impact on my decision-making.

6.  Mr. Gomez provided no legal or strategic justification for dropping my duress defense, which is critical to addressing the coercion I experienced and its impact on my decision-making.

7.  Mr. Gomez's statement pressured me to abandon a valid and essential defense, causing substantial prejudice to my ability to present a full and fair case.

8.  I repeatedly requested billing invoices from Mr. Gomez to understand the work performed on my case, but he refused to provide them. I ultimately obtained these invoices only after contacting ARAG and submitting a formal request.

9.  Based on the invoices I received, Mr. Gomez billed a total of **62.9 hours** for work performed on my case from February 2024, when he was retained, until his withdrawal in September 2024. This equates to fewer than 8 hours per month on average, despite the complexity of my case and the fact that trial was set for November 2024.

10. Mr. Gomez did not order critical deposition transcripts, leaving me to obtain and expedite them at significant cost after his withdrawal. This delay disrupted my ability to use this material for pretrial preparation and motions.

11. Mr. Gomez failed to file a Motion for Summary Judgment on my behalf, despite billing time on June 21, 2024, for "review and strategy" related to summary judgment. We had numerous conversations to prepare for my MSJ. This failure denied me the opportunity to seek dismissal of the claims against me or narrow issues for trial.

12. According to my Verizon phone records, I spent **9 hours and 3 minutes** on phone calls with Mr. Gomez between March and September 2024. His invoices, however, reflect limited billing for phone conferences, creating a discrepancy in his recordkeeping.

13. During July 2024, a critical month for trial preparation, Mr. Gomez billed only **0.6 hours**, primarily for minor administrative tasks. His lack of engagement during this time significantly impacted my ability to prepare for trial.

14. Mr. Gomez's overall lack of preparation and failure to perform necessary tasks, such as obtaining deposition transcripts, pursuing critical discovery, and filing essential motions, has caused irreparable harm to my ability to present a full and fair defense.

15. I have repeatedly requested my complete case file from Mr. Gomez, but he has not provided it to date. This failure has further hindered my ability to rectify the deficiencies created by his ineffective representation.

16. Based on these issues and the harm caused to my case, I respectfully request the Court to reopen discovery on a limited basis to address the significant procedural and evidentiary gaps resulting from Mr. Gomez's representation.

17. I declare under penalty of perjury that the foregoing is true and correct.

18. Dated: December 17, 2024.

By:

**Ronda McNae**

# Exhibit F



**DLA Piper UK LLP**
1 St Peter's Square
Manchester
M2 3DE
United Kingdom
DX: 14304 Manchester 1
T: +44 (0) 20 7349 0296
F: +44 (0) 161 235 4111
dlapiper.com

Charles Fussell & Co LLP
8 Buckingham Street
Strand
London
WC2N 6BX

**Your reference**

3723/RM-606

**Our reference**

JE/CL
UKM/124837341.1

**By Post and Email : jonathancohen@charlesfussell.com, harryprebensen@charlesfussell.com**

22 February 2023

Dear Sirs

**In the United States District Court Southern District of Florida Miami Division Case No. 1:22-cv-22171-JEM: Michael J Fitzgerald, Individually, and Yalena de Varona, Individually, Plaintiffs; v Ronda McNae, Individually and William McNae, Individually, Defendants (Miami Proceedings)**

We are instructed on behalf of SoftwareONE UK Limited (**SOUK**) regarding your letter dated 9 February 2023. Please direct all future correspondence regarding this or related matters to us.

Your clients seek the voluntary disclosure of documents for use in the Miami Proceedings. SOUK is not a party to the Miami Proceedings. Your letter seeks sensitive and personal employment information about Mr. Fitzgerald, who does not join in your request. The UK GDPR and the Data Protection Act 2018 prevent SOUK from "informally" turning over personal data relating to its employees. Accordingly, any request for documents should be made through proper US and UK legal procedures applicable to obtaining discovery from non-parties.

This letter is provided without waiver of any objections to your clients' document requests, including SOUK's lack of possession, custody, or control over certain documents; and SOUK reserves all rights regarding your letter and to respond as it considers appropriate to any process, proceedings or any other steps that may be taken by your clients including any court application or order that may be made.

Yours faithfully

DLA Piper UK LLP

**DLA Piper UK LLP**

**DLA Piper UK LLP** is authorised and regulated by the Solicitors Regulation Authority.

**DLA Piper UK LLP** is a limited liability partnership registered in England and Wales (registered number OC307847) which is part of DLA Piper, a global law firm, operating through various separate and distinct legal entities.

A list of members is open for inspection at its registered office and principal place of business, 160 Aldersgate Street, London, EC1A 4HT and at the address at the top of this letter. Partner denotes member of a limited liability partnership.

A list of offices and regulatory information can be found at dlapiper.com.

**UK switchboard**
+44 (0) 20 7349 0296

# Exhibit G

# CHARLES FUSSELL & CO LLP

Our Ref:     3723/RM-606
Your Ref:    Unknown
Email:       jonathancohen@charlesfussell.com

Landau Law, Solicitors                                          8 Buckingham Street
St Clare House                                                             Strand
30-33 Minories                                                            London
London EC3N 1DD                                                       WC2N 6BX
And by Email
pl@landaulaw.co.uk                                          Tel:    +44 20 7839 9710
                                                            Fax:    +44 20 7839 9711

                                                            www.charlesfussell.com

7 July 2023

Dear Landau Law,

**In the United States District Court Southern District of Florida Miami Division**
**Case No. 1:22-cv-22171-JEM: Michael J Fitzgerald, Individually, and Yalena de Varona**
**Individually, Plaintiffs; v Ronda McNae, individually and William McNae Individually,**
**Defendants ("the Miami Proceedings").**

We are instructed by Ronda McNae and William McNae who are the Defendants in the above titled Miami Proceedings brought by Michael J Fitzgerald. We write with a request for documents going to a matter to be raised at a hearing before the United States District Court on 12 July.

We are aware from our instructing Attorneys, Alaina Fotiu-Wojtowicz of Brodsky Fotiu-Wojtowicz, and Stephanie Casey of Colson Hicks Eidson, that you were Mr Fitzgerald's solicitor and independent adviser in the negotiations towards his Settlement Agreement with his employer, SoftwareONE UK Limited ("SoftwareONE"). In that capacity you corresponded with SoftwareONE's solicitors, DLA Piper.

The documentary evidence provided to the United States District Court by Mr Fitzgerald's Attorney Meredith Gussin of Assouline & Berlowe, includes emails between you and Ms Gussin dated 14 and 15 March 2023. Ms Gussin first conveyed to you a production request from the Defendants for:

> *"Documents between Mike and SoftwareONE regarding Ronda McNae*
> *Documents between Mike and any third party that refers to Ronda McNae"*

In your first response, timed at 4.12.43am, you confirmed that Mr Fitzgerald had all the documents which he had provided to you, and that you had advised him to ask SoftwareONE for confirmation that his provision of the productions would not place him in breach of the Settlement Agreement.

Ms Gussin then sent a further email on 15 March at 12.22 pm conveying the Defendants' request for communications between you and SoftwareONE, and asking whether that was something you could provide. At 8.25 am you responded that this was part of your files and that you did not believe you were able to provide this. In response to Ms Gussin's later request for a Zoom meeting to discuss this matter in the context of the Federal Rules of Civil Procedure you replied in an email tied at 1.14pm that you were unavailable because of tribunal proceedings. You then wrote:

Charles Fussell & Co LLP is a limited liability partnership registered in England and Wales (with registered number OC353144) and is regulated by the Solicitors Regulation Authority (registration number 535074). A list of members' names is open to inspection at our registered office, 8 Buckingham Street, Strand, London WC2N 6BX.

> *"... however I am seeking guidance from our professional regulatory body and will hopefully have this by tomorrow.  In this regard, you will appreciate that the regulations and process in the UK is different from the US".*

Our instructing Attorneys have not received any such guidance or indeed any other response.  They require the production of the content of your communications with Messrs DLA coming within the scope of the document request quoted above.  The transcript of his deposition confirms that Mr Fitzgerald requested the production of these documents:

> *"Q. Did Mr. Landau have communications in writing with*
> *16 DLA Piper?*
> *17 A. I think there was email communications back and*
> *18 forward for the settlement. And I've requested them".*

Against that background please provide by no later than 2pm on Monday 10 July all communications in writing between you and DLA Piper in the course of the negotiations towards the Settlement Agreement, alternatively the reasons why you refuse to provide them.

Please note that in the event of any submissions to the United States District Court which are required, our Instructing Attorneys reserve the right to bring this letter to the attention of the Judge in support of their position that adverse inferences at trial should be drawn from the failure of Mr Fitzgerald to produce the requested documents. Equally, they reserve the right to obtain from us an expert opinion on the law of England and Wales on the right of a client to secure documents from the client's solicitor's file which he or she has requested.

Yours faithfully,

*Charles Fussell & Co LLP*

**Charles Fussell & Co LLP**

**Jonathan Cohen**

| | |
|---|---|
| **From:** | Philip Landau <pl@landaulaw.co.uk> |
| **Sent:** | 10 July 2023 13:08 |
| **To:** | Jonathan Cohen |
| **Subject:** | RE: VERY URGENT Case 1:22-cv-22171-JEM Michael J Fitzgerald v Ronda McNae [Case:FIT0091, ID:1638, Thread:2023-07-10_XV5E-6Y3Y-2K11] |

Dear Sirs,

We refer to your email of July 7th.

Please note we have clarified the position together with your client's request with the SRA.

We have been informed by the SRA that Paragraph 6.3 of the Code of Conduct for Solicitors, RELs and RFLs and of the Code of Conduct for Firms (referred to collectively as ("the Codes") requires solicitors to keep the affairs of current and former clients confidential unless disclosure is required or permitted by law or the client consents.

Yours faithfully,

**Philip Landau**

============================



**Landau Law, Solicitors**
**St Clare House, 30-33 Minories, London EC3N 1DD**
020 7100 5256   pl@landaulaw.co.uk
landaulaw.co.uk

**Landau Law is a trading name of Landau Law Limited (Company No: 08876494) and is authorised and regulated by the Solicitors Regulation Authority (Registered No: 611950). Registered office as above.**

This email and any attachments are sent in confidence solely for the addressee, and may contain information that is covered by legal, professional or other privilege. If you receive this email in error, please telephone us upon receipt: you are strictly prohibited from using, copying or disclosing any information contained in it.

**From:** Jonathan Cohen <jonathancohen@charlesfussell.com>
**Sent:** Friday, July 7, 2023 3:35 PM
**To:** Philip Landau <pl@landaulaw.co.uk>
**Subject:** VERY URGENT Case 1:22-cv-22171-JEM Michael J Fitzgerald v Ronda McNae
**Importance:** High

Dear Landau Law,

Please see attached an urgent letter to which a response is required please by 2pm on Monday 10 July.

Yours faithfully,

Charles Fussell & Co LLP

Jonathan Cohen
Partner

## CHARLES FUSSELL & CO LLP



**8 Buckingham Street**
**Strand**
**London**
**WC2N 6BX**

**DDI**    +44 (0)207 839 9718
**Office**  +44 (0) 20 7839 9710
**Mobile** +44 (0)7903 061 182
**Fax**    +44 (0)2078 399 711

www.charlesfussell.com

This email is intended solely for the addressee. It is confidential and may be subject to legal professional privilege. If you have received this email in error please delete it immediately and do not copy it or any information contained within it. Please notify the sender by email or telephone +44 (0) 20 7839 9710.

Charles Fussell & Co LLP is a limited liability partnership registered in England & Wales (with registered number OC353144) and is authorised and regulated by the Solicitors Regulation Authority. A list of members' names is open to inspection at our registered office, 8 Buckingham Street, Strand, London WC2N 6BX.

# Exhibit H

| Date/Time | Direction | Number | Name | | Label | Type |
|---|---|---|---|---|---|---|
| 2019-06-06 12:39:51 | Incoming | 17868585212 | Mike | I'm ok. I feel sick but I'm busy and it's keeping my mind | | |
| 2019-11-14 14:32:53 | Outgoing | | | | what does it me | Image |
| 2019-11-14 14:34:50 | Outgoing | | | | what does it me | Image |
| 2020-07-01 12:39:05 | Outgoing | | | | Ureaplasma Cau | Image |
| 2020-02-11 20:44:45 | Outgoing | | | | Screenshot 202 | Image |
| 2020-11-11 22:13:15 | Outgoing | | | | Screenshot 202 | Image |
| 2020-11-11 22:14:05 | Outgoing | | | | Screenshot 202 | Image |
| 2020-07-12 14:02:51 | Outgoing | | | | Rockhouse Con | Attachment |
| 2020-07-22 23:54:51 | Outgoing | | | | Resized_202007 | Image |
| 2019-02-22 12:47:32 | Outgoing | | | | RenderedImage. | Image |
| 2020-05-24 03:13:16 | Outgoing | | | | RenderedImage. | Image |
| 2018-11-01 23:28:52 | Outgoing | | | | RenderedImage. | Image |
| 2019-06-06 12:47:32 | Outgoing | | | | RenderedImage. | Image |
| 2020-11-12 13:05:36 | Incoming | 17868585212 | Mike | | IMG_9991.jpeg | Image |
| 2020-11-12 13:05:36 | Incoming | 17868585212 | Mike | | IMG_9952.jpeg | Image |
| 2020-11-12 13:05:36 | Incoming | 17868585212 | Mike | | IMG_9948.jpeg | Image |
| 2019-11-25 14:19:45 | Outgoing | | | | IMG_8787.HEIC | Image |
| 2019-11-25 14:19:41 | Outgoing | | | | IMG_8785.HEIC | Image |
| 2019-11-14 13:14:14 | Outgoing | | | | IMG_8645.PNG | Image |
| 2019-11-13 13:12:42 | Outgoing | | | | IMG_8633.MOV | Video |
| 2019-11-14 19:21:04 | Incoming | 17868585212 | Mike | | IMG_7962.jpeg | Image |
| 2019-10-03 12:49:33 | Outgoing | | | | IMG_7809.HEIC | Image |
| 2020-11-11 19:56:21 | Outgoing | | | | IMG_4440.jpeg | Image |
| 2020-11-11 19:55:18 | Outgoing | | | | IMG_4438.jpeg | Image |
| 2020-11-11 19:51:53 | Outgoing | | | | IMG_4435.jpeg | Image |
| 2018-11-02 14:37:34 | Outgoing | | | | IMG_4151.HEIC | Image |
| 2018-11-02 14:37:34 | Outgoing | | | | IMG_4151.HEIC | Image |
| 2018-10-16 15:30:09 | Outgoing | | | | IMG_3259.PNG | Image |
| 2018-11-18 14:12:44 | Outgoing | | | | IMG_3250.PNG | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2266.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2266.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2266.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2265.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2265.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2264.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2264.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2263.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2263.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2263.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2262.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2262.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2262.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2261.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2261.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2260.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2260.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2260.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2259.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2259.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2259.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2258.jpeg | Image |

| Date/Time | Direction | Number | Name | Content | Filename | Type |
|---|---|---|---|---|---|---|
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2258.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2258.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2257.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2257.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2257.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2256.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2256.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2256.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2255.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2255.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2255.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2254.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2254.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2254.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2253.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2253.jpeg | Image |
| 2020-03-22 22:49:03 | Incoming | 17868585212 | Mike | | IMG_2253.jpeg | Image |
| 2020-11-12 12:45:50 | Incoming | 17868585212 | Mike | | IMG_1565.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1440.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1439.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1438.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1437.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1436.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1435.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | 😍 | IMG_1434.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1433.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | 😍😍😍😍 | IMG_1432.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1431.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1430.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1429.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1428.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | 😍 | IMG_1427.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | 😍 | IMG_1426.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1425.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | ⭐ | IMG_1424.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1423.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | 🙏 | IMG_1422.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | 😍 😗 😘 😍 😍 💕 | IMG_1421.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1420.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | 😍 | IMG_1418.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1417.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | | IMG_1416.jpeg | Image |
| 2019-11-27 12:42:21 | Incoming | 17868585212 | Mike | 💗 | IMG_1415.jpeg | Image |
| 2019-11-26 12:37:37 | Incoming | 17868585212 | Mike | 💗💗💗💗😍 😗 😗 😍 | IMG_1412.jpeg | Image |
| 2019-11-24 06:24:05 | Incoming | 17868585212 | Mike | | IMG_1411.jpeg | Image |
| 2019-09-14 17:49:36 | Incoming | 17868585212 | Mike | | IMG_0886.jpeg | Image |
| 2019-09-14 17:49:36 | Incoming | 17868585212 | Mike | | IMG_0880.jpeg | Image |
| 2019-09-10 14:46:39 | Incoming | 17868585212 | Mike | | IMG_0844.jpeg | Image |
| 2019-09-09 21:20:55 | Incoming | 17868585212 | Mike | 😍 😍 | IMG_0840.jpeg | Image |
| 2019-09-08 14:54:07 | Incoming | 17868585212 | Mike | 🍌 | IMG_0810.JPG | Image |
| 2020-07-22 15:42:14 | Incoming | 17868585212 | Mike | 😍🙌 | IMG_0646.jpeg | Image |
| 2019-08-28 16:43:12 | Incoming | 17868585212 | Mike | 💗💗💗💗 | IMG_0625.jpeg | Image |
| 2019-08-28 16:43:12 | Incoming | 17868585212 | Mike | | IMG_0623.jpeg | Image |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2020-07-12 14:20:27 | Outgoing | | | | IMG_0433.mov | Video |
| 2019-06-03 12:32:43 | Outgoing | | | | IMG_0301.jpeg | Image |
| 2019-07-15 15:42:17 | Incoming | 17868585212 | Mike | | IMG_0249.jpeg | Image |
| 2019-06-20 15:44:34 | Incoming | 17868585212 | Mike | | IMG_0104.JPG | Image |
| 2019-06-03 15:12:57 | Incoming | 17868585212 | Mike | | IMG_0009.jpeg | Image |
| 2019-06-03 15:12:57 | Incoming | 17868585212 | Mike | | IMG_0008.jpeg | Image |
| 2019-03-25 14:37:18 | Outgoing | | | | Image-1.jpg | Image |
| 2018-11-11 16:54:38 | Outgoing | | | | Image-1.jpg | Image |
| 2018-11-11 16:55:01 | Outgoing | | | | Image-1.jpg | Image |
| 2019-03-26 02:14:55 | Outgoing | | | | Image-1.jpg | Image |
| 2019-08-28 16:45:50 | Outgoing | | | | Image-1.jpg | Image |
| 2019-08-28 16:46:20 | Outgoing | | | | Image-1.jpg | Image |
| 2019-08-28 16:46:57 | Outgoing | | | | Image-1.jpg | Image |
| 2020-03-11 23:12:22 | Outgoing | | | | Image-1.jpg | Image |
| 2019-10-02 20:11:37 | Outgoing | | | | Image-1.jpg | Image |
| 2018-10-22 19:05:56 | Incoming | 17868585212 | Mike | | Image-1.jpg | Image |
| 2018-10-22 19:08:48 | Incoming | 17868585212 | Mike | | Image-1.jpg | Image |
| 2018-10-23 21:09:03 | Incoming | 17868585212 | Mike | | Image-1.jpg | Image |
| 2019-09-11 19:41:16 | Outgoing | | | | Image-1.jpg | Image |
| 2020-02-12 14:56:53 | Incoming | 17868585212 | Mike | | Image-1.jpeg | Image |
| 2019-03-25 14:22:13 | Incoming | 17868585212 | Mike | | Image-1.jpeg | Image |
| 2019-11-14 14:34:50 | Incoming | 17868585212 | Mike | | Image-1.jpeg | Image |
| 2020-03-11 14:42:45 | Incoming | 17868585212 | Mike | | Image-1.jpeg | Image |
| 2019-11-14 14:34:50 | Incoming | 17868585212 | Mike | | Image-1.jpeg | Image |
| 2019-11-14 14:34:50 | Incoming | 17868585212 | Mike | | Image-1.jpeg | Image |
| 2020-02-13 14:18:20 | Incoming | 17868585212 | Mike | | image.png | Image |
| 2019-11-14 16:38:18 | Outgoing | | | | Hi Yelany, this is | Image |
| 2019-07-16 20:40:07 | Incoming | 17868585212 | Mike | | FullSizeRender.j | Image |
| 2019-11-14 13:17:54 | Incoming | 17868585212 | Mike | | FullSizeRender.j | Image |
| 2019-11-14 13:20:57 | Incoming | 17868585212 | Mike | | FullSizeRender.j | Image |
| 2020-03-12 14:41:07 | Incoming | 17868585212 | Mike | | FullSizeRender.j | Image |
| 2019-07-01 14:46:07 | Incoming | 17868585212 | Mike | | FullSizeRender.j | Image |
| 2019-11-27 12:50:51 | Outgoing | | | | FullSizeRender.j | Image |
| 2019-03-25 18:53:13 | Outgoing | | | Current Location | CL.loc.vcf | Location |
| 2020-11-12 13:05:36 | Incoming | 17868585212 | Mike | | 85186BE1-88F6 | Image |
| 2020-11-12 13:05:36 | Incoming | 17868585212 | Mike | | 0B9B50B3-B0B | Image |
| 2020-11-12 13:08:19 | Outgoing | | | | 62687928454 | Image |
| 2020-07-12 12:55:40 | Incoming | 17868585212 | Mike | | 61624773604 | Image |
| 2020-07-12 12:53:15 | Incoming | 17868585212 | Mike | | 61624758649 | Image |
| 2020-07-12 12:52:27 | Incoming | 17868585212 | Mike | | 61624754197 | Image |
| 2020-07-01 12:50:58 | Incoming | 17868585212 | Mike | | 61529705252 | Image |
| 2020-07-01 12:40:24 | Incoming | 17868585212 | Mike | | 61529641526 | Image |
| 2019-11-13 13:14:16 | Outgoing | | | | 59534357922 | Video |
| 2019-09-09 16:42:27 | Outgoing | | | | 58973651220 | Image |
| 2019-09-09 16:42:09 | Outgoing | | | | 58973650460 | Image |
| 2019-07-16 03:46:46 | Outgoing | | | | 58493796360 | Video |
| 2019-07-16 03:43:21 | Incoming | 17868585212 | Mike | | 58493778909 | Image |
| 2019-07-16 03:42:34 | Outgoing | | | | 58493773857 | Image |
| 2019-06-30 07:03:10 | Outgoing | | | | 58356738311 | Image |
| 2019-06-30 07:03:10 | Outgoing | | | | 58356738311 | Image |
| 2019-06-24 23:16:37 | Incoming | 17868585212 | Mike | | 58310738632 | Image |
| 2019-06-11 17:45:18 | Outgoing | | | | 58196428618 | Image |
| 2019-06-06 23:23:10 | Outgoing | | | | 58155258169 | Image |
| 2019-06-06 23:23:10 | Outgoing | | | | 58155258169 | Image |

| 2019-06-06 23:22:03 | Incoming | 17868585212 | Mike | | 58155249283 | Image |
|---|---|---|---|---|---|---|
| 2019-06-06 23:22:03 | Incoming | 17868585212 | Mike | | 58155249283 | Image |
| 2019-02-06 22:44:27 | Incoming | 17868585212 | Mike | | 58154980281 | Image |
| 2019-06-06 22:44:27 | Incoming | 17868585212 | Mike | | 58154980281 | Image |
| 2019-03-26 02:03:34 | Incoming | 17868585212 | Mike | 🥴　　🥴 | 57525853003 | Image |
| 2018-10-26 20:45:53 | Outgoing | | | 😂😂　😋😛　🔥　　😋　　　😋 | 56227582635 | Image |
| | | | | 😛　　😜😛　　😛 | | |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-22171-JEM

MICHAEL J. FITZGERALD,
individually,

     Plaintiff,

v.

RONDA MCNAE, individually,

     Defendant.

_____/

## NOTICE OF ISSUANCE OF SUBPOENA

PLEASE TAKE NOTICE that the Defendant, Ronda McNae, intends to serve the attached subpoena commanding production of documents, electronically stored information, or tangible things upon:

1. Yelany De Varona
c/o Peter E. Berlowe, Esq.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131

Respectfully submitted,

By: *ls/Alaina Fotiu-Wojtowicz*
Alaina Fotiu-Wojtowicz, Esq.
Florida Bar No.: 84179
BRODSKY FOTIU-WOJTOWICZ, PLLC
*Counsel for Defendant Ronda McNae*
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com



## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email upon all parties listed on the Service List below, on this 22nd day of November, 2022.

*/s/Alaina Fotiu-Wojtowicz*
Alaina Fotiu-Wojtowicz, Esq.

## **SERVICE LIST**

Peter E. Berlowe, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com

BFW
BRODSKY FOTIU·WOJTOWICZ

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| MICHAEL J. FITZGERALD, | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:22-cv-22171-JEM |
| RONDA MCNAE | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Yelany De Varona c/o Peter Berlowe, Esq.
Assouline & Berlow, PA, Miami Tower, 100 SE 2nd St., Ste. 3105, Miami, FL 33131

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Schedule A.  Documents may be produced at the location below on the date and time provided. Alternatively, documents may be sent electronically or by mail to counsel for the Defendant at the addresses listed on this subpoena prior to December 27, 2022

| Place: Brodsky Fotiu-Wojtowicz, PLLC | Date and Time: |
|---|---|
| 200 SE 1st Street, Suite 400 Miami, FL 33131 | 12/27/2022 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11-22-22

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Defendant
Ronda McNae                                                    , who issues or requests this subpoena, are:

Alaina Fotiu-Wojtowicz, BFW Legal, 200 SE 1st St., Ste. 400, Miami, FL 33131, alaina@bfwlegal.com, 305-503-5054

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

1.     The term "You" or "Yelany De Varona" refers to Yelany De Varona and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under her control or at her direction

2.     The term "Michael Fitzgerald" shall include Michael J. Fitzgerald, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under his control or at his direction.

3.     The term "Ronda McNae" shall include Ronda McNae, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under her control or at her direction.

4.     The term "William McNae" shall include William McNae, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under his control or at his direction.

5.     The term "Patrice Sanchez" shall include Patrice Sanchez, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under her control or at her direction.



BRODSKY FOTIU-WOJTOWICZ

6.     The term "document" includes all documents subject to discovery under the Federal Rules of Civil Procedure including e-mails and other electronically stored information.   The term "document" includes social media or other internet posts on Instagram, Twitter, SnapChat, TikTok, Facebook, or any other website or social media platform.

7.     The term "communication" means any form of contact, correspondence, instruction, publication, discussion, report, or written, electronic, or recorded oral exchange between two or more persons.   The term "communication" includes communications via e-mail, text message, WhatsApp, Signal, and via any social media platforms including but not limited to Instagram, Twitter, SnapChat, TikTok or Facebook.

8.     The terms "referring to," and "relating to" mean relating to, referring to, evidencing, reflecting, recording, memorializing, constituting, supporting, mentioning, or concerning in any way, directly or indirectly.

9.     The time frame for all document requests is from January 1, 2019 to the present.

2

BFW
BRODSKY FOTIU-WOJTOWICZ

## **DOCUMENTS REQUESTED**

1.      All communications between You and Michael J. Fitzgerald that refer or relate in any way to Ronda McNae, William McNae, or Patrice Sanchez.

2.      All communications between You and Ronda McNae.

3.      All communications between you and Patrice Sanchez.

4.      All communications between you and William McNae.

5.      All communications between You and any other person or entity that refer or relate in any way to Ronda McNae or William McNae, including but not limited to communications with:

      a. Your mother "Carrie" (last name unknown);
      b. Tom Wiper;
      c. Jana Rose Carrero;
      d. Ross Graham;
      e. Barbra Fitzgerald;
      f. Carrie Figzgerald;
      g. Brendan Fitzgerald;
      h. Kerrie Fitzgerald; and
      i. George (last name unknown).

6.      All social media posts that refer or relate in any way to Ronda McNae, William McNae, or Patrice Sanchez.

7.      All photographs that depict Ronda McNae, William McNae, or Patrice Sanchez in any way.

BFW

BRODSKY FOTIU-WOJTOWICZ

# Exhibit I

B. The McNaes shall not contact Fitzgerald's employer. If Mr. Fitzgerald's employer contacts either of the McNaes, the McNaes shall respond, "the matter has been resolved and I cannot speak any more about it," or words to that effect.

# Exhibit J

| # | Docket Entry | Motions Defendant filed to rectify damage caused by ineffective Counsel | Page Count | Page Count of Exhibits |
|---|---|---|---|---|
| 1 | 221 | MOTION FOR EXTENSION TO REPLY TO PLANTIFFS MOTION IN LIMINE | 9 | - |
| 2 | 222 | RESPONSE IN OPPOSITION TO PLANTIFFS MOTION TO STRIKE DEFENDANTS'S REPLY IN SUPPORT OF MOTIONG TO EXCLUDE EXPERT OPINIONS | 9 | - |
| 3 | 223 | REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION | 14 | 77 |
| 4 | 224 | MOTION FOR LEAVE TO SUPPLMENT THE RECORD TO INCLUDE DEPOSITION TRANSCRIPRT OF TREATING THERAPIST: MS. DELLINGER | 5 | 139 |
| 5 | 227 | EMERGENCY MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO PLANTIFFS MOTION IN LIMINE | 7 | - |
| 6 | 230 | MOTION FOR LEAVE TO SUPPLMENT THE RECORD TO INCLUDE DEPOSITION TRANSCRIPT WITH TREATING THERAPIST: DR. WEEDMAN | 11 | 208 |
| 7 | 231 | MOTION FOR LEAVE TO SUPPLMENT THE RECORD: SWO | 17 | 92 |
| 8 | 235 | REPLY IN SUPPORT OF MOTION TO SUPPLEMENT THE RECORD WITH DR. WEEDMAN DEPOSITION | 12 | 134 |
| 9 | 238 | RESPONSE TO PLANTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANTS MOTION FOR LEAVE TO SUPPLEMENT THE RECORD AND RESPONSE TO PLANTIFFS CROSS-MOTION TO STRIKE DEPOSITION OF TREATING THERAPIST | 13 | - |
| 10 | 240 | REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMT THE RECORD WITH EVIDENCE FROM DOE V. SOFTWAREONE | 33 | - |
| 11 | 241 | REPLY IN OPPOSITION TO PLANTIFFS MOTION IN LIMINE | 12 | 45 |
| 12 | 242 | MOTION FOR LEAVE TO SUPPLEMENT THE RECORD TO INCLUDE TRAUMA EXPERT DEPOSITION OF DR. JAMES HOPPER | 19 | 265 |
| 13 | 245 | MOTION FOR LEAVE TO SUPPLMENT THE RECORD: SWO | 4 | 838 |
| 14 | 249 | EMERGENCY MOTION FOR EXTENSION | 5 | - |
| 15 | 252 | REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUPPLMENT THE RECORD | 13 | - |
| 16 | 253 | REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUPPLMENT THE RECORD ITH TRAUMA EXPERT REPORT AND DEPOSITION OF DR. JAMES HOPPER | 13 | 59 |
| 17 | 255 | MOTION TO CORRECT EXHIBIT D TO DECLARATION FILED IN SUPPORT OF MOTION FOR LEAVE TO SUPPLMENT THE RECORD (DE 253) | 27 | 31 |
| 18 | 259 | MOTION FOR LEAVE TO AMEND/CORRECT AND SUPPLEMENT EXHIBIT D 255 MOTION TO AMEND/CORRECT 253 REPLY TO RESPONSE TO MOTION | 4 | 36 |
| 19 | 260 | MOTION FOR LEAVE TO FILE ERRATA | 7 | 14 |
| 20 | 263 | RESPONSE IN OPPOSITION RE 257 PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY | 13 | 16 |
| 21 | 264 | NOTICE OF FILING - CORRECTED EXHIBIT TO DEFENDANT'S MOTION [DE 260 ] | 3 | 3 |
| 22 | 266 | REPLY TO PLAINTIFF'S RESPONSE 256 RESPONSE IN OPPOSITION TO MOTION | 11 | 9 |
| 23 | 267 | REPLY IN SUPPORT OF 260 MOTION TO FILE ERRATA | 11 | - |
| 24 | 268 | REPLY TO PLAINTIFF'S 262 RESPONSE IN OPPOSITION TO MOTION, 259 MOTION FOR LEAVE TO FILE MOTION TO AMEND/CORRECT 255 MOTION TO AMEND/CORRECT 253 REPLY TO RESPONSE TO MOTION | 9 | |

# Exhibit K

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,
                    Plaintiffs,
v.
RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,
                    Defendants.
_____/

**DECLARATION OF RONDA MCNAE IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE REOPEN DISCOVERY ON A LIMITED BASIS**

**INTRODUCTION OF DECLARATION**

1. I, Ronda McNae, submit this declaration under penalty of perjury in support of my Motion to Dismiss for egregious discovery misconduct or, alternatively, to reopen discovery on a limited basis. This declaration is anchored in the legal principles established under the Federal Rules of Civil Procedure (Fed. R. Civ. P. 26, 37(c)), which mandate the full and fair exchange of relevant information during discovery, and Fed. R. Civ. P. 16, which governs case management to prevent undue delay and ensure procedural fairness.

2. The authority to dismiss a case for discovery violations, or impose lesser sanctions, is well-established and essential to safeguarding the integrity of judicial proceedings. As articulated in *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366 (4th Cir. 2013), egregious misconduct that prejudices the opposing party and obstructs the court's ability to adjudicate the matter fairly warrants such relief. Similarly, the Kozel factors guide the imposition of sanctions for procedural violations, emphasizing the necessity of addressing willful and contumacious behavior by litigants and their counsel (*Kozel v. Ostendorf*, 629 So.2d 818, Fla. 1993).

3. This declaration demonstrates that the pervasive discovery violations and bad-faith conduct by Plaintiffs and their counsel, including the withholding of critical evidence and the misuse of privileged information, meet the threshold for dismissal or, alternatively, justify reopening discovery to rectify the significant prejudice caused to my defense. By providing a detailed account

of these issues, I respectfully urge this Court to apply the established legal standards and take the necessary steps to restore fairness and uphold the principles of justice.

**PREJUDICES FACED BY DEFENDANT**

4. Plaintiff committed systemic discovery violations by withholding crucial evidence including SoftwareONE UK employment and HR files and complaints. GDPR and UK privacy regulations obstructed me from presenting essential defenses like duress and pre-existing reputational harm.

5. As a pro se litigant, I encountered considerable disadvantages, such as relying on expensive courier services due to lack of e-filing capabilities. Plaintiff's counsel has used procedural delays to file petitions to strike before my filings were docketed, aggravating these issues.

6. Previous counsel's failings, such as not obtaining deposition transcripts, challenging privilege claims, or filing a Motion for Summary Judgment, significantly harmed my defense. Counsel also urged me to drop a valid defense and withdrew during a crucial stage of litigation, forcing me to traverse intricate federal procedures alone.

7. Plaintiff violated the Court's protective order by reusing discovery documents in state court actions, abusing confidentiality agreements to conceal embarrassing information, and coordinating with SoftwareONE to suppress internal investigations.

8. Key evidence, including Plaintiff's employment records and HR complaints, has been improperly withheld, creating significant barriers to my ability to substantiate defenses and respond to Plaintiff's claims.

9. I have incurred significant financial burdens, including hiring a UK-based barrister to navigate GDPR-related obstacles, as well as additional costs resulting from suppressed discovery and the need for supplemental motions.

10. Plaintiff's failure to adhere to Rule 26(a) disclosure requirements, coupled with the exploitation of my procedural missteps, has created an uneven playing field, necessitating Court intervention to restore fairness.

**PERSONAL CHALLENGES AND PREPARATION FOR COURT PROCEEDINGS**

11. While continuing to manage the severe PTSD caused by the sexual assault I experienced in October 2019, I took deliberate measures to prepare myself, understanding the profound significance and gravity of appearing in court for this case. I attended a proceeding in your courtroom, Judge Martinez, to familiarize myself with the emotional and physical demands of being in a courtroom. This endeavor, which Ms. Sabrina Puglisi can verify, was a critical component of my personal strategy for overcoming the apprehension of the environment and mentally prepare for the day I will stand before you—a day that I have long yearningly anticipated, despite the bittersweet emotions that accompany it.

12. My PTSD symptoms have included severe gagging fits that often result in violent vomiting, triggered by anxiety and the emotional toll of this litigation. Despite these challenges, I have remained resolute in preparing to participate meaningfully in these proceedings. Attending the hearing was an essential step in my process of overcoming these physical and psychological barriers.

13. I also sought guidance from my treating therapist, who supported my efforts to confront the daunting nature of this process. My goal has always been to ensure that I can effectively present my case, advocate for myself, and contribute to the pursuit of justice in this matter.

14. The process of preparing for this litigation has been both physically and emotionally grueling. Nevertheless, I remain committed to seeing this case through and ensuring that the systemic failures, misconduct, and inequities I have faced are brought to light before this Court.

15. The pervasive discovery misconduct and procedural inequities have severely prejudiced my ability to refute Plaintiff's claims, present key evidence, and protect my legal rights, warranting dismissal or, at a minimum, reopening discovery.

16. This case has been significantly impacted by systemic barriers, including law enforcement failures, procedural misconduct by ARAG Legal Insurance, blatant omissions by Plaintiff Michael Fitzgerald and his counsel, and unethical behavior throughout the discovery process.

17. Plaintiff has withheld critical evidence related to his employment with SoftwareONE (SWO) and his involvement in the *Doe v. SWO litigation*. These omissions have deprived me of key materials essential to evaluating his credibility, damages claims, and the context of his alleged harm.

18. By failing to disclose employment records, HR complaints, and related litigation documents, Plaintiff has obscured the full extent of relevant facts, materially prejudicing my defense.

19. Additionally, the actions of opposing counsel include the improper use of confidential discovery materials, unethical communications with my legal insurance provider, and attempts to exploit systemic barriers compounding the inequities I face as a pro se litigant.

20. These procedural and evidentiary gaps highlight the urgent need for either dismissal or the reopening of discovery to ensure that the Court can evaluate the case on a complete record.

21. This declaration details failures, omissions, and misbehavior, highlighting their cumulative impact on achieving fair and just adjudication. The Court should intervene to correct these disparities and restore fairness due to their pervasiveness.

22. Between July 31, 2019, and the present, this matter has evolved through a complex series of events involving coercion, manipulation, systemic barriers, and procedural misconduct.

23. Following an assault in Miami in October 2019, I faced significant delays and dismissive attitudes from law enforcement in Miami-Dade and San Francisco, which obstructed my ability to pursue justice.

24. Concurrently, Plaintiff Michael Fitzgerald engaged in a pervasive pattern of deceit and manipulation, both personally and through his employer, SoftwareONE, to suppress my claims and protect his financial and professional interests.

25. Opposing counsel further compounded these challenges by engaging in unethical litigation tactics, including misuse of discovery materials, coercive negotiation efforts, and invasive surveillance.

26. ARAG, my legal insurance provider, exacerbated the procedural inequities by terminating my coverage at a critical juncture, assigning ineffective counsel with clear conflicts of interest, and pressuring me to settle on terms inconsistent with my goals.

27. These interconnected actions have prejudiced my defense, delayed justice, and necessitate either dismissal of this case or the reopening of discovery to address the systemic failures and misconduct central to this litigation.

28. My first exhibit includes recent declarations submitted by myself, my daughter, and my husband, which provide firsthand accounts and critical context that support my claims and highlight the profound personal and procedural injustices we have endured. (*See Declaration Exhibit A*)

**OPPOSING COUNSEL MISCONDUCT**

29. Opposing counsel's conduct in this litigation reveals a pervasive pattern of misconduct, ethical violations, and bad-faith tactics that have prejudiced my defense and undermined the integrity of the judicial process.

30. Opposing counsel exploited personal photographs, such as images from a family trip to the Bahamas, to falsely discredit my need for trauma treatment. This deliberate distortion disregarded significant evidence of the emotional toll I endured following the events at issue, weaponizing unrelated circumstances to mislead the Court and harm my credibility.

31. This involves flagrant exploitation of confidential discovery materials under a federal court-issued protective order (*Decl. Ex. B-9*). Private correspondence between Microsoft HR and my husband, Will McNae, were incorrectly repurposed to support state court claims despite their specific restriction to federal court proceedings. (*State Court Complaint Decl. Ex. B-2*).

32. In Fitzgerlad's State Case against Mr. McNae, he initially filed the same tort claims that had been dismissed in this Federal Action. This prompted Mr. McNae to file a 57.105 (*see Decl. Ex. B-6*).

33. Ms. Gussin reached out to me directly regarding FRCP 26(e), (*see Decl. Ex. B-4*) which ironically was right before Will McNae and I received letters from ARAG regarding our legal coverage for both State and Federal actions, (*see Decl. Ex. B-3*).

34. Further compounding these actions was opposing counsel's unethical communication with my legal insurer, ARAG. Relying on policy details obtained through discovery, counsel directly contacted ARAG to inquire about policy limits and exclusions.

35. This information was subsequently leveraged to craft an amended state court complaint specifically aligned with ARAG's policy exclusions, (*see Decl. Ex. B-7*). Following this redraft which contradicts the rulings in this Federal Case, ARAG sent a letter denying coverage of the State Case, (*see Decl. Ex. B-5*).

36. The result was ARAG's denial of coverage, depriving our family of essential legal resources during a critical phase of litigation. This maneuver demonstrates opposing counsel's calculated exploitation of procedural vulnerabilities to our detriment.

37. Rule 4.2 of the ABA Model Rules of Professional Conduct (or the analogous state rule) prohibits attorneys from communicating with a represented party without the consent of that party's lawyer. Opposing counsel's direct contact with ARAG to obtain policy information, circumventing me or my counsel, may constitute a breach of ethical obligations.

38. I am in possession of the full audio recording, the contents of which are transcribed and included as *Decl. Ex. B-4. Opposing Counsel Misconduct.*

**IMPROPER USE OF EMAIL AND PREJUDICIAL OVERLAP**

39. After this court's dismissal of Will McNae from this Federal action, opposing counsel filed a lawsuit against him in State court and included an exhibit titled "Statement 5" (*see Decl. Ex. B-2, Statement 5*).

40. This exhibit contained an email from me, Ronda McNae, and was improperly used to draw me into the State court litigation, despite opposing counsel simultaneously pursuing claims against me in this Federal case.

41. The inclusion of my email in the State court case creates a prejudicial overlap between the State and Federal proceedings, improperly tying me to both cases and exposing me to duplicative litigation and inconsistent outcomes. This tactic compromises the procedural fairness of both cases and imposes a significant burden on me by forcing me to simultaneously defend overlapping claims in two separate forums.

42. Opposing counsel's actions appear calculated to create strategic advantages across jurisdictions by conflating separate legal actions, despite the distinct procedural and substantive issues in each

forum. This undermines procedural integrity and prejudices my ability to defend myself on the merits of each case.

**VIOLATION OF ETHICAL RULES AND DISCOVERY MISCONDUCT**

43. Such conduct raises serious ethical concerns. Rule 4.4 of the ABA Model Rules of Professional Conduct prohibits attorneys from using means that have no substantial purpose other than to embarrass, delay, or burden a third party. The use of my email in this manner serves no legitimate purpose and unduly burdens me.

44. Additionally, Rule 3.4 of the ABA Model Rules bars attorneys from using evidence in a way that unfairly prejudices the administration of justice. By introducing my email in the State court case without proper justification and leveraging it to gain an undue procedural advantage, opposing counsel's actions potentially violate these ethical obligations.

45. Courts emphasize the importance of managing parallel litigation in different jurisdictions to avoid prejudice, duplication, and uneven outcomes. Opposing counsel's use of my email breaches these principles and creates an unfair procedural advantage for their client.

**IMPROPER USE OF DISCOVERY MATERIALS**

46. Opposing counsel has engaged in repeated misconduct throughout this litigation, including the improper use of discovery materials obtained in this Federal case.

47. Private communications between Microsoft HR and my husband, Will McNae, were obtained in Federal discovery but were improperly repurposed in the State court complaint (*Decl. Ex. B-2*). These sensitive communications related to an internal-only conversation with Microsoft HR.

48. While these materials were not labeled confidential, they are highly sensitive and should have been protected by the parties' agreed protective order, which explicitly prohibits the use of discovery materials outside of this Federal case.

49. Opposing counsel's incorporation of these materials into their State court filings violates the protective order, weaponizing federally protected materials against me and my husband in another forum.

50. This blatant disregard for discovery rules undermines the integrity of the judicial process and prejudices my ability to defend myself effectively in both jurisdictions.

51. I respectfully request this Court take judicial notice of the prejudicial impact of these actions and consider appropriate remedies to safeguard the procedural integrity of this case. Such remedies may include sanctions, an evidentiary ruling barring further use of my email, or other relief deemed necessary to protect my rights and prevent further misuse of discovery materials.

**CONCERNS ABOUT DUPLICATIVE RECOVERY AND LACK OF EVIDENCE**

52. I respectfully bring to the Court's attention that opposing counsel is seeking to recover the same dollar amount in both State and Federal cases. This duplicative pursuit violates fundamental legal principles prohibiting double recovery, which ensure that a plaintiff may be compensated only once for the same injury or damage.

53. By seeking the same dollar amount across overlapping claims in both cases, opposing counsel risks obtaining compensation in excess of what is legally justified. Such a strategy undermines fairness and violates the principle that a plaintiff is entitled to be made whole, not to profit from duplicative claims.

54. Opposing counsel has failed to demonstrate any specific harm caused by me, Ronda McNae, to Michael Fitzgerald, particularly regarding allegations of breach of the Confidential Settlement Agreement (CSA). Despite multiple allegations, there is no concrete evidence linking my actions to any measurable harm to Fitzgerald's employment or reputation.

55. Similarly, opposing counsel has not provided proof that actions by Will McNae—whether separately or in combination with me—caused Fitzgerald any quantifiable harm. The expert report prepared by Sherri Fiske fails to establish causation between any alleged breach and identifiable damages suffered by Fitzgerald.

56. The speculative nature of Fitzgerald's claims is further evidenced by the lack of specific evidence substantiating the dollar amounts he alleges as damages. Opposing counsel has not provided a reliable basis to justify the claimed economic losses, whether attributed to myself, Will McNae, or others.

57. Without clear evidence showing how my actions or those of Will McNae directly caused identifiable harm, the claims against us lack merit. This failure to meet the burden of proof raises serious questions about the legitimacy of Fitzgerald's claims and the validity of his pursuit of damages.

58. I respectfully request that the Court take note of the speculative and unsupported nature of these claims when determining an appropriate resolution in this case.

59. In addition to these issues, opposing counsel employed coercive and highly improper negotiation tactics that caused significant emotional distress before my formal appearance as a pro se litigant. These tactics included direct threats to involve my minor children in the terms of a Confidential Settlement Agreement (CSA).

60. For instance, in a December 23, 2023 email, opposing counsel stated, **"Confidentiality and non-disparagement remain imperative for our clients, which would include prohibiting your children from disparaging Mr. Fitzgerald."** This statement represents an attempt to impose terms on parties who are minors and do not have relevance to the litigation, further compounding the emotional and procedural unfairness of opposing counsel's conduct.

61. Such an alarming suggestion unfairly targeted my children—non-parties to this litigation and minors—creating undue fear as I prepared to proceed without formal legal representation.

62. Moreover, opposing counsel exerted indirect pressure through witnesses, such as in communications with Marisa Carew, where counsel framed making a public apology as a potential resolution to this lawsuit, while making veiled threats about the consequences of non-compliance.

63. These actions were further accompanied by invasive surveillance after discovery closed, including monitoring my social media accounts by an Instagram account linked to Grant Gussin, husband of opposing counsel (*Decl. Ex. B-1*).

64. Despite my intentional efforts to block opposing counsel's nefarious tactics from accessing my personal accounts, this activity persisted, raising serious ethical concerns about their intent and the broader strategy of intimidation.

65. Ms. Gussin created a timeline, provided to Fitzgerald's expert, Mr. DiTimasso, which contains numerous mischaracterizations and misstatements of material facts and evidence (*Decl. Ex. B-8*).

66. The timeline created by Ms. Gussin, contains factually erroneous information, including a false allegation that I reported the assaults to law enforcement before signing the settlement agreement. In truth, I reported to Miami and San Francisco police following the settlement. The systemic impediments, emotional pain, and manipulation by Plaintiff that delayed my reporting are ignored in this distortion.

67. The chronology shows opposing counsel attempting to favor her client over the facts. Opposing counsel attacks my credibility and depicts the reporting delays as opportunistic or inconsistent by withholding context, despite their congruence with trauma survivors' experiences.

68. Important context is missing in the timeline, including the psychological impact of Fitzgerald's manipulation and compulsion, and the role of treatment in addressing the assaults.

69. Opposing counsel systematically opposed my motions to supplement the record with critical evidence essential to my defense, including testimony substantiating the psychological and emotional coercion I endured.

70. These actions have been compounded by Plaintiff's omissions and misrepresentations including the failure to disclose employment records, the concealment of relevant workplace complaints, and the selective presentation of testimony.

71. Judicial intervention is necessary to address these pervasive violations, ensure the integrity of these proceedings, and prevent further harm caused by this calculated misconduct.

**ARAG'S INTERFERENCE AND ITS BROADER IMPLICATIONS**

72. The involvement of ARAG Legal Insurance in this litigation has been marked by systemic failures, ethical lapses, and procedural mismanagement that have significantly impaired my ability to defend myself.

73. Despite ARAG's contractual obligation to provide comprehensive legal coverage under a benefit plan offered through my husband's employer, Microsoft, their actions have compounded the challenges I have faced in this case.

74. These issues include abrupt termination of legal representation, assignment of conflicted and ineffective counsel, and undue pressure to settle, all of which have materially prejudiced my defense.

75. In November 2023, ARAG terminated my legal counsel without cause, resulting in my attorney's withdrawal just two months before trial (scheduled for February 2024 at that time). All correspondence, *see Declaration Exhibit C.*

76. This abrupt action left me with only six business days to secure new representation. Unable to do so, I was forced to proceed pro se during a critical phase of this litigation. Their actions forced me to navigate complex discovery issues pro se, causing substantial delays and procedural challenges.

77. ARAG's termination coincided with their attempts to pressure me into a settlement — terms that were unfair and compromised my principles.

78. This termination severely undermined my ability to prepare my defense and imposed undue procedural burdens, exacerbating an already challenging situation.

79. When ARAG reinstated coverage following my retention of separate counsel to challenge their decision, they approved an attorney, Richard Gomez, who was unable to provide effective representation.

80. Despite a clear conflict of interest due to differing legal goals between my husband and myself, ARAG disregarded this issue, resulting in representation that was wholly inadequate.

81. Mr. Gomez failed to secure critical depositions, neglected to investigate omissions by Plaintiff Michael Fitzgerald and SoftwareONE, pressured me to abandon my duress defense, and did not adequately represent my interests.

82. These failures forced me, without legal training, to navigate the results of an incomplete discovery period and prepare for trial alone, further prejudicing my ability to mount a robust defense.

83. As concerns about Mr. Gomez's representation grew, I wrote a formal letter to ARAG dated September 13, 2023, outlining my suspicions regarding his conduct and raising concerns about his inability to adequately represent my interests.

84. This letter (*Decl. Ex. D-1*) documents my attempt to address these issues directly with ARAG and my growing awareness of potential conflicts and procedural deficiencies in Mr. Gomez's representation.

85. Additionally, I have included declarations regarding a call with Mr. Gomez, which further illuminate the challenges and procedural missteps encountered during this time. These declarations are provided as *Declaration Exhibit D-2*.

86. ARAG's conduct during mediation further demonstrates their undue influence. They pressured me to settle the case and issue a public statement absolving Plaintiff Fitzgerald—a condition repeatedly emphasized during the mediation process.

87. ARAG also proposed a non-disclosure agreement (NDA) accompanied by a monetary offer, which I believe was an implicit acknowledgment of the prejudice they caused. I refused both the settlement and the NDA as they conflicted with my principles and commitment to truth.

88. Plaintiff's counsel exploited ARAG's involvement by contacting ARAG directly in December 2023. During this call, counsel sought confidential details about my policy, including coverage limits and exclusions, and later used this information to craft an amended state court complaint mirroring ARAG's policy exclusions.

89. This unethical behavior, which appears to violate professional conduct rules, directly contributed to ARAG's denial of coverage for the state case against Will McNae.

90. Consequently, I was forced to secure private representation in Washington, further delaying trial preparation and compounding the challenges I faced as a pro se litigant.

91. ARAG's broader actions, including their termination of coverage, failure to address conflicts of interest, assignment of ineffective counsel, and undue pressure to settle, have materially impacted this litigation.

92. Their procedural failures have been compounded by opposing counsel's improper use of ARAG-related information, creating a cascade of systemic barriers and procedural inequities.

93. Together, these factors have undermined the fairness and integrity of these proceedings and necessitate judicial scrutiny to address the harm caused by ARAG's conduct.

94. The consequences of ARAG's actions are far-reaching, influencing both the federal and state cases. Their decisions directly deprived me of adequate legal resources and support, exacerbating the systemic barriers I faced in seeking justice.

95. Their engagement in actions that aligned with opposing counsel's strategies further disadvantaged me, requiring this Court's intervention to restore fairness and ensure the integrity of the judicial process.

96. My first exhibit includes declarations from myself, my daughter, and my husband that provide additional context and evidence of the impact of ARAG's interference on my defense.

97. Additionally, *Declaration Exhibit C* includes all correspondence between my prior counsel, Alaina Fotiu-Wojtowicz, and ARAG, while *Declaration Exhibits D, D-1, and D-2* provide additional documentation and declarations regarding the challenges with Mr. Gomez's representation.

98. Compounding these issues above, opposing counsel exploited ARAG's involvement by contacting the insurer directly to obtain confidential details about my policy limits and exclusions.

99. Opposing counsel then used information from my ARAG Legal Insurance Policy, I produced in Discovery to then craft an amended state court complaint that mirrored ARAG's policy exclusions, effectively ensuring ARAG's denial of coverage and creating additional barriers.

100. These actions highlight the systemic inequities I have faced throughout this litigation and necessitate judicial intervention.

101. These actions necessitate judicial scrutiny to ensure that ARAG's bad-faith practices do not further prejudice my ability to defend myself in these proceedings

**SUMMARY OF LAW ENFORCEMENT FAILURES AND SYSTEMIC BARRIERS**

102. In early February 2020, grappling with the aftermath of the assault and seeking guidance on how to navigate the complexities of reporting sexual assault, I reached out to then-Deputy Chief Adrian Diaz of the Seattle Police Department (*see Decl. Ex. J-1*).

103. At that time, as the COVID-19 pandemic was beginning to unfold, accessing resources and clear procedural instructions became increasingly difficult. Recognizing the critical importance of pursuing justice despite these challenges, I sought Chief Diaz's advice, leveraging his extensive experience in law enforcement.

104. Chief Diaz would later serve as Seattle's Chief of Police from 2020 to 2024, a role in which he was known for his commitment to addressing systemic issues within law enforcement.

105. His encouragement during our discussions, including his suggestion that I write a book about the significant challenges I've faced since childhood, provided me with personal strength and guidance during this daunting period.

106. While his support gave me the courage to pursue justice, my experiences with the broader law enforcement system were starkly different, marked by dismissive attitudes, systemic barriers, and procedural failures.

107. When I initially reported the assault to the Miami-Dade Police Department (MDPD), my case was improperly classified as "Information Only," significantly delaying any meaningful investigation.

108. A victim advocate was not assigned until November 2, 2021 — more than two years after the incident—and Detective Melanie Ozaeta was not appointed as the lead investigator until November 26, 2021.

109. I retained legal counsel, Sabrina Puglisi, to act as a Marsy's Law Advocate on my behalf. Ms. Puglisi communicated with the Miami Beach Police Department (MBPD) after I became concerned that the investigation was not progressing and believed that additional advocacy was necessary to ensure my case received proper attention.

110. Ms. Puglisi (*Decl. Ex. J-2*) documented the Miami incident for Detective Ozaeta with the MBPD in a manner that has been consistent for me throughout the criminal investigation and civil proceedings. (*See Decl. Ex. J-3 for on-going communications between MBPD and Ms. Puglisi*).

111. A timeline labeled "Post Assaults" (*see Decl. Ex. J-4*) was prepared, along with a timeline provided to all law enforcement, including the FBI (*see Decl. Ex. J-6*). Additionally, a timeline labeled "Significant Events" (*see Decl. Ex. J-10*) was also shared with the same authorities.

112. Despite sharing documents, critical evidence such as phone data and Instagram records remained uncollected for months. For example, my request for a phone dump was delayed for over six months, jeopardizing time-sensitive evidence crucial to my case with the MBPD.

113. Detective Ozaeta once informed me she was drafting a search warrant based on sufficient evidence to proceed. However, after this conversation, all communication from MDPD ceased, leaving me without updates and exemplifying the procedural inefficiencies and lack of urgency I encountered. (*See Decl. Ex. J-11 which provides text correspondence between Detective Ozaeta and me*)

114. On January 10, 2022, I spoke with Officer R. Diaz, a 30-year veteran of MDPD, the evening before my scheduled in-person victim statement.

115. His comments—such as, "A woman should only be raped if a gun was held to her head" and advising my husband to "pay Fitzgerald a visit, man to man"—trivialized acquaintance rape, perpetuated harmful victim-blaming stereotypes, and demonstrated a profoundly dismissive and hostile attitude. Notes following this incident (*Decl. Ex. J-12*).

116. Despite reporting these remarks to Detective Ozaeta and Sergeant Ramos, they dismissed the comments as "locker room talk," reinforcing a culture of misogyny and disbelief.

117. On January 18, 2022, Redmond Police Detective Slade confirmed my case had been forwarded to the San Francisco Police Department (SFPD), advising me to preserve the chain of custody for my evidence.

118. However, when I contacted SFPD on January 21, 2022, I was informed that my case had not been entered into their system, causing additional delays and emotional distress. Timeline of contact with SFPD (*See Decl. Ex. J-5*)

119. On February 22, 2022, Sergeant Rodriguez of SFPD recorded my victim statement during a phone call without notifying me that it would be part of the investigation or that it was in fact my "victim statement" since the purpose of his call was to ask just a few questions.

120. This call, conducted while I was at home with my children, compromised my ability to recount the traumatic events freely.

121. Despite my requests for a face-to-face meeting to present additional evidence, SFPD refused, citing insufficient evidence to pursue the case.

122. Communications with Lieutenant Tim O'Connor further underscored SFPD's dismissive approach; he inaccurately claimed that MDPD had dropped my case, an assertion directly contradicted by my own records and statements from Det. Ozaeta.

123. From April 2 to April 7, 2022, I made repeated attempts to personally deliver evidence to SFPD, yet I was met with resistance at every turn.

124. Representatives from the San Francisco District Attorney's Office later expressed surprise that my case had not been forwarded to them, given the strength of the evidence I provided.

125. When I raised concerns about law enforcement misconduct with the Department of Police Accountability (DPA) in San Francisco, I was asked by lead investigator Natalie Chan to sign a Non-Disclosure Agreement (NDA) before proceeding. I declined, as the NDA would have restricted transparency and accountability.

126. Recognizing the need to document the egregious conduct I endured; I recorded two conversations with SFPD's Special Victims Unit (SVU) to provide definitive proof of their mishandling of my case. These recordings underscore law enforcement's failure to engage with survivors respectfully or effectively.

127. I have included a letter I wrote to President Biden (*Decl. Ex. J-7*) and a letter I wrote to the District Attorney of San Fransico in February of 2022 (*Decl. Ex. J-8*). Chesa Boudin communicated to me directly saying *"the last thing they want is for another victim to be treated the way I have. SFPD's inaction here, despite my courageous persistence, only emboldens perpetrators of sexual assault to believe they commit more crimes with impunity. Unacceptable!"* **(verbatim)**

128. I also wrote a letter to the Commissioner Steven Meiner, now mayor of Miami, regarding the city's hiring of additional prosecutors to subdue the rise in crime. (Decl. Ex. J-9)

129. From 2021 to 2022, I completed 292 calls to MDPD and 144 calls to SFPD, underscoring the extent of systemic barriers I faced.

130. Despite my extensive efforts, neither jurisdiction conducted a thorough investigation nor effectively coordinated with each other or the District Attorney's Office, resulting in a fragmented and inadequate response.

131. My attempts to report the events underlying this case were met with systemic failures and procedural dismissiveness by law enforcement across multiple jurisdictions, delaying the investigation into the October 2019 assault and leaving me without meaningful recourse for over two years. The dismissive attitude of law enforcement exacerbated the emotional toll I endured and imposed additional barriers to pursuing justice.

132. Opposing counsel has exploited these systemic failures by citing the lack of criminal charges to discredit me, unfairly shifting the focus onto me as a survivor while ignoring the institutional shortcomings that contributed to this outcome.

133. These institutional shortcomings are out of my control and have imposed significant emotional and procedural burdens, perpetuating the culture of silence and impunity that survivors like me frequently encounter.

134. In this civil case, opposing counsel has weaponized systemic failures to exploit the absence of criminal charges, unfairly diverting attention from the inadequacies of the justice system to undermine my credibility as a survivor.

135. This dual burden — proving both institutional failures and personal harm — reflects the deeply broken nature of the system that survivors must navigate.

**MICHAEL FITZGERALD'S ACTIONS**

136. In preparing my defense, I learned through unrelated correspondence that Plaintiff Fitzgerald was involved (due to his Executive Leadership Role) in a prior litigation, *Doe v. SoftwareONE*, which was initiated before the Confidential Settlement Agreement (CSA) was executed.

137. This information, which Fitzgerald failed to disclose, significantly impacts the credibility of his claims and highlights a pattern of omission and manipulation.

17

138. Had I been aware of Fitzgerald's prior conduct, including allegations made against him in the SoftwareONE litigation, it would have altered the CSA. His deliberate omission of this information deprived me of a complete understanding of who he was, including his history and pattern of prior misconduct. While the facts of the Doe v. SWO case are still ongoing, the claims and multiple declarations made concerning Fitzgerald appear credible and consistent.

139. Michael Fitzgerald's actions throughout our interactions reveal a deliberate pattern of dishonesty, manipulation, and psychological coercion, which deeply affected my trust and hindered my ability to process the trauma he inflicted.

140. Fitzgerald's repeated dishonesty and self-serving manipulation, both during our interactions and throughout this litigation, underscore his lack of credibility and the critical need for judicial scrutiny of his claims. Examples of his dishonesty were explored and uncovered during his deposition by my attorneys.

141. From the moment we met on July 31, 2019, Fitzgerald perpetuated a series of fabrications about his personal and professional life, creating an elaborate web of deception designed to gain control over those around him, including myself, my husband, Will McNae, and others in our circle.

142. His deceit included false claims about his family, professional achievements, and relationships, all of which painted a false narrative of his circumstances and intentions.

143. Among Fitzgerald's most prominent fabrications were claims of familial hardships, such as his father's alleged death from cardiac arrest and his mother's grave illness, as well as a custody battle for his son, Euan.

144. He falsely described a miscarriage suffered by his now-wife, Yelany De Varona, and a strained relationship due to her alleged materialism.

145. These fabrications were compounded by bizarre comments and behaviors, such as nostalgically referencing past relationships to my then-nine-year-old daughter, Ella, in a highly inappropriate manner.

**STRATEGIC USE OF HYPOTHETICAL SCENARIOS TO ELICIT RESPONSES**

146.  In February 2020, recognizing the pervasive dishonesty in Fitzgerald's behavior, I fabricated a
      pregnancy in a desperate attempt to uncover the truth about what happened in Miami and to reveal
      his true character.

147.  This decision was not my wisest but was made during a period when I was grappling with severe
      PTSD caused by Fitzgerald's actions and seeking the truth! The emotional and psychological
      impact of his behavior left me searching for a way to elicit clarity and truth from someone who
      had repeatedly deceived me and others.

148.  Knowing Fitzgerald's claims of heartbreak over losing custody of his son, his expressed desire for
      more children, and the alleged miscarriage involving Yelany, I believed this scenario would compel
      him to reveal more of his authentic self. I sought to observe how he would respond emotionally
      and strategically to this situation, which I hoped would provide critical insights into his motivations
      and behavior.

149.  During this time, Fitzgerald drafted an agreement (*Decl. Ex. E-1*), addressing my fabricated
      pregnancy claim. This document underscores his ability to manipulate and redirect narratives for
      his benefit. His response to the scenario revealed significant details about his character, integrity,
      and willingness to control and shape situations to suit his narrative.

150.  This approach, though unconventional, allowed me to gather written communication and evidence,
      including the statements (*Decl. Ex. E-1*) which captured Fitzgerald's reactions and offered insights
      into his deceptive tendencies. By inducing a high-stakes scenario, I was able to elicit responses
      that revealed inconsistencies and a pattern of manipulation which ultimately led to his admission
      of details of the night in Miami which had been kept from me until then.

151.  Reflecting on this choice, I acknowledge the emotional toll it took on me and the complexities it
      added to an already challenging situation. However, the scenario provided a means to test the
      consistency of Fitzgerald's statements and behaviors, further confirming his pattern of dishonesty
      and manipulation.

152.  This fabricated scenario broke the "truth default mode" by creating a situation where Fitzgerald's
      responses could no longer rely on generic or rehearsed narratives. His reactive statements provided
      valuable context and evidence of his attempts to mislead and manipulate.

153. The points Fitzgerald made (*Decl. Ex. E-1*) combined with his actions during this time, provided significant information about his true nature and behavior patterns. These insights have been critical in understanding his manipulative tendencies and their psychological impact on me.

154. Supporting evidence of Fitzgerald's fabrications, manipulative behaviors, and their psychological impact on me is provided (*Decl. Ex. E*). This evidence highlights the importance of the scenario in revealing his consistent efforts to obscure the truth and undermine accountability.

155. Fitzgerald states, "Oh, I didn't know you could have a memory when you're close to an alcohol seizure," referring to my behavior on the night of October 18. This statement has haunted me, as it underscores Fitzgerald's inconsistency during his deposition where he alternated between claiming he did not remember the events of that night and later recalling them. (*Decl. Ex. E-2*)

156. *Declaration Exhibits E-3 and E-4* contain snapshots of conversations between Fitzgerald and Will McNae, as well as between Fitzgerald and me. These exchanges include some of Fitzgerald's attempts to apologize. Notably, Fitzgerald reiterates his commitment to supporting my counseling costs. Despite this, Ms. Gussin has repeatedly misrepresented this matter, even though these conversations took place in February 2020 and are clearly documented.

157. Plaintiff and prior co-Plaintiff, Yelany De Verona, have failed to comply with their discovery obligations under Federal Rule of Civil Procedure 26 and 34 by withholding key evidence.

158. Plaintiff Fitzgerald has not provided all of his requested employment records from SoftwareONE (all entities included), which are critical to substantiating or refuting his claims for damages.

159. Without these files, there is a critical gap in determining whether his alleged harm is attributable to the claimed breach or other unrelated factors, such as his involvement in *Doe v. SoftwareONE* litigation or prior performance issues.

160. The absence of this evidence undermines the integrity of the case and prejudices my ability to prepare a defense.

**ACTIONS OF YELANY DE VARONA**

161. The actions of Yelany De Varona, Michael Fitzgerald's now-wife, have materially contributed to the systemic challenges I have faced in seeking accountability and justice.

162. Yelany knowingly provided demonstrably false statements and acted in bad faith, submitting an affidavit, (*See Decl. Ex. F-1*) during the related criminal investigation that contained deliberate misrepresentations intended to discredit me and shield Fitzgerald from scrutiny.

163. This affidavit, submitted despite evidence directly contradicting her claims, exemplifies her effort to obscure the truth and protect her husband. *See Decl. Ex. F-2* for quotes by Yelany De Verona which prove her false affidavit. (MCNAE 000540-MCNAE 000907). (*Decl. Ex. F-3 for Call Log*).

164. Yelany De Verona's False Affidavit incurred legal costs in excess of $3,000.00 (*Decl. Ex. F-4*).

165. Submitted under oath to the MBPD, these false statements constitute perjury, a criminal act that undermines the credibility and integrity of the judicial process. These actions obstructed justice by misleading investigators, delaying critical steps, and undermining the integrity of the judicial process.

166. I respectfully request the Court to examine these allegations of misconduct, assess the prejudice caused to these proceedings, and consider appropriate remedies to address the harm caused by these actions.

167. I referenced quotes from my conversation with Yelany, during which I explicitly communicated that Fitzgerald had lied about the Miami incident, as well as acknowledged the lies I told as part of my strategy, though I did not disclose the strategic reasoning to Yelany.

168. My strategy to gain the required insight into Fitzgerald's character was not something I assumed Yelany would comprehend since she was seemingly trapped in a relationship bond with him. (*See Decl. Ex. F-5*) (MCNAE 000540-MCNAE 000907)

169. These included exhibits include communications that substantiate my claims and contradict Yelany's narrative, revealing her willingness to distort facts to serve her husband's defense. (*See Decl. Ex. F-6 and F-7*).

170. These attachments were snapshots she took when she caught Fitzgerald having an affair a year prior. Fitzgerald was texting a woman named Carrie from the UK, although he labeled her Chris as his contact in his phonebook.

171. Yelany's statements not only sought to discredit me but significantly prejudiced the investigation into Fitzgerald's actions, delaying critical investigative steps and undermining the integrity of the process.

172. Beyond her affidavit, Yelany engaged in other actions designed to manipulate the narrative and obstruct my pursuit of justice. For instance, she participated in discussions and communications with Fitzgerald that highlighted a coordinated effort to discredit me and misrepresent key events.

173. In text messages between Fitzgerald and Yelany (*Decl. Ex. F-3*) her frustrations with Fitzgerald's chronic dishonesty and infidelity are evident. These beliefs were not consistently acknowledged during depositions and demonstrate the conflict when it pertains to protecting his reputation and financial interests, even at the expense of the truth.

174. Yelany de Varona also failed to produce **167 images and videos** explicitly referenced in text messages with Plaintiff Fitzgerald (*Decl. Ex. H*). Despite clear indications of these attachments in the text logs, no corresponding files were provided, and no privilege log was submitted to explain their omission.

175. While I acknowledge the existence of spousal privilege, it is important to note that the missing materials predate Plaintiffs' marriage on December 10, 2020. Therefore, these attachments are not protected by privilege and should have been produced.

176.  Plaintiffs' failure to disclose this evidence during Discovery and intentionally not provide a privilege log, only addressing it after I uncovered it, constitutes a significant discovery violation and warrants judicial scrutiny.

177. Counsel representing me during Discovery was **entirely unaware** of this omission and trusted that opposing Counsel adhered to the same ethical standards that she upheld as an Officer of the Court.

178. These materials are directly relevant to understanding the substance and context of communications between Plaintiffs, particularly as they pertain to claims and defenses central to this case during the timeframe before the Miami incident until their marriage a year later.

179. Yelany's actions reflect a broader pattern of obstruction and bad faith, contributing to the procedural and emotional barriers I faced throughout this process. By knowingly submitting false

statements and participating in efforts to obscure the truth, she has further undermined the integrity of these proceedings.

180. In submitting these exhibits, I request the Court to carefully consider Yelany's actions as part of a broader pattern of misconduct aimed at protecting Fitzgerald and undermining my credibility.

181. Her affidavit, which contains materially false statements coupled with her documented participation in deceptive actions, warrants judicial scrutiny. This is necessary to ensure that her conduct does not further prejudice these proceedings or obstruct the pursuit of justice.

182. Simultaneous text communication exchanges are critical in demonstrating the coordination and alignment between Fitzgerald and De Varona today vs. the timeframe in question that Yelany now denies. Text communications between myself and Yelany De Varona (Decl. Ex. G-1), as well as a separate concurrent conversation between myself and Michael Fitzgerald (Decl. Ex. G-2).

183. By reviewing these communications side by side, Your Honor can clearly see the overlap in timing and content, further highlighting the concerted effort **today** between the two to manipulate the narrative and shield Fitzgerald from accountability.

184. *Declaration Exhibit H* contains snapshots of text messages sent directly to me by Yelany De Varona, in which Michael Fitzgerald discusses his actions and acknowledges his misconduct.

185. In these messages, Fitzgerald admits to making a mistake, stating that "we were both drunk," and referencing his "stupidity" and "I made a mistake" during the incident.

186. He further admits that "[He] wasn't in a good place," had "been partying," and lacked control over himself at the time, including his statement "I was on a rampage".

187. Fitzgerald also expresses stress related to his IPO and work pressures, mentioning his need to call Dieter, the CEO of SoftwareONE at the time.

188. These admissions are significant, as they demonstrate Fitzgerald's own acknowledgment of his reckless behavior and the broader context of his actions during this period. This exhibit further underscores the gravity of the events and the attempts by Fitzgerald to justify or rationalize his actions under the guise of personal and professional stress.

189. Despite the systemic barriers, dismissive attitudes, and procedural failures I have faced, I remain unwavering in my commitment to holding Plaintiff Fitzgerald accountable—not only for myself but for the countless others who face similar injustices. This case is not merely about addressing the harm done to me; it is about fostering accountability and creating a precedent that discourages systemic failures and misconduct.

190. My efforts, observed closely by my daughter, are a testament to my belief in the power of truth and the importance of seeking justice, regardless of the challenges.

191. The Federal Rules of Civil Procedure empower courts to address discovery misconduct and impose sanctions to preserve the integrity of judicial proceedings.

192. Plaintiff Fitzgerald's deliberate misrepresentations, failure to disclose critical evidence, and reliance on procedural inequities constitute fraud upon the Court and demand a decisive response.

193. The same principles apply to SoftwareONE's discovery violations and ARAG's detrimental actions, which have irreparably prejudiced my ability to present a fair defense.

194. Additionally, Yelany De Varona's submission of a false affidavit, which included demonstrably false statements contradicting evidence such as text messages and call logs, and the withheld 167 images without explanation nor privilege log, are clear examples of omissions that deprived me of key evidence necessary to demonstrate the coordination between Yelany and Fitzgerald to manipulate the narrative and shield Fitzgerald from accountability.

**SOFTWAREONE *(ALL ENTITIES)**

195. Although SWO (**in all its entities**) supported Fitzgerald's claim of separate entities to avoid involvement, *Declaration Exhibit I-1* includes a printout I produced during discovery, showing a screen grab of SWO's Executive Board and a list of its Executive Leadership Team.

196. In preparing my defense, I uncovered evidence suggesting that key members of SoftwareONE's executive leadership team—including Dieter Schlosser, Ashley Garre, Frank Rossini, John Mayes, and Michael Fitzgerald—were aware of the complaint my husband and I filed with SoftwareONE's HR department regarding Fitzgerald's sexual misconduct.

197. Specifically, Ashley Garre was the North America Leader of SWO who had a phone conversation with Will McNae and stated since Fitzgerald wasn't a member of the North American Business, she did not want to be involved or get involved in an HR issue.

198. However Ashley Garre provided research to the Global HR Leader John Mayes, involving herself in the matter. (*See Decl. Ex. I-2*).

199. Additionally, I discovered that Fitzgerald was copied on other HR-related matters in which he was not directly involved. This finding supports my suspicion that there was collusion among the parties, working together in concert to suppress or manipulate information. (*Decl. Ex. I-3*).

200. *Declaration Exhibit I-4* contains a text conversation between Will McNae and Jared Cheney from SWO. Jared was the first individual made aware of Fitzgerald's misconduct. I later learned that Jared was up for a promotion at SWO during that time, which may explain why he became unresponsive on this matter, despite previously being a caring and supportive friend to my husband for many months.

201. Our family shared similar moral values and faith with Jared, which led me to believe we would have his continued support. However, his silence in this situation proved otherwise.

202. I included Declarations from the *DOE v. SoftwareONE* case in *Declaration Exhibits I-5 through I-9*. None of these documents were produced during discovery by Respondent SoftwareONE, nor were they listed on a privilege log. This omission constitutes a clear violation of discovery obligations by SoftwareONE.

203. *Declaration Exhibit I-5* includes the Declaration of Will Elliott, who stated, "Patrick Winter hired Mike Fitzgerald, and he was a real piece of work." Elliott further detailed Fitzgerald's behavior, noting, "He was completely out of control and got excessively drunk at one of Patrick Winter's events, which resulted in a fight and a trip to the emergency room. Despite this, no consequences followed, even though the incident occurred at a SoftwareONE-sponsored event. Rules did not seem to apply to Fitzgerald, as he was protected as part of the 'Boy's Club.'"

204. Elliott also noted, "He never helped us, but he was never held accountable. We all complained about him, but nothing ever improved because he was part of the Boy's Club. The Boy's Club was tight—the higher up you were, the more leeway you had to get away with inappropriate behavior."

205. *Declaration Exhibit I-6* includes the Declaration of John De Los Reyes, whom I first met on July 31, 2019. De Los Reyes recounts observing Patrick Winter, Oliver Berchtold, Neil Lomax, John Mayes, and Mike Fitzgerald in their underwear around the pool the morning after a night of partying. He further states, "Mike Fitzgerald and Sean Nicholson, these guys were the boy's club that ran SoftwareONE".

206. Additionally, De Los Reyes corroborates Doe's claim that Fitzgerald excluded her from an important meeting in Seattle, which led to an HR complaint by Carol Eastman. However, this complaint was not produced during discovery in this Federal Case. The remainder of the declaration highlights significant issues of gender discrimination within the organization.

207. *Declaration Exhibit I-7 and I-8*, a Declaration of Bob Franklin and James Brannon both reference the "Boy's Club". Mike Fitzgerald is established as being a member of the Boys Club and there was much gallivanting around where things would quickly get out of hand.

208. Lastly, I included Jane Doe's Declaration, now known as Carol Eastman, as *Declaration Exhibit I-9*. Ms. Eastman stated Mike Fitzgerald intentionally excluded her and she demanded that a complaint be put in her HR file about the leaders that included Fitzgerald.

209. This complaint detailed misconduct that occurred on October 18-19, 2019, just days before SoftwareONE's Initial Public Offering (IPO). The timing of these events is critical, as it underscores the leadership's incentive to suppress this information to protect the company's public image and financial valuation during the IPO process.

210. The leadership's awareness of this misconduct, combined with their personal and financial stakes in the success of the IPO, created a heightened incentive to suppress the allegations and avoid any disclosure that might negatively impact investor confidence.

211. This suppression raises significant concerns about SoftwareONE's corporate governance practices. It appears the leadership team prioritized their financial and reputational interests over their obligation to ensure ethical practices and transparency, which are essential to maintaining shareholder trust.

212. The concealment of these allegations also raises potential regulatory concerns. Under U.S. securities laws, companies are required to disclose material information that could influence

26

investor decisions. Allegations of sexual misconduct involving a senior executive, particularly in the days leading up to an IPO, are material and should have been disclosed.

213. SoftwareONE's IPO prospectus and related public filings made no mention of these allegations, despite their relevance to the company's reputation and risk factors. This omission raises questions about whether SoftwareONE violated its obligation to disclose all material information to potential investors, as required by the Securities Act of 1933.

214. Additionally, the actions of SoftwareONE's leadership to suppress the allegations may have violated corporate governance standards. Investors rely on the integrity of a company's governance to ensure that it operates transparently and ethically, particularly during critical financial events such as an IPO.

215. I respectfully request that the Court consider these facts as part of its evaluation of this case. The suppression of my complaint not only prejudiced my ability to seek accountability but also reflects a broader pattern of misconduct and ethical lapses by SoftwareONE and its leadership.

216. The systemic failure to address these allegations and disclose them to investors calls into question the legitimacy of SoftwareONE's public disclosures and the motivations of its leadership in prioritizing financial gain over ethical accountability.

217. Their awareness of the misconduct, combined with their personal and financial stake in the post-IPO success of the company, created a clear conflict of interest and a strong motive to protect Fitzgerald and minimize the impact of the allegations on the company's public image and valuation.

**EXPANDED CONCERNS ABOUT SEC IMPLICATIONS**

218. The deliberate suppression of material allegations and the leadership's conflict of interest may warrant scrutiny by regulatory authorities, including the U.S. Securities and Exchange Commission (SEC).

219. If members of SoftwareONE's leadership team withheld or failed to disclose material information about allegations against Fitzgerald to protect the company's valuation during the IPO, they may have misled investors in violation of SEC regulations.

220. Furthermore, if any of these individuals engaged in transactions involving their own shares or stock options during this period, their actions could raise concerns about insider trading or the improper use of non-public information for personal financial gain.

221. Such actions constitute deliberate misconduct that undermines the integrity of these proceedings and prejudices my ability to defend myself.

222. I have included my recent counseling notes as additional support for this declaration. These notes provide a detailed account of my behaviors, emotions, and the profound emotional toll I have experienced throughout this litigation. They also document the ripple effect on my family and the challenges caused by the actions of Plaintiff, his counsel, ARAG, and prior ineffective counsel. (*See Decl. Ex. K*)

223. These counseling notes are crucial for understanding the psychological impact of the systemic failures, procedural misconduct, and unethical tactics I have endured during this case since the close of Discovery.

224. In submitting this declaration, I seek to illuminate the systemic barriers, procedural inequities, and misconduct that have tainted these proceedings.

225. I respectfully request the Court to grant my Motion to Dismiss Plaintiff's claims, impose appropriate sanctions for discovery misconduct and fraud upon the court, and take all necessary measures to restore fairness and uphold the integrity of the judicial process.

226. Granting this motion is not only essential to addressing the harm I have suffered but also to sending a message that such systemic and procedural failures will not be tolerated in the pursuit of justice.

227. My definition of justice is not rooted in retaliation or vindication but in the hope of fostering accountability and systemic change.

228. I was not the one who committed a crime, yet I feel as though I have been imprisoned since signing the Confidential Settlement Agreement (CSA). The CSA has been like a slow carbon monoxide leak, gradually suffocating me and eroding my sense of self from the inside out.

229. I have fought tirelessly to ensure that the challenges I faced serve as a catalyst for reform, ensuring that others do not endure the same barriers and inequities.

230. I remain steadfast in my resolve, knowing that seeking justice is a journey worth pursuing, regardless of its difficulty.

Executed on January 11, 2024, in Kirkland, WA.

Name: /s/Ronda McNae

Signature:

29

# Declaration

# Exhibit A

# Declaration

# Exhibit A-1

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

        Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

        Defendants.

_____/

## DECLARATION OF ELLA MCNAE IN SUPPORT OF DEFENDANT RONDA MCNAE

I, **Ella McNae**, declare as follows:

1. My name is Ella McNae, and I am 14 years old. I am the daughter of Ronda and Will McNae. I make this declaration based on my own observations and experiences.

2. I want to share how the Miami trip in 2019 and the events that followed affected my mom, me, and my family.

3. I remember my dad calling my mom and asking her to go to a party with Michael Fitzgerald (MF) because MF's girlfriend couldn't make it. My dad couldn't be there in time, so he asked my mom to go so MF wouldn't be alone at his party.

4. While my mom was getting ready, there was another man in our hotel suite who worked with MF, as well as a babysitter. I remember playing card games with the man while my

mom got ready. We had these tiny little boxes of different card games, and I remember beating him a couple of times.

5.   The next morning at breakfast, my mom sat beside me, and MF sat across from us. My mom was really quiet, and MF was the one doing the talking. I remember asking to use my mom's phone to play with Snapchat filters. Every time I took a funny photo or video, I'd try to show it to her, but she wasn't laughing or responding like usual. I later realized the video I took with the sloth filter and a Halloween filter showed bruises and a bite mark of MF's arms from the incident with my mom, I believe my mom was trying to get away.

6.   After we got back from Miami, my mom changed a lot. She stopped going out and didn't want to see people. She would pick my brother and me up early from school so she wouldn't have to talk to other parents. She didn't have the energy to go to our soccer games or talk to her friends.

7.   After a while, my mom started to look really thin because she wasn't eating much. She would gag so often that anything she tried to eat would make her throw up. I noticed that the more she put the pieces together about what had happened, the sicker she got. Some days, the only thing she could eat was squeeze pouch food.

8.   She looked sad all the time. She slept a lot and went to doctors and therapists almost every day. Even with naps, she still seemed really tired.

9.   My mom didn't want to go out or dress up. She avoided places where she might run into people she knew, like school or community events, because she didn't want to have to answer questions like, "How have you been?" She told me she couldn't say, "I've been

good," without lying. She stopped walking my brother and me to school and eventually stopped picking us up altogether. When she did pick us up, it was usually early so she wouldn't have to see or talk to anyone.

10. Before the trip to Florida, my mom had so much energy. She was always bouncing around and joyful. I used to call it her "sunshine side" because she could light up the whole room with her happiness. She'd clean, cook, and plan fun activities for us with so much excitement.

11. My mom was always busy, happy, and full of life. She loved taking care of me and my brother and making sure we had fun together as a family. She was the kind of mom who would dress up with us for Halloween or plan surprise adventures. I remember how much I looked up to her because she always seemed so strong and full of joy.

12. Seeing my mom like this made me feel really sad. I could tell she didn't understand why her body was reacting the way it was—why she didn't want to do anything anymore. It felt like she was trying to figure out what happened to her. I remember her listening to books and podcasts to learn about her body, how to read people, and how to be more aware of her surroundings.

13. These events have changed my family's life in so many ways. I feel like I was robbed of part of my childhood. After MF claimed my mom breached the contract, my parents had to hire lawyers and then replace them. The stress was really hard on all of us, especially my mom, my dad, and my little brother.

14. For me and my brother, it was emotionally exhausting. My parents were always on their computers or making phone calls, trying to figure out what to do next. It felt like there

3

wasn't enough time for us as a family, even though they tried their best to spend time with us.

15. I understand that MF didn't want my mom to talk to anyone or the police about what happened. I think he hoped she wouldn't figure out what happened or would forget about it entirely.

16. It makes me wonder why he was so afraid of her talking. What would have happened if she hadn't signed the contract? What was he trying to hide?

17. Watching my mom try to piece everything together while being silenced was really unfair. It felt like the contract was made to stop her from speaking the truth, and it caused even more stress for our family.

19. This experience has taught me that speaking up is much harder than it seems in stories or movies. There are people who know the truth but will hide it because it's easier for them. Watching my mom refuse to brush things under the rug, even when it was hard for her to keep going, has shown me what it means to stand up for what's right.

20. I've also learned not to trust people easily. Sometimes even the people who seem trustworthy can hurt you most. My mom has shown me how to watch people carefully and only trust those who prove they deserve it through their actions.

21. I hope people and organizations are held accountable for what they've done. It's frustrating to see how things were handled by places like Microsoft, SoftwareOne, my school Cedar Park, and the Miami police.

22. I also hope there are changes in how incidents like this are reported. Detectives need to understand that trauma affects how people's brains work. They should know that victims might still be in fight-or-flight mode when questioned.

23. I want the court to know how much this has affected my mom and our family emotionally, mentally, and physically. I also want people to see how strong my mom is. She has taught herself to fight for what's right, not just for herself but for others too.

24. I believe my mom will help people around the world who are going through similar experiences. Watching her has taught me how to stand up for what's right, even when it's hard.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 6, 2024 in Kirkland, WA.

**Signature**: _____

**Name**: Ella McNae

# EXHIBIT A

every day it is hard
to be happy when you are sad
and I have three bugbites and
you guys are helping a lot
with tu tutu cold we
maby go on a ride

I am so sory everything
is not going right. Its
ben so hard since Jun G AKA
when tutu's Stoped.
heart

**Ella McNae: 9 years old**

1. God made me here and become a Christian and gowing to the school.

2. I mayb want to go to the warter park and play some gams.

3. She was a happy mom befor on are flight. After the flight we were there at the Hotel. Wone we were driving back to the airport, she was crying a light after the flight. She was more shy she wode cry in her room three times a week.

**Ella McNae: 10 years old**



**Ella McNae: 11 years old**

We need to change this world. Do you want your kids to have to grow up in a world where they have to worry about what they wear, how they walk and talked? Well I don't. On Nov ___, 2022 at a walker haus concert, My Dad, brother, my friend presley, her momand Dad, and her brother went to when walker hays concert was sining. I met a very kind women named ___, she talked about how she worked at a mans sucirity prison. She said she wears a full face of makeup, but No lipstick, she said the men were all ways watching you, They saw how you walked, talked, and even how you shifted your body wheight. She said "You have to walk with confidence".

Do you whant to have your kids grow up in a world of pain, suffering, and tears? Do you whant your kids to have to be cactious of what th wear, how they walk, and even how they talk? Well in my opinion I don't, I want my kids to grow up in a world where their is no pain, suffering, and tears. But thats not going to happen if we just sit to the side and just assume that people are just going to give out fruit baskets and bad people will just stop doing bad things. We need to do something, and this is not the type

speach that goes like this, bla bla, boring stuff, and more boring billlaaaa bla bla, bla bla, No th is a speech that realy means someth, because my mom was rapped by so who was a complete stranger to me, that day my mom has never seen an and our life changed a lot since ther So I hope it their are people out ther who are willing to put their foot do for the right thing, please do IT.

Ella :)

**Ella McNae: 12 years old**

1. What are you thankful for?
I am thankful for all of my friend for supporting
us, our house, our dog's, clothes, water, food, kumbutia,
shaved ice, the sun, stars, moon, electricity, and God

2. what would you like to do while we are
in miami?
I would love to go to an aquarium or the everglades.

3. " uh Hi umm.
"Yes, I know something happend. I could
tell because she looked off, she wasn't normal.
I new my mom and she was not her, she was different.

awhile ago my mom told me about the affair
she had a long time ago, and all i remember is
one question I asked her and i said " what happed to
you was not an affair because after she had the affair
she was not gaging but when we got home she would

**Ella McNae: 12 years old**

11

If I had a magic wand and I could change anything in my life I wouldn't change much. I would want to make it easier for mom to talk about her past without gaging/hurting and that she would be able to reach people all around the world and help them learn about things like womens rights, concent, "tea" and how to help others if they needed it. I remember thinking about how my life would of been different if my mom had a "normal life" and why she couldn't go back to normal or why she would gag all of the time, but I am so very happy that she went through everything she did because she has become so strong and brave because. I am sad she went through it because of all the stress that was put on her sholders. The best reason I have for not wanting to change my life is because most kids my age don't have parents to talk to about this stuff or their parents don't want them to know about it to "protect them" —>

Yes they will be able to protect them for a couple years but once their kids start leaning stuff it will be to late, because I feel comfortable to talk to my mom I was able to help my friend because something happened to them.

12

I feel robbed of most of my childhood because of the stress I have gone through and the toll it has taken on my family and I.

life would be amazing, but you would never know if you are being to mean cause it want hurt anyone. ✕ The reason pain is a thing is to warn you, whether it is telling you to take your hand of of a burning stove or to tell you that you should stay away from certan peoples we need pain whether we like it or not

I know something happened to my mom in florida because 1. she was acting odd/not normal, 2 she gaged a lot, 3 she told me, I knew she wald of never joked about it ever, it is really hard to write it making sure not to forget anything and my head hurts.

accountable for telling me that I could trust them and the started asking my peers about my familys situation.

In one of my previous journal entries I have said " Since that day, my mother has never been the same..." I wrote that because it was very hard for me to understand her sudden change in behavior, even before the incident I knew that she would gag when something smelled bad but then I would wake up and see her gaging throughout the day, she lost all of her energy, she ohly ate baby food, and she had frequent mood swings. I would like to have you know who be help accountable for all of the strugles he has caused my family especialy because this has taken up a lot of our lives mostly liam's since he was 7yr. and I was 9 yr. old. I also want to hold Cedar Park School accountable for all of the false info they speeded. When we first came to CPL I was super exited cause I would learn more about my religion, I learned many things but I couldn't trust that it was true. In History they left out anything including slavery. I also want the teachers to be held ————————>

                                        not enough room!!

14



Dear MoM,

HAPPY MOTHERS DAY

I am so blesed to have such a strong mother who cares for us. I know these past few years have been really stressful, butttt😩 I have been able to watch you fight. Not only for us but for your voice. I am so thankful that you made the decison to tell me your thoughts, Opinions, and trama, because of this I am able to understand the things you have gone though. You may not be the mother that I had when I was young but I love this version of you better. You are so much Stronger and really good at finding narassistic behavior in people which I think is sour cool😎 OK I will go on the back to FINISH ! ! !  ➡

The thing that I love most about you is that No Matter What IS thrown at you, you get back up. I am very thankful for you also because you are able to help others who don't know what to do. (My hand hurts) from writing chehcheh

To sum it UPPPP

I LOVE you

So much

— I messed up so I covered it

chehehcheh

from: ur fav

Ell. ♥



Dear mom,                                    12-21-23
Befor I tell you this I went you
to know that I love you so much
and that even though many people may
think that you are things that you
are not I think that you are very
strong, beautiful, loving, funny ... and a
bunch of other thing but I am
very lazy. I know that your life growing
up was like living in hell, or something
like that, and I bet that No one has

I swear No matter how many times
I put myself out there. I always come
friends with people who hurt me, talk shit
about me behind my back, and even hate me,
like Uggg how f****** messed up can
some people be? Like howww. I hope that
one day you will be able to write a book
and that the book blows up $
btw I LOVE YOU. (i'm good.
                  sorry tho)

ever had to go throug everything that you have
from growing up to this case, you know what
bugs me the most other then when people
say that they want to kill themselves or
that they hate themselves for attention
but when you finally find someone you can
trust and who you think will be loyal,
and you tell them a lot about things
no one knows and the starts to gossip,
ignors you, and stops talking to you entirely.

Love your
fav daughter

Student Name: Ella M    9/3/2024    Class Period: 6

**Directions:** In the space below answer the following writing prompt in complete sentences.
*Who is a significant adult that has made a positive impact on your life and explain the impacts on your life.*

One of the most significant adults that has made a positive impact on my life is my mother. From a young age she has always been their for me encouaging me on my journy to where I am now. In my eyes I see her as some type of super solider, no matter what gets thrown at her. She always gets back up, ever since she was born, if not I wouldn't be here right now. No matter how many times people try to silence her, she will always fight it. It hurts knowing nothing will make up for the past 5-6 years of having to defend herself and family, but I know every thing happens for a reason and hopefuly she will be able to help educate others so they won't be going through stuff alone.

Great tribute to
your mom Ella.
I know she is very
proud of you.

# Declaration

# Exhibit A-2

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

        Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

        Defendants.

_____/

**DECLARATION OF WILLIAM MCNAE IN SUPPORT OF DEFENDANT RONDA
MCNAE'S AFFIRMATIVE DEFENSE OF DURESS**

I, **William McNae**, declare as follows:

1. My name is William McNae. I am over 18 years of age and competent to testify to the matters stated herein. I make this declaration based on personal knowledge and observation.

2. I submit this declaration primarily to support the request to supplement the record with Dr. James Hopper's Expert Report and Deposition Testimony, which provide critical insight into the psychological effects of trauma on Ronda and her impaired ability to provide voluntary consent to the Confidential Settlement Agreement (CSA) signed in

June 2020. Additionally, this declaration supports Ronda's affirmative defense of duress in connection with the CSA.

3. From October 2019 to June 2020, I witnessed firsthand the manipulation, effects of severe-stress trauma, and coercion exerted on Ronda by Michael Fitzgerald. I also observed the impact of Fitzgerald's fabricated stories and lies, the Miami incident, and the restrictive provisions of the CSA, which collectively impaired Ronda's ability to provide voluntary consent to the agreement.

4. Dr. Hopper's expert report provided critical insight into Ronda's behavior. His analysis provided a framework to understand how Ronda's prior childhood and sexual abuse compounded the trauma she experienced in Miami. His framework noted that survivors often revert to childlike behaviors during trauma, which helped me understand why Ronda acted like an irrational 11-year-old. Dr. Hopper also explained why the victim's memories were fragmented and gradually resurfaced over time, which was similar to how Ronda's defense mechanisms delayed her ability to fully process what had happened.

5. I first met Michael Fitzgerald in my professional role as a Microsoft employee. Fitzgerald, as a senior executive at SoftwareONE, held significant influence over SoftwareONE's business partnership with Microsoft. This professional relationship evolved into a personal one as he worked his way into my family's life, building what appeared to be a close friendship with me, my wife Ronda, and my two children.

6. Fitzgerald presented himself as a vulnerable, troubled individual, sharing emotionally charged and fabricated stories. He claimed his father had recently passed away, his ex-wife had left him with a child, and he was embroiled in a painful custody battle. These

stories fostered a false sense of trust and emotional connection, prompting both Ronda and me to feel obligated to support him.

7. Over time, Fitzgerald's lies unraveled. Through Ronda's questioning and conversations with his former girlfriend, Yelany de Varona, we discovered:

- His father was alive, and he had never been married.

- He did not have a son or any custody battles.

- His mother was not ill, contrary to his earlier claims.

- Yelany never moved out of their shared apartment and had started dating him again in November 2019, including attending couples counseling, all while he was pursuing Ronda romantically.

8. Fitzgerald had ingratiated himself into our family, even becoming close with our children, who affectionately referred to him as "Uncle Fitz." He stayed at our home during a September 2019 trip to Microsoft, and our children helped care for his dog, Simon. Fitzgerald later invited our children to join us on the Miami trip, further embedding himself in our family dynamic and making his betrayal all the more devastating.

9. After the Miami incident, I observed significant and troubling changes in Ronda's behavior:

- **Withdrawal**: She avoided social interactions, retreated from activities, and left our children's school events early to avoid other parents.

3

- **Gagging**: Ronda experienced frequent gagging episodes whenever she thought about or discussed the Miami incident. These episodes often escalated to near-vomiting and have continued to persist.

- **Separation**: By November 2019, Ronda's trauma had made it emotionally difficult for us to share the same bed, and I began sleeping in a separate room downstairs.

10. One particularly alarming moment occurred when Ronda left the house late at night for a walk in the dark, something entirely out of character for her. This, coupled with her withdrawal from physical and emotional intimacy, left me feeling helpless in offering her support. I did not know how to help, it was extremely disheartening to see my beloved spouse crumbling under what seemed like invisible pressure.

11. A turning point came in December 2019, when Ronda attended an intensive workshop on trauma and sexual abuse in Nashville, Tennessee. This helped her begin processing the events and provided her with tools to manage her distress.

12. In June 2020, Ronda and I signed the CSA, which included restrictive silencing provisions under Section 16. These provisions barred her from voluntarily reporting Fitzgerald's misconduct to law enforcement, allowing disclosure only under subpoena.

13. Our first attempt to sign the CSA failed when Ronda became completely dysregulated at the notary's desk. She abruptly stopped the process, appearing visibly distressed and unable to proceed. This act of attempting to sign the agreement emotionally shattered her and ruined her entire day.

14. The CSA's provisions caused immense fear. A Miami Beach Police officer, upon reading Section 16, stated, "*You better get an attorney,*" reinforcing the perception that we could not report the incident without risking legal consequences.

15. Fitzgerald further manipulated Ronda and me financially by withholding his promised payments for therapy unless the CSA was signed. He demanded access to her therapist to control payments, a blatant HIPAA violation that was rightfully refused.

16. These actions—manipulation, financial control, and threats—exacerbated Ronda's trauma, creating an environment in which she was unable to freely and voluntarily consent to the CSA.

17. On February 25, 2020, Fitzgerald was on the Microsoft campus for executive meetings which I was supporting as the Microsoft liaison. Fitzgerald asked to speak privately as our interactions passing each other in the hallways was tense and awkward. He apologized for the pain he had created within my marriage and shared that he was making positive changes in his life including giving up drinking alcohol completely because he "*didn't trust himself because he feared he might destroy someone if they upset him*". (*Bold formatting added*) Knowing Fitzgerald was a boxer and currently still trained at a gym I perceived this as a threat.

18. Fitzgerald continued to say that he wanted to put everything behind us and move on with our lives. I told him that I supported Ronda going to the authorities as I believed her in her understanding that Fitzgerald took advantage of her in Miami, San Francisco, and as a result of our personal/work relationship. This was filed with the Redmond Police on October 20, 2021.

19. As of March 2020, schools in Washington state were closed due to the Covid-19 pandemic and home schooling was a requirement we needed to oversee and manage for our 1st and 3rd grader. This was extremely challenging and ended most days in frustration. These additional pressures, combined with Fitzgerald's manipulative actions, heightened Ronda's stress and emotional vulnerability leading up to the CSA signing

20. As of May 2020, I invited my mother to live with us to support her declining mental condition and health as well as oversee her safety due to Covid-19 restrictions for the elderly. Her care needs were around the clock and ultimately were more than we could handle effectively given the severe stress we were dealing with concerning Fitzgerald. We found a home that could accept new residents and moved her into an assisted living home by June 2020.

21. Based on my personal observations and experiences, Ronda displayed significant signs of distress during the period leading up to the signing of the CSA in June 2020. Fitzgerald's manipulative actions, coupled with the trauma from the Miami incident, created immense emotional and psychological pressure. Ronda frequently expressed feeling overwhelmed and stated that she felt she had no choice but to sign the CSA due to the circumstances. Despite attending counseling sessions multiple times a week, she continued to struggle with feelings of hopelessness and fear. As her spouse, I observed her inability to focus, severe anxiety, and physical manifestations of stress, such as insomnia and difficulty eating. These factors, combined with my own observations of Fitzgerald's behavior, have led me to conclude that she signed the CSA under conditions of duress and was unable to provide voluntary consent.

22. Although my employment with Microsoft ended in July 2023 due to a reduction in force, I cannot help but question whether my involvement in Ronda's allegations, the ongoing investigation into SoftwareONE's CIO, and the negative attention from this litigation influenced the decision. Microsoft's Global Employee Relations team confirmed that SoftwareONE had communicated directly with them about the allegations, keeping the situation under scrutiny.

23. These actions, along with Fitzgerald's continued efforts to harm my credibility and reputation through this breach of contract litigation, have profoundly impacted both my personal and professional life. It is deeply concerning that Plaintiff and his counsel have exploited the "umbrella of litigation privilege" as a shield while disseminating information and making statements that have caused significant damage to my standing within my community and relationships, even in matters unrelated to this litigation.

24. The primary purpose of this declaration is to support the inclusion of Dr. James Hopper's Expert Report and Deposition Testimony as part of the record. Dr. Hopper's testimony provides crucial scientific validation of the psychological and emotional conditions Ronda experienced, which my personal observations corroborate. Based on my firsthand observations and experiences, I respectfully urge the Court to consider his expert analysis alongside the evidence presented in this declaration.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 6, 2024 in Kirkland, WA.

7

**Signature**: _____

**Name**: Will McNae

# Declaration

# Exhibit A-3

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

        Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

        Defendants.

_____/

**<u>DECLARATION FROM RONDA MCNAE</u>**

I, Ronda McNae, declare as follows:

1.  I am the Defendant in this case, and I submit this declaration to provide factual context and support for my claims regarding the trauma I endured, the coercive pressures I faced, and the profound impact these events have had on my family and me.

2.  I have personal knowledge of the facts stated herein and can competently testify to them if called as a witness.

3.  On or around July 31, 2019, my husband, William (Will) McNae, informed me that Michael Fitzgerald, an executive at SoftwareONE, had suggested I attend an upcoming work-related event to meet him and other team members. This event, the North America Technical Services Mid-Year Event in Bellevue, WA, was organized in partnership between Microsoft and SoftwareONE.

4. At the event, Fitzgerald shared personal details about his life, including the recent loss of his father and ongoing custody litigation involving his son. Initially, I found Fitzgerald engaging, and he expressed gratitude for my husband's contributions at Microsoft. Fitzgerald remained in town after the event to meet his girlfriend, Patrice Sanchez, with whom I quickly became acquainted.

5. August 2019 – Fitzgerald wrote a glowing email to Wil's manager at Microsoft that resulted in my husband's promotion the following month.

6. While my initial impressions of Fitzgerald were positive, certain interactions began to raise concerns. For example: Fitzgerald confided that he had not disclosed his father's death or his custody issues to Patrice, despite their serious relationship.

7. Fitzgerald shared with me and my husband that a female employee had filed a complaint against him, referring to him as a "misogynistic pig." This was learned by Fitzgerald during a call with SoftwareONE's HR department.  At the time, both my husband and I defended Fitzgerald, as his outward demeanor seemed kind and respectful and it didn't match our observations.

8. In early October, Fitzgerald donated $1,000.00 to my daughter's fundraising campaign aimed at raising awareness to end sex trafficking and violence against women and children. This gesture reinforced our positive perception of Fitzgerald at the time, as it seemed to reflect an understanding of the need to support those in vulnerable situations and a willingness to contribute to a meaningful cause.

9. Our family of four was invited to travel from Seattle to Miami to spend the weekend with Fitzgerald and his girlfriend, Patrice Sanchez, to celebrate his work accomplishments regarding the company's IPO.  The weekend celebration included a dinner that the McNae's were originally not planning to attend, a boat day, alligator swap tour, and pool

activities on the weekend of October 18-21, 2019. The plans also included a music concert that Fitzgerald and Patrice were to attend without the McNae's.

10. On October 18, at my husband's request, I attended a celebration dinner at Baoli in Miami that Fitzgerald had organized. We had learned that Fitzgerald's girlfriend, Patrice Sanchez, had unexpectedly canceled her trip and would not be attending the dinner. My husband, Will, who was still traveling and would not arrive in Miami in time for the event, was concerned that Fitzgerald would be emotionally upset and disappointed by this sudden cancellation. He asked if I would go to the dinner in his place to provide emotional support to Fitzgerald during what was meant to be a celebratory occasion. At the dinner, Fitzgerald had invited several friends, including some who were then his colleagues at SoftwareONE.

11. After dinner, Michael Fitzgerald physically assaulted me outside Baoli Restaurant, aggressively pulling my hair and forcibly kissing me without my consent.

12. Terrified, I fled the scene and hid from Fitzgerald for over an hour. During this time, he repeatedly called my phone, but I declined his calls. When he eventually located me, he insisted on escorting me back to the hotel, claiming it was for my safety and so I could relieve the babysitter who was with my 9 year old daughter.

13. Upon returning to the W Hotel, Fitzgerald physically and sexually assaulted me multiple times in the suite while my young daughter, Ella, was sleeping in the adjacent room.

14. In the aftermath of the assault, I struggled to process what had occurred. Fitzgerald immediately began dictating a narrative, emphasizing that nothing about "us" could be revealed. He justified this by citing risks to his career, the upcoming IPO, and my husband's position at Microsoft.

15. At Fitzgerald's insistence, I purchased and took a morning-after pill, even though I could barely recall the details of the evening. Troublingly, I was already on birth control, and my

husband had undergone a vasectomy. However, in my distressed state, I was unable to process these facts. Instead, I complied with Fitzgerald's instructions, feeling he held complete power and control over me.

16. Following the incident, my mental and emotional state rapidly deteriorated. I began experiencing physical symptoms such as gagging, crying daily, and withdrawing from social interactions. Despite my clear distress, Fitzgerald continued his manipulative behavior, sending texts designed to pressure me into maintaining my silence.

17. November 14, 2019 – I wanted to end my life. Fitzgerald communicated to me that everyone would lose everything, and it would all be my fault if I said anything. I believed him. Fitzgerald communicated to me "*If anything happens, my company will circle around me and push him [W. McNae] out!*"

18. December 16 to 21, 2019, I attended a Healing/Trauma Intensive program in Nashville, TN, during the holiday season. This program was a crucial step in addressing my fragile emotional and mental state, as I had been pushed to the brink of believing that ending my life was the only escape from a situation imposed upon me without my conscious thought or consent. During the intensive program, I participated in an exercise requiring me to list individuals who had taken advantage of, violated, or sexually assaulted me. At the bottom of the list, as the most recent perpetrator, I wrote "Fitz," referring to Michael Fitzgerald. *(See Exhibit C)*.

19. I was mentally and emotionally incapable of being at home for Christmas in 2019, as I struggled to be around anyone, even those I trusted. I was consumed by an overwhelming fear of people, particularly those close to me. In an effort to provide some sense of relief and safe escape for me, my husband utilized airline miles and hotel points, and a recent holiday bonus, to get our family of four to the Bahamas for the holidays since it provided

4

what seemed like a safe escape for me. I was in turmoil after the intensive program and this escape allowed my nervous system time and space to calm down. Opposing counsel has since used photos from this trip to suggest that my family had the financial resources for my sudden need for intensive mental health treatment and lifestyle. This characterization disregards the fact that the trauma necessitating this emergency care was directly caused by Fitzgerald, as explicitly acknowledged in the CSA, which states the "physical and mental harm" he inflicted.

20. Fitzgerald resorted to contacting me through different phone numbers to ensure his communications could not be easily traced. This pattern of behavior persisted from the incident in Miami until February 2020.

21. February 26, 2020 – I called Miami Police Department *(See Exhibit A)* following reporting to Miami Dade Homicide Detective a couple days prior, which has been mentioned many times in recent motions.

15. In March 2020, I wrote a letter to Dieter Schlosser, CEO of SoftwareONE *(See Exhibit B)*, expressing the emotional toll of Fitzgerald's actions and seeking resolution. I sent this draft to my treating therapist, husband Will McNae, and Max Meyers (all on the same email thread). In the letter, I stated:

"Since October, I have been numb. I'm a mother of two kids; Ella, 9 years old, and Liam, 7 years old. I'm married to a wonderful human... Recently diagnosed with Acute PTSD, which seems to only get worse."

16. In hindsight, there was substantial evidence underscoring my deep unrest, confusion, and the undue pressure I faced when signing a legally binding agreement. This was further

5

compounded by a recent diagnosis of PTSD, a condition that significantly impairs one's ability to process information and make rational decisions. While Fitzgerald and his counsel may argue otherwise, they lack insight into my nervous system and cannot understand the profound impact of severe stress on my ability to comprehend or consent. In those moments, I was rendered incapable of fully understanding or appreciating the terms of a complex, legally intricate agreement.

17. During the months leading up to the CSA, our family carried immense stress as our concern for my mother-in-law increased. We moved her into our home in the month of May 2020 (while the terms of the CSA were being negotiated). I provided around the clock care for her.

18. After reading an email from Fitzgerald containing unreasonable terms—such as a provision stating that if I ever wrote a book, he would take all the profits—I sent a text message to him. The email included other absurd provisions that were immediately apparent. At the time, I believed I was signing an agreement in which Fitzgerald acknowledged the harm he caused and promised to cover my counseling costs. Fitzgerald made this promise several times, including in person to my husband, Will McNae, while on the Microsoft campus in Redmond, WA, in February 2020.

**R.McNae (Sent on Monday, May 4, at 5:07 PM):**
"I really hoped this was coming to an end. I'm not signing the agreement on the terms your lawyer provided.
I'm not sure who you think I am but I wouldn't sign that agreement for a million dollars.
I will never give up my right to help educate women on things I've learned that could keep others from falling into similar circumstances.
Wanted you to hear it directly from me."

**Fitzgerald Response Message:**
"Please allow the attorneys to discuss your wishes. I will not receive any more messages from your number. Thank you."

6

**R. McNae:**
"Great. I'm not agreeing."

19. On June 6, 2020 – my mother-in-law's heart stopped. At the time she was still living in our home along with our children who were home due to Covid-19 school closures. She needed emergency surgery and while she was in the middle of surgery both my husband and I had to make a split-second decision with the surgical team regarding her end-of-life wishes. She survived and assured us we made the right decision weeks following. I then had the role of finding the proper assisted living home for her as she needed around the clock care that I was not qualified to do.

20. In June 15, 2020, only days later, while in a vulnerable and distressed state, I signed the Confidential Settlement Agreement (CSA) under duress. At the time, I did not understand its one-sided and far-reaching implications.

21. The CSA included ambiguous language that strongly implied reporting the assault to law enforcement could be interpreted as a breach of the agreement. This ambiguity, combined with my impaired psychological state, left me unable to fully understand or evaluate the terms of the agreement.

22. On July 7, 2022, I formally requested release from the CSA and its non-disparagement clauses. I believed this contract was the reason for the increased gagging and vomiting, which magnified exactly one month after signing the CSA. I knew I couldn't sustain that way of life forever. It was a slow carbon monoxide leak inside my body that slowly began to eat away at my health. In my request, I wrote:

"I plan to publicly ask to be released from this NDA. Before doing so, I decided to privately ask you first."

7

23. Despite my good faith efforts to resolve this matter privately, no substantive response was provided, leaving me with no option but to defend myself through litigation.

24. The trauma stemming from these events and the litigation process has profoundly affected my family. My daughter, Ella, has been diagnosed with depression and prescribed medication as a result of the stress caused by these circumstances.

25. This ongoing ordeal has significantly disrupted my ability to parent effectively, inflicted emotional harm on my family, and imposed substantial financial burdens on us.

19. My March 2020 letter (Ex B) and subsequent actions reflect my state of mind, the confusion I faced, and my sincere attempts to resolve this issue outside of the courtroom. They also demonstrate the undue influence and coercive environment fostered by Michael Fitzgerald and SoftwareONE.

20. The CSA is unenforceable as it was executed under duress, conflicts with public policy, and functions primarily to shield the abuser while silencing the victim.

21. I have reported the assaults to the relevant corporate entities, local law enforcement, and the FBI, as the incidents crossed state lines and fall under multiple jurisdictions. I have fulfilled my responsibilities as a law-abiding citizen, prioritizing the safety and protection of others. Additionally, I have taken these steps as part of my duty, especially given my role as a mandated reporter.

22. Recently, I submitted reports to appropriate regulatory and oversight organizations concerning findings related to SoftwareONE's inaction during its IPO. These developments raise significant concerns that warrant further investigation and accountability.

23. While my experiences have revealed shortcomings within the justice system, I continue to hold profound respect for the law and its principles. I remain steadfast in my belief that justice will ultimately prevail.

24. My niece and nephew were placed in my care as wards of the State of Iowa due to serious concerns regarding their safety and well-being. Both children, despite their young age, had multiple positive drug tests, highlighting their exposure to a highly compromising environment. Recognizing the gravity of their situation, my family acted swiftly to remove them from harm and provide them with a stable home. Home study and relevant court documents. *(See Exhibit D)*

25. Shortly after their placement, the children disclosed troubling instances of physical and sexual abuse, which I was legally obligated to report to local authorities and Child Protective Services (CPS). These disclosures required immediate medical evaluations at the Children's Hospital and follow-up care at Harborview Sexual Assault and Trauma Center. The urgency of their situation left no alternative but to act swiftly to protect them from continued exposure to drugs and abuse.

26. I understand that Your Honor's background as the Regional Director of the Office for Drug Abuse Law Enforcement of the Department of Justice has provided you with firsthand experience in addressing the far-reaching impacts of drug abuse, particularly on vulnerable populations like children. I believe this perspective underscores the necessity of my family's intervention in this case. Protecting my niece and nephew from the dangerous influence of drug exposure was not just a legal obligation but a moral imperative to prevent further harm and provide them with an opportunity for a healthier, more stable future.

27. Flying to Miami for a discovery hearing is not feasible given my current caregiving responsibilities. Unlike my biological children, my niece and nephew require significantly

9

more attention and specialized care due to the trauma and neglect they have experienced. I do not have access to approved individuals to care for them in my absence, and without such support, I would be forced to bring them with me to Miami.

28. Such a disruption to their lives would be harmful and irresponsible. Both children rely on a consistent daily routine, which is particularly critical given their history of neglect and severe stress. Research and experience demonstrate that children with this background require predictable structure to foster stability and emotional recovery. Disrupting their schedule, especially for a non-emergent matter, would jeopardize their progress.

29. Additionally, the youngest child has just begun early intervention education due to his special needs, and removing him from this critical program would delay his development. Traveling to Miami for a discovery issue that is not my burden to resolve, but rather Fitzgerald's and SoftwareONE's, would not only be impractical but detrimental to the well-being of the children entrusted to my care.

30. During a walkthrough with my niece and nephew's legal counsel, I was candid about the challenges of this placement. I acknowledged that the timing of their placement in my care was difficult given my current obligations. However, I also expressed my belief that providing them with a stable home and minimizing their time in foster care outweighed these challenges. This placement has already prevented what would have been their sixth primary caregiver change in two years.

31. I currently lack the required authorization to travel with my niece and nephew without court approval in Iowa, as they remain wards of the state until the legal adoption process is finalized. I am fully prepared to provide any necessary documentation should your Honor deem it necessary.

32. While I am fully committed to participating in these legal proceedings, balancing my responsibilities as a caregiver and litigant requires flexibility. I respectfully request that I be allowed to participate in the discovery hearing remotely via video or teleconference to avoid disrupting the children's necessary stability and care.

33. I respectfully request the Court to consider my declaration and the accompanying evidence as part of my Motion for Leave to Supplement the Record. These documents and experiences are essential to providing the Court with a comprehensive understanding of the profound impact of the Plaintiffs' actions and the critical need for a fair and just resolution.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December 6, 2024 in Kirkland, WA.

**Signature:** _____

**Name:** Ronda McNae

Exhibit A

# verizon✓

**Billing period**
Feb 7, 2020 - Mar 6, 2020

**Account number**
264643004-00001

# Ronda's iPhone
**206.914.6752**
iPhone XS Max

## Talk activity (cont.)

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Feb 26 | 9:14 AM | 425.941.7374 | Kirkland, WA | VM Deposit, CL | 1 | -- | -- | -- |
| Feb 26 | 9:16 AM | 305.673.7900 | Kirkland, WA | Miami, FL | 6 | -- | -- | -- |

# Exhibit B

**Sarah Dellinger**

| | |
|---|---|
| **From:** | Ronda McNae <rondamcnae@gmail.com> |
| **Sent:** | Wednesday, March 11, 2020 7:50 AM |
| **To:** | max@maxmeyerslaw.com; Sarah Dellinger; Sarah Dellinger |
| **Subject:** | A letter to the CEO |
| **Attachments:** | ToSWONE.docx |

Tried to sleep but couldn't. This was a letter I had written to the CEO of Fitz's company (the defendant) Unsure what to do now but I feel like I can rest.

Sitting in my pain has brought clarity of what I feel justice looks and feels like for me.

Thoughts?

1

CONFIDENTIAL                     EQUIP 000351

Dieter Schlosser,

I address this situation and its entirety with a heavy heart and an overall feeling of deep unrest. You're probably wondering why you're receiving a letter from a total stranger to begin with?! Someone close to you is deceitful. Someone close to you has likely already lied to your face. Someone close to you has likely and discreetly taken advantage of your kindness or friendship in someway. Someone close to you has likely played the "victim card" to justify, rationalize, or minimize his behavior.

As my daughter put it (mind you, she's only 9 years of age) her mother (ME) has been "locked up in a dark room for the last couple months" also adding … "The outside is too hard." This has been in result to someone you and I both know in common. Before I attempt a short synopsis of the story I want to add; this "someone" works for you, works beside you, and works closely with you. I have questioned hundreds of times "How has your team not picked up on his behavior?" Perhaps you have been just as deceived as I have been, and my family. OR perhaps things don't quite line up with this "someone" but you don't have enough substantial evidence to raise concern or even question him out loud amongst your peers? OR lastly,  perhaps you might be turning a blind eye to this "someones" behavior assuming it would *never* get to a level of seriousness that may have others question your judgement of allowing someone capable of terrible and poor moral conduct to work on your team? Knowing he's been a critical asset with your company going public.

I recognize research and statistics (generally speaking) say "You are the average of the 5 closet people you spend time with" however, I'm hoping actually praying this isn't the kind of individuals that work for you. Maybe I'm uncovering a person you have questioned in the past and you are a phenomenal family-man (as others have kindly labeled you as) who carries deep conviction when something/someone isn't morally or ethically lining up. Once someone's character is in question in one area of their life its quite challenging to not question how they show up in other areas; ie: work.

Trust me, I have considered all my options because I do have many avenues I can go. Many nights I have lied in bed awake weighing the pros and cons of a Criminal Case vs Civil Suit. You likely have already wondered, "What does she want or hoping to get out of this letter?" I'll answer before I dive into the mess. I'm sure you'll have many questions, I'm here to answer. I want you to know my pain and trauma caused by this "someone" is already documented. I can also provide statements from my primary physical and current counselor if you question my validity.

What I want? What does justice look like? What settles this matter? He has offered to provide support financially for personal counseling, marriage counseling, and family counseling for the year. He's already sent over $1,500.00 to help initial cost of counseling this past month and while writing up an agreement with legal counsel to sign/notarize and forwarding to your teammate, I broke down. I had a very unsettling feeling flood me. This isn't enough. Since finding a fitting counselor on February 24th, in three weeks I have been in her office 10 times costing $150-$200 per session. As I said previously, this still isn't enough considering how my world was turned upside down. While I need help covering out of pocket costs for counseling, he needs to be held accountable while getting some serious help.

Dating back to October, I have been numb. I'm a Mother of two kids; Ella 9 years old & Liam 7 years old. I'm married to a wonderful human. Of course there's challenges in our marriage from time to time but nothing like this. Since October, I have showed up as best as I could. After a particular evening, I "carried" on as any sexual assault victim would; in silence trying to make sense of the night before. I have shipped myself away to a Healing/Trauma recovery week hoping to gain clarity in general. Since, I've been in counseling 3-4 times a week. Recently diagnosed with Acute PTSD which seems to only get worse. My road ahead is different. I came from a traumatic upbringing which this "someone" knew and to be quite honest, He used it to his advantage in my opinion. It's taken me months to *figure this SOMEONE out* but I HAVE. I have uncovered his narcissistic behavior, pathological lying, and incompetence to be truly sorry. Trust me, it wasn't easy "out-smarting" him so I could gather evidence to only support what he may call accusations. The last thing I want to hear from anyone is that I'm crazy. Therefore putting myself in compromising positions since October was unfortunately what I had to do to really see this "someones" lack of integrity, narcissism, psychotic-ness, and inability to truly think about ANYONE but himself. Trust that I have saved letters, text messages, and a phone conversation. To add, I also happen to have a short video that shows bruises on this "someone" the days following (proving something happened). Long winded, I apologize but I understand this may be the only form of communication you have directly from me moving forward, if this turns into a mess. I feel you need as much information directly from before weighing the best course of action moving forward.

This "someone" is your Chief Innovation Officer. Your Global Solutions Director.

What I'm asking of you;

1) To help cover counseling costs and/or hold <u>Michael Fitzgerald</u> accountable to covering it in full which also includes marriage/family counseling.
2) Address this matter with your Executive Board with this letter in whole.
3) Insist <u>Michael Fitzgerald</u> take time off to address his Mental Health by attending a facility treatment center called "Onsite" that help address childhood trauma that later manifested in the behavior I have witnessed and became well acquainted with.
4) If you choose to not remove <u>Michael Fitzgerald</u> from his role within your company completely, (which isn't necessarily the answer) He must be put on some kind of probation period proving good behavior, moral conduct, and showing his intent to make things right; including some in-care facility addressing his mental challenges.
5) Find an appropriate way to remove work interceptions with my husband; William McNae & <u>Michael Fitzgerald.</u>

Having to do a bit of investigating on my own while not being a stranger to dysfunctional upbringings, know that I don't believe <u>Michael Fitzgerald</u> belongs behind bars. He hasn't killed anyone to my knowledge but unfortunately does exhibit a type of behavior that's unpredictable and questionable.

He NEEDS help. Being behind bars won't help. It's evident that <u>Michael Fitzgerald</u> has struggled with a childhood full of trauma. Misfortune that he had control over and other trauma he couldn't control. He has mastered how to show up in a way the hides his short comings and only people well versed like myself, could figure him out. He needs help. He needs support but also consequences. If someone that exhibits the behavior he has, they are the very people likely to recommit or worse, take it to the next level. Please understand it's a mental health issue that has gone unnoticed or without counsel for years dating back to childhood. It doesn't excuse his moral conduct but it shines a bit more light on him as a person who clearly is broken. We are all somewhat broken however those that don't get help end up

crossing boundary lines that should have never been crossed to begin with and sadly, without much remorse aside from "being found out".

I understand cases like these can hit the media like crazy. I actually work in TV/FILM as a model. I hope to come to some kind of agreement with you moving forward. The financial stress this has caused just with counseling alone has been brutal. My husband and my two kids need me back. They need me healthy.

I appreciate your time,

Ronda McNae



Exhibit C



Childhood

* Grandpa                    eric
  babysitter - Andrea   } Kevin
4 Tanya - old friend      Sirena
  teacher
* Bill

⑧

                              8
* Julian         ( dodging Dave )
7 ⑥                (9)

* Josh
* UW coach

* Paul

** Man at work

* Fitz

            crossed line (7)
            (2) Younger kids
            Tried (2)

CONFIDENTIAL          MCNAE 003205

# Exhibit D

E-FILED    JVJV251976 - 2024 MAY 20 01:25 PM    POLK
CLERK OF DISTRICT COURT    Page 1 of 2

### IN THE IOWA DISTRICT COURT FOR POLK COUNTY
### JUVENILE DIVISION

| IN THE INTEREST OF | NO. JVJV251976, 77, JVJV253498, 97 |
|---|---|
| ROWAN LECKWOLD,<br>OAKLEY LECKWOLD,<br><br>CHILDREN. | **ORDER TO MODIFY DISPOSITION** |

**NOW ON THIS DAY** this matter comes before the Court upon the State's Motion to Modify Placement. The Court, having reviewed the record herein and being fully advised in the premises, **FINDS** that the motion shall be granted for the reasons stated therein.

**IT IS THEREFORE ORDERED** that the above-named children are hereby placed in the custody the Department of Health and Human Services for purposes of relative placement once transportation is arranged. The children may be moved out of state with the approved ICPC to relatives, Ronda and Will McNae.

IT IS SO ORDERED on May 20, 2024.

E-FILED    JVJV251976 - 2024 MAY 20 01:25 PM    POLK
CLERK OF DISTRICT COURT    Page 2 of 2



State of Iowa Courts

**Case Number**    **Case Title**
JVJV251976    OAKLEY LECKWOLD
**Type:**    JV-MODIFICATION OF DISPOSITIONAL ORDER

So Ordered

Rachael E. Seymour, District Associate Judge,
Fifth Judicial District of Iowa

Electronically signed on 2024-05-20 13:25:05

23

Case 1:22-cv-22171-JEM   Document 275-1   Entered on FLSD Docket 01/14/2025   Page 209 of
210
Case 1:22-cv-22171-JEM   Document 259   Entered on FLSD Docket 12/17/2024   Page 10 of 40

# Exhibit D

E-FILED          JVJV251976 - 2024 MAY 20 01:25 PM          POLK
                 CLERK OF DISTRICT COURT          Page 1 of 2

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY
## JUVENILE DIVISION

| | |
|---|---|
| IN THE INTEREST OF | NO. JVJV251976, 77, JVJV253498, 97 |
| ROWAN LECKWOLD, | ORDER TO MODIFY DISPOSITION |
| OAKLEY LECKWOLD, | |
| CHILDREN. | |

**NOW ON THIS DAY** this matter comes before the Court upon the State's Motion to Modify Placement. The Court, having reviewed the record herein and being fully advised in the premises, **FINDS** that the motion shall be granted for the reasons stated therein.

**IT IS THEREFORE ORDERED** that the above-named children are hereby placed in the custody the Department of Health and Human Services for purposes of relative placement once transportation is arranged. The children may be moved out of state with the approved ICPC to relatives, Ronda and Will McNae.

**IT IS SO ORDERED** on May 20, 2024.

11