IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

                Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

                Defendants.

_____/

FILED BY __MC__ D.C.

JAN 2 9 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## DEFENDANT RONDA MCNAE'S REPLY IN SUPPORT OF DE 275 MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 37(b)

Defendant Ronda McNae, acting pro se, submits this Reply in support of her Motion to Dismiss under Rule 37(b) or, alternatively, to reopen discovery. Plaintiff Michael Fitzgerald, in concert with SoftwareONE ("SWO") **all entities**, has engaged in systematic discovery misconduct, procedural violations, and retaliatory litigation aimed at silencing Defendant. These actions—marked by bad faith, misuse of judicial processes, and deliberate suppression of evidence—have caused irreparable prejudice to Defendant and undermined the integrity of these proceedings. This Reply demonstrates why dismissal under Rule 37(b), or, alternatively, reopening discovery with sanctions, is necessary to address Plaintiff's cumulative misconduct and restore fairness. Plaintiff, a senior leader at SWO, leveraged the Confidential Settlement Agreement ("CSA") to suppress allegations of psychological, physical, and sexual misconduct. Plaintiff's misconduct, reported by Defendants Ronda and William McNae, posed a reputational risk to SWO's leadership. Rather than addressing these credible allegations when reported by McNae, SWO leadership shielded Plaintiff and actively worked to suppress evidence of wrongdoing that could have derailed SWO's October 25, 2019, initial public offering (IPO)[1]. Plaintiff had a vested interest in silencing reports as the exposure of these allegations would have altered Plaintiff's and SWO's financial and reputational standing. Despite the McNae's credible reports of serious misconduct, SWO leadership, including **Dieter Schlosser (CEO), Neil Lomax (President of Sales), Ashley Garre, John Mayes (Global HR), Patty Ravencroft (US HR), Frank Rossini (General Counsel/Board Secretary), Jared Cheney, Khristy Young, Chris Chesley,** and **Jason Mailloux**—actively chose to shield Plaintiff rather than address the misconduct. These individuals all had vested financial and reputational stakes in SWO's IPO and prioritized protecting the company's public image over addressing serious allegations. Their complicity not only perpetuated the harm suffered by Defendant and underscores a systemic failure within SWO's leadership to act responsibly.

**A. Weaponization of the CSA:** Plaintiff and SWO have weaponized two distinct CSAs to suppress evidence, obstruct discovery, and shield misconduct. Plaintiff's intent to suppress allegations is

---

[1] **Disclosure Obligations:** As a publicly traded company, SWO was required to maintain transparency post-IPO. Efforts to suppress allegations or omit material events from regulators or shareholders reflect systemic misconduct. **Financial and Reputational Motivations:** Pre-IPO, companies and their leaders are particularly sensitive to allegations that could deter investors or lower valuation. Post-IPO actions, including suppressing damaging information or retaliating against whistleblowers, may indicate efforts to maintain stock prices and protect financial interests, especially during stock lock-up periods. **Ongoing Retaliation:** Post-IPO actions, such as retaliatory lawsuits, social media monitoring, or misuse of discovery materials, demonstrate ongoing efforts to silence Defendant, reflecting a broader pattern of misconduct. **Disclosure Obligations:** As a publicly traded company, SWO was required to maintain transparency post-IPO. Efforts to suppress allegations or omit material events from regulators or shareholders reflect systemic misconduct.

further evidenced by his own statements, including his March 11, 2020, remark to Yelany De Verona, *"I don't want a rape trial."* This statement shows Plaintiff's deliberate misuse of the CSA to silence Defendant and evade scrutiny of his alleged criminal conduct. Additionally, Plaintiff's later comments to Tom Wiper regarding warnings from former CEO Dieter Schlosser about protecting the company's public image further confirm his awareness of the severity of the allegations and his calculated efforts to avoid liability. *(See* Exhibit A*)*



**B. CSA Between Fitzgerald and McNaes: "CSA1"** [2], signed between Plaintiff and Defendants Ronda and William McNae June 2020, was designed to conceal Plaintiff's misconduct, including psychological coercion, physical and sexual misconduct. CSA1 was executed under duress during a period of profound psychological and emotional distress for Defendant Ronda McNae. Dr. Hopper's report details how trauma-induced neurobiological responses, including impaired prefrontal cortex functioning and reliance on compliance behaviors, can undermine an individual's ability to resist coercion or critically evaluate decisions. When applied in this case, these effects were compounded by Defendant's prior unresolved childhood abuse trauma.

**C. Post-Employment CSA Between Fitzgerald and SWO: "CSA2"**, executed after Plaintiff's employment with SWO, encompasses all SWO entities, with Frank Rossini as a signatory. CSA2 shields Plaintiff's employment records and prior HR complaints, obstructing access to evidence that could expose systemic failures and misconduct by SWO leadership. Plaintiff's refusal to disclose SoftwareONE UK in his Rule 26 disclosures as his employer further compounded the suppression of these critical records, preventing Defendant from subpoenaing the appropriate entity and obtaining essential evidence. These agreements have been deliberately used to suppress critical

---

[2] In February 2020, R. McNae, for the first time, verbalized to her therapist that Fitzgerald had sexually assaulted her, though she had long known this to be true. By March 2020, the COVID-19 outbreak, with its epicenter in Kirkland, WA, where the McNaes lived, led to their children transitioning to homeschooling, making them among the first to do so. In May 2020, R. McNae's mother-in-law moved in with the family due to heightened health concerns exacerbated by the pandemic. Shortly thereafter, on June 6, 2020, her mother-in-law suffered a cardiac arrest requiring emergency surgery, during which her heart stopped, and no DNR had been established. Amid these challenges, in April 2020, the McNaes sought assistance with the CSA from a friend at church, Max Meyers. At that time, R. McNae had not yet fully processed the trauma she had endured, including the forced sodomy in late 2021. Her delayed acknowledgment of this trauma stemmed from earlier childhood abuse, which further complicated her ability to confront and understand the events surrounding the CSA.

evidence, shield misconduct, and undermine accountability. Continued reliance on CSA1 and CSA2 to obstruct discovery and silence Defendant underscores their coercive and obstructive nature.

**D. Retaliatory Actions and Procedural Misconduct:** In addition to these discovery violations, Plaintiff and SWO engaged in retaliatory actions designed to intimidate and silence Defendant. These include filing a baseless lawsuit in Wisconsin shortly after Defendant issued subpoenas and inappropriately used federally protected discovery materials in unrelated legal proceedings. Opposing counsel has further attempted to trivialize and marginalize Defendant's claims, mischaracterizing them as irrelevant while simultaneously withholding critical evidence essential to Defendant's defense.

**E. Broader Implications for Justice:** What happened to Defendant Ronda McNae, and the deliberate cover-up orchestrated with SWO leadership, would have been catastrophic for SWO and Plaintiff had it come to light during or after the IPO. SWO's systemic failure to address credible reports of misconduct directly benefited Plaintiff, protected the company from reputational harm, and perpetuated injustice against Defendant. Plaintiff's counsel argues that systemic issues should be addressed directly with SWO as the company's leadership has demonstrated no interest in accountability. Defendant has, in an abundance of caution, reported these matters to the U.S. Securities and Exchange Commission (SEC). However, this Court remains the proper venue to address the harm inflicted upon Defendant and the misuse of judicial processes to suppress her voice. The facts outlined herein demonstrate a deliberate effort by Plaintiff and SWO leadership to engage in procedural misconduct to shield themselves from scrutiny. This Court must act decisively to address the substantial prejudice caused to Defendant by dismissing the case under Rule 37(b) or, alternatively, reopen discovery to ensure justice and procedural integrity.

## ARGUMENT

**A. Plaintiff's Procedural Misconduct and Discovery Failures Warrant Dismissal Under Rule 37(b):** Plaintiff's actions, in collaboration with SWO, reflect systemic procedural misconduct designed to suppress evidence, obstruct discovery, and mislead this Court. Key communications between Plaintiff, SWO leadership, and their legal counsel demonstrate deliberate bad faith. The following timeline of emails demonstrates coordinated efforts to obstruct discovery and retaliate against Defendant: *(See Below and Exhibit B)*

> **Timeline of Relevant Communications: (See attached Exhibit B for full details)**
>
> 1. **July 11, 2022: Jennifer Gaines, General Counsel at SWO**, explicitly requested a copy of the NDA to verify that it did not bind SWO or impose obligations on the company. This request demonstrates SWO's awareness of potential misuse of the CSA and their effort to distance the company from its improper application.
> 2. **July 14, 2022: Fitzgerald filed the current lawsuit**, initiating retaliatory litigation (considering Fitzgerald breached the CSA as well) against McNae while SWO prepared a public relations response to inquiries regarding the filing.
> 3. **December 7, 2022: Jenny Martinez, Counsel for SWO**, stated in an email to R. McNae's former counsel Alaina Fotiu-Wojtowicz *"SoftwareONE Inc., a third-party to your lawsuit."* (emphasis added)
> 4. **December 9, 2022: Counsel for SWO acknowledged the investigations concerning findings separate from the McNaes' 2020 report to SWO.** Despite this, Fitzgerald and SWO continue to cite privilege and refuse to produce these materials to support Fitzgerald's claims of damages caused by Defendant.
> 5. **June 20, 2023: Counsel for SWO, Jennifer Gaines, ¶2** states that as early as May 2022 (3 months prior to Fitzgerald's lawsuit filing), she had been informed of McNae's allegations and was anticipating litigation.

## B. Failure to Disclose SoftwareONE UK, Improper Use of GDPR, and Withholding Evidence:

Plaintiff deliberately omitted SWO UK as his employer in his initial and supplemental Rule 26(a) disclosures, despite the relevance of its HR records to his claims and Defendant's defenses. Instead, Plaintiff identified SWO AG and SWO Inc. — entities without access to the critical documents. He further obstructed discovery by withholding contact information for SWO UK, forcing Defendant to hire UK counsel in January 2023 to confirm its role, significantly delaying access to evidence. Plaintiff's response (DE 276 at ¶10) falsely asserts that SWO UK "has no stake in this case," even though CSA2 has been used to shield HR complaints and internal investigations essential to Defendant's defenses. The systemic issues outlined in *Doe v. SoftwareONE* underscore the significance of these materials. During the October 19, 2022[3] hearing, Magistrate Judge Becerra affirmed Defendant's right to discovery, particularly concerning affirmative defenses. Plaintiff's counsel has repeatedly dismissed systemic misconduct at SWO as "irrelevant" (DE 276 at ¶16), even though the suppression of HR complaints and internal investigations is a recurring problem as it relates to SWO's accountability. The importance of these records is confirmed in a December 7, 2022, email from SWO counsel Jenny Martinez, identifying Fitzgerald and other key individuals in the custodial data review which demonstrates the relevance of SWO UK for uncovering critical HR-related evidence. Plaintiff's counsel compounded the issue by seeking to quash subpoenas issued to SWO Inc. and Microsoft Inc. while failing to comply with Rule 26(e), which requires timely supplementation of disclosures. While Plaintiff's counsel claims in DE 276 at ¶38 that Defendant was aware of SWO UK as Plaintiff's employer by October 6, 2022, this

---

[3] **Transcript, DE 22, at 12-14, Exhibit C**. Judge Becerra clarified that discovery is not stayed during pending motions and affirmed the right to relevant discovery related to affirmative defenses.

assertion is misleading. Plaintiff never provided the necessary contact information for the foreign entity SWO UK[4] and SWO UK was unknown to Defendant. Defendant only confirmed SWO UK's role in January 2023, after hiring a UK barrister. Plaintiff's reliance on GDPR to withhold evidence is both legally baseless and indicative of bad faith. Courts have consistently rejected privacy laws as a shield against discovery in U.S. litigation where disclosure is supported by international comity (*Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522 (1987)). Magistrate Judge Becerra emphasized that protective orders can balance privacy concerns with discovery obligations, making Plaintiff's GDPR argument a tactical maneuver to suppress critical evidence.

**C. Contradictions in Plaintiff's Narrative Undermine His Credibility:** Plaintiff's contradictory statements in DE 276 expose bad faith and erode his credibility. In ¶4, he claims his "termination of employment … was proximately caused by Defendant's false and salacious accusations," yet in ¶27, he states he was "placed on leave, underwent an investigation, and ultimately decided to leave SWO voluntarily." This is further undermined by Plaintiff's deposition testimony, where he explicitly stated, "So first of all, I wasn't terminated, just to be very clear." The truth is Plaintiff voluntarily left SWO, retained performance stock units, and continued receiving pay while on leave. Despite alleging Defendant caused his termination, Plaintiff has not produced factual evidence that proves this claim—no HR complaints, investigation findings, or corroborating documentation. Instead, he admitted under oath that he was unaware of the purpose of SWO's investigation, stating, "my assumption is it was to do with the lawsuit, but I might be under the wrong assumption" (DE 63-2 at 2-4). Defendant had <u>no contact with SWO UK</u>, decisively disproving Plaintiff's baseless causation claims.

In ¶12, Plaintiff states "Fitzgerald was not a party to that agreement", responding to the agreement that Plaintiff and SWO had provided <u>all</u> <u>required</u> <u>discovery</u> material and communications thus mooting Defendant's 2nd subpoena (emphasis added). Exhibit D shows Plaintiff's counsel Peter Berlowe's acknowledgement and agreement to the terms provided by SWO (which they claim to not be a party to). The absence of evidence, coupled with Plaintiff's conflicting statements, highlights the fabricated nature of his allegations and reflects a broader pattern of

---

[4] Had Plaintiff properly disclosed SoftwareONE UK in his initial disclosures, Defendant could have issued a subpoena to the correct entity early in the discovery process—before Plaintiff finalized his post-employment settlement agreement. That agreement has since been used to shield internal investigations and HR complaints that could contradict Plaintiff's allegations, expose procedural misconduct, and substantiate Defendant's defenses.

procedural misconduct. Plaintiff's actions, including his reliance on an unsupported expert witness, represent deliberate efforts to mislead the Court and shift blame onto Defendant for his own employment issues. This conduct not only undermines Plaintiff's credibility but also constitutes bad faith under Rule 37(b), warranting sanctions.

**D. Procedural Prejudice to Defendant:**

**1. Improper "Attorney Eyes Only" Designations:** While Plaintiff has repeatedly relied on his settlement agreement with SWO UK to support his claims (see ¶4 DE 276), he has designated these documents as "Attorney Eyes Only," effectively barring Defendant, a pro se litigant, from accessing them. This unreasonable restriction denies Defendant the opportunity to fully review and refute Plaintiff's allegations. Plaintiff cannot simultaneously direct Defendant to rely on these documents while refusing access. Despite claiming harm allegedly caused by Defendant, Plaintiff has failed to produce any evidence beyond these inaccessible documents to substantiate his allegations, further highlighting the baseless nature of his claims. Judge Becerra emphasized that AEO designations should be applied cautiously and only to genuinely sensitive materials to prevent undue prejudice (Transcript, DE 22, at 28-29).

**2. Failure to Produce Referenced Attachments:** Plaintiff has failed to produce 167 referenced photographs in discovery. A significant portion of these images and videos were sent by Plaintiff to prior co-Plaintiff Yelany De Varona between November 2019 – June 2020. By the time these materials were requested in discovery, Plaintiff had deleted relevant text communications related to this case, further compounding the obstruction. The omission of these photographs was only uncovered by Defendant a few weeks ago, at which point Plaintiff's counsel admitted that no privilege log had been provided. This failure rests squarely on counsel, whose obligation it was to produce these materials or assert privilege appropriately. These photographs are critical to establishing the truth regarding Plaintiff's claims and substantiating allegations of misconduct.

**3. Misleading Expert Timeline - Violation of Rule 11(b):** Plaintiff's counsel created their own timeline and provided to their expert witnesses that misrepresents a critical fact, claiming that Defendant reported the alleged assaults to law enforcement *before* signing the CSA. In reality, Defendant's official police reports to Miami and San Francisco police occurred after the CSA was signed, as she was explicitly told that the agreement waived her right to report to law enforcement. This omission of accuracy resulted in a biased and flawed expert report that unfairly challenges

Defendant's credibility. Plaintiff's reliance on this inaccurate timeline underscores a pattern of procedural misconduct. Submitting a misleading timeline constitutes a direct violation of Rule 11(b), which requires that all representations to the Court to be truthful and supported by evidence. Plaintiff's Procedural Misconduct and Discovery Failures Warrant Dismissal Under Rule 37(b). Plaintiff's repeated discovery failures, combined with SWO's complicity, demonstrate systemic bad faith aimed at suppressing evidence, obstructing discovery, and retaliating against Defendant.

## II. Plaintiff's Retaliatory Actions and Systemic Suppression Further Justify Relief

**A. Retaliatory Conduct and Intimidation Tactics:** Plaintiff's counsel, Ms. Meredith Gussin, engaged in improper surveillance of Defendant's social media using an Instagram account named "Grant Gussin", linked to Ms. Gussin (*see* Exhibit E). This occurred after discovery had closed and constitutes harassment. Rebuttals supported by Instagram evidence raise further concerns about this conduct. In addition, Ms. Gussin sent a December 23, 2023, email seeking to extend confidentiality and non-disparagement provisions to bar the McNae children, aged 11 and 13, from speaking about the case. This proposal caused significant distress and violated the minors' First Amendment rights.

**B. Improper Use of Discovery Materials to Contact ARAG:** Plaintiff's counsel, Ms. Meredith Gussin, improperly used federally protected discovery materials obtained in this litigation[5], to contact Defendant's legal insurer, ARAG. Specifically, during her communication with ARAG, **Ms. Gussin stated:** *"I'm actually calling about, um, I'm an attorney involved in a case in which the opposing counsel is a network attorney, and I was just trying to find out if there is a policy limit on, um, the policy that they're using for this case. I don't know if you could give me that information"* **Ms. Gussin further disclosed**: *"William McNae...and his wife Ronda McNae, and they provided a copy of the policy in the Discovery Process. So I have their member ID"* This conduct demonstrates blatant disregard for protective orders and constitutes bad faith. Plaintiff's counsel misused sensitive discovery information, causing ARAG to reevaluate and deny coverage initially approved for the Florida state lawsuit. This forced the McNae family to expend significant time and financial resources correcting ARAG's position, compounding the procedural prejudice they suffered. During the October 19, 2022 hearing, Magistrate Judge Becerra[6] emphasized that

---

[5] **Rule 4.4(b)** of the ABA Model Rules of Professional Conduct prohibits lawyers from using methods of obtaining evidence that violate the rights of third parties. **Rule 3.4(c)** bars lawyers from knowingly disobeying an obligation under the rules of a tribunal, including protective orders

[6] **Transcript, DE 22, at 24-27**: Judge Becerra acknowledged the frequent use of protective orders in litigation and outlined the procedural steps for parties to obtain, highlighting their role in managing sensitive information. (See Below)

protective orders safeguard the proper use of discovery materials. Counsel's interference with ARAG coverage violated this principle and undermined the integrity of the discovery process. The misuse of federally protected materials in unrelated proceedings further breaches protective orders, amplifying the harm to the McNae family. While this Court need not resolve the ARAG dispute, the direct link between Ms. Gussin's actions and ARAG's denial of coverage underscores the procedural harm[7]. Additionally, Plaintiff and SWO weaponized federal discovery materials in other proceedings[8], including sensitive emails with Microsoft HR, further undermining judicial integrity. These violations justify dismissal or sanctions under Rule 37(b).

**C. Submission of False Affidavit by Yelany De Varona:** De Varona's affidavit contains demonstrably false statements, as shown in Exhibit F-1 through F-5 in DE 275-2. These statements contradict evidence and reflect an intent to mislead the Court, violating Rule 11(b). The affidavit has prejudiced Defendant by obstructing discovery, influencing prior rulings, and perpetuating a false narrative in these proceedings. This false affidavit, coupled with other instances of misconduct outlined herein, demonstrates a deliberate strategy to deceive the Court and suppress the truth.

**D. <u>Harassment and Intimidation:</u>** Neil Lomax, former President of Sales and a member of SWO's Executive Board, participated in a coordinated effort to intimidate Defendant and obstruct

---

[7] **Transcript, DE 22, at 28-29:** Judge Becerra addressed the process for obtaining a protective order, acknowledging their common use in similar cases and suggesting they may be appropriate in this matter. **Becerra: On Addressing Privacy Concerns Before Her:** *"If SoftwareONE or Microsoft have an issue with those [subpoenas], then I'll hear from them. Their counsel is certainly more than—I mean, they are [capable], but I can't imagine that they've hired lawyers who aren't competent enough to read my procedures and move. They can move not to produce that information."* (Found on page 25 of the transcript). **On Protective Orders and GDPR Compliance:** *"Your obligation—to the extent you have an obligation to seek a protective order, as to this hearing, it's denied without prejudice because you haven't followed the procedures."* Lastly, she states, *"I do agree with you that some sort of protective order is typical in these cases and may be warranted in these cases. If you can't come to an agreement as to it, then set it for hearing."* (Found on pages 26–27) of the transcript. **Regarding Broad Subpoenas and Third-Party Objections:** *"Let me ask you this. What is the prejudice or the harm to the plaintiff of these subpoenas being served? ... If SoftwareONE or Microsoft objects to the scope of the subpoenas, they will have to come here and raise those issues before this Court."* (Found on page 26 of the transcript). **Regarding Broad Subpoenas and Third-Party Objections:** *"Let me ask you this. What is the prejudice or the harm to the plaintiff of these subpoenas being served? ... If SoftwareONE or Microsoft objects to the scope of the subpoenas, they will have to come here and raise those issues before this Court."* (Found on page 26 of the transcript). **Regarding Will McNae's Privacy Interests:** *"As to the Microsoft [subpoena], the person whose privacy interests is more at stake is her client—her client's husband. She's represented that he is also her client, but it's her client's husband. It would seem to me that if he's got a privacy interest, he's got to make it. He's not making it, obviously."* (Found on page 17 of the transcript).

[8] **Wisconsin State Lawsuit:** Sensitive HR communications produced in discovery in this case were used by SWO in the Wisconsin lawsuit against Defendant. See Exhibit F (pg. 16, footnote 86 stating Ex. 1)
**Florida State Lawsuit:** Plaintiff heavily relied on clearly distinguished sensitive HR communications produced in this federal litigation to allege damages against William McNae in the Florida state court. See DE 275-2 at 61-70
**Interference with ARAG Legal Insurance:** Plaintiff's counsel improperly contacted Defendant's legal insurer, ARAG, using discovery materials to request policy details. This interference led ARAG to initially deny coverage for Defendant's state court lawsuit, causing significant financial harm and procedural prejudice.

her pursuit of justice. Several days after Defendant's filing of DE 275, Lomax monitored her social media (see below). He also oversaw a retaliatory lawsuit in Wisconsin to quash subpoenas. These actions align with SWO's strategy to suppress evidence and shield Plaintiff from liability.



In contrast, William McNae's then-manager, Josh Condie, and director, Leslie Pickering, were compelled to take immediate action, removing him from the SWO account after he reported the sexual assault against his wife and Plaintiff's harassment while on Microsoft's campus[9].

### III. Prejudice Caused by Plaintiff's Conduct Warrants Dismissal or Reopening of Discovery

Plaintiff's suppression of critical evidence and employment records from SWO UK, has severely prejudiced Defendant. Magistrate Judge Becerra acknowledged during the hearing on October 19, 2022, employment records from SWO[10] and MS may hold relevance to damages and causation in this case. This recognition underscores the importance of access to these documents for Defendant's defense[11]. Invocation of GDPR and privacy laws to withhold evidence was baseless and demonstrates bad faith. SWO UK's counsel obstructed discovery by responding to McNae's UK barrister that "SWO UK is not a party to the Miami Proceedings" and that their letter "seeks sensitive and personal employment information about Mr. Fitzgerald, who does not join in your

---

[9] This harassment, including an implied threat of harm, occurred during work hours in February 2020
During this in-person interaction, Plaintiff promised to cover all of R. McNae's counseling costs. Also, W. McNae informed Plaintiff that he believed his actions rose to the level of criminal conduct. The on-going threats of getting W. McNae fired if Ronda spoke out, caused the McNaes to legitimately fear for their family's safety, highlighting a pervasive pattern of intimidation by Plaintiff.

[10] **Transcript, DE 22, at 16-18.** Judge Becerra acknowledged that employment records from SoftwareONE and Microsoft were relevant to damages and/or causation.

[11] See Exhibits G, H and I for examples of Defendant's attempts prior to the close of discovery to pursue discovery and overcome barriers created by Plaintiff to shield employment files.

request." Lastly, the suppression of evidence from the *Doe v. SoftwareONE* case reveals a broader pattern of misconduct. In both cases, SWO engaged in similar suppression tactics, such as delaying discovery of internal investigations. These actions parallel Plaintiff's conduct here and have severely prejudiced Defendant[12]. These actions violated Rules 26(a) and 26(e), denied Defendant a fair defense, and inflicted cumulative prejudice over a two-and-half year period. The egregious bad faith and flagrant noncompliance with discovery orders warrant decisive action.

## CONCLUSION

Plaintiff's discovery misconduct, suppression of evidence, retaliatory actions, and misuse of two Confidential Settlement Agreements (CSA1 and CSA2) have severely prejudiced Defendant's ability to mount a fair defense. Plaintiff, his counsel, SWO, and their counsel have acted in bad faith by leveraging CSA1 to suppress evidence of Plaintiff's alleged misconduct, and by using CSA2 to obstruct access to critical employment and HR records. Plaintiff's failure to produce HR complaints, investigation findings, or corroborating evidence to link the McNaes to his alleged damages exposes the baselessness of his claims and undermines his credibility. Dismissal under Rule 37(b), voiding CSA1, sanctions, or reopening discovery, is necessary to remedy the procedural harm, restore fairness, and deter future misconduct. Allowing this case to proceed despite the blatant violations by Plaintiff, his counsel, SWO, and their counsel would reward bad faith and set a dangerous precedent.

**Relief Requested**: For the reasons stated above, Defendant respectfully requests that the Court dismiss this case with prejudice under Rule 37(b). Alternatively, Defendant seeks to reopen discovery to subpoena SoftwareONE UK and obtain withheld evidence, impose sanctions (including attorneys' fees and costs), and void CSA1 to ensure accountability and compel access to critical evidence. Such actions are essential to uphold the integrity of the judicial process and prevent further abuse.

Respectfully submitted on January 28, 2024,

By: <u>Ronda Delapina McNae</u>

---

[12] **Suppression of Critical Evidence**: Failing to disclose SWO UK as Plaintiff's employer, depriving Defendant of access to essential HR records and internal investigations. **Imposition of Unreasonable Barriers**: Continuing to use "Attorney Eyes Only" designations to restrict Defendant's ability to review key evidence. **Undermining Credibility**: Shifting narratives, selective redactions, and refusal to produce corroborating evidence to obstruct the truth and erode Plaintiff's credibility.

Pro Se Defendant
504 11th PL Kirkland, WA 98033
Tel: (206) 914-6752
Prose.rmcnae@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 28, 2025, a true copy of the foregoing Motion was sent via

FedEx to the Clerk of the Court, Southern District of Florida, 400 N. Miami Ave, Room 8N09,

Miami, FL 33128, and to Plaintiff's counsel, in compliance with pro se litigant requirements.

**SERVICE LIST**
Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlowe.com
*Counsel for Plaintiffs*

12

1

# Exhibit A

00356929.TXT



[4/15/20, 12:49:10 PM] Mike: Mate last night I talked to my ceo
[4/15/20, 12:49:37 PM] Mike: Ronda has already called our VP of hr for the America's and said one of our senior people raped her on a night out in Miami
[4/15/20, 12:49:54 PM] Mike: She also called our president of the US and said the same
[4/15/20, 12:50:01 PM] Mike: Now HR are involved
[4/15/20, 12:50:07 PM] Mike: So I had to take the day off today
[4/15/20, 1:10:41 PM] Wiper Tom: What the fuck?! Who the fuck does she think she is??
[4/15/20, 1:10:48 PM] Wiper Tom: What did your CEO say?
[4/15/20, 1:11:46 PM] Mike: I have no idea what she is trying to achieve mate
[4/15/20, 1:11:57 PM] Mike: He said they will respond formally and legally as they have to
[4/15/20, 1:11:58 PM] Wiper Tom: She's a fucking nutcase
[4/15/20, 1:12:19 PM] Mike: But he warned me about the public image of the company etc which of course is his duty mate
[4/15/20, 1:12:26 PM] Mike: As a friend he had my back
[4/15/20, 1:12:42 PM] Mike: Told me to get a top class attorney and document the shit out of everything
[4/15/20, 1:12:52 PM] Wiper Tom: Faking a fucking pregnancy should be just as fucking punishable.  Wrecking peolles lives
[4/15/20, 1:13:51 PM] Wiper Tom: All for attention mate. She's got a screw loose
[4/15/20, 1:14:54 PM] Wiper Tom: At least you have everything documented. Does Will not realise, this could ruin his career??
[4/15/20, 1:16:59 PM] Mike: It will probably ruin both of ours
[4/15/20, 1:17:06 PM] Wiper Tom: It makes a mockery of women and men who are genuinely raped. It really fucking winds me up
[4/15/20, 1:17:17 PM] Mike: Mate she's lost it
[4/15/20, 1:17:26 PM] Mike: But dieter said be careful because he's seen this before
[4/15/20, 1:17:49 PM] Wiper Tom: You will be fine man. You've done nothing wrong
[4/15/20, 1:18:06 PM] Wiper Tom: Good will always overcome
[4/15/20, 1:26:48 PM] Mike: Mate I just want it over
[4/15/20, 1:26:50 PM] Mike: Seriously
[4/15/20, 1:26:57 PM] Mike: I'd happily pay her to just leave me alone
[4/15/20, 1:29:42 PM] Wiper Tom: Only if they sign a non disclosure
[4/15/20, 1:30:27 PM] Mike: Yes agreed
[4/15/20, 1:30:36 PM] Mike: I actually don't think will is doing anything

Page 31

00356929.TXT

[4/15/20, 1:30:40 PM] Mike: I think they separated
[4/15/20, 1:31:45 PM] Wiper Tom: Dont blame him. I'd be running a country mile
[4/15/20, 1:32:26 PM] Wiper Tom: Shes just looking for someone to.blame for that more than likely
[4/15/20, 1:35:05 PM] Mike: Mate it seriously didn't need to get anywhere near this
[4/15/20, 1:35:17 PM] Mike: Last night with my ceo was the weirdest conversation I've ever had
[4/15/20, 1:35:35 PM] Mike: I felt like he had my back but I think he also is being corporate
[4/15/20, 1:38:02 PM] Wiper Tom: He most likely has to a tad corporate but you've helped build that company, so I'm sure he knows you and will have your back
[4/15/20, 1:39:32 PM] Wiper Tom: You managed to speak to Yel?
[4/15/20, 1:56:01 PM] Mike: I didn't speak to her mate
[4/15/20, 1:56:15 PM] Mike: We argued a lot about this whole situation and I don't know how to break down the barrier wiht her
[4/15/20, 1:56:26 PM] Mike: I also don't want to burden her with it if that makes sense
[4/15/20, 3:09:00 PM] Mike: Just spoke to an attorney. This shit is going to be expensive as fuck mate
[4/15/20, 3:12:12 PM] Wiper Tom: Yeah that makes sense man. Christ is it? Then it is America and it always seems expensive. By the hour charge?
[4/15/20, 3:17:26 PM] Mike: Yeah
[4/15/20, 3:17:33 PM] Mike: About 10k as a retainer!
[4/15/20, 3:53:42 PM] Wiper Tom: Fucking hell man. Plus whatever else on top?! Needs to be fucking ace for that!
[4/15/20, 4:07:38 PM] Mike: I have to go down this route now mate
[4/15/20, 4:11:12 PM] Wiper Tom: Well just make sure you get the right one bro. But with all the evidence hopefully it's easy to go away quickly so you can move on
[4/15/20, 4:14:12 PM] Mike: I think she just wants to cause as much damage as possible
[4/15/20, 4:18:29 PM] Wiper Tom: 100% man. She took a risk and it back fired, so she just wants to wreck & hurt you in the worst possible way. When you win this, and you will, get your attorney to make sure she pays your legal fees. Cost follow the event or something I think it's called.
[4/16/20, 1:38:44 PM] Mike: This fucking thing has me so low buddy. I can hardly think straight or work
[4/16/20, 1:39:02 PM] Mike: My Ceo is now asking my Hr department to be involved
[4/16/20, 1:39:17 PM] Mike: So I think this has an effect on me at work and I may have to step down
[4/16/20, 1:44:44 PM] Wiper Tom: Hey bro. Surely they cant make you step down over an accusation? HR are there to protect you as well. What's the situation with your attorney?
[4/16/20, 1:45:39 PM] Mike: Speaking to the attorney in half an hour
[4/16/20, 1:45:54 PM] Mike: It's more reputations damage than anything else
[4/16/20, 1:46:11 PM] Mike: She already calling the companies policy on sex and alcohol into account
[4/16/20, 1:46:20 PM] Mike: On senior officer behavior
[4/16/20, 1:46:41 PM] Mike: If she decides to publish an article online or call some

FITZ000829

# Exhibit B

**From:** Gaines, Jennifer <Jennifer.Gaines@softwareone.com>
**Sent:** 11 July 2022 21:33
**To:** Fitzgerald, Mike <Mike.Fitzgerald@softwareone.com>
**Cc:** Rossini, Frank <Frank.Rossini@softwareone.com>
**Subject:** RE: Release of NDA

THIS MESSAGE IS ATTORNEY CLIENT PRIVILEGED, ATTORNEY WORK PRODUCT AND CONFIDENTIAL. DO NOT FORWARD.

Mike,

Thanks for sending this email along.

In light of Ronda's allegations, it would be helpful if we could review a copy of the NDA to confirm that it does not directly or indirectly relate to (or bind) SoftwareOne. Would you mind sending a copy of the NDA to me for review? Assuming we can confirm the NDA does not relate to SoftwareOne or create any obligations for the Company, our outside counsel can respond accordingly to Ronda.

Of course, if there is any PII in the NDA (such as home address, social security numbers or other personal identifiable information) please redact it before sending it to me.

I appreciate your support.

Kind regards,

Jennifer



Jennifer P. Gaines| General Counsel, NORAM
Software One, Inc.
Corporate Office| 20875 Crossroads Circle Suite 1 | Waukesha | Wisconsin 53186
Tel:(214)707-7166 | www.softwareone.com | Jennifer.Gaines@softwareone.com

1) **FITZGERALD HAVING CONVERSATIONS REGARDING THE CSA SIGNED BETWEEN HIMSELF AND THE MCNAES BEFORE FITZGERALD FILED THIS LAWSUIT**

**From:** Gaines, Jennifer <Jennifer.Gaines@softwareone.com>
**Sent:** Monday, July 11, 2022 7:22:51 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Fitzgerald, Mike <Mike.Fitzgerald@softwareone.com>; Jenny L. Martinez <jmartinez@munckwilson.com>; Rossini,
Frank <Frank.Rossini@softwareone.com>
**Subject:** RE: Release of NDA

Peter,

It is nice to meet you virtually.

As I believe Mike has told you, I'm in-house counsel for SoftwareOne in North America.

Based on Ronda's email, I would like to verify that SoftwareOne is not a party to or in any way bound by the NDA Ronda
references. To this end, would you be willing to have a short conversation on this matter or otherwise confirm that
SoftwareOne is not a party to the NDA and Mike did not sign in his capacity as an employee/officer of SoftwareOne?
Please note that I have copied our outside counsel (Jenny Martinez) on this email as her firm is assisting SoftwareOne
with this matter from a civil perspective.

I sincerely appreciate your time and assistance.

Kind regards,

Jennifer

**Jennifer P. Gaines|** General Counsel, NORAM
Software One, Inc.
Corporate Office| 20875 Crossroads Circle Suite 1 | Waukesha | Wisconsin 53186
Tel:(214)707-7166 | www.softwareone.com | Jennifer.Gaines@softwareone.com

This is a transmission from legal counsel for Software One, Inc. and may contain information and attachments that are privileged,
confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any
disclosure, copying, distribution, or use of the contents of this message or its attachments is prohibited. Interception, copying,
dissemination, or other use by other than the addressee(s) is prohibited and may be penalized under applicable privacy laws. If you
have received this transmission in error, please destroy it and notify me immediately by return email to
jennifer.gainesa@softwareone.com

2) **FITZGERALD HAVING CONVERSATIONS REGARDING THE CSA SIGNED
BETWEEN HIMSELF AND THE MCNAES BEFORE FITZGERALD FILED THIS
LAWSUIT**

**From:** Gaines, Jennifer <Jennifer.Gaines@softwareone.com>
**Sent:** Wednesday, July 13, 2022 5:44 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Fitzgerald, Mike <Mike.Fitzgerald@softwareone.com>; Jenny L. Martinez <jmartinez@munckwilson.com>; Rossini, Frank <Frank.Rossini@softwareone.com>; michael.comartin@ogletree.co
**Subject:** RE: Release of NDA

Peter,

I spoke with Mike today regarding his potential legal strategy moving forward and he suggested that I reach out to you directly with additional questions. After speaking with our external counsel (Jenny & Michael), we have a few follow-up questions from a legal perspective. Do you have time to speak with us tomorrow? If so, what time(s) could work for you? I appreciate your assistance.

Kind regards,
Jennifer



Jennifer P. Gaines| General Counsel, NORAM
Software One, Inc.
Corporate Office| 20875 Crossroads Circle Suite 1 | Waukesha | Wisconsin 53186
Tel:(214)707-7166 | www.softwareone.com | Jennifer.Gaines@softwareone.com

This is a transmission from legal counsel for Software One, Inc. and may contain information and attachments that are privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message or its attachments is prohibited. Interception, copying, dissemination, or other use by other than the addressee(s) is prohibited and may be penalized under applicable privacy laws. If you have received this transmission in error, please destroy it and notify me immediately by return email to michael.cash@softwareone.com or telephone (208) 761-6042.

3) **FITZGERALD HAVING CONVERSATIONS REGARDING THE CSA SIGNED BETWEEN HIMSELF AND THE MCNAES BEFORE FITZGERALD FILED THIS LAWSUIT**

**Estefania Ochoa**

| | |
|---|---|
| **From:** | Gaines, Jennifer <Jennifer.Gaines@softwareone.com> |
| **Sent:** | Thursday, July 14, 2022 6:13 PM |
| **To:** | Peter E. Berlowe |
| **Cc:** | Fitzgerald, Mike; Michael McCabe; Jenny L. Martinez |
| **Subject:** | Federal Court Filing |

Peter,

I just spoke with Peter and understand that you plan to file the breach of contract action in federal court tonight. As a courtesy, could you please send an advanced copy of the filing as early as possible? We need to prepare a response from a PR perspective as we are likely to get questions from the public, employees, customers and partners.

We appreciate your assistance.

Kind regards,

Jennifer



Jennifer P. Gaines| General Counsel, NORAM
Software One, Inc.
Corporate Office| 20875 Crossroads Circle Suite 1 | Waukesha | Wisconsin 53186
Tel:(214)707-7166 | www.softwareone.com | Jennifer.Gaines@softwareone.com

This is a transmission from legal counsel for Software One, Inc. and may contain information and attachments that are privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message or its attachments is prohibited. Interception, copying, dissemination, or other use by other than the addressee(s) is prohibited and may be penalized under applicable privacy laws. If you have received this transmission in error, please destroy it and notify me immediately by return email to michael.cash@softwareone.com or telephone (208) 761-6042.

4) **FITZGERALD HAVING CONVERSATIONS REGARDING THE CSA SIGNED BETWEEN HIMSELF AND THE MCNAES BEFORE FITZGERALD FILED THIS LAWSUIT**

 Gmail

Michael Fitzgerald <mike@fitzgeraldcap.com>

---

**paid leave from SWO**
2 messages

---

Schlosser, Dieter <Dieter.Schlosser@softwareone.com>                                          Sun, Jul 24, 2022 at 2:41 PM
To: "mike@fitzgeraldcap.com" <mike@fitzgeraldcap.com>

Dear Mike,

Further to our call just now, I confirm that we have agreed that you will commence a period of paid leave with immediate effect. This is in order to ensure that the internal review of the situation that we discussed will be unimpeded and to avoid you having to work whilst being naturally distracted by the internal review.

The following will apply during your period of paid leave:

- Your IT system access has been temporarily put on hold. You must not perform any work and you must not communicate with any colleagues, partners or customers nor attend any company premises or work events during the period of paid leave. This means that the Dublin off-site next week will be handled by Sebastian Zielis and Alex Considinetong in your absence.

- The company will endeavour to complete its internal review as quickly as possible but until the review is completed, your single point of contact in the company will be me.

- You will need to remain available on your mobile during your contracted hours to deal with any work-related questions that I may have for you. You are also expected to co-operate with the company's internal review and respond to any requests that you receive from the internal review team to attend meetings or provide information. A SWO representative or SWO's counsel is likely to contact you directly in this regard. Please continue to check your personal email daily for contact from me, SWO's representative, or SWO's counsel. You agreed that the personal email address and phone number that you will be contactable on during the paid leave will be mike@fitzgeraldcap.com +1 786 8585212.

- In terms of communication with colleagues, partners and customers, if and to the extent necessary or useful, the company will inform them at the appropriate time that you have commenced a paid leave of absence and that any inquiries that would normally be directed to you should now be directed to Sebastian Zielis for operational matters and Alex Considinetong for product related matters. If you are contacted by any colleagues, partners or customers, you must not share any information regarding the matters we have discussed, and you should not comment on the reason for you being on paid leave.

If you have any questions regarding any of the above, please let me know.

Best wishes

Dieter



**Dieter Schlosser** SoftwareONE
Chief Executive Officer

dieter.schlosser@softwareone.com | www.softwareone.com | + 65 8298 5178

FITZ000417

https://mail.google.com/mail/u/0/?ik=c74d53bcce&view=pt&search=all&permthid=thread-f%3A1739241668350674737&simpl=msg-f%3A1739241...   1/2

**FITZGERALD RECIEVES THIS LETTER FROM SWO'S CEO AFTER FITZGERALD PROVIDED A COPY OF THE CSA TO SWO WHICH R.MCNAE NEVER SPOKE OF THE DETAILS NOR PROVIDED EXPLICIT TERMS OR DETAILS TO SWO**

| | |
|---|---|
| **From:** | Jenny L. Martinez <jmartinez@munckwilson.com> |
| **Sent:** | Monday, November 28, 2022 1:57 PM |
| **To:** | Peter E. Berlowe; Meredith J. Gussin |
| **Cc:** | Michael McCabe; Jennifer.Gaines@softwareone.com; Gurpreet Duhra; Ryan Stringer |
| **Subject:** | Michael Fitzgerald |

**Privileged and Confidential Settlement Communication**
**Without Prejudice and Subject to Contract**

Peter,

SoftwareONE has now concluded its investigation. In your October 26, 2022 email, you indicated that Mr. Fitzgerald would like to explore an amicable separation from SoftwareONE. Despite the concerning facts that have emerged from the investigation, SoftwareONE is prepared, in principle, to explore a mutually agreeable separation. We propose an initial without prejudice call between me, Michael, you, and SoftwareONE UK's outside counsel, DLA Piper, to discuss this further.

Since any separation would have to be signed off by a UK qualified attorney on Mr. Fitzgerald's behalf, can you please confirm whether he has engaged UK employment counsel?

Sincerely,

**Jenny Martinez**
Partner



## FITZGERALD'S AMICABLE SEPERATION FROM SWO WHICH CONTRADICTS HIS TESTIMONY, HIS WIFE YELANY DE VERONA, AND FITZGERALD'S COUNSEL

8

**Jenny L. Martinez** <jmartinez@munckwilson.com>                    Wed, Dec 7, 2022, 9:15 AM
to Alaina Fotiu-Wojtowicz, Michael McCabe, Heather Shatzel, Elizabeth D. Gaukroger, Charles T. Zerner ▾

Alaina,

Thank you for providing me with the order. The seven custodians highlighted in yellow below are U.S. employees. I requested these custodial files and received most of the data. However, while processing this data last week and over the weekend, we discovered that many of the files are corrupt and thus any hit count estimate will be inaccurate. We are working with our client to obtain another copy of the data so we can provide accurate hit counts. As soon as the data is processed and I can give more accurate hit counts, I'll provide them. However, to give you a flavor for how overbroad your proposed search strings are, we ran your proposed search string number 7 against the noncorrupt (*i.e.*, incomplete) files that we have, and it returned 50,653 families (emails ÷ attachments).  Although the actual number will be much higher after our data set is complete, reviewing even 50,653 families would take an attorney working all day seven days per week, *over 100 days* (and that is a *very* conservative estimate). SoftwareONE, Inc., a third-party to your lawsuit, will obviously not agree to incur such an expense. It would save a lot of time and back-and-forth if you revise your search strings to include appropriate connectors and/or exclude common terms.

   1. Michael Fitzgerald
   2. Jared Cheney
   3. Ashley Gaare
   4. Sean Nicholson
   5. John Mayes
   6. Patty Ravencroft
   7. Khristi Young
   8. Jessica Motta Jessenik
   9. Deiter Schlosser
   10. Timothy Neylan
   11. Oliver Berchtold
   12. Jessica Bergman
   13. Alexandra Considine-Tong
   14. Julia Braun

Sincerely,

**Jenny Martinez**
Partner

 MUNCK WILSON MANDALA
TRIALS. TRANSACTIONS. TECHNOLOGY.

**Above, SWO Counsel; Jenny Martinez stating the company is in fact a third-party to this Federal Lawsuit. Contradicting Ms. Gussin's recent statements in DE 276.**

**From:** Gurpreet Duhra <Gurpreet.Duhra@dlapiper.com>
**Sent:** 09 December 2022 20:14
**To:** Philip Landau <pl@landaulaw.co.uk>
**Cc:** Ryan Stringer <Ryan.Stringer@dlapiper.com>
**Subject:** Our client: SoftwareOne UK Limited, Your client: Michael Fitzgerald - Without Prejudice and Subject to Contract
- Confidential Settl [Case:FIT0091, ID:1638, Thread:2022-12-12_MV43-FX0B-CMR1]

Hi Philip

**Without prejudice and subject to contract**

We had hoped to speak with you today but I note that you are awaiting instructions from your client.

In the meantime, we thought it would be helpful to share with you our client's position as this may impact on the instructions you are seeking.

It is your client who, through his retained US counsel, requested that our client consider a mutually agreed termination of his employment. As you will know, our client's parent company instructed independent lawyers in July 2022 to undertake a thorough and privileged investigation into serious allegations of misconduct relating to your client. Your client agreed to go on paid leave for the duration of the investigation. He has continued to be paid his salary and receive benefits since his paid leave commenced. The investigation has now concluded. We are not instructed at this stage to share with you the findings of the investigation due to its privileged status. That said, I can share with you without prejudice to any future formal proceedings that the investigation findings are very concerning.

Naturally, you will appreciate that the next step in the process is for your client to be invited to a disciplinary hearing where he is given the opportunity to respond to the investigation findings. Without prejudice to the outcome of that hearing, given the care that has been taken with the investigation and the conclusions reached, we would be surprised if the outcome of the hearing was anything other than the summary termination of your client's employment.

I should also make clear that our client was very reluctant to have any without prejudice dialogue with your client given the findings of the investigation. Our client has remained supportive to your client over what they appreciate has been a tumultuous period for him and they were prepared to give him the benefit of any doubt whilst the investigation was ongoing. Understandably their position has hardened as the evidence and facts of the investigation have emerged.

Happy to support with this.

Please could you confirm if you would like Jan 2022-Dec 2022 payslips?
Or please confirm the period?

Kind Regards,
Anna

---

**From:** Michael Fitzgerald <mike@fitzgeraldcap.com>
**Sent:** Friday, January 20, 2023 5:09 pm
**To:** Knight, Anna <Anna.Knight@softwareone.com>
**Cc:** Rossini, Frank <Frank.Rossini@softwareone.com>
**Subject:** Re: January Payroll

Can you please send me P60s also, thank you

Sent from my iPhone

> On Jan 20, 2023, at 11:58 AM, Knight, Anna <Anna.Knight@softwareone.com> wrote:
>
> Dear Mike,
>
> Thank you for your email.
>
> The company is currently acting in accordance with the headline terms that have been agreed, which include a term that you will only receive salary up to 31 December 2022.
>
> The company remains hopeful that a settlement agreement can be completed with you shortly. However, the company will keep the situation under review and if it becomes clear that an agreement cannot be reached, then of course the company will promptly take action to pay any salary that may be due to you. I note your point regarding not referencing a settlement agreement in our correspondence and accordingly, any discussions regarding your ongoing employment terms and the settlement agreement should be handled via the legal representatives.
>
> Regarding your access to the payslip system we will extract all of your payslips for you and send them to you.
>
> Many thanks
> Anna
>
> <image001.jpg>
>
> <image002.jpg><image003.jpg><image004.jpg><image005.jpg><image006.jpg>

| Anna Knight | Wimbledon address: | York address: |
|---|---|---|
| Regional Head of HR UK, IE, ZA | Tel: 07825 079188 SoftwareONE 41 – 47 Hartfield Road Wimbledon SW19 3RQ | Marlborough House Westminster Place York Business Park Nether Poppleton York YO26 6RW |

www.softwareone.com

**From:** Michael Fitzgerald <mike@fitzgeraldcap.com>
**Sent:** 20 January 2023 00:55

**To:** Knight, Anna <Anna.Knight@softwareone.com>
**Subject:** Re: January Payroll

Dear Anna,

Thank you for your email.

You should not be mentioning any reference to a settlement agreement in open correspondence. This is a fundamental aspect of any negotiations, which I am sure you will be familiar with.

Notwithstanding the above, and for the purposes of addressing solely the question of payment of my salary, I would point out that only headline terms were addressed in the without prejudice correspondence. The full terms have not been agreed, and there is no immediate prospect of doing so.

In the circumstances, there is no basis to not continue the payment of my salary. Any non-payment will be in clear breach of my contract of employment.

I expect to receive my salary as normal.

Please can I also request that you forward me login details for my access to the payslip system, as these have changed and I'm obligated to provide them to my accountant for my tax return.

Thank you

Regards,

Mike Fitzgerald

On Thu, Jan 19, 2023 at 7:43 AM Knight, Anna <Anna.Knight@softwareone.com> wrote:

> Dear Mike,
>
> It is my understanding that it was made clear by the Company's legal representatives to your legal representative in December that you would not receive any salary beyond 31 December. Your legal representative confirmed that you agreed to this in principle.
>
> As per my earlier email, if it becomes clear in due course that a settlement agreement cannot be agreed, then the Company will comply with its obligations to pay you any outstanding salary that may be due to you.
>
> Regards
>
> <image001.jpg>
>
> <image002.jpg><image003.jpg><image004.jpg><image005.jpg><image006.jpg>

| Anna Knight | Wimbledon address: | York address: |
|---|---|---|
| Regional Head of HR UK, IE, ZA | Tel: 07825 079188 | Marlborough House |
| | SoftwareONE 41–47 Hartfield Road | Westminster Place York Business Park |
| | Wimbledon SW19 3RQ | Nether Poppleton York YO26 6RW |

www.softwareone.com

> **From:** Michael Fitzgerald <mike@fitzgeraldcap.com>
> **Sent:** 18 January 2023 20:20
> **To:** Knight, Anna <Anna.Knight@softwareone.com>
> **Cc:** Philip Landau <pl@landaulaw.co.uk>
> **Subject:** Re: January Payroll



Dear Anna

Although it was envisaged that the settlement agreement would be concluded close to 31st December, this has not been possible due to some fundamental issues.

In the circumstances, I would expect my salary to be paid in the usual way until such times as the settlement agreement is finalised. I'm advised that this would be seen as normal practice from my legal team.

Thanks

Mike Fitzgerald

On Wed, Jan 18, 2023 at 3:18 AM Knight, Anna <Anna.Knight@softwareone.com> wrote:

> *Dear Michael*
>
> *As you are aware, your legal representative is in without prejudice discussions with the company's legal representative. The purpose of these discussions is to attempt to agree the terms of a settlement agreement for your mutually agreed exit from the company. These discussions followed your request for a mutually agreed separation.*
>
> *One of the terms that we understand has been agreed in principle before work on drafting the settlement agreement commenced was that your employment would end on 31 December 2022, or certainly that you would not receive any further salary or benefits beyond this date. We understand that discussions on the settlement agreement are ongoing. In the meantime, we are at the point in the month where we need to start the payroll process in readiness for salary payments to be made to employees by the end of the month. You have already been paid up to and including 31 December 2022, which reflects the terms agreed in principle.*
>
> *Therefore, in anticipation of a settlement agreement being signed on the terms agreed in principle, we will instruct payroll not to make any salary payment to you this month. I wanted to confirm this to you ahead of time.*
>
> *If a settlement agreement is signed in the coming days then of course the company will process any payments due under that agreement in accordance with its terms. If a settlement agreement cannot be agreed then once this becomes clear, the company will comply with its obligations to pay you any outstanding salary payment that may be due to you.*
>
> *If you have any questions then please let me know.*
>
> *Regards*
>
> <image001.jpg>
>
> <image002.jpg><image003.jpg><image004.jpg><image005.jpg><image006.jpg>

| Anna Knight | Wimbledon address: | York address: |
|---|---|---|
| Regional Tel: 07825 Head of 079188 HR | | Marlborough House |
| UK, IE, ZA | SoftwareONE 41 – 47 Hartfield Road | Westminster Place York Business Park |
| | Wimbledon, SW19 3RQ | Nether Poppleton York |

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Monday, March 20, 2023 12:12 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Fitzgerald/McNae: SoftwareOne Internal Investigation Documents

Peter,

I hope you are doing well. SoftwareONE cannot turn over internal review documents. The review was conducted at the direction of outside counsel and to the extent that there are any documents associated with the review, these would be confidential and protected by the attorney-client privilege and work product doctrine. I understand that there are no UK laws requiring an employer to turn over internal review documents to a former employee. I'm happy to jump on a call to discuss.

Sincerely,

**Jenny Martinez**
Partner

 MUNCK WILSON MANDALA
TRIALS. TRANSACTIONS. TECHNOLOGY.

12770 Coit Rd., Ste 600
Dallas, TX 75251
d. +1 972.628.3623
o. +1 972.628.3600
e: jmartinez@munckwilson.com
w. munckwilson.com
Connect with me on LinkedIn
Follow Munck on LinkedIn

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:22-cv-22171-JEM

MIKE FITZGERALD, individually,
and YELANY DE VARONA, individually

      Plaintiffs

v.

RONA MCNAE, individually
and WILLIAM MCNAE, individually,

      Defendants.

_____ /

## DECLARATION OF JENNIFER P. GAINES

**I, Jennifer P. Gaines, declare as follows:**

1. I am the General Counsel and Corporate Secretary of Software One, Inc. (hereinafter "SWO") and make this declaration in support of SWO's letter brief in response to Defendants' Motion for Ruling on Claim of Privilege (the "Motion").

2. In late April or early May of 2022, SWO informed me of Ronda McNae's allegations that Mike Fitzgerald assaulted her and sought my legal advice regarding such allegations. In response to that request, I provided legal advice and consulted with outside counsel regarding the allegations. Based upon the seriousness of the allegations, which involved a senior level employee of a SWO affiliate, SWO reasonably anticipated litigation.

3. From late April or early May of 2022 to the present, I have rendered legal advice to SWO regarding Ronda McNae's allegations against SWO and Mr. Fitzgerald. I have never rendered business advice to SWO regarding Ronda McNae's allegations.

4. On July 14, 2022, I prepared and sent the email attached as Exhibit 2 to Ronda McNae's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil

DECLARATION OF JENNIFER P. GAINES                    PAGE 1

Action dated May 18, 2023. I sent this communication to Mr. Fitzgerald's attorney after Mr. Fitzgerald informed me that he planned to file suit against Ronda McNae. I sent this communication to Mr. Fitzgerald's attorney primarily for the purpose of rendering legal advice or assistance to SWO regarding potential defamation, disparagement, business disruption, and other tort or contract claims resulting from (1) employee, customer, partner, or public inquiries and reactions resulting from Michael Fitzgerald's lawsuit against Ronda McNae and (2) employee, customer, partner, or public inquiries and reactions resulting from Ronda McNae's allegations against SWO and an employee of a SWO affiliate. Mr. Fitzgerald was employed by SoftwareOne UK, Ltd., an affiliate of SWO, at the time I authored this email.

5. Exhibit 2 contains my work product. Exhibit 2 was prepared in anticipation of litigation based upon Ronda McNae's allegations against SWO and an employee of a SWO affiliate. Exhibit 2 contains my mental impressions regarding Mr. Fitzgerald's lawsuit and how that lawsuit might impact SWO's legal rights related to potential defamation, disparagement, business disruption, and other tort or contract claims resulting from (1) employee, customer, partner, or public inquiries and reactions resulting from Michael Fitzgerald's lawsuit against Ronda McNae and (2) employee, customer, partner, or public inquiries and reactions resulting from Ronda McNae's allegations against SWO and an employee of a SWO affiliate.

6. Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the foregoing is true and correct.

DECLARATION OF JENNIFER P. GAINES                    PAGE 2

Date: 4/20/23

Jennifer P. Gaines

# Exhibit C

Pages 1 - 30

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Before The Honorable Jacqueline Becerra, Magistrate Judge

MICHAEL J. FITZGERALD,          )
                                )
            Plaintiff,          )
                                )
  VS.                           )          NO. 22-CV-22171-JEM
                                )
RONDA MCNAE,                    )
                                )
            Defendant.          )
_____)

Miami, Florida
Wednesday, October 19, 2022

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

Digital Audio Recording 10:57 a.m. - 11:40 a.m. = 43 minutes

**APPEARANCES:**

For Plaintiff:

                   ASSOULINE & BERLOWE, P.A.
                   100 Southeast Second Street, Suite 3105
                   Miami, Florida 33131
              BY:  **PETER EMERSON BERLOWE, ESQ.**


For Defendant:

                   BRODSKY FOTIU-WOJTOWICZ, PLLC
                   200 Southeast First Street, Suite 400
                   Miami, Florida 33131
              BY:  **ALAINA R. FOTIU-WOJTOWICZ, ESQ.**




Transcribed By:  James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                 Official Court Reporter

| | |
|---|---|
| 1 | **Wednesday - October 19, 2022**                              **10:57 a.m.** |

2             P R O C E E D I N G S

3                  ---o0o---

4        **THE CLERK:**  All rise.

5        United States District Court for the Southern District of

6   Florida is now in session, the Honorable Magistrate Judge

7   Jacqueline Becerra presiding.

8        Case Number 22-CV-22171-Martinez, Fitzgerald versus McNae.

9        Counsel, please state your appearances for the record,

10  starting with the plaintiff.

11       **MR. BERLOWE:**  Good morning, Your Honor.  May it please

12  the Court, Peter Berlowe of Assouline & Berlowe, P.A., for

13  Plaintiff Michael Fitzgerald.

14       **MS. FOTIU-WOJTOWICZ:**  Good morning, Your Honor.

15  Alaina Fotiu-Wojtowicz of Brodsky Fotiu-Wojtowicz on behalf of

16  the defendant, Ronda McNae.

17       **THE COURT:**  All right.  You may be seated.

18       All right.  We're here pursuant to my discovery

19  procedures.  There was a notice of hearing filed at

20  Docket Entry Number 19.  There was also one filed at 17.  I

21  think there was just some mistake as to how those documents

22  were prepared.

23       So I think we're proceeding under -- I'm sorry.  We're

24  proceeding under 17.  19 is a notice of filing of settlement

25  agreement.  So we're proceeding under 17.

1    16 had been filed.  I didn't even print 16 because I think

2    there was an issue with the way that 16 was put together.  So

3    just for purposes of the record, the notice at 16 was stricken,

4    and we're going to hear the notice that was filed at 17.

5        So I've taken a look at the complaint in the matter.  I've

6    looked at the confidentiality agreement.  Generally, I'm

7    familiar with the case, although this is the first time I'm

8    hearing the case.

9        So I'm not going to pretend that I know the case nearly as

10   well as you-all do.  So I understand it's a breach of the

11   settlement agreement.

12       Let me hear from -- give me one moment.  Let me hear from

13   the defendant.

14       They're your subpoenas; correct?

15           **MS. FOTIU-WOJTOWICZ:**  Correct.

16           **THE COURT:**  All right.  I know the motion has been

17   filed by the plaintiff.  So it's the plaintiff's motion.

18       What I want to hear first from the defendant, though, is

19   connect for me how these subpoenas are relevant to the case.

20           **MS. FOTIU-WOJTOWICZ:**  Sure.

21       Judge, this is a one-count breach of contract case with

22   respect to a contract that was entered into as a result of my

23   client's claim that she had been raped by the plaintiff,

24   Mr. Fitzgerald.

25       Mr. Fitzgerald agreed to compensate her for her pain and

1    suffering, including payment for the psychological counseling

2    that she's been undergoing three times a week since shortly

3    after the rape.  And the rape occurred at a dinner that

4    Mr. Fitzgerald had paid for my client, Ms. McNae, and her

5    husband to attend as part of the SoftwareONE IPO.

6        SoftwareONE is the company where Mr. McNae -- or sorry --

7    excuse me -- where Mr. Fitzgerald currently works.  He is

8    the -- their chief innovation officer or chief technology

9    officer.  He's been there for quite some time.  And as part of

10   his job responsibilities, he works as a partner with Microsoft,

11   which is where Mr. McNae works.

12       Mr. McNae was the primary contact point for Mr. Fitzgerald

13   with respect to the relationship between the two companies, the

14   two companies being SoftwareONE and Microsoft.  And it was a

15   result of this relationship, this business relationship, that

16   Mr. Fitzgerald was introduced to -- to Mr. McNae's wife,

17   Ronda McNae, my client.

18       And it was as part of a dinner where Mr. Fitzgerald took

19   my client, who he convinced to come a day early to attend

20   without her husband, got her intoxicated to a point where she

21   was black-out drunk and took advantage of her, his friend and

22   colleague's wife.  And the allegations are that there was no

23   consent.

24       After that happened, Mr. Mc- -- Mr. Fitzgerald was

25   pressuring my client to enter into this settlement agreement,

 1   which was ultimately signed.  So that's kind of the backdrop on

 2   how we got to the settlement agreement.

 3       And with respect to the subpoenas, they relate to four

 4   things relevant to this dispute.  First of all, they relate to

 5   the actual breaches.  Your Honor has reviewed the complaint,

 6   and you'll note that there are no specifics in the complaint as

 7   to what my client did that actually constituted a breach of the

 8   agreement.

 9       There are no dates.  There are no times.  There's just

10   vague allegations with respect to social media posts, contacts

11   with SoftwareONE, and contacts with Microsoft.  Those are kind

12   of the three broad categories of -- that are claimed as

13   breaches.

14       So, first of all, we're trying to determine which -- what

15   exactly it is that they think constitutes a breach.

16       The second thing that these are aimed at is that it is our

17   position that the agreement -- and it will be an affirmative

18   defense in this case that the agreement is void as it's against

19   public policy as an attempt to cover up a crime.

20       There will also be evidence that this is not the only time

21   Mr. McNae -- or Mr. Fitzgerald -- excuse me -- has been accused

22   of this type of conduct by his -- by his partners, by

23   acquaintances of him, and that it is against the public policy

24   to have someone, who appears to me, at least, to be a sexual

25   predator, covered up by this agreement.

1    So that's the second thing that it's aimed at.  We are

2    attempting to invalidate the agreement because it is violative

3    of -- of public policy.  It's unconscionable and it is an

4    attempt to cover up a crime.

5        The third thing is -- the third and fourth kind of go

6    together, and they're really the most important part with

7    respect to these particular subpoenas, particularly the

8    SoftwareONE subpoena, and it relates to causation and to

9    damages.

10       In the event that we are not able to -- to invalidate and

11   there's some showing that there were -- was conduct that

12   violated the agreement, we want to know what the damages are.

13       The settlement agreement itself provides that the money

14   that was paid is in consideration for the physical and mental

15   pain and suffering.  There's no separate consideration paid for

16   the -- for the confidentiality provision.

17       There was discussion in the negotiations of the -- of the

18   agreement about a liquidated damages provision.  There was no

19   liquidated damages provision.  It was rejected and was not

20   agreed to, and as a result, Mr. Fitzgerald has to prove actual

21   damages.

22       And if you look at the initial disclosures that we -- that

23   we filed in our -- as our supporting authorities,

24   Mr. Fitzgerald claims damages in excess of $450,000.

25       And along with those initial disclosures that were served

1   to us on September 9th -- I sent an email, after I looked at

2   the documents, to Mr. Berlowe because we had agreed that, along

3   with the initial disclosures -- that both sides would produce

4   all responsive documents.  It was something we agreed to that

5   both sides, in fact, did.

6          We said -- I said, "Mr. Berlowe, I don't see any damages

7   documents in here.  You say that it was" -- "it's $450,000 of

8   actual damages.  Will you send over documents?  Do you have

9   them?"  And I didn't file this email because your procedures

10  prohibit it.

11         But in response to my request, the response was -- was

12  that, "We've provided the confidential settlement agreement,

13  which explains the portion of our damages."  And then the

14  response is, "At this time, we do not have documents related to

15  our additional damages because we will need to conduct

16  discovery to get that documentation."

17         "Needless to say, those damages continue to grow as

18  Mr. Fitzgerald is prevented from taking part in bonus and stock

19  option opportunities as a direct result of the corporate

20  investigation your client wrongfully commenced with his

21  employer."

22         So he is claiming that he has been damaged with respect to

23  his ability to obtain compensation from his employer as a

24  result of actions my client took.  So a large part of the

25  subpoenas that we have believe -- issued are related to his

1    relationship with his employer.

2         We understand that there have been issues with him with

3    his employer in the past, and we don't know whether there have

4    been bon- -- whether these are bonuses or stock options that

5    are paid as a matter of course.  We don't know what his past

6    compensation is.  You know, these are all the things that we've

7    asked about.

8         We've also looked at whether or not there are any other --

9    any other events or situations or job performance that could be

10   the cause of his failure to obtain these $450,000 in stock

11   options or bonuses or whether it is, as -- as Mr. Berlowe

12   claims, related to my client's conduct.  So that's one thing.

13        And also, there were communications, both with Microsoft

14   and SoftwareONE, that predated the settlement agreement.  So we

15   want to know also what Microsoft and SoftwareONE knew and what

16   investigation, if any, they conducted before the date of the

17   settlement agreement because, obviously, any conduct that

18   happened or any contact that happened prior to the date of the

19   settlement agreement -- I'll note there were contacts because,

20   at some point, my client was removed from -- well, Mr. McNae

21   was removed -- who's also my client, was removed from the

22   SoftwareONE account.

23        And the SoftwareONE executives reached out to him and

24   said, you know, "Why have you been removed from the account?

25   You were doing a great job."  And he, you know, explained to

1   them the circumstances that led to it, and this predated the

2   settlement agreement.

3          So those are kind of the types of -- of information and

4   communications and documentation that we're seeking by way of

5   these subpoenas.  We -- we asked for some of the information,

6   to the extent we could get it, from Mr. Fitzgerald directly.

7   We were told that he didn't have it.  We needed to get it in

8   discovery.

9          In the initial disclosures, both -- both the plaintiff's

10  disclosures and the defendant's disclosures, both sides, at the

11  top of the list, listed Microsoft and SoftwareONE, both

12  SoftwareONE AG, which is the international arm, and

13  SoftwareONE, Inc. North America, which is listed as F on the

14  plaintiff's initial disclosure, as -- with respect to

15  individuals and entities with discoverable information.

16         SoftwareONE, Inc., the target of the subpoena, is listed

17  there.  It's the second entity after the individuals are -- are

18  listed.  It's also listed, of course, on the defendant's

19  initial disclosures.

20         So these are two entities that both sides have said have

21  relevant, discoverable information.  They're at the core of the

22  allegations of the complaint, contacts with these two entities.

23  And SoftwareONE, of course, is -- is really the only entity

24  that would have information with respect to the causation and

25  damages claims by Mr. Fitzgerald.

 1          **THE COURT:**  All right.  Let me hear from the

 2   plaintiff.

 3          **MR. BERLOWE:**  Good morning again, Your Honor.

 4   Peter Berlowe for Michael Fitzgerald.

 5          Your Honor, the relationship that's at the heart of the --

 6   the confidential settlement agreement was a consensual

 7   relationship that was an extra- -- that consisted of an

 8   extramarital affair that lasted multiple months over multiple

 9   cities with multiple time zones.

10          There was no rape in this case, and we vehemently deny

11   that there was a rape or any type of sexual relationship that

12   did not occur except with consent.

13          Your Honor, the subpoenas at issue to Microsoft and to

14   SoftwareONE, Inc., which is a U.S. entity, far overreach the

15   scope of relevant discovery in this matter.

16          The -- as Your Honor -- we have a single-count complaint

17   for breach of confidential settlement agreement.  That was a

18   settlement agreement, Your Honor, that was entered into between

19   two parties, both represented by counsel, both heavily

20   negotiated, both heavily drafted, and came to this resolution

21   that -- that limited what Ms. McNae, the plaintiff -- the

22   defendant, could do going forward with respect to discussing

23   the issues relating to this consensual relationship.

24          Your Honor, there was a non-disparagement provision in

25   that -- in that confidential settlement agreement.

1    Consideration was given for all aspects of that -- of that

2    agreement, and it is completely enforceable.  It was -- it was

3    not -- it is not void as against public policy, and it should

4    be looked at as what it is, the sole -- the sole document

5    controlling the breach of the agreement that's at issue in the

6    complaint.

7         Your Honor, we recognize that, in bringing a complaint

8    like this, there's a -- that there should be discovery

9    regarding the complaint.  That com- -- the complaint is was

10   that contract, that confidential settlement agreement,

11   breached, and were there damages from that -- that breach?  Is

12   there causation?  So those are the aspects that are fair game

13   for discovery.

14        Your Honor, what Defendant McNae is seeking to do with

15   these subpoenas is exactly what she promised not to do in

16   signing that confidential settlement agreement, which is to

17   disparage Mr. Fitzgerald to people and companies that are

18   unrelated to the subject matter of this case but really are

19   related to the underlying cause of action that was settled in

20   the confidential settlement agreement.

21        That's not to be relitigated here, Your Honor.  It's

22   settled.  It's released.  It's done with.  And the discovery

23   that's being sought to be done is -- by these two subpoenas is

24   essentially to relitigate the issues that the parties agreed to

25   settle by that confidential settlement agreement.

1    THE COURT:  Oh.  Well, two things.

2        First of all, you sued her.  So you're the plaintiff.  You

3    filed the suit; right?  So --

4        MR. BERLOWE:  I agree, Your Honor.

5        THE COURT:  Now she gets to defend herself, and one of

6    the affirmative defenses is that the contract is void from

7    public policy.  That may get nowhere.  I understand that

8    argument may not rule the day, but I don't see how she's not

9    entitled to pursue it.  That's the defense she's entitled to

10   pursue, and then there's the issue of damages.

11       So let me ask you this.  Is there any portion of these

12   subpoenas that you think are proper, or is your argument that

13   they should be quashed in their entirety?

14       MR. BERLOWE:  No, Your Honor.  I agree that in --

15   Mr. Fitzgerald agrees that, with respect to the Microsoft

16   subpoena --

17       THE COURT:  Hold on.  Let me just -- let me grab them.

18   I thought -- I had SoftwareONE open, not Micro- -- give me a

19   second.

20       All right.  The Microsoft -- I'm at the Microsoft.

21       MR. BERLOWE:  Yes.

22       So --

23       THE COURT:  Okay.  Tell me which one -- which

24   categories you think are appropriate.

25       MR. BERLOWE:  Request Number 5, we believe, is fair

1   game, Your Honor --

2            THE COURT:   Okay.

3            MR. BERLOWE:   -- with respect -- and that's the only

4   request from the Microsoft subpoena that we believe is fair

5   game.

6            THE COURT:   All right.   So let's stop.   Let's go to

7   the first request, "Any and all communications between you and

8   Michael Fitzgerald that refer or relate, in any way, to Ronda

9   or William McNae."

10       Why is that not relevant potentially to damages or to the

11   issue of the contract, the settlement agreement, being void?

12            MR. BERLOWE:   Your Honor, the question at issue in the

13   case is whether or not Mc- -- Ms. McNae contacted someone that

14   she was not supposed to contact, in this instance, Microsoft.

15   It has nothing to do with whether Microsoft had any

16   discussions --

17            THE COURT:   Right.

18            MR. BERLOWE:   -- with Ms. McNae.

19            THE COURT:   I understand.   I understand that's your

20   case, but she gets to bring a case -- or she gets to defend the

21   case.   And as -- part of her defense I've heard today is going

22   to be the issue that the contract is void for public policy

23   reasons.

24       Again, I understand your position on that, but it's

25   discovery.

1      **MR. BERLOWE:**  Your Honor, that -- that defense is not

2  yet asserted.  It may be asserted.  We're at a motion to

3  dismiss phase in the case.  We don't know yet that that defense

4  will ultimately be raised.  It may be.  I'm not -- I'm not

5  saying it can't be raised.  It certainly can be raised, but in

6  terms of the pleadings that exist right now --

7          **THE COURT:**  Okay.

8          **MR. BERLOWE:**  -- it's beyond the scope of the

9  pleadings.

10         **THE COURT:**  Right.

11      The problem is that she's allowed discovery, even though

12  there's a motion to dismiss pending, because the motion to

13  dismiss doesn't stay discovery.

14      So under that argument, a defendant would never be able to

15  seek any -- any evidence under potential defenses until the

16  motion to dismiss got heard, and the motions to dismiss often

17  get heard well into the discovery period.

18      So what about 2, "Any and all communications between you

19  and SoftwareONE that refer to McNae" -- "McNae or Fitzgerald"?

20         **MR. BERLOWE:**  Your Honor, I don't believe that's

21  relevant at all to the affirmative defense or -- or to the --

22  to the complaint at hand.

23         **THE COURT:**  What about law enforcement, Number 3?

24         **MR. BERLOWE:**  Communication with law enforcement?  I

25  don't believe that would be related to the -- to the -- to the

1    complaint or the -- the affirmative defense that Ms. McNae may

2    raise.

3         THE COURT:  I think that -- let's assume, for example,

4    that there is no communication with law enforcement; right?

5    That actually might be relevant to you because it goes to your

6    argument -- argument that this is a consensual case and that

7    there's no public policy argument to be made.

8         If there's a police report made or if Microsoft gave the

9    police some sort of information about this case or made a

10   report to it -- right? -- that could go to the claim that it

11   wasn't consensual and that the agreement is void public policy.

12   I'm not saying it is.  I don't know enough about the case

13   at this point.  I'm just saying it's discovery.  It's

14   relevance.  I think that I just made an argument.  I think an

15   argument can be made.

16        How about 4?

17             MR. BERLOWE:  4, Your Honor -- I don't -- Mr. McNae is

18   not a party to this case.  Any communications with Mr. McNae

19   and his employer, Microsoft, are irrelevant -- irrelevant to

20   the communications that Ms. McNae had with Microsoft, and

21   they're not relevant to -- to her affirmative defense --

22             THE COURT:  But --

23             MR. BERLOWE:  -- that she may raise.

24             THE COURT:  All right.  So 6 is the investigation.

25   I've already heard the argument as to the damages.

1       Is it not your position that the damages involve his

2   inability to collect his bonus during the time of the internal

3   investigation?

4            MR. BERLOWE:  Mr. McNae -- that's correct, but

5   Mr. McNae was not an employee of Microsoft, Your Honor.

6   Mr. Mc- -- and that's something that should be clarified

7   because it was misstated by Ms. Fotiu-Wojtowicz, that the

8   employer of Mr. Fitzgerald is SoftwareONE UK Limited, a

9   United Kingdom company.

10      It's not SoftwareONE, Inc.  It is a complete incorrect

11  statement to say that SoftwareONE, Inc. is Mr. Fitzgerald's

12  employer.  It's not his employer.  It's a related company to

13  his employer that made him -- they do contract with each other,

14  but that is not his employer, and it --

15           THE COURT:  This is not the -- this is the Microsoft

16  subpoena.

17           MR. BERLOWE:  This is the Microsoft subpoena that

18  we're talking about.

19           THE COURT:  Right.

20           MR. BERLOWE:  So with -- with respect to -- to

21  Microsoft, Mr. Fitzgerald is not an employee, wasn't expecting

22  bonuses or anything from Microsoft.  There was no finances.

23      Now, there may be reputational harm to Mr. Fitzgerald for

24  the communications related to Microsoft, but we have not yet

25  brought -- and we may, but we haven't brought -- a claim for

 1   defamation or some sort of disparagement as to -- as to

 2   Microsoft.  But we haven't brought that claim yet, Your Honor.

 3        So we're looking at breach of contract damages.  I don't

 4   believe that disparagement-type damages to Microsoft would be

 5   compensable under a breach of contract claim.

 6             **THE COURT:**  I don't think that's the point.  The point

 7   is any and all documents that relate to an investigation that

 8   Microsoft might have done.  So if Microsoft opens some sort of

 9   investigation into Mr. Fitzgerald's conduct -- right? -- then

10   it goes to whether or not potentially there was a breach or

11   not.

12        A breach may -- that was found -- there could be none,

13   although that would probably be beneficial to you, not to the

14   defendant, if the response was none.  But if there was some

15   response there, then it could -- well, that could also be

16   beneficial to you, which is why you list Microsoft as a

17   potential witness in the case.

18        Look, this is the problem I have with both of these

19   subpoenas.  The plaintiff lists Microsoft and SoftwareONE --

20   right? -- as people who have information.

21             **MR. BERLOWE:**  I understand that, Your Honor.

22             **THE COURT:**  So if they have information, then they've

23   got information, and she's entitled to discovery from them.

24        It's interesting because, as to the Microsoft, the person

25   whose privacy interests is more at stake is her client -- her

 1    client's husband.  She's represented that he is also her

 2    client, but it's her client's husband.  It would seem to me

 3    that if he's got a privacy interest, he's got to make it.  He's

 4    not making it, obviously.

 5         Or if Microsoft has an issue with disclosure, then they

 6    have to come and say, "I think this subpoena should be quashed

 7    or limited."

 8         But I don't see how the plaintiff can complain that these

 9    things are not relevant and should be quashed, given the scope

10    of the damages you allege or the quantity of the damages that

11    you put in the initial disclosures but -- more importantly,

12    given what the potential defenses, as stated by Counsel, are.

13         Let me -- let me ask you this.  What is the prejudice or

14    the harm to the plaintiff of these subpoenas being served?

15         **MR. BERLOWE:**  Well, Your Honor, there is reputational

16    harm because, essentially, this -- the subpoenas themselves --

17    the way they're worded, they accuse Mr. Fitzgerald of -- of

18    sexual -- of a sexual crime.

19         **THE COURT:**  All right.  Show me where that -- just

20    point that out to me where.

21         **MS. FOTIU-WOJTOWICZ:**  And, Your Honor, may I just --

22    on -- on that point?

23         The -- we were not notified until more than two weeks

24    after we gave notice, or approximately two weeks after we gave

25    notice, that Mr. Berlowe had any issue.  These subpoenas had

1    been served.  They -- they have been served.  They've been

2    received.  I've been contacted by counsel for both.

3        So that -- that point, whatever it was, that the ship has

4    sailed because I was not contacted immediately to let -- to --

5    there was no request that I keep these back from service.

6            THE COURT:  I don't see anything in the subpoena

7    themselves that makes that claim.

8        Can you point me to which one --

9            MR. BERLOWE:  Well, Your -- I guess, Your Honor, I'm

10   pre- -- I'm presupposing in my statement that they know what

11   statement she made -- has made in the past.

12       So it essentially re- -- relitigates, rebrings up these

13   allegations that she's made of sexual misconduct on the part of

14   Mr. Fitzgerald to -- to people in his industry, the software

15   industry.

16       He's a very high-up executive in the international

17   software industry, and essentially it's relitigating this

18   issue.

19           THE COURT:  It doesn't relitigate it because the way

20   that Microsoft or SoftwareONE would have to respond to the

21   subpoena is -- I'm sure they're in contact, like I said, with

22   the defense counsel.  They would say, you know, "What people at

23   Microsoft should we be looking for?"  And they'd just run a

24   search for her name.

25       They're not going to run a search for the allegation.  It

1  doesn't sound like the kind of case where, even if there was --

2  if there were any information at Microsoft about this, it

3  wouldn't be, like, so voluminous that you'd have to further

4  limit the search by -- by the type of conduct, by the type of

5  information.  The subpoena is pretty broad.

6      Now, I will say, Counsel, I certainly hope that, as

7  Counsel is conferring with Microsoft and SoftwareONE about the

8  subpoena, you're not providing them search terms or information

9  that suggests sexual misconduct on behalf of plaintiff.

10     **MS. FOTIU-WOJTOWICZ:**  I -- I mean, to the extent

11 that -- well, first of all, we haven't gotten to that point.  I

12 have been contacted by both, and I have discussed the fact that

13 we may need to do -- to discuss search terms.

14     I think that there are -- I mean, I don't know that

15 there's a need for that.  As Your Honor pointed out, we're

16 talking about a limited universe of communications and a

17 limited universe of people.

18     The only area where I think that it would come into play

19 is that we have asked for -- we have asked for information with

20 respect to SoftwareONE's sexual harassment/gender

21 discrimination policies with respect to inappropriate --

22 allegations of inappropriate touching and what steps are

23 supposed to be taken in the event that there's a report and

24 whether or not there were other reports with respect to

25 violation of those policies with respect to Mr. Fitzgerald.

1    So -- because we understand that this is not an isolated

2    incident, and we believe that -- that that -- that those two

3    causation -- that there have been problems with Mr. Fitzgerald

4    working with women in the workplace.

5    I'm not aware of -- of any other claims of rape with

6    respect to Mr. Fitzgerald's workplace, but it is my

7    understanding that women -- that there have been complaints by

8    women he works with, with respect to his machismo and things

9    like that and not -- general disrespect for women.

10    And that information -- if it's, you know, cumulative and

11    goes along with my client's complaint, I don't think that she

12    can be held responsible for the entirety of the -- any damages

13    caused by the investigation.

14    So that's the only extent that we have asked for

15    information related to kind of gender discrimination,

16    harassment, and complaints in the workplace with respect to --

17    with respect to Mr. Fitzgerald.

18    THE COURT:  But that generic information wouldn't

19    require you to tell counsel for Microsoft or SoftwareONE that

20    there's an allegation of a rape; right?

21    MS. FOTIU-WOJTOWICZ:  Yeah.  I believe my client has

22    already told them that.  So --

23    THE COURT:  But your client has told who?

24    MS. FOTIU-WOJTOWICZ:  Not counsel necessarily, but I

25    believe that both Microsoft and SoftwareONE are aware that my

```
 1    client is accusing Mr. Fitzgerald of nonconsensual sexual

 2    conduct and rape.

 3            THE COURT:  Well, then I guess you're banking hard on

 4    the confidential settlement agreement being waived for public

 5    policy --

 6            MS. FOTIU-WOJTOWICZ:  Those --

 7            THE COURT:  -- because, otherwise, it sounds like

 8    you've breached the settlement agreement.

 9            MS. FOTIU-WOJTOWICZ:  Well, some of the communications

10    were made before the settlement agreement was entered into.

11            THE COURT:  All right.

12            MS. FOTIU-WOJTOWICZ:  I'm just saying I don't think

13    that this is new information for them.  The question is timing.

14    When did they -- when did they learn about it?  What did they

15    do?  Did it actually cause -- also, you know, there are

16    criminal investigations of Mr. Fitzgerald closed in

17    San Francisco but ongoing in -- in Miami.

18        And to the extent that any information was obtained, as

19    part of those criminal investigations, we're not privy as to

20    whether or not they contacted Microsoft or SoftwareONE, which

21    is part of the reason we asked for that information, whether

22    they got that information as part of the criminal

23    investigations.

24        You know, there's a lot of different moving parts.  My

25    point is just I don't think that it's new information to either
```

```
 1   company.
 2              THE COURT:  I would just caution to tread lightly in
 3   speaking to counsel about these things.
 4              MS. FOTIU-WOJTOWICZ:  I understand.
 5         And, Your Honor, I took care, with respect to the
 6   subpoenas -- and I hope that that is acknowledged -- to -- to
 7   ask for the information that I needed without being
 8   inflammatory.
 9              MR. BERLOWE:  Your Honor --
10              THE COURT:  Counsel?
11              MR. BERLOWE:  -- with -- with respect to asking for
12   policies and procedures, that has no relevance whatsoever to
13   whether she breached the complaint.  It has no -- no relevance
14   with -- with respect to any affirmative defense she could
15   raise.
16         The only purpose for that is to bring claims against
17   SoftwareONE and Microsoft for their control or ability to
18   control my client, and that's precisely what we're talking
19   about here.  That's the type -- when you make -- seek requests
20   like that and you -- you send those signals to those companies,
21   they don't want to do business with somebody like my client.
22         And it's not true.  This was a consensual relationship,
23   and to -- to give this broad breadth of discovery in such a way
24   that they can start asking companies, "What's your policy about
25   when somebody alleges there's a sexual crime against one of
```

```
 1   your workers or one of your partnered entities?" that's getting

 2   far -- way afar from was there a breach of the confidential

 3   settlement agreement, and was there -- is there any relevant

 4   information to the affirmative defense this is void against

 5   public policy.

 6        That's trying to build character claims and third-party

 7   claims that's far afield from the scope of -- the scope of

 8   relevant discovery right now, Your Honor.

 9        Regardless, Your Honor, of -- of your willingness to --

10   whether this is seeking relevant documents, there's also the

11   additional issue that we're requesting a protective order.  We

12   believe the types of information that are being provided are

13   confidential and should be produced pursuant to protective

14   order.

15             THE COURT:  File a protective order.  Follow my

16   procedures.  You know how to do it.

17             MR. BERLOWE:  Well, Your Honor --

18             THE COURT:  If you want a protective order, consult

19   with defense counsel.  If you can't come to an agreement on a

20   protective order, then you set the hearing.  If you can come to

21   an agreement to the protective order, I'll sign it on the same

22   day.

23             MR. BERLOWE:  And then we haven't been able to come to

24   an agreement on a protective order with respect to one issue,

25   which was attorneys' eyes only.  Ms. McNae has a history of
```

1    taking --

2              **THE COURT:**  Well, stop, stop, stop.

3              **MR. BERLOWE:**  Okay, Your Honor.

4              **THE COURT:**  That's not before me here.

5        So if you have an issue that you haven't come -- been able

6    to agree on, then you set it for a hearing, and I'll decide

7    what the attorneys' eyes only provision should be.  This is not

8    a free-for-all; right?

9        What's set for hearing is the motion to -- your motion

10   essentially (Inaudible) to this motion to quash the subpoenas.

11   I'm going to deny it.

12       As to this last argument raised, as to the scope of the

13   policies and procedures -- look, I would be shocked if

14   Microsoft's policies on this weren't on their website; right?

15   Public companies typically have those kinds of policies on

16   their website.  They're pretty generic.

17       If SoftwareONE or Microsoft have an issue with those, then

18   I'll hear from them.  Their counsel is certainly more than -- I

19   mean, they are, but I can't imagine that they've hired lawyers

20   who aren't competent enough to read my procedures and -- and

21   move.  They can move not to produce that information.

22       But with respect to whether it's relevant to the case that

23   your client filed, on claims that your client is seeking

24   damages for, and for which the defendant has at least

25   articulated sufficient grounds for me to find that it could be

1  relevant to a defense, again, given how broad the relevancy

2  parameters are, I'm going to allow the subpoenas.

3          MR. BERLOWE:  Your Honor, one more point on the -- on

4  the privacy issue.

5          THE COURT:  Sure.

6          MR. BERLOWE:  It's a facet we may not appreciate.

7      My client is a client -- or is an employee of a

8  United Kingdom entity.

9          THE COURT:  Uh-huh.

10          MR. BERLOWE:  There are very strong privacy laws in

11  the United Kingdom with respect to employment files and the

12  data that employers collect on employees.

13          THE COURT:  Uh-huh.

14          MR. BERLOWE:  And those such documents must be

15  produced pursuant to the privacy laws of the United Kingdom,

16  the Data Protection Act of 2018.

17          THE COURT:  I'm very aware of that, yes.  I know.

18          MR. BERLOWE:  So, Your Honor, to that extent, I do --

19  I do believe that a protective order is within the scope of

20  what we're seeking to do because we're seeking to protect those

21  employment records that are coming out from SoftwareONE.

22          THE COURT:  Right.

23      Your obligation -- to the extent you have an obligation to

24  seek a protective order, as to this hearing, it's denied

25  without prejudice because you haven't followed the procedures.

```
 1   Follow the procedures.

 2        I do agree with you that some sort of protective order is

 3   typical in these cases and may be warranted in these cases.  If

 4   you can't come to an agreement as to it, then set it for

 5   hearing.

 6             MR. BERLOWE:  Thank you, Your Honor.

 7             THE COURT:  But (Inaudible) basis, I'll deny the --

 8   the -- or to grant your motion.

 9        All right.  Anything further?

10             MR. BERLOWE:  I appreciate your time and for

11   (Inaudible).

12             THE COURT:  You're welcome.

13        Anything further?

14             MS. FOTIU-WOJTOWICZ:  Thank you, Judge.  No.

15             THE COURT:  All right.  So what will happen is -- I

16   don't think you -- either one of you have appeared before me.

17   What will happen is I'll issue a paperless order.

18        And so if you've got any issue with my order and you want

19   to take it up to Judge Martinez, you can take the transcript

20   and do so.  Otherwise, the transcript obviously serves as part

21   of the court order, and the paperless order denying your motion

22   will refer to the reasons stated on the record.

23        And so that's how we do it.  I typically give you these

24   hearings pretty quickly.  I think this one -- we actually were

25   able to squeeze it in pretty quickly.
```

1    **MR. BERLOWE:** Yes, Your Honor.

2    **THE COURT:** So if you can't agree on this protective

3    order with her by tomorrow, email chambers, and I'll give you a

4    hearing on it early next week. If not -- I'm not going to do

5    it Friday. Today is already Wednesday. I'll give you a

6    hearing Monday or Tuesday on it.

7    And, by the way, agree to a protective order.

8    **MS. FOTIU-WOJTOWICZ:** Yeah.

9    Judge, we have -- we have no issue with a protective order

10   limiting the use to -- to this case. It's just he's asked

11   for -- for more than that. He's asked for me to not be able to

12   confer with my client regarding the documents that are

13   produced.

14   **THE COURT:** Well -- and there might be -- this is what

15   happens. If there's an attorneys' eyes only provision and he

16   notes that some things are attorneys' eyes only and you think

17   you need to share it with your client, I assume the protective

18   order would have means in which you'd come to the Court and say

19   this is improperly labeled, and then I'll make a ruling then.

20   That's not a reason to deny him the protective order.

21   **MS. FOTIU-WOJTOWICZ:** He's asked for all documents

22   produced to be attorneys' eyes only.

23   **THE COURT:** Well, there's no way you can have a

24   protective order that says that; right? Typically, in a

25   protective order, it says things can be marked attorneys' eyes

1    only.

2         You can't just say everything in the case is attorneys'

3    eyes only.  I've never heard of that, Counsel.  But if there's

4    documents that you're producing and you want to limit it to

5    attorneys' eyes only and you're too broad on that brush, I'll

6    hear from you then.

7         You know, if Microsoft is going to produce documents in

8    this case, then they're going to produce them to the parties.

9    I mean, they're not going to be subject to an attorneys' eyes

10   only provision as the third party unless you come up with some

11   other terms to do so.

12        But I caution you to not be too low on the attorneys' eyes

13   only because these cases typically would require some -- I

14   could envision documents that would be appropriate for them to

15   be attorneys' eyes only.

16        Don't broad [sic] them with too broad of a brush, or we're

17   going to be spending a lot of time together going through

18   documents and having me rule that they are or not attorneys'

19   eyes only because -- obviously, we'll do that if the brush

20   that's painted on them is too broad.

21        All right.  Thank you very much.

22             MR. BERLOWE:  Thank you for your time.

23             MS. FOTIU-WOJTOWICZ:  Thank you, Judge.

24             MR. BERLOWE:  Have a good day.

25             THE CLERK:  All rise.

1          **THE COURT:**  My 12:00 o'clock's already here.

2               (Proceedings adjourned at 11:40 a.m.)

1

2

3                    <u>**CERTIFICATE OF TRANSCRIBER**</u>

4           I certify that the foregoing is a true and correct

5      transcript, to the best of my ability, of the above pages of

6      the official electronic sound recording provided to me by the

7      U.S. District Court, Southern District of Florida, of the

8      proceedings taken on the date and time previously stated in the

9      above matter.

10          I further certify that I am neither counsel for,

11     related to, nor employed by any of the parties to the action in

12     which this hearing was taken, and further that I am not

13     financially nor otherwise interested in the outcome of the

14     action.

15

16     DATE:  Tuesday, November 1, 2022

17

18

19

20          _____/S/ James C. Pence-Aviles_____

21          James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                          U.S. Court Reporter
22

23

24

25

MR. BERLOWE: [36]
MS. FOTIU-WOJTOWICZ:
[15]   1:2/13 1:3/14
1:3/19 1:18/20 1:20/9
1:21/20 1:21/23 1:22/5
1:22/8 1:22/11 1:23/3
1:27/13 1:28/7 1:28/20
1:29/22
THE CLERK: [2]   1:2/3
1:29/24
THE COURT: [47]

**$**

$450,000 [3]   1:6/24
1:7/7 1:8/10

**-**

---000 [1]   1:2/3

**/**

/S [1]   1:31/20

**0**

000 [1]   1:2/3

**1**

100 [1]   1:1/16
10:57 [2]   1:1/13 1:2/1
11:40 [2]   1:1/13 1:30/2
12:00 o'clock's [1]
1:30/1
13059 [2]   1:1/25 1:31/21
16 [4]   1:3/1 1:3/1 1:3/2
1:3/3
17 [4]   1:2/20 1:2/24
1:2/25 1:3/4
19 [4]   1:1/11 1:2/1
1:2/20 1:2/24

**2**

200 [1]   1:1/20
2018 [1]   1:26/16
2022 [3]   1:1/11 1:2/1
1:31/16
22-CV-22171-JEM [1]
1:1/7
22-CV-22171-Martinez [1]
1:2/8

**3**

30 [1]   1:1/1
3105 [1]   1:1/16
33131 [2]   1:1/17 1:1/20

400 [1]   1:1/20
43 [1]   1:1/13

**9**

9th [1]   1:7/1

**A**

a.m [4]   1:1/13 1:1/13
1:2/1 1:30/2
ability [3]   1:7/23
1:23/17 1:31/5
able [6]   1:6/10 1:14/14
1:24/23 1:25/5 1:27/25
1:28/11
about [15]   1:6/18 1:8/7
1:14/18 1:14/23 1:15/9
1:15/12 1:15/16 1:16/18
1:20/2 1:20/7 1:20/16
1:22/14 1:23/3 1:23/19
1:23/24
above [2]   1:31/5 1:31/9
account [2]   1:8/22
1:8/24
accuse [1]   1:18/17
accused [1]   1:5/21
accusing [1]   1:22/1
acknowledged [1]   1:23/6
acquaintances [1]   1:5/23
Act [1]   1:26/16
action [3]   1:11/19
1:31/11 1:31/14
actions [1]   1:7/24
actual [3]   1:5/5 1:6/20
1:7/8
actually [4]   1:5/7
1:15/5 1:22/15 1:27/24
additional [2]   1:7/15
1:24/11
adjourned [1]   1:30/2
advantage [1]   1:4/21
afar [1]   1:24/2
affair [1]   1:10/8
affirmative [7]   1:5/17
1:12/6 1:14/21 1:15/1
1:15/21 1:23/14 1:24/4
afield [1]   1:24/7
after [6]   1:4/3 1:4/24
1:7/1 1:9/17 1:18/24
1:18/24
AG [1]   1:9/12
again [3]   1:10/3 1:13/24
1:26/1
against [6]   1:5/18
1:5/23 1:11/3 1:23/16

agree [6]   1:12/4 1:12/14
1:25/6 1:27/2 1:28/2
1:28/7
agreed [5]   1:3/25 1:6/20
1:7/2 1:7/4 1:11/24
agreement [38]
agrees [1]   1:12/15
aimed [2]   1:5/16 1:6/1
ALAINA [2]   1:1/21 1:2/15
all [28]   1:2/4 1:2/17
1:2/18 1:3/10 1:3/16
1:5/4 1:5/14 1:7/4 1:8/6
1:10/1 1:11/1 1:12/2
1:12/20 1:13/6 1:13/7
1:14/18 1:14/21 1:15/24
1:17/7 1:18/19 1:20/11
1:22/11 1:25/8 1:27/9
1:27/15 1:28/21 1:29/21
1:29/25
allegation [2]   1:19/25
1:21/20
allegations [5]   1:4/22
1:5/10 1:9/22 1:19/13
1:20/22
allege [1]   1:18/10
alleges [1]   1:23/25
allow [1]   1:26/2
allowed [1]   1:14/11
along [3]   1:6/25 1:7/2
1:21/11
already [4]   1:15/25
1:21/22 1:28/5 1:30/1
also [11]   1:2/20 1:5/20
1:8/8 1:8/13 1:8/15
1:8/21 1:9/18 1:17/15
1:18/1 1:22/15 1:24/10
although [2]   1:3/7
1:17/13
am [2]   1:31/10 1:31/12
America [1]   1:9/13
any [25]   1:7/6 1:8/8
1:8/9 1:8/16 1:8/17
1:8/18 1:10/11 1:12/11
1:13/7 1:13/8 1:13/15
1:14/15 1:14/15 1:14/18
1:15/18 1:17/7 1:18/25
1:20/2 1:21/5 1:21/12
1:22/18 1:23/14 1:24/3
1:27/18 1:31/11
anything [4]   1:16/22
1:19/6 1:27/9 1:27/13
appearances [2]   1:1/14
1:2/9
appeared [1]   1:27/16

appears [1]   1:5/24
appreciate [2]   1:26/6
 1:27/10
appropriate [2]   1:12/24
 1:29/14
approximately [1]
 1:18/24
are [42]
area [1]   1:20/18
aren't [1]   1:25/20
argument [10]   1:12/8
 1:12/12 1:14/14 1:15/6
 1:15/6 1:15/7 1:15/14
 1:15/15 1:15/25 1:25/12
arm [1]   1:9/12
articulated [1]   1:25/25
as [44]
ask [3]   1:12/11 1:18/13
 1:23/7
asked [9]   1:8/7 1:9/5
 1:20/19 1:20/19 1:21/14
 1:22/21 1:28/10 1:28/11
 1:28/21
asking [2]   1:23/11
 1:23/24
aspects [2]   1:11/1
 1:11/12
asserted [2]   1:14/2
 1:14/2
ASSOULINE [2]   1:1/16
 1:2/12
assume [2]   1:15/3
 1:28/17
attempt [2]   1:5/19 1:6/4
attempting [1]   1:6/2
attend [2]   1:4/5 1:4/19
attorneys' [12]   1:24/25
 1:25/7 1:28/15 1:28/16
 1:28/22 1:28/25 1:29/2
 1:29/5 1:29/9 1:29/12
 1:29/15 1:29/18
Audio [1]   1:1/13
authorities [1]   1:6/23
Aviles [3]   1:1/25
 1:31/20 1:31/21
aware [3]   1:21/5 1:21/25
 1:26/17

**B**

back [1]   1:19/5
backdrop [1]   1:5/1
banking [1]   1:22/3
basis [1]   1:27/7
be [48]

1:7/2 1:7/9 1:7/15
1:8/17 1:8/19 1:14/12
1:15/5 1:16/7 1:17/24
1:18/16 1:19/4 1:19/19
1:21/1 1:22/7 1:26/20
1:26/25 1:29/13 1:29/19
Becerra [2]   1:1/4 1:2/7
been [19]   1:3/1 1:3/16
1:3/23 1:4/2 1:4/9
1:5/21 1:7/22 1:8/2
1:8/4 1:8/24 1:19/1
1:19/1 1:19/1 1:19/2
1:20/12 1:21/3 1:21/7
1:24/23 1:25/5
before [5]   1:1/4 1:8/16
1:22/10 1:25/4 1:27/16
behalf [2]   1:2/15 1:20/9
being [7]   1:4/14 1:11/23
1:13/11 1:18/14 1:22/4
1:23/7 1:24/12
believe [11]   1:7/25
1:12/25 1:13/4 1:14/20
1:14/25 1:17/4 1:21/2
1:21/21 1:21/25 1:24/12
1:26/19
beneficial [2]   1:17/13
1:17/16
BERLOWE [9]   1:1/16
1:1/17 1:2/12 1:2/12
1:7/2 1:7/6 1:8/11
1:10/4 1:18/25
best [1]   1:31/5
between [4]   1:4/13
1:10/18 1:13/7 1:14/18
beyond [1]   1:14/8
black [1]   1:4/21
black-out [1]   1:4/21
bon [1]   1:8/4
bonus [2]   1:7/18 1:16/2
bonuses [3]   1:8/4 1:8/11
1:16/22
both [15]   1:7/3 1:7/5
1:8/13 1:9/9 1:9/9
1:9/10 1:9/11 1:9/20
1:10/19 1:10/19 1:10/20
1:17/18 1:19/2 1:20/12
1:21/25
breach [12]   1:3/10
1:3/21 1:5/7 1:5/15
1:10/17 1:11/5 1:11/11
1:17/3 1:17/5 1:17/10
1:17/12 1:24/2
breached [3]   1:11/11
1:22/8 1:23/13

1:5/13
breadth [1]   1:23/23
bring [2]   1:13/20
1:23/16
bringing [1]   1:11/7
broad [8]   1:5/12 1:20/5
1:23/23 1:26/1 1:29/5
1:29/16 1:29/16 1:29/20
BRODSKY [2]   1:1/19
1:2/15
brought [3]   1:16/25
1:16/25 1:17/2
brush [3]   1:29/5 1:29/16
1:29/19
build [1]   1:24/6
business [2]   1:4/15
1:23/21

**C**

came [1]   1:10/20
can [11]   1:14/5 1:15/15
1:18/8 1:19/8 1:21/12
1:23/24 1:24/20 1:25/21
1:27/19 1:28/23 1:28/25
can't [6]   1:14/5 1:24/19
1:25/19 1:27/4 1:28/2
1:29/2
care [1]   1:23/5
case [24]   1:2/8 1:3/7
1:3/8 1:3/9 1:3/19
1:3/21 1:5/18 1:10/10
1:11/18 1:13/13 1:13/20
1:13/20 1:13/21 1:14/3
1:15/6 1:15/9 1:15/12
1:15/18 1:17/17 1:20/1
1:25/22 1:28/10 1:29/2
1:29/8
cases [3]   1:27/3 1:27/3
1:29/13
categories [2]   1:5/12
1:12/24
causation [4]   1:6/8
1:9/24 1:11/12 1:21/3
cause [3]   1:8/10 1:11/19
1:22/15
caused [1]   1:21/13
caution [2]   1:23/2
1:29/12
certainly [3]   1:14/5
1:20/6 1:25/18
CERTIFICATE [1]   1:31/3
certify [2]   1:31/4
1:31/10
chambers [1]   1:28/3

**character [1]** 1:24/6

**chief [2]** 1:4/8 1:4/8

**circumstances [1]** 1:9/1

**cities [1]** 1:10/9

**claim [6]** 1:3/23 1:15/10 1:16/25 1:17/2 1:17/5 1:19/7

**claimed [1]** 1:5/12

**claiming [1]** 1:7/22

**claims [8]** 1:6/24 1:8/12 1:9/25 1:21/5 1:23/16 1:24/6 1:24/7 1:25/23

**clarified [1]** 1:16/6

**client [22]** 1:4/4 1:4/17 1:4/19 1:4/25 1:5/7 1:7/20 1:7/24 1:8/20 1:8/21 1:17/25 1:18/2 1:21/21 1:21/23 1:22/1 1:23/18 1:23/21 1:25/23 1:25/23 1:26/7 1:26/7 1:28/12 1:28/17

**client's [5]** 1:3/23 1:8/12 1:18/1 1:18/2 1:21/11

**closed [1]** 1:22/16

**colleague's [1]** 1:4/22

**collect [2]** 1:16/2 1:26/12

**com [1]** 1:11/9

**come [10]** 1:4/19 1:18/6 1:20/18 1:24/19 1:24/20 1:24/23 1:25/5 1:27/4 1:28/18 1:29/10

**coming [1]** 1:26/21

**commenced [1]** 1:7/20

**communication [2]** 1:14/24 1:15/4

**communications [9]** 1:8/13 1:9/4 1:13/7 1:14/18 1:15/18 1:15/20 1:16/24 1:20/16 1:22/9

**companies [6]** 1:4/13 1:4/14 1:11/17 1:23/20 1:23/24 1:25/15

**company [4]** 1:4/6 1:16/9 1:16/12 1:23/1

**compensable [1]** 1:17/5

**compensate [1]** 1:3/25

**compensation [2]** 1:7/23 1:8/6

**competent [1]** 1:25/20

**complain [1]** 1:18/8

**complaint [13]** 1:3/5 1:5/5 1:5/6 1:9/22

1:11/9 1:11/9 1:14/22 1:15/1 1:21/11 1:23/13

**complaints [2]** 1:21/7 1:21/16

**complete [1]** 1:16/10

**completely [1]** 1:11/2

**conduct [8]** 1:5/22 1:6/11 1:7/15 1:8/12 1:8/17 1:17/9 1:20/4 1:22/2

**conducted [1]** 1:8/16

**confer [1]** 1:28/12

**conferring [1]** 1:20/7

**confidential [11]** 1:7/12 1:10/6 1:10/17 1:10/25 1:11/10 1:11/16 1:11/20 1:11/25 1:22/4 1:24/2 1:24/13

**confidentiality [2]** 1:3/6 1:6/16

**connect [1]** 1:3/19

**consensual [5]** 1:10/6 1:10/23 1:15/6 1:15/11 1:23/22

**consent [2]** 1:4/23 1:10/12

**consideration [3]** 1:6/14 1:6/15 1:11/1

**consisted [1]** 1:10/7

**constituted [1]** 1:5/7

**constitutes [1]** 1:5/15

**consult [1]** 1:24/18

**contact [4]** 1:4/12 1:8/18 1:13/14 1:19/21

**contacted [5]** 1:13/13 1:19/2 1:19/4 1:20/21 1:22/20

**contacts [4]** 1:5/10 1:5/11 1:8/19 1:9/22

**continue [1]** 1:7/17

**contract [9]** 1:3/21 1:3/22 1:11/10 1:12/6 1:13/11 1:13/22 1:16/13 1:17/3 1:17/5

**control [2]** 1:23/17 1:23/18

**controlling [1]** 1:11/5

**convinced [1]** 1:4/19

**core [1]** 1:9/21

**corporate [1]** 1:7/19

**correct [4]** 1:3/14 1:3/15 1:16/4 1:31/4

**could [10]** 1:8/9 1:9/6 1:10/22 1:15/10 1:17/12

1:25/25 1:29/14

**counsel [15]** 1:2/9 1:10/19 1:18/12 1:19/2 1:19/22 1:20/6 1:20/7 1:21/19 1:21/24 1:23/3 1:23/10 1:24/19 1:25/18 1:29/3 1:31/10

**counseling [1]** 1:4/1

**count [2]** 1:3/21 1:10/16

**course [3]** 1:8/5 1:9/18 1:9/23

**court [8]** 1:1/2 1:1/25 1:2/5 1:2/12 1:27/21 1:28/18 1:31/7 1:31/21

**cover [2]** 1:5/19 1:6/4

**covered [1]** 1:5/25

**crime [4]** 1:5/19 1:6/4 1:18/18 1:23/25

**criminal [3]** 1:22/16 1:22/19 1:22/22

**CRR [2]** 1:1/25 1:31/21

**CSR [2]** 1:1/25 1:31/21

**cumulative [1]** 1:21/10

**currently [1]** 1:4/7

**CV [2]** 1:1/7 1:2/8

---

**D**

**damaged [1]** 1:7/22

**damages [23]** 1:6/9 1:6/12 1:6/18 1:6/19 1:6/21 1:6/24 1:7/6 1:7/8 1:7/13 1:7/15 1:7/17 1:9/25 1:11/11 1:12/10 1:13/10 1:15/25 1:16/1 1:17/3 1:17/4 1:18/10 1:18/10 1:21/12 1:25/24

**data [2]** 1:26/12 1:26/16

**date [4]** 1:8/16 1:8/18 1:31/8 1:31/16

**dates [1]** 1:5/9

**day [4]** 1:4/19 1:12/8 1:24/22 1:29/24

**decide [1]** 1:25/6

**defamation [1]** 1:17/1

**defend [2]** 1:12/5 1:13/20

**defendant [10]** 1:1/9 1:1/19 1:2/16 1:3/13 1:3/18 1:10/22 1:11/14 1:14/14 1:17/14 1:25/24

**defendant's [2]** 1:9/10 1:9/18

**defense [13]** 1:5/18

**defense... [12]**   1:12/9
 1:13/21 1:14/1 1:14/3
 1:14/21 1:15/1 1:15/21
 1:19/22 1:23/14 1:24/4
 1:24/19 1:26/1
**defenses [3]**   1:12/6
 1:14/15 1:18/12
**denied [1]**   1:26/24
**deny [4]**   1:10/10 1:25/11
 1:27/7 1:28/20
**denying [1]**   1:27/21
**determine [1]**   1:5/14
**did [7]**   1:5/7 1:7/5
 1:10/12 1:22/14 1:22/14
 1:22/14 1:22/15
**didn't [3]**   1:3/1 1:7/9
 1:9/7
**different [1]**   1:22/24
**Digital [1]**   1:1/13
**dinner [2]**   1:4/3 1:4/18
**direct [1]**   1:7/19
**directly [1]**   1:9/6
**disclosure [2]**   1:9/14
 1:18/5
**disclosures [8]**   1:6/22
 1:6/25 1:7/3 1:9/9
 1:9/10 1:9/10 1:9/19
 1:18/11
**discoverable [2]**   1:9/15
 1:9/21
**discovery [15]**   1:2/18
 1:7/16 1:9/8 1:10/15
 1:11/8 1:11/13 1:11/22
 1:13/25 1:14/11 1:14/13
 1:14/17 1:15/13 1:17/23
 1:23/23 1:24/8
**discrimination [2]**
 1:20/21 1:21/15
**discuss [1]**   1:20/13
**discussed [1]**   1:20/12
**discussing [1]**   1:10/22
**discussion [1]**   1:6/17
**discussions [1]**   1:13/16
**dismiss [5]**   1:14/3
 1:14/12 1:14/13 1:14/16
 1:14/16
**disparage [1]**   1:11/17
**disparagement [3]**
 1:10/24 1:17/1 1:17/4
**disparagement-type [1]**
 1:17/4
**dispute [1]**   1:5/4
**disrespect [1]**   1:21/9
**DISTRICT [6]**   1:1/2 1:1/3

 1:31/7
**do [21]**   1:3/10 1:7/8
 1:7/14 1:10/22 1:11/14
 1:11/15 1:13/15 1:16/13
 1:20/13 1:22/15 1:23/21
 1:24/16 1:26/18 1:26/19
 1:26/20 1:27/2 1:27/20
 1:27/23 1:28/4 1:29/11
 1:29/19
**Docket [1]**   1:2/20
**document [1]**   1:11/4
**documentation [2]**   1:7/16
 1:9/4
**documents [15]**   1:2/21
 1:7/2 1:7/4 1:7/7 1:7/8
 1:7/14 1:17/7 1:24/10
 1:26/14 1:28/12 1:28/21
 1:29/4 1:29/7 1:29/14
 1:29/18
**doesn't [3]**   1:14/13
 1:19/19 1:20/1
**doing [1]**   1:8/25
**don't [20]**   1:7/6 1:8/3
 1:8/5 1:12/8 1:14/3
 1:14/20 1:14/25 1:15/12
 1:15/17 1:17/3 1:17/6
 1:18/8 1:19/6 1:20/14
 1:21/11 1:22/12 1:22/25
 1:23/21 1:27/16 1:29/16
**done [3]**   1:11/22 1:11/23
 1:17/8
**drafted [1]**   1:10/20
**drunk [1]**   1:4/21
**during [1]**   1:16/2

**E**

**each [1]**   1:16/13
**early [2]**   1:4/19 1:28/4
**either [2]**   1:22/25
 1:27/16
**electronic [2]**   1:1/12
 1:31/6
**email [3]**   1:7/1 1:7/9
 1:28/3
**EMERSON [1]**   1:1/17
**employed [1]**   1:31/11
**employee [3]**   1:16/5
 1:16/21 1:26/7
**employees [1]**   1:26/12
**employer [10]**   1:7/21
 1:7/23 1:8/1 1:8/3
 1:15/19 1:16/8 1:16/12
 1:16/12 1:16/13 1:16/14
**employers [1]**   1:26/12

 1:26/21
**enforceable [1]**   1:11/2
**enforcement [3]**   1:14/23
 1:14/24 1:15/4
**enough [2]**   1:15/12
 1:25/20
**enter [1]**   1:4/25
**entered [3]**   1:3/22
 1:10/18 1:22/10
**entirety [2]**   1:12/13
 1:21/12
**entities [4]**   1:9/15
 1:9/20 1:9/22 1:24/1
**entitled [3]**   1:12/9
 1:12/9 1:17/23
**entity [4]**   1:9/17 1:9/23
 1:10/14 1:26/8
**Entry [1]**   1:2/20
**envision [1]**   1:29/14
**ESQ [2]**   1:1/17 1:1/21
**essentially [5]**   1:11/24
 1:18/16 1:19/12 1:19/17
 1:25/10
**even [3]**   1:3/1 1:14/11
 1:20/1
**event [2]**   1:6/10 1:20/23
**events [1]**   1:8/9
**everything [1]**   1:29/2
**evidence [2]**   1:5/20
 1:14/15
**exactly [2]**   1:5/15
 1:11/15
**example [1]**   1:15/3
**except [1]**   1:10/12
**excess [1]**   1:6/24
**excuse [2]**   1:4/7 1:5/21
**executive [1]**   1:19/16
**executives [1]**   1:8/23
**exist [1]**   1:14/6
**expecting [1]**   1:16/21
**explained [1]**   1:8/25
**explains [1]**   1:7/13
**extent [6]**   1:9/6 1:20/10
 1:21/14 1:22/18 1:26/18
 1:26/23
**extra [1]**   1:10/7
**extramarital [1]**   1:10/8
**eyes [12]**   1:24/25 1:25/7
 1:28/15 1:28/16 1:28/22
 1:28/25 1:29/3 1:29/5
 1:29/9 1:29/12 1:29/15
 1:29/19

fact [2]   1:7/5 1:20/12
failure [1]   1:8/10
fair [3]   1:11/12 1:12/25
 1:13/4
familiar [1]   1:3/7
far [3]   1:10/14 1:24/2
 1:24/7
file [2]   1:7/9 1:24/15
filed [8]   1:2/19 1:2/20
 1:3/1 1:3/4 1:3/17
 1:6/23 1:12/3 1:25/23
files [1]   1:26/11
filing [1]   1:2/24
finances [1]   1:16/22
financially [1]   1:31/13
find [1]   1:25/25
first [8]   1:1/20 1:3/7
 1:3/18 1:5/4 1:5/14
 1:12/2 1:13/7 1:20/11
FITZGERALD [32]
Fitzgerald's [3]   1:16/11
 1:17/9 1:21/6
FLORIDA [6]   1:1/3 1:1/10
 1:1/17 1:1/20 1:2/6
 1:31/7
Follow [2]   1:24/15
 1:27/1
followed [1]   1:26/25
foregoing [1]   1:31/4
forward [1]   1:10/22
FOTTIU [5]   1:1/19 1:1/21
 1:2/15 1:2/15 1:16/7
FOTTIU-WOJTOWICZ [4]
 1:1/19 1:1/21 1:2/15
 1:2/15
found [1]   1:17/12
four [1]   1:5/3
fourth [1]   1:6/5
Francisco [1]   1:22/17
free [1]   1:25/8
free-for-all [1]   1:25/8
Friday [1]   1:28/5
friend [1]   1:4/21
further [5]   1:20/3
 1:27/9 1:27/13 1:31/10
 1:31/12

G

game [3]   1:11/12 1:13/1
 1:13/5
gave [3]   1:15/8 1:18/24
 1:18/24
gender [2]   1:20/20
 1:21/15

Generally [1]   1:3/6
generic [2]   1:21/18
 1:25/16
get [5]   1:7/16 1:9/6
 1:9/7 1:12/7 1:14/17
gets [3]   1:12/5 1:13/20
 1:13/20
getting [1]   1:24/1
give [6]   1:3/12 1:12/18
 1:23/23 1:27/23 1:28/3
 1:28/5
given [4]   1:11/1 1:18/9
 1:18/12 1:26/1
go [3]   1:6/5 1:13/6
 1:15/10
goes [3]   1:15/5 1:17/10
 1:21/11
going [13]   1:3/4 1:3/9
 1:10/22 1:13/21 1:19/25
 1:25/11 1:26/2 1:28/4
 1:29/7 1:29/8 1:29/9
 1:29/17 1:29/17
good [4]   1:2/11 1:2/14
 1:10/3 1:29/24
got [8]   1:4/20 1:5/2
 1:14/16 1:17/23 1:18/3
 1:18/3 1:22/22 1:27/18
gotten [1]   1:20/11
grab [1]   1:12/17
grant [1]   1:27/8
great [1]   1:8/25
grounds [1]   1:25/25
grow [1]   1:7/17
guess [2]   1:19/9 1:22/3

H

had [9]   1:3/1 1:3/23
 1:4/4 1:7/2 1:12/18
 1:13/15 1:15/20 1:18/25
 1:18/25
hand [1]   1:14/22
happen [2]   1:27/15
 1:27/17
happened [3]   1:4/24
 1:8/18 1:8/18
happens [1]   1:28/15
harassment [2]   1:20/20
 1:21/16
harassment/gender [1]
 1:20/20
hard [1]   1:22/3
harm [3]   1:16/23 1:18/14
 1:18/16
has [15]   1:3/16 1:5/5

1:13/15 1:18/5 1:19/3
 1:19/11 1:21/21 1:21/23
 1:23/12 1:23/13 1:24/25
 1:25/24
have [38]
haven't [6]   1:16/25
 1:17/2 1:20/11 1:24/23
 1:25/5 1:26/25
having [1]   1:29/18
he [10]   1:4/7 1:4/10
 1:4/19 1:7/22 1:7/22
 1:8/25 1:9/7 1:18/1
 1:21/8 1:28/15
he's [8]   1:4/9 1:18/3
 1:18/3 1:18/3 1:19/16
 1:28/10 1:28/11 1:28/21
hear [7]   1:3/4 1:3/12
 1:3/12 1:3/18 1:10/1
 1:25/18 1:29/6
heard [5]   1:13/21
 1:14/16 1:14/17 1:15/25
 1:29/3
hearing [10]   1:2/19
 1:3/8 1:24/20 1:25/6
 1:25/9 1:26/24 1:27/5
 1:28/4 1:28/6 1:31/12
hearings [1]   1:27/24
heart [1]   1:10/5
heavily [2]   1:10/19
 1:10/20
held [1]   1:21/12
her [15]   1:3/25 1:3/25
 1:4/4 1:4/20 1:4/20
 1:4/21 1:12/2 1:13/21
 1:15/21 1:17/25 1:17/25
 1:18/1 1:18/2 1:19/24
 1:28/3
here [6]   1:2/18 1:7/7
 1:11/21 1:23/19 1:25/4
 1:30/1
herself [1]   1:12/5
high [1]   1:19/16
high-up [1]   1:19/16
him [5]   1:5/23 1:8/2
 1:8/23 1:16/13 1:28/20
hired [1]   1:25/19
his [20]   1:4/10 1:4/21
 1:5/22 1:5/22 1:7/20
 1:7/23 1:7/23 1:7/25
 1:8/1 1:8/3 1:8/5 1:8/10
 1:15/19 1:16/1 1:16/2
 1:16/12 1:16/13 1:16/14
 1:19/14 1:21/8
history [1]   1:24/25

Hold [1]   1:12/17
Honor [36]
Honorable [2]   1:1/4
 1:2/6
hope [2]   1:20/6 1:23/6
how [9]   1:2/21 1:3/19
 1:5/2 1:12/8 1:15/16
 1:18/8 1:24/16 1:26/1
 1:27/23
huh [2]   1:26/9 1:26/13
husband [4]   1:4/5 1:4/20
 1:18/1 1:18/2

**I**
I'll [10]   1:8/19 1:24/21
 1:25/6 1:25/18 1:27/7
 1:27/17 1:28/3 1:28/5
 1:28/19 1:29/5
I'm [18]   1:2/23 1:3/6
 1:3/7 1:3/9 1:12/20
 1:14/4 1:14/4 1:15/12
 1:15/13 1:19/9 1:19/10
 1:19/21 1:21/5 1:22/12
 1:25/11 1:26/2 1:26/17
 1:28/4
I've [6]   1:3/5 1:3/5
 1:13/21 1:15/25 1:19/2
 1:29/3
imagine [1]   1:25/19
immediately [1]   1:19/4
important [1]   1:6/6
importantly [1]   1:18/11
improperly [1]   1:28/19
inability [1]   1:16/2
inappropriate [2]
 1:20/21 1:20/22
Inaudible [3]   1:25/10
 1:27/7 1:27/11
Inc [5]   1:9/13 1:9/16
 1:10/14 1:16/10 1:16/11
incident [1]   1:21/2
including [1]   1:4/1
incorrect [1]   1:16/10
individuals [2]   1:9/15
 1:9/17
industry [3]   1:19/14
 1:19/15 1:19/17
inflammatory [1]   1:23/8
information [25]   1:9/3
 1:9/5 1:9/15 1:9/21
 1:9/24 1:15/9 1:17/20
 1:17/22 1:17/23 1:20/2
 1:20/5 1:20/8 1:20/19
 1:21/10 1:21/15 1:21/18

 1:22/22 1:22/25 1:23/7
 1:24/4 1:24/12 1:25/21
initial [7]   1:6/22
 1:6/25 1:7/3 1:9/9
 1:9/14 1:9/19 1:18/11
innovation [1]   1:4/8
instance [1]   1:13/14
interest [1]   1:18/3
interested [1]   1:31/13
interesting [1]   1:17/24
interests [1]   1:17/25
internal [1]   1:16/2
international [2]   1:9/12
 1:19/16
intoxicated [1]   1:4/20
introduced [1]   1:4/16
invalidate [2]   1:6/2
 1:6/10
investigation [7]   1:7/20
 1:8/16 1:15/24 1:16/3
 1:17/7 1:17/9 1:21/13
investigations [3]
 1:22/16 1:22/19 1:22/23
involve [1]   1:16/1
IPO [1]   1:4/5
irrelevant [2]   1:15/19
 1:15/19
is [107]
isolated [1]   1:21/1
issue [18]   1:3/2 1:10/13
 1:11/5 1:12/10 1:13/11
 1:13/12 1:13/22 1:18/5
 1:18/25 1:19/18 1:24/11
 1:24/24 1:25/5 1:25/17
 1:26/4 1:27/17 1:27/18
 1:28/9
issued [1]   1:7/25
issues [3]   1:8/2 1:10/23
 1:11/24
it [72]
it's [28]   1:3/10 1:3/17
 1:5/18 1:6/1 1:6/3 1:7/7
 1:9/17 1:9/18 1:11/21
 1:11/22 1:11/22 1:13/24
 1:14/8 1:15/13 1:15/13
 1:16/10 1:16/12 1:16/12
 1:17/24 1:18/2 1:19/17
 1:21/10 1:22/25 1:23/22
 1:25/22 1:26/6 1:26/24
 1:28/10
itself [1]   1:6/13

**J**
Jacqueline [2]   1:1/4

James [3]   1:1/25 1:31/20
 1:31/21
JEM [1]   1:1/7
job [3]   1:4/10 1:8/9
 1:8/25
Judge [7]   1:1/4 1:2/6
 1:3/21 1:27/14 1:27/19
 1:28/9 1:29/23
just [14]   1:2/21 1:3/3
 1:5/9 1:12/17 1:15/13
 1:15/14 1:18/19 1:18/21
 1:19/23 1:22/12 1:22/25
 1:23/2 1:28/10 1:29/2

**K**
keep [1]   1:19/5
kind [6]   1:5/1 1:5/11
 1:6/5 1:9/3 1:20/1
 1:21/15
kinds [1]   1:25/15
Kingdom [4]   1:16/9
 1:26/8 1:26/11 1:26/15
knew [1]   1:8/15
know [20]   1:3/9 1:3/16
 1:6/1 1:8/3 1:8/5 1:8/6
 1:8/15 1:8/24 1:8/25
 1:14/3 1:15/12 1:19/10
 1:19/22 1:20/14 1:21/10
 1:22/15 1:22/24 1:24/16
 1:26/17 1:29/7

**L**
labeled [1]   1:28/19
large [1]   1:7/24
last [1]   1:25/12
lasted [1]   1:10/8
law [3]   1:14/23 1:14/24
 1:15/4
laws [2]   1:26/10 1:26/15
lawyers [1]   1:25/19
learn [1]   1:22/14
least [2]   1:5/24 1:25/24
led [1]   1:9/1
let [9]   1:3/12 1:3/12
 1:10/1 1:12/11 1:12/17
 1:12/17 1:18/13 1:18/13
 1:19/4
let's [3]   1:13/6 1:13/6
 1:15/3
lightly [1]   1:23/2
like [8]   1:11/8 1:19/21
 1:20/1 1:20/3 1:21/9
 1:22/7 1:23/20 1:23/21
limit [2]   1:20/4 1:29/4
limited [5]   1:10/21

**limited... [4]** 1:16/8
1:18/7 1:20/16 1:20/17
**limiting [1]** 1:28/10
**liquidated [2]** 1:6/18
1:6/19
**list [2]** 1:9/11 1:17/16
**listed [5]** 1:9/11 1:9/13
1:9/16 1:9/18 1:9/18
**lists [1]** 1:17/19
**look [4]** 1:3/5 1:6/22
1:17/18 1:25/13
**looked [4]** 1:3/6 1:7/1
1:8/8 1:11/4
**looking [2]** 1:17/3
1:19/23
**lot [2]** 1:22/24 1:29/17
**low [1]** 1:29/12

**M**

**machismo [1]** 1:21/8
**made [10]** 1:15/7 1:15/8
1:15/9 1:15/14 1:15/15
1:16/13 1:19/11 1:19/11
1:19/13 1:22/10
**Magistrate [2]** 1:1/4
1:2/6
**make [3]** 1:18/3 1:23/19
1:28/19
**makes [1]** 1:19/7
**making [1]** 1:18/4
**marked [1]** 1:28/25
**Martinez [2]** 1:2/8
1:27/19
**matter [5]** 1:3/5 1:8/5
1:10/15 1:11/18 1:31/9
**may [15]** 1:2/11 1:2/17
1:12/7 1:12/8 1:14/2
1:14/4 1:15/1 1:15/23
1:16/23 1:16/25 1:17/12
1:18/21 1:20/13 1:26/6
1:27/3
**Mc [3]** 1:4/24 1:13/13
1:16/6
**MCNAE [24]** 1:1/8 1:2/8
1:2/16 1:4/4 1:4/6
1:4/11 1:4/12 1:4/17
1:5/21 1:8/20 1:10/21
1:11/14 1:13/9 1:13/13
1:13/18 1:14/19 1:14/19
1:15/1 1:15/17 1:15/18
1:15/20 1:16/4 1:16/5
1:24/25
**McNae's [1]** 1:4/16
**me [25]** 1:3/12 1:3/12

1:5/21 1:5/24 1:10/1
1:12/11 1:12/17 1:12/17
1:12/18 1:12/23 1:18/2
1:18/13 1:18/13 1:18/19
1:18/20 1:19/8 1:25/4
1:25/25 1:27/16 1:28/11
1:29/18 1:31/6
**mean [4]** 1:20/10 1:20/14
1:25/19 1:29/9
**means [1]** 1:28/18
**media [1]** 1:5/10
**mental [1]** 1:6/14
**Miami [4]** 1:1/10 1:1/17
1:1/20 1:22/17
**MICHAEL [4]** 1:1/5 1:2/13
1:10/4 1:13/8
**Micro [1]** 1:12/18
**Microsoft [40]**
**Microsoft's [1]** 1:25/14
**might [3]** 1:15/5 1:17/8
1:28/14
**minutes [1]** 1:1/13
**misconduct [2]** 1:19/13
1:20/9
**misstated [1]** 1:16/7
**mistake [1]** 1:2/21
**moment [1]** 1:3/12
**Monday [1]** 1:28/6
**money [1]** 1:6/13
**months [1]** 1:10/8
**more [6]** 1:17/25 1:18/11
1:18/23 1:25/18 1:26/3
1:28/11
**morning [3]** 1:2/11
1:2/14 1:10/3
**most [1]** 1:6/6
**motion [11]** 1:3/16
1:3/17 1:14/2 1:14/12
1:14/12 1:14/16 1:25/9
1:25/9 1:25/10 1:27/8
1:27/21
**motions [1]** 1:14/16
**move [2]** 1:25/21 1:25/21
**moving [1]** 1:22/24
**Mr. [45]**
**Mr. Berlowe [4]** 1:7/2
1:7/6 1:8/11 1:18/25
**Mr. Fitzgerald [26]**
1:3/24 1:3/25 1:4/4
1:4/7 1:4/12 1:4/16
1:4/18 1:4/24 1:5/21
1:6/20 1:6/24 1:7/18
1:9/6 1:9/25 1:11/17
1:12/15 1:16/8 1:16/21

1:20/25 1:21/3 1:21/17
1:22/1 1:22/16
**Mr. Fitzgerald's [3]**
1:16/11 1:17/9 1:21/6
**Mr. Mc [2]** 1:4/24 1:16/6
**Mr. McNae [9]** 1:4/6
1:4/11 1:4/12 1:5/21
1:8/20 1:15/17 1:15/18
1:16/4 1:16/5
**Mr. McNae's [1]** 1:4/16
**Ms. [8]** 1:4/4 1:10/21
1:13/13 1:13/18 1:15/1
1:15/20 1:16/7 1:24/25
**Ms. Fotiu-Wojtowicz [1]**
1:16/7
**Ms. McNae [7]** 1:4/4
1:10/21 1:13/13 1:13/18
1:15/1 1:15/20 1:24/25
**much [1]** 1:29/21
**multiple [3]** 1:10/8
1:10/8 1:10/9
**must [1]** 1:26/14
**my [27]** 1:2/18 1:3/22
1:4/4 1:4/17 1:4/19
1:4/25 1:5/7 1:7/11
1:7/24 1:8/12 1:8/20
1:8/21 1:19/10 1:21/6
1:21/11 1:21/21 1:21/25
1:22/24 1:23/18 1:23/21
1:24/15 1:25/20 1:26/7
1:27/18 1:28/12 1:30/1
1:31/5

**N**

**name [1]** 1:19/24
**nearly [1]** 1:3/9
**necessarily [1]** 1:21/24
**need [4]** 1:7/15 1:20/13
1:20/15 1:28/17
**needed [2]** 1:9/7 1:23/7
**Needless [1]** 1:7/17
**negotiated [1]** 1:10/20
**negotiations [1]** 1:6/17
**neither [1]** 1:31/10
**never [2]** 1:14/14 1:29/3
**new [2]** 1:22/13 1:22/25
**next [1]** 1:28/4
**no [21]** 1:1/7 1:1/25
1:4/22 1:5/6 1:5/9 1:5/9
1:6/15 1:6/18 1:10/10
1:12/14 1:15/4 1:15/7
1:16/22 1:19/5 1:23/12
1:23/13 1:23/13 1:27/14
1:28/9 1:28/23 1:31/21

**non** [1]   1:10/24
**non-disparagement** [1]
1:10/24
**nonconsensual** [1]   1:22/1
**none** [2]   1:17/12 1:17/14
**North** [1]   1:9/13
**not** [60]
**note** [2]   1:5/6 1:8/19
**notes** [1]   1:28/16
**nothing** [1]   1:13/15
**notice** [6]   1:2/19 1:2/24
1:3/3 1:3/4 1:18/24
1:18/25
**notified** [1]   1:18/23
**November** [1]   1:31/16
**now** [6]   1:2/6 1:12/5
1:14/6 1:16/23 1:20/6
1:24/8
**nowhere** [1]   1:12/7
**Number** [4]   1:2/8 1:2/20
1:12/25 1:14/23
**Number 19** [1]   1:2/20
**Number 3** [1]   1:14/23
**Number 5** [1]   1:12/25

**O**

**o'clock's** [1]   1:30/1
**obligation** [2]   1:26/23
1:26/23
**obtain** [2]   1:7/23 1:8/10
**obtained** [1]   1:22/18
**obviously** [4]   1:8/17
1:18/4 1:27/20 1:29/19
**occur** [1]   1:10/12
**occurred** [1]   1:4/3
**October** [2]   1:1/11 1:2/1
**officer** [2]   1:4/8 1:4/9
**official** [3]   1:1/12
1:1/25 1:31/6
**often** [1]   1:14/16
**Oh** [1]   1:12/1
**Okay** [4]   1:12/23 1:13/2
1:14/7 1:25/3
**one** [13]   1:2/20 1:3/12
1:3/21 1:8/12 1:12/5
1:12/23 1:19/8 1:23/25
1:24/1 1:24/24 1:26/3
1:27/16 1:27/24
**one-count** [1]   1:3/21
**ongoing** [1]   1:22/17
**only** [18]   1:5/20 1:9/23
1:13/3 1:20/18 1:21/14
1:23/16 1:24/25 1:25/7
1:28/15 1:28/16 1:28/22

1:29/10 1:29/13 1:29/15
1:29/19
**open** [1]   1:12/18
**opens** [1]   1:17/8
**opportunities** [1]   1:7/19
**option** [1]   1:7/19
**options** [2]   1:8/4 1:8/11
**order** [21]   1:24/11
1:24/14 1:24/15 1:24/18
1:24/20 1:24/21 1:24/24
1:26/19 1:26/24 1:27/2
1:27/17 1:27/18 1:27/21
1:27/21 1:28/3 1:28/7
1:28/9 1:28/18 1:28/20
1:28/24 1:28/25
**other** [6]   1:8/8 1:8/9
1:16/13 1:20/24 1:21/5
1:29/11
**otherwise** [3]   1:22/7
1:27/20 1:31/13
**our** [5]   1:5/16 1:6/23
1:6/23 1:7/13 1:7/15
**out** [5]   1:4/21 1:8/23
1:18/20 1:20/15 1:26/21
**outcome** [1]   1:31/13
**over** [2]   1:7/8 1:10/8
**overreach** [1]   1:10/14

**P**

**P.A** [2]   1:1/16 1:2/12
**pages** [2]   1:1/1 1:31/5
**paid** [4]   1:4/4 1:6/14
1:6/15 1:8/5
**pain** [2]   1:3/25 1:6/15
**painted** [1]   1:29/20
**paperless** [2]   1:27/17
1:27/21
**parameters** [1]   1:26/2
**part** [12]   1:4/5 1:4/9
1:4/18 1:6/6 1:7/18
1:7/24 1:13/21 1:19/13
1:22/19 1:22/21 1:22/22
1:27/20
**particular** [1]   1:6/7
**particularly** [1]   1:6/7
**parties** [4]   1:10/19
1:11/24 1:29/8 1:31/11
**partner** [1]   1:4/10
**partnered** [1]   1:24/1
**partners** [1]   1:5/22
**parts** [1]   1:22/24
**party** [3]   1:15/18 1:24/6
1:29/10
**past** [3]   1:8/3 1:8/5

**payment** [1]   1:4/1
**Pence** [3]   1:1/25 1:31/20
1:31/21
**Pence-Aviles** [3]   1:1/25
1:31/20 1:31/21
**pending** [1]   1:14/12
**people** [5]   1:11/17
1:17/20 1:19/14 1:19/22
1:20/17
**performance** [1]   1:8/9
**period** [1]   1:14/17
**person** [1]   1:17/24
**PETER** [3]   1:1/17 1:2/12
1:10/4
**phase** [1]   1:14/3
**physical** [1]   1:6/14
**plaintiff** [13]   1:1/6
1:1/15 1:2/10 1:2/13
1:3/17 1:3/23 1:10/2
1:10/21 1:12/2 1:17/19
1:18/8 1:18/14 1:20/9
**plaintiff's** [3]   1:3/17
1:9/9 1:9/14
**play** [1]   1:20/18
**pleadings** [2]   1:14/6
1:14/9
**please** [2]   1:2/9 1:2/11
**PLLC** [1]   1:1/19
**point** [13]   1:4/12 1:4/20
1:8/20 1:15/13 1:17/6
1:17/6 1:18/20 1:18/22
1:19/3 1:19/8 1:20/11
1:22/25 1:26/3
**pointed** [1]   1:20/15
**police** [2]   1:15/8 1:15/9
**policies** [6]   1:20/21
1:20/25 1:23/12 1:25/13
1:25/14 1:25/15
**policy** [11]   1:5/19
1:5/23 1:6/3 1:11/3
1:12/7 1:13/22 1:15/7
1:15/11 1:22/5 1:23/24
1:24/5
**portion** [2]   1:7/13
1:12/11
**position** [3]   1:5/17
1:13/24 1:16/1
**posts** [1]   1:5/10
**potential** [3]   1:14/15
1:17/17 1:18/12
**potentially** [2]   1:13/10
1:17/10
**pre** [1]   1:19/10
**precisely** [1]   1:23/18

**predated [2]**  1:8/14
 1:9/1
**predator [1]**  1:5/25
**prejudice [2]**  1:18/13
 1:26/25
**prepared [1]**  1:2/22
**presiding [1]**  1:2/7
**pressuring [1]**  1:4/25
**presupposing [1]**  1:19/10
**pretend [1]**  1:3/9
**pretty [4]**  1:20/5
 1:25/16 1:27/24 1:27/25
**prevented [1]**  1:7/18
**previously [1]**  1:31/8
**primary [1]**  1:4/12
**print [1]**  1:3/1
**prior [1]**  1:8/18
**privacy [5]**  1:17/25
 1:18/3 1:26/4 1:26/10
 1:26/15
**privy [1]**  1:22/19
**probably [1]**  1:17/13
**problem [2]**  1:14/11
 1:17/18
**problems [1]**  1:21/3
**procedures [8]**  1:2/19
 1:7/9 1:23/12 1:24/16
 1:25/13 1:25/20 1:26/25
 1:27/1
**proceeding [3]**  1:2/23
 1:2/24 1:2/25
**proceedings [3]**  1:1/12
 1:30/2 1:31/8
**produce [4]**  1:7/3
 1:25/21 1:29/7 1:29/8
**produced [4]**  1:24/13
 1:26/15 1:28/13 1:28/22
**producing [1]**  1:29/4
**prohibit [1]**  1:7/10
**promised [1]**  1:11/15
**proper [1]**  1:12/12
**protect [1]**  1:26/20
**Protection [1]**  1:26/16
**protective [17]**  1:24/11
 1:24/13 1:24/15 1:24/18
 1:24/20 1:24/21 1:24/24
 1:26/19 1:26/24 1:27/2
 1:28/2 1:28/7 1:28/9
 1:28/17 1:28/20 1:28/24
 1:28/25
**prove [1]**  1:6/20
**provided [3]**  1:7/12
 1:24/12 1:31/6
**provides [1]**  1:6/13

**provision [7]**  1:6/16
 1:6/18 1:6/19 1:10/24
 1:25/7 1:28/15 1:29/10
**psychological [1]**  1:4/1
**public [11]**  1:5/19
 1:5/23 1:6/3 1:11/3
 1:12/7 1:13/22 1:15/7
 1:15/11 1:22/4 1:24/5
 1:25/15
**purpose [1]**  1:23/16
**purposes [1]**  1:3/3
**pursuant [3]**  1:2/18
 1:24/13 1:26/15
**pursue [2]**  1:12/9
 1:12/10
**put [2]**  1:3/2 1:18/11

**Q**

**quantity [1]**  1:18/10
**quash [1]**  1:25/10
**quashed [3]**  1:12/13
 1:18/6 1:18/9
**question [2]**  1:13/12
 1:22/13
**quickly [2]**  1:27/24
 1:27/25
**quite [1]**  1:4/9

**R**

**raise [3]**  1:15/2 1:15/23
 1:23/15
**raised [4]**  1:14/4 1:14/5
 1:14/5 1:25/12
**rape [7]**  1:4/3 1:4/3
 1:10/10 1:10/11 1:21/5
 1:21/20 1:22/2
**raped [1]**  1:3/23
**re [1]**  1:19/12
**reached [1]**  1:8/23
**read [1]**  1:25/20
**really [3]**  1:6/6 1:9/23
 1:11/18
**reason [2]**  1:22/21
 1:28/20
**reasons [2]**  1:13/23
 1:27/22
**rebrings [1]**  1:19/12
**received [1]**  1:19/2
**recognize [1]**  1:11/7
**record [3]**  1:2/9 1:3/3
 1:27/22
**recording [3]**  1:1/12
 1:1/13 1:31/6
**records [1]**  1:26/21
**refer [3]**  1:13/8 1:14/19

**regarding [2]**  1:11/9
 1:28/12
**Regardless [1]**  1:24/9
**rejected [1]**  1:6/19
**relate [4]**  1:5/3 1:5/4
 1:13/8 1:17/7
**related [9]**  1:7/14
 1:7/25 1:8/12 1:11/19
 1:14/25 1:16/12 1:16/24
 1:21/15 1:31/11
**relates [1]**  1:6/8
**relating [1]**  1:10/23
**relationship [9]**  1:4/13
 1:4/15 1:4/15 1:8/1
 1:10/5 1:10/7 1:10/11
 1:10/23 1:23/22
**released [1]**  1:11/22
**relevance [3]**  1:15/14
 1:23/12 1:23/13
**relevancy [1]**  1:26/1
**relevant [14]**  1:3/19
 1:5/4 1:9/21 1:10/15
 1:13/10 1:14/21 1:15/5
 1:15/21 1:18/9 1:24/3
 1:24/8 1:24/10 1:25/22
 1:26/1
**relitigate [2]**  1:11/24
 1:19/19
**relitigated [1]**  1:11/21
**relitigates [1]**  1:19/12
**relitigating [1]**  1:19/17
**removed [4]**  1:8/20
 1:8/21 1:8/21 1:8/24
**report [3]**  1:15/8
 1:15/10 1:20/23
**Reporter [2]**  1:1/25
 1:31/21
**reports [1]**  1:20/24
**represented [2]**  1:10/19
 1:18/1
**reputational [2]**  1:16/23
 1:18/15
**request [5]**  1:7/11
 1:12/25 1:13/4 1:13/7
 1:19/5
**requesting [1]**  1:24/11
**requests [1]**  1:23/19
**require [2]**  1:21/19
 1:29/13
**resolution [1]**  1:10/20
**respect [26]**  1:3/22
 1:4/13 1:5/3 1:5/10
 1:6/7 1:7/22 1:9/14
 1:9/24 1:10/22 1:12/15

**respect...** [16]   1:13/3
 1:16/20 1:20/20 1:20/21
 1:20/24 1:20/25 1:21/6
 1:21/8 1:21/16 1:21/17
 1:23/5 1:23/11 1:23/14
 1:24/24 1:25/22 1:26/11
**respond** [1]   1:19/20
**response** [5]   1:7/11
 1:7/11 1:7/14 1:17/14
 1:17/15
**responsibilities** [1]
 1:4/10
**responsible** [1]   1:21/12
**responsive** [1]   1:7/4
**result** [5]   1:3/22 1:4/15
 1:6/20 1:7/19 1:7/24
**reviewed** [1]   1:5/5
**right** [27]   1:2/17 1:2/18
 1:3/16 1:10/1 1:12/3
 1:12/20 1:13/6 1:13/17
 1:14/6 1:14/10 1:15/4
 1:15/10 1:15/24 1:16/19
 1:17/9 1:17/20 1:18/19
 1:21/20 1:22/11 1:24/8
 1:25/8 1:25/14 1:26/22
 1:27/9 1:27/15 1:28/24
 1:29/21
**rise** [2]   1:2/4 1:29/25
**RMR** [2]   1:1/25 1:31/21
**RONDA** [4]   1:1/8 1:2/16
 1:4/17 1:13/8
**rule** [2]   1:12/8 1:29/18
**ruling** [1]   1:28/19
**run** [2]   1:19/23 1:19/25

**S**

**said** [5]   1:7/6 1:7/6
 1:8/24 1:9/20 1:19/21
**sailed** [1]   1:19/4
**same** [1]   1:24/21
**San** [1]   1:22/17
**say** [8]   1:7/7 1:7/17
 1:16/11 1:18/6 1:19/22
 1:20/6 1:28/18 1:29/2
**saying** [4]   1:14/5
 1:15/12 1:15/13 1:22/12
**says** [2]   1:28/24 1:28/25
**scope** [7]   1:10/15 1:14/8
 1:18/9 1:24/7 1:24/7
 1:25/12 1:26/19
**search** [5]   1:19/24
 1:19/25 1:20/4 1:20/8
 1:20/13
**seated** [1]   1:2/17

 1:6/1 1:9/17 1:12/19
**see** [4]   1:7/6 1:12/8
 1:18/8 1:19/6
**seek** [3]   1:14/15 1:23/19
 1:26/24
**seeking** [6]   1:9/4
 1:11/14 1:24/10 1:25/23
 1:26/20 1:26/20
**seem** [1]   1:18/2
**send** [2]   1:7/8 1:23/20
**sent** [1]   1:7/1
**separate** [1]   1:6/15
**September** [1]   1:7/1
**September 9th** [1]   1:7/1
**served** [4]   1:6/25
 1:18/14 1:19/1 1:19/1
**serves** [1]   1:27/20
**service** [1]   1:19/5
**session** [1]   1:2/6
**set** [4]   1:24/20 1:25/6
 1:25/9 1:27/4
**settle** [1]   1:11/25
**settled** [2]   1:11/19
 1:11/22
**settlement** [23]   1:2/24
 1:3/11 1:4/25 1:5/2
 1:6/13 1:7/12 1:8/14
 1:8/17 1:8/19 1:9/2
 1:10/6 1:10/17 1:10/18
 1:10/25 1:11/10 1:11/16
 1:11/20 1:11/25 1:13/11
 1:22/4 1:22/8 1:22/10
 1:24/3
**sexual** [9]   1:5/24
 1:10/11 1:18/18 1:18/18
 1:19/13 1:20/9 1:20/20
 1:22/1 1:23/25
**share** [1]   1:28/17
**she** [12]   1:3/23 1:4/20
 1:11/15 1:12/5 1:13/14
 1:13/20 1:13/20 1:15/23
 1:19/11 1:21/11 1:23/13
 1:23/14
**she's** [7]   1:4/2 1:12/8
 1:12/9 1:14/11 1:17/23
 1:18/1 1:19/13
**ship** [1]   1:19/3
**shocked** [1]   1:25/13
**shortly** [1]   1:4/2
**should** [9]   1:11/3 1:11/8
 1:12/13 1:16/6 1:18/6
 1:18/9 1:19/23 1:24/13
 1:25/7
**Show** [1]   1:18/19

**sic** [1]   1:29/16
**sides** [4]   1:7/3 1:7/5
 1:9/10 1:9/20
**sign** [1]   1:24/21
**signals** [1]   1:23/20
**signed** [1]   1:5/1
**signing** [1]   1:11/16
**since** [1]   1:4/2
**single** [1]   1:10/16
**single-count** [1]   1:10/16
**situations** [1]   1:8/9
**so** [43]
**social** [1]   1:5/10
**software** [2]   1:19/14
 1:19/17
**SoftwareONE** [29]   1:4/5
 1:4/6 1:4/14 1:5/11
 1:6/8 1:8/14 1:8/15
 1:8/22 1:8/23 1:9/11
 1:9/12 1:9/13 1:9/16
 1:9/23 1:10/14 1:12/18
 1:14/19 1:16/8 1:16/10
 1:16/11 1:17/19 1:19/20
 1:20/7 1:21/19 1:21/25
 1:22/20 1:23/17 1:25/17
 1:26/21
**SoftwareONE's** [1]
 1:20/20
**sole** [2]   1:11/4 1:11/4
**some** [14]   1:2/21 1:4/9
 1:6/11 1:8/20 1:9/5
 1:15/9 1:17/1 1:17/8
 1:17/14 1:22/9 1:27/2
 1:28/16 1:29/10 1:29/13
**somebody** [2]   1:23/21
 1:23/25
**someone** [2]   1:5/24
 1:13/13
**something** [2]   1:7/4
 1:16/6
**sorry** [2]   1:2/23 1:4/6
**sort** [4]   1:15/9 1:17/1
 1:17/8 1:27/2
**sought** [1]   1:11/23
**sound** [3]   1:1/12 1:20/1
 1:31/6
**sounds** [1]   1:22/7
**Southeast** [2]   1:1/16
 1:1/20
**SOUTHERN** [3]   1:1/3 1:2/5
 1:31/7
**speaking** [1]   1:23/3
**specifics** [1]   1:5/6
**spending** [1]   1:29/17

squeeze [1]   1:27/25
stake [1]   1:17/25
start [1]   1:23/24
starting [1]   1:2/10
state [1]   1:2/9
stated [3]   1:18/12
 1:27/22 1:31/8
statement [3]   1:16/11
 1:19/10 1:19/11
STATES [2]   1:1/2 1:2/5
stay [1]   1:14/13
steps [1]   1:20/22
stock [3]   1:7/18 1:8/4
 1:8/10
stop [4]   1:13/6 1:25/2
 1:25/2 1:25/2
Street [2]   1:1/16 1:1/20
stricken [1]   1:3/3
strong [1]   1:26/10
subject [2]   1:11/18
 1:29/9
subpoena [11]   1:6/8
 1:9/16 1:12/16 1:13/4
 1:16/16 1:16/17 1:18/6
 1:19/6 1:19/21 1:20/5
 1:20/8
subpoenas [17]   1:3/14
 1:3/19 1:5/3 1:6/7
 1:7/25 1:9/5 1:10/13
 1:11/15 1:11/23 1:12/12
 1:17/19 1:18/14 1:18/16
 1:18/25 1:23/6 1:25/10
 1:26/2
such [2]   1:23/23 1:26/14
sued [1]   1:12/2
suffering [2]   1:4/1
 1:6/15
sufficient [1]   1:25/25
suggests [1]   1:20/9
suit [1]   1:12/3
Suite [2]   1:1/16 1:1/20
supporting [1]   1:6/23
supposed [2]   1:13/14
 1:20/23
sure [3]   1:3/20 1:19/21
 1:26/5

T

take [2]   1:27/19 1:27/19
taken [4]   1:3/5 1:20/23
 1:31/8 1:31/12
taking [2]   1:7/18 1:25/1
talking [3]   1:16/18
 1:20/16 1:23/18

technology [1]   1:4/8
tell [2]   1:12/23 1:21/19
terms [4]   1:14/6 1:20/8
 1:20/13 1:29/11
than [3]   1:18/23 1:25/18
 1:28/11
Thank [5]   1:27/6 1:27/14
 1:29/21 1:29/22 1:29/23
that [210]
that's [24]   1:5/1 1:6/1
 1:8/12 1:10/5 1:11/5
 1:11/21 1:11/23 1:12/9
 1:13/3 1:13/19 1:14/20
 1:16/4 1:16/6 1:17/6
 1:21/14 1:23/18 1:23/19
 1:24/1 1:24/6 1:24/7
 1:25/4 1:27/23 1:28/20
 1:29/20
their [6]   1:4/8 1:12/13
 1:23/17 1:25/14 1:25/16
 1:25/18
them [12]   1:7/9 1:9/1
 1:12/17 1:17/23 1:20/8
 1:21/22 1:22/13 1:25/18
 1:29/8 1:29/14 1:29/16
 1:29/20
themselves [2]   1:18/16
 1:19/7
then [16]   1:7/13 1:12/10
 1:17/9 1:17/15 1:17/22
 1:18/5 1:22/3 1:24/20
 1:24/23 1:25/6 1:25/17
 1:27/4 1:28/19 1:28/19
 1:29/6 1:29/8
there [47]
there's [17]   1:5/9
 1:6/11 1:6/15 1:11/8
 1:12/10 1:14/12 1:15/7
 1:15/8 1:20/15 1:20/23
 1:21/20 1:22/24 1:23/25
 1:24/10 1:28/15 1:28/23
 1:29/3
these [23]   1:3/19 1:5/16
 1:6/7 1:8/4 1:8/6 1:8/10
 1:9/5 1:9/20 1:9/22
 1:11/15 1:11/23 1:12/11
 1:17/18 1:18/8 1:18/14
 1:18/25 1:19/5 1:19/12
 1:23/3 1:27/3 1:27/3
 1:27/23 1:29/13
they [23]   1:5/3 1:5/4
 1:5/15 1:8/16 1:12/13
 1:16/13 1:17/22 1:18/5
 1:18/17 1:19/1 1:19/1

 1:22/14 1:22/14 1:22/20
 1:22/22 1:23/21 1:23/24
 1:25/19 1:25/21 1:29/18
they'd [1]   1:19/23
they're [10]   1:3/14
 1:6/6 1:9/21 1:15/21
 1:18/17 1:19/21 1:19/25
 1:25/16 1:29/8 1:29/9
they've [3]   1:17/22
 1:19/1 1:25/19
thing [4]   1:5/16 1:6/1
 1:6/5 1:8/12
things [8]   1:5/4 1:8/6
 1:12/1 1:18/9 1:21/8
 1:23/3 1:28/16 1:28/25
think [19]   1:2/21 1:2/23
 1:3/1 1:5/15 1:12/12
 1:12/24 1:15/3 1:15/14
 1:15/14 1:17/6 1:18/6
 1:20/14 1:20/18 1:21/11
 1:22/12 1:22/25 1:27/16
 1:27/24 1:28/16
third [4]   1:6/5 1:6/5
 1:24/6 1:29/10
third-party [1]   1:24/6
this [52]
those [16]   1:2/21 1:5/11
 1:6/25 1:7/17 1:9/3
 1:11/12 1:20/25 1:21/2
 1:22/6 1:22/19 1:23/20
 1:23/20 1:25/15 1:25/17
 1:26/14 1:26/20
though [2]   1:3/18
 1:14/11
thought [1]   1:12/18
three [2]   1:4/2 1:5/12
through [1]   1:29/17
time [10]   1:3/7 1:4/9
 1:5/20 1:7/14 1:10/9
 1:16/2 1:27/10 1:29/17
 1:29/22 1:31/8
times [2]   1:4/2 1:5/9
timing [1]   1:22/13
today [2]   1:13/21 1:28/5
together [3]   1:3/2 1:6/6
 1:29/17
told [3]   1:9/7 1:21/22
 1:21/23
tomorrow [1]   1:28/3
too [4]   1:29/5 1:29/12
 1:29/16 1:29/20
took [4]   1:4/18 1:4/21
 1:7/24 1:23/5
top [1]   1:9/11

touching [1]   1:20/22
Transcribed [1]   1:1/25
TRANSCRIBER [1]   1:31/3
transcript [4]   1:1/12
 1:27/19 1:27/20 1:31/5
tread [1]   1:23/2
true [2]   1:23/22 1:31/4
trying [2]   1:5/14 1:24/6
Tuesday [2]   1:28/6
 1:31/16
two [10]   1:4/13 1:4/14
 1:9/20 1:9/22 1:10/19
 1:11/23 1:12/1 1:18/23
 1:18/24 1:21/2
type [6]   1:5/22 1:10/11
 1:17/4 1:20/4 1:20/4
 1:23/19
types [2]   1:9/3 1:24/12
typical [1]   1:27/3
typically [4]   1:25/15
 1:27/23 1:28/24 1:29/13

**U**

U.S [3]   1:10/14 1:31/7
 1:31/21
Uh [2]   1:26/9 1:26/13
Uh-huh [2]   1:26/9
 1:26/13
UK [1]   1:16/8
ultimately [2]   1:5/1
 1:14/4
unconscionable [1]   1:6/3
under [6]   1:2/23 1:2/24
 1:2/25 1:14/14 1:14/15
 1:17/5
undergoing [1]   1:4/2
underlying [1]   1:11/19
understand [9]   1:3/10
 1:8/2 1:12/7 1:13/19
 1:13/24 1:13/24 1:17/21
 1:21/1 1:23/4
understanding [1]   1:21/7
UNITED [6]   1:1/2 1:2/5
 1:16/9 1:26/8 1:26/11
 1:26/15
universe [2]   1:20/16
 1:20/17
unless [1]   1:29/10
unrelated [1]   1:11/18
until [2]   1:14/15
 1:18/23
up [7]   1:5/19 1:5/25
 1:6/4 1:19/12 1:19/16
 1:27/19 1:29/10

use [1]   1:28/10

**V**

vague [1]   1:5/10
vehemently [1]   1:10/10
versus [1]   1:2/8
very [4]   1:19/16 1:26/10
 1:26/17 1:29/21
violated [1]   1:6/12
violation [1]   1:20/25
violative [1]   1:6/2
void [7]   1:5/18 1:11/3
 1:12/6 1:13/11 1:13/22
 1:15/11 1:24/4
voluminous [1]   1:20/3

**W**

waived [1]   1:22/4
want [7]   1:3/18 1:6/12
 1:8/15 1:23/21 1:24/18
 1:27/19 1:29/4
warranted [1]   1:27/3
was [60]
wasn't [2]   1:15/11
 1:16/21
way [9]   1:3/2 1:9/4
 1:13/8 1:18/17 1:19/19
 1:23/23 1:24/2 1:28/7
 1:28/23
we [50]
we'll [1]   1:29/19
we're [17]   1:2/18 1:2/23
 1:2/23 1:2/25 1:3/4
 1:5/14 1:9/4 1:14/2
 1:16/18 1:17/3 1:20/15
 1:22/19 1:23/18 1:24/11
 1:26/20 1:26/20 1:29/16
we've [3]   1:7/12 1:8/6
 1:8/8
website [2]   1:25/14
 1:25/16
Wednesday [3]   1:1/11
 1:2/1 1:28/5
week [2]   1:4/2 1:28/4
weeks [2]   1:18/23
 1:18/24
welcome [1]   1:27/12
well [14]   1:3/10 1:8/20
 1:12/1 1:14/17 1:17/15
 1:18/15 1:19/9 1:20/11
 1:22/3 1:22/9 1:24/17
 1:25/2 1:28/14 1:28/23
were [13]   1:2/22 1:6/11
 1:6/25 1:8/13 1:8/19
 1:8/25 1:9/7 1:11/11

 1:22/10 1:27/24
weren't [1]   1:25/14
what [25]   1:3/18 1:5/7
 1:5/14 1:6/12 1:8/5
 1:8/15 1:8/15 1:10/21
 1:11/4 1:11/14 1:11/15
 1:14/18 1:14/23 1:18/12
 1:18/13 1:19/10 1:19/22
 1:20/22 1:22/14 1:23/18
 1:25/7 1:26/20 1:27/15
 1:27/17 1:28/14
What's [2]   1:23/24
 1:25/9
whatever [1]   1:19/3
whatsoever [1]   1:23/12
when [4]   1:22/14 1:22/14
 1:23/19 1:23/25
where [9]   1:4/6 1:4/7
 1:4/11 1:4/18 1:4/20
 1:18/19 1:18/20 1:20/1
 1:20/18
whether [13]   1:8/3 1:8/4
 1:8/8 1:8/11 1:13/13
 1:13/15 1:17/10 1:20/24
 1:22/20 1:22/21 1:23/13
 1:24/10 1:25/22
which [17]   1:4/11 1:5/1
 1:5/14 1:7/13 1:9/12
 1:9/13 1:10/14 1:11/16
 1:12/23 1:12/23 1:17/16
 1:19/8 1:22/20 1:24/25
 1:25/24 1:28/18 1:31/12
who [5]   1:4/19 1:5/24
 1:17/20 1:21/23 1:25/20
who's [1]   1:8/21
whose [1]   1:17/25
why [3]   1:8/24 1:13/10
 1:17/16
wife [2]   1:4/16 1:4/22
will [9]   1:5/17 1:5/20
 1:7/8 1:7/15 1:14/4
 1:20/6 1:27/15 1:27/17
 1:27/22
William [1]   1:13/9
willingness [1]   1:24/9
within [1]   1:26/19
without [3]   1:4/20
 1:23/7 1:26/25
witness [1]   1:17/17
WOJTOWICZ [5]   1:1/19
 1:1/21 1:2/15 1:2/15
 1:16/7
women [4]   1:21/4 1:21/7
 1:21/8 1:21/9

**W**

```
worded [1]   1:18/17
workers [1]   1:24/1
working [1]   1:21/4
workplace [3]   1:21/4
 1:21/6 1:21/16
works [4]   1:4/7 1:4/10
 1:4/11 1:21/8
would [15]   1:7/3 1:9/24
 1:14/14 1:14/25 1:17/4
 1:17/13 1:18/2 1:19/20
 1:19/22 1:20/18 1:23/2
 1:25/13 1:28/18 1:29/13
 1:29/14
wouldn't [2]   1:20/3
 1:21/18
wrongfully [1]   1:7/20
```

**Y**

```
Yeah [2]   1:21/21 1:28/8
yes [3]   1:12/21 1:26/17
 1:28/1
yet [4]   1:14/2 1:14/3
 1:16/24 1:17/2
you [68]
you'd [2]   1:20/3 1:28/18
you'll [1]   1:5/6
you're [6]   1:12/2 1:20/8
 1:22/3 1:27/12 1:29/4
 1:29/5
you've [2]   1:22/8
 1:27/18
you-all [1]   1:3/10
your [60]
Your Honor [30]   1:2/11
 1:5/5 1:10/3 1:10/5
 1:10/13 1:10/16 1:10/18
 1:10/24 1:11/7 1:11/14
 1:11/21 1:12/4 1:13/1
 1:13/12 1:14/1 1:14/20
 1:15/17 1:16/5 1:17/2
 1:17/21 1:18/15 1:18/21
 1:19/9 1:20/15 1:23/5
 1:23/9 1:24/8 1:24/9
 1:25/3 1:26/3
```

**Z**

```
zones [1]   1:10/9
```

# Exhibit D

| | |
|---|---|
| **From:** | Casey, Stephanie |
| **To:** | Peter E. Berlowe; Jenny L. Martinez |
| **Cc:** | Alaina Fotiu-Wojtowicz; Meredith J. Gussin; Roberto, Michelle; Heather Shatzel; Michael McCabe |
| **Subject:** | RE: Ronda McNae Second Subpoena to SoftwareONE |
| **Date:** | Wednesday, July 19, 2023 3:26:04 PM |
| **Attachments:** | image004.png |
| | image005.png |
| | image007.png |
| | image008.png |

Thanks, Peter.

Jenny: We will let the Court know we have reached an agreement and, accordingly, will be withdrawing the motion.

Best,

Stephanie

**Stephanie A. Casey** | Colson Hicks Eidson | 255 Alhambra Circle, Penthouse | Coral Gables, FL 33134
Office: 305.476.7400 | Direct: 305.476.7496

**From:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Sent:** Wednesday, July 19, 2023 3:20 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>; Casey, Stephanie <scasey@colson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE


CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Yes, Fitzgerald is in agreement to your conditions.

**Peter E. Berlowe, Esq.**
**Business and Intellectual Property Litigation**

**ASSOULINE & BERLOWE**
**THE BUSINESS LAW FIRM**

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
**Telephone: 305-567-5576**

**www.assoulineberlowe.com**

Intellectual Property, Labor & Employment Law,  Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy, Trusts & Estates, Probate and Guardianship

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication.  Thank you.

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Wednesday, July 19, 2023 12:00 PM
**To:** Casey, Stephanie <scasey@colson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

Good morning, Stephanie.

SoftwareOne, Inc. will agree to withdraw its privilege challenge for the 2 emails at issue in exchange for the following: (1) Defendants agree that SoftwareOne, Inc. has fully complied with the subpoena dated 9/21/2022; (2) all parties agree not to seek additional information from SoftwareOne, Inc., its affiliates, or their current or former employees (with the obvious exception that this agreement does not impact Defendants' ability to seek discovery from Mike Fitzgerald); (3) all parties agree that the withdrawal of SoftwareOne, Inc.'s privilege challenge relates to these 2 emails only and no other communications; (4) all parties agree that the withdrawal of the privilege challenge for these 2 emails does not constitute a subject matter waiver or any other waiver of privilege with respect to any other communication; and (5) all parties agree that SoftwareOne, Inc. is not waiving any other rights or defenses.

Sincerely,

**Jenny Martinez**
Partner



12770 Coit Rd., Ste 600
Dallas, TX 75251
d. +1 972.628.3623
o. +1 972.628.3600
e: jmartinez@munckwilson.com
w. munckwilson.com
Connect with me on LinkedIn

# Exhibit E



**Ronda McNae <rondamcnae@gmail.com>**                              Tue, Jan 2,
                                                                   11:07 AM

to Meredith, PEB@AssoulineBerlowe.com, bcc: Will

Meredith and Peter,

In recent weeks, I have observed an account under the name 'Grant Gussin' consistently viewing my Instagram stories. This prompted me to inquire directly with the account, questioning our acquaintance and the basis of their familiarity with me. Subsequently, the account ceased viewing my stories, raising further suspicion.

Following internal support with Instagram, it has come to my attention that this account is associated with your husband. Upon reviewing the American Bar Association's Model Rule 8.4 on Misconduct, I have discerned a clear connection and find the monitoring of my social media through your husband's account to be both dishonest and deceptive. It is equally disappointing to note that while there was time dedicated to scrutinizing my social media activities, my settlement offer has yet to receive even a basic acknowledgment of receipt.

Sincerely,

Ronda McNae

Tue, Jan 2,
11:28 AM

to me, Peter

Mrs. McNae:
I can assure you that my husband has NOT been monitoring your account. When you emailed him to ask
how he knew you, he advised me of same and I told him to unfollow you (or whatever
the Instagram term is). He was not aware that your profile had been popping up on his stories.

Meredith

Meredith J. Gussin, Esq.

Litigation

**Ronda McNae <rondamcnae@gmail.com>**                                      Tue, Jan 2,
                                                                            1:17 PM

to Meredith, Peter

Meredith,

Your statement is inaccurate and untrue. Instagram doesn't operate in that manner. My stories would
not appear on his account, especially since his account is private, his account does not follow me, I do
not follow him, nor do we have mutual friends. I confirmed this with an employee of Instagram/Meta
(parent company) just a few minutes ago.

While "Grant Gussin" isn't following my account and never has, Mr. Gussin has viewed at least 13 stories
dates ranging from
December 13th - December 29th which are visible in the 'who's watched your story' section. The timing
was suspicious since it was days after my counsel had to withdraw from representation. I made sure to
take a snapshot each time to prevent any doubt, if my character or integrity was called in question. This
method is how I discovered Yelany's fake account when she persistently viewed my profile, a fact she
later confessed to in her deposition.

Sincerely,

Ronda McNae

# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

§
§
§
§
**In re: Subpoena to Software One, Inc.** §      Case No. 23CV27
§
§
§
§

---

## SOFTWARE ONE, INC.'S MOTION TO QUASH
## OR FOR PROTECTIVE ORDER AND FOR SANCTIONS

---

Software One, Inc. (hereinafter "SWO") moves this Court to quash a third-party subpoena

*duces tecum* issued (the "second subpoena") by Ronda McNae, a defendant in an underlying action

pending in the United States District Court for the Southern District of Florida, captioned *Michael*

*Fitzgerald v. Ronda McNae.*[1]

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), the Court "must quash or modify

a subpoena" insofar as it seeks privileged or other protected matter or subjects a person to undue

burden. And, pursuant to Rule 45(d)(1), where a party or attorney serving a subpoena has

improperly neglected their affirmative duty to take reasonable steps to avoid imposing an undue

burden or expense, the Court "must enforce this duty and impose an appropriate sanction."

For reasons explained more fully in SWO's memorandum in support of this motion, SWO

requests the Court to quash the second subpoena and order Ronda McNae and her counsel to pay

---

[1] For the Court to evaluate SWO's Motion to Quash, SWO must attach privileged documents to SWO's
memorandum in support of this Motion. To preserve privilege, SWO is filing Exhibit 4 (the second
subpoena) in a "Restricted Format." Pursuant to Gen'l LR 79(d), "[n]o motion is necessary to seal or restrict
a document or material otherwise protected from disclosure." Because privileged documents are protected
from disclosure, SWO is not separately filing a motion to restrict.

all fees incurred by SWO in preparing and filing this Motion and in preparing objections to the second subpoena. In the alternative, if the Court does not quash the second subpoena in its entirety, SWO requests the Court to: (1) significantly narrow the overbroad, duplicative, and unduly burdensome requests; (2) order that the parties' agreement regarding custodians and search terms for the first subpoena shall apply equally to the second subpoena; (3) order Ronda McNae to pay all costs to be incurred by SWO in collecting, reviewing, and producing responsive documents in SWO's care, custody, and control, including all costs associated with preparing a privilege log; and (4) order Ronda McNae to destroy SWO's privileged documents.

Dated:  June 9, 2023                    Respectfully submitted,

                                        */s/ Ronald R. Ragatz*
                                        Ronald R. Ragatz (#1017501)
                                        J. Wesley Webendorfer (#1090106)
                                        **DeWitt LLP**
                                        2 E. Mifflin Street, Suite 600
                                        Madison, WI  53703-2865
                                        608-255-8891
                                        608-252-9243
                                        rrr@dewittllp.com
                                        jww@dewittllp.com

                                        **ATTORNEYS FOR SOFTWARE ONE, INC.**

Of Counsel:

Jenny L. Martinez
Michael A. McCabe
**Munck Wilson Mandala, LLP**
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251
972-628-3600
972-628-3616 fax

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

§
§
§
§
**In re: Subpoena to Software One, Inc.**   §   Case No. 23CV27
§
§
§
§

---

## MEMORANDUM OF SOFTWARE ONE, INC. IN SUPPORT OF MOTION TO QUASH OR FOR PROTECTIVE ORDER AND FOR SANCTIONS

---

### I.   PRELIMINARY STATEMENT

Software One, Inc. ("SWO") moves this Court to quash a third-party subpoena *duces tecum* which directs SWO to produce privileged documents and subjects SWO to undue burden and expense.[1] This is the ***second*** third-party subpoena *duces tecum* directed to SWO by Ronda McNae, a defendant in an underlying action pending in the United States District Court for the Southern District of Florida, originally captioned *Michael J. Fitzgerald v. Ronda McNae*, Case No. 1:22-cv-22171-JEM (the "Underlying Lawsuit"). SWO expended significant time and resources responding to Ronda McNae's ***first*** third-party subpoena. More specifically, from October 2022 through March 2023, SWO: (1) worked with Ronda McNae's counsel to create an agreed list of search terms; (2) collected and processed over *3 million* emails and attachments from an agreed list of seven custodians; (3) produced over 1,000 emails and attachments; and (4) provided a

---

[1] For the Court to evaluate SWO's motion to quash, SWO must attach privileged documents. To preserve privilege, SWO is filing Exhibit 4 (the second subpoena) in a "Restricted Format." Pursuant to Gen'l LR 79(d), "[n]o motion is necessary to seal or restrict a document or material otherwise protected from disclosure." Because privileged documents are protected from disclosure, SWO is not separately filing a motion to restrict.

1

privilege log. In connection with the foregoing actions, SWO incurred over **$65,000** in attorneys' fees.[2] SWO's response to the first subpoena went above and beyond what can reasonably be expected from a third-party under Rule 45.

On May 18, 2023, Ronda McNae sent a ***second*** third-party subpoena to SWO's outside counsel.[3] As discussed more fully below, the second subpoena directly and intentionally targets privileged information and even *attaches privileged documents as exhibits*. Further, the second subpoena is grossly overbroad and seeks information previously requested and produced (or that Ronda McNae knows is not in SWO's care, custody, or control). Pursuant to Rule 45(d), SWO seeks protection from this Court from Ronda McNae's improper requests for privileged information and from further undue burden and expense. SWO requests that the Court quash McNae's second subpoena and award reasonable sanctions to discourage further abuse of the third-party discovery process. In the alternative, if the Court does not quash the second subpoena in its entirety, the Court should: (1) significantly narrow the overbroad, duplicative, and unduly burdensome requests; (2) order that the parties' agreement regarding custodians and search terms for the first subpoena shall apply equally to the second subpoena; and (3) order Ronda McNae to pay all costs to be incurred by SWO in collecting, reviewing, and producing responsive documents in SWO's care, custody and control, including all costs associated with preparing a privilege log.

## II.    BACKGROUND

### A.    The Underlying Lawsuit is a personal dispute between two individuals.

In the Underlying Lawsuit, Michael Fitzgerald, a former employee of SoftwareONE UK, Ltd. (a separate UK affiliate from SWO), alleges that Ronda McNae and her husband (together,

---

[2] Declaration of Jenny Martinez ("Martinez Dec."), ¶¶ 7-8.

[3] In the cover email, Ronda McNae's counsel asked if SWO's outside counsel could accept service or let her know whether she needed to send it out for formal service on the registered agent. On June 8, 2022, SWO's outside counsel informed Ronda McNae's counsel that she was authorized to accept service of the subpoena, effective June 8, 2022. Martinez Dec. ¶ 10.

the "McNaes") breached their obligations under a Confidential Settlement Agreement and

defamed his character by publicly accusing him of sexually assaulting Ronda McNae in 2019.[4]

The Confidential Settlement Agreement between the McNaes and Mr. Fitzgerald (which contains

a non-disparagement provision) was entered on June 15, 2020, approximately two months after

Ronda McNae first complained to SWO about Mr. Fitzgerald's alleged conduct.[5]

In the Spring of 2020, Ronda McNae contacted Patty Ravencroft, SWO's Head of Human

Resources for North America, and John Mayes, SoftwareONE Pte Ltd.'s CHRO,[6] informing them

of her allegations against Mr. Fitzgerald.[7] In May of 2022, Ronda McNae again contacted Mr.

Mayes, suggesting that the alleged assault occurred at a company sponsored event.[8] Also in May

of 2022, Ronda McNae sent Mr. Mayes and Ms. Ravencroft copies of police reports she filed

against Mr. Fitzgerald.[9] In response to Ronda McNae's allegations, SWO consulted with its in-

house and outside counsel to investigate such allegations.[10] The investigation was directed and

conducted by counsel.[11] Based upon the seriousness of the allegations and Ronda McNae's

suggestion that the alleged assault occurred at a company event, SWO reasonably anticipated

litigation.[12] On July 14, 2022, Mr. Fitzgerald filed the Underlying Lawsuit.[13]

---

[4] *See* Martinez Dec., ¶5, Exhibit 1 (First Amended Complaint).

[5] *Id.* (*see* Exhibit A to First Amended Complaint, Confidential Settlement Agreement).

[6] SoftwareONE Pte Ltd. is a separate Singapore affiliate from SWO.

[7] Declaration of Jenny Martinez at ¶4; *see also* Exhibit 7, April 17, 2020 email exchange between Ronda McNae and Mr. Mayes.

[8] Martinez Dec. at ¶4.

[9] *Id.*; *see also* Martinez Dec., ¶5, Exhibit 1 (First Amended Complaint at ¶153).

[10] Martinez Dec. at ¶4.

[11] *Id.*

[12] *Id.*

[13] Martinez Dec., ¶5, Ex. 8, Complaint for Breach of Settlement Agreement (filed July 14, 2022) (the "Initial Complaint").

**B.      SWO incurred significant costs responding to the first subpoena.**

On September 21, 2022, Ronda McNae served her first document subpoena on SWO.[14] The first subpoena sought broad categories of documents over a six (6) year period, extending from January 1, 2016 through July 14, 2022—the date the Underlying Lawsuit was filed.[15] For example, Ronda McNae requested: (i) all communications "that refer or relate in any way" to Ronda McNae or her husband, William McNae—a Microsoft employee who regularly communicated with SWO about business matters;[16] (ii) any accident or incident reports "generated as a result of any alleged misconduct of Michael Fitzgerald, including but not limited to those allegations made by Ronda and William McNae"[17]; and (iii) "[a]ny and all documents that refer or relate to any investigation conducted by [SWO] into allegations of misconduct of any kind made against Michael Fitzgerald, including but not limited to those allegations made by Ronda and William McNae."[18]

SWO's counsel collaborated in good faith with Ronda McNae's counsel to collect, review, and produce documents responsive to the first subpoena. More specifically, SWO collected and processed the mailboxes of seven SWO custodians (selected by Ronda McNae) containing over *3 million* emails and attachments for the time period January 1, 2016 through July 14, 2022.[19] SWO's counsel spent significant time working with Ronda McNae's counsel to narrow the voluminous amount of data to an amount reasonably proportionate to the needs of the case —

---

[14] *See* Martinez Dec., ¶6, Ex. 2, Sept. 21, 2022 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "first subpoena").

[15] *Id.* at Schedule A, ¶ 9 ("The time frame for all document requests is from January 1, 2016 to July 14, 2022."); *see also* Exhibit 8, Initial Complaint.

[16] *See id.* at Request Nos. 1-6.

[17] *Id.* at Request No. 7.

[18] *Id.* at Request No. 10.

[19] Martinez Dec. at ¶ 7.

providing keyword hitcounts and other data to facilitate an agreed upon list of relevant keywords that would best target responsive information.[20] SWO's counsel reviewed over 7,000 documents, produced over 1,000 documents, and provided a privilege log identifying all privileged information withheld from production, at a cost to SWO of over $65,000.[21]

## C.   SWO and the McNaes confer regarding privileged documents.

On May 17, 2023, months after SWO produced documents responsive to the first subpoena, SWO's outside counsel, Jenny Martinez and Michael McCabe, spoke with Ronda McNae's counsel, Alaina Fotiu-Wojtowicz, and William McNae's counsel, Stephanie Casey.[22] Ms. Fotiu-Wojtowicz requested that SWO provide additional documents related to SWO's internal investigation of Ronda McNae's allegations against Mr. Fitzgerald.[23] Ms. Martinez explained that SWO's investigation was conducted by and at the direction of outside counsel, and thus all communications regarding the investigation are privileged.[24] She also explained that privileged communications responsive to the first subpoena are identified in SWO's privilege log,[25] and any additional documents regarding the investigation (*i.e.*, those created after July 14, 2022) are privileged for the same reasons.[26]

---

[20] *Id.*

[21] *Id.* at ¶¶ 7-8.

[22] *Id.* at ¶ 9.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* During the call, Ms. Fotiu-Wojtowicz indicated she believed that SWO had agreed to expand the date range identified in the first subpoena (January 1, 2018 to July 14, 2022). SWO did not agree to expand the date range past July 14, 2022, the date Underlying Lawsuit was filed.

**D.  The second subpoena requests privileged information and attaches privileged communications.**

On May 18, 2023, one day after the telephone conference regarding the privileged investigation, Ms. Fotiu-Wojtowicz sent a courtesy copy of the second subpoena to Ms. Martinez.[27] The second subpoena not only directly and intentionally targets the very documents and communications that Ms. Martinez explained are privileged—namely, documents and communications regarding SWO's investigation of Ronda McNae's claims—*but attaches as exhibits three privileged documents inadvertently produced by Mr. Fitzgerald in the Underlying Lawsuit.*[28] Two of these documents have since been clawed back by Mr. Fitzgerald.[29] Despite Ms. Martinez's letter and Mr. Fitzgerald's clawback, Ronda McNae has neither withdrawn nor amended the second subpoena.[30]

## III.   LAW AND ARGUMENT

**A.  Law governing third party subpoenas.**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[31] However, "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[32] Courts are required to "enforce this duty," and "must quash or modify a subpoena that subjects a person to undue burden."[33]

---

[27] *Id.* at ¶ 10; *see also* Exhibit 4, May 18, 2023 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "second subpoena").

[28] Exhibit 4, second subpoena, at Exhibits 2-4, thereto; Exhibit 5, Letter from Jenny Martinez to Alaina Fotiu-Wojtowicz dated May 22, 2023.

[29] *See* Exhibit 6, May 23, 2023 email from Peter Berlowe to Alaina Fotiu-Wojtowicz, Stephanie Casey, Jenny Martinez, and others.

[30] Declaration of Jenny Martinez at ¶ 11.

[31] Fed. R. Civ. P. 26(b)(1).

[32] Fed. R. Civ. P. 45(d)(1).

[33] Fed. R. Civ. P. 45(d)(3)(A)(iv).

Federal Rule of Civil Procedure 45(d)(3) authorizes "the court for the district where compliance is required" to quash or modify a subpoena. The Eastern District of Wisconsin is the district where compliance is required because SWO's corporate headquarters are in Milwaukee, Wisconsin.[34]

Rule 45 distinguishes between instances where the court "*may*, on motion, quash or modify" a subpoena, and instances where it "*must*" quash or modify it:[35]

> On timely motion, the court for the district where compliance is required ***must quash or modify*** a subpoena that: . . . (iii) requires disclosure of ***privileged or other protected matter . . . or*** (iv) ***subjects a person to undue burden***.[36]

In analyzing whether a request imposes an "undue burden," courts must "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it."[37] In determining whether a burden is "undue," courts consider multiple factors and give special weight to a person's non-party status in evaluating the balance of competing needs.[38] Indeed, "non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue because non-parties have a different set of expectations than parties. . . . Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs."[39]

---

[34] *See, e.g., Meta v. Target Corp.*, No. 15-MC-050, 2015 WL 7459981, at *1 (E.D. Wis. Nov. 24, 2015) (emphasis added).

[35] *Compare* Fed. R. Civ. P. 45(d)(3)(A)(court must quash or modify), *with id.* at 45(d)(3)(B)(court may quash or modify).

[36] Fed. R. Civ. P. 45(d)(3)(A) (emphasis added).

[37] *Oakeson v. Aero-Space Computer Supplies, Inc.,* No. 22-CV-698-JPS, 2023 WL 372184, at *1 (E.D. Wis. Jan. 24, 2023) *citing* 8 Cyclopedia of Fed. Proc. § 26:15 (3d ed. Apr. 2022 update).

[38] *Id.*

[39] *Id.* at *1 (cleaned up) (emphasis original).

So long as the court weighs the competing hardships, the decision reached regarding undue hardship is within the court's discretion.[40] However, Rule 45(d)(2)(B)(ii) contains additional protections for non-parties served with a subpoena *duces tecum*. Pursuant to the rule, an order compelling a *non-party* to produce documents "*must* protect [them] from significant expense resulting from compliance."[41]

**B.     The Court must quash requests for privileged information.**

**1.     Documents created in the course of SWO's investigation of the McNae's allegations are privileged.**

Rule 45 provides that "the court for the district where compliance is required ***must*** quash or modify a subpoena that: . . . (iii) requires disclosure of *privileged or other protected matter*."[42] With respect to investigations conducted by an attorney, the attorney-client privilege "protects communications made in the course of an attorney's factual investigation when that investigation is made in order to provide legal advice."[43] Pursuant to the Supreme Court's decision in *Upjohn*, "factual investigations performed by attorneys as *attorneys* fall comfortably within the protection of the attorney-client privilege," prohibiting the discovery of attorney communications with company employees and agents in furtherance of the investigation, including employee statements memorialized in the course of the investigation.[44]

Likewise, under the work product doctrine, a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . by or for another party or its

---

[40] *Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928 (7th Cir. 2004).

[41] Fed. R. Civ. P. 45(d)(2)(B)(ii) (emphasis added).

[42] Fed. R. Civ. P. 45(d)(3)(A) (emphasis added).

[43] *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 316 (N.D. Ill. 2010) (citing *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, at 619-20 (7th Cir. 2009)).

[44] *Sandra T.E. v. S. Berwyn Sch. Dist.*, 600 F.3d 612, 619 (7th Cir. 2010) (*citing Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981)).

representative *(including the other party's attorney, consultant, . . . or agent).*[45] "In determining whether the protection applies, a court must consider whether in light of the factual context the document can fairly be said to have been prepared or obtained because of the prospect of litigation."[46] Thus, "whether a document is protected by work product depends on the motivation behind its preparation, rather than on the person who prepares it."[47]

In the spring of 2020, Ronda McNae contacted Patty Ravencroft, SWO's Head of Human Resources for North America, and John Mayes, SoftwareONE Pte Ltd.'s CHRO regarding her allegations against Mr. Fitzgerald.[48] In May of 2022, Ronda McNae again contacted Mr. Mayes, suggesting that the alleged assault occurred at a company sponsored event.[49] Also in May of 2022, Ronda McNae forwarded police reports to Mr. Mayes and Ms. Ravencroft containing her allegations against Mr. Fitzgerald.[50] In response to Ronda McNae's allegations against Mr. Fitzgerald, SWO consulted with its in-house and outside counsel to investigate the McNae's allegations.[51] The investigation was directed and conducted by counsel.[52] Based upon the seriousness of the allegations and Ronda McNae's suggestion that the alleged assault occurred at a company event, SWO reasonably anticipated litigation.[53] Documents and communications

---

[45] Fed. R. Civ. P. 26(b)(3) (emphasis added).

[46] *Chartraw v. City of Shawano*, No. 16-C-807, 2017 WL 5462187, at *4 (E.D. Wis. Nov. 14, 2017) (holding that documents related to defendant's investigation were protected work product because investigation was conducted "with an eye toward litigation").

[47] *Id.* (internal citations omitted).

[48] *See* Declaration of Jenny Martinez at ¶ 3; *see also* Exhibit 7, April 17, 2020 email exchange between Ronda McNae and John Mayes (produced to McNae in native format as SWOUS00002031).

[49] Declaration of Jenny Martinez, ¶ 4.

[50] *Id.*; *see also* Exhibit 1, First Amended Complaint at ¶ 153.

[51] Declaration of Jenny Martinez, ¶ 4.

[52] *Id.*

[53] *Id.*

counsel generated in the course of the investigation are therefore squarely privileged and protected.[54]

Prior to the May 17, 2023 telephone conversation, Ms. Fotiu-Wojtowicz knew that SWO had engaged counsel in response to Ronda McNae's claims and reasonably anticipated litigation because, unbeknownst to SWO, Mr. Fitzgerald inadvertently produced SWO's privileged and confidential *July 18, 2022* legal hold in the Underlying Lawsuit.[55] Instead of returning or destroying SWO's privileged legal hold, Ms. Fotiu-Wojtowicz is using it as a weapon to obtain even more privileged documents. She attaches it to the second subpoena and requests documents that are referenced in the legal hold.[56] However, communications regarding counsel's investigation and documents generated by or at the direction of counsel in furtherance of the investigation are undisputedly privileged and protected.[57]

SWO has not and will not waive its privilege. To the contrary, privileged documents responsive to the first subpoena were withheld from production and included on SWO's privilege log.[58] During the May 17, 2023 telephone call, SWO's counsel expressly informed the McNae's counsel that SWO's internal investigation into the McNae's allegations was directed and conducted by counsel, and any documents and communications generated in the course of the investigation are privileged.[59] On May 22, 2023, after receiving a copy of the second subpoena, SWO's counsel reiterated these privilege claims.[60]

---

[54] *Sandra T.E.,* 600 F.3d at 619 (*citing Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981)).

[55] *See* Exhibit 6, May 23, 2023 email from Peter Berlowe to Alaina Fotiu-Wojtowicz, Stephanie Casey, Jenny Martinez, and others.

[56] *See* Exhibit 4, second subpoena, Requests No. 5-9; *see also id.* at Exhibit 4, thereto.

[57] *Sandra T.E.,* 600 F.3d at 619 (*citing Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981)).

[58] *See* Declaration of Jenny Martinez, ¶ 7.

[59] *Id.* at ¶ 9; *see also* Exhibit 5, Letter from Jenny Martinez to Alaina Fotiu-Wojtowicz dated May 22, 2023.

[60] Exhibit 5, Letter from Jenny Martinez to Alaina Fotiu-Wojtowicz dated May 22, 2023.

On May 23, 2023, Mr. Fitzgerald informed the McNaes that the documents attached to the second subpoena as Exhibits 3 and 4 are privileged and were inadvertently produced in the Underlying Lawsuit.[61] Regardless of the clawback, however, Mr. Fitzgerald did not and cannot waive SWO's privilege claims.[62] But even assuming *arguendo* that he could waive SWO's privilege, the communications disclosed merely note the *existence* of an ongoing investigation into Ronda McNae's claims, and no information, impressions, or conclusions developed in the course of the investigation are shared.[63] Accordingly, there is no subject-matter waiver and the inadvertent disclosure has no impact on SWO's privilege claims for other documents.[64]

---

[61] Exhibit 6, May 23, 2023 email from Peter Berlowe to Alaina Fotiu-Wojtowicz, Stephanie Casey, Jenny Martinez, and others.

[62] *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, No. 15 CV 9323, 2021 WL 6091731, at *6 (N.D. Ill. Dec. 23, 2021) (The power to waive attorney-client privilege "rests with the entity's management and must be exercised by its board . . . board *members* as individuals do not have the power to waive the entity's privilege.") (emphasis in original); *see also Galli v. Pittsburg Unified Sch. Dist.*, No. C 09-3775 JSW JL, 2010 WL 4315768, at *4 (N.D.Cal. Oct. 26, 2010) ("The power to waive the privilege rests with the Board, and the actions of an individual Board member alone cannot waive the privilege."); *U.S. v. Segal*, No. 02-CR-112, at *15-16 (N.D. Ill. Apr. 15, 2004) ("We conclude that Ludwig did not waive Defendants' privilege because former executives cannot waive a corporation's attorney-client privilege.").

[63] *See* Exhibit 4, second subpoena, at Exhibits 1-3 thereto.

[64] *Jokich v. Rush Univ. Med. Ctr.*, No. 18 C 7885, 2020 WL 1548955, at *2-3 (N.D. Ill. Apr. 1, 2020) ("By contrast, Rule 502(a) provides that subject matter waiver occurs *only* when: '(1) the *waiver is intentional*; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.'.... Thus, subject matter waiver *is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner*.") (emphasis added) (internal citations omitted); *see also Patrick v. City of Chi.*, 154 F. Supp. 3d 705, 715–16 (N.D. Ill. 2015) ("[S]ubject matter waiver generally occurs only where the party holding the privilege seeks to gain some strategic advantage by disclosing favorable, privileged information, while holding back that which is unfavorable."); *see also O'Toole v. Perez*, No. 14 C 2467, 2016 WL 4975203, at *2 (N.D. Ill. Sept. 16, 2016) (holding that email communications regarding litigation hold and document retention policies and other related documents were privileged in case where party deliberately produced litigation hold).

MCNAE 007192

**2.      The first subpoena requested all documents regarding the investigation *through July 14, 2022*; SWO already searched for, reviewed, and identified these documents in its privilege log.**

The first subpoena (which covered the time period January 1, 2016 through July 14, 2022) requested all communications regarding SWO's investigation into the McNae's allegations.[65] Documents responsive to this request are privileged and any communications responsive to the agreed upon search terms for the relevant custodians are identified in SWO's privilege log. Ronda McNae has not raised any objections to the privilege log.

The second subpoena *again* seeks "all documents that relate in any way to the investigation" but contains no date restriction.[66] To the extent that Ronda McNae again seeks all documents dated *prior to* the filing of the Underlying Lawsuit (July 14, 2022) regarding SWO's privileged investigation, such request is *directly duplicative* of the first subpoena and should be quashed as unduly burdensome.[67]

**3.      SWO's communications regarding its investigation into McNae's allegations *after the lawsuit was filed* are *presumptively privileged* and SWO should not be required to log them.**

To the extent that the second subpoena seeks documents regarding SWO's privileged investigation dated *after* the filing of the Underlying Lawsuit, such request should be quashed as unduly burdensome because it seeks documents that are presumptively privileged.[68] SWO should not be required to collect, search for, review, and log privileged communications dated *after the lawsuit was filed*. Indeed, privilege logs are routinely restricted to documents created prior to the

---

[65] *See* Exhibit 2, first subpoena at Request No. 10 (requesting "Any and all documents that refer or relate to any investigation conducted by software one into allegations of misconduct of any kind made against Michael Fitzgerald, including but not limited to those of allegations made by Ronda and William McNae"); *see also id.* at Requests Nos. 1-3, 6-7, 9.

[66] *See gen.* Ex. 4, second subpoena, Request Nos. 1-3 (regarding investigation).

[67] Fed. R. Civ. Pro. 45.

[68] Fed. R. Civ. P. 45(d)(8)(a).

date the lawsuit was filed due both to the *volume and nature* of privileged communications after litigation arises.[69]

> Counsel's communications with the client and work product developed once the litigation commences are *presumptively privileged* and need not be included on any privilege log. A rule requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship . . . Courts . . . routinely deny a motion to compel a privilege log of attorney-client communications or work product dated after commencement of litigation. Additionally, Courts in this circuit have held that correspondence generated prior to the filing of an action, but in direct connection with preparation for the litigation need not be logged. [Another] Court held that privileged communications between any attorneys (including all support staff and vendors) and party clients that are related to this litigation or attorney work product, regardless of the date made or created need not be included on the parties' privilege logs.[70]

The burden of logging privileged communications is particularly unreasonable where the entity bearing the expense is a third party. For example, in *Blackwell v. Simon*, the plaintiff moved to compel documents relating to a sexual harassment report and investigation conducted by the university-defendant's law firm, where plaintiff served a subpoena on the law firm itself.[71] The firm objected that the subpoena sought materials protected by the attorney-client and work product privileges.[72] The plaintiff argued that he was entitled to a privilege log to test the non-party law firm's claim of privilege."[73] The court denied the motion to compel, concluding that the third party law firm was not required to produce an itemized privilege log and had satisfied the FRCP's

---

[69] *U.S. v. Bouchard Transp.*, 2010 U.S. Dist. LEXIS 37438, at *2 (E.D.N.Y. 2010) ("Privilege logs are commonly limited to documents created before the date litigation was initiated....[because] it can be assumed that all documents created after...a lawsuit has been filed and withheld on the grounds of privilege were created because of the pending litigation."); *Prism Technologies, LLC v. Adobe Sys., Inc.*, 2011 U.S. Dist. LEXIS 131321 (D. Neb. 2011) (same); *Ryan Inv. Corp. v. Pedregal De Cabo San Lucas*, 2009 U.S. Dist. LEXIS 118337, at *9 (N.D. Cal. 2009) (denying plaintiff's motion to compel "to the extent it seeks to require a log of post-litigation counsel communications and work product....").
[70] *Gaby's Bags, LLC v. Mercari, Inc.*, No. 20-cv-00734-WHA (TSH) (N.D. Cal. Nov. 17, 2020) (internal citations omitted) (emphasis added).
[71] No. 1:18-CV-01261, 2019 WL 13292585, at *1 (W.D. Mich. Dec. 2, 2019).
[72] *Id.*
[73] *Id.* at *2.

MONAE 007194

requirements by objecting to the request.[74] The court reasoned that numerous courts have found that the attorney-client privilege attaches in connection with an internal investigation.[75] The court also held that the subpoena was unduly burdensome because the defendant had already made a large production of documents and produced a privilege log.[76]

As in *Blackwell*, SWO already expended significant time and resources responding to Ronda McNae's first subpoena.[77] Requiring SWO, a non-party, to collect large quantities of privileged data that post-dates the filing of the Underlying Lawsuit and prepare a privilege log would impose an undue burden.

**C.    This Court should impose sanctions on Ronda McNae and her counsel to discourage further abuse of the discovery process.**

Where a party or attorney serving a subpoena has improperly neglected their affirmative duty to take reasonable steps to avoid imposing an undue burden or expense, the court must enforce the duty and impose an appropriate sanction:

> A party or attorney responsible for issuing and serving a subpoena *must take reasonable steps to avoid imposing undue burden or expense* on a person subject to the subpoena. *The court for the district where compliance is required must enforce this duty and impose an appropriate sanction*—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."[78]

"[S]anctions are appropriate when there is insufficient evidence to show that the issuing party took reasonable steps to ensure the subpoena would not result in an undue burden."[79] "In

---

[74] *Id.* at *1.

[75] *Id.*

[76] *Id.* at *4.

[77] Declaration of Jenny Martinez at ¶¶ 7-8; *Blackwell*, 2019 WL 13292585, at *1.

[78] Fed. R. Civ. P. 45(d)(1).

[79] *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *8 (N.D. Ill. Apr. 22, 2020) (awarding sanctions because plaintiff failed to pursue all avenues to obtain information from parties before seeking it from third parties).

determining whether a party has breached its duty under Rule 45(d)(1), courts look to the principles set forth in Rule 26(g)."[80] A district court may "impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law."[81]

As discussed above, Ronda McNae has flouted her obligations to minimize any undue burden or expense on SWO by: (i) issuing a second subpoena largely duplicative of the first; (ii) expressly requesting privileged information; (iii) attaching clearly privileged documents to her subpoena; (iv) refusing to withdraw or amend her subpoena to exclude inadvertently produced privileged information; and (v) requiring SWO to file objections and a motion to quash, all at considerable cost.

Moreover, Ronda McNae did not take reasonable steps to ensure that the second subpoena would not result in an undue burden. The second subpoena is grossly overbroad. For example, Request No. 5, which improperly attaches SWO's privileged litigation hold notice, seeks "*[a]ny e-mails regarding information underlying or relevant to the Matter*, within the meaning contemplated in [*SWO's litigation hold notice*]."[82] A request of this breadth—with no meaningful limitations in time or subject matter—is grossly overbroad, unduly burdensome, and

---

[80] *Low v. Omni Life Sci., Inc.*, No. 21 C 1568, 2022 WL 6751899, at *4 (N.D. Ill. Oct. 11, 2022).

[81] *Id.* at *4 (internal citations omitted).

[82] Exhibit 4, second subpoena at Request No. 5.

disproportional to the needs of the case.[83] Ronda McNae and her counsel should be sanctioned for failing to take reasonable steps to avoid imposing undue burden on SWO.[84]

The topics specifically addressed by Ronda McNae's Requests in the second subpoena are also duplicative of and wholly subsumed within the first subpoena. The sole distinction is that the first subpoena was limited to an (already expansive) time-period beginning on January 1, 2016 through the date the litigation was filed July 14, 2022. While the second subpoena *contains no date limitations whatsoever*.

Further, the second subpoena, like the first subpoena, requests documents not in SWO's possession, custody, or control. For example, both subpoenas request the complete personnel file, all benefits and compensation records, and expense reimbursement files for Mr. Fitzgerald.[85] However, as noted in SWO's objections to the first subpoena, and explained by Ms. Martinez in various conferences with Ms. Fotui-Wojtowicz, SWO does not have possession, custody, or control of Mr. Fitzgerald's employment documents because he was not employed by SWO. He is a citizen of the United Kingdom and was formerly employed by *SoftwareONE UK, Ltd.*—a foreign affiliate based in the United Kingdom.[86] Reissuing a duplicative subpoena on SWO is unduly burdensome because it needlessly forces SWO to *again* incur fees to preserve objections.

---

[83] *See, e.g., Craigville Tel. Co. v. T-Mobile U.S., Inc.*, 19 CV 7190, at *3 (N.D. Ill. May 12, 2022) ("Although the general subject matter or topic of certain RFPs arguably might be relevant to the claims or defenses in this case, either in whole or in part, even those RFPs cover too much territory with language requiring TMUS to produce 'all documents' 'that refer or relate to' a particular topic, or 'all communications' to the same effect.... Because it is not the Court's job to re-write or 'right size' Plaintiffs' RFPs on its own, it declines to do so. ... Plaintiffs have not convinced the Court in the context of this Rule 37 motion that the discovery sought is relevant and proportional to the needs of the case within the meaning of Federal Rule of Civil Procedure 26(b)(1).")

[84] *Little v. Pritzker*, No. 18 C 6954, at *12-16 (N.D. Ill. Apr. 22, 2020) (awarding sanctions under Rule 45 resulting from overly broad document request).

[85] *Compare* Ex. 4, second subpoena at Request Nos. 6-9, *with* Ex. 2, First Subpoena at Request Nos. 12-18.

[86] *See* Exhibit 1, First Amended Complaint at ¶ 11.

Finally, as discussed above, the second subpoena again requests all communications regarding SWO's investigation—directed by counsel—into the McNae's allegations about Mr. Fitzgerald.[87] On May 17, 2023, SWO's counsel explained to the McNae's counsel that SWO's investigation was conducted by counsel, and thus, its documents related to the investigation are privileged.[88] Rather than amending the subpoena to exclude privileged documents, the second subpoena attaches privileged documents and directly demands the production of additional privileged material. Ronda McNae, has, *at very least*, ignored her obligation to minimize the burden caused by her second subpoena. Under the circumstances, SWO respectfully requests that this Court award reasonable sanctions to discourage further abuses of the third-party discovery process. Such sanctions should include, at the very least, an order requiring Ronda McNae and her counsel to reimburse all fees and costs incurred by SWO in preparing and filing this motion and in preparing objections to the second subpoena. The Court should further order Ronda McNae to destroy all privileged documents inadvertently produced to her in the Underlying Lawsuit, including those attached to the second subpoena.

## D. Plaintiff must bear the cost of any additional document production and privilege log.

Rule 45(d)(2)(B)(ii) contains additional special protections for non-parties served with a subpoena *duces tecum*. Pursuant to the rule, an order compelling a *non-party* to produce documents "*must* protect [them] from significant expense resulting from compliance" with the subpoena.[89] In *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, the propounding party served two nearly identical document subpoenas on the same nonparty."[90] Although the first subpoena

---

[87] *Compare* Ex. 4, second subpoena at Requests Nos. 1, 2, 3 *with* Ex. 2, first subpoena at Requests Nos. 10, 1-3, 6-7, 9.

[88] Declaration of Jenny Martinez at ¶ 9.

[89] Fed. R. Civ. P. 45(d)(2)(B)(ii) (emphasis added).

[90] No. CV311CV00268JDCAN, 2014 WL 12780298, at *2 (N.D. Ind. Nov. 20, 2014).

was deemed defective, the nonparty produced real estate files, as requested.[91] The propounding party moved to compel other documents the nonparty did not produce, which the court agreed were relevant.[92] Despite originally "agreeing to produce documents responsive to the [second] subpoena, [the nonparty argued] that the intended production will impose an undue burden on it given the high cost of searching and producing the electronic documents," particularly because "its previous electronic searches generated voluminous data and high expense."[93] Finding that the costs of complying with the second subpoena would "no doubt be comparably burdensome," the court concluded that "it must now protect [the nonparty] from further expense in this matter" and ordered the propounding party to bear the cost of production.[94]

Like the nonparty in *Gunwood*, SWO incurred substantial expense responding to the first subpoena. And while SWO has not collected the data necessary to provide an estimate of the cost to comply with the second subpoena, based on the volume of data that would need to be collected, processed, searched, and reviewed, and the likely number of emails that would need to be logged, the cost would clearly be significant. Thus, solely in the alternative—should this Court deem it necessary for SWO to collect, review, and log all privileged communications regarding its investigation into the McNae's allegations after the lawsuit was filed—the Court must protect SWO from the significant expense it would necessarily bear by ordering Ronda McNae to bear the costs pursuant to Rule 45(d)(2)(B)(ii).

## CONCLUSION

The Court should quash the second subpoena and order Ronda McNae and her counsel to pay all fees incurred by SWO in preparing and filing this Motion. In the alternative, if the Court

---

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.* at *4.

does not quash the second subpoena in its entirety, the Court should (1) significantly narrow the overbroad, duplicative, and unduly burdensome requests; (2) order that the parties' agreement regarding custodians and search terms for the first subpoena shall apply equally to the second subpoena; (3) order Ronda McNae to pay all costs to be incurred by SWO in collecting, reviewing, and producing responsive documents in SWO's care, custody and control, including all costs associated with preparing a privilege log; and (4) order Ronda McNae to destroy SWO's privileged documents.

Dated: June 9, 2023

Respectfully submitted,

/s/ Ronald R. Ragatz
Ronald R. Ragatz (#1017501)
J. Wesley Webendorfer (#1090106)
**DeWitt LLP**
2 E. Mifflin Street, Suite 600
Madison, WI  53703-2865
608-255-8891
608-252-9243
rrr@dewittllp.com
jww@dewittllp.com

**ATTORNEYS FOR SOFTWARE ONE, INC.**

Of Counsel:

Jenny L. Martinez
Michael A. McCabe
**Munck Wilson Mandala, LLP**
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251
972-628-3600
972-628-3616 fax

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 105 of
Case 1:22-cv-22171-JEM   Document 275-2   Entered on FLSD Docket 01/14/2025   Page 61 of
195

EXHIBIT B

# STATEMENT 1

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 106 of
Case 1:22-cv-22171-JEM   Document 275-2   Entered on FLSD Docket 01/14/2025   Page 62 of
195
195

**From:** Chris Maulden <chrismaulden@microsoft.com>
**Sent:** Tuesday, April 12, 2022 6:04 PM
**To:** Will McNae <will.mcnae@microsoft.com>
**Subject:** RE: Microsoft Corporation Shareholder Resolution Project

Thanks for responding, Will. I am out of the office tomorrow, and will connect with you on Thursday or Friday this week.

Regards,

Chris



Chris Maulden
Senior Employee Relations Manager Lead – Global
Employee Relations, Americas
chrismaulden@microsoft.com
(571) 778-6367

Find what you need on HRWeb

Microsoft
***Please note I am in the Eastern Standard Time zone***

**Out of Office: 5/26/22-5/31/22**

**From:** Will McNae <will.mcnae@microsoft.com>
**Sent:** Tuesday, April 12, 2022 4:00 PM
**To:** Chris Maulden <chrismaulden@microsoft.com>
**Cc:** Ande Ferretti <anferret@microsoft.com>
**Subject:** FW: Microsoft Corporation Shareholder Resolution Project

Hello Chris,
Thank you for your voicemail touching base regarding a conversation you had with David Totten. I was in process of sending the below note to Ande based on a referral by Mr. Stevens at Arent Fox. I would welcome a discussion with you this week.
Regards,
Will

Hello Ande,

My name is Will, and I am an employee within the US GPS organization in a security solution architect role in David Totten's technical org. I am married to a wonderful woman, Ronda McNae, who is not an employee but unfortunately is at the center of this painful incident which I am sharing. I received your name from the Arent Fox attorney, Michael Stevens, after reaching out to their firm inquiring about the scope of the Shareholder Resolution Project services. I was provided your name when Mr. Stevens notified me that my incident was not in scope.

MCNAE 001321

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 107 of
Case 1:22-cv-22171-JEM   Document 275-2   Entered on FLSD Docket 01/14/2025   Page 63 of
195

I still hold on to hope that my experience from 2019 can positively affect change at Microsoft. **I am reaching out to you to find someone willing to hear the full story and request an in-person meeting.**

I would like an opportunity to share our experience from the past 2 years, provide updates from our efforts with law enforcement, and brainstorm actionable accountability and change. I'm not confident US HR (or CELA) fully understood our story when we reported in March 2020. I believe this based on the abrupt response I received from HR which did not ask for more information or prompt an investigation into my allegations. Upon receiving this response, I was left feeling alone and on our own to figure out how to hold an executive at a global partner organization accountable for his harmful actions towards my wife and me. I am thankful for a manager, director and CTO who were willing to listen and support our family as best they could with their limited resources and knowledge.

Since March 2020, I have reached out to multiple people across HR and CELA asking for help and advocacy. Specifically, advocacy and support would include an opportunity to establish a change in our internal HR systems when employees come forward to report sexual assault, rape, and harassment charges. For example, I was approached by a female teammate just yesterday asking what she needed to be aware of so that she would never be harmed in a way that my wife was with a Partner. That sad part is – I still don't know what to tell her about the legitimate workplace resources are available to us. She shared that she had previously felt harassed by a male co-worker but didn't report because of shame and lack of a safe reporting process. I do not want any teammate or colleague to experience our pain or hide in the dark because they were too ashamed to come forward.

Because my sexual battery allegation involves my spouse, I do not believe it deserves any less attention to investigate the incident or uphold the violated Vendor Code of Conduct established with Partner organizations. As a victim of sexual battery, the lack of willingness by HR to demonstrate advocacy for an employee and their spouse, <u>when it was a result of a work relationship</u>, has been emotionally exhausting and damaging. A quick summary – the CIO of one of the largest global revenue billing partners took advantage of my work relationship to develop a trauma-based friendship with my family, which ultimately resulted in raping my wife and threatening me on a Redmond campus when I confronted him about criminal misconduct (reported to HR; also reported to Redmond Police Dept.). To be told by US HR that Microsoft has "zero liability" regarding this incident has haunted me for 2 years. Especially when I never reported this allegation as the fault of Microsoft – but asked for help since the relationship was so tightly connected to my work relationship.

This past July I had reached a maximum frustration level with trying to politely ask for help from HR, so I wrote and submitted a complaint letter. Since that letter, I have spoken with HR and CELA, my wife and I have filed 3 police reports, and we have provided over 15 hours of in-person, sworn verbal and written statements to the Redmond, Miami, and San Francisco police departments who are investigating charges of sexual battery. It has been very difficult overcoming the challenges and fears to hold this executive accountable.

I am including excerpts from my letter to provide context (full letter attached). In the end, Microsoft may still hold firm with a posture of zero-liability and an unwillingness to take any proactive action – but I am trying to push for positive change based on my experience.

**Complaint Summary:**

Microsoft HR should have (and could have) done more to support and protect me as an employee. A formal investigation was not kicked off internally or externally, although I had substantial evidence to prove that multiple policies within the Partner/Vendor code of conduct had been violated, alongside

MCNAE 001322

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 108 of
195
Case 1:22-cv-22171-JEM   Document 275-2   Entered on FLSD Docket 01/14/2025   Page 64 of
195

potential criminal laws.

If we had been properly supported by Microsoft's resources when we made our HR report in March 2020, we would have been empowered to act differently to resolve this matter—pursuing criminal charges instead of waiting until 2021 to file a police report. After a great deal of therapy (ongoing), my wife and I are better able to recognize our reactive, trauma-induced responses through those 8 months and the time since. In the darkest period, my wife and I were barely hanging on, living in cognitive dissonance while the individual continued to execute his power dynamic using manipulation, fear and gaslighting. His predatory behavior took advantage of us, and his lies almost ripped our marriage apart, leading me down a dark path to suicidal thoughts during the holidays.

### Why formally complain now?

Reporting this complaint now has not been an easy decision. It would be easier to continue to be quiet and compliant, not ruffling feathers as this may also set me up for inspection or consequences for my actions in some way. However, I felt it was essential to speak up about our current process and lack of systems to help employees report and gain support when it comes to topics of sexual assault, rape, and harassment. HR needs a system in place that offers those who have been harmed on the job—or because of work-related relationships—well-trained, empathetic experts, and advocates to help through their time of crisis and trauma. In hindsight, I wish I could have taken an extended period of time away from work, but I felt it was not appropriate based on the job requirements and expectations to avoid showing weakness. My manager helped me take advantage of 6 weeks of Covid time off (June-July 2020), which helped greatly, and I am forever grateful to his empathy and patience – but even with this in mind, I broke up my time and returned to work halfway through to complete business planning and be present.

We reported these incidents to HR a month before Satya's April 2020 mail to all employees sharing updates about a new Employee Advocacy team being established for workplace sexual harassment. I am unsure what would need to change to get the attention required—perhaps if I were more senior or female, HR would have done more to investigate these incidents, support me, call to check on my health, or inspect the violated vendor code of conduct policies. Or, if I had taken my life in my darkest hour, would Microsoft have paid attention once the truth was uncovered that a work relationship caused enough harm to myself and marriage that I didn't see an alternative way out of a hostile work environment? I raise this to point out the disconnect between what I believe is Microsoft's intent to be a supportive employer with zero tolerance for sexual assault and my own experience with HR's dismissiveness of my concerns. I believe Microsoft needs and should do more to support and advocate for their employees regardless of gender, position, or technicality of "during work hours."

Regards,
Will

Will McNae
Partner Strategy Architect – Security, Compliance & Identity, US GPS
Security COE: uspartnercoe@microsoft.com

MCNAE 001323

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 109 of
Case 1:22-cv-22171-JEM   Document 275-2   Entered on FLSD Docket 01/14/2025   Page 65 of
195

EXHIBIT C

# STATEMENT 2

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 110 of
Case 1:22-cv-22171-JEM   Document 275-2   Entered on FLSD Docket 01/14/2025   Page 66 of
195

Will

**From:** Will McNae <will.mcnae@microsoft.com>
**Sent:** Wednesday, April 20, 2022 5:43 PM
**To:** Chris Maulden <chrismaulden@microsoft.com>
**Subject:** Re: Microsoft Corporation Shareholder Resolution Project

Chris,

I'm declining our phone call scheduled for Monday, instead I want to share a few thoughts.

In my April 12th email I specifically asked for an in-person meeting. Although not explicitly, I did ask for an opportunity to meet face to face during our phone call on April 15th.

After (roughly) two dozen phone calls with MS HR, CELA, and workplace investigations- I've remained at a standstill. There's been no forward positive movement, recourse, assistance, support, or consequence to the partner violating MS Partner Code of Conduct Agreement.

There were a few things you mentioned on our call that cause me to continue feeling dismissed and not heard which further supports my request for an in-person meeting to accomplish my goals:

You were more curious about my female co-worker's situation than asking probing questions to better learn about the harassment incident I encountered at Building 92. HR (STILL) never followed up with that particular incident to do any kind of internal investigation. I can't help but recognize the obvious gender conflict in this.

As I wrapped up sharing more details regarding the incident at building 92 where I stated that Mike Fitzgerald said to my face, during work hours, on work campus "I have given up drinking because I know if I was out at a bar and if someone were to set me off, I would destroy them".

I then asked you if that helped provide enough clarity and your response immediately following, "Yup that does. It pretty much aligns with what was in the Police report and gives some clarity, thank you. So I know you said you don't want to share with me any information about the co-worker who said they felt like they were or they experienced discrimination or harassment. I really want to revisit that".

Do you understand the disconnect? Or at least recognize how this continues to go sideways?
Regarding company resources and investigative policies, there was a 'misunderstanding of parameters' regarding my incident since it does not align to the criteria of a workplace issue.  I believe the misunderstanding is on Microsoft's part. I have case notes and evidence to support why this is a workplace issue due to the first meeting taking place at a work event and the grooming behavior was enabled because of the work relationship. But again, no one from HR followed up with me to validate or verify. Instead, HR held onto third party heresy.

And finally, since this didn't involve Microsoft business, there is no obligation on Microsoft's part.  Again, I do not agree with this.

My wife has been connected to Gretchen Carlson by a mutual friend. Gretchen has kindly taken Ronda under her wing. Gretchen unfortunately had been on the receiving end of sexual harassment/workplace harassment with Fox News. Her story is similar to my wife but I connect more with Gretchen regarding the broken systems within workplace investigations and HR. In transparency my wife was then introduced to a couple investigative reporters and has shared her story plus evidence proving these assaults were premeditated and calculated. Mike Fitzgerald

MCNAE 001319

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 111 of
Case 1:22-cv-22171-JEM   Document 275-2   Entered on FLSD Docket 01/14/2025   Page 67 of
195

abused his work relationship with me to prey and assault my wife and harass then threaten me assuming I would be too afraid to speak up.

To close, I am requesting an in-person meeting so that I can properly discuss the following topics since the complexity still does not seem to be getting communicated:

1) Why was this incident not investigated and categorized as 'not involving Microsoft' and 'no harm done to the employee'?
2) Financial reimbursement for out-of-pocket counseling costs not covered by MS Cares which has been substantial on top of what we have to cover for legal costs; travel, childcare, and legal help.
3) Investigation into the broken Partner/Vendor Code of Conduct policies (specifically sexual assault/harassment and anti-corruption)
4) Short Term Disability Leave time not counting against me during the annual Rewards calculation since I took time to work on resolving this criminal case and will likely need to take more for the continued legal case.
5) Communication to SoftwareONE based on factual events regarding their CIO.
6) How we can create a victim's advocate program that supports victims? How can we move to reevaluate case by case? My wife isn't the first nor will she be the last on the receiving end of treatment life this but MS can't repeat what has been done to me and my family.

Please let me know whom I can be introduced to for a Redmond-based discussion. I am sharing additional parts of information so that your team can assess the magnitude of the work relationship damaging our personal relationships (below and attached).

Regards,
Will

Factual statements:

• Microsoft was made aware of allegations regarding SoftwareONE's CIO, Mike Fitzgerald, in February 2020 involving the Microsoft employee Will McNae and his wife, Ronda McNae.  Several SoftwareONE employees were made aware of such details, but an official report was not filed with John Mayes, Global HR.
• Due to the sexual assault and battery reports, which also included harassment on campus during work hours in February 2020, Microsoft removed our employee from the hostile work environment with SoftwareONE.
• Will's role at the time was Partner Technology Strategist.
• Ronda McNae first met Mr. Fitzgerald at a SoftwareONE event in Bellevue, WA in July 2019, when attending as a guest of Will McNae. As a result of getting to know Mr. Fitzgerald and his girlfriend, a friendship developed between July – November 2019.
• Microsoft has been made aware that the McNae's have filed Police reports in Miami, San Francisco, and Redmond.
• Microsoft's Partner/Vendor Code of Conduct was violated due to the allegation descriptions which involved sexual assault and battery, and anti-corruption, which do not uphold the representation of either company's code of conduct.
• Microsoft was informed that an NDA was signed between Mr. Fitzgerald and McNae's although Ronda McNae felt forced to sign under duress. Law enforcement communicated to the McNae's the NDA is not applicable considering it was established to conceal details of a crime and/or poor conduct.
• The effects of these allegations are still being felt by our employee while his wife Ronda McNae suffers with "Complex PTSD" symptoms that still affect her daily life.

MCNAE 001320

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 112 of
Case 1:22-cv-22171-JEM   Document 275-2   Entered on FLSD Docket 01/14/2025   Page 68 of
195

EXHIBIT D

# STATEMENT 3

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 113 of
Case 1:22-cv-22171-JEM   Document 275-2   Entered on FLSD Docket 01/14/2025   Page 69 of
195

**Date : 5/2/2022 5:17:39 PM**
**From : "Will McNae"**
**To : "Chris Maulden" chrismaulden@microsoft.com**
**Cc : "Leslie Pickering" lesliep@microsoft.com**
**Subject : RE: Microsoft Corporation Shareholder Resolution Project**
**Attachment :**
**Microsoft_Partner_Code_of_Conduct_English.pdf;image002.png;image003.jpg;image004.jpg;ima**
**ge005.png;image006.png;image007.png;image008.png;**

Chris,
I also wanted to call out the **Professional Conduct** that is included in the Partner/Vendor Code of Conduct.  It is
always actionable per our agreement with Partners.

## Professional Conduct

> Microsoft Partners will conduct themselves in a professional manner at all times, helping Microsoft to
> create an inclusive, productive, respectful and professional environment, free from any forms of
> discrimination or harassment.

- **Inappropriate Language:** Microsoft Partners will not use any form of language which may be
  considered discriminatory, intimidating, harassing, threatening, abusive, sexually explicit, or
  otherwise offensive or inappropriate.

- **Treat Others with Fairness, Dignity and Respect:**  Microsoft will not tolerate, and Microsoft
  Partners must not engage in, any form of sexual or other harassment.  Sexual harassment is
  unwelcome verbal or physical behavior based on sex and includes gender-based harassment of
  a person of the same gender.  Examples include unwelcome sexual advances or physical
  contact, sexual comments or inappropriate gender-based jokes, unwelcome romantic attention,
  offering a benefit or preferential treatment in exchange for sexual favors, sharing or displaying
  sexually explicit content and using sexually degrading words.  Other examples of harassment
  include comments, jokes or degrading words based on race, sex, national origin, religion, age,
  disability, gender identity or expression, marital status, medical condition, physical or mental
  disability, pregnancy, sexual orientation, political affiliation, union membership, veteran status
  or other protected characteristics or status.

- **Event Behavior:**  In any event sponsored or hosted by Microsoft or during which Microsoft
  Partners may interact with any Microsoft employees, agents, subcontractors or customers,
  regardless of location, Microsoft Partners must behave in a professional manner including
  responsible alcohol use and continued adherence to this Partner Code of Conduct.

Microsoft Partner Code of Conduct (2019)(English)                                                    3

**From:** Will McNae
**Sent:** Monday, May 2, 2022 12:54 PM
**To:** Chris Maulden <chrismaulden@microsoft.com>
**Cc:** Leslie Pickering <lesliep@microsoft.com>

MCNAE 001317

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 114 of
Case 1:22-cv-22171-JEM   Document 275-2   Entered on FLSD Docket 01/14/2025   Page 70 of
195

**Subject:** RE: Microsoft Corporation Shareholder Resolution Project

Chris,

I am unable to respond to your last email due to restrictions – I wish to include my director on this thread.

In full transparency, your email has me a bit confused. Based on our phone conversation, you made no indication your role was to "further investigate" my case/HR report. Would you also be clear in your role and how this plays a part in my situation (besides researching benefits), please?

On our phone call you had stated, "*Our job is really to work with employees to navigate through concerns related to workplace behavior and policy violations*" and a reference to "the decision" being made by someone else.

Then, "*The misalignment is your situation doesn't fall within the parameters of being a workplace issue and is better handled by local authorities. If something happens in the workplace or in the course of work, that's where Microsoft has an obligation, we can actually get involved*".

Lastly, "*With the exception that occurred at the MS building, the other things that have occurred don't fall within MS's ability to have an impact.*"

Unfortunately, Microsoft continues to see my case and these crimes through a lens that works from a PR standpoint. The company couldn't be more wrong and off base. Oddly enough, my wife connected with a Special Agent from the FBI who helped crack the "Yosemite Murders" and in 2003 received the California Sexual Assault "Investigator of the year award". I decided to watch 20/20 to learn more about criminal profiling and how horrendus sex crimes are solved.

While it may be a surprise to you, it's not a surprise to either my wife or myself. Predators have a script. They have a process. A grooming period. It's calculated and premeditated. The sad part, my wife even gathered evidence to show MS however no one from HR was open to follow up and look at what she had compiled.

As an employee of MS, I am telling you, this man is a sexual predator that began grooming and exploiting my wife the moment he met her at a WORK EVENT and continued under the pretext of my work relationship. I fear for other female employees within our company that work alongside him and at this point the company continues to be a complicit bystander. The question I pose to Microsoft HR is "will you still claim "zero liability" once you learn more victims come forward?"

ASK: I am requesting an in-person meeting to continue this conversation and investigation. There should have already been an "in-person" follow-up discussion due to the nature and sensitivity of my report in 2020. I have had 2 years' worth of phone calls and I am confident that progress has not been made. Since I am a Redmond-based employee, meeting with a colleague of yours in one of the back-to-work buildings would make sense. I am willing to approach this with a line in the sand focused on going forward (and not on inspecting what was / wasn't done in the past).

You have a daughter. I have a daughter. We can't continue to turn a blind eye while women continue to be harmed otherwise, we miss the opportunity to make positive changes for them and potentially be looked at as complicit.

Sincerely,

MCNAE 001318

# Exhibit G

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MICHAEL J. FITZGERALD,                                    CASE NO. 1:22-cv-22171-JEM
individually, and YALENY DE VARONA,
individually,

       Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

       Defendant.

_____/

## DEFENDANTS' JOINT NOTICE OF DISCOVERY HEARING BEFORE MAGISTRATE JUDGE

Defendants, Ronda McNae and William McNae ("Defendants"), pursuant to the

Discovery Procedures for Magistrate Judge Jacqueline Becerra, give notice that

Judge Becerra has set an in-person hearing for **Wednesday, July 12, 2023 at 1:00**

**pm**, at James Lawrence King Federal Justice Building, 99 NE Fourth Street, 10th

Floor, Miami, Florida 33132 regarding the following matters:

1. Communications between Plaintiff's counsel and third-party witnesses withheld
on the basis of the work product doctrine:

    Specific Issue: Defendants seek to compel production communications

    between counsel and third-party witnesses both because the work

    product doctrine does not apply and because it has been waived.

2. Plaintiff's UK counsel's communications with SoftwareONE related to Plaintiff's
separation from SoftwareONE:

    Specific   Issue:   Defendants   seek   to   compel   production   of

    communications   between   Plaintiff   Fitzgerald's   UK   counsel   and

    SoftwareONE regarding the negotiation of Fitzgerald's separation from



BRODSKY FOTIU-WOJTOWICZ

SoftwareONE because such documents are within Plaintiff Fitzgerald's

possession, custody, or control.

The following exhibits are attached hereto:

**Exhibit A:**    Proposed Orders:

- Ex. A-1:  Proposed Order Granting Motion to Compel Documents Withheld on the Basis of the Work Product Doctrine.

- Ex. A-2:  Proposed Order Granting Motion to Compel Communications Between Plaintiff Fitzgerald and SoftwareONE Regarding Fitzgerald's Separation from SoftwareONE.


**Exhibit B:**    Source Materials:

*Issue #1:*

- Ex. B-1: Redacted Documents.

- Ex. B-2: Plaintiffs' Privilege Log.

*Issue #2:*

- Ex. B-3:Plaintiff's Objections and Responses to Request 6 of Ronda McNae's First Request for Production dated September 19, 2023.

- Ex. B-4: Plaintiff's Objections and Responses to Request 3 of Defendant Will McNae's First Request for Production dated February 6, 2023.

- Ex. B-5: Plaintiff's Objections and Responses to Request 2 of Defendant William McNae's Second Request for Production dated February 17, 2023.

- Ex. B-6: Plaintiff's Objections and Responses to Request 26 of Defendants' Joint RFP dated April 6, 2023.

- Ex. B-7: Settlement Agreement between SoftwareONE UK Ltd and Michael Fitzgerald (filed separately under seal).

BRODSKY FOTIU-WOJTOWICZ

**Exhibit C:**   Materials Upon Which the Non-Moving Party Intends to Rely:

*Issue #2:*

- Ex. C-1: E-mails between Plaintiff's counsel and counsel for SoftwareONE.

- Ex. C-2: E-mails between Plaintiff's counsel and Plaintiff's UK counsel, Phillip Landau (filed separately under seal).

**Exhibit D:**   Caselaw and Authorities

- Defendants' Caselaw and Authorities:

*Issue #1:*

- o Ex. D-1: *Stern v. O'Quinn*, 253 F.R.D. 663, 681 (S.D. Fla. 2008) ("work-product protection is waived when protected materials are 'disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information.")

- o Ex. D-2: *MapleWood Ptrs. LP v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 620-21 (S.D. Fla. 2013) (finding waiver of work product doctrine when claimed work product was sent to the plaintiff's adversaries).

*Issue #2:*

- o Ex. D3: *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 470-71 (S.D. Fla. 2011) (whether documents are in a party's control under Rule 34 is broadly construed).

- o Ex. D4: *Jans v. the GAP Stores, Inc.*, No. 6:05-cv-1534-Orl-311JGG, 2006 WL 2691800, at *1-2 (M.D. Fla. Sept. 20, 2006) (documents held by a party's attorney are within that party's possession, custody, or control for purposes of Rule 34).

- Plaintiffs' Caselaw and Authorities:

*Issue #1:*

- o Ex. D-5: Federal Rule of Civil Procedure 26.

- o Ex. D-6: *Raymond James Fin. Servs. v. Arijos*, No. 19-81692-RUIZ/REINHART, 2020 U.S. Dist. LEXIS 54506 (S.D. Fla. Mar. 27, 2020).



BRODSKY FOTIU-WOJTOWICZ

    o  Ex. D-7: *Guar. Ins. Co. v. Heffernan Ins. Brokers, Inc.*, No. 13-23881-CIV-MARTNIEZ/GOODMAN, 2014 U.S.Dist. LEXIS 146843 (S.D. Fla. Oct. 15, 2014).

    o  Ex. D-8: *Sprengle v. Smith Mar. Inc.*, No. 3:20-cv-1348-MMH-LLL, 2022 U.S. Dist. LEXIS 242363 (M.D. Fla. July 20, 2022).

## CERTIFICATE OF CONFERRAL

Pursuant to Rule 26, Fed. R. Civ. P., and Local Rule 7.1, undersigned counsel certify that movants have in good faith conferred with counsel for Plaintiffs on the matters in this notice in an effort to resolve the dispute without Court action on numerous occasions, most recently by phone on Friday, June 16, 2023, but were not able to reach an agreement on this issue.

Dated: June 21, 2023

Respectfully submitted,

By: */s/Alaina Fotiu-Wojtowicz*
Alaina Fotiu-Wojtowicz, Esq.
Florida Bar No.: 84179
BRODSKY FOTIU-WOJTOWICZ, PLLC
*Counsel for Defendant Ronda McNae*
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com

By: */s/ Stephanie Casey*
Stephanie Casey, Esq.
Florida Bar No. 97483
COLSON HICKS EIDSON, PA
*Counsel for Defendant Will McNae*
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel: 305-476-7400
Fax: 305-476-7444
scasey@colson.com

4



BRODSKY FOTIU·WOJTOWICZ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically through the Court's CM/ECF System upon all parties registered to receive electronic notice in this case on this 21st day of June, 2023.

/s/Alaina Fotiu-Wojtowicz
Alaina Fotiu-Wojtowicz, Esq.

## SERVICE LIST

Peter E. Berlowe, Esq.
Meredith J. Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlow.com
*Attorneys for Plaintiffs*

Stephanie Casey, Esq.
COLSON HICKS EIDSON, PA
*Counsel for Defendant Will McNae*
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel: 305-476-7400
Fax: 305-476-7444
scasey@colson.com
*Attorney for Defendant William McNae*

5

**BFW**

BRODSKY FOTIU·WOJTOWICZ

# Exhibit H

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 122 of
150
Case 1:22-cv-22171-JEM   Document 74   Entered on FLSD Docket 06/22/2023   Page 1 of 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-22171-JEM-Becerra

MICHAEL J. FITZGERALD,
individually, and YELANY DE
VARONA, individually,

      Plaintiffs,

v.

RONDA MCNAE, individually,
and WILLIAM MCNAE, individually,

      Defendant.

_____ /

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR RULING ON CLAIM OF PRIVILEGE**

Case 1:22-cv-22171-JEM   Document 283   Entered on FLSD Docket 01/30/2025   Page 123 of
150
Case 1:22-cv-22171-JEM   Document 74   Entered on FLSD Docket 06/22/2023   Page 2 of 5

Defendants Ronda McNae and William McNae filed this brief reply in support of their motion for a Court order overruling a claim of privilege over Subpoena Exhibits 2 and 3. The claim of privilege should be overruled because there is no evidence in the record that would support the existence of a common interest between SoftwareONE and Fitzgerald.

### A. The Claim of Privilege Over Exhibit 2 Should be Overruled.

SoftwareONE,[1] as the entity claiming protection of the common interest doctrine, has the burden of establishing its essential elements. *See Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1287 (S.D. Fla. 2012). "Conclusory assertions will not suffice; the party asserting the privilege must offer underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit." *Havana Docks Corp. v. MSC Cruises (USA) Inc.*, 19-23588, 2021 WL 4973463, at *2 (S.D. Fla. July 20, 2021) (internal citations omitted).

SoftwareONE presents no evidence of an agreement with Fitzgerald at the time Exhibit 2 was sent—an essential element for the common interest doctrine to apply. *See Del Monte Int'l GMBH v. Ticofrut, S.A.*, 16-23894, 2017 WL 1709784, at *8 (S.D. Fla. May 2, 2017) ("Although a common interest understanding need not necessarily be in writing or a particular form, an agreement there must be.") (internal quotation marks omitted). Fitzgerald, through his counsel, denies there was an agreement at the time of the communication, and affirmatively states that he did not share a common interest with SoftwareONE at that time. [D.E. 67, at 5.] While SoftwareONE attaches two declarations to its letter brief, neither supports the existence, timing, or scope of any common interest agreement with Fitzgerald about anything. [*See* D.E. 68-1, at 21-24; D.E. 68-2.] SoftwareONE has provided nothing more than attorney argument, which provides "no basis on which to weigh the applicability of the claim of privilege." *Campero USA Corp.*, 916 F. Supp. 2d at 1287.

The Court's analysis can end there. Whether SoftwareONE's investigation "resulted from Ronda McNae's claims" or "was conducted in anticipation of litigation" (presumably against the McNaes) [D.E. 68, at 2] is non-dispositive because Exhibit 2 was sent to a third party (Fitzgerald) in the absence of a common interest agreement. But, in any event, SoftwareONE also fails to provide *evidence* about its internal investigation; SoftwareONE's declarations do not support

---

[1] SoftwareONE cites no legal support for its suggestion in its letter brief that this dispute over documents produced in discovery *in this case* should be decided in the Eastern District of Wisconsin because they were attached to a third-party subpoena that was never formally served and has not been pursued since SoftwareONE gave notice of its claim of privilege. [D.E. 68 at 1.]

counsel's conclusory assertions about what the purpose or subject matter of the investigation was.[2]

Finally, although Plaintiffs do not contend Exhibit 2 was inadvertently produced, they claim it is an inadmissible settlement communication. The issue of admissibility, however, is not before the Court, nor is admissibility a factor in ruling on a claim of privilege.

## B. Exhibit 3 Is Not a Privileged or Protected Communication.

Ms. Gaines' declaration[3] states that she sent her email after Fitzgerald "informed me that he planned to file suit against Ronda McNae." [D.E. 68-2 at 3.] SoftwareONE does not consider the transmittal of that information as privileged or protected because Ms. Gaines has relayed it in her declaration filed on the public docket with this Court. [*Id.*] That is the substance of the first sentence of Exhibit 3. The second sentence of Exhibit 3 refers to a request for transmittal of a document. And the third sentence reveals the reason for the request: to prepare a PR response, which is not a legal purpose. [*See* D.E. 63, at 5[4].] The document, on its face, contains no "mental impressions regarding Mr. Fitzgerald's lawsuit and how that lawsuit might impact SWO's legal rights related to potential defamation, disparagement, business disruption, and other tort or contract claims," as Ms. Gaines represents to this Court under oath. [*See* D.E. 68-2, at 3.] Finally, although Ms. Gaines avers in a conclusory fashion that she sent the email for the purpose of rendering legal advice to her client, SoftwareONE, that does not make the communication privileged as between Ms. Gaines and Fitzgerald (who is not her client). As with Exhibit 2, neither Fitzgerald nor SoftwareONE have produced evidence to support the existence, timing, or scope of the claimed common interest agreement with Fitzgerald that covers Exhibit 3. Ms. Gaines does not make even a conclusory averment under oath that the email was sent as part of a common interest agreement. That is fatal.

There is no evidence before the Court to support the claim of privilege over Exhibit 2 or 3.

---

[2] Fitzgerald testified that he was not told the purpose of the investigation; he assumed it was related to the filing of this lawsuit, but "I might be under the wrong assumption." [*See* DE 63-2, at 2, 3-4.]

[3] The declaration of Jennifer Gaines incorrectly refers to "Exhibit 2." [D.E. 68-2.] In reality, the declaration addresses Exhibit 3, which Ms. Gaines authored and sent on July 14, 2022. Exhibit 3 was sent by Jenny Martinez, on November 28, 2022.

[4] SoftwareONE attempts to distinguish the cases cited by Defendants on the basis that the communications at issue were sent to non-lawyers. Those cases did not turn on that fact; they turned on the fact that the communications did not contain legal advice or were prepared to devise a public relations strategy. *See also Burton v. R.J. Reynolds Tobacco Co.*, 200 F.R.D. 661, 669 (D. Kan. 2001) (documents drafted by lawyers related to PR issues were not privileged).

Respectfully submitted,

By: _Stephanie A. Casey_
Stephanie A. Casey
Florida Bar No. 97483
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel: 305-476-7400
Fax: 305-476-7444
scasey@colson.com

_Counsel for Defendant William McNae_

By: _Alaina Fotiu-Wojtowicz_
Alaina Fotiu-Wojtowicz, Esq.
Florida Bar No.: 84179
**BRODSKY FOTIU-WOJTOWICZ, PLLC**
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com

_Counsel for Defendant Ronda McNae_

3

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email

upon all parties listed on the Service List below, on this 22nd day of June, 2023, to the following:


Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com

*Counsel for Plaintiffs*

Jenny L. Martinez
Michael A. McCabe
MUNCK WILSON MANDALA, LLP
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251
972-628-3600
972-628-3616 fax
jmartinez@munckwilson.com


Alaina Fotiu-Wojtowicz, Esq.
Florida Bar No. 84179
BRODSKY FOTIU-WOJTOWICZ, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
alaina@bfwlegal.com
*Counsel for Defendant Ronda McNae*


By: *Alaina Fotiu-Wojtowicz*
Alaina Fotiu-Wojtowicz, Esq.


4

# Exhibit I

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MICHAEL J. FITZGERALD, individually, and          CASE NO. 1:22-cv-22171-JEM
YALENY DE VARONA, individually,

      Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

      Defendants.

_____/

### DEFENDANTS' JOINT REQUEST FOR PRODUCTION OF DOCUMENTS

      Defendants, Ronda McNae and William McNae, request that Plaintiff Michael J. Fitzgerald produce the documents requested below for inspection and copying at the offices of the undersigned, in accordance with the applicable Federal Rules of Civil Procedure.

### INSTRUCTIONS

      1.    The documents requested herein shall be produced at the offices of Brodsky Fotiu-Wojtowicz, PLLC, 200 SE 1st Street, Suite 400, Miami, FL 33131.

      2.    Each request for documents seeks production of all documents described, including all drafts and non-identical copies.

      3.    Each request for a document contemplates production of the document in its entirety, without abbreviation or expurgation, and with any other documents or attachments to which it is or ever was attached.

      4.    In responding to this Request for Production, furnish all responsive documents that are in your possession, custody, or control, regardless of the location of



BRODSKY FOTIU-WOJTOWICZ

the document, including but not limited to documents that you have the right, authority, or ability to obtain.

5.     If you withhold all or any part of a document by claiming that it is privileged or subject to protection as trial preparation material, make the claim expressly and describe the nature of the documents not produced in a manner that, without revealing information itself privileged or protected, will enable the Defendant to assess the applicability of the privilege or protection.

6.     If any information or document requested herein was formerly in your possession, custody or control and has been lost, destroyed, discarded, or otherwise disposed of, you are requested to submit in lieu of any such information or document a written statement: (a) describing in detail the nature of the information or document and its contents; (b) identifying the person or entity who prepared the information or document and, if applicable, the person to whom the information or document was transmitted or sent, and indicate carbon or blind copies; (c) specifying the date on which the information or document was prepared and/or transmitted; (d) specifying the date on which the information or document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the persons requesting and performing such destruction.

7.     To the extent that any responsive information or materials are located subsequent to the time of production, Plaintiff shall produce such additional material in accordance with the Federal Rules of Civil Procedure.

BFW

BRODSKY FOTIU-WOJTOWICZ

## DEFINITIONS

1.      The term "Michael J. Fitzgerald" shall include Michael J. Fitzgerald, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under his control or at his direction.

2.      "You", "Your," or "Yourself" shall include Michael J. Fitzgerald, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under his control or at his direction.

3.      The term "Decision Intel Limited" shall include Decision Intel Limited, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under its control or at its direction.

4.      The term "Cognino AI" shall include Cognino AI, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under its control or at its direction.

5.      The term "Persefoni AI" shall include Persefoni AI, and any employee, affiliate, officer, agent (including, without limitation, attorneys, accountants, consultants, and investment advisors) and any other persons or entities acting on behalf of, in concert with, or under its control or at its direction.

6.      The singular includes the plural and vice versa; the words "and" and "or" are both conjunctive and disjunctive; the word "all" means "any and all;" the word "any" means

3



BRODSKY FOTIU-WOJTOWICZ

"any and all;" and the word "including" means "including but not limited to."

7.     The term "person" shall include natural persons, corporations, partnerships, unincorporated associations, trusts, and all other legal entities.

8.     The terms "regarding," "referring to," and "relating to" mean relating to, referring to, evidencing, reflecting, recording, memorializing, constituting, supporting, mentioning, or concerning in any way, directly or indirectly.

9.     The masculine or feminine form of nouns and pronouns shall embrace, and be read and applied to include, the plural, feminine, masculine or neuter, as circumstances may make appropriate.

10.     The term "documents" means all writings or graphic digital or electronic materials or any other means of preserving thought or expression, including computer and/or word processing or computer-assisted memory, and all tangible things of any kind or character however stored, retrieved, produced, reproduced or reproducible, from which information can be retrieved, produced, processed or transferred, including originals and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including but not limited to:

   a.     Correspondence, memoranda, notes, messages, letters, telegrams, record of any telephone calls or face-to-face communications;

   b.     E-mail and all other electronic mail or internet messages, (1) including but not limited to those to or from any business or personal e-mail account,  Twitter account, Facebook account, Instagram account, or MySpace account, or text or Whatsapp messages, (2) wherever stored, including but not limited to, on remote servers, office servers, private servers, office or personal

BRODSKY FOTIU-WOJTOWICZ

computer hard drives, or telephones; and (3) whether such have been saved or deleted but retrievable;

     c.     Minutes, books, reports, studies, charts, ledgers, invoices, worksheets, receipts, canceled checks, financial statements, schedules, affidavits, contracts, exhibits, insurance certificates, transcripts, statistics, surveys, summaries, compilations, blueprints, specifications, plans, file folders and flaps, test data and graphs depicting test results, inter-office memoranda, intra-office memoranda, stock certificates, balance sheets; and

     d.     Notations or statements of any kind whatsoever of communications containing conversations, dialogues, discussions, interviews, consultations, or other understandings between or among two or more persons, whether oral or written.

     e.     Manuals, guidelines, booklets, pamphlets or other documents stating, describing, analyzing or discussing standards, including but not limited to inhouse standards, industry standards or suggested "best practice" or similar guidelines, or governmentally-imposed standards.

## ITEMS REQUESTED

1.     Any and all communications between You and Priti Madhab Padhy that refer or relate in any way to Decision Intel Limited.

2.     Any and all communications between You and Priti Madhab Padhy that refer or relate in any way to Cognino AI.

3.     Any and all communications between You and Priti Madhab Padhy that refer or relate in any way to any potential business venture or opportunity.

4.     Any and all communications between You and Priti Madhab Padhy that



BRODSKY FOTIU-WOJTOWICZ

refer or relate in any way to the issues, claims, or defenses raised in this litigation.

5.      Any and all communications with third parties that refer or relate in any way to Decision Intel Limited.

6.      Any and all business plans or financial forecasts for Decision Intel Ltd.

7.      Any and all communications with third parties that refer or relate in any way to Cognino AI.

8.      Any and all documents or communications that reflect any help, consulting, or advice you provided to Cognino AI between January 2019 and the present as set forth in your deposition testimony on pages 356 through 358 of your deposition transcript.

9.      Documents sufficient to reflect the loss you will realize upon Cognino AI's insolvency.

10.     Any and all communications between You and Kentaro Kawamori that refer or relate in any way to Persefoni AI or any of its affiliates.

11.     Any and all communications between You and Kentaro Kawamori that refer or relate to any potential business venture or opportunity.

12.     Any and all communications between You and Kentaro Kawamori that refer or relate in any way to the issues, claims, or defenses raised in this litigation.

13.     Any and all documents or communications that refer or relate in any way to the entrepreneurial opportunity at Persefoni AI that you passed up, as set forth in your deposition testimony on pages 528 through 531 of your deposition transcript.

14.     Any and all communications with Yelany de Varona that refer or relate in any way to Shoreline.

15.     Any and all communications with Alex McKenzie that refer or relate in any way to Shoreline.

16.     Any communications with third parties that refer or relate in any way to Shoreline.

17.     Any and all documents or communications that reflect any help, consulting,

6



BRODSKY FOTIU-WOJTOWICZ

or advice you provided to Shoreline between January 2019 and the present.

18.    Any and all business plans or financial forecasts for Shoreline.

19.    Any and all documents or communications that refer or relate in any way to any conversations you have had with people or other companies regarding whether there's a potential role or job available for you, as set forth in your deposition testimony on page 196 of your deposition transcript.

20.    Any and all documents that reflect anyone reaching out to you to work with them since the lawsuit started, as set forth in your deposition testimony on page 500 of your deposition transcript.

21.    Any and all journals, notes, or other written form of communication that refer or relate in any way to Ronda McNae, William McNae, your relationship with Yelany de Varona, and/or your mental or emotional state.

22.    Your cell phone call logs for the months of July, 2019 through June, 2020 for all cell phones you utilized during that time period.

23.    Your cell phone text logs for the months of July, 2019 through June, 2020 for all cell phones you utilized during that time period.

24.    Your Uber receipt for all Ubers ordered to the sushi restaurant during the San Francisco trip, as set forth in your deposition testimony on page 110 of your deposition transcript.

25.    The LinkedIn messages you received from your industry peers from January 2019 to the present, as set forth in your deposition testimony on page 329 of your deposition transcript.

26.    Any and all communications between You and any third party regarding why You are no longer employed at SoftwareONE.

27.    Any and all communications between You and any potential fact witness in this case, including but not limited to any witness listed on any of the Parties' Initial Disclosures, that refer or relate to the issues, claims, or defenses involved in this litigation.

28.    Any and all communications between the law firm of Assouline & Berlowe,

7



through its attorneys, agents, and employees, and any potential fact witness in this case, including but not limited to any witness listed on any of the Parties Initial Disclosures.

Respectfully submitted,

By: */s/Alaina Fotiu-Wojtowicz*
Alaina Fotiu-Wojtowicz, Esq.
Florida Bar No.: 84179
BRODSKY FOTIU-WOJTOWICZ, PLLC
*Counsel for Defendant Ronda McNae*
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com

By: */s/ Stephanie Casey*
Stephanie Casey, Esq.
Florida Bar No. 97483
COLSON HICKS EIDSON, PA
*Counsel for Defendant Will McNae*
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel: 305-476-7400
Fax: 305-476-7444
scasey@colson.com

8

**BFW**

BRODSKY FOTIU-WOJTOWICZ

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email upon all parties listed on the Service List below, on this 6th day of April, 2023.

/s/Alaina Fotiu-Wojtowicz
Alaina Fotiu-Wojtowicz, Esq.

**SERVICE LIST**

Peter E. Berlowe, Esq.
Meredith J. Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlow.com
*Attorneys for Plaintiffs*

BFW

BRODSKY FOTIU-WOJTOWICZ

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
Individually, and YELANY DE VARONA,
Individually,

               Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

               Defendants.

_____/

## PLAINTIFF FITZGERALD'S OBJECTIONS AND RESPONSES TO DEFENDANTS' JOINT REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, MICHAEL FITZGERALD ("Fitzgerald"), by and through the undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, hereby responds to Defendants, RONDA MCNAE ("R. McNae") and WILLIAM MCNAE's ("W. McNae") Joint Request for Production of Documents to Plaintiff Michael Fitzgerald, as follows:

### OBJECTIONS AND RESPONSES

1.     **Any and all communications between You and Priti Madhab Padhy that refer or relate in any way to Decision Intel Limited.**

    **RESPONSE**: Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome and is not likely to lead to admissible evidence. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case. Fitzgerald further objects to this request as it is purposefully designed to gain information to harass Plaintiff and anyone who would do business with him, similar to how Defendants have used their knowledge of Persefoni and Kentaro Kawamori to further damage Fitzgerald's reputation and ability to conduct business in his chosen career.

1

2.    **Any and all communications between You and Priti Madhab Padhy that refer or relate in any way to Cognino AI.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome and is not likely to lead to admissible evidence. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case.  Fitzgerald further objects to this request as it is purposefully designed to gain information to harass Plaintiff and anyone who would do business with him, similar to how Defendants have used their knowledge of Persefoni and Kentaro Kawamori to further damage Fitzgerald's reputation and ability to conduct business in his chosen career.

3.    **Any and all communications between You and Priti Madhab Padhy that refer or relate in any way to any potential business venture or opportunity.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome and is not likely to lead to admissible evidence. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case. Fitzgerald further objects to this request as it is purposefully designed to gain information to harass Plaintiff and anyone who would do business with him, similar to how Defendants have used their knowledge of Persefoni and Kentaro Kawamori to further damage Fitzgerald's reputation and ability to conduct business in his chosen career.

4.    **Any and all communications between You and Priti Madhab Padhy that refer or relate in any way to the issues, claims, or defenses raised in this litigation.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome and is not likely to lead to admissible evidence. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case. Notwithstanding the foregoing, no such documents exist. Fitzgerald further objects to this request as it is purposefully designed to gain information to harass Plaintiff and anyone who would do business with him, similar to how Defendants have used their knowledge of Persefoni and Kentaro Kawamori to further damage Fitzgerald's reputation and ability to conduct business in his chosen career.

5.    **Any and all communications with third parties that refer or relate in any way to Decision Intel Limited.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome and is not likely to lead to admissible evidence. Fitzgerald

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd Street, Suite 3105, Miami, Florida 33131 - Telephone: 305-567-5576

objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case. Fitzgerald further objects to this request as it is purposefully designed to gain information to harass Plaintiff and anyone who would do business with him, similar to how Defendants have used their knowledge of Persefoni and Kentaro Kawamori to further damage Fitzgerald's reputation and ability to conduct business in his chosen career.

6.     **Any and all business plans or financial forecasts for Decision Intel Ltd.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome and is not likely to lead to admissible evidence. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case. Notwithstanding the foregoing, no such documents exist. Fitzgerald further objects to this request as it is focused on judgment collection which is not appropriate at this time, as Defendants have not even filed their answer, let alone their threatened counterclaim.

7.     **Any and all communications with third parties that refer or relate in any way to Cognino AI.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome and is not likely to lead to admissible evidence. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case.  Fitzgerald further objects to this request as it is purposefully designed to gain information to harass Plaintiff and anyone who would do business with him, similar to how Defendants have used their knowledge of Persefoni and Kentaro Kawamori to further damage Fitzgerald's reputation and ability to conduct business in his chosen career.

8.     **Any and all documents or communications that reflect any help, consulting, or advice you provided to Cognino AI between January 2019 and the present as set forth in your deposition testimony on page 356 through 358 of your deposition transcript.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence, and is interposed simply for purposes of harassment. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case. Notwithstanding the foregoing, no such documents exist.

9. **Documents sufficient to reflect the loss you will realize upon Cognino AI's insolvency.**

   **RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome and is not likely to lead to admissible evidence. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case. Notwithstanding the foregoing, no such documents exist. Fitzgerald further objects to this request as it is focused on judgment collection which is not appropriate at this time, as Defendants have not even filed their answer, let alone their threatened counterclaim.

10. **Any and all communications between You and Kentaro Kawamori that refer or relate in any way to Persefoni AI or any of its affiliates.**

    **RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, and is not likely to lead to admissible evidence. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case. Fitzgerald further objects to this request as it is purposefully designed to gain information to harass Plaintiff and anyone who would do business with him, to further damage Fitzgerald's reputation and ability to conduct business in his chosen career.

11. **Any and all communications between You and Kentaro Kawamori that refer or relate to any potential business venture or opportunity.**

    **RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, and is not likely to lead to admissible evidence. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case. Fitzgerald further objects to this request as it is purposefully designed to gain information to harass Plaintiff and anyone who would do business with him, to further damage Fitzgerald's reputation and ability to conduct business in his chosen career.

12. **Any and all communications between You and Kentaro Kawamori that refer or relate in any way to the issues, claims, or defenses raised in the litigation.**

    **RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence and is interposed for purposes or harassment. Fitzgerald objects as this request on that basis that it is harassing and oppressive in exploring minute details that are not at issue in this case. Fitzgerald further objects to this request as it is purposefully designed to gain information to harass Plaintiff and anyone who would do business with him, to further damage Fitzgerald's reputation and ability to

4

conduct business in his chosen career.   Notwithstanding the foregoing, no responsive documents exist.

13.    **Any and all documents or communications that refer or relate in any way to the entrepreneurial opportunity at Persefoni AI that you passed up, as set forth in your deposition testimony on pages 528 through 531 of your deposition transcript.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, and is not likely to lead to admissible evidence. Notwithstanding the foregoing, no such documents exist. Fitzgerald objects as this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case.

14.    **Any and all communications with Yelany de Varona that refer or relate in any way to Shoreline.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence and is interposed for purposes of harassment.  Fitzgerald further objects on the basis of spousal privilege and on the basis that the documents sought are confidential business proprietary information. Fitzgerald objects to this request on that basis that is harassing and oppressive in exploring minute details that are not at issue in this case.

15.    **Any and all communications with Alex McKenzie that refer or relate in any way to Shoreline.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence and is interposed for purposes or harassment. Fitzgerald objects as this request on that basis that it is oppressive in exploring minute details that are not at issue   in   this case.

16.    **Any communications with third parties that refer or relate in any way to Shoreline.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence and is interposed for purposes or harassment. Fitzgerald further objects on the basis that the documents sought are confidential business proprietary information. Fitzgerald objects as this request on that basis that it is oppressive in exploring minute details that are not at issue in this case.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd Street, Suite 3105, Miami, Florida 33131 - Telephone: 305-567-5576

17. **Any and all documents or communications that reflect any help, consulting, or advice you provided to Shoreline between January 2019 and the present.**

   **RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence and is interposed for purposes or harassment. Fitzgerald further objects on the basis that the documents sought are confidential business proprietary information. Fitzgerald objects to this request on that basis that it is oppressive in exploring minute details that are not at issue in this case.

18. **Any and all business plans or financial forecasts for Shoreline.**

   **RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence and is interposed for purposes or harassment. Fitzgerald further objects on the basis of that the documents sought are confidential business proprietary information. Fitzgerald objects to this request on that basis that it is oppressive in exploring minute details that are not at issue in this case.

19. **Any and all documents or communications that refer or relate in any way to any conversations you have had with people or other companies regarding whether there's a potential role or job available for you, as set forth in your deposition testimony on page 196 of your deposition transcript.**

   **RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence and is interposed for purposes or harassment. Fitzgerald further objects to this request on the basis that it is vague, and oppressive in exploring minute details that are not at issue in this case.

20. **Any and all documents that reflect anyone reaching out to you to work with them since the lawsuit started, as set forth in your deposition testimony on page 500 of your deposition transcript.**

   **RESPONSE:** To the extent any responsive non-privileged documents exist, they will be provided at a mutually convenient time and place.

21. **Any and all journals, notes, or other written form of communication that refer or relate in any way to Ronda McNae, William McNae, your relationship with Yelany de Varona, and/or your mental or emotional state.**

   **RESPONSE:** No such documents are in Fitzgerald's care, custody or control. To the extent any responsive documents ever existed prior to this litigation, they are no longer in existence due to the fact that Fitzgerald believed that any disputes or issues he had with the Defendants were fully and finally resolved by way of the parties' Confidential Settlement Agreement.

22.   **Your cell phone call logs for the months of July, 2019 through June, 2020 for all cell phones you utilized during that time period.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence and is interposed for purposes or harassment. Furthermore, Fitzgerald objects to this request on the basis that it is oppressive as it seeks to explore minute details that are not at issue in this case. Fitzgerald objects to the time frame of this request.

23.   **Your cell phone text logs for the months of July, 2019 through June, 2020 for all cell phones you utilized during that time period.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence and is interposed for purposes or harassment. Furthermore, Fitzgerald objects to this request on the basis that it is oppressive as it seeks to explore minute details that are not at issue in this case. Fitzgerald objects to the time frame of this request and to vagueness and ambiguity.

24.   **Your Uber receipt for all Ubers ordered to the sushi restaurant during the San Francisco trip, as set forth in your deposition testimony on page 110 of your deposition transcript.**

**RESPONSE:** To the extent that responsive documents exist, same will be provided at a mutually agreed upon time and place.

25.   **The LinkedIn messages you received from your industry peers from January 2019 to the present, as set forth in your deposition testimony on page 329 of your deposition transcript.**

**RESPONSE:** To the extent that responsive documents exist, same will be provided at a mutually agreed upon time and place.

26.   **Any and all communications between You and any third party regarding why You are no longer employed at SoftwareONE.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is not relevant, it is overly burdensome, is not likely to lead to admissible evidence and is interposed for purposes or harassment. Furthermore, Fitzgerald objects to this request on the basis that it is oppressive as it seeks to explore minute details that are not at issue in this case. Fitzgerald objects to this request on the basis of vagueness and ambiguity.

ASSOULINE & BERLOWE, P.A.
Miami Tower, 100 S.E. 2nd Street, Suite 3105, Miami, Florida 33131 - Telephone: 305-567-5576

27. **Any and all communications between You and any potential fact witness in this case, including but not limited to any witness listed on any of the Parties' Initial Disclosures, that refer or relate to the issues, claims, or defenses involved in this litigation.**

**RESPONSE:** All responsive documents either already have, or will be, produced at time and place that is mutually agreed upon by the parties. Any additional responsive documents will be provided at a mutually agreed upon time and place.

28. **Any and all communications between the law firm of Assouline & Berlowe, through its attorneys, agents, and employees, and any potential fact witness in this case, including but not limited to any witness listed on any of the Parties Initial Disclosures.**

**RESPONSE:** Fitzgerald objects to this request to the extent it seeks documents between the Plaintiffs and their attorneys, such documents are protected by the attorney-client privilege and/or the work product privilege. Responsive documents have already been produced at FITZ001444 through FITZ001655. All other responsive non-privileged documents will be produced at a mutually convenient time and place to be agreed upon by the attorneys.

Dated: May 15, 2023                              Respectfully submitted,

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
Telephone: (305) 567–5576
Facsimile:  (305) 567–9343

By:     /s/ Meredith J. Gussin
Peter E. Berlowe
Florida Bar No. 143650
Meredith J. Gussin
Florida Bar No. 0512303
*Attorneys for Plaintiffs Michael Fitzgerald and Yelany de Varona*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via email upon all parties listed on the Service List below, on this 15th day of May, 2023.

By: /s/ *Meredith J. Gussin*
Meredith J. Gussin, Esq.

## SERVICE LIST

Alaina Fotiu-Wojtowicz, Esq.
Brodsky Fotiu-Wojtowicz, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel.: 305-503-5054
Fax: 305-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com

Stephanie A. Casey, Esq.
COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel.: 305-476-7400
scasey@colson.com

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
Individually, and YELANY DE VARONA,
Individually,

                **Plaintiffs,**

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

                **Defendants.**

_____/

### PLAINTIFF FITZGERALD'S OBJECTIONS AND RESPONSES TO DEFENDANT WILLIAM MCNAE'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF MICHAEL FITZGERALD

Plaintiff MICHAEL FITZGERALD ("Fitzgerald"), by and through the undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, hereby responds to Defendant, WILLIAM MCNAE's ("W. McNae") Second Request for Production of Documents to Plaintiff Michael Fitzgerald, as follows:

### OBJECTIONS AND RESPONSES

1.    **All employment contracts with any person or entity (including, but not limited to, SoftwareONE.**

    **RESPONSE**: Fitzgerald objects to this request to the extent that it is not limited in time. Notwithstanding the foregoing, Fitzgerald has already produced his employment contract with SoftwareONE at FITZ000842 - 000861. Other than the employment contract with SoftwareONE, there are no other employment contracts in Fitzgerald's care, custody or control.

2.    **All documents that refer or relate to any change in Your position, employment status, or compensation with SoftwareONE.**

**RESPONSE:** Fitzgerald objects to this request on the basis that it is vague and overbroad.  However, to the extent that it seeks documents regarding Fitzgerald's current status with SoftwareONE, Fitzgerald has already produced responsive documents at FITZ000417 and FITZ000842 – 000861 as well as pay slips and tax forms at FITZ 001107 – 001136, FITZ 001151-001234 and FITZ 001366-001368.  No other documents are in Fitzgerald's care, custody or control.

3. **Your complete payroll file from SoftwareONE.**

**RESPONSE:** Fitzgerald has already produced documents responsive to this request at FITZ 0011007-001136 and FITZ 001151-001234.

4. **Documents or communications relating to SoftwareONE's disciplinary and/or grievance policies or procedures, including any copies of the policies or procedures themselves.**

**RESPONSE:** To the extent that Fitzgerald has responsive documents in his care, custody or control, same will be provided at a mutually convenient time and place.

5. **Documents or communications relating to SoftwareONE's policy on Control of Substances Hazardous to Health, including any copies of the policies or procedures themselves.**

**RESPONSE:** Fitzgerald does not have any responsive documents in his care, custody or control and does not have access to SoftwareONE's policies or procedures.

6. **The witness statements, interview notes, downloads of emails and text message exchanges provided to SoftwareONE in connection with the internal review that Mr. Dieter Schlosser references in his July 24, 2022 letter to you.**

**RESPONSE:** Fitzgerald does not have any responsive documents in his care, custody or control but has again asked for copies of same and, if received, will update this response.

7. **All documents (including drafts) pertaining to any internal review conducted by SoftwareONE into Your performance or conduct.**

**RESPONSE:** Fitzgerald does not have access to any documents pertaining to any internal review and does not have any copies of any of the documents sought in this request in his care, custody or control.

8. **Your complete SoftwareONE employment file.**

**RESPONSE:** Fitzgerald has already produced responsive documents at FITZ

ASSOULINE & BERLOWE, P.A.
Miami Tower, 100 S.E. 2nd Street, Suite 3105, Miami, Florida 33131 - Telephone: 305-567-5576

001066 – FITZ 001076 and will produce additional, non privileged documents at a mutually convenient date and time.

9.    **All documents that refer or relate to Your search for employment since 2016, including, but not limited to: engagement letters or agreements, or any communications, with any headhunters or other similar professionals; job applications; communications with prospective or potential employers; any offers of employment; letters of acceptance or rejection of such offers.**

**RESPONSE:** Fitzgerald objects to this request on the basis of the timeframe sought; Fitzgerald was employed by SoftwareONE UK Limited from May 2016 through February of 2023.

10.   **Documents sufficient to show all compensation You received from any source without limitation beginning since January 1, 2015.**

**RESPONSE:** Fitzgerald has already produced all relevant responsive documents within his care, custody or control.

11.   **All medical records referring or relating to mental health counseling You received since October 2019.**

**RESPONSE:** All responsive documents either already have, or will be, produced at time and place that is mutually agreed upon by the parties.

12.   **All documents, including invoices, that support the damages You are seeking in this litigation.**

**RESPONSE:** All responsive documents either already have, or will be, produced at time and place that is mutually agreed upon by the parties.

Dated: March 17, 2023

Respectfully submitted,

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
Telephone: (305) 567–5576
Facsimile:  (305) 567–9343

By:  /s/ Meredith J. Gussin
Peter E. Berlowe
Florida Bar No. 143650
Meredith J. Gussin
Florida Bar No. 0512303
*Attorneys for Plaintiff Michael Fitzgerald*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via email upon all parties listed on the Service List below, on this 17th day of March, 2023.

By: */s/ Meredith J. Gussin*
Meredith J. Gussin, Esq.

## SERVICE LIST

Alaina Fotiu-Wojtowicz, Esq.
Brodsky Fotiu-Wojtowicz, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel.: 305-503-5054
Fax: 305-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com

Stephanie A. Casey, Esq.
COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel.: 305-476-7400
scasey@colson.com



Align bottom of peel-and-stick airbill or pouch here

ORIGIN ID:PAEA  (425) 941-7374
WILLIAM ROWE
804 11TH PL

KIRKLAND, WA 98033
UNITED STATES US

TO MIAMI COURT HOUSE
ATTN: COURT CLERK
400 N MIAMI AVE
RM 8N09
MIAMI FL 33128

SHIP DATE: 28JAN25
ACTWGT: 1.00 LB
CAD: 63704S3/RSXA2510

REC'D BY_____D.C.

JAN 2 9 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA - MIAMI

FedEx
Express

TRK# 7717 3653 3718      WED − 29 JAN 10:30A
PRIORITY OVERNIGHT

X6 MPBA                   33128
                          FL-US  MIA

PRIORITY OVERNIGHT
458-1059
33128

Align top of FedEx Express® shipping label

TO REUSE: Mark through all previous shipping labels so