IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

         Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

         Defendants.

_____/



FILED BY_____D.C.

JAN 3 1 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## DEFENDANT RONDA MCNAE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CASE MANAGEMENT CONFERENCE (DE 282)

Defendant Ronda McNae, appearing pro se, submits this Response in Opposition to Plaintiff's Motion for a Case Management Conference (DE 282). Plaintiff's Motion for a Case Management Conference is a transparent attempt to manufacture urgency and mislead the Court while evading accountability for significant discovery violations, jurisdictional errors, and procedural misconduct. This litigation has been delayed not by Defendant, but by Plaintiff's repeated withholding of critical evidence, failure to comply with discovery obligations, and misuse of confidentiality agreements to suppress key facts. Accordingly, this Court should deny Plaintiff's motion and instead compel Plaintiff to comply with outstanding discovery requests and address these material violations.

## **ARGUMENT**:

### A. **PLAINTIFF'S MOTION MISREPRESENTS THE CAUSE OF DELAYS**

Plaintiff's motion falsely attributes delays to Defendant while ignoring Plaintiff's own discovery misconduct, procedural violations, and efforts to suppress key evidence.

1. As a pro se litigant, I am required to file documents manually, which inherently results in processing delays beyond my control. Plaintiff's counsel is well aware of this yet still misrepresents these circumstances to the Court.

2. Plaintiff has engaged in systematic discovery abuses, including withholding 167 critical photographs, HR records, and improperly designating key evidence as "Attorney Eyes Only" (AEO) while continuing to block my access to materials essential to my defense.

3. Plaintiff and his counsel intentionally obstructed access to SoftwareONE UK ("SWO UK") records by exploiting UK privacy laws while failing to disclose a subpoena target. Plaintiff omitted SWO UK from his initial Rule 26(a) disclosures, despite its direct relevance to his employment records and HR complaints. When the issue became unavoidable, Plaintiff still failed to identify a proper contact or entity within SWO UK for subpoena purposes— an implicit acknowledgment that access to these records was both necessary and problematic. Plaintiff's counsel, Peter Berlowe, fully aware that UK employment and privacy laws would make obtaining these records exceedingly difficult, nevertheless failed to disclose a knowledgeable person or entity within SWO UK. Worse, even after addressing this issue before Honorable Magistrate Judge Becerra on October 19, 2022, Berlowe still

refused to supplement Fitzgerald's subsequent First and Second Amended disclosures with a proper point of contact — a deliberate act of obstruction designed to frustrate discovery and shield his client from scrutiny.

> MR. BERLOWE:  Your Honor, one more point on the -- on the privacy issue.
>
>        THE COURT:  Sure.
>
>        MR. BERLOWE:  It's a facet we may not appreciate.
>
>    My client is a client -- or is an employee of a United Kingdom entity.
>
>        THE COURT:  Uh-huh.
>
>        MR. BERLOWE:  There are very strong privacy laws in the United Kingdom with respect to employment files and the data that employers collect on employees.

## B.  TIMELINE OF DISCOVERY MISCONDUCT AND DELAYED DISCLOSURES

Plaintiff's own failures to comply with discovery obligations has resulted in significant gaps, delays, and improper withholding of evidence, severely prejudicing Defendant's ability to develop complete defenses and pursue fair litigation. The following timeline outlines Plaintiff's obstructive conduct and demonstrates a clear pattern of deliberate suppression of key evidence:

**Key Events:**

- **September 9, 2022** – Plaintiff provides **Initial Disclosures**; however, individuals with knowledge or access to employment records, HR complaints, and internal investigations from SoftwareONE (SWO) remain undisclosed.
- **September 21, 2022** – **First Subpoena issued to SWO** by Defendant's Counsel, seeking Fitzgerald's employment records and internal HR complaints.
- **October 19, 2022** – **Hearing before Magistrate Judge Becerra**, where Plaintiff's discovery obligations and failure to supplement disclosures were discussed. Despite this, Plaintiff failed to provide relevant employment records.

- **October 26, 2022** – Fitzgerald[1] emails SWO (document not produced or possibly designated "Attorney Eyes Only" (AEO)), expressing interest in an **"amicable separation"** from SWO. This email suggests Plaintiff was already negotiating his departure, contrary to his claims of wrongful termination.

- **November 28, 2022** – **Jenny Martinez[2] (Counsel for SWO) emails Plaintiff**, referencing the October 26 discussion about Plaintiff's separation. Martinez also acknowledges that SWO concluded an internal investigation and found "concerning facts" regarding Fitzgerald. Despite this, SWO has failed to produce the investigation findings.

- **January 18, 2023** – **Plaintiff emails Anna Knight**, indicating he is unable to finalize a settlement agreement due to "fundamental issues."[3] The vagueness of this phrase suggests unresolved matters that may be directly relevant to this case. Plaintiff's counsel has failed to clarify or produce communications related to this delay.

- **February 7, 2023** – **Plaintiff submits First Supplemental Disclosures**, but fails to provide missing employment records, HR complaints, or internal SWO investigation reports. They also do not indicate a person or entity with knowledge of these records.

- **Late February 2023** – **Fitzgerald signs a Confidential Settlement Agreement (CSA2) with SWO** upon his **voluntary separation.** Signatories on the agreement include Anna

---

[1] Exactly one week after the hearing before Honorable Judge Becerra, Fitzgerald coincidentally requested an "amicable separation." During the hearing, Judge Becerra acknowledged the relevance of public policy arguments, stating: *"I understand. I understand that's your case, but she gets to bring a case--or she gets to defend the case. And as--part of her defense I've heard today is going to be the issue that the contract is void for public policy reasons. Again, I understand your position on that, but it's discovery."* Judge Becerra further emphasized the significance of whether law enforcement was involved, stating: *"I think that--let's assume, for example, that there is no communication with law enforcement; right? That actually might be relevant to you because it goes to your argument--argument that this is a consensual case and that there's no public policy argument to be made. If there's a police report made or if Microsoft gave the police some sort of information about this case or made a report to it--right?--that could go to the claim that it wasn't consensual and that the agreement is void [under] public policy."* Judge Becerra's statements on October 19, 2022, underscore the importance of determining whether the settlement agreement between Fitzgerald and Ronda McNae is void as a matter of public policy. The presence or absence of a police report or communication with law enforcement could be critical in evaluating whether the agreement was made to conceal misconduct. Furthermore, if SoftwareONE's internal investigation uncovered evidence of wrongdoing, and Fitzgerald sought a settlement to shield himself from consequences, the agreement may be unenforceable as contrary to public policy. This timeline supports the need for discovery into these events, as they are directly relevant to the defenses raised.

[2] **Implication**: The "concerning facts" imply potential misconduct by Fitzgerald at SWO, which may undermine his credibility as a Plaintiff and the basis for his claims in this litigation. If this investigation revealed improprieties, it could affect the validity of his claims or defenses in this case.

[3] **Implication**: The phrase "fundamental issues" raises questions about Fitzgerald's motivations and whether those issues relate to the validity of the agreement, public policy considerations, or the underlying facts of this case. This email could contain critical context for Defendants defenses.

Knight and Frank Rossini. However, CSA2 has been improperly designated as AEO and withheld from Defendant in her pro se status, despite its direct relevance to this case.

- **April 19, 2023 – Plaintiff submits Second Supplemental Disclosures** but still fails to disclose CSA2, key employment records, and person or entity with knowledge of these records.
- **May 18, 2023 – Notice of Second Subpoena to SWO** issued by Defendant seeking withheld documents previously requested.

## C. PLAINTIFF'S SYSTEMIC DISCOVERY ABUSES AND BAD FAITH CONDUCT

Plaintiff has engaged in a pattern of obstructionist tactics, including:

1. Withholding Critical Employment and HR Records
   a. Plaintiff failed to disclose SoftwareONE UK as his employer in his Initial Disclosures, despite its direct relevance to his employment claims.
   b. CSA2, signed in February 2023, has been improperly withheld, preventing Defendant from accessing critical evidence.
2. Improper use of "Attorney Eyes Only" (AEO) Designations
   a. Key documents, including CSA2 and internal SWO investigation, have continued to be labeled as AEO, preventing Defendant from reviewing essential materials.
   b. This tactic constitutes discovery abuse and violates Rule 37(b).
3. Deliberate Delays and Incomplete Disclosures
   a. Plaintiff's First Supplemental Disclosures (February 7, 2023) and Second Supplemental Disclosures (April 19, 2023) failed to cure discovery deficiencies.
   b. SWO acknowledged "concerning facts" regarding Fitzgerald's conduct, yet those records remain undisclosed. If favorable to Plaintiff, they would be produced.
4. Public Policy and Protective Order Violations
   a. Plaintiff and SWO's weaponization of confidentiality agreements to suppress misconduct violates public policy and must be addressed by the Court.
   b. The timeline aligns with Judge Becerra's acknowledgment that public policy concerns are central to this case, justifying Defendant's right to full discovery.
5. The statement by Mr. Berlowe (See Below) is quite telling. Employment files were already requested a month prior to this hearing before Honorable Judge Becerra. Any delay in

proceedings has been exacerbated by Plaintiff's refusal to comply with discovery obligations and worsened by prior ineffective legal counsel.

> MR. BERLOWE: And those such documents must be produced pursuant to the privacy laws of the United Kingdom, the Data Protection Act of 2018.
>
> THE COURT: I'm very aware of that, yes. I know.
>
> MR. BERLOWE: So, Your Honor, to that extent, I do -- I do believe that a protective order is within the scope of what we're seeking to do because we're seeking to protect those employment records that are coming out from SoftwareONE.

6. Plaintiff's counsel, Ms. Meredith Gussin, and Mr. Peter Berlowe, have engaged in procedural missteps by involving Mr. Richard Gomez in correspondence, claiming he represents Defendant William McNae. Mr. Gomez represented Mr. McNae in the State court case which is separate from this Florida action. This assertion is demonstrably false:

   a. Both William and I directly clarified, via emails on November 12, 2024, at 5:49 PM and 10:32 PM, that Mr. Gomez does not represent either of us in this federal case.

   b. Court filings, including DE 199, confirm that William McNae is proceeding pro se as he was dismissed from this action, eliminating any justification for involving Mr. Gomez.

   c. Plaintiff's counsel improperly invoked Florida Bar Rules to justify including Mr. Gomez in communications related to the federal case. However, this reliance on ethical standards was misplaced, as Mr. Gomez's representation in the unrelated state court matter does not create a basis for his involvement in this federal litigation. (*See* **Exhibit A, p. 5-8).**

7. Insufficient Conferral by Plaintiff's Counsel – Plaintiff's Motion for a Case Management Conference further highlights a pattern of insufficient and disingenuous conferral attempts by Plaintiff's counsel. Notably:

   a) **Poor Execution of the Conferral Process:** On January 28, 2025, Ms. Meredith Gussin requested a response to her conferral email within a three-hour window, despite knowing that such a short timeframe would be unreasonable and unnecessarily urgent.

While Plaintiff may claim the motion was filed the following day, this created an artificial sense of urgency where none existed.

b) **Misrepresentation of Conferral Compliance:** Plaintiff's counsel has previously misrepresented compliance with conferral obligations, as documented by Defendant William McNae's prior counsel, Ms. Stephanie Casey, in this federal action (DE 118). The same tactics of rushing conferrals or mischaracterizing opposition have been used to justify motions prematurely filed without meaningful discussion.

c) **Failure to Facilitate Substantive Discussion:** Plaintiff's conferral attempt amounted to little more than a unilateral demand rather than the "give-and-take" exchange required under Local Rule 7.1(a)(3). As courts in this district have made clear:

> "Sending an email and demanding an immediate or near-immediate response and then filing a motion... does not amount to actual substantive discussion with opposing counsel." (*Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 744 F. Supp. 2d 1297, 1299 n.2 (S.D. Fla. 2010)).

- **Exhibit Reference:**
  Attached is a copy of the conferral emails demonstrating Plaintiff's failure to allow for reasonable response times. This correspondence underscores the unfair litigation conduct and procedural gamesmanship employed by Plaintiff's counsel. (*See* **Exhibit A, p. 2-4**)
- **Previous Examples:**
  This behavior aligns with prior instances in this case, including but not limited to Ms. Gussin's insufficient conferral attempts, creating urgency to require rushed responses.

## D. COORDINATED FABRICATION OF EVIDENCE AND FALSE AFFIDAVIT

**Yelany de Varona's affidavit, signed on May 5, 2022,** is a blatant attempt by Plaintiff and SoftwareONE (SWO) to fabricate evidence in anticipation of litigation. The affidavit's timing is no coincidence—it was executed just as SWO acknowledged McNae's allegations and began strategizing to protect Fitzgerald from liability. De Varona's sworn statements, which falsely claim Defendant fabricated a pregnancy and deny Fitzgerald's misconduct, were clearly crafted to discredit McNae and manipulate these proceedings. Internal SWO communications further expose this scheme, showing that by May 2022, SWO's General

Counsel, Jennifer Gaines, was already coordinating legal and PR efforts to control the fallout from McNae's allegations. The affidavit fits neatly into this broader litigation strategy, reinforcing the conclusion that it was not an independent statement but a calculated maneuver to obstruct justice and mislead law enforcement (*See* DE 283, Exhibit B at p.29 ¶2). False affidavits strike at the core of judicial integrity, and this Court should not permit such misconduct to stand. Defendant respectfully requests that this Court strike de Varona's affidavit from the record and impose sanctions under FRCP 37(b)(2). Given Plaintiff's repeated discovery violations, the submission of fabricated evidence warrants not only sanctions against Plaintiff, as well as his counsel, for knowingly advancing false narratives in this case, and Yelany De Verona, for intentionally and in bad faith interfering with a related criminal investigation, which may constitute obstruction of justice under **18 U.S.C. § 1503** and perjury under **Florida Statutes § 837.02. (*See* Exhibit B for Yelany's false Affidavit Date**



(*shown here*)

## E.  ADDITIONAL DISCOVERY MISCONDUCT AND PROCEDURAL VIOLATIONS

1. **Failure to Disclose Employment with SoftwareONE UK:** Plaintiff omitted SoftwareONE UK from Rule 26(a) disclosures, obstructing Defendant's ability to subpoena key employment and HR records.

2. **Selective Invocation of GDPR and Privacy Laws:** Plaintiff improperly withheld HR complaints and performance records under GDPR protections while using confidentiality agreements **(CSA1 & CSA2)** to **suppress evidence.** (Regarding GDPR as a shield to obstruct discovery).[4] **GDPR cannot be misused to suppress legitimate discovery**.

3. **Withholding Critical Photographs and Attachments:** Plaintiff failed to produce **167 referenced photographs and videos**, neither disclosing them nor listing them in a

---

[4] See GDPR Art. 23(1) (allowing Member States to restrict data protection rights when necessary to safeguard public interests, including the prevention and investigation of crimes). **See also How Many More Women? by Jennifer Robinson & Keina Yoshida (discussing the misuse of legal frameworks to silence women and suppress evidence of wrongdoing).**

privilege log. In response to Defendant's inquiry, Plaintiff's counsel admitted on January 2, 2025, "No privilege log was provided."

4. **Improper Use of "Attorney Eyes Only" (AEO) Designations:** Plaintiff designated key documents as AEO and <u>continues</u> to obstruct Defendant as pro se from accessing her own defense materials.

5. Violation of Protective Orders: Plaintiff's counsel misused federally protected discovery materials in state court litigation, in violation of this Court's December 2, 2022 Protective Order. Despite Magistrate Judge Becerra's warnings about overbroad AEO designations, Plaintiff has persisted in misusing these classifications. October 19, 2022 <u>Honorable Magistrate Judge Becerra warned</u>: *"But I caution you to not be too low on the attorneys' eyes only because these cases typically would require some -- I could envision documents that would be appropriate for them to be attorneys' eyes only. --Don't broad [sic] them with too broad of a brush, or we're going to be spending a lot of time together going through documents and having me rule that they are or not attorneys' eyes only because -- obviously, we'll do that if the brush that's painted on them is too broad."*

6. **Procedural Gamesmanship Regarding Representation:** Plaintiff's counsel misrepresented Richard Gomez's role, falsely implying he was involved in this federal case past October 10, 2024, when in reality, he only represented William McNae in the separate state court litigation.

7. **Tactical Use of Procedural Barriers Against a Pro Se Defendant:** Plaintiff's counsel has exploited procedural technicalities to obstruct Defendant's filings and gain an unfair advantage, demonstrating a pattern of bad-faith litigation tactics. These barriers include:

   a. **Filing Motions to Strike in Bad Faith:**

   - Plaintiff's counsel, Ms. Gussin, has engaged in a deliberate pattern of filing frivolous motions to strike Defendant's filings rather than addressing the substantive issues in this case.
   - Many of the filings Plaintiff seeks to strike were necessitated by prior ineffective legal counsel, who failed to obtain, file, or request critical evidence on Defendant's behalf.

- Instead of engaging in good-faith litigation, Plaintiff's counsel has weaponized motions to strike to suppress relevant evidence and avoid litigating this case on its merits.
- Had Defendant's prior counsel fulfilled their obligations, these filings would have already been part of the record, eliminating any need for supplemental submissions.
- Courts favor correcting procedural deficiencies to ensure fairness and a full adjudication of claims rather than allowing procedural gamesmanship to prevail.

b. **Mischaracterizing Filing Delays as Defendant's Fault:**

- Plaintiff's counsel has falsely attributed filing delays to Defendant, despite knowing that such delays result from manual filing requirements imposed on pro se litigants.
- On October 3, 2024, Defendant emailed Mr. Berlowe and Ms. Gussin at 12:21 AM Pacific Time, attaching a Certificate of Service and notifying them that a filing was en route via FedEx. (See Below) R.McNae's Reply DE 219
- Despite this, Ms. Gussin filed a Motion to Strike at 7:41 PM that same day, fully aware that Defendant's motion had not yet appeared on the docket due to manual filing delays. *(See Below)* Ms. Gussin's Motion to Strike DE 218

| | | | |
|---|---|---|---|
| 218 | Filed & Entered: | 10/03/2024 | Motion to Strike |
| 220 | Filed:<br>Entered: | 10/04/2024<br>10/07/2024 | Response in Support of Motion |
| 221 | Filed:<br>Entered:<br>Terminated: | 10/04/2024<br>10/07/2024<br>10/08/2024 | Motion for Extension of Time to File Response/Reply/Answer |
| 222 | Filed:<br>Entered: | 10/04/2024<br>10/07/2024 | Response in Opposition to Motion |
| 219 | Filed & Entered: | 10/07/2024 | Response in Support of Motion |

c. **Denial of E-Filing Privileges and Exploitation of Manual Filing Requirements:**

- Plaintiff's counsel has failed to support Defendant's request for e-filing privileges, forcing Defendant to rely on expensive overnight mailing and courier services to file motions and responses.
- While Ms. Gussin stated that "Her request to allow her to e-file is beyond the purview of the undersigned to respond to," her actions—such as filing a Motion to Strike knowing Defendant's motion was delayed—suggest otherwise.
- This exploitation of procedural barriers demonstrates a deliberate effort to gain an unfair tactical advantage rather than litigating the case in good faith.

8. **Failure to Produce Fitzgerald's Employment Records:** Plaintiff has obstructed discovery by refusing to produce critical employment records, HR complaints, internal investigation reports, and other files relevant to his claims of employment loss. These omissions hinder Defendant's ability to assess causation and damages accurately and demonstrate bad faith noncompliance with discovery obligations.

9. **Plaintiff's Contradictory Statements Regarding Termination:** In DE 276, Plaintiff contradicts himself, first claiming that Defendant caused his termination (¶4) while later stating that he voluntarily left SoftwareONE UK (¶27). These inconsistencies undermine Plaintiff's credibility and raise serious doubts about the legitimacy of his claims.

10. **Attempt to Re-Litigate Dismissed Tort Claims in Bad Faith:**
    - Plaintiff's counsel has attempted to revive tort claims already dismissed under the independent tort doctrine, despite this Court's clear ruling in DE 83.
    - Legal Precedent: Courts have held that a tort claim cannot be a mere repackaging of a breach of contract claim (*Plain Bay Sales, LLC v. Gallaher*, No. 18-cv-8058 (S.D. Fla. Feb. 10, 2022); *Sun Life Assurance Co. v. Imperial Holdings, Inc.*, 904 F.3d 1197, 1223 (11th Cir. 2018)).
    - This Court previously ruled that Plaintiff's libel per se claims arose from the same contractual obligations in the CSA and were not independent torts.
    - Plaintiff's re-litigation efforts demonstrate procedural abuse and forum shopping, warranting sanctions under FRCP 37(b)(2) and Florida Rule of Civil Procedure 1.380.

11. **Failure to Acknowledge Jurisdictional Errors & Increased Costs:** Plaintiff's counsel filed claims against William McNae in federal court despite clear subject matter jurisdiction issues, only to later re-file them in state court, unnecessarily increasing litigation costs.

## F. PLAINTIFF'S MOTION IS A LITIGATION TACTIC DESIGNED TO DISTRACT THE COURT

Plaintiff's current motion is a litigation tactic designed to manufacture false urgency while deflecting from their own misconduct, including discovery violations, misrepresentations, and

jurisdictional blunders—all of which have delayed this case. These bad faith missteps create unnecessary confusion and directly contradict Plaintiff's claim of expediting proceedings. Plaintiff seeks to create a false procedural dispute to:

1. Manufacture a misleading narrative that Defendant is solely responsible for delays.

2. Deflect attention from serious discovery violations, including improper withholding of HR complaints, internal reports, and Fitzgerald's contradictory employment statements.

3. Pressure the Court into imposing procedural burdens on Defendant while evading accountability for misconduct.

Ms. Gussin argues that Defendant has caused delays through "frivolous filings," yet she fails to mention that she has filed five motions to strike my filings, even those that are completely relevant and responsibly sound. Plaintiff's counsel has weaponized procedural tactics against a pro se litigant to evade scrutiny, obstruct discovery, and suppress critical evidence. This Court must intervene to prevent further abuse of the judicial process. From the moment Defendant was assaulted, Fitzgerald was shielded by SoftwareONE's status as one of Microsoft's largest partners. Because Defendant's husband worked for Microsoft—not Defendant Ronda McNae—Fitzgerald and SWO operated with the confidence that Ronda McNae could be silenced, dismissed, and ignored. Although the state litigation is a separate action, its interconnection with these proceedings is undeniable.

## G. PLAINTIFF'S IMPROPER USE OF CONFIDENTIAL SETTLEMENT AGREEMENTS (CSA1 & CSA2) TO SUPPRESS EVIDENCE[5]

---

[5] **Potential Rule Violations in Florida:** The misuse of confidentiality agreements or trade secret privileges to obstruct discovery may violate several legal principles and procedural rules in Florida:

1. **Florida Rule of Civil Procedure 1.280(b)(1) – Scope of Discovery** – This rule permits discovery of any relevant, non-privileged information that is admissible or reasonably calculated to lead to admissible evidence. If a party improperly invokes confidentiality or trade secret protection to withhold relevant evidence, they may be violating this rule.

2. **Florida Rule of Civil Procedure 1.280(c) – Protective Orders** – While courts may issue protective orders to limit the disclosure of sensitive information, such protections must not be misused to obstruct discovery. Courts must balance confidentiality concerns with the opposing party's right to relevant evidence.

3. **Florida Statutes § 69.081 – The Sunshine in Litigation Act** – This statute prohibits courts from enforcing confidentiality agreements or protective orders that conceal information about public hazards. If CSA1 and CSA2 are being used to shield evidence of misconduct, corporate wrongdoing, or potential public harm, their enforcement could violate this statute.

Confidentiality agreements cannot be weaponized to suppress evidence essential to a fair trial. Under Florida law, any confidentiality provisions that conceal information relevant to public safety, misconduct, or legal accountability may be unenforceable[6].

Plaintiff and SWO have deliberately misused their Confidential Settlement Agreement (CSA) to obstruct discovery and withhold critical evidence, including Fitzgerald's HR complaints and internal investigation documents. Despite being a third-party witness, SWO has actively shielded Fitzgerald by refusing to produce relevant employment records and HR findings. These materials are directly relevant to this case, as they pertain to Fitzgerald's employment status, the circumstances surrounding his departure, and SWO's internal conclusions regarding his misconduct. Confidentiality agreements cannot be weaponized to suppress evidence essential to a fair trial. Under Florida law, any confidentiality provisions that conceal information relevant to public safety, misconduct, or legal accountability may be unenforceable. The Florida Rules of Civil Procedure provide mechanisms for courts to review and compel disclosure of disputed materials when necessary. Additionally, Florida's Sunshine in Litigation Act (Fla. Stat. § 69.081) expressly prohibits confidentiality agreements that conceal information related to a public hazard, reinforcing the principle that the need for discovery outweighs private confidentiality interests. Courts routinely require the disclosure of HR complaints and internal investigations when relevant to claims and damages in litigation. A party cannot use a private agreement to circumvent discovery obligations and deprive the opposing party of essential evidence. Accordingly, this Court should compel the production of Fitzgerald's employment records, HR complaints, and SoftwareONE's internal findings to ensure a fair and complete discovery process.

---

4. **Florida Rule of Civil Procedure 1.380 – Sanctions for Discovery Violations** – When a party unjustifiably refuses to provide discovery, the court has the authority to impose sanctions. Remedies include compelling production, striking pleadings, awarding attorney's fees, or even dismissing claims or defenses.

5. **Public Policy Considerations** – Florida courts do not enforce confidentiality agreements that obstruct justice or suppress critical evidence. If *CSA1* and *CSA2* are being used to prevent the disclosure of key evidence, they may be deemed unenforceable on public policy grounds.

[6] *See* **Jennifer Robinson & Keina Yoshida,** *How Many More Women?* **(2023),** discussing how confidentiality agreements and defamation laws have been systematically weaponized to silence survivors, shield powerful individuals from scrutiny, and obstruct legal accountability. Courts worldwide are increasingly recognizing the public policy implications of such misuse.

*How Many More Women?* discusses how non-disclosure agreements (NDAs) and settlement agreements are frequently weaponized to silence survivors of misconduct and protect perpetrators. Robinson and Yoshida argue that such agreements should not be used to obstruct justice or suppress evidence relevant to public interest cases.

(Jennifer Robinson & Keina Yoshida, *How Many More Women?*, Hachette UK, 2022).

## H. REGULATORY & SECURITIES LAW VIOLATIONS – POTENTIAL CRIMINAL IMPLICATIONS

Plaintiff and SoftwareONE's actions extend beyond this litigation and raise serious regulatory and potential criminal concerns under both U.S. and Swiss law. Their conduct suggests a deliberate effort to suppress evidence, evade accountability, and mislead investors.

### 1. Violations of U.S. Securities Laws and Sarbanes-Oxley[7]

Under U.S. securities laws (15 U.S.C. § 78j, Rule 10b-5)[8] and the Sarbanes-Oxley Act (18 U.S.C. §§ 1348, 1514A), publicly traded companies must: 1) Disclose material risks to investors, 2) Prevent whistleblower retaliation, and 3) Avoid deceptive or fraudulent practices.

Despite these obligations, SoftwareONE has engaged in the following:

- Concealing internal HR complaints and investigations related to Fitzgerald's misconduct, depriving shareholders and regulatory agencies of critical information.
- Weaponizing Confidential Settlement Agreements (CSAs) to suppress key evidence and obstruct discovery, in violation of transparency and accountability principles.
- Plaintiff falsely claims that "SoftwareONE UK is not a party to the Miami proceedings," while SoftwareONE Inc. acknowledges its status as a third-party witness to this lawsuit. Despite this, Plaintiff continues to withhold Fitzgerald's employment records, demonstrating bad faith litigation tactics and deliberate obstruction of discovery.

If SWO executives knowingly concealed material misconduct to protect the company's public offering and shield Fitzgerald from liability, these actions may constitute securities fraud (15 U.S.C. § 78j, Rule 10b-5) and obstruction of justice (18 U.S.C. § 1519).

---

[7] See 15 U.S.C. § 78j (Rule 10b-5) (prohibiting deceptive practices in connection with the purchase or sale of securities); 18 U.S.C. § 1519 (criminalizing the destruction, alteration, or concealment of records to obstruct federal investigations).

[8] Under Sarbanes-Oxley (18 U.S.C. § 1519), corporations must maintain transparency and cannot conceal internal investigations related to financial misconduct or workplace violations. Courts have found that companies engaging in such concealment violate investor protection laws

## 2. Obstruction of Discovery in a U.S. Federal Case

SoftwareONE UK's refusal to provide Fitzgerald's employment records[9] and CSA2 directly violates U.S. discovery obligations under FRCP 37. This deliberate withholding of evidence obstructs the judicial process and prevents a fair adjudication of claims. Additionally, if SWO has used materials protected by this Court's December 2, 2022, protective order in other court proceedings such as *SWO v R. McNae* in the Eastern District court of Wisconsin, this may constitute contempt of court.

## 3. Violations Under Swiss Law

SoftwareONE's conduct may also breach Swiss regulatory requirements under the Swiss Code of Obligations (CO) and Swiss Financial Market Supervisory Authority (FINMA) regulations:

- Swiss Code of Obligations (CO) Art. 663b & 717 – A company's failure to disclose material misconduct may breach fiduciary duties to shareholders, as Swiss corporate law mandates transparency and accountability.
- Swiss Financial Market Infrastructure Act (FMIA) Art. 38 – The concealment of internal HR investigations regarding misconduct, particularly if it affects investor decision-making, may violate Swiss investor protection laws.

---

[9] **The European Court of Human Rights (ECtHR)** has ruled that individuals have the right to disclose information of public concern, even when bound by confidentiality agreements, if it relates to wrongdoing, corporate misconduct, or matters affecting public interest (Guja v. Moldova, ECtHR, App. No. 14277/04 (2008)). Guja v. Moldova – Whistleblower Protections & Public Interest Disclosures:
The ECtHR ruled that individuals who disclose information about government or corporate misconduct—even when bound by confidentiality agreements—are protected under Article 10 of the European Convention on Human Rights (freedom of expression) if the disclosure is in the public interest. **Confidentiality Agreements Cannot Be Used to Conceal Wrongdoing:** The court held that restrictions on speech (such as NDAs, confidentiality agreements, or legal threats) cannot override the public's right to know about serious misconduct. If disclosure serves to expose wrongdoing, corruption, or misconduct, it may be justified even if it violates contractual obligations of confidentiality. Criteria for Protected Whistleblowing- The ECtHR outlined factors to determine whether a whistleblower disclosure is protected: **a)** Public Interest – Does the information expose wrongdoing that affects the public? **b)** Authenticity of the Information – Is the information credible and not false or misleading? **c)** Alternative Means – Were other legal avenues (such as internal reporting) exhausted before going public? **d)** Consequences of Disclosure – Did the whistleblower act in good faith and without personal gain? **e)** Proportionality of the Response – Were the penalties imposed on the whistleblower excessive or retaliatory?

These violations highlight broader concerns about corporate governance failures, regulatory noncompliance, and bad faith litigation tactics. The use of CSAs to suppress internal HR complaints and shield executives from scrutiny undermines corporate accountability and investor trust on an international scale.

**I. THIS COURT MUST PREVENT THE WEAPONIZATION OF THE JUDICIAL SYSTEM** – Plaintiff and SoftwareONE have engaged in a deliberate pattern of misconduct that includes:

1. Suppressing critical evidence through confidentiality agreements, preventing the disclosure of key HR and employment records.
2. Evading regulatory scrutiny by shielding misconduct, using corporate structures and legal maneuvers to avoid accountability.
3. Manipulating the discovery process to obstruct Defendant's defenses, through improper designations, selective disclosures, and procedural gamesmanship.

These tactics compromise the integrity of these proceedings and undermine fundamental principles of justice and due process.

**J.    BROADER IMPLICATIONS**

If SoftwareONE (SWO) executives intentionally concealed Fitzgerald's misconduct to protect its public offering, their actions not only violate U.S. and Swiss securities laws but also reflect broader ethical failures that jeopardize corporate transparency. This Court must recognize these implications and **act decisively** to uphold the integrity of these proceedings. Plaintiff's claims lack consistent credibility, and the broader pattern of misconduct raises serious concerns about corporate liability and regulatory compliance. If SWO executives and counsel continue to engage in bad faith tactics, the integrity of these proceedings will be further compromised. Allowing such conduct to persist threatens to erode confidence in the judicial system. This Court has the authority to intervene and ensure this misconduct does not go unaddressed. Remedies such as dismissal under Rule 37(b), the voiding of the CSA between Fitzgerald and the McNaes, or the imposition of severe sanctions are necessary to rectify the procedural harm caused by Plaintiff and SWO. These measures are critical not only to protect the judicial process but also to deter future abuses.

16

SWO's actions *may* constitute securities fraud under 15 U.S.C. § 78j, Rule 10b-5, and obstruction of justice under the Sarbanes-Oxley Act (18 U.S.C. § 1519). If SWO intentionally concealed misconduct to protect its public offering, this Court has the authority to acknowledge and address the far-reaching implications of these violations beyond this litigation. Considering the broader implications outlined above, it is imperative to examine the specific legal consequences of the misconduct at issue.

## K. LEGAL CONSEQUENCES OF PERJURY, FRAUD ON THE COURT, AND CORPORATE MISCONDUCT

The irony is difficult to ignore—Ms. Gussin accuses Defendant, Ronda McNae of "smoke and mirrors," "gaslighting," "crying wolf," and "seeking sympathy from the Court," seemingly unaware of the projection at play. If these accusations were a mirror, she might find herself staring straight into her own reflection. Rather than presenting a substantive argument, this inflammatory rhetoric merely highlights the inconsistencies and diversionary tactics inherent in Plaintiff's litigation strategy. Instead of advancing the merits of this case, it serves only to underscore the double standards and deflection tactics that have become a hallmark of Plaintiff's approach to this litigation.

What is even more troubling is that these very tactics—manipulation, deception, and victim-blaming—have been central to Fitzgerald's conduct from the moment Defendant first met him at a SWO sponsored event in Bellevue, WA July 31, 2019 as he gained sympathy talking about the loss of his father Brendan Fitzgerald and his teenage son, though neither are true. Now, rather than acting alone, he is deploying his attorneys to craft a narrative that attempts to recast himself as the victim. Even more concerning, he has used his wife, prior Co-Plaintiff Yelany De Verona, to bolster this false portrayal, having her provide sworn statements under oath that are demonstrably untrue. Such perjury carries serious legal consequences under Florida law, particularly in Miami, where knowingly making false statements under oath constitutes a third-degree felony under Florida Statutes § 837.02, punishable by up to five years in prison and a $5,000 fine. Beyond state-level legal ramifications, these false statements could have far-reaching consequences. Given Fitzgerald's corporate affiliations and the financial nature of this case, regulatory bodies such as the U.S. Securities and Exchange Commission (SEC) and the Swiss Exchange (SIX Swiss Exchange) may take notice, particularly if Yelany De Verona's perjury was

committed to shield financial misconduct. Additionally, because perjury and fraudulent misrepresentations[10] in federal proceedings can fall within the jurisdiction of the Federal Bureau of Investigation (FBI), this deception may warrant federal scrutiny as Defendant was recently made aware of.

## CONCLUSION

Plaintiff's counsel has persistently engaged in procedural missteps, jurisdictional errors, and bad faith tactics, thereby unnecessarily prolonging this litigation and escalating costs for all parties. Despite clear jurisdictional barriers, Plaintiff's counsel improperly pursued claims against William McNac in federal court, only to later refile identical claims in state court. This duplicative litigation—based on the same alleged damages, identical exhibits, and materials protected under a federal protective order—has imposed undue financial and procedural burdens. Furthermore, Plaintiff's counsel sought to revive tort claims that this Court had already dismissed under the independent tort doctrine. Only when faced with a motion under Florida Statute § 57.105, which exposed the frivolous nature of these claims, did Plaintiff's counsel abandon them. This pattern of conduct suggests a strategy of attrition rather than good faith litigation, seemingly designed to exhaust the Defendant rather than address the substantive merits of the case.

In early 2020, after enduring months of conflicting and deceptive statements from Fitzgerald, I made the regrettable decision to fabricate a pregnancy. At the time, I was suffering from severe PTSD because of Fitzgerald's abuse and was driven by a need to understand the full extent of his misconduct. Given Fitzgerald's history of dishonesty, manipulative behavior, and past fabrications, including his false claims of a miscarriage with his now-wife, I believed that only a high-stakes scenario would compel him to reveal the truth. My intent was not to deceive for personal gain but rather to expose facts that Fitzgerald had gone to great lengths to obscure. This fabricated scenario ultimately served its purpose, prompting Fitzgerald to make admissions regarding events in Miami that he had previously refused to disclose. His immediate willingness to draft an agreement (*See* **Exhibit C**) further demonstrated his ongoing pattern of control and

---

[10] False statements made during litigation, especially when used to mislead the court and regulatory agencies, can have severe implications, including potential securities fraud investigations and corporate governance reviews. This situation is yet another painful reflection of the reality survivors of sexual violence face when we finally find the courage to speak out. Instead of accountability, we are met with gaslighting, character attacks, and legal maneuvers designed to silence us and distort the truth. However, truth and justice cannot be indefinitely obscured by legal theatrics when perjury and financial fraud carry real-world consequences that extend far beyond the walls of this courtroom.

manipulation. While unconventional, my actions brought clarity to a situation clouded by Fitzgerald's deceit, further illustrating his propensity to distort reality for his own benefit.

Plaintiff's counsel's reliance on baseless accusations and diversionary tactics does nothing to advance the merits of this case. Instead, it seeks to obscure serious procedural abuses and misconduct at the core of this litigation. Terms such as "gaslighting" and "crying wolf" are not only inaccurate but serve as deliberate distractions from the substantive legal issues that warrant this Court's attention. This Court should not permit manipulative litigation tactics and abuse to overshadow the rule of law. Plaintiff's approach—marked by rhetorical posturing, procedural abuse, and meritless claims—undermines the integrity of these proceedings. The substantive deficiencies of Plaintiff's case, compounded by the use of fabricated evidence and frivolous assertions, underscore the urgent need for scrutiny of Plaintiff's credibility and litigation conduct.

Accordingly, the pattern of misconduct demonstrated by Plaintiff and Plaintiff's counsel warrants decisive intervention by this Court to restore fairness and ensure the proper administration of justice.

## **RELIEF REQUESTED:**

Given Plaintiff's bad faith tactics, discovery abuses, and procedural misrepresentations, Defendant respectfully requests that this Court:

1. Deny this motion, as it is unnecessary and serves as a distraction from Plaintiff's own misconduct. The request is also **premature given that a motion to dismiss is still pending**, which may narrow or moot other pending motions, thereby eliminating the need for a case management conference at this stage.

2. **Declare CSA1 Void Due to Duress and Coercion:**

   a. CSA1 was executed under extreme distress and undue pressure, following a clinical diagnosis of PTSD resulting from psychological coercion, physical and sexual assault by Fitzgerald. At the time, Defendant was in desperate need of intensive therapy and faced escalating threats of her husbands job loss, legal retaliation, and financial coercion, leaving her with no meaningful choice but to sign the agreement.

b. Plaintiff and SoftwareONE, with Michael Fitzgerald serving as Chief Innovation Officer and a member of the Executive Leadership Board at the time, exploited their corporate influence and resources to pressure and intimidate Defendant and her husband into signing the agreement.

c. Under Florida contract law, agreements signed under duress, undue influence, or coercion are voidable. (*City of Miami v. Kory*, 394 So. 2d 494 (Fla. 3d DCA 1981)).

d. The Court should issue a ruling declaring CSA1 unenforceable as a product of coercion and duress.

3. **Void CSA2 for Concealment of Securities Fraud and Obstruction of Justice:**

a. CSA2 has been improperly used to suppress evidence of financial and regulatory misconduct involving SoftwareONE and Michael Fitzgerald.

b. Under **15 U.S.C. § 78j (Rule 10b-5)** and the **Sarbanes-Oxley Act (18 U.S.C. § 1519)**, publicly traded companies are prohibited from concealing material risks, misleading investors, or obstructing regulatory investigations.

c. SoftwareONE's refusal to produce internal HR complaints, investigation records, and related corporate disclosures constitutes a deliberate attempt to mislead investors and obstruct justice.

d. The Court should declare CSA2 void as unenforceable and contrary to public policy to prevent further suppression of material evidence and ensure full transparency and compliance with U.S. securities laws.

4. **Refer the Matter to the SEC, DOJ, and Swiss Financial Authorities:** Given the international implications of SoftwareONE's actions and the potential violations of U.S. and Swiss financial laws, this Court should refer the matter to the appropriate regulatory and enforcement agencies for further investigation, including:

a. **The U.S. Securities and Exchange Commission (SEC)** for potential violations of securities fraud laws, including improper concealment of material risks and misleading corporate disclosures in violation of 15 U.S.C. § 78j (Rule 10b-5).

    b. **The U.S. Department of Justice (DOJ)** for potential obstruction of justice and corporate misconduct, including the use of confidentiality agreements to suppress evidence relevant to regulatory inquiries and ongoing litigation.

    c. **The Swiss Financial Market Supervisory Authority (FINMA)** for potential violations of Swiss financial regulations, including failures in corporate governance, investor disclosures, and compliance with financial reporting obligations under Swiss law.

5. **Compel the Production of CSA2 and Related HR Records:**

    a. CSA2, signed in February 2023, is relevant to Plaintiff's employment status and potential regulatory violations.

    b. Plaintiff has improperly designated CSA2 as "Attorney Eyes Only" to conceal material facts from Defendant. The Court should compel Plaintiff to produce CSA2 and SoftwareONE's internal investigation findings.

6. **Impose Sanctions Against Plaintiff and Plaintiff's Counsel for Bad Faith Litigation Conduct:**

    a. Plaintiff's bad faith litigation tactics include the misuse of confidentiality agreements, improper discovery designations, the presentation of false timelines to an expert witness, and deliberate attempts to suppress evidence.

    b. Sanctions under Federal Rule of Civil Procedure 37(b) are warranted for willful obstruction of discovery and abuse of the judicial process.

7. **Modify Attorney Eyes Only (AEO) Designations:** Key evidence, including CSA2 and employment records, should be accessible to Defendant and not restricted under AEO provisions.

8. **Award Defendant Attorneys' Fees and Costs for Plaintiff's Discovery Violations and Bad Faith Conduct.**

9. **Bar Plaintiff from Re-Litigating Previously Dismissed Tort Claims in any Forum.**

10. **Grant Any Additional Relief This Court Deems Just and Proper.**

This Court must take decisive action to ensure that justice is served, the integrity of these proceedings is preserved, and future litigants are deterred from engaging in similar abuses of the judicial process. Respectfully submitted on January 31, 2025.

By: Ronda Delapina McNae
Pro Se Defendant
504 11th PL Kirkland, WA 98033
Tel: (206) 914-6752
Prose.rmcnae@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 31, 2025, a true copy of the foregoing Motion was sent via courier to the Clerk of the Court, Southern District of Florida, 400 N. Miami Ave, Room 8N09, Miami, FL 33128, and Plaintiff's counsel, in compliance with pro se litigant requirements.

**SERVICE LIST**
Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlowe.com
*Counsel for Plaintiffs*

# Exhibit A

**From:** Meredith J. Gussin <mjg@assoulineberlowe.com>
**Sent:** Tuesday, January 28, 2025 11:43:05 AM
**To:** Ronda McNae <prose.rmcnae@gmail.com>
**Cc:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** Fitzgerald v. McNae: Case No. 22-22171-JEM

Mrs. McNae,

We would like to request a case management conference in the above-referenced matter. Please advise if you agree to this or have any objection.

Kindly provide your response by close of business today.

Thank you,

Meredith

---

## Fw: Notice of Court Filing: Fitzgerald v. McNae Case No. 22-22171-JEM

**Ronda McNae** <prose.rmcnae@gmail.com>          Tue, Jan 28, 8:17 PM (1 day ago)      ☆      ☺      ↩      ⋮
to Will, Peter, Meredith, Will, khall@allpointslegal.com, Assistant@allpointslegal.com, Althea.BryanFarr@bfhle ▾

Dear Ms. Gussin and Mr. Berlowe,

I apologize for replying now, as your end-of-business-day turnaround effectively provided only three hours, which was difficult for me to accommodate—particularly this week with little ones home for conference week. Being a lawyer is not my career as it is yours. However, I made it a priority to set my own deadline to respond by this evening.

Unless it's an emergency—which this clearly is not—please avoid imposing such a pressing turnaround. Your urgency in this matter reveals far more than the simplicity of your request.

In an abundance of caution, and despite being advised otherwise, I am including Will and his legal counsel from the state proceeding in this correspondence. This decision is based on your and Mr. Berlowe's strong recommendation to include Will's prior counsel in the state case, Richard Gomez, in all related communications. (Prior correspondence below  included for reference and court order as an attachment).

Thank you for your email. While I understand your request for a case management conference, I believe scheduling one at this time would be premature.

The pending motion to dismiss, supported by my recent reply, is a critical matter that could either resolve the case entirely or significantly narrow the issues to be addressed.

Proceeding with a case management conference before the court rules on the motion could prejudice my rights by imposing procedural obligations or timelines that may later become unnecessary.

I respectfully suggest that we revisit the need for a case management conference following the court's ruling on the pending motions. I know Judge Martinez is actively engaging with our civil action and addressing the outstanding motions. I imagine his Chambers would appreciate time to work through prior motions.

This would ensure that the conference is productive and aligned with the scope of the case as determined by the court. Thanks for your understanding.

Best regards,
Ronda McNae

24

**Meredith J. Gussin**                    2:05 AM (18 hours ago)  ☆  ☺  ↩

to me, Will, Peter, Will, khall@allpointslegal.com, Assistant@allpointslegal.com, Althea.BryanFarr@bfhlegal.cc ▾

Thank you for your response. We will note your objection in our motion.

---

**From:** Meredith J. Gussin <mjg@assoulineberlowe.com>
**Sent:** Wednesday, January 29, 2025 9:32:59 AM
**To:** Ronda McNae <prose.rmcnae@gmail.com>; Will McNae <prose.wmcnae@gmail.com>
**Cc:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** Notice of Court Filing: Case No. 22-22171: DE 282 - Motion for Hearing and Case Management Conference (00419771xA4579).PDF


Please see the attached which was filed in the above referenced matter.

---

**From:** Ronda McNae <prose.rmcnae@gmail.com>
**Sent:** Wednesday, January 29, 2025 12:46 PM
**To:** Meredith J. Gussin <mjg@assoulineberlowe.com>; Will McNae <prose.wmcnae@gmail.com>
**Cc:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** Re: Notice of Court Filing: Case No. 22-22171: DE 282 - Motion for Hearing and Case Management Conference (00419771xA4579).PDF


Ms. Gussin,


Not including Will's counsel from the state case anymore? I respect your attempt here but I believe you spoke too soon. Unfortunately, I did "connect the dots" as Neil Lomax just clarified this several days ago. This is reflected in my reply which should be arriving today. The coming weeks will be refreshing.


Regards,


Ronda

**From:** Meredith J. Gussin <mjg@assoulineberlowe.com>
**Sent:** Wednesday, January 29, 2025 9:49:43 AM
**To:** Ronda McNae <prose.rmcnae@gmail.com>; Will McNae <prose.wmcnae@gmail.com>
**Cc:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** RE: Notice of Court Filing: Case No. 22-22171: DE 282 - Motion for Hearing and Case Management Conference (00419771xA4579).PDF

Ms. McNae,

Respectfully, I have no idea what you are talking about. We copied Richard Gomez because he had not yet fully withdrawn from the case as counsel for both you and Mr. McNae. You may forward whatever you want to Will's attorney in the state court case, but we are under no obligation to do so.

---

**From:** Ronda McNae <prose.rmcnae@gmail.com>
**Sent:** Wednesday, January 29, 2025 1:10:45 PM
**To:** Meredith J. Gussin <mjg@assoulineberlowe.com>; Will McNae <prose.wmcnae@gmail.com>
**Cc:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** Re: Notice of Court Filing: Case No. 22-22171: DE 282 - Motion for Hearing and Case Management Conference (00419771xA4579).PDF

Ms. Gussin,

Your claim that Richard Gomez still represented me is demonstrably false, as shown by court filings and prior communications. This misstatement appears to serve no purpose other than to create confusion or justify procedural missteps. I suggest reviewing the record carefully before making further assertions that undermine the integrity of these proceedings.

Regards,

Ronda

---

↰ **Meredith J. Gussin**                     10:20 AM (10 hours ago)   ☆   ☺   ↰
to me, Will, Peter ▾

I can assure you there is no intention to undermine the proceedings or to create confusion.

# PROOF BELOW

| 216 | Filed: | 10/01/2024 | ⊙ Order on Motion to Withdraw as Attorney |
|-----|--------|------------|--------------------------------------------|
|     | Entered: | 10/02/2024 | |

**From:** Meredith J. Gussin <mjg@assoulineberlowe.com>
**Sent:** Tuesday, November 12, 2024 1:25 PM
**To:** Ronda McNae <prose.rmcnae@gmail.com>; Will McNae <prose.wmcnae@gmail.com>;
Richard Gomez <richardgomez@rgpalaw.com>
**Cc:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** Notice of Court Filing: Fitzgerald v. McNae Case No. 22-22171-JEM

Richard,
Excuse me for unintentionally omitting you from the service of the Reply Plaintiff filed in the
Federal Case in Support of his Motion to Strike (ECF No. 236).

Our reply is attached.

---

**From:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Sent:** Tuesday, November 12, 2024 5:04 PM
**To:** Ronda McNae <prose.rmcnae@gmail.com>; Meredith J. Gussin
<mjg@assoulineberlowe.com>; Will McNae <prose.wmcnae@gmail.com>; rich
ardgomez@rgpalaw.com<richardgomez@rgpalaw.com>
**Subject:** Re: Notice of Court Filing: Fitzgerald v. McNae Case No. 22-22171-JEM

AGood Evening Mrs. McNae:

Will McNae is represented by counsel in the state court case. Rest assured, it is 100%
appropriate to copy the attorney when you know he represents a party.  If you think we
are wrong, please file yet another motion.

Sincerely,

Peter E. Berlowe

Peter E. Berlowe, Esq.
Business and Intellectual Property Litigation
ASSOULINE & BERLOWE, P.A.

**From:** Ronda McNae <prose.rmcnae@gmail.com>
**Sent:** Tuesday, November 12, 2024 5:49:57 PM
**To:** Meredith J. Gussin <mjg@assoulineberlowe.com>; Will McNae <prose.wmcnae@gmail.com>
**Cc:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** Re: Notice of Court Filing: Fitzgerald v. McNae Case No. 22-22171-JEM

Meredith,

Richard does not represent me in this federal matter, nor does he represent Will or has ever in this Federal matter. I'll be including this correspondence in my upcoming motion, as I expect the Judge may find this as perplexing as I do.

Regards,
Ronda McNae

---

**From:** Ronda McNae <prose.rmcnae@gmail.com>
**Sent:** Tuesday, November 12, 2024 9:56 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>;
Will McNae <prose.wmcnae@gmail.com>; richardgomez@rgpalaw.com
**Subject:** Re: Notice of Court Filing: Fitzgerald v. McNae Case No. 22-22171-JEM

Thankfully, we witnessed proper procedural steps with Alaina and Stephanie. Reviewing all prior correspondence, what you're claiming now hasn't been the standard up until this point. Either way, I'll ensure the Judge is informed of this for transparency's sake. I'll double check with Florida Bar Resources for an objective view. I'll be sure to provide timing and context of recent motions both sides have filed.

As for the suggestion to "file yet another motion"—while a bit dismissive, I assure you my efforts to supplementing the record have been aimed solely at maintaining a transparent record, especially one I haven't always had control over. This should prove enlightening for everyone involved, especially for Judge Martinez.

Regards,
Ronda McNae

Mrs. McNae:

Thank you for your email. I have been practicing over 25 years.  I have never once, until you, had someone accuse me of unethical conduct.  You accuse the attorneys in my firm of unethical conduct almost every communication you send.  I am confident in the way we comport ourselves.  I am confident in our understanding of the Rules of Civil Procedure (Federal and Local), our Magistrate's rules for motions assigned to him, and the Rules for Professional Conduct.

If you want to raise an issue with the Judge, you are free to do so.  I won't stop you, but you are wasting your time that you could be spending with your family.  If you would take the time to pick up the phone for a proper meet and confer, we could resolve most of these issues you have raised.  By refusing to comply with the rules, you have cost yourself probably dozens of hours of your time in drafting baseless motions, you have cost my client dozens of hours of attorney time responding to your baseless motions (perhaps that is your goal), and you are costing the Judge, Magistrate, and Court staff dozens of hours of their time.

I implore you to recognize the attorneys are not enemies.  We part of the court system.  We represent our clients, we abide by the rules, and we do not have personal animosity toward opposing parties.  It is like the sign says over every Judge's bench:  We who labor here seek truth.

Have a pleasant day.

Sincerely,

**Peter E. Berlowe, Esq.**
**Business and Intellectual Property Litigation**



---

**From:** Will McNae <prose.wmcnae@gmail.com>
**Sent:** Tuesday, November 12, 2024 10:32 PM
**To:** Ronda McNae <prose.rmcnae@gmail.com>
**Cc:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; richardgomez@rgpalaw.com
**Subject:** Re: Notice of Court Filing: Fitzgerald v. McNae Case No. 22-22171-JEM

Meredith and Peter,  Please remove Richard's involvement in correspondence as he **does not** represent me in this Federal Case.  Ronda, please include this correspondence as it provides my opinion on the matter for Judge Martinez.

Thank you,

Will McNae

**Below attched to email**

Case 1:22-cv-22171-JEM   Document 199   Entered on FLSD Docket 09/12/2024   Page 1 of 1

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case Number: 22-22171-CIV-MARTINEZ

MICHAEL J. FITZGERALD,
individually, and YELANY DE
VARONA, individually,

    Plaintiffs,

vs.

RONDA MCNAE, individually,
and WILLIAM MCNAE, individually,

    Defendants.

_____/

**ORDER GRANTING UNOPPOSED MOTION TO WITHDRAW AS COUNSEL**

    THIS CAUSE came before the Court on Stephanie A. Casey's Unopposed Motion to
Withdraw as Counsel for Defendant William McNae ("Motion to Withdraw"), (ECF No. 196).

    After careful consideration, it is ORDERED AND ADJUDGED as follows:

    1.   The Motion to Withdraw, (ECF No. 196), is GRANTED. Stephanie A. Casey and
the law firm of Colson Hicks Eidson, PA SHALL BE PERMITTED to withdraw as attorney of
record for Defendant William McNae in the above-captioned case and are hereby relieved of any
further responsibility as counsel for Defendant. Counsel shall, first, send a copy of this Order to
her client and file with the Clerk a certification of service.

    2.   Unless and until Defendant William McNae obtains new counsel, all future
pleadings, motions, orders, judgments, discovery, and other papers filed in this matter should be
sent to:

        E-Mail Address: prose.wmcnae@gmail.com
        Mailing Address: 504 11th Place, Kirkland, Washington 98033

    DONE AND ORDERED in Chambers at Miami, Florida, this 11 day of September 2024.

Copies provided to:
All Counsel of Record

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

**Peter E. Berlowe** <PEB@assoulineberlowe.com>    Wed, Nov 13, 2024, 4:09 AM  ☆  ☺  ↩  ⋮
to Will, me, Meredith, richardgomez@rgpalaw.com ▾

Thank you Mr. McNae for pointing this out; however, the Florida Bar Rules are in addition to what
a Judge tells us to do.  We are not permitted under the Florida Bar Rules to directly contact a
person known to be represented by counsel.  Until Mr. Gomez is permitted to withdraw from
representing you, we will abide by our ethical requirements as set out under  the Florida Bar
Rules.  If you are not satisfied with my response, please take it up with the Judge.  I am 100%
confident the Judge will tell you we are doing the right thing, and you will be wasting valuable time
you could be spending with the family.


Peter E. Berlowe, Esq.
Business and Intellectual Property Litigation

**ASSOULINE & BERLOWE**
THE BUSINESS LAW FIRM

# Exhibit B

## AFFIDAVIT OF YELANY DE VARONA

STATE OF FLORIDA          )
COUNTY OF MIAMI DADE          )

**BEFORE ME,** the undersigned authority, personally appeared the Affiant, and upon being duly sworn, deposes and says:

1.   My name is Yelany de Varona. My date of birth is September 16, 1985 and I reside at 1585 Bay Dr., Miami Beach, FL 33141 with my spouse Michael J. Fitzgerald.   We have been married since December 12, 2020.

2.   I learned of Ronda McNae in 2018 and I subsequently developed a cordial relationship with her in February 2020.   Ronda and I frequently communicated and on several occasions prior to my marriage she discussed an intimate relationship she had with Michael.  On more than one occasion, Ronda also advised me that she lied to Michael about being pregnant with his child.  Furthermore, at no time did Ronda ever state to me that Michael raped, assaulted or committed any unlawful act against her.

3.   I am making this statement under oath of my own free will and after careful consideration.  No one has made any threats or promises, directly or indirectly, in order to make me give this statement or to influence my decision.

Under penalties of perjury, I declare that I have read the foregoing affidavit and the facts stated in it are true.

_____
Yelany de Varona

SWORN TO AND SUBSCRIBED before me this 5th day of May 2022 by Yelany de Varona who I personally know or who has produced Florida Driver's License

# _____ as identification and who did take an oath.

YEL000078

_____
Notary Public

SEAL
Printed Name: _____  My   Commission   Expires:
_____

**May 5, 2022 – Yelany De Verona executed an Affidavit and submitted to the Miami Beach Police Department. In paragraph 2, Yelany states:**

> *" On more than one occasion, Ronda also advised me that she lied to Michael Fitzgerald about being pregnant with his child."*

Yelany De Varona actively participated in discussing and even suggesting narratives surrounding a pregnancy lie. The evidence does not support Yelany's claim that she was merely a passive party or that Ronda McNae solely initiated or advised such conduct. Here's the analysis:

**Evidence from the Conversation:**

1. **Yelany's Active Suggestions:**
   - **Yelany (March 5, 2020, 10:05 AM):**
     "Or something like you started spotting and went to the doctor they said to monitor it then a few days later say you had a miscarriage."
     - This is a clear example of Yelany proposing how to frame a false miscarriage story, indicating active involvement rather than passivity.

2. **Discussion of Lying About Pregnancy for Gain:**
   - **Yelany (March 5, 2020, 10:03 AM):**
     "Yeah I wouldn't think so but also lying about a pregnancy to get money and just lying to lie are different."
     - Here, Yelany differentiates between types of lies, seemingly rationalizing or legitimizing lying about pregnancy for specific purposes (e.g., financial gain). This also suggests engagement in the topic rather than mere receipt of advice.

3. **Encouragement to Spin Narratives:**
   - **Yelany (March 5, 2020, 10:10 AM):**
     "Then you can just spin it and tell him that you can sue him for emotional distress."
     - This reflects an ongoing discussion where Yelany is encouraging a calculated narrative to potentially influence Fitzgerald.

**Ronda's Contributions:**

- **Ronda McNae (March 4, 2020):**
  In the excerpts analyzed, Ronda's statements primarily address her personal pregnancy challenges, such as issues with staying pregnant and health concerns.
  - **Example (March 4, 2020, 2:15 PM):**
    "Getting pregnant isn't difficult but staying pregnant is the challenge..."
    - This is reflective and personal, rather than advising or suggesting any lie or manipulation.

The conversation shows **Yelany De Varona actively participating** in and even directing discussions about how to frame a false pregnancy narrative. While Ronda's contributions focus on her own pregnancy challenges, Yelany is seen suggesting detailed steps and tactics, such as faking a miscarriage.

If Yelany is now claiming she was not part of the pregnancy lie and is instead attributing the initiative solely to Ronda, the reviewed excerpts undermine that claim. Yelany's active involvement in shaping and encouraging the narrative is evident.

*(Full conversation thread MCNAE 000540-MCNAE 000907)*

# Exhibit C

Fitz agreement

So I did this as a shared document so that you can add comments as you like, and then we can go back and forward until we are happy with what is written. At which point I will send it to you;

Our agreement

1.      I want to ultimately stay friends, discuss things openly and honestly. However I will respect your personal and private life, any relationships you have and your family life. I will communicate with you directly at an agreed schedule or plan if you wish to do so, As I expect you do with me also.

2.      I will stand by you; you should decide to keep the baby or decide to do anything else. I will not push you to make any decisions in your pregnancy, life or otherwise. I will support you where I can as a friend.

3.      We will agree communications on how we talk about the situation, beyond the two of us. Including our immediate families and friends. It sounded to me like you wanted to do this based on an Non Disclosure Agreement (NDA), which I will also support. You can think about this and if that is what you want to do, I will ask a lawyer to create it for us at my expense

4.      I will agree a financial situation with you up front, we can discuss amounts on the 16th of this month. We will agree how much and timing for me to support you and the cost of the pregnancy. I would expect it to include;
     1. Treatment and healthcare during pregnancy
     2. Costs associated with the baby for a prescribed period of time e.g. clothing, health etc
     3. Costs of clothing for you
     4. Any other expenses we agree
     5.
5.      If you want me to sign a legal agreement or turn this into a contract, I will do that with a lawyer and cover the expense. As long as you are happy with the agreement first.

6.      If you want to get back together with will, I will respect that situation and respect any communications that you want to agree with me. I will not interfere in your family life.

7.      If you decide you want to keep the baby; as you discussed I will stay away from the birth certificate process. In case that you want to have the baby as part of your family with Will.

CONFIDENTIAL          MCNAE 003269

8.      If you want Will to be the father of the baby, I will support that process. As long as we agree to the other elements of our agreement amicably I would also agree to not communicate it to anyone else should you want me to do so.

9.      if you want to stop talking to me, we will agree some for of formal communications up front before i do so.

10.   I would not claim to be family, a father or connected to your child if you decide to carry on with your marriage. If not, we discuss what the outcome is together.

This is where I got to so far. Can you add some of your thoughts