UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 22-cv-22171-MARTINEZ**

MICHAEL FITZGERALD, and
YELANY DE VARONA,

Plaintiffs,

v.

RONDA MCNAE, and WILLIAM MCNAE,

Defendants.

_______________________________________/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER** comes before the Court on Plaintiff Michael Fitzgerald's Motion for Summary Judgment ("Motion"), (ECF No. 171.) Defendant Ronda McNae ("R. McNae") responded to the Motion ("Response"), (ECF No. 191), to which Plaintiff replied ("Reply"), (ECF No. 201.) After careful consideration of the relevant briefing and the record, and being otherwise advised in the premises, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.

**FACTUAL BACKGROUND**[1]

This action concerns Defendant R. McNae's alleged breach of the Settlement Agreement that she entered into with Plaintiff Fitzgerald. R. McNae and Fitzgerald met on July 31, 2019, after being introduced by William McNae ("W. McNae"), R. McNae's husband. (Plaintiff's Statement of Facts ("Pl.'s SOF") ¶ 1, ECF No. 172.) Fitzgerald was the Chief Technology Officer of

---

[1] The following pertinent facts are undisputed unless otherwise noted. When the facts are in dispute, they are taken in the light most favorable to the nonmovant. *See Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988).

SoftwareONE while W. McNae was employed by Microsoft, a partner of SoftwareONE. (*Id.* ¶¶ 2–4.) In October 2019, Fitzgerald invited the McNae family to Miami to celebrate SoftwareONE's Initial Public Offering. (*Id.* ¶ 5.) Fitzgerald alleges that he and R. McNae had consensual sexual relations in Miami. (*Id.* ¶¶ 6, 11.) R. McNae disputes this fact, claiming that Fitzgerald sexually assaulted her. (Defendant's Statement of Facts ("Def.'s SOF") ¶ 6, ECF No. 192.)

A few months later, on February 1, 2020, R. McNae texted Fitzgerald informing him she was pregnant with his child, divorcing her husband, and needed financial support. (Pl.'s SOF ¶ 19.) The pregnancy was a lie. (*Id.* ¶ 21.) Nonetheless, Fitzgerald agreed to pay for R. McNae's therapy sessions and offered to help pay for marriage counseling for the McNae's. (*Id.* ¶¶ 24–25.) R. McNae proposed entering into a non-disclosure agreement, although she claims that offer was made in jest. (*Id.* ¶ 23; Def.'s SOF ¶ 23.) Fitzgerald accepted R. McNae's offer to enter into a non-disclosure agreement and he and R. McNae negotiated the terms of an agreement from February 2020 through April 2020. (*Id.* ¶¶ 24, 26.)

On June 15, 2020, Fitzgerald, R. McNae, and W. McNae each signed the Settlement Agreement. (*Id.* ¶ 31.) The Settlement Agreement mandated the following terms and conditions: the parties were required to keep the terms and conditions of the agreement confidential; R. McNae was to have no further contact with Fitzgerald's then employer, SoftwareONE; R. McNae was prohibited from speaking or writing about Fitzgerald, his nationality, his employer, his country of citizenship, his location of residence, his employer, his job function, his job title, his profession, or reference dates, locations or other persons present at any of the events related to the underlying dispute; R. McNae was prohibited from referring to Fitzgerald directly or indirectly; R. McNae and Fitzgerald agreed not to disparage each other by written or oral word, gesture, or any other means, nor would they make disparaging or negative comments about each other, to any person or

entity; and the parties exchanged a mutual general release of all claims against one another. (*Id.* ¶¶ 35–40.)

After the execution of the Settlement Agreement, Fitzgerald alleges that R. McNae breached the Agreement as follows:

1. On March 31, 2022, R. McNae emailed two individuals at SoftwareONE revealing the Settlement Agreement and that there are ongoing criminal investigations against Fitzgerald ("Statement 1"). (*Id.* ¶ 42.) Statement 1 included an email R. McNae wrote to Fitzgerald accusing him of harassment and sexual battery. (*Id.* ¶ 43.)

2. On May 5, 2022, R. McNae contacted individuals at SoftwareONE and Microsoft accusing Fitzgerald of psychological coercion, deception, and manipulation to prey on her ("Statement 2"). (*Id.* ¶¶ 44–45.)

3. On May 9, 2022, R. McNae again contacted individuals at SoftwareONE and Microsoft, with copies of various police reports that she filed against Fitzgerald and stating that Fitzgerald preyed on her and stated that there exist other victims of Fitzgerald's misconduct ("Statement 3"). (*Id.* ¶¶ 46–47.)

4. On June 10, 2022, R. McNae contacted others at Microsoft and wrote that Fitzgerald raped and assaulted her and threatened and harassed W. McNae ("Statement 4"). (*Id.* ¶ 48.)

5. On July 7, 2022, R. McNae contacted John Wylie Esq. and John Mayes of SoftwareONE asking to be released from the Settlement Agreement and wrote that Fitzgerald committed sexual misconduct and sexual assault, and that he groomed and preyed on R. McNae ("Statement 5"). (*Id.* ¶¶ 49–50.)

6. On July 15, 2022, R. McNae again contacted individuals of SoftwareONE and Jenny Martinez Esq. of Munck Wilson, an outside law firm of SoftwareONE, stating that Fitzgerald touched parts of her body to desensitize her to random touching ("Statement 6"). (*Id.* ¶ 51.)

7. On July 11, 2022, R. McNae posted Statement 5 on Instagram in its entirety and indirectly referred to Fitzgerald in the comments section. ("Statement 7"). (*Id.* ¶ 52.) This was posted to thousands of R. McNae's followers and members of the public (*Id.*)

8. On July 15, 2022, R. McNae again posted on Instagram about Fitzgerald, adding a screenshot of the incident report she filed with the San Francisco Police Department, which included Fitzgerald's first and last name and stated that she accused him of rape and sodomy ("Statement 8"). (*Id.* ¶ 53.)

9. On October 10, 2022, R. McNae posted on Instagram a photo and stated that she was raped, referring to Fitzgerald by reference ("Statement 9"). (*Id.* ¶ 54.)

10. On January 1, 2022, R. McNae posted a blog on Medium.com, "Our HR complaint to MICROSOFT – falls on deaf ears" including W. McNae's July 8, 2021 letter to Microsoft stating that R. McNae was raped ("Statement 10"). (*Id.* ¶ 55.)

Plaintiff Fitzgerald commenced this action on July 14, 2022, and filed an Amended Complaint on December 30, 2022, alleging Breach of Contract against both Defendants (Counts I and II), Libel *Per Se* against R. McNae (Counts III–XII), Libel *Per Se* against W. McNae (Counts XIII–XVII), Intentional Infliction of Emotional Distress ("IIED") against both Defendants (Count XVIII), Loss of Consortium against both Defendants (Count XX), Malicious Prosecution against R. McNae (Count XXI), and a claim for contractual punitive damages. (ECF Nos. 1, 27.)

On January 27, 2023, Defendants moved to dismiss the Amended Complaint in its entirety for lack of subject matter jurisdiction, arguing that the parties were not diverse and that they did not meet the minimum amount in controversy jurisdictional requirement. (Mot. to Dismiss at 7–8, ECF No. 39.) Defendants also moved to dismiss for the following reasons: Counts III–XVII for Libel *Per Se* were barred by the independent tort doctrine, (*Id.* at 9); Count XVIII for IIED failed because Plaintiffs did not sufficiently allege that the conduct was extremely outrageous, (*Id.* at 15); Count XX for Loss of Consortium was barred because there is no independent tort, (*Id.* at 18); Count XXI for Malicious Prosecution failed to sufficiently allege the first element (*Id.* at 16–17); and any claim for contractual punitive damages was barred due to no independent tort (*Id.* at 18–19).

This Court denied the Motion to Dismiss as to lack of subject matter jurisdiction over Defendant R. McNae; granted the Motion to Dismiss as to lack of subject matter jurisdiction over Defendant W. McNae; and granted the Motion to Dismiss to Counts III–XVII for Libel *Per Se*, Count XVIII for IIED, Count XIX for Tortious Interference, Count XX for Loss of Consortium,

Count XXI for Malicious Prosecution, and the claim for contractual punitive damages. (ECF No. 100 at 14.)

Plaintiff Fitzgerald now moves for summary judgment as to liability on Count I of the Amended Complaint for Breach of the Settlement Agreement, the only claim remaining in this case. (*See generally* Mot.)

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may show that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , or other materials . . . . Fed. R. Civ. P. 56(c)(1)(A). Rule 56 requires granting summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant is entitled to a judgment as a matter of law when the "nonmoving party has failed to make a sufficient showing on an essential element of [their] case." *Id.*

"The moving party bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *accord Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London Subscribing to Certificate No. 154766 Under Cont. No. B0621MASRSWV15BND*, 766 F. App'x 795, 798 (11th Cir. 2019). "Only when that burden has

been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

When the moving party has carried its burden, the party opposing summary judgment must do more than show that there is "metaphysical doubt" as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, Rule 56 "requires the nonmoving party to go beyond the pleadings and, by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate *specific facts showing that there is a genuine issue for trial*." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (emphasis added) (cleaned up). "[C]onclusory allegations without specific supporting facts have no probative value." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).

At summary judgment, this Court must view the evidence and draw inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus.*, 475 U.S. at 586; *Chapman*, 861 F.2d at 1518. "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant." *Chapman*, 861 F.2d at 1518. "However, an inference based on speculation and conjecture is not reasonable." *Id.* (citing *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus.*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 270 (1968)).

## DISCUSSION

Plaintiff Fitzgerald asserts that Defendant R. McNae breached the Settlement Agreement at least ten times and therefore Plaintiff is entitled to partial summary judgment as to liability. (Mot. at 2.) Defendant R. McNae argues in response that summary judgment is improper because Fitzgerald has failed to provide any evidence of damages caused by the alleged breach and because he has not proven that any of R. McNae's statements constitute a material breach of the Settlement Agreement. (*See generally* Resp.) This Court shall address each argument in turn.

### A. Plaintiff is Entitled to Partial Summary Judgment as to Liability on Count I of the Amended Complaint.

To state a valid cause of action for breach of contract, a plaintiff must establish the existence of a valid contract, a material breach, and damages. *Everglades Ecolodge at Big Cypress, LLC v. Seminole Tribe of Fla.*, 836 F. Supp. 2d 1296, 1302 (S.D. Fla. 2011). First, the Settlement Agreement in this case constitutes a valid agreement. This is not in dispute. Therefore, Plaintiff Fitzgerald meets the first element required for a breach of contract claim.

Next, as to a material breach, it is not disputed that Defendant R. McNae authored, posted, and/or stated each of Statements 1 through 10 which form the basis of Plaintiff's claim. (Pl.'s SOF ¶ 59; Def.'s SOF ¶ 59.) However, R. McNae argues that Fitzgerald has failed to prove that the breaches were material. (Resp. at 15–17.) To constitute a vital or material breach, a party's nonperformance must 'go to the essence of the contract.'" *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 849 (11th Cir. 2013) (quoting *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So.2d 853, 857 (Fla. 4th DCA 1972)). Here, McNae's statements and communications disclosed the existence of the Settlement Agreement, violated the prohibition of contacting SoftwareONE, wrote about Fitzgerald directly and indirectly, and disparaged Fitzgerald, going to

the very heart of the Settlement Agreement. (Reply at 9; Pl.'s SOF ¶¶ 35–40, 42–56.) This Court therefore finds that Defendant R. McNae materially breached the Settlement Agreement.

Lastly, as to damages, Defendant R. McNae argues that summary judgment is not proper because there is no evidence that McNae caused or that Fitzgerald suffered any damages stemming from the alleged breach. (Resp. at 10–15.) However, "Florida law does require an award of at least nominal damages if a breach of contract has been established." *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1418 (11th Cir. 2011) (citing to *MSM Golf, L.L.C. v. Newgent*, 853 So.2d 1086, 1087 (Fla. 5th DCA 2003)). In *MSM Golf*, the court held that "[a]t the very least, [the plaintiff] was entitled to nominal damages once the jury found that the contracts had been breached by [the defendant]." 853 So.2d at 1087. Moreover, Fitzgerald has testified that because of McNae's breached of the Settlement Agreement, "such false accusations have affected him both professionally and personally, his career has been negatively affected as he was not able to maintain his job, has suffered reputational harm in his industry, as well as personal harm to his mental health and emotional wellbeing." (Reply at 6.) Regardless, "[a] plaintiff moving for summary judgment as to *liability only* does not need to prove the specific amount of damages to prevail." *AmeriPath, Inc. v. Wetherington*, No. 10-60766-CIV, 2011 WL 1303804, at *5 (S.D. Fla. Apr. 4, 2011) (emphasis added). Therefore, Plaintiff Fitzgerald has met the last element required for a breach of contract claim.

**B. Defendant R. McNae's Duress Defense Fails.**

Defendant R. McNae argues that she was suffering from PTSD and debilitating anxiety around the time she entered into the Settlement Agreement, establishing considerable evidence that she signed the Agreement under conditions of duress and thereby invalidating the Agreement's enforceability. (Resp. at 17–20.) "Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an

act or make a contract not of his own volition." *City of Miami v. Kory*, 394 So.2d 494, 497 (Fla. 3d DCA 1981) (quoting *Herald v. Hardin*, 95 Fla. 889, 116 So. 863, 864 (1928)). Florida courts have articulated two factors that must exist when setting aside a contract or settlement on the grounds of duress. *Kory*, 394 So.2d at 497. Specifically, "[i]t must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side." *Id.*

The facts of this case do not show that R. McNae signed the Settlement Agreement involuntarily or that there was improper external pressure. R. McNae suggested signing a non-disclosure agreement in the first place. (Pl's SOF ¶ 23.) Moreover, both she and Plaintiff Fitzgerald were represented by counsel who negotiated the Agreement on their behalf and several iterations of the Agreement were sent back and forth between the attorneys and clients. (*Id.* ¶¶ 26–29.) Defendant R. McNae even sent drafts of the Agreement to her therapist, Sarah Dellinger, and to her friend and boss, Tami Wakasugi. (*Id.* ¶ 30.) *See Kory*, 394 So.2d at 497 ("When, as here, a particular course of action is raised on one's own volition, and is finally decided upon in a deliberate and considered choice between alternatives, no finding of involuntariness, and thus no conclusion of duress may be sustained."). Additionally, McNae and Fitzgerald ceased communicating on May 4, 2020, a month before the Settlement Agreement was entered on June 15, 2020. (Ex. B, ECF No. 201.)

Lastly, Defendant R. McNae's claim that she was suffering from PTSD and debilitating anxiety are insufficient to establish duress. *See Velazquez v. Lowery*, No. 3:21CV1831-MCR-HTC, 2023 WL 9377978, at *3 (N.D. Fla. June 14, 2023). "Plaintiff's claim he 'was not in his right state of mind' is also insufficient to invalidate the settlement agreement." The fact Plaintiff suffered

from some degree of mental incapacity does not, by itself, render the contract void. *See Wells v. N.Y.C. Dep't of Corr.*, 804 F. App'x 88, 90 (2d Cir. 2020). Rather, the Plaintiff must show her mind was so affected that she was rendered wholly incompetent to comprehend and understand the settlement agreement. *Id.* "Mere mental weakness is insufficient to set aside an agreement if the person had sufficient intelligence to understand the nature and effect of the transaction and acted upon [his] own free will." *Menaged v. City of Jacksonville Beach, Fla.*, 2013 WL 461999, at *3 (M.D. Fla. Jan. 14, 2013).

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment, (ECF No. 171), is **GRANTED**.

2. This case shall proceed to trial to determine the amount of damages.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5 day of March 2025.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record