IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

                Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

                Defendants.

_____/

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant Ronda McNae, appearing pro se, respectfully submits these Proposed Findings of Fact and Conclusions of Law pursuant to the Court's post-trial scheduling order issued at the conclusion of the bench trial held on April 9–10, 2025. These findings address issues of damages, credibility, evidentiary reliability, and procedural fairness following the Court's March 5, 2025 partial summary judgment ruling (ECF No. 310), which resolved certain contractual liability issues in favor of Plaintiff but did not determine the nature, scope, or causation of damages.

The trial record included the testimony of Plaintiff Michael Fitzgerald, Plaintiff's expert Sheri Fiske, and third-party witness Jessica Bergman. Defendant was unable to testify due to procedural and ADA-related barriers, as detailed in pre- and post-trial filings. These proposed findings reflect the evidentiary record developed at trial, identify prejudicial procedural irregularities, and demonstrate that Plaintiff has failed to prove his alleged damages to a reasonable certainty as required under applicable law.

These findings are submitted in support of Defendant's request for a defense judgment on the issue of damages, and for such other relief as the Court deems just and proper pursuant to Federal Rule of Civil Procedure 52.

To the extent any of the supporting materials cited herein were not formally admitted at trial but are otherwise part of the docket or necessary to complete the record, Defendant respectfully requests that the Court consider them pursuant to its inherent authority to ensure a full and fair adjudication. Should the Court deem leave necessary, Defendant hereby moves for such leave nunc pro tunc to supplement the record in support of these findings and to cure any gaps resulting from counsel's failure to preserve or introduce material evidence at trial.

## I. PROPOSED FINDINGS OF FACT

1. Defendant Ronda McNae is a stay-at-home mother to four children and did not engage in paid employment or earn income during the 2024 calendar year. Her financial circumstances are relevant to the assessment of damages, credibility regarding litigation conduct, and her inability to contribute to or control legal negotiations initiated without her consent.

2. The parties entered into a stipulation on or about July 19, 2023, barring the use of current or former SoftwareONE employees for purposes of discovery or trial testimony. (*See* Exhibit A – Stipulation)

3. Notwithstanding that agreement, Plaintiff requested testimony at trial from Jessica Bergman, a former SoftwareONE employee, regarding Plaintiff's reputation, knowledge of the CSA, and rumors within the company—all in direct violation of the stipulation.

4. Ms. Bergman's testimony included hearsay, speculative commentary, and character assertions without foundation. Defendant did not have the opportunity to depose her due to the prior agreement.

5. Defendant, although a named party, was effectively prevented from testifying at trial due to untreated panic symptoms and procedural failures by her counsel. Despite repeated pre- and post-trial filings, including formal objections, her exclusion denied her the opportunity to participate in her own defense (*see* DE 329; DE 325; Exhibit B – Defendant's Request to Preserve Rights).

6. Defendant's exclusion was compounded by trial counsel's failure to request ADA accommodation or a continuance, despite being made aware of Defendant's panic-related limitations and the psychological impact of settlement coercion.

7. The record will include a contemporaneous filing titled *"Defendant's Request to Preserve Rights"*, which outlines Defendant's objections to her exclusion, identifies unpreserved objections, and clarifies that her testimony would have rebutted key claims about damages, causation, and intent. (*See* Exhibit B)

8. To the extent objections were not made contemporaneously during trial, Defendant preserves those objections under Federal Rule of Evidence 103(b), as she was unable to do so due to the limitations imposed by counsel and her exclusion from testimony.

9. Defendant documented that her trial counsel refused to permit her to testify after she experienced acute panic symptoms triggered by coercive settlement tactics and threats involving her family's pending adoption. These events caused significant psychological distress and were contemporaneously described in Defendant's filing titled *"Request to*

*Preserve Rights"*, which expressly preserved her objections and requested judicial intervention. Despite being aware of Defendant's condition and the triggering conduct, trial counsel failed to seek an accommodation, continuance, or protective order, depriving Defendant of her right to testify in violation of Federal Rule of Civil Procedure 43(a) and the Americans with Disabilities Act (ADA). This failure denied Defendant a meaningful opportunity to participate in her own defense and materially prejudiced her ability to rebut critical testimony on damages and intent. (See Exhibit B).



10. On or about March 18, 2025, Plaintiff's counsel, Peter Berlowe, contacted ARAG Legal Insurance—Defendant's legal insurer—in an effort to orchestrate a global settlement across multiple jurisdictions. This communication occurred without Defendant's knowledge or consent, and ARAG was not authorized to negotiate or act on Defendant's behalf. Plaintiff's counsel has since asserted that this correspondence is inadmissible under Federal Rule of Evidence 408 as part of confidential settlement negotiations. However, Rule 408 does not apply here, as Defendant was not a party to the alleged negotiation, had not authorized ARAG to

represent her settlement interests, and was unaware that her claims were being addressed through backchannel discussions. The communication is relevant not to prove liability, but to show improper interference with Defendant's legal representation and procedural rights. (See DE 325; Berlowe Letter to ARAG, Exhibit C)

11. On March 20, 2025, defense counsel Nichelle Womble issued a letter conditioning her continued representation on Defendant's acceptance of one of two settlement options, one of which required waiving claims in a separate jurisdiction. (*See* Ms. Womble's withdrawal which was sealed in DE 334 regarding DE 325 and DE 329)

12. During a phone call that same day, counsel warned Defendant that refusing to settle could jeopardize her family's pending adoption. Defendant experienced panic symptoms and emotional distress, which she documented and submitted to the Court (*See* DE 325).

13. Plaintiff presented no competent evidence that Defendant caused or contributed to his loss of shares, job opportunities, or business disruption. No financial expert offered quantifiable damages with reference to documents, accounting, or company metrics.

14. Defendant shared publicly available police records at the request of SoftwareONE HR in a good-faith effort to comply with corporate obligations related to workplace safety and ethics. These records were already publicly accessible, and their disclosure was neither malicious nor defamatory. No evidence was introduced to show the dissemination exceeded the scope of that request.

15. Plaintiff's harm was self-inflicted through his own disclosure of the CSA and termination details to his employer and not related to Defendant's actions.

16. Plaintiff testified that GoatPath collapsed due to his forced departure. However, public records and industry updates reflect that GoatPath was underperforming prior to his departure and was subsequently replaced by the SoftwareONE "Client Portal" under the improved leadership of

Max Kuzkin, an industry expert. (*See* Exhibit D – GoatPath Launch page and timeline update). Plaintiff offered no internal metrics, decline analysis, or customer loss data to show causation between Defendant's alleged conduct and GoatPath's failure. The record shows GoatPath was underperforming and was independently replaced by a new platform.

17. Defendant raised concerns about the GoatPath causation narrative with her trial counsel during trial and provided corroborating public data. Counsel failed to object. This omission allowed false, speculative testimony to be entered into the record. Defendant preserved the objection in her post-trial filings. (*See* Exhibit B)

18. As of March and April 2025, the Miami Beach Police Department (MBPD) confirmed that the sexual assault report made by Defendant remains open and under active investigation. The case was reassigned to Detective David Alvarez of MBPD's Sexual Battery Unit, who is reviewing newly submitted evidence and confirmed via a March 23, 2025 email that the matter will be presented to the Division Chief at the State Attorney's Office for charging consideration. This correspondence came less than two weeks after Plaintiff's counsel, Peter Berlowe, sent an email to Will McNae's state court attorney falsely claiming that "Federal Judge Martinez issued an Order... acknowledging that Mrs. McNae's claims of rape or sexual assault are false." (See Exhibit B, p.2).

19. That assertion misrepresented the Court's summary judgment ruling (DE 310), which made no factual findings as to the veracity of Defendant's report and addressed contract issues only. Plaintiff's counsel made this misstatement while aware of the active criminal review, improperly introducing bias and misleading third parties about the Court's ruling.

20. Defendant was further advised by MBPD Officer Cano that the affidavit referenced in Plaintiff Yelany De Varona's deposition—submitted in support of the amended complaint (DE 27) — was never received by MBPD, but instead possibly routed directly to the State Attorney's

Office. Officer Cano explained that bypassing law enforcement protocol may have delayed the investigation and noted that the sworn deposition statement claiming otherwise could constitute a separate false statement under oath. Despite this, the affidavit formed part of the foundation for trial testimony and posturing, and the Court was never informed that it was under active criminal review. This failure to disclose critical context deprived Defendant of a fair opportunity to rebut key credibility allegations and undermined the integrity of the trial.

21. Jessica Bergman's testimony on internal SoftwareONE operations, customer relations, and Plaintiff's departure violated the July 2023 stipulation (See Exhibit A). Defendant explicitly informed trial counsel this was improper and confirmed pre and post-trial that this violated the agreement. Still, counsel failed to object, preserving the appearance of waiver. Defendant's filing "Request to Preserve Rights" documents these communications and the resulting prejudice. (See Exhibit B)

21. Jessica Bergman acknowledged she attended Plaintiff's IPO celebration in Miami and held SoftwareONE shares, indicating a vested interest in preserving Plaintiff's reputation and avoiding scrutiny of the company. She testified that she was in Patrick Winter's "inner circle," she was still employed at SoftwareONE at the time of Plaintiff's departure and was employed until January 2025. Ms. Bergman had no role in company finance, executive leadership, or legal compliance.

22. Ms. Bergman's testimony included multiple statements that constitute inadmissible hearsay under Federal Rule of Evidence 802. Specifically, she relayed alleged "rumors" within SoftwareONE regarding Plaintiff's reputation and termination, including statements made by unidentified third parties. These were offered for the truth of the matter asserted and were not subject to cross-examination, as Defendant was denied discovery and deposition access pursuant to the parties' July 2023 stipulation. Bergman's statements do not fall within any

hearsay exception under Rule 803. They were not contemporaneous observations (803(1)), were not statements of a then-existing condition (803(3)), and were not based on business records or official data (803(6)).

23. Ms. Bergman's commentary also lacked foundation, as she admitted to having no role in hiring, finance, or executive oversight. Consequently, her testimony was both procedurally improper due to the stipulation violation and substantively inadmissible under the Federal Rules of Evidence.

24. In addition to violating the July 2023 stipulation barring the use of current or former SoftwareONE employees, Plaintiff's presentation of Jessica Bergman as a witness at trial constituted an improper surprise under the Federal Rules of Civil Procedure. Defendant was expressly prohibited from conducting discovery on current or former SoftwareONE employees pursuant to the stipulation. Although Bergman was listed in Plaintiff's broader disclosures, her use at trial was inconsistent with the agreement between the parties and constituted unfair surprise. Her testimony introduced topics—such as Plaintiff's reputation within SoftwareONE and internal company perceptions—that Defendant had no fair opportunity to rebut. This prejudiced the defense and undermined the integrity of the adversarial process. Under Federal Rule of Civil Procedure 26(a)(1)(A) and (e), Plaintiff was required to disclose the subject matter and basis of any witness's testimony and supplement any such disclosure in a timely fashion. Plaintiff's failure to do so, without substantial justification, warrants exclusion under Rule 37(c)(1). The testimony should be stricken or disregarded as procedurally improper, prejudicial, and violative of both the discovery rules and the parties' stipulation

25. Plaintiff's expert, Sheri Fiske, relied on assumptions unsupported by the record, including speculative 100% bonus eligibility, indefinite employment continuity, and complete

reputational collapse—all unsubstantiated by documentary or testimonial evidence. (*See* Fiske Deposition Transcript)

26. Ms. Fiske also opined that repayment of the $97,000 to Plaintiff was appropriate, stating that "Fitzgerald paid for something he did not get." This framing suggests a restitution theory rather than expectancy damages. If this position is accepted, it would indicate that the contract lacked mutual performance or consideration—supporting a finding of rescission or voiding the agreement altogether, rather than enforcing it for additional damages. Plaintiff cannot simultaneously seek to enforce the contract while also recovering as though it were invalid. This inconsistency undermines the basis for Plaintiff's damages theory.

27. Sheri Fiske offered expert testimony regarding Plaintiff's alleged financial damages but failed to provide any credible economic analysis or independent valuation. She did not produce a detailed damages spreadsheet, valuation model, or comparative compensation analysis typical of accepted forensic economic testimony. Her methodology was not peer-reviewed, nor was it tested against objective metrics.

28. Ms. Fiske admitted during cross-examination that she conducted no independent interviews, requested no documents from SoftwareONE, and made no attempt to verify Plaintiff's assertions through Human Resources, executive compensation records, or internal bonus structures. Instead, she based her damage model solely on Plaintiff's narrative and self-selected documents. Her reliance on hearsay without corroboration renders her conclusions inadmissible under Federal Rule of Evidence 703.

29. Ms. Fiske also failed to address mitigation. She did not consider Plaintiff's current or subsequent employment, alternative job offers, or the potential for comparable earnings in the

same industry, all of which are required when calculating compensatory damages in employment-related disputes.

30. Her assumption that Plaintiff was 100% eligible for a discretionary bonus, and would have received it indefinitely, was not only speculative but was directly contradicted by the text of his employment contract (Sections 8.1 and 8.2), which vested all bonus discretion with SoftwareONE. She acknowledged she reviewed no internal company performance metrics, bonus criteria, or peer compensation data.

31. Her testimony included internal inconsistencies. She initially claimed Plaintiff's raise was due to a "market adjustment" but later attributed it to merit-based performance. She offered no economic model to reconcile this claim and failed to produce a damages calculation that met any recognized standard in forensic accounting or employment compensation analysis.

32. Plaintiff claimed to have lost 17,000 PSU shares, allegedly forfeited by SoftwareONE after his departure. However, he failed to explain why he did not mitigate these damages by seeking clarification or reversal directly from SoftwareONE—particularly given that he initially received written confirmation affirming retention of the shares. He offered no communications, requests for reinstatement, or HR correspondence documenting any effort to resolve the issue before pursuing litigation. This inaction violates the duty to mitigate damages and severs any causal link between Defendant McNae's alleged conduct and the share forfeiture. Moreover, the timeline indicates that forfeiture occurred approximately eight months after this lawsuit was initiated—strongly suggesting the loss was not a proximate result of Defendant's actions but rather a post-litigation event influenced by Plaintiff's own legal posture. Defendant cannot be held responsible for Plaintiff's failure to act prudently or for internal decisions made by his employer long after the relevant events.

33. Plaintiff invoked confidentiality provisions from his settlement agreement with SoftwareONE to avoid producing documentation that would clarify the reasons for the forfeiture of his shares. He selectively relied on aspects of the settlement for his damages theory while refusing to disclose documents that may show adverse findings or unrelated causes for termination and share loss. Such selective disclosure undermines the transparency and reliability of his claims and invites an adverse inference. See *Nationwide Mut. Fire Ins. Co. v. Harmon*, 2005 WL 3232649 (M.D. Fla. Nov. 30, 2005) (where a party refuses to produce documents central to a claim, courts may infer the documents are unfavorable). Plaintiff cannot shield potentially damaging facts behind confidentiality while simultaneously seeking damages based on those undisclosed events.

34. Plaintiff testified that his reputation suffered based on hearsay comments, but no documentary evidence, declarations, or discovery records were produced to corroborate those claims.

35. Plaintiff claimed to serve on multiple advisory boards yet submitted no documentation verifying his involvement with any company. This assertion is unsupported and speculative.

36. Plaintiff testified that Defendant McNae demanded an investigation into "gift giving," implying this led to SoftwareONE's internal inquiry. He did not submit any evidence to substantiate this particular claim. Defendant's repeated discovery and subpoena requests for the investigation's findings were denied.

37. Plaintiff's claim that his reputation with an investment firm, Rice Investments, was harmed as a result of receiving a subpoena lacks factual and legal merit. Plaintiff himself identified Rice Investments during his deposition, which made it a proper subject for third-party discovery. The subpoena issued to Rice was a lawful mechanism under Federal Rule of Civil Procedure 45 and was narrowly tailored to seek relevant evidence. There is no evidence that Defendant

made any defamatory statements in connection with the subpoena, nor was the subpoena accompanied by publicity or misrepresentation. Courts routinely hold that reputational harm cannot be based solely on a party's use of lawful discovery tools. See *In re Subpoena to Testify Before Grand Jury Issued to Doe*, 836 F.2d 1437, 1446 (4th Cir. 1988) ("The mere fact that a person is subpoenaed does not constitute reputational harm."). Moreover, Plaintiff presented no affidavits, correspondence, or other documentation from Rice Investments indicating any adverse reaction or reputational consequence. Without causation or actual harm, this claim must be disregarded.

38. Plaintiff's request for attorneys' fees must be closely scrutinized and limited to work performed solely on the breach of contract claim. A substantial portion of the claimed fees were incurred in connection with tort claims—including those brought by Plaintiff's wife, Yelany De Varona—as well as allegations of duress and sexual assault, all of which were dismissed or are unrelated to the contractual dispute at issue. Under well-settled law, attorneys' fees are not recoverable for unsuccessful or unrelated claims unless those claims are inextricably intertwined with the recoverable cause of action. See *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved."); *Finkelstein v. Mardkha*, 811 So. 2d 794, 796 (Fla. 1st DCA 2002) (fees must be apportioned between recoverable and non-recoverable claims). Plaintiff has not provided time records segregating work on the breach of contract claim from work on dismissed or unrelated claims, and any award must therefore be reduced accordingly.

## II. CONCLUSIONS OF LAW

1.  Violating a stipulation between all parties that induced Defendant to forgo discovery constitutes a due process violation and prejudices the defense. See *Palkow v. CSX Transp., Inc.,* 431 F.3d 543 (6th Cir. 2005).

2.  The introduction of Jessica Bergman's testimony violated both the parties' July 2023 stipulation barring current or former SoftwareONE employees and the Federal Rules of Evidence. Her statements constituted inadmissible hearsay under FRE 802, and no valid exception under Rule 803 applied. As her testimony was based on office rumors, speculative conclusions, and unattributed third-party statements, it lacked indicia of reliability and foundation, and should have been excluded. The failure to enforce the stipulation and exclude the hearsay testimony prejudiced Defendant's ability to rebut Plaintiff's reputation and causation theories. Bergman's testimony introduced undisclosed, speculative hearsay that Defendant could not rebut due to the parties' express July 2023 stipulation. Admitting this testimony without discovery access deprived Defendant of due process and warrants exclusion. See *United States v. Rodriguez-Lopez*, 565 F.3d 312 (6th Cir. 2009) regarding reversing for improper admission of hearsay statements not qualifying under Rule 803. See also *Maldonado v. Missouri Pacific Ry. Co.,* 798 F.2d 764 (5th Cir. 1986) where courts must uphold stipulations made knowingly and voluntarily; violating stipulations can lead to exclusion or mistrial. Even if Bergman's statements had arguable relevance, the danger of unfair prejudice, confusion of the issues, and misleading the court substantially outweighed any probative value, warranting exclusion under Federal Rule of Evidence 403.

3.  The exclusion of Defendant's testimony on key factual issues, including mitigation and intent, constitutes a violation of her constitutional right to be heard and participate meaningfully in her defense. See *Goldberg v. Kelly*, 397 U.S. 254 (1970); Fed. R. Civ. P. 43(a).

4.  A party's exclusion from testifying based on untreated trial panic, especially when counsel fails to request a reasonable accommodation, may violate both the Americans with Disabilities Act and procedural due process. See *Tennessee v. Lane*, 541 U.S. 509 (2004).

5.  Plaintiff failed to prove causation between Defendant's actions and his alleged losses. See *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028 (Fla. 4th DCA 1994). See also *Aetna v. Loxahatchee Marina, Inc.*, 484 So. 2d 1330 (Fla. 4th DCA 1986) for further support on speculative claims.

6.  The coordination between Plaintiff's counsel and Defendant's legal insurer ARAG, if shown to be unauthorized and strategically timed, raises ethical concerns under Rule 4-1.8 of the Florida Rules of Professional Conduct.

7.  Plaintiff failed to prove damages to a reasonable certainty. Expert testimony that relies on unsupported assumptions and hearsay without methodology fails under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Plaintiff's failure to produce documents supporting his damages calculations is contrary to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), which requires the disclosure of a computation of each category of damages claimed and supporting documentation. This omission further undermines Plaintiff's entitlement to any recovery.

8.  Plaintiff's GoatPath causation theory was unsupported by evidence and contradicted by public and internal records. No financial statements, internal communications, or strategic documents were offered to support the claim nor were any produced in discovery.

9.  Where expert testimony is based on assumptions that are directly contradicted by public evidence and not supported by documentary analysis, it fails both *Daubert* and FRE 702 standards. See *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). To the extent Plaintiff's

expert relied on inadmissible hearsay, such reliance was not based on facts or data reasonably relied upon by experts in the field, rendering her opinion inadmissible under Federal Rule of Evidence 703. No documentation or internal compensation structure from SoftwareONE was submitted. Plaintiff's assumption of perpetual 100% bonus eligibility ignores the discretionary language in his employment agreement (Sections 8.1, 8.2), and no valuation model was presented to tie bonus projections to actual company performance or market trends.

10. Relief should be denied, or damages substantially reduced, based on Plaintiff's own conduct, lack of causation, speculative damages, and procedural unfairness.

11. Plaintiff's legal fees must be proportionally limited to those incurred in pursuit of the breach of contract claim. Fees related to dismissed tort claims or speculative reputational allegations are not recoverable. See *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

12. Under Federal Rule of Evidence 103(b), a party's failure to object at trial does not result in waiver where the party was unable to do so due to procedural circumstances or limitations imposed by counsel. Defendant properly preserved post-trial objections relating to improperly admitted testimony and excluded defense evidence.

13. Expert testimony that is based on unverified hearsay, lacks independent analysis, and fails to use any economic model or accepted methodology is inadmissible under Federal Rule of Evidence 702 and 703. See *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Sheri Fiske's conclusions were speculative, unsupported by any documentation or industry data, and failed to satisfy even the minimal threshold for expert reliability under the Federal Rules. Her testimony should be excluded or given no weight. See also *Finestone v. Florida Power & Light Co.*, 2006 WL 267330 (S.D. Fla. Feb. 2, 2006) (excluding expert testimony where the expert simply 'parroted' the plaintiff's

15

account without independent analysis); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) (allowing exclusion of expert opinion that is connected to data 'only by the ipse dixit of the expert').

14. A plaintiff seeking contract damages has a duty to mitigate losses and must establish causation with reasonable certainty. Where a plaintiff fails to take reasonable steps to minimize harm, damages may be reduced or denied altogether. Plaintiff submitted no declarations, employment correspondence, or third-party documentation from any company to support the claim that Defendant's conduct led to job loss, reputational harm, or financial injury. No rejection letters, revoked offers, or sponsor communications were entered into evidence. Plaintiff failed to pursue alternative executive roles, did not respond to SoftwareONE's share communications, and offered no evidence of job search efforts. His inaction broke the causal chain and violated the duty to mitigate damages. See *Sys. Components Corp. v. Fla. Dept. of Transp.*, 14 So. 3d 967, 982 (Fla. 2009). Plaintiff failed to mitigate the alleged loss of 17,000 PSU shares and failed to produce documentation explaining why SoftwareONE changed its position. His invocation of confidentiality to shield key evidence warrants an adverse inference against him. See *Nationwide Mut. Fire Ins. Co. v. Harmon*, 2005 WL 3232649 (M.D. Fla. 2005); *United States v. Rylander*, 460 U.S. 752, 761 (1983) ("A party who deliberately withholds evidence cannot then be heard to complain of lack of proof.").

15. A party issuing a subpoena under Rule 45 does not incur liability for reputational harm where the subpoena is issued in good faith and relates to matters identified in discovery or testimony. Absent defamatory conduct or misuse, third-party subpoenas are protected as lawful litigation activity. See *Doe*, 836 F.2d at 1446; *United States v. Calandra*, 414 U.S. 338, 349–50 (1974). Plaintiff's speculative assertion of reputational harm is unsupported by evidence and legally insufficient.

16. Where counsel knowingly misrepresents a court ruling while an underlying matter is under active criminal investigation, and the court is not informed of that investigation, the resulting prejudice can rise to a denial of due process. Misstatements made in reliance on disputed or unverified affidavits may also constitute litigation misconduct and warrant post-trial relief. Rule 408 does not shield communications offered to prove procedural misconduct, unauthorized negotiations, or third-party interference. See *United States v. Davis*, 596 F.3d 852, 857 (D.C. Cir. 2010). Defendant's objection is based not on settlement content, but on the improper attempt to negotiate without consent.

17. Federal Rule of Evidence 408 bars the use of settlement communications only where the evidence is offered to prove liability or the amount of a disputed claim. It does not apply where the communication is offered for another purpose, such as to demonstrate lack of consent, third-party interference, or unauthorized negotiation. See *U.S. v. Davis*, 596 F.3d 852, 857 (D.C. Cir. 2010). Plaintiff's counsel's communication with Defendant's legal insurer, ARAG, occurred without Defendant's authorization and is relevant to show improper influence and procedural prejudice—not to prove liability.

18. Plaintiff's reliance on the Court's March 5, 2025 Order (DE 310) to establish causation and reputational harm is misplaced. That Order addressed liability and nominal damages only, expressly reserving the issue of causation and damages for trial. Any claim that those elements were pre-determined is contrary to the record and misrepresents the scope of the Court's ruling.

19. No third-party witness, public report, or corporate correspondence linked Plaintiff's reputation to Defendant's actions. The $2,000,000 figure was self-created and unaccompanied by economic modeling, market analysis, or expert methodology.

### III. SUMMARY OF KEY TRIAL FAILURES

The trial proceedings were marked by multiple procedural and evidentiary failures that collectively undermined Defendant's ability to present a full and fair defense. Defendant was excluded from testifying due to untreated ADA-qualifying panic and her counsel's failure to seek accommodations, despite raising these limitations before and during trial. Plaintiff introduced testimony from Jessica Bergman in direct violation of a binding stipulation barring testimony from SoftwareONE employees, depriving Defendant of discovery and cross-examination. Plaintiff also misrepresented the scope of the Court's summary judgment ruling (DE 310) and relied heavily on speculative damages theories unsupported by documentation, expert methodology, or causation evidence. Communications with Defendant's insurer were improperly used to pressure settlement negotiations without consent, and Plaintiff's claimed reputational and financial losses were based on conjecture, not proof. These combined deficiencies call into question the fairness and reliability of the trial outcome and warrant denial of Plaintiff's requested relief or, alternatively, post-trial remedies including remittitur or a new trial.

### IV. FINAL REBUTTAL TO PLAINTIFF'S KEY DAMAGE ASSERTIONS

#### 1. Fitzgerald's Claim of a $274,453.27 Long-Term Incentive (LTI)

Plaintiff's claim that he lost a Long-Term Incentive valued at $274,453.27 is speculative and unsupported by any SoftwareONE documentation, including compensation policies, plan terms, or correspondence. No evidence was presented showing that this LTI was contractually earned, guaranteed, or revoked as a result of Defendant's conduct. Plaintiff failed to produce

performance metrics or eligibility criteria demonstrating entitlement to the LTI, and causation was not established.

### 2. $2 Million Reputational Damages Claim

Plaintiff's $2,000,000 reputational damages figure is an unsupported projection based on anticipated future earnings over 5–6 years. He applied no present-value discounting, introduced no expert valuation, and offered no corroborating evidence from employers, clients, or third-party witnesses. The number appears to be self-created and lacks any basis in economic modeling or legal standards of proof.

### 3. Persefoni and Rice Investment Group Allegations

Plaintiff presented no documentation—emails, letters, offer terms, or communications—from either Persefoni or Rice Investment Group indicating that any offer was made, withdrawn, or influenced by Defendant's actions. No representatives from those entities were called to testify, and the causation narrative rests entirely on Plaintiff's unverified assertions.

### 4. Fitzgerald's Salary and Bonus Structure

Plaintiff's quarterly and annual bonus eligibility was not guaranteed, but discretionary—subject to SoftwareONE management review, corporate performance, and executive board approval. No employment agreement or compensation policy was introduced demonstrating entitlement to any particular bonus. Plaintiff's expert conceded that she did not examine internal eligibility criteria or historical bonus award patterns.

### 5. Advisory Board Roles

Plaintiff's claim of lost advisory board positions lacks evidentiary support. He produced no board appointment letters, service agreements, meeting minutes, or corroborating declarations verifying these roles or establishing any reputational harm caused by Defendant. These claims remain entirely speculative and untested through discovery or testimony.

### 6. SoftwareONE "Paid Leave" and Departure

No SoftwareONE communications, HR findings, or company policies were presented to show that Plaintiff's administrative leave or separation was caused by Defendant's conduct. In fact, the record reflects that Plaintiff requested a "soft landing" and facilitated a mutual separation. His departure occurred months after the alleged breach, during a broader internal restructuring, severing any proximate link to Defendant's actions.

### 7. Microsoft, AWS, and Other Third Parties

Plaintiff presented no testimony, affidavits, or declarations from Microsoft, AWS, or any other business partner confirming that his reputation or business prospects were harmed by Defendant. No external industry witness was called to substantiate Plaintiff's damages theory or establish a causal link to Defendant's alleged breach.

### V. RELIEF REQUESTED

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's claims for damages in their entirety and grant such other relief as the Court deems just and proper.

1. Enter judgment in favor of Defendant on the issue of damages;

2. Strike or disregard the testimony of Jessica Bergman as violative of the discovery stipulation;

3. Exclude or give no weight to the testimony of Plaintiff's damages expert Sheri Fiske, whose opinions are speculative, lack methodological support, and are unsupported by data or independent verification;

4. Acknowledge the procedural denial of Defendant's right to testify and preserve such issue for appeal, including objections preserved under Federal Rule of Evidence 103(b) and raised in *"Defendant's Request to Preserve Rights"*;

5. Deny Plaintiff's request for attorneys' fees or limit them to contractual damages, if any;

6. Reject the GoatPath causation theory as speculative and unsupported;

7. Reject Plaintiff's reputational damages as speculative and unsupported;

8. Vacate the judgment in its entirety and declare a mistrial pursuant to the Court's inherent authority and Federal Rules of Civil Procedure 59(a) and 60(b), based on structural and procedural errors that denied Defendant a fair trial. These include the denial of Defendant's right to testify, failure to prepare or consult with counsel prior to trial, introduction of barred and prejudicial testimony in violation of a stipulated agreement, and the Court's reliance on speculative and unsupported damages evidence. In the alternative, grant a new trial on both liability and damages or amend the judgment to correct manifest injustice and preserve Defendant's constitutional and procedural rights.

9. In the alternative, dismiss the case in its entirety due to structural unfairness, prejudicial reliance on inadmissible and misleading evidence, and improper litigation conduct that deprived Defendant of a fair opportunity to present her defense. The proceedings were

further compromised by documented third-party interference, including false and prejudicial communications from Yelany de Varona during an ongoing criminal investigation, and strategic maneuvering by Plaintiff's counsel involving communications with ARAG, Defendant's legal insurer, aimed at influencing parallel proceedings and potential settlement leverage. Each party should bear their own legal fees and costs, excluding liabilities arising from third-party misconduct.

10. Grant such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Ronda McNae
Ronda McNae
504 11th Pl
Kirkland, WA 98033
prose.rmcnae@gmail.com
(206) 914-6752

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 16, 2025, a true and correct copy of the foregoing Defendant's Proposed Findings of Fact and Conclusions of Law was sent to the Clerk of the Court at the Miami Courthouse, Southern District of Florida, 400 N. Miami Ave, Room 8N09, Miami, FL 33128. Additionally, in compliance with the Court's requirements for pro se litigants, a copy of the same document was sent to Plaintiffs' counsel.

## SERVICE LIST

Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlowe.com
*Counsel for Plaintiff*

*By: Ronda McNae*
Ronda Delapina McNae
Pro se Defendant

# Exhibit A

**Will McNae**

| | |
|---|---|
| **From:** | Peter E. Berlowe <PEB@AssoulineBerlowe.com> |
| **Sent:** | Wednesday, July 19, 2023 12:20 PM |
| **To:** | Jenny L. Martinez; Casey, Stephanie |
| **Cc:** | Alaina Fotiu-Wojtowicz; Meredith J. Gussin; Roberto, Michelle; Heather Shatzel; Michael McCabe |
| **Subject:** | RE: Ronda McNae Second Subpoena to SoftwareONE |

Yes, Fitzgerald is in agreement to your conditions.

**Peter E. Berlowe, Esq.**
**Business and Intellectual Property Litigation**

## ASSOULINE & BERLOWE
### THE BUSINESS LAW FIRM

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
**Telephone: 305-567-5576**

**www.assoulineberlowe.com**

Intellectual Property, Labor & Employment Law, Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy, Trusts & Estates, Probate and Guardianship

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication. Thank you.

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Wednesday, July 19, 2023 12:00 PM
**To:** Casey, Stephanie <scasey@colson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

Good morning, Stephanie.

SoftwareOne, Inc. will agree to withdraw its privilege challenge for the 2 emails at issue in exchange for the following: (1) Defendants agree that SoftwareOne, Inc. has fully complied with the subpoena dated 9/21/2022; (2) all parties agree not to seek additional information from SoftwareOne, Inc., its affiliates, or their current or former employees (with the obvious exception that this agreement does not impact Defendants' ability to seek discovery from Mike Fitzgerald); (3) all

parties agree that the withdrawal of SoftwareOne, Inc.'s privilege challenge relates to these 2 emails only and no other communications; (4) all parties agree that the withdrawal of the privilege challenge for these 2 emails does not constitute a subject matter waiver or any other waiver of privilege with respect to any other communication; and (5) all parties agree that SoftwareOne, Inc. is not waiving any other rights or defenses.

Sincerely,

**Jenny Martinez**
Partner



12770 Coit Rd., Ste 600
Dallas, TX 75251
d. +1 972.628.3623
o. +1 972.628.3600
e: jmartinez@munckwilson.com
w. munckwilson.com
Connect with me on LinkedIn
Follow Munck on LinkedIn



**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Casey, Stephanie <scasey@colson.com>
**Sent:** Wednesday, July 19, 2023 8:34 AM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

[External]

Jenny:

Good morning. Please let me know today, before 2 pm ET (as I will be getting on a flight then), what SoftwareOne's position is so that I may report it to the Court.

Best,

Stephanie

**Stephanie A. Casey** | Colson Hicks Eidson | 255 Alhambra Circle, Penthouse | Coral Gables, FL 33134
Office: 305.476.7400 | Direct: 305.476.7496

**From:** Casey, Stephanie
**Sent:** Monday, July 17, 2023 6:47 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

Thank you, Jenny. Today we received a communication from the Court requiring us to provide a final position on the motion by Wednesday, so please let me know by tomorrow if you can so we can make sure to let the Court know in a timely manner.

Best,

Stephanie

**Stephanie A. Casey** | Colson Hicks Eidson | 255 Alhambra Circle, Penthouse | Coral Gables, FL 33134
Office: 305.476.7400 | Direct: 305.476.7496

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Monday, July 17, 2023 3:01 PM
**To:** Casey, Stephanie <scasey@colson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Stephanie,

I reached out my client regarding the below and will get back to you ASAP.

Sincerely,

**Jenny Martinez**
Partner



12770 Coit Rd., Ste 600
Dallas, TX 75251
d. +1 972.628.3623
o. +1 972.628.3600
e: jmartinez@munckwilson.com
w. munckwilson.com
Connect with me on LinkedIn
Follow Munck on LinkedIn



**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Casey, Stephanie <scasey@colson.com>
**Sent:** Sunday, July 16, 2023 7:39 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>
**Subject:** Ronda McNae Second Subpoena to SoftwareONE

[External]

Dear Jenny:

I hope you're doing well. As you may know, Judge Becerra provided her preliminary thoughts on the two subpoena exhibits during a hearing last week. In particular, she did not appear convinced that either document was privileged, but reserved ruling in the event SoftwareOne wanted to appear to be heard on the matter. Judge Becerra also encouraged the parties to try to come to an agreement without the need for further hearing.

To dispense with the need for oral argument on this issue, I proposed to Peter that Defendants would agree to withdraw the motion if Plaintiffs and SoftwareOne agreed to withdraw their respective privilege challenges to the exhibits, without prejudice to Plaintiffs' right to raise whatever evidentiary challenges they have to the records at the appropriate time. Peter let us know that the proposal would be acceptable to Plaintiffs, but he did not have SoftwareOne's position. Peter has indicated to the Court that SoftwareOne will not appear to argue the privilege issues.

Accordingly, I am writing to get SoftwareOne's position on whether it agrees to withdraw its privilege challenge to the 2 subpoena exhibits. Sensitive to SoftwareOne's prior expressed concerns regarding the use of these documents, should SoftwareOne agree to withdraw its privilege challenge to the 2 subpoena exhibits, we won't use them to subpoena SoftwareOne for further records.

I look forward to hearing from you.

Best,

Stephanie

**Stephanie A. Casey | Partner | Colson Hicks Eidson**
255 Alhambra Circle, Penthouse | Coral Gables, Florida 33134
Office: 305.476.7400 | Direct: 305.476.7448 | Fax: 305.476.7444
scasey@colson.com | www.colson.com

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

           Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

           Defendants.

_____/

## NOTICE OF CLARIFICATION AND SUPPLEMENT TO RESPONSE TO DE 366

*(Preservation of Appellate Rights and Request for Pro Se Status)*

TO THE HONORABLE COURT:

    I, Ronda McNae, respectfully submit this notice to clarify and supplement my position regarding DE 366 (Motion to Withdraw) and to preserve my appellate rights considering the Court's denial of that motion. This filing is made in good faith to ensure the record accurately reflects my concerns, attempted objections, and supporting facts.

### 1. Mischaracterization of Court's Summary Judgment Order (DE 310)

    On March 5, 2025, this Court issued its Order on Summary Judgment (DE 310), granting partial summary judgment on the issue of breach of contract. I acknowledge the Court's ruling. However, opposing counsel has since circulated written correspondence stating: *"Judge Martinez issued an Order… acknowledging that Mrs. McNae's claims of rape or sexual assault are false."* This is demonstrably inaccurate.

The Court made **no factual finding** regarding the truth or falsity of my sexual assault allegations. The ruling focused exclusively on contract interpretation. The mischaracterization of this ruling—especially in writing—has had real implications on both perception and litigation posture and should be corrected on the record. (*See Below*)

| | |
|---|---|
| **From:** | Peter E. Berlowe <PEB@AssoulineBerlowe.com> |
| **Sent:** | Wednesday, March 12, 2025 3:56 PM |
| **To:** | Althea  Bryan Farr; Meredith J. Gussin |
| **Cc:** | APL Assistant; ABF Legal Assistant; Keisha Hall |
| **Subject:** | RE: Emailing: DE 310 - Order Granting Plaintiff's Motion for Summary Judgment as to Liability (00422311xA4579).PDF |

Good afternoon again Althea:

[redacted]

You may not be aware, but Federal Judge Martinez issued an Order today acknowledging that Mrs. McNae's claims of rape or sexual assault are false.

[redacted]

Sincerely,

**Peter E. Berlowe, Esq.**
**Business and Intellectual Property Litigation**

**ASSOULINE & BERLOWE**
**THE BUSINESS LAW FIRM**

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3650
Miami, Florida 33131
Telephone: 305-567-5576

This is particularly troubling considering that Plaintiff's counsel is aware that the Miami Beach Police Department has reassigned a new detective to the active criminal investigation. As confirmed in a March 23, 2025 email from Detective David Alvarez of MBPD's Sexual Battery

Unit, my case is under continued review and will soon be presented to the Division Chief at the State Attorney's Office for further action. (*See Below*)



## 2. False Affidavit and Active Criminal Investigation

While in Miami, I filed a supplemental police report with the Miami Beach Police Department (MBPD) regarding the false affidavit submitted by Plaintiff Yelany De Varona-Fitzgerald. In her deposition in this matter, Ms. De Varona testified under oath that she submitted the affidavit to MBPD. However, MBPD Officer Cano (Extension #7860) confirmed that there is no record of the affidavit ever being received by the department. He strongly suggested it was instead submitted directly to the State Attorney's Office—a fact that directly contradicts her sworn deposition.

Officer Cano further opined that this type of submission—routing the affidavit directly to prosecutors rather than police—could have the effect of halting a criminal investigation, if true, by bypassing standard protocol. He raised this concern in light of the prolonged delay in determining whether criminal charges would be pursued.

3

In early March, I submitted additional documentation to the Chief of Police concerning the affidavit. Shortly thereafter, I was informed that a new detective had been assigned to investigate the matter considering the new evidence. A March 23, 2025 email from Detective David Alvarez confirms that the investigation is active and that the case will be presented to the Division Chief of the State Attorney's Office once all evidence is reviewed.

While at the MBPD, my daughter, Ella McNae, also submitted a sworn written statement in her own words. She did so voluntarily and independently, without coaching, to ensure her memory and account were preserved before any exposure to external conversations or influence. Her statement is now part of the active investigation and reinforces the timeline and facts relevant to the broader inquiry.

It is also worth noting that the officer remarked that the contradiction between Ms. De Varona's sworn deposition and the actual point of affidavit submission may constitute a separate false statement under oath. The affidavit itself—and Ms. De Varona's false testimony about it— helped form the foundation of the amended complaint (DE 27) in this case. That same complaint was subsequently repurposed in two separate state proceedings in a manner designed to tip the scales. The affidavit is now under active scrutiny for being knowingly false and strategically used to obstruct justice across multiple jurisdictions. I intend to pursue justice on this matter.

## 3. Shared Legal Counsel and Conflicts of Interest

Both Plaintiffs—Michael Fitzgerald and Yelany De Varona-Fitzgerald—are represented by the same law firm, Assouline & Berlowe. This is concerning because:

- The false affidavit from Ms. De Varona was used to initiate or support this lawsuit;
- The same counsel now seeks to recover damages based on elements of that affidavit;
- And their client is simultaneously under active criminal investigation based on the same document.

This overlap of representation further complicates the integrity of this case and highlights procedural abuses that have gone unaddressed.

**4. Legal Insurance Interference and Judicial Recognition in Related Case**

My ability to defend myself in this matter was significantly compromised by interference from ARAG Legal Insurance. ARAG denied me uninterrupted, independent counsel and imposed restrictions that limited pretrial preparation, legal strategy, and procedural consistency. These concerns are not speculative. In the related federal matter *McNae v. ARAG Insurance*, Case No. 2:24-cv-00211-TL, Judge Tana Lin of the Western District of Washington formally acknowledged that the case raised **overlapping civil, legal, and criminal issues**—including questions of due process, attorney interference, and witness credibility.

Judge Lin granted a stay in that case precisely because she recognized that ongoing proceedings in other jurisdictions involved the same set of operative facts, witnesses, and documentary evidence—including the false affidavit and criminal misconduct now under investigation in Miami. Her decision reflects the reality that ARAG's conduct, and the actions of other parties connected to my legal insurance plan, are intertwined with the procedural and ethical concerns raised in this litigation

**5. Prior Counsel's Refusal to Inform the Court**

I repeatedly asked the attorney, Ms. Womble, to inform this Court of the false affidavit, the pending criminal investigation, the legal insurance interference, and the misstatements made about DE 310 by Mr. Berlowe. She refused. Her silence on these critical matters has severely undermined my defense. That is why I supported her motion to withdraw after trial concluded (DE 366) and am now requesting to proceed pro se.

**6. Violation of July 2023 Discovery Agreement Regarding SoftwareONE Employees and Counsel's Failure to Object**

At trial, Plaintiff's witness Jessica Bergman—a former SoftwareONE employee—was permitted to testify, despite a documented **agreement reached in July 2023** between all parties, including SoftwareONE, Plaintiffs, and Defendants, in which **all parties agreed not to seek additional information from SoftwareONE, Inc., its affiliates, or their current or former employees**. The agreement explicitly noted that this restriction did not limit Defendants' ability to seek discovery from Mike Fitzgerald. (*See Below*)

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Wednesday, July 19, 2023 12:00 PM
**To:** Casey, Stephanie <scasey@colson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bflegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bflegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

Good morning, Stephanie.

SoftwareOne, Inc. will agree to withdraw its privilege challenge for the 2 emails at issue in exchange for the following: (1) Defendants agree that SoftwareOne, Inc. has fully complied with the subpoena dated 9/21/2022; (2) all parties agree not to seek additional information from SoftwareOne, Inc., its affiliates, or their current or former employees (with the obvious exception that this agreement does not impact Defendants' ability to seek discovery from Mike Fitzgerald); (3) all parties agree that the withdrawal of SoftwareOne, Inc.'s privilege challenge relates to these 2 emails only and no other communications; (4) all parties agree that the withdrawal of the privilege challenge for these 2 emails does not constitute a subject matter waiver or any other waiver of privilege with respect to any other communication; and (5) all parties agree that SoftwareOne, Inc. is not waiving any other rights or defenses.

Sincerely,

**Jenny Martinez**
Partner

**MUNCK WILSON MANDALA**
TRIALS. TRANSACTIONS. TECHNOLOGY.

Despite the clear limitations set forth in that agreement, Ms. Bergman was subpoenaed and allowed to testify. Her statements far exceeded what could reasonably be categorized as "personal knowledge." Ms. Bergman gave detailed accounts and commentary about:

- Fitzgerald's hiring process and internal decision-making criteria;

6

- Company performance and stock prices;
- Customer engagement meetings involving major clients;
- Business practices developed with third-party vendors such as VMware and Amazon Web Services (AWS);
- Her impressions of Mr. Fitzgerald's reputation, including **statements based on internal rumors and what other SoftwareONE employees allegedly told her**, rather than firsthand experience or direct observation;
- And the circumstances surrounding Mr. Fitzgerald's termination.

Ms. Bergman also referenced not only the Confidential Settlement Agreement between Mr. Fitzgerald and the McNae family, but an additional Settlement Agreement relating to his amicable separation from SoftwareONE—information she indicated she had learned under the advice of counsel. This content was clearly drawn from her role and access within SoftwareONE—not independent personal experience.

I brought this issue to Ms. Womble's attention, both before and during trial, and she refused to object. I later confirmed with my former counsel, Alaina Fotiu-Wojtowicz, that Ms. Bergman's testimony **violated the July 2023 agreement**. Still, Ms. Womble declined to take action, instead asserting that opposing counsel asserted the witness's knowledge was "personal," despite the obvious internal and organizational nature of her testimony.

**This was precisely why I spoke up in court when I did.** I had no other choice. My counsel refused to protect the record or preserve my rights. My husband, who was present in court, also clearly heard Ms. Bergman testify about topics that should never have entered the courtroom under the agreed terms. This testimony was a material violation of a mutually agreed restriction which had I known would not be honored, would have called upon current SoftwareONE employees to testify on my behalf regarding Mr. Fitzgerald's reputation and perceived damages. It not only prejudiced my case but tainted the integrity of the trial itself.

7

### 7. Unprofessional Conduct and Undermining of My Appellate Rights

Ms. Womble arrived late or unprepared in open court on two occasions. She made no apology to this Court or to opposing counsel, in violation of Your Honor's standing orders on courtroom conduct. Most recently, she questioned the legitimacy of my appellate counsel's license. I had to send her a copy of his Eleventh Circuit bar certification to resolve her baseless concern.

These lapses, coupled with her refusal to address critical procedural violations, leave me with no confidence that my rights will be preserved. Her final filings—submitted over my objection—do not represent my position and do not preserve the record adequately.

### 8. Relative Prejudice and the Need for Judicial Intervention

Plaintiff's counsel opposes Ms. Womble's withdrawal on the grounds that it would allegedly prejudice their client. But in light of the broader context—including interference from my legal insurance provider, the submission and use of a false affidavit now under criminal investigation, improper testimony in violation of a written agreement, and my attorney's repeated refusal to preserve issues for appeal—**it is difficult to understand how Plaintiff could possibly be more prejudiced than I have been** throughout these proceedings.

Even more concerning is that opposing counsel's objection to the withdrawal does not merely assert prejudice; it **includes overt praise for Ms. Womble's representation**—a highly unusual and inappropriate gesture in the context of a contested litigation. In fact, **Exhibit A** to Ms. Womble's own Motion to Withdraw (DE 366) consists of an email from Plaintiff's counsel complimenting her performance and conduct.

Given that this is an adversarial proceeding, I find it deeply troubling that my opponent's counsel would go out of their way to affirm the adequacy of my attorney's representation—

especially when key objections have gone unpreserved, sworn contradictions have gone unchallenged, and critical misrepresentations about this Court's ruling remain unaddressed.

The only reasonable conclusion is that opposing counsel recognizes that my attorney has not been advocating for me with the necessary diligence, objectivity, or strategic rigor. This dynamic further undermines the fairness of the proceedings and reinforces the urgency of either granting pro se status or ordering substitute representation to protect the record for appeal.

## 9. Failure to Object to Fabricated Testimony Regarding "GoatPath Collapse"

During trial, Plaintiff Fitzgerald offered testimony suggesting that SoftwareONE's alleged downturn—and his claimed reputational damages—stemmed directly from his "forced leave" and the subsequent failure of GoatPath. However, Defendant's counsel failed to object, conduct effective cross-examination, or present readily available rebuttal evidence to contradict this speculative and misleading narrative.

In reality, public records confirm that GoatPath was already underperforming and being phased out, with its intended functionality ultimately replaced by the SoftwareONE Client Portal— a more robust and successful platform led by Max Kuzkin. Despite this, Plaintiff was permitted to offer unchallenged testimony portraying himself not only as central to GoatPath's success, but also as a critical executive whose departure allegedly derailed a broader growth strategy for the company. Trial counsel failed to object to these unsupported causation claims or to challenge the absence of financial documentation, internal communications, or strategic planning materials to substantiate the alleged damages.

This omission deprived the Court of critical context and allowed Plaintiff to construct a false narrative that exaggerated his role and the impact of his departure. The failure to object or rebut materially prejudiced Defendant McNae's ability to contest damages, and further

9

demonstrates that counsel failed to zealously advocate for her interests or preserve her rights on appeal.

Given my counsel's repeated refusal to preserve critical issues for the record—including failures to object to improper testimony, correct factual misstatements, or inform the Court of the active criminal investigation concerning Plaintiff Yelany De Varona-Fitzgerald's affidavit and deposition testimony—I am gravely concerned that irreversible harm may result, including the waiver of appellate rights, forfeiture of evidentiary objections, and mischaracterization of key facts.

In addition to the ongoing investigation, I have also been notified of an **upcoming meeting with the State Attorney's Office regarding matters involving Mr. Michael Fitzgerald**, which further underscores the seriousness and materiality of these overlapping legal issues. I respectfully raise these concerns now to ensure the record is complete, and that my ability to seek justice through proper post-trial and appellate channels is not lost. In a prior filing, this Court allowed me to object to counsel's withdrawal at a critical stage after I contacted chambers to raise the urgency of the issue, and my objection was permitted under the circumstances. This situation is no different, and I respectfully ask that similar consideration be extended here to protect the integrity of the record and my due process rights.

I respectfully raise these concerns now to ensure the record is complete, and that my ability to seek justice through proper post-trial and appellate channels is not lost.

**WHEREFORE, I respectfully request:**

- That my response to DE 366 be accepted into the record despite the denial of the motion to withdraw;

- That, above all, my appellate rights be preserved given the denial of the motion to withdraw and the ongoing inability of counsel to adequately raise or protect the full scope of objections and factual issues critical to the fairness of this proceeding;

- Alternatively, should the Court require Ms. Womble to remain as counsel of record, that she be expressly ordered to act in good faith and in active collaboration with me to preserve my appellate rights—including but not limited to raising relevant objections, incorporating material evidence, and addressing disputed issues of fact and law—instead of limiting her involvement to perfunctory or minimal filings that risk waiving or forfeiting those rights;

- And for any other relief this Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this <u>14th</u> day of <u>APRIL</u> 2025.

Respectfully submitted,

By: *Ronda McNae*
Ronda Delapina McNae
Pro se Defendant
504 11th Pl, Kirkland, WA 98033
Tel: (206) 914-6752
Prose.rmcnae@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been distributed via email to the Court and all counsel to ensure timely notice, as a hard copy may take several days to reach the Court. I respectfully request that the Court consider this submission as a good faith effort to ensure my voice is on the record in light of the circumstances and the denial of counsel's withdrawal. All parties will receive a copy through the Court's CM/ECF system once the filing is accepted. As I am not officially recognized as pro se until the Court grants the motion, this document is submitted in anticipation of that status.

## SERVICE LIST

Peter E. Berlowe, Esq.                         Miami, Florida 33131
Meredith J. Gussin, Esq.                       Email: PEB@assoulineberlowe.com
ASSOULINE & BERLOWE, P.A.                      Email: MJG@assoulineberlowe.com
100 SE 2nd Street, Suite 3650                  Counsel for Plaintiff

Nichelle Lynn Womble, Esq.
Amethyst Law Group
100 South Ashley Drive, Suite 600

Tampa, FL 33602
Email: nichelle@amethystlawgroup.com
(Current Counsel for Defendant)

# Exhibit C

# ASSOULINE & BERLOWE
## THE BUSINESS LAW FIRM

Miami Tower
100 SE 2nd Street, Suite 3650 • Miami, Florida 33131
Telephone: 305-567-5576
www.assoulineberlowe.com

March 18, 2025

**PRIVILEGED SETTLEMENT COMMUNICATION[1]**

**VIA EMAIL ONLY**
Michael T Mullaly
Squire Patton Boggs LLP
41 South High Street
2000 Huntington Center
Columbus, Ohio 43215
michael.mullaly@squirepb.com

| | | |
|---|---|---|
| Re: | ARAG Claim No.: | 3266236 |
| | ARAG Policy No.: | 10377 |
| | Bad Faith Litigation: | *McNae v. ARAG Ins. Co.*, |
| | | Case No. 2:24-cv-00211-TL |
| | Federal Underlying Action: | *Fitzgerald and de Varona v. McNae*, |
| | | Case No. 1:22-cv-22171-JEM |
| | State Underlying Action: | *Fitzgerald v. McNae*, |
| | | Case No. 2023-025855-CA-01 (Fla. 11th Jud. Cir.) |

### *Invitation to Settle Underlying Actions*

Dear Mr. Mullaly:

Thank you for taking my call earlier today. As you know, this firm and the undersigned attorney represent Michael Fitzgerald and Yelany de Varona (collectively, the "***Underlying Plaintiffs***") in connection with the Federal Underlying Action and the State Underlying Action described above (collectively, the "***Underlying Actions***"). This correspondence is being sent you in your capacity of attorney of record for ARAG Insurance Company ("***ARAG***") in connection with the Bad Faith Litigation brought by William and Rhonda McNae (collectively, the "***Insureds***") under the McNae's ARAG Legal Insurance Policy bearing policy No. 10377 (the "***Policy***").

---

[1] Not admissible under Federal Rule of Evidence 408 or any State counterpart thereto.

On March 5, 2025, the U.S. District Court for the Southern District of Florida granted Underlying Plaintiffs' Motion for Summary Judgment against Rhonda McNae. Please find enclosed a copy of the March 5, 2025 Order Granting Plaintiff's Motion for Summary Judgment in the Federal Underlying Action. Also, please find enclosed the March 12, 2025 Order Granting Plaintiff's Motion *In Limine* for your reference.

Now, the parties in the Federal Underlying Action will proceed to jury trial in early April 2025 solely to determine the Underlying Plaintiffs' damages, in which the undersigned will seek damages well over $4.5 Million Dollars. In other words, Mrs. McNae is legally exposed to damages, and a Florida jury will only determine the amount of damages as to her. Mr. Fitzgerald will be filing a comparable partial motion for summary judgment as to Mr. McNae shortly, and expects to obtain a comparable $4.5 million judgment against Mr. McNae in the State Underlying Action.

In the Bad Faith Litigation, the McNaes plead that their exposure to damages was proximately caused by ARAG's denial of benefits under the Policy. Therefore, Michael Fitzgerald invites ARAG to mitigate the McNaes' exposure to damages and engage in good faith settlement negotiations with the Underlying Plaintiffs.

Should ARAG wish to settle the Underlying Plaintiffs' claims against ARAG's Insureds and avoid further procedural bad faith exposure, ARAG must reply to this invitation to settle the Underlying Actions by no later than 5 p.m., EST, Friday, March 21, 2025. In the meantime, if you have any questions or concerns, please do not hesitate to contact the undersigned.

Sincerely,

*Peter E Berlowe*

Peter E. Berlowe, Esq.

PEB/MJG/AJC:sh

Encl.:   March 5, 2025 Order Granting Fitzgerald's Motion for Summary Judgment
         March 12, 2025 Order Granting Plaintiff's Motion *In Limine*

cc.:     Benjamin Roesch (benjamin.roesch@jmblawyers.com)
         Gabriel Baker (gabe.baker@jmblawyers.com)
         Nichelle Womble (nichelle@amethystlawgroup.com)
         Althea Bryan Hall (Althea.BryanFarr@bfhlegal.com)
         Keisha Hall (khall@allpointslegal.com)

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3650, Miami, Florida 33131 • Telephone: (305) 567-5576

# Exhibit D



Calendar · Collections · Changes · Summary · Site Map · URLs

Saved **6 times** between February 24, 2022 and March 19, 2022.