UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 22-cv-22171-MARTINEZ

MICHAEL FITZGERALD, and
YELANY DE VARONA,

    Plaintiffs,

v.

RONDA MCNAE, and WILLIAM MCNAE,

    Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS CAUSE** came before this Court on the non-jury trial held in this case from April 9, 2024, to April 10, 2026. During and after the bench trial, this Court reviewed the evidence admitted and considered applicable law and arguments presented by counsel. After careful consideration of the Parties' submissions, the following findings of fact and conclusions of law are made pursuant to the requirements set forth in Federal Rule of Civil Procedure 52.

**I.  INTRODUCTION**

On July 14, 2022, Fitzgerald filed his complaint (ECF No. 1) (the "Complaint") against Ronda McNae ("R. McNae") alleging breach of a Confidential Settlement Agreement entered by the parties on June 15, 2020 (the "Settlement Agreement"). In the Complaint, Fitzgerald alleged that R. McNae breached the Settlement Agreement by contacting Fitzgerald's employer, SoftwareONE; disclosing the terms and conditions of the Settlement Agreement to Fitzgerald's employer; contacting R. McNae's husband's employer, Microsoft, and disclosing the Settlement Agreement to R. McNae's husband's employer, Microsoft; disparaging Fitzgerald by wrongfully

and falsely accusing him of a crime; posting about Fitzgerald and the Settlement Agreement on her Instagram account and her Medium.com blog account; and disparaging Fitzgerald on her Instagram account and her Medium.com blog account (ECF No. 1).

Fitzgerald filed an Amended Complaint on December 30, 2022 (ECF No. 27) and added additional tort claims against R. McNae.[1] On October 24, 2023, this Court granted in part and denied in part Defendants' Motion to Dismiss (ECF No. 100, amending ECF No. 84). The Court dismissed all of Fitzgerald's tort claims against R. McNae, leaving Count I – Breach of Contract. R. McNae asserted various affirmative defenses; however, all of R. McNae's defenses were stricken but for the defenses of duress and failure to mitigate damages (ECF No. 179). On summary judgment, this Court found that the Settlement Agreement constitutes a valid agreement and that R. McNae materially breached the Settlement Agreement at least ten (10) times (ECF No. 310). The Court further held that Fitzgerald suffered at least nominal damages as a result of R. McNae's breaches. *Id.* Finally, this Court held that R. McNae's duress defense failed since the facts of this case do not show that R. McNae signed the Settlement Agreement involuntarily or that there was improper external pressure, and because R. McNae suggested signing the agreement in the first place. *Id.* at 9. Additionally, R. McNae's claim that she was suffering from PTSD and anxiety were held to be insufficient to establish duress. *Id.*

Partial summary judgment as to liability, causation and nominal damages was granted in favor of Plaintiff Fitzgerald and this case was ordered to proceed to trial to determine the amount of damages. *Id.* at 10. A bench trial took place on April 9-10, 2025.

---

[1] The Amended Complaint also named McNae's husband, William McNae, for breach of contract and tort claims (ECF NO. 27). However, Mr. McNae's motion to dismiss without prejudice was granted and Fitzgerald is currently pursuing his breach of contract claim against Mr. McNae in the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. *2023-025855-CA-01* (ECF No. 178 at 8, *affirmed and adopted* at ECF No. 195).

## II.   FINDINGS OF FACT

### R. McNae's Social Media Presence and Following

1. Defendant R. McNae is a social media influencer and internet blogger.

2. Defendant R. McNae has over twenty-four thousand followers on her public Instagram account @rondamcnae.

3. Defendant R. McNae writes blog articles on Medium.com, including articles indirectly referring to Fitzgerald.

### Fitzgerald's Pre-Breach Career and Reputation in Technology and Software Industries

4. Starting in 2016, Fitzgerald was an employee of SoftwareONE UK, Ltd. ("SoftwareONE").  *See* Exhibit 1 in Evidence.

5. Fitzgerald's starting salary was 150,000 Great British Pounds. *See* Exhibit 1 in Evidence; Exhibit 9 in Evidence.

6. Fitzgerald received a salary raise each year he was employed by SoftwareONE. *See* Exhibit 9 in Evidence; Exhibit 10 in Evidence.

7. In addition to salary, Fitzgerald also earned quarterly and/or annual bonuses each year. *See* Exhibit 10 in Evidence.

8. Fitzgerald was a high-level executive in SoftwareONE, and was critical in the success of SoftwareONE, assisting in bringing the company public and planning its future business strategy thereafter.

9. As part of Fitzgerald's job responsibilities as a C-suite executive, Fitzgerald spent a great majority of his time travelling outside of the UK to other countries to work on, and maintain, business relationships with SoftwareONE's various partners, including Microsoft Corporation ("Microsoft"), Amazon World Services ("AWS"), and others.

3

10. R. McNae's husband, William McNae ("W. McNae") was an employee of Microsoft and knew Fitzgerald from the SoftwareONE-Microsoft partnership.

11. Before and during his time at SoftwareONE, Plaintiff Fitzgerald sat on advisory boards for companies such as Microsoft, VMWare, Trend Micro, and AWS.

12. Plaintiff Fitzgerald has been a trusted advisor to CEOs of the technology and software industries' brightest minds, such as Patrick Gelsinger (former CEO of Intel and VMWare), Kentaro Kawamori (Persefoni), Dieter Schlosser (SoftwareONE) and Patrick Winter (SoftwareONE).

13. Prior to working at SoftwareONE, Plaintiff Fitzgerald had developed with several partners a United Kingdom based technology and software business called Innov8.

14. The success of Innov8 is what attracted then SoftwareONE CEO Patrick Winter to bring Plaintiff Fitzgerald into the C-suite of SoftwareONE.

15. While at SoftwareONE, Persefoni CEO Kentaro Kawamori had offered Plaintiff Fitzgerald a position on the Board of Directors of Persefoni.

16. While at SoftwareONE, Plaintiff Fitzgerald was offered C-suite positions at companies such as IBM and Ernst & Young.

17. On June 15, 2020, R. McNae, W. McNae, and Fitzgerald entered into a Confidential Settlement Agreement (the "Confidential Settlement Agreement," Exhibit 11 in Evidence).

18. Fitzgerald paid R. McNae $97,000 and other consideration in exchange for R. McNae's promises pursuant to the Confidential Settlement Agreement. *See* Exhibit 11 in Evidence.

19. The Confidential Settlement Agreement has a prevailing party attorneys' fees

provision, which states:

> In connection with any litigation arising out of this Agreement or I any way related to this Agreement, the prevailing party shall be entitled to recover all costs incurred including, but not limited to, its reasonable attorneys' fees at any level (trial, appeal, bankruptcy, administrative), including fees spent in litigation over entitlement or amount of such fees.

*See* Exhibit 11 in Evidence at ¶23.

20. At the time the Confidential Settlement Agreement was entered, Fitzgerald had a stellar reputation within the technology and software industry and was instrumental in bringing SoftwareONE public.

21. By 2022, Fitzgerald's performance at SoftwareONE was at an all-time high. In March 2022, Fitzgerald's salary was raised 43.5% from 220,000 Great British Pounds to 330,000 Great British Pounds. *See* Exhibit 2 in Evidence.

22. Fitzgerald received his 2022 Salary Review Letter, which indicated "as a result of your hard work," his salary would be adjusted as follows: Base salary at 330,000 Great British Pounds, Quarterly Bonus of 100,000 Great British Pounds, and Annual Bonus of 120,000 Great British Pounds. *See* Exhibit 2 in Evidence.

23. After entering the Confidential Settlement Agreement, in December 2021, in addition to being Chief Technology Officer of SoftwareONE, Fitzgerald was made the President and General Manager of Goatpath, a new software division at SoftwareONE.

24. SoftwareONE intended to spin Goatpath off into a separate company, of which Fitzgerald would be CEO.

25. Prior to R. McNae's breaches of the Confidential Settlement Agreement, Fitzgerald had an excellent reputation within SoftwareONE and the technology industry as an influential leader, team player, and future CEO.

26. Fitzgerald had spent over six years building his excellent reputation at SoftwareONE.

27. Prior to R. McNae's breaches of the Confidential Settlement Agreement, Fitzgerald's career was on the rise and his reputation and earning potential in the technology and software industries was exceptional.

### Fitzgerald's Earned and Expected Compensation

28. Fitzgerald was compensated by SoftwareONE in base salary, quarterly bonuses, annual bonuses, Performance Share Units, Long-Term Incentives, commissions, and various discretionary bonuses.

29. In 2022, Fitzgerald was receiving in salary and bonuses alone 550,000 Great British Pounds, or in excess of $700,000, per year. *See* Exhibit 2 in Evidence.

30. On March 25, 2022, Fitzgerald had earned a Long-Term Incentive of 242,879 Swiss Francs, or $274,453.27, based on his past performance. *See* Exhibit 8 in Evidence.

31. Fitzgerald earned Performance Share Units in SoftwareONE in 2020, 2021, and 2022. *See* Exhibit 5 in Evidence; Exhibit 6 in Evidence; and Exhibit 7 in Evidence.

32. A Performance Share Unit is a type of equity compensation that grants employees shares of stock if specific performance targets are achieved within a set period, aligning employee incentives with company success. *See* Exhibit 10 in Evidence.

33. Performance Share Units are a promise from a company to issue stock to employees in the future, contingent on meeting certain performance goals. *See* Exhibit 10 in Evidence.

34. Pursuant to SoftwareONE's PSU Share Plan Regulations, Fitzgerald was granted Performance Share Units that vested after a three-year period. *See* Exhibits 4 in Evidence; Exhibit

5 in Evidence; Exhibit 6 in Evidence; and Exhibit 7 in Evidence.

35. SoftwareONE granted Fitzgerald 5,714 Performance Share Units in 2020. *See* Exhibit 4 in Evidence; Exhibit 5 in Evidence; and Exhibit 10 in Evidence.

36. SoftwareONE granted Fitzgerald 6,694 Performance Share Units in 2021. *See* Exhibit 4 in Evidence; Exhibit 6 in Evidence; and Exhibit 10 in Evidence.

37. SoftwareONE granted Fitzgerald 18,843 Performance Share Units in 2022. *See* Exhibit 4 in Evidence; Exhibit 7 in Evidence; and Exhibit 10 in Evidence.

38. The total of Fitzgerald's granted Performance Share Units in 2020, 2021 and 2022 was 31,251. *See* Exhibit 4 in Evidence; Exhibit 10 in Evidence.

39. The Court finds Plaintiff Michael Fitzgerald would have received his entire quarterly and annual bonuses because: (a) Fitzgerald's salary was increased by 43.5% in 2022, (b) Fitzgerald received more than three times the amount of Performance Share Units in 2022 than the amount he earned in 2020, and (c) Fitzgerald was granted a Long-Term Incentive of 242,879 Swiss Francs in March of 2022. *See* Exhibit 2 in Evidence; Exhibit 4 in Evidence; and Exhibit 8 in Evidence. This is strong evidence of Plaintiff Michael Fitzgerald's growth within SoftwareONE and excellent performance and reputation.

### R. McNae Breaches the Settlement Agreement

40. After entering the Confidential Settlement Agreement and promising not to communicate with SoftwareONE, R. McNae accused Fitzgerald of a heinous crime and demanded that SoftwareONE conduct an internal review into Fitzgerald.

41. R. McNae told SoftwareONE that Fitzgerald violated SoftwareONE's code of conduct and Microsoft and SoftwareONE's gift giving policies by paying for the McNae's flights and hotels.

42. Fitzgerald was put on paid leave in July 2022 while SoftwareONE conducted an internal review, at R. McNae's request. *See* Exhibit 3 in Evidence.

43. During the period of paid leave, Fitzgerald reasonably felt, and was in fact rendered, irrelevant in the industry that he had participated in building and in which he was a leader.

44. As a consequence of R. McNae's breaches, Fitzgerald amicably separated from SoftwareONE due to the R. McNae-induced internal review and paid leave.

45. Fitzgerald no longer received his salary or benefits after December 31, 2022.

**Facts Supporting Economic Harm: Quarterly and Annual Bonuses**

46. Fitzgerald was due to be paid by SoftwareONE 25,000 Great British Pounds for his Third Quarter 2022 quarterly bonus. *See* Exhibit 2 in Evidence.

47. Fitzgerald did not receive the 25,000 Great British Pounds for his Third Quarter 2022 quarterly bonus that he was due. *See* Exhibit 10 in Evidence.

48. Fitzgerald was due to be paid by SoftwareONE 25,000 Great British Pounds for his Fourth Quarter 2022 quarterly bonus. *See* Exhibit 2 in Evidence.

49. Fitzgerald did not receive the 25,000 Great British Pounds for his Fourth Quarter 2022 quarterly bonus that he was due. *See* Exhibit 10 in Evidence.

50. Fitzgerald was due to be paid by SoftwareONE 120,000 Great British Pounds for his annual bonus in 2022. *See* Exhibit 2 in Evidence.

51. Fitzgerald did not receive the 120,000 Great British Pounds for his 2022 annual bonus that he was due. *See* Exhibit 10 in Evidence.

52. The total amount of the bonuses that Fitzgerald did not receive was 170,000 Great British Pounds, or $219,300.00. *See* Exhibit 10 in Evidence.

### Facts Supporting Economic Harm: Performance Share Units

53. Of the 31,251 Performance Share Units granted Fitzgerald, only 13,512 were vested by December 31, 2022. *See* Exhibit 4 in Evidence; Exhibit 10 in Evidence.

54. Fitzgerald lost 17,739 Performance Share Units. *See* Exhibit 10 in Evidence.

55. The value of the lost Performance Share Units was 138,008 Swiss Francs, or $155,950.00. *See* Exhibit 10 in Evidence.

### Facts Supporting Economic Harm: Recovery of Consideration

56. Fitzgerald paid $97,000.00 to R. McNae in exchange for her promises of confidentiality and non-disparagement pursuant to the Confidential Settlement Agreement. *See* Exhibit 11 in Evidence.

### Facts Supporting Fitzgerald's Reputational Harm

57. Before Fitzgerald was on paid leave, he was receiving salary and bonuses of 550,000 Great British Pounds, or in excess of $700,000.00, per year. *See* Exhibit 2 in Evidence.

58. Fitzgerald was a leader in the software and technology industries.

59. It will take five to six years for Fitzgerald to rehabilitate the reputational harm caused by R. McNae's breaches.

60. Even assuming Fitzgerald received no raises from 2022 forward, five to six years of salary and bonuses to Fitzgerald equals $3.5 million to $4.2 million.

61. During the time of Fitzgerald's paid leave, he was unable to perform any work or communicate with any colleagues, partners or customers, nor attend any company premises or work events. *See* Exhibit 3 in Evidence.

62. Goatpath failed due to Fitzgerald's inability to build it as planned during his paid leave.

63. During his paid leave, Fitzgerald's colleagues, partners and customers felt confused, angry and abandoned due to Fitzgerald's absence.

64. During his paid leave, rumors grew about Fitzgerald's sudden disappearance from work.

65. During his paid leave, Fitzgerald's colleagues began to avoid Fitzgerald and assumed the worst.

66. It was well known and understood by Fitzgerald's work colleagues, customers and vendors that Fitzgerald's absence during his paid leave was not due to his performance as it was well known that Fitzgerald's performance was excellent.

67. Fitzgerald's work colleagues, customers and vendors assumed that his disappearance was due to a personal and unfavorable matter.

68. Rumors about Fitzgerald and R. McNae circulated both within SoftwareONE and among the industry to customers and partners, including Microsoft.

69. Rumors regarding Fitzgerald were spread stating that he committed a heinous and morally offensive act.

70. Among the rumors spread was that Fitzgerald was removed from SoftwareONE due to an incident involving a woman connected to Microsoft.

71. It was well known that Fitzgerald's career was on a meteoric rise and that his disappearance was not performance related.

72. The technology industry is largely based on relationship-building and customer relations.

73. Fitzgerald's sudden departure and disappearance resulted in a loss of trust by customers, feelings of abandonment by his colleagues, and anger amongst those hired by Fitzgerald.

74. Former colleagues have avoided Fitzgerald.

75. Upon receiving a subpoena for documents in this lawsuit, Persefoni CEO Kentaro Kawamori withdrew a previous offer to Plaintiff Fitzgerald to be on the Board of Directors of Persefoni.

76. Fitzgerald's former Chief of Staff, Lauren Lefler, was told that he raped someone, and she has avoided him since.

77. Fitzgerald suffered reputational harm both in the industry he spent his life working in, and at SoftwareONE, which he dedicated his professional life building.

78. Fitzgerald went from being a thought leader at the top of his industry with an excellent and stellar reputation to someone who became thought of as ignorant, rude or irrelevant.

79. Fitzgerald has been rendered irrelevant in the industry he was once poised to lead.

80. R. McNae's public disparagement of Fitzgerald on her public Instagram and Medium.com blog to her 24,000+ followers, many of whom are also in the technology and software industries, further damaged Fitzgerald's reputation.

**Fitzgerald's Attempts at Further Employment and Starting his Own Business**

81. After separating from SoftwareONE, Fitzgerald made numerous attempts to seek further employment.

82. Fitzgerald applied for several C-Suite positions at other technology and software companies.

83. Fitzgerald felt ethically obliged to advise them about his lawsuit with R. McNae,

11

which resulted in him not receiving any follow-up interviews or job offers.

84. Fitzgerald's attempts failed due to his damaged reputation and that public companies will not hire C-suite executives that are involved with open litigation such as this matter.

85. Public companies cannot take on the risk of hiring, or lending to, someone such as Fitzgerald with allegations made against him by R. McNae, as public companies have ethical obligations to their board to reveal such information.

86. Fitzgerald did not apply for any lower-level positions within the software or technology industries, because Fitzgerald was overqualified, and his skills far exceeded those needed for lower-level positions. This was reasonable.

87. When Fitzgerald realized that he was not hirable, he decided to start his own company.

88. Fitzgerald sought financing from Rice Investment Group for his new business.

89. Rice Investment Group is an investment fund that invests in technology and software startup businesses.

90. Once Rice Investment Group found out about Fitzgerald's lawsuit with Defendant R. McNae, and her accusations against Fitzgerald, Rice Investment Group withdrew its interest in providing financing to Fitzgerald's startup business.

**III.   CONCLUSIONS OF LAW**

1. Plaintiff Fitzgerald made all reasonable attempts practicable to mitigate any damages he has incurred as a result of Defendant Ronda McNae's breaches of the Confidential Settlement Agreement.

2. Defendant Ronda McNae failed to meet her burden of proof as to her mitigation of damages affirmative defense.

3. With respect to the Confidential Settlement Agreement, Plaintiff Michael Fitzgerald paid Defendant Ronda McNae $97,000.00 as consideration and did not receive the benefit of his bargain. *See* Exhibit 10 in Evidence; Exhibit 11 in Evidence.

4. Fitzgerald is entitled to recover economic damages from Defendant R. McNae in the amount of $97,000.00 for the consideration paid to R. McNae pursuant to the Confidential Settlement Agreement. *See* Exhibit 10 in Evidence.

5. R. McNae's breaches of the Confidential Settlement Agreement caused Fitzgerald economic damages as to his lost quarterly bonuses, lost annual bonus and lost value of Performance Share Units. *See* Exhibit 10 in Evidence.

6. The Court concludes that but for Defendant R. McNae's breaches of the Confidential Settlement Agreement, Plaintiff Michael Fitzgerald would have received his entire quarterly and annual bonuses because: (a) Fitzgerald's salary was increased by 43.5% in 2022, (b) Fitzgerald received more than three times the amount of Performance Share Units in 2022 than the amount he earned in 2020, and (c) Fitzgerald was granted a Long-Term Incentive of 242,879 Swiss Francs. *See* Exhibits 2 in Evidence; Exhibit 4 in Evidence; Exhibit 8 in Evidence; and, Exhibit 10 in Evidence.

7. The Court concludes there is clear and convincing evidence (though the standard is the preponderance of the evidence) demonstrating Plaintiff Michael Fitzgerald's growth within SoftwareONE and excellent performance and reputation prior to Defendant Ronda McNae's breaches of the Confidential Settlement Agreement.

8.      Fitzgerald was put on paid leave as a direct and proximate result of Defendant Ronda McNae's breaches of the Confidential Settlement Agreement. *See* Exhibit 3 in Evidence.

9.      As a direct and proximate result of Defendant Ronda McNae's breaches of the Confidential Settlement Agreement, Plaintiff Michael Fitzgerald did not receive his Long-Term Incentive of 242,879 Swiss Francs, or $274,453.27. *See* Exhibit 8 in Evidence.

10.     The total amount of Plaintiff Michael Fitzgerald's lost Long-Term Incentive caused by Defendant Ronda McNae is 242,879 Swiss Francs, or $274,453.27. *See* Exhibit 8 in Evidence.

11.     Plaintiff Michael Fitzgerald is entitled to recover economic damages from Defendant Ronda McNae in the amount of $274,453.27 for his lost Long-Term Incentive. *See* Exhibit 8 in Evidence.

12.     As a direct and proximate result of Defendant Ronda McNae's breaches of the Confidential Settlement Agreement, Fitzgerald was not paid his quarterly bonuses or annual bonus. *See* Exhibit 10 in Evidence.

13.     Plaintiff Michael Fitzgerald did not receive his earned quarterly bonus of 25,000 Great British Pounds in quarter 3 of 2022 as a direct and proximate result of Defendant Ronda McNae's breaches of the Confidential Settlement Agreement. *See* Exhibit 10 in Evidence.

14.     Plaintiff Michael Fitzgerald did not receive his earned quarterly bonus of 25,000 Great British Pounds in quarter 4 of 2022 as a direct and proximate result of Defendant Ronda McNae's breaches of the Confidential Settlement Agreement. *See* Exhibit 10 in Evidence.

15.     Plaintiff Michael Fitzgerald did not receive his earned annual bonus of 120,000 Great British Pounds in 2022 as a direct and proximate result of Defendant Ronda McNae's breaches of the Confidential Settlement Agreement. *See* Exhibit 10 in Evidence.

16. The total amount of Fitzgerald's lost bonuses caused by Defendant Ronda McNae is 170,000 Great British Pounds, or $219,300.00. *See* Exhibit 10 in Evidence.

17. Plaintiff Michael Fitzgerald is entitled to recover economic damages from Defendant Ronda McNae in the amount of $219,300.00 for his lost quarterly and annual bonuses. *See* Exhibit 10 in Evidence.

18. As a direct and proximate cause of R. McNae's breaches of the Confidential Settlement Agreement, Fitzgerald was only able to retain the Performance Share Units in which he had vested as of December 31, 2022. *See* Exhibit 4 in Evidence; Exhibit 10 in Evidence.

19. As a direct and proximate result of Defendant Ronda McNae's breaches of the Confidential Settlement Agreement, Plaintiff Michael Fitzgerald lost the value of 17,739 Performance Share Units valued at 138,008 Swiss Francs, or $155,950.00. *See* Exhibit 4 in Evidence; Exhibit 10 in Evidence.

20. Plaintiff Michael Fitzgerald is entitled to recover economic damages from Defendant Ronda McNae in the amount of $155,950.00 for the lost value of his Performance Share Units. *See* Exhibit 10 in Evidence.

21. Defendant Ronda McNae's breaches of the Confidential Settlement Agreement resulted in economic damages to Plaintiff Michael Fitzgerald in the total amount of $472,250.00 (219,300.00 + $155,950.00 + $97,000.00). *See* Exhibit 10 in Evidence.

22. Defendant Ronda McNae's breaches of the Confidential Settlement Agreement resulted in additional economic damages to Plaintiff Michael Fitzgerald in the amount of $274,453.27 as a result of Fitzgerald not receiving his Long-Term Incentive. *See* Exhibit 8 in Evidence.

23. Defendant Ronda McNae knowingly, willfully and intentionally breached her Confidential Settlement Agreement with Plaintiff Michael Fitzgerald for the purpose of causing him economic and reputational harm.

24. Defendant Ronda McNae damaged Plaintiff Michael Fitzgerald's career in the technology and software industries.

25. Defendant Ronda McNae proximately caused harm to Plaintiff Michael Fitzgerald's reputation within the technology and software industries.

26. Defendant Ronda McNae's breaches of the Confidential Settlement Agreement proximately caused extensive reputational harm to Plaintiff Michael Fitzgerald by posting about him publicly on the Internet.

27. Defendant Ronda McNae's breaches of the Confidential Settlement Agreement proximately caused extensive reputational harm to Plaintiff Michael Fitzgerald by talking about him to his employer, SoftwareONE.

28. Defendant Ronda McNae's breaches of the Confidential Settlement Agreement proximately caused extensive reputational harm to Plaintiff Michael Fitzgerald by talking about him to his Microsoft.

29. The reputational harm caused by Defendant Ronda McNae to Plaintiff Michael Fitzgerald's reputation far exceeds mere nominal damages.

30. Based upon how much salary and bonus Plaintiff Michael Fitzgerald would make in five to six years, $2,000,000.00 is a fair and reasonable value to place on the reputational harm that Defendant Ronda McNae has caused Plaintiff Michael Fitzgerald.

31. Defendant Ronda McNae's breaches of the Confidential Settlement Agreement caused Plaintiff Michael Fitzgerald significant and lasting reputational harm within the technology and software industries.

32. Defendant Ronda McNae's breaches damaged Plaintiff Michael Fitzgerald's reputation among his colleagues, partners and customers.

33. Accusations so offensive and depraved such as that made by Defendant Ronda McNae about Plaintiff Michael Fitzgerald cause long lasting, if not permanent, damage to a person's (such as Plaintiff Michael Fitzgerald) reputation.

34. The damage to Plaintiff Michael Fitzgerald's reputation as a result of Defendant Ronda McNae's breaches of the Confidential Settlement Agreement is $2,000,000.00.

35. Plaintiff Michael Fitzgerald is entitled to reputational damages from Defendant Ronda McNae in the amount of $2,000,000.00.

36. Plaintiff Michael Fitzgerald is entitled to entry of a final judgment against Defendant Ronda McNae for his economic damages of $472,250.00 plus post-judgment interest.

37. Plaintiff Michael Fitzgerald is entitled to entry of a final judgment against Defendant Ronda McNae for additional economic damages of $274,453.27 for his Long-Term Incentive plus post-judgment interest.

38. Plaintiff Michael Fitzgerald is entitled to entry of a final judgment against Defendant Ronda McNae for non-economic damages of $2,000,000.00 plus post-judgment interest.

39. Plaintiff Michael Fitzgerald has proven his damages by a preponderance of the evidence.

40. Plaintiff Michael Fitzgerald is the prevailing party on all issues as to Defendant Ronda McNae.

41. Plaintiff Michael Fitzgerald is entitled to a final judgment against Defendant Ronda McNae for his reasonable attorneys' fees and reimbursable costs plus post-judgment interest pursuant to the Confidential Settlement Agreement. *See* Exhibit 11 in Evidence.

### IV.  CONCLUSION

1. Plaintiff Michael Fitzgerald is entitled to entry of a final judgment against Defendant Ronda McNae for his economic damages of $472,250.00 plus post-judgment interest.

2. Plaintiff Michael Fitzgerald is entitled to entry of a final judgment against Defendant Ronda McNae for additional economic damages of $274,453.27 for his Long-Term Incentive plus post-judgment interest.

3. Plaintiff Michael Fitzgerald is entitled to entry of a final judgment against Defendant Ronda McNae for non-economic damages of $2,000,000.00 plus post-judgment interest.

4. Final Judgment shall enter by separate order.

5. The Clerk is **DIRECTED** to **CLOSE** this case and **DENY** all pending motions as **MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of April 2025.

Copies provided to:
All Counsel of Record

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE