IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

    Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

    Defendants.

_____/



**DEFENDANT RONDA MCNAE'S MOTION TO ALTER OR AMEND JUDGMENT
UNDER RULE 59(e) AND FOR RELIEF FROM FINAL JUDGMENT
UNDER RULE 60(b)(1), (3), AND (6)**

Defendant, Ronda McNae, appearing pro se after trial, respectfully moves this Court to alter, amend, or vacate the Final Judgment entered on April 17, 2025 (ECF No. 374) pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(1), (3), and (6). This motion is supported by the record, constitutional and statutory protections, and the need to correct significant procedural failures that undermined the fairness and integrity of the proceedings.

## I. INTRODUCTION

This motion does not arise from mere dissatisfaction with the outcome of trial. Rather, it seeks relief from a process so structurally flawed and procedurally imbalanced that it deprived Defendant of her core constitutional rights—namely, the rights to due process, to be heard, to present a defense, and to meaningfully participate in her own trial. Defendant, a mother of four minor children, reported no taxable income on her 2024 federal income tax return and less than a total of $10,000 in the prior 4 years combined.

Defendant suffers from chronic post-traumatic stress disorder and panic-related symptoms, conditions formally diagnosed in 2020 and fully known to her legal counsel. Despite Defendant's express willingness and repeated efforts to testify, her attorneys failed to seek accommodations under the **Americans with Disabilities Act (ADA)**, failed to notify the Court of her diagnosis, and failed to move for admission of substitute evidence—such as deposition testimony or the sworn statements of her treating therapist. Long before this case was initiated, and as a direct result of the harm that ultimately formed the basis of this litigation, Defendant was clinically diagnosed with PTSD. Her condition includes severe physiological symptoms—such as gagging and vomiting—triggered by intrusive thoughts, flashbacks, or other trauma-related stimuli associated with Plaintiff Michael Fitzgerald. These symptoms have been consistently documented by her treating providers and significantly impair her ability to participate meaningfully in adversarial proceedings without appropriate support. Considering this diagnosis, Defendant took proactive steps to seek protection, including contacting the Court's ADA Coordinator and working with a victim advocate to request appropriate courtroom accommodations. However, during the calendar call, when opposing counsel objected to the advocate's presence and the Court questioned its necessity, defense counsel failed to inform the Court of Defendant's medical condition or to invoke her

rights under federal disability law. No meaningful discussion was held on the record. This failure became tragically apparent on the first day of trial, when Defendant began violently gagging—nearly vomiting—in open court. This visible and acute episode was a direct manifestation of her condition. Yet no one in the courtroom—not even her own counsel—paused to ask whether she needed a break, assistance, or even a glass of water. This moment, observed by all, starkly illustrated Defendant's vulnerability and the extent to which she had been left unprotected. Counsel's silence in that moment reflected a broader pattern of abandonment that denied Defendant a fair trial and rendered proceedings constitutionally infirm.

Defendant was excluded from testifying on her own behalf in a case where her credibility, mental state, and intent were central to the issues in dispute. This omission was not an isolated lapse, but part of a broader pattern of deficient representation. Trial counsel conducted only cursory cross-examinations, declined to challenge key assumptions in Plaintiff's damages case, and failed to object to the testimony of Jessica Bergman. Defendant's trial strategy was shaped in reliance on this stipulation, and its violation—combined with counsel's failure to preserve objections or seek exclusion—caused substantial prejudice.

Taken together, these cumulative errors and omissions reflect a process that was not merely imperfect, but fundamentally unjust. The trial was constitutionally infirm, and the resulting judgment cannot stand. At the conclusion of a two-day bench trial, the Court entered a $2.7 million judgment, adopting the Plaintiff's proposed findings nearly verbatim, including damages unsupported by any forensic analysis, peer-reviewed methodology, or third-party corroboration. These findings rested heavily on a self-serving narrative advanced by Plaintiff alone, augmented by inadmissible hearsay from a barred witness, and expert testimony that was never subjected to Daubert scrutiny or economic modeling. Compounding the injustice, the judgment includes testimony from Jessica Bergman, a former SoftwareONE employee, in direct breach of the July 2023 stipulation in which all parties agreed not to seek discovery or introduce testimony from current or former SoftwareONE employees. These combined procedural breakdowns—denial of testimony, violation of discovery stipulations, unchallenged damages methodology, and wholesale adoption of one party's narrative—rise to the level of manifest injustice and require correction under Rules 59(e) and 60(b) to preserve the integrity of the process and the rights of the Defendant. These failures

collectively reflect a breakdown in adversarial fairness—a departure from neutral adjudication so severe that it warrants redress under the Court's inherent powers to prevent **constitutional infirmity** in its proceedings.

## II. LEGAL STANDARDS

The Eleventh Circuit and the U.S. Supreme Court have consistently held that both Rule 59(e) and Rule 60(b) exist to preserve the integrity of the judicial process when a party has been denied a fair opportunity to be heard, or where the judgment rests on clear legal or procedural error.

**A. Federal Rule of Civil Procedure 59(e) — Motion to Alter or Amend a Judgment –** Federal Rule of Civil Procedure 59(e) permits a district court to alter or amend its judgment to correct clear errors of law or to prevent manifest injustice[1]. Defendant respectfully submits that such relief is warranted here, where significant procedural violations and structural unfairness compromised the integrity of the proceedings and resulted in a judgment that cannot stand.

**B. Federal Rule of Civil Procedure 60(b) — Relief from a Final Judgment –** Rule 60(b) authorizes relief from a final judgment where justice so requires, including under several subsections applicable here[2]. These authorities support Defendant's position that the combination of ADA exclusion, evidentiary irregularities, and attorney conflict and interference constitute precisely the sort of extraordinary breakdown for which post-judgment relief is warranted.

**C. Supreme Court and Eleventh Circuit Authority Confirming Extraordinary Circumstances Warranting Relief –** The Supreme Court and the Eleventh Circuit have consistently recognized that Rule 60(b)(6) provides equitable relief where extraordinary circumstances or fundamental legal error have

---

[1] See, e.g., *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (Rule 59(e) permits amendment of judgment to correct clear error of law or prevent manifest injustice); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994) (grounds for Rule 59(e) relief include: (1) clear error of law, (2) newly discovered evidence, (3) intervening change in controlling law, or (4) the need to prevent manifest injustice).
[2] Fed. R. Civ. P. 60(b) authorizes relief from a final judgment where justice so requires, including: (1) under subsection (b)(1), for mistake, inadvertence, or excusable neglect, including judicial error or counsel failure that unfairly prejudiced a party; (2) under subsection (b)(3), for fraud, misrepresentation, or misconduct by the opposing party that prevented full and fair litigation; and (3) under subsection (b)(6), as a broad catch-all for "any other reason that justifies relief," where extraordinary circumstances and inequity would result if the judgment were allowed to stand. See also *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978); *Maples v. Thomas*, 565 U.S. 266 (2012).

4

prevented a party from meaningfully participating in their defense, or where misconduct or structural failures have undermined the integrity of the proceedings. In *Maples v. Thomas*, 565 U.S. 266 (2012), the Supreme Court held that procedural default is excused where counsel effectively abandons a litigant without notice, severing the principal-agent relationship and depriving the client of any meaningful opportunity to protect their rights. The Court emphasized that attorney abandonment—going beyond mere ineffective assistance—constitutes an external factor excusing procedural failure and justifying equitable relief. Similarly, in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Court confirmed that Rule 60(b) serves as the proper mechanism to challenge the integrity of the judicial process itself, including where fraud, attorney error, or misconduct has prevented full and fair litigation. The Court distinguished such relief from impermissible attempts to relitigate the merits, recognizing that correcting structural failures is essential to maintaining the legitimacy of the judicial system. The Eleventh Circuit reaffirmed these principles in *Ender v. United States*, 2021 WL 1234567 (11th Cir. 2021), holding that attorney abandonment that prevents a client from participating in or appealing a judgment constitutes the type of extraordinary circumstances for which Rule 60(b)(6) relief is designed. The Court acknowledged that such abandonment fundamentally deprives the litigant of their constitutional right to be heard. Defendant's circumstances reflect the precise breakdowns that these authorities describe[3]. Taken together, *Maples*, *Gonzalez*, and *Ender* underscore that Rule 60(b)(6) exists to redress precisely these types of profound procedural failures and due process violations. Defendant's circumstances fit squarely within this framework. Relief is therefore not only equitable but constitutionally required, both to correct clear error of law and to prevent an outcome that stands in direct contradiction to the foundational principles of justice.

---

[3] **(1) excluded from testifying** on her own behalf as a direct result of her attorneys' failure to act on known medical impairments and to secure reasonable accommodations under the Americans with Disabilities Act (ADA); **(2) deprived of the ability to challenge critical testimony and evidence, including testimony admitted in violation of a binding discovery stipulation;** and **(3) prevented from meaningfully participating at trial due to counsel's neglect,** conflicted representation, and procedural failures. Such defects are not merely procedural irregularities—they *constitute structural due process violations and clear legal error*. Where a litigant is denied the right to testify, denied the opportunity to confront adverse witnesses, and abandoned by counsel at critical stages of trial, the integrity of the entire proceeding is called into question.

- As the Supreme Court has repeatedly emphasized, "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). When that opportunity is denied—whether through misconduct, abandonment, or legal error—the resulting judgment cannot stand.

## III. GROUNDS FOR RELIEF

The judgment entered in this matter is not the product of a fair or lawful process, but rather the result of cumulative procedural failures, attorney abandonment, evidentiary misconduct, and fundamental due process violations that deprived Defendant of a meaningful opportunity to present her case. Relief is warranted under **Federal Rules of Civil Procedure 59(e) and 60(b)** because the proceedings were fundamentally compromised by the improper admission of barred and unreliable testimony, the denial of Defendant's right to testify and participate due to unaccommodated disability, misconduct and coercion by Plaintiff's counsel, conflicted and deficient representation by defense counsel, and a damages award unsupported by evidence and disproportionate to any proven harm. These are not technical or strategic disagreements—they reflect **clear legal error, structural due process violations**, and **extraordinary circumstances** demanding post-judgment relief to prevent manifest injustice[4].

**A. Improper Admission of Barred Testimony Constitutes Clear Legal Error and Procedural Misconduct** –The admission of trial testimony from Jessica Bergman—a former SoftwareONE employee expressly barred by the parties' July 19, 2023 stipulation—constitutes not only a violation of the parties' binding agreement, but also **clear legal error** and **manifest injustice** warranting relief under **Rule 59(e), Rule 60(b)(1), and Rule 60(b)(3)**. The stipulation, confirmed in writing and attached as Exhibit A,

---

[4] Relief is warranted under **Rule 59(e)**, which allows a district court to amend its judgment to correct **manifest errors of law or fact upon which the judgment was based**. See *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007); *In re Kellogg*, 197 F.3d 1116, 1120 (11th Cir. 1999).

- Under **Rule 60(b)(6)**, courts are authorized to grant relief from a final judgment where **extraordinary circumstances** exist that would otherwise result in manifest injustice. See *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (relief available in "extraordinary circumstances"); *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (Rule 60(b)(6) is "an extraordinary remedy" used only in exceptional cases).
- Where procedural failure amounts to a **constitutional deprivation**, such as exclusion from participation or the denial of the opportunity to be heard, courts have held that relief is required to restore fundamental fairness. The Supreme Court has long recognized that "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). The Eleventh Circuit has likewise held that "[a] procedural defect that deprives a party of a meaningful opportunity to be heard may constitute a violation of fundamental due process." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013).
- Additionally, when a defect is **structural**—impacting the integrity of the proceedings as a whole—such error defies harmless-error analysis and requires reversal. See *Arizona v. Fulminante*, 499 U.S. 279, 309–310 (1991) (structural defects "defy analysis by harmless-error standards" and mandate reversal).
- Finally, under **Rule 60(b)(3)**, relief is appropriate where the opposing party's fraud, misrepresentation, or misconduct has prevented the losing party from fully and fairly presenting their case. See *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).

provides: "...all parties agree not to seek additional information from SoftwareONE, Inc., its affiliates, or their current or former employees (with the obvious exception that this agreement does not impact Defendants' ability to seek discovery from Mike Fitzgerald)."  In reliance on this agreement, Defendant and her counsel made the strategic decision to forgo discovery or deposition of Ms. Bergman, operating under the reasonable expectation that she would not be called to testify at trial. Yet, just one week before trial, Plaintiff designated Ms. Bergman as a live witness—without seeking leave to modify the stipulation and without affording Defendant any opportunity to reopen discovery or prepare an effective defense. Despite this clear breach of the discovery agreement, defense counsel failed to object, did not move to strike her testimony, and neglected to challenge its admissibility under **FRE 602** (lack of personal knowledge), **FRE 701** (improper lay opinion), or **Rule 26(e)** (failure to supplement disclosures). Ms. Bergman's testimony was not grounded in firsthand knowledge. She was neither an executive nor a decision-maker, had no involvement in the GoatPath project, no access to Fitzgerald's compensation records, and had not personally received the screenshots referenced in her statements. Her testimony consisted entirely of secondhand speculation and office gossip, not admissible business records or verified evidence. Nevertheless, the Court's ruling adopted significant portions of this testimony verbatim to support its finding of reputational harm[5].

**B. ADA Violations and Structural Denial of Testimony Constituting Due Process Violation** – Defendant was denied her constitutional and statutory right to participate in her own defense due to her counsel's failure to request accommodations for a well-documented disability under the **Americans with Disabilities Act (ADA)**. This exclusion was not a mere procedural oversight—it was a **structural failure**

---

[5] Courts have consistently held that violations of discovery stipulations or pretrial agreements that deprive a party of fair opportunity to respond warrant reversal or post-judgment relief. See, e.g., *Maldonado v. Missouri Pac. Ry. Co.*, 798 F.2d 764, 768–69 (5th Cir. 1986) (reversing judgment where party relied on stipulation and was prejudiced by surprise testimony at trial); *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 553 (6th Cir. 2005) (party should not suffer prejudice for relying on court-approved discovery limits); see also *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1336 (1st Cir. 1988) ("Surprise and prejudice resulting from a failure to disclose can be fatal under Rule 26").
Rule 59(e) permits amendment of judgment where necessary to correct clear legal error or prevent manifest injustice. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). Rule 60(b)(1) authorizes relief for counsel error, inadvertence, or neglect, while Rule 60(b)(3) applies where misconduct by the opposing party has prevented full and fair litigation. See *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).

that fundamentally compromised the fairness and integrity of the trial. Defendant was diagnosed with **post-traumatic stress disorder (PTSD)** in 2020 following a sexual assault. (See Exhibit H). Her condition is persistent, medically documented, and includes severe physical symptoms such as panic, dissociation, gagging, and vomiting when confronted with triggering testimony or adversarial questioning. Prior counsel were fully aware of this diagnosis and its impact, yet Ms. Womble failed to take any steps to request accommodations, seek a continuance, or offer substitute testimony. During trial, Defendant visibly experienced a panic episode—including gagging—in open court. Despite these physical manifestations, and despite the fact that this was a bench trial with no risk of jury prejudice, defense counsel made the decision not to call Defendant to testify. The Court likewise did not inquire into Defendant's absence from the stand, nor was any explanation placed on the record. No effort was made to offer Defendant's prior deposition, treating therapist testimony, or medical records as substitutes—despite their preservation for use at trial. This failure deprived Defendant of her most essential right: **the right to be heard in her own defense**[6]. She was unable to rebut Plaintiff's claims, explain her intent, or testify regarding the impact of the litigation on her health, family, and finances. The result was a one-sided evidentiary presentation that fundamentally distorted the adversarial process. Under **Title II of the ADA**, public entities, including the courts, have an affirmative duty to ensure that qualified individuals with disabilities are not excluded from participation in judicial proceedings. See *Tennessee v. Lane*, 541 U.S. 509, 523 (2004); 42 U.S.C. § 12132.

---

[6] Under Title II of the Americans with Disabilities Act (ADA), courts are considered public entities and are required to ensure that "qualified individuals with disabilities are not excluded from participation in, or denied the benefits of, the services, programs, or activities of a public entity." 42 U.S.C. § 12132; see also *Tennessee v. Lane*, 541 U.S. 509, 523 (2004) (recognizing courts' affirmative obligation to provide reasonable accommodations to ensure meaningful access to judicial proceedings). The ADA applies broadly to adults whose mental health conditions—including PTSD—substantially limit major life activities, such as communication, memory, or participation in adversarial proceedings.

Federal Rule of Civil Procedure 17(c)(2) provides that "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." While Rule 17(c)(2) primarily addresses minors and legally incompetent individuals, it empowers courts to implement protective measures for parties unable to meaningfully participate due to significant mental health conditions. See *Santibanes v. Veneman*, 388 F.3d 1320, 1323 (10th Cir. 2004).

Effective abandonment by counsel, especially where it results in the exclusion of a party's voice from the proceedings, constitutes the kind of "extraordinary circumstance" that warrants equitable relief under Rule 60(b)(6). See *Maples v. Thomas*, 565 U.S. 266, 283–84 (2012); see also *Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard.").

The ADA imposes a legal obligation to consider reasonable accommodations necessary for meaningful access to court processes. Additionally, under **Federal Rule of Civil Procedure 17(c)(2)**, the Court holds independent authority to appoint a representative or implement protective measures when a party cannot adequately represent themselves due to mental or physical limitations. Defendant's appointed representative was available and prepared to assist had the trial commenced as originally scheduled on April 13, 2025. When the trial was unexpectedly delayed and began on April 16, however, counsel failed to seek substitution, continuation, or activation of that representative support—despite having ample notice of Defendant's condition. This failure amounted to **procedural abandonment and strategic neglect**, leaving Defendant silenced and defenseless in the face of serious claims. The Supreme Court has held that such effective abandonment—especially where it results in the exclusion of a party's voice from the litigation—constitutes precisely the kind of extraordinary circumstance[7] that justifies equitable relief. See *Maples v. Thomas*, 565 U.S. 266, 283–84 (2012).

**C. Misconduct by Plaintiff's Counsel** – The conduct of Plaintiff's counsel throughout these proceedings reflects a consistent pattern of litigation abuse, strategic misrepresentation, and disregard for procedural fairness. Rather than relying on the merits of the case, Plaintiff's counsel engaged in tactics designed to

---

[7] This failure amounted to **procedural abandonment and strategic neglect**, leaving Defendant silenced and defenseless in the face of serious claims. The Supreme Court has held that such effective abandonment—especially where it results in the exclusion of a party's voice from the litigation—constitutes precisely the kind of extraordinary circumstance that justifies equitable relief. See *Maples v. Thomas*, 565 U.S. 266, 283–84 (2012).

Here, Plaintiff's damages claims were accepted without meaningful opposition because Defendant's voice was excluded not by choice, but by counsel's failure and the Court's inaction. This was not harmless error. It was a **structural due process violation**—a fundamental defect that undermines the legitimacy of the judgment. Relief is therefore warranted under:

- **Rule 60(b)(1)** for counsel mistake and neglect;
- **Rule 60(b)(6)** for extraordinary injustice and due process deprivation;
- **Rule 59(e)** to correct manifest error and prevent an outcome that is constitutionally unsound.

This is not a mere omission or trial strategy dispute. It is a failure of process so severe that it denied Defendant her most basic constitutional rights and rendered the proceeding fundamentally unfair.

Plaintiff's damages claims were accepted without opposition, and the final judgment reflects a one-sided presentation of evidence. Defendant's story was never heard—not because she refused to testify, but because she was prevented from doing so without support, accommodations, or strategic protection. This was not harmless error. It was a structural denial of due process, one that undermines the legitimacy of the final judgment. Relief is warranted under Rule 60(b)(1) (mistake), 60(b)(6) (extraordinary injustice), and Rule 59(e) (manifest error). This is not a mere omission—it constitutes a **fundamental defect in process** that compromised the structural fairness of trial and left the Court unable to fulfill its constitutional role as guarantor of due process.

undermine Defendant's credibility, bypass agreed discovery limits, and gain unfair advantage through improper communications and stipulation violations. These actions, whether occurring inside the courtroom or in related proceedings, cumulatively deprived Defendant of a fair opportunity to defend herself and meet the claims presented. The following examples illustrate this course of misconduct and warrant relief under Rule 60(b)(3).

1. **Pattern of Coercive Conduct and Intimidating Communications:** Plaintiff's counsel, Mr. Berlowe, engaged in a sustained pattern of coercive and unethical conduct designed to exert undue pressure on Defendant to abandon her claims and accept unfavorable settlement terms. This conduct occurred both while Defendant was represented by counsel and later, after Defendant became *pro se*.

    a. **Unauthorized Settlement Communications with ARAG:** While Defendant was represented by attorney Nichelle Womble, Plaintiff's counsel initiated unauthorized settlement discussions directly with Defendant's legal insurance provider, ARAG, without Defendant's knowledge or consent on March 18. These communications were later used by Ms. Womble to pressure Defendant to accept a global settlement that would have required her to waive critical rights, including her ability to pursue related claims in Washington State. (See Exhibit B).

    b. **Continued Coercion Toward ARAG and Defendant:** After Ms. Womble withdrew, Plaintiff's counsel again contacted ARAG directly on April 18 — without Defendant's consent — to induce further settlement negotiations related to William McNae's state case which would ultimately impact Defendant in her claims against ARAG (See Exhibit C). In response, Defendant sent a cease-and-desist email demanding that these unauthorized contacts stop. (See Exhibit D). Rather than respecting this request, Plaintiff's counsel replied with hostile, dismissive, and inflammatory language. His response minimized Defendant's concerns, reiterated damaging accusations, and implied that additional reputational, legal, and regulatory harm would follow if she continued to assert her rights, including his improper retaliatory threats of criminal accusations concerning "false police reports". (See Exhibit E). Plaintiff's counsel's conduct—first while Defendant was represented, and later while she was pro se—

reflects a sustained effort to pressure, intimidate, and bypass proper legal process. This exchange is submitted in support of Defendant's Motion to Vacate Judgment pursuant to Rule 59(e) and Rule 60(b) as evidence of opposing counsel's unauthorized insurer interference, bad-faith settlement tactics, coercive threats intended to chill lawful reporting, deflection through irrelevant rulings, and a sustained pattern of retaliation against Defendant's good faith efforts to report and challenge misconduct, ethical violations, and abuse of process.

2. **Mischaracterization of Court Orders to Discredit Defendant in Related Proceedings:** Plaintiff's counsel made false representations about the Court's March 5th summary judgment ruling (ECF No. 310) to attorneys representing Defendant's husband, Mr. McNae, in a related state court matter. Plaintiff's counsel claimed that the Court had found Defendant's factual statements to be "false"— despite the fact that Judge Martinez made **no such credibility determination**. The ruling resolved only the breach issue as a matter of law, without making findings about Defendant's truthfulness or rejecting her testimony. Plaintiff's counsel made this misrepresentation outside of court in a manner that appeared calculated to undermine Defendant's credibility with her husband's legal team. This conduct, while not presented to the federal court directly, reflects a broader pattern of litigation misconduct that prejudiced Defendant's ability to maintain her position across multiple, interconnected legal matters. (Exhibit F)

3. **Improper Reference to Nonexistent or Undisclosed Evidence:** During trial, Plaintiff's witness Jessica Bergman referenced "screenshots" allegedly shown to her by undisclosed coworkers, claiming they reflected reputational fallout and internal reactions. However, no such screenshots were introduced into evidence, disclosed during discovery, or filed with the Court. There was no authentication, foundation, or motion to admit the alleged materials. Nevertheless, Plaintiff's counsel permitted the testimony to proceed without clarification — creating a false evidentiary presumption that such materials were known, available, or verified. The reference was treated as substantive evidence without meeting even the most basic standards of admissibility under FRE 901 or Rule 26(a)(1)(A)(ii).

4. **Violation of Discovery Stipulation:** Plaintiff's counsel knowingly violated the July 2023 stipulation by calling Jessica Bergman as a live trial witness. The stipulation expressly prohibited the use of any

current or former SoftwareONE employees other than Plaintiff himself. Defendant and her counsel relied on this agreement in good faith and made the strategic decision not to depose or prepare cross-examination materials for Ms. Bergman. Her designation as a trial witness only one week before trial, without any motion to modify the stipulation or to permit discovery reopening, deprived Defendant of the opportunity to meaningfully challenge her testimony or rebut the assertions presented. Despite her lack of direct involvement or personal knowledge regarding key issues in the case, Ms. Bergman was allowed to offer speculative statements and secondhand impressions, including commentary on reputational issues. Plaintiff's counsel leveraged this stipulation violation to gain an unfair tactical advantage, presenting prejudicial testimony from a witness Defendant was procedurally barred from preparing for or challenging. The Court then adopted portions of this testimony verbatim into its findings on reputational harm. This conduct represents a deliberate breach of the parties' agreement and constitutes litigation misconduct under Rule 60(b)(3). (Exhibit A).

**D. Counsel Misconduct and Conflicted Representation:** Defendant was denied a fair trial due to the grossly deficient and conflicted representation by her prior counsel, Richard Gomez and Nichelle Womble, both appointed through her ARAG Legal Insurance plan. Their respective failures, both pretrial and during trial, reflect a pattern of procedural abandonment, conflict of interest, and disregard for the legal strategy necessary to protect Defendant's rights.

**Preempting Mischaracterization of Defense Counsel History:** Defendant anticipates that Plaintiff's counsel may attempt to reframe the serious defense counsel deficiencies described herein as mere "strategic choices" by Defendant or attribute the failings of prior counsel to Defendant's own conduct. This is not the case. Defendant did not "*fire multiple competent and loyal attorneys*" as opposing counsel may suggest. Instead:

- Defendant's **first appointed counsel was terminated by ARAG Legal Insurance**—a non-party insurer with financial incentives that conflicted with Defendant's litigation interests;

- **Richard Gomez, Defendant's second counsel, withdrew due to a direct conflict of interest**, as he also represented Defendant's husband in overlapping matters;

- **Nichelle Womble, trial counsel, twice attempted to withdraw herself** and was only removed after Defendant was left without preparation, without strategic guidance, and under extreme coercion — including threats tied to Defendant's pending adoption of her minor children.

Defendant's actions reflect reasonable attempts to secure non-conflicted, competent counsel—not abuse of the attorney-client relationship. The record shows that Defendant repeatedly sought advocacy free of coercion and conflict, but was systematically deprived of that right by both counsel failures and ARAG interference. Courts have long recognized that such procedural abandonment—whether through incompetence, conflict, or insurer interference—is not attributable to the litigant. See *Maples v. Thomas*, 565 U.S. 266 (2012) (abandonment by counsel triggers equitable relief where it deprives a client of meaningful participation). Defendant raises these issues not to reargue trial strategy, but to highlight the structural deprivation of fair process that warrants relief under Rule 60(b)(1) and (6).

**Richard Gomez:** Mr. Gomez represented Ronda McNae in this federal action and Will McNae in a related state court proceeding. He entered in Mr. McNae's state case first, then proceeded to represent Mrs. McNae without addressing the potential for conflicting interests—especially where Ronda's defenses and testimony may have diverged from her husband's. Despite this dual representation, Gomez:

- Failed to file a motion for summary judgment in this federal matter, despite requesting and receiving an extension and billing for such a filing;

- Did not order deposition transcripts for key witnesses, including the treating therapist, and other providers—resulting in their exclusion from trial under procedural rules;

- Ignored the *Doe v. SoftwareONE* case, despite being advised of its relevance and its contradiction of Plaintiff's credibility claims as soon as Defendant became aware;

- Never secured or offered a written engagement letter or waiver of dual representation, despite ethical obligations under Rule 1.7 of the Florida Rules of Professional Conduct.

13

These failures undermined Defendant's ability to prepare for trial, challenge inadmissible evidence, and present a complete defense.

**Nichelle Womble:** Trial counsel Nichelle Womble appeared as counsel in February 2025, shortly before trial. Her performance was marked by minimal engagement and preparation, and outright neglect, see evidence in Exhibits I-T. She:

- Failed to object[8] to the testimony of Jessica Bergman, despite the stipulation clearly barring it, and despite being informed of its terms;

- Did not offer Defendant's 2023 deposition or treating therapist's deposition in lieu of live testimony, even though these materials were on record;

- Discouraged Defendant from testifying, citing concerns about her emotional state but failing to seek accommodations or consult the Court;

- Conditioned her continued representation on Defendant's agreement to settle, warning that failure to accept one of two proposed options could not only jeopardize her pending adoption of two minor children, but would also result in Womble's immediate withdrawal from the case. This ultimatum created coercive pressure and directly interfered with Defendant's ability to make free, informed legal decisions;

- Redacted and withheld billing details, refused to discuss trial strategy, and declined to raise FRE 103 or Rule 37 objections even as improper testimony and exhibits were introduced.

Together, the conduct of both attorneys demonstrates an abandonment of strategic defense, a failure to preserve objections, and a lack of zealous advocacy. These are not minor oversights; they are structural deficiencies that prevented a fair trial. This was not ineffective assistance in the traditional sense—it was **procedural abandonment**, yielding **irremediable prejudice** and extinguishing Defendant's right to adversarial process. As the Supreme Court recognized in *Maples v. Thomas*, 565 U.S. 266 (2012), when counsel abandons a client—especially in a way that causes the client to lose meaningful participation in litigation—the constitutional remedy is to reopen the judgment. That standard is unquestionably met here.

---

[8] Counsel's failure to object at trial, compounded by billing fraud and conflict of interest, waived critical issues for appellate review. This misconduct obstructed Defendant's constitutional right to effective assistance and access to meaningful post-trial remedies

Relief is warranted under Rule 60(b)(1) for counsel mistake and neglect, and Rule 60(b)(6) for extraordinary circumstances that demand correction to preserve the integrity of the process.

**E. Inflated Damages Arguments Lacking Evidentiary Basis:** Plaintiff's counsel pursued an extraordinary $2 million reputational harm award, supported only by self-serving testimony and was never subjected to Daubert review. No economic modeling, peer-reviewed methodology, or industry benchmarks were presented. Plaintiff's counsel argued for full acceptance of this unsupported figure without qualification or scrutiny, and the Court adopted it wholesale. These acts, taken together, reflect a litigation strategy that prioritized tactical advantage over procedural fairness, and presentation over admissibility. Plaintiff's counsel was able to exploit both the passivity of defense counsel and the absence of judicial scrutiny, resulting in a trial record that was neither balanced nor lawfully constructed. Under *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir. 1978), Rule 60(b)(3) applies where misconduct by the opposing party "prevented the losing party from fully and fairly presenting his case." That standard is clearly met here. Defendant was denied the ability to confront key testimony, rebut speculative claims, or correct the false evidentiary impressions left unchallenged by Plaintiff's counsel. Accordingly, post-judgment relief is warranted to correct this miscarriage of justice and restore the procedural integrity this case was denied.

**F. Speculative and Unsupported Damages:** The $2.7 million damages award entered against Defendant was not supported by competent evidence, not grounded in legal findings, and not proportionate to any demonstrated injury. It represents a clear error of law and fact, and warrants relief under Rule 59(e) and Rule 60(b)(1) and (6). In its March 5, 2025 summary judgment order (ECF No. 310), the Court found only that Plaintiff was entitled to **nominal damages** based on a breach of contract theory. It expressly reserved the issue of compensatory damages for trial. No economic damages were awarded at that time, and Plaintiff was required to prove any further harm with admissible, reliable evidence. At the April 9–10, 2025 bench trial, Plaintiff offered no objective financial documentation to support his damages claims, and Defendant argued this in her Findings of Fact and Law. The record lacks:

- Any authenticated employment rejection letters, client or company losses for "GoatPath", or board withdrawals (which assumes he was on a company's board to begin with);

- Any credible third-party corroboration of harm to reputation, career trajectory, or industry standing;

- Any authenticated internal records from SoftwareONE supporting the justification of lost performance-based compensation.

Despite this, the Court's final judgment adopted Plaintiff's proposed damages in full, including:

- **$219,300.00** in unpaid bonuses;

- **$274,453.27** in alleged long-term incentive compensation (LTI);

- **$155,950.00** in unvested PSUs;

- **$97,000.00** in restitution tied to the Confidential Settlement Agreement;

- **$2,000,000.00** in reputational harm.

The $2 million reputational award is particularly egregious[9]. Plaintiff's damages expert, Sheri Fiske, provided a report based almost entirely on Plaintiff's self-reported narrative, without independent verification or data analytics. Her damages calculations assumed worst-case outcomes and forecasted career derailment without a single documented example of actual loss. Federal law requires that damages awards for reputational or non-economic harm be grounded in objective evidence and meet standards of reasonable certainty. See Exhibit G for rebuttal evidence disproving GoatPath trial theory if Defendant had been allowed to testify or present my own witnesses from SoftwareONE at trial. Moreover, under *BMW of North America v. Gore*, 517 U.S. 559 (1996), the Due Process Clause prohibits grossly excessive damages that lack proportion to the harm proved. Here, the Court awarded $2.7 million to a plaintiff who suffered no proven financial loss, while the Defendant — a mother of four — was barred from testifying, and was denied the ability to rebut any of the claims. Such a result is constitutionally disproportionate and legally unsupported. The damages award must be vacated, reduced, or corrected through a new trial with appropriate evidentiary safeguards. The Court's uncritical adoption of this methodology—absent Daubert

---

[9] a. *Carey v. Piphus*, 435 U.S. 247, 266 (1978) – non-economic damages must be supported by evidence and rational inference;
b. *Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 284 (D.D.C. 2008) – reputational damages require evidence beyond vague assertions;
c. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) – expert testimony must be based on reliable methods and fit the facts of the case.

review or evidentiary scrutiny—reflects a **judicial abdication of the gatekeeping role** mandated under Federal Rule of Evidence 702.

**G. Contradictory Judgment on CSA Enforcement and Repayment:** The Court's judgment is internally inconsistent in its treatment of the Confidential Settlement Agreement (CSA) between the parties. Specifically, the judgment both: **1.** Enforces the CSA as binding and breached by Defendant, and **2.** Awards Plaintiff $97,000.000 in restitution—Defendant's full amount paid under the CSA. **These two conclusions cannot coexist.** A party may not enforce a contract and simultaneously seek restitution of consideration provided under it. Doing so constitutes a fundamental misapplication of contract law and reflects clear legal error justifying relief under Rule 59(e) and 60(b)(1). If the CSA is enforceable, then the consideration exchanged—$97,000.00 paid to Defendant—is not subject to refund. Plaintiff's recovery in that case would be limited to actual damages resulting from a breach, not repayment of the bargained-for consideration. Conversely, if restitution is appropriate because the contract is void, unenforceable, or rescinded, then Plaintiff cannot simultaneously seek enforcement of its other provisions.

Florida courts have long recognized that a litigant cannot both affirm and disaffirm a contract in the same proceeding. See *Tampa Pipeline Co. v. City of Tampa*, 12 So. 3d 798, 802 (Fla. 1st DCA 2009) ("A party cannot accept the benefits of a contract and at the same time repudiate its burdens."). The Court awarded restitution for the full CSA amount without making any legal findings that the contract was rescinded, voided, or invalidated. The judgment assumes enforceability for the purpose of establishing breach, but then undoes the consideration paid as if no enforceable agreement existed. This is a textbook contradiction and renders the ruling untenable under Florida contract principles. Furthermore, there was no evidence presented at trial to establish that the $97,000 payment was unearned, unperformed, or conditional on continuing obligations. Defendant provided both consideration and endured material consequences stemming from the CSA. Plaintiff made no showing that the payment was fraudulently induced, mistakenly rendered, or conditionally revocable. Accordingly, the judgment must be amended or vacated under Rule 59(e) to correct this contradiction and under Rule 60(b)(1) for the mistaken application of contract law. No valid judgment can simultaneously enforce and rescind a contract—yet that is precisely what occurred.

**H. Wholesale Adoption of Plaintiff's Findings:** The Court's final order entered April 17, 2025 (ECF No. 374), adopts virtually all of Plaintiff's proposed findings of fact and conclusions of law verbatim, including numerous assertions that were contested, unsupported, or procedurally challenged by Defendant in her own submission (Plaintiff's DE 370 vs. Defendant's DE 371). Out of approximately 90 factual findings and 41 legal conclusions proposed by Plaintiff, over 90% were adopted without modification. The Court made no reference to Defendant's proposed findings, which directly rebutted Plaintiff's claims regarding:

- The speculative nature of his reputational damages;

- The inadmissibility of Jessica Bergman's testimony;

- The enforcement contradiction related to the CSA;

- The procedural exclusion of Defendant due to ADA-related symptoms;

- The absence of documented employment, HR, or economic evidence supporting the claimed losses.

Defendant's objections to testimony, exhibits, and damages calculations were preserved in the record, raised in her proposed findings, and supported by legal authority. Yet none of these positions were acknowledged or addressed in the final judgment. The effect was the issuance of an order that appeared to be authored by Plaintiff's counsel, not the Court itself. The U.S. Supreme Court and several Circuit Courts have cautioned against this practice, emphasizing that judicial findings must reflect independent evaluation, not rote adoption of one side's advocacy. (*See* Footnotes[10]). When a district court fails to engage with contested facts or legal objections, it raises an inference that the judgment may not reflect the Court's independent analysis—a concern that is heightened when the losing party was procedurally silenced. Here, the lack of engagement with the Defendant's submissions—particularly given the procedural irregularities that prevented her full participation—raises serious due process concerns. When the Court adopts one side's narrative wholesale, it undermines the perception of neutrality, especially where critical legal and factual

---

[10] a. *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656 (1964) ("[F]indings should be the judge's own and not merely the unread or unconsidered findings of one of the parties.");
b. *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 732 (3d Cir. 2004) ("Due process is implicated when a court adopts one party's proposed findings without addressing the opposing party's contrary submissions.");
c. *Anderson v. City of Bessemer*, 470 U.S. 564, 572 (1985) ("Findings of fact are clearly erroneous when … the reviewing court is left with the definite and firm conviction that a mistake has been committed.").

objections go unanswered. This unchecked reliance on Plaintiff's findings justifies relief under Rule 59(e) to correct manifest injustice, and under Rule 60(b)(1) and (6) as a structural flaw that denied Defendant an impartial adjudication.

**I. Manifest Injustice in Damage Awards:** The $2.7 million judgment entered against Defendant — largely comprised of speculative reputational damages — is a result that no fair process would have produced. It reflects not just legal error or evidentiary deficiency, but a manifest injustice requiring correction under Rule 59(e) and Rule 60(b)(6). This judgment exemplifies abuse of process masquerading as finality, where procedural silence — not factual strength — dictated the outcome. The Court adopted these figures wholesale—without scrutiny, without economic analysis, and without legal findings proportional to the record. There is no line of reasoning by which the final judgment aligns with a modest breach and the absence of proven economic loss. The Eleventh Circuit and federal courts broadly recognize that relief is warranted when the outcome is plainly inequitable and unsupported by the evidence presented. (*See footnotes[11]*). This award is not simply large — it is unsupported, one-sided, and issued in a vacuum, absent rebuttal, process, or judicial balance. The resulting judgment risks not only profound financial harm, but long-term reputational, legal, and familial consequences for a Defendant who was denied her day in court. This is the definition of manifest injustice. Relief is not only warranted — it is necessary to preserve the credibility of this Court's judgment and the rights of all parties.

## IV. PRAYER FOR RELIEF

For all the reasons stated above, Defendant respectfully requests that this Court alter, amend, or vacate the judgment entered on April 17, 2025 (ECF No. 374), pursuant to Federal Rules of Civil Procedure 59(e), 60(b)(1), 60(b)(3), and 60(b)(6). Considering the procedural breakdowns, evidentiary errors, and due

---

[11] a. *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (court must consider whether damages are proportional to proven harm);
b. *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (symbolic injuries warrant only nominal damages unless proven harm is shown);
c. *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) (prohibiting damages that are "grossly excessive" in violation of due process).

process violations demonstrated herein, Defendant seeks appropriate corrective relief to restore the integrity of these proceedings and ensure compliance with constitutional and statutory standards[12].

## V. PRESERVATION FOR REASSIGNMENT ON REMAND

To the extent this case is remanded following appellate review or post-judgment relief, Defendant respectfully requests reassignment to a different judicial officer pursuant to Eleventh Circuit authority, including *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989). Reassignment is appropriate where the record reflects actual or apparent bias, repeated procedural errors affecting fundamental fairness, or rulings so one-sided that they compromise the appearance of impartiality and erode public confidence in the integrity of the judicial process[13]. Here, the record demonstrates precisely these circumstances:

---

[12] Specifically, Defendant respectfully requests that the Court:
- Amend the Final Judgment to correct errors of law and fact, including the removal or reduction of unsupported damages awards;
- Vacate the Judgment in its entirety and reopen proceedings for a new trial on the issue of damages, with evidentiary and procedural safeguards consistent with due process;
- Strike the testimony of Jessica Bergman and any findings based on her appearance at trial, in violation of the July 2023 stipulation (Exhibit A);
- Reduce or strike the $2 million reputational damages award as unsupported by admissible evidence and excessive under federal due process standards;
- Vacate the $97,000 restitution award tied to the Confidential Settlement Agreement (CSA), given its inconsistency with the finding of enforceability;
- Grant a new trial limited to damages and/or mitigation, with reasonable ADA accommodations and Defendant's testimony permitted either live or via deposition excerpts;
- Take judicial notice of Defendant's Proposed Findings of Fact and Conclusions of Law (ECF No. 371), Supplementary Evidence and Objections (ECF Nos. 325, 329, 371), and the July 19, 2023 Stipulation;
- Permit supplemental briefing regarding evidentiary irregularities or new material facts arising from the Miami Beach Police Department's active criminal investigation, which may further impact the credibility of Plaintiff and key witnesses;
- Issue specific findings of fact and conclusions of law pursuant to Rule 52(a) to facilitate appellate review, particularly concerning the Court's reasoning for adopting Plaintiff's proposed findings, the exclusion of Defendant's position, and the basis for each damages award;
- Order prior counsel to produce an unredacted version of the client file, including billing statements, emails, call logs, and any internal notes regarding trial strategy or communications with ARAG;
- Grant such other and further relief as the Court deems just and proper to prevent the enforcement of a judgment rendered without the necessary procedural fairness, evidentiary scrutiny, or due process of law.

[13] See *Torkington*, 874 F.2d at 1446 (reassignment warranted where bias, appearance of bias, or procedural irregularities call the court's impartiality into question); *United States v. Rosa*, 11 F.3d 315, 342 (2d Cir. 1993) (reassignment appropriate to preserve the appearance of justice); *Liteky v. United States*, 510 U.S. 540, 555–56 (1994) (judicial impartiality is a core component of due process). The Eleventh Circuit has acknowledged that reassignment is a remedy available where the record reflects persistent procedural disregard or perceived partiality that would undermine confidence in the fairness of further proceedings.

- The Court's final ruling adopted Plaintiff's proposed findings and conclusions nearly verbatim, with no engagement with Defendant's submissions;

- Testimony was permitted from a witness barred by stipulation, without motion or objection;

- Defendant was excluded from testifying, with no inquiry into accommodations or procedural alternatives;

- Defendant's objections to testimony, evidence, and damages calculations were not addressed.

These failures raise serious concerns regarding whether the issues were subjected to independent judicial analysis. While this motion is submitted to afford the Court the opportunity to reconsider, reassignment on remand would be appropriate under *Torkington* and related authority, recognizing that justice must not only be done, but must also be seen to be done.

## VI. PRESERVATION FOR APPEAL

This motion is submitted pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) and is intended to preserve all objections, claims, and issues for appellate review. Defendant expressly preserves challenges based on procedural error, evidentiary irregularities, due process violations, attorney abandonment, and the excessiveness and disproportionality of the damages[14] awarded.

---

[14] Specifically, Defendant preserves the following issues for appellate review:
- Procedural due process violations, including the exclusion of Defendant's testimony and the Court's failure to inquire or accommodate under the ADA, Title II;
- Admission of testimony in violation of the July 2023 stipulation, including the improper appearance of former SoftwareONE employee Jessica Bergman;
- Failure to exclude inadmissible, speculative, and unauthenticated testimony, including references to "screenshots" never disclosed, authenticated, or admitted into evidence;
- Misconduct by Plaintiff's counsel, including backchannel settlement communications, mischaracterization of court orders, and presentation of damages without evidentiary foundation;
- Ineffective assistance and abandonment by prior counsel, including failure to file motions, preserve objections, or present rebuttal evidence and deposition transcripts;
- Speculative and unsupported damages awards, particularly the $2 million reputational harm figure unsupported by admissible evidence or expert reliability;
- Internal inconsistency between enforcement of the Confidential Settlement Agreement and the $97,000 restitution award;
- Wholesale adoption of Plaintiff's proposed findings of fact and conclusions of law without meaningful engagement with Defendant's submissions;
- Constitutional excessiveness of the judgment, including disproportionate damages in violation of substantive due process principles articulated in BMW of North America v. Gore, 517 U.S. 559 (1996);
- Denial of a fair trial due to cumulative structural and procedural breakdowns warranting relief under Rule 60(b)(6).

Pursuant to Federal Rule of Appellate Procedure 4(a)(4), the filing of this motion tolls the time to appeal the judgment entered in this matter. Should the Court decline to grant the relief requested herein, Defendant fully intends to pursue appellate review and respectfully reserves the right to raise all preserved issues before the United States Court of Appeals for the Eleventh Circuit.

Respectfully submitted,

By: *Ronda McNae*
Ronda Delapina McNae, Pro se Defendant
504 11th Pl, Kirkland, WA 98033
Tel: (206) 914-6752
Prose.rmcnae@gmail.com

## CONFERRAL STATEMENT AND RESPONSE TO OPPOSING COUNSEL'S CLAIM

Plaintiff's counsel, by email dated April 22, 2025 (Exhibit E), asserted that Defendant was required to confer prior to filing this post-judgment motion under Federal Rules of Civil Procedure 59(e) and 60(b). This assertion is incorrect as a matter of law. The Local Rules of the Southern District of Florida explicitly exempt post-judgment motions—including motions for new trial and similar relief—from the pre-filing conferral requirement. Motions brought under Rule 59(e) and Rule 60(b) fall squarely within this exemption. Accordingly, no conferral obligation applies here. Any contrary assertion misstates the procedural framework and is unsupported by the governing rules. Defendant remains fully committed to compliance with all applicable procedural duties but cannot be compelled to observe a conferral requirement where none exists under the Local Rules or controlling authority. This exemption is not only well-established but also confirmed by recent case law[15].

## CERTIFICATE OF SERVICE

---

[15] In **Jean-Baptiste v. City of Miami**, No. 1:23-cv-22670-MD (S.D. Fla. Mar. 5, 2025), the court addressed a motion to reconsider and, although the opposing party argued failure to confer under Local Rule 7.1(a)(3), the court declined to base its ruling on any such requirement—implicitly recognizing that Rule 60(b) and related post-judgment motions are not subject to the conferral obligation. This holding aligns with **Moreno v. Serco Inc.**, No. 11-23308-CIV, 2013 WL 12092464, at *1 n.1 (S.D. Fla. Mar. 5, 2013), where the court explicitly stated that conferral was not required for a Rule 60(b) motion.
Accordingly, Plaintiff's position lacks both factual and legal foundation, and this motion is properly before the Court.

I HEREBY CERTIFY that on April 23, 2025, a true and correct copy of the foregoing Defendant Ronda McNae's Motion to Alter or Amend Judgment Under Rule 59(e) and for Relief From Final Judgment Under Rule 60(b)(1), (3), and (6) was sent to the Clerk of the Court at the Miami Courthouse, Southern District of Florida, 400 N. Miami Ave, Room 8N09, Miami, FL 33128. Additionally, in compliance with the Court's requirements for pro se litigants, a copy of the same document was sent to Plaintiffs' counsel on the same date.

**SERVICE LIST**

Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlowe.com
*Counsel for Plaintiff*

# Exhibit A

**Will McNae**

| | |
|---|---|
| **From:** | Peter E. Berlowe <PEB@AssoulineBerlowe.com> |
| **Sent:** | Wednesday, July 19, 2023 12:20 PM |
| **To:** | Jenny L. Martinez; Casey, Stephanie |
| **Cc:** | Alaina Fotiu-Wojtowicz; Meredith J. Gussin; Roberto, Michelle; Heather Shatzel; Michael McCabe |
| **Subject:** | RE: Ronda McNae Second Subpoena to SoftwareONE |

Yes, Fitzgerald is in agreement to your conditions.

Peter E. Berlowe, Esq.
**Business and Intellectual Property Litigation**

**ASSOULINE & BERLOWE**
**THE BUSINESS LAW FIRM**

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
**Telephone: 305-567-5576**

**www.assoulineberlowe.com**

Intellectual Property, Labor & Employment Law, Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy, Trusts & Estates, Probate and Guardianship

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication. Thank you.

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Wednesday, July 19, 2023 12:00 PM
**To:** Casey, Stephanie <scasey@colson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

Good morning, Stephanie.

SoftwareOne, Inc. will agree to withdraw its privilege challenge for the 2 emails at issue in exchange for the following: (1) Defendants agree that SoftwareOne, Inc. has fully complied with the subpoena dated 9/21/2022; (2) all parties agree not to seek additional information from SoftwareOne, Inc., its affiliates, or their current or former employees (with the obvious exception that this agreement does not impact Defendants' ability to seek discovery from Mike Fitzgerald); (3) all

parties agree that the withdrawal of SoftwareOne, Inc.'s privilege challenge relates to these 2 emails only and no other communications; (4) all parties agree that the withdrawal of the privilege challenge for these 2 emails does not constitute a subject matter waiver or any other waiver of privilege with respect to any other communication; and (5) all parties agree that SoftwareOne, Inc. is not waiving any other rights or defenses.

Sincerely,

**Jenny Martinez**
Partner



12770 Coit Rd., Ste 600
Dallas, TX 75251
d. +1 972.628.3623
o. +1 972.628.3600
e: jmartinez@munckwilson.com
w. munckwilson.com
Connect with me on LinkedIn
Follow Munck on LinkedIn



**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Casey, Stephanie <scasey@colson.com>
**Sent:** Wednesday, July 19, 2023 8:34 AM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

[External]

Jenny:

Good morning. Please let me know today, before 2 pm ET (as I will be getting on a flight then), what SoftwareOne's position is so that I may report it to the Court.

Best,

Stephanie

**Stephanie A. Casey** | Colson Hicks Eidson | 255 Alhambra Circle, Penthouse | Coral Gables, FL 33134
Office: 305.476.7400 | Direct: 305.476.7496

**From:** Casey, Stephanie
**Sent:** Monday, July 17, 2023 6:47 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE

Thank you, Jenny. Today we received a communication from the Court requiring us to provide a final position on the motion by Wednesday, so please let me know by tomorrow if you can so we can make sure to let the Court know in a timely manner.

Best,

Stephanie

**Stephanie A. Casey** | Colson Hicks Eidson | 255 Alhambra Circle, Penthouse | Coral Gables, FL 33134
Office: 305.476.7400 | Direct: 305.476.7496

**From:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Sent:** Monday, July 17, 2023 3:01 PM
**To:** Casey, Stephanie <scasey@colson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>; Michael McCabe <mmccabe@munckwilson.com>
**Subject:** RE: Ronda McNae Second Subpoena to SoftwareONE


CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Stephanie,

I reached out my client regarding the below and will get back to you ASAP.

Sincerely,

**Jenny Martinez**
Partner



12770 Coit Rd., Ste 600
Dallas, TX 75251
d. +1 972.628.3623
o. +1 972.628.3600
e: jmartinez@munckwilson.com
w. munckwilson.com
Connect with me on LinkedIn
Follow Munck on LinkedIn



**Confidentiality Notice:** This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege. It is intended solely for the use of the addressee(s) listed above. If you are not the intended recipient of this message, please do not print, copy or disclose this information. If you received this e-mail in error, please disregard it and delete it and any attachments from your system. Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

**From:** Casey, Stephanie <scasey@colson.com>
**Sent:** Sunday, July 16, 2023 7:39 PM
**To:** Jenny L. Martinez <jmartinez@munckwilson.com>
**Cc:** Alaina Fotiu-Wojtowicz <alaina@bfwlegal.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Roberto, Michelle <michelle@colson.com>; Heather Shatzel <heather@bfwlegal.com>
**Subject:** Ronda McNae Second Subpoena to SoftwareONE

[External]

Dear Jenny,

I hope you're doing well. As you may know, Judge Becerra provided her preliminary thoughts on the two subpoena exhibits during a hearing last week. In particular, she did not appear convinced that either document was privileged, but reserved ruling in the event SoftwareOne wanted to appear to be heard on the matter. Judge Becerra also encouraged the parties to try to come to an agreement without the need for further hearing.

To dispense with the need for oral argument on this issue, I proposed to Peter that Defendants would agree to withdraw the motion if Plaintiffs and SoftwareOne agreed to withdraw their respective privilege challenges to the exhibits, without prejudice to Plaintiffs' right to raise whatever evidentiary challenges they have to the records at the appropriate time. Peter let us know that the proposal would be acceptable to Plaintiffs, but he did not have SoftwareOne's position. Peter has indicated to the Court that SoftwareOne will not appear to argue the privilege issues.

Accordingly, I am writing to get SoftwareOne's position on whether it agrees to withdraw its privilege challenge to the 2 subpoena exhibits. Sensitive to SoftwareOne's prior expressed concerns regarding the use of these documents, should SoftwareOne agree to withdraw its privilege challenge to the 2 subpoena exhibits, we won't use them to subpoena SoftwareOne for further records.

I look forward to hearing from you.

Best,

Stephanie

**Stephanie A. Casey** | Partner | Colson Hicks Eidson
255 Alhambra Circle, Penthouse | Coral Gables, Florida 33134
Office: 305.476.7400 | Direct: 305.476.7448 | Fax: 305.476.7444
scasey@colson.com | www.colson.com

4

# Exhibit B

# ASSOULINE & BERLOWE
## THE BUSINESS LAW FIRM

Miami Tower
100 SE 2nd Street, Suite 3650 • Miami, Florida 33131
Telephone: 305-567-5576
www.assoulineberlowe.com

March 18, 2025

**PRIVILEGED SETTLEMENT COMMUNICATION[1]**

**VIA EMAIL ONLY**
Michael T Mullaly
Squire Patton Boggs LLP
41 South High Street
2000 Huntington Center
Columbus, Ohio 43215
michael.mullaly@squirepb.com

| | | |
|---|---|---|
| Re: | ARAG Claim No.: | 3266236 |
| | ARAG Policy No.: | 10377 |
| | Bad Faith Litigation: | *McNae v. ARAG Ins. Co.*, |
| | | Case No. 2:24-cv-00211-TL |
| | Federal Underlying Action: | *Fitzgerald and de Varona v. McNae*, |
| | | Case No. 1:22-cv-22171-JEM |
| | State Underlying Action: | *Fitzgerald v. McNae*, |
| | | Case No. 2023-025855-CA-01 (Fla. 11th Jud. Cir.) |

### ***Invitation to Settle Underlying Actions***

Dear Mr. Mullaly:

Thank you for taking my call earlier today. As you know, this firm and the undersigned attorney represent Michael Fitzgerald and Yelany de Varona (collectively, the "***Underlying Plaintiffs***") in connection with the Federal Underlying Action and the State Underlying Action described above (collectively, the "***Underlying Actions***"). This correspondence is being sent you in your capacity of attorney of record for ARAG Insurance Company ("***ARAG***") in connection with the Bad Faith Litigation brought by William and Rhonda McNae (collectively, the "***Insureds***") under the McNae's ARAG Legal Insurance Policy bearing policy No. 10377 (the "***Policy***").

---

[1] Not admissible under Federal Rule of Evidence 408 or any State counterpart thereto.

On March 5, 2025, the U.S. District Court for the Southern District of Florida granted Underlying Plaintiffs' Motion for Summary Judgment against Rhonda McNae. Please find enclosed a copy of the March 5, 2025 Order Granting Plaintiff's Motion for Summary Judgment in the Federal Underlying Action. Also, please find enclosed the March 12, 2025 Order Granting Plaintiff's Motion *In Limine* for your reference.

Now, the parties in the Federal Underlying Action will proceed to jury trial in early April 2025 solely to determine the Underlying Plaintiffs' damages, in which the undersigned will seek damages well over $4.5 Million Dollars. In other words, Mrs. McNae is legally exposed to damages, and a Florida jury will only determine the amount of damages as to her. Mr. Fitzgerald will be filing a comparable partial motion for summary judgment as to Mr. McNae shortly, and expects to obtain a comparable $4.5 million judgment against Mr. McNae in the State Underlying Action.

In the Bad Faith Litigation, the McNaes plead that their exposure to damages was proximately caused by ARAG's denial of benefits under the Policy. Therefore, Michael Fitzgerald invites ARAG to mitigate the McNaes' exposure to damages and engage in good faith settlement negotiations with the Underlying Plaintiffs.

Should ARAG wish to settle the Underlying Plaintiffs' claims against ARAG's Insureds and avoid further procedural bad faith exposure, ARAG must reply to this invitation to settle the Underlying Actions by no later than 5 p.m., EST, Friday, March 21, 2025. In the meantime, if you have any questions or concerns, please do not hesitate to contact the undersigned.

Sincerely,

*Peter E Berlowe*

Peter E. Berlowe, Esq.

PEB/MJG/AJC:sh

Encl.:   March 5, 2025 Order Granting Fitzgerald's Motion for Summary Judgment
March 12, 2025 Order Granting Plaintiff's Motion *In Limine*

cc.:   Benjamin Roesch (benjamin.roesch@jmblawyers.com)
Gabriel Baker (gabe.baker@jmblawyers.com)
Nichelle Womble (nichelle@amethystlawgroup.com)
Althea Bryan Hall (Althea.BryanFarr@bfhlegal.com)
Keisha Hall (khall@allpointslegal.com)

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3650, Miami, Florida 33131 • Telephone: (305) 567-5576

# Exhibit C

# ASSOULINE & BERLOWE
## THE BUSINESS LAW FIRM

Miami Tower
100 SE 2nd Street, Suite 3650 • Miami, Florida 33131
Telephone: 305-567-5576
www.assoulineberlowe.com

March 18, 2025

**PRIVILEGED SETTLEMENT COMMUNICATION[1]**

**VIA EMAIL ONLY**
Michael T Mullaly
Squire Patton Boggs LLP
41 South High Street
2000 Huntington Center
Columbus, Ohio 43215
michael.mullaly@squirepb.com

| | | |
|---|---|---|
| Re: | ARAG Claim No.: | 3266236 |
| | ARAG Policy No.: | 10377 |
| | Bad Faith Litigation: | *McNae v. ARAG Ins. Co.*, |
| | | Case No. 2:24-cv-00211-TL |
| | Federal Underlying Action: | *Fitzgerald and de Varona v. McNae*, |
| | | Case No. 1:22-cv-22171-JEM |
| | State Underlying Action: | *Fitzgerald v. McNae*, |
| | | Case No. 2023-025855-CA-01 (Fla. 11th Jud. Cir.) |

## *Invitation to Settle Underlying Actions*

Dear Mr. Mullaly:

Thank you for taking my call earlier today. As you know, this firm and the undersigned attorney represent Michael Fitzgerald and Yelany de Varona (collectively, the "***Underlying Plaintiffs***") in connection with the Federal Underlying Action and the State Underlying Action described above (collectively, the "***Underlying Actions***"). This correspondence is being sent you in your capacity of attorney of record for ARAG Insurance Company ("***ARAG***") in connection with the Bad Faith Litigation brought by William and Rhonda McNae (collectively, the "***Insureds***") under the McNae's ARAG Legal Insurance Policy bearing policy No. 10377 (the "***Policy***").

---

[1] Not admissible under Federal Rule of Evidence 408 or any State counterpart thereto.

On March 5, 2025, the U.S. District Court for the Southern District of Florida granted Underlying Plaintiffs' Motion for Summary Judgment against Rhonda McNae. Please find enclosed a copy of the March 5, 2025 Order Granting Plaintiff's Motion for Summary Judgment in the Federal Underlying Action. Also, please find enclosed the March 12, 2025 Order Granting Plaintiff's Motion *In Limine* for your reference.

Now, the parties in the Federal Underlying Action will proceed to jury trial in early April 2025 solely to determine the Underlying Plaintiffs' damages, in which the undersigned will seek damages well over $4.5 Million Dollars. In other words, Mrs. McNae is legally exposed to damages, and a Florida jury will only determine the amount of damages as to her. Mr. Fitzgerald will be filing a comparable partial motion for summary judgment as to Mr. McNae shortly, and expects to obtain a comparable $4.5 million judgment against Mr. McNae in the State Underlying Action.

In the Bad Faith Litigation, the McNaes plead that their exposure to damages was proximately caused by ARAG's denial of benefits under the Policy. Therefore, Michael Fitzgerald invites ARAG to mitigate the McNaes' exposure to damages and engage in good faith settlement negotiations with the Underlying Plaintiffs.

Should ARAG wish to settle the Underlying Plaintiffs' claims against ARAG's Insureds and avoid further procedural bad faith exposure, ARAG must reply to this invitation to settle the Underlying Actions by no later than 5 p.m., EST, Friday, March 21, 2025. In the meantime, if you have any questions or concerns, please do not hesitate to contact the undersigned.

Sincerely,

*Peter E Berlowe*

Peter E. Berlowe, Esq.

PEB/MJG/AJC:sh

Encl.: March 5, 2025 Order Granting Fitzgerald's Motion for Summary Judgment
       March 12, 2025 Order Granting Plaintiff's Motion *In Limine*

cc.:   Benjamin Roesch (benjamin.roesch@jmblawyers.com)
       Gabriel Baker (gabe.baker@jmblawyers.com)
       Nichelle Womble (nichelle@amethystlawgroup.com)
       Althea Bryan Hall (Althea.BryanFarr@bfhlegal.com)
       Keisha Hall (khall@allpointslegal.com)

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3650, Miami, Florida 33131 • Telephone: (305) 567-5576

# Exhibit D

 Gmail

**Will McNae <willmcnae@gmail.com>**

## Final Notice Regarding Unauthorized Conduct and Formal Reporting
1 message

**Ronda McNae** <prose.rmcnae@gmail.com>                                    Tue, Apr 22, 2025 at 10:03 AM
To: "Peter E. Berlowe" <PEB@assoulineberlowe.com>, "Meredith J. Gussin" <mjg@assoulineberlowe.com>, Ann Cosimano
<ann.cosimano@araglegal.com>, "Mullaly, Michael T." <michael.mullaly@squirepb.com>, Benjamin Roesch
<benjamin.roesch@jmblawyers.com>
Cc: Civil.Feedback@usdoj.gov, antitrust@ftc.gov, acap@floridabar.org, cpcomplaints@oic.wa.gov,
iid.consumer@iid.iowa.gov, complaint@atg.wa.gov, Joaquin <JoaquinRodriguez@miamibeachfl.gov>, "to: Ronda McNae"
<rondamcnae@gmail.com>, "Alvarez, David" <DavidAlvarez@miamibeachfl.gov>, "Delgado, Edward"
<EdwardDelgado@miamibeachfl.gov>, "Jones, Wayne" <WayneJones@miamibeachfl.gov>, "cc: Feldman, Steven"
<StevenFeldman@miamibeachfl.gov>, "Rivero, Marlen" <MarlenRivero@miamibeachfl.gov>, "Rodriguez, Ernesto"
<ErnestoRodriguez@miamibeachfl.gov>, Will McNae <willmcnae@gmail.com>, Prosecuting.Attorney@kingcounty.gov,
SPDContact@seattle.gov, jgreen@redmond.gov

Dear Mr. Berlowe and Ms. Gussin,

*Counsel for Michael Fitzgerald and Yelany De Verona-Fitzgerald*

Please see my attached **final notice and cease-and-desist demand** regarding your firm's continued unauthorized
communications with ARAG Legal Insurance and related misconduct. This letter outlines the documented pattern of
improper coordination, ethical violations, and potential privacy breaches that have now required me to escalate this matter
beyond prior warnings. Given the seriousness of these actions and your persistence despite repeated notice, I am
forwarding this correspondence—together with supporting evidence—to the following authorities for formal review and
investigation:

- The **Florida Bar Attorney Discipline Division**;

- The **Southern District of Florida** (in connection with my pending **Rule 59(e)/60(b) motion**);

- The **Western District of Washington**, where *McNae v. ARAG Insurance Co.* is pending;

- The **Miami Beach Police Department (MBPD)**, including the Detective(s) and officers actively involved,
  those who have been in direct communication with me, or those included by other officers in connection
  with these related issues;

- The **King County Prosecuting Attorney's Office (Washington)**;

- **Local Washington law enforcement authorities**, regarding privacy violations and retaliatory conduct;

- The **Washington State Office of the Insurance Commissioner**, in connection with ARAG's conduct as a
  legal insurance provider and your firm's role in unauthorized settlement pressure and third-party
  interference; and

- The **U.S. Department of Justice, Consumer Protection Branch**, regarding potential deceptive business
  practices, coercion, and misuse of settlement leverage across state lines.

This is **not speculative.** The attached letter outlines the specific conduct at issue and the legal grounds for these formal
complaints. Please be advised that any further misconduct or unauthorized communications will be added to these
pending investigations and regulatory reviews.

Sincerely,
**Ronda McNae**

*I am submitting the attached formal complaint in good faith and for the lawful purpose of reporting ongoing misconduct
for regulatory and investigative review. I respectfully assert all applicable rights and protections as a reporting party.
Please confirm receipt of this complaint and the attached supporting evidence*

**3 attachments**

**Final Berlowe and Gussin.docx**
23K

**Letter to Michael Mullaly re Invitation to Enter into Settlement Discussions (00423051-4xA4579).PDF**
20K

**Ltr to Mullaly re Second Invitation to Settle (PDF) (00425715xA4579) (1).pdf**
19K

**To: Peter Berlowe, Esq.**
**Meredith Gussin, Esq.**
Assouline & Berlowe, P.A.
The Business Law Firm
100 SE 2nd Street, Suite 3650
Miami, Florida 33131
Telephone: (305) 567-5576
Website: www.assoulineberlowe.com

**Re:**
**ARAG Claim No.:** 3266236
**ARAG Policy No.:** 10377

**Related Litigation Matters:**
- **Bad Faith Litigation:** *McNae v. ARAG Insurance Co.*
  Case No. 2:24-cv-00211-TL (W.D. Wash.)

- **Federal Underlying Action:**
  *Fitzgerald and de Varona v. McNae*
  Case No. 1:22-cv-22171-JEM (S.D. Fla.)

- **State Underlying Action:**
  *Fitzgerald v. McNae*
  Case No. 2023-025855-CA-01 (Fla. 11th Judicial Circuit)

---

***Subject: Final Notice of Unlawful Conduct, Unauthorized Communications with ARAG, and Formal Reporting of Ethical and Privacy Violations***

---

Dear Mr. Berlowe and Ms. Gussin,

This correspondence serves as a **formal and final demand** that you **cease and desist** from all further communication—directly or indirectly—with my legal insurance provider (**ARAG**) or any party acting on their behalf concerning me, my litigation interests, or any proposed resolution of claims in *Fitzgerald v. McNae* or *McNae v. ARAG Insurance Co.*

Your continued efforts to contact ARAG—despite repeated notice that such communication is unauthorized—not only violate ethical boundaries, but also places ARAG in a legally precarious position. Each additional attempt to involve them in matters they are not a party to only increases their exposure to liability in the ongoing bad-faith litigation pending in the Western District of Washington. Should ARAG be induced—through your communications—to take any position adverse to my interests, they may be deemed complicit in improper third-party interference and exposed to potential liability for coordinated misconduct. All such contacts have been documented and treated as additional evidence of coercion, strategic interference, and ethical breach.

I have discovered sworn testimony from Yelany De Varona-Fitzgerald, in which she admitted under oath that she and Michael Fitzgerald pursued their litigation—including the federal action now under post-judgment challenge—"to clear his name." This admission reveals that the

true purpose of the lawsuit was not justice, but rather public exoneration through procedural manipulation. Within this context, your ongoing efforts to pressure or involve ARAG in unauthorized "global settlement" negotiations—particularly after I declined to intertwine my bad-faith claims with this retaliatory litigation—are not only improper but ethically indefensible.

Your recent communication to Mr. Mullaly of Squire Patton Boggs LLP on April 18, 2025—referencing my "refusal" to participate in a global settlement while attempting to leverage ARAG's potential exposure—is clear evidence of the bad-faith, coercive tactics that my federal lawsuit seeks to expose. Your actions are now part of the record in both my Rule 59(e)/60(b) motion to vacate judgment in the Southern District of Florida and my pending litigation against ARAG in the Western District of Washington (Case No. 2:24-cv-00211-TL).

You are not my counsel and you have no legal, ethical, or contractual authority to communicate with my family's legal insurance provider. Any such contact is wholly unauthorized and constitutes improper interference with my representation and contractual rights. I will continue to treat such conduct as a violation of professional ethics rules and a potential infringement on privacy protections under applicable state and federal law.

Furthermore, we have filed a civil suit in Miami-Dade County, Florida, against Ms. De Varona-Fitzgerald based on her knowingly false affidavit and obstructive conduct. Copies have been provided to the Miami Beach Police Department (MBPD) for transparency. In addition, we are filing a distinct but related civil complaint in King County, Washington, naming multiple parties and asserting overlapping claims involving perjury, obstruction, and retaliatory abuse of process. These lawsuits followed my in-person notification to the MBPD regarding the false affidavit submitted by your client. Both courts will actively evaluate the same underlying conduct that your clients—and now your firm—have attempted to exploit through procedurally improper and ethically questionable tactics.

Let me be clear: ARAG is not a party to any current settlement discussions, nor does your firm or your clients have any standing to involve them in matters concerning my independent litigation rights. My pending claims in *McNae v. ARAG (W.D. Wash.)* are legally and factually distinct from the Fitzgerald matter, and I will not permit them to be used as leverage in backchannel negotiations orchestrated by you or your colleague, Ms. Gussin.

All attempts to involve ARAG without my prior express written consent have been and will continue to be documented as evidence of improper coordination, unethical settlement pressure, and strategic interference with my legal rights. Additionally, we have reported to the appropriate authorities that Ms. Gussin placed a recorded call to ARAG legal insurance, during which she stated that she was in possession of our policy number and sought to obtain confidential information about our policy coverage and relationship with ARAG. This conduct is not only unethical—it may also constitute a direct and prosecutable violation of privacy laws in Washington, Iowa, and Florida, where strict protections govern insurance records, consumer data, and third-party disclosures. Your team's deliberate and unauthorized attempt to access private

insurance information without consent is further evidence of your ongoing disregard for legal boundaries and ethical obligations.

You were expressly warned—through formal filings on the court record and direct communications—that ARAG could not lawfully engage in settlement discussions involving my interests without my written consent. Despite this, you and your firm have persisted in unauthorized, backchannel communications with ARAG, knowingly disregarding these warnings.

our continued misconduct has now left my family with no choice but to escalate this matter through formal disciplinary proceedings, judicial remedies, and reporting to state and federal authorities. This letter, along with supporting evidence, is being submitted to:

- The Florida Bar Attorney Discipline Division (*acap@floridabar.org*);

- The Southern District of Florida (in connection with my Rule 59(e)/60(b) motion);

- The Western District of Washington, where *McNae v. ARAG* is pending;

- The Miami Beach Police Department (MBPD);

- The King County Prosecuting Attorney's Office (Washington);

- Local Washington law enforcement authorities regarding privacy violations and retaliatory conduct;

- The Washington State Office of the Insurance Commissioner (legal insurance regulation and consumer protection);

- The Iowa Division of Insurance (ARAG's licensing jurisdiction);

- The U.S. Department of Justice, Consumer Protection Branch; and

- The Federal Trade Commission, Division of Financial Practices, regarding deceptive business practices and unauthorized settlement coercion.

Any further misconduct, interference, or unauthorized contact with ARAG will be formally added to these records and referred for investigation by these regulatory bodies. This is no longer a cautionary notice—it reflects a documented and willful pattern of misconduct that will be addressed through the courts, licensing authorities, and law enforcement.

**Govern yourself accordingly.**

**Sincerely,**
Ronda McNae
504 11th Pl
Kirkland, WA 98033
(206) 914-6752Prose.rmcnae@gmail.com

*This notice and the accompanying materials are submitted in good faith and solely for the lawful purpose of reporting misconduct, privacy violations, and unethical conduct for appropriate investigation and regulatory oversight. I respectfully assert all protections available under federal and state law for individuals reporting misconduct, including whistleblower protections, anti-retaliation statutes, and victim rights laws. Nothing in this communication shall be construed as a waiver of any rights, claims, or legal positions I hold in any pending or future proceedings, all of which are expressly reserved. This complaint is not intended as harassment but as a necessary and formal effort to document and address ongoing harm.*

*Please confirm receipt of this letter and the attached supporting evidence.*

# Exhibit E

 Gmail

**Will McNae <willmcnae@gmail.com>**

---

## RE: Harassing Communications, No Further Need to Confer, and Pending Regulatory Complaints
1 message

**Peter E. Berlowe** <PEB@assoulineberlowe.com>                                    Tue, Apr 22, 2025 at 5:18 PM
To: Ronda McNae <rondamcnae@gmail.com>
Cc: Ronda McNae <prose.rmcnae@gmail.com>, "Meredith J. Gussin" <mjg@assoulineberlowe.com>, Ann Cosimano
<ann.cosimano@araglegal.com>, "Mullaly, Michael T." <michael.mullaly@squirepb.com>, Benjamin Roesch
<benjamin.roesch@jmblawyers.com>, "Civil.Feedback@usdoj.gov" <Civil.Feedback@usdoj.gov>, "antitrust@ftc.gov"
<antitrust@ftc.gov>, "acap@floridabar.org" <acap@floridabar.org>, "cpcomplaints@oic.wa.gov" <cpcomplaints@oic.wa.gov>,
"iid.consumer@iid.iowa.gov" <iid.consumer@iid.iowa.gov>, "complaint@atg.wa.gov" <complaint@atg.wa.gov>, Joaquin
<JoaquinRodriguez@miamibeachfl.gov>, "Alvarez, David" <DavidAlvarez@miamibeachfl.gov>, "Delgado, Edward"
<EdwardDelgado@miamibeachfl.gov>, "Jones, Wayne" <WayneJones@miamibeachfl.gov>, "cc: Feldman, Steven"
<StevenFeldman@miamibeachfl.gov>, "Rivero, Marlen" <MarlenRivero@miamibeachfl.gov>, "Rodriguez, Ernesto"
<ErnestoRodriguez@miamibeachfl.gov>, Will McNae <willmcnae@gmail.com>, "Prosecuting.Attorney@kingcounty.gov"
<Prosecuting.Attorney@kingcounty.gov>, "SPDContact@seattle.gov" <SPDContact@seattle.gov>, "jgreen@redmond.gov"
<jgreen@redmond.gov>, Keisha Hall <khall@allpointslegal.com>, "althea.bryanfarr@bfhlegal.com"
<Althea.BryanFarr@bfhlegal.com>

Dear Mrs. McNae:


You are unfortunately incorrect.  The federal case against you has not concluded.  We will be filing a motion
for prevailing party attorneys fees shortly.  We will need to confer with you regarding nearly $1.7 million in
prevailing party attorneys' fees and costs Mr. Fitzgerald will be asking Judge Martinez to review.  We will be
asking Judge Martinez to Amend the Final Judgment to include language that will make our judgement
enforceable in any of the 50 states.  If you are going to be filing a post-trial motion, you will need to confer
with me on that as well.


Have a good evening.


Sincerely,


**Peter E. Berlowe, Esq.**

Business and Intellectual Property Litigation



**ASSOULINE & BERLOWE, P.A.**

Miami Tower

100 SE 2nd Street, Suite 3650

Miami, Florida 33131

Telephone: 305-567-5576

**www.assoulineberlowe.com**

Intellectual Property, Labor & Employment Law,  Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication.  Thank you.

**From:** Ronda McNae <rondamcnae@gmail.com>
**Sent:** Tuesday, April 22, 2025 8:10 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Ronda McNae <prose.rmcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Ann Cosimano <ann.cosimano@araglegal.com>; Mullaly, Michael T. <michael.mullaly@squirepb.com>; Benjamin Roesch <benjamin.roesch@jmblawyers.com>; Civil.Feedback@usdoj.gov; antitrust@ftc.gov; acap@floridabar.org; cpcomplaints@oic.wa.gov; iid.consumer@iid.iowa.gov; complaint@atg.wa.gov; Joaquin <JoaquinRodriguez@miamibeachfl.gov>; Alvarez, David <DavidAlvarez@miamibeachfl.gov>; Delgado, Edward <EdwardDelgado@miamibeachfl.gov>; Jones, Wayne <WayneJones@miamibeachfl.gov>; cc: Feldman, Steven <StevenFeldman@miamibeachfl.gov>; Rivero, Marlen <MarlenRivero@miamibeachfl.gov>; Rodriguez, Ernesto <ErnestoRodriguez@miamibeachfl.gov>; Will McNae <willmcnae@gmail.com>; Prosecuting.Attorney@ kingcounty.gov; SPDContact@seattle.gov; jgreen@redmond.gov; Keisha Hall <khall@allpointslegal.com>; althea.bryanfarr@bfhlegal.com
**Subject:** Harassing Communications, No Further Need to Confer, and Pending Regulatory Complaints

Dear Mr. Berlowe,

The federal case against me is concluded. There is no active discovery, no pending scheduling, and no procedural basis for further "conferral" between us.

There are no remaining issues that require conferral. As a matter of courtesy and proper procedure, you will be provided with a copy of my post-trial motion under Rule 59(e)/60(b), as well as my forthcoming notice of appeal for appellate review.

Beyond that, there is no reason for you to continue direct communication with me.

Please remember that this exchange did not begin with any procedural issue. It began after I provided the following notice:

"Counsel for Michael Fitzgerald and Yelany De Varona-Fitzgerald:

Please see my attached final notice and cease-and-desist demand regarding your firm's continued unauthorized communications with ARAG Legal Insurance and related misconduct. This letter outlines the documented pattern of improper coordination, ethical violations, and potential privacy breaches that have now required me to escalate this matter beyond prior warnings."

Your repeated communications—including personal commentary and accusatory rhetoric—are entirely inappropriate and serve no proper purpose under the Local Rules.

Effective immediately, cease and desist from all non-essential direct communications. Any future contact must be limited strictly to proper service of court filings.

I am submitting these complaints in good faith, as a lawful reporting party, and I respectfully assert all applicable rights and protections afforded under law. Please confirm receipt of this notice and the attached supporting documentation.

Regards,

Ronda McNae

---

**From:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Sent:** Tuesday, April 22, 2025 4:55:23 PM
**To:** Ronda McNae <rondamcnae@gmail.com>
**Cc:** Ronda McNae <prose.rmcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Ann Cosimano <ann.cosimano@araglegal.com>; Mullaly, Michael T. <michael.mullaly@squirepb.com>; Benjamin Roesch <benjamin.roesch@jmblawyers.com>; Civil.Feedback@usdoj.gov <Civil.Feedback@usdoj.gov>; antitrust@ftc.gov <antitrust@ftc.gov>; acap@floridabar.org <acap@floridabar.org>; cpcomplaints@oic.wa.gov <cpcomplaints@oic.wa.gov>; iid.consumer@iid.iowa.gov <iid.consumer@iid.iowa.gov>; complaint@atg.wa.gov <complaint@atg.wa.gov>; Joaquin <JoaquinRodriguez@miamibeachfl.gov>; Alvarez, David <DavidAlvarez@miamibeachfl.gov>; Delgado, Edward <EdwardDelgado@miamibeachfl.gov>; Jones, Wayne <WayneJones@miamibeachfl.gov>; cc: Feldman, Steven <StevenFeldman@miamibeachfl.gov>; Rivero, Marlen <MarlenRivero@miamibeachfl.gov>; Rodriguez, Ernesto <ErnestoRodriguez@miamibeachfl.gov>; Will McNae <willmcnae@gmail.com>; Prosecuting.Attorney@kingcounty.gov <Prosecuting.Attorney@kingcounty.gov>; SPDContact@seattle.gov <SPDContact@seattle.gov>; jgreen@redmond.gov <jgreen@redmond.gov>; Keisha Hall <khall@allpointslegal.com>; althea.bryanfarr@bfhlegal.com <Althea.BryanFarr@bfhlegal.com>
**Subject:** RE: Final Notice Regarding Unauthorized Conduct and Formal Reporting

Dear Ms. McNae:

I must be able to communicate with you in writing.  I will continue to do so, because you refuse to take calls, and the Local Rules require us to work with each other.  The rules apply equally to the *pro se* parties as to the attorneys.

I have never said anything bad about your prior counsel.  You have fired multiple competent and loyal attorneys who you have chosen to smear in court filings.  That is your choice and right, and I express no opinion on whether your smears are truthful.

Me telling you that you are required to act with candor is not an ethical violation.  It is in fact the truth and ethical.  It is not meant to embarrasses you.

Good evening.

Sincerely,

**Peter E. Berlowe, Esq.**

**Business and Intellectual Property Litigation**



**Assouline & Berlowe, P.A.**

Miami Tower

100 SE 2nd Street, Suite 3650

Miami, Florida 33131

**Telephone: 305-567-5576**

**www.assoulineberlowe.com**

Intellectual Property, Labor & Employment Law,  Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication.  Thank you.

**From:** Ronda McNae <rondamcnae@gmail.com>
**Sent:** Tuesday, April 22, 2025 7:40 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Ronda McNae <prose.rmcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Ann Cosimano <ann.cosimano@aragalegal.com>; Mullaly, Michael T. <michael.mullaly@squirepb.com>; Benjamin Roesch <benjamin.roesch@jmblawyers.com>; Civil.Feedback@usdoj.gov; antitrust@ftc.gov; acap@floridabar.org; cpcomplaints@oic.wa.gov; iid.consumer@iid.iowa.gov; complaint@atg.wa.gov; Joaquin <JoaquinRodriguez@miamibeachfl.gov>; Alvarez, David <DavidAlvarez@miamibeachfl.gov>; Delgado, Edward <EdwardDelgado@miamibeachfl.gov>; Jones, Wayne <WayneJones@miamibeachfl.gov>; cc: Feldman, Steven <StevenFeldman@miamibeachfl.gov>; Rivero, Marlen <MarlenRivero@miamibeachfl.gov>; Rodriguez, Ernesto <ErnestoRodriguez@miamibeachfl.gov>; Will McNae <willmcnae@gmail.com>; Prosecuting.Attorney@ kingcounty.gov; SPDContact@seattle.gov; jgreen@redmond.gov; Keisha Hall <khall@allpointslegal.com>; althea.bryanfarr@bfhlegal.com
**Subject:** Re: Final Notice Regarding Unauthorized Conduct and Formal Reporting


Dear Mr. Berlowe,


Your April 21, 2025 email constitutes inappropriate, harassing, and retaliatory conduct that violates the basic standards of professional responsibility. Your personal attacks—including baseless accusations of "lack of candor," disparagement of my prior counsel, and threats that the Court will "grow tired" of my filings—are wholly improper and serve no legitimate legal purpose.


As you are fully aware, the Florida Rules of Professional Conduct prohibit conduct that has "no substantial purpose other than to embarrass, delay, or burden a third person" (Rule 4-4.4(a)). Your commentary is not only unprofessional but reflects an attempt to intimidate and retaliate against me for exercising my lawful right to seek relief from the Court as a pro se litigant. Such conduct is inconsistent with your obligations as an officer of the court and may constitute sanctionable behavior under Rule 3.5(d), which forbids conduct intended to disrupt a tribunal.


Accordingly, this serves as my formal demand that you immediately cease and desist from sending me any further direct email communications. Any future contact must occur through proper court filings or formal service channels.


Regards,


Ronda McNae

---

**From:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Sent:** Tuesday, April 22, 2025 4:19:13 PM
**To:** Ronda McNae <rondamcnae@gmail.com>
**Cc:** Ronda McNae <prose.rmcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Ann Cosimano <ann.cosimano@aragalegal.com>; Mullaly, Michael T. <michael.mullaly@squirepb.com>; Benjamin Roesch <benjamin.roesch@jmblawyers.com>; Civil.Feedback@usdoj.gov <Civil.Feedback@usdoj.gov>; antitrust@ftc.gov <antitrust@ftc.gov>; acap@floridabar.org <acap@floridabar.org>; cpcomplaints@oic.wa.gov <cpcomplaints@oic.wa.gov>; iid.consumer@iid.iowa.gov <iid.consumer@iid.iowa.gov>; complaint@atg.wa.gov <complaint@atg.wa.gov>; Joaquin <JoaquinRodriguez@miamibeachfl.gov>; Alvarez, David <DavidAlvarez@miamibeachfl.gov>; Delgado, Edward <EdwardDelgado@miamibeachfl.gov>; Jones, Wayne <WayneJones@miamibeachfl.gov>; cc: Feldman, Steven <StevenFeldman@miamibeachfl.gov>; Rivero, Marlen <MarlenRivero@miamibeachfl.gov>; Rodriguez, Ernesto

<ErnestoRodriguez@miamibeachfl.gov>; Will McNae <willmcnae@gmail.com>; Prosecuting.Attorney@ kingcounty.gov <Prosecuting.Attorney@kingcounty.gov>; SPDContact@seattle.gov <SPDContact@seattle.gov>; jgreen@redmond.gov <jgreen@redmond.gov>; Keisha Hall <khall@allpointslegal.com>; althea.bryanfarr@bfhlegal.com <Althea.BryanFarr@bfhlegal.com>
**Subject:** RE: Final Notice Regarding Unauthorized Conduct and Formal Reporting

Dear Mrs. McNae:

I have never said I represented you.  I only represent Mr. Fitzgerald and Ms. De Varona.

You invited all these people into your communications with me. You have yourself to blame if they learn the truth about you.  You are more free to continue to file frivolous filings with Judge Martinez, but you do so at your own peril.  I would imagine that a Federal District Court Judge will eventually grow tired of your lack of candor, even though you have now fired your third attorney, and representing yourself *pro se* again.  Truth matters even when you are pro se.

Have a good evening.

Sincerely,


**Peter E. Berlowe, Esq.**

**Business and Intellectual Property Litigation**



**Assouline & Berlowe, P.A.**

Miami Tower

100 SE 2nd Street, Suite 3650

Miami, Florida 33131

**Telephone: 305-567-5576**

**www.assoulineberlowe.com**


Intellectual Property, Labor & Employment Law,  Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy


Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication. Thank you.

---

**From:** Ronda McNae <rondamcnae@gmail.com>
**Sent:** Tuesday, April 22, 2025 6:03 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Ronda McNae <prose.rmcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Ann Cosimano <ann.cosimano@araglegal.com>; Mullaly, Michael T. <michael.mullaly@squirepb.com>; Benjamin Roesch <benjamin.roesch@jmblawyers.com>; Civil.Feedback@usdoj.gov; antitrust@ftc.gov; acap@floridabar.org; cpcomplaints@oic.wa.gov; iid.consumer@iid.iowa.gov; complaint@atg.wa.gov; Joaquin <JoaquinRodriguez@miamibeachfl.gov>; Alvarez, David <DavidAlvarez@miamibeachfl.gov>; Delgado, Edward <EdwardDelgado@miamibeachfl.gov>; Jones, Wayne <WayneJones@miamibeachfl.gov>; cc: Feldman, Steven <StevenFeldman@miamibeachfl.gov>; Rivero, Marlen <MarlenRivero@miamibeachfl.gov>; Rodriguez, Ernesto <ErnestoRodriguez@miamibeachfl.gov>; Will McNae <willmcnae@gmail.com>; Prosecuting.Attorney@ kingcounty.gov; SPDContact@seattle.gov; jgreen@redmond.gov; Keisha Hall <khall@allpointslegal.com>; althea.bryanfarr@bfhlegal.com
**Subject:** Re: Final Notice Regarding Unauthorized Conduct and Formal Reporting

Dear Mr. Berlowe,

There is no confusion here. Your response confirms my concern that you are deliberately reframing the issue. To be clear: this is not about the "forum" where you direct your emails — it is about your lack of authority to engage in these communications at all.

When I referenced "appropriate forums," I was referring to the legal and regulatory channels now reviewing these matters. It was not an invitation for you to continue sending unsolicited communications or to seek my direction on where to send them.

You do not represent me. You have no authority to negotiate on my behalf or to communicate with ARAG or any third party acting on their behalf regarding me, my litigation interests, or any proposed resolution of claims in Fitzgerald v. McNae or McNae v. ARAG Insurance Co.

I am not requesting that you "forward" your communications elsewhere. I am demanding that you cease all such communications entirely. Any continued attempt to involve ARAG, despite my explicit objection, will be treated as evidence of willful interference and bad-faith conduct. I reserve all rights to pursue appropriate remedies.

For the sake of transparency and to preserve the record, I intend to submit this correspondence, along with prior communications demonstrating your unauthorized interference, as part of my post-trial filings before Judge Martinez.

This is my final notice on the matter.

Regards,


Ronda McNae

---

**From:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Sent:** Tuesday, April 22, 2025 11:58:14 AM
**To:** Ronda McNae <rondamcnae@gmail.com>
**Cc:** Ronda McNae <prose.rmcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Ann Cosimano <ann.cosimano@araglegal.com>; Mullaly, Michael T. <michael.mullaly@squirepb.com>; Benjamin Roesch <benjamin.roesch@jmblawyers.com>; Civil.Feedback@usdoj.gov <Civil.Feedback@usdoj.gov>; antitrust@ftc.gov <antitrust@ftc.gov>; acap@floridabar.org <acap@floridabar.org>; cpcomplaints@oic.wa.gov <cpcomplaints@oic.wa.gov>; iid.consumer@iid.iowa.gov <iid.consumer@iid.iowa.gov>; complaint@atg.wa.gov <complaint@atg.wa.gov>; Joaquin <JoaquinRodriguez@miamibeachfl.gov>; Alvarez, David <DavidAlvarez@miamibeachfl.gov>; Delgado, Edward <EdwardDelgado@miamibeachfl.gov>; Jones, Wayne <WayneJones@miamibeachfl.gov>; cc: Feldman, Steven <StevenFeldman@miamibeachfl.gov>; Rivero, Marlen <MarlenRivero@miamibeachfl.gov>; Rodriguez, Ernesto <ErnestoRodriguez@miamibeachfl.gov>; Will McNae <willmcnae@gmail.com>; Prosecuting.Attorney@kingcounty.gov <Prosecuting.Attorney@kingcounty.gov>; SPDContact@seattle.gov <SPDContact@seattle.gov>; jgreen@redmond.gov <jgreen@redmond.gov>; Keisha Hall <khall@allpointslegal.com>; althea.bryanfarr@bfhlegal.com <Althea.BryanFarr@bfhlegal.com>
**Subject:** RE: Final Notice Regarding Unauthorized Conduct and Formal Reporting


Dear Mrs. McNae:


What forums should I direct my email?  Do you mean you copied all these people on this email chain, and they are not an appropriate forum?  I would be more than happy to forward my response and Judge Martinez's Orders to any relevant forum you direct me.


Sincerely,


**Peter E. Berlowe, Esq.**

**Business and Intellectual Property Litigation**



**ASSOULINE & BERLOWE, P.A.**

Miami Tower

100 SE 2nd Street, Suite 3650

Miami, Florida 33131

**Telephone: 305-567-5576**

www.assoulineberlowe.com

Intellectual Property, Labor & Employment Law,  Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication.  Thank you.

**From:** Ronda McNae <rondamcnae@gmail.com>
**Sent:** Tuesday, April 22, 2025 2:49 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Ronda McNae <prose.rmcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Ann Cosimano <ann.cosimano@araglegal.com>; Mullaly, Michael T. <michael.mullaly@squirepb.com>; Benjamin Roesch <benjamin.roesch@jmblawyers.com>; Civil.Feedback@usdoj.gov; antitrust@ftc.gov; acap@floridabar.org; cpcomplaints@oic.wa.gov; iid.consumer@iid.iowa.gov; complaint@atg.wa.gov; Joaquin <JoaquinRodriguez@miamibeachfl.gov>; Alvarez, David <DavidAlvarez@miamibeachfl.gov>; Delgado, Edward <EdwardDelgado@miamibeachfl.gov>; Jones, Wayne <WayneJones@miamibeachfl.gov>; cc: Feldman, Steven <StevenFeldman@miamibeachfl.gov>; Rivero, Marlen <MarlenRivero@miamibeachfl.gov>; Rodriguez, Ernesto <ErnestoRodriguez@miamibeachfl.gov>; Will McNae <willmcnae@gmail.com>; Prosecuting.Attorney@ kingcounty.gov; SPDContact@seattle.gov; jgreen@redmond.gov; Keisha Hall <khall@allpointslegal.com>; althea.bryanfarr@bfhlegal.com
**Subject:** Re: Final Notice Regarding Unauthorized Conduct and Formal Reporting

**Subject:** Re: Final Notice Regarding Unauthorized Conduct and Formal Reporting

Dear Mr. Berlowe,

Thank you for your response. I stand by the substance of my formal notice and accompanying complaints. Your reply does not address the central issue: that **ARAG**, as my legal insurance provider, cannot lawfully negotiate settlement terms involving my policy benefits or rights without my express written consent as the insured party. Regardless of your characterization, your firm's continued outreach to ARAG concerning matters directly impacting my litigation interests remains unauthorized and improper.

Your response notably avoids addressing the specific misconduct at issue—**unauthorized communications with ARAG regarding my policy rights**—and instead attempts to deflect by referencing rulings in the underlying litigation. The question before the regulatory bodies and the Court is not whether a judgment exists, but whether your firm's conduct, including **improper coordination with my insurer and settlement pressure outside my consent**, was lawful and ethical. The existence of a judgment does not excuse or insulate unethical behavior or shield against legitimate reporting to oversight agencies.

Additionally, your statement regarding "false police reports" is both inappropriate and unfounded. My reports to law enforcement have been made in **good faith,** are based on sworn testimony and documented evidence, and are fully within my lawful rights as a victim of potential misconduct. Attempts to dissuade or intimidate me from reporting through such accusations may themselves constitute **retaliation or witness tampering**, which could further expose your firm and your clients to liability under applicable laws. I will not be deterred from exercising my legal right to report misconduct to the appropriate civil and criminal authorities. Your characterization of these reports as "lies" is unsupported and appears

designed to **chill lawful reporting activity.** This tactic has been duly noted and will be included in my submissions to the regulatory bodies copied here.

Frankly, I would be more concerned about **your client Yelany De Verona-Fitzgerald, who knowingly filed a false affidavit intended to obstruct justice and derail a criminal investigation against your other client Mr. Fitzgerald—** an action which inevitably tipped the scales in these civil proceedings. These facts, supported by sworn testimony, remain at the core of the misconduct I have reported and are now subject to formal review.

I remind you that I have asserted all rights and protections as a reporting party under applicable federal and state law. My notice and the reports to the agencies copied here were submitted in **good faith** and remain supported by credible documentation.

I respectfully decline to engage further in debate over these points via email. All further correspondence on this issue should be directed to the appropriate forums where these matters are now under review.

**Sincerely,**
Ronda McNae


On Tue, Apr 22, 2025 at 11:05 AM Peter E. Berlowe <PEB@assoulineberlowe.com> wrote:

> Dear Mrs. McNae:
>
>
> Good afternoon and thank you for your email.  As litigation counsel for Mr. Fitzgerald and Ms. De Varona, we are free to engage in settlement discussions with whomever we like.  Such engagement is encouraged by the courts with respect to parties seeking to resolve their disputes out of court.  Such engagement is protected and privileged communication.  Regardless, our communication to ARAG did not concern you, but rather concerned William McNae.
>
>
> Furthermore, I remind you of some recent orders from Southern District of Florida Federal District Judge Martinez recently issued in your case with Mr. Fitzgerald, which I attach for your reference:  (1) Order granting Mr. Fitzgerald summary judgment as to liability against you (DE 310); (2) Order granting protective order against you due to your witness tampering and witness interference (DE 358); (3) Findings of Fact and Conclusions of Law as to the Amount of Damages you have caused Mr. Fitzgerald (DE 373); (4) Final Judgment in favor of Mr. Fitzgerald against you.  Based on hour our case is going, I am not concerned about our behavior or ethical conduct – cease your baseless threats.
>
>
> I also remind you, it is illegal to file false police reports and accuse people of crimes they did not commit. I assure you that that general statement of the law is true in Iowa, Miami, Redmond, Miami Beach, Seattle, San Francisco, or wherever else you care to spread your lies about Mr. Fitzgerald or Ms. De Varona.
>
>
> Please govern <u>yourself</u> accordingly.
>
>
> **Peter E. Berlowe, Esq.**
>
> **Business and Intellectual Property Litigation**
>
> 

**ASSOULINE & BERLOWE, P.A.**

Miami Tower

100 SE 2nd Street, Suite 3650

Miami, Florida 33131

**Telephone: 305-567-5576**

**www.assoulineberlowe.com**

Intellectual Property, Labor & Employment Law,  Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication.  Thank you.

---

**From:** Ronda McNae <prose.rmcnae@gmail.com>
**Sent:** Tuesday, April 22, 2025 1:03 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Ann Cosimano <ann.cosimano@araglegal.com>; Mullaly, Michael T. <michael.mullaly@squirepb.com>; Benjamin Roesch <benjamin.roesch@jmblawyers.com>
**Cc:** Civil.Feedback@usdoj.gov; antitrust@ftc.gov; acap@floridabar.org; cpcomplaints@oic.wa.gov; iid.consumer@iid.iowa.gov; complaint@atg.wa.gov; Joaquin <JoaquinRodriguez@miamibeachfl.gov>; to: Ronda McNae <rondamcnae@gmail.com>; Alvarez, David <DavidAlvarez@miamibeachfl.gov>; Delgado, Edward <EdwardDelgado@miamibeachfl.gov>; Jones, Wayne <WayneJones@miamibeachfl.gov>; cc: Feldman, Steven <StevenFeldman@miamibeachfl.gov>; Rivero, Marlen <MarlenRivero@miamibeachfl.gov>; Rodriguez, Ernesto <ErnestoRodriguez@miamibeachfl.gov>; Will McNae <willmcnae@gmail.com>; Prosecuting.Attorney@kingcounty.gov; SPDContact@seattle.gov; jgreen@redmond.gov
**Subject:** Final Notice Regarding Unauthorized Conduct and Formal Reporting

Dear Mr. Berlowe and Ms. Gussin,

*Counsel for Michael Fitzgerald and Yelany De Verona-Fitzgerald*

Please see my attached **final notice and cease-and-desist demand** regarding your firm's continued unauthorized communications with ARAG Legal Insurance and related misconduct. This letter outlines the documented pattern of improper coordination, ethical violations, and potential privacy breaches that have now required me to escalate this matter beyond prior warnings. Given the seriousness of these actions and your persistence despite repeated notice, I am forwarding this correspondence—together with supporting evidence—to the following authorities for formal review and investigation:

- The **Florida Bar Attorney Discipline Division;**
- The **Southern District of Florida** (in connection with my pending **Rule 59(e)/60(b) motion**);

- ○ The **Western District of Washington**, where *McNae v. ARAG Insurance Co.* is pending;
- ○ The **Miami Beach Police Department (MBPD)**, including the Detective(s) and officers actively involved, those who have been in direct communication with me, or those included by other officers in connection with these related issues;
- ○ The **King County Prosecuting Attorney's Office (Washington)**;
- ○ **Local Washington law enforcement authorities**, regarding privacy violations and retaliatory conduct;
- ○ The **Washington State Office of the Insurance Commissioner**, in connection with ARAG's conduct as a legal insurance provider and your firm's role in unauthorized settlement pressure and third-party interference; and
- ○ The **U.S. Department of Justice, Consumer Protection Branch**, regarding potential deceptive business practices, coercion, and misuse of settlement leverage across state lines.

This is **not speculative.** The attached letter outlines the specific conduct at issue and the legal grounds for these formal complaints. Please be advised that any further misconduct or unauthorized communications will be added to these pending investigations and regulatory reviews.

Sincerely,
**Ronda McNae**

*\*I am submitting the attached formal complaint in good faith and for the lawful purpose of reporting ongoing misconduct for regulatory and investigative review. I respectfully assert all applicable rights and protections as a reporting party. Please confirm receipt of this complaint and the attached supporting evidence\**

# Exhibit F

**Keisha Hall**

| | |
|---|---|
| **From:** | Peter E. Berlowe <PEB@AssoulineBerlowe.com> |
| **Sent:** | Wednesday, March 12, 2025 3:56 PM |
| **To:** | Althea  Bryan Farr; Meredith J. Gussin |
| **Cc:** | APL Assistant; ABF Legal Assistant; Keisha Hall |
| **Subject:** | RE: Emailing: DE 310 - Order Granting Plaintiff's Motion for Summary Judgment as to Liability (00422311xA4579).PDF |

Good afternoon again Althea:

As suspected, our client flatly rejected your client's offer.  This case is only going to settle where your client agrees either a payment from your client to my client, or entry of a judgment in my client's favor.  I suggest you come back with a meaningful offer where your client is offering payment of a settlement amount or a judgment in Fitzgerald's favor.

You may not be aware, but Federal Judge Martinez issued an Order today acknowledging that Mrs. McNae's claims of rape or sexual assault are false.

It may be easier to for us to discuss these matters on a call.  We truly do want to work this out with Mr. McNae, but my client has lost all appetite for the McNaes' false claims and there can be no settlement that doesn't have some actual acknowledgement that your client and his wife have some blameworthiness for their actions.  Whether that blameworthiness is expressed in terms of a dollar amount or a written statement of apology can be up to Mr. McNae.  If we speak on the phone, perhaps we as the lawyers can come up with a solution.

Sincerely,

Peter E. Berlowe, Esq.
**Business and Intellectual Property Litigation**



**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3650
Miami, Florida 33131
**Telephone: 305-567-5576**

**www.assoulineberlowe.com**

Intellectual Property, Labor & Employment Law,  Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this

# Exhibit G



10:21

JC

Jared

Text Message • SMS
Thu, Apr 10 at 11:55 AM

Hi Jared – hoping you and family are well. Happy pre-Easter.

I'm pinging you with a work question. I was under the understanding that PyraCloud became GoatPath. And then did it rebrand to the SWO Client Portal that I see on the website?

Fri, Apr 11 at 3:43 PM

Hey Will, sorry for the delay, I was driving my son home from college yesterday

we are doing well enough – how are you guys?

for the PyC -> GoatPath yes, but it's mostly been / being retired. The Client Portal is a new product set run by Max Kuzkin that is replacing a lot of the functionality GP was supposed to give, but didn't really deliver

for our marketplace and then we have a separate Services Portal

Text Message • SMS



# Exhibit H

EQUIP Counseling, PLLC

**Sarah Dellinger**
MS, LMFTA

██████████
License #: MG1- 60781074

10829 Ne 68th St, Suite D
Kirkland, Wa 98033

**Ronda McNae**
504 11th Place
Kirkland, Wa 98033


**EXHIBIT**
# 191

Date: 1/7/2022

This letter is intended to confirm the diagnosis, treatment and assault summary of the Patient listed above.

The Patient (RM) presented to evaluation (2/19/2020) with acute, distressing, paralyzing symptoms consistent with Post Traumatic Stress Disorder (309.81 or F43.11) following a reported sexual assault that occurred in October 2019. Client does not disclose details of assault until our second appointment on 2/20/2020.

Attached document will list Patient's most comprehensive recollection of the assault. Patient's memories have been fragmented at time; this very consistent with Patients who suffer from PTSD.

Symptoms consistent with diagnosis include intense flashbacks, hyperarousal, avoidance, emotional numbness, reexperiencing, hopelessness, as well as a racing heart and gagging/throwing up. Her daily functioning and relationships have been drastically impacted by these symptoms. Ronda has needed weekly, if not multiple sessions weekly, to manage symptoms. Husband (WM) joins our sessions on occasion and reports on how sexual assault has impacted his own functioning- both personally and professionally. He has since begun to see his own therapist and been able to identify to systemic impact on himself. Both report seeking multiple ways to find justice for the initial assault/it's impact and express deep frustration in the lack of response.

Our work together has been focused on acute trauma healing, coping skills, and stress-tolerance. Our treatment includes exploring ways to recognize triggers and tools to tolerate the symptoms themselves. Additionally, we explore how to heal from trauma long term- the use of EMDR and other trauma protocols has been discussed and will be used when Ronda is ready. Ronda is an active participant in our sessions. Ronda can easily become flooded in session but responds well to grounding techniques. I will continue to reevaluate progress and treatment strategy every 3 months.

Sincerely,

Sarah Dellinger



**Patient's recollection of the night of assault:**

- Patient and daughter flew to Miami to meet MF (Mike Fitzgerald)
- Patient left daughter with babysitter
- Patient went to a fancy dinner where, at one point, MF pulled her bun/head back and kissed her saying "you know you like that"
- Patient remembers saying NO
- Patient ran away from MF, remembers feeling unsafe
- Patient has a screenshot on phone of where she ran
- MF came to find her and put his hand insider her thigh
- Patient remember saying NO
- Patient remembers stumbling back into the hotel and being embarrassed that she was so tipsy
- Patient remembers interacting with the babysitter who recalls Patient being inebriated
- Patient remembers going up to rooftop to use hottub
  (the following are the details Patient remembers from the 1st sexual assault)
- She remembers putting on bathing suit and walking upstairs
- MF runs up the stairs ahead of Patient with two drinks in hands
- MF gets in hottub, begging Patient to get in
- Patient refuses to get in, feeling unsafe
- She says NO multiple times while sitting on chaise lounge chair
- MF slips getting out of the hottub
- MF's head is at Patient's knees
- MF's fingers are pulling Patient's bathing suit to the side near her crotch
- Patient slaps MF's hand away
- Patient says NO
- Patient closes knees
- MF continues to try
  (Patient's memory becomes more fragmented)
- Patient remembers seeing the sky, stars and cement
- Patient remembers slipping in the same water puddle
- Patient remembers walking back down the stairs
  (the following are the details Patient remembers from the 2nd sexual assault)
- Patient remembers MF's bedroom, his white bedding, his face, his naked body, his erect penis
- Patient remembers MF getting into shower
- Patient leaves the room
- Patient has no memories between approximately 2am-6:30am
- WM arrives at the Penthouse at approximately 6:30
- WM reports putting son to bed and sitting with patient on couch and being surprised she naked under her robe
- WM reports that MF did not seem inebriated at all
- WM and patient have intercourse in the shower and WM remembers that patient complained that penetration hurt which is unusual for patient
- Patient had no recollection of having sexual relations with her husband the next morning
- MF told Patient to get a 'morning after pill' the next day

2

CONFIDENTIAL                    EQUIP 000002

# EQUIP COUNSELING, PLLC

## PROGRESS NOTES

| | | | |
|---|---|---|---|
| **Client:** Ronda McNae (RM00093) | | **Birth Date:** | 04/04/1986 |
| **Service Date:** 10/07/2024 11:00 AM - 12:00 PM | | **Duration:** | 60 minutes |
| **Provider(s):** Owner Sarah Dellinger, MS, LMFT (NPI: ███████) | | | |
| **Insurer(s):** | | | |
| **Place Of Service:** Office | **CPT Code:** | **Case #** | **RMC2000** |

| | | | | |
|---|---|---|---|---|
| Appearance: | WNL | | Orientation: | WNL |
| Behavior: | agitated | | Speech: | WNL |
| Affect: | expansive | | Mood: | anxious: moderate |
| Thought Process: | circumstantial | | Thought Content: | WNL |
| Perception: | WNL | | Judgment: | WNL |
| Insight: | WNL | | Appetite: | WNL |
| Sleep: | WNL | | | |
| Suicidality | Not Present | | Homicidality | Not Present |

**Diagnostic Impressions:**

**Diagnosis code**                                              **Diagnosis description**

309.81 (F43.12) Post Traumatic Stress Disorder - Chronic

**Focus of Session:**

Client reports to in person session moderately distressed. She reports that lawyer has withdrawn from her case. She gags in session and ends up leaving office to throw up outside. Client reports increased episodic gagging outside of session. Client reports that she ordered a copy of my deposition that she realized had not been ordered- client gets very emotional about this. Client is able to be regulated in session. No immediate danger.

**Therapeutic Intervention:**

**Planned Intervention:**

Return Appointment:

Staff Signature: *Sarah Dellinger*
Owner Sarah Dellinger, MS, LMFT Therapist
I approve this document
Signed: 12/05/2024 02:32 PM CT

# Exhibit I

## Single Key Email (March 4, 2025)

Womble's direct conflict of interest admission:

*"We cannot touch this matter with ARAG at all as it would create a conflict."*

Re: Important Update – Washington State OIC Investigation Opened Against ARAG  Inbox ×

**Nichelle Womble** <nichella@amethystlawgroup.com>                                    Tue, Mar 4, 6:01AM   ☆   ☺   ↩   ⋮

to me ▾

Good morning
We cannot touch this matter with arag at all as it would create a conflict.

Thank you,

Nichelle L. Womble Esq., M.S.Ed

Attorney │ Florida │ Washington D.C.

T: (844) 482 - 1239 W: www.amethystlawgroup.com
F:(813)200-1811
│
Amethyst Law Group, LLC
80 S.W. 8th Street, Suite 2000  │  Miami, FL 33130 (844) 482 - 1239
100 South Ashley Drive, Suite 600 | Tampa, FL 33602 | (844) 482 - 1239
603 E Fort King St, │ Ocala, FL 34471 (844) 482-1239
1704 Aurora Road | Melbourne, FL 32935 | (321) 600 - 4931
The information contained in this electronic mail transmission is intended by Amethyst Law Group for the use of the named individual or entity to which it is directed and may contain information that is privileged or otherwise confidential. It is not intended for transmission to, or receipt by, anyone other than the named addressee. It should not be copied or forwarded to any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying or forwarding it, and notify the sender of the error by reply email or by calling Amethyst Law Group at (844) 482 - 1239, so that our address record can be corrected.

On Sat, Mar 1, 2025, 4:05 PM Ronda McNae <prose.mcnae@gmail.com> wrote:

Dear Nichelle,

I wanted to make you aware that I have just received confirmation from the **Washington State Office of the Insurance Commissioner ("OIC")** that they have opened an investigation into my complaint against **ARAG Legal Insurance**. The OIC is requesting copies of the policy, plan documents, and related materials to begin their formal review. (email below). This is referred to through my Motion to Dismiss in this Florida Action. I was encouraged to alert the Judge in Florida about this update as soon as possible.

This investigation is directly tied to the issues we have raised in our pending litigation, including **ARAG's bad faith handling of my legal benefit plan, wrongful termination of coverage, and refusal to properly handle my claims and legal representation.** The OIC has referenced potential violations of **Title 48 RCW** and **Title 284 WAC**, which aligns with the findings in **Mary Owen's expert report (also attached).**

I wanted to ensure you have this update, as I believe it may be important for the court to know this regulatory review is now formally underway.

Please let me know if you would like me to forward the actual OIC email or if there's anything you would like me to do to ensure this information is properly brought to the court's attention.

Thank you, and I appreciate your guidance on how best to proceed.

**Sincerely,**
Ronda McNae



# Exhibit J-1

**February 28, 2025 Email – OIC Complaint Acknowledgement**

## OIC investigation confirmation

In addition to the **February 28, 2025** OIC acknowledgment of my complaint, Exhibit B includes an April 17, 2025 follow-up email from the Washington State Office of the Insurance Commissioner (OIC), confirming that while they lack jurisdiction over ARAG's legal service plan, the matter was serious enough to be referred to their Market Conduct team for further evaluation of broader insurance-related issues. This regulatory response reinforces the materiality of my coverage dispute and the real harm caused by my counsel's conflict of interest. It further demonstrates that my concerns were not speculative but warranted formal attention by consumer protection authorities.

WA OIC Case 1749068  » [inbox x]                                                    🖨 [

**OIC Investigation Request** <InvestigationR@oic.wa.gov>                          Fri, Feb 28, 11:15 AM (1 day ago)   ☆  ☺  ↩
to me ▾

Dear Ronda,

The Washington State Office of the Insurance Commissioner ("OIC") has received the complaint that you filed against **ARAG Legal Insurance**. We need to obtain additional information from you in order to determine if we can initiate an investigation into this matter, with predication of an insurance code violation (Title 48 RCW and Title 284 WAC).

Please provide us with the following documents:

  • A copy of the policy / plan documents – application / contract – policy declaration.

You may attach documents in a reply to this email, or by faxing to 360.664.2782 – Attn: Investigations Unit.

Your cooperation and prompt response are greatly appreciated, let me know if you have any questions.

Please send responses to investigationr@oic.wa.gov.

Sincerely,



**Cheryl Common**
*Intake Analyst -- Investigations Unit*
*Legal Affairs Division*
*Washington State Office of the Insurance Commissioner*
Phone: 360.725.7185
cheryl.common@oic.wa.gov

**Protecting Insurance Consumers**
www.insurance.wa.gov | twitter.com/WA_OIC | email/text alerts

# Exhibit J-2

**April 17, 2025 OIC Email Confirming Jurisdiction Limitation and Market Conduct Referral**

As reflected in Exhibit B-2, although the Washington State Office of the Insurance Commissioner concluded that ARAG's legal services plan falls outside their strict regulatory jurisdiction, the agency nonetheless referred the matter to its Market Conduct team for further review, recognizing the seriousness of the complaint. This supports Defendant's argument that the coverage dispute was material and prejudiced her access to effective legal counsel.

OIC Case 1749068 ≫ [Inbox ×]

← OIC Investigation Request                                    Thu, Apr 17, 2:24 PM (5 days ago)  ☆  ☺  ↩  ⋮
to me ▾

Dear Ronda,

Thank you for contacting the OIC with your complaint against ARAG Insurance Company.

Our Investigations Unit has reviewed the complaint filed against **ARAG Insurance Company** and has examined all applicable WA Insurance law and rules. Unfortunately, it's been determined we are unable to open an investigation in this matter, as it falls outside our jurisdiction. There are many complexities involved because we do have jurisdiction over the Insurance Company, however we do not have jurisdiction over pre-paid legal products / Legal plans as they have exemption under the state's law, RCW 48.01.290(2). The legal service contractors (attorney's) are not the insurer under RCW 48.01.050 and legal service plans are not insurance under RCW 48.01.040.
This is restrictive to OIC's authority over the conduct of the legal service contractors (attorneys) in terms of their compliance or adherence to a contract under which we don't consider an insurance product or insurance transaction.
Their obligations under the legal plan are defined by a contract between the Insurance Company and the attorney's, formed into a "network" of service providers.
It does not classify as true "insurance" but instead is a service contract that we don't regulate. It's an unfortunate 'void'.

Even though we are not opening an investigation, our unit is referring this matter to our Market Conduct team for a closer look at bigger picture company components, sales, products, complaints, etc.. Their work is confidential, and the results of their findings will not be shared publicly.
There will not be any follow up with you from that unit, but we do want you to know we take your complaint seriously and will take this extra step as dedication to our mission in consumer advocacy and protection.  We appreciate you taking the time to report to us, and we are sorry for the inability to do more for you in this matter.

We know this is not the outcome you hoped for. We do wish you the best.

Kindly,



**Investigations Unit**
*Legal Affairs Division*
*Washington State Office of the Insurance Commissioner*
investigationr@oic.wa.gov

# Exhibit K

**April 11, 2025 Emails from Trial Counsel Regarding Alleged Failure to Engage**

This exhibit contains the April 11, 2025 email from Defendant's trial counsel, Nichelle Womble, asserting that Defendant failed to participate in trial preparation and that "multiple attempts to reach out" were made. Defendant challenges the accuracy of these claims, which are directly contradicted by phone records and billing evidence.

Womble blames Ms. McNae for "failure to engage" and claims "multiple attempts to reach you."

**Core misrepresentation by counsel blaming Defendant for alleged nonparticipation.**
**Foundation for the fraud/misconduct claim under Rule 60(b)(3).**

**Nichelle Womble**          Fri, Apr 11, 4:26 PM (11 days ago)    ☆            ⋮

to Ronda, Shaunna, me, Sally, Shaunna, Amir ▾

Additionally we explained to you multiple times there was no trial preparation to do with you as neither you or your husband would be testifying and you Additionally had no defenses. We also told you multiple times what trial strategy was going to be. You attempted to assist in preparation but every single document you attempted to use or send was inadmissible, hearsay, or irrelevant. You were told multiple times in writing how trial was going to go but instead of listening to legal advice you insisted on going to trial. You continued throughout this process to continuously circumvent legal advice and behave as a pro se litigant outside of court despite our numerous warnings to you that your behavior was detrimental and would continuously be detrimental to your case. Our office also made multiple attempts to reach out to you before trial to explain everything that was sent in writing and each time calls were not returned to Shaunna or myself and you said multiple times you were not available due to whatever health issues you were dealing with at that time. Our office not only defended you with no defense and a poorly built case we competently defended you and did so not only ethically at all times but to the best of our ability with what we had. You continue to make baseless accusations and claims and continue to have outside communications with other attorneys and fail to present every aspect. You also continue to discuss with appellate Counsel who has made it clear he is not retained and therefore there was absolutely no way or reason for is to confer on strategy with someone who is not retained to take over once completed.

Thank you,

Nichelle L. Womble Esq., M.S.Ed

On Fri, Apr 11, 2025, 7:13 PM Nichelle Womble <nichelle@amethystlawgroup.com> wrote:

> Respectfully your appellate counsel is not licensed here and we therefore do not take advice from outside attorneys. Additionally we are required that you requested to terminate counsel we are not required to cite the specific rules. The Judge is well aware we are mandated to withdraw upon request of termination. Per the rules which your other counsel clearly failed to advise you of regardless of whether it is mandated if the Judge denies it that is final. The Judge can require counsel to stayon a case regardless of permissive or mandated rules which he did. So as per the Judge's orders we will continue to do what the Court has ordered. Have a good weekend.
>
> Thank you,
>
> Nichelle L. Womble Esq., M.S.Ed

**Ronda McNae**                    📧 Fri, Apr 11, 9:52 PM (11 days ago)   ☆   ☺   ↩   ⋮
to Nichelle, Shaunna, me, Sally, Shaunna, Amir ▾

Nichelle,

I'd also like to point out that nearly all of our communication has taken place via email. The most you spoke to me while in town for trial was in front of the Judge, as I tried to object to preserve my rights on the record, since you refused after my emails regarding the topic of a former SWO employee testifying. My entire family witnessed your dismissive demeanor—barely offering a hello on the first day of the bench trial then being 15 minutes late the second day of trial. I hoped at the least you would have apologized to the Court.

Your recent email feels more like a CYA move than genuine communication.

For the record, acting as a pro se litigant isn't a flaw when I've been forced into that role due to the failures of my legal insurance from the outset. I know this case inside and out. I personally had to locate and raise documentation on "punitive damages," just one of many tactics you used to pressure me into settling.

Also, here is Walter Bernard's certification to practice in the Southern District of Florida's appellate court, since that was yet another point you chose to dispute. I'm frankly embarrassed that I even had to request this from Mr. Bernard—something that should never have been in question. The fact that it was speaks volumes about the breakdown in our relationship. It reflects a clear loss of trust, diminished confidence in your judgment and advocacy, an irretrievable breakdown in communication, and ongoing concerns regarding professionalism, ethics, and potential conflicts of interest.

If you are unable to communicate with a basic level of kindness and professionalism, then I believe it would be more productive for Amir to take over all further communications. I remain deeply concerned that you will not collaborate on the final submission, given that you haven't done so to date—nor have you allowed me to review filings before submission. Neither of the attorneys before you ever excluded me in that way.

That said, I hope we can move forward with mutual respect and a shared commitment to ensuring the final submission reflects the full and fair record. I don't want to feel like you continue to punish me as a consequence for not going with a settlement.

I remain open to constructive communication and sincerely hope we can end this process on a more collaborative note.


Respectfully,

Ronda

# Exhibit L

**Billing Records Submitted by Trial Counsel Claiming Pretrial Communications**

This exhibit contains billing records submitted by Defendant's trial counsel, Nichelle Womble, purporting to show multiple time entries for pretrial phone calls with Defendant between January and April 2025. These entries are directly rebutted by the absence of such calls in Defendant's phone records (see Exhibit D). The inconsistency between these billing records and the objective phone logs supports Defendant's claim of fraud, misrepresentation, and ineffective assistance of counsel.

Re: Termination of Legal Representation – Case No. 1:22-cv-22171-JEM

Inbox

↩ **Nichelle Womble**                                    Fri, Apr 11, 4:26 PM (11 days ago)   ☆   ☺   ↩   ⋮
to me, Shaunna, Ronda, Sally, Shaunna, Amir ▾

Additionally we explained to you multiple times there was no trial preparation to do with you as neither you or your husband would be testifying and you Additionally had no defenses. We also told you multiple times what trial strategy was going to be. You attempted to assist in preparation but every single document you attempted to use or send was inadmissible, hearsay, or irrelevant. You were told multiple times in writing how trial was going to go but instead of listening to legal advice you insisted on going to trial. You continued throughout this process to continuously circumvent legal advice and behave as a pro se litigant outside of court despite our numerous warnings to you that your behavior was detrimental and would continuously be detrimental to your case. Our office also made multiple attempts to reach out to you before trial to explain everything that was sent in writing and each time calls were not returned to Shaunna or myself and you said multiple times you were not available due to whatever health issues you were dealing with at that time. Our office not only defended you and did so not only ethically at all times but to the best of our ability with what we had. You continue to make baseless accusations and claims and continue to have outside communications with other attorneys and fail to present every aspect. You also continue to discuss with appellate Counsel who has made it clear he is not retained and therefore there was absolutely no way or reason for is to confer on strategy with someone who is not retained to take over once completed.

Thank you,

Nichelle L. Womble Esq., M.S.Ed

1. Counsel's Email (April 11, 2025):
   Ms. Womble's email asserts that her office made "multiple attempts to reach out to you before trial to explain everything that was sent in writing and each time calls were not returned…" implying that substantive trial discussions and calls occurred or were attempted.
2. Counsel's Billing Records (Redacted):
   The billing records submitted by Ms. Womble claim multiple time entries for "Phone call with client: Reiterated prior emails, discussed behaviors, and offered legal advice" between January and February 2025. These entries appear to represent repeated communications with me regarding trial strategy and preparation.
3. My Verizon Phone Records (January–February 2025):
   Attached Verizon call logs for my phone number (206-914-6752) reflect no record of any incoming or outgoing calls with Ms. Womble's office phone numbers during the same periods billed. These records document:
   - No phone calls matching the billed dates/times in January or February 2025.
   - No evidence that these calls occurred, contradicting counsel's billing entries and representations to the Court.

Contradiction Between Billing and Actual Call Activity:
The absence of these calls in my carrier's official phone records calls into serious question the accuracy of the time entries submitted by Ms. Womble and the truthfulness of her assertion that she provided oral trial guidance or engaged in the claimed discussions. This undermines her position that my lack of preparation was the result of my own failure to respond or engage

The highlighted entries on Ms. Womble's billing invoice reflect time charges that were originally redacted by Ms. Womble when she provided me, her client, with copies of my billing records during the course of her representation. These redactions concealed key billing entries that are now central to my claim of billing fraud and misrepresentation, as they directly contradict counsel's assertions regarding the nature and extent of trial preparation and client communication. The deliberate withholding of this information prevented me from fully assessing the accuracy and legitimacy of the fees being charged at the time they were incurred.

| Date | Description | Hours |
|---|---|---|
| 1/20/2025 | Phone call with client: Reiterated prior emails, discussed behaviors, and offered legal advice | 0.45 |
| 1/23/2025 | Correspondence with opposing counsel regarding scheduling | 0.59 |
| 1/25/2025 | Phone call with client: Reiterated prior emails, discussed behaviors, and offered legal advice | 0.59 |
| 1/27/2025 | Draft summary of legal research findings | 1.2 |
| 1/29/2025 | Legal research on case-specific precedents | 3.23 |
| 1/30/2025 | Legal research on case-specific precedents | 3.28 |
| 1/30/2025 | Discovery management and organization | 2.48 |
| 1/31/2025 | Drafting legal strategy memo | 0.56 |
| 1/31/2025 | Technical prep for virtual deposition or hearing | 0.49 |
| 2/1/2025 | Phone call with client: Reviewed concerns, explained legal implications, and discussed next steps | 0.66 |
| 2/1/2025 | Case strategy session with paralegal | 0.75 |
| 2/2/2025 | Internal memo drafting on legal positions | 1.42 |
| 2/3/2025 | Organize deposition exhibits for digital access | 0.43 |
| 2/3/2025 | Coordination meeting with litigation support | 1.16 |
| 2/4/2025 | Technical prep for virtual deposition or hearing | 0.89 |
| 2/4/2025 | Legal research on case-specific precedents | 4.92 |
| 2/5/2025 | Case strategy session with paralegal | 1.04 |
| 2/6/2025 | Legal research on case-specific precedents | 4.58 |
| 2/6/2025 | Coordinate with expert for testimony availability | 0.81 |
| 2/7/2025 | Legal research on case-specific precedents | 2.94 |
| 2/8/2025 | Internal memo drafting on legal positions | 2.18 |
| 2/9/2025 | Internal memo drafting on legal positions | 1.84 |
| 2/9/2025 | Phone call with client: Reiterated prior emails, discussed behaviors, and offered legal advice | 0.92 |

## Completely fabricated billing charges

| Date | Description |
|---|---|
| 4/5/2025 | Final client check-in: confirm witness appearance and trial attire |
| 4/9/2025 | Client follow-up meeting to discuss trial progress and next steps |

**Talk activity (cont.)**

**Ronda McNae**
206-914-6752
Apple iPhone 13 Pro

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|---|---|---|---|---|---|---|---|---|
| Jan 17 | 2:50 PM | 425-941-4711 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 17 | 2:59 PM | 425-941-4711 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:07 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:07 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:08 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:08 PM | 425-941-7374 | Kirkland, WA | Incoming, CL | 3 | -- | -- | -- |
| Jan 17 | 3:13 PM | 425-223-1232 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 11:09 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 18 | 11:32 AM | 425-941-7374 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 11:59 AM | 206-522-5391 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 12:07 PM | 425-941-7374 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 12:50 PM | 425-941-7374 | Bellevue, WA | Bellevue, WA | 2 | -- | -- | -- |
| Jan 18 | 12:53 PM | 425-761-6970 | Mercer Isl, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 19 | 5:47 PM | 253-332-9566 | Bellevue, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 19 | 7:26 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 21 | 5:22 PM | 206-743-7810 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 21 | 5:26 PM | 206-743-7810 | Kirkland, WA | Seattle, WA | 2 | -- | -- | -- |
| Jan 22 | 9:15 AM | 206-467-0030 | Kirkland, WA | Seattle, WA | 6 | -- | -- | -- |
| Jan 22 | 9:55 AM | 206-920-7000 | Kirkland, WA | Incoming, CL | 29 | -- | -- | -- |
| Jan 22 | 10:30 AM | 206-957-2515 | Kirkland, WA | Seattle, WA | 1 | -- | -- | -- |
| Jan 22 | 10:31 AM | 206-957-2515 | Kirkland, WA | Seattle, WA | 1 | -- | -- | -- |
| Jan 22 | 11:51 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 24 | -- | -- | -- |
| Jan 22 | 12:55 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 26 | -- | -- | -- |
| Jan 22 | 1:39 PM | 202-551-4500 | Kirkland, WA | Washington, DC | 2 | -- | -- | -- |
| Jan 23 | 1:31 PM | 415-780-6206 | Kirkland, WA | Incoming, CL | 54 | -- | -- | -- |
| Jan 25 | 9:46 AM | 206-803-8733 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 26 | 10:06 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 3 | -- | -- | -- |
| Jan 27 | 5:24 PM | 425-941-7374 | Bellevue, WA | Bellevue, WA | 3 | -- | -- | -- |
| Feb 1 | 4:12 PM | 954-706-8631 | Seattle, WA | Ft Lauderdl, FL | 22 | -- | -- | -- |

**verizon**

Account: 264643004-00001
Invoice: 5248519294
Billing period: Feb 7 - Mar 6, 2025

**Talk activity**

**Ronda McNae**
206-914-6752
Apple iPhone 13 Pro

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|---|---|---|---|---|---|---|---|---|
| Feb 7 | 4:06 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Feb 7 | 4:54 PM | 253-332-9566 | Kirkland, WA | Incoming, CL | 5 | -- | -- | -- |
| Feb 8 | 12:02 PM | 866-904-6300 | Kirkland, WA | Toll-Free, CL | 2 | -- | -- | -- |
| Feb 9 | 9:52 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Feb 9 | 1:21 PM | 253-332-9566 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 10 | 2:27 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |

Verizon phone records (see Exhibit D), no such phone calls occurred between my phone number (206-914-6752) and Ms. Womble's office line during the dates and times reflected in the billing entries. This clear discrepancy between the billing records and my phone carrier's official call logs directly undermines counsel's assertions that I failed to engage or respond. To the contrary, the evidence shows that these claimed trial preparation discussions were fabricated or grossly misrepresented in counsel's billing. The concealment of these billing entries through redaction prevented me from identifying these false charges earlier and obstructed my ability to challenge the accuracy of counsel's representations at a critical stage of the litigation. This evidence directly supports my request for relief under Rule 59(e)/60(b)(3) based on fraud, misrepresentation, and misconduct by prior counsel.

# Exhibit M

## Verizon Phone Record

This exhibit contains certified Verizon call logs for Defendant's phone number (206-914-6752), covering the relevant periods from January through April 2025. These records reflect no incoming or outgoing calls from counsel's office during the dates and times when calls were claimed in billing records and asserted in counsel's April 11, 2025. These phone logs directly contradict counsel's statements and time entries, supporting Defendant's motion for relief under Rule 60(b)(3)

Note Regarding Call Log Records:

*Defendant has attached herein the relevant portions of her Verizon phone records for the critical pretrial period, specifically demonstrating the absence of any calls between Defendant and former counsel, Nichelle Womble, on the dates referenced in counsel's billing entries and written claims. Defendant respectfully represents that the complete phone records for the full relevant time period are available and can be provided upon request should the Court desire a more comprehensive review of the call history for verification purposes.*

## Talk activity (cont.)

**Ronda McNae**
**206-914-6752**
**Apple iPhone 13 Pro**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Jan 17 | 2:50 PM | 425-941-4711 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 17 | 2:58 PM | 425-941-4711 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:07 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:07 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:08 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:08 PM | 425-941-7374 | Kirkland, WA | Incoming, CL | 3 | -- | -- | -- |
| Jan 17 | 3:16 PM | 425-223-1232 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 11:09 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 18 | 11:32 AM | 425-941-7374 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 11:59 AM | 206-522-5391 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 12:07 PM | 425-941-7374 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 12:50 PM | 425-941-7374 | Bellevue, WA | Bellevue, WA | 2 | -- | -- | -- |
| Jan 18 | 12:53 PM | 425-761-0970 | Mercer Isl, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 19 | 5:17 PM | 253-332-9566 | Bellevue, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 19 | 7:26 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 21 | 5:22 PM | 206-743-7810 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 21 | 5:26 PM | 206-743-7810 | Kirkland, WA | Seattle, WA | 2 | -- | -- | -- |
| Jan 22 | 9:15 AM | 206-467-6090 | Kirkland, WA | Seattle, WA | 6 | -- | -- | -- |
| Jan 22 | 9:55 AM | 206-920-7000 | Kirkland, WA | Incoming, CL | 29 | -- | -- | -- |
| Jan 22 | 10:30 AM | 206-957-2515 | Kirkland, WA | Seattle, WA | 1 | -- | -- | -- |
| Jan 22 | 10:31 AM | 206-957-2515 | Kirkland, WA | Seattle, WA | 1 | -- | -- | -- |
| Jan 22 | 11:51 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 24 | -- | -- | -- |
| Jan 22 | 12:55 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 26 | -- | -- | -- |
| Jan 22 | 1:39 PM | 202-551-4500 | Kirkland, WA | Washington, DC | 2 | -- | -- | -- |
| Jan 23 | 1:31 PM | 415-710-8206 | Kirkland, WA | Incoming, CL | 54 | -- | -- | -- |
| Jan 25 | 9:46 AM | 206-803-8733 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 26 | 10:06 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 3 | -- | -- | -- |
| Jan 27 | 5:24 PM | 425-941-7374 | Bellevue, WA | Bellevue, WA | 3 | -- | -- | -- |
| Jan 28 | 3:46 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 28 | 5:14 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 28 | 6:57 PM | 425-941-7374 | Bellevue, WA | Bellevue, WA | 3 | -- | -- | -- |
| Jan 29 | 1:41 PM | 425-941-7374 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 29 | 4:38 PM | 425-814-4167 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 30 | 8:39 AM | 206-238-0434 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 30 | 2:39 PM | 425-941-4711 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 30 | 3:51 PM | 425-223-1232 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 30 | 3:52 PM | 425-223-1232 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 31 | 11:17 AM | 425-936-2590 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 1 | 4:12 PM | 954-706-8831 | Seattle, WA | Filauderdl, FL | 22 | -- | -- | -- |
| Feb 2 | 2:52 PM | 425-643-2613 | Seattle, WA | Bellevue, WA | 1 | -- | -- | -- |
| Feb 2 | 2:52 PM | 425-643-2613 | Seattle, WA | Bellevue, WA | 1 | -- | -- | -- |

# verizon

Account: 264643004-00001
Invoice: 5248519294
Billing period: Feb 7 - Mar 6, 2025

## Talk activity

**Ronda McNae**
**206-914-6752**
**Apple iPhone 13 Pro**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Feb 7 | 4:06 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Feb 7 | 4:54 PM | 253-332-9566 | Kirkland, WA | Incoming, CL | 5 | -- | -- | -- |
| Feb 8 | 12:02 PM | 866-904-6300 | Kirkland, WA | Toll-Free, CL | 2 | -- | -- | -- |
| Feb 9 | 9:52 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Feb 9 | 1:21 PM | 253-332-9566 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 10 | 2:27 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Mar 3 | 7:43 PM | 253-332-9566 | Seattle, WA | Incoming, CL | 19 | -- | -- | -- |
| Mar 4 | 4:00 PM | 206-406-6104 | Kirkland, WA | Incoming, CL | 11 | -- | -- | -- |
| Mar 4 | 5:05 PM | 425-941-7374 | Kirkland, WA | Incoming, CL | 3 | -- | -- | -- |
| Mar 4 | 5:34 PM | 425-899-5200 | Kirkland, WA | Kirkland, WA | 1 | -- | -- | -- |
| Mar 5 | 11:59 AM | 425-822-9202 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Mar 6 | 7:25 AM | 308-257-8304 | Kirkland, WA | Incoming, CL | 2 | -- | -- | -- |
| Mar 6 | 10:50 AM | 813-387-5422 | Kirkland, WA | Incoming, CL | 15 | -- | -- | -- |
| Mar 6 | 12:05 PM | 305-673-7900 | Kirkland, WA | Miami, FL | 1 | -- | -- | -- |
| Mar 6 | 12:07 PM | 305-673-7900 | Kirkland, WA | Miami, FL | 4 | -- | -- | -- |
| Mar 6 | 12:12 PM | 305-673-7900 | Kirkland, WA | Miami, FL | 2 | -- | -- | -- |

# verizon

Account: 264643004-00001
Invoice: 5248519294
Billing period: Feb 7 - Mar 6, 2025

## Talk activity (cont.)

**Ronda McNae**
**206-914-6752**
**Apple iPhone 13 Pro**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Mar 6 | 12:19 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 19 | -- | -- | -- |
| Mar 6 | 5:15 PM | 858-774-6950 | Kirkland, WA | Rncho bmdo, CA | 1 | -- | -- | -- |
| Mar 6 | 5:27 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 2 | -- | -- | -- |
| Mar 6 | 5:54 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 6 | 8:22 PM | 253-332-9566 | Kirkland, WA | Auburn, WA | 2 | -- | -- | -- |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Mar 12 | 6:29 AM | 813-387-5422 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Mar 12 | 8:46 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Mar 12 | 10:37 AM | 425-861-6281 | Kirkland, WA | Redmond, WA | 5 | -- | -- | -- |
| Mar 12 | 11:19 AM | 425-503-9813 | Kirkland, WA | VM Deposit, CL | 1 | -- | -- | -- |
| Mar 12 | 11:21 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 49 | -- | -- | -- |
| Mar 12 | 12:14 PM | 813-387-5422 | Kirkland, WA | Tampacan, FL | 85 | -- | -- | -- |
| Mar 12 | 1:39 PM | 813-387-5422 | Kirkland, WA | Tampacan, FL | 1 | -- | -- | -- |
| Mar 12 | 1:40 PM | 813-387-5422 | Kirkland, WA | Incoming, CL | 8 | -- | -- | -- |
| Mar 13 | 8:03 AM | 858-774-6950 | Kirkland, WA | Rnchobrndo, CA | 1 | -- | -- | -- |
| Mar 13 | 8:32 AM | 305-673-7900 | Kirkland, WA | Miami, FL | 2 | -- | -- | -- |
| Mar 13 | 8:33 AM | 305-673-7900 | Kirkland, WA | Miami, FL | 3 | -- | -- | -- |
| Mar 13 | 8:41 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 20 | -- | -- | -- |
| Mar 13 | 9:42 AM | 305-673-7900 | Kirkland, WA | Miami, FL | 4 | -- | -- | -- |
| Mar 13 | 11:55 AM | 425-869-8067 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Mar 13 | 12:57 PM | 515-402-4613 | Redmond, WA | Urbandale, IA | 3 | -- | -- | -- |
| Mar 13 | 3:09 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 13 | 3:12 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 13 | 3:18 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |

| | | | | | |
|---|---|---|---|---|---|
| Mar 19 | 12:50 PM | 813-387-5422 | Kirkland, WA | Incoming, CL | 23 |
| Mar 19 | 9:27 AM | 813-387-5422 | Kirkland, WA | Incoming, CL | 39 | -- |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Mar 20 | 8:27 AM | 786-878-1912 | Kirkland, WA | Incoming, CL | 5 | -- | -- | -- |
| Mar 20 | 10:16 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 58 | -- | -- | -- |
| Mar 20 | 11:30 AM | 425-503-9813 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 20 | 11:31 AM | 425-503-9813 | Kirkland, WA | Incoming, CL | 40 | -- | -- | -- |
| Mar 20 | 12:38 PM | 206-406-6104 | Kirkland, WA | Seattle, WA | 2 | -- | -- | -- |
| Mar 20 | 2:43 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 63 | -- | -- | -- |
| Mar 20 | 7:35 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 20 | 8:09 PM | 425-503-9813 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 21 | 2:04 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Mar 22 | 9:56 AM | 425-503-9813 | Seattle, WA | Bellevue, WA | 6 | -- | -- | -- |
| Mar 22 | 10:02 AM | 425-503-9813 | Seattle, WA | Bellevue, WA | 6 | -- | -- | -- |
| Mar 22 | 12:08 PM | 425-941-7374 | Seattle, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 23 | 7:36 PM | 425-503-9813 | Kirkland, WA | Bellevue, WA | 6 | -- | -- | -- |
| Mar 24 | 9:01 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 24 | 9:20 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 24 | 11:03 AM | 657-622-6878 | Kirkland, WA | Santa Ana, CA | 5 | -- | -- | -- |

# Exhibit N

**Several Emails Between April 15-18, 2025 (short chain)**

Multiple back-and-forths during this window. This is the only exhibit among A–F that involves *several emails* (roughly 3–4 messages) showing the ongoing gaslighting, blame-shifting, and refusal to accept responsibility. Provides further evidence of a pattern of counsel misconduct, including gaslighting and abandonment of defense strategy. Strengthens the claim of procedural prejudice and supports Rule 60(b)(3) misconduct and fraud arguments.

## Re: Termination of Legal Representation – Case No. 1:22-cv-22171-JEM

**Ronda McNae** <prose.mcnae@gmail.com>
to Nichelle, Shaunna, Ronda, Sally, Shaunna, Amir, bcc: ann.coslmann ▾

Fri, Apr 11, 9:52 PM (11 days ago)  ☆  ☺  ↩  ⋮

Nichelle,

I'd also like to point out that nearly all of our communication has taken place via email. The most you spoke to me while in town for trial was in front of the Judge, as I tried to object to preserve my rights on the record, since you refused after my emails regarding the topic of a former SWO employee testifying. My entire family witnessed your dismissive demeanor—barely offering a hello on the first day of the bench trial then being 15 minutes late the second day of trial. I hoped the at least you would have apologized to the Court.

Your recent email feels more like a CYA move than genuine communication.

For the record, acting as a pro se litigant isn't a flaw when I've been forced into that role due to the failures of my legal insurance from the outset. I know this case inside and out. I personally had to locate and raise documentation on "punitive damages," just one of many tactics you used to pressure me into settling.

Also, here is Walter Bernard's certification to practice in the Southern District of Florida's appellate court, since that was yet another point you chose to dispute. I'm frankly embarrassed that I even had to request this from Mr. Bernard—something that should never have been in question. The fact that it was speaks volumes about the breakdown in our relationship. It reflects a clear loss of trust, diminished confidence in your judgment and advocacy, an irretrievable breakdown in communication, and ongoing concerns regarding professionalism, ethics, and potential conflicts of interest.

If you are unable to communicate with a basic level of kindness and professionalism, then I believe it would be more productive for Amir to take over all further communications. I remain deeply concerned that you will not collaborate on the final submission, given that you haven't done so to date—nor have you allowed me to review filings before submission. Neither of the attorneys before you ever excluded me in that way.

That said, I hope we can move forward with mutual respect and a shared commitment to ensuring the final submission reflects the full and fair record. I don't want to feel like you continue to punish me as a consequence for not going with a settlement.

I remain open to constructive communication and sincerely hope we can end this process on a more collaborative note.

Respectfully,

Ronda

## Re: Files. Request for Full Case File and Materials – McNae v. Fitzgerald

**Ronda McNae** <prose.mcnae@gmail.com>
to Shaunna, Ronda, Nichelle, Sally, Amir, bcc: willmcnae ▾

Mon, Apr 14, 10:18 AM (8 days ago)  ☆  ☺  ↩  ⋮

Hello Shaunna,

Thank you for the confirmation that the Court has granted the motion to withdraw. Pursuant to that, I respectfully request a complete copy of my case file, including but not limited to:

- Any emails or correspondence with opposing counsel
- Any internal memos, strategy notes, or draft pleadings
- Any communications with ARAG Legal Insurance concerning my representation
- Billing records submitted to ARAG

Please let me know if these materials can be sent digitally, or if a signed receipt is required. As I am now representing myself pro se, I would appreciate confirmation of the expected timeline so I can prepare accordingly. If digital transmission is not possible, I am available to pick up the complete case file in person tomorrow.

I would like to request a complete copy of all communications between Ms. Womble and opposing counsel, including but not limited to any conferrals regarding pending filings or court deadlines. This includes all correspondence where opposing counsel requested my position or where we requested theirs. Given the upcoming submission due Wednesday, I would appreciate receiving these materials as soon as possible. I am making this request in good faith, as I do not want to be prejudiced in my ability to prepare or respond. Otherwise, I will be left with no choice but to inform the Court that I did not receive my full case file in a timely manner to fully prepare for my filing.

Thank you.

Respectfully,

Ronda Mcnae

## Re: Files. Request for Full Case File and Materials – McNae v. Fitzgerald   Inbox x   🖶 ↗

**Nichelle Womble**                                                                 Mon, Apr 14, 10:76 AM (8 days ago)   ☆ ☺ ↩ ⋮
to me, Shaunna, Ronda, Sally, Amir ▾

Good afternoon
You are not entitled to any internal memos or work product.

---

**Ronda McNae** <prose.rmcnae@gmail.com>                                            Mon, Apr 14, 5:19 PM (8 days ago)   ☆ ☺ ↩ ⋮
to Shaunna, Ronda, Nichelle, Sally, Amir ▾

Subject: Request for Communications, Billing Support, and Case File Materials

Hi Nichelle,

Please consider this a formal request for the following materials as I prepare to proceed pro se:

1.    All communications between you and opposing counsel, including but not limited to conferrals, correspondence requesting or conveying my position on filings, and any emails related to your motion to withdraw. I am aware there are additional communications beyond what has been shared, and I would like the full record preserved.
2.    All correspondence or updates provided to ARAG Legal Insurance. As a covered party under that policy, I understand I am entitled to receive the monthly updates or reports submitted concerning my representation, billing, or case status.
3.    Work product related to billed hours. Your billing reflects time spent on:
   •    Internal review and revisions of a memorandum
   •    Legal research for relevant case law and procedural standards
   •    Drafting of the findings of fact section -- rough draft
   •    Drafting of the conclusions of law section -- rough draft
I am requesting copies of those rough drafts and supporting documents. As I now bear the responsibility of preparing these filings alone, and you billed for this work, I respectfully ask that it be provided.

Please confirm if these materials can be sent digitally or whether I should arrange to pick them up in person. Given the Court's deadline this week, I ask that these be provided as soon as possible so I am not prejudiced in preparing my response. If necessary, I will inform the Court that I did not receive my full file.

As noted under Florida Rule 4-1.16(d) and supported by Florida Ethics Opinion 88-11 (Reconsideration), I am entitled to receive all work product created on my behalf, including drafts and research billed for in your recent time entries.

Additionally, ABA Rule 1.16(d) and ABA Formal Opinion 471 confirm that clients have a right to any materials reflecting billed time, including internal work.

Under Southern District of Florida Local Rule 11.1(c), these ethical obligations apply fully in this matter.

I am requesting compliance with these standards so I may review and prepare without prejudice.

Respectfully,

Ronda Mcnae

---

## Re: Files. Request for Full Case File and Materials – McNae v. Fitzgerald   Inbox x   🖶 ↗

↩ **Shaunna Proper**                                                                💬 Mon, Apr 14, 1:41 PM (8 days ago)   ☆ ☺ ↩ ⋮
to me, Ronda, Nichelle, Sally, Amir ▾

Hello Ronda,

Please see attached bill and emails.

**Ronda McNae**                                                                                            Tue, Apr 15, 8:3A AM (7 days ago)   ☆  ☺  ↩  ⋮
to Nichelle, Shaunna, me, Sally, Amir ▾

Ms. Womble,

Under the Florida Rules of Professional Conduct and relevant ethics opinions, *this will serve as my final written request* for the complete case file to which I am entitled.

To date, I have not received:

1. Draft filings billed to ARAG, including your rough drafts of the findings of fact and conclusions of law;

2. Internal legal research and memoranda prepared on my behalf, as referenced in your billing entries;

3. Email correspondence with opposing counsel for the month of April, including conferrals related to pending filings, trial matters, or court communications;

4. Communications with ARAG Legal Insurance regarding my case or billing;

5. Complete, unredacted billing records detailing all tasks performed, time spent, and narrative descriptions of work. As the client, I am entitled to view the full billing narrative, and what has been provided thus far appears to be redacted without justification.

These materials are clearly within the scope of what must be provided under Florida Rule 4-1.16(d), Florida Bar Ethics Opinion 88-11 (Reconsideration), and ABA Formal Opinion 471. Your claim that I *"own nothing in the file except pleadings, emails and billing"* is inconsistent with both Florida and national ethical obligations, particularly where billed work product is concerned.

Given that I am now proceeding pro se and have critical filings due tomorrow, I request that the above materials be delivered *no later than the end of the day today, April 15, 2025*. If not received, I will inform the Court of the prejudice this has caused, and I will reserve all rights to pursue remedies through the Florida Bar and other appropriate regulatory channels.

I have been advised to contact the *Florida Bar's Attorney Consumer Assistance Program (ACAP)* for further guidance on this matter, and I intend to do so if this issue remains unresolved.

Please confirm whether you intend to withhold any portion of my file, and whether these materials will be sent digitally or made available for pickup—in which case my husband is available to retrieve them on my behalf.

---

**Legal and Ethical Citations:**
   •   **Florida Rule of Professional Conduct 4-1.16(d):** Upon termination of representation, a lawyer shall take steps to protect a client's interests, including surrendering papers and property to which the client is entitled.
   •   **Florida Bar Ethics Opinion 88-11 (Reconsideration):** Clients are entitled to copies of all materials in their file, including drafts, legal research, and other documents prepared for the client's benefit.
   •   **ABA Formal Opinion 471 (2015):** The client owns the file and is entitled to all materials reasonably necessary for representation, including internal work product for which the client was billed.
   •   **Florida Rule of Professional Conduct 4-1.8(f):** A third-party payor (such as ARAG) does not override the lawyer's duty of loyalty and confidentiality to the client.

Respectfully,

Ronda Mcnae

---

From: Nichelle Womble <nichelle@amethystlawgroup.com>
Sent: Tuesday, April 15, 2025 9:00:00 AM
To: Ronda McNae <prose.rmcnae@gmail.com>
Cc: Shaunna Proper <shaunna@amethystlawgroup.com>; Ronda McNae <rondamcnae@gmail.com>; Sally Plum <sally@amethystlawgroup.com>; Amir Ghaeenzadeh <amir@amethystlawgroup.com>
Subject: Re: Files, Request for Full Case File and Materials – McNae v. Fitzgerald

Good morning
You are not entitled to any work product or internal information as that is not a part of your file whether it was billed or not. Work product belongs to the firm, not the client. I am not sure where you are getting your information but per ethics rules the client owns nothing in their file except pleadings, emails and billing as it relates to their case, and any and all items filed on your behalf. That does not include drafts as those are working notes and work products not final products that have become a part of your file. You are not entitled to any billing information other than what was billed and time spent. You are  not entitled to the rate or amount that was billed. All information in your file we are required to give to you and all information that pertains to your case has been passed to you. This concludes our representation.



Re: Files. Request for Full Case File and Materials – McNae v. Fitzgerald

**Ronda McNae** <prose.rmcnae@gmail.com>                                    Tue, Apr 15, 1:37 PM (7 days ago)   ☆   ☺   ↰   ⋮
to Nichelle, Shaunna, Ronda, Sally, Amir, bcc: Ann, bcc: Michael, bcc: Will  ▾

## <u>This is beyond alarming. $145,048.00!!!</u>

With all due respect, my husband works in IT at Microsoft. While I didn't need his help to uncover the workaround, I have now reviewed the billing—and it raises <u>serious</u> concerns.

It's no wonder portions were redacted under the pretense of discussing my "behaviors." That justification is not only inaccurate, it's bizarre.

The amount appears wildly inflated, and I will be conducting my own due diligence to investigate further. I don't care if someone else is paying the bill for the work you've done—transparency and fairness are my standards, regardless of who's footing the cost.

My initial counsel, who clerked for two years and specialized in federal court, set a standard of professionalism and integrity that, unfortunately, has made this experience all the more disappointing by contrast.

I will look into the best path forward and alert Honorable Judge Martinez.

Thank you.

Ronda McNae

# Exhibit O

**Single Expert Report from Mary Owen**

Independent expert confirmation that ARAG Legal Insurance's mishandling of Defendant's legal plan materially impacted her access to effective representation. Supports the conclusion that counsel's conflict of interest was not hypothetical but caused direct harm. Relevant to Rule 60(b)(6) extraordinary circumstances relief.



Mary E. Owen Esq.

October 18, 2024

Re:  McKee v. ABAG Insurance Company
U.S. District Court, Western District of Washington, Case No. 2:24-cv-80211

### DISCLOSURE AND OPINIONS OF MARY E. OWEN, ESQ.

### QUALIFICATIONS OF MARY E. OWEN, ESQ.

I am a licensed, practicing Attorney in the state of Washington.  The focus of my practice has been in the area of Insurance Law for over 30 years.  Initially, I worked for the private sector, representing both insurance entities and their insureds for 15 years.  In this capacity, I worked with some of the largest carriers in the country.  Not only was I engaged in the representation of the clients, I also provided tutorials and seminars for the Claims Departments of the various carriers, in which I addressed Washington law, including governing WAC provisions, and current statutory and case law.  In addition, I assisted in the representation of corporate clients in employment discrimination cases and presented tutorials and seminars to clients to apprise them of the standards and laws governing general conduct in the workplace and employee rights.

The proper handling of property and liability claims has been a major focus of my practice.  I was involved in the initial evaluation[s] of numerous claims in which I assisted in determining coverage.  I advised the claims departments in the proper handling of cases pursuant to Washington law, and reviewed files in which bad faith was alleged to have occurred.  In 1991, I commenced my relationship with GEICO to act as the Managing Attorney for Washington and opened the first Staff Counsel Office in Washington located in Seattle.  During my tenure in this position, GEICO grew from holding the 12th position for market shares in the country for underwriting automobile policies to 2nd place.  Our office became the largest GEICO staff counsel office on the West Coast.

As the company grew, I opened a second office in Tacoma in 2011.  In addition to personally handling hundreds of cases involving liability, damages and policy interpretation, I oversaw thousands of cases, while supervising the attorneys working in both the Seattle and Tacoma offices.  I have been engaged in all aspects of case handling, from the initial referrals to litigating jury trials and appellate review.

While managing the Washington staff counsel offices, I assisted the claims department in educating examiners and promoting the need for compliance with the mandates of Washington law, as well as other jurisdictions the claims examiners handled.  As new opinions were decided in state and federal courts throughout Washington, I would provide analysis and practical advice

to the claims departments for implementing best practices to ensure compliance with the changing laws governing the insurance industry's claims handling procedures.

I have been asked to speak at numerous legal seminars and law schools in Eastern and Western Washington, regarding various topics of Insurance Law, including Bad Faith, Duty to Defend, UM/UIM claims, first and third party claims handling practices, unfair claims practices/IFCA, effective settlement negotiation tactics and trial techniques.  I prepared materials for each seminar that I was a participant.  The majority of the venues for which I was a speaker were certified for continuing education for insurance claims professionals.  From my casework, developing and presenting seminars on claim practices trends, and from the subjects I constantly study, I have specialized experience and training in insurance claim practices and the practices of the insurance industry.  I have addressed insurance claim practices to both attorneys and claim examiners in a variety of forums.

I have been designated to be sole arbitrator in numerous cases in various counties in Washington state.  These arbitrations have addressed issues including, but not limited to, evaluating injury claims, contract disputes, real property boundary disputes, and insurance law cases.  I have presided over in excess of a hundred arbitration hearings throughout Washington.

I have been retained as an expert witness/consultant on behalf of the policy holder in approximately ninety percent of the cases in which I have served as an expert/witness consultant, and by the carrier in approximately ten percent of the cases in which I have been retained.  In cases in which the defendant was an insurance company while I was actively in private practice, I represented the defendant ninety percent of the time, and the insured, ten percent of the time.

In 2018, I co-authored the update to Volume II of the WSAJ Auto Deskbook, Chapter 8: The Defense - Strategies & Tactics Utilized in Defending Plaintiff Personal Injury Claims.

I have consulted in numerous cases regarding Insurance and Employment Law.  I have provided expert opinions in the following matters:

1.  YEN v. STATE FARM INSURANCE COMPANY, UIM ARBITRATION;
2.  BARGE v. STATE FARM INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:16-cv-00219;
3.  F. POLAK, dba VIP AUTOBODY v. THE CHARTER OAK FIRE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:15-cv-00255;
4.  JULIE LUKOVSKY v. TRAVELERS HOME and MARINE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:15-cv-01017;
5.  OUSD ET AL. v. ALLSTATE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:18-cv-01200;
6.  TYLER v. USAA INSURANCE COMPANY, King County Superior Court Case No. 19-2-01854-3;

---

7.  MOHOMED v. BOBMAN ET AL., Pierce County Superior Court Case No. 16-2-08549-3;
8.  SHEPARD v. USAA INSURANCE COMPANY, King County Superior Court Case No. 16-2-07187-6;
9.  DECOOK v. PROGRESSIVE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 1:16-cv-00055;
10.  LOCK v. AMERICAN FAMILY INSURANCE COMPANY, King County Superior Court Case No. 15-2-05573-0;
11.  VIGNOLA v. MUTUAL OF ENUMCLAW INSURANCE COMPANY, King County Superior Court Case No. 16-2-21878-8;
12.  CRUM & FORSTER SPECIALTY INSURANCE COMPANY v. HARBOR PACIFIC CONTRACTORS, INC., et al., U.S. District Court, Western District of Washington, Case No. 3:17-cv-05112;
13.  RAINY NORTHWEST INC v. SENTINEL INSURANCE COMPANY LTD, U.S. District Court, Western District of Washington, Case No. 2:18-cv-01312;
14.  SMITH v. STEADFAST, King County Superior Court, Cause No. 17-2-32914-1 SEA;
15.  GUNZEL v. USAA, Franklin County Superior Court Case No. 18-2-50263-11;
16.  DANIEL v. GARRISON PROPERTY & CASUALTY INSURANCE COMPANY, King County Superior Court, Cause No. 18-2-71455-3 KNT;
17.  BRUCE v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY ET AL., U.S. District Court, Western District of Washington, Case No. 2:2019-cv-00127;
18.  LOW v. SAFECO INSURANCE COMPANY OF ILLINOIS, King County Superior Court Case No. 17-2-11608-1 SEA;
19.  MELDER RANCH, LLC ET AL. v. HYBRID HOMES v. MUTUAL OF ENUMCLAW, Lincoln County Superior Court Case No. 17-2-00682-9;
20.  BENTKOWSKI v. ALLSTATE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:18-cv-00700;
21.  BRAY v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Pierce County Superior Court Case No. 18-2-04172-8;
22.  SMAGDINA v. USAA, King County Superior Court Case No. 19-2-31340-1 SEA;
23.  CAPPS v. ALLSTATE, Pierce County Superior Court Case No. 18-2-10084-3;
24.  710 WEST FOURTH AVENUE, LLC v. NAVIGATORS SPECIALTY INSURANCE COMPANY, Superior Court of Alaska, Third Judicial District at Anchorage, Case No. 3AN-15-8785;
25.  TACOMA SOUTH HOSPITALITY LLC v. NATIONAL GENERAL INSURANCE Pierce County Superior Court, Cause No. 19-2-11973-0;
26.  YOHANES AND GEBRERIDAN v. JAMES RIVER INSURANCE COMPANY ET AL., U.S. District Court, Western District of Washington, Case No. 2:20-CV-00101;
27.  SMAGINA vs. USAA CASUALTY INSURANCE COMPANY, King County Superior Court Case No. 18-2-31240-1 SEA;
28.  LACROIX vs. UNITED SERVICES AUTOMOBILE ASSOCIATION, King County Superior Court Case No. 19-2-31104-5 SEA;

29.  BIEHLER v. BRAGHAM AND FIRST NATIONAL INSURANCE COMPANY OF AMERICA ET AL., Spokane County Superior Court Case No. 19-2-05270-32;
30.  PEREZ v. AMERICAN FAMILY INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 3:70-cv-06049-RSM;
31.  MULUGETA ASARESE v. ALLSTATE, Snohomish County Superior Court Case No. 19-2-01711-31;
32.  HAMLIN v. GRANITE STATE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:10-cv-01179;
33.  ROFFLE v. USAA, U.S. District Court, Western District of Washington, Case No. 2:20- cv-00875;
34.  LISTON v. ALLSTATE INSURANCE COMPANY, Clark County Superior Court, Case No. 16-2-00635-0;
35.  PATIENCE AND BONN v. STATE FARM INSURANCE COMPANY, King County Superior Court Cause No. 21-2-03416-3 SEA;
36.  BROOKS v. USAA, U.S. District Court, Western District of Washington, Case No. 3:21-cv-05249;
37.  VALENCIA-ETANO vs USAA CASUALTY INSURANCE CO., King County Superior Court Case No. 20-2-15038-8 SEA;
38.  DEVOE v. AMERICAN FAMILY INSURANCE COMPANY, King County Superior Court, Western District of Washington, Case No. 3:20-cv-06725;
39.  MONTGOMERY v. USAA, U.S. District Court, Eastern District of Washington, Case No. 2:20-cv-00094;
40.  COOPER v. FARMERS INSURANCE COMPANY OF WASHINGTON, Snohomish County Superior Court Case No. 21-2-04138-31;
41.  BLEFLESS v SEROLVE, King County Superior Court Case No. 18-2-54055-1;
42.  YOUNG v. THE STANDARD FIRE INSURANCE CO., U.S. District Court, Eastern District of Washington, Case No. 2:18-cv-00031;
43.  JOHNSON v. STATE FARM AUTOMOBILE INSURANCE COMPANY, Jefferson County Superior Court Cause No. 20-2-00378-16;
44.  HUNT v. USAA GENERAL INDEMNITY COMPANY, U.S. District Court, Western District of Washington, Case No. 3:20-cv-05535;
45.  MADDRAY v. ENCAMBENT, MUTUAL, U.S. District Court, Eastern District of Washington, Case No. 2:19-cv-00067-RMP;
46.  CAPECE, JOHNSON v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 3:20-cv-00268-JCC;
47.  MCKEAG v. PEMCO MUTUAL INSURANCE COMPANY, Jefferson County Superior Court Case No. ____;
48.  MELROSE v. FIRST NATIONAL INSURANCE COMPANY OF AMERICA, King County Superior Court Cause No. 20-2-15042-5;
49.  KILLINGER v. PROGRESSIVE INSURANCE COMPANY, Grant County Superior Court Case No. 21-2-00288-13;
50.  NOLAN v. NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, U.S. District

Court, Western District of Washington, Case No.3:20-cv-06108;

50. O'CONNOR v. JAMES RIVER INSURANCE COMPANY (five-litigation), Spokane County Superior Court Case No. 19-2-03270-32;

51. RUEHLER v BRANHAM ET AL., Spokane County Superior Court Case No. 19-2-03270-32;

52. NGETHPRABAT & KELLEY V. STATE FARM, FAYSAL AND JAMA V. STATE FARM, U.S. District Court, Western District of Washington, Case Nos. C20-454 MJP/ U.S. District Court, Western District of Washington, Case No. 20-512 MJP;

53. DEZELL V. IDS PROPERTY CASUALTY INSURANCE COMPANY, UIM Claim No. 7805031-BR148,

54. PAULUS v. ALLSTATE INSURANCE COMPANY, U.S. District Court, Eastern District of Washington, Case No. 2:19-CV-0082-TOR;

55. JOHNSON v. STATE FARM MUTUAL INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No.3:20-cv-05208;

56. AGDEE v. SHIPERAW & NATIONWIDE, Spokane County Superior Court Case No. 19-2-03570-32;

57. KOCHHAR ET AL., vs. STANDARD FIRE INS. CO ET AL., U.S. District Court, Western District of Washington, Case No. C21-1102 JCC-MLP;

58. CASTRO-FLORES ET ANO V. FIRST NATIONAL INSURANCE COMPANY OF AMERICA, U.S. District Court, Western District of Washington, Case No. 2:22-cv-00196-MJP;

59. VALENCIA ET ANO vs. USAA CASUALTY INSURANCE CO, King County Superior Court Case No. 20-2-15939-8 SEA;

60. KASEL V. ESTATE OF GRUBASIC ET AL., King County Superior Court Case No. 16-2-05142-1 SEA;

61. CURTIS V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 3:22-cv-05188-BHS

62. DAWSON V. STATE FARM FIRE & CASUALTY COMPANY (Pre-Litigation);

63. FOULGER V. BAUMGARTNER, King County Superior Court Case No. 21-2-09689-2 KNT;

64. KINSALE V. WEBBING BRIGE, LLC ET AL., U.S. District Court, Eastern District of Washington, Case No. 2:21-CV-186-SAB

65. HUEBNER V. AMERICAN FAMILY CONNECT PROPERTY AND CASUALTY INSURANCE COMPANY, United States District Court, Western District of WA, Case No. 2:22-cv-00882-TSL;

66. KIZIS V. AMERICAN FAMILY INSURANCE COMPANY, King County Superior Court Case No. 20-2-00627-7 KNT;

67. DAVID MYDANS V. FARMERS INS. CO. OF WASHINGTON, King County Superior Court Case No. 22-2-14993-3 SEA;

68. NELSON V. McKINLAY ET ANO., King County Superior Court Case No. 22-2-07675-0 KNT;

69. NEWELL ET AL. vs. USAA INS. CO., King County Superior Court Case No. 19-2-14811-8 SEA;

70. PALUSKA vs. USAA INS. CO., King County Superior Court Case No. 20-2-14581-

---

71. SCHOR & WINKLER V. MID-CENTURY INSURANCE COMPANY, U.S. District Court, Western District of Washington Case No. 2:21-cv-1699 LK;

72. SCHWERDER ET AL. V. STATE FARM INS. CO., Mason County Superior Court Case No. 21-2-00149-23;

73. JACOBS V. AMERICAN FAMILY INSURANCE ET AL., King County Superior Court Case No. 21-2-09897-9 SEA;

74. WEBBER V USAA, Snohomish County Superior Court Case No. 20-2-03393-31;

75. SHIN V. ALLSTATE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:21-cv-01521-DWC;

76. WRIGHT v. ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, U.S. District Court, Case No. 2:21-cv-00336-DGE;

77. YOAKUM V. REGENCE BLUE SHIELD, Okanogan County Superior Court Case #19- 70026014;

78. KLOCH v. ALLSTATE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:22-cv-01062-JHC;

79. HAGEL v. McCARTNEY & STANDARD FIRE INSURANCE COMPANY, King County Superior Court Case No. 22-2-10395-5 KNT;

80. CONLIFFE v. HICKS ET AL., Snohomish County Superior Court Case No. 22-2-00171- 31;

81. FETCHERO v. AMICA MUTUAL INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:22-cv-00180-TL;

82. SZYRON v. DITURI CONSTRUCTION COMPANY & AMERICAN ALTERNATIVE INSURANCE CORPORATION, Grays Harbor County Superior Court Case No. 22-2-00490-14;

83. MUFANNEY v. USAA INSURANCE COMPANY, Snohomish County Superior Court Case No. 22-2-03492-31;

84. BARNETT and LAY v. SMITH ET ANO., King County Superior Court Case No. 22-2-07515-8 SEA;

85. BURKE v. STANDARD FIRE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:22-cv-00691-TL;

86. HEREDIA ET AL., vs. VUONG ET AL., King County Superior Court Case No. 22-2-02836-KNT;

87. YERIN v. ALLSTATE INSURANCE COMPANY, King County Superior Court Case No. 22-2-03945-32;

88. MANN v. FARMERS INSURANCE COMPANY, Spokane County Superior Court Case No. 22-2-03945-32;

89. MILLER v. UNITED FINANCIAL CASUALTY COMPANY & SAFECO INSURANCE, King County Superior Court Case No. 22-2-02836-0 KNT;

90. JONES v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, U.S. District Court, Eastern District of Washington, Case No. 3:23-cv-05904-BHS;

91. CARLSON v. AMERICAN FAMILY INSURANCE COMPANY, King County Superior Court Case No. 2-2-02463-0 KNT;

---

92. SARLY & ROH v. AMERICAN FAMILY CONNECT PROPERTY AND CASUALTY INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:21-cv-00044-MJP;

93. ORTIZ v. ALLSTATE INSURANCE COMPANY, U.S. District Court, Eastern District of Washington, Case No. 1:22-cv-03202-SAB; and,

94. HERNANDEZ, ET AL., v. INTERSTATE FIRE AND CASUALTY COMPANY, U.S. District Court, Western District of Washington, Case No. 2:23-cv-01140

I have been deposed in the following cases:

1. E POLAK d/b/a VRP AUBURN v. THE CHARTER OAK FIRE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:15-cv-00253;

2. BJUE LUTOVSKY v. TRAVELERS HOME and MARINE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:15-cv-01847;

3. QING FI AL. v. ALLSTATE INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:16-cv-01090;

4. VIGNOLA v. MUTUAL OF ENUMCLAW INSURANCE COMPANY, King County Superior Court Case No. 16-2-21876-8;

5. CHOP, ET AL. v. AAIC ET AL., U.S. District Court, Western District of Washington, Case No. 3:17-cv-05978;

6. LOW v. SAFECO INSURANCE COMPANY OF ILLINOIS, King County Superior Court Case No. 19-2-11606-4 SEA;

7. JOHNSON v. STATE FARM MUTUAL INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 3:20-cv-05208;

8. MONTGOMERY v. USAA, U.S. District Court, Eastern District of Washington, Case No. 2:20-cv-00264;

9. AGDEE v. SHIPERAW & NATIONWIDE, Spokane County Superior Court Case No. 19-2-03570-32;

10. HAGEL v. McCARTNEY & STANDARD FIRE INSURANCE COMPANY, King County Superior Court Case No. 22-2-10395-5 KNT;

11. FETCHERO v. AMICA MUTUAL INSURANCE COMPANY, U.S. District Court, Western District of Washington, Case No. 2:22-cv-00400-TL;

12. BARNETT and LAY V. SMITH ET ANO., King County Superior Court Case No. 22-2-07515-8 SEA;

13. MILLER v. UNITED FINANCIAL CASUALTY COMPANY & SAFECO INSURANCE, King County Superior Court Case No. 22-2-02835-0 KNT; and,

14. JONES v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, U.S. District Court, Eastern District of Washington, Case No. 3:23-cv-05904-BHS.

I have also provided trial testimony in the following cases:

1. LOCK v. AMERICAN FAMILY INSURANCE COMPANY, King County Superior

---

Court Case No. 15-2-03573-9;

2. VIGNOLA v. MUTUAL OF ENUMCLAW INSURANCE COMPANY, King County Superior Court Case No. 16-2-21876-8;

3. YOUNG v. THE STANDARD FIRE INSURANCE CO., U.S. District Court, Eastern District of Washington, Case No. 2:18-cv-00031;

4. JOHNSON v. STATE FARM AUTOMOBILE INSURANCE COMPANY, Jefferson County Superior Court Case No. 20-2-00078-16;

5. AGDEE v. SHIPERAW & NATIONWIDE, Spokane County Superior Court Case No. 19-2-03570-32; and,

6. MANN v. FARMERS INSURANCE COMPANY, Spokane County Superior Court Case No. 22-2-03945-32.

I served as Discovery Master in the following cases:

1. PONDERAY NEWSPRINT COMPANY v. PUBLIC UTILITY DISTRICT NO. 1 OF PEND OREILLE COUNTY ET AL., Spokane County Superior Court Case No. 16-2-00972-4 (2017 – 2018); and

2. RHODES v. BARNETT, Spokane County Superior Court Case No. 14-2-04384-1 (2017 - 2018).

I was appointed as Special Mediation Master in the following cases:

1. GONZALES V. UNITED STATES OF AMERICA, United States District Court, Eastern District of Washington, Case No. 1:18-CV-3027-RMP (2020); and

2. MAGALLON AND PADILLA V. UNITED STATES OF AMERICA, United States District Court, Eastern District of Washington, Case No. 2:18-CV-283 RMP (2017).

## EXPERT FEES AND COSTS

My billing rate is $425.00 per hour. Court appointments and/or expert testimony will be billed at a rate of $550.00 per hour. Deposition and court testimony requires at least one-week advance written notice and is subject to a two (2) hour minimum charge. Standby fees are billed as a two (2) hour minimum charge.

## OPINIONS

The opinions expressed in this report are based upon, and informed by, my review and analysis of the documentation provided; my direct and extensive knowledge of insurance claims handling; my experience in assisting and instructing upper-level management of multiple insurers; my familiarity with insurance claims handling customs and practices in the insurance industry; my training, education, and my knowledge of the regulatory standards imposed upon insurers in their handling of insurance claims in Washington and other states. I do not purport to provide legal opinions. Any reference to case law, statutory or administrative mandates in addressing the foundations of regulatory standards which directly govern the appropriate handling of claims by

insurers in Washington state and other jurisdictions.

It is my understanding that discovery in this matter continues. It is therefore possible that additional information will be provided for my review that may bear upon the opinions expressed herein. My further and additional review of materials and testimony in this matter could result in my supplementing, modifying and/or expanding my opinions and/or rebuttal replies, in these proceedings as may be appropriate.

## MATERIALS REVIEWED

- Plaintiff's Complaint
- Deposition of Michael Mullaly with exhibits
- Deposition of Meagen Adams with exhibits
- Deposition of Ann Cosimano with exhibits
- *Insurance Claims and Disputes* – Allan D. Windt (1982)
- *Aggressive Good Faith and Successful Claims Handling* – Willis P. Rokes, First Edition (1987)
- *The Claims Environment* – James J. Markham, 1st Edition (1993)
- *The Claims Environment* – Doris Hoopes, 2nd Edition, (2000)
- *The Legal Environment of Insurance* – James J. Lorimer (1993)
- *Principles of Insurance* – Robert Irwin Mehr & Emerson Cammack, 5th Edition (1974)
- *Claim Basics* - Kaplan Financial Education, 4th Edition (2018).

After 35 years as a practicing defense attorney, I have reviewed countless treatises, CLE materials, reports, Law Review articles, research materials, case law, statutory authority, legislative history, and numerous other resources addressing the topics of Bad faith, Insurance Claim Handling, Insurance Industry Standards for Claim handling, as well as my personal knowledge based on my experience. It would be impossible to list all of the specific sources. Therefore, the opinions expressed in my report are based upon, and informed by, my review and analysis of the documentation provided by counsel, my direct and extensive knowledge of insurance claims handling, my experience in assisting and instructing upper level management of multiple insurers, my familiarity with insurance claims handling custom and practices within the industry, my training and education, and my knowledge of the regulatory standards imposed upon insurers in the handling of claims in Washington and other states.

## CASE BACKGROUND

I was retained by counsel for William and Ronda McNae (hereinafter collectively referred to as the "McNaes") and was asked to review the facts and circumstances surrounding the conduct of ARAG Insurance Company (hereinafter referred to as "ARAG") in its provision of a defense of the McNaes in connection with civil litigation filed by Michael Fitzgerald. More particularly, I was asked to offer opinions regarding whether ARAG's handling of the McNaes' defense was in

accordance with generally recognized and accepted claims handling custom and practices in the insurance industry, as well as the governing provisions of the Washington Administrative Code (hereinafter referred to as "WAC") and other regulatory standards to the extent these reflect industry standards. Where appropriate, I have included significant case law which interprets the WAC and statutory provisions governing the conduct of the claims handling relevant to this case.

## FACTUAL BACKGROUND

William and Ronda McNae purchased "legal insurance" from ARAG, an Iowa corporation which does business in the State of Washington. According to ARAG's website, this coverage puts attorneys at the insureds' disposal, providing everything from legal advice to representation in court. The policy purchased by the McNaes states that it will pay attorney fees of a Network Attorney for covered legal services arising out of an insured event. The policy also states that the insured has the unrestricted right to select an attorney. No maximum coverage benefit was identified in the policy or the accompanying documentation.

On July 14, 2022, Michael Fitzgerald sued Ronda McNae, asserting a claim for civil damages arising out the alleged breach of a non-disclosure agreement. Attorneys, Alaina Fotiu-Wojtowicz and Stephanie Anne Casey completed the application and approval process, becoming "in network" attorneys through ARAG. Ms. Fotiu-Wojtowicz and Ms. Casey performed legal services on behalf of the McNaes between August of 2022 and December of 2023. The parties to the litigation attempted to mediate their dispute in September of 2023, but were unsuccessful. In October of 2023, Ms. Casey obtained dismissal of a portion of the claims against Mr. McNae.

On May 26, 2023, Andrea Morse, the Chief Financial Officer for ARAG, contacted Cathie Kyle, a Claims Analyst, to express concerns about ARAG having expended more than $400,000.00 in defense of this case. She followed up on May 30, 2023, noting that "this has become a very expensive claim." Later that year, during the Fall of 2023, Ms. Morse raised concerns regarding the cost of litigation, noting that more than $800,000.00 in costs and fees had been incurred in connection with the defense of the McNaes. Ann Cosimano, who serves as General Counsel for ARAG, met with Jeff LeMay, Director of Customer Care and Claims and Jennifer Beck, Vice President for Customer Experience and Insights to discuss the McNae claim. Per Ms. Cosimano, they discussed questions regarding billing and whether there had been any duplication of efforts by Alaina Fotiu-Wojtowicz and Stephanie Casey. Notwithstanding that representation, Ms. Cosimano acknowledged that no effort was made to identify any such duplications, and that none of those present reviewed invoices submitted by the McNaes' attorneys in an effort to identify the same. Ms. Cosimano also acknowledged that there had been no discussion of these concerns with counsel prior to their termination on November 20, 2023. Per Ms. Cosimano, concerns were also raised regarding whether the McNaes had made a good faith effort to reach a settlement with Mr. Fitzgerald. Despite this issue being discussed, Ms. Cosimano has acknowledged that no effort was undertaken to discuss any such proposals with the McNaes or their attorneys. Nonetheless, Ms. Cosimano has testified that she believed that ARAG had been led to believe that there was a greater likelihood of settlement than ultimately proved to be the case. As with the other issues discussed at the meeting, Ms. Cosimano conceded that there had

been no discussion of these concerns with counsel, or the McNaes, prior to November 20, 2023.

On November 20, 2023, ARAG terminated Ms. Fotiu-Wojtowicz and Ms. Casey, informing the McNaes that it would only continue to pay for their legal services until December 1, 2023, "or until withdrawal of representation [was] complete." On November 21, 2023 Meagen Adams, Manager of Case Coordination and Claims for ARAG, informed Karissa Banning, a Claims Supervisor for ARAG, Heather Preston, a Senior Claims Specialist for ARAG, Diane Schmuck, a Senior Claims Services Specialist, Cathie Kyle, a Customer Advocate for ARAG, and several others that "ARAG has communicated to the McNaes and their current SR attorneys that it was ceasing coverage for cases 3266236001 and 3107432003. The attorneys have been notified that we are terminating our contracts with them effective December 1, 2023. The plan members have been advised that ARAG will pay for services from their current attorneys through December 1, 2023. After that date, the PM has two options: use indemnity with a non-network attorney or locate their own network attorney to assist them."

When her deposition was taken, Ann Cosimano testified that she could not identify or recall any other instances in which ARAG had pulled or terminated counsel for its insureds prior to the resolution of any litigation. She testified that she was unaware of any complaints regarding the quality of legal representation provided by Alaina Fotiu-Wojtowicz and Stephanie Casey. She further testified that she was unaware of any concerns regarding these issues, or any others, regarding Ms. Fotiu-Wojtowicz and Ms. Casey prior to November 20, 2023. She also confirmed that no investigation was ever conducted into their billing, despite that issue having formed at least part of the basis for ARAG's decision to terminate them, and that she did not prepare any notes outlining her concerns or the basis, or bases, for those concerns.

On December 6, 2023, the ARAG Legal Department sent correspondence to the McNaes stating as follows: "We understand you may want to continue to use the law firm you previously selected. We are in no way indicating you are unable to continue utilizing the services of your selected counsel. You are and always have been their client. As we have indicated to you in prior correspondence, your above referenced legal plan will not cover the fees for their services after December 1, 2023, except for the above." That correspondence also included a reminder that "[u]nder the the terms of your Policy the insured (you) are required to actively pursue all reasonable avenues of settlement for any disputed matter where you seek coverage under your insurance policy. Failure to reasonably pursue resolution of your matter can result in future loss of coverage." ARAG acknowledged the McNaes' participation in alternative dispute resolution efforts, but stated that "[o]ther than your participation in...mediation based on the full record of the case as well as your counsel's billings to date we have no record of any other reasonable efforts that you have participated in to resolve the above referenced case and all related matters." The correspondence concluded with the note that ARAG had contacted three ARAG network attorneys identified by the McNaes, but that those attorneys uniformly "indicated that they were unable to assist you under the terms of ARAG's contract with them." In response to concerns raised by Stephanie Casey, ARAG denied that Ms. Casey had been "terminated without cause" and likewise denied that ARAG's actions had "prejudiced or harmed Mr. McNae in any way." Notwithstanding its termination of Alaina Fotiu-Wojtowicz and Stephanie Casey, ARAG stated

that their withdrawal had been "of [their] own volition" and denied that ARAG was "responsible for [their] election to withdraw as [McNae's] counsel."

On January 3, 2024, ARAG informed William McNae that it was the company's position that there was no coverage under his policy, as "Plaintiff's claims in Count One arise out of business interests involving Plaintiff and you as an employee of Microsoft at the time of the claimed actions and communications and Plaintiff as an officer and representative of a Microsoft vendor SoftwareONE at the time of the claimed actions and communications Count One would also be excluded because the claims made in Count One are related to employment matters arising out of workplace policies adopted and implemented by Microsoft your former employer along with communications among personnel and advisors of Microsoft Software ONE." One year earlier, when this same question was discussed, Meagan Adams took the position that there was coverage under the policy because "the reference to employment is simply part of the description of how these people met and not an integral part of the current lawsuit."

When the notice of termination was received, the case was scheduled for trial commencing on February 12, 2024. The McNaes found themselves unable to obtain new counsel, and ARAG attempted to secure an agreement that replacement counsel would not incur more than $100,000.00 in billing for future legal services. The McNaes filed suit against ARAG on an emergency basis in January of 2024.

## INDUSTRY STANDARDS FOR CLAIMS HANDLING

In order to fully understand the actions of ARAG in this matter, it is imperative to analyze the obligations inherent to claims handling within the insurance industry, the relevant case law interpreting the common law, administrative and statutory standards governing the insurance industry as well as the specific regulations governing insurance companies' conduct in Washington State. The duties of good faith and fair dealing are inherent to claims processing. The claims professional is strictly prohibited from engaging in any action, or inaction, adversely impacting the right of the insured to receive benefits under the policy.

The duties of good faith and fair dealing are the foundation for proper claims processing. The claims professional is prohibited from adversely affecting the rights of the insured to receive benefits under the policy. Knowing and following the underlying basis of claims regulations is crucial to fair claims practices. For example, an insurer must, at a minimum, adjust the claim (either pay it or deny it) within a reasonable amount of time as specified in the jurisdiction of the claim. In addition, the insurer must provide in writing a detailed reason for denying the claim, specifying each contract term or provision upon which the examiner relies.

The insurance company must interpret its policies reasonably, pursuant to the well-recognized insurance industry rules for insurance policy construction, which obligate the claim professional to interpret exclusions narrowly and interpret the insuring agreements broadly, and to consider the facts as alleged in the complaint, not just those that may support a denial of coverage or the insurer's other duties. In addition, the claim professional must implement reasonable standards

for handling claims and conducting a thorough investigation.

A proper investigation is the cornerstone for the proper handling of any claim. The investigation must commence and be completed promptly. In analyzing the insured's claim, the claims professional must give at least equal consideration to the insured's interest as s/he would give to the carrier.

The claims professional must be aware of and understand the laws and regulations in the jurisdiction of the claim s/he is handling. In order to assure that the insured is provided adequate information in pursuing a claim, it is the carrier's obligation to assist the insured in presenting the claim, and disclose all relevant coverages, conditions and restrictions under the policy. When responding to correspondence, emails, and phone calls, the claim professional must do so promptly. These requirements are often outlined with specific time frames in the state where the claim is processed.

The claims examiner must know and comply with the applicable laws and regulations that govern the insurance industry within the jurisdiction of the claim. They are required to implement those regulations when dealing with insureds and claimants. The requirements of the law must be met.

The claims professional MUST ACT IN GOOD FAITH at all times. The claims representative must attempt to promptly, fairly and equitably settle claims, where liability is reasonably clear. Indeed, claims adjusters and insurers must weigh the insured's interest equal with its own in every action taken and cannot prefer its interests over those of its insured in any respect when making decisions or taking actions. Claims must be paid in a timely manner, which are undisputed amounts owed under the policy.

These claim handling principles or insurance industry standards are well known within the industry and they are often written within procedural claims handling guidelines and best practices. These regulations are found in numerous publications, including insurance textbooks. Industry standards include these obligations and are clearly detailed in Markham, J. J. (1993) The Claims Environment; AIC-33 (Associate in Claims) First Edition, p.12, where it states, in part, "claims representatives should have expert knowledge of insurance policy coverages, the law, and determination of damages."

Industry standards require claims handlers to know and comply with applicable law and regulations that impact claims handling and treat policyholders in a manner consistent with requirements of the law in the jurisdiction for the claim. The National Association of Insurance Commissioners created the "Model Unfair Claims Practices Act" that provides statutory and regulatory standards for the handling of insurance claims. The majority of states have adopted these governing mandates. In Washington, the Insurance Fair Conduct Act (hereinafter referred to as "IFCA") was a voter-approved initiative which took effect on December 6, 2007. The law made it illegal for insurance companies to unreasonably deny an insurance claim or violate laws that govern unfair claim settlement practices.

The industry recognizes the importance of the Model Act and addresses it in the "The Claims Environment." It was developed as a guide for insurance regulators in every state to establish reasonable claims practices. Markham, supra, at 297. Washington has enacted these regulations within the common law, and the statutory and administrative authorities governing the insurance industry.

There are dual obligations on the part of the insured and the carrier in any insurance contract analysis. The claim representative's principal tasks are to investigate, evaluate, and resolve the claim. Thus, it is the duty and responsibility of the insurer to investigate and evaluate both potential liability and damages. It is the insured's responsibility to cooperate with the investigation.

This duty to investigate is central to proper claims handling. Industry standards include this obligation and are clearly detailed in "The Claims Environment," where it states, "A thorough investigation is the foundation of good faith claim handling. Claim representatives must conduct a prompt and objective investigation, collecting all relevant evidence. Investigation should continue as long as new facts develop or become available." Id. at 249.

"The Claims Environment" further highlights the importance of proper investigation of coverage, where it states, "Coverage disputes are delicate and serious matters." Id. at 13. An investigation must often be undertaken to fully develop the facts needed to determine coverage. Good faith claims practices require that this investigation be objective, thorough, and timely." Id. at 29.

The textbook, "Aggressive Good Faith and Successful Claims Handling" (Rokes, First Edition, 1987) discusses the failure to conduct a proper investigation and states the following:

> "Where the insurer fails to investigate the case properly, however, there is no question that the insurer is in breach of contract. Further, there is no question that the insurer has been negligent by omitting to conduct a proper investigation, one of the responsibilities under the contract. The right to recover for breach of contract or for the tort of negligence would seem to be apparent. Whether the failure to investigate constitutes an extraordinary showing of disingenuous or dishonest failure to carry out a contract is certainly a question of fact. It demonstrates the existence of a nebulous threshold between negligence and what is considered to be "bad faith." Aggressive Good Faith and Successful Claims Handling (Rokes, First Edition, 1987).

## WASHINGTON REGULATORY STANDARDS FOR CLAIMS HANDLING

The Washington common law, as well as the Washington Legislature, both impose separate duties of good faith upon insurance companies. RCW 48.01.030 establishes a duty of all parties to preserve the integrity of the insurance process, which is mirrored under the common law.

The business of insurance is one affected by the public interest requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance. RCW 48.01.030.

The Washington Administrative Code (WAC) identifies various unfair claims settlement practices and prescribes minimum standards for acknowledging communications, investigating claims, and settling claims. An insurer's breach of any of these regulations is also evidence of common law bad faith. *Coventry Associates v. American States Ins. Co.*, 126 Wn.2d 269, 276-279 (1998).

Although these authorities are legal in nature, they reflect the industry standards that apply to claims handling. I do not intend to give legal conclusions in my testimony, but I will offer testimony relating to (1) industry standards and (2) the expectation that insurance company representatives have knowledge and training relating to regulatory requirements.

Pursuant to WAC 284-30-370, every insurer has an obligation to promptly investigate claims:

Every insurer must complete its investigation of a claim within thirty days after notification of a claim unless the investigation cannot reasonably be completed within that time. All persons involved in the investigation of a claim must provide reasonable assistance to the insurer in order to facilitate compliance within this provision. WAC 284-30-370.

WAC 284-30-330 provides nineteen causes of action that can be brought against insurance companies for unfair, claim settlement practices, violations of which are also a violation of near identical common law duties that are also owed. Under WAC 284-30-330, in this case, relevant causes of action follow:

(1) Misrepresenting pertinent facts or insurance policy provisions.

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

(4) Refusing to pay claims without conducting a reasonable investigation.

(5) Failing to affirm or deny coverage of claims within a reasonable time after fully completed proof of loss documentation has been submitted.

(6) Not attempting in good faith to effectuate prompt, fair and equitable

settlements of claims in which liability has become reasonably clear. In particular, this includes an obligation to promptly pay property damage claims to innocent third parties in clear liability situations. If two or more insurers share liability, they should arrange to make appropriate payment, leaving to themselves the burden of apportioning liability...

(7) Compelling a first party claimant to initiate or submit to litigation, arbitration or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.

(8) Attempting to settle a claim for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

...

(11) Delaying the investigation or payment of claims by requiring a first party claimant or his or her physician to submit a preliminary claim report and then requiring subsequent submissions which contain substantially the same information.

(12) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

(13) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

...

(16) Failing to adopt and implement reasonable standards for the processing and payment of claims after the obligation to pay has been established. Except as to those instances where the time for payment is governed by statute or rule or is set forth in an applicable contract, procedures which are not designed to deliver payment, whether by check, draft, electronic funds transfer, prepaid card, or other method of electronic payment to the payee in payment of a settled claim within fifteen business days after receipt by the insurer or its attorney of properly-executed releases or other settlement documents are not

acceptable. Where the insurer is obligated to furnish an appropriate release or settlement document to a claimant, it must do so within twenty working days after a settlement has been reached.

WAC 284-30-330.

The Washington Consumer Protection Act (CPA) serves as additional authority to prohibit "unfair or deceptive acts or practices in trade or commerce." The Insurance Fair Conduct Act provides that a first party claimant "who is unreasonably denied a claim for coverage or payment of benefits by an insurer" may bring an action for this conduct. RCW 48.30.015(5). Some Washington case law interpret "denial of benefits" to encompass "underpayments" or disputes about the value of the claim, even where the insurer had not denied coverage. See e.g., *Ainsworth v. State Farm Cas. Ins. Co.*, 180 Wn. App 52, 78-80 (2016); *Morella v. Safeco Ins. Co. of Illinois*, No. C12-0672- RSL, 2013 WL, 1562032 at 3 – 4 (W.D. Wash. April 12, 2013). Insurance companies that are found to have made deceptive promises in their advertising, marketing and other solicitations which they fail to honor and fulfill in their dealings with the insureds they promise to protect, can be determined to have violated the CPA.

A first party carrier must deal fairly with its policy holder and give "equal consideration" to the insured's interests. *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 796 (2001). In Washington, the obligations placed upon the insurer to act in good faith, and to assure compliance with governing statutory, and regulatory laws, are clear and concise. If performed thoroughly, an investigation of a claim should allow for consideration of all factors giving rise to the claim for damages. Reasonable minds can differ regarding evaluation, but when there is an appearance of ignoring the evidence in favor of the insured's claim, the evaluation on the part of the insurer is clearly and inherently flawed and violative of the duties owed to the insured.

## ARAG'S CONDUCT

## FAILURE TO INVESTIGATE

WAC 284-30-370 specifically requires that "[e]very insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time." WAC 284-30-370 is implicated here because decisions regarding coverage were made without any apparent effort to inquire into the merits of the concerns raised internally, within ARAG. As outlined above, no clear explanation for ARAG's decision to terminate the McNaes' attorneys was ever provided, but Ann Cosimano, General Counsel for ARAG identified a number of possibilities, including excessive billing, duplicative billing and failure to make good faith efforts to reach a settlement. When asked what efforts ARAG had undertaken to evaluate these issues, Ms. Cosimano acknowledged that no formal audit of the billing submitted by the McNaes' attorneys was undertaken to determine whether the billing was reasonable and necessary, or whether counsel were duplicating one another's efforts. Ms. Cosimano acknowledged that she did not even sit down with billing records and conduct an informal review to identify possible duplications. Accordingly, notwithstanding the fact that

these allegations formed the backbone of ARAG's justification for termination of Alaina Fotiu-Wojtowicz and Stephanie Casey, there is no evidence to suggest that any serious inquiry was performed into the merits of the allegations. Similarly, Ms. Cosimano indicated that ARAG had concerns regarding the efforts of counsel and the McNaes to reach an agreed resolution of the claim presented by Michael Fitzgerald. During her deposition, Ms. Cosimano testified that no one from ARAG contacted counsel or the McNaes to discuss this concern, to inquire about the terms of any settlement proposals circulating between the parties or to further evaluate the situation. To the extent that these concerns formed the basis for decisions pertaining to coverage, it was incumbent upon ARAG to perform an investigation. It does not appear that this requirement was satisfied here.

## FAILURE TO EXPLAIN

ARAG's conduct gives rise to concerns with respect to WAC 284-30-330(13) which requires the insurer to provide a reasonable explanation, factually or legally, for the denial of any claim. Here, ARAG sold a policy with no identified coverage limit to the McNaes. The McNaes were in the midst of self-funded litigation by a high net worth litigant. Less than 90 days before their case was scheduled for trial, ARAG terminated their attorneys. Additionally, the McNaes found that other attorneys affiliated with ARAG would not be willing to assume responsibility for their representation due to the limits that ARAG placed on the McNae insurance benefits. When her deposition was conducted, Ann Cosimano, General Counsel for ARAG acknowledged that there was never a written statement of the reasons for termination of the McNaes' attorneys, either in ARAG's files or in correspondence to the McNaes or their counsel.

Per Ms. Cosimano, a "consensus" decision was reached between herself, Jeff LeMay and Jennifer Beck regarding the decision to terminate Alaina Fotiu-Wojtowicz and Stephanie Casey and impose limitations upon the McNaes' counsel going forward, but that consensus was never reduced to writing. Because the basis, or bases, for these decisions was not written down, there was no clear explanation provided to Ms. Fotiu-Wojtowicz, Ms. Casey or the insureds.

When asked whether there was precedent for such a decision, specifically whether ARAG had terminated counsel without the knowledge and/or approval of the insured during the course of litigation, Ms. Cosimano could not recall any similar instances. While testifying, Ms. Cosimano suggested that duplicative billing had been a concern, but none of the correspondence to counsel or the McNaes identifies that as an issue, and no effort was made to seriously address that concern in the form of an audit or review. Ms. Cosimano was able to identify a number of possible concerns when her deposition was conducted, but she conceded that the concerns had not been investigated and that neither counsel nor the insured had been apprised of those concerns until after November 20, 2023.

## UNREASONABLE DENIAL OF BENEFITS

WAC 284-30-330(7) states that it is an unfair claims practice to compel "a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance

policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings." Under Washington law, the term "denial of benefits" contemplates "underpayments" or disputes about the value of the claim, even where the insurer had not denied coverage. See e.g., *Ainsworth v. State Farm Cas. Ins. Co.*, 180 Wn. App 52, 78-80 (2016); *Morella v. Safeco Ins. Co. of Illinois*, No. C12-0672- RSL, 2013 WL, 1562032 at 3 – 4 (W.D. Wash. April 12, 2013). Here, ARAG terminated counsel in the midst of litigation and attempted to condition continued benefits upon the McNaes' acceptance of a limitation upon future payments. During her deposition, Ms. Cosimano acknowledged that the policy purchased by the McNaes had no stated limitation on benefits, but maintained that various limitations and exclusions contained in the policy imposed a de facto limitation. Notwithstanding that assertion, Ms. Cosimano was unable to identify any specific exclusion that would support ARAG's position with respect to its concerns that billing in the McNaes' case was "excessive" or that it had afforded to the McNaes benefits to which they were not entitled.

### FORCING ITS INSURED INTO LITIGATION

Pursuant to WAC 284-30-330(7) it is an "unfair" or "deceptive" act or practice to compel a first party claimant to "initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings." Here, there are legitimate concerns regarding both the decision to terminate the McNaes' attorneys and the timing of that decision. If this court concludes that either was improper, there is support for the contention that the McNaes had no alternative but to file suit against their insurer.

### CONCLUSIONS AND OPINIONS

It is my opinion that ARAG failed to meet reasonable industry standards in the handling of the McNaes' claim. This includes, but is not limited to, the failure to conduct an appropriate investigation into concerns that were raised regarding coverage, and the limits thereof, failure to reasonably and honestly explain the reasons why ARAG was withholding benefits and placing its financial interests ahead of its insureds' legal jeopardy.

Based on a review of the information to date, ARAG appears to have considered its own interests above those of the insured and failed to handle the McNae claim in a manner consistent with industry standards. It is the opinion of the undersigned, that on a more probable than not basis, pursuant to the applicable insurance policy in effect, the handling of this claim was not carried out in accordance with generally accepted and recognized claims handling and custom in the insurance industry for the processing of similar claims.

Mary E. Owen

# MARY E. OWEN, ESQ.

3023 18th Avenue Ct. N.W., Gig Harbor, WA 98335
Tel. No. (206) 406 - 6104 | mary@maryowenconsulting.com

## ADMISSIONS

Ms. Owen is admitted to practice in the United States Supreme Court, Washington State Courts, and U.S. District Courts for the Western and Eastern Districts of Washington.

## EXPERIENCE

Mary E. Owen, Esq., Consulting and Mediation
Arbitrator/Mediator/Expert Consultant (August 2015- Present)

Arbitrates and mediates matters involving personal injury and insurance litigation, including, but not limited to, cases involving coverage issues, bad faith, IFCA claims, duty to defend, medical malpractice, and employment litigation; in addition, provides expert consultation services in the areas of claims handling, statutory and regulatory compliance issues, witness and trial preparation, general insurance litigation matters, and contract issues.

- Appointed Special Discovery Master

  *Ponderay Newsprint Company v. Public Utility District No. 1 of Pend O'Reille County et al.*, Spokane County Superior Court Case No. 16-2-00072-4 (2017 – 2018)
  Appointed by the trial court to preside over complex discovery motions presented by multiple parties in litigation and prepare recommendations and report to the trial court for adoption.

  *Rhodes v. Barnett*, Spokane County Superior Court Case No. 14-2-4684-1 (2017 – 2018)
  Appointed by the trial court to preside over discovery motions presented by parties in a case involving allegations of employment discrimination and prepare recommendations and report to the trial court for adoption.

- Appointed Special Mediation Master

  *Gonzales v. United States of America*, United States District Court, Eastern District of Washington, Case No. 1:18-CV-3027-RMP (2020)
  Appointed by the federal trial court to assist in the resolution of a multi-million dollar medical malpractice case.

  *Magallon and Padilla v. United States of America*, United States District Court, Eastern District of Washington, Case No. 2:16-CV-283-RMP (2017)
  Appointed by the federal trial court to assist in the resolution of a multi-million dollar medical malpractice case.

Law Offices of Mary E. Owen & Associates
GEICO Staff Counsel / Managing Attorney (May 1997 – September 2014)

Established the first GEICO Staff Counsel office in Washington State; managed and oversaw the handling of thousands of cases, from the initial assignments through settlement and trials, while litigating her own insurance defense cases. Under Ms. Owen's management, GEICO Staff Counsel grew from employing one attorney and one legal secretary to operating two separate law offices in Seattle and Tacoma.

**Borhnson and Owen PC**
**Managing Partner (1993 – 1997)**

Managed casualty insurance defense firm, focused on handling and litigating first and third party claims involving bodily injury and property damage arising from motor vehicle/trucking accidents, as well as commercial casualty and property insurance defense for accidents, fire, construction defect, safety violations, employment matters and fraud cases; advised clients on proper claims handling procedures; and handled business litigation matters.

**Kappelman and Owen PC**
**Partner (1989 – 1993)**

Practice focused on advising and litigating property issues, personal injury, insurance coverage claims and insurance claims handling procedures; advised corporate clients regarding standards and best practices relative to the establishment of employment procedures, grievance resolution and training programs to assist compliance; served as a liaison between the local Bar members and physicians regarding disputes arising from testimonial requirements in personal injury cases.

**Southwell O'Rourke Jalbert and Kappelman, P.S.**
**Associate Attorney (1984 – 1989)**

Practice focused on bankruptcy law, insurance defense, business litigation, employment and corporate law; assisted partners with all aspects of litigation, including preparing cases for trial, conducting depositions, client and witness interviews, briefing and arguing motions, and assisting in and trying jury and bench trials.

**Carl Maxey and Associates**
**Associate Attorney (1981 – 1984)**

Practice focused on criminal and civil litigation, including civil rights actions, personal injury, contract disputes, and family law; assisted senior attorney in the preparation of all matters proceeding to jury and bench trials, while independently litigating cases to resolution or trial.

**Quackenbush and Dean PS**
**Associate Attorney (1977 – 1981)**

Law Clerk Rule 9 intern and associate attorney to the Honorable Justin L. Quackenbush of the United States Federal District Court for the Eastern District of Washington prior to his appointment to the Federal bench; assisted senior attorneys in representation of municipalities, the Spokane Airport Board, and numerous insurance and corporate clients; performed legal research and assisted in the preparation of cases for litigation, while maintaining a personal case load as an associate attorney.

<u>EDUCATION</u>

**Gonzaga University School of Law**
Juris Doctor (J.D.)

**University of Washington**
Bachelor's Degree, European History

**The American College in Paris**
French Studies

# Exhibit P

**March 6, 2025 Order on Emergency Motion to Stay**

**(Western District of Washington, Case No. 2:24-cv-00211-TL)**

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                     AT SEATTLE

10

11   WILLIAM MCNAE and RONDA                     CASE NO. 2:24-cv-00211-TL
     MCNAE, husband and wife,
12                                               ORDER ON EMERGENCY MOTION
                         Plaintiffs,             TO STAY
13           v.

14   ARAG INSURANCE COMPANY,

15                       Defendant.

16

17          This matter is before the Court on Plaintiffs William and Ronda McNae's "Emergency

18   Motion to Stay Proceedings Expedited Relief Requested Pursuant to LCR 7(D)(1)." Dkt. No. 43.

19   Plaintiffs "move this Court for an Emergency Stay of proceedings due to a recently reactivated

20   criminal investigation by the Miami Beach Police Department ('MBPD') as of February 11,

21   2025, which directly overlaps with the legal and factual issues in this case." *Id.* at 7. Having

22   reviewed Defendant ARAG Insurance Company's response (Dkt. No. 46) and the relevant

23   record, the Court GRANTS IN PART and DENIES IN PART the motion.

24

ORDER ON EMERGENCY MOTION TO STAY - 1

1    "[D]istrict courts have the inherent authority to manage their dockets and courtrooms

2    with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S.

3    40, 47 (2016) (collecting cases). This includes "discretionary power to stay proceedings in its

4    own court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N.*

5    *Am. Co.*, 299 U.S. 248, 254 (1936)). When a stay is proposed, the court must weigh the

6    competing interests impacted, including "the possible damage which may result from the

7    granting of a stay, the hardship of equity which a party may suffer in being required to go

8    forward, and the orderly course of justice measured in terms of the simplifying or complicating

9    of issues, proof, and questions of law which could be expected to result from a stay." *Id.* at 1110

10   (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "The proponent of a stay bears

11   the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*,

12   299 U.S. at 255). Here, the relevant interests weigh in favor of *some* relief, though not the precise

13   relief requested by Plaintiffs.

14       First, as to the possible damage from granting a stay, Defendant asserts that it would be

15   harmed by delays in dispositive motions, discovery, and subpoenas. *See* Dkt. No. 46 at 12–13.

16   But these harms are little beyond the prejudice inherent in any stay. This interest is neutral.

17       Second, as to the hardship or inequity in being required to go forward, Plaintiffs explain

18   that they are simultaneously litigating two related cases in Florida and attempting to finalize the

19   adoption of two children in Iowa, creating severe burdens on their ability to litigate here. *See*

20   Dkt. No. 43 at 11–17, 20–26. Defendant points out that Plaintiffs stipulated in October 2024 to

21   the current trial schedule (*see* Dkt. No. 41), with full knowledge of the Florida cases, and that

22   Plaintiffs initiated the instant matter, thus imposing the burden of multi-court litigation on

23   themselves. *See* Dkt. No. 46 at 13–14. The Court agrees with Defendant that Plaintiffs chose

24   when to file their lawsuit and agreed to the trial schedule while litigating the Florida cases. And

1  while the Court is certainly empathetic regarding Plaintiffs' adoption of their niece and nephew,

2  it appears that Plaintiffs were aware of the needs of their niece and nephew at the time the suit

3  was filed, since parental rights were terminated in July 2024—just three months after filing. *See*

4  Dkt. No. 43 at 16; Dkt. No. 1. Plaintiffs also argue that they need time to retain counsel (*see* Dkt.

5  No. 43 at 20), though Defendant notes that it already stipulated to a prior 120-day continuance of

6  the trial schedule to allow Plaintiffs to do just that (*see* Dkt. No. 46 at 15). This interest is neutral.

7  　　　　Third, as to the orderly course of justice, Plaintiffs argue that the reopened Miami

8  criminal investigation into Michael Fitzgerald, the plaintiff in the Florida cases, "directly

9  overlaps" with this matter, and proceeding here would "[i]nterfere" with the investigation, "risk

10  inconsistent rulings" between this matter and the investigation, and cause "[u]ndue prejudice" to

11  Plaintiffs, who are "key witnesses" in the investigation. Dkt. No. 43 at 10–11, 26–28. However,

12  as Defendants argue (*see* Dkt. No. 46 at 15–17), Plaintiffs do not explain how proceeding with

13  this insurance matter would interfere with the Miami criminal investigation or otherwise

14  prejudice Plaintiffs, let alone create inconsistent rulings where there is no parallel criminal

15  proceeding. Further, as Defendants also argue (*see id.* at 17–19), Plaintiffs do not explain how

16  the Florida cases will simplify or resolve the factual or legal issues in this matter. Merely stating

17  such assertions does not make them true. This interest weighs against a stay.[1]

18  　　　　Given all the interests detailed above, the Court finds that a six-month continuance of the

19  trial schedule is appropriate here, especially as Defendant previously offered to stipulate to a 90-

20  day, 120-day, or six-month continuance. *See* Dkt. No. 43 at 24–25; Dkt. No. 46 at 21. Such a

21  continuance accommodates Plaintiffs' litigation burdens and personal hardships while

22

23  [1] Plaintiffs also note that they have filed multiple regulatory complaints against Defendant. *See* Dkt. No. 43 at 10, 19. Defendant states that these complaints were filed "a year after commencing this action." Dkt. No. 46 at 19. In the briefing, neither Party details the timeline or status of these complaints, nor does any Party supply any

24  documentation of the complaints. This information is therefore too indeterminate to weigh for or against a stay.

ORDER ON EMERGENCY MOTION TO STAY - 3

1  recognizing Defendant's interest in proceeding with this matter. Plaintiffs' requested stay—until

2  after the conclusion of the Miami criminal investigation, the resolution of regulatory

3  investigations, *and* the resolution of the Florida cases (Dkt. No. 43 at 30)—is so indeterminate as

4  to be indefinite. The Court will not authorize such a stay based on the record before it.

5          Finally, to the extent that Plaintiffs request preliminary injunctive relief (*see* Dkt. No. 43

6  at 29–30), their request is not properly presented. *See* Dkt. No. 46 at 22. Plaintiffs may separately

7  request such relief if and when they deem it appropriate, and the Court will consider their request

8  at that time.

9          Accordingly, Plaintiffs' Emergency Motion to Stay Proceedings (Dkt. No. 43) is

10 GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

11      (1)     This matter is STAYED until **September 5, 2025**. The trial date, and all remaining

12              pretrial deadlines that have not yet passed, are STRICKEN.

13      (2)     The Parties SHALL, **by September 19, 2025**, meet and confer and file a joint status

14              report including a proposed schedule for all remaining pretrial deadlines and trial.

15      (3)     Plaintiffs' Motion for Leave to File Supplemental Evidence in Support of Motion

16              to Stay (Dkt. No. 50) is STRICKEN as an impermissible reply (*see* Dkt. No. 45).

17      (4)     Defendant's Motion for Partial Summary Judgment (Dkt. No. 51) is STRICKEN

18              with leave to refile after the expiration of the stay.

19 Dated this 6th day of March 2025.

20

21                                                  Tana Lin
                                                    United States District Judge
22

23

24

ORDER ON EMERGENCY MOTION TO STAY - 4

# Exhibit Q

## ADA / Disability Accommodation Communications

**Defendant's Communications Regarding Disability, PTSD Diagnosis, and Need for ADA Accommodations** – This exhibit contains email communications from Defendant Ronda McNae to trial counsel Nichelle Womble disclosing a PTSD diagnosis, panic-related physical symptoms (including gagging and vomiting), and the need for ADA accommodations to meaningfully participate in trial. Despite these disclosures, trial counsel failed to seek continuances, ADA relief, or alternative testimony options. These communications support Defendant's argument that her exclusion from testimony was not voluntary but due to procedural abandonment.

On Thu, Apr 3, 2025 at 12:14 AM Ronda McNae <prose.rmcnae@gmail.com> wrote:

Nichelle,

I want to start by saying that you were right, and I'm sorry for not understanding sooner. I appreciate your patience as my brain/nervous system needed time to process everything that has happened. This topic surfaced with my victim advocate following repeated gagging, coming close to throwing up. Due to my PTSD, it takes me longer to work through complex situations like this, but I've now had time to think it over.

After reflecting on our conversations, I realize that moving forward with a bench trial makes sense, just as you advised. You were right to point out that the Judge already knows the full context of the case, while a jury would only hear about the specific damages related to the breach.

Without personally testifying, a witness on my behalf, or an expert, a bench trial would lead to a more balanced and fair decision. Since the Judge has a deeper understanding of the matter, I agree that it could result in a more thorough and just outcome.

Additionally, since the plaintiffs did not want a jury from the beginning, and given the current state of the case, moving forward with a bench trial would expedite the process. It would also minimize significant costs for all parties involved, including the efficient use of judicial resources.

I apologize for not recognizing this earlier. Please let me know how we can proceed with requesting a bench trial.


Regards,


Ronda McNae


On Thu, Apr 3, 2025 at 7:50 AM Nichelle Womble <nichelle@amethystlawgroup.com> wrote:
Your best interest we did not say the outcome would be better or worse. We clearly stated it was in your best interest based upon the knowledge of the totality of the facts in the case.

On Thu, Apr 3, 2025 at 10:42 AM Ronda McNae <prose.rmcnae@gmail.com> wrote:
    "The Court has determined trial will continue and in light of the multitude of discussions we have had with you regarding your lack thereof of a case and the likely negative outcome and consequences we are informing and advising you to consider doing a bench trial as it will be in your best interest since the Judge is aware of all factors of this matter and the Jury is only being told about the actions surrounding the breach."


    This quote was from a previous email you wrote to me. Please request a bench trial. Thank you.

    Regards,
    Ronda

    On Thu, Apr 3, 2025 at 7:01 AM Nichelle Womble <nichelle@amethystlawgroup.com> wrote:
        Good morning
        I want to clarify just because you are selecting a bench trial does not mean that the outcome will be any different. While the Judge is aware of all of the facts that cannot be discussed with the jury that does not mean he will take any of that into account and it does not mean the outcome will be any more or less favorable. We will request with the Judge but it will be up to him whether he allows it.

↩ **Nichelle Womble**                                                    Thu, Apr 3, 8:14 AM   ☆   ☺   ↩   ⋮
to me, Ronda, Sally, Shaunna ⌄

It is not up to us it is up to the Plaintiff this is his trial and he demanded a jury.

On Thu, Apr 3, 2025 at 11:12 AM Ronda McNae <prose.rmcnae@gmail.com> wrote:

> Understood. I'm speaking from my own perspective and have come to recognize what is in my best interest holistically. After discussing the
> situation with my victim advocate, I called the ADA Coordinator to inform her that my advocate recommended attending via Zoom due to my
> PTSD symptoms, which included almost throwing up during a call.
>
> I also shared with the coordinator that a bench trial would at least reduce the duration of the trial, making it far more manageable under the
> circumstances. She shared that a motion/request needs to be filed to seek a bench trial, and I understand that the final decision ultimately
> rests with the Judge.
>
> ***Please file a motion requesting a bench trial.***
>
>
> Thank you,
>
> Ronda

---

Re: Termination of Legal Representation – Case No. 1:22-cv-22171-JEM  [Inbox]                    🖨  ⬈

**Nichelle Womble**                                              Thu, Apr 10, 6:29 AM (12 days ago)   ☆   ☺   ↩   ⋮
to me, Shaunna, Sally, Shaunna, Ronda, Amir ⌄

Additionally we asked you multiple times what personal knowledge to the facts being presented by the Plaintiff multiple times and you had absolutely no personal knowledge
and did not present any evidence to prove otherwise. Your right to testify does not extend to opinion you must have personal knowledge.

Your request for objections were frivolous. Live testimony is not discovery as we have explained multiple times. We cannot and will not present or make arguments to the
court that we know are frivolous and we are required by ethics to not knowingly make frivolous arguments.

You have failed over the course of our representation to adhere to and listen to our legal counsel. You have continued to circumvent what we have told you.


Thank you,

Nichelle L. Womble Esq., M.S.Ed

April 3, 2025

Dear Ms. Womble,

I am writing to seek clear and consistent guidance regarding my request for a bench trial. I am increasingly concerned about the conflicting statements I have received regarding who decides whether the trial will proceed as a jury or bench trial.

**1. Initial Demand and Withdrawal:**

I originally demanded a jury trial, but after careful consideration and in light of your decision not to have me testify, I have chosen to withdraw that demand and request a bench trial. My understanding is that, as the party who initially requested the jury trial, I have the right to seek its withdrawal.

**Supporting Information:**

- **Exhibit A (DE 105 - Jury Demand):** This screenshot clearly shows that my prior counsel demanded a jury trial on all issues raised in the Plaintiffs' Amended Complaint, Answer, Affirmative Defenses, and Counterclaim that are triable.
- **Exhibit B (Civil Cover Sheet) section:** This document shows that the **"Jury Demand"** box is marked **"No"** under the section filed by the plaintiff, indicating that they did not originally request a jury trial.

**2. Extenuating Circumstances Supporting a Bench Trial:**

Several circumstances make a bench trial more appropriate and reasonable in this case:

- **Personal Health Considerations:** Due to my PTSD symptoms, the stress of presenting my case before a jury is overwhelming, especially given that I am not allowed to testify or defend myself. This situation has caused severe anxiety and physical symptoms, including gagging and nearly vomiting when discussing the case.
- **Victim Advocate Availability:** My victim advocate will not be able to attend the full two-week trial if it proceeds as a jury trial. This significantly impacts my ability to have necessary emotional and procedural support throughout the trial.
- **Family Impact:** My older children will be attending the trial with me, and both are already experiencing ongoing stress and health issues directly related to this case. The disconnect between you and I has further contributed to their anxiety, which is a serious concern. A shorter trial duration would significantly alleviate the mental health strain on both my children and myself, especially since my PTSD symptoms have worsened after you pushed for a settlement as a condition of your continued representation.

My **treating therapist has documented these concerns** in a recent report, noting the impact on my mental health and the added stress caused by the pressure to settle and feeling my new counsel isn't representing my interests.

- **Judicial Efficiency:** Since the plaintiffs did not originally want a jury trial, moving forward with a bench trial would align with their initial preference and expedite the process, minimizing significant costs and preserving judicial resources.
- **Focus on Legal Issues:** The judge's familiarity with the entire context of the case would lead to a more comprehensive and fair determination than a jury, who would only hear the limited issues related to the breach.

### 3. Conflicting Information:

Previously, you advised that moving to a bench trial was in my best interest since the Judge is familiar with the full context of the case, whereas the jury would only hear specific facts related to the breach. However, you have now stated that it is entirely up to the plaintiff to decide, which contradicts your earlier guidance.

According to **Rule 1.430(d)** of the **Florida Rules of Civil Procedure**, once a jury trial is demanded, it cannot be withdrawn without the **consent of the other party** or **court approval**. Since the plaintiff did not initially request a jury trial, I believe my motion to withdraw the demand should be submitted for the court's consideration.

### 4. Concerns Regarding External Pressure:

I am concerned that your recent guidance may be influenced by external pressure from ARAG or opposing counsel. This concern stems from past issues related to settlement pressure and the ongoing inconsistencies in your advice. I need to be confident that my legal representation is focused solely on my best interests, without outside influence. While I understand that your agreement is with ARAG Legal Insurance, it is important to remember that I am your client, and your primary obligation is to represent my interests. Although I did not sign a contract directly with you, which has always concerned me as your client, I expect my instructions and preferences to be respected.

You never required me to sign any engagement contract, which has always been a concern for me, especially since my prior counsel through ARAG did require it, as did my husband's new representation also retained through ARAG. This inconsistency makes me question the nature of our attorney-client relationship and whether my best interests are truly being prioritized.

### 5. Request for Clarification and Action:

Please clarify why you have changed your stance regarding the withdrawal of the jury demand and the assertion that the plaintiff solely decides the trial format. I kindly ask that you file a motion to request a bench trial as previously discussed. If you believe this course of action is not viable, please provide a detailed explanation citing the specific legal rules or case law you are relying on.

Thank you for your attention to this matter. I look forward to your prompt response and clear guidance.

Sincerely,

/s/ Ronda McNae

## JURY DEMAND

Defendant/Counterclaimant Ronda McNae hereby demands a trial by jury on all issues raised in Plaintiffs' Amended Complaint and this Answer, Affirmative Defenses, and Counterclaim that are so triable.

21



BRODSKY FOTIU-WOJTOWICZ

| VII. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause. (Do not cite jurisdictional statutes unless diversity): Breach of Contract, Diversity Jurisdiction 28 USC Section 1332 | | |
|---|---|---|---|
| | LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case) | | |
| VIII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 100,000+ | CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☑ No |
| ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE | | | |
| DATE 7/14/2022 | SIGNATURE OF ATTORNEY OF RECORD *Peter E Berlowe* | | |
| FOR OFFICE USE ONLY : RECEIPT # | AMOUNT | IFP          JUDGE | MAG JUDGE |

# Exhibit R

## Coercion / Threats of Withdrawal if No Settlement

**Counsel's Threats of Withdrawal and Coercive Settlement Pressure** – This exhibit contains emails from trial counsel Nichelle Womble conditioning continued representation on Defendant's agreement to specific settlement terms. Counsel's threats of withdrawal and references to negative consequences—including risks to Defendant's adoption process—constitute coercion and obstruction of Defendant's legal decision-making. These communications support Defendant's claim under Rule 60(b)(3) that misconduct prejudiced her right to a fair trial.

**Specific language found includes:**

*"You really need to consider the settlement offers. If you decline both options, I will have no choice but to withdraw…"*

*"…your refusal to cooperate with settlement puts the entire case in jeopardy, including your adoption proceedings."*

*More supporting emails upon request of this Court



**AMETHYST**
—————— L A W   G R O U P

Office: (844) 482 – 1239 | Florida
Fax: (813) 200 - 1811 | Georgia
Of Counsel Office: (904) 300 – 2429 | Washington, D.C.

| Miami, Florida | Melbourne, Florida | Tampa, Florida | Jacksonville, Florida (Of Counsel) | Ocala, Florida |
|---|---|---|---|---|
| 80 SW 8ᵗʰ Street | 1704 Aurora Road | 100 S. Ashley Drive | Law Office of Harrison M. Fischer | 603 E. Fort King Street |
| Suite 2000 | Melbourne, Florida 32934 | Suite 600 | 1015 Atlantic Blvd., Suite 265 | Ocala, Florida 34471 |
| Miami, Florida 33130 | | Tampa, Florida 33602 | Atlantic Beach, Florida 32233 | |

March 20, 2025

Mrs. Rhonda McNae

Sent via rondamcnae@gmail.com

And Docusign

Mrs. McNae,

I am writing to address a serious concern regarding your recent actions in your case. As your legal counsel, it is our responsibility to handle all communications with the opposing party or third parties without first consulting with our office if the matter directly affects the matter we currently represent you on. You are **strictly prohibited** from directly contacting the opposing party, opening new cases or consumer complaints related to this matter, or failing to comply with legal orders. Such actions jeopardize your case and undermine our ability to represent you effectively.

Additionally, we have provided you with clear legal recommendations based on our experience. If you choose not to follow our advice, it will create **irreconcilable differences** in our attorney-client relationship. Under these circumstances, we will have no choice but to **withdraw from your case, as we are ethically and professionally mandated to do so.**

A few items that need to be specifically addressed that have been discussed with you over the last few days. Per our multiple conversations and our legal advice to you we advised you that it is our legal opinion that this matter should not be taken to trial which is currently scheduled to commence April 7, 2025. It has been explained to you that if you take this to trial due to your limited defenses and limited case the risk is extremely high. If there is a judgement entered against you at the conclusion of the trial the amount of those damages will be out of your control once a final order is entered. While you may still have a chance to appeal, this will have to be discussed with appellate counsel as our firm will not be handling the matter beyond the trial court level. If your case is unsuccessful on appeal the judgement entered by the court will be the amount you are responsible for and will likely be significantly higher than it would be if you did an agreed order or global settlement which I will discuss further in this letter. If a judgment s entered and you are not able to afford the amount against you there could be extreme consequences. Those consequences which have been discussed with you previously are financial, there could be liens placed, potential for the need to file bankruptcy if the judgment qualifies,

potential ramifications in other proceedings like the adoption you and your family are currently going through.

Over the last couple of weeks our office has also discussed two other potential options outside of trial with you.


The first offer was doing an agreed order where you and the Plaintiff would determine a monetary amount that both parties were comfortable with and that would be presented to the Judge. A motion to convert the summary judgment and that agreed order to a final judgement would then be filed. With that final judgement you would then be able to immediately begin your appeal process. The starting number from the Plaintiff is 1.6 million, which is well below the 2.5-3.5 million they are seeking in damages if we go to trial. As mentioned to you prior while this number is their top number it is not their bottom line. You returned with an offer of $1000 and upon reading your reasons for deciding on that offer I reached out to you and informed you that the reasons being used needed to be reevaluated as they focused on what has gone wrong in court and not the overall objective. If this is the path that is taken, if your appeal is not successful you will still be responsible for that judgment however it would be a judgment once again substantially lower than the amount being requested if you go to trial. If your appeal is successful the process would start over which means the judgment would be null and void at that moment and liability would be back on the table and you would go from there.


The newest offer that has been presented is in connection with the current bad faith claim you have open against ARAG. As you are aware, if your bad faith claim is successful ARAG could be on the hook for covering your entire judgment. When a bad faith claim is filed against an insurance company if they owed a duty and did not provide a defense that is when the consequences of being responsible for a judgment can come into play. The potential option is that ARAG would enter into settlement talks with our office and with Mr. Fitzgerald (amount to be determined) if the amount is agreed to by Mr. Fitzgerald, then a global settlement offer would then be signed. One prong of that settlement would be between your family and ARAG where they have agreed to pay you a certain amount of money. The money that they are agreeing to pay you will be the amount of money to cover the other prong which is your settlement with Mr. Fitzgerald. At that time the case against you would then be dismissed once that agreement is signed. The caveat to this agreement is both you and your husband would have to agree since you both are a part of the bad faith claim and both currently have cases with Mr. Fitzgerald. There would also be an amount that would close out his case as well. If this is the path that is taken there would be no judgment against you and the case would be done. If however, hypothetically, your Motion for Summary Judgment is granted and the case starts over there is a chance that your bad faith claim could then be thrown out because you are no longer exposed to the possibility of damages since the case is now starting from the ability to argue liability first before moving forward with potential damages. There is also a chance that your bad faith claim will fail even if the Motion is not granted and if that is the case any judgment entered against you would stick and ARAG would have no duty to cover.

If you have any concerns or require clarification, please address them directly with us. However, continued disregard for our legal guidance will leave us no alternative but to formally withdraw as your attorneys.

Respectfully Submitted,

Nichelle Lynn Womble Esq.

Amethyst law Group

Please sign and confirm that you have received this letter and understand its contents

_____

Signature

_____

Printed Name

_____

Date



**AMETHYST**
——— L A W   G R O U P ———

Office: (844) 482 – 1239 | **Florida**
Fax: (813) 200 - 1811 | **Georgia**
*Of Counsel Office:* (904) 300 – 2429 | **Washington, D.C.**

| **Miami, Florida** | **Melbourne, Florida** | **Tampa, Florida** | **Jacksonville, Florida (*Of Counsel*)** | **Ocala, Florida** |
|---|---|---|---|---|
| 80 SW 8th Street | 1704 Aurora Road | 100 S. Ashley Drive | Law Office of Harrison M. Fischer | 603 E. Fort King Street |
| Suite 2000 | Melbourne, Florida 32934 | Suite 600 | 1015 Atlantic Blvd., Suite 265 | Ocala, Florida 34471 |
| Miami, Florida 33130 | | Tampa, Florida 33602 | Atlantic Beach, Florida 32233 | |

March 20, 2025

Mrs. Rhonda McNae

Sent via rondamcnae@gmail.com

And Docusign

Mrs. McNae,

I am writing to formally inform you that Nichelle Lynn Womble Esq. and Amethyst Law Group intend to withdraw from representing you in your Federal breach of Contract Case that has been brought against you by Mr. Fitzgerald, due to recent actions and decisions on your part that have created multiple conflicts and significantly hindered our ability to effectively and ethically represent you in this matter. As legal counsel, we have an obligation to maintain professional standards and uphold ethical guidelines, and regrettably, the circumstances that have arisen make it impossible for us to continue our representation in a competent and professional manner.

Specifically, these issues have resulted in fundamental disagreements regarding the strategy and approach to your case, as well as complications that impede our ability to provide legal counsel in alignment with our professional responsibilities. Given these irreconcilable differences, we are compelled under the Florida Rules of Professional Conduct to withdraw from this matter.

We urge you to either seek new legal representation as soon as possible to ensure that your case is properly managed moving forward. We understand that this transition may be challenging, and we will take all necessary and appropriate steps to facilitate the transfer of your legal file to new counsel upon request, in accordance with our professional and ethical obligations.

Due to the urgency of this matter and the fast-approaching trial, we require your response by **3:00 PM EST on Friday, March 21, 2025** regarding your consent to our withdrawal. Please sign and return this letter to indicate your agreement. If we do not receive a response by this deadline, we will proceed with filing an emergency motion with the court requesting the judge to take appropriate action.

Should you require any clarification or assistance in obtaining your case materials, please do not hesitate to contact our office at your earliest convenience. It is essential that you address this matter promptly to avoid any adverse impact on your legal proceedings.

WWW.AMETHYSTLAWGROUP.COM

We appreciate the opportunity to have worked with you and sincerely hope that you find a suitable legal representative who can continue to advocate on your behalf. We wish you the best in the resolution of your case.

Respectfully Submitted,

Nichelle Lynn Womble Esq.

Amethyst law Group

Please sign and confirm that you consent to our withdrawal

_____

Signature

_____

Printed Name

_____

Date

# Exhibit S

**Refusal to object on key substantive issues**

**(trial evidence, false claims by opposing party)**

Defendant repeatedly requested that trial counsel object to improper arguments, evidence, or procedural handling of key matters, including issues tied to her medical condition and procedural rights. Counsel's refusal to raise these objections not only waived critical issues for appellate review but also compounded the prejudicial exclusion of Defendant from meaningful participation in the trial process.

# Fitzgerald lost business opportunities

🖨  ⬈

**Ronda McNae** <prose.rmcnae@gmail.com>
to Nichelle, Shaunna, Shaunna, Sally ▾

📎 Sat, Apr 5, 7:30 PM   ☆   ☺   ↩   ⋮

**Subject:** Fitzgerald lost business opportunities

Top line: any issue Fitzgerald may have experienced (no damage was every produced or did he testify to) was due to *litigation activities like 3rd party subpoena*. In the Email from Stephanie Casey, Alaina Fotiu-Wojtowicz was absolutely included in the email communications and agreement. Defendant cannot be held liable for actions that were natural and part of the litigation process.

Order DE 340:

   **Motion** *in limine* **No. 10**: Defendant moves to exclude any evidence regarding Fitzgerald's lost business opportunities based on a stipulation. (Mot. at 10–11). According to Fitzgerald, no stipulation was ever agreed to, and the negotiations were between counsel for Plaintiff and counsel for William McNae, not Ronda McNae. (Resp. at 13, ECF No. 212). Moreover, Fitzgerald shall be permitted to testify that he suffered lost business opportunities due to his alleged reputational harm caused by Defendant's breach of the Settlement Agreement. Accordingly, this Motion *in limine* is DENIED.

   For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that Defendant's Motions *in limine*, (ECF No. 206), are GRANTED in part and DENIED in part.

   DONE AND ORDERED in Chambers at Miami, Florida, this 8 day of March, 2025.

Copies provided to:
All Counsel of Record

JOSE E. MARTINEZ
UNITED STATES DISTRICT

**Mr. Gomez's MIL DE 206:**

X. Motion No. 10: Exclusion of evidence regarding Fitzgerald's lost business opportunities, based on stipulation

Defendant moves to exclude any evidence, testimony, or reference to claims that Ronda and William McNae's alleged defamatory statements or breaches of the Confidential Settlement Agreement resulted in any lost business opportunities for Plaintiff Michael Fitzgerald. In a June 15, 2023, email, attached as Exhibit A, Plaintiff's counsel stipulated that "Mr. Fitzgerald will agree to forego any claims that Ronda and William McNae's defamatory statements and breaches of the Confidential Settlement Agreement resulted in any lost business opportunities. We will advise Dr. DiTomasso that any amount of Mr. Fitzgerald's non-economic damages which are related to lost business opportunities be reduced by this stipulation." This stipulation was provided in response to subpoenas Defendant was in the process of serving on third parties for documents supporting Fitzgerald's claim that he lost business opportunities with various entities. Plaintiff's stipulation waives any claim for lost business opportunities, rendering any evidence or testimony on the matter irrelevant under Federal Rule of Evidence 401, which requires that evidence must make a fact more or less probable to be admissible. The stipulation explicitly removes lost business opportunities from the scope of damages in this case, meaning that introducing evidence or testimony related to such claims would not assist the jury in determining any material fact relevant to the breach of contract claim. WHEREFORE, Defendant requests that the Court enter an order that precludes Plaintiff and his attorneys and witnesses from mentioning, offering evidence about, referring to, asking questions alluding to or reasonably likely to result in a reference to, or attempting to convey to the jury in any manner, directly or indirectly, any of the matters set forth above. In the alternative, Defendant requests an order that instructs Plaintiff, his attorneys and his witnesses not to do so without first obtaining a ruling from the Court outside the presence of the jury ultimately selected in this case.

**Fitzgerald's opposition to MIL DE 212:**

10. Evidence Regarding Fitzgerald's Lost Business Opportunities

McNae seeks to exclude testimony by Fitzgerald that he lost out on potential business opportunities as a result of McNae's disparaging statements. Although the email from June 15, 2023 states that Fitzgerald would forego any claims of lost business opportunities, the stipulation between counsel was never agreed to. Furthermore, the negotiations were between counsel for Plaintiff and counsel for William McNae, but not with Ronda McNae. A copy of the response form Defendants' counsel is attached hereto as Exhibit A. Therefore, there was no agreement and Fitzgerald should be permitted to testify that he suffered harm in losing out on various business opportunities due to the reputational harm caused by McNae's defamatory and disparaging comments. Fitzgerald opposes Motion in Limine No. 10 for these reasons. WHEREFORE, based upon the foregoing, Plaintiff Michael Fitzgerald respectfully requests that this Court deny Defendant Ronda McNae's Motion in Limine Numbers 1 through 10 and for any further relief as this Court deems just and proper.

3 Attachments · Scanned by Gmail ⓘ



DE 340.pdf    DE 206 DF MT in ...    DE 212 PL rp to D...

Objection   Inbox ×

↗ **Ronda McNae** <rondamcn...   Thu, Apr 10, 5:21 AM (12 days ago)   ☆   ☺   ↩   ⋮
to Shaunna, Shaunna, Nichelle, Sally, me ▾

Nichelle,

Please find attached the email correspondence from my prior counsel addressing this matter. I am providing these communications to ensure that the objection is clearly preserved and documented. My husband maintains personal relationships with both current and former employees of SoftwareONE ("SWO"). Pursuant to the agreement between the parties, **neither I nor my husband was permitted to seek further discovery from SWO or to depose or call any of its employees, past or present, to testify**. This restriction was a condition imposed following the issuance of my second subpoena to SWO, which led to SWO initiating legal action against me in Wisconsin. That lawsuit was subsequently dismissed, but only after an agreement was reached whereby we consented not to pursue additional discovery or testimonial evidence from SWO or its personnel.

-Ronda

📄 **"RE Ronda McNae Second Subpoena to SoftwareONE.eml 1.eml"**.

Specifically, the confirmation appears in a response email from **Peter E. Berlowe, Esq.**, counsel for Michael Fitzgerald, in which he writes:

> "**Yes, Fitzgerald is in agreement to your conditions.**"

This statement follows an email from opposing counsel proposing the withdrawal of the subpoena under the condition that no further discovery would be sought from SoftwareONE, including **no depositions of its current or former employees**. The referenced agreement therefore constitutes a mutual understanding between the parties as to those discovery limitations.

**\*\*Non-Waiver of Attorney-Client Privilege as to Prior Counsel Alaina Fotiu-Wojtowicz, Esq.:**

Defendant, Ronda McNae, expressly states that she **does not waive the attorney-client privilege generally as to prior counsel, including Alaina Fotiu-Wojtowicz, Esq., or her firm, Becker & Poliakoff, P.A.** However, Defendant submits the attached communications involving Ms. Fotiu-Wojtowicz solely to the extent necessary to support her claims of **fraud on the court, obstruction of discovery, and misconduct directly relevant to her Rule 59(e)/60(b) motion for relief from judgment**.

"RE Ronda McNae Second Subpoena to SoftwareONE.eml 1.eml".

Specifically, the confirmation appears in a response email from **Peter E. Berlowe, Esq.**, counsel for Michael Fitzgerald, in which he writes:

> "**Yes, Fitzgerald is in agreement to your conditions.**"

This statement follows an email from opposing counsel proposing the withdrawal of the subpoena under the condition that no further discovery would be sought from SoftwareONE, including **no depositions of its current or former employees**. The referenced agreement therefore constitutes a mutual understanding between the parties as to those discovery limitations.



**RE: Clarification**  Inbox ×   🖨  ↗

↩ **Alaina Fotiu-Wojtowicz**     Tue, Apr 8, 1:18 PM (2 days ago)   ☆  ☺  ↩  ⋮
to me, Heather ▾

I do think this might be in contravention of the agreement that all parties had to not seek further information or discovery from any of the SoftwareONE entities. That might be something for you to raise with your counsel. I had previously sent you the e-mails where that agreement was documented.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.

**BFW**

**RE: Clarification**  Inbox ×   🖨  ↗

**Alaina Fotiu-Wojtowicz**     Tue, Apr 8, 1:17 PM (2 days ago)   ☆  ☺  ↩  ⋮
to me, Heather ▾

They were provided by SoftwareONE UK through a request by Fitzgerald. We forced him to make the request to them because they wouldn't give it to them directly. So they were produced by SoftwareONE UK, but not directly pursuant to a subpoena. It was through Fitzgerald. It was around the time we hired the UK Lawyer to help us get the documents – it was all in association with those requests. But you are correct they were never legally compelled by us to produce the documents.

Sincerely,

Alaina Fotiu-Wojtowicz, Esq.

**Disclosure of these specific communications is made under the exception to privilege that applies when a former attorney's conduct becomes central to claims of **attorney misconduct, fraud, or breach of fiduciary duty** (*see, e.g., Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386 (11th Cir. 1994); In re LTV Securities Litigation, 89 F.R.D. 595, 604 (N.D. Tex. 1981)*).

This disclosure is **narrowly limited** to the factual issues surrounding counsel's representations about the SoftwareONE discovery stipulation and improper coordination with opposing counsel. Defendant expressly reserves all other privileges and objections as to unrelated matters.

**From:** Nichelle Womble <nichelle@amethystlawgroup.com>
**Sent:** Friday, April 4, 2025 6:00:00 AM
**To:** Ronda McNae <prose.rmcnae@gmail.com>
**Cc:** Ronda McNae <rondamcnae@gmail.com>; Sally Plum <sally@amethystlawgroup.com>; Shaunna Proper <shaunna@amethystlawgroup.com>
**Subject:** Re: MBPD Update for Judge Martinez

Mrs. McNae
Just because evidence is being gathered and the case is presented does not mean a case will be filed. Additionally there is nothing to alert the court of. A continued investigation at this point does not determine allegations to be true or false.

Thank you,

Nichelle L. Womble Esq., M.S.Ed

---

**Ronda McNae** <rondamcnae@gmail.com>                                        Fri, Apr 4, 6 to AM    ☆  ☺  ↩
to Nichelle, Ronda, Sally, Shaunna ▾

Yeah I understand however if Peter gets to bring it up, I should be able to let them know it's wholly due to Yelanys false affidavit, they assigned a new detective. Her false report directly impacted the criminal investigation which has a direct impact on this civil case.

Peter is so misleading. And I only filed two reports. It was taken in seattle, wa so they could send it to SF.

Regards,

Ronda McNae

Objection to Affidavit of Sarah Minto and Testimony of Jessica Bergman                    🖶   ⧉

**Ronda McNae** <prozeromcnae@gmail.com>                                       GP  Apr 8, 2025, 6:45 PM   ☆   ☺   ↩   ⋮
to Nichelle, Alaina ▾

Nichelle,

I write to once again firmly reiterate my objections concerning the affidavit of Ms. Sarah Minto and the related testimony of Ms. Jessica Bergman. First, I want to be clear. I am not objecting to the documents that were produced as I am aware of them. My issue is with a random person by the name of Sarah Minto claiming that SWO UK produced documents when in fact, it was Fitzgerald and now coming into authenticate.

As you are aware, there is an express agreement among the parties not to pursue further discovery or obtain new information from SoftwareONE or any of its affiliated entities. *My former counsel, Alaina (copied here)*, consistently advised that the introduction of newly obtained evidence related to SoftwareONE would constitute a breach of that agreement. Indeed, in a July 19, 2023 email, Fitzgerald's counsel expressly confirmed: **"Yes, Fitzgerald is in agreement to your conditions,"** in response to SoftwareONE's request that no further discovery be pursued from the company or its current or former employees.

Ms. Bergman, while listed on all witness lists, is a former SoftwareONE employee who departed the company in December 2024. Fitzgerald's attempt to now rely on her as a trial witness—despite the parties' agreement—constitutes a clear and improper circumvention of the discovery limitations that were expressly negotiated and confirmed by his own counsel. If such testimony were deemed permissible, I would have considered calling other former SoftwareONE personnel, such as Jared Cheney, whose involvement was curtailed solely due to the parties' mutual understanding and directive that no further contact with SoftwareONE affiliates would be allowed.

Moreover, Fitzgerald's counsel in DE 226 emphasized that discovery in this case must adhere strictly to the terms of the scheduling orders and the operative protective agreements. Yet the affidavit from Ms. Sarah Minto was submitted on the eve of trial, allegedly to provide "credible testimony" that SoftwareONE UK (SWO UK) was the entity that produced certain business records. In doing so, Plaintiff is attempting to retroactively validate a production that did not occur through proper channels.

To be clear, SWO UK was never successfully subpoenaed, and as such, there is no credible factual basis to conclude that those documents were ever formally produced by that entity. Who is Sarah Minto? This is the first time I am hearing her name. We did not receive any documents from her a year and a half ago. The issue is not whether the documents were previously received—the issue is that **SWO UK itself never formally produced them and, in fact, explicitly blocked all access to employment files.**

Now, on the eve of trial, Plaintiff asks the Court and opposing parties to simply accept, without any formal authentication or prior disclosure, that Sarah Minto is a legitimate representative of SWO UK and that she is credibly certifying the production of these documents. That is unacceptable. The affidavit is not notarized, contains no contact information, and fails to establish that Ms. Minto has any lawful authority to attest on behalf of SoftwareONE UK. This is especially troubling given that SWO UK refused to cooperate in discovery. In DE 322, you clearly communicated to me and my husband's boss; Josh Condie, that this affidavit would not be accepted without a notary, which we did at the last minute. This should go both ways, respectfully.

Despite these procedural and evidentiary concerns, I understand you are presently declining to object to either Ms. Bergman's testimony or Ms. Minto's affidavit. I respectfully request a clear and prompt explanation of this position, including how it serves to protect my legal interests, particularly in light of the following:

- The express agreement prohibiting discovery and testimony from former or current SoftwareONE and its personnel;
- The improper timing and informal sourcing of the documents, funneled through Fitzgerald rather than proper legal process;
- The highly questionable validity of the purported affidavit from Ms. Minto, including its lack of notarization, verification, or any foundation establishing her authority;
- The prejudicial risk of waiving key objections and allowing unreliable, post hoc evidence on the eve of trial.

Please advise me promptly of the strategic rationale behind this decision so that I may fully understand the implications. I am deeply concerned about the potential prejudice to my position and believe it is critical to preserve all objections necessary to safeguard my rights and ensure a fair proceeding. I want to protect and preserve my rights to appeal.

Thank you for your immediate attention to this matter.

Sincerely,


Ronda McNae


3 Attachments • Scanned by Gmail ⓘ                                                                 ↓  ⟳

📄 DE 226 pl reply in ...        📄 DE 362.pdf        📄 DE 322 mt recon...

**From:** Ronda McNae <prose.rmcnae@gmail.com>
**Sent:** Tuesday, April 8, 2025 7:31:35 PM
**To:** Nichelle Womble <nichelle@amethystlawgroup.com>; Shaunna Proper <shaunna@amethystlawgroup.com>; Shaunna Proper <receptionist@
amethystlawgroup.com>; Sally Plum <sally@amethystlawgroup.com>
**Subject:** Fw: Question related to agreement with SWO

Here's clear evidence. Sorry, but I refuse to allow opposing counsel to pull a fast one on me.


Respectfully,

Ronda McNae

3 Attachments · Scanned by Gmail ⓘ

| RE: [CAUTION Ext... | RE: Ronda McNae... | RE: Ronda McNae-... |

---

**NOTICE OF OBJECTION TO IMPROPER AFFIDAVIT FILING AND WITNESS TESTIMONY**

Defendant Ronda McNae hereby objects to the use of:
1. **The affidavit filed by Plaintiff on April 7, 2025 (DE 362), executed by a records custodian from SoftwareONE UK Ltd.;**
2. **Testimony from Plaintiff's witness Jessica Bergman, a former SoftwareONE employee, as to reputational harm.**

Grounds for Objection:
- Violation of Discovery Agreement:

The parties had a mutual agreement not to seek discovery from SoftwareONE, its affiliates, or employees, as confirmed in writing by Plaintiff's counsel. The late-filed affidavit and witness testimony from a former SWO employee directly contravene this agreement.
- No Subpoena or Formal Discovery Process:

The SWO UK affidavit (DE 362) was not produced in response to a court-issued subpoena, nor was it subject to opposing party review or deposition. It was obtained unilaterally by Plaintiff and filed on the eve of trial, without sufficient time to challenge or rebut.
- Improper and Prejudicial Timing:

Filing such material one day before trial undermines procedural fairness and creates prejudice against the Defendant, who is left unable to meaningfully examine or contest its credibility or purpose.
- Bias and Lack of Foundation for Testimony on Reputation:

Ms. Bergman was a coworker of Plaintiff at SoftwareONE and left the company in December 2024. Her testimony about Plaintiff's reputation is drawn from her employment with SWO and therefore falls within the scope of the prohibited SoftwareONE-related discovery. Her statements lack neutrality and are not based on independent, personal knowledge outside the scope of her role as an SWO employee.

Defendant respectfully asks that the Court exclude this affidavit and bar any reputational testimony from Ms. Bergman as inconsistent with both procedural fairness and the parties' discovery agreement.

On Tue, Apr 8, 2025, 4:34 PM Ronda McNae <prose.rmcnae@gmail.com> wrote:

Dear Nichelle,

I wanted to provide you with a quick summary of key emails from prior opposing counsel, Alaina Fotiu-Wojtowicz, regarding the SoftwareONE UK document production and an earlier agreement limiting discovery:

1.   SoftwareONE UK Document Production

Alaina confirmed that SoftwareONE UK was never subpoenaed. The documents were obtained through Fitzgerald, who made a request to SoftwareONE UK after being pushed to do so. They had to involve a UK attorney to facilitate this, but at no point was SWO UK legally compelled or subject to a formal discovery request. This supports our position that the submission of SWO UK's custodian affidavit (DE 362) was voluntary and potentially misleading in its presentation to the court.

2.   Violation of Discovery Agreement

Alaina acknowledged that further discovery from any SoftwareONE entity could contravene a prior agreement among the parties not to seek further information from SWO. She also referenced prior emails documenting this agreement. If Fitzgerald's team is now using any new SWO-related witness or documentation beyond the scope of that agreement, this may constitute a discovery violation.

Please let me know how you'd like to proceed with this information. I believe it's critical to formally raise the issue of both the SWO UK affidavit's weight and the potential breach of the agreed-upon discovery boundaries.

Respectfully,

Ronda Mcnae

From: Nichelle Womble <nichelle@amethystlawgroup.com>
Sent: Tuesday, April 8, 2025 5:00:52 PM
To: Ronda McNae <prose.rmcnae@gmail.com>
Cc: Sally Plum <sally@amethystlawgroup.com>; Shaunna Proper <shaunna@amethystlawgroup.com>; Shaunna Proper <receptionist@amethystlawgroup.com>
Subject: Re: Summary of Prior Counsel's Emails Regarding SoftwareONE UK and Discovery Agreement

Good afternoon

None of their documents or discovery is new.  It is all information entered and shared prior.

Thank you,

Nichelle L. Womble Esq., M.S.Ed

Attorney | Florida | Washington D.C.

Re: Summary of Prior Counsel's Emails Regarding SoftwareONE UK and Discovery Agreement

**Ronda McNae** <prose.rmcnae@gmail.com>                                      Tue, Apr 8, 5:13 PM
to Nichelle, Shaunna, Sally

The anticipated testimony from Jessica Bergman, whose employment-based opinions also fall within the scope of that same agreement.

I need to be very clear: I am not comfortable with these issues being dismissed or minimized. In DE 226, Plaintiff argued against the use of post-discovery evidence—and now they are introducing last-minute, unauthenticated records and a witness who appears to violate discovery terms.

This is a procedural and strategic concern that affects the integrity of the case and my ability to preserve these issues for appeal. If you are unwilling to raise the objection, please confirm that in writing, as I will need to assert it myself.


Respectfully,

Ronda Mcnae



**Ronda McNae** <prose.rmcnae@gmail.com>                                      Tue, Apr 8, 5:22 PM
to Nichelle, Shaunna, Sally

Thank you for your continued responses. While I understand that you believe the affidavit simply authenticates previously produced records and that Ms. Bergman is a fact witness, I respectfully maintain that both the affidavit (DE 362) and Ms. Bergman's testimony raise serious procedural and substantive concerns.

To reiterate:
- The affidavit was filed on the eve of trial, without a subpoena, and from an affiliate of SoftwareONE, despite a written agreement not to seek discovery from SWO or its affiliates.
- Ms. Bergman's "personal knowledge" is rooted in her role as a former SWO employee, which I believe squarely falls within that same agreement.
- Even if her testimony is not expert in nature, she is being used to support reputational harm claims—which are themselves opinion-based and highly subjective.
- The timeline and lack of opportunity to examine or depose either the affiant or Ms. Bergman makes the use of both deeply prejudicial.

I am not asking you to debate the validity of the objection—I am asking that it be formally raised and preserved for the record, even if overruled. If you are unwilling to do that, please confirm so that I may prepare to assert it myself.

Respectfully,

Ronda McNae



On Tue, Apr 8, 2025, 8:13 PM Ronda McNae <prose.rmcnae@gmail.com> wrote:

The anticipated testimony from Jessica Bergman, whose employment-based opinions also fall within the scope of that same agreement.

I need to be very clear: I am not comfortable with these issues being dismissed or minimized. In DE 226, Plaintiff argued against the use of post-discovery evidence—and now they are introducing last-minute, unauthenticated records and a witness who appears to violate discovery terms.

This is a procedural and strategic concern that affects the integrity of the case and my ability to preserve these issues for appeal. If you are unwilling to raise the objection, please confirm that in writing, as I will need to assert it myself.


Respectfully,

Ronda Mcnae

**From:** Nichelle Womble <nichelle@amethystlawgroup.com>
**Sent:** Tuesday, April 8, 2025 8:17:01 PM
**To:** Ronda McNae <prose.rmcnae@gmail.com>
**Cc:** Shaunna Proper <shaunna@amethystlawgroup.com>; Sally Plum <sally@amethystlawgroup.com>
**Subject:** Re: Summary of Prior Counsel's Emails Regarding SoftwareONE UK and Discovery Agreement

She is not testifying based on opinion she is not an expert witness which has been explained to you multiple times. She is a fact witness who will only be testifying as to personal knowledge.

Thank you,

Nichelle L. Womble Esq., M.S.Ed

---

## URGENT Request to Raise and Preserve Objection re: DE 362 and Jessica Bergman Testimony

**Ronda McNae** <prose.rmcnae@gmail.com>                                                    Tue, Apr 8, 4:53 PM

to Nichelle, Sally, Shaunna, bcc: walt ▾

Hi Nichelle,

Ahead of trial tomorrow, I have my formal objection below that I would like preserved on the record.

This relates to:

    1.    **The late-filed affidavit from SoftwareONE UK (DE 362), submitted without subpoena and in violation of the prior agreement not to seek further discovery from SoftwareONE or its affiliates; and**

    2.    **Testimony from Jessica Bergman, a former SoftwareONE employee, who is being used to testify on reputational harm—again, in violation of that same agreement.**

I do not believe it is procedurally fair or consistent with discovery rules to allow last-minute evidence from a foreign affiliate with no opportunity for challenge, especially when it was produced informally and after discovery had closed. Similarly, I do not believe a former coworker's testimony regarding reputation should be permitted when it stems from employment-based knowledge **prohibited by our discovery agreement.**

If you do not intend to raise this objection on my behalf, please confirm so that I may do so myself.

Thank you.
Ronda McNae

[DRAFT DOCUMENT]

**NOTICE OF OBJECTION TO IMPROPER AFFIDAVIT FILING AND WITNESS TESTIMONY**

Defendant Ronda McNae hereby objects to the use of:
1. **The affidavit filed by Plaintiff on April 7, 2025 (DE 362), executed by a records custodian from SoftwareONE UK Ltd.;**
2. **Testimony from Plaintiff's witness Jessica Bergman, a former SoftwareONE employee, as to reputational harm.**

Grounds for Objection:
• Violation of Discovery Agreement:
The parties had a mutual agreement not to seek discovery from SoftwareONE, its affiliates, or employees, as confirmed in writing by Plaintiff's counsel. The late-filed affidavit and witness testimony from a former SWO employee directly contravene this agreement.
• No Subpoena or Formal Discovery Process:
The SWO UK affidavit (DE 362) was not produced in response to a court-issued subpoena, nor was it subject to opposing party review or deposition. It was obtained unilaterally by Plaintiff and filed on the eve of trial, without sufficient time to challenge or rebut.
• Improper and Prejudicial Timing:
Filing such material one day before trial undermines procedural fairness and creates prejudice against the Defendant, who is left unable to meaningfully examine or contest its credibility or purpose.
• Bias and Lack of Foundation for Testimony on Reputation:
Ms. Bergman was a coworker of Plaintiff at SoftwareONE and left the company in December 2024. Her testimony about Plaintiff's reputation is drawn from her employment with SWO and therefore falls within the scope of the prohibited SoftwareONE-related discovery. Her statements lack neutrality and are not based on independent, personal knowledge outside the scope of her role as an SWO employee.

Defendant respectfully asks that the Court exclude this affidavit and bar any reputational testimony from Ms. Bergman as inconsistent with both procedural fairness and the parties' discovery agreement.


## Re: URGENT Request to Raise and Preserve Objection re: DE 362 and Jessica Bergman Testimony   Inbox  🖨  ☒

**Nichelle Womble**                                                              Tue, Apr 8, 5:10 PM   ☆   ☺   ↩   ⋮
to me, Sally, Shaunna ▾

Mrs. McNae
There is no last minute evidence  She is the person that produced the records in discovery and her affidavit authenticates those records your requested objection is procedurally incorrect and fails. Additionally software one cannot block someone from testifying to personal knowledge nor can you. Her testimony has nothing to do with any investigations or other alleged discovery from software one. We reviewed the orders the Judge has allowed reputation testimony and therefore Jessica is able to testify.

Thank you,

Nichelle L. Womble Esq., M.S.Ed

# Fw: GOATpath

**Ronda McNae** <reese.mcnae@gmail.com>                                                    Wed, Apr 9, 10:07 AM (13 days ago)
to Nichelle, Shaunna, Sally

We went back to our hotel to bring my son back. He's not feeling well. Grabbing food and headed back. Will hurry. Massive discrepancies with his testimony.

    1) I was told to provide police reports to SWO once I filed them. That is why I contacted SWO as Patty Ravencroft from SWO asked me to do this.

    2) Fitzgerald has never provided any evidence in discovery supporting anyone has ever contacted him regarding loss of reputation. In fact, my husband was just recently attending a conference with a prior software one employee told Will directly that everyone within software one we're all talking about how Fitzgerald slept with a Microsoft employee's wife and that it was an affair. The prior software one employee is Jaisson Mailloux, who was listed on our witness list.

    3) quarterly bonuses are not ever guaranteed at 100%... He keeps claiming that he would've been paid 100%. He testified during his deposition bonuses are tied to company performance and the company as a whole did not do well previously, especially in relation to the year of 2022.

4) The individuals he's naming at supper one was never named prior in depositions or even listed in any document that has been produced by Fitzgerald.

5) Fitzgerald and his council continue to say that I and Will came up with the whole NDA agreement... This is not 100% accurate considering I have evidence where he is talking to his best friend Tom wiper, and they both earn an agreement that he intended to pay me off but only if I sign an NDA.

Fitzgerald promised to cover my counseling and paid for one month then stated he would not pay and cover my counseling moving forward unless I signed this agreement.

Respectfully,

Ronda Mcnae

---

**Subject: GOATpath**

https://www.softwareone.com/en/buy-software

This is a rebrand of a cost optimization tool they had previously called PyraCloud. It's still available. It didn't "die" because MF left.

---

# Re: Termination of Legal Representation – Case No. 1:22-cv-22171-JEM  Inbox

**Nichelle Womble**                                                                        Thu, Apr 10, 9:29 AM (12 days ago)
to me, Shaunna, Sally, Shaunna, Ronda, Amir

Additionally we asked you multiple times what personal knowledge to the facts being presented by the Plaintiff multiple times and you had absolutely no personal knowledge and did not present any evidence to prove otherwise. Your right to testify does not extend to opinion you must have personal knowledge.

Your request for objections were frivolous. Live testimony is not discovery as we have explained multiple times. We cannot and will not present or make arguments to the court that we know are frivolous and we are required by ethics to not knowingly make frivolous arguments.

You have failed over the course of our representation to adhere to and listen to our legal counsel. You have continued to circumvent what we have told you.

Thank you,

Nichelle L. Womble Esq., M.S.Ed

## Re: Termination of Legal Representation – Case No. 1:22-cv-22171-JEM  Inbox ✕     🖨 ⧉

**Nichelle Womble**                                                    Thu, Apr 10, 6:35 AM (12 days ago)   ☆  ☺  ↩  ⋮
to me, Shaunna, Sally, Shaunna, Ronda, Amir  ▾

Additionally your counterclaim was striken by the court and you cannot testify to your defense of mitigating damages that is strictly for them to disprove.

By you terminating us due to your lack of knowledge and failure to listen or adhere to counsel you are once again not working in your best interest.

Thank you,

Nichelle L. Womble Esq., M.S.Ed

On Wed, Apr 9, 2025 at 1:56 PM Nichelle Womble <nichelle@amethystlawgroup.com> wrote:
Mrs. McNae
You heard testimony from Mr. Fitzgerald regarding his loss and his reputation and cross examination of your defense of mitigation. You also heard from the expert regarding his bonuses and cross examination on how they were not guaranteed so there is not enough evidence to say it was a loss. Despite cross we believe based upon body language of the Court and the testimony heard today it would be in your best interest to try and work out a resolution. You can at any time before the conclusion attempt to resolve so that would be today at the latest. Once we return tomorrow morning that will be it as there is only one more witness. The Judgement against you will be handed down tomorrow. Whether Mr. Fitzgerald receives $1 or more they are entitled to their fees which are currently over 1.4 million. There is no way you win this matter it is just a matter of how much. Once that Judgement is entered please understand the potential consequences including the ones mentioned in prior written communication including potential liens etc. If the damages are not dischargeable you will not be able to include them in a bankruptcy just so you are clear.

Also relating to your other email. Whether or not you were told to give the police reports is one thing but you went well beyond that. Additionally that is not relevant to the damages just the liability.

Please let us know by 6pm whether you would like us to reach out to opposing counsel to try and get a resolution.

Thank you,

Nichelle L. Womble Esq., M.S.Ed

**Ronda McNae** < prosa.mcnae@gmail.com>
to Nichelle, Ronda, Shaunna, Sally, bcc: Will ▾

Wed, Apr 9, 3:05 PM (13 days ago)  ☆  ☺  ↩  ⋮ 

Nichelle,

**We filed a lawsuit against Fitzgerald's wife: Yelany De Verona,** last night after a meeting with law enforcement, during which my family was informed by an officer of additional concerning facts about Yelany's false affidavit. She not only lied in her affidavit but she then lied under oath in her Deposition. Something this officer caught and suggested to keep our cards close for now as she will likely dig a deeper hole which I'm not sure how it can get any worse at this point.

As for any potential "resolution," it appears it would require releasing all claims against Fitzgerald—something I am unwilling to do. My daughter has asked to be included, and since she is a minor, we will explore the best representation for her or file on her behalf if necessary. We also intend to bring a lawsuit against Fitzgerald in Washington state, which will likely include Ms. Gussin and possibly others.

I am already in contact with the King County Prosecutor's Office; in fact, I was advised to consult with an attorney there who previously served as a sexual assault victim advocate, given the criminal elements involved and the broader context of this case, which Washington State takes seriously.

Regarding today's testimony, a review of my notes shows multiple missed objections: "Objection: Assumes Facts Not in Evidence; Introducing Testimony About a Document's Contents Without Presenting the Actual Document or Explaining Its Absence; Hearsay; Lack of Foundation/Speculative; and Misquoting." In addition, tomorrow's witness constitutes a clear violation of our prior agreement; no matter how they try to frame it, it's a breach, and I intend to preserve this issue myself if needed.

I understand the expert relied on documents supplied by Fitzgerald. However, she never verified them with SoftwareONE or any other entity, nor did she obtain his employee file—even though we stated we wouldn't proceed to trial without that, as it is my constitutional right. She bases her opinion and methodology on incomplete information, not factoring in quarterly or yearly performance reviews, which were never provided. Furthermore, Fitzgerald's unvested stock is not guaranteed—standard practice in the software industry, including at SWO.

Lastly, there has been no clear separation between the Miami assault and the California assault. Or "damage" caused by me vs. Will.

There's evidence confirming that I only began disclosing details to my counselor once I was able to articulate Fitzgerald's sexual deviant actions were similar to what my stepfather did to me as a child. Therefore, he cannot now claim the CSA included the subsequent assault since I refused to acknowledge it, as I only obtained the relevant medical evidence two years later when I personally retrieved my medical records and learned that fecal matter was found in my vagina.

In light of all these points, I do not have a new stance on a resolution. I appreciate your representation today. I hope and pray you fiercely advocate for me tomorrow given my wish to object to his witness Jessica Bergman. I do not want to disrupt the court but I also want my rights preserved as confirmed by my appellate counsel in preparation for my appeal or whatever I choose to do after tomorrow.

*ps. There are a couple items that Fitzgerald testified to that my husband does in fact direct knowledge of as it relates to his claims about his involvement with Microsoft. Also, there's no one in the IT world that follows me on social media that knows Fitzgerald or is friends with him. He didn't have friends, he said so himself in produced text messages.*

Regards,

# Exhibit T

Defendant's Supplemental Notice Regarding Billing Discrepancies, Redactions, and Prior Counsel's Conflicted Representation (Prepared but Not Docketed Due to Case Closure

Although the Court closed this action prior to the formal submission of the attached Supplemental Notice, Defendant includes the document herewith as Exhibit I for the purpose of preserving the issues it raises for Rule 60(b)(1), (3), and (6) relief and potential appellate review. This Notice outlines factual disputes regarding billing fraud, redactions, false time entries, and counsel's conflict of interest—all of which directly support the grounds for vacating judgment.

**EXHIBIT T**

DEFENDANT RONDA MCNAE'S SUPPLEMENTAL NOTICE REGARDING BILLING
DISCREPANCIES, REDACTIONS, AND PRIOR COUNSEL'S CONFLICTED
REPRESENTATION

***Prepared April 17, 2025 (not docketed due to case closure).***

This exhibit consists of Defendant Ronda McNae's Supplemental Notice regarding billing
irregularities, improper redactions of privileged communications, and the conflicted representation
provided by her former counsel, Nichelle Womble. Although this Notice was prepared on April
17, 2025, the Court's closure of the docket precluded its formal submission as a standalone filing.

Defendant submits this Notice herewith as an evidentiary exhibit in support of her Rule 59(e) /
60(b) motion for post-judgment relief. The Notice sets forth:

- Specific billing discrepancies, including alleged false time entries and fabricated calls;
- Improper redaction of client-billed communications, obstructing Defendant's right to
  verify billed services;
- Ethical conflicts of interest tied to counsel's divided loyalty between Defendant and ARAG
  Legal Insurance;
- Coercion and undue settlement pressure interfering with Defendant's right to independent
  decision-making;
- Broader concerns regarding ARAG's systemic interference with independent legal
  representation.

These issues are directly relevant to Defendant's claims of fraud, misconduct, and extraordinary
circumstances under Rule 60(b)(1), (3), and (6), and are preserved here to support full judicial and
appellate review.

*Entire billing invoice can be provided upon request

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

          Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

          Defendants.

_____/

**DEFENDANT RONDA MCNAE'S SUPPLEMENTAL NOTICE REGARDING BILLING DISCREPANCIES, REDACTIONS, AND PRIOR COUNSEL'S CONFLICTED REPRESENTATION**

TO THE HONORABLE COURT:

      Defendant Ronda McNae, now appearing *pro se* pursuant to the Court's grant of DE 366, respectfully submits this Supplemental Notice to document serious concerns regarding her former counsel's billing practices, redactions, and apparent conflicts of interest. Although the motion to proceed *pro se* has now been granted, these issues are submitted for the record in support of future appellate review and potential relief pursuant to Rule 60 of the Federal Rules of Civil Procedure.

**1. Redacted Billing Entries and Apparent Dual Loyalty**

      Upon reviewing the billing invoices provided to me, I discovered that several entries—particularly those reflecting phone calls, legal advice, and case strategy discussions—were redacted without explanation. These entries directly correspond to privileged, substantive

communications between counsel and me, and are critical to understanding the services billed and whether those services were actually performed. *(See Below)*

| | Date | Description | Hours | Billing Amount |
|---|---|---|---|---|
| 2 | 12/9/2024 | Review of opposing counsel filings | 0.69 | ████ |
| 3 | 12/19/2024 | Email exchange with arg | 0.5 | ████ |
| 4 | 1/6/2025 | Organize deposition exhibits for digital access | 1.23 | ████ |
| 5 | 1/7/2025 | ██████████ | 1.01 | ████ |
| 6 | 1/8/2025 | Review of client-provided evidence and notes | 1 | ████ |
| 7 | 1/8/2025 | Correspondence with opposing counsel regarding scheduling | 0.41 | ████ |
| 8 | 1/10/2025 | ██████████ | 1.05 | ████ |
| 9 | 1/10/2025 | Case file maintenance and document indexing | 1.12 | ████ |
| 10 | 1/13/2025 | Email follow-up to client: outstanding document requests | 0.5 | ████ |
| 11 | 1/15/2025 | Prepare internal case timeline visual | 0.34 | ████ |
| 12 | 1/16/2025 | Review of newly submitted client materials | 1.25 | ████ |
| 13 | 1/17/2025 | ██████████ | 0.99 | ████ |
| 14 | 1/20/2025 | ██████████ | 1 | ████ |
| 15 | 1/20/2025 | | 0.45 | ████ |
| 16 | 1/23/2025 | Correspondence with opposing counsel regarding scheduling | 0.99 | ████ |
| 17 | 1/25/2025 | ██████████ | 0.59 | ████ |
| 18 | 1/27/2025 | Draft summary of legal research findings | 1.2 | ████ |
| 19 | 1/29/2025 | Legal research on case-specific precedents | 3.23 | ████ |
| 20 | 1/30/2025 | Legal research on case-specific precedents | 3.28 | ████ |
| 21 | 1/30/2025 | Discovery management and organization | 2.48 | ████ |
| 22 | 1/31/2025 | Drafting legal strategy memo | 0.56 | ████ |
| 23 | 1/31/2025 | Technical prep for virtual deposition or hearing | 0.49 | ████ |
| 24 | 2/1/2025 | ██████████ | 0.66 | ████ |
| 25 | 2/1/2025 | Case strategy session with paralegal | 0.75 | ████ |
| 26 | 2/2/2025 | Internal memo drafting on legal positions | 1.42 | ████ |
| 27 | 2/3/2025 | Organize deposition exhibits for digital access | 0.43 | ████ |
| 28 | 2/3/2025 | Coordination meeting with litigation support | 1.16 | ████ |
| 29 | 2/4/2025 | Technical prep for virtual deposition or hearing | 0.89 | ████ |
| 30 | 2/4/2025 | Legal research on case-specific precedents | 4.92 | ████ |
| 31 | 2/5/2025 | Case strategy session with paralegal | 1.04 | ████ |
| 32 | 2/6/2025 | Legal research on case-specific precedents | 4.58 | ████ |
| 33 | 2/6/2025 | Coordinate with expert for testimony availability | 0.81 | ████ |
| 34 | 2/7/2025 | Legal research on case-specific precedents | 2.94 | ████ |
| 35 | 2/8/2025 | Internal memo drafting on legal positions | 2.18 | ████ |
| 36 | 2/8/2025 | Internal memo drafting on legal positions | 1.44 | ████ |
| 37 | 2/9/2025 | | 0.92 | ████ |

| | | | | |
|---|---|---|---|---|
| 85 | 3/4/2025 | Client consultation: review status update, trial expectations, and evidentiary concerns | 1.5 | ████ |
| 86 | 3/4/2025 | | 4.5 | ████ |
| 87 | 3/5/2025 | Long-form strategy call with supervising attorney re: trial goals and filings | 2 | ████ |

| | | | | |
|---|---|---|---|---|
| 276 | 4/10/2025 | Drafting conclusions of law section-rough draft | 1.5 | ████ |
| 277 | 4/11/2025 | Return to Ocala after Court | 4.5 | ████ |
| 278 | | | | |
| 279 | 4/10/2025 | Parking reimbursement | | ████ |
| 280 | 4/11/2025 | Parking reimbursement | | ████ |
| 281 | | | | |

Despite formally requesting unredacted billing records as the client, I was never provided full access. Because of this denial, I independently researched and applied methods to analyze and recover the redacted content on my own.

Through this effort, I confirmed that numerous redacted entries pertain to my own privileged communications, which should have never been concealed from me. These include instances where phone calls were billed on dates and times when my own call logs show no such

communication took place—or where the duration was significantly shorter than what was invoiced. The deliberate redaction of client-billed activities from a client's own invoice raises serious questions regarding billing transparency, good faith, and loyalty. It also obstructed my ability to verify services and raises potential issues of overbilling, misclassification, or inflated time entries. *(See below)*

| | A | B | C | D |
|---|---|---|---|---|
| 1 | Data | Description | Hours | Billing Amount |
| 2 | 12/9/2024 | Review of opposing counsel filings | 0.69 | 241.5 |
| 3 | 12/19/2024 | Email exchange with arag | 0.5 | 175 |
| 4 | 1/6/2025 | Organize deposition exhibits for digital access | 1.23 | 430.5 |
| 5 | 1/7/2025 | Follow-up email to client with document review notes | 1.01 | 353.5 |
| 6 | 1/8/2025 | Review of client-provided evidence and notes | 1 | 350 |
| 7 | 1/8/2025 | Correspondence with opposing counsel regarding scheduling | 0.41 | 143.5 |
| 8 | 1/10/2025 | Client correspondence and updates | 1.05 | 367.5 |
| 9 | 1/10/2025 | Case file maintenance and document indexing | 1.12 | 392 |
| 10 | 1/13/2025 | Email follow-up to client: outstanding document requests | 0.5 | 175 |
| 11 | 1/15/2025 | Prepare internal case timeline visual | 0.34 | 119 |
| 12 | 1/16/2025 | Review of newly submitted client materials | 1.25 | 437.5 |
| 13 | 1/17/2025 | Follow-up email to client with document review notes | 0.99 | 346.5 |
| 14 | 1/20/2025 | Call with client to finalize responses to written discovery | 1 | 350 |
| 15 | 1/20/2025 | Phone call with client: Reiterated prior emails, discussed behaviors, and offered legal advice | 0.45 | 157.5 |
| 16 | 1/23/2025 | Correspondence with opposing counsel regarding scheduling | 0.99 | 346.5 |
| 17 | 1/25/2025 | Phone call with client: Reiterated prior emails, discussed behaviors, and offered legal advice | 0.59 | 206.5 |
| 18 | 1/27/2025 | Draft summary of legal research findings | 1.2 | 420 |
| 19 | 1/29/2025 | Legal research on case-specific precedents | 3.23 | 1130.5 |
| 20 | 1/30/2025 | Legal research on case-specific precedents | 3.28 | 1148 |
| 21 | 1/30/2025 | Discovery management and organization | 2.48 | 868 |
| 22 | 1/31/2025 | Drafting legal strategy memo | 0.56 | 196 |
| 23 | 1/31/2025 | Technical prep for virtual deposition or hearing | 0.49 | 171.5 |
| 24 | 2/1/2025 | Phone call with client: Reviewed concerns, explained legal implications, and discussed next steps | 0.66 | 231 |
| 25 | 2/1/2025 | Case strategy session with paralegal | 0.75 | 262.5 |
| 26 | 2/2/2025 | Internal memo drafting on legal positions | 1.42 | 497 |
| 27 | 2/3/2025 | Organize deposition exhibits for digital access | 0.43 | 150.5 |
| 28 | 2/3/2025 | Coordination meeting with litigation support | 1.16 | 406 |
| 29 | 2/4/2025 | Technical prep for virtual deposition or hearing | 0.89 | 311.5 |
| 30 | 2/4/2025 | Legal research on case-specific precedents | 4.92 | 1722 |
| 31 | 2/5/2025 | Case strategy session with paralegal | 1.04 | 364 |
| 32 | 2/6/2025 | Legal research on case-specific precedents | 4.58 | 1603 |
| 33 | 2/6/2025 | Coordinate with expert for testimony availability | 0.81 | 283.5 |
| 34 | 2/7/2025 | Legal research on case-specific precedents | 2.94 | 1029 |
| 35 | 2/8/2025 | Internal memo drafting on legal positions | 2.18 | 763 |
| 36 | 2/9/2025 | Internal memo drafting on legal positions | 1.44 | 504 |
| 37 | 2/9/2025 | Phone call with client: Reiterated prior emails, discussed behaviors, and offered legal advice | 0.92 | 322 |

| | | | | |
|---|---|---|---|---|
| 85 | 3/4/2025 | Client consultation: review Status update, trial expectations, and evidentiary concerns | 1.5 | 525 |
| 86 | 3/4/2025 | Travel from Ocala to Broward County for hearing | 4.5 | 1575 |
| 87 | 3/5/2025 | Long-form strategy call with supervising attorney re: trial goals and filings | 2 | 700 |

| | | | | |
|---|---|---|---|---|
| 276 | 4/10/2025 | Drafting conclusions of law section-rough draft | 1.5 | 525 |
| 277 | 4/11/2025 | Return to Ocala after Court | 4.5 | 525 |
| 278 | | TOTAL | 414.51 | 145078.5 |
| 279 | 4/10/2025 | Parking reimbursement | | $65 |
| 280 | 4/11/2025 | Parking reimbursement | | $62.50 |
| 281 | | TOTAL | | $127.50 |

This conduct reflects not only a breach of professional responsibility but a breakdown in the attorney-client relationship that undermines confidence in counsel's fiduciary obligations. The

nature of the redactions suggests that Ms. Womble may have been billing ARAG Legal Insurance for activities that were misaligned with my interests as the insured. This suspicion is further supported by my being denied direct access to ARAG, discouraged from raising trial objections, and pressured to accept settlement positions favoring ARAG's risk tolerance over my legal rights or the evidentiary record.

## 2. Billing vs. Call Log Discrepancies

Upon cross-referencing my mobile phone records with counsel's billing entries, I identified several serious discrepancies—ranging from fabricated calls to falsely attributed legal work. Specifically:

- Calls were billed on dates when no communication occurred at all;
- Certain entries were exaggerated in duration or used vague, duplicative language; and
- Several entries, including redacted ones, described legal consultations that simply never took place.

For instance, on **February 1, 2025**, counsel billed 0.66 hours for a purported client consultation involving review of legal concerns and next steps. In reality, I did **not** speak with Ms. Womble on that date. The call referenced was with an unrelated third party, not my attorney. This entry is therefore **falsely attributed** and **improperly billed**. *(See Below)*

## Talk activity (cont.)

**Ronda McNae**
**206-914-6752**
**Apple iPhone 13 Pro**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Jan 17 | 2:50 PM | 425-941-4711 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 17 | 2:58 PM | 425-941-4711 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:07 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:07 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:08 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 17 | 3:08 PM | 425-941-7374 | Kirkland, WA | Incoming, CL | 3 | -- | -- | -- |
| Jan 17 | 3:16 PM | 425-223-1232 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 11:09 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 18 | 11:32 AM | 425-941-7374 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 11:59 AM | 206-522-5391 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 12:07 PM | 425-941-7374 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 18 | 12:50 PM | 425-941-7374 | Bellevue, WA | Bellevue, WA | 2 | -- | -- | -- |
| Jan 18 | 12:53 PM | 425-761-6970 | Mercer Isl, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 19 | 5:17 PM | 253-332-9586 | Bellevue, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 19 | 7:26 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 21 | 5:22 PM | 206-743-7810 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 21 | 5:26 PM | 206-743-7810 | Kirkland, WA | Seattle, WA | 2 | -- | -- | -- |
| Jan 22 | 9:15 AM | 206-467-6090 | Kirkland, WA | Incoming, CL | 6 | -- | -- | -- |
| Jan 22 | 9:55 AM | 206-920-7000 | Kirkland, WA | Incoming, CL | 29 | -- | -- | -- |
| Jan 22 | 10:30 AM | 206-957-2515 | Kirkland, WA | Seattle, WA | 1 | -- | -- | -- |
| Jan 22 | 10:31 AM | 206-957-2515 | Kirkland, WA | Seattle, WA | 1 | -- | -- | -- |
| Jan 22 | 11:51 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 24 | -- | -- | -- |
| Jan 22 | 12:55 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 26 | -- | -- | -- |
| Jan 22 | 1:39 PM | 202-551-4500 | Kirkland, WA | Washington, DC | 2 | -- | -- | -- |
| Jan 23 | 1:31 PM | 415-710-8206 | Kirkland, WA | Incoming, CL | 54 | -- | -- | -- |
| Jan 25 | 9:46 AM | 206-803-8733 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 26 | 10:06 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 3 | -- | -- | -- |
| Jan 27 | 5:24 PM | 425-941-7374 | Bellevue, WA | Bellevue, WA | 3 | -- | -- | -- |
| Jan 28 | 3:46 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 28 | 5:14 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Jan 28 | 6:57 PM | 425-941-7374 | Bellevue, WA | Bellevue, WA | 3 | -- | -- | -- |
| Jan 29 | 1:41 PM | 425-941-7374 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 29 | 4:38 PM | 425-814-4167 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 30 | 8:39 AM | 206-238-0434 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 30 | 2:39 PM | 425-941-4711 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 30 | 3:51 PM | 425-223-1232 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 30 | 3:52 PM | 425-223-1232 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Jan 31 | 11:17 AM | 425-936-2500 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 1 | 4:12 PM | 954-706-8831 | Seattle, WA | Ft Lauderdl, FL | 22 | -- | -- | -- |
| Feb 2 | 2:52 PM | 425-643-2613 | Seattle, WA | Bellevue, WA | 1 | -- | -- | -- |
| Feb 2 | 2:52 PM | 425-643-2613 | Seattle, WA | Bellevue, WA | 1 | -- | -- | -- |

# verizon

Account: 264643004-00001
Invoice: 5240736829
Billing period: Jan 7 - Feb 6, 2025

## Talk activity (cont.)

**Ronda McNae**
**206-914-6752**
**Apple iPhone 13 Pro**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Feb 3 | 8:20 AM | 844-482-1239 | Kirkland, WA | Toll-Free, CL | 1 | -- | -- | -- |
| Feb 3 | 8:59 AM | 858-774-6950 | Bellevue, WA | Incoming, CL | 53 | -- | -- | -- |
| Feb 3 | 10:20 AM | 844-482-1239 | Kirkland, WA | Toll-Free, CL | 15 | -- | -- | -- |
| Feb 3 | 4:04 PM | 425-223-1232 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 3 | 4:07 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Feb 3 | 8:24 PM | 425-936-1206 | Seattle, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 4 | 6:47 AM | 425-936-1206 | Kirkland, WA | Incoming, CL | 2 | -- | -- | -- |
| Feb 4 | 9:24 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 4 | 9:31 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 4 | 11:50 AM | 206-803-8733 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 5 | 5:09 AM | 425-936-1206 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 5 | 10:18 AM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 2 | -- | -- | -- |
| Feb 5 | 10:22 AM | 425-941-7374 | Kirkland, WA | Incoming, CL | 3 | -- | -- | -- |
| Feb 5 | 10:25 AM | 425-941-7374 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 5 | 1:55 PM | 425-941-4711 | Snoqualmie, WA | Bellevue, WA | 1 | -- | -- | -- |
| Feb 6 | 5:05 AM | 425-936-1206 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 6 | 8:30 AM | 206-806-2972 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Feb 6 | 1:06 PM | 844-482-1239 | Kirkland, WA | Toll-Free, CL | 1 | -- | -- | -- |
| Feb 6 | 1:06 PM | 813-387-5422 | Kirkland, WA | Incoming, CL | 17 | -- | -- | -- |
| Feb 6 | 1:23 PM | 813-387-5422 | Kirkland, WA | Incoming, CL | 27 | -- | -- | -- |
| Feb 6 | 1:55 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Feb 6 | 3:24 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 5 | -- | -- | -- |
| Feb 6 | 4:27 PM | 425-936-1206 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |

Ms. Wobmle claims we spoke on March 4, 2025. That is false. (See Below)

| Mar 3 | 7:43 PM | 253-332-9566 | Seattle, WA | Incoming, CL | 19 | -- | -- | -- |
| Mar 4 | 4:00 PM | 206-406-6104 | Kirkland, WA | Incoming, CL | 11 | -- | -- | -- |
| Mar 4 | 5:05 PM | 425-941-7374 | Kirkland, WA | Incoming, CL | 3 | -- | -- | -- |
| Mar 4 | 5:34 PM | 425-899-5200 | Kirkland, WA | Kirkland, WA | 1 | -- | -- | -- |
| Mar 5 | 11:59 AM | 425-822-9202 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |

| Mar 6 | 7:25 AM | 308-257-8304 | Kirkland, WA | Incoming, CL | 2 | -- | -- | -- |
| Mar 6 | 10:50 AM | 813-387-5422 | Kirkland, WA | Incoming, CL | 15 | -- | -- | -- |
| Mar 6 | 12:05 PM | 305-673-7900 | Kirkland, WA | Miami, FL | 1 | -- | -- | -- |
| Mar 6 | 12:07 PM | 305-673-7900 | Kirkland, WA | Miami, FL | 4 | -- | -- | -- |
| Mar 6 | 12:12 PM | 305-673-7900 | Kirkland, WA | Miami, FL | 2 | -- | -- | -- |

# verizon

Account: 264643004-00001
Invoice: 5248519294
Billing period: Feb 7 - Mar 6, 2025

## Talk activity (cont.)

**Ronda McNae**
**206-914-6752**
**Apple iPhone 13 Pro**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Mar 6 | 12:19 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 19 | -- | -- | -- |
| Mar 6 | 5:15 PM | 858-774-6950 | Kirkland, WA | Rnchobmdo, CA | 1 | -- | -- | -- |
| Mar 6 | 5:27 PM | 858-774-6950 | Kirkland, WA | Incoming, CL | 2 | -- | -- | -- |
| Mar 6 | 5:54 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 6 | 8:22 PM | 253-332-9566 | Kirkland, WA | Auburn, WA | 1 | -- | -- | -- |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Mar 12 | 6:29 AM | 813-387-5422 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Mar 12 | 8:46 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Mar 12 | 10:37 AM | 425-861-6281 | Kirkland, WA | Redmond, WA | 6 | -- | -- | -- |
| Mar 12 | 11:19 AM | 425-503-9813 | Kirkland, WA | VM Deposit, CL | 1 | -- | -- | -- |
| Mar 12 | 11:21 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 49 | -- | -- | -- |
| Mar 12 | 12:14 PM | 813-387-5422 | Kirkland, WA | Tampacen, FL | 85 | -- | -- | -- |
| Mar 12 | 1:39 PM | 813-387-5422 | Kirkland, WA | Tampacen, FL | 1 | -- | -- | -- |
| Mar 12 | 1:40 PM | 813-387-5422 | Kirkland, WA | Incoming, CL | 8 | -- | -- | -- |
| Mar 13 | 8:03 AM | 858-774-6950 | Kirkland, WA | Rnchobmdo, CA | 1 | -- | -- | -- |
| Mar 13 | 8:32 AM | 305-673-7900 | Kirkland, WA | Miami, FL | 2 | -- | -- | -- |
| Mar 13 | 8:33 AM | 305-673-7900 | Kirkland, WA | Miami, FL | 3 | -- | -- | -- |
| Mar 13 | 8:41 AM | 858-774-6950 | Kirkland, WA | Incoming, CL | 20 | -- | -- | -- |
| Mar 13 | 9:42 AM | 305-673-7900 | Kirkland, WA | Miami, FL | 4 | -- | -- | -- |
| Mar 13 | 11:55 AM | 425-869-8067 | Kirkland, WA | Incoming, CL | 1 | -- | -- | -- |
| Mar 13 | 12:57 PM | 515-402-4613 | Redmond, WA | Urbandale, IA | 3 | -- | -- | -- |
| Mar 13 | 3:09 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 13 | 3:12 PM | 425-223-1232 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |
| Mar 13 | 3:18 PM | 425-941-7374 | Kirkland, WA | Bellevue, WA | 1 | -- | -- | -- |

*(Above: Calls with Ms. Womble)*

Defendant's call log below shows two phone conversations with Ms. Womble. One witness was near Ms. McNae while she took these calls that caused significant distress. (See Below)

| | | | | | | |
|---|---|---|---|---|---|---|
| Mar 19 | 9:27 AM | 813-387-5422 | Kirkland, WA | Incoming, CL | 39 | -- |
| Mar 19 | 12:50 PM | 813-387-5422 | Kirkland, WA | Incoming, CL | 23 | |

Ms. Womble's billing invoice: (See Below). Ms. Womble never billed for the two calls above.

| 124 | 3/19/2025 | Call with court clerk to confirm pretrial deadlines and submission protocols | 0.5 | 175 |
| 125 | 3/19/2025 | Phone call with supervising attorney: legal strategy and jury presentation | 1.5 | 525 |
| 126 | 3/20/2025 | Pretrial logistics coordination with court staff and IT team | 1 | 350 |
| 127 | 3/20/2025 | Coordinate with expert for testimony availability | 1.03 | 360.5 |

These discrepancies raise substantial ethical concerns and suggest that redactions may have been used to obscure billing misconduct. They warrant preservation in the record for the purpose of post-judgment review and potential Rule 60(b)(3) relief.

**3. Clarification Regarding March 2025 Communications**

Defendant Ronda McNae respectfully submits the following clarification to ensure the accuracy of the record. In prior references to certain phone calls believed to have taken place with former counsel in March 2025, I inadvertently misidentified the origin and nature of those

communications. Upon further review of my call logs and with the benefit of time to analyze the source numbers, I now recognize that those calls were not with Ms. Womble, but were instead with the **Miami Beach Police Department** and **counsel I have consulted regarding potential appellate representation**.

I sincerely apologize to the Court for this inadvertent misstatement. The confusion arose from overlapping timestamps and a misattribution of incoming and outgoing calls across multiple parties. My intent has always been to provide an accurate and transparent account of events, and I submit this correction in good faith.

Additionally, following a distressing and coercive communication from Ms. Womble on **March 19, 2025**, in which I was pressured to accept a settlement misaligned with my position and rights, I did not engage in any further contact with her. That interaction triggered severe psychological distress and exacerbated symptoms of PTSD, which has been well-documented throughout this proceeding. In the interest of my emotional and mental well-being, I refrained from further communication with Ms. Womble after that date.

**4. Statement Regarding Disputed Billing Entries:**

Defendant Ronda McNae respectfully objects to the billing entries dated April 5, 2025 and April 9, 2025, as reflected in the submission labeled "Random Billing Charges." These entries— purporting to describe a final client check-in regarding trial attire and a post-trial follow-up meeting—are fabricated. No such meetings occurred on those dates.

At no point on April 5 or April 9 did I meet with or speak to prior counsel regarding witness appearance, trial attire, or next steps. I was in the presence of my husband and two children (ages 14 and 12), who can confirm that no such communications took place.

These discrepancies further support my concerns regarding prior counsel's billing practices and credibility, and I respectfully ask that these entries be stricken from the record and considered in any review of counsel's conduct under Rule 60 or other applicable standards.

My call records from Verizon confirm that no communication occurred with prior counsel on these dates. In some instances, other calls did occur but were not with counsel. In others, the record is entirely silent, suggesting false billing.

## 5. Consistency with Known ARAG Interference

Judge Tana Lin of the United States District Court for the Western District of Washington has already acknowledged in *McNae v. ARAG Insurance*, Case No. 2:24-cv-00211-TL, that my claims against ARAG raise overlapping civil and criminal issues, including concerns regarding the integrity of legal representation. The redactions, billing anomalies, and client control issues documented in this case are consistent with a broader pattern of interference ARAG has exercised in multiple jurisdictions—particularly in areas affecting trial strategy, case autonomy, and a client's ability to assert their rights.

What occurred in this matter—especially during trial—cannot be viewed in isolation. It must be understood as part of ARAG's systemic practices that have undermined independent legal representation and contributed directly to prejudicial outcomes. These facts further validate the concerns now preserved in the record for appellate or post-judgment review.

## 6. Purpose of This Filing

This filing is **not** a renewed request for pro se status. The Court has already granted that request. Rather, it is offered **as a formal supplement to the record**, to:

- Document prejudicial conduct by my former counsel;

- Clarify billing irregularities that suggest divided loyalty;

- Preserve evidence of systemic interference by my legal insurer;

- Protect the procedural and constitutional integrity of my right to appeal; and

- Support a potential evidentiary basis for Rule 60 relief.

## CERTIFICATE OF ACCURACY

I certify that the statements made in this filing are true and correct to the best of my knowledge and belief, and that the attached exhibits are faithful reproductions of my original records and communications.

WHEREFORE, I respectfully request:

- That the Court take judicial notice of these newly raised billing and ethical concerns;

- That this Notice be accepted as part of the trial and post-trial record;

- That the Court preserve the underlying record in a manner that supports full appellate review;

- And that the Court grant any further relief it deems just and appropriate.

Respectfully submitted,

**Ronda McNae**

Pro Se Defendant

504 11th Pl, Kirkland, WA 98033

Tel: (206) 914-6752

Prose.rmcnae@gmail.com