IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

        Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

        Defendants.

_____/

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION**

**TO AMEND JUDGMENT (DE 376)**

Defendant Ronda McNae, appearing pro se, respectfully submits this Opposition to Plaintiff's Motion to Amend Judgment (DE 376). Plaintiff's reactive attempt to amend the judgment—filed immediately after Defendant's timely Rule 59(e) Motion to Alter or Amend Judgment and Rule 60(b) Motion for Relief from Judgment—does not cure the serious constitutional violations, procedural defects, or due process concerns identified by Defendant. Instead, Plaintiff seeks to divert the Court's attention through an inadequate amendment under Rule 60(a), improperly characterizing substantive violations as mere "clerical error."

## I. INTRODUCTION

This Court is now faced with a critical choice: whether to allow a judgment rendered through procedural abuse, exclusion of evidence, and denial of constitutional protections to stand—or to enforce the fundamental principles of fairness that the law demands. Plaintiff's reactive attempt to amend the judgment does not cure the structural defects at issue. Instead, it seeks to avoid accountability for the serious due process violations already raised by Defendant's timely Rule 59(e) and Rule 60(b) motions. As demonstrated below, Plaintiff's motion is procedurally improper, factually unsupported, and strategically crafted to deflect from the constitutional violations at the center of this case.

## II. PLAINTIFF'S FALSE RELOCATION CLAIMS AND DISREGARD OF DISABILITY

Defendant unequivocally objects to Plaintiff's reckless and false assertion that Defendant intends to relocate. This allegation is not only baseless—it is a deliberate misrepresentation, unsupported by a single piece of evidence in the record. Plaintiff's counsel offers no factual support, no documentation, and no credible source for this claim because none exists. Instead, this assertion is yet another calculated attempt to deflect from the serious constitutional violations and procedural misconduct raised in Defendant's pending motions. The Court should not dignify such speculative and opportunistic claims, especially where counsel has failed to meet even the most basic burden of proof. Rather than confront the legitimate constitutional issues at stake, Plaintiff's counsel continues to rely on distortion and distraction, a pattern that has characterized their approach throughout these proceedings. Plaintiff's Motion to Amend Judgment

2

(DE 376) further relies on speculative and factually unsupported assertions regarding Defendant's alleged intent to relocate to Florida or other states. Specifically, Plaintiff claims that Defendant "has also expressed an interest in moving to other states, including the State of Florida" (DE 376-1 at 2). This statement is entirely baseless and lacks any evidentiary foundation. At no point has Defendant communicated any such intent to Plaintiff or Plaintiff's counsel. Plaintiff has no direct knowledge of Defendant's private plans, personal residence choices, or familial decisions. Defendant has not represented, either in court filings or privately, any intention to relocate to Florida or any other jurisdiction. Such speculative commentary regarding Defendant's possible future residence is irrelevant to the legal standards governing post-judgment amendment and should not be used as a basis to justify altering the Final Judgment.

Federal Rule of Civil Procedure 60(a) does not authorize amendment of a judgment based on conjecture about a party's potential future actions or personal circumstances. Plaintiff's attempt to insert unsupported personal assumptions into the record represents yet another example of the improper tactics employed throughout this litigation.

If Plaintiff believes that domestication of any judgment is necessary for enforcement in another jurisdiction, proper legal procedures exist under the Uniform Enforcement of Foreign Judgments Act (UEFJA) or similar state law mechanisms. The Federal Rules do not permit Plaintiff to bypass these lawful avenues by shoehorning speculative, post hoc adjustments into the judgment through mischaracterizations of Defendant's private affairs.

Similarly, consistent with counsel's apparent inability to see beyond their own client's interests, Defendant has repeatedly and unequivocally communicated that her family is in the process of finalizing the adoption of her young niece and nephew. Further, Defendant's mother-in-law remains living, making any suggestion of relocation entirely unfeasible—a fact Plaintiff's counsel either deliberately ignores or chooses to misrepresent.

While it is true that at one point in 2023, Defendant's treating therapist—a hybrid witness and trauma specialist—recommended relocation as part of a therapeutic safety plan, that recommendation arose

3

solely from the repeated, targeted harassment inflicted by Ms. Gussin, whose conduct has been consistently unbecoming of a licensed attorney. This conduct, while outside the scope of the present proceeding, remains well-documented and will be addressed through proper channels. The emotional and psychological harm caused by Ms. Gussin's actions continues to affect the McNae family, with supporting documentation to substantiate these ongoing impacts. Aside from that limited period in 2023, when relocation was discussed purely as a therapeutic consideration, the McNae family has never intended—nor seriously contemplated—relocating outside the state of Washington. Plaintiff's attempt to frame otherwise is nothing more than a desperate effort to fabricate issues where none exist, serving only to distract from their own significant procedural failures. This is not zealous advocacy; it is a pattern of opportunism at the expense of truth.

Equally disingenuous is Plaintiff's counsel's professed "ignorance" regarding Defendant's PTSD diagnosis. Such a claim is flatly contradicted by the record, which contains repeated, well-documented diagnoses of Defendant's PTSD throughout the course of these proceedings. Counsel's continued refusal to acknowledge these undisputed medical facts, coupled with the persistent denial of reasonable accommodations as required under the Americans with Disabilities Act (ADA), only further exposes the bad-faith tactics driving Plaintiff's strategy.

The combination of willful blindness to Defendant's disability and reliance on knowingly false relocation claims underscores a troubling and consistent theme: misdirection over merit, obfuscation over accountability. Plaintiff's counsel has once again chosen manipulation over meaningful engagement with the serious constitutional violations at issue. This Court should reject these baseless tactics in their entirety and direct its attention to the substantive due process violations raised in Defendant's Rule 59(e) and Rule 60(b) motions, where the real harm remains to be addressed.

### III. PATTERN OF PROCEDURAL ABUSE, INTIMIDATION, AND BAD CONDUCT

Plaintiff's Motion to Amend Judgment (DE 376) does not exist in a vacuum—it is the latest maneuver in a sustained pattern of procedural abuse, intimidation, and bad-faith litigation tactics that have characterized Plaintiff's conduct throughout this matter. Most recently, during the post-judgment conferral

process, Plaintiff's counsel abandoned even the pretense of good-faith engagement. On April 25, 2025, Plaintiff's counsel served Defendant with a draft Motion for Fees and Costs pursuant to S.D. Fla. Local Rule 7.3. Instead of honoring the required thirty (30) day conferral period under Rule 7.3(a), Plaintiff's counsel imposed an arbitrary and unreasonable deadline of just four days—demanding a substantive response by April 29, 2025. This blatant disregard for procedural fairness exemplifies counsel's ongoing strategy of coercion and procedural gamesmanship.

Worse still, Plaintiff's counsel engaged in overt intimidation and ableist rhetoric, directly attacking Defendant's medical credibility and protected disability status. In their April 25, 2025 correspondence, counsel dismissed Defendant's ADA-protected diagnoses as "new founded disability claims" and accused Defendant of fabricating her experience of medical distress during trial—referring to her documented episode of "violently gagging" as "lacking in candor" and mockingly labeling it "recreationist history." These statements are not only offensive and medically uninformed, but they stand in direct contradiction to the well-documented medical record in this case, including assessments from licensed clinicians such as Sarah Dellinger, MS, LMFTA; Equip Counseling Clinical Notes; and Dr. Brock Weedman, PsyD.

Defendant's diagnoses of chronic PTSD and panic disorder—along with documented symptoms including gag reflex and panic attacks under extreme stress—are matters of medical fact, not conjecture. Plaintiff's counsel's efforts to discredit these conditions are both ethically indefensible and legally impermissible under the Americans with Disabilities Act (ADA). Moreover, Defendant's request for written-only conferral, consistent with her ADA rights, is a reasonable accommodation designed to safeguard her health and allow meaningful participation in these proceedings. The law is clear: pro se status does not strip a litigant of ADA protections, nor does it permit opposing counsel to weaponize disability status as a tool for harassment.

This conduct is not isolated—it aligns with the broader record of Plaintiff's litigation tactics, which reflect a persistent pattern of attempting to punish Defendant for exercising her lawful rights, including the right to report assault and seek justice.

5

The cumulative effect of:

- Plaintiff's failure to allow proper conferral time;
- Counsel's ableist attacks undermining Defendant's diagnosed ADA condition;
- Arbitrary and coercive deadlines;
- Continued attempts to intimidate and silence Defendant;

…further supports the conclusion that Plaintiff has weaponized this Court's procedural mechanisms not for legitimate dispute resolution, but as a means of harassment.

This Court should not countenance such abusive tactics. Instead, it should deny Plaintiff's Motion to Amend Judgment (DE 376) in its entirety and proceed to address the serious constitutional violations raised in Defendant's Rule 59(e) and Rule 60(b) motions on their merits. Defendant further reserves all rights to seek appropriate sanctions or other remedies for the persistent bad-faith conduct exhibited by Plaintiff's counsel throughout these proceedings.

## IV. PLAINTIFF'S MOTION FAILS TO CURE DUE PROCESS VIOLATIONS RAISED IN DEFENDANT'S RULE 59(e) AND RULE 60(b) MOTIONS

The fundamental defects that taint the judgment in this case are not clerical oversights—they are serious constitutional violations that strike at the heart of due process. Defendant's pending Rule 59(e) and Rule 60(b) motions identify multiple structural and procedural failures, including:

- The exclusion of Defendant's testimony and key defense evidence;
- The denial of reasonable ADA accommodations for PTSD and panic disorder;
- The use of discovery misconduct and procedural barriers to suppress lawful disclosure and meaningful participation.

Plaintiff's Motion to Amend Judgment (DE 376), framed under Rule 60(a), does nothing to address—let alone remedy—these grave violations. Rule 60(a) provides no mechanism to correct judgments rendered through constitutional error, judicial misconduct, or procedural abuse. As the Seventh Circuit has made clear, "[Rule] 60(a) applies to clerical errors, not to substantive mistakes or judicial errors that affect the

rights of the parties." *United States v. Griffin*, 782 F.2d 1393, 1396 (7th Cir. 1986). The judgment here is not defective because of a typographical mistake. It is defective because it was obtained through procedural manipulation and fundamental violations of Defendant's constitutional rights. Plaintiff's attempt to invoke Rule 60(a) as a cure-all is legally insufficient and procedurally improper. The proper path forward is for the Court to confront and adjudicate the constitutional issues raised in Defendant's Rule 59(e) and Rule 60(b) motions—not to allow Plaintiff to sidestep them through superficial amendments.

## V. PLAINTIFF'S TACTICAL TIMING REVEALS AN ATTEMPT TO PREJUDICE DEFENDANT'S POST-JUDGMENT RELIEF

The timing of Plaintiff's Motion to Amend Judgment is telling—and troubling. Filed immediately after Defendant submitted her Rule 59(e) and Rule 60(b) motions, Plaintiff's motion appears designed not to correct any legitimate defect, but to preemptively interfere with Defendant's post-judgment relief and insulate the judgment from substantive review.

Rather than engaging with the serious due process violations at issue, Plaintiff seeks to reframe this matter as a mere technical correction, an effort to deflect attention from the structural injustices that occurred. This is not a good-faith attempt to clarify the judgment; it is a strategic maneuver to blunt the impact of Defendant's well-supported constitutional challenges. This Court should recognize Plaintiff's Motion for what it is: an opportunistic attempt to bypass scrutiny of the serious procedural abuses and constitutional violations raised by Defendant. Allowing such tactics would only further erode the fairness of these proceedings and compound the harm already inflicted. Accordingly, Defendant respectfully submits that Plaintiff's Motion to Amend Judgment (DE 376) must be denied in its entirety, and that the Court should proceed to fully consider the substantive due process claims presented in Defendant's Rule 59(e) and Rule 60(b) motions.

## VI. PLAINTIFF'S SELECTIVE ENFORCEMENT OF PROCEDURAL RULES AND ATTEMPT TO BYPASS THE UEFJA REVEAL BAD FAITH

Plaintiff's selective enforcement of procedural rules and attempted circumvention of lawful judgment domestication undermine equity and reveal bad faith. Throughout this litigation, Plaintiff has repeatedly insisted on strict compliance with procedural requirements—such as discovery through the Hague Convention and adherence to data protection laws under the GDPR—whenever such mechanisms serve Plaintiff's interests. Plaintiff's counsel has argued forcefully that these formal procedures are essential to the integrity of the process, emphasizing that any deviation from these channels would violate due process and undermine the fairness of the proceedings.

Yet Plaintiff now abandons this professed commitment to procedural rigor when it proves inconvenient to their current objectives. Specifically, Plaintiff seeks to impose an arbitrary four-day deadline for conferral on a $1.5 million fee demand—directly contravening the thirty (30) day conferral period required by S.D. Fla. Local Rule 7.3(a)—while simultaneously dismissing Defendant's ADA-protected accommodation requests with open hostility. This selective enforcement of procedural rules is not legitimate advocacy; it is bad faith gamesmanship. A party cannot demand strict adherence to procedural safeguards when it benefits their position while casually discarding those same protections when it suits their tactical advantage. This pattern of opportunism extends beyond conferral violations. In Plaintiff's Motion to Amend Judgment (DE 376), counsel improperly seeks to embed speculative language into the Final Judgment regarding Defendant's alleged future relocation to Florida or other states. This anticipatory language serves no legitimate purpose under Rule 60(a), nor is it supported by any evidentiary record. Plaintiff offers no proof—only conjecture—as to Defendant's supposed relocation plans.

Importantly, the proper mechanism for cross-jurisdictional enforcement of judgments is governed by the Uniform Enforcement of Foreign Judgments Act (UEFJA), not by speculative additions to the Florida judgment itself. Both Florida and Washington, like most states, have enacted the UEFJA to ensure that out-of-state judgments are recognized and enforced through proper judicial channels. See, e.g., RCW 6.36.025 (Washington's UEFJA adoption); Fla. Stat. § 55.501 et seq. (Florida's enactment). Plaintiff's effort to circumvent these established procedures—by inserting language into the Florida judgment in anticipation

8

of enforcement elsewhere—amounts to an improper end-run around the UEFJA. It reflects procedural manipulation, not good-faith enforcement. The Federal Rules of Civil Procedure do not authorize courts to preemptively rewrite or bypass the domestication process provided by state law. If Plaintiff believes enforcement is necessary in another forum, the proper course is to initiate domestication proceedings in that jurisdiction, subject to its laws and procedural protections.

This contradiction between Plaintiff's demand for strict procedural adherence when it favors their position and their willingness to disregard those rules when it does not further demonstrates bad faith and undermines the equitable administration of justice. Plaintiff's post-judgment strategy is not aimed at lawful enforcement—it is designed to weaponize this Court's authority as a means of coercion, intimidation, and retaliation against Defendant for asserting her rights.

For these reasons, the Court should reject Plaintiff's Motion to Amend Judgment (DE 376) in its entirety and decline to enable these procedurally improper tactics. Allowing such procedural manipulation would not only violate the statutory framework for interstate judgment enforcement but would also undermine this Court's own authority to regulate the fairness and integrity of its judgments. Permitting Plaintiff to bypass the statutory domestication process not only violates the spirit of the UEFJA but invites uncertainty and potential conflicts between jurisdictions—a result both state law and federal equity principles are designed to prevent.

## VII. PLANTIFF'S COUNSEL'S VIOLATION OF DUTY OF CANDOR AND ETHICAL OBLIGATIONS FURTHER WARRANTS DENIAL OF RELIEF

Plaintiff's counsel's repeated reliance on false, speculative, and wholly unsupported assertions—particularly regarding Defendant's alleged intent to relocate and the denial of her well-documented disability status—raises serious concerns under **Federal Rule of Civil Procedure 11(b)**. Rule 11 expressly prohibits attorneys from presenting claims, defenses, or factual contentions to the Court without evidentiary support, or from engaging in conduct designed to harass, intimidate, or needlessly increase the cost of litigation. Counsel is further bound by the **Florida Bar Rules of Professional Conduct**, including **Rule 4-**

**3.3(a)(1)**, which prohibits knowingly making false statements of fact or law to a tribunal. The duty of candor to the Court is not optional—it is a core ethical obligation intended to preserve the integrity of the judicial process. This pattern of misconduct is not speculative—it is plainly evident in Plaintiff's counsel's own written communications. In correspondence dated April 25, 2025 (***See Exhibit A: Email Correspondence from Plaintiff's Counsel dated April 25, 2025)***



Plaintiff's counsel imposed an arbitrary four-day deadline for conferral (in clear violation of **S.D. Fla. Local Rule 7.3(a)**), while simultaneously engaging in overt intimidation, ableist rhetoric, and personal attacks on Defendant's disability status. Counsel openly accused Defendant of fabricating her ADA-protected medical conditions, referring to her PTSD and panic-related symptoms as "new founded disability claims," and disparaging her documented experience of distress during trial by characterizing it as "recreationist history" that "will not play well with us or the Court." These statements are not only factually

inaccurate—ethically indefensible under both **Rule 11(b)** and **Florida Bar Rule 4-3.3(a)**. Such harassment and ableist commentary[1], particularly when employed during the required conferral process, further demonstrates that Plaintiff's Motion to Amend Judgment is not submitted in good faith but represents part of a broader strategy to intimidate Defendant and obstruct meaningful judicial review of the serious constitutional violations at issue. This Court should not permit such misuse of the judicial process to go unchecked.

## VIII. CONCLUSION

For the foregoing reasons, Defendant respectfully and prayerfully requests that this Court deny Plaintiff's Motion to Amend Judgment (DE 376) in its entirety. Plaintiff's motion represents an improper and legally insufficient attempt to circumvent review of the serious constitutional and procedural violations identified in Defendant's pending Rule 59(e) and Rule 60(b) motions. Defendant further reserves all rights to seek appropriate sanctions or other remedies for Plaintiff's counsel's continued pattern of bad-faith conduct, intimidation, and abuse of process.

As discussed in **Section VI** above, this is not speculation—the record includes direct written communications from Plaintiff's counsel evidencing intimidation, ableist rhetoric, and violations of both **Federal Rule of Civil Procedure 11(b)** and **Florida Bar Rule 4-3.3(a)(1)**. These tactics are not only unethical but reveal the bad faith underlying Plaintiff's Motion.

The very purpose of Rule 59(e) and Rule 60(b) is to prevent the enforcement of judgments rendered through procedural defects, due process violations, or manifest injustice. Finality, while important, is never meant to come at the expense of fairness. The Federal Rules of Civil Procedure are designed to secure "the

---

[1] This email triggered multiple PTSD episodes and panic attacks for Defendant over the weekend following its receipt, during which time Defendant was traveling out of state to support her daughter at a basketball tournament. Should the Court question the severity or legitimacy of Defendant's PTSD symptoms, Defendant is prepared to submit declarations from her 14-year-old daughter, as well as other eyewitness teammates and parents, who can attest firsthand to the distress and impact this correspondence caused. Defendant's condition remains well-documented through ongoing medical treatment. The reality that such ableist, harassing conduct is tolerated from officers of the Court—while Defendant's legitimate disabilities are met with suspicion—exemplifies a disturbing double standard that should not be permitted to stand.

11

just, speedy, and inexpensive determination of every action and proceeding." They are not intended to be weaponized as tools of oppression against those most vulnerable. Defendant does not seek special treatment—only the equal right to be heard, to present her case without intimidation, and to have her constitutional and statutory protections respected. This Court now stands at the critical intersection between procedural enforcement and the broader interests of justice. Defendant does not ask for sympathy—only the fair opportunity for these serious violations to be fully heard and lawfully addressed. To permit such abuses of process to stand unchallenged would not only deepen the harm already inflicted but risk undermining faith in the integrity of this Court itself. Defendant respectfully trusts that this Court will not allow such procedural manipulation and ethical misconduct to evade judicial scrutiny, and asks only that the serious constitutional violations in this matter receive the full and fair consideration that justice requires.

Respectfully submitted,

By: *Ronda McNae*
Ronda Delapina McNae, Pro se Defendant
504 11th Pl, Kirkland, WA 98033
Tel: (206) 914-6752
Prose.rmcnae@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 28, 2025, a true and correct copy of the foregoing Defendant Ronda McNae's Opposition to Plaintiff's Motion to Amend Judgment (DE 376) was sent to the Clerk of the Court at the Miami Courthouse, Southern District of Florida, 400 N. Miami Ave, Room 8N09, Miami, FL 33128. Additionally, in compliance with the Court's requirements for pro se litigants, a copy of the same document was sent to Plaintiffs' counsel on the same date.

**SERVICE LIST**

Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131

Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlowe.com
*Counsel for Plaintiff*

# Exhibit A

 Ronda McNae <prose.rmcnae@gmail.com>

## RE: Fitzgerald/McNae: Draft Fees and Costs Motion and Supporting Documents for Rules 7.1 and 7.3 Conferral Purposes

1 message

**Peter E. Berlowe** <PEB@assoulineberlowe.com>  Fri, Apr 25, 2025 at 11:45 AM
To: Ronda McNae <prose.rmcnae@gmail.com>, Ronda McNae <rondamcnae@gmail.com>
Cc: "Meredith J. Gussin" <mjg@assoulineberlowe.com>

Good afternoon Mrs. McNae:

We will give you until 10 am EST on Tuesday, April 29th to provide us your response. If it has merit, we will engage further; however, I am frankly suspicious as to your new founded disability claims, particularly where you have represented yourself *pro se* off an on for over a year's worth of this case. You have drafted hundreds of pages of extensive legal briefing on short turn arounds whenever it suited your needs.

Also, please remember research the law on issues that are inextricably intertwined, and be careful not to contradict the positions you have previously taken in this case when you were seeking fees. You must remain consistent to maintain credibility. So far, your thoughts are 180 degrees from your past arguments.

Furthermore your claim in your motion filed today that you were violently gagging at the trial is lacking in candor. That did not occur. You do realize there were other people in the Court room? People who are compassionate human beings. That type of recreationist history will not play well with us or the Court.

Sincerely,

**Peter E. Berlowe, Esq.**

**Business and Intellectual Property Litigation**



**ASSOULINE & BERLOWE, P.A.**

Miami Tower

100 SE 2nd Street, Suite 3650

Miami, Florida 33131

**Telephone: 305-567-5576**

**www.assoulineberlowe.com**

Intellectual Property, Labor & Employment Law, Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication. Thank you.

**From:** Ronda McNae <prose.rmcnae@gmail.com>
**Sent:** Friday, April 25, 2025 1:21 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Meredith J. Gussin <mjg@assoulineberlowe.com>; Will McNae <prose.wmcnae@gmail.com>; Keisha Hall <khall@allpointslegal.com>; Althea Bryan Farr <Althea.BryanFarr@bfhlegal.com>
**Subject:** Re: Fitzgerald/McNae: Draft Fees and Costs Motion and Supporting Documents for Rules 7.1 and 7.3 Conferral Purposes

## **Subject:** Response to Request for Conferral Regarding Motion for Fees and Costs

Mr. Berlowe,

Thank you for your reply and for sending the requested materials. You are correct that I mistakenly sent some prior communications from my personal email account. I apologize for any confusion that may have caused. Going forward, I will ensure that all litigation-related correspondence is sent exclusively from my **prose.rmcnae@gmail.com** account. At present, I am out of town with my daughter and will not return until Monday evening. Following my return, I will need sufficient time to thoroughly examine the materials and prepare my initial response.

Please also see the attached document, which I have prepared to begin the conferral process in writing, consistent with my prior request for ADA accommodation. Additionally, I have included **Will McNae's counsel** in this correspondence to ensure full transparency and to avoid any issues of duplicative recovery between the federal matter and the related state court proceedings.

As mentioned, I am unable to participate in Zoom or telephone calls due to my diagnosed PTSD and panic disorder—conditions that prevent me from safely engaging in verbal communication, particularly in adversarial or high-stress settings. I remain committed to cooperating in good faith, and I believe written correspondence will allow us to engage productively while respecting my health-related needs.

Thank you for your understanding and professional courtesy.

Sincerely,
**Ronda McNae**

On Fri, Apr 25, 2025 at 8:03 AM Peter E. Berlowe <PEB@assoulineberlowe.com> wrote:

> Good morning Mrs. McNae:

Please see attached per your request. I guess you have been emailing me on case issues from your rondamcnae@gmail.com account regarding case issues. I now see that after your pointing it out. I never realized you were using two email addresses with us.   I'll try to remember that for next time.

When would you like to confer via zoom?

Sincerely,

**Peter E. Berlowe, Esq.**

**Business and Intellectual Property Litigation**

**ASSOULINE & BERLOWE**
**THE BUSINESS LAW FIRM**

**ASSOULINE & BERLOWE, P.A.**

Miami Tower

100 SE 2nd Street, Suite 3650

Miami, Florida 33131

**Telephone: 305-567-5576**

**www.assoulineberlowe.com**

Intellectual Property, Labor & Employment Law,  Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication. Thank you.

**From:** Ronda McNae <rondamcnae@gmail.com>
**Sent:** Friday, April 25, 2025 10:54 AM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Meredith J. Gussin <mjg@assoulineberlowe.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** Re: Fitzgerald/McNae: Draft Fees and Costs Motion and Supporting Documents for Rules 7.1 and 7.3 Conferral Purposes

Please send all court-related documents to the email address I have provided through PACER and in prior court filings. This is my personal email account.

Regards,

Ronda McNae

---

**From:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Sent:** Friday, April 25, 2025 6:36:16 AM
**To:** Ronda McNae <rondamcnae@gmail.com>
**Cc:** Meredith J. Gussin <mjg@assoulineberlowe.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** Fitzgerald/McNae: Draft Fees and Costs Motion and Supporting Documents for Rules 7.1 and 7.3 Conferral Purposes

Good morning Mrs. McNae:

Pursuant to S.D.Fla. Local Rules 7.1 and 7.3, I have attached drafts of our (i) Motion for Fees and Costs, (ii) Declaration in Support (which includes hourly fee descriptions and vendor invoices), and (iii) 28 USC Section 1920 Bill of Costs. We are providing these to you for our required conferral to see if you and I can agree to any of the following:

1. The hourly rates charged by each of the attorneys and paralegals of the firm.

2. The time spent on any particular time entry by the attorneys and paralegals of the firm.

3. The costs which we seek reimbursement, either under Section 23 of the Confidential Settlement Agreement or under 28 USC Section 1920.

4. The reasonableness of the fees and costs requested.

5. An appropriate understanding of your total incurred fees and costs to date with your three former attorneys.

We are required to confer on these issues in person or at least by zoom since you are out of state. I know you have refused to such conferrals by zoom and phone in the past, but I kindly request you consider meeting by zoom for this issue as required by local rule. Earlier in the week you asked me not to email you, but we obviously have to communicate in some fashion as you represent yourself *pro se*.

Sincerely,

**Peter E. Berlowe, Esq.**

**Business and Intellectual Property Litigation**

# ASSOULINE & BERLOWE
## THE BUSINESS LAW FIRM

**ASSOULINE & BERLOWE, P.A.**

Miami Tower

100 SE 2nd Street, Suite 3650

Miami, Florida 33131

**Telephone: 305-567-5576**

**www.assoulineberlowe.com**

Intellectual Property, Labor & Employment Law, Real Estate, International Dispute Resolution, Commercial Litigation, Corporate Law, Bankruptcy

Miami · Ft. Lauderdale · Boca Raton

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (305-567-5576), and destroy the original message. This communication is an attorney-client and work-product privileged communication. Thank you.