IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

        Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

        Defendants.

_____/



FILED BY _____ D.C.

MAY 0 1 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## DEFENDANT'S SUPPLEMENT TO RULE 60(b) MOTION BASED ON NEWLY DISCOVERED ATTORNEY MISCONDUCT

Defendant, Ronda McNae, appearing pro se, respectfully submits this Supplement in further

support of her pending Motion for Relief from Final Judgment pursuant to Federal Rule of Civil Procedure

60(b). This Supplement is intended to supplement—not supersede—Defendant's original Rule 60(b)

Motion (DE 375). All previously stated grounds remain preserved and incorporated herein. Because the

Plaintiff's Motion to Amend (DE 376) presumes the Final Judgment is procedurally valid, and because the

integrity of that judgment is now directly contested based on new evidence, the Court must first rule on

Defendant's Rule 59(e) and 60(b) motions before considering any post-judgment enforcement or

amendment. Proceeding otherwise would risk compounding the prejudice already suffered and would

undermine core principles of due process and fair adjudication[1]. This Supplement presents newly

---

[1] Defendant notes that certain materials cited herein —including DE 289, 292, and 295—were previously filed in
support of her original Rule 59(e) and Rule 60(b) motions. This supplement does not duplicate those filings, but rather
adds newly discovered evidence and documentation—such as contemporaneous counseling records, internal emails,
and the April 2025 Florida Bar response—that confirm the extent of strategic and ethical failures not fully understood
at the time of the original motion.

discovered evidence of attorney misconduct that fundamentally undermines the integrity of the final judgment and warrants vacatur under Rule 60(b). Defendant respectfully requests that the Court take judicial notice of the attached exhibits and accept them into the record for purposes of evaluating this Rule 60(b) Supplement. Defendant notes that her original Rule 60(b) motion and accompanying Rule 59(e) motion remain pending before the Court, and no hearing or final ruling has been issued as of this filing.

Mr. Gomez was retained through **ARAG Legal Insurance** and was paid for his services pursuant to an active policy covering litigation services through trial. Despite being compensated through ARAG, Mr. Gomez failed to perform essential tasks, misrepresented strategic options, and ultimately harmed the integrity of the proceedings.

Since the entry of judgment, Defendant has reviewed additional documents, communications, and attorney misconduct disclosures—including Mr. Gomez's April 2025 response to the Florida Bar—that clarify for the first time the full extent of strategic misrepresentation and prejudice. Although some emails were previously in Defendant's possession, it was not until Gomez selectively disclosed two communications to the Bar—omitting key context and contradicting months of internal strategy—that Defendant fully understood the extent of his misrepresentations to both the Court and his client. This Court is not being asked to adjudicate a Bar violation; rather, Defendant submits the Bar filings to illustrate newly discovered inconsistencies in counsel's representations and to corroborate factual grounds for Rule 60(b) relief.

On April 12, 2025, Mr. Gomez submitted a formal response to the Florida Bar in which he claimed that Defendant had voluntarily agreed not to pursue the affirmative defense of duress. In support of this claim, he attached only two selective emails, omitting critical communications in which Defendant

2

explicitly objected to that strategy—most notably her September 12, 2024 email stating, "*To be clear, I do not consent to dropping my affirmative defense.*" His submission to the Bar misrepresents both the substance and timeline of legal decisions and fails to acknowledge his own prior pressure to abandon the duress argument. These omissions, combined with his failure to file expert materials and his disclosure of confidential files to a third party, support Defendant's request for relief under Rule 60(b) based on newly understood misconduct and strategic prejudice. These newly clarified facts, along with associated billing records and evidence of unauthorized disclosures, support relief under Rule 60(b)(1), (3), and (6). They also underscore the need for this Court to resolve the pending Rule 59(e) and Rule 60(b) motions before taking action on Plaintiff's Motion to Amend Final Judgment (DE 376).

Relief under Rule 60(b) is appropriate when a judgment is obtained through **"mistake, inadvertence, surprise, or excusable neglect" (subsection 1)**, **"fraud, misrepresentation, or misconduct by an opposing party" (subsection 3)**, or for **"any other reason that justifies relief" (subsection 6)**. *See* Fed. R. Civ. P. 60(b); *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Courts may grant relief where the motion is timely and the movant demonstrates that the judgment is fundamentally unfair or unreliable due to newly discovered evidence or misconduct.

Defendant respectfully submits her April 29, 2025 Response to the Florida Bar **(Exhibit A)** as a master exhibit. It includes **Exhibits A–N**, each of which is cited in this motion and supports claims of attorney misconduct, procedural prejudice, and ethical violations underlying the Final Judgment. Defendant offers the full packet for judicial efficiency, and can submit individual items separately if the Court prefers. These exhibits directly support the factual claims outlined below and form the evidentiary basis for Defendant's renewed request for Rule 60(b) relief.

3

## I.    OVERVIEW OF MISCONDUCT AND RESULTING HARM

In this case, prior counsel failed to file a promised summary judgment motion, misrepresented Defendant's position on a central affirmative defense, disclosed thousands of pages of privileged documents without consent, and abandoned critical expert testimony that supported Defendant's trauma-related defenses. Defendant was misled into believing that her key defenses would be preserved, only to discover—after final judgment—that core evidence was excluded and critical arguments were never presented. These compounded failures resulted in a procedurally defective trial and an unfair judgment rendered without full consideration of material facts. The final judgment awarded over $2 million in damages without permitting Defendant to present evidence of coercion, trauma, or improper contract formation. These defenses were excluded by judicial decision because of counsel's procedural failures, misrepresentations, and lack of inclusion in Defendant's non-existent Summary Judgement (never filed). This deprived the Court of a complete and accurate record, and fundamentally undermined the integrity of the trial proceedings.

## II.    Newly Discovered Grounds Supporting Rule 60(b)(1) and (6)

## A.  Misrepresentation of Summary Judgment Strategy:

Defendant has uncovered emails, billing records, and declarations showing that Mr. Gomez billed for but failed to file a summary judgment motion, despite representing for months that one would be submitted. This left Defendant procedurally disadvantaged while Plaintiff aggressively pursued summary judgment **(see Exhibit A (Email communications), B (Declarations), E (Billing), F (Billing) and G (ARAG Billing))**. As a result, Defendant lost the opportunity to proactively challenge liability or to present affirmative defenses such as duress in her own dispositive motion. Mr. Gomez's decision to forgo summary judgment was made unilaterally, without reviewing deposition testimony or expert materials that were

4

available and relevant[2]. Mr. Gomez now claims—without documentation—that he billed over 300 hours on my case. This assertion is contradicted by billing records from my legal insurance provider, ARAG, which reflect only 62.9 hours billed between February and October 2024. I specifically cited this figure in my Florida Bar complaint, and Mr. Gomez did not produce any invoices, time entries, or billing logs to support his contrary claim. If he billed additional time outside the ARAG platform, he never disclosed those charges to me nor sought compensation through any other means. His refusal to provide a full accounting of billed time, despite directly challenging my assertion, casts serious doubt on the credibility of his representation and supports a finding of misrepresentation or omission under Rule 60(b)(3). Moreover, this discrepancy reinforces my claim that Mr. Gomez grossly underprepared for trial and failed to devote adequate time to essential litigation tasks. **(See page 8 of Exhibit O)**

**B.  Failure to File Expert Depositions:**

Despite having knowledge of the existence of deposition transcripts from key trauma and medical experts, Mr. Gomez failed to obtain or file any portion of their testimony into the trial record. He later claimed, in correspondence submitted to the Florida Bar, that he understood the expert testimony based on conversations with Defendant[3]. However, Defendant expressly informed Mr. Gomez that she had not

---

[2] On September 12, 2024, at approximately 7:32 PM, Mr. Gomez emailed Defendant explaining his decision not to file a motion for summary judgment on damages. In that message, he assured Defendant that this decision would not waive her ability to pursue a duress defense at trial, stating, "Only the court can dismiss that defense." Defendant responded at 8:00 PM with a brief message stating, "I agree. Thank you for explaining this in writing." This message acknowledged Mr. Gomez's assurance that duress would be preserved; it did not constitute informed consent to drop or abandon the defense. In fact, earlier that same day, Defendant had explicitly written: "To be clear, I do not consent to dropping my affirmative defense." The timing and content of the emails demonstrate Defendant's reliance on counsel's promise that duress would still be pursued—not agreement to withdraw it.

[3] See *Response to Florida Bar File No. 2025-70,440 (11K)*, McNae Letter (Apr. 29, 2025), at 6. Mr. Gomez claimed he "knew what the experts testified to based on a conversation with Defendant." However, Defendant expressly informed him that she had not attended all expert depositions and was not comfortable relying on her own recollection

attended all expert depositions and was not comfortable with him relying on her recollections instead of conducting a proper review of the transcripts. Mr. Gomez refused to obtain the transcripts, Defendant did pay over $4,000 out of pocket to obtain them herself. She then attempted to file the transcripts pro se (see DE 289), but the Court struck the filings as untimely (see DE 292, DE 295). The Court's orders confirm that the exclusion was based solely on missed procedural deadlines—not on the substance, relevance, or admissibility of the expert evidence—further highlighting the prejudice resulting from Mr. Gomez's failure to act.

These omissions directly undermined Defendant's ability to present critical evidence in support of her duress defense and emotional distress damages. The expert testimony would have remained highly relevant to defending against Plaintiff's damages. The experts who evaluated and treated Defendant provided essential medical and psychological context for her conduct—evidence that would have rebutted Plaintiff's claim that her speech was malicious or reputationally damaging. Their exclusion deprived the Court of testimony that could have materially reduced or reshaped the damages awarded at trial.

**C.  Unauthorized Disclosure of Privileged Files:**

Mr. Gomez disclosed over 2,300 pages of confidential legal and medical records to attorney Keisha Hall, who did not represent Defendant and had no authorization to receive privileged materials. This disclosure constitutes a serious breach of confidentiality in violation of Florida Bar Rule 4-1.6 and Florida Evidence Code § 90.502 (see Exhibit J). The transmitted documents included sensitive therapy notes, litigation strategy, and internal communications protected by both the attorney-client privilege and the

---

in place of proper transcript review. See also Exhibit H (Transcript Cost Summary), documenting over $4,000 in out-of-pocket costs paid by Defendant to obtain expert deposition materials that Gomez failed to order or submit.

psychotherapist-patient privilege. Ms. Hall represented Defendant's husband in a separate legal matter and had no involvement in the federal litigation at issue. No joint representation agreement or waiver of privilege was ever executed, and Defendant never consented to this disclosure. Mr. Gomez's unilateral decision to share privileged files with a third party—particularly one with a distinct legal interest—created a conflict of interest and undermined Defendant's right to confidential legal counsel.

**D.  Conflict of Interest and Dual Representation:**

While representing Defendant in the federal litigation, Mr. Gomez simultaneously represented Defendant's husband, Will McNae, in a separate state court matter involving the same Plaintiff. This dual representation created an actual conflict of interest under Florida Bar Rules 4-1.7 and 4-1.9, particularly given the overlapping but distinct factual and legal issues in each case. No joint representation agreement was executed, and no written waiver of conflict was ever obtained. Internal emails and sworn declarations confirm that Mr. Gomez actively sought to align defense strategies between the two matters **(see Exhibit K),** even though Defendant and her husband faced different claims, evidentiary burdens, and legal theories. This misalignment led to the suppression of key defenses—including duress—and limited Defendant's ability to fully present individualized evidence and legal arguments at trial. The conflict not only compromised the independence of counsel's legal advice but also undermined the fairness of the proceedings. Strategic decisions were shaped by divided loyalty, not by Defendant's best interests. Such structural prejudice supports relief under Rule 60(b), particularly where it results in the abandonment of viable defenses and failure to present material evidence.

**E.  Strategic Misrepresentation of Duress Preservation and Summary Judgment Approach:**

7

Between September 11 and 12, 2024, Defendant and Mr. Gomez exchanged a series of written communications that unequivocally demonstrate Defendant's refusal to abandon her duress defense. In a September 12, 2024 email sent at 7:02 AM, Defendant wrote: *"To be clear, I do not consent to dropping my affirmative defense."* That message followed a September 11 inquiry in which she sought clarity on whether the duress defense would be included in the summary judgment strategy. Later that same day, at 6:05 PM, Defendant reiterated: *"I do not want to waive my right to use the duress defense at trial."* These statements reflect a clear, continuous objection to abandoning the defense.

At 7:32 PM on September 12, Mr. Gomez responded: *"By not filing for summary judgment, you are not waiving your decision to pursue a duress argument at trial. Only the court can dismiss that defense."* Based on this representation, Defendant reasonably believed that her duress defense would be preserved and presented at trial, and included in Defendant's Motion for Summary Judgement which unfortunately was never filed.

However, in his April 13, 2025 response to the Florida Bar (**Exhibit O**), Mr. Gomez misrepresented Defendant's position, falsely asserting that she voluntarily agreed to withdraw the defense. In support of this claim, he selectively attached only the 7:32 PM message from September 12, omitting the two earlier emails from the same day that directly contradict that narrative. These omissions distorted the timeline, mischaracterized Defendant's clearly stated objections, and conflicted with Mr. Gomez's own written assurances. This conduct constitutes a material misrepresentation both to Defendant and to the Florida Bar, and it provides an independent ground for relief under Rule 60(b)(3). Defendant reasonably relied on Mr. Gomez's assurances, and as a result, her central affirmative defense was procedurally excluded from trial— despite her explicit and repeated objections. The resulting judgment was entered without full consideration of key factual and legal arguments, causing structural prejudice and denying Defendant a fair adjudication.

8

A verified timeline of the September 11–12, 2024 email exchange—including sender, timestamps, and quoted content—is attached as **Exhibit P**. This timeline, along with the underlying emails, confirms that Defendant never consented to waiving her duress defense and was affirmatively misled into believing it would remain active through trial.

**F. Florida Bar Complaint and Verified Timeline Support Misconduct Claims:**

Defendant has submitted a verified reply to the Florida Bar **(Exhibit A),** which includes a full copy of Mr. Gomez's April 13, 2025 response and a detailed, side-by-side timeline comparing his selective quotations to the full email exchange. The Bar submission demonstrates that Mr. Gomez materially misrepresented Defendant's strategic position by quoting only a favorable portion of the September 12, 2024 correspondence, while omitting controlling emails from earlier that same day—most notably Defendant's unequivocal statement: *"To be clear, I do not consent to dropping my affirmative defense."*

The verified timeline attached to the Bar response—also submitted here as **Exhibit P**—confirms that Defendant was actively misled into believing the duress defense remained viable for trial. She relied on Mr. Gomez's written assurances to that effect. The omission of these critical communications from both the trial record and Mr. Gomez's Bar response demonstrates not only material misrepresentation but also a breach of ethical obligations under Florida Bar Rules 4-1.2, 4-1.4, and 4-8.4(c). These facts support Defendant's entitlement to relief under Rule 60(b)(1), (3), and (6), as the final judgment was entered without full and fair presentation of a central affirmative defense—due in part to counsel's concealment of the true record from both the Court and the Bar.

**G. Contemporaneous Journal Entries and Symptom Documentation Corroborate Objections and Trauma:**

9

Throughout the course of Mr. Gomez's representation, Defendant maintained contemporaneous notes and journal entries documenting her objections to counsel's strategic decisions, including repeated pressure to abandon the duress defense and interference by legal insurance provider ARAG. These entries, preserved on her phone and timestamped in September 2024, reflect ongoing distress over being excluded from litigation decisions—particularly those concerning trauma-based defenses.

In addition to written entries, several journal logs describe acute physical symptoms consistent with chronic anxiety and PTSD, including gagging, vomiting, and stress-induced hives. These symptoms, previously documented by medical providers, were visible and contemporaneously photographed by Defendant. While these images are not submitted here to preserve judicial economy, they are available for in camera review or upon request by the Court.

This corroborating evidence further supports Defendant's account of emotional harm, procedural exclusion, and ineffective representation. It confirms that Defendant's objections were not post hoc or speculative, but contemporaneous and grounded in both legal disagreement and psychological distress. Taken together, these facts support relief under Rule 60(b)(1), (3), and (6), as the judgment was entered in a manner that ignored material defenses and imposed emotional and procedural harm caused by counsel's misconduct.

## H.  Contemporaneous Objection Raised to Separate Counsel Regarding Strategic Misconduct:

On September 13, 2024, Defendant raised contemporaneous concerns regarding Mr. Gomez's strategic pressure and apparent conflict of interest in an email sent to her former bad faith insurance counsel, who were representing her in a separate ARAG matter pending in Seattle, Washington. The communication, attached as **Exhibit Q**, documents Defendant's early frustration over Mr. Gomez's attempt to deprioritize

10

her federal claims and to involve unrelated third parties in litigation strategy without her informed consent. Although Defendant did not yet fully understand the legal consequences of these actions, the message reflects a genuine, contemporaneous objection to counsel's conduct—expressed to independent legal counsel outside the litigation now at issue. This undermines any suggestion that Defendant voluntarily waived her duress defense or accepted Mr. Gomez's decisions without protest. The email has been redacted to protect third-party privacy. It is submitted for the limited purpose of establishing a contemporaneous objection to alleged attorney misconduct. Its inclusion does not waive attorney–client privilege beyond the scope necessary to support this motion.

## I.  Formal Written Conflict of Interest Complaint to ARAG:

On September 13, 2024, Defendant submitted a formal written complaint to ARAG Legal Insurance documenting her concerns regarding Richard Gomez's simultaneous representation of both herself and her husband, Will McNae, in related but legally distinct proceedings. The letter, attached as **Exhibit F**, identified multiple grounds under ethical and procedural rules that rendered dual representation untenable— including divergent legal interests, confidentiality concerns, incompatible defense strategies, and the inability to receive independent legal advice. Defendant also requested that attorney Walter Bernard be approved as independent counsel, citing his familiarity with the case and willingness to represent her. ARAG did not act on this request, materially impairing Defendant's ability to receive effective representation and preserve critical defenses.

This contemporaneous complaint further supports Defendant's argument under Rule 60(b)(1), (3), and (6) that the judgment was affected by strategic prejudice arising from a known and unresolved conflict of interest. The dual representation by Mr. Gomez created not only an ethical violation but also a functional

breakdown in advocacy. Defendant's federal case involved reputational, emotional, and procedural complexities that differed substantially from her husband's state court matter. Nevertheless, Mr. Gomez attempted to align their litigation strategies without regard to their distinct defenses and stakes.

Communications with Defendant show she was discouraged from asserting trauma-based defenses and expert-supported evidence in favor of a more passive litigation posture better aligned with her husband's position. As a result, critical testimony, expert reports, and even Defendant's own affirmative defense were excluded from trial. These outcomes would likely not have occurred had she been represented by independent, conflict-free counsel. The failure to resolve this conflict—despite Defendant's formal and timely complaint—resulted in structural prejudice warranting relief under Rule 60(b).

**J.  Improper Exclusion of Sexual Assault Context and Survivor-Based Evidence Impacted Damages Determination:**

Even if the Court declined to admit Defendant's duress defense, it simultaneously barred her from presenting essential medical and psychological context relevant to her actions—most notably, testimony regarding the sexual assault she experienced, which formed the underlying trauma that triggered the disclosures at the heart of this case. Defendant was not permitted to reference the assault at trial, nor to introduce testimony from her trauma therapist or expert witnesses prepared to explain how her PTSD symptoms—such as public disclosures, gagging, panic attacks, and dissociative responses—were direct manifestations of the abuse and the pressure of ongoing litigation.

These evidentiary exclusions deprived the Court of critical information necessary to assess Defendant's state of mind and intent, both of which are central to evaluating whether her statements were made maliciously and whether Plaintiff's reputational damages were legally justified. The resulting

12

judgment was therefore based on an incomplete and materially distorted factual record. That omission materially prejudiced the outcome and supports relief under Rule 60(b)(1) (mistake), (3) (misconduct), and (6) (extraordinary circumstances).

**K. Notes from Licensed Trauma Therapist Corroborate Procedural Harm and Emotional Distress:**

Defendant's symptoms during the litigation were neither speculative nor exaggerated; they are documented in contemporaneous progress notes from her treating trauma therapist, Sarah Dellinger, LMFT, covering sessions from July through December 2024. These records detail escalating PTSD-related symptoms—including gagging, vomiting, panic attacks, blackouts, dissociation, and emotional dysregulation—directly tied to the litigation process and, in particular, to counsel's conduct. The notes reflect that symptoms were most acute during interactions with Mr. Gomez, review of case evidence, and attempts to prepare for trial. The therapy records further document that Defendant discussed with both her therapist and her counsel the critical importance of presenting trauma-informed testimony at trial. Defendant reasonably believed that such testimony—particularly from her treating therapist—would be submitted to help the Court understand her mental state, including the effects of coercion, PTSD, and fear of retaliation. Despite this, her therapist was never called as a witness, and Defendant only learned after final judgment that no trauma-based expert testimony had been submitted at all.

These contemporaneous medical records confirm that Defendant expected this evidence to be part of her trial strategy and that its exclusion resulted from Mr. Gomez's unilateral decisions—not waiver, neglect, or oversight by Defendant herself. The omission materially impacted the presentation of Defendant's case and further supports relief under Rule 60(b)(1), (3), and (6). The therapy records are attached as **Exhibit N**.

13

**L.  Improper Exclusion of Defendant's Testimony by Counsel Compounded Prejudice[4]:**

Despite being the only person capable of explaining her own motivations, mental state, and trauma history, Defendant was not permitted to testify at trial. This was not the result of a judicial ruling, but rather a decision by trial counsel—who refused to call Defendant as a witness, despite her express and repeated requests to testify. In doing so, counsel deprived Defendant of her fundamental right to be heard in her own defense—an essential guarantee of due process under the Fifth and Fourteenth Amendments. This prejudice was further compounded by the Court's pretrial rulings, which barred any reference to Defendant's history of sexual assault or trauma. As a result, Defendant was entirely silenced on the very issues that bore directly on her intent, mental state, and mitigation of alleged reputational harm—issues central to the damages determination. No expert testimony was submitted. No trauma context was provided. And the factfinder was never given the opportunity to assess Defendant's credibility, demeanor, or lived experience—despite her being the subject of the allegations at issue.

A final judgment of over $2 million was entered without Defendant ever taking the stand. That outcome denied her a meaningful opportunity to defend herself and undermined the fairness, completeness, and integrity of the proceedings. Relief under Rule 60(b)(1), (3), and (6) is not only justified but essential to correct a fundamentally flawed adjudication.

### III.  Relevance to Plaintiff's Motion to Amend Judgment

---

[4] *See* **Goldberg v. Kelly**, 397 U.S. 254, 267 (1970) (*due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner"*); **Rock v. Arkansas**, 483 U.S. 44, 52 (1987) (*the right to testify is "a fundamental right" implicit in the Due Process Clause*); **Negron v. New York**, 434 F.2d 386, 389 (2d Cir. 1970) (*a defendant "has a due process right to be present and participate meaningfully at his own trial"*).

The evidence outlined above directly implicates the procedural integrity of the Final Judgment. Plaintiff's Motion to Amend (DE 376) proceeds on the assumption that the existing judgment is valid and enforceable. However, Defendant's pending motions under Rules 59(e) and 60(b) squarely challenge that premise. To proceed with amendment before resolving these serious procedural and ethical deficiencies would compound the prejudice already suffered by Defendant and further erode confidence in the fairness of the proceedings. The timing of Plaintiff's Motion—filed in the immediate aftermath of Defendant's post-trial motions—raises the inference of a tactical maneuver designed to sanitize or retroactively justify elements of the judgment now subject to credible challenge. Notably, Plaintiff appears to seek revision or elimination of certain damages findings without first addressing the procedural misconduct that contributed to their entry. Such a fragmented and retrospective approach to post-judgment relief is improper and inconsistent with principles of equity and judicial economy.

Accordingly, Defendant respectfully urges the Court to defer any ruling on DE 376 until the pending Rule 59(e) and Rule 60(b) motions are fully adjudicated. Only then can the integrity of any potential amendment be assured—grounded in a judgment that has been procedurally and ethically validated, rather than revised under the shadow of unresolved misconduct.

## IV.     Effect on Plaintiff's Motion for Attorneys' Fees and Costs

To the extent Plaintiffs have moved for or intend to seek attorneys' fees or costs based on the Final Judgment, such relief should likewise be deferred until the resolution of Defendant's pending Rule 59(e) and 60(b) motions. Because the underlying judgment is now challenged as procedurally and ethically deficient, any award of fees or costs at this stage would risk compounding prejudice and may later require reconsideration. Defendant reserves all rights to respond fully if such motion is addressed on the merits.

15

### V.     Conclusion

For the foregoing reasons, and because the newly presented facts materially impact the fairness and integrity of the judgment, Defendant respectfully requests that this Supplement be considered as part of her pending Rule 60(b) Motion. Defendant further requests that the Court stay any ruling on Plaintiff's Motion to Amend the Final Judgment (DE 376) until the issues raised in the Rule 60(b) proceedings are fully resolved. Defendant has acted with diligence upon discovering the relevant misconduct and submits this Supplement in good faith, to safeguard the integrity of the judicial process and her constitutional right to due process. Should the Court determine that oral argument or further clarification would assist in resolving these matters, Defendant remains available and willing to appear. Otherwise, Defendant respectfully submits this matter for determination based on the written record.

The Final Judgment awarded more than $2 million in damages without affording Defendant an opportunity to be heard, to present the testimony of her treating professionals, or to provide the trauma-informed context essential to evaluating her conduct. Relief under Rule 60(b) is not only warranted—it is necessary to preserve the fundamental fairness to which every litigant is entitled.

### REQUEST FOR RELIEF

For the reasons stated above, Defendant respectfully requests that the Court (1) grant the relief requested in her pending Rule 60(b) Motion; (2) vacate the Final Judgment entered against her; and (3) defer ruling on Plaintiffs' Motion to Amend Final Judgment (DE 376) until the underlying procedural deficiencies have been adjudicated.

Defendant expressly reserves all rights, objections, and defenses not raised herein, including but not limited to challenges under Rule 54, Rule 59, and Rule 11, and any rights relating to appeal, fee disputes,

or enforcement. Nothing in this filing shall be construed as a waiver of any legal position not expressly addressed.

Respectfully submitted,

By: _Ronda McNae_
Ronda Delapina McNae, Pro se Defendant
504 11th Pl, Kirkland, WA 98033
Tel: (206) 914-6752
Prose.rmcnae@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2025, a true and correct copy of the foregoing Defendant Ronda McNae's Opposition to Plaintiff's Motion to Supplement Rule 60(b) (DE 375) was sent to the Clerk of the Court at the Miami Courthouse, Southern District of Florida, 400 N. Miami Ave, Room 8N09, Miami, FL 33128. Additionally, in compliance with the Court's requirements for pro se litigants, a copy of the same document was sent to Plaintiffs' counsel on the same date.

**SERVICE LIST**

Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlowe.com
_Counsel for Plaintiff_

17

# Exhibit A

**RONDA McNAE**
504 11th Pl
Kirkland, WA 98033
Prose.Rmcnae@gmail.com
(206) 914-6752

**VIA EMAIL:** acapintake@floridabar.org
**VIA U.S. MAIL**

April 29, 2025

Mr. Richard Coombs, Bar Counsel
The Florida Bar
651 East Jefferson Street
Tallahassee, FL 32399-2300

**Re:** Response to Richard Michael Gomez's April 12, 2025 Letter
**FLORIDA BAR FILE NO. 2025-70,440 (11K)**

Dear Mr. Coombs:

This letter is submitted in direct rebuttal to Mr. Gomez's April 12, 2025 letter regarding the above-referenced disciplinary file. I address both factual misstatements and omissions contained in his reply, and offer this as a verified supplement to my original sworn complaint and supporting documentation.

## I. Misrepresentation of Duress Strategy and Procedural Impact

Mr. Gomez claims to have merely taken over after discovery closed and suggests his role was minimal due to the posture of the case. This is misleading. Upon entering my case on **April 4, 2024**, Mr. Gomez had a full five months before trial to request limited discovery, file dispositive motions, or preserve expert testimony—yet he failed to do so.

He unilaterally altered the legal strategy without my informed consent, **pressuring me to drop my duress defense** on September 4, 2024, stating:

*"Your decision needs to match my decision ... to drop duress."*
—Documented in my **sworn declaration** and corroborated by **my husband's declaration (Will McNae, Dec. 2024).**

He later misrepresented to the court and opposing counsel that the decision had been client-driven, despite my repeated written objections on September 12, 2024:

*"To be clear, I do not consent to dropping my affirmative defense."*

Later that evening, Mr. Gomez sent an email stating that although we would not file a motion for summary judgment on damages, my duress defense would be preserved and could still be pursued at trial. I responded with appreciation for his written clarification, writing, "I agree. Thank you for explaining this in writing That message did not signal agreement to withdraw the duress defense—it was a direct response to his statement that the defense would remain viable[1] at trial.

In his April 2025 Bar response, Mr. Gomez attached only two selective emails and omitted the email in which I directly stated that I did not consent to dropping my defense. He also mischaracterized a follow-up message I sent, thanking him for explaining his email. This was not a legal agreement to withdraw duress, but rather an acknowledgment that—according to him—the defense would still be preserved. His omission of the controlling email misled the Bar and concealed the truth of our communications.

Mr. Gomez's April 13, 2025 written submission to the Bar further misrepresents my position regarding the duress defense. In that response, he selectively cited only my brief evening reply from September 12, 2024 ("Thank you for explaining this in writing"), portraying it as confirmation that I agreed to withdraw the defense. However, he deliberately omitted two critical emails from earlier that same day—at **7:02 AM** and **6:05 PM**—in which I explicitly stated: *"To be clear, I do not consent to dropping my affirmative defense,"* and *"I do not want to waive my right to use the duress defense at trial."* These omitted emails were part of the same communication thread and timeline. Their exclusion materially alters the record and falsely suggests I acquiesced to a strategic decision I consistently opposed. Moreover, Mr. Gomez's own 7:32 PM email that day acknowledged, *"Only the court can dismiss that defense,"* reinforcing that he understood the defense remained active. His failure to include these controlling communications, while simultaneously asserting that I voluntarily dropped the defense, is not merely misleading—it is a **deliberate act of concealment** that violates **Florida Bar Rule 4-8.4(c)** and undermines the integrity of this disciplinary review.

Mr. Gomez's unilateral strategy shift did not occur in a vacuum. He had over five months from the date of his retention to file a dispositive motion or preserve evidentiary rights. Instead,

---

[1] This exchange took place on September 12, 2024. Earlier that day, I had explicitly stated, "To be clear, I do not consent to dropping my affirmative defense." Later that evening, Mr. Gomez wrote that "only the court can dismiss that defense," and that not moving for summary judgment would not constitute waiver. My brief reply—"I agree. Thank you for explaining this in writing"—simply confirmed my understanding that the duress defense would still be preserved. It was not an informed or voluntary agreement to abandon the defense, especially in light of the strong objections I had voiced hours earlier.

he bypassed all such procedural protections, leaving me vulnerable to Plaintiff's summary judgment attack while failing to assert any proactive defense of my own. The result was a judgment entered without a fair opportunity to litigate the enforceability of the NDA, a matter central to the case.

## II. Misleading Characterization of Insurance Coverage

Mr. Gomez falsely implies that insurance constraints limited his ability to fully represent me. In fact, **ARAG confirmed that his representation included all litigation work, up to and including trial.** The scope of services and compensation were not determinative of whether he could perform basic duties such as filing motions, preserving evidence, or advising on procedural risks.

## III. Failure to File Motion for Summary Judgment

Despite billing on June 21, 2024, for "review and strategizing for summary judgment," Mr. Gomez never filed such a motion. For months we prepared materials for that purpose—including declarations and defense exhibits—only for Mr. Gomez to reverse course without explanation or follow-through. This failure deprived me of the opportunity to challenge liability or assert duress proactively.

## IV. Critical Procedural Failures and Documented Harm

Mr. Gomez failed to file expert deposition transcripts for key witnesses—Dr. Jim Hopper, Sarah Dellinger, Dr. Bhaskar, and Dr. Weedman—even though I personally obtained and paid over $4,000 for the transcripts. When I attempted to file them pro se, the Court struck them as untimely (DE 292 and DE 295). Gomez's refusal to preserve this expert testimony irrevocably harmed my ability to prove trauma-based defenses and damages. This is a clear violation of Rule 4-1.1 (competence) and Rule 4-1.3 (diligence).

Despite my repeated requests, Mr. Gomez **refused to obtain deposition transcripts for my trauma experts and treating providers.** I was forced to obtain and expedite these materials myself—at a cost exceeding $4,000—only to learn that the **court excluded them as untimely,** precisely because Mr. Gomez never ordered nor filed them (See DE 292 & DE 295).

Despite billing for summary judgment strategy, Mr. Gomez did not file a motion or introduce critical evidence—including depositions from Dr. Hopper, Sarah Dellinger, Dr. Bhaskar,

and Dr. Weedman. When I attempted to submit these materials pro se, the Court struck them as untimely (DE 292, 295). I paid over $4,000 out-of-pocket for these transcripts, only to learn that counsel had failed to preserve their use through proper pretrial procedure. This omission is not only a failure of diligence but a violation of Rule 4-1.1 (competence) and Rule 4-1.3 (diligence). This omission alone **irreparably prejudiced my ability to present expert testimony** supporting my affirmative defense of duress and related emotional distress damages.

### V. Unauthorized Disclosure of Privileged Materials

Mr. Gomez transferred over 2,300 confidential and privileged documents—including medical records, legal strategy, and internal communications—to attorney Keisha Hall, who never represented me. Ms. Hall represented my husband, Will McNae, in a separate legal matter. This disclosure occurred without my knowledge or consent and constituted a serious violation of:

- **Florida Bar Rule 4-1.6 (Confidentiality of Information),**
- **Florida Evidence Code § 90.502 (Attorney-Client Privilege),** and
- **Potentially Florida Stat. § 817.568 (Criminal Use of Personal Information).**

In addition, Mr. Gomez repeatedly included my husband on email threads concerning confidential strategy in my federal litigation—at a time when Mr. McNae was not a co-defendant and had no standing to receive privileged communications. No joint representation agreement was in place, and I never waived confidentiality. These communications breached my right to confidential legal counsel and created an ongoing conflict of interest in violation of **Rules 4-1.7 and 4-1.9** of the Florida Rules of Professional Conduct. Mr. Gomez's assertion that I failed to verify my original complaint is also false. My March 14, 2025 submission included a verified declaration. If any supplemental material lacked formal verification, I am willing to resubmit under oath. However, that technicality in no way detracts from the substance or truth of the misconduct described.

### VI. Inadequate Time and Attention to Case

Mr. Gomez billed a total of **62.9 hours over six months**, which averages fewer than 8 hours per month for a complex federal trial. In **July 2024**, the month before pretrial filings were due, he billed only **0.6 hours**, despite knowing I lacked e-filing access and was navigating critical evidentiary issues pro se.

### VII. Verified Medical Evidence Confirms Harm from Representation

Attached as exhibits are progress notes from my licensed trauma therapist, Sarah Dellinger, LMFT, spanning July to December 2024. These clinical records document the emotional and physiological toll of this litigation and my interactions with Mr. Gomez. They show repeated instances of gagging, blackouts, heightened anxiety, and emotional dysregulation—often in direct response to actions or failures by Mr. Gomez, including his decision to abandon the duress defense without consent, withhold key communications, and fail to file critical pretrial motions.

On **September 5, 2024**, I reported during session that "I gag when I look at the evidence myself," and that I felt **"misunderstood by my lawyer."** On **October 7, 2024**, I vomited immediately after a session where I disclosed Mr. Gomez's withdrawal from my case and my realization that my deposition had not been ordered. These symptoms are not exaggerated—they are medically documented manifestations of complex PTSD exacerbated by the conduct of counsel.

These notes are not offered merely for sympathy—they constitute **objective medical confirmation** of the harm caused by ineffective and unethical legal representation. They further underscore that Mr. Gomez's actions were not only procedurally defective, but emotionally and psychologically damaging.

### VIII. Request for Florida Bar Action

I respectfully request that the Bar investigate and take appropriate disciplinary action regarding the following:

- Misrepresentation and abandonment of my central affirmative defense, including pressure to drop it without informed consent;
- Failure to file a motion for summary judgment after billing for its preparation, and failure to preserve or timely file expert witness evidence;
- Unauthorized disclosure of more than 2,300 pages of privileged materials, including confidential medical and legal documents, to a third party;
- Breaches of confidentiality through unauthorized inclusion of my husband on strategy communications, despite separate representation;
- Ongoing conflict of interest arising from Mr. Gomez's simultaneous representation of my husband and me in separate legal matters involving the same plaintiff;

- Misleading statements to the Bar and selective production of emails that omitted written objections I made to the strategic decisions now in question.

These acts violated **Florida Bar Rules 4-1.1, 4-1.2, 4-1.3, 4-1.6, 4-1.7, 4-1.9, and 4-8.4(c)**. They resulted in procedural and evidentiary harm during active federal litigation and contributed to a final judgment against me without full presentation of my defenses. This was not harmless error—it was structural prejudice that deprived me of a fair trial.

I respectfully ask the Bar to examine not only the specific ethical violations outlined here, but whether Mr. Gomez remains fit to represent vulnerable clients in complex civil litigation. Attached are verified declarations, invoices, email correspondence, and other exhibits supporting these claims. These were not isolated mistakes or issues of judgment—they reflect a sustained pattern of strategic misrepresentation and ethical disregard that materially prejudiced the outcome of federal litigation.

Respectfully submitted,

**Ronda McNae**

Dated: April 29, 2025

## Exhibit List – Response to Florida Bar File No. 2025-70,440 (11K)

| Exhibit | Title / Description | Purpose |
|---------|--------------------|---------|
| A | Email Thread: Duress Defense Objection (Sept. 12, 2024) | Shows repeated objections to withdrawing the duress defense; contradicts Gomez's representation that the defense was dropped voluntarily. |
| B | Declarations of Ronda McNae and Will McNae | Sworn statements documenting Gomez's pressure to drop the duress defense and failure to prepare the case. |
| C | Email from Gomez Confirming Representation of Will McNae | Proves conflict of interest; Gomez simultaneously represented both spouses in related but distinct matters. |
| D | Email: Gomez Notifies ARAG Representation Agreement | Confirms start of representation and timeline inconsistencies with billing and case strategy. |
| E | Emails Requesting Billing Information from Gomez | Demonstrates refusal to provide billing statements directly; raises transparency issues. |
| F | Letter to ARAG Requesting Invoice | Documents efforts to obtain accurate billing records due to Gomez's non-cooperation. |
| G | ARAG Billing Invoices for Ronda McNae | Supports claims about billing irregularities, limited time spent, and potential overbilling. |
| H | Transcript Cost Summary + Receipts (Over $4,000) | Verifies out-of-pocket costs incurred due to Gomez's failure to file expert materials. |
| I | Federal Court Docket Entries DE 292 & DE 295 | Confirms the court struck pro se expert filings due to untimely submission; supports procedural prejudice. |
| J | Email Showing Disclosure of Confidential Materials to Keisha Hall | Demonstrates unauthorized transfer of privileged materials to a third party. |
| K | Joint Communication with Will McNae | Illustrates improper inclusion of non-client in confidential legal strategy without joint representation agreement. |
| L | March 14, 2025 Verified Complaint | Provides evidence that initial Bar complaint was verified, countering Gomez's claim of non-verification. |
| M | Time and Billing Discrepancy Summary (Filed in Federal Court) | Detailed analysis of ineffective representation, failure to file motions, billing gaps, and resulting harm. |
| N | Counseling Notes/Records from Treating Therapist Sarah Dellinger | Licensed therapist's notes documenting trauma responses (gagging, vomiting, panic) tied to Mr. Gomez's conduct during representation. |

# Exhibit A

**Email Thread (Duress Defense Objection)**

**Ronda McNae** <rondamcnae@gmail.com>                                          Wed, Sep 11, 2024, 2:26 PM      ★   ☺   ↰   ⋮
to Will, Richard ▼

Richard,

Can you share what you've started working on so far? I'd like as much time as possible before Friday to review the MSJ and statements to ensure we can make any necessary corrections or consider additional facts on our end. If possible, we should find a way to include Carol Eastman's case, as it strengthens our argument. MF was reported to HR prior to my own report, which further supports SWO's intent to let him go based on "other findings" that MF was fully aware of but failed to disclose. He arranged for the amicable separation/settlement agreement with SWO around the time we were requesting his employment file. With the signing of that agreement, he could claim that certain documents are no longer in his possession and are protected by the settlement.

I want to include as much relevant information as possible in this motion to increase our chances of success. My position remains unchanged on **dropping duress** for trial, regardless of the outcome, but I also don't want to be at odds with you on this issue. I'm not comfortable **dropping duress** for trial and I feel strongly about it.

I'm crossing my fingers that we win on MSJ! That will solve so much :)


**Richard Gomez** <richardgomez@rgpalaw.com>                                    Wed, Sep 11, 2024, 5:46 PM      ★   ☺   ↰   ⋮
to me, Will ▼

We are still researching etc.   The issue will be that even with breaches, MF has not shown damages as a result.  As you could see on their motion, we have to point to evidence in the record.   If there is a slightest dispute, then MSJ will not be granted.   The bulk of the facts on this issue will come from MF depo so that is what you can focus on, making sure we don't miss any valid points. I will likely use Tom Wiper and Yelany portions like we did on the response.   There will be some overlap.   The SWO may be hard to work in but let me see.   Again, if its not black and white, it won't be helpful. Once we file, they respond and then we reply.   **Duress** does is not relevant to the issues in this MSJ.

Richard M. Gomez
LAW OFFICES OF GOMEZ & GOMEZ
4300 Biscayne Blvd.  Suite 305
Miami, FL  33137
O:  (305)825-5506
F:  (305) 825-2699
C:  (305) 336-9175
richardgomez@rgpalaw.com

**From:** Richard Gomez <richardgomez@rgpalaw.com>
**Sent:** Wednesday, September 11, 2024 2:06:53 PM
**To:** Will McNae <willmcnae@gmail.com>; Ronda McNae <rondamcnae@gmail.com>
**Subject:** RE: Fitzgerald Lies told to the McNaes

The MSJ is on the issue of damages – only.    That is, even assuming a breach, he has not established damages that were caused by the breach.    I will take a look at this later today to make sure nothing helps for the MSJ – thanks.

Richard M. Gomez

LAW OFFICES OF GOMEZ & GOMEZ

On Sep 12, 2024, at 7:02 AM, Ronda McNae <rondamcnae@gmail.com> wrote:

I'm a bit lost on what's going on. I was trying to focus on damages while mentioning duress. To be clear, I do not consent to dropping my affirmative defense. You have said all along we would use it for MSJ which I was in agreement with.

Re: Fltzgerald v. Ronda Mcnae 

**Ronda McNae** <rondamcnae@gmail.com>                                    Thu, Sep 12, 2024, 6:05 PM   ☆   ☺   ↩   ⋮
to Richard, Will ▾

Pleaseeee email me a time frame. You're asking to speak last minute running around with four
kids, basketball practice, and football practice. I do not know how anyone juggles 4+ kids

-Ronda

Dear Richard,

    I'm following up on our recent discussions regarding the strategy for our motion for
summary judgment (MSJ) and my concerns about the duress defense. This topic is extremely
important to me emotionally as it is the difference between getting my voice back or having to live
life under this NDA. I'm feeling like I'm somehow losing my chance at Duress. I've outlined my
thoughts below.

    As you're aware, my main goal from the start has been to invalidate the contract on the
basis of duress, given the supporting evidence, such as my counseling records, PTSD diagnosis,
and the economic pressure I endured. *I understand and appreciate your strategy to focus the MSJ
on damages.* I discussed this approach with the counsel I'm retaining for the lawsuit in California
against Fitzgerald, though that case is currently paused due to our transition from two kids to four.
Additionally, I have some concerns with the lead attorney there and would prefer to move forward
with representation from Gloria Allred's firm. That aside, I want to ensure that we are preserving
the duress defense for trial and that my right to use it is not being waived.

    On our last Zoom call, you mentioned "your decision needs to match my decision... to drop
duress" in reference to trial. While I suggested we focus on the MSJ first, I also told you I would
consider your perspective. However, you indicated that you still needed my help to gather relevant
documents to support the duress defense. I want to be certain that the duress defense is not
dropped or waived prematurely.

    Furthermore, I'm aware that you've had several conversations with Stephanie prior to our
call on September 9th, and some of the points you raised were strikingly similar to things I've
heard from her before. However, Stephanie was not present at key depositions and has not
reviewed all the relevant documents in my case. This raises concerns about a potential conflict of
interest, especially given that you represented Will in the state case before joining my federal case.
I would appreciate clarification on how these factors might affect your representation and strategy
in my case.

Could you please confirm the following:

1. Preserving the Duress Defense: I do not want to waive my right to use the duress defense at
trial. Can you confirm that the duress defense will be preserved and that we will pursue it at trial to
challenge the validity of the contract?

2. Impact of Summary Judgment: If the MSJ focused on damages is successful, will we still
proceed to trial where I can argue the contract's validity based on duress? Please clarify how a
favorable ruling on the MSJ would impact the trial stage of this case.

Could you please confirm the following:

1. Preserving the Duress Defense: I do not want to waive my right to use the duress defense at
trial. Can you confirm that the duress defense will be preserved and that we will pursue it at trial to
challenge the validity of the contract?

2. Impact of Summary Judgment: If the MSJ focused on damages is successful, will we still
proceed to trial where I can argue the contract's validity based on duress? Please clarify how a
favorable ruling on the MSJ would impact the trial stage of this case.

    I understand that duress is not part of our current MSJ, but it is critical to me that it is fully
argued at trial to achieve my primary goal of invalidating the contract. Please let me know if we
need to discuss this further or if there are any additional steps i should take.

    Thank you for your time and attention to this matter. I look forward to your clarification in
writing (reading may help more than a call)

    Please send me a draft of the motion for MSJ prior to submitting, I'd like to read over.

Sincerely,

Ronda McNae

**From:** Richard Gomez <richardgomez@rgpalaw.com>
**Sent:** Thursday, September 12, 2024 7:32:05 PM
**To:** Ronda McNae <rondamcnae@gmail.com>
**Subject:** FW: Fitzgerald v. Ronda McNae - Summary Judgment Issues

See below.


Richard M. Gomez

LAW OFFICES OF GOMEZ & GOMEZ

---

## Fitzgerald v. Ronda McNae - Summary Judgment Issues   

⟫  Inbox ×

**Richard Gomez** <richardgomez@rgpalaw.com>        Fri, Sep 13, 2024, 6:15 AM   ☆   ☺   ↰   ⋮
to me, Will ▾

Ronda,

I have determined that moving for summary judgment on damages would not be successful and risks damaging
your credibility with the judge on why he should deny Fitzgerald's motion for summary judgment on liability.

In responding to Fitzgerald's motion, we argue that summary judgment is improper because he has not shown
any evidence of actual damages. In Florida, however, a plaintiff can recover "nominal" damages (i.e., $1) for a
breach of contract - even if he/she cannot prove actual damages. While the original strategy was to ask for
summary judgment on the ground that Fitzgerald has no actual damages. However, he could recover nominal
damages, and the court would not be able to grant summary judgment in your favor, as there is a disputed
question of fact as to whether plaintiff would be entitled to nominal damages.   If the jury determines there was
a breach (which, based on the evidence, is likely), nominal damages will be awarded, even if plaintiff does not
prove actual damages.  An award of nominal damages in a breach of contract case would make plaintiff the
prevailing party, and he would be entitled to his attorney fees and costs.   Plaintiff's likely strategy in seeking
summary judgment on liability is to: 1. establish a breach as a matter of law i.e., by having the court grant
summary judgment and 2. Even if plaintiff cannot prove actual damages, plaintiff would still be entitled to
nominal damages. Then the reimbursement of attorney's fees and costs would be awarded.

Asking the court for summary judgment on the lack of actual damages also risks damaging our credibility with
the judge. In responding to Fitzgerald's motion, you raised a compelling argument that these issues concerning
damages should be decided by a jury. In many ways, you would be raising a contradictory argument in our
motion.

I also researched the materiality issue as another approach for a possible basis for summary judgment.   In
your response, under section III., you argued that the plaintiff did not prove materiality and based upon the
failure to do so, the motion should be denied.   I researched whether failing to plead materiality could also serve
as an argument for summary judgment.   However, the case law holds a party is not required to plead
"materiality".   Additionally, the Confidential Settlement Agreement in the last sentence of paragraph no. 16,
states, "Therefore, the McNaes agree and acknowledge that any violation of this section or disclosure of any of
the terms of the Settlement Agreement beyond the exceptions identified above in this section shall constitute a
material breach of this Agreement."   This was a concern from the beginning, and I expect plaintiff will likely
raise this in his reply to your response to the motion for summary judgment, since the agreement provides that
a breach of the confidentiality clause will be deemed material.

By not filing for summary judgment, you are not waiving your decision to pursue a duress argument at trial.
Only the court can dismiss that defense, by either granting Fitzgerald's motion for summary judgment before
trial or ruling on the motion during the trial on a motion for directed verdict.

Let me know if you have any questions.   I will be available up to 11:30 ECT.

Richard M. Gomez
LAW OFFICES OF GOMEZ & GOMEZ
4300 Biscayne Blvd.  Suite 305
Miami, FL  33137
O: (305)825-5506
F: (305)825-2699
C: (305) 336-9175
richardgomez@rgpalaw.com

## Re: Fitzgerald v. Ronda McNae – Summary Judgment Issues  ⊃

**Ronda McNae** <rondamcnae@gmail.com>          Thu, Sep 12, 2024, 8:00 PM     ☆  ☺  ↩  ⋮
to Richard ▾

I 💯 agree!!! Thank you for explaining this in writing! My brain can handle it much better!! Thank you thank you thank you!

**Email from Ronda McNae to Richard Gomez – 8:00 PM**
- You replied:

"I 💯 agree!!! Thank you for explaining this in writing! My brain can handle it much better!! Thank you thank you thank you!"
(Note: this response appears to express appreciation for the written explanation but does not contradict your earlier insistence on preserving duress.)

**Key Points for Legal Use**
1. You clearly stated on **September 12 at 7:02 AM**:

"To be clear, I do not consent to dropping my affirmative defense."
2. Richard confirmed on **September 12 at 7:32 PM**:

"By not filing for summary judgment, you are not waiving your decision to pursue a duress argument at trial. Only the court can dismiss that defense…"
3. You again emphasized:

"I do not want to waive my right to use the duress defense at trial."
4. Richard's statement that "duress… does not belong in our motion for summary judgment" reflects a misunderstanding of how enforceability of the contract (which affects damages) should have been framed.

# Exhibit B

Declarations from Ronda and Will McNae (Submitted in Federal Litigation)
Sworn statement corroborating Gomez's pressure and your continued objections

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

                Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

                Defendants.

_____/

## DECLARATION OF RONDA MCNAE IN SUPPORT OF THE TELEPHONIC PHONE CONVERSATION WITH PRIOR COUNSEL RICHARD GOMEZ

Regarding September 4, 2024 Call with Mr. Gomez

I, **Ronda McNae**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I, Ronda McNae, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

2. Ineffective Representation by Mr. Gomez and Prejudice to My Case: On September 4, 2024, during a call with Mr. Gomez, his actions and advice demonstrated ineffective representation that irreparably prejudiced my ability to defend this case.

3. I am the Defendant in the above-captioned matter and submit this declaration in support of my Motion to Reopen Discovery on a Limited Basis.

4. On September 4, 2024, at approximately 4:00 PM, I participated in a phone call with my prior counsel, Richard Gomez, and William McNae. Mr. Gomez began the conversation by stating, "I need to talk to the both of you at the same time. Ronda, I want you to think about this and sleep on it." He then stated, "Your decision needs to match my decision … to drop duress."

5. Mr. Gomez made these statements without reading through my prior counseling reports, my treating therapist's deposition, or my medical records, all of which are critical to understanding the coercion I experienced and its impact on my decision-making.

6. Mr. Gomez provided no legal or strategic justification for dropping my duress defense, which is critical to addressing the coercion I experienced and its impact on my decision-making.

7. Mr. Gomez's statement pressured me to abandon a valid and essential defense, causing substantial prejudice to my ability to present a full and fair case.

8. I repeatedly requested billing invoices from Mr. Gomez to understand the work performed on my case, but he refused to provide them. I ultimately obtained these invoices only after contacting ARAG and submitting a formal request.

9. Based on the invoices I received, Mr. Gomez billed a total of **62.9 hours** for work performed on my case from February 2024, when he was retained, until his withdrawal in September 2024. This equates to fewer than 8 hours per month on average, despite the complexity of my case and the fact that trial was set for November 2024.

10. Mr. Gomez did not order critical deposition transcripts, leaving me to obtain and expedite them at significant cost after his withdrawal. This delay disrupted my ability to use this material for pretrial preparation and motions.

11. Mr. Gomez failed to file a Motion for Summary Judgment on my behalf, despite billing time on June 21, 2024, for "review and strategy" related to summary judgment. We had numerous conversations to prepare for my MSJ. This failure denied me the opportunity to seek dismissal of the claims against me or narrow issues for trial.

12. According to my Verizon phone records, I spent **9 hours and 3 minutes** on phone calls with Mr. Gomez between March and September 2024. His invoices, however, reflect limited billing for phone conferences, creating a discrepancy in his recordkeeping.

13. During July 2024, a critical month for trial preparation, Mr. Gomez billed only **0.6 hours**, primarily for minor administrative tasks. His lack of engagement during this time significantly impacted my ability to prepare for trial.

14. Mr. Gomez's overall lack of preparation and failure to perform necessary tasks, such as obtaining deposition transcripts, pursuing critical discovery, and filing essential motions, has caused irreparable harm to my ability to present a full and fair defense.

15. I have repeatedly requested my complete case file from Mr. Gomez, but he has not provided it to date. This failure has further hindered my ability to rectify the deficiencies created by his ineffective representation.

16. Based on these issues and the harm caused to my case, I respectfully request the Court to reopen discovery on a limited basis to address the significant procedural and evidentiary gaps resulting from Mr. Gomez's representation.

17. I declare under penalty of perjury that the foregoing is true and correct.

18. Dated: December 17, 2024.

By:

**Ronda McNae**

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

           Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

           Defendants.

_____/

**DECLARATION OF WILLIAM MCNAE IN SUPPORT OF DEFENDANT RONDA
MCNAE'S CONVERSATION WITH PRIOR COUNSEL RICHARD GOMEZ**

I, **William McNae**, declare as follows:

1. My name is William McNae. I am over 18 years of age and competent to testify to the
   matters stated herein. I make this declaration based on personal knowledge and
   observation.

2. On September 4, 2024, I participated in a conference call with Richard Gomez, the
   attorney representing my wife, Ronda McNae, in this Federal litigation, and myself in the
   State court litigation which Plaintiff has sued me in for the same legal matters they were
   denied in this Federal litigation.

3. During the call, Mr. Gomez shifted from topics pertinent to my case and informed Ronda that he intended to drop her sole affirmative defense of duress.

4. When Ronda questioned this decision, Mr. Gomez failed to provide a clear explanation or strategic reasoning. He only responded, "*Your decision needs to match my decision, which is to drop duress.*"

5. Mr. Gomez had no apparent knowledge of the testimony of Ronda's expert witnesses, including Dr. James Hopper, Sarah Dellinger, Brock Weedman, and Dr. James Bhaskar. He appeared to disregard the importance of this evidence and did not make the effort to order the deposition transcripts in preparation for trial.

6. Throughout the conversation, Mr. Gomez seemed disengaged and unwilling to consider Ronda's concerns or her preferences for trial strategy.

7. Subsequent to this call, Ronda discovered that Mr. Gomez had billed fewer than 60 hours for his representation of her for a period of roughly six months, raising concerns about the adequacy and diligence of his preparation.

8. Shortly after Ronda confronted Mr. Gomez about her dissatisfaction with his approach and his lack of preparation, he withdrew from representing her.

9. Based on these observations, I believe Mr. Gomez's actions significantly impaired Ronda's ability to adequately prepare her defense, leaving her without the necessary legal support and undermining her legal strategy.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 6, 2024 in Kirkland, WA.

**Signature:** _____

**Name:** Will McNae

# Exhibit C

Email from Gomez Confirming Representation of Will McNae

Establishes that Mr. Gomez was simultaneously advising or representing my husband in a separate matter involving the same opposing party, Michael Fitzgerald, thereby creating a direct conflict of interest without a waiver or joint representation agreement.

## GOMEZ & GOMEZ

4300 Biscayne Blvd. – Suite 305

Miami, Florida  33137

Richard M. Gomez
richardgomez@rgpalaw.com

Tel: (305) 825-5506
Fax: (305) 825-2699

**VIA EMAIL: <u>ann.cosimano@ARAGlegal.com</u>**

February 12, 2024

Ann Cosimano, General Counsel
ARAG Legal Insurance
500 Grand Avenue, Suite 100
Des Moines, IA 50309
800-888-4184 x 288

Re:   <u>Fritzgerald vs. McNae</u>
Case No.

ARAG Id No.:
Named Insured:
Coverage Case No:
Covered Insured:
Our File No.:

**1:22-c-v-22171-JEM – United States District Court
Southern District of Florida**
**177202672170**
**William McNae**
**3266236**
**Ronda McNae**
**5688**

Dear Ms. Cosimano:

Enclosed please find the executed Amendment to ARAG Attorney Agreement regarding the above referenced matter.  Please return an executed copy for my file.

Please make a note of my cell phone number which is the best way to reach me should you have any questions at any time during our representation of Ms. McNae in this matter 305-336-9175.

Very truly yours,

/s/ Richard M. Gomez

RICHARD M. GOMEZ
RMG/lb
Enclosure

**Re: William's state case**

1 message

**Richard Gomez** <richardgomez@rgpalaw.com>                                    Mon, Feb 12, 2024 at 6:59 PM
To: Will McNae <willmcnae@gmail.com>

Don't worry it.   The judge will likey give at least 10 days.   If I come on board we will wait until the hearing or the day before and then I can explain I was just hired etc.

Richard M. Gomez
LAW OFFICES OF GOMEZ & GOMEZ
4300 Biscayne Blvd.  Suite 305
Miami, FL  33137
O: (305)825-5506
F: (305) 825-2699
C: (305) 336-9175
richardgomez@rgpalaw.com

 Gmail                                                      **Will McNae <willmcnae@gmail.com>**

**Fitzgerald v. McNae**

1 message

**Richard Gomez** <richardgomez@rgpalaw.com>                                    Wed, Feb 21, 2024 at 7:21 PM
To: Will McNae <willmcnae@gmail.com>

Please review and sign.    Hopefully, ARAG will get back to you via your counsel in the next couple of days.

Richard M. Gomez

LAW OFFICES OF GOMEZ & GOMEZ

4300 Biscayne Blvd. - Suite 305

Miami, FL 33137

O: 305-825-5506

F: 305-825-2699

C: 305-336-9175

Richardgomez@rgpalaw.com

📄 **Client 2-21-24 - Engagement letter and Billing Policy.pdf**
168K

LAW OFFICES OF

## GOMEZ & GOMEZ

4300 Biscayne Blvd. – Suite 305

Miami, Florida 33137

Richard M. Gomez
richardgomez@rgpalaw.com

Tel: (305) 825-5506
Fax: (305) 825-2699

**VIA EMAIL: willmcnae@gmail.com**

February 21, 2024

Mr. William McNae
504 11th Place
Kirkland, WA 98033

Re: **MICHAEL J. FITZGERALD v. WILLIAM McNAE**
**CASE NO. 2023-025855-CA-01 – MIAMI-DADE CIRCUIT COURT**
**OUR FILE NO. 5695**

Dear Mr. McNae:

We are pleased that you have selected us to represent you regarding the above-mentioned matter.

We bill on an hourly basis in accordance with the terms described in the attached Billing Policy Statement. The hourly rate is $450.00 per hour. In order to commence, we require a retainer of $1,500.00.

Please review the above and the attached Billing Policy Statement. It and this letter represent our entire agreement. If approved, a copy of both this engagement letter and the Billing Policy Statement should be signed and returned to us.

Very truly yours,

/s/ Richard M. Gomez

RICHARD M. GOMEZ

RMG/s
Enclosure as noted

ACCEPTED & AGREED TO BY: _____    2/21/24
                          WILLIAM McNAE            /Dated

# Exhibit D

When Mr. Gomez informed me that he officially signed an

agreement with ARAG Legal to represent me (Ms. McNae in Florida Federal Action)

Unsure why I received this a month later

## ARAG Agreement with Richard Gomez  ›  Inbox ×

**Richard Gomez** <richardgomez@rgpalaw.com>      Fri, Mar 22, 2024, 2:30 PM
to Will, me  ▾



Richard M. Gomez
LAW OFFICES OF GOMEZ & GOMEZ
4300 Biscayne Blvd. - Suite 305
Miami, FL 33137
O: 305-825-5506
F:  305-825-2699
C:  305-336-9175
Richardgomez@rgpalaw.com

**One attachment** • Scanned by Gmail ⓘ



ARAG - Fully Exe...

# Exhibit E

Two emails requesting billing from Mr. Gomez for work done and billed
for the Federal Case

Re: Fitzgerald v. Ronda McNae

**Ronda McNae** <peose.mcnae@gmail.com>                                                      Thu, Mar 13, 8:46 PM
to Richard, Ronda, bcc: Will, bcc: Heather

Richard,

I am following up on my repeated requests for my full case file, including invoices, attorney work product, third-party communications, and records of interactions with opposing counsel and witnesses. Despite multiple requests, you have failed to provide essential case materials necessary for me to continue my defense effectively.

While I am still working to understand certain legal concepts, you did not take the time to educate me or ensure that I was informed about key strategic decisions. Instead, I was expected to simply agree with your approach, which restricted my ability to participate meaningfully in my own defense and compromised my due process rights.

My prior counsel, Alaina, went above and beyond to mitigate the prejudice caused by ARAG terminating my legal representation in 2023. However, the position you left me in—without case strategy, drafts, legal research, recent filings, third-party communications, witness contacts, or updates on trial preparation—was akin to being abandoned without the necessary tools to proceed. Unlike you, she has continued to provide all relevant materials upon request, demonstrating the standard of diligence and ethical responsibility that I should have received from you.

While your total recorded hours between February and October 2024 amount to only **60 hours**, it was still your duty to return all work product and communications related to my case. As you are aware, under professional ethics rules, a client's file belongs to them, and failure to provide it upon request is unacceptable—especially when the materials withheld extend beyond the filings listed on the docket.

At this stage, I require immediate confirmation of whether you still have any case materials in your possession. If so, I expect them to be provided without further delay. If you no longer have them, I request a full explanation as to why and under what authority they were withheld.

Additionally, in your email, you stated: *"If you believe there are any other portions of the file which are confidential, please advise."* I am advising you now that there are **2,327 confidential documents** that should never have been shared but have been.

I'm at a loss as to **how** this breach occurred, as you improperly shared my case file with an attorney with whom I do not have attorney-client privilege. This is a **serious violation of confidentiality and privilege,** particularly since the disclosed materials included legal strategy, medical records, and privileged communications.

Your handling of this matter among other things, has **significantly obstructed** my ability to litigate my case, and I cannot allow this issue to remain unresolved. At this stage, I do not see any benefit in continued back-and-forth communication. If you have any remaining materials related to my case, provide them **immediately.** Otherwise, I will explore all available avenues to protect my rights and ensure accountability.

Regards.

Ronda McNae

---

Ronda McNae

# Billing FBR 4-1.8   Inbox ×

**Ronda McNae** <rondamcnae@gmail.com>                        Tue, Oct 1, 2024, 8:32 AM
to Richard, Will, me

Dear Richard,

After doing some research on my rights, I've come across several legal precedents, including **Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP**, which support my right to access my complete case file, including billing invoices, regardless of third-party payments.

Additionally, Florida Bar Rule 4-1.8(f) and other professional responsibility rules affirm my right to transparency in fees and billing.

I would appreciate it if you could provide copies of all relevant billing invoices at your earliest convenience.

Sincerely,

Ronda McNae

# Exhibit F

Letter I wrote to ARAG legal insurance requesting an invoice since Mr. Gomez refused to provide one

Subject: Request for Billing Invoices and Transparency

Dear ARAG Legal Insurance,

I am writing to formally request copies of all billing invoices related to the legal services rendered by your office and covered by my legal insurance, ARAG, in connection with my Florida case. Despite my repeated requests to all counsel involved, I continue to receive evasive responses and have not been provided with the necessary documents.

Yesterday afternoon, ARAG informed Will McNae that three letters were mailed to our home at 504 11th Pl, Kirkland, WA 98033, reflecting the hours billed for work done by Richard Gomez in my Florida Federal Case. We were surprised to learn this news as we have not received these documents, nor have they been made available for our review. Please send those three (3) letters to our home mailing address and email a digital copy since our request is urgent in nature. Email addresses below.

As both a client and a policyholder, I firmly believe I am entitled to receive these records.

**Legal and Ethical Basis for Request:**

1. **Insurance Transparency Requirements.** Insurance companies, including legal insurers such as ARAG, are required to provide transparency regarding the services they pay for on behalf of policyholders. This is part of the contractual relationship between the insurer and the insured. Many insurance policies include provisions requiring the insurer to issue Explanation of Benefits (EOBs) or similar documents that outline what has been covered, which I have not yet received

2. **Attorney's Ethical Duties:**

   - Under the **American Bar Association (ABA) Model Rules of Professional Conduct**, attorneys are required to keep clients reasonably informed about their case, including billing practices. Specifically, **Rule 1.4** mandates that attorneys communicate with their clients about all relevant matters, including fees, and **Rule 1.5** requires transparency in fee arrangements. As your client, I have the right to understand how fees are charged and what legal services were billed to ARAG on my behalf.

   - **Florida Bar Rule 4-1.8(f)** also provides that attorneys can accept third-party payments only if (1) the client consents, (2) the client-lawyer relationship remains independent, and (3) confidentiality is maintained. Additionally, **Florida Bar Ethics Opinion 97-1** reiterates that the primary duty of the attorney remains with the insured client, not the third-party insurer, and as such, I retain the right to review invoices related to my case, even if paid by ARAG.

3. **Federal Rules of Civil Procedure (FRCP) and Case File Ownership:**

   - Under the **Federal Rules of Civil Procedure (FRCP)**, clients have the right to access their case files, including documents relevant to their case, such as billing records. **FRCP 26** allows for the discovery of any relevant information, and billing invoices fall within this scope, particularly when disputes over fees arise.

4. **Case Law Supporting Clients' Rights to Their File**:

- The courts have repeatedly affirmed that clients have the right to access their complete case file, including billing records. For instance, **Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP** (91 N.Y.2d 30, 689 N.E.2d 879, 1997) established that clients are entitled to their entire case file, even if they have not fully paid for the services. Additionally, **In Re ANR Advance Transp. Co.** (302 B.R. 607, E.D. Wis. 2003) reaffirmed that billing invoices are part of the case file, and clients have the right to obtain them.

**Policyholder Rights:**

As a policyholder, I also retain the right to know what my legal insurance has covered. Many state regulations and consumer protection laws mandate that insurance companies provide transparency regarding the services they have paid for. Specifically:

- **Explanation of Benefits (EOB)**: Insurers are obligated to provide a detailed breakdown of what they have paid, the portion I may be responsible for, and any claims processed.

- **Right to Information**: If I request information about what services were covered under my policy, the insurance company is typically required to provide it.

**Conclusion:**

The combination of the **ABA Model Rules**, **Federal Rules of Civil Procedure**, **Florida Bar Rules**, case law, and my rights as a policyholder strongly support my request for transparency in billing. Therefore, I am requesting that you provide me with copies of all billing invoices related to my case and covered by ARAG.

Considering the circumstances surrounding Richard Gomez's late-stage withdrawal, after we resolved the conflict ourselves, things aren't adding up. At this point, I am not willing to waive my attorney-client privilege to disclose these concerning issues. However, I would appreciate an **Explanation of Benefits** and a detailed account of what has been invoiced in respect to my case, including hours billed and work rendered.

Sincerely,

Ronda and Will McNae

rondamcnae@gmail.com
willmcnae@gmail.com

504 11th pl
Kirkland, WA 98033

# Exhibit G

Billing invoices from ARAG Legal Insurance which proved my concerns

Invoice # 1835 - 07/29/2024

## Law Offices of Gomez & Gomez — INVOICE

4300 Biscayne Blvd. Suite 305
Miami, Fl. 33137
Phone: 3058255506
Email: richardgomez@rgpalaw.com

Invoice # 1835
Date: 07/29/2024
Due On: 08/28/2024

Ronda D. McNae
504 11th Place
Kirkland, Washington 98033

**Michael J. Fitzgerald and Yaleny De Varona v. Ronda McNae and William McNae Case No. 22-CV-22171-JEM - Southern District of Florida ARAG - Referral-05688**

**Michael J. Fitzgerald and Yaleny De Varona v. Ronda McNae and William McNae Case No. 22-CV-22171-JEM - Southern District of Florida ARAG - Referral Certificate No. C-10377 Member ID: 177202672170**

| Type | Date | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|
| Service | 01/11/2024 | Telephone conference with client RE: contact with Alaina Fotiu-Wojtowicz RE: overview of case; address pending issues client, review of court docket; consultation with potential co-counsel | 0.50 | $450.00 | $225.00 |
| Service | 01/11/2024 | Subject: Fwd: Fitzgerald/McNae: RE: Request for Access to Attorney Eyes Only Documents | 0.10 | $450.00 | $45.00 |
| Service | 05/23/2024 | Preparation of notice of hearing on emergency motion to vacate order and emergency motion for extension of time setting same for 5/28/24 per Judge's instructions | 0.20 | $450.00 | $90.00 |
| Service | 05/29/2024 | Telephone conference with Ronda McNae regarding contact with Carol Eastman, litigant against SoftwareOne with potential useful defense evidence. | 0.50 | $450.00 | $225.00 |
| Service | 06/03/2024 | Review of discovery (primarily depositions) for synopsis of each witness deposed to pertain relevancy as to remaining issues to be tried; review of select emails in conjunction. (This was conducted with the client via conference call to streamline) | 2.70 | $450.00 | $1,215.00 |
| Service | 06/04/2024 | Review and outline Michael Fitzgerald deposition transcript dated 3/9/23 (pp. 1-107). | 2.00 | $450.00 | $900.00 |
| Service | 06/05/2024 | Additional review/outline of plaintiff's deposition transcript dated 3/3/23 (pp 102 - 200), cursory review of direct by S. Casey | 2.80 | $450.00 | $1,260.00 |

Invoice # 1835 - 07/29/2024

| Service | 06/17/2024 | Review and outline deposition transcript of Sheri Fiske (plaintiff's damage expert) | 2.50 | $450.00 | $1,125.00 |
|---|---|---|---|---|---|
| Service | 06/19/2024 | Review and outline deposition of Ronda McNae pp. 1-309 (look 10 hrs in conjunction with review of relevant pleadings; courtesy adjustment) | 8.50 | $450.00 | $3,825.00 |
| Service | 06/20/2024 | Review of the documents from prior counsel - for relevancy as to remaining claims/issues to be tried. | 3.00 | $450.00 | $1,350.00 |
| Service | 06/21/2024 | Additional review and outline of Ronda McNae deposition pages 435-452 | 0.60 | $450.00 | $270.00 |
| Service | 06/21/2024 | Review of amended complaint, affirmative defenses for overview as to anticipated motion for summary judgment by plaintiff; determination of strategy for filing summary judgment on behalf of defendant; initial review of proposed stipulated facts provided by plaintiff's counsel | 2.00 | $450.00 | $900.00 |
| Service | 06/21/2024 | Telephone conference with client regarding case facts, review of opposing counsel's proposed stipulated facts, discussion regarding issues to be tried and likely filing of motion for extension of pretrial deadlines and continuance of trial date due to pleadings not being closed | 1.20 | $450.00 | $540.00 |
| Service | 06/24/2024 | Review of file as to Software One subpoena compliance issue; initial reports of plaintiff's expert witnesses/expert witness disclosures and staff of review of court docket for prior relevant filings | 6.00 | $450.00 | $2,700.00 |
| Service | 06/25/2024 | Telephone conference with Ronda McNae and Will McNae, review of Carol Eastman v. SoftwareONE lawsuit issues, SoftwareONE representations and strategy to obtain any beneficial documents from attorney Anthony Trujillo/CA attorney; initial review of social media spreadsheet; discussion as to case not at issue | 2.40 | $450.00 | $1,080.00 |
| Service | 06/26/2024 | Meet and confer emails with opposing counsel to address requested deadline calculations (email 6/26 - 6/26) | 0.30 | $450.00 | $135.00 |
| Service | 06/27/2024 | Prepare and file motion for extension of pretrial deadlines and continuance of the trial date due to case not being at issue (pgs 1 - 2 edited per opposing counsel requested modifications to finalize (6/25 - 6/26) | 1.30 | $450.00 | $585.00 |
| Service | 06/27/2024 | Prepare proposed order on motion for extension of pretrial deadlines and continuance of trial, submission to Judge Martinez | 0.40 | $450.00 | $180.00 |
| Service | 06/27/2024 | Preparation of email to client regarding case update/ motion filed pending ruling | 0.10 | $0.00 | $0.00 |
| Service | 06/28/2024 | Receipt and review of Order granting unopposed motion for extension of certain pretrial deadlines and | 0.30 | $450.00 | $135.00 |

Invoice # 1835 - 07/29/2024

| | | continuance of trial and reday/calendar new dates. | | | |
|---|---|---|---|---|---|
| Service | 06/29/2024 | Receipt and review of email from client dated 6/26/24and response to same regarding opposing counsel request for stipulated facts, timing in light of pleadings still being open and possible disclosure of additional investigative work. | 0.10 | $450.00 | $45.00 |
| Service | 06/29/2024 | Prepare case update report to Ann Corsmano | 0.30 | $450.00 | $135.00 |
| Service | 06/29/2024 | Memo to file RE: 6/25/24 strategy conference with clients; TO DO's. | 0.30 | $0.00 | $0.00 |
| Service | 07/01/2024 | Email to client RE: order of referral to magistrate and observations as to arguments by OC as to discovery in state court action for future reference/use. | 0.10 | $450.00 | $45.00 |
| Service | 07/01/2024 | Receipt and review of Order (paperless) issued by Judge Martinez referred to Magistrate regarding motion for attorneys fees and costs; review motion to bifurcate and motion for extension, response to same and reply to same; relation to State Court case as argued by Plaintiff; email to clients noting same | 1.30 | $450.00 | $585.00 |
| Service | 07/02/2024 | Telephone conference with Meredith Cussin regarding initial meet and confer regarding plaintiff's proposed joint stipulation of facts. | 0.30 | $450.00 | $135.00 |
| Service | 07/21/2024 | Multiple emails from OC RE: meet and confer on Joint Statement of Undisputed Facts; review of docket and order DE 61 dated 6/12/23, response email to OC with position. (7/8 - 7/21/24) | 0.60 | $450.00 | $270.00 |
| Service | 07/23/2024 | Review local rules, and prepare email to OC RE: meet and confer request on Joint Statement of Undisputed Facts | 0.30 | $450.00 | $135.00 |
| Service | 07/26/2024 | Receipt and review of Iowa Court Order - custody of nieces/nephew to Will and Ronda | 0.10 | $0.00 | $0.00 |

| | | | | Subtotal | $18,135.00 |
|---|---|---|---|---|---|
| | | | | Total | $18,135.00 |

### Detailed Statement of Account

**Current Invoice**

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 1835 | 08/28/2024 | $18,135.00 | $0.00 | $18,135.00 |

## Law Offices of Gomez & Gomez

**iNVOICE**

4300 Biscayne Blvd. Suite 305
Miami, FL 33137
Phone: 3058255506
Email: richardgomez@rgpalaw.com

Invoice # 1772
Date: 05/18/2024
Due On: 06/17/2024

Ronda D. McNae
504 11th Place
Kirkland, Washington 98033

**Michael J. Fitzgerald and Yaleny De Varona v. Ronda McNae and William McNae Case No. 22-CV-22171-JEM - Southern District of Florida ARAG - Referral-05688**

**Michael J. Fitzgerald and Yaleny De Varona v. Ronda McNae and William McNae Case No. 22-CV-22171-JEM - Southern District of Florida ARAG - Referral Certificate No. C-10377 Member ID: 177202672170**

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Service | 02/16/2024 | Zoom meeting with client William McNae and Ronda McNae RE: possible representation in case | 2.30 | $450.00 | $1,035.00 |
| Service | 02/17/2024 | Initial review of court docket for overview. | 3.00 | $450.00 | $1,350.00 |
| Service | 02/17/2024 | Initial review of file documents provided by prior counsel via USB. | 3.50 | $450.00 | $1,575.00 |
| Service | 02/18/2024 | Zoom meeting with client RE: discussion of case facts, strategy and overview. | 1.50 | $450.00 | $675.00 |
| Service | 02/18/2024 | Additional review of file documents provided by prior counsel via USB; t/c with client. | 1.00 | $450.00 | $450.00 |
| Service | 02/28/2024 | Telephone conference with client regarding pending motion for sanctions against opposing counsel and plaintiff, response in opposition, strategy moving forward. | 0.50 | $450.00 | $225.00 |
| Service | 03/07/2024 | Receipt and review of email from/to client RE: response to Motion for Sanctions and timing of formal Notice of Appearance. | 0.10 | $450.00 | $45.00 |
| Service | 03/13/2024 | Telephone conference with client and Stephanie Casey regarding overall case issues and strategy for possible global settlement | 1.00 | $450.00 | $450.00 |
| Service | 03/15/2024 | Telephone conference with Stephanie Cassey RE: over all facts relevant to discuss resolution of case as to | 0.80 | $450.00 | $360.00 |

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| | | both Will and Ronda McNae; issues as to case not at issue. | | | |
| Service | 04/02/2024 | Email from client RE: NOA timing and strategy. | 0.10 | $450.00 | $45.00 |
| Service | 04/04/2024 | Preparation of Notice of Appearance. | 0.10 | $450.00 | $45.00 |
| Service | 04/04/2024 | Prepared and filed Supplemental Certificate of Interested Persons and Corporate Disclosure Statement. | 0.30 | $450.00 | $135.00 |
| Service | 04/08/2024 | Meet and confer emails with OC for 4/8/24 Motion to Continue/Extend Deadlines | 0.30 | $450.00 | $135.00 |
| Service | 04/08/2024 | Prepare and file Motion for Extension of Pretrial Deadlines and Continuance of the Trial Date. | 1.50 | $450.00 | $675.00 |
| Service | 04/08/2024 | Prepare proposed order on Motion for Extension of Pretrial Deadlines and Continuance of Trial Date (option 1). | 0.40 | $450.00 | $180.00 |
| Service | 04/08/2024 | Prepare proposed order on Motion for Extension of Pretrial Deadlines and Continuance of Trial Date (option 2). | 0.20 | $450.00 | $90.00 |
| Service | 04/08/2024 | Receipt and review of Order granting motion to strike. | 0.10 | $450.00 | $45.00 |
| Service | 04/09/2024 | Receipt and review Order on motion to continue and extend pretrial deadlines, resetting trial and pretrial deadlines, new trial date 9/9/24, diary all new due dates. | 0.30 | $450.00 | $135.00 |
| Service | 04/10/2024 | Email to/from client RE: Motion for Extension on Pretrial Deadlines and Continuance. | 0.10 | $450.00 | $45.00 |
| Service | 04/18/2024 | Email to/from client RE: settlement issues as related to Will McNae and not encompassing Ronda McNae. | 0.20 | $450.00 | $90.00 |
| Service | 04/29/2024 | Telephone conference with client RE: overall case strategy; contact with CA counsel and potential claim/ action in CA and impact on Federal case. | 0.50 | $450.00 | $225.00 |
| Service | 05/06/2024 | Receipt and review of plaintiff's notice of 90 day expiring to court regarding motion to dismiss counterclaim. | 0.10 | $450.00 | $45.00 |

| | | | | Subtotal | $8,055.00 |
|--|--|--|--|----------|-----------|
| | | | | Total | $8,055.00 |

# Exhibit H

Summary of Expert Transcript Costs that I was forced to Expedite

Invoices reflecting expert deposition transcript costs totaling approximately $4,000 were paid out-of-pocket by Will McNae. At the time of payment, Mr. Gomez was representing Will McNae in a related Florida state case and later undertook representation of Ronda McNae in the federal action involving the same opposing party.

No written conflict waiver was ever executed. Although Ms. McNae specifically inquired whether a waiver was necessary, Mr. Gomez advised that it was not required.

| Date | Payment Recipient | Amount | Reason |
|------|-------------------|--------|--------|
| 16-Oct-24 | LAKESIDE REPORTING SF 833-3653376 WA | $ 34 | Deposition Transcript |
| 16-Oct-24 | LAKESIDE REPORTING 833-3653376 WA | $ 974 | Deposition Transcript |
| 8-Oct-24 | ESQUIRE SOLUTIONS 800-2113376 GA | $ 1,780 | Deposition Transcript |
| 4-Oct-24 | LAKESIDE REPORTING SF 833-3653376 WA | $ 42 | Deposition Transcript |
| 4-Oct-24 | LAKESIDE REPORTING 833-3653376 WA | $ 1,200 | Deposition Transcript |
|  |  | $ 4,030 |  |

| Date | Payment Recipient | Amount | Reason |
|------|-------------------|--------|--------|
| 25-Mar-24 | Gomez Gomez Miami FL | $ 6,000 | W. McNae legal fees prior to ARAG Agreement |
| 6-Mar-24 | Gomez Gomez Miami FL | $ 2,000 | W. McNae legal fees prior to ARAG Agreement |
| 22-Feb-24 | Gomez Gomez Miami FL | $ 1,500 | W. McNae legal fees prior to ARAG Agreement |
|  |  | $ 9,500 |  |

# Exhibit I

**DE 292 and DE 295**

Docket entries showing my pro se filing of expert transcripts were stricken although I did everything I could to make sure they were included. My efforts failed.

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 22-22171-CIV-MARTINEZ**

MICHAEL FITZGERALD
and YELANY DE VARONA,

     Plaintiffs,

v.

RONDA MCNAE and WILLIAM MCNAE,

     Defendants.

_____/

## OMNIBUS ORDER DENYING DEFENDANT'S MOTIONS TO SUPPLEMENT RECORD TO INCLUDE DEPOSITION TRANSCRIPTS

**THIS CAUSE** came before this Court upon *pro se* Defendant Ronda McNae's Motion for Leave to Supplement the Record to Include Deposition of Treating Therapist Sarah Dellinger, (ECF No. 224); Motion for Leave to Supplement the Record to Include Deposition of Treating Therapist Dr. Brock Weedman PsyD, (ECF No. 230); and Motion for Leave to Supplement the Record to Include Trauma Expert Deposition of Dr. Jim Hopper PsyD, (ECF No. 242) (collectively "Motions to Supplement Record"). This Court has reviewed the Motions to Supplement Record; Plaintiff Michael J. Fitzgerald's Responses, (ECF Nos. 232, 233, 246); Defendant's Replies, (ECF Nos. 235, 253); pertinent portions of the record, and applicable law and is otherwise fully advised in the premises. Accordingly, for the reasons set forth herein, the Motions to Supplement Record are **DENIED**.

Defendant McNae seeks to "supplement the record" with deposition transcripts of her treating therapists and trauma expert. Although there is no "record" to "supplement," the Court construes these Motions to Supplement the Record as motions in *limine* asking this Court to

include the deposition transcripts as evidence in trial. However, the deadline to submit motions in *limine* was September 23, 2024, per this Court's Order extending certain pretrial deadlines. (ECF No. 168). Moreover, the deposition transcripts would be inadmissible hearsay if Defendant's treating therapists and trauma expert were to testify at trial. *See* Fed. R. Evid. 801(c).

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.    Defendant's Motions to Supplement Record, (ECF Nos. 224, 230, 242), are **DENIED**.

2.    Defendant's Motion to Amend and Correct Certificate of Service, (ECF No. 229), is **DENIED**.

3.    Defendant's Motion to Correct Exhibit, (ECF No. 255), is **DENIED**.

4.    Defendant's Motion for Leave to Amend Motion to Correct and Supplement Exhibit, (ECF No. 259), is **DENIED**.

5.    Defendant's Motion for Leave to File Errata, (ECF No. 260), is **DENIED**.

6.    The Clerk is **DIRECTED** to **RESTRICT** ECF Nos. 224, 230-1, 242, 253, 255, 259.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of February 2025.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record
Ronda McNae, *pro se*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 22-22171-CIV-MARTINEZ**

MICHAEL FITZGERALD
and YELANY DE VARONA,

      Plaintiffs,

v.

RONDA MCNAE and WILLIAM MCNAE,

      Defendants.

_____/

**ORDER DENYING DEFENDANT'S MOTIONS TO SUPPLEMENT RECORD**

    **THIS CAUSE** came before this Court upon Defendant Ronda McNae's *pro se* Motions

for Leave to Supplement the Record, (ECF Nos. 231, 245), (collectively "Motions to Supplement

the Record"). This Court has reviewed the Motions to Supplement Record; Plaintiff Michael J.

Fitzgerald's Responses, (ECF Nos. 234, 248); Defendant's Reply, (ECF No. 252); pertinent

portions of the record, and applicable law and is otherwise fully advised in the premises.

Accordingly, for the reasons set forth herein, the Motions to Supplement the Record are

**DENIED**.

    Defendant McNae seeks to "supplement the record with critical, newly uncovered

evidence deliberately withheld by Plaintiff Michael Fitzgerald and respondent SoftwareONE"

and provide this Court "with access to all relevant facts from *Jane Doe v. SoftwareONE, Inc.*, 85

Cal. App. 5th 98 (Cal. Ct. App. 2022)." (ECF No. 231 at 1). Although there is no "record" to

"supplement," the Court construes these Motions to Supplement the Record as motions in *limine*

asking this Court to include certain evidence in trial. However, the deadline to submit motions in

*limine* was September 23, 2024, per this Court's Order extending certain pretrial deadlines. (ECF No. 168).

Moreover, the Federal Rules of Civil Procedure that Defendant McNae relies on do not support the relief she seeks. Defendant first cites Federal Rule of Civil Procedure 15(d) as authority to support her Motion, however, Rule 15(d) relates to amending and supplementing pleadings, not adding documents into evidence. Defendant does not have a pleading to amend in this matter and the deadline to do so has long passed. (*See* ECF No. 7). Next, Rule 26(e), is also inapplicable, as it pertains to supplementing or correcting a discovery response. Plaintiff Fitzgerald asserts that he was under no obligation to supplement his response to McNae's interrogatories as he is not and has not been a party to any lawsuit other than the instant case against Defendant. (ECF No. 234 at 6). Lastly, Defendant seeks dismissal pursuant to Rule 37, but did not comply with the Rule as she did not file a motion to compel discovery. Moreover, Plaintiff asserts he did not fail to disclose or respond, so there is no discovery violation. (*Id.* at 7).

Defendant seeks to introduce evidence regarding the *Jane Doe* lawsuit to show that "Fitzgerald's damages were not caused by Defendant but were the result of his own misconduct and HR issues at SoftwareONE" and to void the Settlement Agreement at issue because "it was signed under coercion, duress, and fraudulent concealment." (ECF No. 231 at 10–11). However, the *Jane Doe* case and the evidence Defendant seeks to introduce bear no relevance to the instant case. As Plaintiff explains:

> The *Jane Doe* case involves unrelated allegations by a female in her 50s who was a former employee of SoftwareONE, Inc. in or around January 2017. Jane Doe claims that she was discriminated against on the basis of her age and gender. Jane Doe referred to Fitzgerald as a member of the "younger male leadership" at SoftwareONE1 but did not make any allegations that Fitzgerald himself was complicit in any alleged age or gender discrimination. Fitzgerald was not a party to the *Jane Doe* lawsuit, was not subpoenaed in the *Jane Doe* lawsuit, was not

deposed in the *Jane Doe* lawsuit, and was unaware that his name was ever mentioned in ancillary declarations filed in the *Jane Doe* lawsuit until now.

ECF No. 234 at 2. Plaintiff makes clear that he was not aware of the *Jane Doe* case, was neither a party nor a witness to it, and that it had nothing to do the Settlement Agreement that the Parties here entered into and at issue in this case. (*Id.* at 12).

Because the *Jane Doe* case and evidence that Defendant seeks to introduce are irrelevant to this case and to her duress defense, and because Plaintiff did not commit any discovery violations, this Court denies Defendant's Motions to Supplement Record and requests to sanction Plaintiff.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motions to Supplement the Record, (ECF Nos. 231, 245), are **DENIED**.

2. Plaintiff's Cross-Motion to Strike Exhibit is **GRANTED**. The Clerk is **DIRECTED** to **STRIKE** ECF No. 231-1.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ⟨13⟩ day of February 2025.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record

# Exhibit J

**Privileged Disclosure Proof**

Email showing Gomez shared confidential documents with Keisha Hall, counsel for

William McNae in FL State court matter (*Fitzgerald v. William McNae*).

 Gmail

Will McNae <willmcnae@gmail.com>

**RE: McNae - case file**
1 message

**Richard Gomez** <richardgomez@rgpalaw.com>                                   Fri, Jan 3, 2025 at 6:18 PM
To: Keisha Hall <khall@allpointslegal.com>
Cc: Will McNae <willmcnae@gmail.com>

I have two USB drives.   One is Blue and the other is RED.   They were obtained from prior counsel and have all the discovery, deposition transcripts etc.   I have downloaded them to my file, but I think it will be much easier for you to download to your computer using the original USB vs. sending several hundred links,
   Many of the documents are related to the Federal case involving Ronda McNae but the cases are intertwined, and you will need to be familiar with both cases as the Federal case is referred to often in the State case.   Provide me with a Federal Express account number and I can send out tomorrow as my assistant will be in my office.   I don't feel comfortable just mailing same, Alternatively, you can send a courier but let me know how you intend to proceed so I can make sure someone is in the office for the pickup.


I will send links for the discovery responses or anything else which would not otherwise be in the court files.   I will do so by Monday,


Thank you,


Richard M. Gomez

LAW OFFICES OF GOMEZ & GOMEZ

4300 Biscayne Blvd,  Suite 305

Miami, FL  33137

O:  (305)825-5506

F: (305) 825-2699

C:  (305) 336-9175

richardgomez@rgpalaw.com

From: Keisha Hall <khall@allpointslegal.com>
Sent: Friday, January 3, 2025 9:05 PM
To: Richard Gomez <richardgomez@rgpalaw.com>
Cc: Will McNae <willmcnae@gmail.com>
Subject: RE: McNae - case file


Good ay Mr. Gomez:

Please forward the applicable links at your convenience.

Best regards,



Keisha K. Hall, Esq.

Attorney-at-Law

200 South Andrews Avenue, Ste. 504

Fort Lauderdale, FL 33301

PH.: 954-361-2759 Fax: 954-372-2144

khall@allpointslegal.com   www.allpointslegal.com

NOTICE: This email message and any attachment to this email message contains confidential, proprietary and/or non-public information that may be legally privileged. If you are not the intended recipient, you must not review, copy, retransmit, convert to hard copy, use or otherwise disseminate this email or any attachments thereto. If you have received this email in error, please notify us immediately by return email or by telephone at (954) 361-2759 and delete this message. Please note that if this email message contains a forwarded message or is a reply to a prior message, some or all of the content of this message or any attachments may not have been produced by All Points Legal, PLLC, as applicable. By accepting and reviewing this email and it's attachments, if any, you agree to indemnify us against any losses or expenses, including attorney's fees, that we may incur as a result of any unauthorized use or disclosure of this information due to your acts or omissions. If a party other than the intended recipient receives this email, he or she is requested to immediately notify us of the inadvertent delivery and return to us all information and/or data so delivered. WARNING: Computer viruses may be transmitted via email. Our offices accept no liability or responsibility for any damage caused by any virus transmitted with this email.

**From:** Will McNae <willmcnae@gmail.com>
**Sent:** Friday, January 3, 2025 8:36 PM
**To:** Richard Gomez <richardgomez@rgpalaw.com>; Keisha Hall <khall@allpointslegal.com>
**Subject:** McNae - case file

Hello Richard,

Would you please transfer my case file to Keisha when she is ready to receive? I will defer to her for when that should happen.

Thank you and happy new year.

Will

 Gmail

Will McNae <willmcnae@gmail.com>

---

**Confidential - Regarding USB Drives Received from Richard Gomez**
1 message

---

**Will McNae** <willmcnae@gmail.com>                                    Wed, Mar 12, 2025 at 11:35 PM
To: Keisha Hall <khall@allpointslegal.com>, Althea Bryan Farr <Althea.BryanFarr@bfhlegal.com>

Greetings Ms. Bryan Farr and Ms. Hall,

It has come to my attention today that Richard Gomez shipped USB drives containing files beyond the scope of my specific request to transfer only *my* client file. The USB drives you received contain a significant amount of confidential materials related solely to Ronda McNae's federal matter, which should not have been shared or sent to you.

My actual case file represents only one specific folder within those drives. To promptly address this issue and mitigate any potential conflict or confidentiality concerns, I respectfully request that you immediately delete or destroy any files that pertain exclusively to Ms. McNae's federal case, retaining only my designated file.

Today, Ms. McNae's new counsel, Nichelle Womble, informed Ms. McNae that her prior counsel in the Federal Action, Mr. Gomez no longer had her case file as he sent two USB files to the new State Court counsel. For many reasons, this is of huge concern related to Mr.Gomez's decision to do so.

Please confirm at your earliest convenience that the confidential materials unrelated to my file have been appropriately destroyed or permanently deleted, as maintaining these files could inadvertently expose confidential information and potentially create liability concerns for all involved.

I am available to discuss this further by phone Thursday or Friday if any clarification is needed.

Thank you for your prompt attention to correcting this matter.

Best regards,

Will

# Exhibit K

**Joint Communication with Will McNae**

Sample email showing Will included in strategy discussions where no joint rep existed. Mr.

Gomez would also call Mr. McNae to speak about my case to ONLY Mr. McNae

(declaration can be provided upon request)

**From:** Richard Gomez <richardgomez@rgpalaw.com>
**Sent:** Wednesday, September 11, 2024 7:20:18 PM
**To:** Ronda McNae <rondamcnae@gmail.com>
**Cc:** Will McNae <willmcnae@gmail.com>
**Subject:** Re: Fitzgerald Lies told to the McNaes

We are not moving for summary judgment on duress.   That would be denied as there are questions of fact which would preclude SJ.


Richard M. Gomez
LAW OFFICES OF GOMEZ & GOMEZ
4300 Biscayne Blvd.  Suite 305
Miami, FL  33137
O:  (305)825-5506
F:  (305) 825-2699
C:  (305) 336-9175
richardgomez@rgpalaw.com

# Exhibit L

**Your March 14, 2025 Verified Complaint**

Attach front page + signature page, or full submission with verification clause with the

signature however please note my signature was included on page 7 of my initial

complaint

**The Florida Bar**
**Inquiry/Complaint Form**

**STOP - PLEASE DOWNLOAD THIS FORM TO YOUR COMPUTER BEFORE FILLING IT OUT.**

**PART ONE (See Page 1, PART ONE – Complainant Information.):**

Your Name:   Ronda McNae

Organization:

Address:   504 11th Pl.

City, State, Zip Code:   Kirkland, WA 98033

Phone:   206 914 6752

Email:   prose.rmcnae@gmail.com

ACAP Reference No.:

Does this complaint pertain to a matter currently in litigation?   Yes _____   No _____

**PART TWO (See Page 1, PART TWO – Attorney Information.):**

Attorney's Name:   Richard Gomez          Florida Bar No.   987130

Address:   4300 Biscayne Blvd Ste 305,

City, State, Zip Code:   Miami, FL 33137

Phone:   305-336-9175

**PART THREE (See Page 1, PART THREE – Facts/Allegations.): The specific thing or things I am complaining about are: (attach additional sheet).**

**PART FOUR (See Page 1, PART FOUR – Witnesses.): The witnesses in support of my allegations are: (attach additional sheet).**

**PART FIVE (See Page 1, PART FIVE – Acknowledge Oath and Signature.):**

[✓]   YOU MUST PLACE YOUR MARK IN THE BOX ACKNOWLEDGING THE OATH AND YOU MUST SIGN YOUR FULL NAME BELOW.

**Under penalties of perjury, I declare that the foregoing facts are true, correct and complete.**

Ronda McNae
Print Name

_Signature_
02/14/2025
Date

---

Nothing in this complaint should be construed as a waiver of my **right to pursue additional legal remedies**, including but not limited to, a **legal malpractice claim, a breach of fiduciary duty claim, or any other appropriate civil or criminal action against Richard Gomez or any parties involved in his misconduct**. I expressly **reserve all rights** to take further action in **any forum necessary** to seek appropriate relief and damages for the harm caused by his professional failures.

I will include several **exhibits**; however, the volume of supporting evidence **exceeds the 25-page limit. All additional documentation is available upon request.**

Thank you for your time and consideration.

DATED: The 14 of March, 2025.

Respectfully submitted,

**Ronda McNae**

# Exhibit M

Time Summary of Billing

Detailed Analysis of Billing Discrepancies and Counsel's Ineffective Representation

(Submitted to Honorable Judge Martinez)

**<u>Detailed Analysis of Billing Discrepancies and Counsel's Ineffective Representation</u>**

As the Defendant in this matter, I must address significant discrepancies and deficiencies in the representation provided by my former counsel, Richard Gomez. Despite repeated requests, Mr. Gomez refused to provide me with invoices for his services. This refusal prompted me to formally request the invoices from ARAG Legal Insurance, which ultimately revealed troubling issues. The invoices reflected 60 hours of billed work, including a line item for services allegedly performed in January 2024. However, Mr. Gomez did not sign an Agreement to represent me until February 2024, raising serious concerns about the accuracy and integrity of his billing practices. Moreover, I did not receive a copy of the signed Agreement until March 22, 2024, well after his representation had commenced. These failures have not only undermined my ability to adequately prepare for trial but have caused irreparable harm to my case.

## 1. Failure to Adequately Prepare and Manage Case Deadlines

### 1. Missed Summary Judgment Deadline:

- On June 21, 2024, Mr. Gomez billed 2.0 hours to "review and strategize for summary judgment." Despite this, no Motion for Summary Judgment was filed before the applicable deadline.

- There are no subsequent billing entries reflecting further work on this critical motion.

- The failure to file this motion eliminated an essential opportunity to seek dismissal of claims against me or narrow the issues for trial, significantly prejudicing my case.

### 2. Minimal Time on Trial Strategy and Preparation:

- On June 21, 2024, Mr. Gomez billed only 1.2 hours for a discussion of trial strategy, opposing counsel's proposed stipulated facts, and upcoming deadlines. This is grossly insufficient given the complexity of the case and the approaching trial date.

- Tasks critical to trial preparation, such as drafting pretrial motions or coordinating expert witness strategies, are either absent or inadequately addressed in the invoices.

## 2. Inadequate Discovery Efforts

### 1. Deposition Transcript Review:

- Mr. Gomez billed 13.8 hours in June 2024 for reviewing deposition transcripts, including:

    - 8.5 hours on my deposition transcript (350+ pages).

    - 5.3 hours on depositions of opposing parties and experts.

    - 0 hours on my expert depositions as Mr. Gomez did not order them.

- Despite this, these transcripts were not effectively utilized for motions or trial preparation.

2. **Failure to Obtain Deposition Transcripts:**

    - Mr. Gomez did not order critical deposition transcripts, leaving me to personally obtain and expedite them after his withdrawal, incurring significant cost and delays.

3. **Incomplete Discovery Review:**

    - On June 3, 2024, Mr. Gomez billed only 2.7 hours for reviewing discovery materials via a client call. This cursory effort left critical gaps, as no follow-up work is evident in his records.

## 3. Discrepancies Between Billed Time and My Records

1. **Phone Call Discrepancies:**

    - According to my Verizon phone logs, I spent 9 hours and 3 minutes on calls with Mr. Gomez from March to September 2024. However, his invoices reflect fewer calls and limited time billed for phone conferences. This inconsistency raises concerns about transparency in his billing practices.

2. **July 2024 Gap in Activity:**

    - During July 2024, Mr. Gomez billed only 0.6 hours, limited to reviewing a court order and drafting emails about stipulated facts. This was a critical month for trial preparation, and his lack of activity reflects a failure to engage during a pivotal time.

## 4. Overcharging and Inefficient Use of Time

1. **Excessive Time on Basic Tasks:**

    - Mr. Gomez billed 8.5 hours to review my deposition transcript, an unusually high amount given that no significant actions were taken based on this review.

2. **Redundant Tasks:**

    - On June 27, 2024, he billed 1.3 hours for drafting a motion to extend deadlines and an additional 0.4 hours for preparing a proposed order for the same motion. These tasks should have been completed concurrently.

## 5. Failure to Provide Case Files

- Despite my repeated formal requests, Mr. Gomez has failed to provide my complete case files following his withdrawal from representation.

- This omission has obstructed my ability to address procedural gaps or independently manage my case moving forward, compounding the harm caused by his ineffective counsel.

## 6. Summary of Total Hours and Billing Concerns

- **Total Hours Billed:** Mr. Gomez billed 62.9 hours between February and July 2024, per his invoices.

- **Key Omissions:** He failed to file essential motions, coordinate expert testimony, or sufficiently prepare for trial despite billing for tasks that suggest otherwise.

## 7. Impact of Discrepancies

Mr. Gomez's inadequate representation and billing discrepancies have caused significant harm to my case, including:

1. Missing critical deadlines such as the Motion for Summary Judgment.

2. Delaying the case by failing to obtain essential documents like deposition transcripts.

3. Creating procedural and evidentiary gaps that now necessitate reopening discovery to mitigate the prejudice caused by his actions.

## Conclusion

These discrepancies and failures reflect deeply ineffective counsel that has prejudiced my case. Despite my efforts to mitigate the harm, Mr. Gomez's actions—or lack thereof—have caused irreparable damage to my ability to present a full and fair defense. I respectfully request the Court's intervention to reopen discovery and address the substantial gaps created by his representation.

# Exhibit N

**Counseling Notes (Sarah Dellinger, LMFT)**

Progress notes from July–December 2024 documenting psychological and physiological distress—gagging, vomiting, panic, and emotional dysregulation—directly linked to Mr. Gomez's conduct. These include his attempt to withdraw the duress defense without consent, failure to file expert evidence, and abrupt case withdrawal. The therapist notes an increase in trauma symptoms during Gomez's representation, providing objective evidence of emotional harm and structural prejudice.

# EQUIP COUNSELING, PLLC

## PROGRESS NOTES

| | | | |
|---|---|---|---|
| Client:   Ronda McNae (RM00093) | | Birth Date:   04/04/1986 | |
| Service Date:   08/14/2024 10:00 AM - 11:00 AM | | Duration.   60 minutes | |
| Provider(s):   Owner Sarah Dellinger, MS, LMFT (NPI: ▮▮▮▮▮▮▮▮▮) | | | |
| Insurer(s): | | | |
| Place Of Service:   Office | CPT Code: | Case #   RMC2000 | |

| | | | |
|---|---|---|---|
| Appearance: | WNL | Orientation: | WNL |
| Behavior: | WNL | Speech: | WNL |
| Affect: | expansive | Mood: | WNL |
| Thought Process: | fragmented | Thought Content: | WNL |
| Perception: | WNL | Judgment: | WNL |
| Insight: | WNL | Appetite: | WNL |
| Sleep: | WNL | | |
| Suicidality | Not Present | Homicidality | Not Present |

**Diagnostic Impressions:**

**Diagnosis code**                              **Diagnosis description**

309.81 (F43.12) Post Traumatic Stress Disorder - Chronic

**Focus of Session:**
Client reports to in person session all within normal limits. She is in good spirits but gets emotional processing her frustration with lawyer in Florida. She reports struggling to communicate effectively with him and is unsure if he understands her. She displays distress when exploring this and is curious about potential outcomes of that case. No danger assessed.

**Therapeutic Intervention:**

**Planned Intervention:**

Return Appointment:

Staff Signature: *Sarah Dellinger*
Owner Sarah Dellinger, MS, LMFT Therapist
I approve this document
Signed: 09/05/2024 01:27 PM CT

# EQUIP COUNSELING, PLLC
## PROGRESS NOTES

| | | | | |
|---|---|---|---|---|
| **Client:** | Ronda McNae (RM00093) | | **Birth Date:** | 04/04/1986 |
| **Service Date:** | 08/21/2024 01:00 PM - 02:00 PM | | **Duration:** | 60 minutes |
| **Provider(s):** | Owner Sarah Dellinger, MS, LMFT (NPI: ▬▬▬▬▬) | | | |
| **Insurer(s):** | | | | |
| **Place Of Service:** | Office | **CPT Code:** | **Case #** | RMC2000 |

| | | | | |
|---|---|---|---|---|
| Appearance: | WNL | Orientation: | WNL |
| Behavior: | WNL | Speech: | rapid |
| Affect: | expansive | Mood: | WNL |
| Thought Process: | fragmented | Thought Content: | WNL |
| Perception: | WNL | Judgment: | WNL |
| Insight: | WNL | Appetite: | WNL |
| Sleep: | WNL | | |
| Suicidality | Not Present | Homicidality | Not Present |

**Diagnostic Impressions:**

**Diagnosis code**                                   **Diagnosis description**

309.81 (F43.12) Post Traumatic Stress Disorder - Chronic

**Focus of Session:**

Client reports to in person session all within normal limits. She is in good spirits and shares positively about their family weekend away. She continues to process frustration related to her lawyer in Florida. She also gets curious about her continued nightmares and inability to sleep consistency in her bed since 2019. No danger assessed.

**Therapeutic Intervention:**

**Planned Intervention:**

Return Appointment:

Staff Signature: *Sarah Dellinger*
Owner Sarah Dellinger, MS, LMFT Therapist
I approve this document
Signed: 09/05/2024 01:34 PM CT

# EQUIP COUNSELING, PLLC
## PROGRESS NOTES

| | | | | |
|---|---|---|---|---|
| **Client:** Ronda McNae (RM00093) | | **Birth Date:** | 04/04/1986 | |
| **Service Date:** 08/26/2024 10:00 AM - 11:00 AM | | **Duration:** | 60 minutes | |
| **Provider(s):** Owner Sarah Dellinger, MS, LMFT (NPI: ████████) | | | | |
| **Insurer(s):** | | | | |
| **Place Of Service:** Office | **CPT Code:** | | **Case #** | RMC2000 |

| | | | |
|---|---|---|---|
| Appearance: | WNL | Orientation: | WNL |
| Behavior: | WNL | Speech: | WNL |
| Affect: | expansive | Mood: | WNL |
| Thought Process: | WNL | Thought Content: | WNL |
| Perception: | WNL | Judgment: | WNL |
| Insight: | WNL | Appetite: | WNL |
| Sleep: | WNL | | |
| Suicidality | Not Present | Homicidality | Not Present |

**Diagnostic Impressions:**

**Diagnosis code**  **Diagnosis description**

309.81 (F43.12) Post Traumatic Stress Disorder - Chronic

**Focus of Session:**

Client reports to in person session all within normal limits. She is in good spirits and shares most pertinent issues related to parenting, mental health and legal issues. She is excited to share that judge in Florida dismissed all counter claims except duress. Client gets emotional when sharing this as she reports that it makes her feel validated. No danger assessed.

**Therapeutic Intervention:**

**Planned Intervention:**

Return Appointment:

Staff Signature: *Sarah Dellinger*
Owner Sarah Dellinger, MS, LMFT Therapist
I approve this document
Signed: 09/05/2024 01:39 PM CT

## EQUIP COUNSELING, PLLC
### PROGRESS NOTES

| | | | |
|---|---|---|---|
| Client: Ronda McNae (RM00093) | | Birth Date: | 04/04/1986 |
| Service Date: 07/29/2024 12:00 PM - 01:00 PM | | Duration: | 60 minutes |
| Provider(s): Owner Sarah Dellinger, MS, LMFT (NPI: ▨▨▨▨▨▨ | | | |
| Insurer(s): | | | |
| Place Of Service: Office | CPT Code: | Case # | RMC2000 |

| | | | |
|---|---|---|---|
| Appearance: | WNL | Orientation: | WNL |
| Behavior: | WNL | Speech: | rapid |
| Affect: | WNL | Mood: | WNL |
| Thought Process: | WNL | Thought Content: | WNL |
| Perception: | WNL | Judgment: | WNL |
| Insight: | WNL | Appetite: | WNL |
| Sleep: | WNL | | |
| Suicidality | Not Present | Homicidality | Not Present |

**Diagnostic Impressions:**

| Diagnosis code | Diagnosis description |
|---|---|
| 309.81 (F43.12) Post Traumatic Stress Disorder - Chronic | |

**Focus of Session:**

Client reports to in person session later than her normally scheduled session. She is in fairly good spirits and has much to process. She is eager to explore the further adjustment of kids and necessary boundaries with their bio mom and dad. She gets emotional when exploring some of these specifics. Client is thoughtful about the impact on children. No danger assessed.

**Therapeutic Intervention:**

**Planned Intervention:**

Return Appointment:

Staff Signature: *Sarah Dellinger*
Owner Sarah Dellinger, MS, LMFT Therapist
I approve this document
Signed: 09/05/2024 02:35 PM CT

# EQUIP COUNSELING, PLLC
## PROGRESS NOTES

| | | | | |
|---|---|---|---|---|
| Client: | Ronda McNae (RM00093) | | Birth Date: | 04/04/1986 |
| Service Date: | 09/05/2024 02:00 PM - 03:00 PM | | Duration: | 60 minutes |
| Provider(s): | Owner Sarah Dellinger, MS, LMFT (NPI: ▮▮▮▮▮▮▮▮) | | | |
| Insurer(s): | | | | |
| Place Of Service: | Office | CPT Code: | Case # | RMC2000 |

| | | | |
|---|---|---|---|
| Appearance: | WNL | Orientation: | WNL |
| Behavior: | WNL | Speech: | rapid |
| Affect: | emotional | Mood: | anxious: moderate |
| Thought Process: | WNL | Thought Content: | WNL |
| Perception: | WNL | Judgment: | WNL |
| Insight: | WNL | Appetite: | WNL |
| Sleep: | WNL | | |
| Suicidality | Not Present | Homicidality | Not Present |

**Diagnostic Impressions:**

**Diagnosis code**            **Diagnosis description**

309.81 (F43.12) Post Traumatic Stress Disorder - Chronic

**Focus of Session:**
Client reports to in person session mostly within normal limits. She reports that she has been experiencing increased distressing sx this week: increased overwhelm, increased crying, increased 'blackouts' (client words) when flooded. Client reports that happen when someone is talking about the case. Client also reports that she gags when she looks at the evidence herself. She gags in session at one point recalling the sx. Client reports that she continues to feel misunderstood by her lawyer. Client needs to be regulated during session and is able to do so easily. Client processes continued frustration that she feels she did not understand the specifics of a confidential settlement agreement at the tiem she signed it. No immediate danger assessed.

**Therapeutic Intervention:**
Will continue to provide a neutral place for Client to express her feelings and process her experience. Will continue to demonstrate and utilize grounding techniques with Client for her to use outside of session.

**Planned Intervention:**

Return Appointment.

## EQUIP COUNSELING, PLLC

### PROGRESS NOTES

| | | | | |
|---|---|---|---|---|
| Client: | Ronda McNae (RM00093) | | Birth Date: | 04/04/1986 |
| Service Date: | 09/16/2024 10:00 AM - 11:00 AM | | Duration: | 60 minutes |
| Provider(s): | Owner Sarah Dellinger, MS, LMFT (NPI: ~~████████~~) | | | |
| Insurer(s): | | | | |
| Place Of Service: | Office | CPT Code: | Case # | RMC2000 |

| | | | |
|---|---|---|---|
| Appearance: | WNL | Orientation: | WNL |
| Behavior: | WNL | Speech: | WNL |
| Affect: | labile | Mood: | WNL |
| Thought Process: | WNL | Thought Content: | WNL |
| Perception: | WNL | Judgment: | WNL |
| Insight: | WNL | Appetite: | WNL |
| Sleep: | WNL | | |
| Suicidality | Not Present | Homicidality | Not Present |

**Diagnostic Impressions:**

**Diagnosis code**         **Diagnosis description**

309.81 (F43.12) Post Traumatic Stress Disorder - Chronic

**Focus of Session:**

Client reports to in person session mostly within normal limits. She reports feeling 'overwhelmed' with various stressors. She is able to articulate significant social distress with other parents, continued worry around her case, and discord with her lawyer. She reports feeling like she is "repeating the pattern.. feels like I am being pressured to make a decision" (Client words). She reports desire to have lawyer replaced as she feels "there is a serious conflict of interest" (Client words). She does report that has a few close friends she can lean on. No immediate danger.

**Therapeutic Intervention:**

Continue to encourage boundaries, balance and coping strategies.

**Planned Intervention:**

Return Appointment:

Staff Signature: *Sarah Dellinger*
Owner Sarah Dellinger, MS, LMFT Therapist
I approve this document
Signed: 12/04/2024 01:33 PM CT

# EQUIP COUNSELING, PLLC

## PROGRESS NOTES

| | | | |
|---|---|---|---|
| Client:  Ronda McNae (RM00093) | | Birth Date:  04/04/1986 | |
| Service Date:    09/23/2024 11:00 AM - 12:00 PM | | Duration:    60 minutes | |
| Provider(s):    Owner Sarah Dellinger, MS, LMFT (NPI: ▓▓▓▓▓▓▓▓▓) | | | |
| Insurer(s): | | | |
| Place Of Service:    Office | | CPT Code: | Case #   RMC2000 |

| | | | |
|---|---|---|---|
| Appearance: | WNL | Orientation: | WNL |
| Behavior: | WNL | Speech: | WNL |
| Affect: | WNL | Mood: | WNL |
| Thought Process: | WNL | Thought Content: | WNL |
| Perception: | WNL | Judgment: | WNL |
| Insight: | WNL | Appetite: | WNL |
| Sleep: | WNL | | |
| Suicidality | Not Present | Homicidality | Not Present |

**Diagnostic Impressions:**

**Diagnosis code**                              **Diagnosis description**

309.81 (F43.12) Post Traumatic Stress Disorder - Chronic

**Focus of Session:**

Client reports to in person session mostly within normal limits. She reports continued frustration with lawyer- she believes his actions have negatively impacted her case. Despite distress, she is pleased to share the growth she sees in herself through increased ability to self-regulate and decreased dissociative episodes. No immediate danger.

**Therapeutic Intervention:**

**Planned Intervention:**

Return Appointment:

Staff Signature: *Sarah Dellinger*
Owner Sarah Dellinger, MS, LMFT Therapist
I approve this document

## EQUIP COUNSELING, PLLC
### PROGRESS NOTES

| | | | | |
|---|---|---|---|---|
| Client: | Ronda McNae (RM00093) | | Birth Date: | 04/04/1986 |
| Service Date: | 10/07/2024 11:00 AM - 12:00 PM | | Duration: | 60 minutes |
| Provider(s): | Owner Sarah Dellinger, MS, LMFT (NPi: ▮▮▮▮▮▮▮▮▮) | | | |
| Insurer(s): | | | | |
| Place Of Service: | Office | CPT Code: | Case # | RMC2000 |

| | | | |
|---|---|---|---|
| Appearance: | WNL | Orientation: | WNL |
| Behavior: | agitated | Speech: | WNL |
| Affect: | expansive | Mood: | anxious: moderate |
| Thought Process: | circumstantial | Thought Content: | WNL |
| Perception: | WNL | Judgment: | WNL |
| Insight: | WNL | Appetite: | WNL |
| Sleep: | WNL | | |
| Suicidality | Not Present | Homicidality | Not Present |

**Diagnostic Impressions:**

| Diagnosis code | Diagnosis description |
|---|---|
| 309.81 (F43.12) Post Traumatic Stress Disorder - Chronic | |

**Focus of Session:**
Client reports to in person session moderately distressed. She reports that lawyer has withdrawn from her case. She gags in session and ends up leaving office to throw up outside. Client reports increased episodic gagging outside of session. Client reports that she ordered a copy of my deposition that she realized had not been ordered- client gets very emotional about this. Client is able to be regulated in session. No immediate danger.

**Therapeutic Intervention:**

**Planned Intervention:**

Return Appointment:

Staff Signature: *Sarah Dellinger*
Owner Sarah Dellinger, MS, LMFT Therapist
I approve this document
Signed: 12/05/2024 02:32 PM CT

# Exhibit O

LAW OFFICES OF

# GOMEZ & GOMEZ

4300 Biscayne Blvd. – Suite 305

Miami, Florida 33137

Richard M. Gomez
richardgomez@rgpalaw.com

Tel: (305) 825-5506
Fax: (305) 825-2699

**VIA EMAIL: acapintake@floridabar.org**
**VIA U.S. MAIL**

April 12, 2025

Mr. Richard Coombs, Bar Counsel
The Florida Bar
651 East Jefferson Street
Tallahassee, FL 32399-2300

**Re:   RICHARD MICHAEL GOMEZ**
        **FLORIDA BAR FILE NO. 2025-70,440 (11K)**

Dear Mr. Coombs:

Please let this serve as a response to the above-referenced inquiry/Complaint.

First, enclosed please find the executed Certificate of Non-Law Firm Affiliation.

Second, what follows is a response to the Florida Bar/inquiry/complaint filed by Ronda
McNae. The inquiry/complaint is deficient on its face. The form is required to executed
by the complainant with the verification that "(u)nder penalties of perjury I declare that
the foregoing facts are true, correct, and complete."  The unsworn complaint should not
be considered.[1]

Notwithstanding the deficiency, the undersigned will respond to the allegations, much of
which is repetitive. By way of summary, the undersigned was contacted by Ronda
McNae for representation in Michael Fitzgerald v. Ronda McNae and William McNae,
Case No. 22-CV-22171-JEM pending in the United States District Court -- Southern
District of Florida. This case was pending, and discovery was already closed when I
was contacted for possible representation. Ronda McNae had legal insurance which
provided payment of legal fees, but did not provide coverage for legal costs, nor did the
policy provide indemnity for the asserted claims.

I was also retained to represent William McNae, Ronda McNae's husband. Mr. McNae
was also originally named a Defendant in the same Federal Court case as his wife, but
was dismissed prior to contacting me due to the  federal court's lack of subject matter
jurisdiction. He was sued in Miami-Dade County Circuit Court for identical claims in the

---

[1] Assuming the Bar wishes to consider the complaint to be signed by Ronda McNae, then it should also
consider all of the allegations are made under the penalty of perjury.

matter of <u>Michael J. Fitzgerald v. William McNae</u>, Case No. 2023-025855-CA-01 and both he and Ronda McNae requested that I represent him in the State Court action. Both cases arise out of alleged breaches of a confidential settlement agreement to which both Ronda McNae and William McNae were parties. The claims against each are identical, but the facts surrounding the alleged breaches against each differ.

During the early contact with the McNaes, Ronda McNae and William McNae advised that they were in possession of the file materials from her prior attorney, Alaina Fotiu-Wojtowicz, Esq. This file consisted of two USB thumb drives (one was red, and one was blue). The McNaes reside in Washington. In order to expedite receipt of the file documents, the undersigned coordinated with attorney Fotiu-Wojtowicz, who is located in Miami, to obtain copies of the same USB thumb drives both Mr. and Mrs. McNae had in their possession, so that the file documents would be organized in the same format for ease of reference. The file documents on the two thumb drives consist of tens of thousands of pages. Throughout my representation of Ronda McNae and William McNae, the USB thumb drives were regularly referred to by all three of us. To clarify, <u>both</u> Ronda McNae and William McNae each had full access to the exact same file documents contained on the USB thumb drives.

## I.   CONFLICT OF INTEREST AND MISGUIDED LEGAL STRATEGY

Ronda McNae alleges that my simultaneous representation of both she and William McNae created an irreconcilable conflict of interest. Ms. McNae does not provide any factual basis in her complaint to which I can directly respond. The claims made against Plaintiff, Ronda McNae (in the Federal case) and William McNae (originally in the Federal case and subsequently in the State Court case) involved alleged breaches of a confidential settlement agreement. Ronda McNae did not raise any issue of conflict until September, 2024. Once the alleged conflict was raised, the undersigned took the following actions: **(1)** filed a Motion to Withdraw dated 9/24/24 in the State court action pertaining to William McNae; **(2)** filed a Motion to Withdraw dated 9/24/24 in the Third District Court of Appeal, Case No. 3D24-0715 where an appeal was pending; and **(3)** filed a Motion to Withdraw dated 9/24/24 in the Federal Court Case [D.E.207][2] Ronda McNae filed an objection to the Motion to Withdraw on 9/24/24 [D.E. 209]. On 10/1/24 the Federal Court granted the Motion to Withdraw [D.E. 216]. There are numerous email exchanges between the undersigned and Ronda McNae surrounding the Motion to Withdraw which contain confidential material, but same are available upon request.

Ms. McNae references a September 4, 2024 communication wherein I allegedly pressured her to drop the affirmative defense of duress. The legal and factual issues surrounding this affirmative defense were discussed with Ms. McNae in depth which resulted in ethical issues for the undersigned which led me to consult the Florida Bar for guidance. Ronda McNae alleges that I "prioritized aligning my case with my husband's instead of advocating for my best interest." There is no explanation by Ronda McNae as to how the decision to pursue/not pursue the duress affirmative defense

---

[2] The reference to [D.E.] herein refer to the docket entries in Case No. 22-cv-22171 and are provided for reference and are available for review on Pacer. If requested, copies can be provided but attaching same would make this response longer than the 25-page limit.

would impact William McNae's case, so a response cannot be provided. Nonetheless, the issue is moot as the court granted Plaintiff's Motion for Summary Judgment as to liability [D.E. 310] and struck Ronda McNae's duress defense. The Court's ruling and analysis are provided herein as follows:

> Defendant R. McNae argues that she was suffering from PTSD and debilitating anxiety around the time she entered into the Settlement Agreement, establishing considerable evidence that she signed the Agreement under conditions of duress and thereby invalidating the Agreement's enforceability. (Resp. at 17-20.) "Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." *City of Miami v. Kory*, 394 So.2d 494, 497 (Fla. 3d DCA 1981) (quoting *Herald v. Hardin*, 95 Fla. 889, 116 So. 863, 864 (1928)). Florida courts have articulated two factors that must exist when setting aside a contract or settlement on the grounds of duress. *Kory*, 394 So.2d at 497. Specifically, "[o]t must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side" *Id*.

> The Facts of this case do not show that R. McNae signed the Settlement Agreement involuntarily or that there was improper external pressure. R. McNae suggested signing a non-disclosure agreement in the first place. (Pl's SOF ¶23.) Moreover, both she and Plaintiff Fitzgerald were represented by counsel who negotiated the Agreement on their behalf and several iterations of the Agreement were sent back and forth between the attorneys and clients. (*Id* ¶¶26-29.) Defendant R. McNae even sent back drafts of the Agreement to her therapist, Sarah Dellinger, and to her friend and boss, Tami Wakasugi. (*Id.* ¶30.) *See Kary*, 394 So.2d at 497 ("When, as here, a particular course of action is raised on one's own volition and is finally decided upon in a deliberate and considered choice between alternatives, no finding of involuntariness, and thus no conclusion of duress may be sustained."). Additionally, McNae and Fitzgerald ceased communicating on May 4, 2020, a month before the Settlement Agreement was entered on June 15, 2020. (Ex. B, ECF No. 201.)

> Lastly, Defendant R. McNae's claim that she was suffering from PTSD and debilitating anxiety are insufficient to establish duress. *See Velazquez v. Lowery*, No. 3:21CV1831-MCR-HTC, 2023 WL 9377978, at *3 (N.D. Fla. June 14, 2023). "Plaintiff's claim he 'was not in his right state of mind' is also insufficient to invalidate the settlement agreement." The fact Plaintiff suffered from some degree of mental incapacity does not, by itself, render the contract void. *See Wells v. N.Y.C. Dep't of Corr.*, 804 F. App'x 88, 90 (2d Cir. 2020). Rather, the Plaintiff must show her mind was so affected that she was rendered

wholly incompetent to comprehend and understand the settlement agreement. *Id.* "Mere mental weakness is insufficient to set aside an agreement if the person had sufficient intelligence to understand the nature and effect of the transaction and acted upon [his] own free will." *Menaged v. City of Jacksonville Beach, Fla.* 2013 WL 461999, at *3 (M.D. Fla. Jan. 14, 2013).

See pages 8 -10 of D.E. 310.

Ronda McNae further alleges that I failed to file motions, or to reopen discovery which suggested that I was prioritizing William McNae's case over hers, and that I allegedly barely billed for work. Ms. McNae fails to provide specific motions which were not filed or the purpose for reopening discovery. Discovery in this case was closed as of July 14, 2023. This was approximately seven months before the undersigned was contacted by Ronda McNae and William McNae for possible representation. During the representation of Ronda McNae, the undersigned filed the following motions:

Motion for Extension of Time and Continuance of Trial Date [D.E. 167]
Motion for Extension of Time to Respond to Motion for Partial Summary Judgment as to Liability [D.E. 176]
Motion for Extension of Time to File Motion for Summary Judgment [D.E. 186]
Motion to Strike and Exclude Expert Witnesses – Daubert Motion [D.E. 188]
Response in Opposition to Plaintiff's Motion for Partial Summary Judgment as to Liability [D.E. 191]
Statement of Material Facts in Opposition to Motion for Partial Summary Judgment [D.E. 192]
Motion for Leave to File Surreply [D.E. 204]
Motion in Limine Nos. 1-10 [D.E. 206]

Further, my billing for the representation of Ronda McNae was substantial and reflected the numerous hours I spent diligently representing her, contrary to the false allegation that I barely billed for my work.

## II.   FAILURE TO ORDER CRITICAL DEPOSITIONS AND PREPARE FOR TRIAL

Ronda McNae then asserts that I refused to order critical depositions for use at trial and for knowledge pertaining to her evidence of psychological harm and trauma, the long-term impact of the events at issue, to corroborate physical and psychological injuries and to counter opposing expert testimony. Discussions regarding these issues are confidential and will be provided if requested. Nonetheless, Ronda McNae does not have a claim for damages in this matter. On August 23, 2024, the Court granted plaintiff's Motion to Dismiss the Counterclaim and Motion to Strike Affirmative Defenses which was filed by Ronda McNae before I was retained in the case. See [D.E. 179] She was named as a Defendant for her alleged breaches of a confidential settlement agreement and could not assert claims or present evidence pertaining to "psychological

harm and trauma," "long term impact of the events at issue" or to "corroborate physical and psychological injuries." Reference by Ms. McNae for the cost of having the depositions transcribed was not the responsibility of the undersigned as these costs would always be the responsibility of Ms. McNae, because her legal insurance policy only provided for the payment of legal fees; costs were to be paid directly by the client.

## III.   NEGLIGENT FAILURE TO FILE KEY MOTIONS & PROCEDURAL INCOMPETENCE

Ronda McNae next asserts that the undersigned failed to file a motion for summary judgment. There were numerous discussions with Ronda McNae (and William McNae) addressing the legal and factual issues regarding such a motion and the recommended strategy in not proceeding with such a motion. At the request of Ronda McNae, a written explanation/analysis was provided to which she concurred "100%" with the decision and strategy. I have attached the email exchange. (See Exhibit A)

Ms. McNae argues that I missed a deadline for supplementing deposition transcripts. She makes references to motions to "supplement the record" which she filed after I no longer was her counsel. She attached two orders denying her motions [D.E. 292 and D.E. 295]. Ms. McNae concludes the motions were denied due to my failure to file deposition transcripts in conjunction with the Motions in Limine. However, a review of the orders attached to the bar complaint are misinterpreted by Ms. McNae. [D.E. 292] denies Ms. McNae's motion to supplement the record to include deposition transcripts and in doing so, the Court notes that there is "no record to supplement" and on its own construes the motions to supplement the record as motions in limine asking the court to include deposition transcripts as evidence in trial. Although the court notes that the deadline to file a motion in limine was September 23, 2024, the court finds that the deposition transcripts would be inadmissible hearsay in the event the expert were to testify at trial citing 2 FED. R.EVID. 801(CN). First, the decision regarding transcribing and obtaining copies certain depositions was discussed with the client and she understood the analysis and reasoning. Nonetheless, she was free to order and obtain copies of any of the depositions if she had not agreed with my analysis and recommendations. The specific content of these communications is confidential and will be disclosed if requested. Additionally, these transcripts and the testimony contained therein were not relevant to these proceedings. Specifically, the court granted Plaintiff's Motion for Summary Judgment as to Liability and ordered that the case would proceed on the issue of Plaintiff's damages. [D.E. 310]

As to the order [D.E. 295] which denied the Motion to Supplement the Record, the court explained in its ruling that the documents/evidence Ronda McNae was attempting to use to supplement the record pertaining to the *Jane Doe* lawsuit bear no relevance to the instant case. As stated by the trial judge, "[b]ecause the *Jane Doe* case and

evidence that defendants seek to introduce are irrelevant to this case and to her duress defense, and because plaintiff did not commit any discovery violations, this court denies defendant's motions to supplement record and request to sanction plaintiff."

## IV.   UNAUTHORIZED DISCLOSURE OF PRIVILEGED CASE FILES

Ronda McNae asserts that I disclosed privileged case files consisting of 2,327 confidential documents including legal strategy, medical records, and privileged communications to an attorney who does not represent her (Keisha Hall, Esq.). As referenced herein, the undersigned was provided with two USB thumb drives (red and blue) from Ronda McNae's prior counsel. These thumb drives were identical to the thumb drives <u>both</u> Ronda McNae and William McNae advised they had received. Throughout my representation of Ronda McNae and William McNae, these documents were referred to and utilized in the representation of both Ronda McNae and William McNae.

At no time during my representation of Ronda McNae did she ever voice any concern about any portion of the file materials we were utilizing for both cases containing any sensitive or confidential information. When William McNae retained new counsel, (Keisha Hall, Esq.) he sent an email to me requesting that I provide a copy of the file documents to his new counsel. I provided the exact same file documents of which both William McNae and Ronda McNae were already in possession to his attorney. These were the same documents that Ronda McNae, William McNae, and I utilized during my representation in both the Federal and State court cases.

On March 13, 2025, I was contacted for the first time by Ronda McNae who advised that I had disclosed confidential information to a third party. I immediately contacted the Florida Bar for guidance on how to proceed. (See Florida Bar Call No. 629322) Thereafter, I acted the same day by contacting Keisha Hall, Esq. by telephone advising her of the issue being raised by Ronda McNae and requested that she delete/destroy portions of the file <u>which may contain confidential information pertaining to Ronda McNae.</u> My correspondence sent to Keisha Hall dated March 13, 2025 is attached as Exhibit B. On March 13, 2025, I sent a confirmation email to Ronda McNae advising of my course of action and requesting that she provide any additional information for the records which she deemed confidential that was not included in my instructions to Keisha Hall. (See Exhibit C). I did not receive any response from Ronda McNae. Keisha Hall, Esq. responded to my email acknowledging her compliance in deleting/destroying the files containing any potential confidential information. (See Exhibit D).

I am still not aware of what specific file documents are at issue. Any of the medical records/treatment records contained on the USB drives were previously produced to all of the parties and their counsel during the discovery phase of the case. Copies of documents produced by Ronda McNae in the case are bates stamped MCNAE 1-7533.

Additionally, Ronda McNae was deposed on April 28, 2023 (prior to the undersigned representation). In that deposition, Ronda McNae testified as to her prior sexual abuse, medical treatment, and psychological treatment.

Even though Ronda McNae did not identify the specific documents to which she was referring, in an abundance of caution, I contacted Keisha Hall in order to have any "potential" confidential documents destroyed and discarded. Any records/file documents which were provided to William McNae's attorney, Keisha Hall, were already in William McNae's possession. Throughout my representation of Ronda McNae and William McNae, the majority of the zoom conferences and/or telephone conferences included both Ronda McNae and William McNae. I provided Ronda McNae with copies of all substantive pleadings for review and approval before filing. To my knowledge William McNae reviewed all of the draft pleadings in conjunction with Ronda McNae as discussions including comments, edits and revisions were discussed with both Ronda McNae and William McNae as to all significant filings. In addition, Ronda McNae participated in telephone conferences pertaining to William McNae's case on a regular basis. She attended several of the zoom motion calendar hearings as an observer at hearings during William McNae's state court case. Many of the telephone and/or zoom meetings were attended by both Ronda McNae and William McNae where there were discussions as to both cases.

The file materials provided to Keisha Hall, who is William McNae's attorney (his agent in fact) did not reveal any confidential information not already known by Ronda McNae's husband, William McNae. Even assuming any confidential information was disclosed (which Ronda McNae has failed to specifically identify) the undersigned took immediate action by contacting Keisha Hall to advise of the issue. Ms. Hall then advised me that she discarded/deleted the files which I identified <u>may</u> have contained confidential information. Again, these file materials were already in possession of William McNae. Ms. Hall has not, nor could she utilize any confidential documents to the benefit of William McNae and to the detriment of Ronda McNae.

The undersigned is unable to respond in greater detail as to any specific confidential records which were disclosed as Ronda McNae has failed to cite as to any specifics although requested by the undersigned.

## V.   THE HARM CAUSED BY HIS REPESENTATION

Ronda McNae claims that as a result of my negligence she was forced to continue litigating pro se in a complex federal case. Professional considerations required my termination of the representation which necessitated my withdrawal from representation of Ronda McNae in the Federal Court action. The motion was granted on October 2, 2024 [D.E. 216]. The Order provided Ronda McNae until November 15, 2024 to retain new counsel or to file a notice of intent to proceed pro se.

For reasons unknown to the undersigned, Ronda McNae did not retain new counsel until February 10, 2025 as per the notice of attorney appearance by Nichelle Womble [D.E. 291]. Ronda McNae asserts that her case has been permanently damaged due to my failure to file necessary motions and protect privileged materials. These issues have been addressed above to the best of my ability considering Ronda McNae has not provided specifics.

## VI.   HIS REPRESENATION WAS GROSSLY INADEQUATE AND HARMED YOUR (sic) CASE

In support of her assertion that my representation was "grossly inadequate and harmed your (sic) case", Ronda McNae that I billed a total of "only 62.9 hours between February and October 2024 which equates fewer than 8 hours per month on a Federal Case set for trial". This is incorrect as I billed over 300 hours on her case.

In further support of alleged inadequate representation, Ronda McNae attaches a copy of a Motion for Continuance filed on March 7, 2025 [D.E. 313] which was filed by her current counsel Nichell Womble. She highlights a portion on page 1 which states "[D]ue to the negligence of prior counsel, no witnesses were notified of the need to attend the trial and therefore counsel will need time to not only go through the witness list but adequately prepare all parties."

I am not certain why Ronda McNae's current counsel made such a representation. As stated earlier and documented in the Federal Court case, I was permitted to withdraw per the court's order dated October 1, 2024. [D.E. 216]. On the same date, the Court entered an Order granting a Joint Motion for Extension which continued the trial to commence during the two-week trial period beginning February 10, 2025. [D.E. 215] Per review of the Federal Court Docket, the case was subsequently continued to the court's two-week trial docket beginning April 7, 2025 [D.E. 270]. It was not the undersigned's responsibility to notify witnesses for an April 7, 2025 trial docket on a case where representation ended on October 1, 2024.

It should also be noted, there are motions and attachments filed by Ronda McNae personally, (even though she is represented by counsel) which have now been designated by the Court as "restricted' which will prevent you from reviewing same. These pleadings contained disclosures of  personal and sensitive information which Ronda McNae filed herself, waiving attorney client privilege and other sensitive issues. See [D.E. 325]. A copy of any of the restricted document(s) may be available upon request.

Please advise if you have any questions or require any further information or documentation in reviewing the bar complaint.

Very truly yours,

/s/ Richard M. Gomez

RICHARD M. GOMEZ

RMG/lb
Enclosures as noted.

cc:  Ronda McNae  rondamcnae@gmail.com

Pursuant to Rule 3-7.1(f), Rules of Discipline, you must execute the appropriate disclosure paragraph below and return the form to this office by **April 2, 2025**. The rule provides that the nature of the charges be stated in the notice to your firm; however, we suggest that you attach a copy of the complaint.

## CERTIFICATE OF DISCLOSURE

I HEREBY CERTIFY that on this _____ day of _____, 20___, a true copy of the foregoing disclosure was furnished to _____, a member of my present law firm of _____, and, if different, to _____, a member of the law firm of _____, with which I was associated at the time of the act(s) giving rise to the complaint in The Florida Bar File No. 2025-70,440(11K).


_____
Richard Michael Gomez

## CERTIFICATE OF DISCLOSURE
### (Corporate/Government Employment)


I HEREBY CERTIFY that on this _____ day of _____, 20___, a true copy of the foregoing disclosure was furnished to _____, my supervisor at _____ (name of agency), with which I was associated at the time of the act(s) giving rise to the complaint in The Florida Bar File No. 2025-70,440(11K).


_____
Richard Michael Gomez

## CERTIFICATE OF NON-LAW FIRM AFFILIATION
### (Sole Practitioner)

I HEREBY CERTIFY to The Florida Bar on this _____ day of _____, 20___, that I am not presently affiliated with a law firm and was not affiliated with a law firm at the time of the act(s) giving rise to the complaint in The Florida Bar File No. 2025-70,440(11K).


_____
Richard Michael Gomez

# EXHIBIT A

**Richard Gomez**

| | |
|---|---|
| **From:** | Ronda McNae <rondamcnae@gmail.com> |
| **Sent:** | Thursday, September 12, 2024 11:00 PM |
| **To:** | Richard Gomez |
| **Subject:** | Re: FItzgerald v. Ronda McNae  - Summary Judgment Issues |

I 💯 agree!!! Thank you for explaining this in writing! My brain can handle it much better!! Thank you thank you thank you!

---

**From:** Richard Gomez <richardgomez@rgpalaw.com>
**Sent:** Thursday, September 12, 2024 7:32:05 PM
**To:** Ronda McNae <rondamcnae@gmail.com>
**Subject:** FW: FItzgerald v. Ronda McNae - Summary Judgment Issues

See below.

Richard M. Gomez
LAW OFFICES OF GOMEZ & GOMEZ
4300 Biscayne Blvd, Suite 305
Miami, FL  33137
O: (305)825-5506
F: (305) 825-2699
C: (305) 336-9175
richardgomez@rgpalaw.com


**From:** Richard Gomez
**Sent:** Thursday, September 12, 2024 9:53 PM
**To:** Ronda McNae <rondamcnae@gmail.com>; Will McNae <willmcnae@gmail.com>
**Subject:** FItzgerald v. Ronda McNae - Summary Judgment Issues
**Importance:** High



Ronda,

I have determined that moving for summary judgment on damages would not be successful and risks damaging your credibility with the judge on why he should deny Fitzgerald's motion for summary judgment on liability.

In responding to Fitzgerald's motion, we argue that summary judgment is improper because he has not shown any evidence of actual damages. In Florida, however, a plaintiff can recover "nominal" damages (i.e., $1) for a breach of contract - even if he/she cannot prove actual damages. While the original strategy was to ask for summary judgment on the ground that Fitzgerald has no actual damages. However, he could recover nominal damages, and the court would not be able to grant summary judgment in your favor, as there is a disputed question of fact as to whether plaintiff would be entitled to nominal damages.   If the jury determines there was a breach (which, based on the evidence, is likely), nominal damages will be awarded, even if plaintiff does not prove actual damages.   An award of nominal damages in a breach of contract case would make plaintiff the prevailing party, and he would be entitled to his attorney fees and costs.   Plaintiff's likely strategy in seeking summary judgment on liability is to: 1. establish a breach as a matter of law i.e., by having the court grant summary judgment and 2. Even if plaintiff

cannot prove actual damages, plaintiff would still be entitled to nominal damages. Then the reimbursement of attorney's fees and costs would be awarded.

Asking the court for summary judgment on the lack of actual damages also risks damaging our credibility with the judge. In responding to Fitzgerald's motion, you raised a compelling argument that these issues concerning damages should be decided by a jury. In many ways, you would be raising a contradictory argument in our motion.

I also researched the materiality issue as another approach for a possible basis for summary judgment.  In your response, under section III., you argued that the plaintiff did not prove materiality and based upon the failure to do so, the motion should be denied.  I researched whether failing to plead materiality could also serve as an argument for summary judgment.  However, the case law holds a party is not required to plead "materiality".  Additionally, the Confidential Settlement Agreement in the last sentence of paragraph no. 16, states, "Therefore, the McNaes agree and acknowledge that any violation of this section or disclosure of any of the terms of the Settlement Agreement beyond the exceptions identified above in this section shall constitute a material breach of this Agreement."  This was a concern from the beginning, and I expect plaintiff will likely raise this in his reply to your response to the motion for summary judgment, since the agreement provides that a breach of the confidentiality clause will be deemed material.

By not filing for summary judgment, you are not waiving your decision to pursue a duress argument at trial. Only the court can dismiss that defense, by either granting Fitzgerald's motion for summary judgment before trial or ruling on the motion during the trial on a motion for directed verdict.

Let me know if you have any questions.   I will be available up to 11:30 ECT.

Richard M. Gomez
LAW OFFICES OF GOMEZ & GOMEZ
4300 Biscayne Blvd. Suite 305
Miami, FL  33137
O: (305)825-5506
F: (305) 825-2699
C: (305) 336-9175
richardgomez@rgpalaw.com

# EXHIBIT B

LAW OFFICES OF

# GOMEZ & GOMEZ

4300 Biscayne Blvd. – Suite 305

Miami, Florida 33137

Richard M. Gomez
richardgomez@rgpalaw.com

Tel: (305) 825-5506
Fax: (305) 825-2699

**VIA EMAIL: khall@allpointslegal.com**

March 13, 2025

Keisha K. Hall, Esquire
All Points Legal, PLLC
200 S. Andrews Avenue, Suite 504
Fort Lauderdale, FL 33301

Re:   <u>MICHAEL J. FITZGERALD v. WILLIAM McNAE</u>
      <u>CASE NO. 2023-025855-CA-01 – MIAMI-DADE CIRCUIT COURT</u>
      <u>OUR FILE NO. 5695</u>

Dear Ms. Hall:

Please let the serve as a follow up to our telephone call this afternoon.

As you are aware, at the request of William McNae, I provided you with the two USB thumb drives (Red and Blue) which contained the file materials I was provided when I was representing both Ronda McNae and William McNae. It was brought to my attention today by Ms. McNae that the USB thumb drives include documents which may be confidential pertaining to Ronda McNae. I have reviewed the two thumb drives, and any potentially confidential records are contained on the red thumb drive. I have attached a listing of the red thumb drive folders as currently labeled in my file and have designated the folders which may contain confidential information with an "X."

I would request that you advise whether you have reviewed the contents of any of the designated folders.  Moreover, I would also request that you delete and/or destroy all copies as any disclosure was inadvertent.

If you have any questions or need clarification pertaining to the specific documents, please contact me.

Very truly yours,

/s/ Richard M. Gomez

RICHARD M. GOMEZ

RMG/lb
Enclosures
cc: William McNae via email

- AGREEMENT WITH ARAG
- ANSWER AND COUNTER-CLAIM
- Billing
- CDOC
- COMPLAINT AND AMENDED COMPLAINT
- CORRESPONDENCE - BFW OUT TO OTHERS - PDF'S
- CORRESPONDENCE - BFW OUT TO OTHERS - WORD
- CRIF
- DECLARATIONS
- DRAF
- EXPERTS - REPORTS, OPINIONS & DISCLOSURES
- HEARING TRANSCRIPT
- INTERROGATORY ANSWERS
- LEGAL RESEARCH
- LIN
- MEDIATION
- MEDR
- MISC
- MOTIONS
- NOTICES
- NOTICES OF HEARING
- NOTICES OF TAKING DEPOSTION
- ORDERS
- PLEADINGS
- REPLIES TO MOTIONS
- REQUEST FOR ADMISSIONS & RESPONSE
- REQUEST FOR PRODUCTION & RESPONSES
- RESPONSES TO MOTIONS
- SUBPOENAS
- WITNESS LISTS

# EXHIBIT C

**From:** Richard Gomez
**Sent:** Thursday, March 13, 2025 9:40 PM
**To:** Ronda McNae <rondamcnae@gmail.com>; Ronda McNae <prose.rmcnae@gmail.com>
**Subject:** Urgent Request for Clarification on Case File Handling

I received a phone call from Nichelle Womble yesterday for the first time. I do have access to your file and advised your new attorney accordingly by a follow-up email to her after our call. I was not sure a link would work since the file was so large and in separate folders but I tested same and I advised Ms. Womble accordingly. (See below). I have not received a response from her but will now send her the links unless you instruct otherwise.

> **From:** Richard Gomez
> **Sent:** Wednesday, March 12, 2025 3:35 PM
> **To:** nichelle@amethystlawgroup.com
> **Subject:** Fitzgerald v. Ronda McNae
>
> As per our call today in response to your vm from earlier today, the file consists of two USB's (Red and Blue). Ms. McNae has the exact same content as we both received the file from her first law firm – Brodsky Fotiu-Wojtowicz. The files are large, and I had suggested you have Ms. McNae overnight you USB of the files. I just tested via Microsoft "share" and it looks like I can share each USB via links.
>
> Please send me a copy of the Notice of Appearance and authorization directly from Ronda McNae permitting me to send you the file documents.
>
> Thank you.
>
> Richard M. Gomez
> LAW OFFICES OF GOMEZ & GOMEZ
> 4300 Biscayne Blvd. Suite 305
> Miami, FL 33137
> O: (305)825-5506
> F: (305) 825-2699
> C: (305) 336-9175
> richardgomez@rgpalaw.com

As you know, the three of us were working with the file materials for both cases during my representation of you and Wil since both cases are related and the files documents pertain to both cases. You and Will had the same file documents I was provided by Attorney Fotiu-Wojtowicz. I am not sure anything confidential was sent to Wil's new attorney, Keisha Hall, but as a precaution I have contacted her and advised of the issue. I have noted which files may contain confidential information and instructed her to destroy/discard same. She understood the issue and advised she would comply. Enclosed is a copy of my letter to Ms. Hall. If you believe there are any other portions of the file which are confidential, please advise.

I have previously provided you with copies of all pleadings and substantive communications during my representation.

# EXHIBIT D

From: Keisha Hall <khall@allpointslegal.com>
Sent: Thursday, March 27, 2025 11:07 PM
To: Richard Gomez <richardgomez@rgpalaw.com>
Cc: APL Assistant <Assistant@allpointslegal.com>
Subject: RE: Fitzgerald v. William McNae

Good day Richard:

Apologies, I have been dealing with several issues since we last spoke. See image below with
the files deleted. I never received files named Correspondence so cannot speak to the same.
The files will also be emptied from my deleted basket.

# EXHIBIT P

**Verified Timeline and Key Communications:**

**Fitzgerald v. Ronda McNae – Sept 11–12, 2024**

## September 11, 2024

### Email from Ronda McNae to Richard Gomez – 5:44 PM

- You asked:

    "Aren't we also using duress to argue in this motion which also requires statements of fact?"

---

### Email from Richard Gomez to Ronda McNae – 7:20 PM

- Richard clarified:

    "We are not moving for summary judgment on duress. That would be denied as there are questions of fact which would preclude SJ."

---

## September 12, 2024

### Email from Ronda McNae to Richard Gomez – 7:02 AM

- You stated:

    "I'm a bit lost on what's going on. I was trying to focus on damages while mentioning duress. To be clear, I do not consent to dropping my affirmative defense. You have said all along we would use it for MSJ which I was in agreement with."

---

### Email from Richard Gomez to Ronda McNae – 12:43 PM

- Richard responded:

    "Duress goes to liability so we used in opposing plaintiff's motion for summary judgment. It has nothing to do with damages and does not belong in our motion for summary judgment."

---

### Email from Richard Gomez to Ronda and Will McNae – 2:09 PM

- Richard wrote:

"We have hit a roadblock on our motion for summary judgment on damages. I am looking at one more angle and will call you to discuss the legal issues."

---

**Email from Ronda McNae to Richard Gomez – 6:05 PM**

- You wrote:

  "Pleaseeee email me a time frame. You're asking to speak last minute running around with four kids, basketball practice, and football practice. I do not know how anyone juggles 4+ kids."

- Then in the same email thread, you followed up with a formal message:

  "This topic is extremely important to me emotionally as it is the difference between getting my voice back or having to live life under this NDA. I'm feeling like I'm somehow losing my chance at Duress."

  And:

  "I do not want to waive my right to use the duress defense at trial. Can you confirm that the duress defense will be preserved and that we will pursue it at trial to challenge the validity of the contract?"

---

**Email from Richard Gomez to Ronda and Will McNae – 7:32 PM**

- Richard sent a detailed analysis and stated:

  "I have determined that moving for summary judgment on damages would not be successful and risks damaging your credibility with the judge on why he should deny Fitzgerald's motion for summary judgment on liability."

- He continued:

  "By not filing for summary judgment, you are not waiving your decision to pursue a duress argument at trial. Only the court can dismiss that defense, by either granting Fitzgerald's motion for summary judgment before trial or ruling on the motion during the trial on a motion for directed verdict."

---

**Email from Ronda McNae to Richard Gomez – 8:00 PM**

- You replied:

"I 💯 agree!!! Thank you for explaining this in writing! My brain can handle it much better!! Thank you thank you thank you!"

(Note: this response appears to express appreciation for the written explanation but does not contradict your earlier insistence on preserving duress.)

## <u>Key Points for Legal Use</u>

1. You clearly stated on **September 12 at 7:02 AM**:

   "To be clear, I do not consent to dropping my affirmative defense."

2. Richard confirmed on **September 12 at 7:32 PM**:

   "By not filing for summary judgment, you are not waiving your decision to pursue a duress argument at trial. Only the court can dismiss that defense…"

3. You again emphasized:

   "I do not want to waive my right to use the duress defense at trial."

4. Richard's statement that "duress… does not belong in our motion for summary judgment" reflects a misunderstanding of how enforceability of the contract (which affects damages) should have been framed.

**Verified Timeline and Key Communications**
*Fitzgerald v. Ronda McNae – September 11-12, 2024*

This exhibit summarizes a sequence of email communications between Ronda McNae and her former counsel, Richard Gomez, regarding the preservation of the duress defense and summary judgment strategy. These communications are referenced in support of Defendant's Supplement to her Rule 60(b) Motion for Relief from Judgment, submitted April 30, 2025, and were also provided in full to the Florida Bar as part of Defendant's verified response to Mr. Gomez's April 13, 2025 submission. The timeline confirms that Defendant did not consent to waiving her duress defense and that counsel's later representations omitted or mischaracterized these key communications.

| Date | Time | Sender / Recipient | Summary of Communication |
|------|------|--------------------|--------------------------|
| Sept 11, 2024 | 5:44 PM | Ronda McNae → Richard Gomez | Defendant inquired: "Aren't we also using duress to argue in this motion which also requires statements of fact?" |
| Sept 11, 2024 | 7:20 PM | Richard Gomez → Ronda McNae | Gomez responded: "We are not moving for summary judgment on duress. That would be denied as there are questions of fact which would preclude SJ." |
| Sept 12, 2024 | 7:02 AM | Ronda McNae → Richard Gomez | Defendant stated: "To be clear, I do not consent to dropping my affirmative defense. You have said all along we would use it for MSJ which I was in agreement with." |
| Sept 12, 2024 | 12:43 PM | Richard Gomez → Ronda McNae | Gomez replied: "Duress goes to liability so we used [it] in opposing plaintiff's motion for summary judgment. It has nothing to do with damages and does not belong in our motion for summary judgment." |
| Sept 12, 2024 | 2:09 PM | Richard Gomez → Ronda & Will McNae | Gomez wrote: "We have hit a roadblock |

| | | | |
|---|---|---|---|
| | | | on our motion for summary judgment on damages. I am looking at one more angle and will call you to discuss the legal issues." |
| Sept 12, 2024 | 6:05 PM | Ronda McNae → Richard Gomez | Defendant expressed: "This topic is extremely important to me emotionally as it is the difference between getting my voice back or having to live life under this NDA... I do not want to waive my right to use the duress defense at trial. Can you confirm that the duress defense will be preserved...?" |
| Sept 12, 2024 | 7:32 PM | Richard Gomez → Ronda & Will McNae | Gomez affirmed: "By not filing for summary judgment, you are not waiving your decision to pursue a duress argument at trial. Only the court can dismiss that defense..." |
| Sept 12, 2024 | 8:00 PM | Ronda McNae → Richard Gomez | Defendant replied with appreciation for the clarification, stating: "Thank you for explaining this in writing... My brain can handle it much better." |

**Key Legal Takeaways:**

1. Defendant expressly stated she did not consent to dropping the duress defense (Sept 12, 7:02 AM).
2. Counsel assured Defendant the duress defense would be preserved for trial (Sept 12, 7:32 PM).
3. Counsel's later representations to the Florida Bar contradict this record and omit key communications.
4. The exclusion of the duress defense at trial and mischaracterization to the Bar constitute strategic misrepresentation and support relief under Rule 60(b)(1), (3), and (6).

# EXHIBIT Q

ARAG Bad Faith Counsel communications regarding counsel Richard Gomez

**September 2024 Email Communications Summary**

**Re: Conflict of Interest and Request for Independent Counsel**

**Email 1 – Sept. 13, 2024 at 10:36 AM**

Subject: *Re: Financial info*

Summary:

You express concerns about Richard Gomez representing both you and Will McNae. You state a need for independent counsel to protect your federal case interests, and propose requesting pro hac vice admission for another attorney. You stress this isn't a request for permission, but a necessity due to ethical concerns.

Relevance:

- Documents your contemporaneous objection to dual representation.
- Shows you took steps to resolve the conflict ethically and practically.
- Supports Rule 60(b)(6) for structural unfairness.

**Email 2 – Sept. 13, 2024 at 11:04 AM**

From: David Fadduol

Summary:

David asks what specific conflict of interest you're perceiving and inquires about the identity of the attorney for the requested pro hac vice admission.

Relevance:

- Demonstrates your legal team took your conflict claims seriously.
- Reinforces your proactive attempt to raise and clarify ethical issues.
- Provides a clean paper trail supporting the conflict-of-interest claim under Rule 60(b)(1) and (5).

**Email 3 – Sept. 13, 2024 at 1:06 PM**

Subject: *Request for Additional Legal Representation Due to Conflict of Interest*

Summary:

You inform counsel that you've prepared and attached a letter to ARAG, formalizing your request for new representation due to conflict.

Relevance:

- Proves formal written effort to change counsel due to dual-representation concerns.
- Counters any assertion that these objections were made only post-judgment.
- Helps demonstrate timeliness and diligence, key elements of Rule 60(b).

**Email 4 – Sept. 13, 2024 (Attached Letter to ARAG)**

Summary:

A detailed, point-by-point letter requesting replacement counsel due to divergent interests, confidentiality risks, inconsistent legal strategies, and Richard Gomez's inability to represent both you and Will fairly. You name Walter Bernard as your proposed replacement.

Relevance:

- Core exhibit supporting Rule 60(b)(3) and (6)—shows precise, documented basis for the motion.
- Demonstrates actual steps taken to avoid the prejudice now alleged.

**Email 5 – Sept. 13, 2024 at 4:30 PM**

From: David Fadduol

Summary:

Acknowledges your concerns, schedules a call, and instructs you not to send the request to ARAG yet.

Relevance:

- Validates that your team understood this was an urgent ethical concern.
- Confirms efforts were made to contain or resolve the issue before trial.
- Shows that your delay in changing counsel was not due to inaction, but coordination with others.

**Email 6 – Sept. 13, 2024 at 5:39 PM**

Summary:

You express frustration about Gomez discussing your motions with Will, and about Gomez involving someone unfamiliar with your case. You state that too many lines have been blurred and request assistance prioritizing your federal case.

Relevance:

- Strongly corroborates your claim that the strategic conflict between spouses was active and known.
- Demonstrates breakdown in representation and confidentiality concerns.
- Key evidence for Rule 60(b)(1) (mistake) and (3) (misrepresentation).

**Email 7 – Sept. 16, 2024 at 7:53 AM**

Summary:

You decline a scheduled call, explaining that PTSD symptoms make it hard to process complex conversations verbally and ask that the issues be addressed in writing.

Relevance:

- Documents your disability-based communication needs and request for accommodation.
- Lends weight to a due process and ADA-related claim, tying into Rule 60(b)(6).
- Further shows diligence in communicating despite barriers.

**Email 8 – Sept. 13, 2024 at 3:18 PM**

Summary:

You reiterate your request for assistance submitting the ARAG letter and express concern that your representation feels compromised. You explain your reasoning for choosing Walter Bernard and emphasize urgency.

Relevance:

- Reinforces your attempt to secure alternative representation due to perceived ethical violations.
- Counters any claim that you waived objections or accepted Gomez's dual role.
- Supports the narrative of procedural and structural prejudice.

**From:** Ronda McNae <rondamcnae@gmail.com>
**Sent:** Friday, September 13, 2024 10:36:37 AM
**To:** David Fadduol <dfadduol@ruizandsmart.com>; Will McNae <willmcnae@gmail.com>
**Cc:** Chris Jarman <cjarman@ruizandsmart.com>; Isaac Ruiz <iruiz@ruizandsmart.com>
**Subject:** Re: Financial info

Hi!

Just so you know, we haven't forgotten! The past two weeks have been stressful as we focused on compiling everything for the MSJ response while debating whether to file. Now that it's behind us, we'll be able to dedicate more time to compiling everything for you.

Additionally, I have some concerns about a potential conflict of interest with Richard representing both Will and me. As we prepare for trial, I believe it's essential to bring in another attorney who can focus purely on my interests. This will alleviate a lot of the pressure on both Will and me. Unfortunately, ARAG placed us in this situation by having us share counsel, but as we approach trial, I realize how much additional help is needed. I need someone solely focused on my goals for this case, which have been clear from the start. With Will returning to Microsoft, the timing is perfect.

We should reach out to ARAG to request pro hac vice counsel for the federal case. Would it be better for us to write the letter, or would you prefer to make the request on our behalf? The rate for the additional counsel is $450 per hour. I need to ensure I'm fully prepared for trial, especially since ARAG doesn't cover appellate court, so I have only one shot.

Please let me know the next steps. With all do respect, this isn't a request for permission; it's a necessity for several ethical reasons as it relates to the Federal and State case intertwining.

Sincerely,

Ronda

On Fri, Sep 13, 2024 at 11:04 AM David Fadduol <dfadduol@ruizandsmart.com> wrote:

Hi Ronda,

Please do not contact ARAG directly.

What is the conflict of interest that you are perceiving?

Who is the non-Florida attorney that you are referring to? What Florida attorney would that attorney use for the pro hac admittance?

Thanks,

David H. Fadduol (he/him)
Attorney
dfadduol@ruizandsmart.com
T: 425-998-8903 | F: 206-785-1702

**From:** Ronda McNae <rondamcnae@gmail.com>
**Sent:** Friday, September 13, 2024 1:06 PM
**To:** David Fadduol <dfadduol@ruizandsmart.com>; jruiz@ruizandsmart.com <jruiz@ruizandsmart.com>, Chris Jarman <cjarman@ruizandsmart.com>; Will McNae <willmcnae@gmail.com>
**Subject:** Re: Financial info

Subject: Request for Additional Legal Representation Due to Conflict of Interest Concerns

I have attached my letter to ARAG.

Sincerely,

Ronda McNae

---

September 13, 2024

Dear Arag,

I am writing to formally request the addition of an outside attorney to my legal team due to significant concerns regarding a conflict of interest regarding Richard Gomez representing both Will McNae and myself in our respective cases.

Here are the main reasons for my concern:

**1. Diverging Interests:**

• Different Defendants, Different Cases: Will and I are involved in separate lawsuits—mine in federal court and his in Florida state court. Our legal strategies, defenses, or goals may differ significantly, which could pose challenges for Richard Gomez in fully advocating for one of us without undermining the other.

• Settlement or Litigation Strategy: If Will and I have different approaches to settlement or litigation, Richard could find himself having to choose between conflicting strategies, preventing him from offering undivided loyalty and representation to either of us.

**2. Confidential Information:**

• Shared Confidential Information: Since Richard represents both Will and me, there's a risk that information disclosed by one of us could inadvertently be used against the other in future legal proceedings.

• Attorney-Client Privilege: Handling confidential information for both clients could jeopardize attorney-client privilege, particularly if there's a risk of cross-sharing sensitive information.

**3. Inconsistent Legal Theories or Defenses:**

• Incompatible Defenses: Our defenses may conflict. For example, if one of us presents a defense that implies culpability for the other, Richard would be unable to defend both of us zealously.

• Liability Shifting: In situations where blame may be shifted between defendants, Richard could be put in a position where he's unable to properly advocate for both Will and me

**4. Fiduciary Duty and Full Loyalty:**

• Conflicted Loyalty: Richard owes a duty of loyalty to each of us, but it may be impossible to fulfill this duty equally in both cases. His obligations to one of us could limit his ability to act in the best interest of the other.

• Independent Legal Advice: Will and I both need independent legal advice to ensure our best interests are fully represented. Dual representation can prevent each of us from receiving unbiased guidance on important decisions, like whether to settle, appeal, or pursue specific legal strategies.

**5. Impact of One Case on the Other:**

• Judicial Impact: Outcomes or rulings in one case could impact the other. Richard may find it difficult to address potential negative consequences for one client without harming the interests of the other.

• Public Perception and Legal Risk: Adverse rulings in Will's case could negatively affect my federal case, and Richard could be perceived as failing to protect the full interests of one or both of us.

**6. Settlement Negotiations:**

• Conflicting Settlement Negotiations: If settlement discussions arise, Will and I may have different positions on settling our cases. Richard could be placed in a difficult position trying to negotiate on behalf of both of us without compromising one person's interests.

• Potential for Uneven Advocacy: There's a risk that Richard might prioritize one client over the other during negotiations, especially if one settlement benefits one of us more than the other.

**7. Consent and Full Disclosure:**

• Failure to Obtain Informed Consent: Even if Will and I initially consented to Richard representing both of us, the complexities of the two cases have changed which could lead to potential conflicts. The goal is to avoid any breach of legal ethics by having separate counsel

**8. Potential for Future Conflict:**

• Changing Dynamics: As the lawsuits progress, potential conflicts that may not have been apparent at the onset could emerge. If our interests diverge further, it may become impossible for Richard to continue representing both of us fairly.

• Representation at Appeal: Should either Will or I pursue an appeal, our interests may diverge even more, making it even more difficult for Richard to represent both of us

I am requesting you to bring on new counsel, specifically Walter Bernard, who is already familiar with my case and has agreed to assist, taking it on at his standard hourly rate of $450.00. Given the complexities of my case and the limited time to prepare for trial or secure a settlement that protects my interests, it's critical that Walter's fee reflects the work required. My interests in this case are separate from Will's, which has moved to state court, and I believe this further justifies the need for independent representation. Walter is working with local counsel in the Southern District of Florida, who would assist with his pro hac vice admission. Walter Bernard's ARAG Attorney ID for reference is 2109-7208-6827. Please let me know the next steps.

Sincerely,
Ronda McNae

**From:** Ronda McNae <rondamcnae@gmail.com>
**Date:** Friday, September 13, 2024 at 3:18 PM
**To:** David Fadduol <dfadduol@ruizandsmart.com>, Isaac Ruiz <iruiz@ruizandsmart.com>, Chris Jarman <cjarman@ruizandsmart.com>, Will McNae <willmcnae@gmail.com>
**Subject:** Re: request

Please confirm that you've received my letter to ARAG and will please assist in getting it submitted. I understand the reasons for not contacting ARAG directly, but I hope you recognize that we need to prioritize what's best for us both individually and as a family. I will refrain, hoping you can take care of this as I could really use your help and collaboration.

I just cannot go to trial feeling like my interests and representation are compromised.

I trust Walter Bernard to represent me effectively, particularly in situations where there may be discussions around settlement or when the state and federal cases overlap. Richard cannot represent both Will and me effectively if our strategies and goals are different especially if they shift. Having Walter on board strengthens our position for trial appearing with more armor and could also provide leverage if I decide to pursue settlement. His perspective will add value with another set of eyes on the case.

Time is of the essence, as I'm already identifying a conflict of interest and anticipate further complications down the road.

I'm eager to have Walter Bernard join as soon as possible, and I also want to reiterate that I wouldn't be in this position had ARAG not terminated my previous counsel to cut costs.

-Ronda

**From:** David Fadduol <dfadduol@ruizandsmart.com>
**Sent:** Friday, September 13, 2024 4:30 PM
**To:** Ronda McNae <rondamcnae@gmail.com>; Isaac Ruiz <iruiz@ruizandsmart.com>; Chris Jarman <cjarman@ruizandsmart.com>; Will McNae <willmcnae@gmail.com>
**Subject:** Re: request

Hi Ronda.

We have serious concerns about this. Are you and Will available for a call Tuesday at 4pm?

Please do not send anything to ARAG in the meantime.

Thanks,

David H. Fadduol (he/him/his)
Attorney

← **Ronda McNae** <rondamcnae@gmail.com>    Sep 13, 2024, 5:39 PM    ☆  ☺  ↰  ⋮

to David, Isaac, Chris, Will  ▾

Well, I have serious concerns about a conflict of interest in my federal case. Delaying the conversation until Tuesday feels like an unnecessary postponement, and while I've raised these concerns before, this is the first time I've clearly laid them out in writing. I understand you don't want to be in a position where it's evident that I communicated a conflict of interest but the issue was delayed right before trial or hindered for the sake of this bad faith case.

It's unacceptable that Richard discusses my motions with Will without me to talk about my case. Additionally, it's unfair that Richard consulted with ▬▬▬▬▬ about her "impression" of my case when she wasn't present for crucial depositions, hasn't seen my counseling records, and was never retained to represent me or fully understand my personal goals and interests. There are too many blurred lines and I don't need to list them all to be heard and understood.

Please explain how you can assist on your end. While this case is important, my federal case is the priority as it carries far more weight and significance. I've sought legal advice on the matter, and I am confident that this is the best course of action moving forward.

Will is in strong agreement here. He's aware how the lines have been blurred. He can share in his own words. (No pressure will)

Ronda

---

## Re: request  ⌕

🖨  ↗

**Ronda McNae** <rondamcnae@gmail.com>    Mon, Sep 16, 2024, 7:53 AM    ☆  ☺  ↰  ⋮

to David, Isaac, Chris, Will  ▾

Good morning,

We won't be available for a phone call tomorrow. Could you please share your concerns via email? I find it helpful to read through things multiple times to fully understand them when they're written down. My PTSD symptoms have resurfaced, making it difficult for me to process complex conversations over the phone right now. Thank you for your understanding.

Regards,

Will and Ronda