IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-22171-JEM

MICHAEL FITZGERALD,
individually, and YELANY DE VARONA,
individually,

        Plaintiffs,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

        Defendants.

_____/



## DEFENDANT'S NOTICE OF OBJECTION TO PREMATURE FEE PROCEEDINGS AND PRESERVATION OF POSITION UNDER LOCAL RULE 7.3

Defendant Ronda McNae, appearing pro se, respectfully submits this Notice to formally object to Plaintiffs' premature initiation of attorneys' fee proceedings in violation of Local Rule 7.3. Plaintiffs have demanded conferral regarding a draft motion for attorneys' fees that has not been filed, while the enforceability of the underlying judgment remains actively contested through pending Rule 59(e) and 60(b) motions. Any fee-related activity at this stage—including conferral—runs contrary to established procedural norms, risks duplicative litigation, and undermines the orderly administration of justice. Defendant preserves her position that such proceedings are improper while threshold post-judgment issues remain unresolved.

Initiating fee proceedings while the validity and enforceability of the underlying judgment remain subject to challenge is procedurally inappropriate and would result in judicial inefficiency.

1

1. **Final Judgment Mooted Without Consideration of Supplement** – Defendant previously filed a Rule 59(e)/60(b) motion (DE 375) challenging the enforceability of the Final Judgment (DE 374) on multiple grounds, including procedural defects, due process violations, and newly discovered evidence. Although the Court initially entered an Amended Final Judgment (DE 380) stating that all pending motions were denied as moot, it has since clarified that Defendant's Rule 59(e)/60(b) motion remains pending and was not rendered moot (*See* DE 384, Exhibit E). Defendant notes that this sequence of events occurred without the Court's apparent consideration of her timely supplemental filings (DE 381, DE 382), which were submitted under pro se constraints. This raises serious concerns about access to justice and procedural fairness. Proceeding with fee conferral under Local Rule 7.3 while such post-judgment issues remain unresolved is both prejudicial and premature.

> "Where a post-judgment motion is pending, the court may delay a fee ruling to avoid unnecessary litigation should the judgment be altered or vacated."— *Figueroa v. Rivera*, 147 F.3d 77, 83 (1st Cir. 1998)

> "It is within the Court's discretion to defer ruling on attorneys' fees pending resolution of post-judgment motions."— *Crescent City Estates, LLC v. Tucker*, No. 3:14-CV-272-J-32MCR, 2016 WL 852468, at *1 (M.D. Fla. Mar. 4, 2016)

If the Final Judgment is vacated, modified, or partially set aside in response to Defendant's pending motion, the basis for any fee claim may be materially altered. Proceeding on fees now would risk unnecessary litigation, possible reconsideration, and avoidable burden on the parties and the Court.

2. **Related State Litigation Involving Overlapping Work Product** – Plaintiffs' counsel is simultaneously prosecuting a parallel state court action against Defendant's spouse, William McNae, based on the same Confidential Settlement Agreement and involving overlapping allegations and factual materials. *See* Exhibit A and I. The same law firm represents Plaintiffs in both matters. Many of the materials developed and billed in this federal action appear to be reused or repurposed in that state case, raising a serious risk of duplicative billing or improper apportionment of costs and fees between the two matters. This overlap weighs against premature adjudication of federal fees before related proceedings are complete. As a result, there is a high risk that legal work product is being shared between cases, raising two interrelated concerns:

a. **Duplicative Billing** – Work performed in the federal case may be billed again in the state case, or vice versa, resulting in an unjustified fee burden on Defendant.

b. **Improper Apportionment** – Work that was primarily for the benefit of the state case may be misattributed or improperly charged to Defendant in this federal matter.

Defendant has reviewed the draft motion for attorneys' fees provided by Plaintiffs' counsel and has serious concerns. Many of the claimed costs and fees relate to matters excluded from trial, abandoned tort claims, or efforts to discredit Defendant rather than to **litigate the breach of contract claim that ultimately proceeded to trial**. Moreover, Plaintiffs' counsel has used intimidating and coercive language in post-trial communications, including a May 1, 2025 email threatening U.S. Marshal involvement if Defendant did not comply with Rule 1.977, despite her pro se status and ongoing procedural questions. *See* Exhibit G. Defendant cannot meaningfully confer on this draft

while the underlying judgment remains in dispute and while under threat of coercive

enforcement tactics.

On Thu, May 1, 2025 at 10:46 AM Peter E. Berlowe <PEB@assoulineberlowe.com> wrote:
Dear Mrs. McNae:

Good afternoon.  Attached please find Mr. Fitzgerald's Amended Final Judgment against you.  Also
attached, please find a blank Florida Rule of Civil Procedure Form 1.977, also known as a Fact Information
Sheet.

Pursuant to the attached Amended Final Judgment, you are required to timely, fully, completely and
honestly fill out the Fact Information Sheet within 45 days of today, which I calculate as June 16, 2025,
inclusive of weekends.

Your failure to timely, fully, completely, and honestly fill out the Fact Information Sheet will result in our
seeking an order to show cause why you should not be held in contempt of court, and if necessary and
appropriate, seeking your being brought before the Court by U.S. Marshall to explain your failure to do as
so ordered.  Hopefully, you will take the Order very seriously, comply to the letter of the law, and we will not
have to go through that process of bringing you before the Court.

Have a good day.

Sincerely,

Peter E. Berlowe, Esq.
Business and Intellectual Property Litigation

**ASSOULINE & BERLOWE**
THE BUSINESS LAW FIRM

3. **Draft Fee Materials Raise Serious Procedural and Substantive Concerns** – Defendant

has reviewed Plaintiffs' draft motion for attorneys' fees, accompanying billing declaration,

and draft bill of costs, all of which were circulated under Local Rule 7.3 for conferral

purposes. Defendant does not attach these materials here, as they have not been filed with

the Court. However, she reserves the right to challenge their content and evidentiary

support should they later be filed. Based on her review, Defendant has identified serious

4

concerns regarding duplicated billing, improper apportionment of fees related to parallel state litigation, and charges for efforts unrelated to the breach of contract claim that proceeded to trial. Proceeding with fee conferral while the judgment remains contested— and under threat of coercive enforcement communications—precludes meaningful engagement and risks prejudicing Defendant's position.

4. **Judicial Economy and Procedural Fairness Still Support Deferral** – Although the Court initially entered an Amended Final Judgment stating that all pending motions were "denied as moot" (see DE 380), it has since clarified that Defendant's Motion to Alter or Amend Judgment (ECF No. 375) was not rendered moot and remains pending. Plaintiff's response to that motion is currently due on May 8, 2025 (see DE 384). Accordingly, the enforceability and fairness of the judgment remain under active review. Proceeding with fee litigation while that Rule 59(e) motion is still pending risks inefficiency, unnecessary duplication, and potential prejudice.

Defendant further notes that she communicated directly with the Court on April 30 and May 1, 2025, to notify chambers of her pending motions and timely Supplement supported by newly discovered evidence of attorney misconduct. These communications were made in good faith, copied to opposing counsel, and prompted by the procedural constraints applicable to pro se litigants. Although the Court has since stricken one such email under Local Rule 7.7 (see DE 384), Defendant's intent was solely to ensure her submissions were considered before any dispositive ruling.

Considering opposing counsel's prior direct communications with chambers on contested matters—conduct to which no objection or sanction was issued—Defendant

5

reasonably believed that providing similar notice regarding time-sensitive post-judgment issues was appropriate and consistent with established practice in this case. *See* Exhibit F, and Exhibit D (Defendant's emails). Moreover, as a pro se litigant barred from using the Court's electronic filing system and with no alternative mechanism provided to ensure same-day docketing of critical motions, Defendant's communication was a necessary and good-faith effort to avoid procedural prejudice. To now strike Defendant's communication while overlooking identical conduct by licensed counsel imposes an uneven standard and raises serious concerns of procedural disparity and unequal access to justice.

5. **Prior Inconsistent Arguments Further Weigh Against Premature Relief** – Plaintiffs' counsel previously opposed a motion for fees brought by William McNae, arguing that any time billed for overlapping work or duplicative use in other matters should be denied. *See* DE 123, Exhibit C. Yet the same firm now seeks to recover fees in this case for work reused in the active state court litigation. This contradictory position undermines their credibility and supports deferring fee proceedings until related litigation has concluded. *See also* DE 185, Exhibit B.

6. **Preservation of Objection to Fee Proceedings** – Defendant maintains her objection to any fee-related deadlines or conferral obligations under Local Rule 7.3 at this time. In light of the pending Rule 59(e)/60(b) motion (DE 375) and the unresolved issues affecting the enforceability of the Final Judgment, Defendant respectfully asserts that fee proceedings— including conferral—are premature. Defendant will continue to preserve all objections and defenses concerning the timing and propriety of any fee claim while post-judgment review remains on-going.

7. **Reservation of Rights** – Defendant expressly reserves the right to fully oppose any filed motion for fees and costs, including all objections as to entitlement, scope, duplication, reasonableness, and timing under Fed. R. Civ. P. 54(d), Local Rule 7.3, and all applicable authorities. Nothing in this notice shall be construed as a waiver of any such objections or defenses.

8. **Supporting Communications (Exhibit G and H)** – Defendant includes with this Notice a set of email correspondence between herself and Plaintiffs' counsel that demonstrates:

   a. Defendant's good faith request for a reasonable timeline to review a voluminous draft fee motion while appearing pro se and caring for four children, including two foster children in the process of adoption; and

   b. Plaintiffs' counsel's refusal to defer conferral or accommodate Defendant's circumstances, despite being informed that Defendant had filed a Rule 59/60 motion and that supplemental evidence was forthcoming.

These communications reflect Defendant's active participation in the post-trial process and her reasonable reliance on the expectation that her filings would be duly considered by the Court. Although Defendant provided timely notice and supplemental materials in good faith, the Court initially issued an order suggesting her motion was moot—only later clarifying that it remains pending. Under these circumstances, proceeding with fee-related litigation while threshold issues remain unresolved may give rise to procedural inequities and encourage adversarial tactics over orderly adjudication.

In addition, Plaintiffs' counsel has used coercive language in post-trial communications, including a May 1, 2025 email threatening U.S. Marshal enforcement under Rule 1.977, despite

the unresolved status of the judgment and Defendant's pro se position. This communication, provided for context in Exhibit G, further undermines the fairness of requiring premature conferral

Defendant respectfully submits this Notice to preserve her procedural and substantive objections to the initiation of fee-related activity at this juncture. This filing is intended solely to ensure that the record reflects Defendant's position concerning the timing of fee proceedings in light of pending post-judgment motions, unresolved issues affecting the Final Judgment, and the risk of duplicative litigation. Defendant expressly reserves all rights and defenses under applicable law and does not waive any objections to any future motion for attorneys' fees or costs.

**Table of Contents for Exhibits**

**The following exhibits are submitted in support of this Notice:**

**Exhibit A** – State Court Complaint: *Fitzgerald v. William McNae*, Case No. 2023-025855-CA-01

**Exhibit B** – Federal Order Denying Attorneys' Fees to William McNae

**Exhibit C** – Plaintiffs' Opposition to William McNae's Fee Motion (DE 123)

**Exhibit D** – Defendant's April 30 and May 1, 2025 Emails to the Court (DE 382-1 and DE 382-2)

**Exhibit E** – Court's Order Clarifying Motion to Alter Judgment Remains Pending (DE 384)

**Exhibit F** – November 2024 Emails from Meredith Gussin to Chambers

**Exhibit G** – May 1, 2025 Email from Plaintiffs' Counsel Threatening U.S. Marshal Enforcement

**Exhibit H** – Additional Emails with Plaintiffs' Counsel Illustrating Procedural Aggression

**Exhibit I** – Original Complaint in State Court: *Fitzgerald v. W. McNae*

Respectfully submitted,

By: *Ronda McNae*
Ronda Delapina McNae, Pro se Defendant
504 11th Pl, Kirkland, WA 98033

8

Tel: (206) 914-6752
Prose.rmcnae@gmail.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2025, a true and correct copy of the foregoing Notice

of Objection to Premature Fee Proceedings and Preservation of Position Under Local Rule 7.3 was

sent to the Clerk of the Court at the Miami Courthouse, Southern District of Florida, 400 N. Miami

Ave, Room 8N09, Miami, FL 33128. Additionally, in compliance with the Court's requirements

for pro se litigants, a copy of the same document was sent to Plaintiffs' counsel on the same date.

**SERVICE LIST**

Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlowe.com
Counsel for Plaintiff

# Exhibit A

IN THE CIRCUIT COURT OF THE 11ᵀᴴ JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO: 2023-025855-CA-01

MICHAEL J. FITZGERALD,
individually,

              Plaintiff,

v.

WILLIAM MCNAE, individually,

              Defendant.

_____/

## AMENDED COMPLAINT (Amendment as of Right)

Plaintiff, MICHAEL J. FITZGERALD ("Fitzgerald" or "Plaintiff"), files this Amended Complaint against Defendant, WILLIAM MCNAE ("McNae" or "Defendant"), and alleges:

1.     This is an action for damages arising out of Defendant's breach of a contract (the "Confidential Settlement Agreement") with Plaintiff Fitzgerald.[1]

## PARTIES, JURISDICTION AND VENUE

2.     Plaintiff Fitzgerald is a British citizen who resides in England.

3.     Defendant McNae is a United States citizen who is domiciled in Washington State.

4.     This Court has subject matter jurisdiction over this action because it involves an actual and ongoing controversy that exceeds $50,000 plus attorneys' fees and costs. In particular, the amount in controversy is at least $657,228.00 in economic damages due as a result of natural and consequential damages to Plaintiff as a result of Defendant's breaches of the contract at issue

---

[1] Plaintiff reserves the right to reassert his defamation and tort claims in the event that the Confidential Settlement Agreement at issue is deemed unenforceable and/or void by this Court.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*
Case No. 2023-025855-CA-01

in this case.

5.       This Court has personal jurisdiction over Defendant pursuant to Florida Statute §48.193 because he has breached a contract in this state by failing to perform acts required by the Confidential Settlement Agreement to be performed this state.   Furthermore, this Court has jurisdiction over Defendant pursuant to Florida Statute §685.102 because the Confidential Settlement Agreement has a Florida choice of law provision and Defendant has therefore agreed to submit to the jurisdiction of the courts of this state.

6.       Venue in this district is proper because the underlying events related to the Confidential Settlement Agreement occurred in Miami-Dade County, Florida, and Defendant agreed in the Confidential Settlement Agreement that Miami-Dade County, Florida was the exclusive venue for disputes arising out of the agreement.

7.       The Plaintiff has retained the law firm Assouline & Berlowe, P.A., and has agreed to pay the firm its reasonable attorneys' fees and costs in conjunction with representing the Plaintiff in this action.

8.       All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

**FACTS**

9.       Fitzgerald and Defendant (along with Defendant's wife, Ronda McNae), both with the aid of qualified attorneys, entered into a Confidential Settlement Agreement on or about June 15, 2020.  A true and correct copy of the Confidential Settlement Agreement is attached hereto as **Exhibit A**.

10.      In accordance with the Confidential Settlement Agreement, Defendant and Fitzgerald were required to keep the terms and conditions of the Confidential Settlement

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

Agreement confidential. <u>See</u> Exhibit A, ¶16.

11.     In accordance with the Confidential Settlement Agreement, Defendant was to have no contact with Fitzgerald's then-employer, SoftwareONE. <u>See</u> Exhibit A, ¶4B.

12.     In accordance with the Confidential Settlement Agreement, Defendant was not supposed to speak or write about Fitzgerald, his nationality, his employer, his country of citizenship, his location of residence, his employer, his job function, his job title, his profession, or reference dates, locations or other persons present at any of the events related to the underlying dispute. <u>See</u> Exhibit A, ¶4A. Defendant was also prohibited from referring to Fitzgerald indirectly. <u>Id.</u>

13.     Under the Confidential Settlement Agreement, Fitzgerald paid a sum of money to Defendant, and Fitzgerald and Defendant each released claims against one another. <u>See</u> Exhibit A, ¶¶3, 13.

14.     Under the Confidential Settlement Agreement, Defendant and Fitzgerald agreed not to disparage each other by written or oral word, gesture, or other means, nor would they make disparaging or negative comments about each other, to any person or entity. <u>See</u> Exhibit A, ¶17.

15.     Fitzgerald has complied with all terms and conditions of the Confidential Settlement Agreement.

16.     Defendant breached several provisions of the Confidential Settlement Agreement by contacting SoftwareONE (Fitzgerald's then-employer) on July 15, 2022 and by contacting Microsoft (Defendant's employer who used to do business with SoftwareONE) on April 12, 2022; April 20, 2022; May 2, 2022 and July 13, 2022. Defendant also breached the Confidential Settlement Agreement by contacting others about the existence of the Confidential Settlement Agreement and by disparaging Fitzgerald to others.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*
Case No. 2023-025855-CA-01

17.     Defendant's communications constitute breaches of the following provisions of the Confidential Settlement Agreement:

- ¶4B: prohibition against contacting SoftwareONE;

- ¶16: requirement to keep the terms and conditions of the Confidential Settlement Agreement confidential;

- ¶4A: prohibition from speaking or writing about Fitzgerald directly or indirectly, and,

- ¶17: prohibition from disparaging Fitzgerald to others.

See Exhibit A.

18.     Plaintiff has been damaged as a result of Defendant's breaches both personally and professionally.

19.     Plaintiff has hired the undersigned law firm to prosecute its claim and is obligated to pay it a reasonable fee for its services. Pursuant to Paragraph 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and all costs incurred relating to said enforcement. See Exhibit A, ¶23.

## COUNT I – BREACH OF CONTRACT

20.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Complaint.

21.     The Confidential Settlement Agreement is a binding contract under Florida law.

22.     Defendant breached the Confidential Settlement Agreement by:

A.     Not keeping the Confidential Settlement Agreement confidential as required;

B.     Contacting Fitzgerald's then-employer, SoftwareONE;

C.     Disclosing the existence of the Confidential Settlement Agreement to

4

Fitzgerald's then-employer, SoftwareONE;

D.     Contacting Defendant's employer, Microsoft, and disclosing the existence of the Confidential Settlement Agreement and the underlying dispute to Microsoft;

E.     By referring to Fitzgerald directly by name and/or likeness, being, nationality, country of citizenship, location of residence, employer, job function, jot title, profession, or in reference to dates, locations, or other persons present;

F.     By disparaging, lying and intentionally seeking to harm Fitzgerald both professionally and personally by wrongfully and falsely accusing him of a crime to others; and

G.     By working in concert with his wife, Ronda McNae, to commit her breaches of the Confidential Settlement Agreement and her lies to Fitzgerald;

23.     Plaintiff has been damaged by Defendant's breaches of the Confidential Settlement Agreement. Such damages include the loss of Plaintiff's job at SoftwareONE due to Defendant's false accusations that Plaintiff assaulted Defendant's wife which led to a prolonged internal investigation into Fitzgerald at SoftwareONE. The internal investigation resulted in Fitzgerald not being able to work in his chosen profession, loss of business contacts and relationships, damage to his professional reputation, loss of stock options, and earned bonuses, among other things. These damages were natural and foreseeable consequences of Defendant's multiple breaches of the Confidential Settlement Agreement.

24.     Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*
Case No. 2023-025855-CA-01

**WHEREFORE**, Plaintiff demands judgment against Defendant, William McNae, for compensatory damages in the amount of $657,228.00, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

Date: February 13, 2024                          Respectfully submitted,

                                                 **ASSOULINE & BERLOWE, P.A.**
                                                 Miami Tower
                                                 100 SE 2nd Street, Suite 3105
                                                 Miami, Florida 33131
                                                 Telephone: 305-567-5576
                                                 Facsimile: 305-567-9343

                                                 By:*/s/ Peter E. Berlowe*
                                                 Peter E. Berlowe
                                                 Florida Bar No. 143650
                                                 peb@assoulineberlowe.com
                                                 Meredith J. Gussin
                                                 Florida Bar No. 0512303
                                                 mjg@assoulineberlowe.com
                                                 *Attorneys for Plaintiff Michael Fitzgerald*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email upon all parties listed on the Service List below on this 13th day of February 2024.

                    By:     */s/ Meredith J. Gussin*
                            Meredith J. Gussin

## SERVICE LIST

William McNae
504 11th Place
Kirkland, WA 98033
prose.wmcnae@gmail.com

EXHIBIT A

## Confidential Settlement Agreement

THIS SETTLEMENT AGREEMENT (the "Settlement Agreement" or the "Agreement") is made and entered this __15th__ day of June 2020, by and among MICHAEL J. FITZGERALD ("Fitzgerald"), RONDA MCNAE ("Ronda") and WILL MCNAE ("Will") with Ronda and Will collectively referred to as the "McNaes," and Fitzgerald, Ronda, and Will collectively referred to as the "Parties";

### RECITALS

WHEREAS, Ronda and Will are a married couple;

WHEREAS, Fitzgerald is a single male;

WHEREAS, the McNaes contend that Fitzgerald caused physical injury and mental injury to them in Miami-Dade County, Florida as a result of Fitzgerald's alleged sexual conduct towards Ronda;

WHEREAS, for purposes of avoiding the time and costly expenses associated with litigation, and in the interest of economic expediency, the Parties desire to reach a settlement of all claims between and among themselves; and,

WHEREAS, the parties wish to resolve all disputes between and among them;

NOW THEREFORE in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them.

1. **RECITALS.** The Parties acknowledge that the "WHEREAS" clauses preceding paragraph 1 are true and correct, and are incorporated herein as material parts of this Agreement.

2. **NO ADMISSION OF LIABILITY.** The Parties agree to amicably settle all disputes between and among them. The Parties understand that this Agreement is in full and complete compromise of all disputed claims, both as to questions of liability and damages, including any claims for punitive damages, without an admission of liability or any wrongdoing by any of the Parties, any such liability or wrongdoing being expressly denied by each of the Parties.

3. **CONSIDERATION.** In consideration of the execution of this Agreement and the promises herein contained, the Parties agree to the following:

    A. <u>Payment of Settlement Funds.</u>    On or before June 19, 2020, Fitzgerald agrees to remit payment in the amount of Ninety-Seven Thousand Dollars and 00/100 cents ($97,000.00) to Ronda McNae and remit payment in the amount of Ten Thousand Dollars and 00/100 cents to Will McNae (collectively the "Settlement Funds"). The Settlement Funds to

Page 1 of 5

Ronda's Initials: _____ Will's Initials: _____ Fitzgerald's Initials: _____

MCNAE 000001

Ronda McNae are paid in consideration of the physical and mental injuries she claims, and the settlement funds to Will McNae are in consideration of his loss of consortium claims due to the physical and mental injuries suffered by his wife Ronda. The Settlement Funds shall be remitted by wire to the Max Meyers Law PLLC Trust Account with the following wiring instructions:

> MAX MEYERS LAW PLLC IOLTA TRUST ACCOUNT WIRE INTRUCTIONS.
> Banner Bank - ABA Routing #███1076 and Account #████5818

**4.     NON-MONETARY TERMS.** The Parties agree to the following non-monetary terms:

A.     The McNaes shall remove any prior or current internet posts that reference Fitzgerald by name. The McNaes may speak or write generically about their life events, but in speaking or writing about their life events, the McNaes cannot refer to Fitzgerald's name, likeness, being, nationality, country of citizenship, location of residence, employer, job function, job title, profession, or reference to dates, locations, or other persons present. For instance, Ronda cannot name six people at an event, plus an unnamed person, so that the six people will know who the unnamed person is by process of elimination. Thus, it shall be a breach of this Agreement for the McNaes to indirectly refer to Fitzgerald in a way the McNaes could not do directly.

B.     The McNaes shall not contact Fitzgerald's employer. If Mr. Fitzgerald's employer contacts either of the McNaes, the McNaes shall respond, "the matter has been resolved and I cannot speak any more about it," or words to that effect.

C.     Notwithstanding the confidentiality provision in Section 16, below, the Parties may continue discuss the matter with their respective mental health professionals, but will advise the mental health professionals of this existence of this Agreement and those mental health professionals must follow this Agreement, as well.

D.     The Parties agree to minimize contact upon execution of this Agreement, and they agree to limit such contact as to be only such contact necessary to enforce the terms of this Agreement, with such contact preferably being by the Parties' respective attorneys.

**5.     REPRESENTATIONS AND WARRANTIES.** In making and executing this Agreement, the Parties represent, warrant and agree as follows:

A.     The Parties have had an opportunity to seek independent legal advice with respect to their rights and asserted rights arising out of the matters in controversy and with respect to the advisability of executing this Agreement.

B.     The Parties have made such investigation of all matters pertaining to this Agreement as they deem necessary, and do not rely on any statement, promise or representation by the other Parties hereto with respect to this matter.

**6.     NO CHALLENGE TO SETTLEMENT.** The Parties agree that they will take no action, including, but not limited to the institution of a lawsuit or administrative claim, to

Ronda's Initials _____   Will's Initials _____   Fitzgerald's Initials _____

MCNAE 000002

challenge any provision of this Agreement or regarding the original matter in controversy.

7.    **NO ADMISSION.**  Neither the negotiation nor the execution of this Agreement, nor any of its provisions, are to be construed as an admission by any of the Parties hereto, nor by their respective attorneys, or trustee regarding the truth of any matter alleged relating to the matter of controversy.

8.    **INTEGRATION.**    This Agreement constitutes a single, integrated written contract expressing the entire Agreement between the parties.  There are no other Agreements, written or oral, expressed or implied, between the parties, except as set forth in this Agreement.

9.    **SEVERABILITY.**    Should any part, term or provision of this Agreement be decided by the courts to be illegal, unenforceable or in conflict with any state or federal law or any other applicable law, the validity and enforceability of the remaining portions of this Agreement shall not be affected thereby.

10.    **DOCUMENT PREPARATION.**    If it becomes necessary for any reason to construe this Agreement as permitted by the Rules of Evidence of the State of Florida, this Agreement will be construed as being jointly prepared and written. The Parties agree that the terms and conditions contained herein have been negotiated, renegotiated and considered several times by the parties. The fact that one party or the other prepared the actual final draft of this Agreement shall not be construed as having created any ambiguity.  Should it become reasonably necessary for the parties to prepare additional documents to carry out the intent of this Agreement, each Party agrees to cooperate in the preparation, execution and delivery of same.

11.    **BINDING EFFECT.**  This Agreement shall be binding upon and inure to the benefit of the parties, and their respective successors, heirs, personal representatives and assigns.

12.    **NO WAIVER.**    No waiver of any breach of any term or provision of this Agreement shall be construed to be, nor shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party waiving the breach.

13.    **MUTUAL GENERAL RELEASE.** The Parties agree that they each on their own behalf and on the behalf of any heirs, assigns, beneficiaries, past or future affiliates, shareholders, parents or subsidiaries, attorneys, sureties or insurers, employees, officers, directors, agents, trustees, and any other person or entity bearing a legal relationship as a predecessor or successor in interest and anyone claiming any rights derived from any of them, forever release, discharge, and hold each other and each other's past, present or future affiliates, shareholders, parents or subsidiaries, attorneys, sureties or insurers, employees, officers, directors, agents, and any entity bearing a legal relationship as predecessor or successor in interest, harmless of, and from, any all claims, causes of action, suits, debts, agreements, promises, demands, liabilities, contractual rights and/or obligations, or claims arising in tort, or of whatever nature, in law or in equity, arising out of, or related to, the direct claims asserted and any other claims that could be asserted, any counterclaims, any third-party claims, and any claims to attorneys' fees and cost, whether or not the claim was raised, or could have been raised. The Parties agree that this Release is not intended as an admission of any wrongdoing or liability on the part of any Party, and that this Release is not

**Ronda's Initials** ___   **Will's Initials:** ___   **Fitzgerald's Initials:** ___

MCNAE 000003

admissible as evidence in any proceeding as an admission of liability. The Parties warrant that they have not made any assignment of any right, claim, or cause of action covered by this Release to any other person, corporation or other legal entity.

**14.    GOVERNING LAW.**   This Agreement shall be deemed to be made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of Florida, without giving effect to the conflict of laws principals of Florida law. The Parties agree that venue for any litigation brought to enforce this Agreement shall lie exclusively in any court of competent jurisdiction in Miami-Dade County, Florida.

**15.    EXECUTION.**   This Agreement may be made effective by means of facsimile signatures executed on several identical counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**16.    CONFIDENTIALITY.**    The Parties warrant that they have not and will not disclose, communicate, disseminate and/or publicize, or cause or permit to be disclosed, communicated, disseminated or publicized the existence of or terms and conditions of this Agreement to any person, business, organization, corporation, association, governmental agency, except as follows: (1) to the extent necessary to report income to appropriate taxing authorities; (2) to their respective attorneys and accountants; (3) in response to requirements of law or a subpoena issued by a state or federal court or governmental agency, provided, however, that notice of receipt of such judicial order or subpoena immediately be communicated to counsel for the opposing party telephonically. The McNaes further acknowledge and agree that this provision is a material inducement to the Fitzgerald's agreement to pay the Settlement Funds. Therefore, the McNaes agree and acknowledge that any violation of this section or disclosure of any of the terms of the Settlement Agreement beyond the exceptions identified above in this section shall constitute a material breach of this Agreement.

**17.    NON-DISPARAGEMENT.**    The Parties agree that they will not disparage each other, by written or oral word, gesture, or any other means, nor will they make any disparaging or negative comments about each other, to any person or entity.

**18.    NO FURTHER OBLIGATIONS.**  The Parties agree that, aside from the obligations set forth in this Agreement, no party owes any other party any monies or benefits.

**19.    BINDING NATURE OF AGREEMENT.** This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit and/or detriment of each party and to their respective heirs, administrators, representatives, executors, successors and assigns.

**20.    MODIFICATION OF AGREEMENT.**    This Agreement may be amended, revoked, changed, or modified only upon written agreement executed by all Parties. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the party against whom such waiver is charged.

**21.    SELECTIVE ENFORCEMENT.**   The Parties agree that the failure of any party to enforce or exercise any right, condition, term or provision of this Agreement shall not be

Page 4 of 5

Ronda's Initials: ___  Will's Initials: ___  Fitzgerald's Initials: ___

MCNAE 000004

construed as or deemed to be a waiver or relinquishment thereof, and the same shall continue in full force and effect.

**22.    ENTIRE AGREEMENT.**  This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof.

**23.    ATTORNEYS' FEES.**    In connection with any litigation arising out of this Agreement or in any way related to this Agreement, the prevailing party shall be entitled to recover all costs incurred including, but not limited to, its reasonable attorneys' fees at any level (trial, appeal, bankruptcy, administrative), including fees spent in litigation over entitlement or amount of such fees.

**24.    HEADINGS.** The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

**25.    COUNTERPARTS AND FACSIMILE SIGNATURES.** This Agreement may be executed in two or more counterparts, each of which may be considered an original, and all of which together shall constitute one and the same document. Facsimile or scanned copies of signature pages shall be treated as original signature pages.

**IN WITNESS WHEREOF**, this Agreement has been executed by the Parties as of the Effective Date.


_____    6-15-2020          _____    6-15-2020
Ronda McNae           Date              Will McNae              Date


_____    6-16-2020
Michael Fitzgerald       Date
Allan D. Lederman, Trustee


Page 5 of 5
**Ronda's Initials:**___  **Will's Initials:**___  **Fitzgerald's Initials:**___

MCNAE 000005

# Exhibit B

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 22-22171-CIV-MARTINEZ-SANCHEZ**

MICHAEL FITZGERALD, individually,
and YELANY DE VARONA,
individually,

v.

RONDA MCNAE, individually, and
WILLIAM MCNAE, individually,

      Defendants.
_____/

## <u>ORDER ON REPORT AND RECOMMENDATION</u>

**THIS MATTER** was referred to the Honorable Eduardo l. Sanchez, United States Magistrate Judge, for a Report and Recommendation on Plaintiffs' Motion to Bifurcate Pursuant to Rule 54(d)(2)(C) and Motion for Extension of Time to Comply with Local Rule 7.3(a) ("Plaintiffs' Motion"), (ECF No. 115), and Defendant William McNae's Verified Motion for Attorney's Fees and Costs ("Defendant W. McNae's Motion"), (ECF No. 119). Judge Sanchez filed a Report and Recommendation ("R&R"), recommending that Plaintiffs' Motion be granted in part and denied in part as moot and that Defendant W. McNae's Motion be denied. (ECF No. 178). Defendant W. McNae McNae filed objections to the R&R ("Objections") (ECF No. 184), to which Plaintiffs responded, (ECF No. 185). The Court, having conducted a *de novo* review of the record and the issues presented in the Objections, agrees with Magistrate Judge Sanchez that Defendant W. McNae's Motion must be denied. The Court overrules the Objections, (ECF No. 184).

      Accordingly, after careful consideration, it is hereby **ADJUDGED** that

      1.    United States Magistrate Judge Sanchez's R&R, (ECF No. 178), is **AFFIRMED AND ADOPTED**.

      2.    Plaintiffs' Motion to Bifurcate Pursuant to Rule 54(d)(2)(C) and Motion for Extension of Time to Comply with Local Rule 7.3(a), (ECF No. 115), is **GRANTED** as to the

issue of bifurcation and **DENIED AS MOOT** as to the requested extension of time to comply with the briefing requirements as to amount under Local Rule 7.3(a).

       3.     Defendant William McNae's Verified Motion for Attorney's Fees and Costs, (ECF No. 119), is **DENIED**.

       **DONE AND ORDERED** in Chambers at Miami, Florida, this _6_ day of September, 2024.

                                    _____

Copies provided to:                 JOSE E. MARTINEZ
Magistrate Judge Sanchez       UNITED STATES DISTRICT JUDGE
All Counsel of Record

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.: 1:22-cv-22171-JEM

**MICHAEL FITZGERALD,**
Individually, and **YELANY DE VARONA,**
Individually,

        **Plaintiffs,**

v.

**RONDA MCNAE, individually, and**
**WILLIAM MCNAE, individually,**

        **Defendants.**
_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
## WILLIAM MCNAE'S VERIFIED MOTION FOR ATTORNEY'S FEES AND COSTS

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd Street, Suite 3105, Miami, Florida 33131 - Telephone: 305-567-5576

Plaintiffs, MICHAEL FITZGERALD ("Fitzgerald") and YELANY DE VARONA ("de Varona") (collectively, the "Plaintiffs"), hereby file this Response in Opposition to the Motion for Attorney's Fees and Costs filed by Defendant, William McNae ("W. McNae"), and state:

## PRELIMINARY STATEMENT

W. McNae seeks to recover attorneys' fees in the amount of **$273,502.50** and costs in the amount of **$53,150.54** after this Court dismissed Plaintiff's claims against him for lack of subject matter jurisdiction *without prejudice* [DE 84, 100]. Plaintiffs brought contract and tort claims against W. McNae in this case, which was already proceeding against W. McNae's wife, co-Defendant Ronda McNae ("R. McNae"). Plaintiffs alleged in the Amended Complaint that the amount in controversy was met for purposes of diversity jurisdiction as to both Defendants, but this Court found that Plaintiffs' complaint sought an indeterminate amount of damages and turned to the Confidential Settlement Agreement attached to the Complaint to ascertain the damages [DE 84, 100]. That document shows on its face that Fitzgerald paid $96,000 to R. McNae and $10,000 to W. McNae to resolve their dispute. The Court dismissed Plaintiffs' claims *without prejudice* on the basis that the claims against W. McNae did not meet the minimum amount required for diversity jurisdiction [DE 84, DE 100].[1]

Fitzgerald has since followed this Court's directive and initiated a lawsuit against W. McNae for breach of contract in the Eleventh Judicial Circuit in and for Miami-Dade County,

---

[1] Plaintiffs sought leave of Court to assert a revised amount in controversy as to W. McNae, since Plaintiff's damages expert opined that Fitzgerald suffered economic damages in excess of $600,000 as a result of W. McNae's breach and because the attorney fee provision of the Confidential Settlement Agreement could be aggregated with the contract amount to meet the threshold requirement [DE 85]. However, the Court denied Plaintiffs' Motion claiming Fitzgerald lacked diligence since the information was available to him before December 16, 2002, the deadline for amendments to pleadings [DE 103]. However, Plaintiff's expert, Sheri Fiske, was retained on March 13, 2023, rendered her opinion on May 15, 2023 and was deposed on June 7, 2023. Although Defendants argue that Fitzgerald knew (or should have known) his damages prior to December 16, 2022, Fitzgerald did not know the full amount of his damages until his expert concluded her review and calculations.

2

Florida (Case No. 2023-025855-CA-01). Even though litigation is ongoing, and no final judgment on the merits has been issued, W. McNae is seeking to recover fees and costs against Plaintiffs pursuant to 28 U.S.C. §1919; fees and costs against Fitzgerald pursuant to the Confidential Settlement Agreement; and fees and costs against de Varona pursuant to a deficient offer of judgment. However, W. McNae is <u>not a prevailing party,</u> and no judgment has been entered in this case; therefore, W. McNae's motion for costs should be denied as he seeks costs in excess of what is allowable and his motion for fees should be denied for lack of entitlement.

## **PROCEDURAL BACKGROUND**

1. This action was commenced on July 14, 2022, in a one-count breach of contract complaint filed by Plaintiff Fitzgerald against Defendant R. McNae [DE 1]. The crux of the dispute stems from breaches of a Confidential Settlement Agreement entered between Fitzgerald, R. McNae and W. McNae in July of 2020. R. McNae filed a Motion to Dismiss on August 5, 2022 [DE 6]. Discovery commenced.

2. On December 30, 2022, Fitzgerald filed the First Amended Complaint, adding his wife, Yelany de Varona, as co-plaintiff to assert a loss of consortium claim. Fitzgerald added W. McNae, as defendant [DE 27]. Fitzgerald asserted an additional count for breach of contract against W. McNae, fifteen claims against both Defendants for libel per se based on their defamatory statements against Fitzgerald, a count for Intentional Infliction of Emotional Distress, a count for tortious interference with a business relationship, and a count for malicious prosecution. *Id.* De Varona asserted a loss of consortium claim. *Id.*

3. Defendants moved to dismiss the Amended Complaint with Prejudice on January 27, 2023 [DE 39]. Defendants argued, among other things that the Amended Complaint lacked sufficient facts to support diversity jurisdiction and that the tort claims were barred by the

independent tort doctrine. *Id.* Although counsel for W. McNae offered to allow Plaintiffs to file a Second Amended Complaint to moot the motion to dismiss, Plaintiffs declined the offer because W. McNae's offer was conditioned on conceding issues that were still in dispute, i.e. whether the independent tort claim would, in fact, bar the tort claims.[2]

4.      On April 6, 2023, W. McNae served de Varona a proposal for settlement which offered to settle all of de Varona's and Fitzgerald's claims against W. McNae for $500. De Varona was not capable of accepting W. McNae's proposal and could not force Fitzgerald to withdraw his claims (even assuming, *arguendo*, that she wanted to). Thus, the proposal for settlement was not accepted as it was incapable of acceptance due to its inherent deficiencies.

5.      Discovery continued up through and including July 28, 2023 [DE 61].

6.      This Court entered its Order on Motion to Dismiss Amended Complaint on August 2, 2023 [DE 83], which provides:

> 2.      **Defendants' Motion to Dismiss, (ECF No. 39), is GRANTED without prejudice as it relates to lack of subject matter jurisdiction over Defendant W. McNae.**
>
> 3.      Defendants' Motion to Dismiss, (ECF No. 39), is GRANTED **without prejudice** as it relates to Counts III-XVII for Libel Per Se, Count XVIII for IIED, Count XX for Loss of Consortium, Count XXI for Malicious Prosecution, and the claim for contractual punitive damages.

[DE 83, page 14] (emphasis added). This ruling was reaffirmed on October 24, 2023 in the Amended Order on Motion to Dismiss Amended Complaint which was identical but also dismissed without prejudice Count XIX for Tortious Interference [DE 100].

---

[2] This Court should pay no attention to W. McNae's mischaracterization of his offer in his Motion for Fees and Costs; the offer was completely self-serving and would have required Plaintiffs to withdraw their tort claims as well as concede jurisdictional issues that they were not comfortable doing given the strong legal arguments available. Plaintiffs did not carelessly "plow ahead" with the lawsuit, but carefully considered the alternatives and made the best decision based on the facts and law at the time; particularly, because the damages available under libel are different than contract damages, Plaintiffs had a good faith basis to believe the Court would allow the libel per se claims to survive the motion to dismiss [DE 119 at pp. 2, 5].

4

4.    Plaintiffs again moved to amend to assert the jurisdictional amount in controversy as to W. McNae and to assert its libel per se claims, *in the alternative to*, its contract claims [DE 85]. Plaintiffs had been made aware by Defendants that they were likely to ask the Court to invalidate the Confidential Settlement Agreement and thus, asked the Court to allow them to seek alternative tort claims in the event the contract was invalidated.

5.    The Court denied Plaintiffs' motion to amend on October 30, 2023 [DE 103].

6.    W. McNae now moves for the recovery of fees and costs since no claims remain against him in this matter [DE 119, p. 3]. Prior to the filing of W. McNae's motion, Plaintiffs filed a Motion to Bifurcate pursuant to S.D. Local Rule 7.3(a) which permits either party to move the Court to determine entitlement prior to submission on the issue of amount [DE 115]. Plaintiff moved to bifurcate on the basis that W. McNae is not entitled to fees or costs at this time since his motion is not ripe, W. McNae is not a prevailing party, no judgment has been entered in this matter, and an award of costs would be excessive and premature. *Id.* Those arguments are incorporated herein by reference.

**MEMORANDUM OF LAW**

W. McNae seeks costs against both Plaintiffs pursuant to 28 U.S.C. §1919, fees and costs against Fitzgerald pursuant to the Confidential Settlement Agreement, and fees and costs against de Varona pursuant to the deficient proposal for settlement. As set forth herein, the Motion for Fees and Costs should be denied.

**I.    W. McNae's Motion for Costs Pursuant to 28 U.S.C. §1919 Should be Denied**

W. McNae seeks to recover costs in the amount of **$53,160.54** from both Plaintiffs in this case pursuant to 28 U.S.C. §1919.[3]  28 U.S.C. §1919 is discretionary and provides, in pertinent

---

[3] After the parties' S.D. Fla Local Rule 7.3(a) conferral, W. McNae agreed to reduce the amount of costs he was seeking from **$55,434.04** to **$53,160.54**, which included over $2,000 in travel

part: "Whenever any action or suit is dismissed in any district court...for want of jurisdiction, such court <u>may</u> order the payment of <u>just</u> costs." *See* 28 U.S.C. §1919 (emphasis added). W. McNae seeks the following costs: **$25,519.51** related to depositions taken in this case; **$3,887.50** in fees paid to Plaintiffs' experts; **$18,045.00** in fees paid to Defendants' expert; **$32.40** to obtain a transcript of a discovery hearing; **$5,244.10** in copy charges; **$392.03** to obtain records from third parties; and **$40.00** in subpoena service costs. [DE 119-1]. W. McNae's motion for costs must be denied as he seeks excessive costs that do not relate to the issue of subject matter jurisdiction and are, therefore, unjust. *Rabco Corp. v. Steele Plaza, LLC,* 2019 U.S. Dist. LEXIS 180617 at *47 (M.D. Fla. July 29, 2019) (plaintiff objected to recovery of all costs that were not related to issue of jurisdiction as "unjust"). Moreover, W. McNae seeks to recover costs for depositions, experts, copying and other costs that he will continue to use in the state court matter pending against him and by R. McNae in this matter. *Grigorian v. FCA US,* LLC, 2021 U.S. Dist. LEXIS 190150 (S.D. Fla. Oct. 1, 2021) (pending state court action and reasonableness of federal lawsuit are mitigating factors that justify a substantial reduction in the requested costs).

Determining whether "just costs" should be awarded is a matter within the sound discretion of the court. *Grigorian,* 2021 U.S. Dist. LEXIS 190150 at *4. As such, 28 U.S.C. §1919 is discretionary and permissive. *Id.* (§1919 gives the Court leeway to award costs or not award costs as it sees fit); *Rabco Corp.,* 2019 U.S. Dist. LEXIS 180617 at *47; *Miles v. California,* 320 F. 3d 986 (9th Cir. 2003). Although the term "just costs" is not synonymous with taxable costs awarded under 28 U.S.C. §1920, "the standards applied for awarding taxable costs under §1920 may be helpful in determining what costs are just." *Rabco Corp.,* 2019 U.S. Dist. LEXIS 180617 at *47; *Grigorian,* 2021 U.S. Dist. LEXIS 190150 at *2. Courts have likewise found that a party seeking costs under §1919 should not recover more than it would be entitled to

expenses that are non-recoverable attorneys' fees, not costs.

if the case proceeded to its merits. *Id.* at *15 (reducing costs sought by Defendant from $66,168.27 to $4,056.75 because if defendant prevailed on the merits, which it hadn't, it still would not be entitled to the excessive amount sought); *Rabco Corp.*, 2019 U.S. Dist. LEXIS at *50-51 (denying recovery of costs pursuant to §1919 that would not be allowed under §1920).

An award of costs in the amount of **$53,160.54** in favor of W. McNae would be tantamount to a windfall as it would exceed the amount of costs W. McNae could be awarded if he were a prevailing party under 28 U.S.C. §1920. It is well-established that a party obtaining dismissal on jurisdictional grounds is <u>not</u> entitled to prevailing party status. *Grigorian*, 2021 U.S. Dist. LEXIS 190150 at *9; see *infra*. Yet, W. McNae is proceeding as if he prevailed on the merits in this matter. W. McNae seeks **$25,519.51** in deposition related costs for fourteen witnesses, none of which had anything to do with the issue of subject matter jurisdiction. Indeed, W. McNae's Motion to Dismiss for lack of subject matter jurisdiction was filed on January 27, 2023 [DE 39]. The first deposition taken in this case was on January 26, 2023, and had no relevance to the issue of subject matter jurisdiction. The remaining depositions were all taken from January 26, 2023 through July 28, 2023, well after the issue of subject matter jurisdiction was raised with this Court, and none related at all to the jurisdictional question.

The factual question of whether specific deposition and transcript costs are taxable under 1920 depends on whether the deposition was "necessarily obtained for use in the case." *Id.* at *17-18 ("If a deposition cost was incurred merely for convenience, to aid in thorough preparation, or for purposes of investigation only, then the cost is not recoverable."). W. McNae does not explain why each deposition-related costs is necessary, but only states that the depositions of each witness was necessary [DE 119-1]. In fact, W. McNae seeks to recover the costs for both video and stenographic recordings of several of the depositions, but failed to state

7

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 S.E. 2nd Street, Suite 3105, Miami, Florida 33131 - Telephone: 305-567-5576

why it was necessary to conduct the depositions by both stenographic and videotaped means. *Id.* (denying the recovery of costs for both video and stenographic recording of depositions). Furthermore, because the testimony will likely be used by W. McNae in the state court matter and by R. McNae in this matter, an award of those costs at this time is premature and unsupported. For these reasons, this Court should not award W. McNae the **$25,519.51** sought for deposition-related costs. *See, e.g. Rabco Corp.*, 2019 U.S. Dist. LEXIS at *49 (limiting recovery of depositions that were used as shared discovery by 50%); *Spartan Holdco, LLC v. Cheeburger Cheeburger Rests., Inc.*, 2011 U.S. Dist. LEXIS 139403 at *11 (M.D. Fla. Nov. 19, 2011) (recommending that parties' requests for costs be denied where the costs requested for depositions and experts may be used in any subsequent litigation between the parties).

Similarly, this Court should deny the **$18,045.00** that W. McNae seeks to recover for his and R. McNae's expert, Dr. Judy Ho, and the **$3,887.50** in fees paid to Plaintiffs' experts. The fees sought are excessive, and an award of expert witness fees is not available or appropriate here. *Cf. Steelman v. Ringhaver Funding, LLC,* 2012 U.S. Dist. LEXIS 136972 (M.D. Fla. Sept. 5, 2012) (defendant sought $400.00 in expert witness fees, and because plaintiff did not dispute the amount, Court recommended $400.00 as a just cost under §1919). Assuming this case proceeded to the merits and W. McNae prevailed, he would not be entitled to recover costs incurred for privately retained expert witnesses. *Rabco Corp.*, 2019 U.S. Dist. LEXIS at *51 (expert witness fees are "clearly nonrecoverable" under §1920). Therefore, it would be unjust for W. McNae to recover such costs now, pursuant to §1919. *Id.*; *Duckworth v. Whisenant*, 97 F. 3d 1393 (11th Cir. 1996) (compensation or fees to expert witnesses cannot be allowed or taxed as costs in federal courts). W. McNae seeks to recover 100% of the costs incurred for Dr. Ho, even though Dr. Ho is both his and R. McNae's expert. Likewise, W. McNae may continue to use Dr.

Ho's expert testimony, as well as the testimony of Plaintiffs' experts, in the state court matter. *Spartan Holdco, LLC*, 2011 U.S. Dist. LEXIS 139403 at *11 (denying costs where depositions and experts can be used in subsequent litigation). Finally, denial of costs as to experts is proper where the expert testimony went to Fitzgerald's economic and non-economic damages and had nothing to do with the jurisdictional issue which was determined solely on the amount of money paid by Fitzgerald to W. McNae pursuant to the Confidential Settlement Agreement [DE 103].

W. McNae seeks to recover **$5,244.10** in copy charges. Although 28 U.S.C. §1920 allows for the recovery of fees for copies of papers necessarily obtained for use in this case, W. McNae has not explained if any of the copy charges relate directly to the issue of subject matter jurisdiction. In fact, in January of 2023, when W. McNae's Motion to Dismiss was filed, W. McNae only incurred $4.35 in copying charges [DE 119-1 at ¶56a]. Since all subsequent copying costs surely came after the jurisdictional issue was raised and briefed, the copying costs in excess of $4.35 have nothing to do with the jurisdictional issue and recovery of same would be unjust and excessive. Based on the foregoing, denying W. McNae's motion for costs is proper.

## II.     W. McNae is Not Entitled to Prevailing Party
## Attorney's Fees or Costs Under the Confidential Settlement Agreement

W. McNae seeks fees in the amount of **$273,502.50** and costs in the amount of **$53,160.54** pursuant to paragraph 23 of the Confidential Settlement Agreement, which provides:

> Attorneys' Fees. In connection with any litigation arising out of this Agreement or in any way related to this Agreement, the **prevailing party** shall be entitled to recover all costs incurred including, but not limited to, its reasonable attorneys' fees at any level (trial, appeal, bankruptcy, administrative), including fees spent in litigation over entitlement or amount of such fees.

*See* Exhibit A, Amended Complaint (emphasis added). The key issue to ascertain is whether or not W. McNae is the prevailing party. Ample authority supports the proposition that dismissals

ASSOULINE & BERLOWE, P.A.
Miami Tower, 100 S.E. 2nd Street, Suite 3105, Miami, Florida 33131 - Telephone: 305-567-5576

for lack of subject matters jurisdiction do <u>not</u> convey prevailing party status, and since Fitzgerald's claims against W. McNae were dismissed for lack of subject matter jurisdiction *without prejudice*, giving Fitzgerald leave to refile in another court (which he has), W. McNae should not be entitled to recover fees or costs. *Ffrench v. Ffrench*, 418 F. Supp. 3d 1186 (S.D. Fla. 2019) (dismissals for lack of subject matter jurisdiction, or dismissals without prejudice in general, do not qualify parties for prevailing party status); *Interim Healthcare Inc. v. Suncoast Loving Care, LLC*, 2018 U.S. Dist. LEXIS 202456 (S.D. Fla. Nov. 28, 2018)("Although Defendants prevailed in having the [plaintiffs] breach of contract claims dismissed in federal court, they have not prevailed in the overall litigation, as those same claims may now be re-filed in the state court"); *Sream, Inc. v SMOKE THIS TOO*, LLC, 2017 U.S. Dist. LEXIS 109474 (S.D. Fla. 2017)(J. Bloom) (a dismissal without prejudice is not a "judgment on the merits" for purposes of declaring a prevailing party because it does not alter the legal relationship of the parties as the plaintiff may re-file the case).

W. McNae is not the prevailing party in this lawsuit. W. McNae even concedes this point in his Motion [DE 199 at p. 19] when he cites *Essex Building Grp., Inc. v. Amerisure Ins. Co.*, 2007 WL 2376036 (M.D. Fla. Aug. 16, 2007) for the finding that "an involuntary dismissal for lack subject matter jurisdiction is not a judgment on the merits..." "A 'prevailing party' is 'one who has been awarded some relief by the court.'" *AmeriPath, Inc. v. Weterington*, 2011 WL 3475367, at *2 (S.D. Fla. Aug. 9, 2011) (citation omitted). The court explained:

> To determine whether a litigant is a "prevailing party," the Eleventh Circuit applies a two-prong test, requiring (1) a situation where a party has been awarded by the court at least some relief on the merits of this claim or (2) a judicial *imprimatur* on the change in the legal relationship between the parties.

*Id.; Smalbein v. City of Daytona Beach*, 353 F. 3d 901 (11th Cir. 2003) (quoting *Buckhannon Bd.*

*And Care Home, Inc. v. West Virginia Dep't of HH Res.,* 532 U.S. 598, 604 (2001)).

Here, W. McNae seeks attorney's fees and costs under the Confidential Settlement Agreement but has not been awarded any relief on the merits nor has there been a change in the legal relationship between the parties. Substantial caselaw confirms that W. McNae's Motion must fail as he cannot be conferred prevailing party status sufficient to trigger the fee-shifting provision of the Confidential Settlement Agreement. *See e.g. Interim Healthcare Inc.,* 2018 U.S. Dist. LEXIS 202456 at *7 (dismissing for lack of jurisdiction was not a ruling on the merits of the contract claim which plaintiff could refile in state court and didn't alter the legal relationship of the parties); *Palmetto EKG & Echo Readers, P.A. v. Vista Healthplan, Inc.,* 2007 U.S. Dist. LEXIS 113626 (S.D. Fla. Dec. 6, 2007) (no prevailing party status where dismissal was without prejudice and on procedural grounds); *Tarasewicz v. Royal Caribbean Cruises Ltd.,* 2015 U.S. Dist. LEXIS 191683 (S.D. Fla. Sept. 2, 2015)(J. Bloom) ("victory on a jurisdictional point"…merely prolongs litigation…and it remains to be seen who will prevail"); *Spartan Holdco, LLC,* 2011 U.S. Dist. LEXIS 139504 at *11-12 (no prevailing party where all claims were dismissed without prejudice and parties were able to bring all claims in the proper court).

Federal and Florida law is clear that W. McNae's motion for fees must be denied. A party moving for an award of attorneys' fees must have been awarded a favorable "judgment" in order to be deemed a prevailing party. *Palmetto EKG & Echo Readers, P.A.,* 2007 U.S. Dist. LEXIS 113626 at *8 (citing *Ghodrati v. Miami Paneling Corp.,* 770 So. 2d 181 (Fla. 3d DCA 2000)). The movant must also demonstrate that it recovered a net judgment in the entire case. *Id.* (citing *Crosspointe, LLC v. Integrated Computing, Inc.,* 2007 U.S. Dist. LEXIS 29301 (M.D. Fla. April 20, 2007)). The U.S. Supreme Court has held, in gauging whether a party has recovered a net judgment in a case, the test for determining the prevailing party is whether the

party prevailed "on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 422 (1983). This federal standard was adopted by the Florida Supreme Court in *Moritz v. Hoyt Enterprises, Inc.*, 604 So. 2d 807 (Fla. 1992)("[T]he fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court").

A dismissal without prejudice does not materially alter the legal relationship of the parties because the defendant remains subject to the risk of re-filing and, thus, does not constitute an adjudication on the merits that would entitle a defendant to prevailing party status. *Burki v. City of Delray Beach*, 2022 U.S. Dist. LEXIS 226793 (S.D. Fla. Dec. 16, 2022); *Royal Palm Props, LLC v. Pink Palm Props,* LLC, 38 F. 4th 1372 (11th Cir. 2022) ("To cross the threshold to prevailing party status, the Supreme Court has emphasized that a party – "at a minimum" – must be able to point to a resolution of the dispute which changes the legal relationship" between the parties); *Bell N. Rsch., LLC v. HMD Am., Inc.*, 2023 U.S. Dist. LEXIS 194467 (S.D. Fla. Oct. 30, 2023)(J. Scola) ("[D]istrict courts in our Circuit continue to follow this rule. For example, the Court last year held that 'under federal law, the law is well settled that a dismissal without prejudice *does not alter the legal relationship between the parties.'"); Colinvest v. 17315 Collins Ave.,* 2009 U.S. Dist. LEXIS 152220 (S.D. Fla. Sept. 29, 2009) (dismissal without prejudice allowed Plaintiff to refile new complaint, thus defendant has not prevailed in the overall litigation and was not entitled to fees); *Posner v. Essex Ins. Co.*, 178 F. 3d 1209 (11th Cir. 1999) (dismissal without prejudice "does not preclude further litigation of these claims *on the merits");* *Dattner v. Conagra Foods, Inc.*, 458 F. 3d 98, 101 (2nd Cir. 2006) ("In the context of fee-shifting statutes, the Supreme Court has held that, for a party to be 'prevailing,' there must be a

'judicially sanctioned change in the legal relationship of the parties.'"").

In federal diversity cases, dismissals for lack of subject matter jurisdiction, or dismissals *without prejudice* in general, typically do not constitute a "judicially sanctioned change in the legal relationship between the parties." *Id.* at 103 (citing *Citizens for a Better Environment v. Steel Co.*, 230 F. 3d 923 (7th Cir. 2000)); *Szabo Food Serv. Inc. v. Canteen Corp.* , 823 F.2d 1073 (7th Cir. 1987) (defendant was not prevailing party where complaint was dismissed *without prejudice* because dismissal without prejudice does not decide case on the merits as the defendant still remains at risk)); *see also Keene Corp. v. Cass*, 908 F. 2d 293 (8th Cir. 1990) ("To be a prevailing party…a party must succeed on some claim or significant issue in the litigation which achieves some benefit the parties sought…Where a complaint has been dismissed for lack of subject matter jurisdiction, the [d]efendant has not prevailed over the plaintiff on any issue central to the merits of the litigation")(internal quotation marks and citations omitted); *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 2004 U.S. Dist. LEXIS 1535 (N.D. ILL. 2004) (a party dismissed for lack of personal jurisdiction is not a prevailing party because the legal relationship between the parties was not altered; plaintiff is free to file suit, making identical allegations, in another court).

Similarly, under Florida law, when there is a dismissal of a case without prejudice, Florida law does not confer prevailing party status on the successful movant. *Shaw v. Schlusemeyer,* 683 So. 2d 1187 (Fla. 5th DCA 1996) (dismissing motion for fees as prevailing party where complaint was dismissed without prejudice on procedural grounds). The "prevailing party," for purposes of attorney's fees, is a party that the trial court determines prevailed on significant issues in the litigation. *Green Cos. V. Kendall Racquetball Inv.*, 658 So. 2d 1119 (Fla. 3d DCA 1995). Here, W. McNae has not prevailed on any significant issue.

By these measures, W. McNae's claim for fees and costs must fail. The dismissal of the case was *without prejudice* [DE 84, DE 100]. *Sream, Inc.*, 2017 U.S. Dist. LEXIS 109474 at *4 (dismissal without prejudice is not a "judgment on the merits" for purposes of declaring a prevailing party because it does not alter the legal relationship of the parties as the plaintiff may re-file the case). This Court has not addressed any of the substantive arguments raised in this litigation.[4] Notably, W. McNae sought dismissal with prejudice [DE 39], but this Court granted the dismissal *without prejudice* twice – first on August 2, 2023 [DE 84] and then again in its amended order on October 24, 2023 [DE 100]. W. McNae did not ask the Court to amend its Order to provide that the dismissal would be with prejudice. *Palmetto EKG & Echo Readers, P.A.*, 2007 U.S. Dist. LEXIS 113626 at *10 (defendant did not ask Court to amend its order to provide that dismissal would be with prejudice, thus there was no significant change in the parties' relationship). At this point, the Court can only find that W. McNae did not achieve a significant change in the parties' relationship, or materially further the merits of the claims alleged, following the dismissal *without prejudice. Id.* As the Court found in *Palmetto EKG & Echo Readers, P.A.*, under *Hensley, Moritz* and the other cases sited, W. McNae cannot be bestowed prevailing party status for purposes of a fee award. *Id.; see also Spartan Holdco, LLC*, 2011 U.S. Dist. LEXIS 139403 at *7 (case dismissed for lack of subject matter jurisdiction, therefore no party prevailed on the merits of any of the claims).

In short, there is no support for W. McNae's motion for prevailing party fees and W. McNae cannot show how the dismissal *without prejudice* constitutes a "determination of any significant issues in the case" or a resolution that "brings the litigation to an end." *Colinvest,*

---

[4] W. McNae's motion to dismiss the claims against him was pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure [DE 39]. A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) present procedural, not substantive, questions. *Ventrassist Pty, Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278 (S.D. Fla. 2005).

ASSOULINE & BERLOWE, P.A.
Miami Tower, 100 S.E. 2nd Street, Suite 3105, Miami, Florida 33131 - Telephone: 305-567-5576

2009 U.S. LEXIS 15220 at *7. Fitzgerald's state court action against W. McNae (Case No. 2023-025855-CA-01), further demonstrates that there is no change in the legal relationship between the parties. *Interim Healthcare Inc.*, 2018 U.S. Dist. LEXIS 202456 at *7 (plaintiff could refile in state court; no alteration to legal relationship of parties).

W. McNae's attempts at arguing that the Court made rulings on the merits by dismissing the tort claims, and that he's a prevailing party because he prohibited Plaintiff's claims from proceeding, are of no merit [DE 119 at p. 11]. The cases W. McNae cites to support his position are all inapplicable. First, in *Kamel v. Kenco/The Oaks at Boca Raton, LP*, 2008 U.S. Dist. LEXIS 61020 (S.D. Fla. Aug. 11, 2008), the Court found the party was entitled to fees under the contract because two counts of the complaint were dismissed on the merits with prejudice (referring a Florida case dealing with an inapplicable statute granting prevailing party appellate attorney's fees). Second, in *Rinehuls v. Holiday Inn Club Vacations*, 2021 U.S. Dist. LEXIS 149344 (M.D. Fla. Aug. 9, 2021), the Court followed Florida law to find that a Defendant is the "prevailing party" when the plaintiff voluntarily dismisses an action. Finally, in *Layne Heavy Civ. V. Carter & Verplanck*, 2019 U.S. Dist. LEXIS 238983 (S.D. Fla. Aug. 16, 2019), the Court entered dismissal due to a contractual forum selection clause which made clear that Plaintiff had no option but to file in Palm Beach County Circuit Court. *Layne* is particularly inapplicable as a forum non conveniens dismissal is a non-merits based decision akin to dismissal for lack of personal jurisdiction. *Dattner*, 458 F. 3d at 102. W. McNae's cases are inapplicable.

W. McNae's Motion must be denied as Plaintiff can (and has) re-file his claims in state court.[5] Since, under Florida law, the "prevailing party" for purposes of attorneys' fees is the

---

[5] Notably, R. McNae seeks to invalidate the Confidential Settlement Agreement in this case. If she is successful, Fitzgerald would be able to sue W. McNae in tort. The dismissal *without prejudice* allows for this possibility.

ASSOULINE & BERLOWE, P.A.
Miami Tower, 100 S.E. 2nd Street, Suite 3105, Miami, Florida 33131 - Telephone: 305-567-5576

party prevailing on the significant issues in the litigation, W. McNae would have to show how exactly he prevailed here. *Green*, 658 So. 2d at 1121. In a breach of contract action, one party must prevail. *Id.* (citing *Lucite Ctr., Inc. v. Mercede*, 606 So. 2d 492 (Fla. 4th DCA 1992)). Whether W. McNae breached the Confidential Settlement Agreement was the substantive issue involved in this action; the Corut did not rule on the merits of the contractual dispute and there is no "prevailing party." *Interim Healthcare Inc.*, 2018 U.S. Dist. LEXIS 202456 at *7 (by dismissing the action for lack of jurisdiction, the court did not rule on the merits of the contract claims). *Sanchez v. Swire Pac. Holdings, Inc.*, 2009 U.S. Dist. LEXIS 133746 (S.D.Fla. June 11, 2009) (citing *Shaw*, 683 So. 2d at 1187) (in a dismissal without prejudice, there is no prevailing party status on the successful movant). When a "dismissal was based on procedural grounds and not a determination of any significant issue in the case[,] the instant dismissal order did not bring the litigation to an end." *Id.*

The dispute between the parties is still ongoing, there is no prevailing party, and Paragraph 23 of the Confidential Settlement Agreement is not triggered. This Court must enter an order denying W. McNae's motion for fees and costs.[6]

### III.    W. McNae is Not Entitled to Fees Pursuant to Fla. Stat. §768.79

Finally, W. McNae moves for recovery of **$19,647.50** in fees and **$6,365.17** in costs as to

---

[6] Plaintiffs timely provided objections to W. McNae's draft Motion for Fees and Costs and participated in a conferral even while Plaintiffs' Motion to Bifurcate [DE 115] was pending in an abundance of caution. Such conferral was conducted without waiving Plaintiffs' arguments that fees are premature at this time as there has no determination of a prevailing party. To the extent that Plaintiffs objected to W. McNae's fees, W. McNae has failed to demonstrate how she coordinated with counsel for R. McNae to avoid duplication of efforts which she claims significantly reduced the number of hours for which recovery is sought. [DE 119 at p. 16]. Indeed, in *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 2007 U.S. Dist. LEXIS 60060 (M.D. Fla. 2007), a case upon which W. McNae relies, the Court held that the party failed to provide sufficient support for the amount of fees sought as relate to the fees work done by counsel for one defendant that also benefitted the co-defendant. *Id.* at *10. W. McNae should not be permitted to recover fees for work done for R. McNae as this would result in a windfall to W. McNae.

de Varona under Florida Statute §768.79 pursuant to the proposal for settlement served by W.

McNae on de Varona on April 6, 2023. Fla. Stat. §768.79 states, in pertinent part:

> In any civil action for damages filed in courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or on the defendant's behalf pursuant to a policy of liability insurance or other contract from the date of filing of the offer if *the judgment* is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.

*See* §768.79, Fla. Stat. (emphasis added). "[T]he Florida Supreme Court concluded that to be

entitled to an award of attorney fees under §768.79 based on a dismissal of the case, the

dismissal must be with prejudice." *Diplomat Golf Course Venture, LLC v. Lloyds*, 2023 U.S.

Dist. LEXIS 150101 (S.D.Fla. Aug. 24, 2023) (J. Gayles) (citing *MX Investments, Inc. v.

Crawford*, 700 So. 2d 640 (Fla. 1997)). In explaining what constitutes a dismissal with prejudice,

the court made clear that for purposes of the offer of judgment statute, the dismissal must

represent a judgment of no liability. *Id.; CodeVentures, LLC v. Vital Motion, Inc.*, 2023 U.S.

App. LEXIS 7223 (11th Cir. 2023).

W. McNae cites to *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 2007 U.S. Dist.

LEXIS 60060 (M.D. Fla. Aug. 16, 2007) to support his argument that that the dismissal for lack

of subject matter jurisdiction is equivalent to a dismissal with prejudice. However, the facts in

*Essex* are distinguishable. There, the Court found that Essex had no remaining claims and its

case was moot because Essex had already received everything it was entitled to seek. *Id.* The

Court held that the "binding determination that Essex had no claim is the *equivalent* of a

dismissal with prejudice, even though it resulted in a dismissal for lack of subject matter

jurisdiction rather than a judgment on the merits." *Id.* There has been no similar finding here,

17

and the Court's two-time ruling that the dismissal was *without prejudice* is illustrative of the fact that there is no alteration change in the parties' relationship.

While W. McNae's argument is a stretch, he concedes that an involuntary dismissal for lack of subject mater jurisdiction is not a judgment on the merits, supporting Plaintiffs' position that the Motion for Fees and Costs is not ripe and must be denied. Indeed, footnote 1 in the *Essex* opinion states that "[t]he Court's research has not uncovered a case in which a Florida appellate court has assessed the applicability of Section 768.79 where the plaintiff's claim was involuntarily dismissed for lack of subject matter jurisdiction." *Id.* at *5 n. 1. Here, because there is only an order of dismissal for lack of subject matter jurisdiction *without prejudice*, §768.79 is not applicable. *Id. Diplomat Golf Course, LLC,* 2023 U.S. Dist. LEXIS 150101 at *15.

Moreover, W. McNae's proposal for settlement was deficient and not capable of being accepted. Florida Statute §768.79 is intended to reduce litigation costs by encouraging settlement and acts as a sanction against a party who rejects a good-faith, reasonable settlement offer. *Sapp v. Marcum,* 2023 U.S. Dist. LEXIS 171702 (M.D. Fla. Sept. 26, 2023). "For an offer to be made in good faith, the offer must 'have some reasonable foundation on which to base an offer.'" *Id.* (citing *Mootry v. Bethune-Cookman Univ., Inc.,* 186 So. 3d 15, 22 (Fla. 5th DCA 2016)). "[T]he question to be considered by the court in determining good or bad faith is whether the offer bears a reasonable relationship to the amount of damages suffered and a realistic assessment of liability." *Id.*

W. McNae's proposal for settlement was for a nominal amount of $500.00, was served before meaningful discovery was conducted, and required Plaintiff de Varona to convince Plaintiff Fitzgerald to withdraw all of his claims against both Defendants. The Proposal for Settlement states that it attempted to resolve "All issues and claims for damages asserted against

Defendant WILLIAM MCNAE that would otherwise be awarded in a final judgment in the above captioned case;" the total amount of the proposal was to resolve "all claims for damages against Defendant WILLIAM MCNAE in exchange for payment by or on behalf of Defendant WILLIAM MCNAE in the sum of five hundred and 00/100s ($500.00) Dollar;." and the non-monetary terms of the proposal were "all claims asserted in the lawsuit against Defendant WILLIAM MCNAE will be dismissed with prejudice, with each party to bear their own fees and costs." [DE 119-10} (emphasis added).  The unambiguous language of W. McNae's proposal makes clear that if de Varona accepted the $500.00, she would have had to convince Fitzgerald to dismiss all of his claims against W. McNae as well.  The Proposal for Settlement does not distinguish between de Varona's claims from Fitzgerald's claims against W. McNae. *Cf. Bright House Networks, LLC v. Cassidy*, 242 So. 3d 456 (Fla. 2nd DCA 2018) (finding no ambiguity where proposal specifically said it was "an attempt to resolve all claims and causes of action resulting from the incident or accident giving rise to this lawsuit brought by Plaintiff Martha Nash against Defendant Kyle Miley"). W. McNae's proposal did not specify that it was limited to de Varona's claims against W. McNae and was interpreted to require de Varona to convince Fitzgerald to dismiss his claims.

Courts have held that language which requires one party to bind a co-party is invalid and unenforceable. *Attorneys' Title Ins. Fund. v. Gorka*, 36 So. 3d 646 (Fla. 2010). When one party is unable to independently evaluate or accept an offer of judgment since a proposal demanded the mutual acceptance of both parties, the offer is invalid. *Id.*  If, for instance, Plaintiff de Varona wished to accept the offer, but Plaintiff Fitzgerald elected not to accept, the acceptance by de Varona would not be effective and would expose de Varona to a fee sanction. *Attorneys' Title Ins. Fund, Inc. v. Gorka*, 989 So. 2d 1210 (Fla. 2nd DCA 2008). The purpose of Fla. Stat.

§768.79 is to encourage the resolution of litigation, and each party who receives an offer of settlement is entitled to evaluate the offer as it pertains to him or her. *United Servs. Auto. Ass'n v. Behar*, 752 So. 2d 663 (Fla. 2nd DCA 2000). Based on the language of W. McNae's offer of judgment, as drafted, Plaintiff de Varona was not given an independent right to evaluate and decide her own claim because it required Fitzgerald to dismiss his claims. *Id.; Chastain v. Chastain*, 119 So. 2d 547 (Fla. 1st DCA 2013) (because offer was conditioned on joint acceptance, the settlement proposal was invalid and the fee award under §768.79 was reversed).

Because the Florida offer of judgment statute provides for attorneys' fees in derogation of the common law, the statute, and its accompanying rule of procedure, Fl. R. Civ. P. 1.442, must be strictly construed. *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 632 F. 3d 1195 (11th Cir. 2011). Florida Rule of Civil Procedure 1.442(c)(3) states, "A proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal. A joint proposal shall state the amount and terms attributable to each party." *Id.* at 1200-1201. Joint proposals that do not state the terms attributable to each party are invalid and unenforceable. *Graham v. Peter K. Yeskel 1996 Irrevocable Trust*, 928 So. 2d 371 (Fla. 4th DCA 2006). Here, W. McNae's proposal is defective; though he sent it to de Varona, by making it contingent on the dismissal of all claims asserted against W. McNae, the proposal became invalid and unenforceable, as de Varona could not independently assess her option to settle.

In determining whether W. McNae's $500.00 proposal for settlement was made in good faith, the Court must consider whether W. McNae "had a reasonable basis at the time of the offer to conclude that [his] exposure was nominal." *Id.* (citing *Fox v. McCaw Cellular Commc'ns of Fla, Inc.*, 745 So. 2d 330, 333 (Fla. 4th DCA 1998)). W. McNae's nominal offer was not made in good faith as it was made six days before de Varona's deposition and precluded W. McNae from

ASSOULINE & BERLOWE, P.A.
Miami Tower, 100 S.E. 2nd Street, Suite 3105, Miami, Florida 33131 - Telephone: 305-567-5576

assessing the strengths of de Varona's claim before making his offer. An offer should bear a reasonable relationship both to the amount of damages and a realistic assessment of liability. *Eagleman v. Eagleman*, 673 So. 2d 946 (Fla. 4th DCA 1996). Since the offer of judgment statute is to encourage settlement, trial courts should view with considerable skepticism nominal offers which bear no reasonable relationship to damages and which are not founded upon a reasonable and realistic assessment of liability. *Id.*[7] "In cases where only a nominal offer was made, a reasonable basis exists [for the offer] only where the undisputed record strongly indicates that the defendant had no exposure. A nominal offer should otherwise be stricken." *JAWHBA LLC v. Arevalo*, 2017 U.S. Dist. LEXIS 41427 (S.D. Fla. March 21, 2017). W. McNae's $500 offer, made prior to de Varona's deposition, was without record evidence as to the exposure W. McNae faced; it was made in bad faith and should be stricken.

## CONCLUSION

For the reasons set forth herein, Defendant William McNae's Motion for Attorney's Fees and Costs [DE 119] should be denied because (1) it seeks costs against Plaintiffs pursuant to 28 U.S.C. §1919 in excess of what could be awarded had the case proceeded on its merits, (2) seeks prevailing party attorney's fees and costs against Fitzgerald under the Confidential Settlement Agreement even though W. McNae has not been prevailed on the merits, and (3) seeks attorney's fees and costs against de Varona under a deficient offer of judgment where the dismissal was without prejudice and does not represent a judgment of no liability.

---

[7] R. McNae asserted several Affirmative Defenses aimed to invalidate the contract. Should this Court agree with R. McNae, Fitzgerald's tort claims will be revived as to both R. McNae and W. McNae, as will de Varona's loss of consortium claims.

21

WHEREFORE, Plaintiffs Michael Fitzgerald and Yelany de Varona, seek an Order

denying Defendant William McNae's Verified Motion for Attorney's Fees and Costs, and for

any other and further relief as this Court deems just and proper.


Dated: January 5, 2024.                    Respectfully submitted,

                                           **ASSOULINE & BERLOWE, P.A.**
                                           Miami Tower
                                           100 SE 2nd Street, Suite 3105
                                           Miami, Florida 33131
                                           Telephone: (305) 567–5576
                                           Facsimile: (305) 567–9343

                        By:    /s/ Meredith J. Gussin
                               Peter E. Berlowe
                               Florida Bar No. 143650
                               Meredith J. Gussin
                               Florida Bar No. 0512303
                               *Attorneys for Plaintiffs*

# Exhibit D

| From: | Ronda McNae |
|---|---|
| To: | Meredith J. Gussin; FLSDdb_efile Martinez; Jessica Clark; FLSDdb_efile Sanchez; Will McNae |
| Cc: | Peter E. Berlowe |
| Subject: | Re: Case No. 22-22171-JEM/Fitzgerald v. McNae/Plaintiff's Motion to Alter or Amend Judgment and Proposed Order |
| Date: | Thursday, May 1, 2025 1:14:32 PM |
| Attachments: | DF SUPP Rule 60(b).pdf |

**CAUTION - EXTERNAL:**

**Subject:** Request for Reconsideration Based on Timely Submission of Rule 60(b) Supplement

**Dear Judge Martinez,**

I write to respectfully request reconsideration of the Court's April 26, 2025 Amended Final Judgment (ECF 380), which denied all pending motions as moot and closed the case. I submit that this ruling may have been issued without the benefit of reviewing my **Rule 60(b) Supplement**, which was completed, served, and dispatched for filing **prior to the Court's ruling.**

This Supplement presents **newly discovered evidence of attorney misconduct and serious procedural violations** that directly affect the fairness and enforceability of the Final Judgment. A Rule 60(b) motion, by definition, challenges the validity of the judgment itself and cannot logically be rendered moot by that judgment without a substantive review.

As previously communicated, I had requested that no ruling be issued on Plaintiff's Motion to Amend the Judgment (ECF 376) until my Rule 59(e) and 60(b) motions were resolved. However, the Court's ruling preceded the docketing of my Supplement, despite it being timely submitted and served. As a pro se litigant, I am required to file manually, which creates unavoidable delays in docketing—delays that should not negate my right to be fully heard on a dispositive motion.

The **prejudice caused by this timing is substantial**. My Supplement contains critical evidence—including a verified timeline of communications, billing discrepancies, and documentation of attorney misconduct—that was never considered by the Court before ruling. Because the Court deemed all pending motions moot without reviewing this material, I was denied a fair opportunity to present newly discovered facts that directly challenge the enforceability of the judgment. As a result, a Final Judgment for over $2.7 million now stands without full procedural review, despite my diligent efforts to preserve my rights.

Accordingly, I respectfully request that the Court:

1. **Take judicial notice** of my Rule 60(b) Supplement, which has now been submitted to the Clerk and served on opposing counsel;

2. **Reconsider or clarify its mootness ruling** in light of the Supplement's contents; and

3. **Defer any post-judgment enforcement or fee rulings** until the Supplement has been reviewed and the Rule 60(b)/59(e) matters are resolved.

**Notice Regarding Attorneys' Fees and Related State Proceedings**

I also respectfully inform the Court that I will be filing a separate objection concerning Plaintiffs' anticipated motion for attorneys' fees and costs. The same counsel is prosecuting a related state court case involving the same plaintiffs and overlapping factual allegations. Proceeding with fee determinations now could result in duplicative recovery and prejudicial apportionment. I respectfully ask that any such rulings be deferred until the unresolved post-judgment issues are fully considered.

A copy of my Rule 60(b) Supplement is attached for the Court's reference. I remain available to provide any further clarification the Court may require.

**Respectfully submitted,**
Ronda McNae
Pro Se Defendant

| From: | Ronda McNae |
|---|---|
| To: | Meredith J. Gussin; FLSDdb_efile Martinez; Jessica Clark |
| Cc: | Peter E. Berlowe |
| Subject: | Re: Case No. 22-22171-JEM/Fitzgerald v. McNae/Plaintiff"s Motion to Alter or Amend Judgment and Proposed Order |
| Date: | Wednesday, April 30, 2025 9:57:48 AM |

**CAUTION - EXTERNAL:**

Request to Defer Ruling on Motion to Amend Judgment Pending Rule 59/60 Issues

Dear Judge Martinez,

I write to respectfully notify the Court that my Rule 59(e) and Rule 60(b) motion remains pending. Plaintiff has now filed a Motion to Amend the Final Judgment (ECF 376), which assumes the validity of a judgment I have formally challenged on constitutional and evidentiary grounds.

Given recent developments, I have identified serious issues involving my prior counsel, Richard Gomez, which raise additional grounds under Rule 60 that I intend to present to the Court. These concerns speak directly to the fairness and integrity of the proceedings.

In the interest of justice, I respectfully request that any ruling on Plaintiff's Motion to Amend be deferred until my Rule 60 motion—and the forthcoming supplement addressing counsel's conduct—is fully considered.

Thank you for your time and attention.

Respectfully,
Ronda McNae
Pro Se Defendant

# Exhibit E

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

### Case Number: 22-22171-CIV-MARTINEZ

MICHAEL J. FITZGERALD,
and YELANY DE VARONA,

      Plaintiffs,

v.

RONDA MCNAE, and WILLIAM MCNAE,

      Defendants.

_____/

## ORDER STRIKING EMAIL SENT BY RONDA MCNAE DIRECTLY TO CHAMBERS

**THIS CAUSE** came before the Court on Defendant Ronda McNae's email sent directly to Chambers on May 1, 2025, filed by the Clerk at ECF No. 382. These sorts of communications run afoul of Local Rule 7.7, which provides "[u]nless invited or directed by the presiding Judge, attorneys and parties shall not: (a) address or present to the Court in the form of a letter or the like any application requesting relief in any form, citing authorities, or presenting arguments . . . ." Uninvited communications that do not follow proper channels are not captured on the docket and detract from other pending matters, requiring a quick refocus of finite judicial resources away from other cases to address them. Further violations of this Local Rule may result in sanctions.

Furthermore, Defendant McNae's pending Motion to Alter Judgment, (ECF No. 375), was not rendered moot by this Court's Amended Judgment and Plaintiff Michael Fitzgerald's response is **still due on May 8, 2025**.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the email sent directly to Chambers by Ronda McNae, (ECF No. 382), is **STRICKEN**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this _5_ day of May, 2025.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record

# Exhibit F

# Case No. 22-22171-JEM/Sanchez: Fitzgerald v. McNae  



→ **Meredith J. Gussin** <mjg@assoulineberlowe.com>      Wed, Nov 6, 2024, 2:15 PM   ☆   ☺   ←   ⋮
to Sanchez@flsd.uscourts.gov, me, Will, Peter, martinez@flsd.uscourts.gov ⌄

Dear Magistrate Judge Sanchez:

I am writing you on behalf of the Plaintiff, Michael Fitzgerald, in the above referenced matter. Pursuant to ECF No. 2, U.S. Magistrate Judge Jacquline Becerra was first appointed to handle discovery disputes in this matter, and pursuant to ECF No. 156, this case was reassigned to Your Honor.

Defendant, Ronda McNae, has been representing herself *pro se* since the withdrawal of her attorney, Richard Gomez, on October 1, 2024 (ECF No. 216). Previously, Ms. McNae was represented by Alaina Foliu-Wojtowicz, who withdrew as counsel on December 12, 2023 (ECF No. 116).

Ms. McNae has recently filed numerous motions, which she calls Motions to Supplement the Record, which appear to be untimely Motions in Limine. Discovery closed in this case in July of 2023, and motions in limine were due on September 23, 2024  (ECF No. 168). Despite these deadlines, Ms. McNae has filed four motions in which it appears she seeks to include depositions and other exhibits of her fact and expert witnesses, as well as documents from an unrelated, California State Court case that does not involve either party to this litigation.

We oppose Ms. McNae's efforts to the extent she seeks to reopen discovery, file late motions in limine, and to seek sanctions against Plaintiff for alleged discovery violations (which are unmerited).  We have tried on countless motions to confer with Ms. McNae according to your written procedures for discovery disputes, but Ms. McNae refuses to confer with us via telephone or Zoom, despite our numerous requests for same.

Accordingly, on behalf of the Plaintiff, we respectfully request that Your Honor conduct an in-person discovery hearing on the following matters:

ECF No. 224: Defendant's Motion for Leave to Supplement the Record to Include Deposition of Treating Therapist
ECF No. 232: Plaintiff's Response to ECF No. 224

ECF No. 230: Defendant's Motion for Leave to Supplement the Record to Include Deposition of Treating Therapist Dr. Brock Weedman PsyD
ECF No. 233: Plaintiff's Response to ECF No. 230
ECF No. 235/ECF No. 239: Defendant's Reply in Support of ECF No. 230

ECF No. 231: Defendant's Motion for Leave to Supplement the Record by Ronda McNae
ECF No. 234: Plaintiff's Response to ECF No. 231
ECF No. 238: Defendant's Reply in Support of ECF No. 231

Defendant has filed additional discovery motions that are not yet fully briefed (ECF No. 240 and ECF No. 242), and Plaintiff therefore reserves the right to seek a hearing on those matters once they are ripe for adjudication.

Thank you for your attention to this matter, and we await response from your chambers as to the above requested in person hearing as to the above referenced discovery disputes.

Very truly yours,

**Meredith J. Gussin, Esq.**
Litigation



## RE: 1:22-cv-22171-JEM Fitzgerald v. McNae Proposed Order for Motion Granting Leave to Supplement the Record - Doe v. SoftwareONE  Inbox ×



**Meredith J. Gussin** <mjg@assoulineberlowe.com>          Tue, Oct 22, 2024, 3:25 PM   ☆  ☺  ↩  ⋮

to me, martinez@flsd.uscourts.gov, Sanchez@flsd.uscourts.gov, Peter, Will  ▾

Dear Judge Martinez,

Plaintiff intends to file Responses in Opposition to Defendant's recent Court filings (ECF No. 224, 230 and 231) and respectfully requests that the Court reserve ruling until the matters have been fully briefed.

Thank you for your attention to this matter,

**Meredith J. Gussin, Esq.**
**Litigation**

**ASSOULINE & BERLOWE**
**THE BUSINESS LAW FIRM**

# Exhibit G

**EMAIL COMMUNICATION WITH OPPOSING COUNSEL:**

**<u>PETER BERLOWE</u>**

REGARDING THE <u>FLORIDA FINANCIAL FACT SHEET</u>

On Thu, May 1, 2025 at 10:46 AM Peter E. Berlowe <PEB@assoulineberlowe.com> wrote:

Dear Mrs. McNae:

Good afternoon.  Attached please find Mr. Fitzgerald's Amended Final Judgment against you.  Also attached, please find a blank Florida Rule of Civil Procedure Form 1.977, also known as a Fact Information Sheet.

Pursuant to the attached Amended Final Judgment, you are required to timely, fully, completely and honestly fill out the Fact Information Sheet within 45 days of today, which I calculate as June 16, 2025, inclusive of weekends.

Your failure to timely, fully, completely, and honestly fill out the Fact Information Sheet will result in our seeking an order to show cause why you should not be held in contempt of court, and if necessary and appropriate, seeking your being brought before the Court by U.S. Marshall to explain your failure to do as so ordered.  Hopefully, you will take the Order very seriously, comply to the letter of the law, and we will not have to go through that process of bringing you before the Court.

Have a good day.

Sincerely,

**Peter E. Berlowe, Esq.**
**Business and Intellectual Property Litigation**



# Re: Fitzgerald/McNae: Amended Final Judgment

**Ronda McNae** <prose.rmcnae@gmail.com>    Thu, May 1, 10:59 AM (4 days ago)    ☆   ☺   ↰   ⋮

to Peter, Ronda, Meredith, Shelly, Will, Keisha, Althea ▾

Peter,

Appreciate the enthusiasm in assuming I have hidden assets. As a stay-at-home mom of four navigating the aftermath of trial, I can assure you—there's no secret fortune here, just a lot of resilience and unpaid hours.

That said, I'll review the form and comply with my legal obligations, as I always have—with transparency and integrity.


Respectfully,

Ronda Mcnae

## Re: Fitzgerald/McNae: Amended Final Judgment

**Ronda McNae** <prose.rmcnae@gmail.com>          Thu, May 1, 12:22 PM (4 days ago)
to Peter, Keisha, Will, Althea, Ronda, Meredith, Shelly ▾

**Subject:** Response to Fact Information Sheet – Clarification on Scope

Dear Mr. Berlowe and Ms. Gussin,

I am in the process of completing the Fact Information Sheet (Form 1.977) as ordered. I will be providing full and accurate responses **as they pertain to me personally**, in my individual capacity as the named judgment debtor.

Please note that my spouse, William McNae, is **not a party to this federal case** and has **no legal or financial liability** under the judgment. As such, I will not be including his personal financial information. If you have any questions or concerns regarding him or the related state matter, I respectfully suggest you direct those inquiries to his legal counsel.

Additionally, I intend to file a **Notice of Appeal and Motion to Proceed In Forma Pauperis** in the coming days. These filings will formally preserve my appellate rights and challenge the procedural handling of the final judgment and related motions.

Thank you for your attention.

Sincerely,
Ronda McNae
Pro Se Defendant

**From:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Sent:** Thursday, May 1, 2025 12:48 PM
**To:** Ronda McNae <prose.rmcnae@gmail.com>
**Cc:** Ronda McNae <rondamcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Shelly Hart <sh@assoulineberlowe.com>
**Subject:** RE: Fitzgerald/McNae: Amended Final Judgment

Dear Mrs. McNae:

Have you represented to the State of Iowa that you have no money?  That Mr. McNae has no money?  Don't lie to the Court about your financial means.

Govern yourself accordingly.

**Peter E. Berlowe, Esq.**
**Business and Intellectual Property Litigation**

ASSOULINE & BERLOWE
THE BUSINESS LAW FIRM

## Re: Fitzgerald/McNae: Amended Final Judgment

**Ronda McNae** <prose.rmcnae@gmail.com>      Thu, May 1, 1:14 PM (4 days ago)      ☆   ☺   ↩   ⋮

to Peter, Ronda, Meredith, Shelly, Keisha, Althea, Will ▾

Mr. Berlowe,

Please cease the harassing communications. I am not authorized to speak on behalf of Will McNae and will not provide information related to him. If such information is required, you must include his legal counsel in all related communications. I will not be coerced into violating attorney-client boundaries or established legal norms.

As for your inflammatory reference to U.S. Marshals: I do not fear law enforcement. I have complied fully with the law throughout these proceedings. You would be better served directing such rhetoric elsewhere. It is your clients who are under active criminal investigation—not me. One has already been caught lying under oath on multiple occasions. I suggest you advise them accordingly.

For the record, I have engaged counsel in the United Kingdom and will be signing an agreement for formal representation. They are now fully aware of the conduct and factual record involving your clients. Given the cross-border nature of certain events, it is also possible that UK laws may be implicated, including statutes governing coercive control, misuse of legal process, and cross-jurisdictional misconduct.

If you believe escalating this matter serves your client's interests, you are free to inform the Court. I am maintaining a complete record of your communications and will not hesitate to forward them to the appropriate parties as needed.

Respectfully,

Ronda Mcnae

**From:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Sent:** Thursday, May 1, 2025 1:21 PM
**To:** Ronda McNae <prose.rmcnae@gmail.com>
**Cc:** Ronda McNae <rondamcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Shelly Hart <sh@assoulineberlowe.com>
**Subject:** RE: Fitzgerald/McNae: Amended Final Judgment

Dear Mrs. McNae:

It is amazing you can afford to hire an attorney in the U.K., but will be seeking to proceed *in forma pauperis.* Your email will be <u>Exhibit 1</u> to our opposition to your motion to proceed as such. Thank you.

Sincerely,

**Peter E. Berlowe, Esq.**
**Business and Intellectual Property Litigation**

**ASSOULINE & BERLOWE**
**THE BUSINESS LAW FIRM**

## Re: Fitzgerald/McNae: Amended Final Judgment

**Ronda McNae** <prose.rmcnae@gmail.com>   Thu, May 1, 1:32 PM (4 days ago)   ☆   ☺   ↰   ⋮
to Peter, Ronda, Meredith, Shelly ▾

Mr. Berlowe,

Your sarcasm is noted—and entirely misplaced. I am a stay-at-home mother of four, navigating post-judgment litigation while preparing to crowd-fund legal support abroad, which is a recognized and lawful avenue for individuals pursuing justice in cases with international dimensions. Public support through such efforts does not reflect personal wealth, nor does it disqualify me from seeking in forma pauperis status under U.S. law. It reflects the seriousness of what I'm fighting and the number of people who believe this story deserves to be heard.

If you wish to make my efforts to obtain pro bono or community-funded counsel the basis of your opposition, feel free to do so. But let's not pretend this process is revealing anything other than how financially devastating your clients' actions—and this litigation—have been.

Every relevant communication will be part of the record. I have no interest in selective disclosure—transparency is not optional when the truth is on your side.


Respectfully,

Ronda Mcnae

**From:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Sent:** Thursday, May 1, 2025 1:39 PM
**To:** Ronda McNae <prose.rmcnae@gmail.com>
**Cc:** Ronda McNae <rondamcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Shelly Hart
<sh@assoulineberlowe.com>
**Subject:** RE: Fitzgerald/McNae: Amended Final Judgment

Dear Mrs. McNae.

We do not include Mr. McNae attorneys, because we were instructed to not involve them in the
Federal Case.  You are costing them money.  Besides this is about our collection against all of
your assets as the laws of the various states define your assets.

Sincerely,


**Peter E. Berlowe, Esq.**
**Business and Intellectual Property Litigation**



## Re: Fitzgerald/McNae: Amended Final Judgment

**Ronda McNae** <prose.rmcnae@gmail.com>     Thu, May 1, 1:51 PM (4 days ago)

to Peter, Ronda, Meredith, Shelly, Keisha, althea.bryanfarr@bfhlegal.com, Will ⌄

Mr. Berlowe,

Your suggestion that Mr. McNae's counsel cannot be included due to prior instructions is directly contradicted by your own conduct. You have previously included them in other communications when it served your interest. It is disingenuous to now claim otherwise while pressuring me to speak on his behalf.

To reiterate: I do not represent Will McNae and have no authority to speak for him. If you believe information related to him is relevant, you must communicate directly with his legal counsel, as you have done before.

Moreover, just as you have billed me for the transcription of phone recordings used in the state court case—despite court documents confirming his counsel objected to producing those recordings—it is clear that you continue to selectively apply standards based on convenience, not consistency or fairness.

I will not be scapegoated for litigation decisions made by others, nor will I allow misrepresentations about asset ownership or obligations to go unchallenged. I have complied with my responsibilities. Any continued mischaracterizations or pressure will be preserved for the Court and, if necessary, other authorities.

Appreciate the candor but I'm going offline for the weekend, probably for an extended period.

Regards,

Ronda McNae

# BERLOWE FORWARDED ME A COPY OF MY EMAIL AND HIGHLIGHTED "WHEN THE TRUTH IS ON YOUR SIDE"

From: Ronda McNae <prose.rmcnae@gmail.com>
Sent: Thursday, May 1, 2025 4:32 PM
To: Peter E. Berlowe <PEB@AssoulineBerlowe.com>
Cc: Ronda McNae <rondamcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Shelly Hart <sh@assoulineberlowe.com>
Subject: Re: Fitzgerald/McNae: Amended Final Judgment

Mr. Berlowe,

Your sarcasm is noted—and entirely misplaced. I am a stay-at-home mother of four, navigating post-judgment litigation while preparing to crowd-fund legal support abroad, which is a recognized and lawful avenue for individuals pursuing justice in cases with international dimensions. Public support through such efforts does not reflect personal wealth, nor does it disqualify me from seeking in forma pauperis status under U.S. law. It reflects the seriousness of what I'm fighting and the number of people who believe this story deserves to be heard.

If you wish to make my efforts to obtain pro bono or community-funded counsel the basis of your opposition, feel free to do so. But let's not pretend this process is revealing anything other than how financially devastating your clients' actions—and this litigation—have been.

Every relevant communication will be part of the record. I have no interest in selective disclosure— transparency is not optional when the truth is on your side.

Respectfully,

Ronda McNae

From: Peter E. Berlowe <PEB@AssoulineBerlowe.com>
Sent: Thursday, May 1, 2025 1:37:03 PM
To: Ronda McNae <prose.rmcnae@gmail.com>
Cc: Ronda McNae <rondamcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>; Shelly Hart <sh@assoulineberlowe.com>
Subject: RE: Fitzgerald/McNae: Amended Final Judgment

Dear Mrs. McNae:

We agree with you that the truth is on my side.

Sincerely,

Peter E. Berlowe, Esq.

Business and Intellectual Property Litigation

**ASSOULINE & BERLOWE**
**THE BUSINESS LAW FIRM**

**Ronda McNae** <prose.rmcnae@gmail.com>     Thu, May 1, 1:42 PM (4 days ago)   ☆   ☺   ↩   ⋮

to Peter, Ronda, Meredith, Shelly, Will, Keisha, althea.bryanfarr@bfhlegal.com ▾

That's one of us. Creative spin—though the record will speak for itself.

Respectfully,

Ronda Mcnae

---

## RE: Fitzgerald/McNae: Amended Final Judgment   Inbox ×      🖶   ⧉

**Peter E. Berlowe**                          Thu, May 1, 2:14 PM (4 days ago)   ☆   ☺   ↩   ⋮

to me, Ronda, Meredith ▾

Dear Ms. McNae:

You keep on with your recreationist history.

It will not go over well.

Sincerely,

**Peter E. Berlowe, Esq.**
**Business and Intellectual Property Litigation**

ASSOULINE & BERLOWE
THE BUSINESS LAW FIRM

# Exhibit H

# EMAIL COMMUNICATION WITH OPPOSING COUNSEL:

## <u>PETER BERLOWE</u>

### REGARDING <u>DRAFT FEES AND COSTS MOTION</u>

**From:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Sent:** Friday, April 25, 2025 6:36:16 AM
**To:** Ronda McNae <rondamcnae@gmail.com>
**Cc:** Meredith J. Gussin <mjg@assoulineberlowe.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** Fitzgerald/McNae: Draft Fees and Costs Motion and Supporting Documents for Rules 7.1 and 7.3
Conferral Purposes

Good morning Mrs. McNae:

Pursuant to S.D.Fla. Local Rules 7.1 and 7.3, I have attached drafts of our (i) Motion for Fees
and Costs, (ii) Declaration in Support (which includes hourly fee descriptions and vendor
invoices), and (iii) 28 USC Section 1920 Bill of Costs . We are providing these to you for our
required conferral to see if you and I can agree to any of the following:

1. The hourly rates charged by each of the attorneys and paralegals of the firm.
2. The time spent on any particular time entry by the attorneys and paralegals of the
firm.
3. The costs which we seek reimbursement, either under Section 23 of the
Confidential Settlement Agreement or under 28 USC Section 1920.
4. The reasonableness of the fees and costs requested.
5. An appropriate understanding of your total incurred fees and costs to date with
your three former attorneys.

We are required to confer on these issues in person or at least by zoom since you are out of
state. I know you have refused to such conferrals by zoom and phone in the past, but I kindly
request you consider meeting by zoom for this issue as required by local rule. Earlier in the week
you asked me not to email you, but we obviously have to communicate in some fashion as you
represent yourself *pro se*.

Sincerely,

Peter E. Berlowe, Esq.
Business and Intellectual Property Litigation

**From:** Ronda McNae <rondamcnae@gmail.com>
**Sent:** Friday, April 25, 2025 10:54 AM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Meredith J. Gussin <mjg@assoulineberlowe.com>; Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Subject:** Re: Fitzgerald/McNae: Draft Fees and Costs Motion and Supporting Documents for Rules 7.1 and 7.3 Conferral Purposes

Please send all court-related documents to the email address I have provided through PACER and in prior court filings. This is my personal email account.

Regards,

Ronda McNae

## RE: Fitzgerald/McNae: Draft Fees and Costs Motion and Supporting Documents for Rules 7.1 and 7.3 Conferral Purposes  Inbox ×

**Peter E. Berlowe**                    Apr 25, 2025, 8:03 AM (10 days ago)    ☆  ☺  ↰  ⋮
to Ronda, me, Meredith ▾

Good morning Mrs. McNae:

Please see attached per your request.  I guess you have been emailing me on case issues from your rondamcnae@gmail.com account regarding case issues. I now see that after your pointing it out. I never realized you were using two email addresses with us.   I'll try to remember that for next time.

When would you like to confer via zoom?

Sincerely,

**Peter E. Berlowe, Esq.**

**Peter E. Berlowe**                           Apr 25, 2025, 11:45 AM (10 days ago)   ☆  ☺  ↩  ⋮

to me, Ronda, Meredith ▾

Good afternoon Mrs. McNae:

We will give you until 10 am EST on Tuesday, April 29th to provide us your response.  If it has merit, we will engage further; however, I am frankly suspicious as to your new founded disability claims, particularly where you have represented yourself *pro se* off an on for over a year's worth of this case.  You have drafted hundreds of pages of extensive legal briefing on short turn arounds whenever it suited your needs.

Also, please remember research the law on issues that are inextricably intertwined, and be careful not to contradict the positions you have previously taken in this case when you were seeking fees.  You must remain consistent to maintain credibility.  So far, your thoughts are 180 degrees from your past arguments.

Furthermore your claim in your motion filed today that you were violently gagging at the trial is lacking in candor.  That did not occur.  You do realize there were other people in the Court room?  People who are compassionate human beings.  That type of recreationist history will not play well with us or the Court.

Sincerely,

**Peter E. Berlowe, Esq.**

**From:** Ronda McNae <prose.rmcnae@gmail.com>
**Sent:** Friday, April 25, 2025 1:21 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>
**Cc:** Meredith J. Gussin <mjg@assoulineberlowe.com>; Will McNae <prose.wmcnae@gmail.com>; Keisha Hall <khall@allpointslegal.com>; Althea Bryan Farr <Althea.BryanFarr@bfhlegal.com>
**Subject:** Re: Fitzgerald/McNae: Draft Fees and Costs Motion and Supporting Documents for Rules 7.1 and 7.3 Conferral Purposes

**Subject: Response to Request for Conferral Regarding Motion for Fees and Costs**

Mr. Berlowe,

Thank you for your reply and for sending the requested materials. You are correct that I mistakenly sent some prior communications from my personal email account. I apologize for any confusion that may have caused. Going forward, I will ensure that all litigation-related correspondence is sent exclusively from my **prose.rmcnae@gmail.com** account. At present, I am out of town with my daughter and will not return until Monday evening. Following my return, I will need sufficient time to thoroughly examine the materials and prepare my initial response.

Please also see the attached document, which I have prepared to begin the conferral process in writing, consistent with my prior request for ADA accommodation. Additionally, I have included **Will McNae's counsel** in this correspondence to ensure full transparency and to avoid any issues of duplicative recovery between the federal matter and the related state court proceedings.

As mentioned, I am unable to participate in Zoom or telephone calls due to my diagnosed PTSD and panic disorder—conditions that prevent me from safely engaging in verbal communication, particularly in adversarial or high-stress settings. I remain committed to cooperating in good faith, and I believe written correspondence will allow us to engage productively while respecting my health-related needs.

Thank you for your understanding and professional courtesy.

Sincerely,
**Ronda McNae**

On Fri, Apr 25, 2025 at 2:42 PM Peter E. Berlowe <PEB@assoulineberlowe.com> wrote:

Dear Ms. McNae:

Pursuant to Fed.R.Civ.P. Rule 54, your proposal is inadequate.  You cannot unilaterally run out the clock on the timely filing of our motion for fees.  Please respond by April 25, 2025, as previously reasonably requested.

Sincerely,

**Peter E. Berlowe, Esq.**

---

**Ronda McNae** <prose.rmcnae@gmail.com>        Fri, Apr 25, 3:36 PM (10 days ago)    ☆    ☺    ↩    ⋮
to Peter, Will, Keisha, Althea, Meredith ▾

Dear Mr. Berlowe,

What is truly inadequate is your decision to serve the draft motion for the first time **today** while demanding an immediate response on your preferred timeline. As I have already stated, I will provide my initial written reply by **May 6, 2025** — sooner if possible. If you take issue with this reasonable timeframe, you are, of course, free to raise the matter with the Court.

Given the volume of materials, my pro se status, and my ADA accommodation, this timeline is both appropriate and necessary. I remain committed to participating in the conferral process in good faith. I trust you are familiar with the governing rules and will proceed accordingly.

Respectfully,
**Ronda McNae**

**From:** Ronda McNae <prose.rmcnae@gmail.com>
**Sent:** Friday, April 25, 2025 4:48 PM
**To:** Peter E. Berlowe <PEB@AssoulineBerlowe.com>; Will McNae <prose.wmcnae@gmail.com>; Keisha Hall <khall@allpointslegal.com>; Althea Bryan Farr <Althea.BryanFarr@bfhlegal.com>
**Cc:** Ronda McNae <rondamcnae@gmail.com>; Meredith J. Gussin <mjg@assoulineberlowe.com>
**Subject:** Re: Fitzgerald/McNae: Draft Fees and Costs Motion and Supporting Documents for Rules 7.1 and 7.3 Conferral Purposes

Subject: Response to April 25, 2025 Email / ADA Accommodation Reminder
Dear Mr. Berlowe,

I am in receipt of your recent email regarding my ADA accommodation request and the conferral process. I will not engage with or dignify personal attacks, ableist commentary, or speculative accusations regarding my health conditions, which are documented and supported by medical evidence. Such statements are inappropriate and irrelevant to the legal matters at hand.

As I have previously stated in writing, I am requesting—and continuing to assert—reasonable accommodation under the Americans with Disabilities Act (ADA) for all required conferral to take place exclusively through written correspondence. This is not a "newly founded" claim, as you suggest, but rather a well-documented and medically supported condition that impacts my ability to safely engage in verbal adversarial interactions. The fact that I have participated pro se does not negate my ADA rights.

Regarding your **demand for a response by 10:00 a.m. EST on April 29, 2025**, I reiterate that I am currently traveling with my daughter and have been transparent about my schedule. I will follow up with a thorough conferral reply by the end of the day on **May 6, 2025**. If more time is required or we need to go back and forth on other items, we can address that then.

Given the complexity of your fee request, my pro se status, and the scope of documents involved, I remain committed to engaging in good faith but require adequate time to review and respond thoroughly. I will provide my initial written observations and questions as soon as reasonably possible after my return.

I also note your comments regarding my description of medical distress experienced during trial proceedings. Your characterization of this issue is inappropriate and speculative. Whether you personally witnessed the physical manifestation of my symptoms is not determinative of my medical experience. These matters, including the medical documentation of my condition, will be addressed through appropriate legal channels—*not through inflammatory rhetoric*.

To be clear, written communication is not merely my preference — it is a necessary and reasonable accommodation in light of my documented medical conditions, including PTSD and panic disorder, and is essential to ensure my ability to fully and fairly participate in this process. Additionally, given my pro se status and the extensive volume of the materials provided, I will require reasonable time to complete my review before engaging meaningfully in the required conferral.

I remain committed to participating in good faith, but I will not accept any arbitrary or unilateral deadline that fails to take these circumstances into account. Should you disagree with this approach, you are free to raise the issue with the Court. I am prepared to explain my position fully and believe that written conferral and a reasonable timeframe are both appropriate and justified under these circumstances.

**I will provide a thorough conferral reply by the end of the day on May 6, 2025. Given the volume and complexity of the billing records, my pro se status, and my need for reasonable accommodation due to medical conditions, I reserve the right to request additional time if my initial review shows that further examination or clarification is necessary.**

Respectfully,
Ronda McNae

# Exhibit I

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO: _____

MICHAEL J. FITZGERALD,
individually,

                Plaintiff,

v.

WILLIAM MCNAE, individually,

                Defendant.

_____/

## COMPLAINT

Plaintiff, MICHAEL J. FITZGERALD ("Fitzgerald" or "Plaintiff"), files this Complaint against Defendant, WILLIAM MCNAE ("McNae" or "Defendant"), and alleges:

1. This is an action for damages arising out of Defendant's breach of a contract (the "Confidential Settlement Agreement") with Plaintiff Fitzgerald. Fitzgerald also alleges tort claims, *in the alternative*, against Defendant in the event that the Confidential Settlement Agreement is deemed unenforceable or void.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Fitzgerald is a British citizen who resides in England.

3. Defendant McNae is a United States citizen who is domiciled in Washington State.

4. This Court has subject matter jurisdiction over this action because it involves an actual and ongoing controversy that exceeds $50,000 plus attorneys' fees and costs. In particular, the amount in controversy is at least $657,228.00 in economic damages due as a result of natural and consequential damages to Plaintiff as a result of Defendant's breaches of the contract at issue

1

in this case.

5.     This Court has personal jurisdiction over Defendant pursuant to Florida Statute §48.193 because he has breached a contract in this state by failing to perform acts required by the Confidential Settlement Agreement to be performed in this state and because he committed tortious acts within this State.  Furthermore, this Court has jurisdiction over Defendant pursuant to Florida Statute §685.102 because the Confidential Settlement Agreement has a Florida choice of law provision and Defendant has therefore agreed to submit to the jurisdiction of the courts of this state.

6.     Venue in this district is proper because the underlying events related to the Confidential Settlement Agreement occurred in Miami-Dade County, Florida, and Defendant agreed in the Confidential Settlement Agreement that Miami-Dade County, Florida was the exclusive venue for disputes arising out of the agreement.

7.     The Plaintiff has retained the law firm Assouline & Berlowe, P.A., and has agreed to pay the firm its reasonable attorneys' fees and costs in conjunction with representing the Plaintiff in this action.

8.     All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

## **FACTS**

9.     Fitzgerald and Defendant (along with Defendant's wife, Ronda McNae), both with the aid of qualified attorneys, entered into a Confidential Settlement Agreement on or about June 15, 2020.  A true and correct copy of the Confidential Settlement Agreement is attached hereto as **Exhibit A**.

10.     In accordance with the Confidential Settlement Agreement, Defendant and

*Fitzgerald v. William McNae*
Case No. _____

Fitzgerald were required to keep the terms and conditions of the Confidential Settlement Agreement confidential.  <u>See</u> Exhibit A, ¶16.

11.     In accordance with the Confidential Settlement Agreement, Defendant was to have no contact with Fitzgerald's then-employer, SoftwareONE.  <u>See</u> Exhibit A, ¶4B.

12.     In accordance with the Confidential Settlement Agreement, Defendant was not supposed to speak or write about Fitzgerald, his nationality, his employer, his country of citizenship, his location of residence, his employer, his job function, his job title, his profession, or reference dates, locations or other persons present at any of the events related to the underlying dispute.  <u>See</u> Exhibit A, ¶4A.  The McNaes were also prohibited from referring to Fitzgerald indirectly.  <u>Id.</u>

13.     Under the Confidential Settlement Agreement, Fitzgerald paid a sum of money, and Fitzgerald and Defendant each released claims against one another. <u>See</u> Exhibit A, ¶¶3, 13.

14.     Under the Confidential Settlement Agreement, Defendant and Fitzgerald agreed not to disparage each other by written or oral word, gesture, or other means, nor would they make disparaging or negative comments about each other, to any person or entity.  <u>See</u> Exhibit A, ¶17.

15.     Fitzgerald has complied with all terms and conditions of the Confidential Settlement Agreement.

16.     On the contrary, Defendant breached several provisions of the Confidential Settlement Agreement by contacting SoftwareONE (Fitzgerald's then-employer) on July 15, 2022 and by contacting Microsoft (Defendant's employer who used to do business with SoftwareONE) on April 12, 2022; April 20, 2022; May 2, 2022 and July 13, 2022.  Defendant has also breached the Confidential Settlement Agreement by contacting others about the existence of the Confidential Settlement Agreement and by disparaging Fitzgerald to others.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*

Case No. _____

17.     Defendant's communications constitute breaches of the following provisions of the

Confidential Settlement Agreement:

- ¶4B: prohibition against contacting SoftwareONE

- ¶16: requirement to keep the terms and conditions of the Confidential Settlement Agreement confidential;

- ¶4A: prohibition from speaking or writing about Fitzgerald directly or indirectly, and

- ¶17: prohibition from disparaging Fitzgerald to others.

See Exhibit A.

18.     Plaintiff has been damaged as a result of Defendant's breaches both personally and

professionally.

19.     Plaintiff has hired the undersigned law firm to prosecute its claim and is obligated

to pay it a reasonable fee for its services. Pursuant to Paragraph 23 of the Confidential Settlement

Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and all costs incurred

relating to said enforcement. See Exhibit A, ¶23.

## COUNT I – BREACH OF CONTRACT

20.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this

Count, Paragraphs 1-19 of this Complaint.

21.     The Confidential Settlement Agreement is a binding contract under Florida law.

22.     Defendant breached the Confidential Settlement Agreement by:

A.     Not keeping the Confidential Settlement Agreement confidential as required;

B.     Contacting Fitzgerald's then-employer, SoftwareONE;

C.     Disclosing the existence of the Confidential Settlement Agreement to

4

*Fitzgerald v. William McNae*
Case No. _____

Fitzgerald's then-employer, SoftwareONE;

D.    Contacting Defendant's employer, Microsoft, and disclosing the existence of the Confidential Settlement Agreement and the underlying dispute to Microsoft;

E.    By referring to Fitzgerald directly by name and/or likeness, being, nationality, country of citizenship, location of residence, employer, job function, jot title, profession, or in reference to dates, locations, or other persons present;

F.    By disparaging, lying and intentionally seeking to harm Fitzgerald both professionally and personally by wrongfully and falsely accusing him of a crime to others; and

G.    By working in concert with his wife, Ronda McNae, to commit her breaches of the Confidential Settlement Agreement and her lies to Fitzgerald;

23.    Plaintiff has been damaged by Defendant's breaches of the Confidential Settlement Agreement. Such damages include the loss of Plaintiff's job at SoftwareONE due to Defendant's false accusations that Plaintiff assaulted Defendant's wife which led to a prolonged internal investigation into Fitzgerald at SoftwareONE. The internal investigation resulted in Fitzgerald not being able to work in his chosen profession, loss of business contacts and relationships, damage to his professional reputation, loss of stock options, and earned bonuses, among other things. These damages were natural and foreseeable consequences of Defendant's multiple breaches of the Confidential Settlement Agreement.

24.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*

Case No. _____

**WHEREFORE**, Plaintiff demands judgment against Defendant, William McNae, for compensatory damages in the amount of $657,228.00, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT II – ALTERNATIVE COUNT: LIBEL PER SE (STATEMENT 1)

25.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Complaint.

26.     This count is brought *in the alternative* to Count I in the event that Defendant argues that the Confidential Settlement Agreement is void as against public policy or otherwise unenforceable. Plaintiff Fitzgerald asserts this count in the event the Court deems the Confidential Settlement Agreement void or otherwise unenforceable as against Defendant.

27.     Defendant has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexually assaulting and raping his wife, Ronda McNae.

28.     Defendant has been, at all times pertinent, an employee of Microsoft. Microsoft was a large global business partner with SoftwareONE in 2019 and 2019 when Fitzgerald was in contact with Defendant and his wife.

29.     On April 12, 2022, Defendant contacted Chris Maulden and Ande Ferretti of Microsoft and referred to Fitzgerald indirectly and stated that Fitzgerald raped his wife. The letter states, in pertinent part:

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

Because my sexual battery allegation involves my spouse, I do not believe it deserves any less attention to investigate the incident or uphold the violated Vendor Code of Conduct established with Partner organizations. As a victim of sexual battery, the lack of willingness by HR to demonstrate advocacy for an employee and their spouse, <u>when it was a result of a work relationship</u>, has been emotionally exhausting and damaging. A quick summary – the CIO of one of the largest global revenue billing partners took advantage of my work relationship to develop a trauma-based friendship with my family, which ultimately resulted in raping my wife and threatening me on a Redmond campus when I confronted him about criminal misconduct (reported to HR; also reported to Redmond Police Dept.). To be told by US HR that Microsoft has "zero liability" regarding this incident has haunted me for 2 years. Especially when I never reported this allegation as the fault of Microsoft – but asked for help since the relationship was so tightly connected to my work relationship.

[BATES MCNAE 1321-1323] (hereinafter referred to as "Statement 1"). A true and correct copy of Statement 1 is attached hereto as **Exhibit B**.

      30.     Statement 1 is about Fitzgerald.

      31.     Statement 1 is false.

      32.     As a direct and proximate result of Defendant's libelous Statement 1, Fitzgerald has been damaged.

      33.     Statement 1 is libel *per se* because the defamatory words Defendant used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

      34.     Statement 1 is libel *per se* because Statement 1 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

      35.     Statement 1 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

      36.     In relation to Statement 1, Defendant intentionally made numerous other statements that Fitzgerald raped Ronda McNae.

      37.     Defendant had actual knowledge that Statement 1 was false and that making false statements like Statement 1 are wrong and likely to injure Fitzgerald.

      38.     In Florida, rape and sexual assault are felony crimes.  In Florida, false statements

*Fitzgerald v. William McNae*

Case No. _____

indicating a person committed a felony constitute libel *per se.*

39.     Defendant made Statement 1 with the malicious intent to defame Fitzgerald.

40.     Statement 1 is unprivileged.

41.     As a direct result of Defendant's publication of Statement 1, Defendant naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

42.     The wrongs and injuries caused by a statement like Statement 1 are presumed and implied, and constitute libel *per se.*

43.     Statement 1 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

44.     Statement 1 caused others to avoid Fitzgerald, such as his former employer, SoftwareONE and its employees, as well as partnered companies.

45.     As a direct result of Defendant's Statement 1, Fitzgerald now feels ostracized both personally and professionally.

46.     As a direct result of Statement 1, Fitzgerald has not been permitted to work in his chosen career.

47.     As a consequence of Statement 1, Defendant damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court, which has been ascertained to be $657,228.00 in economic damages alone.

48.     Defendant's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory damages pursuant to state law, to punish Defendant for his actions and to deter him, and others from such action in the future.

**WHEREFORE,** Plaintiff Michael Fitzgerald demands judgment against Defendant

8

*Fitzgerald v. William McNae*

Case No. _____

William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

## COUNT III - ALTERNATIVE COUNT: LIBEL PER SE (STATEMENT 2)

49.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Amended Complaint.

50.     This count is brought *in the alternative* to Count I in the event that Defendant argues that the Confidential Settlement Agreement is void as against public policy or otherwise unenforceable.  Plaintiff Fitzgerald asserts this count in the event the Court deems the Confidential Settlement Agreement void or otherwise unenforceable as against Defendant.

51.     Defendant has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexually assaulting and raping his wife, Ronda McNae.

52.     Defendant has been, at all times pertinent, an employee of Microsoft.  Microsoft was a large global business partner with SoftwareONE in 2019 and 2019 when Fitzgerald was in contact with Defendant and his wife.

53.     On April 20, 2022, Defendant again contacted Chris Maulden of Microsoft stating that Fitzgerald preyed upon and assaulted his wife, Ronda McNae.  It states, in pertinent part:

> I have case notes and evidence to support why this is a workplace issue due to the first meeting taking place at a work event and the grooming behavior was enabled because of the work relationship.
> …
> Mike Fitzgerald abused his work relationship with me to prey and assault my wife and harass then threaten me assuming I would be too afraid to speak up.

[BATES MCNAE 1319-1320] (hereinafter referred to as "Statement 2").  A true and correct copy

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*

Case No. _____

of Statement 2 is attached hereto as **Exhibit C**.

54.     Statement 2 is about Fitzgerald.

55.     Statement 2 is false.

56.     As a direct and proximate result of Defendant's libelous Statement 2, Fitzgerald has been damaged.

57.     Statement 2 is libel *per se* because the defamatory words Defendant used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

58.     Statement 2 is libel *per se* because Statement 2 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

59.     Statement 2 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

60.     In relation to Statement 2, Defendant intentionally made numerous other statements that Fitzgerald raped Ronda McNae.

61.     Defendant had actual knowledge that Statement 2 was false and that making false statements like Statement 2 are wrong and likely to injure Fitzgerald.

62.     In Florida, rape and sexual assault are felony crimes.  In Florida, false statements indicating a person committed a felony constitute libel *per se*.

63.     Defendant made Statement 2 with the malicious intent to defame Fitzgerald.

64.     Statement 2 is unprivileged.

65.     As a direct result of Defendant's publication of Statement 2, Defendant naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

66.     The wrongs and injuries caused by a statement like Statement 2 are presumed and

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

implied, and constitute libel *per se*.

67.    Statement 2 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

68.    Statement 2 caused others to avoid Fitzgerald, such as his former employer, SoftwareONE and its employees, as well as partnered companies.

69.    As a direct result of Defendant's Statement 2, Fitzgerald now feels ostracized both personally and professionally.

70.    As a direct result of Statement 2, Fitzgerald has not been permitted to work in his chosen career.

71.    As a consequence of Statement 2, Defendant damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court, which has been ascertained to be $657,228.00 in economic damages alone.

72.    Defendant's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory damages pursuant to state law, to punish Defendant for his actions and to deter him, and others from such action in the future.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

## COUNT IV - ALTERNATIVE COUNT: LIBEL PER SE (STATEMENT 3)

73.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Amended Complaint.

*Fitzgerald v. William McNae*

Case No. _____

74.     This count is brought *in the alternative* to Count I in the event that Defendant argues that the Confidential Settlement Agreement is void as against public policy or otherwise unenforceable.  Plaintiff Fitzgerald asserts this count in the event the Court deems the Confidential Settlement Agreement void or otherwise unenforceable as against Defendant.

75.     Defendant has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexually assaulting and raping his wife, Ronda McNae.

76.     Defendant has been, at all times pertinent, an employee of Microsoft. Microsoft was a large global business partner with SoftwareONE in 2019 and 2019 when Fitzgerald was in contact with Defendant and his wife.

77.     On April 20, 2022, Defendant again contacted Chris Maulden of Microsoft stating that Fitzgerald preyed upon and assaulted his wife, Ronda McNae.  It states, in pertinent part:

78.     On May 2, 2022, W. McNae again contacted Chris Maulden of Microsoft as well as Leslie Pickering of Microsoft stating that Fitzgerald was a sexual predator that groomed and exploited his wife, Ronda McNae. It states, in pertinent part:

> While it may be a surprise to you, it's not a surprise to either my wife or myself. Predators have a script. They have a process. A grooming period. It's calculated and premeditated. The sad part, my wife even gathered evidence to show MS however no one from HR was open to follow up and look at what she had compiled.
>
> As an employee of MS, I am telling you, this man is a sexual predator that began grooming and exploiting my wife the moment he met her at a WORK EVENT and continued under the pretext of my work relationship. I fear for other female employees within our company that work alongside him and at this point the company continues to be a complicit bystander. The question I pose to Microsoft HR is "will you still claim "zero liability" once you learn more victims come forward?"

[BATES MCNAE 1317-1318] (hereinafter referred to as "Statement 3").  A true and correct copy of Statement 3 is attached hereto as **Exhibit D**.

79.     Statement 3 is about Fitzgerald.

80.     Statement 3 is false.

ASSOULINE & BERLOWE, P.A.
Miami Tower ◆ 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*

Case No. _____

81.     As a direct and proximate result of Defendant's libelous Statement 3, Fitzgerald has been damaged.

82.     Statement 3 is libel *per se* because the defamatory words Defendant used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

83.     Statement 3 is libel *per se* because Statement 3 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

84.     Statement 3 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

85.     In relation to Statement 3, Defendant intentionally made numerous other statements that Fitzgerald raped Ronda McNae.

86.     Defendant had actual knowledge that Statement 3 was false and that making false statements like Statement 3 are wrong and likely to injure Fitzgerald.

87.     In Florida, rape and sexual assault are felony crimes.  In Florida, false statements indicating a person committed a felony constitute libel *per se*.

88.     Defendant made Statement 3 with the malicious intent to defame Fitzgerald.

89.     Statement 3 is unprivileged.

90.     As a direct result of Defendant's publication of Statement 3, Defendant naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

91.     The wrongs and injuries caused by a statement like Statement 3 are presumed and implied, and constitute libel *per se*.

92.     Statement 3 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*

Case No. _____

93.    Statement 3 caused others to avoid Fitzgerald, such as his former employer, SoftwareONE and its employees, as well as partnered companies.

94.    As a direct result of Defendant's Statement 3, Fitzgerald now feels ostracized both personally and professionally.

95.    As a direct result of Statement 3, Fitzgerald has not been permitted to work in his chosen career.

96.    As a consequence of Statement 3, Defendant damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court, which has been ascertained to be $657,228.00 in economic damages alone.

97.    Defendant's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory damages pursuant to state law, to punish Defendant for his actions and to deter him, and others from such action in the future.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

## COUNT V - ALTERNATIVE COUNT: LIBEL PER SE (STATEMENT 4)

98.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Amended Complaint.

99.    This count is brought *in the alternative* to Count I in the event that Defendant argues that the Confidential Settlement Agreement is void as against public policy or otherwise unenforceable. Plaintiff Fitzgerald asserts this count in the event the Court deems the Confidential

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*
Case No. _____

Settlement Agreement void or otherwise unenforceable as against Defendant.

100.     Defendant has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexually assaulting and raping his wife, Ronda McNae.

101.     Defendant has been, at all times pertinent, an employee of Microsoft. Microsoft was a large global business partner with SoftwareONE in 2019 and 2019 when Fitzgerald was in contact with Defendant and his wife.

102.     On July 13, 2022, W. McNae again contacted Microsoft referring to Fitzgerald indirectly and accusing him of raping his wife, Ronda McNae.  The letter provides, in pertinent part:

> The CIO placed so much importance on joining him that when my flight couldn't arrive in time to join the dinner, I asked my wife to go in my place. I partially asked my wife to attend because I knew the CIO's girlfriend had also canceled her attendance at the last moment and I felt personally responsible to demonstrate support at the celebration. This was not my family's first interaction with him; he had introduced his girlfriend to us and a friendship between the four of us had developed over the prior three months. We felt the pressure of her canceled attendance and somehow believed we owed him to go in her place. I was afraid of the negative repercussions towards me and Microsoft if we missed this event. My wife attended his dinner in my place, which ultimately resulted in her incapacitation. While my wife was unable to give consent, the CIO sexually assaulted her.
>
> My wife bears the trauma and emotional scars from the rape, but I continue to battle ongoing mental health issues including anxiety and depression, as well as stress from continuing to support this Partner organization until I could no longer stand it and reported to my Manager four months after the assault.

[BATES MCNAE 1275-1277] (hereinafter referred to as "Statement 4"). A true and correct copy of Statement 4 is attached hereto as **Exhibit E**.

103.     Statement 4 is about Fitzgerald.

104.     Statement 4 is false.

105.     As a direct and proximate result of Defendant's libelous Statement 4, Fitzgerald

15

*Fitzgerald v. William McNae*

Case No. _____

has been damaged.

106.    Statement 4 is libel *per se* because the defamatory words Defendant used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

107.    Statement 4 is libel *per se* because Statement 4 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

108.    Statement 4 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

109.    In relation to Statement 4, Defendant intentionally made numerous other statements that Fitzgerald raped Ronda McNae.

110.    Defendant had actual knowledge that Statement 4 was false and that making false statements like Statement 4 are wrong and likely to injure Fitzgerald.

111.    In Florida, rape and sexual assault are felony crimes.  In Florida, false statements indicating a person committed a felony constitute libel *per se*.

112.    Defendant made Statement 4 with the malicious intent to defame Fitzgerald.

113.    Statement 4 is unprivileged.

114.    As a direct result of Defendant's publication of Statement 4, Defendant naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

115.    The wrongs and injuries caused by a statement like Statement 4 are presumed and implied, and constitute libel *per se*.

116.    Statement 4 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

117.    Statement 4 caused others to avoid Fitzgerald, such as his former employer,

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

SoftwareONE and its employees, as well as partnered companies.

118.    As a direct result of Defendant's Statement 4, Fitzgerald now feels ostracized both personally and professionally.

119.    As a direct result of Statement 4, Fitzgerald has not been permitted to work in his chosen career.

120.    As a consequence of Statement 4, Defendant damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court, which has been ascertained to be $657,228.00 in economic damages alone.

121.    Defendant's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory damages pursuant to state law, to punish Defendant for his actions and to deter him, and others from such action in the future.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

## COUNT VI - ALTERNATIVE COUNT: LIBEL PER SE (STATEMENT 5)

122.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Amended Complaint.

123.    This count is brought *in the alternative* to Count I in the event that Defendant argues that the Confidential Settlement Agreement is void as against public policy or otherwise unenforceable. Plaintiff Fitzgerald asserts this count in the event the Court deems the Confidential Settlement Agreement void or otherwise unenforceable as against Defendant.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

124.    Defendant has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexually assaulting and raping his wife, Ronda McNae.

125.    Defendant has been, at all times pertinent, an employee of Microsoft. Microsoft was a large global business partner with SoftwareONE in 2019 and 2019 when Fitzgerald was in contact with Defendant and his wife.

126.    On July 15, 2022, W. McNae wrote a letter to John Wylie of John Wylie law, Jenny Martinez of Munck Wilson (outside counsel for SoftwareONE), and John Mayes of SoftwareONE in which he accused Fitzgerald of lying about the nature of his relationship with Ronda McNae.  It stated, in pertinent part:

> Mr. Fitzgerald met my wife, Ronda, during a SoftwareONE evening event in July 2019. He leveraged his executive role beyond the relationship with me to justify developing a direct friendship with my wife. He paid for all travel & entertainment expenses for my family to join he and his girlfriend to celebrate the accomplishment of SoftwareONE's IPO. A "consensual affair" was fabricated by Mr. Fitzgerald to hide his actions which have been documented in the 3 police reports.

[BATES MCNAE 1353-1355] (hereinafter referred to as "Statement 5").  A true and correct copy of Statement 5 is attached hereto as **Exhibit F.**

127.    Statement 5 is about Fitzgerald.

128.    Statement 5 is false.

129.    As a direct and proximate result of Defendant's libelous Statement 5, Fitzgerald has been damaged.

130.    Statement 5 is libel *per se* because the defamatory words Defendant used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

131.    Statement 5 is libel *per se* because Statement 4 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

132.     Statement 5 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

133.     In relation to Statement 5, Defendant intentionally made numerous other statements that Fitzgerald raped Ronda McNae.

134.     Defendant had actual knowledge that Statement 5 was false and that making false statements like Statement 4 are wrong and likely to injure Fitzgerald.

135.     In Florida, rape and sexual assault are felony crimes.  In Florida, false statements indicating a person committed a felony constitute libel *per se.*

136.     Defendant made Statement 5 with the malicious intent to defame Fitzgerald.

137.     Statement 5 is unprivileged.

138.     As a direct result of Defendant's publication of Statement 5, Defendant naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

139.     The wrongs and injuries caused by a statement like Statement 5 are presumed and implied, and constitute libel *per se.*

140.     Statement 5 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

141.     Statement 5 caused others to avoid Fitzgerald, such as his former employer, SoftwareONE and its employees, as well as partnered companies.

142.     As a direct result of Defendant's Statement 5, Fitzgerald now feels ostracized both personally and professionally.

143.     As a direct result of Statement 5, Fitzgerald has not been permitted to work in his chosen career.

144.     As a consequence of Statement 5, Defendant damaged Fitzgerald in an amount in

*Fitzgerald v. William McNae*
Case No. _____

excess of the jurisdictional limits of this Court, which has been ascertained to be $657,228.00 in economic damages alone.

145.   Defendant's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory damages pursuant to state law, to punish Defendant for his actions and to deter him, and others from such action in the future.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

Date: November 2, 2023                                    Respectfully submitted,

                                                  **ASSOULINE & BERLOWE, P.A.**
                                                  Miami Tower
                                                  100 SE 2nd Street, Suite 3105
                                                  Miami, Florida 33131
                                                  Telephone: 305-567-5576
                                                  Facsimile: 305-567-9343

                                                  By:*/s/ Peter E. Berlowe*
                                                  Peter E. Berlowe
                                                  Florida Bar No. 143650
                                                  peb@assoulineberlowe.com
                                                  Meredith J. Gussin
                                                  Florida Bar No. 0512303
                                                  mjg@assoulineberlowe.com
                                                  *Attorneys for Plaintiff Michael Fitzgerald*

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

EXHIBIT A

## Confidential Settlement Agreement

**THIS SETTLEMENT AGREEMENT** (the "Settlement Agreement" or the "Agreement") is made and entered this __15th__ day of June 2020, by and among MICHAEL J. FITZGERALD ("Fitzgerald"), RONDA MCNAE ("Ronda") and WILL MCNAE ("Will") with Ronda and Will collectively referred to as the "McNaes," and Fitzgerald, Ronda, and Will collectively referred to as the "Parties";

## RECITALS

**WHEREAS,** Ronda and Will are a married couple;

**WHEREAS,** Fitzgerald is a single male;

**WHEREAS,** the McNaes contend that Fitzgerald caused physical injury and mental injury to them in Miami-Dade County, Florida as a result of Fitzgerald's alleged sexual conduct towards Ronda;

**WHEREAS,** for purposes of avoiding the time and costly expenses associated with litigation, and in the interest of economic expediency, the Parties desire to reach a settlement of all claims between and among themselves; and,

**WHEREAS,** the parties wish to resolve all disputes between and among them;

**NOW THEREFORE** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them.

1.      **RECITALS.** The Parties acknowledge that the "WHEREAS" clauses preceding paragraph 1 are true and correct, and are incorporated herein as material parts of this Agreement.

2.      **NO ADMISSION OF LIABILITY.** The Parties agree to amicably settle all disputes between and among them. The Parties understand that this Agreement is in full and complete compromise of all disputed claims, both as to questions of liability and damages, including any claims for punitive damages, without an admission of liability or any wrongdoing by any of the Parties, any such liability or wrongdoing being expressly denied by each of the Parties.

3.      **CONSIDERATION.** In consideration of the execution of this Agreement and the promises herein contained, the Parties agree to the following:

A.      Payment of Settlement Funds.      On or before June 19, 2020, Fitzgerald agrees to remit payment in the amount of Ninety-Seven Thousand Dollars and 00/100 cents ($97,000.00) to Ronda McNae and remit payment in the amount of Ten Thousand Dollars and 00/100 cents to Will McNae (collectively the "Settlement Funds"). The Settlement Funds to

Page 1 of 5

Ronda's Initials: _____   Will's Initials: _____   Fitzgerald's Initials: _____

MCNAE 000001

Ronda McNae are paid in consideration of the physical and mental injuries she claims, and the settlement funds to Will McNae are in consideration of his loss of consortium claims due to the physical and mental injuries suffered by his wife Ronda. The Settlement Funds shall be remitted by wire to the Max Meyers Law PLLC Trust Account with the following wiring instructions:

MAX MEYERS LAW PLLC IOLTA TRUST ACCOUNT WIRE INTRUCTIONS.
Banner Bank - ABA Routing #████ 1076 and Account #████ 5818

**4.  NON-MONETARY TERMS.** The Parties agree to the following non-monetary terms:

A.  The McNaes shall remove any prior or current internet posts that reference Fitzgerald by name. The McNaes may speak or write generically about their life events, but in speaking or writing about their life events, the McNaes cannot refer to Fitzgerald's name, likeness, being, nationality, country of citizenship, location of residence, employer, job function, job title, profession, or reference to dates, locations, or other persons present. For instance, Ronda cannot name six people at an event, plus unnamed person, so that the six people will know who the unnamed person is by process of elimination. Thus, it shall be a breach of this Agreement for the McNaes to indirectly refer to Fitzgerald in a way the McNaes could not do directly.

B.  The McNaes shall not contact Fitzgerald's employer. If Mr. Fitzgerald's employer contacts either of the McNaes, the McNaes shall respond, "the matter has been resolved and I cannot speak any more about it," or words to that effect.

C.  Notwithstanding the confidentiality provision in Section 16, below, the Parties may continue discuss the matter with their respective mental health professionals, but will advise the mental health professionals of this existence of this Agreement and those mental health professionals must follow this Agreement, as well.

D.  The Parties agree to minimize contact upon execution of this Agreement, and they agree to limit such contact as to be only such contact necessary to enforce the terms of this Agreement, with such contact preferably being by the Parties' respective attorneys.

**5.  REPRESENTATIONS AND WARRANTIES.** In making and executing this Agreement, the Parties represent, warrant and agree as follows:

A.  The Parties have had an opportunity to seek independent legal advice with respect to their rights and asserted rights arising out of the matters in controversy and with respect to the advisability of executing this Agreement.

B.  The Parties have made such investigation of all matters pertaining to this Agreement as they deem necessary, and do not rely on any statement, promise or representation by the other Parties hereto with respect to this matter.

**6.  NO CHALLENGE TO SETTLEMENT.** The Parties agree that they will take no action, including, but not limited to the institution of a lawsuit or administrative claim, to

Ronda's Initials: ___  Will's Initials: ___  Fitzgerald's Initials: ___

MCNAE 000002

challenge any provision of this Agreement or regarding the original matter in controversy.

**7.    NO ADMISSION.**  Neither the negotiation nor the execution of this Agreement, nor any of its provisions, are to be construed as an admission by any of the Parties hereto, nor by their respective attorneys, or trustee regarding the truth of any matter alleged relating to the matter of controversy.

**8.    INTEGRATION.**    This Agreement constitutes a single, integrated written contract expressing the entire Agreement between the parties.  There are no other Agreements, written or oral, expressed or implied, between the parties, except as set forth in this Agreement.

**9.    SEVERABILITY.**    Should any part, term or provision of this Agreement be decided by the courts to be illegal, unenforceable or in conflict with any state or federal law or any other applicable law, the validity and enforceability of the remaining portions of this Agreement shall not be affected thereby.

**10.    DOCUMENT PREPARATION.**    If it becomes necessary for any reason to construe this Agreement as permitted by the Rules of Evidence of the State of Florida, this Agreement will be construed as being jointly prepared and written. The Parties agree that the terms and conditions contained herein have been negotiated, renegotiated and considered several times by the parties. The fact that one party or the other prepared the actual final draft of this Agreement shall not be construed as having created any ambiguity.  Should it become reasonably necessary for the parties to prepare additional documents to carry out the intent of this Agreement, each Party agrees to cooperate in the preparation, execution and delivery of same.

**11.    BINDING EFFECT.**  This Agreement shall be binding upon and inure to the benefit of the parties, and their respective successors, heirs, personal representatives and assigns.

**12.    NO WAIVER.**    No waiver of any breach of any term or provision of this Agreement shall be construed to be, nor shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party waiving the breach.

**13.    MUTUAL GENERAL RELEASE.** The Parties agree that they each on their own behalf and on the behalf of any heirs, assigns, beneficiaries, past or future affiliates, shareholders, parents or subsidiaries, attorneys, sureties or insurers, employees, officers, directors, agents, trustees, and any other person or entity bearing a legal relationship as a predecessor or successor in interest and anyone claiming any rights derived from any of them, forever release, discharge, and hold each other and each other's past, present or future affiliates, shareholders, parents or subsidiaries, attorneys, sureties or insurers, employees, officers, directors, agents, and any entity bearing a legal relationship as predecessor or successor in interest, harmless of, and from, any all claims, causes of action, suits, debts, agreements, promises, demands, liabilities, contractual rights and/or obligations, or claims arising in tort, or of whatever nature, in law or in equity, arising out of, or related to, the direct claims asserted and any other claims that could be asserted, any counterclaims, any third-party claims, and any claims to attorneys' fees and cost, whether or not the claim was raised, or could have been raised. The Parties agree that this Release is not intended as an admission of any wrongdoing or liability on the part of any Party, and that this Release is not

Page 3 of 5

**Ronda's Initials** ___  **Will's Initials:** ___  **Fitzgerald's Initials:** ___

MCNAE 000003

admissible as evidence in any proceeding as an admission of liability. The Parties warrant that they have not made any assignment of any right, claim, or cause of action covered by this Release to any other person, corporation or other legal entity.

14. **GOVERNING LAW.** This Agreement shall be deemed to be made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of Florida, without giving effect to the conflict of laws principals of Florida law. The Parties agree that venue for any litigation brought to enforce this Agreement shall lie exclusively in any court of competent jurisdiction in Miami-Dade County, Florida.

15. **EXECUTION.** This Agreement may be made effective by means of facsimile signatures executed on several identical counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16. **CONFIDENTIALITY.** The Parties warrant that they have not and will not disclose, communicate, disseminate and/or publicize, or cause or permit to be disclosed, communicated, disseminated or publicized the existence of or terms and conditions of this Agreement to any person, business, organization, corporation, association, governmental agency, except as follows: (1) to the extent necessary to report income to appropriate taxing authorities; (2) to their respective attorneys and accountants; (3) in response to requirements of law or a subpoena issued by a state or federal court or governmental agency, provided, however, that notice of receipt of such judicial order or subpoena immediately be communicated to counsel for the opposing party telephonically. The McNaes further acknowledge and agree that this provision is a material inducement to the Fitzgerald's agreement to pay the Settlement Funds. Therefore, the McNaes agree and acknowledge that any violation of this section or disclosure of any of the terms of the Settlement Agreement beyond the exceptions identified above in this section shall constitute a material breach of this Agreement.

17. **NON-DISPARAGEMENT.** The Parties agree that they will not disparage each other, by written or oral word, gesture, or any other means, nor will they make any disparaging or negative comments about each other, to any person or entity.

18. **NO FURTHER OBLIGATIONS.** The Parties agree that, aside from the obligations set forth in this Agreement, no party owes any other party any monies or benefits.

19. **BINDING NATURE OF AGREEMENT.** This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit and/or detriment of each party and to their respective heirs, administrators, representatives, executors, successors and assigns.

20. **MODIFICATION OF AGREEMENT.** This Agreement may be amended, revoked, changed, or modified only upon written agreement executed by all Parties. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the party against whom such waiver is charged.

21. **SELECTIVE ENFORCEMENT.** The Parties agree that the failure of any party to enforce or exercise any right, condition, term or provision of this Agreement shall not be

Page 4 of 5

Ronda's Initials: _____  Will's Initials: _____  Fitzgerald's Initials: _____

MCNAE 000004

construed as or deemed to be a waiver or relinquishment thereof, and the same shall continue in full force and effect.

22.   **ENTIRE AGREEMENT.**   This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof.

23.   **ATTORNEYS' FEES.**   In connection with any litigation arising out of this Agreement or in any way related to this Agreement, the prevailing party shall be entitled to recover all costs incurred including, but not limited to, its reasonable attorneys' fees at any level (trial, appeal, bankruptcy, administrative), including fees spent in litigation over entitlement or amount of such fees.

24.   **HEADINGS.** The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

25.   **COUNTERPARTS AND FACSIMILE SIGNATURES.** This Agreement may be executed in two or more counterparts, each of which may be considered an original, and all of which together shall constitute one and the same document. Facsimile or scanned copies of signature pages shall be treated as original signature pages.

**IN WITNESS WHEREOF,** this Agreement has been executed by the Parties as of the Effective Date.

_____   6-15-2020        _____   6-15-2020
Ronda McNae              Date              Will McNae                Date

_____   6-16-2020
Michael Fitzgerald        Date
Allan D. Lederman, Trustee

Page 5 of 5

**Ronda's Initials:**____   **Will's Initials:**____   **Fitzgerald's Initials:**____

MCNAE 000005

EXHIBIT B

# STATEMENT 1

From: Chris Maulden <chrismaulden@microsoft.com>
Sent: Tuesday, April 12, 2022 6:04 PM
To: Will McNae <will.mcnae@microsoft.com>
Subject: RE: Microsoft Corporation Shareholder Resolution Project

Thanks for responding, Will. I am out of the office tomorrow, and will connect with you on Thursday or Friday this week.

Regards,

Chris



Chris Maulden
Senior Employee Relations Manager Lead – Global
Employee Relations, Americas
chrismaulden@microsoft.com
(571) 778-6367

Find what you need on **HRWeb**

 Microsoft
*Please note I am in the Eastern Standard Time zone*

**Out of Office: 5/26/22-5/31/22**

From: Will McNae <will.mcnae@microsoft.com>
Sent: Tuesday, April 12, 2022 4:00 PM
To: Chris Maulden <chrismaulden@microsoft.com>
Cc: Ande Ferretti <anferret@microsoft.com>
Subject: FW: Microsoft Corporation Shareholder Resolution Project

Hello Chris,
Thank you for your voicemail touching base regarding a conversation you had with David Totten. I was in process of sending the below note to Ande based on a referral by Mr. Stevens at Arent Fox. I would welcome a discussion with you this week.
Regards,
Will


Hello Ande,

My name is Will, and I am an employee within the US GPS organization in a security solution architect role in David Totten's technical org. I am married to a wonderful woman, Ronda McNae, who is not an employee but unfortunately is at the center of this painful incident which I am sharing. I received your name from the Arent Fox attorney, Michael Stevens, after reaching out to their firm inquiring about the scope of the Shareholder Resolution Project services. I was provided your name when Mr. Stevens notified me that my incident was not in scope.

MCNAE 001321

I still hold on to hope that my experience from 2019 can positively affect change at Microsoft. **I am reaching out to you to find someone willing to hear the full story and request an in-person meeting.**

I would like an opportunity to share our experience from the past 2 years, provide updates from our efforts with law enforcement, and brainstorm actionable accountability and change. I'm not confident US HR (or CELA) fully understood our story when we reported in March 2020. I believe this based on the abrupt response I received from HR which did not ask for more information or prompt an investigation into my allegations. Upon receiving this response, I was left feeling alone and on our own to figure out how to hold an executive at a global partner organization accountable for his harmful actions towards my wife and me. I am thankful for a manager, director and CTO who were willing to listen and support our family as best they could with their limited resources and knowledge.

Since March 2020, I have reached out to multiple people across HR and CELA asking for help and advocacy. Specifically, advocacy and support would include an opportunity to establish a change in our internal HR systems when employees come forward to report sexual assault, rape, and harassment charges. For example, I was approached by a female teammate just yesterday asking what she needed to be aware of so that she would never be harmed in a way that my wife was with a Partner. That sad part is – I still don't know what to tell her about the legitimate workplace resources are available to us. She shared that she had previously felt harassed by a male co-worker but didn't report because of shame and lack of a safe reporting process. I do not want any teammate or colleague to experience our pain or hide in the dark because they were too ashamed to come forward.

Because my sexual battery allegation involves my spouse, I do not believe it deserves any less attention to investigate the incident or uphold the violated Vendor Code of Conduct established with Partner organizations. As a victim of sexual battery, the lack of willingness by HR to demonstrate advocacy for an employee and their spouse, <u>when it was a result of a work relationship</u>, has been emotionally exhausting and damaging. A quick summary – the CIO of one of the largest global revenue billing partners took advantage of my work relationship to develop a trauma-based friendship with my family, which ultimately resulted in raping my wife and threatening me on a Redmond campus when I confronted him about criminal misconduct (reported to HR; also reported to Redmond Police Dept.). To be told by US HR that Microsoft has "zero liability" regarding this incident has haunted me for 2 years. Especially when I never reported this allegation as the fault of Microsoft – but asked for help since the relationship was so tightly connected to my work relationship.

This past July I had reached a maximum frustration level with trying to politely ask for help from HR, so I wrote and submitted a complaint letter. Since that letter, I have spoken with HR and CELA, my wife and I have filed 3 police reports, and we have provided over 15 hours of in-person, sworn verbal and written statements to the Redmond, Miami, and San Francisco police departments who are investigating charges of sexual battery. It has been very difficult overcoming the challenges and fears to hold this executive accountable.

I am including excerpts from my letter to provide context (full letter attached). In the end, Microsoft may still hold firm with a posture of zero-liability and an unwillingness to take any proactive action – but I am trying to push for positive change based on my experience.

**Complaint Summary:**

Microsoft HR should have (and could have) done more to support and protect me as an employee. A formal investigation was not kicked off internally or externally, although I had substantial evidence to prove that multiple policies within the Partner/Vendor code of conduct had been violated, alongside

MCNAE 001322

potential criminal laws.

If we had been properly supported by Microsoft's resources when we made our HR report in March 2020, we would have been empowered to act differently to resolve this matter—pursuing criminal charges instead of waiting until 2021 to file a police report.  After a great deal of therapy (ongoing), my wife and I are better able to recognize our reactive, trauma-induced responses through those 8 months and the time since. In the darkest period, my wife and I were barely hanging on, living in cognitive dissonance while the individual continued to execute his power dynamic using manipulation, fear and gaslighting.  His predatory behavior took advantage of us, and his lies almost ripped our marriage apart, leading me down a dark path to suicidal thoughts during the holidays.

**Why formally complain now?**

Reporting this complaint now has not been an easy decision.  It would be easier to continue to be quiet and compliant, not ruffling feathers as this may also set me up for inspection or consequences for my actions in some way.  However, I felt it was essential to speak up about our current process and lack of systems to help employees report and gain support when it comes to topics of sexual assault, rape, and harassment.  HR needs a system in place that offers those who have been harmed on the job—or because of work-related relationships—well-trained, empathetic experts, and advocates to help through their time of crisis and trauma.  In hindsight, I wish I could have taken an extended period of time away from work, but I felt it was not appropriate based on the job requirements and expectations to avoid showing weakness.  My manager helped me take advantage of 6 weeks of Covid time off (June-July 2020), which helped greatly, and I am forever grateful to his empathy and patience – but even with this in mind, I broke up my time and returned to work halfway through to complete business planning and be present.

We reported these incidents to HR a month before Satya's April 2020 mail to all employees sharing updates about a new Employee Advocacy team being established for workplace sexual harassment.  I am unsure what would need to change to get the attention required—perhaps if I were more senior or female, HR would have done more to investigate these incidents, support me, call to check on my health, or inspect the violated vendor code of conduct policies.  Or, if I had taken my life in my darkest hour, would Microsoft have paid attention once the truth was uncovered that a work relationship caused enough harm to myself and marriage that I didn't see an alternative way out of a hostile work environment?  I raise this to point out the disconnect between what I believe is Microsoft's intent to be a supportive employer with zero tolerance for sexual assault and my own experience with HR's dismissiveness of my concerns.  I believe Microsoft needs and should do more to support and advocate for their employees regardless of gender, position, or technicality of "during work hours."

Regards,
Will

Will McNae
Partner Strategy Architect – Security, Compliance & Identity, US GPS
Security COE: uspartnercoe@microsoft.com

EXHIBIT C

# STATEMENT 2

**From:** Will McNae <will.mcnae@microsoft.com>
**Sent:** Wednesday, April 20, 2022 5:43 PM
**To:** Chris Maulden <chrismaulden@microsoft.com>
**Subject:** Re: Microsoft Corporation Shareholder Resolution Project

Chris,

I'm declining our phone call scheduled for Monday, instead I want to share a few thoughts.

In my April 12th email I specifically asked for an in-person meeting. Although not explicitly, I did ask for an opportunity to meet face to face during our phone call on April 15th.

After (roughly) two dozen phone calls with MS HR, CELA, and workplace investigations- I've remained at a standstill. There's been no forward positive movement, recourse, assistance, support, or consequence to the partner violating MS Partner Code of Conduct Agreement.

There were a few things you mentioned on our call that cause me to continue feeling dismissed and not heard which further supports my request for an in-person meeting to accomplish my goals:

You were more curious about my female co-worker's situation than asking probing questions to better learn about the harassment incident I encountered at Building 92. HR (STILL) never followed up with that particular incident to do any kind of internal investigation. I can't help but recognize the obvious gender conflict in this.

As I wrapped up sharing more details regarding the incident at building 92 where I stated that Mike Fitzgerald said to my face, during work hours, on work campus "I have given up drinking because I know if I was out at a bar and if someone were to set me off, I would destroy them".

I then asked you if that helped provide enough clarity and your response immediately following, "Yup that does. It pretty much aligns with what was in the Police report and gives some clarity, thank you. So I know you said you don't want to share with me any information about the co-worker who said they felt like they were or they experienced discrimination or harassment. I really want to revisit that".

Do you understand the disconnect? Or at least recognize how this continues to go sideways?
Regarding company resources and investigative policies, there was a 'misunderstanding of parameters' regarding my incident since it does not align to the criteria of a workplace issue.  I believe the misunderstanding is on Microsoft's part. I have case notes and evidence to support why this is a workplace issue due to the first meeting taking place at a work event and the grooming behavior was enabled because of the work relationship. But again, no one from HR followed up with me to validate or verify. Instead, HR held onto third party heresy.

And finally, since this didn't involve Microsoft business, there is no obligation on Microsoft's part.  Again, I do not agree with this.

My wife has been connected to Gretchen Carlson by a mutual friend. Gretchen has kindly taken Ronda under her wing. Gretchen unfortunately had been on the receiving end of sexual harassment/workplace harassment with Fox News. Her story is similar to my wife but I connect more with Gretchen regarding the broken systems within workplace investigations and HR. In transparency my wife was then introduced to a couple investigative reporters and has shared her story plus evidence proving these assaults were premeditated and calculated. Mike Fitzgerald

MCNAE 001319

abused this work relationship with the employee and assault my wife and has also then threatened the assuming would be too afraid to speak up.

To close, I am requesting an in-person meeting so that I can properly discuss the following topics since the complexity still does not seem to be getting communicated:

1) Why was this incident not investigated and categorized as 'not involving Microsoft' and 'no harm done to the employee'?
2) Financial reimbursement for out-of-pocket counseling costs not covered by MS Cares which has been substantial on top of what we have to cover for legal costs; travel, childcare, and legal help.
3) Investigation into the broken Partner/Vendor Code of Conduct policies (specifically sexual assault/harassment and anti-corruption)
4) Short Term Disability Leave time not counting against me during the annual Rewards calculation since I took time to work on resolving this criminal case and will likely need to take more for the continued legal case.
5) Communication to SoftwareONE based on factual events regarding their CIO.
6) How we can create a victim's advocate program that supports victims? How can we move to reevaluate case by case? My wife isn't the first nor will she be the last on the receiving end of treatment life this but MS can't repeat what has been done to me and my family.

Please let me know whom I can be introduced to for a Redmond-based discussion. I am sharing additional parts of information so that your team can assess the magnitude of the work relationship damaging our personal relationships (below and attached).

Regards,
Will

Factual statements:

• Microsoft was made aware of allegations regarding SoftwareONE's CIO, Mike Fitzgerald, in February 2020 involving the Microsoft employee Will McNae and his wife, Ronda McNae. Several SoftwareONE employees were made aware of such details, but an official report was not filed with John Mayes, Global HR.
• Due to the sexual assault and battery reports, which also included harassment on campus during work hours in February 2020, Microsoft removed our employee from the hostile work environment with SoftwareONE.
• Will's role at the time was Partner Technology Strategist.
• Ronda McNae first met Mr. Fitzgerald at a SoftwareONE event in Bellevue, WA in July 2019, when attending as a guest of Will McNae. As a result of getting to know Mr. Fitzgerald and his girlfriend, a friendship developed between July – November 2019.
• Microsoft has been made aware that the McNae's have filed Police reports in Miami, San Francisco, and Redmond.
• Microsoft's Partner/Vendor Code of Conduct was violated due to the allegation descriptions which involved sexual assault and battery, and anti-corruption, which do not uphold the representation of either company's code of conduct.
• Microsoft was informed that an NDA was signed between Mr. Fitzgerald and McNae's although Ronda McNae felt forced to sign under duress. Law enforcement communicated to the McNae's the NDA is not applicable considering it was established to conceal details of a crime and/or poor conduct.
• The effects of these allegations are still being felt by our employee while his wife Ronda McNae suffers with "Complex PTSD" symptoms that still affect her daily life.

EXHIBIT D

# STATEMENT 3

**Date :** 5/2/2022 5:17:39 PM
**From :** "Will McNae"
**To :** "Chris Maulden" chrismaulden@microsoft.com
**Cc :** "Leslie Pickering" lesliep@microsoft.com
**Subject :** RE: Microsoft Corporation Shareholder Resolution Project
**Attachment :**
Microsoft_Partner_Code_of_Conduct_English.pdf;image002.png;image003.jpg;image004.jpg;image005.png;image006.png;image007.png;image008.png;

Chris,
I also wanted to call out the **Professional Conduct** that is included in the Partner/Vendor Code of Conduct.  It is always actionable per our agreement with Partners.

## Professional Conduct

Microsoft Partners will conduct themselves in a professional manner at all times, helping Microsoft to create an inclusive, productive, respectful and professional environment, free from any forms of discrimination or harassment.

- **Inappropriate Language:** Microsoft Partners will not use any form of language which may be considered discriminatory, intimidating, harassing, threatening, abusive, sexually explicit, or otherwise offensive or inappropriate.

- **Treat Others with Fairness, Dignity and Respect:**  Microsoft will not tolerate, and Microsoft Partners must not engage in, any form of sexual or other harassment.  Sexual harassment is unwelcome verbal or physical behavior based on sex and includes gender-based harassment of a person of the same gender.  Examples include unwelcome sexual advances or physical contact, sexual comments or inappropriate gender-based jokes, unwelcome romantic attention, offering a benefit or preferential treatment in exchange for sexual favors, sharing or displaying sexually explicit content and using sexually degrading words.  Other examples of harassment include comments, jokes or degrading words based on race, sex, national origin, religion, age, disability, gender identity or expression, marital status, medical condition, physical or mental disability, pregnancy, sexual orientation, political affiliation, union membership, veteran status or other protected characteristics or status.

- **Event Behavior:**  In any event sponsored or hosted by Microsoft or during which Microsoft Partners may interact with any Microsoft employees, agents, subcontractors or customers, regardless of location, Microsoft Partners must behave in a professional manner including responsible alcohol use and continued adherence to this Partner Code of Conduct.

Microsoft Partner Code of Conduct (2019)(English)                                              3

---

**From:** Will McNae
**Sent:** Monday, May 2, 2022 12:54 PM
**To:** Chris Maulden <chrismaulden@microsoft.com>
**Cc:** Leslie Pickering <lesliep@microsoft.com>

**Subject:** RE: Microsoft Corporation Shareholder Resolution Project

Chris,

I am unable to respond to your last email due to restrictions – I wish to include my director on this thread.

In full transparency, your email has me a bit confused. Based on our phone conversation, you made no indication your role was to "further investigate" my case/HR report. Would you also be clear in your role and how this plays a part in my situation (besides researching benefits), please?

On our phone call you had stated, "*Our job is really to work with employees to navigate through concerns related to workplace behavior and policy violations*" and a reference to "the decision" being made by someone else.

Then, "*The misalignment is your situation doesn't fall within the parameters of being a workplace issue and is better handled by local authorities. If something happens in the workplace or in the course of work, that's where Microsoft has an obligation, we can actually get involved*".

Lastly, "*With the exception that occurred at the MS building, the other things that have occurred don't fall within MS's ability to have an impact.*"

Unfortunately, Microsoft continues to see my case and these crimes through a lens that works from a PR standpoint. The company couldn't be more wrong and off base. Oddly enough, my wife connected with a Special Agent from the FBI who helped crack the "Yosemite Murders" and in 2003 received the California Sexual Assault "Investigator of the year award". I decided to watch 20/20 to learn more about criminal profiling and how horrendus sex crimes are solved.

While it may be a surprise to you, it's not a surprise to either my wife or myself: Predators have a script. They have a process. A grooming period. It's calculated and premeditated. The sad part, my wife even gathered evidence to show MS however no one from HR was open to follow up and look at what she had compiled.

As an employee of MS, I am telling you, this man is a sexual predator that began grooming and exploiting my wife the moment he met her at a WORK EVENT and continued under the pretext of my work relationship. I fear for other female employees within our company that work alongside him and at this point the company continues to be a complicit bystander. The question I pose to Microsoft HR is "will you still claim "zero liability" once you learn more victims come forward?"

ASK: I am requesting an in-person meeting to continue this conversation and investigation. There should have already been an "in-person" follow-up discussion due to the nature and sensitivity of my report in 2020. I have had 2 years' worth of phone calls and I am confident that progress has not been made. Since I am a Redmond-based employee, meeting with a colleague of yours in one of the back-to-work buildings would make sense. I am willing to approach this with a line in the sand focused on going forward (and not on inspecting what was / wasn't done in the past).

You have a daughter. I have a daughter. We can't continue to turn a blind eye while women continue to be harmed otherwise, we miss the opportunity to make positive changes for them and potentially be looked at as complicit.

Sincerely,

MCNAE 001318

EXHIBIT E

# STATEMENT 4

To: Microsoft                                                                July 13, 2021

I love working for Microsoft.  The people on my team are amazing, my manager and leadership team are empathetic, helping us achieve strategic results.  My LT recognizes me as a top performer and I consistently receive outstanding reviews and compensation awards.  I have been responsible for leading and influencing dozens of new technical solutions with Partners while helping one Partner add over $1billion in new customer revenues.  For all the pride and gratitude I have in my work at Microsoft, I am at a point where I can no longer stay silent.  I must formally make a complaint regarding Microsoft's dereliction of duty, which is at odds with the values Microsoft strives to represent and has resulted in significant harm to me and my family.

**Context:**
From 2018-2020, I worked closely with the CIO of a global software/services Partner.  This Partner represented a significant account and I was eager to build a positive relationship.  Ultimately, this individual took advantage of our unequal power dynamic to assault my wife and subject both of us to prolonged abuse and mistreatment over eight months.

I was responsible for influencing and winning technical mindshare in a heavily competitive environment against AWS and Google.  I felt deeply responsible for winning new business on our platforms and felt this individual's invitation to attend his IPO celebration weekend was imperative to maintain credibility, as well as bolster my influential relationship with him and their organization.  At the time, I was covering for the loss of my PDM who had been let go from Microsoft a month earlier.  Acting as both PTS and PDM induced enormous pressure to succeed and I was concerned about losing significant momentum if I were not present.

The CIO placed so much importance on joining him that when my flight couldn't arrive in time to join the dinner, I asked my wife to go in my place. I partially asked my wife to attend because I knew the CIO's girlfriend had also canceled her attendance at the last moment and I felt personally responsible to demonstrate support at the celebration.  This was not my family's first interaction with him; he had introduced his girlfriend to us and a friendship between the four of us had developed over the prior three months.  We felt the pressure of her canceled attendance and somehow believed we owed him to go in her place.  I was afraid of the negative repercussions towards me and Microsoft if we missed this event. My wife attended his dinner in my place, which ultimately resulted in her incapacitation.  While my wife was unable to give consent, the CIO sexually assaulted her.

My wife bears the trauma and emotional scars from the rape, but I continue to battle ongoing mental health issues including anxiety and depression, as well as stress from continuing to support this Partner organization until I could no longer stand it and reported to my Manager four months after the assault.

MCNAE 001275

**Complaint Summary:**

Microsoft HR should have (and could have) done more to support and protect me as an employee. A formal investigation was not kicked off internally or externally, although I had substantial evidence to prove that multiple policies within the Partner/Vendor code of conduct had been broken, alongside potential criminal laws.

If we had been properly supported by Microsoft's resources when we made our HR report in March 2020, we would have been empowered to act differently to resolve this matter—pursuing criminal charges instead of waiting until 2021 to file a police report. After a great deal of therapy (ongoing), my wife and I are better able to recognize our reactive, trauma-induced responses through those 8 months and the time since. In the darkest period, my wife and I were barely hanging on, living in cognitive dissonance while the individual continued to execute his power dynamic using manipulation, fear and gaslighting. His predatory behavior took advantage of us and his lies almost ripped our marriage apart, leading me down a dark path to suicidal thoughts during the holidays.

Because of the genuine relationship and deep level of trust established with my Manager, I felt brave enough in February 2020 to finally speak to him about these incidents. He listened, asked questions, and with my permission contacted his Director regarding next steps. Our Director was significantly empathetic and wanted to help as much as she could. She followed the guidance of contacting HR on my behalf to ask for help. She was provided what I believe was a scripted email to share with me stating Microsoft had "zero liability" in this matter. There were no follow-up questions by HR/CELA to learn more about my situation. No one contacted me directly for further details about my report. I believe HR too quickly made this decision based on secondhand conversations. My Manager and Director made the business decision to remove me from supporting this Partner and continued to check in with me frequently.

We provided an immense amount of detail to HR in March 2020 about this rape and sexual assault. Unfortunately, HR chose to focus only on the rape incident and would not investigate the entirety of our allegations over the 8-month period communicating to us through my Director in writing "zero liability" since the rape happened to my wife and not me, the employee. Additionally, HR stated that it was out of scope because it didn't happen during work hours or at a work event as if the assault happened in a vacuum with no regard for the circumstances leading up to or following it. We were left to fend for ourselves and fight this executive who had deep pockets and resources without the support of Microsoft, which was the basis for this relationship in the first place. With an attorney's help, we were able to gain a resolution which covered counseling but forced us to sign an NDA in June 2020.

**Why formally complain now?**

I have been unable to fully comprehend how he had been using his importance and levels of influence to manipulate me and my wife using guilt, shame, gaslighting, fear of my job being terminated, and indirectly threatening me during a work event on our Redmond campus (unlawful harassment). It is only by attending weekly counseling sessions, a week-long intensive marriage workshop, and a Trauma/Healing intensive workshop for my wife after her own suicidal

experience that 18 months later I can understand all of this. When I inquired with HR in June 2021 asking about what had been documented in my HR or CELA file, it was to determine how open I could be discussing this matter post-NDA. It is shocking to me that HR stated my file was empty. Although there is email correspondence stating Microsoft had zero liability, it seems like I may not be able to prove we had a documented conversation with HR prior to June 15, 2020. This is troubling especially since my management team followed protocols to report this to HR.

Reporting this complaint now has not been an easy decision. It would be easier to continue to be quiet and compliant, not ruffling feathers as this may also set me up for inspection or consequences for my actions in some way. However, I felt it was essential to speak up about our current process and lack of systems to help employees report and gain support when it comes to topics of sexual assault, rape, and harassment. HR needs a system in place that offers those who have been harmed on the job—or because of work-related relationships—well-trained, empathetic experts, and advocates to help through their time of crisis and trauma. In hindsight, I wish I could have taken an extended period of time off from work, but I felt it was not appropriate based on the job requirements and expectations to not show weakness. My Manager helped me take advantage of the Covid time off, which helped greatly and I am forever grateful to his empathy and patience – but even with this in mind, I broke up my time and returned to work halfway through to complete business planning and be present.

We reported these incidents a month before Satya's April 2020 mail to all employees sharing updates about a new Employee Advocacy team being established for workplace sexual harassment. I am unsure what would need to change to get the attention required—perhaps if I were more senior or female, HR would have done more to investigate these incidents, support me, call to check on my health, or inspect the broken vendor code of conduct policies. Or, if I had taken my life in my darkest hour, would Microsoft have paid attention once the truth was uncovered that a work relationship caused enough harm to myself and marriage that I didn't see an alternative way out of a hostile work environment? I raise this to point out the disconnect between what I believe is Microsoft's intent to be a supportive employer with zero tolerance for sexual assault and my own experience with HR's dismissiveness of my concerns. I believe Microsoft needs and should do more to support and advocate for their employees regardless of gender, position, or technicality of being "during work hours."

I've been advised to file a complaint personally and directly with HR for formal documentation.

Sincerely,

Will McNae, Sr. Partner Technical Strategist – GPS, US, wimcnae@microsoft.com

MCNAE 001277

EXHIBIT F

# STATEMENT 5

**Date : 7/15/2022 3:15:18 PM**
**From : "Will McNae"**
**To : "John Wylie" jww@johnwylielaw.com, "Jenny L. Martinez" jmartinez@munckwilson.com**
**Cc : "Mayes, John" John.Mayes@softwareone.com, "Ronda McNae" rondamcnae@gmail.com**
**Subject : RE: Release of NDA**
**Attachment : image001.png;image002.png;image003.png;image004.png;**

Greetings Mr. Wylie and Ms. Martinez,

I am following up to help clarify several topics that, based on how I interpret the response below, will help explain and support why we have reached out to SoftwareONE. I am sharing as a brief recap so that Ms. Martinez can have access to this information as we reach out in a posture of help.

We are not under any false pretense that SoftwareONE was included in the non-disclosure agreement. The purpose for including the company was to provide an opportunity to influence doing the right thing. We have kept SoftwareONE updated as to progress and milestones with the hope of a response other than a defensive posturing. Do I believe SoftwareONE directly did this to me and my wife? No. Do I believe that one of your executives mis-used his role and mis-represented your brand during work hours and personal time? Yes.

Mr. Fitzgerald met my wife, Ronda, during a SoftwareONE evening event in July 2019. He leveraged his executive role beyond the relationship with me to justify developing a direct friendship with my wife. He paid for all travel & entertainment expenses for my family to join he and his girlfriend to celebrate the accomplishment of SoftwareONE's IPO. A "consensual affair" was fabricated by Mr. Fitzgerald to hide his actions which have been documented in the 3 police reports.

Our goal is to continue supporting the criminal accountability process which started a year ago. Along our journey we have met significant leaders, advocates, and survivors of similar experiences. In the end, this was an opportunity to ask you to influence Mr. Fitzgerald to do the right thing, which is a worthy response in our opinion. It would keep the focus and attention on his actions which is what all of this is about.

For reference, I am including two data points:
SoftwareONE has it's own company policies which address anti-corruption and gifts:

**WE DO NOT TOLERATE CORRUPTION & BRIBERY**
Sometimes we all have to take a moment to consider our actions.

Extortion, bribery and corruption, including improper offers for payments to or from, or improper entertainment of employees or organizations are all unacceptable. We will support all employees who may face losing a deal or an opportunity in order to avoid paying a bribe. This includes accepting or giving improper payments from office holders, clients, business partners, suppliers or anyone to incite such behavior in order to achieve unfair advantages.

Please note that even making or accepting a promise for improper payments is deemed to be corrupt behavior, even if no payment is made in the end. If you are not sure prior to a meeting or event, don't go alone, bring along a fellow employee or your supervisor.

We do not accept any offers of improper payments.

**WE ACCEPT AND GIVE GIFTS ONLY IF APPROPRIATE**
Payments, benefits and gifts given to or by us to customers and third parties are a great way to build relationships, but we all have a responsibility to follow the rules.

Any gift, payment or benefit given to you by one of our customers, partners or any third party that is appropriate and below CHF 100 does not require any pre-approval, unless you work in a subsidiary that has adjusted this threshold. You must gain approval of to your leader if giving anything valued between 100 – 200 CHF. If you are unsure about anything you are being offered or if it exceeds 200 CHF, click here to Disclose.

Offering gifts, entertainment, or other business courtesies could be perceived as bribes. Any item that are given to or with our third-parties may result in additional approvals. However, as a general rule always ensure that all gifts are independent, of reasonable value and are appropriate to the business situation. If you intend to give anything over CHF 100, please use the Gift or Invitation Disclosure tool.

Also, please be mindful of the fact that to gift given in many countries can directly restrict the value of any gifts or invitations to be extended to public officials. If in doubt as to thresholds or as to who is concerned a public official, please reach out to Legal & Compliance for advice or refer to our gift policy.

Microsoft has their own Partner Code of Conduct. I have included screenshots of the personal conduct section which addresses always acting professionally:

MCNAE 001353

Microsoft Partner Network

## Microsoft Partner Code of Conduct

Microsoft aspires to be more than just a good company – we want to be a great company. We are committed to our mission of **empowering every person and every organization on the planet to achieve more.** Achieving our mission isn't just about building innovative technology. Our mission reflects who we are as a company, how we manage our business internally, and how we work externally with customers, partners, governments, and suppliers.

## Professional Conduct

> Microsoft Partners will conduct themselves in a professional manner at all times, helping Microsoft to create an inclusive, productive, respectful and professional environment, free from any forms of discrimination or harassment.

- **Inappropriate Language:** Microsoft Partners will not use any form of language which may be considered discriminatory, intimidating, harassing, threatening, abusive, sexually explicit, or otherwise offensive or inappropriate.

- **Treat Others with Fairness, Dignity and Respect:** Microsoft will not tolerate, and Microsoft Partners must not engage in, any form of sexual or other harassment. Sexual harassment is unwelcome verbal or physical behavior based on sex and includes gender-based harassment of a person of the same gender. Examples include unwelcome sexual advances or physical contact, sexual comments or inappropriate gender-based jokes, unwelcome romantic attention, offering a benefit or preferential treatment in exchange for sexual favors, sharing or displaying sexually explicit content and using sexually degrading words. Other examples of harassment include comments, jokes or degrading words based on race, sex, national origin, religion, age, disability, gender identity or expression, marital status, medical condition, physical or mental disability, pregnancy, sexual orientation, political affiliation, union membership, veteran status or other protected characteristics or status.

- **Event Behavior:** In any event sponsored or hosted by Microsoft or during which Microsoft Partners may interact with any Microsoft employees, agents, subcontractors or customers, regardless of location, Microsoft Partners must behave in a professional manner including responsible alcohol use and continued adherence to this Partner Code of Conduct.

Microsoft Partner Code of Conduct (2019)(English)                                                3

We hope you can hear our purpose and intent.

Will

Will McNae
Partner Solution Architect – Security, Compliance & Identity, US GPS

MCNAE 001354

**From:** Ronda McNae <rondamcnae@gmail.com>
**Sent:** Friday, July 15, 2022 6:36 AM
**To:** John Wylie <jww@johnwylielaw.com>
**Cc:** Mayes, John <John.Mayes@softwareone.com>; Will McNae <will.mcnae@microsoft.com>; Jenny L. Martinez <jmartinez@munckwilson.com>
**Subject:** [EXTERNAL] Re: Release of NDA


Good morning,

I find it quite interesting that SoftwareONE stands behind "personal" failing to acknowledge the professional ties. A Executive used his position and work relationship for other motives. What's disheartening is the very fact Will and I spoke to a number of SoftwareONE employees prior to the agreement being signed. In fact, one employee begged to know "who" since she's also a female within the company worried about her own safety. Other individuals knew the extent, recognizing a work relationship was used to carry out this elaborate ordeal.

Was it ever communicated to you that I met Fitzgerald and roughly 60 of the employees at a work event put on by SoftwareONE? At this event, Fitzgerald shared details of his father that passed, past divorce, and showed pictures of his son? All false by the way. I shared with my husband and a Detective here in Seattle that Fitzgerald had been touching parts of my body in passing - too touchy for meeting me for the first time. I brushed it off thinking that was normal or he doesn't understand personal space. This was part of his process. Push the envelope to desensitize me to random touching.

As for your the second part of your email, I have documentation and the list of individuals we spoke to including written proof. No issue there.

SoftwareONE will do what it must to protect themselves, same here.

To add, I also have text messages where Fitzgerald speaks about telling Dieter what's going on. You see how absurd this is?

Ronda McNae

---

**From:** John Wylie <jww@johnwylielaw.com>
**Sent:** Friday, July 15, 2022 4:23 AM
**To:** Ronda McNae <rondamcnae@gmail.com>
>
**Subject:** Re: Release of NDA

*Ms. McNae-*

MCNAE 001355