3D24-_____

_____

## IN THE THIRD DISTRICT COURT OF APPEAL

## STATE OF FLORIDA

_____

**WILLIAM MCNAE**,

Petitioner / Defendant

v.

**MICHAEL J. FITZGERALD**,

Respondent / Plaintiff

_____

## PETITION FOR WRIT OF CERTIORARI

_____

Lower Tribunal Case No: 2023-025855-CA-01

RICHARD M. GOMEZ (FBN 987130)
LAW OFFICES OF GOMEZ & GOMEZ
Attorneys for Petitioner
4300 Biscayne Boulevard, Suite 305
Miami, FL 33137
(Tel.) 305-825-5506
(Fax) 305-825-2699
Designated Email:
Primary: richardgomez@rgpalaw.com
Secondary:pleadings@rgpalaw.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

BASIS FOR INVOKING JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . .  4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

NATURE OF RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT IN SUPPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A. Certiorari Relief is Warranted Given the Trial Court's Denial of
       McNae's Motion to Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B. There Are No "Extraordinary Circumstances" That Would  Warrant a
       Denial of McNae's Motion to Stay . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

App.066

# TABLE OF AUTHORITIES

## Cases

*Fla. Crushed Stone Co. v. Travelers Indem. Co.*,
    632 So. 2d 217 (Fla. 5th DCA 1994) ............................................... 9

*Hirsch v. DiGaetano*,
    732 So. 2d 1177 (Fla. 5th DCA 1999) .......................................... 12

*InPhyNet Contracting Servs. v. Matthews*,
    196 So. 3d 449 (Fla. 4th DCA 2016) ............................................. 11

*Nader v. Fla. Dep't of Highway Safety & Motor Vehicles*,
    87 So. 3d 712 (Fla. 2012) ................................................................ 8

*OPKO Health, Inc. v. Lipsius*,
    279 So. 3d 787 (Fla. 3d DCA 2019) ............................................... 8

*Parker v. Estate of Bealer*,
    890 So. 2d 508 (Fla. 4th DCA 2005) ............................................ 12

*Pilevsky v. Morgans Hotel Grp. Mgmt., LLC*,
    961 So. 2d 1032 (Fla. 3d DCA 2007) ............................................. 9

*Robeson v. Melton*,
    52 So. 3d 676 (Fla. 4th DCA 2009) .............................................. 10

*Roche v. Cyrulnik*,
    337 So. 3d 86 (Fla. 3d DCA 2021) ....................................... 5,7,9,11

## Other

Art. V, § 4(b)(3), Fla. Const. ................................................................ 4

Fla. R. App. P. 9.020 .......................................................................... 4

Fla. R. App. P. 9.030 .......................................................................... 4

Fla. R. App. P. 9.100 .......................................................................... 4

App.067

**PETITION FOR WRIT OF CERTIORARI**

William McNae ("McNae"), the defendant below, petitions this Court under Florida Rule of Appellate Procedure 9.100(c) for a writ of certiorari to review an order denying McNae's motion to stay, pending disposition of a related federal court action. A copy of the order appears at pages 1-2 of the accompanying Appendix[1].

The order departs from the essential requirements of the law and will cause McNae irreparable harm, as he cannot obtain relief via a final appeal. This Court should grant the petition for writ of certiorari and quash the circuit court's order, with instructions to enter a stay pending final disposition of the related, and previously filed, federal action.

**BASIS FOR INVOKING JURISDICTION**

This Court is authorized to issue writs of certiorari. Art. V, § 4(b)(3), Fla. Const.; *see also Fla. R. App. P. 9.030(b)(3).* The order to be reviewed was rendered on February 24, 2024, when it was filed with the clerk of court. *Fla. R. App. P. 9.020(h).* This petition is timely because it was "filed within 30 days of rendition of the order to be reviewed." *Fla. R. App. P. 9.100(c).*

---

[1] Citations to the Appendix will appear as "App" followed by page number.

A writ of certiorari is the proper remedy for seeking review of an order denying a motion to stay an action pending the disposition of a related federal action. *See, e.g., Roche v. Cyrulnik*, 337 So. 3d 86 (Fla. 3d DCA 2021).

## STATEMENT OF FACTS

### A. Fitzgerald's Previously Filed Federal Action.

Fitzgerald commenced a federal court action in July 2022, by filing a breach of contract complaint against Ronda McNae, who is Petitioner William McNae's wife. The complaint alleges breaches of a June 15, 2020 Confidential Settlement Agreement between Fitzgerald, William McNae and Ronda McNae. *App.11 - 14.*

In December 2022, Fitzgerald filed an amended complaint in the Federal Action that added William McNae as a defendant. *App.14.* The amended complaint alleged that Ronda McNae breached the Confidential Settlement Agreement in various ways, including by contacting various individuals disclosing that she entered into an NDA with Fitzgerald, and why she entered into the Confidential Settlement Agreement with Fitzgerald. *App.13.* The amended complaint alleges William McNae similarly breached the Confidential Settlement Agreement by

- 5 –

communicating with Fitzgerald's employer and colleagues, which included statements that Fitzgerald sexually assaulted McNae's wife. *App.13-14*.

On January 27, 2023, McNae (together with his wife, Ronda McNae) moved to dismiss the federal action. In their motion, Defendants argued that (1) the federal amended complaint failed to allege sufficient facts to support diversity jurisdiction, and (2) Plaintiff's tort claims were barred by the independent tort doctrine. *App.11.*

The federal court dismissed all tort claims asserted by Fitzgerald as barred by the independent tort doctrine and held it did not have jurisdiction over William McNae. *App.24*. A single count for breach of the Confidential Settlement Agreement against Ronda McNae remains pending in federal court. *App.24*.

**B. Fitzgerald Pursues Substantially Similar Relief in State Court.**

In this state action, Fitzgerald's Amended Complaint alleges that McNae breached several provisions of the Confidential Settlement Agreement by contacting SoftwareONE (Fitzgerald's then-employer) in July 2022 and by contacting Microsoft (McNae's employer who used to do business with SoftwareONE) in April and May of 2022. *App.27, ¶ 16*. Fitzgerald also alleges that McNae breached the Confidential Settlement Agreement by contacting others about the agreement and by "working in

App.070

concert with his wife, Ronda McNae, to commit her breaches of the

Confidential Settlement Agreement and her lies to Fitzgerald." *App.27, ¶ 16 and App.28-29, ¶22(g).*

### C. The Trial Court Denies McNae's Motion to Stay and Motion for Reconsideration.

On February 5, 2024, McNae filed a *pro se* motion to stay the state action. *App.3.* The trial court denied the motion on February 24, 2024. *App.1.* After retaining counsel, McNae asked the court to reconsider that ruling, in light of this Court's decision in *Roche*, 337 So. 3d 86, which was similarly denied. *App.36, App. 51.*

This petition followed.

### NATURE OF RELIEF SOUGHT

Under well-settled precedent, a trial court is required to stay a subsequently filed state court action where a related federal lawsuit is pending. The trial court's February 24, 2024 order denying McNae's motion to stay pending the disposition of the related federal action departs from the essential requirements of the law, and cannot be remedied in a final appeal.

App.071

# ARGUMENT

## A. Certiorari Relief is Warranted Given the Trial Court's Denial of McNae's Motion to Stay

Certiorari review is warranted where there is "(1) a material injury in the proceedings that cannot be corrected on appeal (sometimes referred to as irreparable harm); and (2) a departure from the essential requirements of the law." *Nader v. Fla. Dep't of Highway Safety & Motor Vehicles,* 87 So. 3d 712, 721 (Fla. 2012) (quotation omitted).

This court has consistently granted certiorari relief where a trial court refuses to enter a stay pending the disposition of a related federal action.

For example, in in *OPKO Health, Inc. v. Lipsius*, 279 So. 3d 787, 791 (Fla. 3d DCA 2019), this Court provided:

> Although a trial court has broad discretion to order or refuse a stay of an action pending before it, it is nonetheless an abuse of discretion to refuse to stay a subsequently filed state court action in favor of a previously filed federal action which involves the same parties and the same or substantially similar issues. This rule is based on principles of comity . . .  It is well-settled that when a previously filed federal action is pending between substantially the same parties on substantially the same issues, a subsequently filed state action should be stayed pending the disposition of the federal action.
>
> *Id*. at 791 (*internal citations and quotations omitted*).

- 8 –

App.072

In *Roche*, 337 So. 3d 86 (Fla. 3d DCA 2021), this Court similarly granted certiorari relief. There, the Court reversed a similar order denying a motion to stay proceedings pending disposition of a related federal action. *Id*. at 89.

In *Roche*, this Court also noted that when analyzing the propriety of a motion to stay, the causes of action do not have to be identical to require a stay of the second filed action, "nor must the two actions have identical parties." *Roche*, 337 So.3d at 88 (*citing Pilevsky v. Morgans Hotel Grp. Mgmt., LLC*, 961 So. 2d 1032, 1035 (Fla. 3d DCA 2007) ("Although only PSB is named as a plaintiff in the New York action, the only additional parties named as defendants in the Florida action are PSB's individual investors and officers.")).

Rather, the rule requiring a stay is applicable if both actions involve "substantially similar parties and substantially similar issues," on a "single set of facts [such] that resolution of the one case will resolve many of the issues involved in the subsequently filed case." *Roche* at 88 (*quoting Fla. Crushed Stone Co. v. Travelers Indem. Co*., 632 So. 2d 217, 220 (Fla. 5th DCA 1994)

App.073

Here, it is undisputed that (1) the federal action was filed first in time, (2) the federal action alleges that McNae's wife breached the parties' Confidential Settlement Agreement, (3) this state action asserts that McNae breached the same Confidential Settlement Agreement, and (4) the federal action has progressed far more than the Florida action, as the federal action is set for trial in July 2024.

The issues in the federal action and the state court action are the same or closely related, and both actions arise out of the same operative facts – namely whether McNae and his wife collectively breached the Confidential Settlement Agreement. Allowing both actions to proceed may lead to inconsistent judgments and remedies. *See Robeson v. Melton*, 52 So. 3d 676, 679 (Fla. 4th DCA 2009) (holding that "until the federal district court rules, the trial court should stay the entire subsequently filed and substantially related state action . . . Otherwise, it is possible that the federal court will retain jurisdiction and the result will be two duplicative proceedings with the possibility of inconsistent results.")

Notably, McNae's dismissal from the federal court action was without prejudice (App.24), meaning McNae still faces potential liability in that action, should Fitzgerald appeal the district court's dismissal once a final judgment is entered.  As it stands, Fitzgerald wants to pursue his claims

App.074

against William McNae now in state court, while he continues to preserve his ability to appeal the federal court's dismissal of William McNae, and, if successful, pursue these same breach of contract claims in federal court on remand.

And given that Fitzgerald alleges that both William and Ronda jointly breached the Confidential Settlement Agreement, there is a substantial risk that a state and federal jury could reach contradictory findings of fact concerning the McNaes' efforts to keep the settlement agreement confidential.

Finally, requiring a stay will avoid wasting judicial resources in duplicative and unnecessary proceedings, and, in this case, the risk of inconsistent judgments regarding the application of law to the same factual dispute concerning the McNaes' alleged breach of the Confidential Settlement Agreement. Certiorari relief is appropriate in this instance, because the trial court's denial of the Petitioner's motion to stay the state court action is error that cannot be remedied on appeal. *See InPhyNet Contracting Servs. v. Matthews*, 196 So. 3d 449, 463 (Fla. 4th DCA 2016) ("[a]s to irreparable harm, we have previously said that exposure to a potential inconsistent ruling on the same issue by another court constitutes irreparable harm.")

- 11 –

App.075

**B. There Are No "Extraordinary Circumstances" That Would Warrant a Denial of McNae's Motion to Stay.**

"'Absent extraordinary circumstances . . . a trial court abuses its discretion when it fails to respect the principle of priority.'" *Parker v. Estate of Bealer*, 890 So. 2d 508, 512 (Fla. 4th DCA 2005) (*quoting Hirsch v. DiGaetano*, 732 So. 2d 1177, 1177-78 (Fla. 5th DCA 1999)).

In *Roche*, the Court explained that "[c]ourts have recognized an exception to the general rule requiring a stay of the subsequently filed state court action when the party opposing the stay has made a showing of "extraordinary circumstances." *Roche,* 337 So.3d at 89.

And while Florida decisional law "provides little guidance" on what constitutes such "extraordinary circumstances," the Florida Supreme Court has explained that "[t]here may well be circumstances under which the denial of a stay could be justified upon a showing of the prospects for undue delay in the disposition of a prior action." *Id*. at 89 (*citing Siegel v. Siegel*, 575 So. 2d 1267, 1272 (Fla. 1991)).

Here, Fitzgerald did not argue, let alone prove, any exceptional circumstances that would weigh against a stay. In light of this Court's holding in *Roche*, the only way Fitzgerald could avoid a stay is by making an evidentiary showing that the federal action is delayed to such a

- 12 –

App.076

significant degree that it constitutes an "extraordinary circumstance."

Fitzgerald made no such showing, nor could he, as the federal action is

considerably closer to a final resolution than this related state court action.

In fact, trial in the federal action is scheduled during the two-week period

beginning July 1, 2024. *App.45.*

Here, both the federal and state actions involve nearly identical facts,

namely that McNae and his wife collectively breached the Confidential

Settlement Agreement by disparaging Fitzgerald to his employer and other

third-parties. The issues and claims in both cases are inextricably

intertwined, which is reflected in the fact that Fitzgerald seeks to hold

McNae liable in this case for "working in concert with his wife, Ronda

McNae, to commit her breaches of the Confidential Settlement Agreement

and her lies to Fitzgerald." *See App.29, ¶ 22(g).*

## CONCLUSION

This Court should grant the petition and issue a writ of certiorari

quashing the order entered on February 24, 2024, which denied McNae's

motion to stay this action, with instructions for the trial court to enter a stay

pending resolution of the substantially related federal action.

App.077

Respectfully submitted,

LAW OFFICES OF GOMEZ & GOMEZ
Attorneys for Defendant
4300 Biscayne Boulevard, Suite 305
Miami, FL 33137
(Tel.) 305-825-5506
(Fax) 305-825-2699
Designated Email:
Primary: richardgomez@rgpalaw.com
Secondary:pleadings@rgpalaw.com

*/s/ Richard Gomez*
RICHARD M. GOMEZ
Fla. Bar No.: 987130

App.078

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Petition for Writ of Certiorari and Petitioner's Appendix have both been filed with the ePortal website and served on March 25, 2024, and served via email to the following counsel of record:

> Peter E. Berlowe
> Meredith J. Gussin
> ASSOULINE & BERLOWE, P.A.
> Miami Tower
> 100 SE 2nd Street, Suite 3105
> Miami, Florida 33131
> Telephone: 305-567-5576
> Facsimile: 305-567-9343
> peb@assoulineberlowe.com
> mjg@assoulineberlowe.com
>
> *Counsel for Respondent, Michael J. Fitzgerald*

I further certify that on March 25, 2024, in accordance with Florida Rule of Appellate Procedure 9.100(b)(3), a copy of this petition was served by eCourtesy to:

> Hon. Vivianne Del Rio
> Circuit Court Judge
> Dade County Courthouse
> 73 West Flagler St., Room DCC 525
> Miami, FL 33130

> */s/ Richard Gomez*
> RICHARD M. GOMEZ

App.079

## CERTIFICATE OF COMPLIANCE

I certify that this petition is 1,974 words, and was prepared using double-spaced, Arial 14-point font, in compliance with Florida Rule of Appellate Procedure 9.045.

*/s/ Richard Gomez*
RICHARD M. GOMEZ

App.080

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Case No. _____

**MICHAEL J. FITZGERALD,**
**Individually,**

        **Plaintiff,**

**v.**

**RONDA MCNAE, individually,**

        **Defendant.**

_____/

## COMPLAINT FOR BREACH OF SETTLEMENT AGREEMENT

Plaintiff, MICHAEL J. FITZGERALD ("Fitzgerald" or "Plaintiff"), files this Complaint against Defendant, RONDA MCNAE ("McNae" or "Defendant"), and alleges:

1.      This is an action for damages arising out of Defendant's breach of a confidential settlement agreement (the "Confidential Settlement Agreement") with Plaintiff Fitzgerald.

## PARTIES

2.      Plaintiff Fitzgerald is an individual of United Kingdom nationality who is domiciled in Miami-Dade County, Florida.

3.      Defendant McNae is an individual of United States nationality who is domiciled in Washington State. McNae is a social media influencer and internet blogger, who has a tens of thousands of followers on her Instagram account and other social media accounts.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as this is an action between citizens of different States and the amount in

1

App.081

*Michael Fitzgerald v. Ronda McNae*
Case No. _____

controversy exceeds $75,000.

5.     This Court has personal jurisdiction over McNae because she was involved with the underlying acts that are the subject matter of the Confidential Settlement Agreement in this District, she has general and specific contacts within this District, is amenable to personal jurisdiction in this district, and she entered into the Confidential Settlement Agreement in Miami-Dade County, Florida, which agreement had a Florida choice of law provision and an exclusive Miami-Dade County venue provision.  Furthermore, this Court has personal jurisdiction over McNae in that McNae flew to Miami, Florida and attempted to bring criminal charges in Miami, Florida against Fitzgerald.

6.     Venue in this district is proper under 28 U.S.C. § 1391, because the underlying events related to the Confidential Settlement Agreement occurred in the Southern District of Florida, and McNae agreed in the Confidential Settlement Agreement that the Southern District of Florida was the exclusive venue for disputes arising out of the agreement.  Furthermore, Venue is appropriate in that McNae flew to Miami, Florida and attempted to bring criminal charges in Miami, Florida against Fitzgerald.

7.     The Plaintiff has retained the law firm Assouline & Berlowe, P.A., and has agreed to pay the firm its reasonable attorneys' fees for representing the Plaintiff in this action.

8.     All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

## **FACTS**

9.     After having negotiated their underlying dispute, Fitzgerald and McNae, both with the aid of qualified attorneys, entered into a Confidential Settlement Agreement on or about June 15, 2020.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576     App.082

10.     In accordance with the Confidential Settlement Agreement, McNae and Fitzgerald were required to keep the terms and conditions of the Confidential Settlement Agreement confidential.  *See* Confidential Settlement Agreement, Paragraph 16.

11.     In accordance with the Confidential Settlement Agreement, McNae was to have no contact with Fitzgerald's employer.  *See* Confidential Settlement Agreement, Paragraph 4B.

12.     In accordance with the Confidential Settlement Agreement, McNae was not supposed to speak or write about Fitzgerald, his nationality, his employer, his country of citizenship, his location of residence, his employer, his job function, his job title, his profession, or reference dates, locations or other persons present at any of the events related to the underlying dispute. *See* Confidential Settlement Agreement, Paragraph 4A.

13.     Under the Confidential Settlement Agreement, Fitzgerald paid a sum of money, and Fitzgerald and McNae each released claims against one another. *See* Confidential Settlement Agreement, Paragraphs 3 and 13.

14.     Under the Confidential Settlement Agreement, McNae and Fitzgerald agreed not to disparage each other.  . *See* Confidential Settlement Agreement, Paragraph 17.

15.     McNae has breached several provisions of the Confidential Settlement Agreement, and is threatening future breaches of the Confidential Settlement Agreement.

16.     Plaintiff has hired the undersigned law firm to prosecute its claim and is obligated to pay it a reasonable fee for its services. Pursuant to Paragraph 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and all costs incurred relating to said enforcement.

## COUNT I – BREACH OF THE SETTLEMENT AGREEMENT

17.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this

App.083

Count, Paragraphs 1-16 of this Complaint.

18.    The Confidential Settlement Agreement is a binding contract under Florida law.

19.    Defendant McNae breached the Confidential Settlement Agreement by:

        A.    Contacting Fitzgerald's employer.

        B.    Disclosing the terms and conditions of the Confidential Settlement Agreement to Fitzgerald's employer.

        C.    Contacting McNae's husband's employer about the Confidential Settlement Agreement and the underlying dispute.

        D.    Disclosing its terms and conditions of the Confidential Settlement Agreement her husband's employer.

        E.    Disparaging Fitzgerald by wrongfully and falsely accusing him of a crime to others.

        F.    Disclosing the terms and conditions to of the Confidential Settlement Agreement on her Instagram account to her tens of thousands of followers.

        G.    Disclosing the terms and conditions of the Confidential Settlement Agreement on her Instagram account.

        H.    Disclosing the terms and conditions of the Confidential Settlement Agreement on her Medium.com blog account.

        I.    Disparaging Fitzgerald by wrongfully and falsely accusing him of a crime to others on her Instagram account.

        J.    Disparaging Fitzgerald by wrongfully and falsely accusing him of a crime to others on her Medium.com blog account.

20.    Defendant McNae has threatened and continues to threaten future breaches of the

Confidential Settlement Agreement.

21.    Plaintiff has been damaged by Defendants' breach of the Confidential Settlement Agreement.

22.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands (i) judgment against Defendant, for compensatory damages in the amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, (ii) a temporary restraining order, preliminary injunction, and permanent injunction to prevent future threatened breaches of the Confidential Settlement Agreement, and (iii) such other relief as is deemed just and proper.

Date: July 14, 2022                              Respectfully submitted,


**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
Telephone: 305-567-5576
Facsimile: 305-567-9343


By:*/s/ Peter E. Berlowe*
   Peter E. Berlowe
   Florida Bar No. 143650
   peb@assoulineberlowe.com
   *Attorneys for Plaintiff Michael Fitzgerald*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:22-cv-22171-JEM**

**MICHAEL J. FITZGERALD,**
**Individually, and YALENY DE VARONA,**
**Individually**

              **Plaintiffs,**

**v.**

**RONDA MCNAE, individually, and**
**WILLIAM MCNAE, individually,**

              **Defendants.**

_____/

## <u>AMENDED COMPLAINT</u>

Plaintiffs, MICHAEL J. FITZGERALD ("Fitzgerald") and YALENY DE VARONA ("de Varona") (collectively referenced herein as "Plaintiffs"), file this Amended Complaint against Defendants, RONDA MCNAE ("R. McNae") and WILLIAM MCNAE ("W. McNae") (collectively referenced herein as the "McNaes" or the "Defendants"), and allege:

1.      This is an action for damages arising out of Defendants' ongoing and continuous breaches of a confidential settlement agreement (the "Confidential Settlement Agreement") entered into between Defendants and Fitzgerald. This is also an action brought as a result of Defendants' numerous torts against Plaintiffs which have caused severe and ongoing injury claims.

## <u>PARTIES</u>

2.      Plaintiff Fitzgerald is an individual of United Kingdom nationality.

3.      Plaintiff de Varona is an individual of United States nationality who is domiciled in Miami-Dade County, Florida. Fitzgerald and de Varona are husband and wife.

1

4.      Defendant R. McNae is an individual of United States nationality who is domiciled in Washington State.  R. McNae is a social media influencer and internet blogger, who has over twenty thousand followers on her Instagram account @rondamcnae.

5.      Defendant W. McNae is an individual of United States nationality who is domiciled in Washington State.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as this is an action between citizens of different States and the amount in controversy exceeds $75,000.

7.      This Court has personal jurisdiction over the McNaes because they were involved with the underlying acts that are the subject matter of the Confidential Settlement Agreement in this District, they have general and specific contacts within this District, are amenable to personal jurisdiction in this district, and entered into the Confidential Settlement Agreement in Miami-Dade County, Florida, which agreement has a Florida choice of law provision and an exclusive Miami-Dade County venue provision.  Furthermore, this Court has personal jurisdiction over the McNaes in that they flew to Miami, Florida and attempted to bring criminal charges in Miami, Florida against Fitzgerald.

8.      Venue in this district is proper under 28 U.S.C. § 1391, because the underlying events related to the Confidential Settlement Agreement occurred in the Southern District of Florida, and the McNaes agreed in the Confidential Settlement Agreement that the Southern District of Florida was the exclusive venue for disputes arising out of the agreement.  Furthermore, Venue is appropriate in that the McNaes flew to Miami, Florida and attempted to bring criminal charges in Miami, Florida against Fitzgerald.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

9.      Plaintiffs have retained the law firm Assouline & Berlowe, P.A., and have agreed to pay the firm its reasonable attorneys' fees for representing the Plaintiffs in this action.

10.     All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

## **FACTS**

11.     Fitzgerald was, at all times incident to this matter, an employee of SoftwareONE UK, Ltd. ("SoftwareONE"). Fitzgerald is a high-level executive in SoftwareONE, and was critical in the success of SoftwareONE, assisting in bringing it public. As part of Fitzgerald's job responsibilities as a Global executive, Fitzgerald has spent a great majority of his time travelling outside of the UK to other countries to work on, and maintain, business relationships with SoftwareONE's various partners. One such partner in the United States is Microsoft Corporation ("Microsoft").

12.     W. McNae was, at all times incident to this matter, an employee of Microsoft located in Redmond, Washington. W. McNae and Fitzgerald worked on projects related to the SoftwareONE-Microsoft partnership beginning in or around 2018. They considered themselves to be friends, as well as working at well-known software companies that partnered on projects.

13.     In or around July 2019, Fitzgerald traveled to Washington state for a meeting at Microsoft. During an after-hours gathering of SoftwareONE and Microsoft employees, Fitzgerald first met R. McNae when she played a prank on him and pretended to Fitzgerald's work colleagues that she and Fitzgerald had slept together. Fitzgerald had absolutely no idea who she was. Then, W. McNae arrived and R. McNae and W. McNae told Fitzgerald they had been pulling a prank on him and that R. McNae was W. McNae's wife. The prank was R. McNae's idea. Fitzgerald took

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

the joke lightheartedly.  Thereafter, a fast, close friendship ensued between Fitzgerald, R. McNae and W. McNae.

14.     Fitzgerald, R. McNae and W. McNae saw each other again in August of 2019. Fitzgerald had a trip planned to Tulum, Mexico with his then-girlfriend, Patrice Sanchez ("Sanchez").  R. McNae expressed an interest in also vacationing in Tulum, and Fitzgerald extended an invitation to R. McNae and W. McNae.  The four individuals traveled to Tulum, Mexico for a personal vacation in August 2019.

15.     In Tulum, at one time, R. McNae walked into the bathroom while Fitzgerald was showering naked and used the toilet.  Fitzgerald had to ask her to leave.

16.     After Tulum, R. McNae grew concerned that Fitzgerald was going through a difficult time personally and she invited Fitzgerald to live with them in Seattle.  Fitzgerald grew very close with both R. McNae and W. McNae, and shared with them intimate details about his life that he had never shared with anyone else.

17.     In or around September 2019, Fitzgerald again traveled to Washington state for work purposes and was invited to stay as a guest in the McNaes' home. W. McNae was not present at that time.

18.     Fitzgerald was closely involved in the initial public offering of SoftwareONE and had planned a trip to celebrate his professional success in Miami, Florida for the weekend of October 18-20, 2019.  Fitzgerald invited the McNaes to attend the celebration and offered to pay for all travel and hotel expenses for the McNaes and their two young children, daughter EM and son LM.  The McNaes accepted the invitation.

19.     At the McNaes' request, Fitzgerald purchased flights for R. McNae and EM to fly to Miami from Seattle departing Seattle on Wednesday October 16, 2019 at 8:35 p.m. Pacific Time

with an arrival time in Miami of 5:21 a.m. Eastern Time on October 17, 2019.  Fitzgerald booked R. McNae and EM a two night hotel stay at The Edition hotel on Miami Beach, Florida, from October 17 – 19, 2019.

20.    At the McNaes' request, Fitzgerald purchased flights for W. McNae and LM to fly to Miami from Seattle departing Seattle on Friday, October 18, 2019 with an arrival time in Miami of 5:21 a.m. on October 19, 2019.  Fitzgerald had booked a suite at the W South Beach Hotel from October 19- 21, 2019 for the McNae family and himself and Sanchez to stay for the weekend.

21.    Sanchez canceled her flight to Miami for the celebration.

22.    On Friday, October 18, 2019, Fitzgerald hosted a celebratory dinner at Baoli, a restaurant/nightclub on Miami Beach, which is 0.2 miles away from the W Hotel.  R. McNae hired a babysitter, Lily Vasquez, to watch EM.

23.    There were approximately six (6) people in attendance at that celebratory dinner, including R. McNae and Fitzgerald.  Several other individuals joined the celebration after dinner including R. McNae's sister, Azaiah.  R. McNae hired a babysitter to watch EM.

24.    The celebration continued into the very early morning hours of October 19, 2019.

25.    Fitzgerald attempted to pay the bill at Baoli but had issues as his foreign card wouldn't accept the transaction.  Fitzgerald was accustomed to this happening, so asked the host of the restaurant if he could go into the restaurant's quiet office to call his credit card company to authorize the charge.

26.    Fitzgerald spent several minutes on the phone with the credit card company.  As he was finishing the call, R. McNae came into the office to look for him.

27.    R. McNae suddenly kissed Fitzgerald in the office of Baoli.  R. McNae then left the restaurant and went outside.  Fitzgerald searched for her and when he couldn't find her, he called

*Michael Fitzgerald v. R. McNae McNae*
Case No. 1:22-cv-22171-JEM

her numerous times. He called R. McNae's sister Azaiah as well. Azaiah found out where R. McNae was and told Fitzgerald to go find R. McNae. Fitzgerald found R. McNae, they sat and spoke for a while in the street near Baoli, and then together returned to their suite at the W Hotel.

28. Upon arriving at the W Hotel, R. McNae relieved the babysitter. Fitzgerald and R. McNae decided together that they would go into the rooftop hot tub. They changed into swimsuits.

29. On the rooftop deck, R. McNae and Fitzgerald engaged in consensual intimate sexual activity, including fellatio and vaginal intercourse, during the early morning hours of October 19, 2019 prior to the arrival of W. McNae and LM. R. McNae was on top of Fitzgerald and was demonstrating assertive and obvious sexual desire for Fitzgerald during their sexual relations. R. McNae at one point, paused the sexual activity in order to take a telephone call from W. McNae [BATES MCNAE 001546].

30. After W. McNae and LM arrived, Fitzgerald took a shower in order to freshen up. Despite the fact that her husband and son were in the very next room in the hotel suite, R. McNae opened the door to the bathroom and tried to get into the shower with Fitzgerald. Fitzgerald said no and then R. McNae proceeded to take a shower in her room within the suite and had sexual intercourse with W. McNae.

31. During the day of October 19, 2019, W. McNae, R. McNae, Fitzgerald, and others went on a boating trip. R. McNae drove Fitzgerald's rented Ferrari back to the hotel, with Fitzgerald riding in the front passenger seat and her children EM and LM in the backseat. R. McNae had W. McNae take an Uber back to the W Hotel.

32. At the end of the weekend in Miami, R. McNae told Fitzgerald that if he wasn't going to pursue a relationship with her, she would reveal the affair to W. McNae. Fitzgerald at that time was not sure what he wanted, so he and R. McNae decided that they would continue to

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.091

discuss their future over the next few weeks. R. McNae said that she would leave W. McNae for Fitzgerald. Fitzgerald suggested R. McNae and he delete their text messages so that W. McNae and their children didn't find out about the affair. R. McNae agreed that was a good idea.

33.     On October 30, 2019, Fitzgerald told R. McNae that he wanted to be committed to her, and that he was planning to move to Seattle. [BATES MCNAE 1531-1532].

34.     Although R. McNae told Fitzgerald that W. McNae did not know of the affair, R. McNae in fact did disclose the affair to W. McNae and admitted that she was thinking about leaving W. McNae for Mike.

35.     Fitzgerald and R. McNae agreed to meet again, and R. McNae invited Fitzgerald to meet her in San Francisco where she was planning to travel to watch her niece play soccer. Fitzgerald flew to San Francisco to meet R. McNae to discuss the future of their relationship on November 2, 2019. Fitzgerald and R. McNae stayed together in one hotel room in San Francisco from November 2-4, 2019.

36.     Fitzgerald and R. McNae initially decided not to have sex, so they could talk about their relationship and figure out what they each wanted. Despite their agreement, they did engage in fellatio and vaginal intercourse, and when Fitzgerald's penis accidentally touched R. McNae's anus, R. McNae stated "No, you have to earn that." R. McNae recounted that story by text to de Varona and stated:

<div style="text-align:right">Ronda McNae</div>

> Fitz tried to put it in that hole, I was like no way, you have to earn that

[BATES MCNAE000802].

37.     During the San Francisco trip, R. McNae and Fitzgerald went to a sushi restaurant, where R. McNae asked Fitzgerald to have sex with her in the restaurant bathroom. Fitzgerald did

App.092

not want to have sex in the bathroom as they had a hotel to go back to.  R. McNae ran away from the restaurant, having a tantrum about being rejected.  Fitzgerald had to follow her and calm her down.

38.     After San Francisco, on November 5, 2019, R. McNae wrote to Fitzgerald and stated "[s]o much of my heart sees a future with you and everything else that comes with." [BATES FIZ00004].  She stated, "…clearly I'm not **making choices** that are right in the eyes of God so I have so much guilt and shame now."  In their communications, R. McNae contemplated going to counseling to determine if divorcing W. McNae was the best option for her and to analyze some issues from her upbringing and childhood.

39.     On November 6, 2019, Fitzgerald responded to R. McNae and stated, "The counseling is a great idea…I think the right thing to do for you is to take your time at home, do the counseling and talk with Will as you find the right path to take….Ultimately I have so much love for you, and I just want you to be happy.  If that's with me or with anyone else.  I hope we are close forever."  [BATES FITZ000021].

40.     W. McNae and Fitzgerald also communicated about the affair between R. McNae and Fitzgerald.  W. McNae indicated that he wanted to fix his marriage with R. McNae.  Fitzgerald realized after the San Francisco trip that R. McNae was not someone he wanted to have a relationship with as she seemed irrational.  Moreover, he did not want to ruin a family, had extreme guilt for hurting W. McNae, and wanted to back off so that W. McNae and R. McNae could mend their marriage. Fitzgerald distanced himself from R. McNae.

41.     On November 25, 2019, R. McNae applied to an inpatient therapy center for a one-week intense program.  The program required R. McNae fill out an extensive patient history application, which asked R. McNae to "Describe any particular event or person that had a

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.093

significant effect on your life." [BATES MCNAE 001194]. R. McNae included Fitzgerald among

her list of significant people, and stated in part:

> That evening after a too much to drink not remembering much of the evening, he kissed
> me. Since, he has promised me a life that anyone would dream of. He's affectionate,
> supportive, there's undeniable chemistry, he wants children and I want more children, he
> would love to foster or adopt as would I, we are the same personality type. Honestly it was
> hard to not wonder if he was my soulmate. My feelings were intense and deep which I
> think mostly because we were good friends and I truly cared about him. Crossing the
> physical line deepened the bond in a different way.
>
> …
>
> I eventually told my husband that the idea of being with someone else outweighed my
> desire to be married so separating would be best…I've told both men that I need to work
> on myself for the next couple months. I'm not sure that I want to stay married and I'm not
> sure if there's a future with Fitz[gerald]." [MCNAE BATES 1220].

42.    R. McNae attended the inpatient therapy retreat for one week in December of 2019,

during which she was evaluating her relationship with both W. McNae and Mike, as well as other

issues regarding her childhood and history of sexual abuse. Fitzgerald contributed $1,000 towards

payment of R. McNae's one week therapy retreat. [BATES FITZ000051].

43.    After attending the therapy retreat, R. McNae wrote a summary of the events that

transpired with Fitzgerald in Miami. She wrote:

> I remember lying on the sidewalk, I remember hiding from him when he
> tried to kiss me again…but I wasn't scared…it was more so slightly
> annoyed and felt super drunk. He called me a million times worried saying
> he needs to make sure I'm safe and get home safe. So I told him my hiding
> spot…he came to talk…I don't remember anything that was said…I think
> he kissed me again there…I recall his hand on my leg….

R. McNae also described the San Francisco trip, stating:

> I had a planned trip to SF to watch my nieces college soccer game. Fitz
> insisted we needed to talk in person..He asked if he could meet me in SF to
> grab coffee. I said sure. November 1-4 I was there and he flew in I believe
> on the 2nd. We spent the day together and evening..then the next day I drove
> him to the airport. Honestly, I felt so lost. I appreciated his comfort on some
> level but I was also struggling at the same time. I couldn't put my finger on

> it. Something felt off. I was at a point where I wasn't communicating with my husband since I said we were separating. We were intimate that day…I had a drink but by no means drunk. If I'm honest, there was nothing about it that felt right. It was almost as if **I was giving it a sober shot**? STUPID? But I recall thinking to myself…this doesn't feel ok…but of course I would never say PLEASE STOP. When you allow things to get to a certain point, its so hard to speak up.

[BATES MCNAE 001624-26] (emphasis added).

44.     R. McNae also stated "My husband suggested filing a charge but I told him that's a huge label to put on someone when I allowed a friendship after plus allowed him to spend time with me while I toured SF not to mention intimate although nothing felt right."

45.     On January 24, 2020, R. McNae sent Fitzgerald a message stating that she and W. McNae were in a better place emotionally and mentally. She stated that she was angry with Fitzgerald but that she continued to care about him. [BATES FITZ 000219]

46.     On January 31, 2020, R. McNae told Fitzgerald that she and W. McNae filed for divorce. This was a lie. [BATES MCNAE 002089]

47.     On February 1, 2020, R. McNae told Fitzgerald that she was pregnant with Fitzgerald's child. This was also a lie. [BATES MCNAE 002089]

48.     On February 2, 2020, R. McNae texted a pregnancy timeline to Fitzgerald that she fabricated to deceive Fitzgerald into believing that they conceived a child while together in San Francisco. [BATES FITZ000306]. The pregnancy timeline showed:

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.095

*Michael Fitzgerald v. R. McNae McNae*
Case No. 1:22-cv-22171-JEM



[BATES FITZ 000306].

49.     R. McNae told Fitzgerald that W. McNae had a prior vasectomy, so the pregnancy was a result of her sexual relations with Fitzgerald. R. McNae stated that she was prepared to deal with the consequences of her actions and choices but that she wanted Fitzgerald to help financially raise the child.

50.     W. McNae also sent a message to Fitzgerald stating, "this isn't my child since I got snipped over two years ago."  [BATES FITZ 000313].  W. McNae sent this statement knowing that R. McNae was not pregnant.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.096

51.     Fitzgerald, not knowing that R. McNae and W. McNae were lying to him, became overcome with guilt and anxiety for hurting W. McNae, someone who he respected and loved, and was ashamed and upset for interfering with their marriage.  He told R. McNae he never meant to hurt either of them.  Fitzgerald told R. McNae that he wanted to support R. McNae with whatever she needed from him.

52.     R. McNae and Fitzgerald had countless conversations from February 2020 through May 2020 regarding whether Fitzgerald would be involved in the child's life, whether W. McNae could raise the child as his own, or whether R. McNae would terminate the pregnancy.  Throughout all these discussions, Fitzgerald continually offered to support R. McNae emotionally and deferred to her about what she thought was best, as it was her body and her marriage.

53.     Fitzgerald offered to support R. McNae financially at all times.  However, Fitzgerald was overwhelmed with grief, fear and anxiety, and believed all of R. McNae's lies.

54.     Throughout the discussions between R. McNae and Fitzgerald, R. McNae demanded that Fitzgerald pay her money for her emotional distress and pain and suffering.  She said that he should pay for her to buy new "fat" maternity clothes as she was gaining weight from the pregnancy, demanded that he purchase a "push present" for her once the baby was born, and other expensive demands including designer sneakers, and payment of marriage counseling for her and W. McNae to repair their allegedly broken marriage.  On February 4, 2020, clearly thinking that Fitzgerald was a deep pocked, R. McNae told de Varona:

| | | |
|---|---|---|
| | | He venmoed Ella $1k for her sex trafficking campaign- his ass is probably the douche that |
| Ronda McNae | [Number Unknown] | 2/4/2020 7:33 buys sex |
| Ronda McNae | [Number Unknown] | 2/4/2020 7:33 I want to Venmo request money randomly now |

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

[BATES MCNAE 002167]. On the very next day, February 5, 2020, R. McNae actually sent Fitzgerald a request via Venmo in the amount of $1,500 for "emotional stress" related to her fake abortion decision.



[BATES MCNAE 000298]. On February 6, 2020, R. McNae texted de Varona and said:

Ronda McNae   [Number Unknown]   2/6/2020 15:26   No thank you for reminding me I'm gonna message him and be like dude I Venmo requested you because I was so pissed and I need to go get new fat clothes

[BATES MCNAE 002175].

55.      Meanwhile, during the exact same time period, R. McNae was admitting to others, including de Varona, that she fabricated the lie about being pregnant.  She stated:

Ronda McNae   [Number Unknown]   2/2/2020 10:03   He thinks will and I am getting a divorce and I'm pregnant

[BATES MCNAE 002137].  R. McNae teased that she would either tell Fitzgerald that she had miscarried or that she would be scheduling an abortion.  On February 3, 2020, R. McNae admitted to de Varona that while she was lying to Fitzgerald that she and W. McNae were getting a divorce, in reality, things with her and W. McNae were better than ever, and they were planning to renew their vows. [BATES MCNAE2158].  R. McNae even contemplated how she was going to get financial support from Fitzgerald in the event that she miscarried.  In a text sent to de Varona and W. McNae, R. McNae said:



[BATES FITZ 000322].

56.     Through these lies, R. McNae was maliciously endangering Fitzgerald's life and wellbeing, all in an effort to extort money from him for the alleged emotional pain and suffering he had caused her from her fake pregnancy.

57.     During the ongoing discussions between Fitzgerald and R. McNae as to how much money Fitzgerald should pay her, R. McNae brought up the idea of signing a non-disclosure agreement ("NDA").   On February 3, 2020, R. McNae first initiated the idea of an NDA.   R. McNae brought up the idea of an NDA again on February 5, 2020. On February 10, 2020, R. McNae accused Fitzgerald of wanting to buy her silence.   Fitzgerald responded to R. McNae, "Why would you say that? Is that humor or serious? I never mentioned or pushed an NDA or legal.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.099

I only responded to you asking about it. Not once have I been the one to push it down that route."

[BATES MCNAE 002113-14].

58.     On February 5, 2020, R. McNae told Fitzgerald that W. McNae asked if R. McNae gave Fitzgerald verbal consent for their sexual encounter (*i.e.*, fellatio and vaginal intercourse) in Miami.  R. McNae told Fitzgerald that she "almost got offended" by W. McNae's question. [BATES MCNAE 002095].

59.     Fitzgerald stated, "I'm not a monster and never capable of doing bad things like that." R. McNae responded, "Yeah I know…it's someone on the outside making sense of what they perceive…"  [BATES MCNAE 002095].

60.     On February 12, 2020, R. McNae lied to Fitzgerald and told him that she had an abortion.  In their text conversation, R. McNae stated:

| | | |
|---|---|---|
| Ronda McNae | [Number Unknown] | 2/12/2020 12:47 Don't ever look up abortion pix at 16 weeks! |
| Ronda McNae | [Number Unknown] | 2/12/2020 12:51 Uhh I so wish I was in tulum right now!!!! 😊 - or somewhere warm |
| MF | +1 786-858-5212 | 2/12/2020 12:53 Did you go through with it today? |
| Ronda McNae | [Number Unknown] | 2/12/2020 12:56 No, I'm going to raise this child myself without a father |
| Ronda McNae | [Number Unknown] | 2/12/2020 12:57 YES! wtf |
| MF | +1 786-858-5212 | 2/12/2020 12:57 You didn't tell me? |
| MF | +1 786-858-5212 | 2/12/2020 12:57 You said you were going for the appointment |
| Ronda McNae | [Number Unknown] | 2/12/2020 12:57 I DID - you don't pay attention |
| | | |
| MF | +1 786-858-5212 | 2/12/2020 12:57 I didn't know whether you'd decided |
| MF | +1 786-858-5212 | 2/12/2020 12:57 I'm sorry you went through that on your own |
| Ronda McNae | [Number Unknown] | 2/12/2020 12:57 yeah well I don't like to say exactly what's going on |
| Ronda McNae | [Number Unknown] | 2/12/2020 12:59 Really terrible to be honest, glad will wasn't in town |
| MF | +1 786-858-5212 | 2/12/2020 13:04 I'm sorry. Did someone go with you? |
| | | No... I would have asked my sister (older) but she had one before and is still traumatized by it. |
| Ronda McNae | [Number Unknown] | 2/12/2020 13:09 Literally cries if you talk about it |
| Ronda McNae | [Number Unknown] | 2/12/2020 14:47 Sigh of relief for you? |
| MF | +1 786-858-5212 | 2/12/2020 16:07 Not at all |
| MF | +1 786-858-5212 | 2/12/2020 16:07 Offers more pain and stress |
| MF | +1 786-858-5212 | 2/12/2020 16:07 But I can't control any of it |

[BATES MCNAE 002119-20].

61.     Not knowing that R. McNae was lying and thinking she had just aborted their child, Fitzgerald continued to provide his emotional support to R. McNae, and told R. McNae he wanted to support whatever she wanted. On February 12, 2020, Fitzgerald offered to pay R. McNae $1500

monthly for counseling. [BATES MCNAE002119]. Fitzgerald offered to provide financial and emotional help for R. McNae, on the mistaken belief that she had been pregnant, had an abortion, and out of remorse for having supposedly been the cause of R. McNae and W. McNae's separation and feigned pending divorce.

62.     After having negotiated their underlying dispute over financial compensation for several months, R. McNae retained attorney Max Meyers on or about April 15, 2020.  Fitzgerald retained the undersigned law firm.  On June 15, 2020, all with the aid of qualified attorneys, R. McNae, W. McNae and Fitzgerald entered into a Confidential Settlement Agreement.  A true and correct copy of the Confidential Settlement Agreement is attached hereto as **Exhibit A**.

63.     In accordance with the Confidential Settlement Agreement, the McNaes and Fitzgerald were required to keep the terms and conditions of the Confidential Settlement Agreement confidential.  *See* Confidential Settlement Agreement, Paragraph 16.

64.     In accordance with the Confidential Settlement Agreement, the McNaes were to have no contact with Fitzgerald's employer.  *See* Confidential Settlement Agreement, Paragraph 4B.

65.     In accordance with the Confidential Settlement Agreement, the McNaes were not supposed to speak or write about Fitzgerald, his nationality, his employer, his country of citizenship, his location of residence, his employer, his job function, his job title, his profession, or reference dates, locations or other persons present at any of the events related to the underlying dispute. *See* Confidential Settlement Agreement, Paragraph 4A.

66.     In accordance with the Confidential Settlement Agreement, if the McNaes referred indirectly to Fitzgerald it would also be considered a breach of the agreement.  *See* Confidential Settlement Agreement, Paragraph 4A.

67.     Under the Confidential Settlement Agreement, Fitzgerald paid a sum of money, and Fitzgerald and the McNaes each mutually released all claims against one another. *See* Confidential Settlement Agreement, Paragraphs 3 and 13.

68.     The Confidential Settlement Agreement provides: "WHEREAS, for purposes of avoiding the time and costly expenses associated with litigation, and in the interest of economic expediency, the Parties desire to reach a ***settlement of all claims*** between and amount themselves; and WHEREAS, the parties ***wish to resolve all disputes*** between and among them.   *See* Confidential Settlement Agreement, page 1 (emphasis added).

69.     Under the Confidential Settlement Agreement, the McNaes and Fitzgerald agreed not to disparage each other by written or oral word, gesture, or any other means, nor would they make disparaging or negative comments about each other, to any person or entity.  *See* Confidential Settlement Agreement, Paragraph 17.

70.     Fitzgerald has fully complied with all terms and conditions of the Confidential Settlement Agreement.  R. McNae and W. McNae have not complied with the terms and conditions of the Confidential Settlement Agreement.

71.     On May 27, 2021, R. McNae filed a report of sexual assault in Miami Beach, Florida (Miami PD Case #2021-54358).   [BATES MCNAE 001632-38]. The Miami Police Department found no probable cause and did not bring charges.

72.     On October 20, 2021, W. McNae and R. McNae initiated a criminal investigation with the Redmond Police Department.  W. McNae alleged that he was harassed by Fitzgerald at a Microsoft building on February 2, 2020.  The Redmond Police determine that there was no probable cause for a crime of harassment.  [BATES MCNAE 001364-1369].  No charges were brought

73.     In conjunction with W. McNae's report of harassment, R. McNae was interviewed by the Police Department in Redmond, Washington on October 20, 2021 and November 1, 2021. R. McNae gave an extensive statement falsely stating that she had not given consent to Fitzgerald for either the Miami sexual encounter or the San Francisco sexual encounter.  Due to the fact that the alleged conduct did not occur in Redmond, that police department lacked jurisdiction and probable cause and the case was deemed inactive as of January 13, 2022.  No charges were brought.

74.     On February 22, 2022, R. McNae was interviewed by the San Francisco Police Department.  The Police Department determined that there was not enough evidence to pursue investigation R. McNae's false claims against Fitzgerald. [BATES MCNAE 001443]. R. McNae wrote to the District Attorney of San Francisco on February 1, 2022 complaining that the investigation by San Francisco was unacceptable and claimed that NDAs should be banned in California.  [BATES MCNAE 1456-1457].

75.     On March 8, 2022, R. McNae again complained to the San Francisco Police Department that it mishandled her case.

76.      April 7, 2022, R. McNae filed an official incident report with the San Francisco Police Department falsely alleging that she was raped and sodomized by Fitzgerald on October 2, 2019.  [BATES MCNAE 001371-1375].  Lacking in probable cause, the San Francisco Police decided not to pursue any criminal charges against Fitzgerald.  Again, on April 29, 2022, R. McNae yet again complained that the San Francisco Police Department didn't honor or respect her rights.

77.     R. McNae posted a picture of the San Francisco Police Department incident report on her Instagram page on July 7, 2022.  The post identified Fitzgerald as a rapist.  [BATES MCNAE 001699].

78.     R. McNae further revealed terms of the Confidential Settlement Agreement on her

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.103

*Michael Fitzgerald v. R. McNae McNae*
Case No. 1:22-cv-22171-JEM

Instagram page on June 15, 2022. [BATES MCNAE 001702].  She refers to Fitzgerald as a rapist on her Instagram page on October 10, 2022 [BATES FITZ 00403-09].

79.     R. McNae reached out to various individuals at SoftwareONE in order to reveal the terms of the Confidential Settlement Agreement and to falsely claim that she was a victim of sexual assault by Fitzgerald on December 29, 2021; March 31, 2022; May 5, 2022; May 9, 2022; July 7, 2022; and July 15, 2022.

80.     R. McNae contacted individuals at Microsoft to reveal terms of the Confidential Settlement Agreement on June 10, 2022.

81.     R. McNae has breached several provisions of the Confidential Settlement Agreement by: (a) not keeping the agreement confidential, (b) by contacting Fitzgerald's employer, (c) by disclosing the existence of the agreement to W. McNae's employer and other third parties, (d) by referring to Fitzgerald directly by name and/or likeness, being, nationality, country of citizenship, location of residence, employer, job function, job title, profession, or in reference to dates, locations, or other persons present, (e) by disparaging, lying and intentionally seeking to harm Fitzgerald both professionally and personally, (f) by referring publicly to Fitzgerald indirectly in various articles and social media posts, (g) working in concert with W. McNae to commit his breaches of the Confidential Settlement Agreement and his lies to Fitzgerald, and (h) by sharing Fitzgerald's name or identify in connection with the Confidential Settlement Agreement to at least 11 individuals including but not limited to: Gretchen Carlson, Julie Roginsky, Andrea Constand, A Women Against Rape advocate, Jodi Kantor, Ashely Stewart, John Quinones, Jenny Martinez, John Wiley, David Totten, and Chris Maulden.  R. McNae continues to post references to Fitzgerald, his employer and Will's employer on her Social Media accounts, continues to discuss her false claims of sexual assault to various third parties, including prominent

19

App.104

individuals in the #MeToo movement, and threatens future breaches of the Confidential Settlement Agreement.

82.     W. McNae contacted various individuals at SoftwareONE in order to reveal the terms of the Confidential Settlement Agreement and to falsely claim that R. McNae was a victim of sexual assault by Fitzgerald on July 15, 2022.

83.     W. McNae contacted individuals at Microsoft to reveal terms of the Confidential Settlement Agreement on April 12, 2022; April 20, 2022; May 2, 2022 and July 13, 2022.

84.     W. McNae has breached several provision of the Confidential Settlement Agreement by: (a) not keeping the agreement confidential, (b) by contacting Fitzgerald's employer, (c) by disclosing the existence of the agreement to W. McNae's employer and other third parties, (d) by referring to Fitzgerald directly by name and/or likeness, being, nationality, country of citizenship, location of residence, employer, job function, job title, profession, or in reference to dates, locations, or other persons present, (e) by disparaging, lying and intentionally seeking to harm Fitzgerald both professionally and personally, and (f) by working in concert with R. McNae to commit her breaches of the Confidential Settlement Agreement and her lies to Fitzgerald .

85.     Fitzgerald has suffered immeasurable harm as a result of R. McNae's and W. McNae's ongoing, continuous, malicious, and intentional breaches of the Confidential Settlement Agreement, especially the public disparagement accusing Fitzgerald of committing sexual assault and/or rape.  These false accusations have affected Fitzgerald both professionally and personally. His career has been negatively affected due to the McNaes' contacting of his employer resulted in an ongoing internal investigation into the McNaes' specious accusations. Defendants' conduct has resulted in Fitzgerald not being able to maintain his job, for which he has a contract with

SoftwareONE.  Fitzgerald has suffered reputational harm both in the industry he has spent his life working in, and at SoftwareONE, which he has dedicated his professional life building.  Fitzgerald has suffered personal harm to his mental health, emotional wellbeing, enjoyment of life and a loss of consortium with de Varona.

86.    As is set forth more fully in the Counts that follow, Defendants' numerous, false, and intentionally spiteful statements to police constitute malicious prosecution.  Defendants' verbal and written statements to others that directly or by implication falsely state that Fitzgerald was a rapist, sexual batterer, groomer, or sexual predator constitute defamation per se.

87.    On December 10, 2020, Fitzgerald and de Varona were married.  Since her marriage to Fitzgerald, de Varona has also suffered personal injury as a direct result of the McNaes' false accusations and has a claim against the McNaes for the affect their breaches and defamatory statements about Fitzgerald have had on her mental health, emotional wellbeing, enjoyment of life and loss of consortium with Fitzgerald.

88.    All conditions precedent have been met, occurred or been waived as to the filing of this case.

89.    Plaintiffs have hired the undersigned law firm to prosecute their claims and are obligated to pay it a reasonable fee for its services. Pursuant to Paragraph 23 of the Confidential Settlement Agreement, Plaintiff Fitzgerald is entitled to be reimbursed for his attorneys' fees and all costs incurred relating to said enforcement.

## COUNT I BY FITZGERALD –
## <u>BREACH OF THE SETTLEMENT AGREEMENT AGAINST RONDA MCNAE</u>

90.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

91.    The Confidential Settlement Agreement is a binding contract under Florida law.

92.    Defendant R. McNae breached the Confidential Settlement Agreement by:

A.    Contacting Fitzgerald's employer on, but not limited to, December 29, 2021; March 31, 2022; May 5, 2022; May 9, 2022; July 7, 2022; and July 15, 2022.

B.    Disclosing the Confidential Settlement Agreement to W. McNae's employer on, but not limited to, June 10, 2022;

C.    Disclosing the Confidential Settlement Agreement to other third parties on, but not limited to, July 7, 2022; and July 15, 2022;

D.    Disparaging Fitzgerald by wrongfully and falsely accusing him of a crime to others via social media;

E.    Disclosing the terms and conditions of the Confidential Settlement Agreement on R. McNae's Instagram account to her tens of thousands of followers;

F.    Disparaging Fitzgerald both directly and indirectly on R. McNae's Instagram account on, but not limited to, posts dated July 11, 2022; July 15, 2022; October 20, 2022; and November 20, 2022;

G.    Disclosing the terms and conditions of the Confidential Settlement Agreement on R. McNae's Medium.com blog account, including a copy of a letter to Microsoft from W. McNae;

H.    Disparaging Fitzgerald by wrongfully and falsely accusing him of a crime to others on R. McNae's Medium.com blog account:

I.    Sharing Fitzgerald's name or identity in connection with the Confidential Settlement Agreement with the following individuals:

    a.   Gretchen Carlson

    b.   Julie Roginsky

    c.   Andrea Constand

    d.   A Women Against Rape Advocate (name unknown)

    e.   Jodi Kantor

    f.   Ashely Steward

    g.   John Quinones

    h.   Jenny Martinez

    i.   John Wiley

    j.   David Totten

    k.   Chris Maulden.

93.    R. McNae threatens and continues to threaten future breaches of the Confidential Settlement Agreement.

94.    As a direct and proximate result of R. McNae's intentional breaches of the Confidential Settlement Agreement, Fitzgerald has been damaged.

95.    R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and to deter her, and others from such action in the future.

96.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands (i) judgment against Defendant Ronda McNae for compensatory damages in an amount in excess of the jurisdictional limits of this

Court, plus post-judgment interest, and continuing until paid in full, (ii) judgment against Defendant Ronda McNae for punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, (iii) attorney's fees and costs, and  (iv) such other relief as is deemed just and proper.

<div align="center">

**COUNT II BY FITZGERALD –**
**BREACH OF THE SETTLEMENT AGREEMENT AGAINST WILLIAM MCNAE**

</div>

97.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

98.     The Confidential Settlement Agreement is a binding contract under Florida law.

99.     Defendant W. McNae breached the Confidential Settlement Agreement by:

A.      Contacting Fitzgerald's employer on, but not limited to, July 15, 2022;

B.      Disclosing the Confidential Settlement Agreement to W. McNae's employer on, but not limited to, April 12, 2022; April 20, 2022; May 2, 2022; and July 13, 2022;

C.      Disclosing the Confidential Settlement Agreement to outside counsel for Microsoft on, but not limited to, February 15, 2022 and July 15, 2022.

100.    As a direct and proximate result of Defendant W. McNae's intentional breaches of the Confidential Settlement Agreement, Fitzgerald has been damaged.

101.    W. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish W. McNae for his actions and to deter him, and others from such action in the future.

102.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands (i) judgment against Defendant

<div align="center">

24

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

</div>

William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, (ii) judgment against Defendant William McNae for punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, (iii) attorney's fees and costs, and (iv) such other relief as is deemed just and proper.

### COUNT III BY FITZGERALD –
### <u>LIBEL PER SE AGAINST RONDA MCNAE (STATEMENT 1)</u>

103.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

104.    R. McNae has engaged in ongoing, continuous, and malicious behavior in which she has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

105.    On March 31, 2022, R. McNae sent a letter to John Mayes and Patty Ravencroft at SoftwareONE and stated:

*Michael Fitzgerald v. R. McNae McNae*
Case No. 1:22-cv-22171-JEM

John,

SoftwareONE will likely hear from Microsoft in the coming days however I felt compelled to inform you personally that there are ongoing investigations against your CIO; Mike Fitzgerald. In transparency, I did reach out to Mike this past week requesting an apology but never heard back. I will include a copy of my email to Mike below.

In June 2020, I signed an NDA contract with Mike Fitzgerald under duress feeling this would be the only way to have access to resources for intense therapy that was and is still needed. I've since learned that an NDA cannot prevent one from going to law enforcement to report a crime.

It's disheartening to uncover the reality that someone is capable of manufacturing a false identity full of deep manipulation under the guise of a work partnership, only to carry out irreparable harm. For the sake of all women, I hope more of these cases are brought to light.

-Ronda McNae

(Email to Mike Fitzgerald from Ronda McNae)

*Mike,*

*You may or may not be aware by this point, Will and I went to the police. There are currently three open investigations on you. Charges ranging from harassment to sexual battery. This was something I needed to do for my own personal healing to move forward.*

*Unfortunately it's hard to know if you fully understand the gravity of your past choices and how they have severely affected me to my core as well as my family.*

*I'm writing to you to give you a small window of opportunity to apologize in person face to face ... just you and I, otherwise I will continue with charges against you criminally. Will and I don't see eye to eye on this, but I feel it's important to give you a chance.*

*Truly, I believe people can change for the better but not without ownership, accountability, and a genuine apology.*

*To add, I'm meeting with the District Attorney's office in San Francisco within the next two weeks. They are requesting a "phone dump" which gives them all the text threads*

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576     App.111

> *between us, Yelany, Patrice, emails, and those at SWO who knew of everything prior to the NDA. A response in a timely manner would be appreciated.*
>
> *-Ronda McNae*

[BATES MCNAE 001336-37] (hereinafter referred to as "Statement 1").

106.    Statement 1 is false.

107.    As a direct and proximate result of R. McNae's libelous Statement 1, Fitzgerald has been damaged.

108.    Statement 1 is libel *per se* because the defamatory words she has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

109.    Statement 1 is libel *per se* because Statement 1 accuses by implication Fitzgerald of committing a felonious sexual crime (*i.e.* rape).

110.    R. McNae intended Statement 1 to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

111.    Statement 1 is about Fitzgerald.

112.    In relation to Statement 1, R. McNae intentionally made numerous other statements that Fitzgerald raped and sexually assaulted her.

113.    R. McNae had actual knowledge that Statement 1 is false and that making false statements like Statement 1 is wrong and likely to injure Fitzgerald.

114.    In Florida, rape and sexual assault are felony crimes.

115.    In Florida, false written statements indicating a person committed a felony constitute libel *per se*.

116.    R. McNae made Statement 1 with the malicious intent to defame Fitzgerald.

117.    Statement 1 is unprivileged.

27

118.    As a direct result of R. McNae's false publication of Statement 1, R. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

119.    The wrong and injuries caused by a statement such as Statement are presumed and implied, and constitute libel *per se*.

120.    Statement 1 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

121.    Statement 1 caused others to avoid Fitzgerald to be avoided by others, such as his employer, SoftwareONE and its employees.

122.    As a direct result of R. McNae's Statement 1, Fitzgerald now feels ostracized both personally and professionally.

123.    As a direct result of Statement 1, Fitzgerald has not been permitted to work in his chosen career.

124.    As a consequence of Statement 1, R. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

125.    R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and to deter her, and others from such action in the future.

126.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits

of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other relief as is deemed just and proper.

## COUNT IV BY FITZGERALD –
## <u>LIBEL PER SE AGAINST RONDA MCNAE (STATEMENT 2)</u>

127.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

128.    R. McNae has engaged in ongoing, continuous, and malicious behavior in which she has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

129.    On May 5, 2022, R. McNae sent a letter to John Mayes and Patty Ravencroft at SoftwareONE and Leslie Pickering of Microsoft.  The letter reads:

John Mayes,

Dating back to my initial correspondence with you (April 2020), you have always been quick to reply within two days. It's been 8 days and I have yet to hear a peep nor was there any response to Will McNae's follow up email April 26th 2022.

I would like to know your process and how your company handles criminal and sexual in nature misconduct. How do you plan to proceed?

While your company will may attempt to claim "zero liability" since pieces of the story weren't during "work hours" or " a company sponsored event," I hope you recognize at this point that's so far from the truth based on all the evidence I have supporting my claims.

Yesterday I connected with a retired special agent from the FBI of 30 years. He helped solve some of the biggest sex crime cases and I've learned from him, theres a process of a sexual predator.

Psychological coercion, deception, and manipulation to win sympathy, trust, and access to prey on a vulnerable female once she's isolated is a crime. Mike manufactured his entire identity. While Mike communicated to Microsoft he couldn't attend Inspire due to the death of his Father and needed to be in the UK- I have proof Mike wasn't in the UK and actually in Miami, FL. Also, Mike's Dad isn't dead although I also have proof of Mike texting me how his Father died and that Mike has a son. He even sent me a picture of his son. Your company likely knows that Mike doesn't not have a son.

Mike told me "if anything gets out, his company will circle around him to protect him and Will would be pushed out"

I have since spoken to several investigative reporters and I sure hope your company won't side step or cut corners on an internal investigation and find a way to right the wrong.

[BATES MCNAE 001342] (hereinafter referred to as "Statement 2").

130.    Statement 2 is false.

131.    As a direct and proximate result of R. McNae's libelous Statement 2, Fitzgerald has been damaged.

132.    Statement 2 is libel *per se* because the defamatory words she has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

133.    Statement 2 is libel *per se* because Statement 2 accuses Fitzgerald of committing a felonious sexual crime (*i.e.* rape).

134.    Statement 2 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

135.    Statement 2 is about Fitzgerald.

136.    In relation to Statement 2, R. McNae intentionally made numerous other statements that Fitzgerald raped her.

137.    R. McNae had actual knowledge that Statement 2 is false and that making false statements like Statement 2 are wrong and likely to injure Fitzgerald.

138.    In Florida, rape and sexual assault are felony crimes.

139.    In Florida, false statements indicating a person committed a felony constitute libel *per se*.

140.    R. McNae made Statement 2 with the malicious intent to defame Fitzgerald.

141.    Statement 2 is unprivileged.

142.    As a direct result of R. McNae's publication of Statement 2, R. McNae naturally and proximately caused injury to Fitzgerald in his personal, social, and business relations of life.

143.    The wrongs and injuries caused by a statement like Statement 2 are presumed and implied, and constitute libel *per se*.

144.    Statement 2 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

145.    Statement 2 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

146.    As a direct result of R. McNae's Statement 2, Fitzgerald now feels ostracized both personally and professionally.

147.    As a direct result of Statement 2, Fitzgerald has not been permitted to work in his chosen career.

148.    As a consequence of Statement 2, R. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

149.    R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and to deter her, and others from such action in the future.

150.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs and for such other relief as is deemed just and proper.

### COUNT V BY FITZGERALD – <br> <u>LIBEL PER SE AGAINST RONDA MCNAE (STATEMENT 3)</u>

151.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.116

152.    R. McNae has engaged in ongoing, continuous, and malicious behavior in which she has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

153.    On May 9, 2022, R. McNae sent a letter to John Mayes and Patty Ravencroft at SoftwareONE and Leslie Pickering of Microsoft, with copies of various police reports that she filed against Fitzgerald.  The letter stated:

> Thank you for your delayed response. It's not just a personal matter FYI. Its personal but very much professional. Perhaps that's a convenient and safe stand for you to take.
>
> Taking advantage of a work relationship to prey on the wife is hardly "personal" especially since I was threatened with my husband losing his job.
> I also have a text message from Mike stating he plans on talking to "Dieter" - if things were personal, why would a conversation with the CEO be necessary? Unfortunately there's many texts where Mike speaks about SWO.
>
> As we are watching the Activision ordeal unravel, I believe it's fair to say the choices the CEO made personal and professional created a massive ripple effect. Same goes from Mike Fitzgerald. Thankfully with the help of Verizon, I've been able to uncover text messages to both Will & myself dating back to 2019 from Mike.
>
> Also, I'm not the only victim of his misconduct. I have a saved testimony of another victim who declined sex and Mike threw her on the bed while saying "Shut the fuck up" and proceeded to have sex with her from behind. Now this incident is very much personal. There are no ties professionally however at what point does an employees personal choices bleed into his work?
>
> I'll be retaining legal counsel.
>
> Ronda McNae

[BATES MCNAE 001341] (hereinafter referred to as "Statement 3").

154.    Statement 3 is false.

155.    As a direct and proximate result of R. McNae's libelous Statement 3, Fitzgerald has been damaged.

156.    Statement 3 is libel *per se* because the defamatory words R. McNae has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

157.    Statement 3 is libel *per se* because Statement 3 accuses by implication Fitzgerald
of committing a felonious sexual crime (*i.e.* rape).

158.    Statement 3 was intended to degrade Fitzgerald, bring him into ill repute, destroy
others' confidence in his integrity, or to cause other injury.

159.    Statement 3 is about Fitzgerald.

160.    In relation to Statement 3, R. McNae intentionally made numerous other statements
that Fitzgerald raped her.

161.    R. McNae had actual knowledge that Statement 3 is false and that making false
statements like Statement 3 are wrong and likely to injure Fitzgerald.

162.    In Florida, rape and sexual assault are felony crimes.

163.    In Florida, false statements indicating a person committed a felony constitute libel
*per se*.

164.    R. McNae made Statement 3 with the malicious intent to defame Fitzgerald.

165.    Statement 3 is unprivileged.

166.    As a direct result of R. McNae's publication of Statement 3, R. McNae naturally
and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

167.    The wrongs and injuries caused by a statement like Statement 3 are presumed and
implied, and constitute libel *per se*.

168.    Statement 3 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or
obloquy.

169.    Statement 3 caused others to avoid Fitzgerald, such as his employer, SoftwareONE
and its employees, as well as partnered companies.

170.    As a direct result of R. McNae's Statement 3, Fitzgerald now feels ostracized both

personally and professionally.

171.    As a direct result of Statement 3, Fitzgerald has not been permitted to work in his chosen career.

172.    As a consequence of Statement 3, R. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

173.    R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and to deter her, and others from such action in the future.

174.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other relief as is deemed just and proper.

**COUNT VI BY FITZGERALD –**
**LIBEL PER SE AGAINST RONDA MCNAE (STATEMENT 4)**

175.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

176.    R. McNae has engaged in ongoing, continuous, and malicious behavior in which she has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

177.    On June 10, 2022, R. McNae sent a letter to David Totten, Leslie Pickering and Chris Maulden of Microsoft, in which she stated, in part:

> Spouses are often invited to company events in support of the spouse who is the full time employee of MS, perhaps you should send out a notice "If your partner is harassed, assaulted, or raped… MS has zero liability even if you were attending a dinner or work related event to support the work partnership". I can list over two dozen events I have attended with my husband while he's been employed with MS including a team dinner I hosted.
>
> Take my entire rape/assaults out of Will McNae's HR complaint, MS failed to investigate another piece of the report when Will had been threatened and harassed during work hours by the same individual. Was this not taken serious because he was a male? Then again, your company dismisses women all the time so perhaps gender isn't an issue. I have a text from Will where he was suicidal because of Mike Fitzgerald. Will tells me theres enough life insurance to cover the kids and I … (yet) MS claimed no harm was done to the full time employee? My evidence says otherwise.

[BATES MCNAE 001332-33] (hereinafter referred to as "Statement 4").

178.     Statement 4 is false.

179.     As a direct and proximate result of R. McNae's libelous Statement 4, Fitzgerald has been damaged.

180.     Statement 4 is libel *per se* because the defamatory words she has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

181.     Statement 4 is libel *per se* because Statement 4 accuses Fitzgerald of committing a felonious sexual crime (*i.e.* rape).

182.     Statement 4 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

183.     Statement 4 is about Fitzgerald.

184.     In relation to Statement 4, R. McNae intentionally made numerous other statements that Fitzgerald raped her.

185.     R. McNae had actual knowledge that Statement 4 is false and that making false

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

statements like Statement 4 are wrong and likely to injure Fitzgerald.

186.    In Florida, rape and sexual assault are felony crimes.

187.    In Florida, false statements indicating a person committed a felony constitute libel *per se*.

188.    R. McNae made Statement 4 with the malicious intent to defame Fitzgerald.

189.    Statement 4 is unprivileged.

190.    As a direct result of R. McNae's publication of Statement 4, R. McNae naturally and proximately caused injury to Fitzgerald in his personal, social, and business relations of life.

191.    The wrongs and injuries caused by a statement like Statement 4 are presumed and implied, and constitute libel *per se*.

192.    Statement 4 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

193.    Statement 4 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

194.    As a direct result of R. McNae's Statement 4, Fitzgerald now feels ostracized both personally and professionally.

195.    As a direct result of Statement 2, Fitzgerald has not been permitted to work in his chosen career.

196.    As a consequence of Statement 4, R. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

197.    R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

to deter her, and others from such action in the future.

198.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other relief as is deemed just and proper.

### COUNT VII BY FITZGERALD – <u>LIBEL PER SE AGAINST RONDA MCNAE (STATEMENT 5)</u>

199.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

200.    R. McNae has engaged in ongoing, continuous, and malicious behavior in which she has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

201.    On July 7, 2022, R. McNae sent a letter to John Wylie of John Wylie Law and John Mayes of SoftwareONE stating, in part:

Dear SoftwareONE and Michael Fitzgerald,

I am requesting a release from the non-disclosure agreement and any non-disparagement clauses that Michael Fitzgerald, CIO of SoftwareONE, insisted I, Ronda D. McNae, sign on June 15th 2020 in exchange for financial resources to cover expenses related to my intense mental and emotional health counselling required to move forward after the known and reported sexual misconduct.

This agreement was established to conceal details of horrendous and alarming behavior and sexual assaults sandwiched within SoftwareONE's IPO dates: October 14th – November 22nd 2019. I learned from former FBI Agents how to reverse engineer a crime which enabled me to study evidence and timelines and present to law enforcement in Miami, San Francisco, and Redmond.

Mr. Fitzgerald manufactured his identity and misrepresented himself to gain trust and sympathy, only to abuse a work relationship with William J. McNae which allowed Mr. Fitzgerald to gain access to groom and prey on Mrs. McNae.

Michael Fitzgerald even learned of Mrs. McNae's traumatic childhood and requested to have her speak at a future conference for SoftwareONE, in hopes to encourage others in your company. There were two other individuals present when this conversation took place August 2019.

I am requesting a release and termination of this NDA.

[BATES MCNAE 001347-48] (hereinafter referred to as "Statement 5").

202.    Statement 5 is false.

203.    As a direct and proximate result of R. McNae's libelous Statement 5, Fitzgerald has

been damaged.

204.    Statement 5 is libel *per se* because the defamatory words she has used against

Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business,

or means of his livelihood.

205.    Statement 5 is libel *per se* because Statement 5 accuses Fitzgerald of committing a

felonious sexual crime (i.e. rape).

206.    Statement 5 was intended to degrade Fitzgerald, bring him into ill repute, destroy

others' confidence in his integrity, or to cause other injury.

207.    Statement 5 is about Fitzgerald.

208.    In relation to Statement 5, R. McNae intentionally made numerous other statements that Fitzgerald raped her.

209.    R. McNae had actual knowledge that Statement 5 is false and that making false statements like Statement 5 are wrong and likely to injure Fitzgerald.

210.    In Florida, rape and sexual assault are felony crimes.

211.    In Florida, false statements indicating a person committed a felony constitute libel *per se*.

212.    R. McNae made Statement 5 with the malicious intent to defame Fitzgerald.

213.    Statement 5 is unprivileged.

214.    As a direct result of R. McNae's publication of Statement 5, R. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

215.    The wrongs and injuries caused by a statement like Statement 5 are presumed and implied, and constitute libel *per se*.

216.    Statement 5 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

217.    Statement 5 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

218.    As a direct result of R. McNae's Statement 5, Fitzgerald now feels ostracized both personally and professionally.

219.    As a direct result of Statement 5, Fitzgerald has not been permitted to work in his chosen career.

220.    As a consequence of Statement 5, R. McNae has damaged Fitzgerald in an amount

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.124

in excess of the jurisdictional limits of this Court.

221.     R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and to deter her, and others from such action in the future.

222.     Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other relief as is deemed just and proper.

## COUNT VIII BY FITZGERALD –
## LIBEL PER SE AGAINST RONDA MCNAE (STATEMENT 6)

223.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

224.     R. McNae has engaged in ongoing, continuous, and malicious behavior in which she has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

225.     On July 15, 2022, R. McNae sent a letter to John Wylie of John Wylie Law, John Mayes of SoftwareONE and Jenny Martinez of Munck Wilson, stating, in part:

> Was it ever communicated to you that I met Fitzgerald and roughly 60 of the employees at a work event put on by SoftwareONE? At this event, Fitzgerald shared details of his father that passed, past divorce, and showed pictures of his son? All false by the way. I shared with my husband and a Detective here in Seattle that Fitzgerald had been touching parts of my body in passing - too touchy for meeting me for the first time. I brushed it off thinking that was normal or he doesn't understand personal space. This was part of his process. Push the envelope to desensitize me to random touching.

[BATES MCNAE 001349] (hereinafter referred to as "Statement 6").

226.     Statement 6 is false.

227.     As a direct and proximate result of R. McNae's libelous Statement 6, Fitzgerald has been damaged.

228.     Statement 6 is libel *per se* because the defamatory words she has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

229.     Statement 6 is libel *per se* because Statement 6 accuses by implication Fitzgerald of committing a felonious sexual crime (i.e. being a sexual predator).

230.     Statement 6 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

231.     Statement 6 is about Fitzgerald.

232.     In relation to Statement 6, R. McNae intentionally made numerous other statements that Fitzgerald raped her.

233.     R. McNae had actual knowledge that Statement 6 is false and that making false statements like Statement 6 are wrong and likely to injure Fitzgerald.

234.     In Florida, rape and sexual assault are felony crimes.

235.     In Florida, false statements indicating a person committed a felony constitute libel *per se*.

41

*Michael Fitzgerald v. R. McNae McNae*
Case No. 1:22-cv-22171-JEM

236.   R. McNae made Statement 6 with the malicious intent to defame Fitzgerald.

237.   Statement 6 is unprivileged.

238.   As a direct result of R. McNae's publication of Statement 6, R. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

239.   The wrongs and injuries caused by a statement like Statement 6 are presumed and implied, and constitute libel *per se*.

240.   Statement 6 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

241.   Statement 6 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

242.   As a direct result of R. McNae's Statement 6, Fitzgerald now feels ostracized both personally and professionally.

243.   As a direct result of Statement 6, Fitzgerald has not been permitted to work in his chosen career.

244.   As a consequence of Statement 6, R. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

245.   R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and to deter her, and others from such action in the future.

246.   Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and for such other relief as is deemed just and proper.

### COUNT IX BY FITZGERALD –
### <u>LIBEL PER SE AGAINST RONDA MCNAE (STATEMENT 7)</u>

247.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

248.    R. McNae has engaged in ongoing, continuous, and malicious behavior in which she has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

249.    On July 11, 2022, R. McNae posted Statement 5 on her Instagram account in its entirety.  Although she redacted Fitzgerald's name, she left in numerous identifying details about Fitzgerald and left in the fact that he was employed by SoftwareONE.  In addition, in the comments section of the Instagram post, R. McNae stated, in part:

> I collected evidence proving a pattern of behavior where this man used his position of power to take advantage of a work relationship to prey and groom me. I met him at a work event put on by his company SoftwareONE in July 2019. He shared his father just recently passed & even shared details of HOW he died while suffering from Alzheimer's. His mother was sick with a prolapsed colon & was on a list for surgery in the UK. He shared the unfortunate reality of a custody battle with his ex-wife (police officer) who ran off with her boss. I saw pictures of his son. He just ended a long term relationship where his gf forced him to choose between spending time with her & his dying dad & time with his son. This wasn't a man who "just" compulsively lies. When you knowingly misrepresent & manufacture your identity to gain sympathy from empathetic people who genuinely believe theres good in everyone, that's psychological coercion. Predatory psychopaths prey on others emotions. They use guilt trips & flattery to manipulate others. I was (almost) a perfect target &

> this was (almost) the perfect crime. Plot twist, I
> became a detective. I studied mental illnesses,
> predatory patterns and behaviors, personality
> disorders, & picked a part a two week period. I had to
> figure out how this happened & why it happened.
> Uncovering a motive, theory, & providing enough
> evidence to support.
>
> Women can have balls too.
> Release me from the NDA or sue me for breaching
> #TIMESUP either way it will all eventually come to
> light!! @timesupnow @metoomvmt
>
> #metoo #fuckthendamf

[BATES MCNAE 001703-04](hereinafter referred to as "Statement 7").

250.    Statement 7 is false.

251.    As a direct and proximate result of R. McNae's libelous Statement 7, Fitzgerald has been damaged.

252.    Statement 7 is libel *per se* because the defamatory words she has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

253.    Statement 7 is libel *per se* because Statement 7 accuses by implication Fitzgerald of committing a felonious sexual crime (i.e. rape).

254.    Statement 7 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

255.    Statement 7 is about Fitzgerald.

256.    In relation to Statement 7, R. McNae intentionally made numerous other statements that Fitzgerald raped her.

257.    R. McNae had actual knowledge that Statement 7 is false and that making false statements like Statement 7 are wrong and likely to injure Fitzgerald.

258.    In Florida, rape and sexual assault are felony crimes.

259. In Florida, false statements indicating a person committed a felony constitute libel *per se*.

260. R. McNae made Statement 7 with the malicious intent to defame Fitzgerald.

261. Statement 7 is unprivileged.

262. As a direct result of R. McNae's publication of Statement 7, R. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

263. The wrongs and injuries caused by a statement like Statement 7 are presumed and implied, and constitute libel *per se*.

264. Statement 7 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

265. Statement 7 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

266. As a direct result of R. McNae's Statement 7, Fitzgerald now feels ostracized both personally and professionally.

267. As a direct result of Statement 7, Fitzgerald has not been permitted to work in his chosen career.

268. As a consequence of Statement 7, R. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

269. R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and to deter her, and others from such action in the future.

270. Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.130

entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs,  and for such other relief as is deemed just and proper.

### COUNT X BY FITZGERALD – LIBEL PER SE AGAINST RONDA MCNAE (STATEMENT 8)

271.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

272.     R. McNae has engaged in ongoing, continuous, and malicious behavior in which she has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

273.     On July 15, 2022, R. McNae posted on her Instagram account a copy of the Incident Report she filed with the San Francisco Police Department, which states that Fitzgerald sodomized and raped her.  The post is:

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.131

*Michael Fitzgerald v. R. McNae McNae*
Case No. 1:22-cv-22171-JEM



**rondamcnae**
**Hall of Justice**

---

| | San Francisco Police Department | |
|---|---|---|
| Report Type: **Supplemental** | **INCIDENT REPORT** | 199005331 |

**NARRATIVE**

Due to the sensitive nature of the incident described in this report, the (R/V1) victim was granted confidentiality. Additionally, my Body Worn Camera was not activated during the interview for the same reason. This report is supplemental to a courtesy report generated by Officer Slade #218 at the Redmond Police Department in Washington (CASE 21-022327).

On 04/07/2022 at approximately 1225 hours, I met with the victim at Central Station regarding a sexual assault case she had reported in 2019 (Initial Report 199005331). The victim initially filed a courtesy report with the Redmond Police Department in Washington regarding the incident. That report was sent to the SFPD Records Section, and a CDW report was generated.

The victim reported she had been sodomized and raped by (S1) Michael Fitzgerald at the W Hotel, located at 181 3rd Street, on 11/02/2019. The victim was acquainted with Fitzgerald through her husband's work. The victim reported that she had been previously sexually assaulted ▬▬▬▬▬▬▬

During the San Francisco incident, the victim agreed to share a hotel room with Fitzgerald after agreeing to meet him to discuss that ▬▬▬ incident. The victim stated she had no intention of having intercourse with Fitzgerald, and there was no discussion of intercourse between them. The victim said she had dinner with Fitzgerald, during which she ingested two alcoholic beverages and became intoxicated. They then returned to the hotel, where Fitzgerald removed his and the victim's. The victim said she was so intimated by Fitzgerald that she was afraid to resist him. Fitzgerald had previously threatened to have the victim's husband fired from his work if she reported the ▬▬▬ incident. The victim additionally stated that she suffers from ▬▬▬ and her reaction to the traumatic nature of the incident immobilized her.

The victim recalled that Fitzgerald used his penis to anally penetrate her once as she was lying on the bed in the hotel room. The victim stated she told Fitzgerald "no" and he then vaginally penetrated her with his penis multiple times. The victim stated Fitzgerald also wrapped his hands around her neck and twisted her nipples while penetrating her. The victim documented all of this in a (E1) written statement she provided me.

The victim returned to her home in Washington on 11/04/2019 and remembered feeling pain in her vagina following the incident. She sought treatment at Evergreen Health Hospital in Kirkland, WA. The victim provided me with her (E2) lab reports from the hospital, which showed her urine screening tested positive for E. Coli. The victim said this indicated that fecal matter had been introduced to her vagina, as a result of being sodomized.

The victim additionally provided me with (E3) photos of Fitzgerald, and advised that he was a United Kingdom or Irish citizen residing in Florida. The victim additionally provided me with a (E4) email written by Fitzgerald on 11/06/2019, in which he tells the victim "Pls make sure you delete your emails and texts. I don't want this to be any harder than it is for you."

The victim advised me she had spoken to Fitzgerald's girlfriends, "Yelany De Varona" and ▬▬▬▬ who had confronted Fitzgerald about the incident. The victim showed me (E5) screenshots of a text conversation between De Varona and Fitzgerald. Fitzgerald admitted to De Varona that he had engaged in sexual intercourse with the victim, stating "Yes I did" when De Varona asked. Fitzgerald additionally wrote "We slept together twice" and "I was in rampage mode...And I didn't have control of myself."

The victim advised me she had spoken to Lt. O'Connor #436 at SVU previously about the incident, and had come to the station to provide her statement and the additional evidence. My partner, Officer Robards #936 called the SVU office three times and was unable to reach any of the investigators. I provided the victim with a follow-up form, Mersy's card, victim of crime form, SVU referral guide, and sexual assault victim's guide.

I booked the written statement, email, photos, lab report, and screenshots as evidence at Central Station. Copies of

| Incident# 199005331 | Page 4 of 5 |
|---|---|

---

[BATES MCNAE 001699] (hereinafter referred to as "Statement 8"). R. McNae did not redact

Fitzgerald's name from Statement 8.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.132

274.    Statement 8 is false.

275.    As a direct and proximate result of R. McNae's libelous Statement 8, Fitzgerald has been damaged.

276.    Statement 8 is libel *per se* because the defamatory words she has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

277.    Statement 8 is libel *per se* because Statement 8 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

278.    Statement 8 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

279.    Statement 8 is about Fitzgerald.

280.    In relation to Statement 8, R. McNae intentionally made numerous other statements that Fitzgerald raped her.

281.    R. McNae had actual knowledge that Statement 8 is false and that making false statements like Statement 8 are wrong and likely to injure Fitzgerald.

282.    In Florida, rape and sexual assault are felony crimes.

283.    In Florida, false statements indicating a person committed a felony constitute libel *per se*.

284.    R. McNae made Statement 8 with the malicious intent to defame Fitzgerald.

285.    Statement 8 is unprivileged.

286.    As a direct result of R. McNae's publication of Statement 8, R. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

287.    The wrongs and injuries caused by a statement like Statement 8 are presumed and

implied, and constitute libel *per se.*

288.    Statement 8 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

289.    Statement 8 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

290.    As a direct result of R. McNae's Statement 8, Fitzgerald now feels ostracized both personally and professionally.

291.    As a direct result of Statement 8, Fitzgerald has not been permitted to work in his chosen career.

292.    As a consequence of Statement 8, R. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

293.    R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and to deter her, and others from such action in the future.

294.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs and for such other relief as is deemed just and proper.

### COUNT XI BY FITZGERALD –
### LIBEL PER SE AGAINST RONDA MCNAE (STATEMENT 9)

295.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this

Count, Paragraphs 1-89 of this Amended Complaint.

296.    R. McNae has engaged in ongoing, continuous, and malicious behavior in which she has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

297.    On October 10, 2022, R. McNae posted on her Instagram account a photo and stated that she was raped.  R. McNae referred to Fitzgerald by reference which, by reading in conjunction with her other Instagram posts, makes obvious that she is accusing Fitzgerald of rape.  The comments to the post read, in part:



*Michael Fitzgerald v. R. McNae McNae*
Case No. 1:22-cv-22171-JEM

> "Yeah bud, I don't remember every
> detail but I remember enough. He
> pulled my hair pretty hard which
> yanked my head backwards and said
> something that scared me so I ran
> away. I hid for 1.5 hours at night, all
> alone. Then he found me. He
> assured me he needed to just make
> sure I got back to the hotel safely
> since your sister was there"
>
> "Mom, I'm so sorry for you that
> Dad's work friend, the guy with the
> wiener dog didn't listen when you
> said no"
>
> (as tears rolled down his face, he
> noticed a flood of tears came down
> mine)

[BATES FITZ00403-409] (hereinafter referred to as "Statement 9").

298.    Statement 9 is false.

299.    As a direct and proximate result of R. McNae's libelous Statement 9, Fitzgerald has

been damaged.

300.    Statement 9 is libel *per se* because the defamatory words she has used against

Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business,

or means of his livelihood.

301.    Statement 9 is libel *per se* because Statement 9 accuses by implication Fitzgerald

of committing a felonious sexual crime (i.e. rape).

302.    Statement 9 was intended to degrade Fitzgerald, bring him into ill repute, destroy

others' confidence in his integrity, or to cause other injury.

303.    Statement 9 is about Fitzgerald.

304.    In relation to Statement 9, R. McNae intentionally made numerous other statements

that Fitzgerald raped her.

305.    R. McNae had actual knowledge that Statement 9 is false and that making false

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.136

statements like Statement 9 are wrong and likely to injure Fitzgerald.

306.    In Florida, rape and sexual assault are felony crimes.

307.    In Florida, false statements indicating a person committed a felony constitute libel *per se*.

308.    R. McNae made Statement 9 with the malicious intent to defame Fitzgerald.

309.    Statement 9 is unprivileged.

310.    As a direct result of R. McNae's publication of Statement 9, R. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

311.    The wrongs and injuries caused by a statement like Statement 9 are presumed and implied, and constitute libel *per se*.

312.    Statement 9 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

313.    Statement 9 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

314.    As a direct result of R. McNae's Statement 9, Fitzgerald now feels ostracized both personally and professionally.

315.    As a direct result of Statement 9, Fitzgerald has not been permitted to work in his chosen career.

316.    As a consequence of Statement 9, R. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

317.    R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and

to deter her, and others from such action in the future.

318.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other relief as is deemed just and proper.

### COUNT XII BY FITZGERALD – <br> LIBEL PER SE AGAINST RONDA MCNAE (STATEMENT 10)

319.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

320.    R. McNae has engaged in ongoing, continuous, and malicious behavior in which she has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

321.    On January 1, 2022, R. McNae posted a blog on Medium.com entitled "Our HR complaint to MICROSOFT – falls on deaf ears." The blog included a copy of a July 8, 2021 letter from W. McNae to Microsoft indicating that R. McNae was raped.  It provides, in part:

> This past July, I helped my husband write an official complaint to Microsoft HR after learning there was nothing previously reported in his file. At the least, there wasn't even a record of his complaint that he had been verbally threatened and harassed during work hours on campus.
>
> Since I helped craft this letter, I do believe I have part ownership of it and I don't feel I need to ask permission to share it.
>
> ….

> *Context: From 2018–2020, I worked closely with the Executive of a global software/services Partner. This Partner represented a significant account and I was eager to build a positive relationship. Ultimately, this individual took advantage of our unequal power dynamic to assault my wife and subject both of us to prolonged abuse and mistreatment over eight months.*
>
> *I was responsible for influencing and winning technical mindshare in a heavily competitive environment against AWS and Google. I felt deeply responsible for winning new business on our platforms and felt this individual's invitation to attend his IPO celebration weekend was imperative to maintain credibility, as well as bolster my influential relationship with him and their organisation. At the time, I was covering for the loss of my PDM who had been let go from Microsoft a month earlier. Acting as both PTS and PDM induced enormous pressure to succeed and I was concerned about losing significant momentum if I were not present.*
>
> *The Executive placed so much importance on joining him that when my flight couldn't arrive in time to join the dinner, I asked my wife to go in my place. I partially asked my wife to attend because I knew the girlfriend had also canceled her attendance at the last moment and I felt personally responsible to demonstrate support at the celebration. This was not my family's first interaction with him; he had introduced his girlfriend to us and a friendship between the four of us had developed over the prior three months. We felt the pressure of her canceled attendance and somehow believed we owed him to go in her place. I was afraid of the negative repercussions towards me and Microsoft if we missed this event. My wife attended his dinner in my place, which ultimately resulted in her incapacitation. While my wife was unable to give consent, the Executive sexually assaulted her.*
>
> *My wife bears the trauma and emotional scars from the rape, but I continue to battle ongoing mental health issues including anxiety and depression, as well as stress from continuing to support this Partner organisation until I could no longer stand it and reported to my Manager four months after the assault.*
>
> *Complaint Summary: Microsoft HR should have (and could have) done more to support and protect me as an employee. A formal investigation was not kicked off internally or externally.*

[BATES FITZ00128-136](hereinafter referred to as "Statement 10").

322.    Statement 10 is false.

323.    As a direct and proximate result of R. McNae's libelous Statement 10, Fitzgerald has been damaged.

324.    Statement 10 is libel *per se* because the defamatory words she has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

325.    Statement 10 is libel *per se* because Statement 10 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

326.    Statement 10 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

327.    Statement 10 is about Fitzgerald.

328.    In relation to Statement 10, R. McNae intentionally made numerous other statements that Fitzgerald raped her.

329.    R. McNae had actual knowledge that Statement 10 is false and that making false statements like Statement 10 are wrong and likely to injure Fitzgerald.

330.    In Florida, rape and sexual assault are felony crimes.

331.    In Florida, false statements indicating a person committed a felony constitute libel *per se*.

332.    R. McNae made Statement 10 with the malicious intent to defame Fitzgerald.

333.    Statement 10 is unprivileged.

334.    As a direct result of R. McNae's publication of Statement 10, R. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

335.    The wrongs and injuries caused by a statement like Statement 10 are presumed and implied, and constitute libel *per se*.

336.    Statement 10 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

337.    Statement 10 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

338.    As a direct result of R. McNae's Statement 10, Fitzgerald now feels ostracized both personally and professionally.

339.    As a direct result of Statement 10, Fitzgerald has not been permitted to work in his chosen career.

340.    As a consequence of Statement 10, R. McNae has damaged Fitzgerald in an amount

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.140

in excess of the jurisdictional limits of this Court.

341. R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and to deter her, and others from such action in the future.

342. Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other relief as is deemed just and proper.

### COUNT XIII BY FITZGERALD – LIBEL PER SE AGAINST WILLIAM MCNAE (STATEMENT 11)

343. Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

344. W. McNae has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

345. On April 12, 2022, W. McNae wrote a letter to Chris Maulden and Ande Ferretti of Microsoft stating, in part:

App.141

*Michael Fitzgerald v. R. McNae McNae*
Case No. 1:22-cv-22171-JEM

> Because my sexual battery allegation involves my spouse, I do not believe it deserves any less attention to investigate the incident or uphold the violated Vendor Code of Conduct established with Partner organizations. As a victim of sexual battery, the lack of willingness by HR to demonstrate advocacy for an employee and their spouse, <u>when it was a result of a work relationship</u>, has been emotionally exhausting and damaging. A quick summary – the CIO of one of the largest global revenue billing partners took advantage of my work relationship to develop a trauma-based friendship with my family, which ultimately resulted in raping my wife and threatening me on a Redmond campus when I confronted him about criminal misconduct (reported to HR; also reported to Redmond Police Dept.). To be told by US HR that Microsoft has "zero liability" regarding this incident has haunted me for 2 years. Especially when I never reported this allegation as the fault of Microsoft – but asked for help since the relationship was so tightly connected to my work relationship.

[BATES MCNAE 1321-1323] (hereinafter referred to as "Statement 11").

346.    Statement 11 is false.

347.    As a direct and proximate result of W. McNae's libelous Statement 11, Fitzgerald has been damaged.

348.    Statement 11 is libel *per se* because the defamatory words he has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

349.    Statement 11 is libel *per se* because Statement 11 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

350.    Statement 11 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

351.    Statement 11 is about Fitzgerald.

352.    In relation to Statement 11, W. McNae intentionally made numerous other statements that Fitzgerald raped R. McNae.

353.    W. McNae had actual knowledge that Statement 11 is false and that making false statements like Statement 11 are wrong and likely to injure Fitzgerald.

354.    In Florida, rape and sexual assault are felony crimes.

355.    In Florida, false statements indicating a person committed a felony constitute libel

*per se.*

356.    W. McNae made Statement 11 with the malicious intent to defame Fitzgerald.

357.    Statement 11 is unprivileged.

358.    As a direct result of W. McNae's publication of Statement 11, W. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

359.    The wrongs and injuries caused by a statement like Statement 11 are presumed and implied, and constitute libel *per se.*

360.    Statement 11 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

361.    Statement 11 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

362.    As a direct result of W. McNae's Statement 11, Fitzgerald now feels ostracized both personally and professionally.

363.    As a direct result of Statement 11, Fitzgerald has not been permitted to work in his chosen career.

364.    As a consequence of Statement 11, W. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

365.    W. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish W. McNae for his actions and to deter him, and others from such action in the future.

366.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, attorneys' fees and costs, and continuing until paid in full, and for such other relief as is deemed just and proper.

## COUNT XIV BY FITZGERALD –
## LIBEL PER SE AGAINST WILLIAM MCNAE (STATEMENT 12)

367.   Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

368.   W. McNae has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

369.   On April 20, 2022, W. McNae wrote a letter to Chris Maulden of Microsoft stating in part:

> I have case notes and evidence to support why this is a workplace issue due to the first meeting taking place at a work event and the grooming behavior was enabled because of the work relationship.
> …
> Mike Fitzgerald abused his work relationship with me to prey and assault my wife and harass then threaten me assuming I would be too afraid to speak up.

[BATES MCNAE 1319-1320] (hereinafter referred to as "Statement 12").

370.   Statement 12 is false.

371.   As a direct and proximate result of W. McNae's libelous Statement 12, Fitzgerald has been damaged.

372.   Statement 12 is libel *per se* because the defamatory words he has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business,

or means of his livelihood.

373.     Statement 12 is libel *per se* because Statement 12 accuses Fitzgerald of committing a felonious sexual crime (*i.e.* rape and sexual predator).

374.     Statement 12 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

375.     Statement 12 is about Fitzgerald.

376.     In relation to Statement 12, W. McNae intentionally made numerous other statements that Fitzgerald raped R. McNae.

377.     W. McNae had actual knowledge that Statement 12 is false and that making false statements like Statement 12 are wrong and likely to injure Fitzgerald.

378.     In Florida, rape and sexual assault are felony crimes.

379.     In Florida, false statements indicating a person committed a felony constitute libel *per se*.

380.     W. McNae made Statement 12 with the malicious intent to defame Fitzgerald.

381.     Statement 12 is unprivileged.

382.     As a direct result of W. McNae's publication of Statement 12, W. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

383.     The wrongs and injuries caused by a statement like Statement 12 are presumed and implied, and constitute libel *per se*.

384.     Statement 12 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

385.     Statement 12 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

386.     As a direct result of W. McNae's Statement 12, Fitzgerald now feels ostracized both personally and professionally.

387.     As a direct result of Statement 12, Fitzgerald has not been permitted to work in his chosen career.

388.     As a consequence of Statement 12, W. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

389.     W. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish W. McNae for his actions and to deter him, and others from such action in the future.

390.     Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, attorneys' fees and costs, and continuing until paid in full, and for such other relief as is deemed just and proper.

### COUNT XV BY FITZGERALD – <br> LIBEL PER SE AGAINST WILLIAM MCNAE (STATEMENT 13)

391.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

392.     W. McNae has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

393.     On May 2, 2022, W. McNae wrote a letter to Chris Maulden and Leslie Pickering

of Microsoft stating in part:

> While it may be a surprise to you, it's not a surprise to either my wife or myself: Predators have a script. They have a process. A grooming period. It's calculated and premeditated. The sad part, my wife even gathered evidence to show MS however no one from HR was open to follow up and look at what she had compiled.
>
> As an employee of MS, I am telling you, this man is a sexual predator that began grooming and exploiting my wife the moment he met her at a WORK EVENT and continued under the pretext of my work relationship. I fear for other female employees within our company that work alongside him and at this point the company continues to be a complicit bystander. The question I pose to Microsoft HR is "will you still claim "zero liability" once you learn more victims come forward?"

[BATES MCNAE 1317-1318] (hereinafter referred to as "Statement 13").

394.   Statement 13 is false.

395.   As a direct and proximate result of W. McNae's libelous Statement13, Fitzgerald has been damaged.

396.   Statement 13 is libel *per se* because the defamatory words he has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

397.   Statement13 is libel *per se* because Statement 13 accuses Fitzgerald of committing a felonious sexual crime (*i.e.*, rape and sexual predator).

398.   Statement 13 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

399.   Statement 13 is about Fitzgerald.

400.   In relation to Statement 13, W. McNae intentionally made numerous other statements that Fitzgerald raped R. McNae.

401.   W. McNae had actual knowledge that Statement 13 is false and that making false statements like Statement 13 are wrong and likely to injure Fitzgerald.

402.   In Florida, rape and sexual assault are felony crimes.

403.   In Florida, false statements indicating a person committed a felony constitute libel

*per se.*

404.    W. McNae made Statement 13 with the malicious intent to defame Fitzgerald.

405.    Statement 13 is unprivileged.

406.    As a direct result of W. McNae's publication of Statement 13, W. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

407.    The wrongs and injuries caused by a statement like Statement 13 are presumed and implied, and constitute libel *per se.*

408.    Statement 13 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

409.    Statement 13 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

410.    As a direct result of W. McNae's Statement 13, Fitzgerald now feels ostracized both personally and professionally.

411.    As a direct result of Statement 13, Fitzgerald has not been permitted to work in his chosen career.

412.    As a consequence of Statement 13, W. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

413.    W. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish W. McNae for his actions and to deter him, and others from such action in the future.

414.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, attorneys' fees and costs, and continuing until paid in full, and for such other relief as is deemed just and proper.

<div align="center">

**COUNT XVI BY FITZGERALD –
<u>LIBEL PER SE AGAINST WILLIAM MCNAE (STATEMENT 14)</u>**

</div>

415.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

416.     W. McNae has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

417.     On July 13, 2022, W. McNae wrote a letter to Microsoft indicating that Fitzgerald raped R. McNae.  The letter provides:

> The CIO placed so much importance on joining him that when my flight couldn't arrive in time to join the dinner, I asked my wife to go in my place. I partially asked my wife to attend because I knew the CIO's girlfriend had also canceled her attendance at the last moment and I felt personally responsible to demonstrate support at the celebration.  This was not my family's first interaction with him; he had introduced his girlfriend to us and a friendship between the four of us had developed over the prior three months.  We felt the pressure of her canceled attendance and somehow believed we owed him to go in her place.  I was afraid of the negative repercussions towards me and Microsoft if we missed this event. My wife attended his dinner in my place, which ultimately resulted in her incapacitation.  While my wife was unable to give consent, the CIO sexually assaulted her.
>
> My wife bears the trauma and emotional scars from the rape, but I continue to battle ongoing mental health issues including anxiety and depression, as well as stress from continuing to support this Partner organization until I could no longer stand it and reported to my Manager four months after the assault.

[BATES MCNAE 1275-1277] (hereinafter referred to as "Statement 14").

418.     Statement 14 is false.

419.     As a direct and proximate result of W. McNae's libelous Statement 14, Fitzgerald

<div align="center">64</div>

has been damaged.

420.    Statement 14 is libel *per se* because the defamatory words he has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

421.    Statement 14 is libel *per se* because Statement 14 accuses Fitzgerald of committing a felonious sexual crime (*i.e.*, rape).

422.    Statement 14 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

423.    Statement 14 is about Fitzgerald.

424.    In relation to Statement 14, W. McNae intentionally made numerous other statements that Fitzgerald raped R. McNae.

425.    Statement 14 is false.

426.    W. McNae had actual knowledge that Statement 14 is false and that making false statements like Statement 14 are wrong and likely to injure Fitzgerald.

427.    In Florida, rape and sexual assault are felony crimes.

428.    In Florida, false statements indicating a person committed a felony constitute libel *per se*.

429.    W. McNae made Statement 14 with the malicious intent to defame Fitzgerald.

430.    Statement 14 is unprivileged.

431.    As a direct result of W. McNae's publication of Statement 14, W. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

432.    The wrongs and injuries caused by a statement like Statement 14 are presumed and implied, and constitute libel *per se*.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

433.    Statement 14 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

434.    Statement 14 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

435.    As a direct result of W. McNae's Statement 14, Fitzgerald now feels ostracized both personally and professionally.

436.    As a direct result of Statement 14, Fitzgerald has not been permitted to work in his chosen career.

437.    As a consequence of Statement 14, W. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

438.    W. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish W. McNae for his actions and to deter him, and others from such action in the future.

439.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, attorneys' fees and costs, and continuing until paid in full, and for such other relief as is deemed just and proper.

### COUNT XVII BY FITZGERALD –
### LIBEL PER SE AGAINST WILLIAM MCNAE (STATEMENT 15)

440.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

441.    W. McNae has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexual assault and rape.

442.    On July 15, 2022, W. McNae wrote a letter to John Wylie of John Wylie law, Jenny Martinez of Munck Wilson, and John Mayes of SoftwareONE stating in part:

> Mr. Fitzgerald met my wife, Ronda, during a SoftwareONE evening event in July 2019. He leveraged his executive role beyond the relationship with me to justify developing a direct friendship with my wife. He paid for all travel & entertainment expenses for my family to join he and his girlfriend to celebrate the accomplishment of SoftwareONE's IPO. A "consensual affair" was fabricated by Mr. Fitzgerald to hide his actions which have been documented in the 3 police reports.

[BATES MCNAE 1353-1355] (hereinafter referred to as "Statement 15").

443.    Statement 15 is false.

444.    As a direct and proximate result of W. McNae's libelous Statement 15, Fitzgerald has been damaged.

445.    Statement 15 is libel *per se* because the defamatory words he has used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

446.    Statement 15 is libel *per se* because Statement 15 accuses Fitzgerald of committing a felonious sexual crime (*i.e.*, rape).

447.    Statement 15 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

448.    Statement 15 is about Fitzgerald.

449.    In relation to Statement 15, W. McNae intentionally made numerous other statements that Fitzgerald raped R. McNae.

450.    W. McNae had actual knowledge that Statement 15 is false and that making false statements like Statement 15 are wrong and likely to injure Fitzgerald.

451.   In Florida, rape and sexual assault are felony crimes.

452.   In Florida, false statements indicating a person committed a felony constitute libel *per se*.

453.   W. McNae made Statement 15 with the malicious intent to defame Fitzgerald.

454.   Statement 15 is unprivileged.

455.   As a direct result of W. McNae's publication of Statement 15, W. McNae naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

456.   The wrongs and injuries caused by a statement like Statement 15 are presumed and implied, and constitute libel *per se*.

457.   Statement 15 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

458.   Statement 15 caused others to avoid Fitzgerald, such as his employer, SoftwareONE and its employees, as well as partnered companies.

459.   As a direct result of W. McNae's Statement 15, Fitzgerald now feels ostracized both personally and professionally.

460.   As a direct result of Statement 15, Fitzgerald has not been permitted to work in his chosen career.

461.   As a consequence of Statement 15, W. McNae has damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court.

462.   W. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish W. McNae for his actions and to deter him, and others from such action in the future.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Michael Fitzgerald v. R. McNae McNae*
Case No. 1:22-cv-22171-JEM

463.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, attorneys' fees and costs, and continuing until paid in full, and for such other relief as is deemed just and proper.

### COUNT XVIII BY FITZGERALD –
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST RONDA MCNAE AND WILLIAM MCNAE

464.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

465.    R. McNae lied to Fitzgerald about being pregnant with his child and having an abortion.

466.    R. McNae lied to Fitzgerald that she and W. McNae were separated and contemplating divorce when, in reality, they were doing well and planning to renew their vows.

467.    R. McNae engaged in ongoing, continuous, and malicious behavior in which she repeatedly stated domain false, malicious and damaging information about Fitzgerald, claiming their consensual relationship constituted sexual assault and rape, while she has stated otherwise to her caregivers. *See* Statement 1, Statement 2, Statement 3, Statement 4, Statement 5, Statement 6, Statement 7, Statement 8, Statement 9, and Statement 10.

468.    R. McNae's conduct in repeatedly accusing Fitzgerald of sexual assault and/or rape on her Instagram account and her Medium.com blog constitutes outrageous conduct which goes beyond all bounds of decency and is regarded as odious and utterly intolerable in a civilized community.

69

469.    R. McNae's repeated attempts to make her story public and to identify Fitzgerald directly and indirectly to others as a rapist and sexual predator within the #MeToo movement are meant to destroy Fitzgerald both personally and professionally.

470.    R. McNae's false, malicious, outrageous and damaging comments have directly and proximately caused Fitzgerald extreme emotional distress in that he is unable to work, he has suffered reputational harm in his professional spheres of influence, he has been dealing with extreme anxiety and depression as a result of R. McNae's false accusations, his quality of life has been largely impacted, and he has been seeing a mental health counselor to deal with the extreme emotional distress that has resulted from R. McNae's false accusations.

471.    W. McNae lied to Fitzgerald about R. McNae being pregnant with Fitzgerald's child.

472.    W. McNae engaged in ongoing, continuous, and malicious behavior in which he repeatedly stated false, malicious and damaging information about Fitzgerald, claiming the consensual relationship between Fitzgerald and R. McNae constituted sexual assault and rape. *See* Statement 11, Statement 12, Statement 13, Statement 14, and Statement 15.

473.    W. McNae's conduct in repeatedly accusing Fitzgerald of sexual assault and/or rape constitutes outrageous conduct which goes beyond all bounds of decency and is regarded as odious and utterly intolerable in a civilized community.

474.    W. McNae's repeated attempts to identify Fitzgerald directly and indirectly to others as a rapist and sexual predator are meant to destroy Fitzgerald both personally and professionally.

475.    W. McNae's false, malicious, outrageous and damaging comments have directly and proximately caused Fitzgerald extreme emotional distress in that he is unable to work, he has

suffered reputational harm in his professional spheres of influence, he has been dealing with extreme anxiety and depression as a result of W. McNae's false accusations, his quality of life has been largely impacted, and he has been seeing a mental health counselor to deal with the extreme emotional distress that has resulted from W. McNae's false accusations.

476.    Defendants' actions are intentional and reckless, and they have intended their behavior to result in emotional distress to Fitzgerald.

477.    The emotional distress that Fitzgerald is experiencing due to R. McNae's and W. McNae's actions is severe and continues to negatively impact his life, mental and physical well-being, career and marriage.

478.    R. McNae's and W. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae and W. McNae for their actions and to deter them, and others from such action in the future.

479.    R. McNae and W. McNae are jointly and severally liable for the damages they have caused Fitzgerald.

480.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendants Ronda McNae and William McNae, jointly and severally, for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, attorneys' fees and costs, and continuing until paid in full, and for such other relief as is deemed just and proper.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

### COUNT XIX BY FITZGERALD –
### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### AGAINST RONDA MCNAE AND WILLIAM MCNAE

481.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

482.    Fitzgerald commenced a business relationship with SoftwareONE in March of 2016 when he entered into a written employment agreement.   At all times relevant to this action, Fitzgerald was a high level executive within SoftwareONE.

483.    Defendants were well aware of how important Fitzgerald's career is to him and how much time and devotion he has dedicated to the growth of SoftwareONE.

484.    Defendants were also well aware that Fitzgerald's growth trajectory within the Company was leading him to a place of economic prosperity and pecuniary gain, particularly given the initial public offering of SoftwareONE and Fitzgerald's ownership interest in stock options of SoftwareONE.

485.    Defendants' numerous communications with employees of SoftwareONE in which they accuse Fitzgerald of sexual assault and/or rape of R. McNae or others constitutes an intentional and unjustified interference with Fitzgerald's relationship with his employer.

486.    As a result of Defendants' interferences as shown in Statement 1, Statement 2, Statement 3, Statement 5, Statement 6 and Statement 15, Fitzgerald has been damaged professionally and financially, and his career is at a standstill as a consequence of Defendants' false and misleading accusations.   Fitzgerald's growth within the Company, and the industry at large, have been stunted by Defendants' malicious conduct.

487.    Defendants' numerous communications with employees of Microsoft in which they accuse Fitzgerald of sexual assault and/or rape of R. McNae or others constitutes an intentional

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.157

and unjustified interference with Fitzgerald's relationship with a valued business partner of his employer.

488.    As a result of Defendants' interferences as shown in Statement 2, Statement 3, Statement 4, Statement 11, Statement 12, Statement 13, and Statement 14, Fitzgerald has been damaged professionally and financially, and his career is at a standstill as a consequence of Defendants' false and misleading accusations.  Fitzgerald's growth within SoftwareOne, and the industry at large, have been stunted by Defendants' malicious conduct.

489.    R. McNae's and W. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae and W. McNae for their actions and to deter them, and others from such action in the future.

490.    R. McNae and W. McNae are jointly and severally liable for the damages they have caused Fitzgerald.

491.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendants Ronda McNae and William McNae, jointly and severally, for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, attorneys' fees and costs, and continuing until paid in full, and for such other relief as is deemed just and proper.

### COUNT XX BY DE VARONA –
### LOSS OF CONSORTIUM AGAINST RONDA MCNAE AND WILLIAM MCNAE

492.    Plaintiff de Varona adopt by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

App.158

*Michael Fitzgerald v. R. McNae McNae*
Case No. 1:22-cv-22171-JEM

493.    Defendants have engaged in an ongoing and continuous smear campaign to damage the reputation of Fitzgerald and to ruin Fitzgerald's life. Defendants have both done so by their ceaseless communications to Fitzgerald's employer, W. McNae's employer, and other third parties. R. McNae has done so by her egregious public statements on her Instagram page and Medium.com blog posts. She has brought in numerous public figures, including celebrities and individuals involved in the #MeToo movement in order to falsely give credence to her lies.

494.    This ongoing, continuous, intentional, and malevolent conduct by Defendants has caused serious emotional injury to both Fitzgerald and Varona, a married couple. Fitzgerald and de Varona's lives are clouded by these ongoing egregious acts of misconduct sought to harass and destroy Fitzgerald. Fitzgerald is unable to work and is seeing mental health counseling for the distress that has been directly caused by Defendants' malicious conduct.

495.    As a direct and proximate result of R. McNae's and W. McNae's concerted effort to defame Fitzgerald, ruin his career and cause financial and emotional stress upon him, de Varona has lost the enjoyment of her husband's companionship, company, cooperation and aid in their conjugal relations.

496.    De Varona has lost the ability of affection, solace, comfort, companionship, conjugal life, fellowship, society or assistance so necessary to a successful marriage due to the fact that Defendants' accusations have caused major emotional duress and damage to both Fitzgerald and de Varona.

497.    R. McNae's and W. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae and W. McNae for their actions and to deter them, and others from such action in the future.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

498.     R. McNae and W. McNae are jointly and severally liable for the damages they have caused Fitzgerald.

**WHEREFORE**, Plaintiff Yelany de Varona demands judgment against Defendants Ronda McNae and William McNae, jointly and severally, for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

<div align="center">

**COUNT XXI BY FITZGERALD –**
**MALICIOUS PROSECUTION AGAINST RONDA MCNAE**

</div>

499.     Plaintiff Fitzgerald adopt by reference, as if set out fully and completely in this Count, Paragraphs 1-89 of this Amended Complaint.

500.     R. McNae initiated three (3) criminal proceedings against Fitzgerald in Redmond, Washington; San Francisco California; and Miami Beach, Florida.

501.     R. McNae commenced and caused the commencement of each proceeding as she pursued these claims against Fitzgerald in all three (3) jurisdictions.

502.     The criminal proceedings in Redmond, Washington, San Francisco, California, and Miami Beach, Florida each had a bona fide termination in Fitzgerald's favor, in that all cases are now inactive.

503.     Accordingly, neither the Redmond Police Department, the San Francisco Police Department, nor the Miami Beach Police Department found probable cause to pursue any claims against Fitzgerald.

504.     R. McNae acted maliciously, and with knowledge that her allegations were fabricated and based upon lies, when she initiated and pursued the criminal proceedings.

505.     As a result of R. McNae's malicious conduct, de Varona has suffered emotional, personal and professional damages.

<div align="center">

75

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

</div>

506.    R. McNae knew that filing such proceedings would cause harm to Fitzgerald and R. McNae initiated each proceeding with the actual intent to damage Fitzgerald.

507.    R. McNae's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory and punitive damages pursuant to state law, to punish R. McNae for her actions and to deter her, and others from such action in the future.

508.    Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

WHEREFORE, Plaintiff Michael Fitzgerald demands judgment against Defendant Ronda McNae for compensatory and punitive damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other relief as is deemed just and proper.

Date: December 30, 2022              Respectfully submitted,

<div style="margin-left:40%">

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
Telephone: 305-567-5576
Facsimile: 305-567-9343

By:*/s/ Meredith J. Gussin*
Peter E. Berlowe
Florida Bar No. 143650
peb@assoulineberlowe.com
Meredith J. Gussin
Florida Bar No. 0512303
mjg@assoulineberlowe.com
*Attorneys for Plaintiff Michael Fitzgerald*

</div>

Michael Fitzgerald v. R. McNae McNae
Case No. 1:22-cv-22171-JEM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email upon all parties listed on the Service List below on this 30th day of December, 2022.

By:     /s/ *Peter E. Berlowe*
        Peter E. Berlowe

## SERVICE LIST

Alaina Fotiu-Wojtowicz
Brodsky Fotiu-Wojtowicz
200 SW 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576      App.162

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-22171-JEM

MICHAEL J. FITZGERALD,
individually, and YELANY DE
VARONA, individually,

      Plaintiffs,

v.

RONDA MCNAE, individually,
and WILLIAM MCNAE, individually,

      Defendant.

_____ /

## DEFENDANTS' CONSOLIDATED[1]
## MOTIONS TO DISMISS AMENDED COMPLAINT

---

[1] Because of significant overlap in legal arguments, and thus to promote efficiency, conserve resources, and avoid making duplicative submissions to the Court, Defendants Ronda McNae and William McNae submit this consolidated motion to dismiss pursuant to 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. No Defendant joins in the arguments of the other Defendant unless expressly specified.

Defendants Ronda McNae and William McNae jointly move to dismiss Plaintiffs' Amended Complaint (ECF No. 27) for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Mrs. McNae additionally moves to dismiss Counts III, IV, V, VI, VII, VIII, IX, X, XI, XII, XVIII, XIX, XX, and XXI, for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mr. McNae additionally moves to dismiss Counts XIII, XIV, XV, XVI, XVII, XVIII, XIX, and XX for failure to state a claim under Rule 12(b)(6).

## **Introduction**

On July 14, 2022, Plaintiff Michael J. Fitzgerald filed his less than five-page, one-count Complaint against Ronda McNae alleging that she breached a settlement agreement signed by the parties on or about June 15, 2020 (the "Settlement Agreement") by disclosing information covered by the agreement and disparaging Fitzgerald to third parties. (ECF No. 1.) On December 30, 2022, Fitzgerald—now joined by his wife Yaleny De Varona—filed a seventy-six page, twenty-one count Amended Complaint against Ronda McNae and her husband William McNae for breach of the Settlement Agreement and for a variety of tort claims based upon the exact same actions that Fitzgerald alleges constituted the breach of contract. (ECF No. 27.)

Defendants categorically deny the lurid and sensationalist accusations made against them. But cutting through the unsupported conjecture and falsities, one fatal deficiency is laid bare: The Amended Complaint fails to allege facts to support subject matter jurisdiction. The Court's inquiry should end there, and the entirety of the Amended Complaint should be dismissed on this ground alone. Should the Court look to the merits, however, dismissal of the asserted tort claims, with prejudice, is appropriate as a matter of law.

2

### Complaint Allegations

The Amended Complaint alleges that Ronda McNae and William McNae separately committed acts that violated a June 15, 2020 Settlement Agreement signed by the McNaes and Fitzgerald. (Compl., ECF No. 27, ¶ 1.) The Settlement Agreement resolved claims arising from Fitzgerald's sexual assault of Mrs. McNae, which caused physical and mental injuries to the McNaes. (Agmt, ECF No. 27-1, at 1-2.)  According to the Amended Complaint, the Settlement Agreement had the following terms:

a. "the McNaes and Fitzgerald were required to keep the terms and conditions of the Confidential Settlement Agreement confidential";

b. "the McNaes were to have no contact with Fitzgerald's employer";

c. "the McNaes were not supposed to speak or write about Fitzgerald, his nationality, his employer, his country of citizenship, his location of residence, his employer, his job function, his job title, his profession, or reference dates, locations or other persons present at any of the events related to the underlying dispute";

d. "if the McNaes referred indirectly to Fitzgerald it would also be considered a breach of the agreement";

e. "the McNaes and Fitzgerald agreed not to disparage each other by written or oral word, gesture, or any other means, nor would they make disparaging or negative comments about each other, to any person or entity."

(Compl. ¶¶ 63-69.) The Amended Complaint alleges that the McNaes each violated the provisions of the Settlement Agreement and asserts a breach of contract against each of them. (Compl. ¶¶ 81, 84, 90–102.) The Amended Complaint then alleges nineteen separate tort claims, each of which incorporate the same facts as the breach of contract claims. (*See generally* Compl. ¶¶ 103-508.) In each of Fitzgerald's tort claims, he seeks fees and costs pursuant to Section 23 of the Settlement Agreement, which provides for prevailing party fees and costs for "litigation arising out of this Agreement or in any way related to this Agreement." (ECF No. 27-1, at 5.)

The Amended Complaint is brought in this Court based on diversity jurisdiction. The

3

Amended Complaint alleges that Defendant William McNae is "an individual of United States nationality who is domiciled in Washington State;" Defendant Ronda McNae is "an individual of United States nationality who is domiciled in Washington State;" and Plaintiff De Varona "an individual of United States nationality who is domiciled in Miami-Dade County, Florida." (Compl. ¶ 3-5.) In contrast, as to Plaintiff Fitzgerald, the Amended Complaint states only that he is "an individual of United Kingdom nationality." (Compl. ¶ 1.) No facts are alleged as to where he is domiciled. With respect to the amount in controversy, Fitzgerald generally states in his claims that he seeks damages "in an amount in excess of the jurisdictional limits of this Court" for each count (*see, e.g.*, Compl. at 23-25 (Wherefore Clauses)) and De Varona does the same (*see* Compl., at 75 (Wherefore Clause)).

### Legal Standard

"When a plaintiff files suit in federal court, she must allege facts that, if true, show federal subject matter jurisdiction over her case exists." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.*

Under Rule 12(b)(6), a complaint should be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

4

the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level," *Id.* Additionally, the complaint must be read as a whole, accounting for the totality of Plaintiffs' allegations. *Barrakuda Ltd. v. Zazaby Jewels, Inc.*, 19-23004, 2021 WL 2454467, at *3 (S.D. Fla. May 14, 2021) (Martinez, J.).

<u>Argument</u>

### A. The Amended Complaint Fails to Allege Facts Sufficient to Support Diversity Jurisdiction.[2]

A Court can assert diversity jurisdiction pursuant 28 U.S.C. § 1332 only where there is complete diversity; that is, "every plaintiff must be diverse from every defendant" and the amount in controversy exceeds $75,000. *Palmer v. Hosp. Auth*., 22 F.3d 1559, 1564 (11th Cir. 1994). "[P]laintiffs have the burden to affirmatively allege facts demonstrating the existence of jurisdiction." *Beavers v. A.O. Smith Elec. Prods. Co.*, 265 F. App'x 772, 778 (11th Cir. 2008) (internal quotation marks omitted). When a complaint fails to allege sufficient facts to support diversity jurisdiction, "district courts are constitutionally obligated to dismiss the action altogether if the plaintiff does not cure the deficiency." *Travaglio*, 735 F.3d at 1268; *Boda v. United States*, 698 F.2d 1174, 1177 (11th Cir. 1983) ("Where dismissal can be based on lack of subject matter jurisdiction and failure to state a claim, the court should dismiss on only the jurisdictional grounds. This dismissal is without prejudice.").

### 1. The Amended Complaint Fails to Allege the Citizenship of Plaintiff Michael Fitzgerald.

The Amended Complaint fails to allege facts to support diversity jurisdiction because it does not allege where Fitzgerald is domiciled.

---

[2] Ronda McNae and William McNae join in the entirety of this argument.

Where, as here, jurisdiction is invoked based on the diversity of the parties, the complaint's allegations "must include the citizenship *of each party*, so that the court is satisfied that no plaintiff is a citizen of the same state as any defendant." *Travaglio*, 735 F.3d at 1268 (emphasis added). "Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction." *Id.* at 1269 (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). Where a plaintiff fails to allege where each party is domiciled, the district court lacks subject matter jurisdiction on the face of the complaint, and dismissal is proper. *See Beavers*, 265 F. App'x at 778.

Plaintiffs' Amended Complaint alleges that the Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) "as this is an action between citizens of different States and the amount in controversy exceeds $75,000." (Compl. ¶ 6.). Yet, while Plaintiffs were careful to allege the domicile of each Defendant and Plaintiff De Varona, conspicuously absent from the Amended Complaint are any allegations regarding Fitzgerald's *domicile* or *citizenship*. The Amended Complaint alleges that Defendant William McNae "is domiciled in Washington State;" Defendant Ronda McNae "is domiciled in Washington State;" and Plaintiff De Varona "is domiciled in Miami-Dade County." (Compl. ¶ 3-5.) In contrast, however, as to Plaintiff Fitzgerald, the Amended Complaint states only that he is "an individual of United Kingdom nationality." (Compl. ¶ 1.)

That is fatal to establishing subject matter jurisdiction. Citizenship is based on domicile, not nationality. *See Ganesh v. N. Y. City Transit Auth.*, 19-139, 2019 WL 5086956, at *5 (E.D.N.Y. Oct. 10, 2019) ("citizenship is based on one's domicile rather than one's nationality or place of residence."); *Smith v. Wal-Mart Stores E., L.P.*, 07-22552, 2008 WL 11407155, at *2 (S.D. Fla. Jan. 28, 2008) (Martinez, J.) ("In diversity jurisprudence, citizenship is synonymous with domicile . . . ."). Fitzgerald, for example, might be a UK national domiciled in Washington State. If that

6

were the case, complete diversity would not exist. *See* 28 U.S.C. § 1332(a)(2). Likewise, Fitzgerald might be a UK national domiciled in the UK, but also hold U.S. citizenship, in which case he would not be a proper party to a diversity action in federal court. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341 (11th Cir. 2011).

Because Plaintiffs fail to establish complete diversity on the face of the Amended Complaint, dismissal for lack of subject matter jurisdiction is appropriate. *See Beavers*, 265 F. App'x at 778.

### 2. Plaintiffs Fail to Allege Facts to Show They Meet the Amount-in-Controversy Requirement.

It is "well-established" that "where jurisdiction is based on a claim for indeterminate damages," the party seeking to invoke jurisdiction "bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Malekmarzban v. Levine*, 14-20313, 2014 WL 1600576, at *1 (S.D. Fla. Apr. 21, 2014) (quoting *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir.2003)). "A conclusory allegation . . . that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the [plaintiff's] burden." *Bradley v. Kelly Servs., Inc.*, 224 F. App'x 893, 895 (11th Cir. 2007) (alterations in original).

Each of the claims asserted by Plaintiffs are for indeterminate damages. The Settlement Agreement does not contain a liquidated damages provision. *Cf. Malekmarzban*, 2014 WL 1600576, at *1 (plaintiff failed to prove his claims exceeded $75,000 where damages were "unliquidated and therefore uncertain"). Plaintiffs therefore have the burden of proving by a preponderance of the evidence that the amount-in-controversy requirement is met. They fail to do so.

7

Fitzgerald makes only vague and conclusory allegations that he "has been damaged" by the breaches of contract (*see* Compl. ¶¶ 94, 100), but does not explain *how* he was damaged nor does he attempt to "quantif[y] these losses with any specific dollar figures." *Bradley*, 224 F. App'x at 895. In each of his tort claims, Fitzgerald repeats the exact same, vague references to "injury to Fitzgerald in his personal, social and business relations of life," feeling "ostracized," "not been permitted to work in his chosen career," and damage "in an amount in excess of the jurisdictional limits" (*see, e.g.,* Compl. ¶¶ 118-124, 358-364), but likewise provides no facts to establish that the damages exceed $75,000. For example, Fitzgerald does not identify or quantify a loss of salaried employment, cut in pay, loss of a business opportunity or any other "calculations as to the amount of loss resulting from [defendants'] alleged misconduct." *See Bradley*, 224 F. App'x at 895; *Dibble v. Avrich*, 14-61264, 2014 WL 5305468, at *6 (S.D. Fla. Oct. 15, 2014) (plaintiff failed to identify facts to support damages from defamatory statements exceeded statutory requirement); *House v. Greenbaum*, 10-80073, 2010 WL 11647518, at *1 (S.D. Fla. Jan. 29, 2010) (general allegation that defamatory statements "were highly derogatory and have interfered with Plaintiffs' business," without identifying supporting facts, were insufficient to prove amount-in-controversy was met).

The allegations pertaining to De Varona's damages fare no better. She asserts a single loss of consortium claim, which states that she "has lost the enjoyment of her husband's companionship, company, cooperation and aid in their conjugal relations" and suffered damages "in an amount in excess of the jurisdictional limits of this Court." (Compl. ¶ 495 & Wherefore Clause). Such general allegations, without any factual support as to the amount of damages, is not enough. *See, e.g.*, *Dumond v. Carrington*, 22-20339, 2022 WL 1121741, at *3 (S.D. Fla. Apr. 14, 2022) (lack of factual allegations about mental and emotional injuries to "explain how they might bring the amount in controversy over the $75,000 threshold"); *Love v. N. Tool & Equip. Co., Inc.*,

8

08-20453, 2008 WL 2955124, at *5 (S.D. Fla. Aug. 1, 2008) (declining to "divine some dollar amount as emotional distress damages" for jurisdictional purposes); *LaFountain v. Flying J Inc.*, 05-14292, 2005 WL 8156186, at *3 (S.D. Fla. Nov. 1, 2005) (finding it was not facially apparent that loss of consortium and pain and suffering damages exceeded $75,000).

Finally, the inclusion of a prayer for punitive damages cannot save the complaint. As with actual damages, Plaintiffs "provide[] no evidence whatsoever" to support an amount of punitive damages that would exceed the jurisdictional threshold; it would be purely speculative to calculate an unsupported amount of punitive damages as part of the amount-in-controversy. *See Estate of Levine v. QBE First Ins. Agency, Inc.*, 17-60545, 2017 WL 4326693, at *3 (S.D. Fla. Aug. 4, 2017) (reviewing facial attack on diversity jurisdiction and collecting cases).

### B. Plaintiffs' Various Tort Claims All Fail to State a Claim and Should be Dismissed *with Prejudice.*

#### 1. Plaintiff Fitzgerald's Tort Claims Against Defendants Should be Dismissed Under the Independent Tort Doctrine.[3]

Plaintiffs' tort claims fail to state a claim because they are all barred by the independent tort doctrine. Under Florida's independent tort doctrine, "'it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims.'" *Bluestarexpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353 (S.D. Fla. 2021) (quoting *Altamonte Pediatric Assocs., P.A. v. Greenway Health,* LLC, 20-604, 2020 WL 5350303, at *5 (M.D. Fla. Sept. 4, 2020). Indeed, "to set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort." *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 13-61687, 2014 WL 2215770, at *4 (S.D. Fla. May 29,

---

[3] Ronda McNae and William McNae join in this argument, but separately address the allegations against each of them.

2014) (applying Florida law); *Perez v. Scottsdale Ins. Co.*, 19-22346, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020) ("To bring a tort claim concurrently with a contract claim, plaintiffs must plead a tortious action committed separate and apart from the breach of contract."). The doctrine embodies common law principles that "restrict the remedies available to parties who have specifically negotiated for those remedies" in contract. *Tiara Condo. Ass'n Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 408–09 (Fla. 2013) (Pariente, J., concurring); *Lewis v. Guthartz*, 428 So. 2d 222, 223 (Fla. 1982)) (independent tort doctrine reflects a judicial "unwillingness to introduce uncertainty and confusion into business transactions as well as the feeling that compensatory damages as substituted performance are an adequate remedy for an aggrieved party to a breached contract.").

Where, as here, the same conduct is alleged as the basis of the contractual breach and the tort, the independent tort doctrine requires dismissal. For example, in *Begualg Invest. Mgmt, Inc. v. Four Seasons Hotel Ltd.*, 10-22153, 2011 WL 4434891 (S.D. Fla. Sept. 23, 2021), the plaintiff brought claims for breach of contract and claims for breach of fiduciary duty based upon the same alleged conduct: "[f]ailing to undertake reasonable marketing, sales, and advertising services to attract lodgers and arrange rental of Plaintiffs' condo-hotel units" and "[d]irecting rental opportunities away from Plaintiffs and towards other luxury hotels." *Id.* at * 8. In finding that the independent tort doctrine barred the plaintiff's breach of fiduciary duty claims, the court noted, that one of the tort allegations was "for all intents and purposes the same as the allegation in paragraph 101(a) of the breach of contract claim," and the other tort allegation was "the same as the allegation in paragraph 102." *Id.*; *see also BluestarExpo*, 568 F. Supp. 3d at 1353 (finding that plaintiffs "claims for fraudulent and negligent misrepresentation are both simply recast versions of its breach-of-contract claim.").

10

Here, the same conduct underlies all of Plaintiff Fitzgerald's claims against the McNaes, that is, that each of the McNaes made certain disparaging statements about Fitzgerald that violate the Settlement Agreement. Indeed, each of these tort claims expressly incorporates by reference the exact same complaint paragraphs as the breach of contract claim (*i.e.*, paragraphs 1-89). (*See* Compl. ¶¶ 90, 97, 103, 127, 151, 175, 199, 223, 247, 271, 295, 319, 343, 367, 391, 415, 440, 464, 481, 499.) This confirms that Fitzgerald's tort claims are not independent of his breach of contract claims. *See 777 Partners LLC v. Pagnanelli*, 20-20172, 2021 WL 2038175, at \*3 (S.D. Fla. Mar. 8, 2021) (Martinez, J.) (finding claim was barred by independent tort doctrine and noting that "Plaintiffs incorporate by reference the very same facts alleged in their breach of contract claim"). And, if that were not clear enough, in each of these tort claims, Plaintiff seeks to recover attorneys' fees and costs "[p]ursuant to Section 23 of the Confidential Settlement Agreement." (*See* Compl. ¶¶ 126, 150, 174, 198, 222, 246, 270, 294, 318, 342, 366, 390, 414, 439, 463, 480, 491, 508.)

A side-by-side comparison of the tort and breach of contract claims against each Defendant makes clear that the tort claims are based on the exact same conduct that makes up the breach of contract claim:

| Allegation in Tort Claims Against Ronda McNae | Corresponding Allegation in Breach of Contract Claim (Count I) Against Ronda McNae |
|---|---|
| Count III – Libel Per Se:<br><br>Mrs. McNae committed libel per se by sending a letter to Fitzgerald's employer on March 31, 2022. ("Statement 1") (*See* Compl. ¶ 105.) | Mrs. McNae "breached the Confidential Settlement Agreement by . . . Contacting Fitzgerald's employer on . . . March 31, 2022. . . ." (*See* Compl. ¶ 92.A) |
| Count IV – Libel Per Se:<br><br>Mrs. McNae committed libel per se by sending a letter to Fitzgerald's employer on May 5, 2022. ("Statement 2") (*See* Compl. ¶ 129.) | Mrs. McNae "breached the Confidential Settlement Agreement by . . . Contacting Fitzgerald's employer on . . . May 5, 2022. . . ." (*See* Compl. ¶ 92.A) |

11

| Count V – Libel Per Se<br><br>Mrs. McNae committed libel per se by sending a letter to Fitzgerald's employer on May 9, 2022. ("Statement 3")<br>(*See* Compl. ¶ 153.) | Mrs. McNae "breached the Confidential Settlement Agreement by . . . Contacting Fitzgerald's employer on . . . May 9, 2022. . . ."<br><br>(*See* Compl. ¶ 92.A) |
|---|---|
| Count VI – Libel Per Se<br><br>Mrs. McNae committed libel per se by sending a letter to Mr. McNae's employer on June 10, 2022.  ("Statement 4.")<br>(*See* Compl. ¶ 177.) | Mrs. McNae "breached the Confidential Settlement Agreement by . . . Disclosing the Confidential Settlement Agreement to W. McNae's employer on . . . June 10, 2022. . . ."<br>(*See* Compl. ¶ 92.B) |
| Count VII – Libel Per Se<br><br>Mrs. McNae committed libel per se by sending a letter to Fitzgerald's employer on July 7, 2022. ("Statement 5")<br>(*See* Compl. ¶ 201) | Mrs. McNae "breached the Confidential Settlement Agreement by . . . Contacting Fitzgerald's employer on . . . July 7, 2022. . . ."<br><br>(*See* Compl. ¶ 92.A) |
| Count VIII – Libel Per Se<br><br>Mrs. McNae committed libel per se by sending a letter to Fitzgerald's employer on July 15, 2022.  ("Statement 6")<br>(*See* Compl. ¶ 225) | Mrs. McNae "breached the Confidential Settlement Agreement by . . . Contacting Fitzgerald's employer on . . . July 15, 2022. . . ."<br><br>(*See* Compl. ¶ 92.A) |
| Count IX – Libel Per Se<br><br>Mrs. McNae committed libel per se through an Instagram post on July 11, 2022. ("Statement 7.")<br>(*See* Compl. ¶ 249) | Mrs. McNae "breached the Confidential Settlement Agreement by . . . Disparaging Fitzgerald . . . on R. McNae's Instagram account on . . . July 11, 2022. . . ."<br><br>(*See* Compl. ¶ 92.F) |
| Count X – Libel Per Se<br><br>Mrs. McNae committed libel per se through an Instagram post on July 15, 2022. ("Statement 8.")<br>(*See* Compl. ¶ 273) | Mrs. McNae "breached the Confidential Settlement Agreement by . . . Disparaging Fitzgerald . . . on R. McNae's Instagram account on . . . July 15, 2022. . . ."<br><br>(*See* Compl. ¶ 92.F) |
| Count XI – Libel Per Se<br><br>Mrs. McNae committed libel per se through | Mrs. McNae "breached the Confidential Settlement Agreement by . . . Disparaging Fitzgerald . . . on R. McNae's Instagram |

| | |
|---|---|
| an Instagram Post on October 10, 2022. ("Statement 9.") (*See* Compl. ¶ 297) | account on . . . October 20, 2022. . . ." (*See* Compl. ¶ 92.F) |
| Count XII – Libel Per Se<br><br>Mrs. McNae committed libel per se through a Medium.com blog post on July 8, 2021. ("Statement 10.") (*See* Compl. ¶ 321) | Mrs. McNae "breached the Confidential Settlement Agreement by . . . Disparaging Fitzgerald by wrongfully and falsely accusing him of a crime to others on R. McNae's Medium.com blog account." (*See* Compl. ¶ 92.H) |
| Count XVIII – Intentional Infliction of Emotional Distress<br><br>Mrs. McNae inflicted emotional distress through Statements 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10. (*See* Compl. ¶ 467.) | *See* above. |
| Count XIX – Tortious Interference with a Business Relationship<br><br>Claiming Fitzgerald has been damaged as a result of Mrs. McNae's interferences as shown in Statements 1, 2, 3, 4 5, and 6. (Compl. ¶¶ 486, 488.) | *See* above. |

| Allegation in Tort Claim s Against William McNae | Corresponding Allegation in Breach of Contract Claim (Count II) Against William McNae |
|---|---|
| Count XIII – Libel Per Se:<br><br>Mr. McNae committed libel per se by sending a letter to Mr. McNae's employer on April 12, 2022 ("Statement 11"). (*See* Compl. ¶ 345.) | Mr. McNae "breached the Settlement Agreement by . . . Disclosing the Confidential Settlement Agreement to W. McNae's employer on . . . April 12, 2022. . . ." (*See* Compl. ¶ 99.B) |
| Count XIV – Libel Per Se:<br><br>Mr. McNae committed libel per se by sending a letter to Mr. McNae's employer on April 20, 2022 ("Statement 12"). (*See* Compl. ¶ 369.) | Mr. McNae "breached the Settlement Agreement by . . . Disclosing the Confidential Settlement Agreement to W. McNae's employer on . . . April 20, 2022 . . . " (*See* Compl. ¶ 99.B) |

App.175

| Count XV – Libel Per Se<br><br>Mr. McNae committed libel per se by sending a letter to Mr. McNae's employer on May 2, 2022 ("Statement 13").<br>(*See* Compl. ¶ 393.) | Mr. McNae "breached the Settlement Agreement by . . . Disclosing the Confidential Settlement Agreement to W. McNae's employer on . . . May 2, 2022. . . ."<br>(*See* Compl. ¶ 99.B) |
|---|---|
| Count XVI – Libel Per Se<br><br>Mr. McNae committed libel per se by writing a letter to Mr. McNae's employer on July 13, 2022 ("Statement 14").<br>(*See* Compl. ¶ 417.) | Mr. McNae "breached the Settlement Agreement by . . . Disclosing the Confidential Settlement Agreement to W. McNae's employer on. . . July 13, 2022."<br>(*See* Compl. ¶ 99.B) |
| Count XVII – Libel Per Se<br><br>Mr. McNae committed libel per se by writing a letter to Fitzgerald's employer on July 15, 2022 ("Statement 15").<br>(*See* Compl. ¶ 442) | Mr. McNae "breached the Confidential Settlement Agreement by . . . Contacting Fitzgerald's employer on, but not limited to, July 15, 2022."<br>(*See* Compl. ¶ 99.A) |
| Count XVIII – Intentional Infliction of Emotional Distress<br><br>Mr. McNae inflicted emotional distress through Statements 11, 12, 13, 14, and 15.<br>(*See* Compl. ¶ 472.) | *See* above. |
| Count XIX – Tortious Interference with a Business Relationship<br><br>Claiming Fitzgerald has been damaged as a result of Mr. McNae's interferences as shown in Statements 11, 12, 13, 14, and 15<br>(Compl. ¶¶ 486, 488.) | *See* above. |

Plaintiff Fitzgerald "fail[s] to allege any conduct by [the McNaes] that does not by itself constitute a breach of the [] contract at issue." *777 Partners LLC*, 2021 WL 2038175, at *3. Moreover, Plaintiff does not seek damages that are independent from the damages stemming from the alleged breach of contract. As such, Plaintiff's tort claims rely "on the same alleged conduct forming the basis of Plaintiff's claim for breach of contract, and [are] therefore barred by the

14

independent tort doctrine." *XP Global, Inc. v. AVM, L.P.*, 16-80905, 2016 WL 6679427, at *3 (S.D. Fla. Nov. 14, 2016); *see also 777 Partners LLC*, 2021 WL 2038175, at *3.

### 2. Count XIX for Intentional Infliction of Emotional Distress Against Both Defendants Fails to State a Claim as a Matter of Law.[4]

Plaintiff's claim for intentional infliction of emotional distress does not state a claim for relief. To state a claim in Florida for intentional infliction of emotional distress, a plaintiff must show that the defendant's conduct was intentional or reckless; the conduct was outrageous; the conduct caused the plaintiff's emotional distress; and the emotional distress was severe. *Williams v. Worldwide Flight Svcs., Inc.*, 877 So. 2d 869, 871 (Fla. 3d DCA 2004); *Bakar v. Bryant*, 13-21927-CIV, 2013 WL 5534235, at *2 (S.D. Fla. Oct. 7, 2013). "Whether conduct is sufficiently 'outrageous' to state a claim for intentional infliction of emotional distress is a question of law for the Court to decide." *Bakar*, 2013 WL 5534235 at *2 (quoting *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1336 (S.D. Fla. 2012); *De La Campa v. Grifols Am., Inc.*, 819 So. 2d 940, 943 (Fla. 3d DCA 2002)).

"While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Id.* (citations omitted). "Thus, '[t]here are only a very limited set of cases in which courts [have] recognized conduct as sufficiently egregious to support a claim of intentional infliction of emotional distress.'" *Id.* (quoting *Saadi v. Maroun*, 8:07–cv–1976–T–24–MAP, 2008 WL 4194824, at *4 (M.D. Fla. Sept.9, 2008)). A claim cannot be stated based on "mere insults, indignities, threats, or false accusations." *Williams*, 877 So. 2d at 871. "[E]ven offensive and harmful conduct, such as accusing someone of committing a felony . . . has been held insufficient to satisfy the element of

---

[4] Ronda McNae and William McNae join in the entirety of this argument.

outrageousness." *Neeley v. Wells Fargo Fin., Inc.*, 8:12-cv-542-T-33AEP, 2012 WL 5949106, at *3 (M.D. Fla. Nov. 28, 2012) (citing cases).

Courts have found the following types of allegations insufficient to state a claim for intentional infliction of emotional distress: vicious verbal harassment and abuse, *Williams*, 877 So. 2d at 871; false accusations of sexual relations in the workplace, *Dowling v. Blue Cross of Fla., Inc.*, 338 So. 2d 88 (Fla. 1st DCA 1976); false accusations of fraud resulting in arrest, *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 864 (Fla. 3d DCA 2006); public statements that the plaintiff had acted immorally, illegally, and unprofessionally, *Saadi*, 2008 WL 4194824; the commission of assault and battery, *Garcia*, 838 F. Supp. 2d 1334; and falsely telling a mother that her son had committed suicide, *Tello v. Royal Caribbean Cruises, Ltd.*, 939 F. Supp. 2d 1269, 1277-78 (S.D. Fla. 2013). Under Florida's high standard, "allegations of 'reprehensible, objectionable, and offensive' conduct have been rejected as insufficient to state a claim for intentional infliction of emotional distress." *Bakar*, 2013 WL 5534235, *2 (citing *Williams*, 877 So. 2d at 870).

Likewise, in this case, even viewing Plaintiff's allegations in the Complaint as true – and they are not – they do not rise to a level sufficient to maintain a claim of intentional infliction of emotional distress under Florida law. The alleged conduct may be "distasteful and offensive" but is not the type of extremely outrageous conduct necessary to state such a claim.

### 3. Count XXI for Malicious Prosecution Fails to State a Claim against Ronda McNae.

Count XXI of Plaintiff's Amended Complaint purports to assert a claim for malicious prosecution against Ronda McNae. To state a claim for malicious prosecution under Florida law, a plaintiff must establish the following six elements: (1) an original criminal or civil judicial proceeding against the present plaintiff; (2) the present defendant was the legal cause of the

16

original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) an absence of probable cause for the original proceeding; (5) malice on the part of the present defendant, and (6) damage to the plaintiff as a result of the original proceeding. *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). The failure to establish any one of these six elements is fatal. *Id.*; *see also Weissman v. K-Mart Corp.*, 396 So. 2d 1164 (Fla. 3d DCA 1981).

Plaintiff has not alleged these required elements. Although Count XXI includes a conclusory allegation that Mrs. McNae "initiated three criminal proceedings" against Plaintiff, the underlying factual allegations contradict this assertion. Fitzgerald's Amended Complaint alleges that Mrs. McNae filed three police reports, but that (to date) he has not been charged as a result of these reports. (*See* ECF No. 24-1 at ¶¶ 71-76.) Under Florida law, the "criminal judicial proceeding" requirement is satisfied by either an arrest or prosecution. *Ermini v. Scott*, 249 F. Supp. 3d 1253, 1277 (M.D. Fla. 2017); *Levine v. Hunt*, 932 So. 2d 1292, 1293 (Fla. 2d DCA 2006) (either arrest or prosecution satisfies the "judicial proceeding" element of a claim for malicious prosecution). The Amended Complaint does not allege that Fitzgerald was either arrested or prosecuted. Therefore, there is no "proceeding" on which a malicious prosecution claim could be based.

Moreover, even if Mrs. McNae's filing police reports after being twice sexually assaulted by Plaintiff constituted "proceedings," Plaintiff cannot establish that the alleged criminal proceedings were terminated in a bona fide termination in his favor. To establish a bona fide termination of the prior proceeding, "Plaintiff must show that the suit was concluded on the merits." *Gill v. Kostroff*, 82 F. Supp. 2d 1354, 1365 (M.D. Fla. 2000); *see Valdes v. GAB Robins*

17

*N. Am., Inc.*, 924 So. 2d 862, 866 (Fla. 3d DCA 2006) (term "bona fide termination" requires that original proceeding "ended in a manner indicating [Plaintiff's] innocence of the charges or allegations contained in the first suit, so that a court handling the malicious prosecution suit, can conclude with confidence, that the termination of the first suit was not only favorable to the defendant in that suit, but also that it demonstrated the first suit's lack of merit.")  Plaintiff does not (and cannot) allege that the purported criminal proceedings against him concluded on the merits. In fact, Plaintiff does not allege that the investigations concluded at all, instead he alleges that they are "inactive." (ECF No. 24-1 at ¶ 502.)

In short, Fitzgerald has failed to plead a claim for malicious prosecution and this claim should be dismissed with prejudice.

### 4. Plaintiff De Varona's Loss of Consortium Claim against Both Defendants is Derivative of the Failed Tort Claims.[5]

Under Florida law, "[w]hile a spouse's loss of consortium claim is a separate and distinct cause of action against a defendant, it is also a derivative cause of action which cannot exist without a primary cause of action by the injured spouse against the same defendant." *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1333 (S.D. Fla. 2020) (quoting *Horst v. Parker*, 6:08-cv-612-Orl-19KRS, 2007 WL 4234616, at *3 (M.D. Fla. Nov. 29, 2007)).  As a result, De Varona's consortium claim made in Count XX of the Amended Complaint must be dismissed along with her husband's failed tort claims.

### C. Plaintiff's Request for Punitive Damages for Breach of Contract is Barred. [6]

Finally, Fitzgerald's demands for punitive damages in his breach of contract claims are

---

[5] Ronda McNae and William McNae join in the entirety of this argument.

[6] Ronda McNae and William McNae join in the entirety of this argument.

App.180

also barred. Florida law is clear that "[i]t is now a well-settled rule in Florida that punitive damages are not recoverable in a breach of contract action, absent an accompanying independent tort." *Barrakuda Ltd.*, 2021 WL 2454467, at *5 (quoting *Lewis v. Guthartz*, 428 So. 222 (Fla. 1982) (emphasis added)); *Ghodrati v. Miami Paneling Corp.*, 770 So. 2d 181, 182 (Fla. 3d DCA 2000) ("Punitive damages are generally not recoverable for a breach of contract unless it is accompanied by a separate and independent tort claim."). As explained above, where the tort claim and the breach of contract claim seek the same damages, they are not considered "independent." *See Ghodrati*, 770 So. 2d at 182 (under independent tort doctrine, a plaintiff may not recover damages for tort claim that duplicate damages sought for breach of contract); *Huie v. Dent & Cook, P.A.*, 635 So. 2d 111 (Fla. 2d DCA 1994) (same).

Because Plaintiff has not pleaded any independent tort claims, Plaintiff has no basis to plead punitive damages and his claims for contractual punitive damages should be dismissed.

## Conclusion

For the foregoing reasons, Defendants Ronda McNae and William McNae request that this Court dismiss Plaintiffs' Amended Complaint for lack of subject jurisdiction without prejudice; or, in the alternative, dismiss Counts III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, and XXI and Plaintiff Fitzgerald's claims for contractual punitive damages in Counts I and II for failure to state a claim *with prejudice*.

Dated: January 27, 2023

19

Respectfully submitted,

By: */s/Alaina Fotiu-Wojtowicz*
Alaina Fotiu-Wojtowicz, Esq.
Florida Bar No.: 84179
BRODSKY FOTIU-WOJTOWICZ, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
alaina@bfwlegal.com
docketing@bfwlegal.com
*Counsel for Defendant Ronda McNae*

By: *Stephanie A. Casey*
Stephanie A. Casey
Florida Bar No. 97483
COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel: 305-476-7400
Fax: 305-476-7444
E-mail: scasey@colson.com
*Counsel for Defendant William McNae*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by email,

on this 27th day of January, 2023, to the following:

Peter E. Berlowe, Esq.
Meredith Gussin, Esq.
Assouline & Berlowe, P.A.
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Tel: 305-567-5576
Fax: 305-567-9343
peb@assoulineberlowe.com
mjg@assoulineberlowe.com
*Counsel for Plaintiffs*

Stephanie Casey, Esq.
COLSON HICKS EIDSON, PA
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel: 305-476-7400
Fax: 305-476-7444
scasey@assoulineberlowe.com
*Counsel for Defendant Will McNae*

By: /s/*Alaina Fotiu-Wojtowicz*
Alaina Fotiu-Wojtowicz, Esq.

21

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO: 2023-025855-CA-01

MICHAEL J. FITZGERALD,
individually,

                Plaintiff,

v.

WILLIAM MCNAE, individually,

                Defendant.

_____/

## AMENDED COMPLAINT (Amendment as of Right)

Plaintiff, MICHAEL J. FITZGERALD ("Fitzgerald" or "Plaintiff"), files this Amended Complaint against Defendant, WILLIAM MCNAE ("McNae" or "Defendant"), and alleges:

1.      This is an action for damages arising out of Defendant's breach of a contract (the "Confidential Settlement Agreement") with Plaintiff Fitzgerald.[1]

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff Fitzgerald is a British citizen who resides in England.

3.      Defendant McNae is a United States citizen who is domiciled in Washington State.

4.      This Court has subject matter jurisdiction over this action because it involves an actual and ongoing controversy that exceeds $50,000 plus attorneys' fees and costs. In particular, the amount in controversy is at least $657,228.00 in economic damages due as a result of natural and consequential damages to Plaintiff as a result of Defendant's breaches of the contract at issue

---

[1] Plaintiff reserves the right to reassert his defamation and tort claims in the event that the Confidential Settlement Agreement at issue is deemed unenforceable and/or void by this Court.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

App.184

in this case.

5.      This Court has personal jurisdiction over Defendant pursuant to Florida Statute §48.193 because he has breached a contract in this state by failing to perform acts required by the Confidential Settlement Agreement to be performed in this state.  Furthermore, this Court has jurisdiction over Defendant pursuant to Florida Statute §685.102 because the Confidential Settlement Agreement has a Florida choice of law provision and Defendant has therefore agreed to submit to the jurisdiction of the courts of this state.

6.      Venue in this district is proper because the underlying events related to the Confidential Settlement Agreement occurred in Miami-Dade County, Florida, and Defendant agreed in the Confidential Settlement Agreement that Miami-Dade County, Florida was the exclusive venue for disputes arising out of the agreement.

7.      The Plaintiff has retained the law firm Assouline & Berlowe, P.A., and has agreed to pay the firm its reasonable attorneys' fees and costs in conjunction with representing the Plaintiff in this action.

8.      All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

## **FACTS**

9.      Fitzgerald and Defendant (along with Defendant's wife, Ronda McNae), both with the aid of qualified attorneys, entered into a Confidential Settlement Agreement on or about June 15, 2020.  A true and correct copy of the Confidential Settlement Agreement is attached hereto as **Exhibit A**.

10.    In accordance with the Confidential Settlement Agreement, Defendant and Fitzgerald were required to keep the terms and conditions of the Confidential Settlement

App.185

Agreement confidential.  See Exhibit A, ¶16.

11.   In accordance with the Confidential Settlement Agreement, Defendant was to have no contact with Fitzgerald's then-employer, SoftwareONE.  See Exhibit A, ¶4B.

12.   In accordance with the Confidential Settlement Agreement, Defendant was not supposed to speak or write about Fitzgerald, his nationality, his employer, his country of citizenship, his location of residence, his employer, his job function, his job title, his profession, or reference dates, locations or other persons present at any of the events related to the underlying dispute. See Exhibit A, ¶4A.  Defendant was also prohibited from referring to Fitzgerald indirectly. Id.

13.   Under the Confidential Settlement Agreement, Fitzgerald paid a sum of money to Defendant, and Fitzgerald and Defendant each released claims against one another. See Exhibit A, ¶¶3, 13.

14.   Under the Confidential Settlement Agreement, Defendant and Fitzgerald agreed not to disparage each other by written or oral word, gesture, or other means, nor would they make disparaging or negative comments about each other, to any person or entity.  See Exhibit A, ¶17.

15.   Fitzgerald has complied with all terms and conditions of the Confidential Settlement Agreement.

16.   Defendant breached several provisions of the Confidential Settlement Agreement by contacting SoftwareONE (Fitzgerald's then-employer) on July 15, 2022 and by contacting Microsoft (Defendant's employer who used to do business with SoftwareONE) on April 12, 2022; April 20, 2022; May 2, 2022 and July 13, 2022.  Defendant also breached the Confidential Settlement Agreement by contacting others about the existence of the Confidential Settlement Agreement and by disparaging Fitzgerald to others.

17.     Defendant's communications constitute breaches of the following provisions of the Confidential Settlement Agreement:

- ¶4B: prohibition against contacting SoftwareONE;

- ¶16: requirement to keep the terms and conditions of the Confidential Settlement Agreement confidential;

- ¶4A: prohibition from speaking or writing about Fitzgerald directly or indirectly, and,

- ¶17: prohibition from disparaging Fitzgerald to others.

<u>See</u> Exhibit A.

18.     Plaintiff has been damaged as a result of Defendant's breaches both personally and professionally.

19.     Plaintiff has hired the undersigned law firm to prosecute its claim and is obligated to pay it a reasonable fee for its services. Pursuant to Paragraph 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and all costs incurred relating to said enforcement. <u>See</u> Exhibit A, ¶23.

## <u>COUNT I – BREACH OF CONTRACT</u>

20.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Complaint.

21.     The Confidential Settlement Agreement is a binding contract under Florida law.

22.     Defendant breached the Confidential Settlement Agreement by:

A.     Not keeping the Confidential Settlement Agreement confidential as required;

B.     Contacting Fitzgerald's then-employer, SoftwareONE;

C.     Disclosing the existence of the Confidential Settlement Agreement to

4

**ASSOULINE & BERLOWE, P.A.**
App.187

Fitzgerald's then-employer, SoftwareONE;

D.      Contacting Defendant's employer, Microsoft, and disclosing the existence of the Confidential Settlement Agreement and the underlying dispute to Microsoft;

E.      By referring to Fitzgerald directly by name and/or likeness, being, nationality, country of citizenship, location of residence, employer, job function, jot title, profession, or in reference to dates, locations, or other persons present;

F.      By disparaging, lying and intentionally seeking to harm Fitzgerald both professionally and personally by wrongfully and falsely accusing him of a crime to others; and

G.      By working in concert with his wife, Ronda McNae, to commit her breaches of the Confidential Settlement Agreement and her lies to Fitzgerald;

23.     Plaintiff has been damaged by Defendant's breaches of the Confidential Settlement Agreement. Such damages include the loss of Plaintiff's job at SoftwareONE due to Defendant's false accusations that Plaintiff assaulted Defendant's wife which led to a prolonged internal investigation into Fitzgerald at SoftwareONE.  The internal investigation resulted in Fitzgerald not being able to work in his chosen profession, loss of business contacts and relationships, damage to his professional reputation, loss of stock options, and earned bonuses, among other things. These damages were natural and foreseeable consequences of Defendant's multiple breaches of the Confidential Settlement Agreement.

24.     Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and costs.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*
Case No. 2023-025855-CA-01

**WHEREFORE**, Plaintiff demands judgment against Defendant, William McNae, for compensatory damages in the amount of $657,228.00, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

Date: February 13, 2024                 Respectfully submitted,


                                      **ASSOULINE & BERLOWE, P.A.**
                                      Miami Tower
                                        100 SE 2nd Street, Suite 3105
                                        Miami, Florida 33131
                                        Telephone: 305-567-5576
                                        Facsimile: 305-567-9343

                                        By:*/s/ Peter E. Berlowe*
                                        Peter E. Berlowe
                                        Florida Bar No. 143650
                                        peb@assoulineberlowe.com
                                        Meredith J. Gussin
                                        Florida Bar No. 0512303
                                        mjg@assoulineberlowe.com
                                        *Attorneys for Plaintiff Michael Fitzgerald*

<u>**CERTIFICATE OF SERVICE**</u>

    I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email upon all parties listed on the Service List below on this 13th day of February 2024.

                                 By:     */s/ Meredith J. Gussin*
                                        Meredith J. Gussin

<u>**SERVICE LIST**</u>

William McNae
504 11th Place
Kirkland, WA 98033
prose.wmcnae@gmail.com

App.189

EXHIBIT A

**Confidential Settlement Agreement**

**THIS SETTLEMENT AGREEMENT** (the "Settlement Agreement" or the "Agreement") is made and entered this __15th__ day of June 2020, by and among MICHAEL J. FITZGERALD ("Fitzgerald"), RONDA MCNAE ("Ronda") and WILL MCNAE ("Will") with Ronda and Will collectively referred to as the "McNaes," and Fitzgerald, Ronda, and Will collectively referred to as the "Parties";

**RECITALS**

**WHEREAS,** Ronda and Will are a married couple;

**WHEREAS,** Fitzgerald is a single male;

**WHEREAS,** the McNaes contend that Fitzgerald caused physical injury and mental injury to them in Miami-Dade County, Florida as a result of Fitzgerald's alleged sexual conduct towards Ronda;

**WHEREAS,** for purposes of avoiding the time and costly expenses associated with litigation, and in the interest of economic expediency, the Parties desire to reach a settlement of all claims between and among themselves; and,

**WHEREAS,** the parties wish to resolve all disputes between and among them;

**NOW THEREFORE** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them.

**1.     RECITALS.** The Parties acknowledge that the "WHEREAS" clauses preceding paragraph 1 are true and correct, and are incorporated herein as material parts of this Agreement.

**2.     NO ADMISSION OF LIABILITY.** The Parties agree to amicably settle all disputes between and among them.  The Parties understand that this Agreement is in full and complete compromise of all disputed claims, both as to questions of liability and damages, including any claims for punitive damages, without an admission of liability or any wrongdoing by any of the Parties, any such liability or wrongdoing being expressly denied by each of the Parties.

**3.     CONSIDERATION.** In consideration of the execution of this Agreement and the promises herein contained, the Parties agree to the following:

          A.     <u>Payment of Settlement Funds</u>.     On or before June 19, 2020, Fitzgerald agrees to remit payment in the amount of Ninety-Seven Thousand Dollars and 00/100 cents ($97,000.00) to Ronda McNae and remit payment in the amount of Ten Thousand Dollars and 00/100 cents to Will McNae (collectively the "Settlement Funds"). The Settlement Funds to

Page 1 of 5

Ronda's Initials: _____   Will's Initials: _____   Fitzgerald's Initials: _____

MCNAE 000001

Ronda McNae are paid in consideration of the physical and mental injuries she claims, and the settlement funds to Will McNae are in consideration of his loss of consortium claims due to the physical and mental injuries suffered by his wife Ronda. The Settlement Funds shall be remitted by wire to the Max Meyers Law PLLC Trust Account with the following wiring instructions:

> MAX MEYERS LAW PLLC IOLTA TRUST ACCOUNT WIRE INTRUCTIONS.
> Banner Bank - ABA Routing #■■■1076 and Account #■■■5818

    **4.**    **NON-MONETARY TERMS.** The Parties agree to the following non-monetary terms:

        A.    The McNaes shall remove any prior or current internet posts that reference Fitzgerald by name. The McNaes may speak or write generically about their life events, but in speaking or writing about their life events, the McNaes cannot refer to Fitzgerald's name, likeness, being, nationality, country of citizenship, location of residence, employer, job function, job title, profession, or reference to dates, locations, or other persons present. For instance, Ronda cannot name six people at an event, plus and unnamed person, so that the six people will know who the unnamed person is by process of elimination. Thus, it shall be a breach of this Agreement for the McNaes to indirectly refer to Fitzgerald in a way the McNaes could not do directly.

        B.    The McNaes shall not contact Fitzgerald's employer. If Mr. Fitzgerald's employer contacts either of the McNaes, the McNaes shall respond, "the matter has been resolved and I cannot speak any more about it," or words to that effect.

        C.    Notwithstanding the confidentiality provision in Section 16, below, the Parties may continue discuss the matter with their respective mental health professionals, but will advise the mental health professionals of this existence of this Agreement and those mental health professionals must follow this Agreement, as well.

        D.    The Parties agree to minimize contact upon execution of this Agreement, and they agree to limit such contact as to be only such contact necessary to enforce the terms of this Agreement, with such contact preferably being by the Parties' respective attorneys.

    **5.**    **REPRESENTATIONS AND WARRANTIES.** In making and executing this Agreement, the Parties represent, warrant and agree as follows:

        A.    The Parties have had an opportunity to seek independent legal advice with respect to their rights and asserted rights arising out of the matters in controversy and with respect to the advisability of executing this Agreement.

        B.    The Parties have made such investigation of all matters pertaining to this Agreement as they deem necessary, and do not rely on any statement, promise or representation by the other Parties hereto with respect to this matter.

    **6.**    **NO CHALLENGE TO SETTLEMENT.** The Parties agree that they will take no action, including, but not limited to the institution of a lawsuit or administrative claim, to

**Ronda's Initials:** _____    **Will's Initials:** _____    **Fitzgerald's Initials:** _____

MCNAE 000002

challenge any provision of this Agreement or regarding the original matter in controversy.

**7.     NO ADMISSION.**  Neither the negotiation nor the execution of this Agreement, nor any of its provisions, are to be construed as an admission by any of the Parties hereto, nor by their respective attorneys, or trustee regarding the truth of any matter alleged relating to the matter of controversy.

**8.     INTEGRATION.**     This Agreement constitutes a single, integrated written contract expressing the entire Agreement between the parties.  There are no other Agreements, written or oral, expressed or implied, between the parties, except as set forth in this Agreement.

**9.     SEVERABILITY.**    Should any part, term or provision of this Agreement be decided by the courts to be illegal, unenforceable or in conflict with any state or federal law or any other applicable law, the validity and enforceability of the remaining portions of this Agreement shall not be affected thereby.

**10.     DOCUMENT PREPARATION.**    If it becomes necessary for any reason to construe this Agreement as permitted by the Rules of Evidence of the State of Florida, this Agreement will be construed as being jointly prepared and written. The Parties agree that the terms and conditions contained herein have been negotiated, renegotiated and considered several times by the parties. The fact that one party or the other prepared the actual final draft of this Agreement shall not be construed as having created any ambiguity.  Should it become reasonably necessary for the parties to prepare additional documents to carry out the intent of this Agreement, each Party agrees to cooperate in the preparation, execution and delivery of same.

**11.     BINDING EFFECT.**  This Agreement shall be binding upon and inure to the benefit of the parties, and their respective successors, heirs, personal representatives and assigns.

**12.     NO WAIVER.**     No waiver of any breach of any term or provision of this Agreement shall be construed to be, nor shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party waiving the breach.

**13.     MUTUAL GENERAL RELEASE.** The Parties agree that they each on their own behalf and on the behalf of any heirs, assigns, beneficiaries, past or future affiliates, shareholders, parents or subsidiaries, attorneys, sureties or insurers, employees, officers, directors, agents, trustees, and any other person or entity bearing a legal relationship as a predecessor or successor in interest and anyone claiming any rights derived from any of them, forever release, discharge, and hold each other and each other's past, present or future affiliates, shareholders, parents or subsidiaries, attorneys, sureties or insurers, employees, officers, directors, agents, and any entity bearing a legal relationship as predecessor or successor in interest, harmless of, and from, any all claims, causes of action, suits, debts, agreements, promises, demands, liabilities, contractual rights and/or obligations, or claims arising in tort, or of whatever nature, in law or in equity, arising out of, or related to, the direct claims asserted and any other claims that could be asserted, any counterclaims, any third-party claims, and any claims to attorneys' fees and cost, whether or not the claim was raised, or could have been raised. The Parties agree that this Release is not intended as an admission of any wrongdoing or liability on the part of any Party, and that this Release is not

Page 3 of 5

Ronda's Initials:_____  Will's Initials:_____  Fitzgerald's Initials:_____

admissible as evidence in any proceeding as an admission of liability. The Parties warrant that they have not made any assignment of any right, claim, or cause of action covered by this Release to any other person, corporation or other legal entity.

14.   **GOVERNING LAW.**   This Agreement shall be deemed to be made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of Florida, without giving effect to the conflict of laws principals of Florida law. The Parties agree that venue for any litigation brought to enforce this Agreement shall lie exclusively in any court of competent jurisdiction in Miami-Dade County, Florida.

15.   **EXECUTION.**   This Agreement may be made effective by means of facsimile signatures executed on several identical counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.   **CONFIDENTIALITY.**   The Parties warrant that they have not and will not disclose, communicate, disseminate and/or publicize, or cause or permit to be disclosed, communicated, disseminated or publicized the existence of or terms and conditions of this Agreement to any person, business, organization, corporation, association, governmental agency, except as follows: (1) to the extent necessary to report income to appropriate taxing authorities; (2) to their respective attorneys and accountants; (3) in response to requirements of law or a subpoena issued by a state or federal court or governmental agency, provided, however, that notice of receipt of such judicial order or subpoena immediately be communicated to counsel for the opposing party telephonically. The McNaes further acknowledge and agree that this provision is a material inducement to the Fitzgerald's agreement to pay the Settlement Funds. Therefore, the McNaes agree and acknowledge that any violation of this section or disclosure of any of the terms of the Settlement Agreement beyond the exceptions identified above in this section shall constitute a material breach of this Agreement.

17.   **NON-DISPARAGEMENT.**   The Parties agree that they will not disparage each other, by written or oral word, gesture, or any other means, nor will they make any disparaging or negative comments about each other, to any person or entity.

18.   **NO FURTHER OBLIGATIONS.** The Parties agree that, aside from the obligations set forth in this Agreement, no party owes any other party any monies or benefits.

19.   **BINDING NATURE OF AGREEMENT.** This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit and/or detriment of each party and to their respective heirs, administrators, representatives, executors, successors and assigns.

20.   **MODIFICATION OF AGREEMENT.**   This Agreement may be amended, revoked, changed, or modified only upon written agreement executed by all Parties. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the party against whom such waiver is charged.

21.   **SELECTIVE ENFORCEMENT.**   The Parties agree that the failure of any party to enforce or exercise any right, condition, term or provision of this Agreement shall not be

Ronda's Initials: _____   Will's Initials: _____   Fitzgerald's Initials: _____

MCNAE 000004

construed as or deemed to be a waiver or relinquishment thereof, and the same shall continue in full force and effect.

**22.    ENTIRE AGREEMENT.**  This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof.

**23.    ATTORNEYS' FEES.**    In connection with any litigation arising out of this Agreement or in any way related to this Agreement, the prevailing party shall be entitled to recover all costs incurred including, but not limited to, its reasonable attorneys' fees at any level (trial, appeal, bankruptcy, administrative), including fees spent in litigation over entitlement or amount of such fees.

**24.    HEADINGS.** The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

**25.    COUNTERPARTS AND FACSIMILE SIGNATURES.** This Agreement may be executed in two or more counterparts, each of which may be considered an original, and all of which together shall constitute one and the same document.  Facsimile or scanned copies of signature pages shall be treated as original signature pages.

**IN WITNESS WHEREOF**, this Agreement has been executed by the Parties as of the Effective Date.

_____   6-15-2020          _____   6-15-2020
Ronda McNae                  Date               Will McNae                   Date

_____   6-16-2020
Michael Fitzgerald           Date
Allan D. Lederman, Trustee

Page 5 of 5

**Ronda's Initials:**____  **Will's Initials:**____  **Fitzgerald's Initials:**____